**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No. |
| v. | ) ) | |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABU IRSHAID, | ) ) ) ) ) ) ) | |
| Defendants. | | |

**COMPLAINT FOR DECLARATORY AND MONETARY JUDGMENT
AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiffs Stanley Boim, individually and as administrator of the estate of David Boim, deceased, and Joyce Boim (together, "Plaintiffs"), for their claim against defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJP"), Rafeeq Jaber, Abdelbasset Hamayel, and Osama Abu Irshaid (collectively, "Defendants"), allege and state as follows:

**INTRODUCTION**

1.      In 1996, Stanley and Joyce Boim's son David was murdered by two agents of the international terrorist organization Hamas. The Boims initiated a lawsuit in this Court four years later, in 2000 (the "*Boim* Action"). In 2004, plaintiffs were awarded a $156 million judgment against individuals and organizations who financed the murder of their son (the "*Boim* Judgment"), and that judgment was affirmed in 2008. Among the defendants in the *Boim* Action

(the "*Boim* Defendants") were organizations that worked in tandem to support Hamas in the United States: the Holy Land Foundation for Relief and Development ("HLF"), the American Muslim Society ("AMS"), and AMS's alter egos operating under the name Islamic Association for Palestine ("IAP"). When time came to pay the *Boim* Judgment, AMS and IAP claimed to be out of business with few assets as a result of the burden of the *Boim* Judgment and associated litigation costs. HLF had ceased operations, and its assets had been seized by the United States. HLF and several of its leaders were subsequently convicted of terrorist activity. Seemingly, the *Boim* Action brought an end to these organizations. But that was not the case.

2.      In fact, these *Boim* Defendants are in business today in this District through their alter egos and successors, Defendants AMP and AJP. AMP and AJP were established by the former leaders of HLF, AMS and IAP—including Defendants Rafeeq Jaber, Abdelbasset Hamayel and Osama Abu Irshaid (together, the "Individual Defendants")—in order to continue the same enterprise and agenda, while avoiding the burden of the *Boim* Judgment and the ignominy of having been found liable for aiding and abetting the murder of an American teenager. AMP and AJP continue to be run by former leaders of HLF, AMS and IAP, including the Individual Defendants; until August 2016 they were headquartered on the same street, and they are now located nearby; and they continue the same enterprise, mission and activities. On information and belief, they have also received assets and funds from HLF, AMS, and IAP.

3.      AMP and AJP are alter egos and successors of HLF, AMS and IAP, and are therefore liable for the unpaid portion of the *Boim* Judgment. Likewise, the Individual Defendants are alter egos of HLF, AMS and IAP. They participated in the direction and control of those entities in 1996, and they continue to direct and control the successor entities, AMP and AJP, today. Having been unable to collect more than a small fraction of the *Boim* Judgment

2

from the named *Boim* Defendants, Plaintiffs should be permitted to recover from the *Boim* Defendants' alter egos and successors, i.e. the Defendants herein.

4.     The purpose of this action is to request that the Court (i) enter a declaratory judgment determining that AMP and AJP are the alter egos and/or successors of one or more of the *Boim* Defendants (including AMS, IAP and HLF); (ii) enter a declaratory judgment determining that the Individual Defendants are alter egos of one or more of the *Boim* Defendants (including AMS, IAP and HLF), and that they engaged in the conduct that gave rise to liability in the *Boim* Judgment; (iii) enter a declaratory judgment determining that each of Defendants is liable for the unsatisfied portion of the *Boim* Judgment; (iv) enter money judgments against each of the Defendants, jointly and severally, for this unpaid liability; and (v) issue a preliminary and permanent injunction preventing AMP, AJP and the Individual Defendants from dissipating funds in their possession or in the possession of unknown third parties that rightfully belong to the Boims.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 18 U.S.C. §§ 2333(a) and 2338 and 28 U.S.C. §§1331 because Plaintiffs seek to impose liability on AMP, AJP and the Individual Defendants arising from the civil liability provisions of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(d)(2), as alter egos and/or successors of the *Boim* Defendants.  *See, e.g., Central States, Se. and Sw. Areas Pension Fund v. Central Transp., Inc.*, 85 F.3d 1282, 1286 (7th Cir. 1996) (recognizing federal subject matter jurisdiction for enforcement action based on alter ego liability).  This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, and to issue preliminary and permanent injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

3

6.      In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in the event that any claims asserted herein are not subject to original jurisdiction, because such claims (if any) are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper under 18 U.S.C. §2334(a) because one or more of the Defendants resides, will be served, and/or has an agent in this judicial district.  Venue is also proper under 28 U.S.C. §1391(b) because the acts alleged herein were performed within this judicial district.  The Defendants reside in this district, a substantial part of the events giving rise to the claim occurred in this district and, on information and belief, a substantial part of the property that is the subject of this action is situated in this district.

## THE PARTIES

8.      Plaintiffs Stanley Boim and Joyce Boim are United States citizens who reside in Jerusalem, Israel.  Stanley Boim is the administrator of the estate of his son, David Boim, deceased.  The *Boim* Judgment was entered in favor of Stanley and Joyce Boim.

9.      AMP (American Muslims for Palestine) is an Illinois-registered, not-for-profit organization located at 10063 South 76th Avenue, Bridgeview, Illinois.

10.      AJP (Americans for Justice in Palestine Educational Foundation) is a 501(c)(3) tax-exempt organization located at 10063 South 76th Avenue, Bridgeview, Illinois.

11.      The Individual Defendants Rafeeq Jaber and Abdelbasset Hamayel are, on information and belief, residents of Illinois and this Judicial District.  Individual Defendant Osama Abu Irshaid is, on information and belief, a resident of Virginia and regularly conducts business in Illinois and this Judicial District. As alleged herein, the Individual Defendants currently manage and control the operations of Defendants AMP and AJP, previously managed

4

and controlled one or more of the *Boim* Defendants, and were directly involved in the conduct that gave rise to the *Boim* Judgment.

## GENERAL ALLEGATIONS

12.     Stanley and Joyce Boim's seventeen-year old son David was murdered by Hamas terrorists at a bus stop in Israel in 1996.  He was standing with a group of classmates on their way to Jerusalem to attend a review class in preparation for their matriculation exams.  A car drove up opposite the boys and a gunman shot at the group, hitting David in the head.  David died the next day.  The Boims filed suit in 2000 in this Court under the civil remedies provision of the federal Anti-Terrorism Act, 18 U.S.C. §2333.  The defendants included individuals and organizations in the United States that provided material support to Hamas in violation of 18 U.S.C. §2339A.  They included, inter alia, *Boim* Defendants HLF, AMS, IAP and the United Association for Studies and Research ("UASR").

13.      In the early 1980's the International Muslim Brotherhood created The Palestine Committee in the United States to raise money and conduct propaganda operations.  The Palestine Committee established three entities to carry out this mission—IAP, UASR and the Occupied Land Fund (which subsequently renamed itself "the Holy Land Foundation").

14.     The Palestinian branch of the International Muslim Brotherhood became Hamas in 1987 during the Palestinian uprising against Israel known as the First Intifada.  The Hamas charter called for annihilation of Israel through jihad (i.e. holy war) and sought to establish an Islamic state in place of Israel.  Jihad includes violent activities.  The International Muslim Brotherhood directed its Palestinian Committees throughout the world, including in the United States, to aid Hamas.  *See* Order, *United States v. Holy Land Foundation*, No. 04-CR-00240 (N.D. Tex. May 24, 2010) [Dkt. 1447].  The Palestine Committee in the United States undertook

5

to comply with the International Muslim Brotherhood's mandate through its front organizations, including *Boim* Defendants HLF, IAP, UASR and (later) AMS.

15. An entity or group of persons and entities operating under the name "Islamic Association for Palestine" (collectively, "IAP National") has operated continuously in the United States since the early 1980s. The initial Islamic Association for Palestine ("IAP Illinois") was founded in 1981 by Aly Mishal at the direction of Khaled Mishal, then a senior member of the Muslim Brotherhood in Gaza and from 2004 until May 2017 the leader of Hamas. In 1983, Mousa Abu Marzook, who is currently and has for many years been a senior leader of Hamas, was tasked by the Muslim Brotherhood to help found IAP. Marzook transferred $150,000 to both IAP and HLF. IAP National acted as an umbrella organization that encompassed various organizations throughout the country that called themselves "Islamic Association for Palestine," including: IAP Illinois; the Islamic Association for Palestine formed in California in 1986 by Ghassan Elashi ("IAP California"); AMS (American Muslim Society) formed by Rafeeq Jaber in Illinois in 1993; American Middle East League for Palestine formed in Texas in 1990 by Yasser K. Saleh Bushnaq ("AMELP"); and IAP Texas formed by Basman Elashi in 1993. Each of these organizations assumed a primary position in the IAP network depending on the location of the individual who was designated as the leader of IAP at that time.

16. IAP National acted as the primary voice and propaganda arm for Hamas in the United States. Among other activities, it issued Hamas press releases and communiqués and published the Hamas charter, which explicitly called for the destruction of Israel and the murder of Jews. IAP National also organized annual conventions and meetings, which were regularly addressed by members of Hamas brought from the Middle East. IAP National functioned as a major fund-raiser and financier for the network of front organizations supporting Hamas'

6

terrorist activities.  IAP also published Arabic-language newspapers directed to the Palestinian population in the United States advocating Hamas doctrines.

17.     In all its efforts and activities, IAP had the distinct function of linking support for the Palestinian cause and members of the Palestinian diaspora to the Islamic wave that was sweeping the Muslim world.  For example, in 1988 Abdullah Azzam, who founded al-Qaeda with Osama bin Laden, was the featured speaker at the annual IAP conference.  Azzam made an impassioned plea at the conference to donate funds to Hamas and referred explicitly to Sheikh Ahmed Yassin, the terror group' spiritual leader in Gaza.  In line with Hamas' political program, IAP has never supported a solution to the Palestinian problem that would include the continued existence of the State of Israel.

18.     *Boim* Defendant AMS was incorporated in Illinois in 1993.  In 1994, AMS applied for the name of "Islamic Association for Palestine in Chicago."  Prior to its incorporation, AMS's principals acted as the local chapter of IAP National.  During the *Boim* litigation, AMS was both the Chicago branch and the national office of IAP National, and it was the primary voice for Hamas in the United States.  AMS stated that its purpose was "to promote the cause of Palestine in America."

19.     *Boim* Defendant HLF, formerly the Occupied Land Fund, was founded in California in 1987 with funds supplied by Mousa abu Marzook.  HLF acted as the direct financial conduit to Hamas institutions and was referred to by its leaders as "the Fund."  HLF claimed to be the largest Islamic charity in North America and declared that it was dedicated to the cause of social welfare in Palestine.  IAP National and HLF were intimately involved with each other since the latter's inception and shared key personnel.

20.     *Boim* Defendant UASR was created by Marzook in Illinois in 1989 as an affiliate of HLF, IAP and AMS.  UASR purported to be a think-tank conducting research on Mid-Eastern and Islamic topics.  It functioned as the political command center for Hamas in the United States.

21.     Marzook was expelled from the United States in 1997.  He is listed by the U.S. Department of the Treasury as a "Specially Designated Terrorist."  Marzook is now the deputy head of Hamas.

## THE *BOIM* DEFENDANTS ARE JUDGED LIABLE TO PLAINTIFFS

22.     On November 10, 2004, the United States District Court for the Northern District of Illinois entered summary judgment in favor of the Boims and against *Boim* Defendants IAP, AMS and HLF, reserving the issue of damages for a subsequent jury trial.  *Boim v. Quranic Literacy Institute*, 340 F. Supp. 2d 885 (N.D. Ill. 2004).  On December 8, 2004, a jury awarded damages of $52 million.  Pursuant to the Anti-Terrorism Act, the judgment was trebled and entered in the amount of $156 million.

23.     Throughout the suit, in both the trial and appellate courts, IAP, AMS and HLF claimed to be nothing more than charitable and educational institutions promoting the welfare of Palestinians and educating the American public about the Palestinian cause.  The United States Court of Appeals for the Seventh Circuit, sitting *en banc*, rejected that assertion in a landmark ruling governing civil liability under the Anti-Terrorism Act.  The Court held that a defendant that provides material support to a terrorist organization such as Hamas—even to its social or charitable wing—with knowledge that the organization engages in terrorism is, as a matter of law, a cause of the organization's terrorist activity and liable for damages under 18 U.S.C. § 2333.  *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 698-99 (7th Cir. 2008) (*en banc*) ("Anyone who knowingly contributes to the nonviolent wing of an organization that he knows to engage in terrorism is knowingly contributing to the organization's terrorist activities").

8

24.     AMS and IAP were held to have acted as an instrument of Hamas, the terrorist organization found to have murdered David Boim.  The defense that the individual and organizational defendants were mere advocates and benign donors was rejected.

25.     The Court of Appeals for the Seventh Circuit affirmed the judgment against AMS and IAP in 2008.  It held that AMS and IAP funneled funds to Hamas using HLF as a conduit. 549 F.3d at 701.

26.     The Court of Appeals vacated the judgment against HLF and remanded for further proceedings on an issue that did not affect HLF's ultimate liability.  549 F.3d at 701.  On remand, the District Court found that HLF had funded Hamas and entered judgment against HLF for the same $156 million.  2012 U.S. Dist. LEXIS 126063 (Doc. # 883).  That judgment was not appealed and is now final.

27.     On February 25, 2005, a default judgment was entered against UASR.

28.     The Boims registered their judgments against these defendants in this Court. Those judgments remain valid and subject to enforcement.  The Boims are concurrently filing a petition to revive the *Boim* Judgment against AMS and IAP pursuant to 735 ILCS 5/2-1602.  The *Boim* Judgment against HLF was entered less than seven years ago and remains fully enforceable without revival.

## THE *BOIM* DEFENDANTS CLAIM THEY

## HAVE NO FUNDS TO PAYTHE JUDGMENTS

29.     Plaintiffs have had very limited success in collecting on the judgments against IAP, AMS, HLF and the other *Boim* Defendants.  In a March 2005 deposition taken pursuant to a citation to discover assets, Rafeeq Jaber, then president of IAP National and an officer of AMS,

9

claimed that both of those organizations were essentially defunct as a result of the expense of the litigation and judgment in the *Boim* Action.

30.     In 2004 HLF and its principals were indicted.  In 2008 they were convicted of violating the anti-terrorism laws.  On information and belief, numerous HLF-affiliated individuals provided assistance to or material support of Hamas.  As demonstrated below, certain of these individuals have been directly involved in AMP and AJP's activities.

31.     In a comprehensive 96-page opinion, the United States Court of Appeals for the Fifth Circuit upheld the convictions.  *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011). By the time of the Fifth Circuit's decision, HLF claimed that it had ceased to function as a distinct organization.

## HLF CONTINUES UNDER A NEW NAME

32.     In January 2002, while HLF's leaders were being investigated by the government and after HLF's assets had been seized, HLF's leaders helped launch and were active in a new organization—the Ohio-based KindHearts for Charitable Relief and Development ("KindHearts").  KindHearts shared employees, donors, and fundraisers with HLF and IAP. KindHearts also shared an overseas bank account with HLF.  IAP engaged in fund raising for KindHearts.

33.     On February 19, 2006, the United States Treasury Department invoked a "Block Pending Investigation" and froze the assets of KindHearts, stating that the organization was the "progeny" of HLF, and that it provided "support for terrorism behind the façade of charitable giving."  KindHearts disbanded in 2011.

66232798v.7

## AMP AND AJP ARE ESTABLISHED AS ALTER EGOS AND/OR SUCCESSORS
## TO CONTINUE THE BUSINESS OF THE *BOIM* DEFENDANTS

34.     Contrary to outward appearances and false assertions that they are currently defunct and have no assets, HLF, AMS, and IAP remain in business today through their successors and alter egos, AMP (American Muslims for Palestine) and AJP (Americans for Justice in Palestine Educational Foundation).  These purportedly new entities were created by individuals—including the Individual Defendants—who had previously managed and controlled *Boim* Defendants HLF, AMS, and IAP for the purpose of continuing the work that had been conducted by these organizations.

35.     AMP claims that it was established as a "voluntary organization" in Palos Hills, Illinois in 2005 by IAP and KindHearts activists, shortly after the *Boim* Judgment was entered against IAP, AMS and HLF.  While KindHearts was being investigated and after its funds were frozen, individuals affiliated with KindHearts and IAP opened the national office for AMP in 2008 at 10101 South Roberts Road, Palos Hills, Illinois.  AMP's offices are down the street from the former offices of AMS and IAP, which continue to be used as the business address of Individual Defendant Rafeeq Jaber.  AMP claims on its website that it is "all about educating people about Palestine," thus continuing the purported purposes of AMS, IAP and HLF.

36.     In 2009, AMP leaders established AJP as a tax-exempt, 501(c)(3) organization run by former leaders of IAP.  AJP acts as the financial supporter of AMP and receives donations on behalf of AMP.  The leadership of AMP and AJP are essentially identical.  Many of the most significant donors and fundraisers for AJP were donors to IAP, HLF and KindHearts.

37.     The current management and donors of AMP and AJP are substantially identical to the management and donors of their alter egos and predecessors, HLF, IAP and AMS.  This

66232798v.7

overlap demonstrates that AMP and AJP are re-incarnations, alter egos and successors of HLF, IAP and AMS:

38.     The Mosque Foundation.    The Mosque Foundation in Bridgeview, Illinois, the charitable arm of the Bridgeview Mosque, together with its individual leaders, is a significant supporter and funder of AMP and AJP.  The Mosque Foundation has a history of donating and directing money to terrorist organizations.  It previously donated significant funds to HLF and KindHearts, which directed money to Hamas, and Benevolence International Foundation and Global Relief Foundation, each of which sent money to al-Qaeda.  The Mosque Foundation's leader, Sheikh Jamal Said, has been identified by the government as a member of the Palestine Committee and its affiliates.  Sheikh Said was also identified in 1993 as Treasurer and a member of the Board of Trustees of the Al-Aqsa Educational Fund, Inc., a funder of Hamas based in Oxford, Mississippi, which was designated by the U.S. Department of the Treasury as a Specially Designated Global Terrorist Entity.  Jamal Said regularly spoke at IAP events and has been a frequent speaker at AMP conferences.  Muhammad Salah, another *Boim* Defendant, who, in a separate case, was convicted and imprisoned for obstruction of justice in the *Boim* Action, stated that Jamal Said was instrumental in recruiting him into Hamas.  As demonstrated below, leaders of AMP and AJP hold prominent positions in the Mosque Foundation and its affiliates.

39.     Rafeeq Jaber.    Individual Defendant Jaber was an organizer of AJP and currently prepares its tax forms.  Jaber was the former president and principal spokesman for AMS and IAP in the Chicago area and was President of IAP National.  He is currently President of the Board of Directors of the Bridgeview Mosque.  His business, Jaber Financial Services, which is located in the former offices of AMS and IAP, is a donor to AMP.  In 2015, Jaber signed a

12

petition designating himself as a representative of AMP. Jaber is the *eminence grise* of Chicago area organizations that support Hamas terrorism.

40. <u>Abdelbasset Hamayel</u>. AMP has identified Individual Defendant Hamayel as its Executive Director. He is also AJP's registered agent and head of the Mosque Foundation Community Center. Hamayel was the Director and Secretary General of IAP and the former Wisconsin and Illinois representative for KindHearts. In a 2003 deposition, Rafeeq Jaber, then President of IAP, testified that Hamayel was responsible for producing AMS and IAP's "action letters … newsletters … (and) bulletins. …" Jaber described Hamayel as "[t]he employee that works for us, the executive director, the secretary. He is everything."

41. <u>Osama Abu Irshaid</u>. Individual Defendant Irshaid is an AMP board member and National Political Coordinator. Irshaid was the editor of IAP's newspaper, *Al-Zaytounah*, operating from Washington, D.C. According to Jaber, Irshaid was "from IAP National which is … Chicago [and] in charge of everything from A to Z in the paper, what comes on the paper and what goes into the paper." Irshaid's salary was paid by AMS. Irshaid currently publishes a similar newspaper, *Al-Meezan,* from a location in Virginia. Among the regular features in *Al-Meezan* is an advertisement for a blog written from prison by Shukri abu Baker, the former President of HLF. In August 2015, the United States Citizenship and Immigration Services ruled that Abu Irshaid is currently ineligible for naturalization because of his failure to disclose his connections with IAP. In reaching that decision, USCIS made specific reference to the *Boim* Action and the role of IAP in funding international terrorism. According to a document filed by AMS with the Illinois Attorney General, Jaber, Hamayel and Irshaid were its three highest paid persons in 2000 and 2001. AMS could not and did not operate independently from Jaber, Hamayel and Irshaid. Jaber, Hamayel and Irshaid were the heart of AMS and they directed and

controlled AMS. AMS was created and operated to carry out their agenda in accordance with their directives. Any independent existence was in form only.

42. <u>Hatem Bazian</u>. Bazian is the Chairman of AMP and AJP, which he helped found in 2005 and 2010, respectively. He spoke at the 2001 IAP conference. In 2004 he was a featured speaker at a fundraiser for KindHearts together with Mohammed el-Mezain, a leader of HLF who is now in prison for providing money to Hamas. Bazian is a regular speaker at AMP conferences. In 2014, Bazian spoke at a fundraiser in the United Kingdom for Interpal, an organization that was designated by the United States Treasury in 2003 as a Specially Designated Global Terrorist because of its affiliation with Hamas.

43. <u>Salah Sarsour</u>. Sarsour was a financial bundler for IAP. He was imprisoned in Israel in 1995 for activities on behalf of Hamas. His furniture business in Wisconsin passed money to a known Hamas member. Sarsour is currently a board member and important fundraiser for AMP. He was chairman of the 2014 and 2015 AMP conference committees. His business is a donor to AMP and AJP.

44. <u>Hussein al-Khatib</u>. Al-Khatib was a Regional Director for HLF and is now an AMP board member. Al Khatib was identified by the government as part of the Hamas social infrastructure in Israel and the Palestinian Territories.

45. <u>Kifah Mustapha</u>. Until 2015, Mustapha was the co-Imam of the Bridgeview Mosque, and from 2002 to 2014, he was the associate director of the Mosque Foundation. Mustapha was the Illinois representative of HLF and was its registered agent in this State. As its registered agent, Mustapha described his role as "soliciting money for the various programs HLF" held in Illinois and elsewhere, including internationally. Mustapha spoke at the 2001 IAP convention and now regularly speaks at AMP conferences. He has filmed promotional videos

14

for AMP. Mustapha was identified by the government as a member of the Palestine Committee or one of its related organizations. In 2010, he filed suit against the Illinois State Police claiming wrongful discharge after he was terminated as its first Muslim chaplain. *Mustapha v. Monken*, 1:10-cv-05473 (N.D. Ill.). Judge Guzman granted summary judgment to defendants in the lawsuit, finding that the discharge was lawful in view of Mustapha's close connection to HLF, a designated terrorist organization. *Mustapha v. Monken*, No. 10-cv-05473, 2013 WL 3224440, *10 (N.D. Ill. June 25, 2013).

46.    <u>Sufian Nabhan</u>. Nabhan is an AMP board member. He was IAP's former Michigan representative.

47.    Among the most significant activities of IAP and AMS was an annual conference most commonly held each November. The IAP conferences were a major gathering featuring prominent speakers who were known to be closely identified with Hamas. The speakers included actual leaders and fighters sent by Hamas from Gaza and the West Bank to address and motivate the audience. IAP invested significant time, effort and funds in preparing and conducting these conferences.

48.    After AMS and IAP purportedly went out of business, the conferences continued under AMP's auspices. Beginning in 2006, the IAP Annual Conference became the AMP Annual Conference. The audience, content, management, speakers, and their message, remained the same under the AMP imprimatur as it had been under IAP. Speakers at the inaugural 2006 AMP Annual Conference included Rafeeq Jaber, Kifah Mustapha and Osama Abu Irshaid, as well as Raed Tayeh, a former member of IAP. Each of these speakers was formerly affiliated with UASR.

49.     A featured speaker at the 2007 AMP Conference was Sheikh Mohammad Al Hanooti, another member of the U.S.-based Hamas Palestine Committee.  Sheikh Hanooti was a former President of IAP.   A featured speaker at the 2014 AMP Annual Conference was Sabri Samirah, the former Chairman of IAP.   Certain former leaders of HLF who frequently spoke at IAP Conferences are now in prison, but members of their families have regularly appeared at AMP Annual Conferences.

50.     AMP and AJP claim not to send or receive money to or from overseas.  Mindful of past experiences of their purported predecessor entities and concerned over government scrutiny and legal risk, AMP invited participants at its 2014 conference to "come and navigate the fine line between legal activism and material support for terrorism."

51.     This lawsuit is not directed at the content of AMP or AJP's message, what is said on their websites, or at the individuals who attend its conferences.  Their message and the manner in which the message is delivered are, however, identical to the message of HLF, IAP and AMS.  This identity is evidence that AMP and AJP are the alter egos and successors to the material supporters of terrorism against whom the Boims have a valid outstanding judgment.

52.     From the very outset, HLF, IAP and AMS worked in tandem to support Hamas. *See Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d at 909.  The interrelationship between the organizers and donors of *Boim* Defendants HLF, IAP and AMS, and the current beneficiaries of their largess and efforts—Defendants AMP and AJP—is no coincidence.  It is the continued implementation of a plan initiated over thirty-five years ago by Khalid Mishal and Mousa abu Marzook to support Hamas in the United States by whatever available means can be devised to skirt the laws of the United Sates and law enforcement.

16

## DEFENDANTS ARE LIABLE FOR THE *BOIM* JUDGMENT

53.     Defendants AMP and AJP are the alter egos and successors of *Boim* Defendants IAP, AMS and HLF.  As set forth herein, Defendants are controlled and operated by the former leaders of these *Boim* Defendants.  AMP was headquartered on the same street as AMS and IAP and established by the officers and leaders of IAP, AMS and HLF; AMP and AJP continue the same enterprise, mission and activities as the *Boim* Defendants.  The assets and donors to the *Boim* Defendants were, on information and belief, directly transferred to or commingled with AMP and AJP's assets.

54.     IAP, AMS and HLF were abandoned and replaced by AMP and AJP in order to permit the same ongoing enterprise—formerly conducted through the *Boim* Defendants—to continue free and clear of the burden of paying the *Boim* Judgment. AMP was established in 2005 at almost exactly  the same time as summary judgment was entered in favor of the Boims in late 2004.  AMP and AJP *are* IAP, AMS and HLF but just by a different name.  These *Boim* Defendants were dissolved following the judgments obtained in this case.   They were reestablished by the same officers and leaders just as quickly and with the same stated goals but with new names.  As such, AMP and AJP—IAP, AMS and HLF's successor organizations and alter egos—have such a "unity of interest" and leadership with these *Boim* Defendants that their independence and separate existence is a legal fiction that should not be upheld by a court.  The continuity of the enterprise, management and control in the new entities make them legal successors and alter egos of *Boim* Defendants IAP, AMS and HLF.

55.     The Individual Defendants are also the alter egos of IAP, AMS and HLF.  The Individual Defendants controlled these entities and used them as a front to advance their personal objectives.  In the guise of acting on behalf of the entities, the Individual Defendants also directly participated in the conduct giving rise to the *Boim* Judgment.  Now they control the successors—

AMP and AJP—and use them as a front to continue the same types of personal objectives they previously sought to achieve through IAP, AMS and HLF. The Individual Defendants have such a unity of interest with, and exercised such dominion and control over, IAP, AMS and HLF (and their alter egos and successors) that the legal fiction of their independence and separate existence should not be upheld by the Court.

56. Allowing Defendants to escape liability based on the fiction of their separate legal existence would enable *Boim* Defendants IAP, AMS, and HLF, and the Individual Defendants to shield and transfer assets, and continue with their same enterprise and mission, after the *Boim* Defendants were held to be material supporters of international terrorism. The *Boim* Defendants and the Individual Defendants should not be allowed to escape liability simply by creating two new legal entities that are in every way identical to IAP, AMS and HLF except for their names, and thereby shift their ongoing mission, operations, activities and assets to those purported new entities.

57. The ATA provides a comprehensive scheme of criminal and civil liability aimed at eradiating support for international terrorism. The material support provisions of the ATA have been described by the Supreme Court as a "preventive measure – it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010). Allowing the Boim Defendants—each of which has been found liable as a "material supporter[] of international terrorism"—and their leaders to walk down the street and continue to operate without paying their victims would send a message that this important statute, implicating a uniquely federal interest, can be ignored. The effective criminal and civil enforcement mechanisms of the ATA will be thwarted if "fronts" for

people and enterprises that support terrorism can avoid liability merely by morphing into new entities not subject to prior ATA judgments.

58.     As alter egos and/or successors of *Boim* Defendants IAP, AMS and HLF, AMP, AJP and the Individual Defendants are effectively the same entity or person as these *Boim* Defendants and are liable to Plaintiffs under 18 U.S.C. § 2333(a) for the unpaid portion of the *Boim* Judgment. This Court should direct AMP, AJP and the Individual Defendants to satisfy the *Boim* Judgments and thereby achieve the objectives and purposes of the ATA.

## COUNT I
## DECLARATORY JUDGMENT AGAINST DEFENDANT
## AMERICAN MUSLIMS FOR PALESTINE (AMP)

59.     Plaintiffs repeat and reallege paragraphs 1-58 above as if fully set forth herein.

60.      Defendant AMP purports to be an organization apart and distinct from *Boim* Defendants Holy Land Foundation for Relief and Development (HLF), the Islamic Association for Palestine (IAP), and the American Muslim Society (AMS).  On information and belief, AMP will contend that it is not liable for any portion of the *Boim* Judgment.

61.     AMP is in fact and as a matter of law the alter ego and/or successor in interest of the aforementioned purportedly defunct organizations.

62.      There is a substantial and continuing controversy between Plaintiffs and AMP. A declaration of rights is both necessary and appropriate to establish that AMP is the alter ego and successor of HLF, IAP and AMS and that AMP is therefore liable to Plaintiffs for the unpaid amount of the *Boim* Judgment.

WHEREFORE Stanley Boim, individually and as administrator of the estate of David Boim, deceased, and Joyce Boim respectfully request the Court to enter judgment in favor of Plaintiffs and against Defendant American Muslims for Palestine on Count I herein as follows:

A.  Declare that the *Boim* Judgment against Islamic Association for Palestine and American Muslim Society entered in 2004 and affirmed in 2008 is currently valid and enforceable;

B.  Declare that the *Boim* Judgment against the Holy Land Foundation for Relief and Development entered in 2012 is currently valid and enforceable;

C.  Declare that American Muslims for Palestine is the alter ego and successor of the Islamic Association for Palestine, American Muslim Society, and the Holy Land Foundation for Relief and Development;

D.  Declare that American Muslims for Palestine is fully liable for any unpaid amount of the *Boim* Judgment; and

E.  Award Plaintiffs such other relief as the Court deems just and proper under the circumstances.

## COUNT II
## DECLARATORY RELIEF AGAINST DEFENDANT
## AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION (AJP)

63.  Plaintiffs repeat and reallege paragraphs 1-58 above as if fully set forth herein.

64.  Defendant AJP purports to be an organization apart and distinct from *Boim* Defendants Holy Land Foundation for Relief and Development (HLF), the Islamic Association for Palestine (IAP), and the American Muslim Society (AMS).  On information and belief, AJP will contend that it is not liable for any portion of the *Boim* Judgment.

65.  Defendant AJP is in fact and as a matter of law the alter ego and/or successor in interest of the aforementioned purportedly defunct organizations.

66.  There is a substantial and continuing controversy between Plaintiffs and Defendant AJP.  A declaration of rights is both necessary and appropriate to establish that AJP is

20

the alter ego and successor of HLF, IAP and AMS and that AJP is therefore liable to Plaintiffs for the unpaid amount of the *Boim* Judgment.

WHEREFORE Stanley Boim, individually and as administrator of the estate of David Boim, deceased, and Joyce Boim respectfully request the Court to enter judgment in favor of Plaintiffs and against Defendant Americans for Justice in Palestine Educational Foundation on Count II herein as follows:

A.     Declare that the *Boim* Judgment against Islamic Association for Palestine and American Muslim Society entered in 2004 and affirmed in 2008 is currently valid and enforceable;

B.     Declare that the *Boim* Judgment against the Holy Land Foundation for Relief and Development entered in 2012 is currently valid and enforceable;

C.     Declare that Americans for Justice in Palestine Educational Foundation is the alter ego and successor of the Islamic Association for Palestine, American Muslim Society, and the Holy Land Foundation for Relief and Development;

D.     Declare that Americans for Justice in Palestine Educational Foundation is fully liable for any unpaid amount of the *Boim* Judgment; and

E.     Award Plaintiffs such other relief as the Court deems just and proper under the circumstances.

## COUNT III
## DECLARATORY RELIEF AGAINST THE INDIVIDUAL DEFENDANTS

67.     Plaintiffs repeat and reallege paragraphs 1-58 as if fully set forth herein.

68.     The Individual Defendants Rafeeq Jaber, Abdelbasset Hamayel, and Osama Abu Irshaid purport to be individual persons apart and distinct from *Boim* Defendants Holy Land Foundation for Relief and Development (HLF), the Islamic Association for Palestine (IAP), and

21

the American Muslim Society (AMS).  On information and belief, the Individual Defendants will contend that they are not liable for any portion of the *Boim* Judgment.

69.     The Individual Defendants are in fact and as a matter of law the alter egos of the aforementioned purportedly defunct organizations and participated directly in the conduct giving rise to the *Boim* Judgment.

70.     There is a substantial and continuing controversy between Plaintiffs and the Individual Defendants.  A declaration of rights is both necessary and appropriate to establish that each Individual Defendant is the alter ego of HLF, IAP and AMS and participated directly in the conduct giving rise to the *Boim* Judgment, and that each Individual Defendant is therefore liable to Plaintiffs for the unpaid amount of the *Boim* Judgment.

WHEREFORE Stanley Boim, individually and as administrator of the estate of David Boim, deceased, and Joyce Boim respectfully request the Court to enter judgment in favor of Plaintiffs and against each of Individual Defendants Rafeeq Jaber, Abdelbasset Hamayel, and Osama Abu Irshaid on Count III herein as follows:

A.      Declare that the *Boim* Judgment against Islamic Association for Palestine and American Muslim Society entered in 2004 and affirmed in 2008 is currently valid and enforceable;

B.      Declare that the *Boim* Judgment against the Holy Land Foundation for Relief and Development entered in 2012 is currently valid and enforceable;

C.      Declare that each of Individual Defendants Rafeeq Jaber, Abdelbasset Hamayel, and Osama Abu Irshaid is the alter ego of the Islamic Association for Palestine, American Muslim Society, and the Holy Land Foundation for Relief and

22

Development and that each of these Individual Defendants directly participated in the conduct giving rise to the *Boim* Judgment;

D.      Declare that each of Individual Defendants Rafeeq Jaber, Abdelbasset Hamayel, and Osama Abu Irshaid is fully liable for any unpaid amount of the *Boim* Judgment; and

E.      Award Plaintiffs such other relief as the Court deems just and proper under the circumstances.

<u>COUNT IV</u>
**ENTRY OF MONEY JUDGMENT**

71.     Plaintiffs repeat and reallege paragraphs 1-58 as if fully set forth herein.

72.     The *Boim* Judgment is a final, non-appealable and currently fully enforceable judgment against Holy Land Foundation for Relief and Development (HLF), the Islamic Association for Palestine (IAP), and the American Muslim Society (AMS).  To date, the *Boim* Judgment remains only partially satisfied.

73.     As alter egos and/or successors of *Boim* Defendants HLF, IAP and AMS, each of Defendants is jointly and severally liable for the full amount of the unsatisfied portion of the *Boim* Judgment.

74.     The Individual Defendants were also direct participants in the conduct giving rise to the *Boim* Judgment and each is therefore jointly and severally liable for the full amount of the unsatisfied portion of the Boim Judgment.

WHEREFORE Stanley Boim, individually and as administrator of the estate of David Boim, deceased, and Joyce Boim respectfully request the Court to enter judgment in favor of Plaintiffs and against each of the Defendants on Count IV herein as follows:

23

A.   Enter Judgment in the full amount of the *Boim* Judgment, to the extent not yet paid, against each of the Defendants, jointly and severally; and

B.   Award Plaintiffs such other relief as the Court deems just and proper under the circumstances.

## COUNT V
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

75.   Plaintiffs repeat and reallege paragraphs 1-58 above as if fully set forth herein.

76.   This Court has already entered judgment against the *Boim* Defendants and in favor of Plaintiffs.

77.   There is a strong likelihood that Plaintiffs will succeed on the merits of their claims that (i) Defendants are alter egos and/or successors of certain of the *Boim* Defendants and are therefore liable for the unsatisfied portion of the *Boim* Judgment; and (ii) the Individual Defendants were direct participants in the conduct giving rise to the *Boim* Judgment and are therefore liable for the unpaid portion of the *Boim* Judgment.

78.   After this Complaint has been filed, Defendants are likely to dissipate, transfer or otherwise move their assets beyond Plaintiffs' reach.  The original *Boim* Defendants did exactly that by forming new entities, continuing their operations through those entities, and claiming that the *Boim* Defendants were defunct and lacked assets to pay the *Boim* Judgment.

79.   Without injunctive relief to prevent improper dissipation or transfer of assets, there is a significant likelihood that Defendants will continue this practice and Plaintiffs will be unable to collect the *Boim* Judgment from Defendants.  For example, on information and belief, substantial assets held by AMP and AJP are cash donations and intra-company transfers.  If those cash assets are dissipated, Plaintiffs will be unable to recover their judgment from the alter egos

24

and successors of the *Boim* Defendants. Plaintiffs will thereby suffer irreparable harm for which there is no adequate remedy at law.

80. The balance of the equities favors entry of appropriate injunctive relief to prevent Defendants from improperly dissipating or transferring their assets pending the resolution of Plaintiffs' claims. Defendants AMP and AJP were created to continue the enterprise and operations of the *Boim* Defendants, without the burden of having to pay the *Boim* Judgment. The Individual Defendants controlled certain of the *Boim* Defendants and used these entities to further their own personal objectives and shield them from liability. The Individual Defendants also directly participated in the conduct that gave rise to the *Boim* Judgment.

81. Permitting Defendants to transfer or dissipate their assets would hinder Plaintiffs' efforts to collect the judgment and would create a significant burden for Plaintiffs. This burden outweighs any burden on Defendants that would result from an order preventing dissipation and transfer of assets.

82. There is a strong public interest in preventing organizations that have provided financial support to terrorist groups from escaping liability for the consequences of terrorist acts carried out by those groups merely by dissolving legal entities and replacing them with new legal entities.

WHEREFORE Stanley Boim, individually and as administrator of the estate of David Boim, deceased, and Joyce Boim respectfully request the Court to enter judgment in favor of Plaintiffs and against Defendants on the Fifth Claim herein as follows:

A. Grant preliminary and permanent injunctive relief preventing Defendants from dissipating or transferring assets in their possession, custody or control until such time as this Court resolves Defendants' liability for the *Boim* Judgment; and

66232798v.7

B.      Award Plaintiffs such other relief as the Court deems just and proper under the

circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated:  May 12, 2017                         Respectfully submitted,

_____

Stephen J. Landes
Daniel I. Schlessinger
W. Allen Woolley
Michael B. Kind
Joshua Fliegel
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL  60606
(312) 201-2772

*Attorneys for Stanley Boim, Individually and as the*
*Administrator of the Estate of David Boim,*
*Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac* application being filed)
Alyza D. Lewin (*pro hac* application being filed)
LEWIN & LEWIN LLP
888 17th Street NW
4th Floor
Washington, DC 20006
(202) 828-1000

26

66232798v.7