UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY BOIM, et al.,

    Plaintiffs

v.

AMERICAN MUSLIMS FOR PALESTINE, et al,

    Defendants.

CASE NO. 1:17-CV-03591

Honorable Sharon Johnson Coleman

## OPPOSITION TO PLAINTIFFS' MOTION FOR REASSIGNMENT

Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJPEF"), Rafeeq Jaber ("Jabeer"), Abdelbasset Hamayel ("Hamayel"), and Osama Abu Irshaid (Irshaid) (collectively, "current Defendants") hereby file this Opposition to Plaintiffs' Motion to Transfer, based on this Court not yet having made a determination as to its subject matter jurisdiction, and for the further reasons set forth below.

### I. Relevant Procedural History

Majority of Plaintiffs' Complaint in this matter (Dckt. 1) focuses on prior litigation filed more than fifteen years ago, against different defendants, where Plaintiffs obtained a judgment against Holy Land Foundation ("HLF"), the American Muslim Society ("AMS"), the United Association for Studies and Research ("UASR"), and Islamic Association for Palestine ("IAP"), among others (collectively, the "judgment defendants"). In 2000, the parents of Stanley Boim (Plaintiffs) initiated that lawsuit after their son was killed by members of Hamas ("the 2000 lawsuit"). They received a judgment of $156 million in 2004, which was affirmed in 2008. *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 688 (7th Cir. 2008).

1

On May 12, 2017, Plaintiffs initiated the instant suit against the current Defendants. None of the current Defendants was a party to the 2000 lawsuit. Nonetheless, Plaintiffs seek to enforce the judgment from the 2000 lawsuit against the current Defendants. Plaintiffs argue that the current Defendants are liable as successor corporations and under the theory of alter ego, for the judgment from the 2000 lawsuit against the judgment defendants.

Also on May 12, 2017, Plaintiffs moved to revive the judgment in the 2000 lawsuit, and sought to join the current Defendants in the 2000 lawsuit, as well as obtain service on the current Defendants by publication. In the filings in the 2000 lawsuit, Magistrate Judge Cole denied the request for service by publication in his Order dated May 18, 2017, finding that there had been no indication of evading service by current Defendants, and that the Court "ought not to attempt exercises in clairvoyance." (Dckt. 908 in Cause 1:00-cv-02905.) Current Defendants have neither been served nor appeared at any time in the 2000 lawsuit.

## II.     Plaintiffs' Motion for Reassignment

Plaintiffs filed their Motion for Reassignment (Dckt. 15) on May 26, 2017, set for hearing on June 6, 2017. Plaintiff filed this Motion in both the 2000 lawsuit they are seeking to re-open and in which none of the current Defendants has been served or appeared, and in this Court under the instant matter.[1] Plaintiffs assert, despite the complete disparity of defendants and claims, and more than a decade between filings, that the two suits "are intended to work in tandem", "rely on the same facts and evidence" and "implicate the same issues" and are therefore "indisputably related." (Dckt. 15 at 2.) Defendants dispute all of these assertions.

---

[1] Magistrate Judge Cole ruled in a Minute Order on May 23, 2017, after being informed by Plaintiffs' counsel of the upcoming Motion for Reassignment, that "I am taking no action" on the matter and "the district court will resolve as she thinks best." (Dckt. 910 in Cause 1:00-cv-02905.)

2

### III. Relevant Legal Authorities

**A. This Court Does Not Have Subject Matter Jurisdiction Over the Claims Asserted**

Plaintiffs' Motion for Reassignment (Dckt. 15) puts the cart before the horse, asking this Court to transfer a case for which Defendants have not yet had an opportunity to answer and for which subject matter jurisdiction has not yet been established. Defendants object to reassignment because Defendants assert that this Court lacks subject matter jurisdiction over Plaintiffs' claims, and this Court has not yet considered whether Plaintiffs' claims fall within this Court's jurisdiction.

The Plaintiffs seek to hold the Defendants liable under independent, or, in the alternative, ancillary theories of successor liability and alter ego for damages obtained against the original judgment defendants under the Anti-Terrorism Act. The Anti-Terrorism Act does not provide for alter ego and successor liability. Therefore, this Court's jurisdiction must come from its general powers, in order to enforce the debts of the 2000 action.

The United States Supreme Court addressed the question of whether third parties may be liable under theories of piercing the corporate veil and alter ego in *Peacock v. Thomas*. 516 U.S. 349, 354, 116 S.Ct. 862, 868, 133 L.Ed.2d 817 (1996). In *Peacock*, plaintiff Jack Thomas sought to impose a judgment under ERISA claims regarding administration of a pension plan against Grant Peacock, an officer and shareholder of the liable corporation, who had not been named in the original suit. *Id*. The Supreme Court reversed lower court decisions permitting the action, and held there was no independent subject matter jurisdiction over the plaintiff's new claims, brought under an alter ego theory attempting to establish liability, when the plaintiff had been unable to collect his original judgment against the original corporate defendant, holding that "[p]iercing the corporate veil is not itself an independent … cause of action, "but rather is a means of imposing liability on an underlying cause of action.'" 516 U.S. at 354.

The Supreme Court likewise rejected the plaintiff's claims of ancillary jurisdiction on the theory of piercing the corporate veil and alter ego. In so doing, the *Peacock* court explained the proper limits of extending collection of prior judgments, as follows:

> Ancillary enforcement jurisdiction is, at its core, a creature of necessity. When a party has obtained a valid federal judgment, only extraordinary circumstances, if any, can justify ancillary jurisdiction over a subsequent suit like this. To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution. In the event a stay is entered pending appeal, the Rules require the district court to ensure that the judgment creditor's position is secured, ordinarily by a supersedeas bond. *The Rules cannot guarantee payment of every federal judgment.* But as long as they protect a judgment creditor's ability to execute on a judgment, the district court's authority is adequately preserved, and ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party.

*Peacock*, 516 U.S. at 359 (emphasis added). The Court found that ancillary jurisdiction under the theory of alter ego was an improper attempt "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock*, 116 S.Ct. at 868, citing *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910).

Applying the Supreme Court's controlling decision to the facts pled by Plaintiffs in this case, the pleadings are insufficient to demonstrate subject matter jurisdiction under either an independent or ancillary theory of liability. The current Defendants were not part of the original judgment. Thus, under *Peacock*, this Court facially lacks subject matter jurisdiction based on an independent cause of action against current Defendants.

Plaintiffs' allegation of ancillary subject matter jurisdiction in their Complaint is indistinguishable from the circumstances which the Supreme Court found insufficient to establish ancillary jurisdiction. The theory of liability alleged against current Defendants arises from the individual defendants' roles as officers and directors in one or more of the prior corporations, as well as the corporate defendants' alleged continuity and alleged receipt of funds in the form of donors and assets from the judgment defendants. Like *Peacock*, the alleged transfer and role of

4

the defendants occurred more than eight years prior to the present action, without objection at the time by Plaintiffs and without explanation as to why they were unable to prevent such transfers at the time of the original judgment, to secure payment in accordance with the Federal Rules of Civil Procedure. These are facts which the Supreme Court found are insufficient. Indeed, as was the case in *Peacock*, "[t]his is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [original] case." *Peacock*, 516 U.S. at 359. Under these circumstances, the Court held that ancillary jurisdiction could not exist. Accordingly, Plaintiffs' Complaint presents serious questions to this Court as to whether proper subject matter jurisdiction exists at all.[2]

Without reference to *Peacock*, Plaintiffs' Complaint asserts jurisdiction under *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1284 (7th Cir. 1996). Contrary to Plaintiffs' assertions that *Central States*' holding "recogniz[es] federal subject matter jurisdiction for enforcement action based on alter ego liability" (Plaintiff's Complaint, Dckt. 1 at 3), the Seventh Circuit held exactly the opposite. Recognizing *Peacock*'s limitations, the Seventh Circuit found there was subject matter jurisdiction on the facts before it because the plaintiff's claims were **not** claims of alter ego, and were instead claims that the new defendant was the "true employer" who committed the original violation, with control of the relevant actions at the time the violation first occurred:

> Central States, however, has styled its theory of liability somewhat differently, alleging that Central Transport and Central Cartage so dominated and controlled the Rogers Group Companies that they were the "true employers" for purposes of ERISA liability. Under this theory, Central States is not pursuing the defendant corporations merely to enforce a judgment. Rather, Central States is claiming that Central Transport and Central Cartage played a part in the initial ERISA violation. This theory is different from Peacock's, where

---

[2] Defendants will be filing a Motion to Dismiss as to all claims in this matter no later than June 12, 2017, based on this lack of subject matter jurisdiction, as well as failure to adequately state claims.

5

>Thomas pursued Peacock solely in his capacity as an officer and shareholder of the liable corporation. Thomas' lawsuit attempted to "pierce the corporate veil." By contrast, Central States claims that the defendants exercised "common control."

*Central States*, 855 F.3d at 1284. Accordingly, Plaintiffs have provided no compelling authority to support this Court's jurisdiction over the claims alleged in this matter.

**B.     Transfer is Inappropriate Under the Federal Rules of Civil Procedure Prior to a Determination of Subject Matter Jurisdiction**

Until the question of subject matter jurisdiction is resolved, the Federal Rules of Civil Procedure prevent this Court from taking the actions requested by Plaintiffs. Federal Rule of Civil Procedure 12(h)(3) states that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." "Whether the complaint states cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). As this Court has not yet evaluated subject matter jurisdiction, it cannot yet properly rule on Plaintiffs' Motion for Reassignment.

**C.     Reassignment is Inappropriate Under the Local Rules**

Even if this Court had subject matter jurisdiction over the instant action, reassignment is not appropriate under the Local Rules. Local Rule 40.4(a) provides that actions are considered related if they involve (1) the same property, (2) the same issues of fact and law, (3) arise out of the same transaction or occurrence, or (4) are in the nature of class actions. Despite Plaintiffs' claims to the contrary, those factors are not met here: the fourth is inapplicable, and the first three are wholly separate.

Plaintiffs assert that, since they now allege alter ego and successor liability in this instant case and in the Motion to Revive the Judgment in the 2000 matter, the two cases are therefore

6

instantly identical. That is not accurate. Nine years after judgment in the 2000 matter, Plaintiffs attempt to add new defendants to an old action, while claiming they are simultaneously reviving the old action and asserting entirely new claims. Plaintiffs, however, cannot change the scope or nature of the original case by simply redressing it at this late date: the 2000 action was a judgment based on Anti-Terrorism Act claims, against separate defendants. The instant cause of action alleges successor corporations and alter ego liability, for entities which did not exist at the time of the original suit and individuals who were not connected to it or represented in the 2000 suit in any way. The original 2000 suit turned on actions leading to the 1996 death of David Boim in Israel; the instant action involves questions surrounding the formation of two corporate entities in 2005 and 2009 in Illinois. As such, the operating facts and theories to be necessarily addressed in each matter are not sufficiently related to support reassignment under the Local Rules. As cited above, these two matters contain new and disparate theories which will involve different sets of facts. The facts between the two matters do not turn on the same issues of property, facts or law, and do not arise out of the same acts or occurrences. Therefore, Plaintiffs cannot establish the actions are sufficiently related, and reassignment at this stage is inappropriate under Local Rule 40.4(a). Despite Plaintiffs' contentions to the contrary, these matters are not suitable for reassignment.

## IV. Conclusion

Defendants respectfully request that this Court deny Plaintiffs' Motion for Reassignment for the reasons stated above: this Court has not yet had an opportunity to assess whether it has subject matter jurisdiction, and as such reassignment would be inappropriate; and the instant matter differs greatly from the 2000 matter in defendants, allegations, stage of proceeding and relevant issues of fact and law, as well as relevant transactions and occurrences. Therefore, Defendants

respectfully request this Court deny Plaintiffs' Motion for Reassignment, or in the alternative stay the Motion until such time as the Court has determined that it possesses appropriate subject matter jurisdiction.

Dated this 5th day of June 2017.

*/s/ Charles Swift*
Chares D. Swift,
Texas Bar No. 24091964
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Pro Hac Attorney for Defendants*

## CERTIFICATE OF SERVICE

On June 5, 2017, I electronically filed the forgoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

.

*/s/ Charles Swift*
Chares D. Swift, Trial Counsel
Texas Bar No. 24091964
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Pro Hac Attorney for Defendants*
