### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STANLEY BOIM, et al.,

          Plaintiffs              CASE NO. 1:17-CV-03591

     v.

                                   Honorable Sharon Johnson Coleman

AMERICAN MUSLIMS FOR PALESTINE,
et al,

          Defendants.

### MOTION TO DISMISS

Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJP"), Rafeeq Jaber ("Jaber"), Abdelbaset Hamayel ("Hamayel"), and Osama Abuirshaid ("Abuirshaid") ("current Defendants") file this Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), as set forth below.

### I.      Summary of the Argument

This Court does lacks subject matter jurisdiction over the claims alleged. Under both Supreme Court and Seventh Circuit authority, there is neither independent nor ancillary jurisdiction over the claims asserted. Plaintiffs claim that current Defendants are liable for a prior judgment to which Defendants were not parties; the facts on the alter ego and successor liability claims alleged do not support jurisdiction and are not so closely related to the original claims from the separate action to warrant ancillary, or supplemental, jurisdiction. Therefore, this Court is without jurisdiction under Fed. R. Civ. P. 12(b)(1) and must dismiss the case in its entirety.

### II.      Plaintiffs' Complaint

Plaintiffs obtained a judgment against Holy Land Foundation ("HLF"), the American Muslim Society ("AMS"), the United Association for Studies and Research ("UASR"), and

Islamic Association for Palestine ("IAP"), among others (collectively, the "judgment defendants"). (Dckt. 1.) Stanley Boim's parents (Plaintiffs) filed suit after their son was killed in Israel by members of Hamas ("the 2000 lawsuit"), alleging material support of terrorism which led to their son's 1996 death. They obtained a judgment of $156 million; this was affirmed in part.[1]

On May 12, 2017, Plaintiffs initiated the instant suit against current Defendants, seeking to enforce the 2000 judgment against these new defendants. No current Defendants were parties to the 2000 lawsuit. Plaintiffs argue that the current Defendants are liable as successor corporations and under the theory of alter ego,[2] for the 2000 judgment against the judgment defendants. Plaintiffs make the following allegations as to each current Defendant, in support of their claims:

A.     **AMP and AJP**

Plaintiffs' Complaint describes AMP as established "in 2005 by IAP and KindHearts activists"[3] with its headquarters opened "in 2008 … down the street from the former offices of AMS and IAP." (Dckt. 1 at 11.) Plaintiffs also assert that AMP is "all about educating people about Palestine," which Plaintiffs characterize as "thus continuing the purported purposes of AMS, IAP and HLF." (*Id*.) Plaintiffs describe AJP as a tax exempt 501(c)(3) organization established in 2009 and "run by former leaders of IAP." (*Id*. at 11.) Plaintiffs allege that "[m]any of the most significant donors and fundraisers for AJP were donors to IAP, HLF and KindHearts." (*Id*.)

Plaintiffs allege "current management and donors of AMP and AJP are substantially identical to the management and donors of their alter egos and predecessors, HLF, IAP and AMS." (*Id*. at 11.) Plaintiffs assert "this overlap" "demonstrates that AMP and AJP are re-incarnations,

---

[1] *Boim v. Holy Land Found. for Relief & Dev*., 549 F.3d 685, 688 (7th Cir. 2008).
[2] Plaintiffs' Complaint is vague on the specific theories brought against each Defendant, but Plaintiffs assert successor liability for AMP and AJP, and alter ego against all Defendants. (Dckt. 1 at 17, 19, 20, 22.) While alter ego is traditionally asserted against individuals, Plaintiffs assert it against all Defendants in this matter, so it is addressed as to all Defendants.
[3] KindHearts is not a party to this or the 2000 lawsuit; nonetheless, Plaintiffs make the unsupported allegation that HLF "continued" as KindHearts after HLF ceased operating. (Dckt. 1 at 10.)

alter egos and successors of HLF, IAP and AMS." (*Id*. at 12.)[4] While claiming "[t]his lawsuit is not directed at the content of AMP or AJP's message, what is said on their websites, or at the individuals who attend its [sic] conferences", Plaintiffs assert "[t]heir message and the manner in which the message is delivered are, however, identical to the message of HLF, IAP and AMS" and that "[t]his identity is evidence." (*Id*. at 16.) Plaintiffs allege "Defendants AMP and AJP are the alter egos and successors of *Boim* Defendants IAP, AMS and HLF." (*Id*. at 16.) Plaintiffs claim "AMP was headquartered" "on the same street" as AMS and IAP, and AMP and AJP were "established by the officers and leaders of IAP, AMS and HLF" and "continue the same enterprise, mission and activities as the *Boim* Defendants." (*Id*. at 17.) Plaintiffs believe "[t]he assets and donors to the *Boim* Defendants were, on information and belief, directly transferred to or comingled with AMP and AJP's assets." (*Id*.) Plaintiffs identify no such transactions or transfers.

## B.    Individual Defendants

Plaintiffs allege the individual Defendants are "alter egos of IAP, AMS and HLF" who "controlled these entities and used them as a front to advance their personal objectives." (*Id*.) Plaintiffs further assert these Defendants "directly participated in the conduct giving rise to the *Boim* Judgment" but do not name it. (*Id*.) Plaintiffs claim "now they control the successors – AMP and AJP—and use them as a front to continue to same types of personal objectives they previously sought to achieve through IAP, AMS and HLF." (*Id*.) These "personal objectives" are undefined.

### 1.    Abdelbaset Hamayel

Defendant Hamayal is AMP's unpaid executive director. (Dckt. 1 at 13; Ex. A.) He was

---

[4] Plaintiffs attempt to bolster their allegations of AMP and AJP as successors of HLF, IAP and AMS by identifying individuals who were neither judgment defendants in 2000 nor are current Defendants in this matter. (Dckt. 1 at 12-16.) Specifically, Plaintiffs reference The Mosque Foundation, Hatem Bazian, Salah Sarsour, Hussein al-Khatib, Kifah Mustapha, Sufian Nabhan, Raed Tayeh, Sheikh Mohammad Al Hanooti, and Sabri Samirah. (*Id*.) In the interests of brevity and relevance, Defendants address only the allegations made pertaining to the current Defendants.

previously a paid employee of IAP. (*Id.*) Plaintiffs quote Defendant Jaber's 2003 testimony describing Defendant Hamayel as "the employee that works for us, the executive director, the secretary. He is everything." (Dckt. 1 at 13.) Plaintiffs make no more relevant claims as to him.[5]

2. Osama Abuirshaid

Without referencing a timeframe, Plaintiffs allege that Defendant Abuirshaid edited IAP's newspaper and was paid by AMS. (*Id.*) Plaintiffs allege that Defendant Abuirshaid is a current AMP Board member, and publishes a newspaper out of Virginia. (*Id.*) Without further explanation, Plaintiffs then state that "AMS could not and did not operate independently from" Defendant Abuirshaid. (*Id.*) Plaintiffs allege no other relevant facts as to Defendant Abuirshaid.[6]

3. Rafeeq Jaber

Plaintiffs allege Defendant Jaber "was an organizer of AJP and currently prepares its tax forms." (*Id.* at 12.) Plaintiffs describe Defendant Jaber as "the former president and spokesman for AMS and IAP" with his business office "located in the former offices of AMS and IAP."[7] (*Id.*) Plaintiffs allege Defendant Jaber "is a donor to AMP." (*Id.*) Plaintiffs deposed Defendant Jaber in both 2003 and 2005. (*Id.* at 9, 13.)

## III. Legal Theories Alleged

Although Plaintiffs do not specify the theories under the doctrines of successor or alter ego liability on which they rely, the facts pled in the Complaint limit the theories under which they

---

[5] Plaintiffs refer to Defendant Hamayel previously working for KindHearts, and currently working for the Mosque Foundation Community Center. However, as neither of these was a 2000 judgment defendant or is a current Defendant in this matter, this Motion does not address these connections.
[6] Plaintiffs make allegations about the content of the newspaper published by Defendant Abuirshaid as well as his personal immigration status. (Dckt. 1 at 13.) As neither of these is relevant to the claims asserted in this suit, Defendant does not include them here.
[7] As shown in his Declaration, Defendant Jaber actually obtained office space in the same building in which AMS and IAP were located, but not the same offices, several years after IAP and AMS ceased operating. (Ex. C.) The building contains over 50,000 square feet of office space with many other businesses operating out of it, which are not defendants in this action.

could proceed.   Applying the four factors for successor liability from *Travis v. Harris Corp.*[8] against the allegations made in Plaintiffs' Complaint, Plaintiffs make no allegation that AJP or AMP expressly or impliedly agreed to assume liability of any judgment defendants. Plaintiffs do not point to any transactions amounting to consolidations or mergers of any corporations. Plaintiffs allege no facts showing that Defendants AMP and AJP are "mere continuations" of judgment defendants, and identify no sale or transfer of assets.  That leaves the last *Travis* factor: "where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts."  565 F.2d at 446.  Plaintiffs fail to identify any discrete acts, asserting only that "IAP, AMS and HLF were abandoned and replaced by AMP and AJP in order to permit the same ongoing enterprise—formerly conducted through the *Boim* Defendants—to continue free and clear of the burden of paying the *Boim* judgment."  (Dckt. 1 at 17.)

While claims of alter ego can be evaluated under many factors, the key element required under the Seventh Circuit is motive and intent to avoid liability.[9]  For a finding of alter ego, plaintiffs must show "the stockholder and corporation were in effect a single entity," established through broad practice, not a single transaction that is alleged as unfair.  *Esmark  Inc. v. N.L.R.B.,* 887 F.2d 739, 788-89 (7th Cir. 1989). There must be evidence of intent or motive to act in a fraudulent or abusive manner, and sufficient unity between the two corporations to justify setting aside the separateness of the entities. *Favia,* 995 F.2d at 788–89.  Here, Plaintiffs make conclusory

---

[8] "(1) [W]here there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a "mere continuation" of the seller; and (4) where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts."  *Travis v. Harris Corp*., 565 F.2d 443, 446 (7th Cir. 1977).

[9] *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785 (7th Cir. 1993); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.,* 831 F.2d 1309, 1312 (7th Cir. 1987).

allegations without supporting facts,[10] and allege no facts giving rise to subject matter jurisdiction.

## IV. Authorities Support Dismissal for Lack of Subject Matter Jurisdiction

### A. Standard for Dismissal for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold question, "the first question in every case." *State of Ill. v. City of Chi.,* 137 F.3d 474, 478 (7th Cir. 1998). Without jurisdiction "the court cannot proceed at all." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998). Federal courts have an obligation to examine jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). To survive a motion to dismiss for lack of subject matter jurisdiction, plaintiffs must show the existence of facts that could, with the complaint's allegations, establish standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 495 (7th Cir. 2005). In considering a motion challenging the facts supporting jurisdiction, " '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers v. Astrue,* 536 F.3d 651, 656–57 (7th Cir. 2008).

### B. Controlling Supreme Court Authority Demonstrates Lack of Subject Matter Jurisdiction over the Facts in this Case.

Plaintiffs claim independent jurisdiction, or, in the alternative, ancillary jurisdiction, based on theories of successor liability and alter ego for damages obtained against the original judgment defendants, under the Anti-Terrorism Act ("ATA"). (Dckt. 1 at 3-4.) The ATA itself requires a showing of direct involvement for liability under it.[11] Therefore, if this Court has jurisdiction to

---

[10] If necessary, Defendants will file a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) for failure to properly state a claim in accordance with applicable scheduling deadlines, should this Court determine it has jurisdiction to proceed.

[11] *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35-36 (2010); *Boim v. Holy Land Foundation, et al.*, 549 F.3d at 691 (holding there must be a connection between the acts at the time of the injury

enforce the debts from the 2000 action, this must come from the Court's general powers.

1.     <u>There is No Independent Jurisdiction for Claims Attempting to Pierce the Corporate Veil.</u>

The United States Supreme Court squarely addressed the question of whether third parties may be liable under theories of piercing the corporate veil and alter ego in *Peacock v. Thomas*. 516 U.S. 349, 354, 116 S.Ct. 862, 868, 133 L.Ed.2d 817 (1996). In *Peacock*, plaintiff Jack Thomas sought to impose a judgment under ERISA, regarding administration of a pension plan, against Grant Peacock, an officer and shareholder of the corporation that was found liable who had not been named in the original suit. *Id*. The alter ego claims were raised in a subsequent, separate action from the original suit on the merits, much like Plaintiffs attempt here. *Thomas v. Peacock*, 39 F.3d 493, n. 1 (4th Cir. 1994).[12] The Supreme Court reversed lower court decisions permitting the action, finding no independent subject matter jurisdiction over the plaintiff's new claims after the plaintiff had been unable to collect his original judgment against the liable corporate defendant, and held that "[p]iercing the corporate veil is not itself an independent … cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'" 516 U.S. at 354. As such, Plaintiffs' claims of independent jurisdiction necessarily fail under Peacock. Plaintiff are therefore left only with the option of showing ancillary jurisdiction.

2.     <u>Claims to Pierce the Corporate Veil Do Not Warrant Ancillary Jurisdiction.</u>

The Supreme Court in *Peacock* likewise rejected the plaintiff's claims of ancillary (or supplemental) jurisdiction over alter ego claims. In so doing, the *Peacock* court explained the

---

and the defendant, in order for liability to exist; finding alter ego between IAP and AMS because they acted together at the time of the relevant acts in question).

[12] In *Peacock*, the plaintiff actually did make allegations of specific wrongdoing by the individual, of invalid transfers to avoid liability totaling $80,000. The Supreme Court noted that even if an independent basis for jurisdiction had also been present, any liability would have been limited to that amount and not the full judgment. 516 U.S. at n.3. No jurisdiction otherwise existed in the case before it even with these allegations, however, because the transfers complained of all occurred after the original judgment and not at the time of the acts giving rise to the judgment. 516 U.S. at 359.

proper limits of extending collection for prior judgments:

Ancillary enforcement jurisdiction is, at its core, a creature of necessity. When a party has obtained a valid federal judgment, only extraordinary circumstances, if any, can justify ancillary jurisdiction over a subsequent suit like this. To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution. In the event a stay is entered pending appeal, the Rules require the district court to ensure that the judgment creditor's position is secured, ordinarily by a supersedeas bond. *The Rules cannot guarantee payment of every federal judgment.* But as long as they protect a judgment creditor's ability to execute on a judgment, the district court's authority is adequately preserved, and ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party.

*Peacock*, 516 U.S. at 359 (emphasis added). The Court viewed the assertion of ancillary jurisdiction as an improper attempt "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.*, citing *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 30 S. Ct. 601, 54 L. Ed. 855 (1910).

Under *Peacock*, this Court lacks subject matter jurisdiction over Plaintiffs' claims. The theories of liability alleged against current Defendants arises from the individual defendants' roles as officers and directors in one or more of the prior corporations, as well as the corporate defendants' alleged continuity and alleged (but unspecified) receipt of funds from donors and assets of the judgment defendants. As in *Peacock*, any alleged transfer and role of the defendants occurred years prior to the present action, without objection at the time by Plaintiffs and without explanation by Plaintiffs as to why they were unable to prevent any such transfers previously, in order to timely attempt to secure payment under the Federal Rules of Civil Procedure. These are facts which the Supreme Court found insufficient to establish jurisdiction: "[t]his is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [original] case." *Peacock*, 516 U.S. at 359. Plaintiffs here make the same improper attempt, without justification for ignoring Supreme Court precedent.

**C.      Controlling Seventh Circuit Authority Also Precludes Subject Matter Jurisdiction.**

Plaintiffs misrepresent the holdings of this Circuit: Plaintiffs' Complaint asserts

jurisdiction under *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1284 (7th Cir. 1996). Contrary to Plaintiffs' assertions that *Central States'* holding "recogniz[es] federal subject matter jurisdiction for enforcement action based on alter ego liability" (Dckt. 1 at 3), the Seventh Circuit held exactly the opposite. Recognizing *Peacock's* limitations, the Seventh Circuit found subject matter jurisdiction on the facts before it only because the plaintiff's claims were **not** claims of alter ego, and instead were claims that the new defendant was the "true employer" who committed the original violation giving rise to liability, with control of the relevant actions at the time the violation first occurred:

Central States, however, has styled its theory of liability somewhat differently, alleging that Central Transport and Central Cartage so dominated and controlled the Rogers Group Companies that they were the "true employers" for purposes of ERISA liability. Under this theory, Central ***States is not pursuing the defendant corporations merely to enforce a judgment.*** Rather, Central States is claiming that Central Transport and Central Cartage played a part in the initial ERISA violation. This theory is different from Peacock's, where Thomas pursued Peacock solely in his capacity as an officer and shareholder of the liable corporation. Thomas' lawsuit attempted to "pierce the corporate veil." By contrast, Central States claims that the defendants exercised "common control."

*Central Transport*, 855 F.3d at 1284 (emphasis added). Plaintiffs here recognize this action is no more than an attempt to collect the prior judgment: "[h]aving been unable to collect more than a small fraction of the *Boim* judgment from the named *Boim* Defendants, Plaintiffs should be permitted to recover from the *Boim* Defendants' alter egos and successors, i.e. the Defendants herein." (Dckt. 1 at 2-3.) This is exactly what the Supreme Court and Seventh Circuit prohibit.[13] This Court has no subject matter jurisdiction over the current claims alleged by Plaintiffs.

---

[13] *See also Goulding v. Global Medical Products Holdings, Inc.*, 394 F.3d 466, 467-68 (7th Cir. 2005) (holding that "[d]isputes about settlement contracts must be resolved in state court, unless they independently satisfy the requirements of federal jurisdiction" and ancillary jurisdiction exists where a court has either entered as a judgment or reserved authority to enforce"); *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195 (7th Cir. 1996) (noting "[w]e may assume that after *Peacock v. Thomas*, an effort to collect a judgment by 'piercing the corporate veil' to reach the judgment debtor's shareholders requires an independent ground of jurisdiction … which here is missing"); *Central States, et al. v. Art Pape Transfer, Inc.*, 79 F.3d 651, 653 (7th Cir. 1996) (observing that "[i]t hardly follows that 'alter ego' is a magical phrase that brings liability down on the head of a

**D.      The Facts Do Not Support Subject Matter Jurisdiction As To These Defendants.**

"The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers,* 536 F.3d at 656–57.  Considering all relevant information, then, the facts do not support jurisdiction here.   As noted in *Central Transport*, subject matter jurisdiction would exist in these circumstances only if the current Defendants played such a part in the initial bad acts in 1996, which led to liability, that they were the "true" liable defendants for those acts.  855 F.3d at 1284. For the reasons set forth below, this is not factually possible.

1.      Abdelbasset Hamayel

Defendant Hamayel first joined IAP as an employee, as office administrator for the Chicago office, in September 1997.  (Ex. A.)  In that position, he reported to the Board of Directors.  (*Id*.) He remained an employee until IAP ceased operating, in or around late 2003.  (*Id*.)  Defendant Hamayel did not hold any positions with AMS.  (*Id*.) Defendant Hamayel became a volunteer with AMP in December 2008, and is serving temporarily as an unpaid Executive Director until a replacement is found.  (*Id*.) He was not involved in the founding of AMP or AJP and is not on the Board of Directors for either AMP or AJP.  (*Id*.)

Since Defendant Hamayel did not even begin working for IAP until after the 1996 acts which led to the 2000 judgment, he cannot be considered the true actor for those events.  While he may have become "everything" to the organization years date, the relevant window here is May 1996.  His connections to the judgment defendant postdate the 1996 acts; for the same reasons the Seventh Circuit reversed judgment on the individual in the 2000 matter, Defendant Hamayel could

---

corporation; for that, one needs a concrete theory"; declining alter ego as a basis for jurisdiction, since "Illinois … keeps liability strictly within the corporate boundary unless a failure to respect corporate formalities has combined with a fraud or other wrongdoing to produce inequity").

not have been a true actor and this Court therefore has no jurisdiction over the claims against him.[14]

2.    Osama Abuirshaid

In September 1996, Defendant Abuirshaid came to the United States as a non-immigrant journalist from his residence in Morocco.  (Ex. B.)  He got married in 1999, to a United States citizen, and they remain married today.  (*Id.*)  Defendant Abuirshaid became a lawful permanent resident of the United States in 2002.[15] (*Id.*) Defendant Abuirshaid became an outreach coordinator for AMS in 2000, which was his first role with the organization.  (*Id.*)  He first became a member of IAP in 2002.  (*Id.*)  Defendant Abuirshaid is self-employed, through his consulting firm DAR Consulting, since on or around November 2004.  Through his firm, he became a consultant for AMP in 2010.  He later became a member of the Board of Directors for AJP.  (*Id.*)

As with Defendant Hamayel, Defendant Abuirshaid could not have been the "true" actor in 1996 for subject matter jurisdiction purposes in this action, since he did not join any judgment defendant organization prior to 2000, and did not even enter the country until late 1996, after the May 13, 1996 shooting of Stanley Boim.[16]  Despite Plaintiffs' claim that "AMS could not and did not operate independently from" Defendant Abuirshaid, it must have done so until at least 2000, when he first joined that organization.  (Dckt. 1 at 13; Ex. B.)  Plaintiffs' allegations against Defendant Abuirshaid therefore must be dismissed for lack of subject matter jurisdiction.

3.    Rafeeq Jaber

Defendant Jaber came to the United States in 1974 at the age of 24, and became a citizen

---

[14] *Boim*, 549 F.3d at 691.

[15] While not relevant to any allegations in this matter, Plaintiffs represent to this Court that Defendant Abuirshaid "is currently ineligible for naturalization because of his failure to disclose his connections with IAP" and that USCIS made specific reference to the 2000 *Boim* lawsuit "and the role of IAP in funding international terrorism."  (Dckt. 1 at 13.)  Actually, Defendant Abuirshaid has filed for de novo review of his naturalization application, which remains pending in the Eastern District of Virginia.  (Ex. B.)

[16] *Boim*, 511 F.3d at 713.

in 1980. (Ex. C.) He was a factory worker, working next for Met Life for twenty years, as an insurance agent, then sales manager, then branch manager. He retired from Met Life in or around 1996. (*Id.*) He served as the President of AMS in the early 1990s, and of IAP from approximately 1990 to 1996 without compensation. In each of those unpaid positions, he reported to the Board of Directors for each organization. (*Id.*) In 2003 and March 2005, Plaintiffs deposed Defendant Jaber. (Dckt. 1 at 9-10, 13.) As Plaintiffs state, he testified in 2005 that IAP and AMS were financially defunct. (*Id.*) He did not hold any positions with AMP or AJP until 2013. (Ex. C.)

Taking Plaintiffs' assertions as true, along with Defendant Jaber's Declaration, there is no support for subject matter jurisdiction over him. There are no facts alleged showing Defendant Jaber, while working as a branch manager for Met Life, to be the "true" actor for any judgment defendant. If any existed, they would have likely arisen during the first three trips to the Seventh Circuit on the 2000 lawsuit. Plaintiffs' conclusory allegations, without factual support, are insufficient;[17] Plaintiffs fail to plead a single act by Defendant Jaber that leads to subject matter jurisdiction. Simply being an officer of a corporation is not enough: holding individuals liable for corporate judgments, when their known roles did not give rise to liability in the underlying factual trial, opens the door to hold any corporate officer liable after the fact, without a trial on the merits.[18] The Supreme Court prohibits this explicitly. *Peacock*, 516 U.S. at 359. Furthermore, Plaintiffs deposed Defendant Jaber twelve (12) and fourteen (14) years ago (Dckt. 1 at 9, 13); if there was

---

[17] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion" to dispose of the case prior to trial. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

[18] Plaintiffs' counsel's firm has attempted, and lost, this argument before. *Veolia Es Special Services, Inc. v. Pilgrim Investments, LLC*, No. 13-C-63, 2013 WL 3937013, *3 (E.D. Wis. July 30, 2013) (holding that "[b]ecause state law claims alleging alter ego theories and the like are a different animal entirely, they should not bog down an otherwise simple" matter on a prior judgment, and noting that while "[i]t is tempting to conclude that a single court could be a 'one stop shop,'" state law claims like alter ego "have little factual or legal nexus at all,"; therefore, "the tail of supplemental jurisdiction should not wag the dog of original jurisdiction").

any action against him, Plaintiffs either knew or should have known long ago.[19] Plaintiffs cannot

show a valid cause of action against Defendant Jaber based on misleading facts, like renting space

in a building where IAP used to have offices. And while he may well currently donate to charities

as alleged, that alone does not grant a basis for subject matter jurisdiction over him in this matter.

Those facts do not connect him to the 1996 acts which led to liability in the earlier suit. At most,

these facts imply that Defendant Jaber created new entities to continue the charitable work of IAP

and AMS without their debts; even if true, this does not form a basis for subject matter

jurisdiction.[20]

4.     <u>American Muslims for Palestine and Americans for Justice in Palestine Educational Fund</u>

In 1996, neither AMP nor AJP existed. AMP was incorporated in 2006. (Ex. D.) By then,

judgment defendant HLF's assets were already seized. (Dckt. 1 at 10.) Plaintiffs allege that HLF

"continue[d] under a new name", KindHearts for Charitable Relief and Development

("KindHearts"). (*Id*.) Plaintiffs next state that the United States Treasury ("the Treasury") froze

the assets of KindHearts and called it "progeny" of HLF, providing terrorist support "behind the

facade of charitable giving." (*Id*.) AJP was formed next, in 2009. (Ex. E.) Without further

explanation, Plaintiffs state that KindHearts "disbanded in 2011." (Dckt. 1 at 10.) Plaintiffs imply,

without identifying any facts, that assets of KindHearts and/or HLF made their way to AMP. (*Id*.)

Plaintiffs omit material facts, which are directly relevant to the allegations of jurisdiction

in this matter. While Plaintiffs correctly state that KindHearts "disbanded in 2011," Plaintiffs omit

---

[19] The sole individual against whom Plaintiffs did originally obtain a judgment won reversal of that judgment on appeal, when the Seventh Circuit found he could not have played a direct role in the relevant 1996 events. *Boim*, 549 F.3d at 691.

[20] *Christiansen v. Mech. Contractors Bid Dep*., 404 F.2d 324, 325 (10th Cir. 1968) ("[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation").

that this was part of a settlement with the Treasury, after it was sued by KindHearts for improperly seizing its funds and assets. (Ex. F, Settlement.)[21] This settlement included a complete return and distribution of all KindHearts' assets and funds seized by the Treasury, which the Treasury and the Office of Foreign Asset Control ("OFAC") oversaw. (*Id*.) This settlement specifies that, in addition to not being found guilty of any wrongdoing, the officers and directors of KindHearts were free to engage "in any lawful activity, including forming a new organization to engage in charitable activity in the Middle East or elsewhere." (*Id*.) Furthermore, the disbandment of KindHearts involved approved dispersement of "grants for charitable purposes to charitable organizations set forth in" the settlement. (*Id*.) Not one of the current Defendants is listed as a recipient of any of the dispersed KindHearts funds. (*Id*.) The supposed fraudulent transfer of any assets, which Plaintiffs allege "on information and belief" occurred from HLF and/or KindHearts to AMP and/or AJP, was not factually possible on the face of Plaintiffs' Complaint: the 2011 dispersement of KindHearts' assets and funds (frozen prior to the inception of AJP) was overseen by the Treasury, and the prior freezing of HLF assets (predating the formation of both AMP and AJP) remain frozen; these present financial and factual dead ends precluding any successor or alter ego liability for AMP or AJP. These facts also preclude any possible finding that the relevant 1996 actions which form the basis of the 2000 judgment were in actuality performed by entities which did not exist until nine (AMP) and thirteen (AJP) years later. The Supreme Court found such allegations insufficient to support jurisdiction. *Peacock*, 516 U.S. at 359.

Plaintiffs further cannot demonstrate subject matter jurisdiction as to AMP and AJP through their derivative allegations relating to judgment defendants IAP and AMS.[22] Plaintiffs'

---

[21] Also located at https://www.aclu.org/files/assets/kindhearts_v__geithner_-_settlement.pdf.

[22] In the 2000 litigation, the Seventh Circuit upheld the finding that IAP and AMP were essentially overlapping entities for totally different reasons than Plaintiffs allege here. *Boim v. Holy Land Foundation*, 511 F.3d 707, 713 (7th Cir. 2007), citing the District Court opinion at 340 F. Supp.2d 885, 908 (N.D. Ill. 2004).

Complaint states that Plaintiffs deposed Defendant Jaber in 2003 and March 2005. (Dckt. 1 at 9, 13.) Per Plaintiffs' Complaint, this sworn testimony demonstrated "both of those organizations were essentially defunct as a result of the expense of the litigation and judgment in the *Boim Action*." (Dckt. 1 at 10.)[23] Again, this presents a financial and factual dead end precluding jurisdiction: neither AMP nor AJP existed as of the time of the 1996 actions, or the insolvency of judgment defendants IAP and AMS. Therefore, they could not have been the "true" actors in 1996 of the actions leading to liability. AMP and AJP also could not have been "alter egos" or "successors" by way of fraudulent transfers, from entities which had no assets left before AJP and AMP were even formed. Simply performing a similar charitable purpose is not enough.[24] The fact that AMP and AJP have offices in the same neighborhood where IAP and AMS used to office is likewise both irrelevant and unpersuasive. While their stated purposes may resemble those of IAP and AMS, those purposes are perfectly legal; the purposes did not form the basis of the 2000 judgment. (Exs. D and E.) Even if these allegations may be sufficient to create successor liability, they are insufficient to establish subject matter jurisdiction.

## IV. Conclusion

In an effort to collect damages from new defendants on an old uncollected judgment, Plaintiffs take the legal approach of throwing mud against a wall to see what sticks. Legally, nothing sticks. Plaintiffs cannot create subject matter jurisdiction where it doesn't exist, no matter how sympathetic the Plaintiffs or how convoluted the presentation of theories. Therefore, Defendants respectfully request this Court dismiss Plaintiffs' claims in this matter in their entirety for lack of subject matter jurisdiction.

---

[23] Had there been contrary facts, Plaintiffs would have surely used them to collect the judgment.
[24] *Christiansen*, 404 F.2d at 325 ("[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation").

Dated this 12th day of June 2017.

*/s/ Christina Jump*
Chares D. Swift
Texas Bar No. 24091964
Christina A. Jump
Texas Bar No. 00795828
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Pro Hac Attorney for Defendants*

## CERTIFICATE OF SERVICE

On June 12, 2017, I electronically filed the forgoing with the clerk of the court by using

the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

.

*/s/ Christina Jump*
Christina A. Jump