# EXHIBIT

# A

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

-------------------------------------------X

STANLEY BOIM, et al.

 *Plaintiffs,* 　　　　　　　Case No: 1:17-cv-03591

 v. 

AMERICAN MUSLIMS FOR

PALESTINE, et al.

 *Defendants.* 

-------------------------------------------X

<u>**DECLARATION OF ABDELBASET HAMAYEL**</u>

I, Abdelbaset Hamayel, hereby declare under penalty of perjury as follows:

1. I, Abdelbaset Hamayel, submit this declaration based on my own personal knowledge.

2. I am over the age of 18 and competent to testify to the facts recited below.

3. I began working for the Islamic Association for Palestine ("IAP") as Chicago office administrator in or around September 1997.

4. In that position I reported to the Board of Directors of IAP and the President.

5. My employment with IAP ended when it ceased operating, in or around the end of 2003.

6. I did not hold any positions with the American Muslim Society ("AMS").

7. I became a volunteer for American Muslims for Palestine ("AMP") in or around December 2008.

8. On March 2009, I became a volunteer Executive Director for AMP, in an unpaid position until the board finds a replacement.

9.    I was not involved in founding AMP or Americans for Justice in Palestine
      Educational Foundation ("AJP"), and I am not on the Board of Directors for either
      organization.

Abdelbaset Hamayel, Declarant

# EXHIBIT

# B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

-----------------------------------------------X

STANLEY BOIM, et al.

     *Plaintiffs,*       Case No: 1:17-cv-03591

  v.

AMERICAN MUSLIMS FOR
PALESTINE, et al.

     *Defendants.*

-----------------------------------------------X

## DECLARATION OF OSAMA ABUIRSHAID

  I, Osama Abuirshaid, hereby declare under penalty of perjury as follows:

I, Osama Abuirshaid, submit this declaration based on my own personal knowledge.

I am over the age of 18 and competent to testify to the facts recited below.

I first came to the United States at age 23, in September 1996, as a nonimmigrant journalist. I previously resided in the countries of Morocco and Jordan, and was a citizen of Jordan.

When I arrived in the United States, I worked as a journalist for a publication out of Jordan.

I got married in 1999. My wife is a United States citizen. We are still married.

I became an outreach coordinator for the American Muslim Society ("AMS") in 2000. Prior to that I had no role with the organization.

I became a lawful permanent resident of the United States in 2002.

I became a member of Islamic Association of Palestine ("IAP") in July 2002. Prior to that I did not have a role with that organization, other than to the extent there was overlap with AMS.

I filed an application to become a naturalized citizen in 2006. In December 2016, the United States Citizenship and Immigration Services issued its final administrative decision denying my application. I have filed a petition for *de novo* review of the agency's decision in the United States District Court for the Eastern District of Virginia. That cause of action is still pending.

To the best of my knowledge, both IAP and AMS were financially defunct by 2004. IAP did not have any paid employees after 2004.

I am self-employed through my consulting business, DAR Consulting. I began that business in or around November 2004.

I became a consultant, through DAR Consulting, for American Muslims for Palestine ("AMP") in 2010. I joined the Board of Directors for AMP in or around 2010 or 2011.

I became a member of the Board of Directors for Americans for Justice in Palestine Educational Foundation ("AJP") in November 2016.

I was not involved in the founding of either AMP or AJP.


Osama Abuirshaid, Declarant

# EXHIBIT

# C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------X

STANLEY BOIM, et al.

    *Plaintiffs,*      Case No: 1:17-cv-03591

    v.

AMERICAN MUSLIMS FOR
PALESTINE, et al.

    *Defendants.*

-------------------------------------------------X

## DECLARATION OF RAFEEQ JABER

I, Rafeeq Jaber, hereby declare under penalty of perjury as follows:

1. I, Rafeeq Jaber, submit this declaration based on my own personal knowledge.

2. I am over the age of 18 and competent to testify to the facts recited below.

3. I came to the United States in 1974, and became a U.S. citizen in 1980.

4. When I first came to the United States, I worked in a factory for Dearborn Glass Company.

5. When Dearborn Glass Company went out of business, I began working for Metropolitan Life ("Met Life"), first as an insurance agent. I later became a sales manager and then a branch manager. I worked for Met Life from 1975 until approximately 1996.

6. Since retiring from Met Life, I have done freelance work as a insurance agent, financial planner and tax preparer. I began my own business, Jaber Financial Services, in or around 2000.

7. I was the President of Islamic Association for Palestine from in or around 1991 to its closing in around 2004

8. In that position I reported to the Board of Directors of IAP.

9. IAP ceased operating in or around 2004.

10. I was also the President for American Muslim Society ("AMS") in the early 1990s.

11. I was deposed in or around March 2005, and testified that both IAP and AMS were financially defunct by that time.

12. I did not serve in any official capacity with Americans for Justice in Palestine Educational Fund ("AJP") or American Muslims for Palestine ("AMP"), till I was invited to serve on the Board of Directors for AMP on 2013, or 2014 to represent it to the IRS and States tax entities to solve some problems of tax matters. I never attended any of its board meetings.

13. In or around 2012, I moved the office of my financial consulting business to the same building where AMS and IAP had been several years-beforehand, when larger office space became available in that building. However, I am not in the same office space that was formerly occupied by IAP and AMS. I did not take over the office space formerly occupied by IAP or AMS.

Rafeeq Jaber, Declarant

# EXHIBIT

# D

# STATE *of* CALIFORNIA
## ARTICLES *of* INCORPORATION

AUG -2 2006

i

The name of this corporation is: **American Muslims for Palestine Inc.**

II

This corporation is a nonprofit **PUBLIC BENEFIT CORPORATION** and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for:

( ) **Public** purposes.
Or ( ) **Charitable** purposes.
Or ( X ) **Public and charitable** purposes.

The specific purpose of this corporation is to educate the general public on Palestine culture and history. Conduct seminars at high schools and colleges.

III

The name in the State of California of this corporation's initial agent for service of process is:

**Hatem Albazian**
**2425 Channing Way, Suite 335**
**Berkeley, CA 94704**

IV

This corporation is organized and operated exclusively for **Public and Charitable** purposes within the meaning of Section 501 (c) (3), Internal Revenue Code.
No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

V

The property of this corporation is irrevocably dedicated to **Public and Charitable** purposes and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person. Upon the dissolution or winding up of the corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for Public purposes and which has established its tax exempt status under Section 501 (c) (3), Internal Revenue Code.

Date: July 28, 2006

# EXHIBIT

# E

**3237554**

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE
OF THE STATE OF CALIFORNIA

NOV 16 2009

## STATE *of* CALIFORNIA
## ARTICLES *of* INCORPORATION

### I

The name of this corporation is: AJP Educational Foundation

### II

A.  This corporation is a nonprofit **PUBLIC BENEFIT CORPORATION** and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for Charitable purposes.

B.  The specific purpose of this corporation is:

- To provide seed funding for publishing books, specialized journals and fostering research focusing on international relations and global human rights conditions. Also, will provide funds for conferences, seminars and media projects intended to reach widest possible audience.

### III

The name in the State of California of this corporation's initial agent for service of process is:

Hatem Al-Bazian
2801 Telegraph Ave
Berkeley, CA 94705

### IV

A.  This corporation is organized and operated exclusively for **Charitable** purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501 (c)(3) of the Internal Revenue Code, or corresponding section of any future federal code.

B.  No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

### V

The property of this corporation is irrevocably dedicated to **Charitable** purposes and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person. Upon the dissolution or winding up of the corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for **Charitable** purposes and which has established its tax ex_____ Section 501 (c) (3), Internal Revenue Code.

Date: November 13th, 2009

# EXHIBIT

# F

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by Plaintiff KindHearts for Charitable Humanitarian Development, Inc. ("KindHearts") and Defendants Timothy F. Geithner, in his official capacity as the Secretary of the Treasury, Adam Szubin, in his official capacity as Director of the Office of Foreign Assets Control, and Eric Holder, in his official capacity as Attorney General of the United States ("Defendants"), (hereinafter, collectively, "the Parties"). Whereas the Parties now mutually desire to resolve all of the claims asserted by Plaintiff in this action without the need for further litigation, and without any admission of liability or wrongdoing by either Party; whereas KindHearts believes that it acted lawfully and has independently determined to close down because further charitable work would be best pursued under other auspices; and whereas the government believes that it acted lawfully and correctly, the Parties hereby accordingly agree to compromise, settle and resolve all of the claims asserted by Plaintiff in this action on the following terms and conditions:

1. All funds and assets owned by KindHearts will be expended, pursuant to licenses by the Office of Foreign Assets Control (OFAC), to cover KindHearts' outstanding financial obligations and as grants for charitable purposes to charitable organizations set forth in Appendix A. Nothing in this Agreement is or should be construed as Defendants' endorsement or approval of, or agreement with, any of the organizations or individuals listed in the Appendix. KindHearts shall complete the process of identifying financial obligations within 90 days of the signing of this agreement. Once KindHearts has identified all such obligations to OFAC and certified to OFAC that the obligations are valid and represent a complete accounting of KindHearts' outstanding financial obligations, and OFAC has found that such licenses are appropriate, OFAC will issue, within 30 days, licenses authorizing: (1) the payment of those obligations; and (2) the apportionment of all remaining funds between the entities listed in Appendix A, pursuant to the agreement of KindHearts and OFAC. Upon completion of the process contemplated in this paragraph, the remainder of this agreement will become operative. In the event that the parties cannot reach agreement as to the payment or licensing of particular debts, either party may terminate this agreement prior to disposition of KindHearts' assets.

2. Once its assets and funds have been fully allocated, KindHearts agrees to dissolve, cease operations and close down. Assuming all requirements are met, OFAC will license such dissolution. Nothing in this Agreement is or should be construed as a determination that KindHearts was engaged in any wrongdoing. KindHearts is responsible for complying with its legal obligations, including those related to dissolution.

3. Within 60 days after disposition of all KindHearts assets and dissolution of KindHearts, OFAC will remove KindHearts from the list of entities whose assets are blocked, and lift any and all blocking orders against KindHearts. As long as the terms of the Agreement are fulfilled and KindHearts is not a functioning entity, OFAC will not designate KindHearts. At the conclusion of this process, OFAC will notify all other federal agencies to which it normally communicates such actions that KindHearts has been removed from the list of specially designated nationals and blocked persons, and OFAC has lifted the blocking pending investigation of its assets.

4. Nothing in this agreement prevents KindHearts' former board members, officers, and employees from engaging in any lawful activity, including forming a new organization to engage in charitable activity in the Middle East or elsewhere that conforms with all legal requirements. In this agreement, OFAC takes no position on such future charitable activities. Nothing in this agreement affects the laws and regulations applicable to KindHearts' former officers and employees; nor does this agreement restrict the authority or discretion of the Defendants to take enforcement action or seek designation with respect to any person or entity, consistent with Executive Order 13224 or any other authority.

5. Within 180 days of execution of this agreement – or if KindHearts has not dissolved within 180 days, then within 60 days of the dissolution of KindHearts – Defendants will pay $ 330,000 as reasonable attorneys' fees and expenses directly to KindHearts' counsel on KindHearts' behalf, without remittance to KindHearts or its officers. OFAC will license this transaction.

6. Upon satisfactory completion of the terms of Paragraphs 1, 2, 3 and 5, the Parties will jointly move for lifting of the existing preliminary injunction, and dismissal of this case with prejudice.

7. Plaintiff, for itself and its administrators, heirs, representatives, successors, or assigns, acting in their formal capacity as such, hereby waives, releases and forever discharges Defendants, all of its agencies, components, offices or establishments, and any officers, employees, agents, or successors, of any such department, agency, component, office or establishment, either in their official or individual capacities, from any and all claims, demands and causes of action of every kind, nature or description, which were known to Plaintiff or should have been known, which have been or could have been asserted in this action, or any other administrative or judicial proceeding against Defendant, arising out of or in connection with any event occurring prior to the date of this Agreement including, without limitation, the blocking pending investigation of Plaintiff, the provisional determination that Plaintiff could be designated, and any and all licensing requests to OFAC for disbursement of Plaintiff's funds. This agreement does not constitute waiver of claims by Plaintiff's administrators or representatives in their personal capacities.

8. This Agreement is not and shall not be construed as an admission by Defendants of the truth of any allegation or the validity of any claim asserted in this action, or the Defendants' liability therein. Nor is it an admission by Plaintiff of the truth of any allegations or accusations made by Defendants about it. Nor is it a concession or an admission of any fault or omission in any act or failure to act. Nor shall any of the terms hereof be offered or received in evidence or in any way referred to in any civil, criminal, or administrative action, or construed for any purpose whatsoever as an admission or presumption of wrongdoing on the part of either Defendants or Plaintiff.

9.      The terms of the Agreement, and the attachment thereto, constitute the entire agreement of the Parties entered into in good faith, and no statement, remark, agreement or understanding, oral or written, which is not contained therein, shall be recognized or enforced; nor does the Agreement reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of this action and to resolve the matter without the time and expense of further litigation.

10.    This Agreement cannot be modified or amended except by an instrument in writing signed by the party to be charged therewith; nor shall any provision hereof be waived other than by a writing setting forth such waiver and signed by the party to be charged with such waiver.

11.    This Agreement shall be binding upon and inure to the benefit of the Plaintiff and the Defendants and their respective successors, assigns, and representatives acting in their official capacities, including any persons, entities, departments or agencies succeeding to the interests or obligations of the Parties. This agreement shall not be binding upon Plaintiff's administrators or representatives in their personal capacities.

12.    Each person signing this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute the Agreement on behalf of the party on whose behalf he or she so signs.

13.    This Agreement, which may be signed in counterparts, shall take effect upon execution by all signatories below. This Agreement may be executed on copies send by electronic mail with the same force and effect as an executed original of the same.

Amy Powell
For Defendants

Dated

Hatem ElHady
For Plaintiff

Dated

Jihad Smaili
For Plaintiff

Dated

## APPENDIX A

1. United Nations World Food Programme
   *See* http://www.wfp.org
2. United Nations Children's Fund
   *See* http://www.unicef.org
3. United Nations Relief and Works Agency for Palestinian Refugees
   *See* http://www.unrwa.org
4. Mercy Corps
   *See* http://mercycorps.org
5. Masjid Saad (receiving KindHearts' physical assets only)