UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY BOIM, et al.,

    Plaintiffs

v.

AMERICAN MUSLIMS FOR PALESTINE, et al,

    Defendants.

CASE NO. 1:17-CV-03591

Honorable Sharon Johnson Coleman

## REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJP"), Rafeeq Jaber ("Jaber"), Abdelbaset Hamayel ("Hamayel"), and Osama Abuirshaid ("Abuirshaid") ("current Defendants") file this Reply to Plaintiffs' Response to Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), as set forth below.

### I. Summary of the Argument and Response

This Court lacks subject matter jurisdiction over the claims alleged in Plaintiffs' Complaint. Under Supreme Court and Seventh Circuit authority, there is neither independent nor ancillary jurisdiction over the claims asserted. Plaintiffs claim that current Defendants are liable for a prior judgment to which Defendants were not parties; the facts relevant to the alter ego and successor liability claims alleged do not support jurisdiction, and are not so closely related to any independent claims to warrant ancillary, or supplemental, jurisdiction. Even Plaintiffs' updated portrayal of these theories in their Response as both "direct" and "disguised" cannot create jurisdiction where it simply does not exist. Therefore, this Court remains without jurisdiction under Fed. R. Civ. P. 12(b)(1), and must dismiss the case in its entirety.

1

## II.     Plaintiffs' Response

Plaintiffs focus heavily on their right to recover the judgment obtained against Holy Land Foundation ("HLF"), the American Muslim Society ("AMS"), the United Association for Studies and Research ("UASR"), and Islamic Association for Palestine ("IAP"), among others (collectively, the "judgment defendants") under the Anti-Terrorism Act, and go so far as to refer to the current Defendants as "supporters of terrorism" and "terrorist organizations" without foundation for doing so.[1] (Dckt. 37 at 1-2, 3, 5, 9-10.) However, while the inability to recover a judgment on behalf of an indisputably sympathetic plaintiff is unfortunate, it does not provide Plaintiffs with free reign to "assign" that judgment to any entity or individual it finds. Liability cannot be re-allocated at whim by rotating defendants as if they were musical chairs.

Plaintiffs argue in their Response that Defendants are "directly" liable as successor corporations and under the theory of alter ego, for the 2000 judgment in another matter, or (apparently in the alternative) are "disguised continuances" of the original judgment defendants. (Dckt. 37 at 8-15.) Plaintiffs blatantly misrepresent the statements in Defendants' Motion to Dismiss (Dckt. 37 at 2), improperly misleading this Court. But the Court need look no further than Plaintiffs' own authorities to see why these new theories fail, as does Plaintiffs' assertion that Defendants' additional facts regarding jurisdiction improperly "convert" the Motion to Dismiss. This Court still does not have subject matter jurisdiction over Defendants, and Plaintiffs' Complaint should therefore be dismissed under Fed. Rule Civ. Proc. 12(b)(1).

## III.     New Theories in Plaintiffs' Response Don't Change the Law

Although not set forth in their Complaint, Plaintiffs respond that the Defendants are liable as "disguised continuances" of the judgment defendants, as well as being "directly liable" for the torts of the judgment defendants. Plaintiffs cannot get around the applicable law preventing

---

[1] *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 688 (7th Cir. 2008).

2

exactly what they attempt to do here: collect a judgment against defendants who have not been found liable for that judgment. Underlying all of Plaintiffs' arguments is the unstated proposition that the Anti-Terrorism Act creates unique and broad avenues for alter ego and successor liability, even if not recoverable otherwise. Under this theory of liability, persons and entities later engaging in any activities which are similar to the lawful public advocacy activities of the judgment defendants somehow become liable for the unlawful acts found to form the basis for the judgment against the 2000 defendants. This cannot be the law. Despite a multitude of references to the Anti-Terrorism Act, its intent and cases related to it, Plaintiffs' Complaint alleges only two causes of action against these Defendants: alter ego, and successor liability. Plaintiffs do not allege liability against these Defendants under the Anti-Terrorism Act in their Complaint, and none has been proven in any forum. The only causes of action relevant here are the two alleged in <u>this</u> action.

**A.       Standard for Dismissal for Lack of Subject Matter Jurisdiction**

Subject matter jurisdiction is a threshold question, "the first question in every case." *State of Ill. v. City of Chi.,* 137 F.3d 474, 478 (7th Cir. 1998). To survive a motion to dismiss for lack of subject matter jurisdiction, plaintiffs must show the existence of facts that could, with the complaint's allegations, establish standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 495 (7th Cir. 2005). In considering a motion challenging the facts supporting jurisdiction, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers v. Astrue,* 536 F.3d 651, 656–57 (7th Cir. 2008).[2]

---

[2] Plaintiffs erroneously assert that additional facts presented regarding jurisdiction are improper here, despite the holdings in *Evers* and *Villasenor v. Indus. Wire & Cable*, 929 F. Supp. 310, 312 (N.D. Ill. 1996) (holding that "[a] factual attack, on the other hand, is not a challenge to the

**B.      "Direct Liability" Under Alter Ego Still Requires Facts Supporting Alter Ego**

Plaintiffs spend many pages in their Response proudly distinguishing their alter ego and successor liability claims from those in the on-point Supreme Court authority of *Peacock* because, they claim, they are alleging "direct" alter ego liability not requiring any veils to be pierced. (Dckt. 37 at 6-8.) What Plaintiff omit, however, is the simple fact that even "direct" alter ego liability is still alter ego liability, requiring the existence of supporting facts to form the basis of subject matter jurisdiction. Despite the fact that nowhere in Plaintiffs' Complaint is direct liability asserted, and the terms "alter ego" and "successor" appear in Plaintiffs' Complaint 32 and 25 times respectively (Dckt. 1, *passim*), this is a distinction without a subject matter jurisdictional difference.

Plaintiffs' initial reliance on *Board of Trustees v. Elite Erectors Inc.* omits the fundamental basis for finding "direct" liability in that matter: the defendants at issue were the true employers under the unique ERISA provisions at issue. 2112 F.3d 1031, 1038 (7th Cir. 2000). Furthermore, the court's entire discussion of direct versus vicarious liability is dependent on the parent/subsidiary relationship and examining the amount of control exerted by one entity versus the other, at the time of the acts in question. *Id*. at 1037-1039, citing *United States v. Bestfoods*, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). That, again, requires looking to the actions taken in 1996 forming the basis of the 2000 judgment, in order to establish subject

---

sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."). However, the rare "conversion" of a 12(b)(1) motion to a 12(b)(6) motion and then a Rule 56 motion, which Plaintiffs allege should occur here, is appropriate only when "the type of 12(b)(1) motion made by [defendants] should be treated as a 12(b)(6) motion where the federal claim is not insubstantial and frivolous" or, in other words, the issue of federal jurisdiction is not the primary issue. *Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir. 1986), citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the district court has jurisdiction"). Whether Plaintiffs' claims could succeed on the merits is not before the Court at this time; the relevant consideration remains whether there is jurisdiction over these Defendants.

matter jurisdiction here. As set forth herein and in the Motion to Dismiss, Plaintiffs cannot establish facts supporting subject matter jurisdiction against these Defendants based on the 1996 acts.

Plaintiffs then turn to their "direct successor" allegations, relying on *Trs. of the Chi. Painters & Decorators Pension Fund v. NGM Servs., Inc.,* 2014 U.S. Dist. LEXIS 176004 (N.D. Ill. Dec. 24, 2014). However, Plaintiffs again misrepresent the holding to this Court: the *NGM* holding, even though not controlling, was yet another ERISA case examining actual control under a specific provision of ERISA. *Id*. at \*6. The ERISA statute provided the only basis for "independent" jurisdiction, contrary to Plaintiffs' representations. (Dckt. 37 at 7.) The court further specifically held that determination of successor liability would depend in large part on any fraudulent transfer of assets:[3] "[i]t may be that Geno's transferred all of its assets to NGM to circumvent ERISA and to resurrect an identical business." *NGM,* 2014 U.S. Dist. LEXIS 176004 at \*6. Plaintiffs concede in their Response that they "have not asserted a fraudulent transfer theory" undercuts their reliance on this case. (Dckt. 37 at 122.) And, the court "cautioned against imposing liability on a successor when a predecessor could not have provided any relief when the underlying claims arose." *Id*., citing *Chicago Truck Drivers v. Tasemkin, Inc.,* 59 F.3d 48, 50 (7th Cir. 1995). *NGM* does not allow for a bite at the only solvent apple

---

[3] While Plaintiffs now claim that "Plaintiffs have not asserted a fraudulent transfer theory, and whether transfers occurred is not dispositive" (Dckt. 37 at 12), the Complaint speaks for itself:
- "Upon information and belief, [AMP and AJP] have also received assets from HLF, AMS and IAP." (Dckt. 1 at ¶ 2.)
- "The assets and donors to the *Boim* Defendants were, on information and belief, directly transferred to or comingled with AMP and AJP's assets." (Dckt. 1 at ¶ 53.)
- Not holding these Defendants liable would allow the *Boim* defendants to "shield and transfer assets" to avoid their debt. (Dckt. 1 at ¶ 56.)

later on down the road; it requires the successor to have come after a solvent original defendant.[4] Finally, the court in *NGM* was considering a 12(c) motion for judgment on the pleadings, not a challenge to subject matter jurisdiction.

### C.     Controlling Authority Still Precludes Subject Matter Jurisdiction.

Plaintiffs continue to misrepresent the holdings of this Circuit: Plaintiffs' Complaint asserts jurisdiction under *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1284 (7th Cir. 1996), and Plaintiffs' Response does the same. (Dckt. 37 at 7.)   Contrary to Plaintiffs' assertions that *Central States*' holding "recogniz[es] federal subject matter jurisdiction for enforcement action based on alter ego liability" (Dckt. 1 at 3), the Seventh Circuit found subject matter jurisdiction on the facts before it only because that plaintiff's claims were **not** claims of alter ego, and instead were claims that the new defendant was the "true employer" who committed the original violation giving rise to liability, with control of the relevant actions at the time the violation first occurred.  *Central Transport*, 855 F.3d at 1284.  Plaintiffs still argue in their Response that *Central States* allows their actions here, because it distinguishes the attempt in *Peacock* to "pierce the corporate veil." (Dckt. 37 at 7.)   But Plaintiffs stopped the quote from the *Central States* holding too soon: *Central States* allowed its plaintiff to proceed because he was not claiming alter ego at all, "direct" or not: "[b]y contrast, Central States claims that the defendants exercised 'common control'" at the time of the original violation, and were the true employer all along.  *Central Transport*, 855 F.3d at 1284.  That is more than a minor distinction.  Plaintiffs cannot establish

---

[4] Plaintiffs almost unbelievably assert that "[t]here is no evidence regarding disposition of KindHearts' asserts prior to 2011" or that transfers from Holy Land Foundation may have occurred to AJP and AMP.  (Dckt. 37 at 12.)  However,  Plaintiffs' own complaint, taken as true for purposes of this Motion, alleges that HLF's assets were seized by January 2002 (Dckt. 1 at ¶ 32) and that KindHearts' assets were frozen by the government in 2006 (Dckt. 1 at ¶ 33). Taking Plaintiffs' own pleadings as true, Plaintiffs cannot establish even a possible fraudulent transfer of assets as factually needed to establish subject matter jurisdiction.  There is no "factual dispute" as to these pleadings.

6

that AMP and AJP, entities which did not exist in 1996, were the "true actors" in 1996 controlling the acts which gave rise to liability against the judgment defendants, as this Circuit requires. *Central Transport*, 855 F.3d at 1284. Plaintiffs also cannot lay blame at the feet of the individual Defendants in this matter, or they would have done it in 2000 (or should have tried at that time). Plaintiffs instead admit they attempt to collect a prior judgment *via alter ego*: "[h]aving been unable to collect more than a small fraction of the *Boim* judgment from the named *Boim* Defendants, Plaintiffs should be permitted to recover from the *Boim* Defendants' alter egos and successors, i.e. the Defendants herein." (Dckt. 1 at 2-3.) This is exactly what the Supreme Court and this Circuit prohibit, no matter how badly Plaintiffs want to do it.

**D.    The Facts Still Do Not Support Subject Matter Jurisdiction As To These Defendants.**

"The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers,* 536 F.3d at 656–57. As noted by this Circuit, subject matter jurisdiction exists in these circumstances only if the current Defendants played such a "direct" part in the initial bad acts in 1996 which led to liability, that they were the "true" liable defendants all along. 855 F.3d at 1284. That remains factually impossible.

1.    <u>Abdelbasset Hamayel</u>

Defendant Hamayel first joined IAP as an employee, as office administrator for the Chicago office, in September 1997. (Ex. A to Dckt. 31.) In that position, he reported to the Board of Directors. (*Id*.) He remained an employee until IAP ceased operating, in or around late 2003. (*Id*.) Defendant Hamayel did not hold any positions with AMS. (*Id*.) Defendant Hamayel became a volunteer with AMP in December 2008, and is serving temporarily as an unpaid

Executive Director until a replacement is found. (*Id*.) He was not involved in the founding of AMP or AJP and is not on the Board of Directors for either AMP or AJP. (*Id*.)

Plaintiffs have no more concrete information to add to their allegations against Defendant Hamayel: there is no authority that serving as a "master of ceremonies" and entertainer in 1996 leads to alter ego liability, nor would his position at the Mosque Foundation "since 2007," an entity which is neither a current Defendant or judgment Defendant. (Dckt. 37 at 14). His connections to the judgment defendants postdate the 1996 acts; for the same reasons the Seventh Circuit reversed judgment on the individual in the 2000 matter, Defendant Hamayel could not have been a true actor and this Court therefore has no jurisdiction over the claims against him.[5]

2. <u>Osama Abuirshaid</u>

In September 1996, Defendant Abuirshaid came to the United States as a non-immigrant journalist from his residence in Morocco. (Ex. B to Dckt. 31.) He got married in 1999, to a United States citizen, and they remain married today. (*Id*.) Defendant Abuirshaid became a lawful permanent resident of the United States in 2002.[6] (*Id*.) As with Defendant Hamayel, Defendant Abuirshaid could not have been the "true" actor in 1996 for subject matter jurisdiction purposes in this action, since he did not join any judgment defendant organization prior to 2000, and did not even enter the country until late 1996, after the May 13, 1996 shooting of Stanley Boim.[7] Plaintiffs have no new allegations or supporting evidence relating to Defendant Abuirshaid, and Plaintiffs' allegations against him therefore must be dismissed for lack of subject matter jurisdiction.

---

[5] *Boim*, 549 F.3d at 691.

[6] While not relevant to any allegations in this matter, Plaintiffs continue to imply to this Court that Defendant Abuirshaid's naturalization status depends on his association with IAP, and is therefore relevant to this Motion. (Dckt. 1 at 13; Dckt. 37 at 15.) It isn't.

[7] *Boim*, 511 F.3d at 713.

3. <u>Rafeeq Jaber</u>

Defendant Jaber came to the United States in 1974 at the age of 24, and became a citizen in 1980. (Ex. C to Dckt. 31.) He was a factory worker, working next for Met Life for twenty years, as an insurance agent, then sales manager, then branch manager. He retired from Met Life in or around 1996. (*Id*.) In 2003 and March 2005, Plaintiffs deposed Defendant Jaber. (Dckt. 1 at 9-10, 13.) As Plaintiffs state, he testified in 2005 that IAP and AMS were financially defunct. (*Id*.) There remain no facts alleged showing Defendant Jaber, while working as a branch manager for Met Life, to be the "true" actor for any judgment defendant. If any existed, they would have and should have arisen during the first three trips to the Seventh Circuit on the 2000 lawsuit. Plaintiffs make only more conclusory allegations, without factual support, in their Response, which remain insufficient.[8] (Dckt. 37 at 13-14.) Plaintiffs continue to point to no more than his officer status as reason for his supposed liability; the Supreme Court prohibits this explicitly. *Peacock*, 516 U.S. at 359. Plaintiffs deposed Defendant Jaber twelve (12) and fourteen (14) years ago (Dckt. 1 at 9, 13); Plaintiffs cannot and do not allege any newly discovered "evidence" demonstrating Defendant Jaber's purported alter ego or successor liability status. At most, Plaintiffs' allegations imply that Defendant Jaber helped create new entities to continue the legal, charitable work of IAP and AMS separate and apart from any illegal wrongdoing of those entities;[9] even if true, this does not form a basis for subject matter

---

[8] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion" to dispose of the case prior to trial. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

[9] Plaintiffs woefully misrepresent a differently worded version of this same statement from Defendants' Motion to Dismiss, improperly implying that Defendants admitted to any inappropriate fraudulent transfers. (Dckt. 37 at 2.) Defendants have not and do not admit to any such thing, and Plaintiffs have not alleged sufficient facts to support such an allegation.

jurisdiction.[10]

4. <u>American Muslims for Palestine and Americans for Justice in Palestine Educational Fund</u>

Plaintiffs' implausible implication in their Response that somehow HLF and/or KindHearts funds may have reached AMP and/or AJP (Dckt. 37 at 12) contradicts their own Complaint: in 1996, neither AMP nor AJP existed. AMP was incorporated in 2006. By 2002, judgment defendant HLF's assets were already seized. (Dckt. 1 at 10.) Plaintiffs allege that HLF "continue[d] under a new name," KindHearts for Charitable Relief and Development ("KindHearts"). (*Id.*) Plaintiffs next state that the United States Treasury ("the Treasury") froze the assets of KindHearts in 2006 and called it "progeny" of HLF, providing terrorist support "behind the facade of charitable giving." (Dckt. 1 at ¶ 33.) AJP was formed next, in 2009. The frozen funds of KindHearts were dispersed in 2011 under the watch of OFAC and the Treasury, as shown in public records. Any supposed fraudulent transfer of any assets was not factually possible on the face of Plaintiffs' Complaint. Plaintiffs cannot contradict their own pleadings in an attempt to avoid dismissal.

Per Plaintiffs' Complaint, sworn testimony demonstrates that by 2005 both AMP and AJP "were essentially defunct as a result of the expense of the litigation and judgment in the *Boim* Action." (Dckt. 1 at 10.)[11] Again, this presents a financial and factual dead end precluding jurisdiction: neither AMP nor AJP existed as of the time of the 1996 actions, or the insolvency of judgment defendants IAP and AMS. Therefore, they could not have been the "true" actors in 1996 of the actions leading to liability. AMP and AJP also could not have been "alter egos" or

---

[10] *Christiansen v. Mech. Contractors Bid Dep.*, 404 F.2d 324, 325 (10th Cir. 1968) ("[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation").

[11] Had there been contrary facts, Plaintiffs would have surely used them to collect the judgment.

"successors" by way of fraudulent transfers, from entities which had no assets left before AJP and AMP were even formed. Simply performing a similar charitable purpose is not enough.[12]

For the same reasons, there is no evidence of a "disguised continuance" as Plaintiffs now claim. (Dckt 37 at 10-12.) Under the alter ego analysis, it is not enough to merely allege that a corporation is a 'disguised continuance' of a previous entity; Plaintiffs must show that the factors of common management, business purpose, operations, equipment, and ownership are present. Plaintiffs fail to do so, and their cited authorities do not support their position. In *Sanchez v. Glob. Parking Mgmt., Inc.,* 14-CV-04611, 2015 WL 4429024 (N.D. Ill. July 20, 2015), the words 'disguised continuance' do not appear once, and the facts establishing alter ego are easily distinguishable from those in the case at bar. In *Sanchez*, the office manager and parking lot attendant for 'Global' became the registered agent and managing member of 'Car Parking,' the alleged alter ego: "Car Parking took over Global's business, including using the same signs (with the new company name covering up the old), employing the same individuals, and utilizing the same equipment, labor, management and office staff." *Id* at *1-2. Under Illinois law, "a court may disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity". *Id*. Such a finding of alter ego liability can occur only upon the satisfaction of two criteria: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id*. In *Sanchez*, the court found sufficient facts to justify application of the alter ego theory for reasons not present in the current case: Defendants here do not use the same equipment previously owned by any judgment

---

[12] *Christiansen*, 404 F.2d at 325 ("[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation").

11

defendants, do not have an identical labor force, or the same office space. Although some of the Defendants may be in similar geographic locations, they did not take over the office space or equipment of the judgment defendants, and the commonality of leadership in the organizations is not as direct as in *Sanchez.*

Plaintiffs similarly rely on yet another ERISA case, *Trustees of Sheet Metal Workers Local No. 1 Welfare Trust* v. *Pekin Climate Control, Ltd.,* 669 F. Supp. 2d 924 (C.D. Ill. 2009), but once again the facts alleged in *Pekin* demonstrate a level of commonality that is simply not found in the current facts. The *Pekin* defendants created an entity, 'Pekin Climate Control, Ltd.' where the two sole shareholders of the originally liable entity exercised complete and exclusive control, transferred the first entity's assets to Pekin for inadequate consideration, conducted the same business, used the same assets, occupied the same physical facility and had identical management and employees. *Id*. at 926. Furthermore, the shareholders did not properly wind up the liable entity's business affairs and didn't pay plaintiff the amount owed pursuant to an ERISA judgment. *Id.* Again, none of those same continuances, of using the same space, transfer of assets, and exertion of control by all the same management, exist in the instant case.

Another case relied upon by the Plaintiffs is once again easily distinguishable based on the facts: *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors*, Inc., 831 F.2d 1309, 1313 (7th Cir. 1987). In *Centor*, the alleged disguised continuance, Soil Contractors, had the same address and telephone number, the same two sole shareholders, and the exact same stated purpose of being 'Paper holding companies." *Id*. at 1313. Despite Plaintiffs' contention that current Defendants *are* in fact legal alter egos, as a 'disguised continuance' of the judgment defendants, Plaintiffs fail to demonstrate any actual evidence of the requisite unlawful intent required under the law. The factual similarities which do exist between

the two sets of entities at issue in this litigation fall far short of the level of a "disguised continuance" needed to establish alter ego and successor liability.

What is consistent in cases finding alter ego and successor liability, whether through "direct" or vicarious liability, and whether through a "disguised" or more obvious continuance, are the following key factors: transfer of funds and assets; continuation of the use of the same (not nearby) office space; continuity of employees and staff; and, most importantly, fraudulent intent to deceive on the part of the entity originally found liable. Plaintiffs cannot establish these factors for the reasons set forth above. They argue, instead, that Defendants should not be able to receive donations from "many of the same donors and fundraisers" who contributed to the judgment defendants "instead of using the ongoing funding to pay the *Boim* Judgment". (Dckt. 37 at 11.) This argument illogically presumes that donors, who are giving their money voluntarily, would continue to contribute donations meant for charitable purposes to the no longer functioning judgment defendants, simply in order to pay the Boims. By this logic, any future U.S. charity benefiting Palestinians, for any lawful purpose, should be held liable for the debts of the judgment defendants until the Boims have been fully paid. That is simply not the law.

## IV. Conclusion

In an effort to collect damages from new defendants on an old uncollected judgment, Plaintiffs attempt to rotate facts in and out like musical chairs depending on their theory of the moment. That attempt fails to create subject matter jurisdiction where it doesn't exist. Plaintiffs cannot properly contradict their own pleadings or public records in an attempt to morph their claims to apply where they see money today. Subject matter jurisdiction on alter ego and successor liability, the only claims asserted in this action, requires showing that these Defendants were the "true" or "direct" actors for the underlying 1996 actions leading to liability, or

fraudulently conveyed assets which would have otherwise gone to Plaintiffs, in order to prevent their recovery. The facts required for this jurisdictional showing simply do not exist here. Defendants therefore respectfully request this Court dismiss Plaintiffs' claims in this matter in their entirety, for lack of subject matter jurisdiction.

Dated this 25th day of July, 2017.

*/s/ Christina Jump*
Chares D. Swift
Texas Bar No. 24091964
Christina A. Jump
Texas Bar No. 00795828
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Pro Hac Attorney for Defendants*

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On July 25, 2017, I electronically filed the forgoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

.

*/s/ Christina Jump*
Christina A. Jump