# EXHIBIT 9



111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Allen Woolley
Partner
Direct Telephone: 312-201-2676
Direct Fax: 855-595-1188
allen.woolley@lockelord.com

Attorneys & Counselors

March 9, 2018

<u>Via Email and U.S. Mail</u>
Christina A. Jump
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 East Arapaho Road, Suite 102
Richardson, Texas 75081
*cjump@clcma.org*

Re:   *Boim, et al. v. American Muslims for Palestine, et al.*, No. 17-cv-03591
      Deficiencies in Defendants' Responses to Document Requests and Interrogatories

Dear Christina:

We have received and reviewed your March 5, 2018 package containing defendants' objections and responses to plaintiffs' January 18, 2018 (i) jurisdiction document requests ("DR"); (ii) jurisdiction interrogatories to defendants American Muslims for Palestine and Americans for Justice in Palestine Educational Foundation ("Entity Interrogatories" or "EI"); and (iii) jurisdiction interrogatories to defendants Rafeeq Jaber, Abdelbasset Hamayel and Osama Abuirshaid ("Individual Interrogatories" or "II"), as well as defendants' initial document production ("Document Production") bates numbered Defendants' Production000001-00068. Defendants' responses provide almost none of the information plaintiffs requested and assert numerous objections we believe are not well-founded.

Please let us know when you are available for a telephone conference pursuant to Local Rule 37.2 to discuss and attempt to resolve these issues. We would like to have this conference early next week so that we can file and quickly get a ruling on any necessary motion to compel. To provide a roadmap for that discussion, this letter outlines what we believe at this time to be the most significant deficiencies in defendants' discovery responses. (We reserve the right to identify further deficiencies as they become apparent.)

## General Discovery Issues

<u>Proprietary and Confidential Information</u>. Defendants have objected to several of plaintiffs' document requests and interrogatories on the ground that they seek "proprietary and confidential" information. This is not a valid basis to withhold documents or information. However, if defendants believe some responsive documents or information genuinely falls within

March 9, 2018
Page 2

the categories subject to protection under Seventh Circuit law, we are amenable to entry and appropriate limited use of a confidentiality order generally in the form of Northern District of Illinois Form LR 26.2. Please let us know if you are interested in asking the Court to enter such an order in this case.

Scope of Jurisdiction Discovery. Defendants have objected throughout their responses that plaintiffs' requests exceed the scope of jurisdiction discovery. This objection is misplaced. Defendants' initial jurisdiction motion argued (among other things) that the Court lacked subject matter jurisdiction because plaintiffs purportedly did not have sufficient facts to support alter-ego claims. Each of plaintiffs' DRs and interrogatories is tailored to address exactly that issue, and most tie directly to issues Judge Coleman discussed in her August 18, 2017 opinion. (*See, e.g.,* Dkt 41 at 2-4, 8-10.) Given the nature and broad scope of defendants' arguments, plaintiffs' DRs and interrogatories are appropriate "jurisdiction" discovery. If defendants are withholding documents or information based on this objection, we ask that you withdraw the objection and provide the responsive documents and information.

"Network Entities," "Network Persons," "Respondents," and "Entity Defendants." Defendants have objected to the "characterization" of these terms and that they are vague. We do not believe there is anything unclear about the scope of these terms: "Respondent" is the entity or person responding to the requests; "Entity Defendants" refers to AMP and AJP; and "Network Entities" and "Network Persons" are precisely defined by the lists of entities and persons in the definitions sections of each of the discovery requests. It is not clear whether defendants are withholding documents or information based on these objections or simply making them for the record. We do not believe these objections are a proper basis to withhold anything and request that any withheld documents or information be provided.

Time Periods. Defendants objected to several requests as not reasonably limited in time. We do not understand this objection. Each request (unless otherwise stated) is limited to on or after January 1, 2004. This time period reasonably corresponds to the time period at issue in this lawsuit. If, for some reason, defendants believe the time period presents a particular burden in connection with any specific request, we are prepared to discuss appropriate limitations. Otherwise, please let us know if defendants are withholding documents or information on the basis of this objection. This material should be provided.

"Publicly Available" Documents and Information. Defendants have objected in some cases to providing "publicly available" documents and information. If there are documents and information that plaintiffs can readily access and obtain from public sources, please let us know what the documents and information are and where we can get them. We will consider whether it is appropriate for plaintiffs to collect this information. All other responsive documents and information should be provided.

**Document Requests**

Document Production Generally. Before addressing defendants' particular responses and objections, we note that defendants' entire Document Production is remarkably thin and lacks

March 9, 2018
Page 3

many of the types of documents we believe must exist and expected to receive. For instance, although most of plaintiffs' requests seek documents from 2005 and later, the Document Production does not appear to include a single e-mail or electronic file. It also does not appear to include any correspondence or any of the types of records organizations would typically maintain. Nor is there any indication that any organization's or individual's computers, servers, internet content, or paper files were ever searched in connection with the Document Production. Indeed, nearly all of the 68-page production appears to be formation documents and secretary of state filings. Defendants have an obligation to search and produce responsive documents from their files, email accounts, servers, computers, and other locations where documents or electronically stored information may exist. (*See* my 1/26/18 letter re preservation obligations.) In the case of the Entity Defendants, this includes identifying and working with the potential custodians of such documents and information to ensure that the document collection is complete. To the extent defendants have not completed a proper comprehensive search and collection, this must be done. We would like to discuss with you during the Rule 37.2 conference the steps that defendants have taken (or intend to take) to locate and collect documents and electronically stored information, including the custodians from whom defendants have collected (or intend to collect) documents.

DR 1. Plaintiffs requested documents defendants may use in connection with a motion or hearing to challenge subject matter jurisdiction. This is an appropriate request specifically targeted at any further jurisdictional challenge defendants may assert. Defendants' objections lack merit. If there are documents defendants may rely on, present or introduce as evidence in a jurisdiction challenge (and have not previously been produced or included in prior filings and attachments in this case), these should be produced. Plaintiffs will object to the use of any materials that are not produced.

DR 2. Plaintiffs requested various types of formation documents, certificates, qualifications and other documents filed with secretaries of state on behalf of the Entity Defendants or their chapters, regional offices or affiliates. Some of this material appears to have been included in the Document Production. However, defendants' response asserts several objections, including (apparently) an objection to producing documents relating to chapters, regional offices or affiliates. As with the group of organizations comprising "IAP National" in the original *Boim* case, we believe documents relating to chapters and affiliates are relevant and discoverable—and we note that AMP's website currently lists six regional "chapters." Please let us know if you are withholding any documents based on objections. If so, this material should be produced.

DR 3. Plaintiffs requested documents relating to any organizations (whether or not legally incorporated) pre-existing the formal legal formation of the Entity Defendants. Documents regarding organizations created or existing prior to the incorporation of AMP in 2006 are highly relevant to the issues raised in Judge Coleman's August 18 opinion and should be produced. We do not understand defendants' objections, nor do we believe it is accurate to assert there were no precursor organizations in light of AMP's own contention that it was founded as a "strictly volunteer" organization in 2005 (before it was formally incorporated).

March 9, 2018
Page 4

Defendants need to undertake a proper search of e-mails and other documents (including documents and e-mails in the control of custodians) and produce responsive documents.

DR 4. Plaintiffs requested documents relating to the decisions(s) to form any Entity Defendant or precursor organization. Again, we do not understand defendants' objections. Documents responsive to this request are highly relevant and should be produced. With respect to the decision to form the incorporated AJP and AMP entities, defendants' response references the Document Production. However, the Document Production contains virtually no documents relating to that decision. It is difficult to conceive of these entities being created without generating e-mails, correspondence, notes and other documents. Defendants should do a proper search and produce documents responsive to this request.

DR 5. Plaintiffs requested documents relating to the hierarchy and structure of the Entity Defendants, including documents showing officers, directors, employees, chapters, regional offices, and affiliates. Although Judge Coleman's August 18 opinion referenced this type information, the Document Production contains almost none. This information must exist and should be produced.

DR 6. Plaintiffs requested board of directors materials for the Entity Defendants, including minutes, resolutions, consents, election or appointment of officers, and the like. Defendants have offered to provide this material to the Court for *in camera* review but provide no justification or legal basis for this sort of exceptional treatment. This material should be produced. If defendants have a legitimate confidentiality concern, this should be addressed through a confidentiality order, as discussed above, not by withholding documents.

DR 7. Plaintiffs requested Form 990s, tax returns and other filings with taxing authorities. Defendants refer to the Document Production, but none of these documents are included in the Document Production. This material is highly relevant to plaintiffs' alter ego allegations and should be produced. If there are legitimate confidentiality concerns, these should be addressed through a confidentiality order, not by withholding documents.

DR 8, 9, 10, 18, 27, 28, 29, 30, 31. Defendants assert that they have no documents responsive to these requests. As discussed above, defendants must conduct a proper search of all files, computers, servers, e-mail accounts, internet content and other documents and electronically stored information in order to locate and collect any such material in their possession, custody or control.

DR 11, 12. We received one mission statement (Document Production000065) from AMP in response to these requests for all documents relating to (11) the mission, objectives, purposes, and goals of either Entity Defendant and (12) any statements or positions regarding various issues. Although the Court's August 18 opinion specifically references defendants' "mission" and other issues to which these requests are pertinent, no internet content, materials from conferences, e-mails, publications, or promotional or fundraising materials have been provided. It is readily apparent that this is far from a complete production. Just as an example, AMP currently includes on its website (among other things) a detailed "Statement of Principles"

March 9, 2018
Page 5

and "Our positions on key Palestinian issues," but no versions of these or any related documents have been produced. It is difficult to believe organizations that have held conferences and published and disseminated large volumes of material for more than 10 years have no further documents or e-mails responsive to these requests. Defendants need to do a proper search of their computers, servers, internet content, files and other potential locations of responsive documents and electronically stored information.

DR 13. Plaintiffs requested publications, blogs, web page content, social media posts, communications with donors or sponsors, fundraising documents, advertisements, newsletters, conference materials, translations, re-prints and other documents written, published, posted or distributed by the Entity Defendants. The Entity Defendants have a significant internet presence and have disseminated large quantities of material responsive to this request—much of which is directly relevant to plaintiffs' alter ego claims and the issues addressed in Judge Coleman's August 18 opinion. Yet defendants' response—incredibly—asserts "None in the possession of Defendants." We request that defendants reconsider this position and provide the material requested. If defendants contend this material need not be produced because it is in *someone else's* possession, please identify where it went and why defendants have not retained it.

DR 14, 15, 16, 26. Plaintiffs requested various documents relating to the Entity Defendants' meetings, conferences, events, speakers, sponsors, conference attendees, fundraising activities and appearances at other events. Defendants object and apparently are not producing any responsive documents. This material is directly relevant to plaintiff's alter ego allegations and should be produced.

DR 17. Defendants have objected to providing documents that would identify specific donors. This information is relevant to a number of plaintiffs' allegations, including that there many donors to the Entity Defendants and the *Boim* Defendants are the same or related. (*See* Dkt 41 at 8.) If you have authority for protecting "privacy rights" of donors in a lawsuit where the identity of those donors is directly relevant, please provide it. Otherwise, any legitimately confidential information (which may or may not include donors) should be addressed through a confidentiality order, not by withholding responsive information.

DR 19. Plaintiffs requested information relating to defendants' websites, blogs, social media accounts and internet domain names. This request is reasonably calculated to lead to the discovery of admissible evidence. Legitimate confidentiality concerns can be addressed through a confidentiality order. Otherwise, responsive documents should be provided.

DR 20. Plaintiffs requested documents relating to defendants' relationships, dealings, contracts, communications, sponsorship, support, affiliation, sharing of leadership or personnel, or transfer of funds with Network Entities and Network Persons. Defendants refuse to provide any documents in response. These documents are relevant (among other reasons) to show that defendants' role and interactions within a network of persons or entities was a continuation of the role and interactions of the *Boim* Defendants. None of defendants' objections provides a basis for their wholesale refusal to produce this material.

March 9, 2018
Page 6

DR 21.  Plaintiffs requested documents related to the use, recipients and disposition of funds raised by the Entity Defendants, including funds raised on behalf of other organizations. Plaintiffs believe this information will (among other things) show continuity between the *Boim* Defendants' fundraising efforts and defendants'—and will rebut the Entity Defendants' contention that their sole mission is education within the United States. Again, any confidentiality concerns should be addressed with a confidentiality order, and we are unaware of any "privacy rights" that would outweigh plaintiffs' need for this information.

DR 22, 23.  Defendants refuse to produce documents relating to (22) transfers of funds between AJP and AMP and (23) copies of *Al-Zaytounah* and *Al-Meezan* based on purported overbreadth and burden objections.  These requests (among other things) relate to plaintiffs' allegations that AJP is the "fundraising arm" of AMP and that defendant Abuirshaid quickly replaced IAP's newspaper with AMP's newspaper, serving essentially the same function and carrying largely the same message.  This material is discoverable and should be produced.

DR 24.  Plaintiffs requested documents relating to conferences held by IAP or either Entity Defendant.  Defendants refuse to provide any documents relating to conferences held by the Entity Defendants and assert that they have no documents relating to conferences held by IAP or the cessation of such conferences.  There is no basis to withhold documents responsive to this request.  These documents are relevant to numerous aspects of plaintiffs' alter ego claims, including their allegation that AMP effectively replaced the IAP annual conference with its own in 2006 and that the agendas, speakers, sponsors, attendees and purposes were similar.  With respect to IAP conference material, defendants have an obligation to conduct a proper search and document collection to determine if any of this material remains in their possession, custody and control.  This search should encompass documents and electronically stored information in the possession, custody and control of the Individual Defendants, the Entity Defendants and all custodians for the Entity Defendants.

DR 25.  Plaintiffs requested documents relating to a 2015 event in Detroit referenced in an article available on the internet, which purportedly raised approximately $200,000 for charitable purposes in Gaza.  Defendants purport to take issue with plaintiffs' characterization of the event having been "sponsored by AMP," but admit AMP played a role in the event. Defendants' disagreement with plaintiff's characterization of AMP's role is not a basis to withhold documents relating to this event.  These documents should be produced.

DR 32.  Plaintiffs requested documents supporting or relating to the Individual Defendants' declarations in support of defendants' jurisdiction motion.  Defendants appear to be withholding documents that "unreasonably invade the privacy rights of the Individual Defendants."  This is not a legitimate basis to withhold documents that directly relate to defendants' declarations.  If defendants are withholding responsive documents on this basis (or any other basis), these should be produced.

DR 33, 34.  The Individual Defendants refuse to produce documents relating to (33) travel to the Middle East to participate in meetings, conferences or events and (34) Abuirshaid's attendance at conferences for PalesAbroad.  These documents are relevant to show (among other

March 9, 2018
Page 7

things) defendants' ongoing support for pro-Palestinian organizations overseas and to rebut the Entity Defendants' contention that their sole mission is education within the United States. Again, the Individual Defendants' purported "privacy rights" are not a legitimate ground to withhold this material; it should be produced.

DR 35. This response, and the Document Production, should be supplemented to encompass any documents identified, referred to or relied upon in preparing any supplements to defendants' responses to interrogatories.

Privilege Log. If you are withholding any documents or information based on any privilege or other protection, please provide a privilege log.

Inadvertent Production. Plaintiffs do not agree to your position with respect to purported inadvertent disclosures or production of documents and reserve all rights.

**Interrogatories**

EI 2/II 2. Plaintiffs requested the identities of witnesses who may provide testimony or declarations in connection with any challenge to subject matter jurisdiction. This request is not overly broad, nor does it seek privileged information. If defendants may use additional witnesses to support a jurisdiction attack, plaintiffs are entitled to know who those witnesses are and what subject matters they may cover in their testimony—defendants should provide this information now or supplement as soon as they identify a witness. If, as defendants represent in their responses, defendants are *not* going to submit additional declarations, then no further response to these interrogatories is required. However, plaintiffs will seek to strike any declaration or testimony offered in support of a jurisdiction motion beyond the three declarations previously filed and referenced in defendants' response.

EI 3. Plaintiffs requested that *each* Entity Defendant identify (for every year since its inception), all members of its board, officers, other employees, chapters, offices, locations, affiliates, regional operations and divisions. Defendants have provided a list of AJP's past and present employees. There is no information about AMP's employees or either entity's directors, officers, chapters, offices, locations, affiliates, regional operations or divisions, nor is there any information about the time periods during which the employees served. This information is discoverable and relevant to plaintiffs' allegations and the issues raised in Judge Coleman's August 18 opinion. We request that defendants supplement their responses to provide all the information requested.

EI 4. Plaintiffs asked for a description (including changes over time) of the structure and hierarchy of both Entity Defendants, including leadership, reporting structure, responsibilities of managers, officers and employees. This interrogatory is directly relevant to plaintiffs' alter ego allegations and issues discussed in the Court's August 18 order, but defendants' response provides almost none of the information requested. Instead, the response states that AMP and AJP are "small non-profit" entities that do not have detailed organizational structures, while failing to describe even the purportedly non-detailed organizational structures and leadership. It

March 9, 2018
Page 8

then refers to the Document Production, but the documents produced contain virtually no responsive information. We are entitled to the information requested in this interrogatory and request that defendants provide a supplemental response.

EI 5. Plaintiffs requested a description of the creation and formation of each Entity Defendant, including the date and place of incorporation, any voluntary or unincorporated organizations pre-existing the formation of the entity, all persons involved in the creation of the entity, and all documents relating to the entity. Again, this information is directly relevant to plaintiffs' alter ego allegations and issues discussed in the Court's August 18 order, but defendants' response contains virtually none of the information requested. Defendants reference the Document Production, which include certain formal incorporation filings. However, these documents do not provide any descriptions, do not identify all persons involved, do not describe unincorporated organizations that may have pre-existed the legal entities (such as the "strictly volunteer" organization AMP says was founded in 2005), and do not identify all related documents. We request that defendants provide the requested information.

EI 6. Plaintiffs requested physical addresses including office suite numbers for all locations where each Entity Defendant has maintained offices or conducted operations, including locations used by any chapter, regional office, division, affiliate or representative. Defendants' response lists seven street addresses but provides no suite numbers. In addition, the list appears to be incomplete. For example, AMP's website currently lists "chapters" in Wisconsin, Minnesota, Michigan and New York, but no addresses in these states are included in the response. Plaintiffs request that defendants supplement their response to include a complete response.

EI 8/II 6, 7. Plaintiffs requested that defendants identify relationships, affiliations, sharing of leadership or personnel, contracts, dealings, employment, volunteer roles, officer or director positions, speaking engagements, communications, sponsorship, support or transfers of funds with any Network Entity or Network Person. This information is central to plaintiffs' allegations that the Entity Defendants effectively occupy the same place in a network of entities and persons as the *Boim* Defendants, sharing (among other things) leadership, donors, sponsors, affiliates, and connections to Hamas-affiliated organizations. Defendants' objections to this interrogatory are without merit. Even if defendants disagree with plaintiffs' characterization of the entities and persons at issue as "Network Entities" and "Network Persons," it is completely clear who those persons and entities are—they are specifically listed in the definitions. There is no valid reason defendants cannot provide meaningful and complete responses to these interrogatories. Plaintiffs request that defendants supplement their responses to provide the information called for.

EI 9. Plaintiffs requested that defendants identify persons, entities and organizations to which the Entity Defendants have provided funding or support for fundraising. Again, this information is central to plaintiffs' alter ego allegations, and defendants have not identified one single responsive person, entity or organization. There is no valid basis for refusing to provide the requested information. If there are legitimate confidentiality concerns (which we do not

March 9, 2018
Page 9

concede), these should be addressed through a confidentiality order, not refusing to produce the information, and we are not aware of any "privacy right" that would prevent disclosure of the recipients of funding. Defendants should supplement their responses to answer this interrogatory.

EI 10. Plaintiffs requested that the Entity Defendants identify their donors, sponsors and funders and indicate whether those donors, sponsors and funders ever provided funds to any *Boim* Defendant. Again, defendants have refused to identify a single donor, sponsor or funder, without any valid objection to this important interrogatory. Defendants should provide a complete response, addressing legitimate confidentiality or privacy concerns (if any) through a confidentiality order.

EI 11. Plaintiffs requested that the Entity Defendants identify speakers, presenters and moderators who have appeared at their conferences, meetings or events. This information is directly relevant to (among other things) plaintiffs' allegation that the Entity Defendants continued to use the same or similar speakers and continued to espouse the same ideology and address the same audience as the *Boim* Defendants. Defendants' overbreadth objection is without merit and does not justify their complete refusal to answer. Plaintiffs request that defendants provide a supplement properly answering this interrogatory.

EI 12/II 4. Plaintiffs requested that defendants identify their websites, blogs, social media accounts and internet domain names, as well as persons who administer, manage, edit, provide content, or have authority to post, delete or supplement content. Defendants have identified two AMP domain names but have otherwise refused to provide any of the requested information—including any information whatsoever about blogs and social media. Defendants' websites, blogs and social media are an important source of information and evidence regarding defendants' ideology, positions, conferences, speakers, fundraising and activities; the information sought in this interrogatory is relevant and reasonably calculated to lead to the discovery of admissible evidence on issues critical to this case. If defendants have legitimate confidentiality or privacy concerns, these should be dealt with through a confidentiality order, not by withholding documents. Plaintiffs request that defendants supplement their responses to provide the requested information.

II 5. Plaintiffs requested—to the extent *not* already covered in their declarations—that the Individual Defendants state their place of birth, list the cities and countries where they resided, state when they first moved to the United States, and provide dates of travel to the United States prior to December 31, 1996. This basic background information is not fully disclosed in the declarations but is necessary (among other reasons) to assess the timing of events covered in the declarations and, in particular, the credibility of the Individual Defendants' claimed non-involvement with the *Boim* Defendants prior to late-1996 (an issue they themselves raised). Plaintiffs request that the Individual Defendants provide a supplement with a proper answer to this interrogatory.

II 8. Plaintiffs requested certain information regarding Irshaid's attendance at PalesAbroad conferences, including two particular conferences he is known to have attended in

March 9, 2018
Page 10

Istanbul and Aman, Jordan. This basic information is discoverable and certainly reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs request that Irshaid provide a supplement containing a proper answer to this interrogatory.

<div align="center">*** *** ***</div>

Defendants' initial responses to our written discovery were disappointing and uniformly refused to provide documents and information that are discoverable and targeted at the issues raised in defendants' initial jurisdiction motion and the Court's August 18 opinion. While we are prepared to discuss defendants' legitimate objections and requests for limitation of the scope of particular requests, we believe the bulk of the objections and refusals to answer in these initial responses are not well-founded. Unless we can agree on a significant supplement to the initial responses that addresses the many deficiencies outlined in this letter, plaintiffs will need to move to compel.

In order to keep the jurisdiction discovery process moving quickly, we would like to have our Local Rule 37.2 conference as soon as possible, preferably in the first half of next week, so that we can file the motion if necessary. Please let us know when you and your team can be available. We look forward to hearing back from you.

Very truly yours,

W. Allen Woolley

WAW/crv

68186433v.1

# EXHIBIT 10

## Woolley, Allen

| | |
|---|---|
| **From:** | Christina Jump <cjump@clcma.org> |
| **Sent:** | Tuesday, March 27, 2018 6:29 PM |
| **To:** | Woolley, Allen |
| **Cc:** | Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift |
| **Subject:** | RE: Correspondence is attached (1 of 3) |
| **Attachments:** | Defendants' Production 000001- 000068_Redacted.pdf |

Counsel:

Regarding your earlier correspondence of March 9, please see the attached supplemental production. Please note in this regard that, while we are re-producing the pages previously produced (numbered 000001- 000068) and have redacted some information which was inadvertently not redacted previously (such as the routing number on the copy of a check which was included, for example), the substance and order of these pages themselves has not changed. We further are producing documents labeled 000069-000456, which were not produced with the earlier responses.

In addition, we plan to make further production, of primarily further social media presence, by the end of this week. This has been delayed due to the practical logistical difficulties of getting things on a screen to appear the same way on a page (which, oddly enough, screen shots do not always accomplish).

As to your statements throughout the letter of March 9, I expect that we can best revisit remaining issues, if any, once you have had an opportunity to review the supplemental production, as it may answer many of your questions. In that vein, please note the following facts:

The original production (000001-000068) includes all of the names of the Officers and Board members of AMP and AJP. In particular, those are summarized below for your convenience, though this information is contained within the originally produced documents:

- AJP was incorporated on November 16, 2009.
- Per the produced by-laws, the Officers and Board members at inception were as follows:
  - Hatem Al-Bazien, President
  - Munjed Ahmed, Treasurer and Vice President
  - Sandy Stephan, Secretary
  - Board members Hatem Al-Bazian, Munjed Ahmed, Hussein Khatib, Osama Abuirshaid, Salah Sarsour and Shakeel Syed
- Also per the included by-laws, these Board members retained their positions for five (5) years or until a qualified replacement for the position is elected.
- Those holding these positions remained in them as of August 2017, as reflected in the filing with the Illinois Secretary of State, also previously produced.
- AMP was incorporated on August 2, 2006, in California, as per the original production.
- AMP's 2009 filings with the Secretary of State list its officers as Hatem Al-Bazian, Awad Hamdan and Dean Salem, and in 2013 list Hatem Al-Bazian as CEO/Chief Financial Officer, and Munjed Ahmed as Secretary; these facts are referenced in the originally produced documents as stated.

This information has been available to you in the document production all along, despite your assertions in your March 9, 2018 letter that as to "documents showing officers, directors, employees" and the like, "the Document Production contains almost none." As specifically identified in this email and as you can confirm by your own review, it is all there in the original batch of documents. The same is true as to the list of employees identified in the interrogatory responses, which is not set forth here again but was provided to you on March 5, 2018.

Please also note that we may still disagree as to the scope of discovery permitted at this juncture. Information which may be normally "reasonably calculated to lead to the discovery of admissible evidence" in full, standard discovery during litigation, as you reference in your letter, is still not the same as applicable here. The Court ordered "limited jurisdictional discovery" "solely to address jurisdiction" "on the existence of an alter ego relationship" between these Defendants and any original Boim 2000 judgment defendants. *See* Dckt. 50 and 51. Your pleadings are clear, as was the Court's order, that the relevant view is as to the connection (if any) between AJP. AMP, Rafeeq Jaber, Abdelbaset Hamayel and/or Osama Abuirshaid, and fraudulently transferred assets (if any) of the *Boim* 2000 judgment defendants (in relevant part, IAP, AMS, and HLF, as alleged in Plaintiffs' Complaint in this matter). This is not full discovery. The Court granted this limited jurisdictional discovery not because it perceives its legal analysis from the Order granting the Motion to Dismiss to be in error, but because of the "weight [given] to defendants' declarations" without affording plaintiffs discovery as to the assertions in those declarations. Dckt. 50.

You now have that. While you may wish that these defendants had retained every email or other document they once had from 2006 or 2009 when AMP and AJP were formed, they were not defendants at the time and were under no obligation to do so. AMP and AJP were not either. The same is true as to your request for details as to the arrival in the United States of the individual defendants: they had, at the time they arrived here decades ago, no obligation to retain the information you now seek. And, financial transfers, if any, between AJP and AMP will not give you the "look back" you are hoping exists as to any connection between these five current defendants and the prior, and underlined Boim 2000 judgment defendants and their former assets. All the same, we have now produced, per the attached, 990s as to AJP and AMP (redacted to protect the privacy rights of the donors to AJP, who have no obligation to donate and whose donations cannot, therefore, be considered in any way to be "assets" of the *Boim* 2000 judgment defendants, even if there were any potential overlap in those who have chosen to give to each organization). As to documents on social media, those were and remain available to anyone with internet access; nonetheless, we have produced more, and will continue to do so as noted above.

We are further under no obligation to accept, and do not accept, your overly broad, inapplicable and unfounded creation of your "Network Persons" and "Network Entities" definitions. Despite our valid objections to these irrelevant groupings, we have answered, quite plainly, that "there were no 'precursor organizations' of AMP or AJP" (Responses to Requests for Documents Nos. 3 and 4); that these defendants have "none" of the documents "relating to the *Boim* Judgment enforcement efforts in connection with the *Boim* Judgment", or "any actual or potential criminal investigation or prosecution of any *Boim* Defendant", or "the cessation of the operations, wind-up or dissolution of any *Boim* Defendant", or "any Assets that at one time were owned or possessed by any *Boim* Defendant and that, at any time, were received (directly or indirectly) or came to be possessed or owned by" these current defendants (Responses to Requests for Documents Nos. 8, 9 and 10). You may not like the answers, but they are there, and they are clear.

Please advise as to what, if any, disagreement remains once you have had the opportunity to review the additional documentation, as well as the previously produced information which is pointed out in the body of this email, above. The documents will be attached in 3 waves of emails, this being the first, and as a complete set are numbered 000001-000456. Please also advise if you do not receive this full range.

Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Monday, March 26, 2018 8:48 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Roe, Colleen <CRoe-Valleau@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>
**Subject:** RE: Correspondence is attached.

Sounds good. Why don't I take a look at whatever you send and propose a time Wednesday or Thursday morning?

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, March 26, 2018 8:46 AM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift
**Subject:** Re: Correspondence is attached.

Yes, that works. I am out of the office Thursday as of 3:00 pm (and we are closed Friday), but am in the office and flexible earlier Thursday and on Wednesday as well.

Christina A. Jump

On Mar 26, 2018, at 8:42 AM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Christina,
>
> I am out of the office this week but can be available for a call during the mornings. However, if you are planning to provide supplemental material, it might make more sense to do it after I've had a chance to review. Would Wednesday or Thursday work?
>
> Best,
> AW
>
> **From:** Christina Jump [mailto:cjump@clcma.org]
> **Sent:** Friday, March 23, 2018 1:16 PM
> **To:** Woolley, Allen; Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen
> **Cc:** Charles Swift
> **Subject:** RE: Correspondence is attached. [LL-01.FID3847873]
>
> Yes. I will be in the office Tuesday of next week, if that works for you.
> While we disagree with many parts of your recent letter, we will also provide some supplemental materials by then, which may resolve the issue as well. We will work to get those to you prior to Tuesday in the event a call becomes unnecessary.
>
>
>
> *Christina A. Jump*
>
> Civil Litigation Department Head
> Constitutional Law Center for Muslims in America
> 833 E. Arapaho Rd., Suite 102
> Richardson, TX 75081
> (972) 914-2507 (main)

(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Friday, March 23, 2018 12:55 PM
**To:** Christina Jump <cjump@clcma.org>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>
**Subject:** RE: Correspondence is attached. [LL-01.FID3847873]

Christina,

I wondered whether you have had a chance to review my March 9 letter. We would like to schedule a discovery conference. Can you let us know when you could be available?

Thank you,

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, March 13, 2018 9:04 AM
**To:** Roe, Colleen; Woolley, Allen; Kind, Michael; Fliegel, Joshua
**Cc:** Charles Swift
**Subject:** Fwd: Correspondence is attached.

Counsel:


As indicated in my out of office response, please be advised that I am out of the office all week. I will contact you, and respond to your letter, when I return.


Thank you.

**From:** Roe, Colleen [mailto:CRoe-Valleau@lockelord.com]
**Sent:** Friday, March 09, 2018 3:51 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Subject:** Correspondence is attached.

4

Ms. Jump,

The attached document is sent on behalf of Allen Woolley.

Please direct any comments to Mr. Woolley (<u>allen.woolley@lockelord.com</u> or +1.312.201.2676).

Thank you.

*Colleen Roe-Valleau*



---

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit <u>www.lockelord.com</u>

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# EXHIBIT 11



111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Allen Woolley
Partner
Direct Telephone: 312-201-2676
Direct Fax: 855-595-1188
allen.woolley@lockelord.com

Attorneys & Counselors

April 3, 2018

Via Email
Christina A. Jump
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 East Arapaho Road, Suite 102
Richardson, Texas 75081
cjump@clcma.org

    Re:   *Boim, et al. v. American Muslims for Palestine, et al.*, No. 17-cv-03591
            Deficiencies in Defendants' Responses to Document Requests and Interrogatories

Dear Christina:

    We just received your flash drive containing defendants' full production up through 002593. We have not yet reviewed this material, but I understand from your March 27 e-mail that it is social media content that is already available to anyone with internet access.

    We have received and reviewed your March 27 e-mail and the productions through 000456. Based on this, it appears there still will be substantial deficiencies in defendants' responses to our written discovery, even with the additional social media material. Can you please let me know when you could be available this week by telephone for a Local Rule 37.2 conference to discuss these issues?

    The principal deficiencies we need to discuss are listed in my March 9 letter. I do not think I need to cover them again in writing ahead of the call, other than to note that the bulk of them do not yet appear to have been addressed. However, I do want to respond to your suggestion that the scope of the jurisdictional discovery authorized by the Court is limited to "the connection (if any) between AJP. AMP, Rafeeq Jaber, Abdelbaset Hamayel and/or Osama Abuirshaid, and fraudulently transferred assets (if any) of the Boim 2000 judgment defendants." This is not an accurate characterization of the Court's orders or our prior pleadings.

    We fully recognize that the Court permitted plaintiffs to conduct discovery at this juncture "on the existence of an alter ego relationship … solely to address jurisdiction." [Dkt 50] For that reason, we did not issue full-fledged written discovery, but targeted each of our written

April 3, 2018
Page 2

discovery requests at the alter ego issues discussed in plaintiffs' initial complaint and the Court's (now-vacated) August 18, 2017 Memorandum Opinion and Order. Nothing in our pleadings or the Court's opinion limited the alter ego issues to fraudulently transferred assets, as you suggest. To the contrary, and for example, the alter ego issues referenced in the Court's opinion include (among others):

- the establishment of AMP and persons involved;

- the location of AMP's offices;

- AMP's "mission";

- the establishment of AJP;

- the leadership (and overlap of leadership) of the Boim Defendants, AMP and AJP;

- the donors (and overlap of donors) between the Boim Defendants and AMP/AJP;

- Jaber's roles (including as tax preparer) with AMP/AJP, the Boim Defendants and the Bridgeview Mosque;

- Hamayel's role with AMP/AJP, IAP, KindHearts and the Mosque Foundation;

- Abuirshaid's role with AMP, IAP (and their newspapers);

- the timing and nature of the individual defendants' involvement with the Boim Defendants (including the chronology of their coming to the United States);

- overlapping employees, representatives, and speakers between the Boim Defendants and AMP/AJP;

- the IAP and AMP annual conferences;

- nefarious intent or unlawful motive;

- the structure and hierarchy of leadership of the Boim Defendants and AMP/AJP;

- transfer of assets between the Boim Defendants and AMP/AJP;

- the degree of dominance or control over the Boim Defendants; and

- whether AMP/AJP are a disguised continuance of the Boim Defendants.

April 3, 2018
Page 3

[See Dkt 41 at 2-3, 8-10]  Based on our pleadings and the Court's opinion, our requests are fully appropriate for jurisdiction discovery regarding the "existence of an alter ego relationship." [Dkt. 50]  Defendants' scope objection is not well-taken.

I look forward to discussing our particular discovery requests with you this week.

Very truly yours,

W. Allen Woolley

WAW/crv

68406813v.1

# EXHIBIT 12

**Woolley, Allen**

| | |
|---|---|
| **From:** | Christina Jump <cjump@clcma.org> |
| **Sent:** | Wednesday, April 04, 2018 5:00 PM |
| **To:** | Woolley, Allen |
| **Cc:** | Roe, Colleen; Charles Swift; Landes, Stephen; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) |
| **Subject:** | RE: Please identify any remaining issues. [LL-01.FID3847873] |

Please note the following:

- I am available between 2:00 and 4:00 central time on Friday. Please let me know if you are as well.
- I never state anywhere in my email that written notice is required by the local rules, but instead that good faith is required. I can't meaningfully prepare for a conversation based on the first letter, after we have produced hundreds of pages of documents and I too took the time to compose a detailed communication to you (mine was also single spaced). Nonetheless, with the enumerated portion of your last email, we can schedule a time to discuss, as noted above.
- The names provided in my March 27 email for Board members, officers and employees came from the documents produced on March 5. They don't need to be sworn in my email, as our clients submitted verifications which reference those documents which were simultaneously provided with the March 5 responses. My email distills what you already had, in case you missed it in the first round of documents.
- You are correct that we submitted tax records and social media documents. That's because you asked for tax records and social media documents in your March 9 letter. There are other documents in the production too. Glad to discuss on Friday.
- This lawsuit was filed May 17, 2017. Prior to that, our clients were not defendants. I am unclear as to the legal basis for your implication that Twitter documents back to February 2017, which we provided, are somehow insufficient. If I am missing something, feel free to let me know. Otherwise, our clients were under no legal preservation duty prior to the filing of this lawsuit.
- Correct, no emails on the creation of AJP and AMP were produced. Those events occurred in 2006 and 2009. Emails from that time were not, in the ordinary course of business, retained, either by the individual or entity defendants in this matter. The only emails since the inception of the lawsuit which reference the creation of either entity are with counsel and therefore privileged attorney-client communications after the fact. Nonetheless, even those privileged communications do not show the mindset or efforts made at the time the entities were created, since emails with counsel are from 2017 forward, not from 2006 and 2009.
- Nonetheless, you have the full and detailed statement of mission, and hierarchy, and officers and board members, in the documents produced. Should you doubt that you have those, I will be glad to point you to the exact bates label numbers on Friday. I do not have those documents in front of me at the moment.
- As to the 990s, check again. We produced some for AMP as well. Again, I will be glad to give you the page numbers on Friday if you need that. As to why there aren't as many tax documents produced for AMP, please also note that you have been provided with the Secretary of State filings showing that AMP became merely a d/b/a of AJP. The documents in your possession state when that occurred.
- As to the donors, nothing in the Court's order permitting limited discovery or prior rulings indicates agreement with you that voluntary donors of subsequent charitable organizations are in fact supportive of subject matter jurisdiction, whether you allege that or not. The privacy concerns of those donors, who are under no obligation to donate, is a very real concern. However, you may note I did not redact the <u>amounts</u> of each donation or the <u>number</u> of donors, thereby providing you with the accurate picture that AJP receives donations from many sources, in widely varying amounts. As to the names of each donor, we simply disagree on the discoverability of that information.
- Key here, and overlooked by your analysis below, is that you have all of the formation documents, including the tax documents for all years to date, the by-laws and full mission statement, stating where the entities began,

what the hierarchy is, what the purpose is, and with what amount of assets they began. That is what matters most on the alter ego issue. In case that were insufficient in your eyes, the interrogatory responses clearly and plainly state as well that neither AJP nor AMP received any assets from any prior *Boim* judgment defendant, nor did the individual defendants.

To alleviate any remaining concerns or confusion, we will provide amended Interrogatory responses which specifically point to any and all documents produced which contain the responsive information. I will do my best to get that to you prior to Friday, but cannot guarantee that will logistically be possible. Nonetheless, the supplemental Interrogatory responses will simply reflect the information already provided, spelled out clearly and with specific page references to the documents produced.

Please confirm if and when between 2:00 pm and 4:00 pm on Friday you are available.

Thank you.


*Christina A. Jump*
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)


**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Wednesday, April 04, 2018 1:08 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Roe, Colleen <CRoe-Valleau@lockelord.com>; Charles Swift <cswift@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) <alyza@lewinlewin.com>
**Subject:** RE: Please identify any remaining issues. [LL-01.FID3847873]


Dear Christina:

I am generally available Friday to confer about discovery issues. If it works for you, why don't we schedule the call for early afternoon (1:30pm) that day?

With all due respect, there is nothing in Local Rule 37.2 that requires a party to provide a written itemization of deficiencies in advance of the required telephone consultation—and certainly nothing that requires a series of such letters. We voluntarily invested significant effort preparing a 10-page, single-spaced letter on March 9 because we hoped the letter would focus and streamline the LR 37.2 discussion. In response, you provided an (unsworn) e-mail with some further explanations and some additional documents—consisting almost entirely of social media downloads and AJP's tax documents. While we appreciate receiving this supplemental material, defendants still have addressed very few of the issues raised in my March 9 letter. These issues need to be addressed, and the letter provides a good framework

for doing so. No purpose would be served by re-doing the letter or delaying our conference—and, again, nothing in LR 37.2 requires us to provide anything in writing in order to have the conference or file a motion to compel.

That said, I do have some additional questions and comments relating to the supplemental production that may help with preparation for the discussion:

1. While somewhat voluminous, the additional documents you provided still do not evidence that defendants have conducted an appropriate search and collection. We see no indication that: appropriate custodians were asked for records; that e-mails were searched (indeed, it does not appear a single e-mail was produced); that hard drives, computers or network servers have been imaged or searched; that cloud storage was searched; that paper records from all of defendants' locations were searched; that financial and other organizational records were searched; that all social media accounts and internet content for all defendants were searched. We do not believe defendants can properly respond to our document requests without undertaking these searches.

2. Your March 29 e-mail addresses the identities of board members and officers over time. However, it is not attested under oath and does contain any information about employees, hierarchy, reporting structure, responsibilities, chapters, regional offices, locations, divisions or affiliates (DR 5, EI 3, EI 4). We are entitled to complete responses to these requests.

3. We received Form 990s for AJP but have received no tax documents for AMP. If there are such documents, they should be produced.

4. You provided PDF files containing what appear to be downloads from (i) AMP's Twitter feed; (ii) AMP's website; (iii) a YouTube menu screen purporting to list AMP videos; and (iv) AMP's Facebook account. This does not appear to be a complete production for several reasons that we need to discuss with you:

   a. The PDF files appear to contain no (or incomplete) metadata or other information that permits us to conduct a forensic analysis of their authenticity, reliability, timing or origin.

   b. The YouTube screen does not contain the videos themselves, and neither these videos or any other videos from defendants have been produced.

   c. The Facebook feed appears to have downloaded incorrectly, leaving most of the page blank and cutting off the content on the left side of the page. I suspect this was inadvertent, but it makes the material impossible to read. (*See* Bates 1931-2526)

   d. The Twitter feed goes back only to February 2017. It is not clear how far back the Facebook feed goes because it is illegible. Is this all that remains? What was done to preserve this material after the lawsuit was filed?

   e. There does not appear to be any social media, blog, web site, or other on-line material for any defendant other than AMP. Do the individual defendants or AJP

have any material?  Do we have all material for AMP?  We need a proper response to EI 12/II 4 to identify all websites, blogs, social media accounts, and internet domain names—as well as the content from all sources.

5. The Form 990s redact the identities of donors.  Overlap of donors was specifically part of the alter ego allegations, and this redaction is not appropriate.  In addition, the 2015 Form 990 is watermarked "DO NOT FILE," and we do not appear to have the final version.

I look forward to hearing back from you and hope we can have a call Friday to resolve and narrow some of the discovery issues.

Best regards,

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Wednesday, April 04, 2018 9:22 AM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Charles Swift; Landes, Stephen; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com)
**Subject:** Please identify any remaining issues.

Counsel:

Please know that I am out of the office today. I do have some availability on Friday, if a call is feasible for you then.

**However, I will need to know prior to any call what has changed based on the supplemental production.** Please do not just resend me, or simply refer to, your March 9 letter. **Please itemize what you believe has not been provided since the most recent production of many hundreds of pages, including what is enumerated in my detailed March 27 email, with bullet points that identify much of what you claimed was missing.**

It is both fruitless and not in compliance with the Rules to try to have a call without addressing those developments first. We cannot have a meaningful Rule 37.2 conference without that. You state below that you "are prepared to move forward with the Rule 37.2 conference" now; without that updated communication from you, I am not.  The lack of substantively addressing the supplemental email and materials does not show "good faith attempts to resolve differences" as required by the Local Rules.  I remain fully willing to attempt to resolve any remaining issues, but in order to do that **I need to know what they are.**

This is not an unreasonable request.

<u>If (and only if) I receive that information from you by close of business today, we can have a call Friday
(presuming there is a mutually available time).</u> If not, we can have a call next week, as long as I receive that
information from you by close of business Friday.

Thank you. I look forward to receiving that necessary updated communication, now that you have had a chance
to review all supplemental production.


Christina A. Jump

On Apr 3, 2018, at 3:03 PM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Christina,
>
> I have now gone through the additional material we received today and believe I have a
> fairly good understanding of what was included.  Although I do have a few questions
> about the collection of the social media material, the bulk of the issues we need to
> discuss from my March 9 letter relate to other issues, and we are prepared to move
> forward with the Rule 37.2 conference.  In the interest of completing the jurisdiction
> discovery phase expeditiously, we would like to get this on the calendar for this week if
> possible.  If you could let us know when you are available, I would appreciate it.
>
> Best regards,
>
> **W. Allen Woolley**
> Partner
> Locke Lord LLP
> 111 South Wacker Drive
> Chicago, Illinois  60606
> T: 312-201-2676
> C: 773-255-1542
> F: 312-416-4856
> allen.woolley@lockelord.com
> www.lockelord.com
>
>
> **From:** Christina Jump [mailto:cjump@clcma.org]
> **Sent:** Tuesday, April 03, 2018 1:26 PM
> **To:** Woolley, Allen
> **Cc:** Roe, Colleen; Charles Swift
> **Subject:** RE: Correspondence is attached.
>
> Thank you for your correspondence, and confirmation of your receipt of the flash drive containing, as
> previously indicated, primarily social media printouts.  I do not believe that a conversation is appropriate
> until after you have fully reviewed all supplemental materials, and can then itemize what deficiencies
> you believe still remain.  Your letter indicates that has not yet happened; as such, any conversation
> would be premature and not in compliance with the spirit of the referenced rules.
>
> Please advise when that has occurred and we will be glad, after review of any remaining identified
> deficiencies communicated, to schedule a time to speak.
>
> Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Roe, Colleen [mailto:CRoe-Valleau@lockelord.com]
**Sent:** Tuesday, April 03, 2018 12:39 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Subject:** Correspondence is attached.

Ms. Jump,
The attached document is sent on behalf of W. Allen Woolley.
If you have any questions or comments, please direct them to Mr. Woolley. I've attached his v-Card for ready reference.
Thank you.
*Colleen Roe-Valleau*

<image001.jpg>

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# EXHIBIT 13

## Woolley, Allen

| | |
|---|---|
| **From:** | Christina Jump <cjump@clcma.org> |
| **Sent:** | Tuesday, May 01, 2018 4:39 PM |
| **To:** | Woolley, Allen; Landes, Stephen |
| **Cc:** | Charles Swift; Leila Mustafa |
| **Subject:** | Re: Defendants' Amended Discovery Responses [LL-America.FID3847873] |

Mr. Woolley:

Please note my responses to each of your points, in turn, below:

"First, as you and I discussed, plaintiffs do not intend for DR26 to require production of documents relating to appearances as speakers, presenters or panelists at events that are unrelated to the work of AMP/AJP. For example, if Mr. Jaber spoke at a tax or financial planning conference unrelated to Palestinian issues, we would not be seeking documents relating to his appearance at this event. To address this issue, we are prepared to narrow the scope of DR26 to fundraisers, meetings, conferences or events that either address Palestinian issues, Israel or AMP/AJP or were sponsored by an organization that addresses those issues. The existing date range (*see* Instruction T) is appropriate for this request."

> Thanks for the clarification. Unfortunately, it does not address our objections fully. This scope is still not limited enough in time or scope. We fail to understand how documents are necessary as to the issue of whether or not jurisdiction is present. We once again state that it is inappropriate to acquire this type of information from other organizations and/or individuals who are not parties to this lawsuit, due to the limited scope of discovery that is in place as per the Court's order for discovery. Subject to the foregoing objections, and as to the production of documents that relate specifically to AMP/AJP's events, please see the previously produced web page fully available historic data (produced on flash drive). In the "Events" sections, speeches and presentations by AMP board members about which AMP wanted to make its members aware are listed routinely. Therefore, this information is available within what has already been provided. To the extent also relevant, please also see full archives of the relevant Twitter and Facebook pages, as well as relevant historic website pages, previously produced in this matter (bates labeled 002661 – 004409 and separately produced zip files).

"Second, I have re-reviewed the document productions and your previous correspondence in connection with your position that Defendants have fully responded to EI3, EI4 and EI5. These interrogatories ask Defendants (among other things) to "Identify" (i.e. provide name, title, contact information and employer) (*see* Definition P)): (i) AMP's and AJP's board members for each year; (ii) AMP's and AJP's officers for each year; (iii) AMP's and AJP's employees for each year; and (iv) all persons involved in the incorporation or creation of AMP and AJP (and any precursor organization). For each officer, manager and employee, we requested descriptions of reporting structure and responsibilities (including changes over time). Respectfully, the document productions and amended interrogatory responses provide only partial responses to these requests—particularly for the pre-2009 AMP period. For directors, officers and employees, you have pointed to the "first round of documents produced, regarding the incorporation of AMP in 2006." But the 2006 articles of incorporation (00001), the remainder of this group of documents (000002-69), and the other bates numbers listed in your interrogatory response do not contain the requested information. Likewise, the 2008 meeting minutes (004410-4411) purport to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮do not indicate board members or officers for 2008 or any earlier time. The web site pages identified in 9.c. of your April 17 e-mail are for AJP after 2009. Likewise, Defendants have not identified all persons involved in the incorporation or creation of AMP. You have pointed us to the articles of incorporation, which list Hatem Albazian as the initial agent, but there is no indication who else was involved. You have also provided 3 pages of handwritten notes (002658-60), which contain a number of names but no definitive information about what these lists represent, whether any of the people listed were involved in forming AMP, or who actually became officers or directors."

1

That sometimes happens with newly started organizations, particularly with small non-profits. As you know, AMP was first created in 2006 and AJP in 2009; the first fundraising event occurred in 2009, as previously indicated and provided. From 2006 to 2009, we have provided all of the materials that were maintained in the regular course of business. Job descriptions simply did not exist for AMP in 2006. The closest thing that does exist for the early years are the board meeting minutes for the years already produced. Hatem Bazian and Munjed Ahmad were the main early forces; please see Declaration of Munjed Ahmad for support of that. There were few if any other regular volunteers early on, let alone official board members. I am not hiding records which show this information; you simply have all that still exist. See bates labeled 0000069 – 000276; 000457 – 002558; 002661 – 004134; and 004135 – 004409, as well as zip files provided separately; Twitter and Facebook archives produced in this matter; and relevant historic website pages). Defendants cannot produce documents that are not in existence. I pointed to the board minutes and the referenced committee because it is an early reference to specific names, which I thought you wanted. That's where they are, and that's how they were kept. In addition, please see the separate email I am sending today with the summarized and excerpted pages showing the ten (10) years of AMP conferences to date, along with speakers for each. As referenced in that email, this information came from what has already been produced to you; I just excerpted and summarized it for today's emails. That includes the 2006 and 2007 conferences (there were none in 2008 or 2009, and they picked back up again in 2010).

"Third, in your April 20 e-mail, you indicate that AMP and AJP "have not handled funds which are raised for other entities," but have sponsored events at which money was raised by and for other entities. To be clear, DR21's request for documents relating to funds raised on behalf of other organizations was intended to cover situations where AMP sponsored events to fundraise for other organizations even if it never "handled" the funds raised. Several other document requests would also likely cover documents relating to such events (e.g. DR14, DR15, DR16, DR20). These documents are responsive, and we believe they should be produced."

Allow me to clarify: AMP and AJP have not ever raised money for other organizations. As you quote above, I stated that they have not handled funds raised for other entities, and that they have been at events where money was raised by and for other entities. However, it was never AMP or AJP's money (or that of any of the individual defendants) to identify and account for. Nonetheless, as stated above, see the "Events" designation on the website, which has been produced in full archive form as available via flash drive, along with historic pages already bates labeled, and the full Twitter and Facebook archives already produced, which list all promoted events. Please also note that, even with the change in definition to what the document request "was intended to cover," Defendants still do not have any documents pertaining to conferences held by IAP or the cessation of IAP conferences. Defendants cannot produce documents they do not have. As to AMP conferences, please see the documents attached to today's other email, detailing the ten (10) AMP conferences and the dates and speakers for each (derived from previously produced data). To the extent relevant, please also see full archives of the relevant Twitter and Facebook pages, as well as relevant historic website pages, previously produced in this matter (bates labeled 002661 – 004409 and separately produced zip files).

"Fourth, I believe you indicated that the e-mails you produced on April 18 are from Kristin Szremski and Munjed Ahmad. I still do not understand why defendants are producing no e-mails from the Individual Defendants or any of the other directors, officers or employees of AMP/AJP. For example, Sufyan Nabhan, Hatem Bazian, Sana Daoud, Salah Sarsour (and others) are current board members who appear to have had long-term involvement with AMP/AJP (and in some cases with IAP). During our April 6 telephone conference, you declined to tell us which custodians defendants have collected documents from. Have these defendants, officers and directors been contacted and asked for documents? Is it your position that they have no responsive e-mails or other documents, or that such e-mails and documents do not need to be produced?"

As we have discussed before, Defendants maintain the position that all necessary data recovery occurred, all relevant verifications were executed in response to the discovery requests, and counsel and Defendants have conducted thorough searches in accordance with the Federal Rules of Civil Procedure. All responsive relevant

documents, whether in e-mail or other form, have been produced. We are confident we have complied with the Federal Rules of Civil Procedure, the Local Rules for this Court, and this Court's order as to this limited jurisdictional discovery.

"Fifth, you indicated that you would be providing additional information regarding chapters and regional locations for AMP/AJP. Do you have a time estimate and a general idea what sort of information you will be providing? Will the information include names of people involved, websites/social media, publications, and events?"

Sent under separate cover today.

We agree that further discovery conferences are not necessary at this point; we will not create information simply to satisfy your wish that it exist. We have already compiled and summarized the produced data for you on more than one occasion and in more than one form, including today's emails, and pointing you to specific pages on our prior calls (which includes requesting that you read the produced information before calling an impasse).

I believe at this stage the only remaining item I owe you is the privilege log, which I hope to provide tomorrow but in any event no later than the end of business this week.

Please let us know if you have any further concerns. Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Christina Jump
**Sent:** Monday, April 30, 2018 12:02 PM
**To:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

My apologies for my silence last week. I was traveling on another matter and am just now getting caught back up.

I will respond more substantively to your email below later today, but did want to acknowledge that I realize I owe you a response. Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102

Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 24, 2018 12:59 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

Following up on our discussion last Friday, I wanted to get back to you on several issues:

First, as you and I discussed, plaintiffs do not intend for DR26 to require production of documents relating to appearances as speakers, presenters or panelists at events that are unrelated to the work of AMP/AJP. For example, if Mr. Jaber spoke at a tax or financial planning conference unrelated to Palestinian issues, we would not be seeking documents relating to his appearance at this event. To address this issue, we are prepared to narrow the scope of DR26 to fundraisers, meetings, conferences or events that either address Palestinian issues, Israel or AMP/AJP or were sponsored by an organization that addresses those issues. The existing date range (*see* Instruction T) is appropriate for this request.

Second, I have re-reviewed the document productions and your previous correspondence in connection with your position that Defendants have fully responded to EI3, EI4 and EI5. These interrogatories ask Defendants (among other things) to "Identify" (i.e. provide name, title, contact information and employer) (*see* Definition P)): (i) AMP's and AJP's board members for each year; (ii) AMP's and AJP's officers for each year; (iii) AMP's and AJP's employees for each year; and (iv) all persons involved in the incorporation or creation of AMP and AJP (and any precursor organization). For each officer, manager and employee, we requested descriptions of reporting structure and responsibilities (including changes over time).

Respectfully, the document productions and amended interrogatory responses provide only partial responses to these requests—particularly for the pre-2009 AMP period. For directors, officers and employees, you have pointed to the "first round of documents produced, regarding the incorporation of AMP in 2006." But the 2006 articles of incorporation (00001), the remainder of this group of documents (000002-69), and the other bates numbers listed in your interrogatory response do not contain the requested information. Likewise, the 2008 meeting minutes (004410-4411) purport to ████████████████████ but do not indicate board members or officers for 2008 or any earlier time. The web site pages identified in 9.c. of your April 17 e-mail are for AJP after 2009.

Likewise, Defendants have not identified all persons involved in the incorporation or creation of AMP. You have pointed us to the articles of incorporation, which list Hatem Albazian as the initial agent, but there is no indication who else was involved. You have also provided 3 pages of handwritten notes (002658-60), which contain a number of names but no definitive information about what these lists represent, whether any of the people listed were involved in forming AMP, or who actually became officers or directors.

Third, in your April 20 e-mail, you indicate that AMP and AJP "have not handled funds which are raised for other entities," but have sponsored events at which money was raised by and for other entities. To be clear, DR21's request for documents relating to funds raised on behalf of other organizations was intended to cover situations where AMP sponsored events to fundraise for other organizations even if it never "handled" the funds raised. Several other document requests would also likely cover documents relating to such events (e.g. DR14, DR15, DR16, DR20). These documents are responsive, and we believe they should be produced.

Fourth, I believe you indicated that the e-mails you produced on April 18 are from Kristin Szremski and Munjed Ahmad. I still do not understand why defendants are producing no e-mails from the Individual Defendants or any of the other directors, officers or employees of AMP/AJP. For example, Sufyan Nabhan, Hatem Bazian, Sana Daoud, Salah Sarsour (and others) are current board members who appear to have had long-term involvement with AMP/AJP (and in some cases with IAP). During our April 6 telephone conference, you declined to tell us which custodians defendants have collected documents from. Have these defendants, officers and directors been contacted and asked for documents? Is it your position that they have no responsive e-mails or other documents, or that such e-mails and documents do not need to be produced?

Fifth, you indicated that you would be providing additional information regarding chapters and regional locations for AMP/AJP. Do you have a time estimate and a general idea what sort of information you will be providing? Will the information include names of people involved, websites/social media, publications, and events?

As we discussed last week, I do not think any further discovery conferences are necessary at this point. However, please let me know if you would like to discuss any of the items above, if there are any other issues we still need to discuss, or if Defendants plan to provide any further information or documents.

Thanks,

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive

5

Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Woolley, Allen
**Sent:** Friday, April 20, 2018 3:03 PM
**To:** 'Christina Jump'
**Cc:** Landes, Stephen; Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

A few clarifications in my understanding noted below in all caps. I will get back to you with a further response after I have had a chance to review your e-mails and additional production.

W. Allen Woolley
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Friday, April 20, 2018 2:31 PM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

To confirm our recent conversation and per my prior email below, these are my understandings. Please advise if you believe I have omitted anything or if you recall anything differently:

- We will, as noted below earlier today, provide a privilege log.
- We will, as noted below earlier today, supplement with information regarding chapter creation and addresses. Please note that I still disagree with your characterization of and the need for this information as stated in your email below. I also, though, think it would be a huge waste of the Court's time to argue over the production of the dates of creation and addresses, so will get back to you regarding that. I also encourage you to check the website files on the flash drive you received this morning.
- You will let me know if you become aware of more than the one referenced attachment we discussed (on page 002598, referenced as "legal order May 2014") to emails produced where you believe you have the emails but not attachments. REFERENCES TO ATTACHMENTS APPEAR ON BATES # 2598, 2616 AND 2617. I WILL LET YOU KNOW IF I NOTE ANY OTHER ATTACHMENTS. HOWEVER, AS I INDICATED, WE ARE REQUESTING ANY ATTACHMENTS THAT EXIST (AS WELL AS THE METADATA), AND WE ARE NOT IN A POSITION TO IDENTIFY WHERE ATTACHMENTS DO OR DO NOT EXIST—ALL I CAN DO IS POINT OUT THAT SOME OF THE E-MAIL IMAGES WE WERE PROVIDED APPEAR TO REFERENCE ATTACHMENTS THAT WE DID NOT RECEIVE.
- You will provide a proposed narrowing of DR 26, including in your narrowing the relevant topics of such potential speeches and/or presentations.
- You will review both the email below and documents previously produced which are referenced in it, and the flash drive you received with the web site data on it, and then let me know what if anything you believe remains discoverable for jurisdictional discovery and not yet produced. I WILL REVIEW EVERYTHING YOU PROVIDED AND GET BACK TO YOU WITH ANY FURTHER ISSUES THAT MIGHT BE WORTH FURTHER DISCUSSION OR

6

CORRESPONDENCE. I DID NOT AGREE TO PUT TOGETHER A COMPREHENSIVE LIST OF EVERYTHING THAT REMAINS DISCOVERABLE—WE HAVE ALREADY PREPARED PLENTY OF DISCOVERY CORRESPONDENCE, AND I DO NOT THINK IT IS NECESSARY TO GO BACK AND DO THIS AGAIN.

- As to the Confidentiality Order, please note I identified 126 pages out of the 4,468 pages (plus additional archived electronic files of the Twitter, Facebook and website pages, produced on flash drives and not bates labeled) as subject to this Confidentiality Order. You stated that some or all of the 126 pages (representing less than 2.8% of the documents produced) may not be confidential in your opinion. As I stated on our call, if you will identify which of the designated 126 pages you are challenging as to that designation and why, I am glad to respond. It is, however, difficult for me to respond to blanket general statements pertaining to some or most of a page range. AS I INDICATED ON THE CALL, I DO NOT THINK ANY OF THE MATERIAL IN THE MOST RECENT PRODUCTION FALLS WITHIN THE SCOPE OF CONFIDENTIAL INFORMATION COVERED BY THE PROTECTIVE ORDER. I WOULD BE WILLING TO CONSIDER ARGUMENTS THAT A LIMITED NUMBER OF THE DOCUMENTS PRODUCED IS COVERED; HOWEVER, THIS APPEARS TO BE A WHOLESALE CONFIDENTIALITY DESIGNATION OF EVERY E-MAIL PRODUCED IN THE CASE (THE BULK OF WHICH HAVE NOTHING TO DO WITH THE 7 CATEGORIES LISTED IN PARAGRAPH 2 OF THE ORDER) AS WELL AS WHAT APPEAR TO BE PUBLIC LETTERS, POWER POINT PRESENTATIONS AND MATERIALS FOR DISTRIBUTION THAT ARE NOT ONLY FALL OUTSIDE THE 7 CATEGORIES BUT DO NOT APPEAR TO BE CONFIDENTIAL. UNDER THE ORDER, THE CONFIDENTIALITY DESIGNATION IS A CERTIFICATION THAT THE DESIGNATED DOCUMENT CONTAINS CONFIDENTIAL INFORMATION AS DEFINED IN THE ORDER. IT IS NOT OUR BURDEN TO REVIEW AND OBJECT TO BULK DESIGNATIONS OF DOCUMENTS.

Thanks, let me know if I omitted anything, and we will be in touch.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Christina Jump
**Sent:** Friday, April 20, 2018 1:24 PM
**To:** 'Woolley, Allen' <Allen.Woolley@lockelord.com>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Thank you for the email. As noted yesterday, you also received the full website archive available, containing prior articles and presentations. Our communications confirm that was received earlier today; please advise if it was not. The electronic files on this flash drive contain much if not all of the information you claim to still need, which in many cases duplicates documents and files already produced.

Please also note that Ms. Szremski's emails are not the "only" ones you have received. You also received information containing emails from Munjed Ahmad, which directly address the reformation of AMP as an official d/b/a of AJP. As also noted, both of these sets of emails were found on email servers not in AMP or AJP's control. Nonetheless, with redacting of the personal information (and, where appropriate, attorney-client privileged information), those emails have been provided.

As noted, we have redacted employment-performance related information from the minutes produced, as well as attorney-client privileged materials from the minutes and relevant emails. Ms. Szremski's emails are not, in fact, "heavily redacted" – they are barely if at all redacted, other than as noted above.

I am glad to provide a privilege log; as stated previously, as the scope and documents at issue were being continuously supplemented during the course of our discussions, I postponed that log so that it would be fully accurate. I will provide that to you by close of business Monday, April 23, 2018.

To clarify, I do not assert below that Al-Zaytounah was not related to any *Boim* 2000 judgment defendant, as you erroneously represent. I state, specifically, that ""Copies in your possession, custody, and control of Al-Zaytounah and Al-Meezan **are not in the possession of AJP or AMP, and were not published by AJP and/or AMP**. They do not relate to the jurisdictional discovery here in any way, and production of any hard copies retained by Defendant Abuirshaid would be overly broad and unduly burdensome. The relevant referenced publications **as related to Defendant Abuirshaid** are independent of and were not on behalf of the *Boim* judgment defendants and are not by or on behalf of AMP or AJP" (emphasis added). Defendant Abuirshaid has not retained any copies of Al-Zaytounah; he provided them to the government in 2015 and has not retained any copies personally. Al-Meezan was started by Defendant Abuirshaid, not AMP or AJP, in 2005, and he sold it in 2015. He has retained hard copy issues only, which are not readily available or easily producible. If needed, we will once again amend our interrogatory answers to make that more clear.

Please also note that AMP and AJP have not handled funds which are raised for other entities, and therefore have not "raised money for" other entities as you imply. They sponsored events, and at some of those events money was raised by and for other entities which were also present. This is consistent with the answers provided. Interpretations to the contrary may be addressed in rebuttal-like declarations, but do not make the answers provided in discovery responses insufficient or inaccurate.

I have given you all documents retained in the normal course of business as to tax filings. We are not withholding any that have been retained by the entities.

We are not "withholding any responsive documents with respect to Mosque Foundation or KindHearts", as these Defendants do not have any such documents in their custody or control. The objections as to requests for these remain legitimate, specifically because these Defendants do not have any such documents, nor should they therefore be expected to produce them.

As stated repeatedly, we have identified all websites maintained by AJP and AMP.

You have more than "three or four pages" relating to directors and staff, from the website archive (in native form, I might add) provided to you.

We have provided you all information retained regarding the formation of AMP in 2006. Specifically, please note the handwritten notes of Munjed Ahmad, referenced in his declaration and produced earlier this week.

Your reference to Doc. 004413, "███████████████████████████████████ ███████████████████", misconstrues the facts. Please note that first, that quote is from the January 2014 Executive Committee meeting (see title at top of that page). Second, this document specifically states that it relates to "income tax withholdings" which should have been made under AJP, not AMP. By definition, since AJP was created in 2009, this relates to documents filed <u>after</u>

2009. Those facts are in no way "at odds with" the first fundraising event identified as taking place in 2009, as you state.

Please also note that you have been provided the meeting minutes as they exist for AMP for October 11, 2008 (004410-004411). These identify Munjed (Ahmad), Dr. Hatem (Bazian), Sufian (Nabhan), Awad (Hamdan) (identified on 004451), Dr. Daad (Katato) and Sr. (Sister) Soundos as the website committee for AMP at that time. Furthermore, documents 002658-002660 show those involved in the discussions regarding the formation of AMP. These are already referenced and incorporated in the interrogatory responses, and these full names are set forth in response to Interrogatory 3 to AMP and AJP.

At this point, my responses are more rebuttal to your dissatisfaction with the information as it exists than actual discovery responses. That seems fruitless, and potentially unending. I can provide rebuttal declarations as to specific questions, though that again seems outside the scope of the intended discovery. I will agree to supplement, one last time, as to the exact locations and dates of creation of the chapters. Beyond that, it appears we either agree to disagree, or we will address issues in rebuttal form. Please advise if you see anything you believe does not fall in those categories.

Thank you and I look forward to speaking with you shortly.

*Christina A. Jump*
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Friday, April 20, 2018 11:19 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

Thank you for your April 17 e-mail and the additional production material we received Wednesday. I have a number of issues with your comments and the additional production that I thought would be useful to cover in writing before our call:

- It appears that we have now received Kristin Szremski's e-mails going back to October 2013. These remain the *only* e-mails we have received, despite a fairly long list of officers, directors and employees affiliated with AMP/AJP. As previously discussed, the defendants need to identify all custodians who potentially have responsive material and do a proper search and collection from their files, computers, e-mail accounts, servers, web-sites, cloud storage, devices, social media accounts, blogs, etc. It strains credibility that only one person has responsive e-mails (and that the electronic and paper records are

so thin). You have previously declined to provide us with any information about what custodians you have contacted and what searches were done. We urge you to reconsider this position, as understanding what searches have been done would go a long way toward resolving our concerns about this production.

- The entire production we received Wednesday was marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," but the bulk (if not all) of the documents do not appear to fall within any of the categories in paragraph 2 of the proposed protective order. While we are prepared to give confidential treatment to personnel or employment records (which we have requested but not received) and any other documents that legitimately fall within the 7 categories in paragraph 2, we believe a not-for-profit, non-commercial entity (which must publicly disclose its 990s) is likely to have little, if any, protectable commercial or financial information, "trade secrets," or other properly confidential material. We ask that you reconsider these designations and use the designation judiciously for any further productions. Because the "confidential" designation imposes burdens in using discovery material, we will likely need to ask the Court to strike any wholesale or improper designations.

- The e-mails produced yesterday were heavily-redacted PDF files with no metadata and missing attachments. We do not understand the basis for the redactions, as few (if any) of the e-mails appear to contain privileged material and e-mail addresses to my knowledge are not protected from discovery. We also specifically requested and are entitled to metadata and attachments. Our preference would be to receive e-mails in native format, but at the very least, they should be produced in a *usable* (searchable and sortable) electronic form with metadata and attachments. A single bulk PDF file containing a large number of imaged emails does not meet these requirements.

- With respect to item #2 in your April 17 response e-mail, you have suggested that AMP did not file tax documents in its own name and that no fundraisers occurred until 2009. These contentions seem at odds with e-mails you just produced indicating, for example, that ████████████████████████████████████████████ ████████ (4413) and the fact that we know AMP engaged in activities that cost money earlier than 2009 (such as its 2006 annual conference). If AMP has (or has access to) tax-related documents (whether formally filed documents or materials "relating" to tax filings), these should be produced.

- You provided a request-by-request response to item #4 in my April 17 e-mail, reiterating your objections and contention that you do not have documents responsive to some of the requests. Your responses appear to confirm my understanding that you do not intend to produce any further documents in response to DR21-26. We do not agree with your comments and note briefly in response:
  - (DR21) This request was not limited to funds "transferred out of the United States"—we requested all documents relating to any "use, recipient(s) and disposition of funds." Furthermore, we think your contention that AMP did not raise funds on behalf of other organizations and that funds were solely used

domestically is contrary to the evidence. For instance, your own recent document production specifically references ███████████████████████████████████ ███████████████████████████████████ (4423)

- o (DR22) We disagree with your objection and are entitled to explore the relationship of the two Entity Defendants. We also do not find credible the contention that AMP "did not raise funds" prior to 2009. How did it pay for conferences beginning in 2006 and other expenses?

- o (DR23) Your assertion that Al-Zaytounah was independent of the *Boim* Defendants is incorrect. *See* 340 F. Supp. 885, 907. We believe Al-Meezan was similarly affiliated with or supported by AMP/AJP and are entitled to explore this relationship—specifically pleaded in our initial complaint—and have therefore requested copies of the publication itself, as well as documents relating to the creation and promulgation of the publications and decision to begin publishing Al-Meezan.

- o (DR24) We requested *all* documents relating to the annual conferences, not just the references on the AMP website and Twitter and Facebook. You indicated during our April 6 conference that you are not prepared to provide anything further. We believe, as I indicated, that there is substantial additional material and that providing on-line content "evidenc[ing]" these events does not mean you do not have to produce the other documents.

- o (DR25) We do not agree with your characterization of AMP's role—and in any case should be permitted to explore AMP's role and the circumstances of the Detroit event. Again, we understand your position is that you are not producing these documents but want to make clear that this remains an issue.

- o (DR26) If you genuinely believe "representatives" of AMP/AJP appeared as speakers, presenters or panelists at events completely unrelated to AMP/AJP and the issues addressed by these organizations, we are willing to discuss a reasonable limitation of this request.

- For DR31, I think you are claiming that none of the Defendants have any responsive documents in their possession, custody or control. Are you withholding any responsive documents with respect to Mosque Foundation or KindHearts?

- With respect to item #7, we do not agree with your comments, but I think you have made your position clear.

- In response to your comments on item #9, I re-reviewed your initial production, including the AMP certificate of incorporation. I also reviewed the bates numbers cited in your amended response to EI3. I do not see any lists of directors or officers for AMP prior to 2009. Please let me know if there are additional bates number (I have not seen them) or if you can point me to something specific I missed. I have also re-reviewed the website descriptions of certain AMP personnel cited by bates number in your response. These only cover officers and 3 or 4 employees, and only in recent years; they

do not provide the comprehensive information requested. Finally, with respect to Chapters and locations, we contend (among other things) largely replicated a network in place at the time of IAP and that they carried out similar functions. This request is reasonably calculated to lead to evidence on the alter ego issue that is the subject of jurisdiction discovery.

- EI5 asks for a list of specific people. Neither the Declaration of Munjed Ahmad nor the Articles of Incorporation of AMP provide a list of people (other than Hatem Albazian and Munjed Ahmad) involved in the discussions (starting in August 2005) of creating AMP and the creation of AMP. Even if no documents were retained, this interrogatory asks for the identification of all the people involved in the 2005-2006 time period. We are entitled to that information.

- With respect to item #11 in my list, we again disagree with both your objections and your comments. You may contend that the Entity Defendants never did fundraising or supported fundraising for other organizations, but we are entitled to explore the evidence on these issues—and again note that your own document production refers to ███████ ████████ We also appreciate that the AMP website and Facebook/Twitter content includes some information about speakers, presenters and moderators; however, we believe there was significantly more documentation prepared and distributed in connection with the frequent and sometimes large conferences, fundraisers and events sponsored by AMP/AJP. We are entitled to this information.

- EI12 and II4 request information about the universe of websites, blogs, social media accounts and internet domain names owned, controlled or maintained by the Defendants. If there are more, we are entitled to know they are. We understand you are objecting on privacy grounds to providing information regarding the Individual Defendants, and I understand you to be saying there are no more for the Entity Defendants. If that is not your position, please let me know.

I look forward to wrapping up our discussion at 1:30 today. In light of our prior discussions and correspondence, I think the parties' positions are clear and I am not sure there is much left to discuss. I am not anticipating that this will be a long call.

Best regards,

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 17, 2018 8:24 PM

**To:** Woolley, Allen
**Cc:** Landes, Stephen; Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Thank you for the follow-up. Please note the following as to each:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

   Response: As previously indicated, these documents are minutes and related items as to AMP, as well as some documents recently received (today) from a former employee, from her personal email. We expect to send what we currently have, and have reviewed, tomorrow. She has indicated that she will get us any further documents she is able to locate by the end of this week. If more responsive documents come our way, we will provide them within the same time frame (after any necessary time to review).

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

   Response: as also previously indicated, AMP became and is currently a d/b/a of AJP. As also indicated by previously produced documents, no fundraisers occurred, under the name of either entity, until 2009. Those funds went through AJP. As indicated, you have the tax returns for AJP, one of which lists AMP as a d/b/a. We have not located any prior or other returns and are not withholding any. As also indicated, we continue to object to producing the names of any specific voluntary donors.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6, II7.

   Correct, we stand by our objections to the impropriety of that characterization and self-created grouping by Plaintiffs, as well as its relevance here for any entities and/or individuals not a party to this lawsuit or subject to the *Boim* 2000 judgment.

4. Beyond the internet, social media and other material already produced, our previous discussion and your amended responses suggests [sic] you do not intend to produce any additional documents responsive to: DR21, DR22, DR23, DR24, DR25, and DR26. If that is not the case, let's discuss.

   Response: Document requests 21-26 are on vastly different topics. Therefore, a grouped response is not reasonable or applicable.

   As to 21: No funds were transferred out of the United States at all. That is clear from our previous answers, and the Declaration of Munjed Ahmad previously provided, and the referenced website, but I restate it again here to the extent it was not. So, we cannot produce "any additional documents

responsive to" the request for transfer of funds outside the United States, when no such transfers took place. Furthermore, we have already responded that these Defendants do not raise funds on behalf of other organizations. The funds are raised and used domestically, for educational purposes, as has been repeatedly stated throughout our communications and the responses and documents provided.

As to 22: Your request as to transfer of funds between AMP and AJP makes no sense; as stated above, and throughout the discovery responses, AMP exists only as a d/b/a of AJP, and prior to that status did not raise funds. The first fundraiser occurred in 2009, as evidenced by document production (including but not limited to the full archives of the Twitter and Facebook cites). There are also no allegations here regarding any "disguised continuance" as between AMP and AJP, so this is not reasonably calculated to lead to the discovery of admissible evidence pertaining to the jurisdictional matters at hand.

As to 23: "Copies in your possession, custody, and control of Al-Zaytounah and Al-Meezan" are not in the possession of AJP or AMP, and were not published by AJP and/or AMP. They do not relate to the jurisdictional discovery here in any way, and production of any hard copies retained by Defendant Abuirshaid would be overly broad and unduly burdensome. The relevant referenced publications as related to Defendant Abuirshaid are independent of and were not on behalf of the *Boim* judgment defendants and are not by or on behalf of AMP or AJP.

As to 24: No Defendant in this matter is in possession of any "documents relating to annual conferences held by IAP"; that has already been stated clearly and repeatedly in discovery responses. As to documents relating to AJP and/or AMP and conferences, the documents produced (including the full Twitter and Facebook archives) evidence the relevant AJP and AMP events, as do the historic website documents produced already.

As to 25: Your request for documents relating to "the event in Detroit, Michigan in 2015" "which raised approximately $200,000 for charitable purposes in Gaza" misconstrues relevant facts, as stated already in our previous responses. AMP served in an educational role. United Muslim Relief collected donations for its own use; AMP and AJP did not receive, transfer or have control of these donations. As already stated, to the best of the knowledge of Defendants, United Muslim Relief is a domestic charitable organization in good standing. What United Muslim Relief did with any voluntary donations it collected is not a question any defendant in this matter can answer, or for which any defendant in this matter has documents. The cited article poorly translates the Arabic original and, in any event and as already stated by Defendants in the previous Response, was not prepared by or for Defendants in this matter, and Defendants do not vouch for its accuracy. As to any references by AJP or AMP regarding their educational role, as already specified, please see the previously produced full archives of the Twitter and Facebook pages, which contain references to the 2015 conference in question, as well as the historic website pages already provided.

As to 26: Your request for any event where any representative of Defendants appeared at any time in any capacity is overly broad to say the least, as noted. Nonetheless, the full archive history of the Twitter and Facebook pages, already produced, as well as the historic website pages already produced, show the promotions done by AJP and/or AMP. If Plaintiffs wish to be more specific in the request, perhaps we can be more specific in the response; in any event, the full timelines already produced cover any and all promoted appearances related to AJP and/or AMP.

5. For DR31 (documents reflecting employment or volunteer, leadership, consulting, professional services, officer or director role with AMP, AJP, Mosque Foundation, KindHearts), your amended responses indicate that the Individual Defendants have no responsive documents and the Entity Defendants refer to documents already produced. We need to confirm that it is your position that Defendants have no other responsive documents.

Once again, Mosque Foundation and Kindhearts were not defendants even in the 2000 matter, nor are they here. Defendants in this matter are not keepers of those documents. The Individual Defendants refer to responsive information in their Declarations, to the extent relevant. As to AMP and AJP, you already have thousands of pages reflecting the creation of both entities, their by-laws, their directors and officers, their leadership, and any other related responsive roles. We are not withholding anything here, because you already have it all as to the relevant entities and as to anything in the possession of these Defendants.

6. For DR32 (documents supporting the declarations), are there any responsive documents that have not yet been produced?

As to documents supporting the declarations already provided, we have referenced the documents already produced. There are no known responsive non-privileged documents which have not already been produced. As previously discussed on our last call, Defendants reserve the right to provide any necessary rebuttal documents, should that become necessary, which may exceed those already provided in this matter.

7. For DR33 and DR34, are the Individual Defendants standing by their objections and not producing anything? Likewise, for the corresponding II5 and II8, I assume you do not plan to provide additional information?

Without more specificity from Plaintiffs as to relevant, if any, travel, Defendants stand by their objections to Request 33. As to Request 34 as to Defendant Abuirshaid, regarding a February 2017 event, this is not reasonably calculated to lead to the discovery of admissible jurisdictional evidence, as already stated.

As to Interrogatory No. 5 to the Individual Defendants, relevant information has already been produced. The identities of the Individual Defendants is not in dispute. Should you have any reason to believe otherwise, please advise; otherwise, sufficient relevant responsive information has already been provided in their Declarations.

As to Interrogatory No. 8 to the Individual Defendants, this again refers to a trip attributed to Defendant Abuirshaid in February 2017. Without more explanation as to how, if at all, this request relates to the relevant jurisdictional scope and inquiry, Defendant stands by his objections.

8. Do Defendants intend to provide a privilege log?

As previously stated, yes. However, while compilation and discussions regarding scope have remained ongoing, that seemed premature. We expect to produce one to you by early next week, in light of the information stated above.

9. In EI3, we asked for the identities of directors, officers, employees and chapters/locations/offices for each year since inception. EI4 seeks a description of the structure and hierarchy of the Entity Defendants (and changes over time). You have pointed to a number of documents and given lists in your amended responses and March 27 e-mail. But even with these, we still appear only to have a partial response:

   a. Directors: We do not have AMP's directors prior to 2009. Yes you do. See first round of documents produced, regarding incorporation of AMP in 2006. **You have provided lists of "National Board Members" for 2009 purportedly from historical captures of AMP's website. Are these AMP's directors?** Yes, as seemed obvious on the face of the responses, those would be the members of the Board of Directors from 2009 forward, as indicated in prior responses.

   b. Officers: We do not appear to have AMP's officers prior to 2009 Yes you do. See first round of documents produced, regarding incorporation of AMP in 2006, as well as the subsequently produced descriptions (which I specifically identified to you, on our last call, by the relevant bates label numbers).

   c. Employees: You provided a list of past and present employees of AJP but have not indicated the time periods during which these employees worked for AJP. There is little or no information about reporting structure or responsibilities. We dispute your characterization. The documents already produced and referenced set forth the job duties of the relevant positions. And, again, I specifically identified these for you on our last call, by bates label numbers (002573-002582; see also, for example, 004314-4316; 004378-4381; 004401-4403). Should you believe there is any dispute or reason for more specific information other than that already identified, as it may pertain to jurisdiction in this matter, please explain how. I am willing to listen.

   d. Chapters/locations/offices: There are references on the AMP website to a number of other chapters and locations, and you have provided several addresses. We do not appear to have a comprehensive list or suite numbers. As clearly stated in the documents produced and interrogatory responses already provided, all decisions are made and finances controlled out of the main (originally California, now Chicago) office. If there is any way in which you believe you need additional information about the chapters which did not exist at the time of AMP or AJP's formation, please advise more specifically. We also refer you to the publically available website information regarding current (and historic) chapters.

10. For EI5, we do not have a list of all the persons involved in the creation of AMP and AJP (and the preliminary activities that led to the creation), nor have you identified all documents related to the formation. Are you willing to provide further responsive information? Please see the Declaration of Munjed Ahmad, already provided. Please also see the individuals listed on the Articles of Incorporation for AMP and AJP, which have already been provided. Please also note that, per Mr. Ahmad's declaration and already produced documents showing the same, there were no "preliminary activities" as

you assert other than discussions as reflected in the handwritten notes of Mr. Ahmad, which will be produced pursuant to the Confidentiality Order in this matter and which are referenced by bates label numbers in Mr. Ahmad's Declaration. With the further exception of any recently received and/or forthcoming documents from the former employee referenced above, no further such documents were retained in the normal course of business over a decade ago.

11. Based on prior discussions, I suspect we are at an impasse regarding providing further information regarding (i) the identity of persons, entities or organizations to which the Entity Defendants provided funding or support for fundraising (EI9); (ii) the identity of donors, sponsors or funders of the Entity Defendants (EI10); and (iii) the identity of speakers, presenters and moderators who have appeared at conferences or other events sponsored by the Entity Defendants (beyond what appears on the AMP website and social media you have produced). Please let me know if I am incorrect.

We are at an impasse as to the identity of voluntary donors. On that, you are correct.

As to fundraising for other "persons, entities or organizations," we have already responded that none took place and that is not what these charitable entities do. They receive purely domestic voluntary donations, as stated previously in many places in Defendants' discovery responses, and they utilize those donations for educational purposes performed by AJP and/or AMP (also purely domestically). Therefore, there is no impasse here; there is simply no such information to provide.

As to the identify of speakers, presenters and moderators at AMP and AJP events, we have provided that through the full Twitter and Facebook archives, as well as what is available via the historic website pages produced already (see, by way of example and not exhaustive list, 004160, 004284). And, as already indicated, we are still working on procuring a readable, workable version of the full website archive, and if we are able to obtain that information will provide that shortly after receipt. Therefore, there is again no impasse; the information, in its most readily and reasonably available form and as retained in the normal course of business, has already been provided, consistent with the Federal Rules of Civil Procedure.

12. For EI12 and II4, you have listed 3 internet domain names and AMP's Twitter page, Facebook page and YouTube channel. Have *any* of the defendants owned, controlled, created or maintained (in Arabic or English) any other website, blog, social media account, or internet domain name? Do any of the Individual Defendants have social media accounts, web pages or blogs that have ever had content relating to any of the Entity Defendants or *Boim* Defendants?

Your question above is even broader than the question posed in the referenced Interrogatories. You asked in Interrogatory No. 4 to the Individual Defendants if these defendants "owned, controlled, created or maintained" any domains, at any time, "relating to any *Boim* Defendant or any Entity Defendant". All relevant domains for AJP and AMP have been identified, along with the available full archives, in prior responses. We stand by our objections as to the overly broad nature of this request, as well as these Defendants' privacy rights in their personal social media pages which are not publically accessible. You also agreed that independent business concerns of these defendants, such as Rafeeq Jaber's tax practice, are not reasonably included in this scope.

As to Interrogatory No. 12 directed to AJP and AMP, you ask basically the same question as to these defendants, which has been more than fully answered. You have the domain names, the full archives of at least two social media pages (we will get you whatever becomes recoverable and usable as to the full website archives as noted above, beyond the historic pages that have already been produced), and the zip files for the full archives which have been produced. At this stage, I am unclear as to what it is you are still seeking.

Therefore, the only realistic remaining areas of dispute which I see, other than perhaps where you wish documents existed (but they don't), or were retained from long ago (but they weren't) before these defendants were in fact defendants, are as follows:

- Identities of the voluntary donors to AJP, which began in 2009, and which are redacted as to name and address but not number or amounts of donations, on the tax documents produced; and

- The impropriety of your overly broad definition and lumping of what you call "Network Entities" and "Network Defendants": please note, however, that Defendants in this matter have responded fully as the answers pertains to these Defendants, or to the extent applicable as to the referenced *Boim* 2000 judgment defendants.

As to timing for a call tomorrow, I will be in telephone hearings tomorrow afternoon until approximately 4:00 pm. I can start at that point, if this is expected to be brief, or am available Thursday morning at 10am or Thursday afternoon at 2:00 pm. I have some availability remaining Friday. Thank you.

*Christina A. Jump*
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 17, 2018 3:56 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

To streamline our call tomorrow, here are the issues I think we still need to cover:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed

confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6, II7.

4. Beyond the internet, social media and other material already produced, our previous discussion and your amended responses suggests you do not intend to produce any additional documents responsive to: DR21, DR22, DR23, DR24, DR25, and DR26. If that is not the case, let's discuss.

5. For DR31 (documents reflecting employment or volunteer, leadership, consulting, professional services, officer or director role with AMP, AJP, Mosque Foundation, KindHearts), your amended responses indicate that the Individual Defendants have no responsive documents and the Entity Defendants refer to documents already produced. We need to confirm that it is your position that Defendants have no other responsive documents.

6. For DR32 (documents supporting the declarations), are there any responsive documents that have not yet been produced?

7. For DR33 and DR34, are the Individual Defendants standing by their objections and not producing anything? Likewise, for the corresponding II5 and II8, I assume you do not plan to provide additional information?

8. Do Defendants intend to provide a privilege log?

9. In EI3, we asked for the identities of directors, officers, employees and chapters/locations/offices for each year since inception. EI4 seeks a description of the structure and hierarchy of the Entity Defendants (and changes over time). You have pointed to a number of documents and given lists in your amended responses and March 27 e-mail. But even with these, we still appear only to have a partial response:

    a. Directors: We do not have AMP's directors prior to 2009. You have provided lists of "National Board Members" for 2009 purportedly from historical captures of AMP's website. Are these AMP's directors?

    b. Officers: We do not appear to have AMP's officers prior to 2009

    c. Employees: You provided a list of past and present employees of AJP but have not indicated the time periods during which these employees worked for AJP. There is little or no information about reporting structure or responsibilities.

    d.  Chapters/locations/offices:  There are references on the AMP website to a number of other chapters and locations, and you have provided several addresses.  We do not appear to have a comprehensive list or suite numbers.

10. For EI5, we do not have a list of all the persons involved in the creation of AMP and AJP (and the preliminary activities that led to the creation), nor have you identified all documents related to the formation.  Are you willing to provide further responsive information?

11. Based on prior discussions, I suspect we are at an impasse regarding providing further information regarding (i) the identity of persons, entities or organizations to which the Entity Defendants provided funding or support for fundraising (EI9); (ii) the identity of donors, sponsors or funders of the Entity Defendants (EI10); and (iii) the identity of speakers, presenters and moderators who have appeared at conferences or other events sponsored by the Entity Defendants (beyond what appears on the AMP website and social media you have produced).  Please let me know if I am incorrect.

12. For EI12 and II4, you have listed 3 internet domain names and AMP's Twitter page, Facebook page and YouTube channel.  Have *any* of the defendants owned, controlled, created or maintained (in Arabic or English) any other website, blog, social media account, or internet domain name?  Do any of the Individual Defendants have social media accounts, web pages or blogs that have ever had content relating to any of the Entity Defendants or *Boim* Defendants?

I look forward to concluding our discussion tomorrow.  I suggested tomorrow afternoon in my e-mail this morning.  Would 1:30 PM work?

Best regards,

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Woolley, Allen
**Sent:** Tuesday, April 17, 2018 9:31 AM
**To:** 'Christina Jump'
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Why don't we speak tomorrow afternoon.  Does that work?

We will look for the additional documents this afternoon.  Will this be the last group of documents?  Is there still material you are waiting for the confidentiality order to produce?

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive

Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 17, 2018 9:13 AM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Counsel:

Per below, please confirm if you still wish to proceed with a call at 10am this morning, in light of the hard stop at 11:00.

Also, we just this morning received the website archive, along with some other documents from a former employee we were able to reach who checked her personal devices as well (also received this morning).

We expect to send those to you later today, so if it makes more sense to speak tomorrow or later in the week with that in mind, please let me know as well. Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)


**From:** Christina Jump
**Sent:** Monday, April 16, 2018 1:43 PM
**To:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses

That should work. I will need to get off the call at 11:00 am, so if you believe we will need a larger block of time than one hour, let's try the afternoon instead.

Thanks.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102

Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)


**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Monday, April 16, 2018 8:57 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses


How about tomorrow morning (Tuesday) at 10AM?

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com


**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Friday, April 13, 2018 6:30 PM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift
**Subject:** Re: Defendants' Amended Discovery Responses


We just had an administrative judge set a hearing for Monday. I am flexible anytime Tuesday during normal business hours, so if you speak quickly you may choose your time.



Christina A. Jump

On Apr 12, 2018, at 11:00 AM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

    Monday afternoon at 2?

    **W. Allen Woolley**
    Partner
    Locke Lord LLP
    111 South Wacker Drive
    Chicago, Illinois 60606
    T: 312-201-2676
    C: 773-255-1542
    F: 312-416-4856
    allen.woolley@lockelord.com
    www.lockelord.com


    **From:** Christina Jump [mailto:cjump@clcma.org]
    **Sent:** Thursday, April 12, 2018 10:50 AM
    **To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua

**Cc:** Charles Swift; Leila Mustafa; Seth Corthell (scorthell@jaszczuk.com)
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Looks like our emails crossed. Glad you received it.

I am not available Monday morning as I have a conflict out of the office, but am available that afternoon, and am flexible throughout the day Tuesday the 17th as well. Please let me know what works for you. Thanks.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Thursday, April 12, 2018 10:39 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

We received the flash drive moments ago.

Would 10am on Monday work?

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Thursday, April 12, 2018 10:38 AM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Yes, Monday is fine. Thanks. I will confirm the expected delivery of the flash drive shortly.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Thursday, April 12, 2018 10:18 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

I reviewed your proposed confidentiality order (which is based on the ND Ill form). It looks fine. We agree to entry of the order.

I am also in the process of digesting the amended responses you provided and understand you are sending a fairly large volume of additional document production material (which we have not yet received). Could we push the call we scheduled for this afternoon to Monday to allow us to receive and digest the new material?

Best,

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 10, 2018 6:50 PM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** Defendants' Amended Discovery Responses

Counsel:

Please see attached both sets of Amended Objections and Responses to Interrogatories, on behalf of the Individual Defendants as well as AMP and AJP, and the Amended Objections and Responses to Plaintiffs' Jurisdiction Document Requests. Please also see the attached relevant verification pages.

As noted herein, documents bates labeled 002594 – 002660 and 004410 – 004422 will be produced upon agreement as to a Confidentiality Order, a proposed one of which was sent to you yesterday (as noted below).

Otherwise, a flash drive with the additional document production, including the unlabeled zip files of the archives for the relevant Facebook and Twitter accounts, is already on its way to you.

Thank you and I look forward to speaking with you later this week (should that remain necessary).

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 11:44 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement

That's fine. We will call you at 2pm on Thursday.

**W. Allen Woolley**
Partner
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 10, 2018 11:20 AM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Yes, that works. Same time good?

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)


**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 7:45 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Christina:

Would Thursday afternoon work to complete the discovery conference?

-AW


**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, April 09, 2018 7:22 PM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** Supplemental Declaration and Proposed Confidentiality Agreement

Counsel:

Please see the attached Declaration, of Munjed Ahmad. In addition, we attach a proposed Confidentiality Order. With an agreement on that, we can produce the items discussed Friday, as well as a few additional documents we have located that would fit within the scope of the Confidentiality Order. If we can agree on the language and retroactive nature of the Confidentiality Order, we can produce those remaining documents, and our Amended Discovery Responses which refer to them, tomorrow. Please also note that we have had success with the social media archives and will have those in producible format tomorrow as well.

Thank you. In light of this, I believe it makes sense to push our potential continuation of the call on outstanding issues by one more day, so that you may receive this information and thereby better assess what, if anything, remains in disagreement. Please let me know if you agree.

Please let me know your position on the attached proposed Confidentiality Order (redlined per the Local Rules), and we look forward to hearing your response. Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081

26

(972) 914-2507 (main)
(972) 914-2508 (direct)



&lt;image001.jpg&gt;

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.