**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No. 17-cv-03591 |
| v. | ) ) ) | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABUIRSHAID, | ) ) ) ) ) ) | **Hon. Sidney I. Schenkier** |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO QUASH AND
MOTION FOR PROTECTIVE ORDER REGARDING REQUESTED DISCOVERY**

Apparently believing the best defense is to go on the offense, defendants immediately responded to plaintiffs' May 14, 2018 motion to compel (Dkt. 56) by filing their own discovery motion—first as an "emergency" motion the night before plaintiffs were scheduled to present their motion to compel (Dkt. 58), and now in the form of their current motion to quash and for a protective order (Dkt. 66). Defendants' motion fails as both defense and offense. Defendants assert that plaintiffs' previously-served interrogatories and document requests are "highly objectionable" and that they should not have to provide more than the 4,500 pages of documents they have already produced. But as shown in plaintiffs' motion to compel responses to those requests (Dkt. 56), plaintiffs' discovery requests were carefully targeted at "the existence of an alter ego relationship" and fall squarely within the scope of jurisdiction discovery Judge Coleman authorized. They are not "highly objectionable." Nor is there anything in the discovery rules that excuses a party from producing additional discoverable documents once a 4,500 page threshold is

reached. Document productions are frequently orders of magnitude higher, and here the bulk of defendants' 4,500 pages is simply downloads of *publicly available* internet content (much of which was produced more than once), which likely did not require careful attorney review.

More troublingly, defendants seek to use their 4,500 page production as a shield to resist producing *internal* emails, communications, solicitation materials, donor and sponsor information, responsive materials in Arabic, convention documents, and other documents directly pertinent to plaintiffs' alter ego allegations and the alter ego issues discussed in Judge Coleman's August 18, 2017 jurisdiction opinion. (Dkt. 41.) As an example, none of the three individual defendants has produced a single e-mail, and the entity defendants have produced limited emails from just two custodians, despite having more than a dozen current officers, directors and employees, a number of which were involved with defendants' predecessors and in the early days of defendant American Muslims for Palestine ("AMP"). Defendants' strategy throughout the discovery process has been to point to their public internet production and self-serving declarations, arguing that plaintiffs should be satisfied with the public documents and information defendants have *chosen* to produce, without being permitted access to internal documents and information defendants do not want to produce.

In this motion, defendants seek to take the same strategy two steps further. First, they ask to quash four deposition notices that fall squarely within the scope of the "limited jurisdictional discovery" the Court authorized. Three of the four deponents are the individual defendants in this case—and all three previously submitted sworn declarations in support of defendants' first jurisdiction motion to attack plaintiffs' alter ego allegations. The fourth deponent is an officer of defendant Americans for Justice in Palestine Educational Foundation ("AJP") who has also more recently provided a declaration that defendants may use to attack jurisdiction. Thus, in addition to limiting the document production to public material, defendants are attempting to use self-serving

declarations to support their next jurisdiction motion while preventing plaintiffs from cross-examining the declarants.

Second, defendants seek to preemptively bar *any* follow-up discovery by requesting a blanket protective order precluding plaintiffs in advance from serving further discovery. This request is both premature and unwarranted. To date, plaintiffs have not served or even threatened to serve any additional discovery; plaintiffs' focus to date has been getting proper and complete responses to their *existing* discovery. Without even knowing what future discovery plaintiffs might request, defendants cannot meet their burden of demonstrating that the unspecified further discovery (if there ever is any) would cause annoyance, oppression or undue burden.

For these reasons, as discussed in greater detail below, defendants' motion should be denied in its entirety.

## Background

The "jurisdictional discovery" currently underway stems from a Rule 12(b)(1) motion to dismiss that defendants filed on June 12, 2017, arguing that the Court lacks subject matter jurisdiction to hear this case. (Dkt. 31.) In support of their motion, defendants argued that the Court could "look beyond" the jurisdictional allegations in the complaint and "view whatever evidence has been submitted on the issue" to determine whether jurisdiction exists. (Dkt. 31 at 10.) Defendants offered declarations of defendants Abdelbasset Hamayel, Osama Abuirshaid and Rafeeq Jaber (the "Individual Defendants"), as well as a number of purported evidentiary documents, in an effort to rebut plaintiffs' alter ego allegations and establish that plaintiffs failed adequately to establish the existence of an alter ego relationship. (Dkt. 31 at 10-15.)

Because alter ego liability is "direct," federal courts have jurisdiction over alter ego claims seeking to hold alter egos liable for judgments rendered under a federal statute such as the Anti-Terrorism Act  *See, e.g., Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d

1031, 1037-1038 (7th Cir. 2000) (alter ego liability is "direct," not vicarious, and therefore "arises under" federal law for jurisdiction purposes when federal law creates the original right of action). Plaintiffs contend that the existence of an alter ego relationship is an ultimate issue in this case, which should not be decided in the context of a Rule 12(b)(1) jurisdiction motion. *See Mungiovi v. Chicago Housing Auth.*, 901 F. Supp. 261, 263-264 (N.D. Ill. 1995) (dismissal under Rule 12(b)(1) is not appropriate "[i]f the issue of jurisdiction is intertwined with the merits of the case"). Defendants nevertheless urged the Court to assess the merits of plaintiffs' alter ego allegations to determine the existence of federal subject matter jurisdiction.

In granting defendants' Rule 12(b)(1) motion, Judge Coleman weighed plaintiffs' allegations and defendants' purported rebuttal evidence, concluding that this case "is a close one," but "[o]n these facts," plaintiffs "fail to demonstrate the requisite level of unity of interest and control such that AMP and AJP are 'disguised continuances' of the judgment debtors and that the organizations and individual defendants can be held directly liable for the actions of the judgment debtors." (Dkt. 41 at 8, 10.) Judge Coleman's opinion contained an extensive discussion of the particular alter ego issues raised in the complaint and defendants' brief. (*See id.* 2-3, 8-10.)

Plaintiffs moved to reconsider, and Judge Coleman granted the motion on January 4, 2018, holding that the Court "placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship." (Dkt. 50.) Consistent with the Court's order, plaintiffs served written discovery requests that were carefully tailored to address the "existence of an alter ego relationship."

Plaintiffs also served four notices of deposition on May 11, 2018, seeking to depose the three Individual Defendants and Munjed Ahmad, defendant AJP's current Vice President and Treasurer. Each of these deponents has previously submitted a declaration regarding alter ego issues, and defendants have indicated that these witnesses may support their next jurisdiction

motion. The proposed dates for the depositions are June 15, 18, 20 and 22, but plaintiffs have offered to work with defendants' counsel to schedule reasonable, mutually convenient dates and have indicated that the depositions would need to be pushed back if document production or written discovery remains to be completed. The deposition notices specifically limit the scope to "matters pertinent to jurisdiction discovery."

At this time, plaintiffs have neither served nor threatened to serve any discovery beyond their current document requests, interrogatories and four deposition notices. Plaintiffs are seeking to obtain proper and complete responses to the jurisdiction discovery they have already served, and for that reason have filed a motion to compel, which is currently pending (Dkt. 54, 56). If plaintiffs are able to obtain proper and complete answers to their current discovery requests, they anticipate that they will likely need little (if any) additional jurisdiction discovery beyond what has already been served before seeking leave to file an amended complaint.

<u>**Argument**</u>

## I.   THE INDIVIDUAL DEFENDANT AND DECLARANT DEPOSITIONS FALL SQUARELY WITHIN THE SCOPE OF JURISDICTION DISCOVERY.

During the *regular discovery phase* of this case, plaintiffs expect to take comprehensive depositions of a number of party and non-party witnesses. Defendants' *jurisdiction discovery* deposition program is far more limited: Defendants have at this point only served deposition notices for the **specific four witnesses defendants have already indicated they may use to support a jurisdictional attack**. Three of these are the Individual Defendants in this case, each of which previously submitted a declaration in support of defendants' original Rule 12(b)(1) motion to dismiss based on the purported lack of subject matter jurisdiction. (Dkt. 31-1, Exs. A, B, C.) Indeed, these were the exact same three declarations Judge Coleman determined on reconsideration that she had given "too much weight" in deciding defendants' initial jurisdiction motion.

The remaining witness, AJP's current Vice President and Treasurer, Munjed Ahmad, provided a fourth declaration on April 9, 2018. Defendants produced this declaration in discovery and referred to it repeatedly in their amended responses to plaintiffs' document requests and interrogatories—often in lieu of providing documents or substantive information. (Dkt. 56-5, Exs. 16, 17, 18.) Defendants specifically listed Ahmad's declaration in response to plaintiffs' interrogatory requesting that they identify persons who may provide testimony or declarations in connection with any motion to challenge the existence of subject matter in this case. (Dkt. 56-5, Exs. 17 & 18, Resp. to Interrog. No. 2.) Ahmad's declaration purports to rebut a number of plaintiffs' factual alter ego allegations. (*See* Dkt. 56-5, Ex. 19.)

Based on defendants' prior jurisdiction motion and discovery responses, plaintiffs anticipate that these four witnesses and their declarations will be front and center in defendants' next jurisdiction motion. Plaintiffs are not seeking to depose these witnesses on every aspect of the case but only on their declarations and facts pertaining to the "existence of an alter ego relationship," the jurisdiction issue Judge Coleman's January 2018 order identified. The deposition notices state on their face that "[t]he deposition will be limited to matters pertinent to jurisdiction discovery." (Dkt. 67-1, Ex. B at 79-91.)

The noticed depositions fall squarely within the scope of jurisdictional discovery, and the Court should not quash plaintiffs' deposition notices. Plaintiffs will adjust the timing of the depositions as necessary to accommodate the resolution of the pending discovery motions and any further productions of documents and information.

## II. THERE IS NO REASON TO ISSUE A BLANKET PROTECTIVE ORDER PRECLUDING FURTHER DISCOVERY THAT HAS NEITHER BEEN SERVED NOR THREATENED.

Defendants' motion also asks the Court to enter a preemptive protective order that would preclude *any* further discovery without a Court order. However, at this point, plaintiffs have not

6

served any further discovery, threatened any further discovery, or even identified any particular additional jurisdiction discovery they plan to pursue. Defendants' request to preclude undefined future discovery—which may or may not ever be served—is premature and unwarranted.

A party "from whom discovery is sought" may request a protective order "for good cause" to protect against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party requesting the protective order has the burden to demonstrate good cause "by submitting a particular and specific demonstration of fact." "Broad allegations of harm unsubstantiated by specific examples or articulated reasoning are insufficient." *Flores v. Bd. of Trs. of Cmty. College*, 14-cv-7905, 2015 WL 7293510, *3 (N.D. Ill. Nov. 19, 2015) (attached as <u>Exhibit 1</u>); *see also Steadfast Ins. Co. v. Auto Mktg. Network Inc.*, No. 97-cv-5696, 1999 WL 300231, *1 (N.D. Ill. April 29, 1999) (attached as <u>Exhibit 2</u>). Defendants here have not made, and cannot make, any such showing. Indeed, they do not yet even know what, if any, additional discovery plaintiffs may request.

Defendants suggest a preemptive blanket protective order is warranted because plaintiffs' initial sets of document requests and interrogatories were "highly objectionable" and "not related to jurisdiction." (Dkt. 67 ¶ 4.) But defendants are not moving for a protective order with respect to the existing discovery. They are moving to preclude any future discovery, and their purported objections to the existing discovery are irrelevant. Furthermore, as demonstrated in plaintiffs' motion to compel (Dkt. 56 at 6-14), plaintiffs' initial requests are not "highly objectionable," but were carefully targeted at the "existence of an alter ego relationship," the precise issue identified in Judge Coleman's January 4, 2018 order. Indeed, Judge Coleman's August 18, 2017 jurisdiction opinion in large part provided the roadmap for plaintiffs jurisdiction discovery requests, and most of the requests specifically target issues discussed in that opinion. (*See* Dkt. 56 at 4-5 & n.3 (summarizing issues discussed in opinion).)

Defendants also point to the 4,500 pages of documents they produced (and information gleaned from those documents presented in "easy-to-see formats"), arguing that they should not have to produce anything more. (Dkt. 67 at 2.) This argument is no more successful here than as a basis for not answering plaintiffs' initial discovery. There is no magic to 4,500 pages, and document productions in cases of this size are often orders of magnitude larger. The number of pages defendants have produced is not grounds to preclude what might be otherwise appropriate discovery requests—before those requests are even submitted. That is especially true here, because the vast bulk of defendants' produced documents are simply downloads or copies of ***publicly available material***,[1] and many of these pages are multiple copies of the same website and social media content. As shown in plaintiffs' memorandum in support of their motion to compel (Dkt. 54), defendants are trying to avoid producing *internal* documents and information by pointing to the volume of the public internet content and other public documents they have produced. They should not get to choose which responsive materials they produce and avoid producing materials they wish to withhold by pointing to the volume of their production to date.

If plaintiffs decide to serve further jurisdiction discovery, they comply with the discovery rules and will limit that discovery to appropriate jurisdiction and alter ego issues. Defendants will be free to object or seek a protective order in accordance with the rules if they believe plaintiffs' new requests are improper. There is no ground or need for the Court to enter a preemptive protective order at this time.

---

[1] Defendants' own brief confirms that this is the case. On pages 2 and 3, defendants list the categories of documents they have provided, and nearly all of these are publicly available materials, i.e.: (i) secretary of state filings, such as articles of incorporation and by-laws; (ii) social media content, such as Twitter feed, YouTube videos, Facebook and Twitter archive files; (iii) content and archive files for the ampalestine.org website; (iv) chapter e-mail addresses and phone numbers (collected from internet content); and (iv) AJP's Form 990s (which are public documents). (Dkt. 67 at 2-3.)

## Conclusion

For the foregoing reasons, and the reasons set forth in plaintiffs' memorandum in support of its pending motion to compel, defendants' Motion to Quash and Motion for Protective Order as to Further Discovery should be denied.

Dated: May 29, 2018                        Respectfully submitted,

                                           /s/ W. Allen Woolley

                                           Stephen J. Landes
                                           W. Allen Woolley
                                           Michael B. Kind
                                           Joshua Fliegel
                                           LOCKE LORD LLP
                                           111 South Wacker Drive
                                           Chicago, IL 60606
                                           (312) 201-2772
                                           *Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000

Daniel I. Schlessinger
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on May 29, 2018 he caused the foregoing

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO QUASH AND MOTION FOR

PROTECTIVE ORDER REGARDING REQUESTED DISCOVERY to be served by

electronically filing with the Clerk of the Court for the Northern District of Illinois using the

CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.


*/s/Michael B. Kind*