### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABURISHAID,<br><br>　　　　　　　Defendants. | Civil No. 17-cv-03591<br><br>Hon. Sharon Johnson Coleman<br><br>Hon. Sidney I. Schenkier |

### BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
### TO  COMPEL JURISDICTIONAL DISCOVERY RESPONSES

## I.  BACKGROUND

1.　　　On May 12, 2017, Plaintiffs filed the instant action, seeking to hold these Defendants liable for a prior judgment obtained by Plaintiffs against different defendants, in a suit filed in 2000.  Dckt. 1. The entities found liable in the 2000 action no longer exist, and became defunct by approximately 2004.  *Id*.  Plaintiffs assert claims in their Complaint of alter ego and successor liability, and specifically claim, in their Response to the Motion to Dismiss, that the current defendants are merely a "disguised continuance" of the earlier and now defunct judgment defendants.  Dckt. 1; Dckt. 41.

2.　　　In lieu of answering, Defendants moved to dismiss due to lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), which this Court granted on August 18, 2017.  Dckt. 31 and 41.  Plaintiffs subsequently filed a Motion for Reconsideration.  Dckt. 43.

3.　　　Clarifying that "[w]hile this Court disagrees that it misapplied the law, upon further reflection, this Court placed too much weight to defendants' declarations without

providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship." Dckt. 50. Accordingly, this Court, by ruling of the Hon. Sharon Johnson Coleman, ordered that it would "permit plaintiffs to conduct discovery solely to address jurisdiction." Dckt. 50.

4.      Plaintiffs thereafter sent extensive written discovery requests to Defendants, seeking highly objectionable categories of information not related to jurisdiction and which falsely presume facts not in evidence, as well as attempt to place serious burdens on Defendants.[1]  *See generally* Dckt. 56; **Exhibit C**, Discovery Responses and Supplemental Discovery Responses.  In good faith, counsel for Defendants repeatedly attempted to find middle ground, even providing summaries of the information provided in timeline and other easy-to-see formats: defense counsel provided the names of all individuals identified in the documents which had already been produced, including Board members broken down by year, the locations for places of business, the names of employees (both current and as available historically), the dates of each AMP Annual Conference, its location, title and excerpted pages showing the speakers and topics from items already produced, and the lists of "chapters," or local contact points, both currently and historically.[2] **Exhibit A**, Emails to Counsel.  Defense counsel also provided electronic copies with the full archives of the relevant Facebook, Twitter and website domains since the inception of those social media pages. *See* **Exhibit A**.  In total,

---

[1] Plaintiffs sent 35 Requests for Production, with broad definitions and wordings as well as multiple components, as well as 12 Interrogatories to AMP and AJP and eight Interrogatories to the Individual Defendants, with equally broad definitions and wording and multiple components. **Exhibit C**.

[2]   Again, this information was all available through the documents which had already been produced before these summaries were created as a courtesy by defense counsel.  Defense counsel simply took the time, over multiple calls and in multiple emails, to point Plaintiffs' counsel to it.  This occurred despite Plaintiffs' counsel's default references to a March 9 letter without incorporating the current status of their complaints on many requests, including after not having even viewed extensive information electronically provided until after multiple requests by defense counsel.  *See* April 3, 2018 Correspondence and subsequent emails, **Exhibits A and E**.

Defendants have produced over 4,500 pages of documents in this "limited" jurisdictional discovery phase, and flash drives with full archives of relevant Facebook, Twitter and website files. Defendant have already provided the following categories of documents:

- Articles of Incorporation of AMP and AJP, and By-Laws of AJP (no by-laws exist as to AMP, as already plainly stated to Plaintiffs) (bates labels 000001; 000005; 000008 – 000030; 000036; and 000054)
- The entire Twitter feed used to AJP d/b/a AMP (bates labels 000069 – 000276)
- All forms 990 filed on behalf of AJP, which are from 2010-2016 (redacted only as to names and addresses of voluntary donors) (bates labels 000277 – 000456)
- Blog postings and news articles from the relevant website, ampalestine.org (000457 – 001050; 001151 – 001613; 001668 – 001680; 001905 – 001907)
- The full website archive files, in electronic form for ampalestine.org
- The full Facebook and Twitter archive files, in electronic form
- Archived website pages in PDF form, specifically showing dates of each AMP annual conference, speakers, and agendas for each, to the extent retained in the ordinary course of business (bates labels 004469 – 004530)
- Executive Committee meeting minutes to the extent retained in the normal course of business (bates labels 002658 - 002660; 004410 - 004422; 004455)
- Listings and addresses, where applicable, of all local contacts for the subordinate "chapters" (*see* website archive and correspondence at Ex. A)
- Emails as retained in the normal course of business reflecting the creation of job descriptions (bates labels 004453 – 004454; 004447)
- Emails as retained in the normal course of business reflecting the decision to merge AMP and AJP into one functioning entity (with AJP surviving and AMP as a d/b/a) (bates labels 002604 – 002605; 002622 – 002640)
- Palestine Advocacy Day 2016 full materials (bates labels 004424 – 004435)
- Statements of purpose of AMP and AJP, as filed with the relevant Secretaries of State and as sent to donors, as well as from the relevant website pages (bates labels 000001; 000005; 000010; 000036; 000038; 000041;000043; 000047; 000054; 000065; 000458; 001641 – 001642; 001645 – 001646 001647 – 001649)
- Printouts of the topics of Youtube videos posted by AMP, which remain publically available (bates labels 001919 – 001928)
- A list of training topics to be pushed down to local chapter contacts, as created by AMP headquarters (bates labels 004459 – 004468)
- The addresses at which AMP has had its place of business (Interrogatories to AMP and AJP, Response No. 6, dated April 10, 2018)

*See* **Exhibit A**. These are, of course, in addition to the interrogatory responses and amended interrogatory responses, on behalf of the individual defendants and corporate entity defendants.

**Exhibit C** with relevant sworn verifications for each. And, to assuage Plaintiffs that the early origin documents they wish existed and/or were retained in the normal course of business simply weren't, Defendants produced a Declaration from Munjed Ahmad, one of the creators of AMP originally, attesting to his search for records relating to the decision to begin AMP and attaching the only ones he located from separate servers, after a diligent search. **Exhibit D.** All of this exceeds every rational definition of "limited" discovery. This is particularly true in light of the fact that Defendants have still not been required to file Answers, and Plaintiffs have not yet been required to provide Initial Disclosures or any other form of discovery response.[3]

5.      Plaintiffs still aren't happy, and still don't think they know enough about the formation of the parties to have completed their "limited" discovery on jurisdiction. On the afternoon of Monday, May 14, just after 3:00 p.m., Plaintiffs filed a Motion to Compel with brief in support (Dckt. 54 and Dckt. 56) and attached 245 pages of exhibits, many of which are not items produced in discovery in this litigation or, for that matter, relevant in any way to these parties. And, at 3:51 p.m. on Friday, May 11, 2018, Plaintiffs sent Defendants Notices of Depositions of the three individual Defendants as well as Munjed Ahmad, an officer with Defendant AJP d/b/a Defendant AMP, despite having already deposed Rafeeq Jaber twice in the original 2000 litigation against the judgment Defendants for the purpose of seeking any assets of those judgment Defendants. **Exhibit B.**

6.      At this point, Plaintiffs' actions far exceed the scope articulated in this Court's order permitting limited discovery for the sole purposes of jurisdiction and for a response as to

---

[3] This is not to say that full discovery should open now to make things "equal"; to the contrary, Defendants fully intend to reassert their Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) after this Court's clarification on the degree of limited discovery it intended, and, if necessary, a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) after that for failure to state a claim. That is the sequence by which this Federal court litigation should proceed, without motions to compel and full attempts at discovery prior to answers even being filed or required.

the Motion to Dismiss (Dckt. 50), and are merely harassing and unjustly burdensome.[4] Nonetheless, Plaintiffs ask this Court to "order Defendants to conduct a complete search for documents, e-mails and information in the possession, custody or control of Defendants (and their officers, directors and personnel)" during this limited jurisdictional discovery which the Court has allowed. Dckt. 54 at Para. 3.[5]

## II.     AUTHORITIES AND RESPONSE TO MOTION TO COMPEL

7.     District courts may limit any discovery that is "unreasonably cumulative or duplicative;" "obtainable from some other source that is more convenient, less burdensome, or less expensive;" the "party seeking discovery has had ample opportunity to obtain the information;" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *Ameritox, Ltd. v. Millennium Labs., In*c., 2012 U.S. Dist. LEXIS 177809, *3-4, 2012 WL 6568226 at * 4 (N.D. Ill. December 14, 2012). Even within the limited context of this jurisdiction-only discovery permitted in the instant case, Plaintiffs are seeking unreasonably duplicative and cumulative discovery.

8.     Plaintiffs here cannot show that the discovery they seek would support any allegations they make regarding the jurisdiction of this Court as to claims of alter ego or successor liability by way of a disguised continuance. "Instead, plaintiffs merely assert in the most conclusory way that [these defendants are] "merely the disguised continuance" of" the original judgment defendants which no longer exist. *See Chi. Reg'l Council of Carpenters*

---

[4] Defendants seek to quash the depositions, and a protective order as to further discovery, until this Court has a chance to clarify its Order granting limited discovery as to jurisdiction only, for purposes of the Motion to Dismiss filed under Fed. R. Civ. P. 12(b)(6). Dckt. 65, 67.
[5] Defendants further object to the hearsay, unverified document attached to Plaintiffs' Motion to Compel at Exhibit 1. Dckt. 56.2. This document, with a listed author of the Foundation for Defense of Democracies, was not written or approved by any Defendant in this matter, and did not involve consultation with any Defendant in this matter. Furthermore, the veracity of neither the author nor has not been established; it is therefore impermissible hearsay and as such should be disregarded by this Court.

*Pension Fund v. McGreal Constr., Inc.*, 2012 U.S. Dist. LEXIS 167373, *13 (N.D. Ill. Nov. 26, 2012). Plaintiffs do not even attempt to tie their discovery requests to the allegations made in their Complaint, and "have not specified what information they believe that they could obtain from further discovery" that would be relevant to the limited instant issue of jurisdiction. *See Trs. of the Chi. Reg'l Council of Carpenters Pension Fund v. Conforti Constr. Co*, 2013 U.S. Dist. LEXIS 99982, *15 (N.D. Ill. Jul. 17, 2013). Unfortunately, "what was intended to have been limited jurisdictional discovery has become an expansive and expensive foray" into all sorts of tangents, which is not what this Court ordered. *Draper, Inc. v. MechoShade Sys.*, 2012 U.S. Dist. LEXIS 11243, *3 (S.D. Ill. Jan. 30, 2012). To the extent responsive documents which relate to jurisdiction exist, they have been provided; if they do not exist, Defendants will not (and are not required to) create them, and have provided Interrogatory responses as well as Declarations addressing the issues. That is all that exists, and while Plaintiffs may not like the relevant answers, those are in fact the accurate responses.

9. Plaintiffs, while ubiquitously claiming they "do not waive their right to seek further orders compelling compliance with their discovery requests if appropriate" (Dckt. 54 at fn. 1), complain about not receiving what they deem to be appropriate responses in six main areas: (1) early officers and directors in AMP and AJP; (2) identifying voluntary donors; (3) annual conference materials, such as agendas, speaker lists, content of speeches, or programs; (4) e-mail distributions to "subscribers"; (5) identify the organizations "promoted and helped with fundraising"; and (6) provide information about "relationships to networks of people and organizations that have been closely tied to both the judgment debtors, AMP/AJP, and the funding of terrorist groups." Dckt. 56. at 3. As to each of these areas, Defendants either have provided the responsive information as it exists and is in good faith required to be preserved, or the requests are simply far too broad, burdensome and objectionable as written, and are not reasonably calculated to lead to the discovery of jurisdiction-related information.

6

A.          Officers and Directors Have Been Identified (and Summarized) Already

10.    Plaintiffs seek identification of the Officers and Directors, including Board members, of AMP and AJP. Defendants have provided that. In response to Interrogatories Nos. 3 and 6 sent to AMP and AJP, Defendants responded on March 5, 2018 with the answers to these questions, as well as referencing all Articles of Incorporation, which have been produced. Defendants also identified current employees, and locations used by Defendants. And, Defendants supplemented these Responses on April 10, 2018, with newly verified responses on that date, and set forth by year all members of the Boards of Directors of the relevant organizations, from formation to date, as much as the regularly retained records will show. **Exhibit C**. Furthermore, defense counsel had already summarized this information via emails, but since counsel for Plaintiffs considered that summary to be unsatisfactory, Defendants specifically set forth the exact same information in the April 10, 2018 discovery responses. **Exhibit A**. The only information not provided was a full and exhaustive list of original members of the Board of Directors for AMP from 2006, when it was formed, and 2007 and 2008. As repeatedly stated, there is no record which was maintained in the regular course of business showing this, and Defendants therefore cannot produce any such record from the fledgling days of a new charity. Therefore, Defendants provided the Declaration of Munjed Ahmad, who was involved in the creation of the original entity AMP, and his notes which he was able to locate from the time of formation of that entity. **Exhibit D**. Plaintiffs seem to primarily claim that (1) they wish the entity had been created earlier than by all evidence it was, and (2) they wish the entity had retained perfect historic records from its early days, well before it became a defendant in a lawsuit in 2017. Those are simply not the facts, and seeking to compel documents which don't exist and/or were not retained from more than ten years prior to litigation will not make those wishes come true. As to the relevant jurisdictional issues, the information which Plaintiffs wanted, as to formation of AMP and AJP and the involvement of

the individual defendants in those formations, has been provided. All corporate filings, and an additional Declaration from a founder of AMP which speaks to his intent in creation of AMP and the degree of his related awareness of the prior *Boim* judgment defendant entities, which was drafted and provided to complete the response where the documents do not, have already been provided. Defendants have stated repeatedly there is nothing being withheld which was maintained in the regular course of business. As to the individual defendants in this matter, Plaintiffs have already deposed Defendant Jaber, twice, in connection with the original 2000 litigation and his role pertaining to judgment defendants AMS and AJP, and have all of his relevant testimony, to the extent there is any. Defendants Jaber, Abuirshaid and Hamayel have already submitted sworn testimony in this matter that they do not have knowledge regarding the creation of Defendant AMP or Defendant AJP, and Munjed Ahmad also submitted sworn testimony that these three Defendants had nothing to do with the creation of AMP or AJP. There is simply nothing else to compel in this regard.[6]

B.        <u>Donors Do Not Create Jurisdiction, and Their Disclosure Invades Their Privacy</u>

      11.     The one area where Plaintiffs and Defendants agree is that Defendants have not provided the names and contact information for the donors to AJP d/b/a AMP. Where the parties disagree is whether this information relates to jurisdiction and therefore matters at this stage. Plaintiffs attempt to argue, as they tried and failed in response to the Motion to Dismiss already, that voluntary donations, made to a new charitable organization at a later date after the judgment at issue and with no prior obligation that these donations be made, somehow

---

[6] While also addressed regarding Defendants' Motion to Quash, in the alternative should the Court deem the accurate answers and documents already provided to be insufficient, Defendants would be amenable to a limited-in-time, agreed-in-scope deposition of, or third party interrogatories submitted directly to, Mr. Ahmad for any further information he may have relevant to AMP's creation, as it pertains to this limited jurisdictional discovery. There are no jurisdictionally related questions which can be asked in a deposition which cannot be asked by written question just as well, if not better, so Defendants respectfully submit that if further responses are needed, they should come in the way of written questions to Mr. Ahmad, for his sworn response.

constitute "assets" of the original *Boim* 2000 judgment defendants. They do not. Voluntary donors of a charity are not transferable property. *Christiansen v. Mech. Contractors Bid Dep*., 404 F.2d 324, 325 (10th Cir. 1968) ("[t]he court can find no equitable or moral reason ... why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation"); *see also* Dckt. 41 at 10 ("this Court is equally cautious of branding any organization and its members that support humanitarian interests for the people of Palestine as having an unlawful motive"). Defendants revealed the dates and amounts of donations made which were large enough to itemize on the 990 Forms produced, but redacted the names and addresses of those donors based on the privacy rights of those who are not parties to this lawsuit. **Exhibits A, C**. Plaintiffs have not shown, and cannot show, any legitimate jurisdiction-related interest which outweighs the privacy rights and interests of these non-party voluntary donors, regarding donations made years after the judgment defendants from the 2000 action all became defunct. This Court rightly noted that "a shared stated mission – "to educate people about Palestine[]" ... alone does not suggest any nefarious intent or unlawful motive. To find otherwise would create a false inference that no legitimate humanitarian organization could ever be created with that mission." Dckt. 41 at 8. Defendants have therefore validly objected to Plaintiffs' request for information regarding the identity of voluntary donors to AJP d/b/a AMP.

C.        Annual Conference Information Has Already Been Provided

12.        Plaintiffs complain about what they have already received, regarding information as to AMP and/or AJP annual conventions. Defendant provided this information, the underlying documentation, and a summary broken down by year and topic, as to all ten annual conferences conducted by Defendants to date. **Exhibit F**. This also includes production identifying the speakers and topics for each year's conference, where retained. *Id.*

Furthermore, to the extent that Plaintiffs claim any overlap with AMP conferences and IAP operations exists, Defendants have clearly responded: "As to conferences held by IAP or the cessation of IAP conferences, no related documents are in the possession of any Defendants." **Exhibit C**, April 10, 2018 Response to Request for Production No. 24. There is nothing left to compel here. To the extent Plaintiffs seek a definitive list of all presentations ever given by any of the dozens of Board members identified by Defendants in their interrogatory responses, this is both overly broad and unduly burdensome for Defendant to gather and summarize, and otherwise equally available to Plaintiffs by way of the complete archives, in their native electronic form, already produced by Defendants of the website, Facebook and Twitter pages. Furthermore, speeches ever given by any Board member at any time do not establish jurisdiction over these five defendants as to the matters presented before this Court (which, in this lawsuit, are solely alter ego and/or successor liability).

D.       Email Distributions Do Not Create Jurisdiction and Are Not Readily Available

13.       Plaintiffs next complain about not receiving email distribution lists for any and all materials sent out by these Defendants, at any time, and any and all items distributed. These requests are objectionable, burdensome, and not likely to reveal any jurisdictionally relevant information. As with donor identities, the identities of email subscribers (as opposed to Directors of the current Defendant entities) are not made public, and there is no justifiable interest outweighing the privacy rights of those involved which in any way connects subscribers to a new entity, created after the dissolution of all judgment defendants, to jurisdiction related to the alter ego and/or successor liability claims asserted in this action. To the extent Plaintiffs seek any materials which may be discoverable, all materials retained in the regular course of business are reflected in the website, Facebook and Twitter archives which have already been produced in full electronic form in this matter by Defendants. **Exhibit C**.

E.          The Only "Network" Sought Exists Solely in the Minds of Plaintiffs

14.     Plaintiffs seek information and responses relating to what they label as "Network

Entities" and "Network Defendants."  However, the definitions of these newly created terms

involve a clumping of unrelated entities and organizations, having little to nothing to do with

the alter ego claims in this matter, and which cannot be answered by Defendants due to the

inappropriate and prejudicial nature of the definitions used.[7]   The entities and individuals

identified have no connection to AMP and/or AJP, and far exceed the entities found liable to

Plaintiffs in the 2000 litigation as judgment entities (IAP, AMS, and Holy Land Foundation,

as referenced in this Court's Order at Docket 41, p. 2).  Just as this Court previously noted that

"Plaintiffs spend a great deal of time discussing organizations (KindHearts and The Mosque

Foundation) and … individuals that are not named as defendants in this or the previous suit"

(Dckt. 41 at 9), Plaintiffs veer equally unjustifiably here, in discovery.  Defendants cannot

answer anything as to the knowledge or documents retained by the more than twenty entities

not related to them or the more than thirty individuals named, none of whom are defendants in

---

[7] Plaintiffs' discovery defines "Network Entity" as including all of the following entities: "American Middle East League for Palestine; Anera; Baitulmaal, Inc.; Benevolence International Foundation; Global Relief Foundation; Helping Hands for Relief and Development; Hamas; ICNA Relief; IHH Humanitarian Relief Foundation; Islamic Relief Foundation; Interpal; KindHearts; Life for Relief and Development; Middle East Financial Services; The Mosque Foundation (or Bridgeview Mosque); Muslim American Society; the Muslim Brotherhood; Palestinian Children's Relief Fund; any branch of the Palestine Committee; Union of Good; United Muslim Relief; Unlimited Friends Association for Social Development; Viva Palestina; Zakat Foundation of America" and "any charitable, humanitarian, political or educational organization in Gaza or the West Bank; and any branch of the acting governmental authorities in Gaza or the West Bank."

Plaintiffs' discovery defines "Network Person" as including "Khaled Abughazaleh; Omar Ahmad; Nihad Awad; Shukri Abu Baker; Muhammad Alkik; Hatem Bazian; Khalil Demir (also known Halil Demir); Sana'a Abed Daoud; Salah Daoud; Ghassan Elashi; George Galloway; Sheikh Mohammad Al Hanooti; Oussama Jamal; Sheikh Bassam Jarrar; Ayman Jarwan; Hussein al-Khatib; Khalil al-Khaya; Mousa Abu Marzook; Mohammad El-Mezain; Kifah Mustapha; Sufian Nabhan; Ashraf Nubani; Magdi Odeh; Yusuf Qaradawi; Mohamed Qatanani; Nabil Sadoun; Sheikh Jamal Said; Ra' ed Sal ah; Sabri Samirah; Salah Sarsour; Yousef Shahin; Khaled Smaili" and "any representative or affiliate of a Network Entity"."

this or the *Boim* 2000 lawsuit. What Defendants can do, and have done, is speak to whether

they possess any assets of IAP, AMS and/or Holy Land Foundation. They do not. Defendants

have answered without reservation:

> 7. Identify all Assets that were at any time owned or possessed by any *Boim* Defendant and were later received (directly or indirectly) or came to be possessed or owned by Respondent.
>
> **Response***: None as to AMP and AJP. As to any payments made to the Individual Defendants, see Objections and Responses to Interrogatories to Individual Defendants as well as their individual Declarations previously provided.[8]
>
> 8. All documents in Respondent's possession, custody or control relating to the *Boim* Judgment, enforcement efforts in connection with the *Boim* Judgment, or any actual or potential criminal investigation or prosecution of any *Boim* Defendant.
>
> **Response***: None, other than the transcripts of the depositions of Rafeeq Jaber, which are already in the possession of Plaintiffs; limited correspondence retained by Mr. Jaber has already been produced.
>
> 9. All documents relating to the cessation of the operations, wind-up, or dissolution of any *Boim* Defendant or affiliate, including documents relating to the decision to stop operating.
>
> **Response**: None.
>
> 10. All documents relating to any Assets that at one time were owned or possessed by any *Boim* Defendant and that, at any time, were received (directly or indirectly) or came to be possessed or owned by Respondent.
>
> **Response**: None. As to payments received by any Individual Defendant for agreed paid services as referenced in the previously produced Declarations of the Individual Defendants, please see those Declarations as well as responses provided by Individual Defendants to Interrogatories in this matter.
>
> 27. All documents that Respondent obtained directly or indirectly from any *Boim* Defendant. This request includes any copies of paper documents, electronic transmissions or electronically stored information now in Respondent's possession, custody or control that were at any time in the possession, custody or control of a *Boim* Defendant.
>
> **Response***: None.
>
> 28. All documents relating to the preventing or avoiding liability for the *Boim* Judgment or civil or criminal liability under the federal Anti-Terrorism Act of any other anti-terrorism statute.
>
> **Response***: None exist. [9]

---

[8] Ex. C, Objections and Responses to Interrogatories to AMP and AJP, Response No. 7.
[9] Ex. C, Objections and Responses to Requests for Documents, Nos. 8-10, 27-28.

3. Identify all Assets that were at any time owned or possessed by any *Boim* Defendant and were later received (directly or indirectly) or came to be possessed or owned by Respondent.

**Response**:

No assets owned or possessed by any *Boim* 2000 judgment defendant have ever been received, possessed or owned by the Individual Defendants in this matter, other than as payment for work performed for paid services during the existence of IAP and/or AMS (prior to 2004) as referenced in the Declarations of the Individual Defendants. Regarding Defendant Jaber, please also see transcripts of depositions of Rafeeq Jaber for detailed inquiry and answers already obtained by Plaintiffs regarding the distribution of the assets of IAP and AMS, if any, and the dissolution of IAP and AMS. Those deposition transcripts are already in Plaintiffs' possession.[10]

Therefore, Defendants have answered, clearly and unequivocally, as to the relevant assets of the prior *Boim* 2000 judgment defendants. Plaintiffs may not like the answers, but they are accurate.

Plaintiffs further complain about the format of the information received, with particular attention to wanting information in email form, from AMP and/or AJP servers in native form.[11] However, Plaintiffs fail to identify what, if any, jurisdictionally related information they believe they are missing out on by getting the answers which have been provided in the form in which they have been provided. While extensive email production may be a topic for full discovery at a later date, there is no connection made here to the jurisdictional inquiries permitted and the form in which Plaintiffs would rather receive information.

For the reasons set forth above, Defendants respectfully request this Court deny Plaintiffs' Motion to Compel, and further rule that the limited jurisdictional discovery permitted in this matter is now complete for purposes of permitting Plaintiffs to more fully respond to Defendants' upcoming re-asserted Motion to Dismiss under Fed. Rule Civ. P. 12(b)(1), and for any such other relief to which Defendants may show themselves justly entitled.

---

[10] Ex. C, Objections and Responses to Interrogatories to Individual Defendants, No. 3.

[11] Defendants have provided some emails, as found on outside servers by some individuals associated with AMP and/or AJP, but do not have access to the "native" files of those emails. In addition, as also already communicated, Defendants are not withholding any emails retained in the normal course of business regarding the topics on which Defendants have responded to discovery.

Respectfully submitted,

*/s/ Christina A. Jump*

Charles D. Swift,
Texas Bar No. 24091964
Christina A. Jump
Texas Bar No. 00795828
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Attorneys for Defendants*

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on this 29th day of May 2018, I electronically filed the foregoing with
the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to
all counsel of record.

*/s/ Christina A. Jump*

Christina A. Jump
*Attorney for Defendants*