# EXHIBIT A

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | Woolley, Allen |
| **Cc:** | Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift |

| | |
|---|---|
| **Subject:** | RE: Correspondence is attached (1 of 3) |
| **Date:** | Tuesday, March 27, 2018 6:22:00 PM |
| **Attachments:** | Defendants" Production 000001- 000068_Redacted.pdf |

Counsel:

Regarding your earlier correspondence of March 9, please see the attached supplemental production.  Please note in this regard that, while we are re-producing the pages previously produced (numbered 000001- 000068) and have redacted some information which was inadvertently not redacted previously (such as the routing number on the copy of a check which was included, for example), the substance and order of these pages themselves has not changed.  We further are producing documents labeled 000069-000456, which were not produced with the earlier responses.

In addition, we plan to make further production, of primarily further social media presence, by the end of this week.  This has been delayed due to the practical logistical difficulties of getting things on a screen to appear the same way on a page (which, oddly enough, screen shots do not always accomplish).

As to your statements throughout the letter of March 9, I expect that we can best revisit remaining issues, if any, once you have had an opportunity to review the supplemental production, as it may answer many of your questions.  In that vein, please note the following facts:

The original production (000001-000068) includes all of the names of the Officers and Board members of AMP and AJP.  In particular, those are summarized below for your convenience, though this information is contained within the originally produced documents:

- AJP was incorporated on November 16, 2009.
- Per the produced by-laws, the Officers and Board members at inception were as follows:
  - Hatem Al-Bazien, President
  - Munjed Ahmed, Treasurer and Vice President
  - Sandy Stephan, Secretary
  - Board members Hatem Al-Bazian, Munjed Ahmed, Hussein Khatib, Osama Abuirshaid, Salah Sarsour and Shakeel Syed
- Also per the included by-laws, these Board members retained their positions for five (5) years or until a qualified replacement for the position is elected.
- Those holding these positions remained in them as of August 2017, as reflected in the filing with the Illinois Secretary of State, also previously produced.
- AMP was incorporated on August 2, 2006, in California, as per the original production.
- AMP's 2009 filings with the Secretary of State list its officers as Hatem Al-Bazian, Awad Hamdan and Dean Salem, and in 2013 list Hatem Al-Bazian as CEO/Chief Financial Officer, and Munjed Ahmed as Secretary; these facts are referenced in the originally produced documents as stated.

This information has been available to you in the document production all along, despite your assertions in your March 9, 2018 letter that as to "documents showing officers, directors, employees" and the like, "the Document Production contains almost none." As specifically identified in this email and as you can confirm by your own review, it is all there in the original batch of documents. The same is true as to the list of employees identified in the interrogatory responses, which is not set forth here again but was provided to you on March 5, 2018.

Please also note that we may still disagree as to the scope of discovery permitted at this juncture. Information which may be normally "reasonably calculated to lead to the discovery of admissible evidence" in full, standard discovery during litigation, as you reference in your letter, is still not the same as applicable here. The Court ordered "limited jurisdictional discovery" "solely to address jurisdiction" "on the existence of an alter ego relationship" between these Defendants and any original Boim 2000 judgment defendants. *See* Dckt. 50 and 51. Your pleadings are clear, as was the Court's order, that the relevant view is as to the connection (if any) between AJP. AMP, Rafeeq Jaber, Abdelbaset Hamayel and/or Osama Abuirshaid, and fraudulently transferred assets (if any) of the *Boim* 2000 judgment defendants (in relevant part, IAP, AMS, and HLF, as alleged in Plaintiffs' Complaint in this matter). This is not full discovery. The Court granted this limited jurisdictional discovery not because it perceives its legal analysis from the Order granting the Motion to Dismiss to be in error, but because of the "weight [given] to defendants' declarations" without affording plaintiffs discovery as to the assertions in those declarations. Dckt. 50.

You now have that. While you may wish that these defendants had retained every email or other document they once had from 2006 or 2009 when AMP and AJP were formed, they were not defendants at the time and were under no obligation to do so. AMP and AJP were not either. The same is true as to your request for details as to the arrival in the United States of the individual defendants: they had, at the time they arrived here decades ago, no obligation to retain the information you now seek. And, financial transfers, if any, between AJP and AMP will not give you the "look back" you are hoping exists as to any connection between these five current defendants and the prior, and different *Boim* 2000 judgment defendants and their former assets. All the same, we have now produced, per the attached, 990s as to AJP and AMP (redacted to protect the privacy rights of the donors to AJP, who have no obligation to donate and whose donations cannot, therefore, be considered in any way to be "assets" of the *Boim* 2000 judgment defendants, even if there were any potential overlap in those who have chosen to give to each organization). As to documents on social media, those were and remain available to anyone with internet access; nonetheless, we have produced more, and will continue to do so as noted above.

We are further under no obligation to accept, and do not accept, your overly broad, inapplicable and unfounded creation of your "Network Persons" and "Network Entities" definitions. Despite our valid objections to these irrelevant groupings, we have answered, quite plainly, that "there were no 'precursor organizations' of AMP or AJP" (Responses to Requests for Documents Nos. 3 and 4); that these defendants have "none" of the documents "relating to the *Boim* Judgment enforcement efforts in connection with the *Boim* Judgment", or "any actual or potential criminal investigation or prosecution of any *Boim* Defendant", or "the cessation of the operations, wind-up or dissolution of any *Boim* Defendant", or "any Assets that at one time were owned or possessed by any *Boim*

Defendant and that, at any time, were received (directly or indirectly) or came to be possessed or owned by" these current defendants (Responses to Requests for Documents Nos. 8, 9 and 10). You may not like the answers, but they are there, and they are clear.

Please advise as to what, if any, disagreement remains once you have had the opportunity to review the additional documentation, as well as the previously produced information which is pointed out in the body of this email, above. The documents will be attached in 3 waves of emails, this being the first, and as a complete set are numbered 000001-000456. Please also advise if you do not receive this full range.

Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Monday, March 26, 2018 8:48 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Roe, Colleen <CRoe-Valleau@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>
**Subject:** RE: Correspondence is attached.

Sounds good. Why don't I take a look at whatever you send and propose a time Wednesday or Thursday morning?

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, March 26, 2018 8:46 AM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift
**Subject:** Re: Correspondence is attached.

Yes, that works. I am out of the office Thursday as of 3:00 pm (and we are closed Friday), but am in the office and flexible earlier Thursday and on Wednesday as well.

Christina A. Jump

On Mar 26, 2018, at 8:42 AM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

Christina,

I am out of the office this week but can be available for a call during the mornings. However, if you are planning to provide supplemental material, it might make more sense to do it after I've had a chance to review.  Would Wednesday or Thursday work?

Best,
AW

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Friday, March 23, 2018 1:16 PM
**To:** Woolley, Allen; Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen
**Cc:** Charles Swift
**Subject:** RE: Correspondence is attached. [LL-01.FID3847873]

Yes.  I will be in the office Tuesday of next week, if that works for you.
While we disagree with many parts of your recent letter, we will also provide some supplemental materials by then, which may resolve the issue as well.  We will work to get those to you prior to Tuesday in the event a call becomes unnecessary.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Friday, March 23, 2018 12:55 PM
**To:** Christina Jump <cjump@clcma.org>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>
**Subject:** RE: Correspondence is attached. [LL-01.FID3847873]

Christina,

I wondered whether you have had a chance to review my March 9 letter.  We would like to schedule a discovery conference.  Can you let us know when you could be available?

Thank you,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606

T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, March 13, 2018 9:04 AM
**To:** Roe, Colleen; Woolley, Allen; Kind, Michael; Fliegel, Joshua
**Cc:** Charles Swift
**Subject:** Fwd: Correspondence is attached.

Counsel:

As indicated in my out of office response, please be advised that I am out of the office all week. I will contact you, and respond to your letter, when I return.

Thank you.

**From:** Roe, Colleen [mailto:CRoe-Valleau@lockelord.com]
**Sent:** Friday, March 09, 2018 3:51 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Subject:** Correspondence is attached.

Ms. Jump,
The attached document is sent on behalf of Allen Woolley.
Please direct any comments to Mr. Woolley
(allen.woolley@lockelord.com or +1.312.201.2676).
Thank you.
*Colleen Roe-Valleau*

<image001.jpg>

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

| From: | Christina Jump |
|---|---|
| To: | Woolley, Allen |
| Cc: | Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift |
| Subject: | Re: Document production |
| Date: | Thursday, March 29, 2018 5:22:38 PM |

Please note that we are sending Defendants' full document production to you today via FedEx, on a flash drive. The electronic supplemental production includes all bates labeled documents to date, marked 000001-002593.

Thank you.


Christina A. Jump

On Mar 28, 2018, at 8:42 AM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Christina:
>
> I have received all three of your e-mails with attachments, and I understand from your accompanying cover e-mail that defendants intend to produce additional social media material by the end of the week. Given these additional productions, I do not think it makes sense for us to schedule a call this week. We will review the additional material you produce and get back to you with suggested timing for the discovery conference.
>
> Best regards,
>
> Allen Woolley
>
> ---
>
> **From:** Christina Jump [mailto:cjump@clcma.org]
> **Sent:** Tuesday, March 27, 2018 6:29 PM
> **To:** Woolley, Allen
> **Cc:** Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift
> **Subject:** RE: Correspondence is attached (1 of 3)
>
> Counsel:
>
> Regarding your earlier correspondence of March 9, please see the attached supplemental production. Please note in this regard that, while we are re-producing the pages previously produced (numbered 000001- 000068) and have redacted some information which was inadvertently not redacted previously (such as the routing number on the copy of a check which was included, for example), the substance and order of these pages themselves has not changed. We further are producing documents labeled 000069-000456, which were not produced with the earlier responses.
>
> In addition, we plan to make further production, of primarily further social media presence, by the end of this week. This has been delayed due to the practical logistical

difficulties of getting things on a screen to appear the same way on a page (which, oddly enough, screen shots do not always accomplish).

As to your statements throughout the letter of March 9, I expect that we can best revisit remaining issues, if any, once you have had an opportunity to review the supplemental production, as it may answer many of your questions. In that vein, please note the following facts:

The original production (000001-000068) includes all of the names of the Officers and Board members of AMP and AJP. In particular, those are summarized below for your convenience, though this information is contained within the originally produced documents:

- AJP was incorporated on November 16, 2009.
- Per the produced by-laws, the Officers and Board members at inception were as follows:
  - Hatem Al-Bazien, President
  - Munjed Ahmed, Treasurer and Vice President
  - Sandy Stephan, Secretary
  - Board members Hatem Al-Bazian, Munjed Ahmed, Hussein Khatib, Osama Abuirshaid, Salah Sarsour and Shakeel Syed
- Also per the included by-laws, these Board members retained their positions for five (5) years or until a qualified replacement for the position is elected.
- Those holding these positions remained in them as of August 2017, as reflected in the filing with the Illinois Secretary of State, also previously produced.
- AMP was incorporated on August 2, 2006, in California, as per the original production.
- AMP's 2009 filings with the Secretary of State list its officers as Hatem Al-Bazian, Awad Hamdan and Dean Salem, and in 2013 list Hatem Al-Bazian as CEO/Chief Financial Officer, and Munjed Ahmed as Secretary; these facts are referenced in the originally produced documents as stated.

This information has been available to you in the document production all along, despite your assertions in your March 9, 2018 letter that as to "documents showing officers, directors, employees" and the like, "the Document Production contains almost none." As specifically identified in this email and as you can confirm by your own review, it is all there in the original batch of documents. The same is true as to the list of employees identified in the interrogatory responses, which is not set forth here again but was provided to you on March 5, 2018.

Please also note that we may still disagree as to the scope of discovery permitted at this juncture. Information which may be normally "reasonably calculated to lead to the discovery of admissible evidence" in full, standard discovery during litigation, as you reference in your letter, is still not the same as applicable here. The Court ordered

"limited jurisdictional discovery" "solely to address jurisdiction" "on the existence of an alter ego relationship" between these Defendants and any original Boim 2000 judgment defendants.  *See* Dckt. 50 and 51.  Your pleadings are clear, as was the Court's order, that the relevant view is as to the connection (if any) between AJP. AMP, Rafeeq Jaber, Abdelbaset Hamayel and/or Osama Abuirshaid, and fraudulently transferred assets (if any) of the *Boim* 2000 judgment defendants (in relevant part, IAP, AMS, and HLF, as alleged in Plaintiffs' Complaint in this matter).  This is not full discovery.  The Court granted this limited jurisdictional discovery not because it perceives its legal analysis from the Order granting the Motion to Dismiss to be in error, but because of the "weight [given] to defendants' declarations" without affording plaintiffs discovery as to the assertions in those declarations. Dckt. 50.

You now have that.  While you may wish that these defendants had retained every email or other document they once had from 2006 or 2009 when AMP and AJP were formed, they were not defendants at the time and were under no obligation to do so. AMP and AJP were not either.  The same is true as to your request for details as to the arrival in the United States of the individual defendants: they had, at the time they arrived here decades ago, no obligation to retain the information you now seek.  And, financial transfers, if any, between AJP and AMP will not give you the "look back" you are hoping exists as to any connection between these five current defendants and the prior, and <u>different</u> *Boim* 2000 judgment defendants and their former assets.  All the same, we have now produced, per the attached, 990s as to AJP and AMP (redacted to protect the privacy rights of the donors to AJP, who have no obligation to donate and whose donations cannot, therefore, be considered in any way to be "assets" of the *Boim* 2000 judgment defendants, even if there were any potential overlap in those who have chosen to give to each organization).  As to documents on social media, those were and remain available to anyone with internet access; nonetheless, we have produced more, and will continue to do so as noted above.

We are further under no obligation to accept, and do not accept, your overly broad, inapplicable and unfounded creation of your "Network Persons"  and "Network Entities" definitions.  Despite our valid objections to these irrelevant groupings, we have answered, quite plainly, that "there were no 'precursor organizations' of AMP or AJP" (Responses to Requests for Documents Nos. 3 and 4); that these defendants have "none" of the documents "relating to the *Boim* Judgment enforcement efforts in connection with the *Boim* Judgment", or "any actual or potential criminal investigation or prosecution of any *Boim* Defendant", or "the cessation of the operations, wind-up or dissolution of any *Boim* Defendant", or "any Assets that at one time were owned or possessed by any *Boim* Defendant and that, at any time, were received (directly or indirectly) or came to be possessed or owned by" these current defendants  (Responses to Requests for Documents Nos. 8, 9 and 10).  You may not like the answers, but they are there, and they are clear.

Please advise as to what, if any, disagreement remains once you have had the opportunity to review the additional documentation, as well as the previously

produced information which is pointed out in the body of this email, above. The documents will be attached in 3 waves of emails, this being the first, and as a complete set are numbered 000001-000456. Please also advise if you do not receive this full range.

Thank you.

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Monday, March 26, 2018 8:48 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Roe, Colleen <CRoe-Valleau@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>
**Subject:** RE: Correspondence is attached.

Sounds good.  Why don't I take a look at whatever you send and propose a time Wednesday or Thursday morning?

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, March 26, 2018 8:46 AM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Kind, Michael; Fliegel, Joshua; Landes, Stephen; Charles Swift
**Subject:** Re: Correspondence is attached.

Yes, that works.  I am out of the office Thursday as of 3:00 pm (and we are closed Friday), but am in the office and flexible earlier Thursday and on Wednesday as well.

Christina A. Jump

On Mar 26, 2018, at 8:42 AM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

Christina,

I am out of the office this week but can be available for a call during the

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | Woolley, Allen |
| **Cc:** | Roe, Colleen; Charles Swift |
| **Subject:** | RE: Correspondence is attached. |
| **Date:** | Tuesday, April 03, 2018 1:20:00 PM |
| **Attachments:** | Christina Jump letter.pdf |

Thank you for your correspondence, and confirmation of your receipt of the flash drive containing, as previously indicated, primarily social media printouts. I do not believe that a conversation is appropriate until after you have fully reviewed all supplemental materials, and can then itemize what deficiencies you believe still remain. Your letter indicates that has not yet happened; as such, any conversation would be premature and not in compliance with the spirit of the referenced rules.

Please advise when that has occurred and we will be glad, after review of any remaining identified deficiencies communicated, to schedule a time to speak.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Roe, Colleen [mailto:CRoe-Valleau@lockelord.com]
**Sent:** Tuesday, April 03, 2018 12:39 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Subject:** Correspondence is attached.

Ms. Jump,
The attached document is sent on behalf of W. Allen Woolley.
If you have any questions or comments, please direct them to Mr. Woolley. I've attached his v-Card for ready reference.
Thank you.
*Colleen Roe-Valleau*

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

| From: | Christina Jump |
|---|---|
| To: | Woolley, Allen |
| Cc: | Roe, Colleen; Charles Swift; Landes, Stephen; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) |
| Subject: | Please identify any remaining issues. |
| Date: | Wednesday, April 04, 2018 9:21:39 AM |

Counsel:

Please know that I am out of the office today. I do have some availability on Friday, if a call is feasible for you then.

**However, I will need to know prior to any call what has changed based on the supplemental production.** Please do not just resend me, or simply refer to, your March 9 letter. **Please itemize what you believe has not been provided since the most recent production of many hundreds of pages, including what is enumerated in my detailed March 27 email, with bullet points that identify much of what you claimed was missing.**

It is both fruitless and not in compliance with the Rules to try to have a call without addressing those developments first. We cannot have a meaningful Rule 37.2 conference without that. You state below that you "are prepared to move forward with the Rule 37.2 conference" now; without that updated communication from you, I am not. The lack of substantively addressing the supplemental email and materials does not show "good faith attempts to resolve differences" as required by the Local Rules. I remain fully willing to attempt to resolve any remaining issues, but in order to do that **I need to know what they are.**

This is not an unreasonable request.

If (and only if) I receive that information from you by close of business today, we can have a call Friday (presuming there is a mutually available time). If not, we can have a call next week, as long as I receive that information from you by close of business Friday.

Thank you. I look forward to receiving that necessary updated communication, now that you have had a chance to review all supplemental production.

Christina A. Jump

On Apr 3, 2018, at 3:03 PM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Christina,
>
> I have now gone through the additional material we received today and believe I have a fairly good understanding of what was included. Although I do have a few questions about the collection of the social media material, the bulk of the issues we need to discuss from my March 9 letter relate to other issues, and we are prepared to move forward with the Rule 37.2 conference. In the interest of completing the jurisdiction discovery phase

expeditiously, we would like to get this on the calendar for this week if possible. If you could let us know when you are available, I would appreciate it.

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 03, 2018 1:26 PM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Charles Swift
**Subject:** RE: Correspondence is attached.

Thank you for your correspondence, and confirmation of your receipt of the flash drive containing, as previously indicated, primarily social media printouts. I do not believe that a conversation is appropriate until after you have fully reviewed all supplemental materials, and can then itemize what deficiencies you believe still remain. Your letter indicates that has not yet happened; as such, any conversation would be premature and not in compliance with the spirit of the referenced rules.

Please advise when that has occurred and we will be glad, after review of any remaining identified deficiencies communicated, to schedule a time to speak.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Roe, Colleen [mailto:CRoe-Valleau@lockelord.com]
**Sent:** Tuesday, April 03, 2018 12:39 PM
**To:** Christina Jump <cjump@clcma.org>

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | "Woolley, Allen" |
| **Cc:** | Roe, Colleen; Charles Swift; Landes, Stephen; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) |
| **Bcc:** | |
| **Subject:** | RE: Please identify any remaining issues. [LL-01.FID3847873] |
| **Date:** | Wednesday, April 04, 2018 4:54:00 PM |

Please note the following:

- I am available between 2:00 and 4:00 central time on Friday. Please let me know if you are as well.

- I never state anywhere in my email that written notice is required by the local rules, but instead that good faith is required. I can't meaningfully prepare for a conversation based on the first letter, after we have produced hundreds of pages of documents and I too took the time to compose a detailed communication to you (mine was also single spaced). Nonetheless, with the enumerated portion of your last email, we can schedule a time to discuss, as noted above.

- The names provided in my March 27 email for Board members, officers and employees came from the documents produced on March 5. They don't need to be sworn in my email, as our clients submitted verifications which reference those documents which were simultaneously provided with the March 5 responses. My email distills what you already had, in case you missed it in the first round of documents.

- You are correct that we submitted tax records and social media documents. That's because you asked for tax records and social media documents in your March 9 letter. There are other documents in the production too. Glad to discuss on Friday.

- This lawsuit was filed May 17, 2017. Prior to that, our clients were not defendants. I am unclear as to the legal basis for your implication that Twitter documents back to February 2017, which we provided, are somehow insufficient. If I am missing something, feel free to let me know. Otherwise, our clients were under no legal preservation duty prior to the filing of this lawsuit.

- Correct, no emails on the creation of AJP and AMP were produced. Those events occurred in 2006 and 2009. Emails from that time were not, in the ordinary course of business, retained, either by the individual or entity defendants in this matter. The only emails since the inception of the lawsuit which reference the creation of either entity are with counsel and therefore privileged attorney-client communications after the fact. Nonetheless, even those privileged communications do not show the mindset or efforts made at the time the entities were created, since emails with counsel are from 2017 forward, not from 2006 and 2009.

- Nonetheless, you have the full and detailed statement of mission, and hierarchy, and officers and board members, in the documents produced. Should you doubt that you have those, I will be glad to point you to the exact bates label numbers on Friday. I do not have those documents in front of me at the moment.

- As to the 990s, check again. We produced some for AMP as well. Again, I will be glad to give you the page numbers on Friday if you need that. As to why there aren't as many tax documents produced for AMP, please also note that you have been provided with the Secretary of State filings showing that AMP became merely a d/b/a of AJP. The documents

in your possession state when that occurred.

- As to the donors, nothing in the Court's order permitting limited discovery or prior rulings indicates agreement with you that voluntary donors of subsequent charitable organizations are in fact supportive of subject matter jurisdiction, whether you allege that or not. The privacy concerns of those donors, who are under no obligation to donate, is a very real concern. However, you may note I did not redact the <u>amounts</u> of each donation or the <u>number</u> of donors, thereby providing you with the accurate picture that AJP receives donations from many sources, in widely varying amounts. As to the names of each donor, we simply disagree on the discoverability of that information.

- Key here, and overlooked by your analysis below, is that you have all of the formation documents, including the tax documents for all years to date, the by-laws and full mission statement, stating where the entities began, what the hierarchy is, what the purpose is, and with what amount of assets they began. That is what matters most on the alter ego issue. In case that were insufficient in your eyes, the interrogatory responses clearly and plainly state as well that neither AJP nor AMP received any assets from <u>any</u> prior *Boim* judgment defendant, nor did the individual defendants.

To alleviate any remaining concerns or confusion, we will provide amended Interrogatory responses which specifically point to any and all documents produced which contain the responsive information. I will do my best to get that to you prior to Friday, but cannot guarantee that will logistically be possible. Nonetheless, the supplemental Interrogatory responses will simply reflect the information already provided, spelled out clearly and with specific page references to the documents produced.

Please confirm if and when between 2:00 pm and 4:00 pm on Friday you are available.

Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Wednesday, April 04, 2018 1:08 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Roe, Colleen <CRoe-Valleau@lockelord.com>; Charles Swift <cswift@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) <alyza@lewinlewin.com>

**Subject:** RE: Please identify any remaining issues. [LL-01.FID3847873]

Dear Christina:

I am generally available Friday to confer about discovery issues. If it works for you, why don't we schedule the call for early afternoon (1:30pm) that day?

With all due respect, there is nothing in Local Rule 37.2 that requires a party to provide a written itemization of deficiencies in advance of the required telephone consultation—and certainly nothing that requires a series of such letters. We voluntarily invested significant effort preparing a 10-page, single-spaced letter on March 9 because we hoped the letter would focus and streamline the LR 37.2 discussion. In response, you provided an (unsworn) e-mail with some further explanations and some additional documents—consisting almost entirely of social media downloads and AJP's tax documents. While we appreciate receiving this supplemental material, defendants still have addressed very few of the issues raised in my March 9 letter. These issues need to be addressed, and the letter provides a good framework for doing so. No purpose would be served by re-doing the letter or delaying our conference—and, again, nothing in LR 37.2 requires us to provide anything in writing in order to have the conference or file a motion to compel.

That said, I do have some additional questions and comments relating to the supplemental production that may help with preparation for the discussion:

1. While somewhat voluminous, the additional documents you provided still do not evidence that defendants have conducted an appropriate search and collection. We see no indication that: appropriate custodians were asked for records; that e-mails were searched (indeed, it does not appear a single e-mail was produced); that hard drives, computers or network servers have been imaged or searched; that cloud storage was searched; that paper records from all of defendants' locations were searched; that financial and other organizational records were searched; that all social media accounts and internet content for all defendants were searched. We do not believe defendants can properly

respond to our document requests without undertaking these searches.

2. Your March 29 e-mail addresses the identities of board members and officers over time. However, it is not attested under oath and does contain any information about employees, hierarchy, reporting structure, responsibilities, chapters, regional offices, locations, divisions or affiliates (DR 5, EI 3, EI 4). We are entitled to complete responses to these requests.

3. We received Form 990s for AJP but have received no tax documents for AMP. If there are such documents, they should be produced.

4. You provided PDF files containing what appear to be downloads from (i) AMP's Twitter feed; (ii) AMP's website; (iii) a YouTube menu screen purporting to list AMP videos; and (iv) AMP's Facebook account. This does not appear to be a complete production for several reasons that we need to discuss with you:

   a. The PDF files appear to contain no (or incomplete) metadata or other information that permits us to conduct a forensic analysis of their authenticity, reliability, timing or origin.

   b. The YouTube screen does not contain the videos themselves, and neither these videos or any other videos from defendants have been produced.

   c. The Facebook feed appears to have downloaded incorrectly, leaving most of the page blank and cutting off the content on the left side of the page. I suspect this was inadvertent, but it makes the material impossible to read. (*See* Bates 1931-2526)

   d. The Twitter feed goes back only to February 2017. It is not clear how far back the Facebook feed goes because it is illegible. Is this all that remains? What was done to preserve this material after the lawsuit was filed?

   e. There does not appear to be any social media, blog, web site, or other on-line material for any defendant other than AMP. Do the individual defendants or AJP have any material? Do we have all material for AMP? We need a proper response to EI 12/II 4 to identify all websites, blogs, social media accounts, and internet domain names—as well as the content from all sources.

5. The Form 990s redact the identities of donors. Overlap of donors was

specifically part of the alter ego allegations, and this redaction is not appropriate.  In addition, the 2015 Form 990 is watermarked "DO NOT FILE," and we do not appear to have the final version.

I look forward to hearing back from you and hope we can have a call Friday to resolve and narrow some of the discovery issues.


Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Wednesday, April 04, 2018 9:22 AM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Charles Swift; Landes, Stephen; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com)
**Subject:** Please identify any remaining issues.

Counsel:

Please know that I am out of the office today. I do have some availability on Friday, if a call is feasible for you then.

**However, I will need to know prior to any call what has changed based on the supplemental production.** Please do not just resend me, or simply refer to, your March 9 letter. **Please itemize what you believe has not been provided since the most recent production of many hundreds of pages, including what is enumerated in my detailed March 27 email, with bullet points that identify much of what you claimed was missing.**

It is both fruitless and not in compliance with the Rules to try to have a call without addressing those developments first. We cannot have a meaningful Rule 37.2 conference without that. You state below that you "are prepared to move forward with the Rule 37.2 conference" now; without that updated communication from you, I am not.  The lack of substantively addressing the supplemental email and materials does not show "good faith attempts to resolve differences" as required by the Local Rules.  I remain fully willing to attempt to resolve any remaining issues, but in order to do that **I need to know what they are.**


This is not an unreasonable request.

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua |
| **Cc:** | Charles Swift; Leila Mustafa |
| **Subject:** | Supplemental Declaration and Proposed Confidentiality Agreement Monday, |
| **Date:** | April 09, 2018 7:15:00 PM |
| **Attachments:** | Munjed Ahmad signed declaration FINAL.pdf |
| | 2018.04.09 - Proposed Agreed Confidentiality Order.docx |

Counsel:

Please see the attached Declaration, of Munjed Ahmad. In addition, we attach a proposed Confidentiality Order. With an agreement on that, we can produce the items discussed Friday, as well as a few additional documents we have located that would fit within the scope of the Confidentiality Order. If we can agree on the language and retroactive nature of the Confidentiality Order, we can produce those remaining documents, and our Amended Discovery Responses which refer to them, tomorrow. Please also note that we have had success with the social media archives and will have those in producible format tomorrow as well.

Thank you. In light of this, I believe it makes sense to push our potential continuation of the call on outstanding issues by one more day, so that you may receive this information and thereby better assess what, if anything, remains in disagreement. Please let me know if you agree.

Please let me know your position on the attached proposed Confidentiality Order (redlined per the Local Rules), and we look forward to hearing your response. Thank you.


*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX 75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

| From: | Christina Jump |
|---|---|
| To: | "Woolley, Allen"; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua |
| Cc: | Charles Swift; Leila Mustafa |

| Subject: | Defendants" Amended Discovery Responses |
|---|---|
| Date: | Tuesday, April 10, 2018 6:43:00 PM |
| Attachments: | 2018.04.10 - Amended Objections and Responses to Requests for Documents.pdf |
| | 2018.04.10 - AMENDED O&R to Rogs to Individuals.pdf |
| | 2018.04.10 - AMENDED AJP AMP Objections and Responses to Rogs.pdf |
| | Jaber amended verification SIGNED.pdf |
| | Osama"s Verification 4-5-18.pdf |
| | VERIFICATION SIGNED AMP_amended.pdf |
| | VERIFICATION SIGNED AJP_amended.pdf |
| | Hamayel Amended Verification.pdf |

Counsel:

Please see attached both sets of Amended Objections and Responses to Interrogatories, on behalf of the Individual Defendants as well as AMP and AJP, and the Amended Objections and Responses to Plaintiffs' Jurisdiction Document Requests. Please also see the attached relevant verification pages.

As noted herein, documents bates labeled 002594 – 002660 and 004410 – 004422 will be produced upon agreement as to a Confidentiality Order, a proposed one of which was sent to you yesterday (as noted below).

Otherwise, a flash drive with the additional document production, including the unlabeled zip files of the archives for the relevant Facebook and Twitter accounts, is already on its way to you.

Thank you and I look forward to speaking with you later this week (should that remain necessary).


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 11:44 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement

That's fine.  We will call you at 2pm on Thursday.

W. Allen Woolley
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 10, 2018 11:20 AM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Yes, that works.  Same time good?

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 7:45 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Christina:

Would Thursday afternoon work to complete the discovery conference?

-AW

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, April 09, 2018 7:22 PM

**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** Supplemental Declaration and Proposed Confidentiality Agreement

Counsel:

Please see the attached Declaration, of Munjed Ahmad.  In addition, we attach a proposed Confidentiality Order.  With an agreement on that, we  can produce the items discussed Friday, as well as a few additional documents we have located that would fit within the scope of the Confidentiality Order.  If we can agree on the language and retroactive nature of the Confidentiality Order, we can produce those remaining documents, and our Amended Discovery Responses which refer to them, tomorrow.  Please also note that we have had success with the social media archives and will have those in producible format tomorrow as well.

Thank you.  In light of this, I believe it makes sense to push our potential continuation of the call on outstanding issues by one more day, so that you may receive this information and thereby better assess what, if anything, remains in disagreement.  Please let me know if you agree.

Please let me know your position on the attached proposed Confidentiality Order (redlined per the Local Rules), and we look forward to hearing your response.  Thank you.


*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown |
New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

| From: | Christina Jump |
|---|---|
| To: | "Woolley, Allen"; Kind, Michael; Landes, Stephen; Fliegel, Joshua |
| Cc: | Charles Swift; Leila Mustafa |
| | |
| Subject: | Replacement page in Boim matter |
| Date: | Thursday, April 12, 2018 10:41:00 AM |
| Attachments: | Bates Labeled Document - 004344 - Website Archive.pdf |

Gentlemen: please see the attached page, bates labeled 004344, which is intended as a replacement page to the one contained on the flash drive previously sent to you in this matter. There is no substantive difference; this one is simply easier to read.

We received confirmation that the package containing the flash drive referenced above was delivered at 10:23 this morning. If this is inaccurate, please let us know.

In addition, we believe we should be able to recover additional archive files from the website, despite the issues created by the earlier hacking referenced in our response, and will get back with you shortly on that. Should that be possible, we will provide those shortly as well.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX 75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | "Woolley, Allen" |
| **Cc:** | Landes, Stephen; Charles Swift; Leila Mustafa |
| **Subject:** | RE: Defendants" Amended Discovery Responses |
| **Date:** | Tuesday, April 17, 2018 8:17:00 PM |

Thank you for the follow-up. Please note the following as to each:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

   Response: As previously indicated, these documents are minutes and related items as to AMP, as well as some documents recently received (today) from a former employee, from her personal email. We expect to send what we currently have, and have reviewed, tomorrow. She has indicated that she will get us any further documents she is able to locate by the end of this week. If more responsive documents come our way, we will provide them within the same time frame (after any necessary time to review).

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

   Response: as also previously indicated, AMP became and is currently a d/b/a of AJP. As also indicated by previously produced documents, no fundraisers occurred, under the name of either entity, until 2009. Those funds went through AJP. As indicated, you have the tax returns for AJP, one of which lists AMP as a d/b/a. We have not located any prior or other returns and are not withholding any. As also indicated, we continue to object to producing the names of any specific voluntary donors.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6, II7.

   Correct, we stand by our objections to the impropriety of that characterization and self-created grouping by Plaintiffs, as well as its relevance here for any entities and/or individuals not a party to this lawsuit or subject to the *Boim* 2000 judgment.

4. Beyond the internet, social media and other material already produced, our previous discussion and your amended responses suggests [sic] you do not intend to produce any additional documents responsive to: DR21, DR22, DR23, DR24, DR25, and DR26. If that is not the case, let's discuss.

   Response: Document requests 21-26 are on vastly different topics. Therefore, a grouped response is not reasonable or applicable.

As to 21: No funds were transferred out of the United States at all. That is clear from our previous answers, and the Declaration of Munjed Ahmad previously provided, and the referenced website, but I restate it again here to the extent it was not. So, we cannot produce "any additional documents responsive to" the request for transfer of funds outside the United States, when no such transfers took place. Furthermore, we have already responded that these Defendants do not raise funds on behalf of other organizations. The funds are raised and used domestically, for educational purposes, as has been repeatedly stated throughout our communications and the responses and documents provided.

As to 22: Your request as to transfer of funds between AMP and AJP makes no sense; as stated above, and throughout the discovery responses, AMP exists only as a d/b/a of AJP, and prior to that status did not raise funds. The first fundraiser occurred in 2009, as evidenced by document production (including but not limited to the full archives of the Twitter and Facebook cites). There are also no allegations here regarding any "disguised continuance" as between AMP and AJP, so this is not reasonably calculated to lead to the discovery of admissible evidence pertaining to the jurisdictional matters at hand.

As to 23: "Copies in your possession, custody, and control of Al-Zaytounah and Al-Meezan" are not in the possession of AJP or AMP, and were not published by AJP and/or AMP. They do not relate to the jurisdictional discovery here in any way, and production of any hard copies retained by Defendant Abuirshaid would be overly broad and unduly burdensome. The relevant referenced publications as related to Defendant Abuirshaid are independent of and were not on behalf of the *Boim* judgment defendants and are not by or on behalf of AMP or AJP.

As to 24: No Defendant in this matter is in possession of any "documents relating to annual conferences held by IAP"; that has already been stated clearly and repeatedly in discovery responses. As to documents relating to AJP and/or AMP and conferences, the documents produced (including the full Twitter and Facebook archives) evidence the relevant AJP and AMP events, as do the historic website documents produced already.

As to 25: Your request for documents relating to "the event in Detroit, Michigan in 2015" "which raised approximately $200,000 for charitable purposes in Gaza" misconstrues relevant facts, as stated already in our previous responses. AMP served in an educational role. United Muslim Relief collected donations for its own use; AMP and AJP did not receive, transfer or have control of these donations. As already stated, to the best of the knowledge of Defendants, United Muslim Relief is a domestic charitable organization in good standing. What United Muslim Relief did with any voluntary donations it collected is not a question any defendant in this matter can answer, or for which any defendant in this matter has documents. The cited article poorly translates the Arabic original and, in any event and as already stated by Defendants in the previous Response, was not prepared by or for Defendants in this matter, and Defendants do not vouch for its accuracy. As to any references by AJP or AMP regarding their educational role, as already specified, please see the previously produced full archives of the Twitter and Facebook pages, which contain references to the 2015 conference in question, as well as the historic website pages already provided.

As to 26: Your request for any event where any representative of Defendants appeared

at any time in any capacity is overly broad to say the least, as noted. Nonetheless, the full archive history of the Twitter and Facebook pages, already produced, as well as the historic website pages already produced, show the promotions done by AJP and/or AMP. If Plaintiffs wish to be more specific in the request, perhaps we can be more specific in the response; in any event, the full timelines already produced cover any and all promoted appearances related to AJP and/or AMP.

5. For DR31 (documents reflecting employment or volunteer, leadership, consulting, professional services, officer or director role with AMP, AJP, Mosque Foundation, KindHearts), your amended responses indicate that the Individual Defendants have no responsive documents and the Entity Defendants refer to documents already produced. We need to confirm that it is your position that Defendants have no other responsive documents.

Once again, Mosque Foundation and Kindhearts were not defendants even in the 2000 matter, nor are they here. Defendants in this matter are not keepers of those documents. The Individual Defendants refer to responsive information in their Declarations, to the extent relevant. As to AMP and AJP, you already have thousands of pages reflecting the creation of both entities, their by-laws, their directors and officers, their leadership, and any other related responsive roles. We are not withholding anything here, because you already have it all as to the relevant entities and as to anything in the possession of these Defendants.

6. For DR32 (documents supporting the declarations), are there any responsive documents that have not yet been produced?

As to documents supporting the declarations already provided, we have referenced the documents already produced. There are no known responsive non-privileged documents which have not already been produced. As previously discussed on our last call, Defendants reserve the right to provide any necessary rebuttal documents, should that become necessary, which may exceed those already provided in this matter.

7. For DR33 and DR34, are the Individual Defendants standing by their objections and not producing anything? Likewise, for the corresponding II5 and II8, I assume you do not plan to provide additional information?

Without more specificity from Plaintiffs as to relevant, if any, travel, Defendants stand by their objections to Request 33. As to Request 34 as to Defendant Abuirshaid, regarding a February 2017 event, this is not reasonably calculated to lead to the discovery of admissible jurisdictional evidence, as already stated.

As to Interrogatory No. 5 to the Individual Defendants, relevant information has already been produced. The identities of the Individual Defendants is not in dispute. Should you have any reason to believe otherwise, please advise; otherwise, sufficient relevant responsive information has already been provided in their Declarations.

As to Interrogatory No. 8 to the Individual Defendants, this again refers to a trip attributed to Defendant Abuirshaid in February 2017. Without more explanation as to how, if at all, this request relates to the relevant jurisdictional scope and inquiry,

Defendant stands by his objections.

8. Do Defendants intend to provide a privilege log?

As previously stated, yes. However, while compilation and discussions regarding scope have remained ongoing, that seemed premature. We expect to produce one to you by early next week, in light of the information stated above.

9. In EI3, we asked for the identities of directors, officers, employees and chapters/locations/offices for each year since inception. EI4 seeks a description of the structure and hierarchy of the Entity Defendants (and changes over time). You have pointed to a number of documents and given lists in your amended responses and March 27 e-mail. But even with these, we still appear only to have a partial response:

   a. Directors: We do not have AMP's directors prior to 2009. Yes you do. See first round of documents produced, regarding incorporation of AMP in 2006. You have provided lists of "National Board Members" for 2009 purportedly from historical captures of AMP's website. Are these AMP's directors? Yes, as seemed obvious on the face of the responses, those would be the members of the Board of Directors from 2009 forward, as indicated in prior responses.

   b. Officers: We do not appear to have AMP's officers prior to 2009 Yes you do. See first round of documents produced, regarding incorporation of AMP in 2006, as well as the subsequently produced descriptions (which I specifically identified to you, on our last call, by the relevant bates label numbers).

   c. Employees: You provided a list of past and present employees of AJP but have not indicated the time periods during which these employees worked for AJP. There is little or no information about reporting structure or responsibilities. We dispute your characterization. The documents already produced and referenced set forth the job duties of the relevant positions. And, again, I specifically identified these for you on our last call, by bates label numbers (002573-002582; see also, for example, 004314-4316; 004378-4381; 004401-4403). Should you believe there is any dispute or reason for more specific information other than that already identified, as it may pertain to jurisdiction in this matter, please explain how. I am willing to listen.

   d. Chapters/locations/offices: There are references on the AMP website to a number of other chapters and locations, and you have provided several addresses. We do not appear to have a comprehensive list or suite numbers. As clearly stated in the documents produced and interrogatory responses already provided, all decisions are made and finances controlled out of the main (originally California, now Chicago) office. If there is any way in which you believe you need additional information about the chapters which did not exist at the time of AMP or AJP's formation, please advise more specifically. We also refer you to the publically available website information regarding current (and historic) chapters.

10. For EI5, we do not have a list of all the persons involved in the creation of AMP and AJP (and the preliminary activities that led to the creation), nor have you identified all documents related to the formation. Are you willing to provide further responsive information? Please see the Declaration of Munjed Ahmad, already provided. Please also see the individuals listed on the Articles of Incorporation for AMP and AJP, which

have already been provided. Please also note that, per Mr. Ahmad's declaration and already produced documents showing the same, there were no "preliminary activities" as you assert other than discussions as reflected in the handwritten notes of Mr. Ahmad, which will be produced pursuant to the Confidentiality Order in this matter and which are referenced by bates label numbers in Mr. Ahmad's Declaration. With the further exception of any recently received and/or forthcoming documents from the former employee referenced above, no further such documents were retained in the normal course of business over a decade ago.

11. Based on prior discussions, I suspect we are at an impasse regarding providing further information regarding (i) the identity of persons, entities or organizations to which the Entity Defendants provided funding or support for fundraising (EI9); (ii) the identity of donors, sponsors or funders of the Entity Defendants (EI10); and (iii) the identity of speakers, presenters and moderators who have appeared at conferences or other events sponsored by the Entity Defendants (beyond what appears on the AMP website and social media you have produced). Please let me know if I am incorrect.

We are at an impasse as to the identity of voluntary donors. On that, you are correct.

As to fundraising for other "persons, entities or organizations," we have already responded that none took place and that is not what these charitable entities do. They receive purely domestic voluntary donations, as stated previously in many places in Defendants' discovery responses, and they utilize those donations for educational purposes performed by AJP and/or AMP (also purely domestically). Therefore, there is no impasse here; there is simply no such information to provide.

As to the identify of speakers, presenters and moderators at AMP and AJP events, we have provided that through the full Twitter and Facebook archives, as well as what is available via the historic website pages produced already (see, by way of example and not exhaustive list, 004160, 004284). And, as already indicated, we are still working on procuring a readable, workable version of the full website archive, and if we are able to obtain that information will provide that shortly after receipt. Therefore, there is again no impasse; the information, in its most readily and reasonably available form and as retained in the normal course of business, has already been provided, consistent with the Federal Rules of Civil Procedure.

12. For EI12 and II4, you have listed 3 internet domain names and AMP's Twitter page, Facebook page and YouTube channel. Have *any* of the defendants owned, controlled, created or maintained (in Arabic or English) any other website, blog, social media account, or internet domain name? Do any of the Individual Defendants have social media accounts, web pages or blogs that have ever had content relating to any of the Entity Defendants or *Boim* Defendants?

Your question above is even broader than the question posed in the referenced Interrogatories. You asked in Interrogatory No. 4 to the Individual Defendants if these defendants "owned, controlled, created or maintained" any domains, at any time, "relating to any *Boim* Defendant or any Entity Defendant". All relevant domains for AJP and AMP have been identified, along with the available full archives, in prior responses. We stand by our objections as to the overly broad nature of this request, as well as these Defendants' privacy rights in their personal social media pages which are not publically accessible. You also agreed that independent business concerns of these

defendants, such as Rafeeq Jaber's tax practice, are not reasonably included in this scope.

As to Interrogatory No. 12 directed to AJP and AMP, you ask basically the same question as to these defendants, which has been more than fully answered. You have the domain names, the full archives of at least two social media pages (we will get you whatever becomes recoverable and usable as to the full website archives as noted above, beyond the historic pages that have already been produced), and the zip files for the full archives which have been produced. At this stage, I am unclear as to what it is you are still seeking.

Therefore, the only realistic remaining areas of dispute which I see, other than perhaps where you wish documents existed (but they don't), or were retained from long ago (but they weren't) before these defendants were in fact defendants, are as follows:

- Identities of the voluntary donors to AJP, which began in 2009, and which are redacted as to name and address but not number or amounts of donations, on the tax documents produced; and

- The impropriety of your overly broad definition and lumping of what you call "Network Entities" and "Network Defendants"; please note, however, that Defendants in this matter have responded fully as the answers pertains to these Defendants, or to the extent applicable as to the referenced *Boim* 2000 judgment defendants.

As to timing for a call tomorrow, I will be in telephone hearings tomorrow afternoon until approximately 4:00 pm. I can start at that point, if this is expected to be brief, or am available Thursday morning at 10am or Thursday afternoon at 2:00 pm. I have some availability remaining Friday  Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 17, 2018 3:56 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

To streamline our call tomorrow, here are the issues I think we still need to cover:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6, II7.

4. Beyond the internet, social media and other material already produced, our previous discussion and your amended responses suggests you do not intend to produce any additional documents responsive to: DR21, DR22, DR23, DR24, DR25, and DR26. If that is not the case, let's discuss.

5. For DR31 (documents reflecting employment or volunteer, leadership, consulting, professional services, officer or director role with AMP, AJP, Mosque Foundation, KindHearts), your amended responses indicate that the Individual Defendants have no responsive documents and the Entity Defendants refer to documents already produced. We need to confirm that it is your position that Defendants have no other responsive documents.

6. For DR32 (documents supporting the declarations), are there any responsive documents that have not yet been produced?

7. For DR33 and DR34, are the Individual Defendants standing by their objections and not producing anything? Likewise, for the corresponding II5 and II8, I assume you do not plan to provide additional information?

8. Do Defendants intend to provide a privilege log?

9. In EI3, we asked for the identities of directors, officers, employees and chapters/locations/offices for each year since inception. EI4 seeks a description of the structure and hierarchy of the Entity Defendants (and changes over time). You have pointed to a number of documents and given lists in your amended responses and March 27 e-mail. But even with these, we still appear only to have a partial response:
   a. Directors: We do not have AMP's directors prior to 2009. You have provided lists of "National Board Members" for 2009 purportedly from historical captures of AMP's website. Are these AMP's directors?

   b. Officers: We do not appear to have AMP's officers prior to 2009

   c. Employees: You provided a list of past and present employees of AJP but have

not indicated the time periods during which these employees worked for AJP. There is little or no information about reporting structure or responsibilities.

    d.  Chapters/locations/offices:  There are references on the AMP website to a number of other chapters and locations, and you have provided several addresses.  We do not appear to have a comprehensive list or suite numbers.

10.  For EI5, we do not have a list of all the persons involved in the creation of AMP and AJP (and the preliminary activities that led to the creation), nor have you identified all documents related to the formation.  Are you willing to provide further responsive information?

11.  Based on prior discussions, I suspect we are at an impasse regarding providing further information regarding (i) the identity of persons, entities or organizations to which the Entity Defendants provided funding or support for fundraising (EI9); (ii) the identity of donors, sponsors or funders of the Entity Defendants (EI10); and (iii) the identity of speakers, presenters and moderators who have appeared at conferences or other events sponsored by the Entity Defendants (beyond what appears on the AMP website and social media you have produced).  Please let me know if I am incorrect.

12.  For EI12 and II4, you have listed 3 internet domain names and AMP's Twitter page, Facebook page and YouTube channel.  Have *any* of the defendants owned, controlled, created or maintained (in Arabic or English) any other website, blog, social media account, or internet domain name?  Do any of the Individual Defendants have social media accounts, web pages or blogs that have ever had content relating to any of the Entity Defendants or *Boim* Defendants?

I look forward to concluding our discussion tomorrow.  I suggested tomorrow afternoon in my e-mail this morning.  Would 1:30 PM work?

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Woolley, Allen
**Sent:** Tuesday, April 17, 2018 9:31 AM
**To:** 'Christina Jump'
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Why don't we speak tomorrow afternoon.  Does that work?

We will look for the additional documents this afternoon.  Will this be the last group of documents?  Is there still material you are waiting for the confidentiality order to produce?

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | "Woolley, Allen"; Landes, Stephen |
| **Cc:** | Charles Swift; Leila Mustafa |

| | |
|---|---|
| **Subject:** | FW: BOIM Production |
| **Date:** | Wednesday, April 18, 2018 12:25:00 PM |
| **Attachments:** | Defendants" Production CONFID 002594 - 002660 - Redacted.pdf |
| | Defendants" Production CONFID 004410 - 004468.pdf |

Gentlemen:

In light of your agreement yesterday via email that any documents labeled with the proper marking will be considered confidential pursuant to the Confidentiality Order to be submitted to the Court in this matter in the near future, please see the attached documents appropriately labeled.

These include documents 002594 – 002660, which are referenced in the Declaration of Munjed Ahmad, already provided, as well as documents 004410-004468. These include meeting minutes, which have been further redacted to remove any information protected by the attorney-client privilege as to legal advice rendered to the organization and discussed in the minutes, as well as employee confidential information relating to performance and medical issues. This later range also includes the documents recently received from the former employee, Kristin Szremski (who is identified in previously produced documents as Media Chair for AMP), as referenced yesterday. These items were located from her search of her personal accounts and devices; please note we have redacted out any non-AMP email addresses as well. Also, should we receive any further information in this regard, we will supplement accordingly.

Finally, we are continuing our efforts regarding getting a full archive (or as close as possible) available of the website, and will forward that once we are able to do so as well.

Thank you. As requested in my email of last night, please also advise as to whether you wish to proceed with a call at 4:00 pm today, or prefer one of the other times offered for later this week (Thursday at 10am or 2pm, as well as some availability Friday as well).

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Christina Jump
**Sent:** Tuesday, April 17, 2018 8:24 PM
**To:** 'Woolley, Allen' <Allen.Woolley@lockelord.com>

| From: | Christina Jump |
|---|---|
| To: | Woolley, Allen |
| Cc: | Landes, Stephen; Charles Swift; Leila Mustafa |
| Subject: | RE: BOIM Production [LL-America.FID3847873] |
| Date: | Thursday, April 19, 2018 6:34:17 PM |

Counsel:

Please be advised that earlier today we sent another flash drive your way, which contains the available website archive in its electronic files as received. As you may likely determine for yourselves, please be advised that, when you open one of the files from this flash drive, your internet explorer will open, but the url will be to the removable drive, and not to the current active website. If, for example, you want to see all videos, go to the "videos" subfolder, then open each one individually. Similarly, if you want to view all articles, go the the "articles" subfolder and open each one individually. That will lead you to articles from 2015, 2016, 2017, etc.

We will likely produce hard copies of any particularly relevant documents contained within these files at a future date, but in the interest of time and volume have not Bates labeled these files in hard copy form as of now. Any future Bates label documents from these files will be simply hard copy versions, and not anything different from, electronic files currently on their way to you.

Thank you and unless I hear otherwise, we will expect to speak with you tomorrow at 1:30.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Wednesday, April 18, 2018 6:56 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** Re: BOIM Production [LL-America.FID3847873]

1:30would be fine for me.

Sent from my iPad

On Apr 18, 2018, at 1:16 PM, Christina Jump <cjump@clcma.org> wrote:

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | "Woolley, Allen" |
| **Cc:** | Landes, Stephen; Charles Swift; Leila Mustafa |
| **Subject:** | RE: Defendants" Amended Discovery Responses [LL-America.FID3847873] |
| **Date:** | Friday, April 20, 2018 1:24:00 PM |

Thank you for the email. As noted yesterday, you also received the full website archive available, containing prior articles and presentations. Our communications confirm that was received earlier today; please advise if it was not. The electronic files on this flash drive contain much if not all of the information you claim to still need, which in many cases duplicates documents and files already produced.

Please also note that Ms. Szremski's emails are <u>not</u> the "only" ones you have received. You also received information containing emails from Munjed Ahmad, which directly address the reformation of AMP as an official d/b/a of AJP. As also noted, both of these sets of emails were found on email servers not in AMP or AJP's control. Nonetheless, with redacting of the personal information (and, where appropriate, attorney-client privileged information), those emails have been provided.

As noted, we have redacted employment-performance related information from the minutes produced, as well as attorney-client privileged materials from the minutes and relevant emails. Ms. Szremski's emails are not, in fact, "heavily redacted" – they are barely if at all redacted, other than as noted above.

I am glad to provide a privilege log; as stated previously, as the scope and documents at issue were being continuously supplemented during the course of our discussions, I postponed that log so that it would be fully accurate. I will provide that to you by close of business Monday, April 23, 2018.

To clarify, I do not assert below that Al-Zaytounah was not related to any *Boim* 2000 judgment defendant, as you erroneously represent. I state, specifically, that ""Copies in your possession, custody, and control of Al-Zaytounah and Al-Meezan **are not in the possession of AJP or AMP, and were not published by AJP and/or AMP**. They do not relate to the jurisdictional discovery here in any way, and production of any hard copies retained by Defendant Abuirshaid would be overly broad and unduly burdensome. The relevant referenced publications **as related to Defendant Abuirshaid** are independent of and were not on behalf of the *Boim* judgment defendants and are not by or on behalf of AMP or AJP" (emphasis added). Defendant Abuirshaid has not retained any copies of Al-Zaytounah; he provided them to the government in 2015 and has not retained any copies personally. Al-Meezan was started by Defendant Abuirshaid, not AMP or AJP, in 2005, and he sold it in 2015. He has retained hard copy issues only, which are not readily available or easily producible. If needed, we will once again amend our interrogatory answers to make that more clear.

Please also note that AMP and AJP have not handled funds which are raised for other entities, and therefore have not "raised money for" other entities as you imply. They sponsored events, and at some of those events money was raised by and for other

entities which were also present. This is consistent with the answers provided. Interpretations to the contrary may be addressed in rebuttal-like declarations, but do not make the answers provided in discovery responses insufficient or inaccurate.

I have given you all documents retained in the normal course of business as to tax filings. We are not withholding any that have been retained by the entities.

We are not "withholding any responsive documents with respect to Mosque Foundation or KindHearts", as these Defendants do not have any such documents in their custody or control. The objections as to requests for these remain legitimate, specifically because these Defendants do not have any such documents, nor should they therefore be expected to produce them.

As stated repeatedly, we have identified all websites maintained by AJP and AMP.

You have more than "three or four pages" relating to directors and staff, from the website archive (in native form, I might add) provided to you.

We have provided you all information retained regarding the formation of AMP in 2006. Specifically, please note the handwritten notes of Munjed Ahmad, referenced in his declaration and produced earlier this week.

Your reference to Doc. 004413, ""When the 941's were filed they were filed under the name of AMP rather than AJP"", misconstrues the facts. Please note that first, that quote is from the January 2014 Executive Committee meeting (see title at top of that page). Second, this document specifically states that it relates to "income tax withholdings" which should have been made under AJP, not AMP. By definition, since AJP was created in 2009, this relates to documents filed after 2009. Those facts are in no way "at odds with" the first fundraising event identified as taking place in 2009, as you state.

Please also note that you have been provided the meeting minutes as they exist for AMP for October 11, 2008 (004410-004411). These identify Munjed (Ahmad), Dr. Hatem (Bazian), Sufian (Nabhan), Awad (Hamdan) (identified on 004451), Dr. Daad (Katato) and Sr. (Sister) Soundos as the website committee for AMP at that time. Furthermore, documents 002658-002660 show those involved in the discussions regarding the formation of AMP. These are already referenced and incorporated in the interrogatory responses, and these full names are set forth in response to Interrogatory 3 to AMP and AJP.

At this point, my responses are more rebuttal to your dissatisfaction with the information as it exists than actual discovery responses. That seems fruitless, and potentially unending. I can provide rebuttal declarations as to specific questions, though that again seems outside the scope of the intended discovery. I will agree to supplement, one last time, as to the exact locations and dates of creation of the chapters. Beyond that, it appears we either agree to disagree, or we will address issues in rebuttal form. Please advise if you see anything you believe does not fall in those categories.

Thank you and I look forward to speaking with you shortly.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Friday, April 20, 2018 11:19 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

Thank you for your April 17 e-mail and the additional production material we received Wednesday. I have a number of issues with your comments and the additional production that I thought would be useful to cover in writing before our call:

- It appears that we have now received Kristin Szremski's e-mails going back to October 2013. These remain the *only* e-mails we have received, despite a fairly long list of officers, directors and employees affiliated with AMP/AJP. As previously discussed, the defendants need to identify all custodians who potentially have responsive material and do a proper search and collection from their files, computers, e-mail accounts, servers, web-sites, cloud storage, devices, social media accounts, blogs, etc. It strains credibility that only one person has responsive e-mails (and that the electronic and paper records are so thin). You have previously declined to provide us with any information about what custodians you have contacted and what searches were done. We urge you to reconsider this position, as understanding what searches have been done would go a long way toward resolving our concerns about this production.

- The entire production we received Wednesday was marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," but the bulk (if not all) of the documents do not appear to fall within any of the categories in paragraph 2 of the proposed protective order. While we are prepared to give confidential treatment to personnel or employment

records (which we have requested but not received) and any other documents that legitimately fall within the 7 categories in paragraph 2, we believe a not-for-profit, non-commercial entity (which must publicly disclose its 990s) is likely to have little, if any, protectable commercial or financial information, "trade secrets," or other properly confidential material. We ask that you reconsider these designations and use the designation judiciously for any further productions. Because the "confidential" designation imposes burdens in using discovery material, we will likely need to ask the Court to strike any wholesale or improper designations.

- The e-mails produced yesterday were heavily-redacted PDF files with no metadata and missing attachments. We do not understand the basis for the redactions, as few (if any) of the e-mails appear to contain privileged material and e-mail addresses to my knowledge are not protected from discovery. We also specifically requested and are entitled to metadata and attachments. Our preference would be to receive e-mails in native format, but at the very least, they should be produced in a *usable* (searchable and sortable) electronic form with metadata and attachments. A single bulk PDF file containing a large number of imaged emails does not meet these requirements.

- With respect to item #2 in your April 17 response e-mail, you have suggested that AMP did not file tax documents in its own name and that no fundraisers occurred until 2009. These contentions seem at odds with e-mails you just produced indicating, for example, that "When the 941's were filed they were filed under the name of AMP rather than AJP" (4413) and the fact that we know AMP engaged in activities that cost money earlier than 2009 (such as its 2006 annual conference). If AMP has (or has access to) tax-related documents (whether formally filed documents or materials "relating" to tax filings), these should be produced.

- You provided a request-by-request response to item #4 in my April 17 e-mail, reiterating your objections and contention that you do not have documents responsive to some of the requests. Your responses appear to confirm my understanding that you do not intend to produce any further documents in response to DR21-26. We do not agree with your comments and note briefly in response:

  o (DR21) This request was not limited to funds "transferred out of the United States"—we requested all documents relating to any "use, recipient(s) and disposition of funds." Furthermore, we think your contention that AMP did not raise funds on behalf of other organizations and that funds were solely used domestically is contrary to the evidence. For instance, your own recent document production specifically references AMP "endorsed and hosted" events and an "AMP-sponsored" fundraiser for Viva

Palestina—an overseas organization on behalf of which AMP raised money. (4423)

o (DR22) We disagree with your objection and are entitled to explore the relationship of the two Entity Defendants. We also do not find credible the contention that AMP "did not raise funds" prior to 2009. How did it pay for conferences beginning in 2006 and other expenses?

o (DR23) Your assertion that Al-Zaytounah was independent of the *Boim* Defendants is incorrect. *See* 340 F. Supp. 885, 907. We believe Al-Meezan was similarly affiliated with or supported by AMP/AJP and are entitled to explore this relationship—specifically pleaded in our initial complaint—and have therefore requested copies of the publication itself, as well as documents relating to the creation and promulgation of the publications and decision to begin publishing Al-Meezan.

o (DR24) We requested *all* documents relating to the annual conferences, not just the references on the AMP website and Twitter and Facebook. You indicated during our April 6 conference that you are not prepared to provide anything further. We believe, as I indicated, that there is substantial additional material and that providing on-line content "evidenc[ing]" these events does not mean you do not have to produce the other documents.

o (DR25) We do not agree with your characterization of AMP's role—and in any case should be permitted to explore AMP's role and the circumstances of the Detroit event. Again, we understand your position is that you are not producing these documents but want to make clear that this remains an issue.

o (DR26) If you genuinely believe "representatives" of AMP/AJP appeared as speakers, presenters or panelists at events completely unrelated to AMP/AJP and the issues addressed by these organizations, we are willing to discuss a reasonable limitation of this request.

- For DR31, I think you are claiming that none of the Defendants have any responsive documents in their possession, custody or control. Are you withholding any responsive documents with respect to Mosque Foundation or KindHearts?

- With respect to item #7, we do not agree with your comments, but I think you have made your position clear.

- In response to your comments on item #9, I re-reviewed your initial

production, including the AMP certificate of incorporation. I also reviewed the bates numbers cited in your amended response to EI3. I do not see any lists of directors or officers for AMP prior to 2009. Please let me know if there are additional bates number (I have not seen them) or if you can point me to something specific I missed. I have also re-reviewed the website descriptions of certain AMP personnel cited by bates number in your response. These only cover officers and 3 or 4 employees, and only in recent years; they do not provide the comprehensive information requested. Finally, with respect to Chapters and locations, we contend (among other things) largely replicated a network in place at the time of IAP and that they carried out similar functions. This request is reasonably calculated to lead to evidence on the alter ego issue that is the subject of jurisdiction discovery.

- EI5 asks for a list of specific people. Neither the Declaration of Munjed Ahmad nor the Articles of Incorporation of AMP provide a list of people (other than Hatem Albazian and Munjed Ahmad) involved in the discussions (starting in August 2005) of creating AMP and the creation of AMP. Even if no documents were retained, this interrogatory asks for the identification of all the people involved in the 2005-2006 time period. We are entitled to that information.

- With respect to item #11 in my list, we again disagree with both your objections and your comments. You may contend that the Entity Defendants never did fundraising or supported fundraising for other organizations, but we are entitled to explore the evidence on these issues —and again note that your own document production refers to fundraising for Viva Palestina. We also appreciate that the AMP website and Facebook/Twitter content includes some information about speakers, presenters and moderators; however, we believe there was significantly more documentation prepared and distributed in connection with the frequent and sometimes large conferences, fundraisers and events sponsored by AMP/AJP. We are entitled to this information.

- EI12 and II4 request information about the universe of websites, blogs, social media accounts and internet domain names owned, controlled or maintained by the Defendants. If there are more, we are entitled to know they are. We understand you are objecting on privacy grounds to providing information regarding the Individual Defendants, and I understand you to be saying there are no more for the Entity Defendants. If that is not your position, please let me know.

I look forward to wrapping up our discussion at 1:30 today. In light of our prior discussions and correspondence, I think the parties' positions are clear and I am not sure there is much left to discuss. I am not anticipating that this will be a long call.

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 17, 2018 8:24 PM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Thank you for the follow-up. Please note the following as to each:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

   Response: As previously indicated, these documents are minutes and related items as to AMP, as well as some documents recently received (today) from a former employee, from her personal email. We expect to send what we currently have, and have reviewed, tomorrow. She has indicated that she will get us any further documents she is able to locate by the end of this week. If more responsive documents come our way, we will provide them within the same time frame (after any necessary time to review).

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

   Response: as also previously indicated, AMP became and is currently a d/b/a of AJP. As also indicated by previously produced documents, no fundraisers occurred, under the name of either entity, until 2009. Those funds went through AJP. As indicated, you have the tax returns for AJP, one of which lists AMP as a d/b/a. We have not located any prior or other returns and are not withholding any. As also indicated, we continue to object to producing the names of any specific voluntary donors.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6, II7.

Correct, we stand by our objections to the impropriety of that characterization and self-created grouping by Plaintiffs, as well as its relevance here for any entities and/or individuals not a party to this lawsuit or subject to the *Boim* 2000 judgment.

4. Beyond the internet, social media and other material already produced, our previous discussion and your amended responses suggests [sic] you do not intend to produce any additional documents responsive to:  DR21, DR22, DR23, DR24, DR25, and DR26.  If that is not the case, let's discuss.

Response: Document requests 21-26 are on vastly different topics.  Therefore, a grouped response is not reasonable or applicable.

As to 21: No funds were transferred out of the United States at all.  That is clear from our previous answers, and the Declaration of Munjed Ahmad previously provided, and the referenced website, but I restate it again here to the extent it was not.  So, we cannot produce "any additional documents responsive to" the request for transfer of funds outside the United States, when no such transfers took place.  Furthermore, we have already responded that these Defendants do not raise funds on behalf of other organizations.  The funds are raised and used domestically, for educational purposes, as has been repeatedly stated throughout our communications and the responses and documents provided.

As to 22: Your request as to transfer of funds between AMP and AJP makes no sense; as stated above, and throughout the discovery responses, AMP exists only as a d/b/a of AJP, and prior to that status did not raise funds.  The first fundraiser occurred in 2009, as evidenced by document production (including but not limited to the full archives of the Twitter and Facebook cites).  There are also no allegations here regarding any "disguised continuance" as between AMP and AJP, so this is not reasonably calculated to lead to the discovery of admissible evidence pertaining to the jurisdictional matters at hand.

As to 23: "Copies in your possession, custody, and control of Al-Zaytounah and Al-Meezan" are not in the possession of AJP or AMP, and were not published by AJP and/or AMP.  They do not relate to the jurisdictional discovery here in any way, and production of any hard copies retained by Defendant Abuirshaid would be overly broad and unduly burdensome.  The relevant referenced publications as related to Defendant Abuirshaid are independent of and were not on behalf of the *Boim* judgment defendants and are not by or on behalf of AMP or AJP.

As to 24: No Defendant in this matter is in possession of any "documents relating to annual conferences held by IAP"; that has already been stated clearly and repeatedly in discovery responses.  As to documents relating to AJP and/or AMP and conferences, the documents produced (including the full Twitter and Facebook archives) evidence the relevant AJP and AMP events, as do the historic website documents produced already.

As to 25: Your request for documents relating to "the event in Detroit, Michigan in 2015" "which raised approximately $200,000 for charitable purposes in Gaza" misconstrues relevant facts, as stated already in our previous responses.  AMP served in an educational role.  United Muslim Relief collected donations for its own use; AMP and AJP did not receive, transfer or have control of these donations.  As already

stated, to the best of the knowledge of Defendants, United Muslim Relief is a domestic charitable organization in good standing. What United Muslim Relief did with any voluntary donations it collected is not a question any defendant in this matter can answer, or for which any defendant in this matter has documents. The cited article poorly translates the Arabic original and, in any event and as already stated by Defendants in the previous Response, was not prepared by or for Defendants in this matter, and Defendants do not vouch for its accuracy. As to any references by AJP or AMP regarding their educational role, as already specified, please see the previously produced full archives of the Twitter and Facebook pages, which contain references to the 2015 conference in question, as well as the historic website pages already provided.

As to 26: Your request for any event where any representative of Defendants appeared at any time in any capacity is overly broad to say the least, as noted. Nonetheless, the full archive history of the Twitter and Facebook pages, already produced, as well as the historic website pages already produced, show the promotions done by AJP and/or AMP. If Plaintiffs wish to be more specific in the request, perhaps we can be more specific in the response; in any event, the full timelines already produced cover any and all promoted appearances related to AJP and/or AMP.

5. For DR31 (documents reflecting employment or volunteer, leadership, consulting, professional services, officer or director role with AMP, AJP, Mosque Foundation, KindHearts), your amended responses indicate that the Individual Defendants have no responsive documents and the Entity Defendants refer to documents already produced. We need to confirm that it is your position that Defendants have no other responsive documents.

Once again, Mosque Foundation and Kindhearts were not defendants even in the 2000 matter, nor are they here. Defendants in this matter are not keepers of those documents. The Individual Defendants refer to responsive information in their Declarations, to the extent relevant. As to AMP and AJP, you already have thousands of pages reflecting the creation of both entities, their by-laws, their directors and officers, their leadership, and any other related responsive roles. We are not withholding anything here, because you already have it all as to the relevant entities and as to anything in the possession of these Defendants.

6. For DR32 (documents supporting the declarations), are there any responsive documents that have not yet been produced?

As to documents supporting the declarations already provided, we have referenced the documents already produced. There are no known responsive non-privileged documents which have not already been produced. As previously discussed on our last call, Defendants reserve the right to provide any necessary rebuttal documents, should that become necessary, which may exceed those already provided in this matter.

7. For DR33 and DR34, are the Individual Defendants standing by their objections and not producing anything? Likewise, for the corresponding II5 and II8, I assume you do not plan to provide additional information?

Without more specificity from Plaintiffs as to relevant, if any, travel, Defendants stand

by their objections to Request 33. As to Request 34 as to Defendant Abuirshaid, regarding a February 2017 event, this is not reasonably calculated to lead to the discovery of admissible jurisdictional evidence, as already stated.

As to Interrogatory No. 5 to the Individual Defendants, relevant information has already been produced. The identities of the Individual Defendants is not in dispute. Should you have any reason to believe otherwise, please advise; otherwise, sufficient relevant responsive information has already been provided in their Declarations.

As to Interrogatory No. 8 to the Individual Defendants, this again refers to a trip attributed to Defendant Abuirshaid in February 2017. Without more explanation as to how, if at all, this request relates to the relevant jurisdictional scope and inquiry, Defendant stands by his objections.

8. Do Defendants intend to provide a privilege log?

As previously stated, yes. However, while compilation and discussions regarding scope have remained ongoing, that seemed premature. We expect to produce one to you by early next week, in light of the information stated above.

9. In EI3, we asked for the identities of directors, officers, employees and chapters/locations/offices for each year since inception. EI4 seeks a description of the structure and hierarchy of the Entity Defendants (and changes over time). You have pointed to a number of documents and given lists in your amended responses and March 27 e-mail. But even with these, we still appear only to have a partial response:

   a. Directors: We do not have AMP's directors prior to 2009. Yes you do. See first round of documents produced, regarding incorporation of AMP in 2006. You have provided lists of "National Board Members" for 2009 purportedly from historical captures of AMP's website. Are these AMP's directors? Yes, as seemed obvious on the face of the responses, those would be the members of the Board of Directors from 2009 forward, as indicated in prior responses.

   b. Officers: We do not appear to have AMP's officers prior to 2009 Yes you do. See first round of documents produced, regarding incorporation of AMP in 2006, as well as the subsequently produced descriptions (which I specifically identified to you, on our last call, by the relevant bates label numbers).

   c. Employees: You provided a list of past and present employees of AJP but have not indicated the time periods during which these employees worked for AJP. There is little or no information about reporting structure or responsibilities. We dispute your characterization. The documents already produced and referenced set forth the job duties of the relevant positions. And, again, I specifically identified these for you on our last call, by bates label numbers (002573-002582; see also, for example, 004314-4316; 004378-4381; 004401-4403). Should you believe there is any dispute or reason for more specific information other than that already identified, as it may pertain to jurisdiction in this matter, please explain how. I am willing to listen.

   d. Chapters/locations/offices: There are references on the AMP website to a number of other chapters and locations, and you have provided several addresses. We do not appear to have a comprehensive list or suite numbers. As clearly stated in the

documents produced and interrogatory responses already provided, all decisions are made and finances controlled out of the main (originally California, now Chicago) office. If there is any way in which you believe you need additional information about the chapters which did not exist at the time of AMP or AJP's formation, please advise more specifically. We also refer you to the publically available website information regarding current (and historic) chapters.

10. For EI5, we do not have a list of all the persons involved in the creation of AMP and AJP (and the preliminary activities that led to the creation), nor have you identified all documents related to the formation. Are you willing to provide further responsive information? Please see the Declaration of Munjed Ahmad, already provided. Please also see the individuals listed on the Articles of Incorporation for AMP and AJP, which have already been provided. Please also note that, per Mr. Ahmad's declaration and already produced documents showing the same, there were no "preliminary activities" as you assert other than discussions as reflected in the handwritten notes of Mr. Ahmad, which will be produced pursuant to the Confidentiality Order in this matter and which are referenced by bates label numbers in Mr. Ahmad's Declaration. With the further exception of any recently received and/or forthcoming documents from the former employee referenced above, no further such documents were retained in the normal course of business over a decade ago.

11. Based on prior discussions, I suspect we are at an impasse regarding providing further information regarding (i) the identity of persons, entities or organizations to which the Entity Defendants provided funding or support for fundraising (EI9); (ii) the identity of donors, sponsors or funders of the Entity Defendants (EI10); and (iii) the identity of speakers, presenters and moderators who have appeared at conferences or other events sponsored by the Entity Defendants (beyond what appears on the AMP website and social media you have produced). Please let me know if I am incorrect.

We are at an impasse as to the identity of voluntary donors. On that, you are correct.

As to fundraising for other "persons, entities or organizations," we have already responded that none took place and that is not what these charitable entities do. They receive purely domestic voluntary donations, as stated previously in many places in Defendants' discovery responses, and they utilize those donations for educational purposes performed by AJP and/or AMP (also purely domestically). Therefore, there is no impasse here; there is simply no such information to provide.

As to the identify of speakers, presenters and moderators at AMP and AJP events, we have provided that through the full Twitter and Facebook archives, as well as what is available via the historic website pages produced already (see, by way of example and not exhaustive list, 004160, 004284). And, as already indicated, we are still working on procuring a readable, workable version of the full website archive, and if we are able to obtain that information will provide that shortly after receipt. Therefore, there is again no impasse; the information, in its most readily and reasonably available form and as retained in the normal course of business, has already been provided, consistent with the Federal Rules of Civil Procedure.

12. For EI12 and II4, you have listed 3 internet domain names and AMP's Twitter page, Facebook page and YouTube channel. Have *any* of the defendants owned, controlled, created or maintained (in Arabic or English) any other website, blog, social media

account, or internet domain name?  Do any of the Individual Defendants have social media accounts, web pages or blogs that have ever had content relating to any of the Entity Defendants or *Boim* Defendants?

> Your question above is even broader than the question posed in the referenced Interrogatories.  You asked in Interrogatory No. 4 to the Individual Defendants if these defendants "owned, controlled, created or maintained" any domains, <u>at any time</u>, "relating to any *Boim* Defendant or any Entity Defendant".  All relevant domains for AJP and AMP have been identified, along with the available full archives, in prior responses. We stand by our objections as to the overly broad nature of this request, as well as these Defendants' privacy rights in their personal social media pages which are not publically accessible.  You also agreed that independent business concerns of these defendants, such as Rafeeq Jaber's tax practice, are not reasonably included in this scope.
>
> As to Interrogatory No. 12 directed to AJP and AMP, you ask basically the same question as to these defendants, which has been more than fully answered.  You have the domain names, the full archives of at least two social media pages (we will get you whatever becomes recoverable and usable as to the full website archives as noted above, beyond the historic pages that have already been produced), and the zip files for the full archives which have been produced.  At this stage, I am unclear as to what it is you are still seeking.

Therefore, the only realistic remaining areas of dispute which I see, other than perhaps where you wish documents existed (but they don't), or were retained from long ago (but they weren't) before these defendants were in fact defendants, are as follows:

- Identities of the voluntary donors to AJP, which began in 2009, and which are redacted as to name and address but not number or amounts of donations, on the tax documents produced; and

- The impropriety of your overly broad definition and lumping of what you call "Network Entities" and "Network Defendants"; please note, however, that Defendants in this matter have responded fully as the answers pertains to these Defendants, or to the extent applicable as to the referenced *Boim* 2000 judgment defendants.

As to timing for a call tomorrow, I will be in telephone hearings tomorrow afternoon until approximately 4:00 pm.  I can start at that point, if this is expected to be brief, or am available Thursday morning at 10am or Thursday afternoon at 2:00 pm.  I have some availability remaining Friday  Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)

(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 17, 2018 3:56 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com)
<scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

To streamline our call tomorrow, here are the issues I think we still need to cover:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6, II7.

4. Beyond the internet, social media and other material already produced, our previous discussion and your amended responses suggests you do not intend to produce any additional documents responsive to: DR21, DR22, DR23, DR24, DR25, and DR26. If that is not the case, let's discuss.

5. For DR31 (documents reflecting employment or volunteer, leadership, consulting, professional services, officer or director role with AMP, AJP, Mosque Foundation, KindHearts), your amended responses indicate that the Individual Defendants have no responsive documents and the Entity Defendants refer to documents already produced. We need to confirm that it is your position that Defendants have no other responsive documents.

6. For DR32 (documents supporting the declarations), are there any responsive documents that have not yet been produced?

7. For DR33 and DR34, are the Individual Defendants standing by their objections and not producing anything? Likewise, for the corresponding II5 and II8, I assume you do not plan to provide additional information?

8. Do Defendants intend to provide a privilege log?

9. In EI3, we asked for the identities of directors, officers, employees and chapters/locations/offices for each year since inception. EI4 seeks a description of the structure and hierarchy of the Entity Defendants (and changes over time). You have pointed to a number of documents and given lists in your amended responses and March 27 e-mail. But even with these, we still appear only to have a partial response:

    a. Directors: We do not have AMP's directors prior to 2009. You have provided lists of "National Board Members" for 2009 purportedly from historical captures of AMP's website. Are these AMP's directors?

    b. Officers: We do not appear to have AMP's officers prior to 2009

    c. Employees: You provided a list of past and present employees of AJP but have not indicated the time periods during which these employees worked for AJP. There is little or no information about reporting structure or responsibilities.

    d. Chapters/locations/offices: There are references on the AMP website to a number of other chapters and locations, and you have provided several addresses. We do not appear to have a comprehensive list or suite numbers.

10. For EI5, we do not have a list of all the persons involved in the creation of AMP and AJP (and the preliminary activities that led to the creation), nor have you identified all documents related to the formation. Are you willing to provide further responsive information?

11. Based on prior discussions, I suspect we are at an impasse regarding providing further information regarding (i) the identity of persons, entities or organizations to which the Entity Defendants provided funding or support for fundraising (EI9); (ii) the identity of donors, sponsors or funders of the Entity Defendants (EI10); and (iii) the identity of speakers, presenters and moderators who have appeared at conferences or other events sponsored by the Entity Defendants (beyond what appears on the AMP website and social media you have produced). Please let me know if I am incorrect.

12. For EI12 and II4, you have listed 3 internet domain names and AMP's Twitter page, Facebook page and YouTube channel. Have *any* of the defendants owned, controlled, created or maintained (in Arabic or English) any other website, blog, social media account, or internet domain name? Do any of the Individual Defendants have social media accounts, web pages or blogs that have ever had content relating to any of the Entity Defendants or *Boim* Defendants?

I look forward to concluding our discussion tomorrow. I suggested tomorrow afternoon in my e-mail this morning. Would 1:30 PM work?

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856

allen.woolley@lockelord.com
www.lockelord.com

**From:** Woolley, Allen
**Sent:** Tuesday, April 17, 2018 9:31 AM
**To:** 'Christina Jump'
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Why don't we speak tomorrow afternoon. Does that work?

We will look for the additional documents this afternoon. Will this be the last group of documents? Is there still material you are waiting for the confidentiality order to produce?

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 17, 2018 9:13 AM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Counsel:

Per below, please confirm if you still wish to proceed with a call at 10am this morning, in light of the hard stop at 11:00.

Also, we just this morning received the website archive, along with some other documents from a former employee we were able to reach who checked her personal devices as well (also received this morning).

We expect to send those to you later today, so if it makes more sense to speak tomorrow or later in the week with that in mind, please let me know as well. Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081

(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Christina Jump
**Sent:** Monday, April 16, 2018 1:43 PM
**To:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses

That should work.  I will need to get off the call at 11:00 am, so if you believe we will need a larger block of time than one hour, let's try the afternoon instead.

Thanks.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Monday, April 16, 2018 8:57 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Seth Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>; Charles Swift <cswift@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses

How about tomorrow morning (Tuesday) at 10AM?

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Friday, April 13, 2018 6:30 PM

**To:** Woolley, Allen
**Cc:** Landes, Stephen; Seth Corthell (scorthell@jaszczuk.com); Charles Swift
**Subject:** Re: Defendants' Amended Discovery Responses

We just had an administrative judge set a hearing for Monday. I am flexible anytime Tuesday during normal business hours, so if you speak quickly you may choose your time.


Christina A. Jump

On Apr 12, 2018, at 11:00 AM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Monday afternoon at 2?
>
> **W. Allen Woolley**
> Partner
> **Locke Lord LLP**
> 111 South Wacker Drive
> Chicago, Illinois  60606
> T: 312-201-2676
> C: 773-255-1542
> F: 312-416-4856
> allen.woolley@lockelord.com
> www.lockelord.com
>
> ---
>
> **From:** Christina Jump [mailto:cjump@clcma.org]
> **Sent:** Thursday, April 12, 2018 10:50 AM
> **To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
> **Cc:** Charles Swift; Leila Mustafa; Seth Corthell (scorthell@jaszczuk.com)
> **Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]
>
> Looks like our emails crossed.  Glad you received it.
>
> I am not available Monday morning as I have a conflict out of the office, but am available that afternoon, and am flexible throughout the day Tuesday the 17th as well. Please let me know what works for you.  Thanks.
>
>
>
> *Christina A. Jump*
> Civil Litigation Department Head
> Constitutional Law Center for Muslims in America
> 833 E. Arapaho Rd., Suite 102
> Richardson, TX  75081
> (972) 914-2507 (main)
> (972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Thursday, April 12, 2018 10:39 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen
<Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe,
Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua
<joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>; Seth
Corthell (scorthell@jaszczuk.com) <scorthell@jaszczuk.com>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

We received the flash drive moments ago.

Would 10am on Monday work?

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Thursday, April 12, 2018 10:38 AM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Yes, Monday is fine.  Thanks.  I will confirm the expected delivery of the flash drive
shortly.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Thursday, April 12, 2018 10:18 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen
<Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe,

Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua
<joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

I reviewed your proposed confidentiality order (which is based on the ND Ill form). It looks
fine. We agree to entry of the order.

I am also in the process of digesting the amended responses you provided and understand
you are sending a fairly large volume of additional document production material (which we
have not yet received). Could we push the call we scheduled for this afternoon to Monday
to allow us to receive and digest the new material?

Best,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 10, 2018 6:50 PM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** Defendants' Amended Discovery Responses

Counsel:

Please see attached both sets of Amended Objections and Responses to
Interrogatories, on behalf of the Individual Defendants as well as AMP and AJP, and the
Amended Objections and Responses to Plaintiffs' Jurisdiction Document Requests.
Please also see the attached relevant verification pages.

As noted herein, documents bates labeled 002594 – 002660 and 004410 – 004422 will
be produced upon agreement as to a Confidentiality Order, a proposed one of which
was sent to you yesterday (as noted below).

Otherwise, a flash drive with the additional document production, including the
unlabeled zip files of the archives for the relevant Facebook and Twitter accounts, is
already on its way to you.

Thank you and I look forward to speaking with you later this week (should that remain
necessary).

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 11:44 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen
<Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe,
Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua
<joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement

That's fine.  We will call you at 2pm on Thursday.

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 10, 2018 11:20 AM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-
America.FID3847873]

Yes, that works.  Same time good?

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 7:45 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegau, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Christina:

Would Thursday afternoon work to complete the discovery conference?

-AW

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, April 09, 2018 7:22 PM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegau, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** Supplemental Declaration and Proposed Confidentiality Agreement

Counsel:

Please see the attached Declaration, of Munjed Ahmad.  In addition, we attach a proposed Confidentiality Order.  With an agreement on that, we  can produce the items discussed Friday, as well as a few additional documents we have located that would fit within the scope of the Confidentiality Order.  If we can agree on the language and retroactive nature of the Confidentiality Order, we can produce those remaining documents, and our Amended Discovery Responses which refer to them, tomorrow.  Please also note that we have had success with the social media archives and will have those in producible format tomorrow as well.

Thank you.  In light of this, I believe it makes sense to push our potential continuation of the call on outstanding issues by one more day, so that you may receive this information and thereby better assess what, if anything, remains in disagreement.  Please let me know if you agree.

Please let me know your position on the attached proposed Confidentiality Order (redlined per the Local Rules), and we look forward to hearing your response.  Thank you.

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)



<image001.jpg>

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

| From: | Christina Jump |
|---|---|
| To: | "Woolley, Allen" |
| Cc: | "Landes, Stephen"; Charles Swift; Leila Mustafa |
| Subject: | RE: Defendants" Amended Discovery Responses [LL-America.FID3847873] |
| Date: | Friday, April 20, 2018 2:24:00 PM |

To confirm our recent conversation and per my prior email below, these are my understandings. Please advise if you believe I have omitted anything or if you recall anything differently:

- We will, as noted below earlier today, provide a privilege log.
- We will, as noted below earlier today, supplement with information regarding chapter creation and addresses. Please note that I still disagree with your characterization of and the need for this information as stated in your email below. I also, though, think it would be a huge waste of the Court's time to argue over the production of the dates of creation and addresses, so will get back to you regarding that. I also encourage you to check the website files on the flash drive you received this morning.
- You will let me know if you become aware of more than the one referenced attachment we discussed (on page 002598, referenced as "legal order May 2014") to emails produced where you believe you have the emails but not attachments.
- You will provide a proposed narrowing of DR 26, including in your narrowing the relevant topics of such potential speeches and/or presentations.
- You will review both the email below and documents previously produced which are referenced in it, and the flash drive you received with the web site data on it, and then let me know what if anything you believe remains discoverable for jurisdictional discovery and not yet produced.
- As to the Confidentiality Order, please note I identified 126 pages out of the 4,468 pages (plus additional archived electronic files of the Twitter, Facebook and website pages, produced on flash drives and not bates labeled) as subject to this Confidentiality Order. You stated that some or all of the 126 pages (representing less than 2.8% of the documents produced) may not be confidential in your opinion. As I stated on our call, if you will identify which of the designated 126 pages you are challenging as to that designation and why, I am glad to respond. It is, however, difficult for me to respond to blanket general statements pertaining to some or most of a page range.

Thanks, let me know if I omitted anything, and we will be in touch.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Christina Jump
**Sent:** Friday, April 20, 2018 1:24 PM
**To:** 'Woolley, Allen' <Allen.Woolley@lockelord.com>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Thank you for the email.  As noted yesterday, you also received the full website archive available, containing prior articles and presentations.  Our communications confirm that was received earlier today; please advise if it was not.  The electronic files on this flash drive contain much if not all of the information you claim to still need, which in many cases duplicates documents and files already produced.

Please also note that Ms. Szremski's emails are not the "only" ones you have received.  You also received information containing emails from Munjed Ahmad, which directly address the reformation of AMP as an official  d/b/a of AJP.  As also noted, both of these sets of emails were found on email servers not in AMP or AJP's control.  Nonetheless, with redacting of the personal information (and, where appropriate, attorney-client privileged information), those emails have been provided.

As noted, we have redacted employment-performance related information from the minutes produced, as well as attorney-client privileged materials from the minutes and relevant emails.  Ms. Szremski's emails are not, in fact, "heavily redacted" – they are barely if at all redacted, other than as noted above.

I am glad to provide a privilege log; as stated previously, as the scope and documents at issue were being continuously supplemented during the course of our discussions, I postponed that log so that it would be fully accurate.  I will provide that to you by close of business Monday, April 23, 2018.

To clarify, I do not assert below that Al-Zaytounah was not related to any *Boim* 2000 judgment defendant, as you erroneously represent.  I state, specifically, that ""Copies in your possession, custody, and control of Al-Zaytounah and Al-Meezan" **are not in the possession of AJP or AMP, and were not published by AJP and/or AMP**.  They do not relate to the jurisdictional discovery here in any way, and production of any hard copies retained by Defendant Abuirshaid would be overly broad and unduly burdensome.  The relevant referenced publications **as related to Defendant Abuirshaid** are independent of and were not on behalf of the *Boim* judgment defendants and are not by or on behalf of AMP or AJP" (emphasis added).  Defendant Abuirshaid has not retained any copies of Al-Zaytounah; he provided them to the government in 2015 and has not retained any copies personally.  Al-Meezan was started by Defendant Abuirshaid, not AMP or AJP, in 2005, and he sold it in 2015.  He has retained hard copy issues only, which are not readily available or easily producible.  If needed, we will once again amend our interrogatory answers to make that more clear.

Please also note that AMP and AJP have not handled funds which are raised for other

entities, and therefore have not "raised money for" other entities as you imply. They sponsored events, and at some of those events money was raised by and for other entities which were also present. This is consistent with the answers provided. Interpretations to the contrary may be addressed in rebuttal-like declarations, but do not make the answers provided in discovery responses insufficient or inaccurate.

I have given you all documents retained in the normal course of business as to tax filings. We are not withholding any that have been retained by the entities.

We are not "withholding any responsive documents with respect to Mosque Foundation or KindHearts", as these Defendants do not have any such documents in their custody or control. The objections as to requests for these remain legitimate, specifically because these Defendants do not have any such documents, nor should they therefore be expected to produce them.

As stated repeatedly, we have identified all websites maintained by AJP and AMP.

You have more than "three or four pages" relating to directors and staff, from the website archive (in native form, I might add) provided to you.

We have provided you all information retained regarding the formation of AMP in 2006. Specifically, please note the handwritten notes of Munjed Ahmad, referenced in his declaration and produced earlier this week.

Your reference to Doc. 004413, ""When the 941's were filed they were filed under the name of AMP rather than AJP"", misconstrues the facts. Please note that first, that quote is from the January 2014 Executive Committee meeting (see title at top of that page). Second, this document specifically states that it relates to "income tax withholdings" which should have been made under AJP, not AMP. By definition, since AJP was created in 2009, this relates to documents filed after 2009. Those facts are in no way "at odds with" the first fundraising event identified as taking place in 2009, as you state.

Please also note that you have been provided the meeting minutes as they exist for AMP for October 11, 2008 (004410-004411). These identify Munjed (Ahmad), Dr. Hatem (Bazian), Sufian (Nabhan), Awad (Hamdan) (identified on 004451), Dr. Daad (Katato) and Sr. (Sister) Soundos as the website committee for AMP at that time. Furthermore, documents 002658-002660 show those involved in the discussions regarding the formation of AMP. These are already referenced and incorporated in the interrogatory responses, and these full names are set forth in response to Interrogatory 3 to AMP and AJP.

At this point, my responses are more rebuttal to your dissatisfaction with the information as it exists than actual discovery responses. That seems fruitless, and potentially unending. I can provide rebuttal declarations as to specific questions, though that again seems outside the scope of the intended discovery. I will agree to supplement, one last time, as to the exact locations and dates of creation of the chapters. Beyond that, it appears we either agree to disagree, or we will address issues in rebuttal form. Please advise if you see anything you believe does not fall in those categories.

Thank you and I look forward to speaking with you shortly.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Friday, April 20, 2018 11:19 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

Christina:

Thank you for your April 17 e-mail and the additional production material we received Wednesday. I have a number of issues with your comments and the additional production that I thought would be useful to cover in writing before our call:

- It appears that we have now received Kristin Szremski's e-mails going back to October 2013. These remain the *only* e-mails we have received, despite a fairly long list of officers, directors and employees affiliated with AMP/AJP. As previously discussed, the defendants need to identify all custodians who potentially have responsive material and do a proper search and collection from their files, computers, e-mail accounts, servers, web-sites, cloud storage, devices, social media accounts, blogs, etc. It strains credibility that only one person has responsive e-mails (and that the electronic and paper records are so thin). You have previously declined to provide us with any information about what custodians you have contacted and what searches were done. We urge you to reconsider this position, as understanding what searches have been done would go a long way toward resolving our concerns about this production.

- The entire production we received Wednesday was marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," but the bulk (if not all) of the documents do not appear to fall within any of the

categories in paragraph 2 of the proposed protective order. While we are prepared to give confidential treatment to personnel or employment records (which we have requested but not received) and any other documents that legitimately fall within the 7 categories in paragraph 2, we believe a not-for-profit, non-commercial entity (which must publicly disclose its 990s) is likely to have little, if any, protectable commercial or financial information, "trade secrets," or other properly confidential material. We ask that you reconsider these designations and use the designation judiciously for any further productions. Because the "confidential" designation imposes burdens in using discovery material, we will likely need to ask the Court to strike any wholesale or improper designations.

- The e-mails produced yesterday were heavily-redacted PDF files with no metadata and missing attachments. We do not understand the basis for the redactions, as few (if any) of the e-mails appear to contain privileged material and e-mail addresses to my knowledge are not protected from discovery. We also specifically requested and are entitled to metadata and attachments. Our preference would be to receive e-mails in native format, but at the very least, they should be produced in a *usable* (searchable and sortable) electronic form with metadata and attachments. A single bulk PDF file containing a large number of imaged emails does not meet these requirements.

- With respect to item #2 in your April 17 response e-mail, you have suggested that AMP did not file tax documents in its own name and that no fundraisers occurred until 2009. These contentions seem at odds with e-mails you just produced indicating, for example, that "When the 941's were filed they were filed under the name of AMP rather than AJP" (4413) and the fact that we know AMP engaged in activities that cost money earlier than 2009 (such as its 2006 annual conference). If AMP has (or has access to) tax-related documents (whether formally filed documents or materials "relating" to tax filings), these should be produced.

- You provided a request-by-request response to item #4 in my April 17 e-mail, reiterating your objections and contention that you do not have documents responsive to some of the requests. Your responses appear to confirm my understanding that you do not intend to produce any further documents in response to DR21-26. We do not agree with your comments and note briefly in response:

  o (DR21) This request was not limited to funds "transferred out of the United States"—we requested all documents relating to any "use, recipient(s) and disposition of funds." Furthermore, we think your contention that AMP did not raise funds on behalf of other organizations and that funds were solely used domestically is contrary to the evidence. For instance, your own recent

document production specifically references AMP "endorsed and hosted" events and an "AMP-sponsored" fundraiser for Viva Palestina—an overseas organization on behalf of which AMP raised money. (4423)

o (DR22) We disagree with your objection and are entitled to explore the relationship of the two Entity Defendants. We also do not find credible the contention that AMP "did not raise funds" prior to 2009. How did it pay for conferences beginning in 2006 and other expenses?

o (DR23) Your assertion that Al-Zaytounah was independent of the *Boim* Defendants is incorrect. *See* 340 F. Supp. 885, 907. We believe Al-Meezan was similarly affiliated with or supported by AMP/AJP and are entitled to explore this relationship— specifically pleaded in our initial complaint—and have therefore requested copies of the publication itself, as well as documents relating to the creation and promulgation of the publications and decision to begin publishing Al-Meezan.

o (DR24) We requested *all* documents relating to the annual conferences, not just the references on the AMP website and Twitter and Facebook. You indicated during our April 6 conference that you are not prepared to provide anything further. We believe, as I indicated, that there is substantial additional material and that providing on-line content "evidenc[ing]" these events does not mean you do not have to produce the other documents.

o (DR25) We do not agree with your characterization of AMP's role —and in any case should be permitted to explore AMP's role and the circumstances of the Detroit event. Again, we understand your position is that you are not producing these documents but want to make clear that this remains an issue.

o (DR26) If you genuinely believe "representatives" of AMP/AJP appeared as speakers, presenters or panelists at events completely unrelated to AMP/AJP and the issues addressed by these organizations, we are willing to discuss a reasonable limitation of this request.

- For DR31, I think you are claiming that none of the Defendants have any responsive documents in their possession, custody or control. Are you withholding any responsive documents with respect to Mosque Foundation or KindHearts?

- With respect to item #7, we do not agree with your comments, but I think you have made your position clear.

- In response to your comments on item #9, I re-reviewed your initial production, including the AMP certificate of incorporation. I also reviewed the bates numbers cited in your amended response to EI3. I do not see any lists of directors or officers for AMP prior to 2009. Please let me know if there are additional bates number (I have not seen them) or if you can point me to something specific I missed. I have also re-reviewed the website descriptions of certain AMP personnel cited by bates number in your response. These only cover officers and 3 or 4 employees, and only in recent years; they do not provide the comprehensive information requested. Finally, with respect to Chapters and locations, we contend (among other things) largely replicated a network in place at the time of IAP and that they carried out similar functions. This request is reasonably calculated to lead to evidence on the alter ego issue that is the subject of jurisdiction discovery.

- EI5 asks for a list of specific people. Neither the Declaration of Munjed Ahmad nor the Articles of Incorporation of AMP provide a list of people (other than Hatem Albazian and Munjed Ahmad) involved in the discussions (starting in August 2005) of creating AMP and the creation of AMP. Even if no documents were retained, this interrogatory asks for the identification of all the people involved in the 2005-2006 time period. We are entitled to that information.

- With respect to item #11 in my list, we again disagree with both your objections and your comments. You may contend that the Entity Defendants never did fundraising or supported fundraising for other organizations, but we are entitled to explore the evidence on these issues —and again note that your own document production refers to fundraising for Viva Palestina. We also appreciate that the AMP website and Facebook/Twitter content includes some information about speakers, presenters and moderators; however, we believe there was significantly more documentation prepared and distributed in connection with the frequent and sometimes large conferences, fundraisers and events sponsored by AMP/AJP. We are entitled to this information.

- EI12 and II4 request information about the universe of websites, blogs, social media accounts and internet domain names owned, controlled or maintained by the Defendants. If there are more, we are entitled to know they are. We understand you are objecting on privacy grounds to providing information regarding the Individual Defendants, and I understand you to be saying there are no more for the Entity Defendants. If that is not your position, please let me know.

I look forward to wrapping up our discussion at 1:30 today. In light of our prior discussions and correspondence, I think the parties' positions are clear and I am not sure there is much left to discuss. I am not anticipating that this will be a long call.

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 17, 2018 8:24 PM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Charles Swift; Leila Mustafa
**Subject:** RE: Defendants' Amended Discovery Responses

Thank you for the follow-up. Please note the following as to each:

1. You indicated that you would be producing certain documents subject to the confidentiality order, including: (i) certain documents responsive to DR5 (hierarchy and structure); (ii) to the extent not produced, *all* remaining documents responsive to DR6 (board of directors documents); (iii) possibly additional documents responsive to DR13. Assuming you ask the Court to enter the agreed confidentiality order in the near future, we are prepared to treat any properly designated documents you produce now as subject to the terms of the agreed order. Can you confirm what additional material you plan to produce and when?

   Response: As previously indicated, these documents are minutes and related items as to AMP, as well as some documents recently received (today) from a former employee, from her personal email. We expect to send what we currently have, and have reviewed, tomorrow. She has indicated that she will get us any further documents she is able to locate by the end of this week. If more responsive documents come our way, we will provide them within the same time frame (after any necessary time to review).

2. You were going to determine whether AMP has filed any tax documents (DR7) and let us know if these will be produced.

   Response: as also previously indicated, AMP became and is currently a d/b/a of AJP. As also indicated by previously produced documents, no fundraisers occurred, under the name of either entity, until 2009. Those funds went through AJP. As indicated, you have the tax returns for AJP, one of which lists AMP as a d/b/a. We have not located any prior or other returns and are not withholding any. As also indicated, we continue to object to producing the names of any specific voluntary donors.

3. I believe we have discussed and are at an impasse with respect to "Network Entity" and "Network Person" material requested in DR20 and information requested in EI8, II6,

| From: | Christina Jump |
| To: | Woolley, Allen; Landes, Stephen |
| Cc: | Charles Swift; Leila Mustafa |
| | |
| Subject: | Re: Defendants" Amended Discovery Responses [LL-America.FID3847873] |
| Date: | Tuesday, May 01, 2018 4:32:00 PM |

Mr. Woolley:

Please note my responses to each of your points, in turn, below:

"First, as you and I discussed, plaintiffs do not intend for DR26 to require production of documents relating to appearances as speakers, presenters or panelists at events that are unrelated to the work of AMP/AJP. For example, if Mr. Jaber spoke at a tax or financial planning conference unrelated to Palestinian issues, we would not be seeking documents relating to his appearance at this event. To address this issue, we are prepared to narrow the scope of DR26 to fundraisers, meetings, conferences or events that either address Palestinian issues, Israel or AMP/AJP or were sponsored by an organization that addresses those issues. The existing date range (see Instruction T) is appropriate for this request."

> Thanks for the clarification. Unfortunately, it does not address our objections fully. This scope is still not limited enough in time or scope. We fail to understand how documents are necessary as to the issue of whether or not jurisdiction is present. We once again state that it is inappropriate to acquire this type of information from other organizations and/or individuals who are not parties to this lawsuit, due to the limited scope of discovery that is in place as per the Court's order for discovery. Subject to the foregoing objections, and as to the production of documents that relate specifically to AMP/AJP's events, please see the previously produced web page fully available historic data (produced on flash drive). In the "Events" sections, speeches and presentations by AMP board members about which AMP wanted to make its members aware are listed routinely. Therefore, this information is available within what has already been provided. To the extent also relevant, please also see full archives of the relevant Twitter and Facebook pages, as well as relevant historic website pages, previously produced in this matter (bates labeled 002661 – 004409 and separately produced zip files).

"Second, I have re-reviewed the document productions and your previous correspondence in connection with your position that Defendants have fully responded to EI3, EI4 and EI5. These interrogatories ask Defendants (among other things) to "Identify" (i.e. provide name, title, contact information and employer) (see Definition P)): (i) AMP's and AJP's board members for each year; (ii) AMP's and AJP's officers for each year; (iii) AMP's and AJP's employees for each year; and (iv) all persons involved in the incorporation or creation of AMP and AJP (and any precursor organization). For each officer, manager and employee, we requested descriptions of reporting structure and responsibilities (including changes over time). Respectfully, the document productions and amended interrogatory responses provide only partial responses to these requests—particularly for the pre-2009 AMP period. For directors, officers and employees, you have pointed to the "first round of documents produced, regarding the incorporation of AMP in 2006." But the 2006 articles of incorporation (00001), the remainder of this group of documents (000002-69), and the other

bates numbers listed in your interrogatory response do not contain the requested information. Likewise, the 2008 meeting minutes (004410-4411) purport to identify a "web site committee" but do not indicate board members or officers for 2008 or any earlier time.  The web site pages identified in 9.c. of your April 17 e-mail are for AJP after 2009. Likewise, Defendants have not identified all persons involved in the incorporation or creation of AMP.  You have pointed us to the articles of incorporation, which list Hatem Albazian as the initial agent, but there is no indication who else was involved.  You have also provided 3 pages of handwritten notes (002658-60), which contain a number of names but no definitive information about what these lists represent, whether any of the people listed were involved in forming AMP, or who actually became officers or directors."

That sometimes happens with newly started organizations, particularly with small non-profits.  As you know, AMP was first created in 2006 and AJP in 2009; the first fundraising event occurred in 2009, as previously indicated and provided.  From 2006 to 2009, we have provided all of the materials that were maintained in the regular course of business.  Job descriptions simply did not exist for AMP in 2006.  The closest thing that does exist for the early years are the board meeting minutes for the years already produced.  Hatem Bazian and Munjed Ahmad were the main early forces; please see Declaration of Munjed Ahmad for support of that.  There were few if any other regular volunteers early on, let alone official board members.  I am not hiding records which show this information; you simply have all that still exist.  See bates labeled 0000069 – 000276; 000457 – 002558; 002661 – 004134; and 004135 – 004409, as well as zip files provided separately; Twitter and Facebook archives produced in this matter; and relevant historic website pages). Defendants cannot produce documents that are not in existence.  I pointed to the board minutes and the referenced committee because it is an early reference to specific names, which I thought you wanted.  That's where they are, and that's how they were kept.  In addition, please see the separate email I am sending today with the summarized and excerpted pages showing the ten (10) years of AMP conferences to date, along with speakers for each.  As referenced in that email, this information came from what has already been produced to you; I just excerpted and summarized it for today's emails.  That includes the 2006 and 2007 conferences (there were none in 2008 or 2009, and they picked back up again in 2010).

"Third, in your April 20 e-mail, you indicate that AMP and AJP "have not handled funds which are raised for other entities," but have sponsored events at which money was raised by and for other entities.  To be clear, DR21's request for documents relating to funds raised on behalf of other organizations was intended to cover situations where AMP sponsored events to fundraise for other organizations even if it never "handled" the funds raised.  Several other document requests would also likely cover documents relating to such events (e.g. DR14, DR15, DR16, DR20).  These documents are responsive, and we believe they should be produced."

Allow me to clarify: AMP and AJP have not ever raised money for other organizations.  As you quote above, I stated that they have not handled funds raised for other entities, and that they have been at events where money was raised by and for other entities.  However, it was never AMP or AJP's money (or that of any of the individual defendants) to identify and account for.  Nonetheless, as stated above, see the "Events" designation on the website, which has been produced in full archive form as available via flash drive, along with historic

pages already bates labeled, and the full Twitter and Facebook archives already produced, which list all promoted events. Please also note that, even with the change in definition to what the document request "was intended to cover," Defendants still do not have <u>any</u> documents pertaining to conferences held by IAP or the cessation of IAP conferences. Defendants cannot produce documents they do not have. As to AMP conferences, please see the documents attached to today's other email, detailing the ten (10) AMP conferences and the dates and speakers for each (derived from previously produced data). To the extent relevant, please also see full archives of the relevant Twitter and Facebook pages, as well as relevant historic website pages, previously produced in this matter (bates labeled 002661 – 004409 and separately produced zip files).

"<u>Fourth</u>, I believe you indicated that the e-mails you produced on April 18 are from Kristin Szremski and Munjed Ahmad.  I still do not understand why defendants are producing no e-mails from the Individual Defendants or any of the other directors, officers or employees of AMP/AJP.  For example, Sufyan Nabhan, Hatem Bazian, Sana Daoud, Salah Sarsour (and others) are current board members who appear to have had long-term involvement with AMP/AJP (and in some cases with IAP).  During our April 6 telephone conference, you declined to tell us which custodians defendants have collected documents from.  Have these defendants, officers and directors been contacted and asked for documents?  Is it your position that they have no responsive e-mails or other documents, or that such e-mails and documents do not need to be produced?"

As we have discussed before, Defendants maintain the position that all necessary data recovery occurred, all relevant verifications were executed in response to the discovery requests, and counsel and Defendants have conducted thorough searches in accordance with the Federal Rules of Civil Procedure.   All responsive relevant documents, whether in e-mail or other form, have been produced.  We are confident we have complied with the Federal Rules of Civil Procedure, the Local Rules for this Court, and this Court's order as to this limited jurisdictional discovery.

"<u>Fifth</u>, you indicated that you would be providing additional information regarding chapters and regional locations for AMP/AJP.  Do you have a time estimate and a general idea what sort of information you will be providing?  Will the information include names of people involved, websites/social media, publications, and events?"

Sent under separate cover today.

We agree that further discovery conferences are not necessary at this point; we will not create information simply to satisfy your wish that it exist.  We have already compiled and summarized the produced data for you on more than one occasion and in more than one form, including today's emails, and pointing you to specific pages on our prior calls (which includes requesting that you read the produced information before calling an impasse).

I believe at this stage the only remaining item I owe you is the privilege log, which I hope to provide tomorrow but in any event no later than the end of business this week.

Please let us know if you have any further concerns. Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Christina Jump
**Sent:** Monday, April 30, 2018 12:02 PM
**To:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

My apologies for my silence last week.  I was traveling on another matter and am just now getting caught back up.

I will respond more substantively to your email below later today,  but did want to acknowledge that I realize I owe you a response.  Thank you.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 24, 2018 12:59 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Defendants' Amended Discovery Responses [LL-America.FID3847873]

| From: | Christina Jump |
|---|---|
| To: | Woolley, Allen; Landes, Stephen |
| Cc: | Charles Swift; Leila Mustafa |

| | |
|---|---|
| Subject: | Discovery summary and excerpted pages re AMP conferences and chapters |
| Date: | Tuesday, May 01, 2018 4:45:00 PM |
| Attachments: | 2006 First Convention Title without speakers.pdf |
| | 2007 Conference 2nd Annual.pdf |
| | 2010 Conference 3rd Annual.pdf |
| | 2011 Convention Program.pdf |
| | 2011 Speakers.pdf |
| | 2007 Conference speakers.pdf |
| | 2012 Speakers Conference.pdf |
| | 2012 Program with Speakers.pdf |
| | 2013 Speaker list.pdf |
| | 2014 Conference with speakers.pdf |
| | 2015 Conference from website.pdf |
| | 2015 Speakers list.pdf |
| | 2016 Conference from website.pdf |
| | 2016 Speakers Bios.pdf |
| | program_2017.pdf |

Counsel:

Please see below the list of the ten (10) annual AMP conferences which have occurred to date, along with the dates and titles of each. For each, I also attach the best available documentation regarding the events and speakers for each year. We will produce these attached excerpted pages with bates labels shortly, but in the interim I wanted to make this information readily available to you. Please note, this all comes from the website archives, previously produced with isolated pages attached here, and Facebook, Twitter and YouTube posts as well (also previously identified and produced with full archives as available), from which these pages have been excerpted and summarized below for convenience. Nonetheless, they are derived from the sources already produced.

1.   2006 (Nov. 23-25):     Palestine: A Just Cause (First National Convention)

2.   2007 (Nov. 22-25):     Second Annual National Convention (60th Anniversary of the Nakba)

(2008: none)

(2009: none)

3.   2010 (Nov. 26-28):     Palestine: The Gate to Global Peace (3rd Annual)

4.   2011 (Nov. 24-26):     A New Era of Activism (4th Annual)

5.   2012 (Nov. 22-25):     A Movement United (5th Annual)

6.   2013 (Nov. 28-30):     A Blessed Land A Noble Cause (6th Annual)

7.   2014 (Nov. 27-29):   Gaza Teaches Life! (7th Annual)

8.   2015 (Nov. 26-28):   Reclaiming Our Narrative (8th Annual)

9.   2016 (Nov. 24-26):   Paving the Way Toward Justice (9th Annual)

10.   2017 (Nov. 23-25):   100 Years Since Balfour: The Movement Continues (10th Annual Conference)

As to the chapters for AMP, please note, as indicated in the previously produced documents, the individual chapters do not have authority to make statements on behalf of AMP/AJP, and those representatives are not necessarily (though may by coincidence be) AMP board members (also referred to in our prior correspondence as "national board members").  In other words, as stated in the earlier produced documents, all key decisions and messaging happens at the national level.

There were some early "chapters" listed which are now defunct, so to speak (these are not separately incorporated, as I have previously informed you).  Nonetheless, please see the below list, which is compiled from the data and documents already produced, listing the current and past "chapters" (which are really more appropriately and as a practical matter referenced as local means of contact).

Also, I have noted where, as also reflected on the previously produced documents and data, the local chapters have physical offices; please be advised this is only true for Chicago (headquarters), Washington D.C. (lobbying offices), and New Jersey locations.  All other "chapters" exist only in the virtual world, though they do assist with finding local venues at which to hold informational seminars and the like (as referenced in the Twitter, Facebook and website archives already produced).  Where appropriate, the "chapter" Facebook locations are also noted.

1.   California:

a.   AMP-Bay Area: started (at least via Facebook) February 14, 2011; bayarea@ampalestine.org; reachable through @ampalestinebayarea (facebook.com/ampalestinebayarea); no physical office

b.   AMP-SoCal: started February 14, 2011; socal@ampalestine.org; facebook.com/American-muslims-for-palestine-amp-southern-california-188927824470865/?ref=br_rs; also no physical office

2.   Illinois (Chicago): chicago@ampalestine.org; facebook.com/ampalestinechicago; no physical location other than headquarters (10063 S. 76th Ave., Bridgeview IL, 60455 (708) 598-4267)

3.  Michigan (Detroit): facebook.com/americanmuslimsforpalestinedetroit; detroit@ampalestine.org; no physical office

4.  Minnesota (Minneapolis): @ampminnesota; (facebook.com/ampminnesota); mn@ampalestine.org; no physical office

5.  Missouri: missouri@ampalestine.org; facebook.com/ampofmo; no physical office

6.  New Jersey: ampnj@ampalestine.org; @ampnjchapter (facebook.com/ampnjchapter); 9020-28 Palisade Plaza, North Bergen, New Jersey 07047

7.  New York: started October 1, 2010; ny@ampalestine.org; @ampny; ny@ampalestine.org; no physical office

8.  Washington, D.C.: 6404 Seven Corners Pl., Falls Church, VA 220044; (703) 534-3032 (lobbying office, not just a chapter)

9.  Wisconsin (Milwaukee): milwaukee@ampalestine.org; no physical office

Also, the 2009 archived page of the AMP website lists these chapters and phone numbers, many if not all of which are no longer functioning numbers but are excerpted here for historic purposes (there were no addresses for any of the listings below):

**Berkeley, CA**

(510) 914.6722

**Champaign, IL**

(630) 217.2778

**Chicago, IL**

(773) 951.2020

**Dearborn, MI**

(313) 999.4420

**Kansas City, MO**

(816) 517.9349

**Milwaukee, WI**

(414) 559.7680

**Minneapolis, MN**

(612) 554.2460

**Pasaic County, NJ**

(973) 996.5341

**Sacramento Valley, CA**

**Syracuse, NY**

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | Woolley, Allen; Landes, Stephen |
| **Cc:** | Charles Swift; Leila Mustafa |
| **Subject:** | RE: Discovery summary and excerpted pages re AMP conferences and chapters |
| **Date:** | Monday, May 07, 2018 10:51:00 AM |
| **Attachments:** | 2018.05.07 - Defendants" Privilege Log (updated).pdf |
| | Defendants" Production 004469-004530 (combined).pdf |

Counsel:

Please see the attached privilege log, as well as the now bates labeled (004469-004530) copies of the documents attached to my May 1, 2018 email.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

_____

**From:** Christina Jump
**Sent:** Tuesday, May 01, 2018 4:53 PM
**To:** Woolley, Allen <Allen.Woolley@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** Discovery summary and excerpted pages re AMP conferences and chapters

Counsel:

Please see below the list of the ten (10) annual AMP conferences which have occurred to date, along with the dates and titles of each.  For each, I also attach the best available documentation regarding the events and speakers for each year.  We will produce these attached excerpted pages with bates labels shortly, but in the interim I wanted to make this

information readily available to you.  Please note, this all comes from the website archives, previously produced with isolated pages attached here, and Facebook, Twitter and YouTube posts as well (also previously identified and produced with full archives as available), from which these pages have been excerpted and summarized below for convenience. Nonetheless, they are derived from the sources already produced.

1.    2006 (Nov. 23-25):    Palestine: A Just Cause (First National Convention)

2.    2007 (Nov. 22-25):    Second Annual National Convention (60th Anniversary of the Nakba)

(2008: none)

(2009: none)

3.    2010 (Nov. 26-28):    Palestine: The Gate to Global Peace (3rd Annual)

4.    2011 (Nov. 24-26):    A New Era of Activism (4th Annual)

5.    2012 (Nov. 22-25):    A Movement United (5th Annual)

6.    2013 (Nov. 28-30):    A Blessed Land A Noble Cause (6th Annual)

7.    2014 (Nov. 27-29):    Gaza Teaches Life! (7th Annual)

8.    2015 (Nov. 26-28):    Reclaiming Our Narrative (8th Annual)

9.    2016 (Nov. 24-26):    Paving the Way Toward Justice (9th Annual)

10.    2017 (Nov.  23-25):    100 Years Since Balfour: The Movement Continues (10th Annual Conference)

As to the chapters for AMP, please note, as indicated in the previously produced documents, the individual chapters do not have authority to make statements on behalf of AMP/AJP, and those representatives are not necessarily (though may by coincidence be) AMP board members (also referred to in our prior correspondence as "national board members").  In other words, as stated in the earlier produced documents, all key decisions and messaging happens at the national level.

There were some early "chapters" listed which are now defunct, so to speak (these are not separately incorporated, as I have previously informed you).  Nonetheless, please see the below list, which is compiled from the data and documents already produced, listing the current and past "chapters" (which are really more appropriately and as a practical matter referenced as local means of contact).

Also, I have noted where, as also reflected on the previously produced documents and data, the local chapters have physical offices; please be advised this is only true for Chicago (headquarters), Washington D.C. (lobbying offices), and New Jersey locations. All other "chapters" exist only in the virtual world, though they do assist with finding local venues at which to hold informational seminars and the like (as referenced in the Twitter, Facebook and website archives already produced). Where appropriate, the "chapter" Facebook locations are also noted.

1.   California:

a.   AMP-Bay Area: started (at least via Facebook) February 14, 2011; bayarea@ampalestine.org; reachable through @ampalestinebayarea (facebook.com/ampalestinebayarea); no physical office

b.   AMP-SoCal: started February 14, 2011; socal@ampalestine.org; facebook.com/American-muslims-for-palestine-amp-southern-california-188927824470865/?ref=br_rs; also no physical office

2.   Illinois (Chicago): chicago@ampalestine.org; facebook.com/ampalestinechicago; no physical location other than headquarters (10063 S. 76th Ave., Bridgeview IL, 60455 (708) 598-4267)

3.   Michigan (Detroit): facebook.com/americanmuslimsforpalestinedetroit; detroit@ampalestine.org; no physical office

4.   Minnesota (Minneapolis): @ampminnesota; (facebook.com/ampminnesota); mn@ampalestine.org; no physical office

5.   Missouri: missouri@ampalestine.org; facebook.com/ampofmo; no physical office

6.   New Jersey: ampnj@ampalestine.org; @ampnjchapter (facebook.com/ampnjchapter); 9020-28 Palisade Plaza, North Bergen, New Jersey 07047

7.   New York: started October 1, 2010;  ny@ampalestine.org; @ampny; ny@ampalestine.org; no physical office

8.   Washington, D.C.: 6404 Seven Corners Pl., Falls Church, VA  220044; (703) 534-3032 (lobbying office, not just a chapter)

9.   Wisconsin (Milwaukee): milwaukee@ampalestine.org; no physical office

Also, the 2009 archived page of the AMP website lists these chapters and phone numbers, many if not all of which are no longer functioning numbers but are excerpted here for historic purposes (there were no addresses for any of the listings below):

**Berkeley, CA**

(510) 914.6722

**Champaign, IL**

(630) 217.2778

**Chicago, IL**

(773) 951.2020

**Dearborn, MI**

(313) 999.4420

**Kansas City, MO**

(816) 517.9349

**Milwaukee, WI**

(414) 559.7680

**Minneapolis, MN**

(612) 554.2460

**Pasaic County, NJ**

(973) 996.5341

**Sacramento Valley, CA**

**Syracuse, NY**

<< File: 2006 First Convention Title without speakers.pdf >> << File: 2007 Conference 2nd Annual.pdf >> << File: 2010 Conference 3rd Annual.pdf >> << File: 2011 Convention Program.pdf >> << File: 2011 Speakers.pdf >> << File: 2007 Conference speakers.pdf >> << File: 2012 Speakers Conference.pdf >> << File: 2012 Program with Speakers.pdf >> << File: 2013 Speaker list.pdf >> << File: 2014 Conference with speakers.pdf >> << File: 2015 Conference from website.pdf >> << File: 2015 Speakers list.pdf >> << File: 2016 Conference from website.pdf >> << File: 2016 Speakers Bios.pdf >> << File: program_2017.pdf >>

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

# EXHIBIT B



**Locke**
**Lord** LLP

Attorneys & Counselors

111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Allen Woolley
Partner
Direct Telephone: 312-201-2676
Direct Fax: 855-595-1188
allen.woolley@lockelord.com

May 11, 2018

***Via E-Mail and U.S. Mail***
Christina A. Jump
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 East Arapaho Road, Suite 102
Richardson, Texas 75081
*cjump@clcma.org*

     Re:    *Boim v. American Muslims for Palestine*, No. 17-cv-03591

Dear Christina:

     I am enclosing service copies of jurisdiction deposition notices for (i) Munjed Ahmad, (ii) Osama Abuirshaid, (iii) Abdelbasset Hamayel, and (iv) Rafeeq Jaber. We have included a proposed date for each deposition. However, we will work with you to schedule the depositions on reasonable, mutually convenient dates. In addition, we reserve the right to push the depositions back if necessary in the event we are still waiting for production of further documents or other written discovery

     Very truly yours,

W. Allen Woolley

WAW/kls

Enclosures

AM 68855878.1

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami
Morristown | New Orleans | New York | Providence | Sacramento | San Francisco | Stamford | Washington DC | West Palm Beach

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STANLEY BOIM, Individually and as
Administrator of the Estate of David Boim,
deceased; and JOYCE BOIM,

      Plaintiffs,

v.

AMERICAN MUSLIMS FOR PALESTINE;
AMERICANS FOR JUSTICE IN PALESTINE
EDUCATIONAL FOUNDATION; RAFEEQ
JABER; ABDELBASSET HAMAYEL; AND
OSAMA ABUIRSHAID,

      Defendants.

Civil No. 17-cv-03591

Hon. Sharon Johnson Coleman

Hon. Sidney I. Schenkier

## NOTICE OF JURISDICTION DEPOSITION OF MUNJED AHMAD

TO:    Chares D. Swift (cswift@clcma.org) and
       Christina A. Jump (cjump@clcma.org)
       Constitutional Law Center for Muslims in America
       833 E. Arapaho Rd, Suite 102
       Richardson, TX 75081

     **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30, Plaintiffs STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, by their attorneys, will take the following deposition, continuing from day to day until completed. The deposition will be held at the offices of Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois, 60606.

| Deponent | Date | Time |
| --- | --- | --- |
| Munjed Ahmad | June 15, 2018 | 9:00 a.m. |

AM 68784320.2

This deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic means. The deposition will be limited to matters pertinent to jurisdiction discovery and will be taken without waiving plaintiffs' right to take any appropriate additional deposition(s) in accordance with the Federal Rules of Civil Procedure and any applicable Court order.

Dated: May 11, 2018                          Respectfully submitted,

Stephen J. Landes
W. Allen Woolley
Michael B. Kind
Joshua Fliegel
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 201-2772
*Attorneys for Stanley Boim, Individually and as the*
*Administrator of the Estate of David Boim,*
*Deceased, and Joyce Boim*
One of the Attorneys for Plaintiffs

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
Daniel I. Schlessinger
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the above and foregoing Notice of Jurisdiction Deposition of Munjed Ahmad to be served upon the following by emailing and sending by U.S. Mail, postage pre-paid, the same on May 11, 2018:

Chares D. Swift
cswift@clcma.org
Christina A. Jump
cjump@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STANLEY BOIM, Individually and as
Administrator of the Estate of David Boim,
deceased; and JOYCE BOIM,

      Plaintiffs,

v.

AMERICAN MUSLIMS FOR PALESTINE;
AMERICANS FOR JUSTICE IN PALESTINE
EDUCATIONAL FOUNDATION; RAFEEQ
JABER; ABDELBASSET HAMAYEL; AND
OSAMA ABUIRSHAID,

      Defendants.

Civil No. 17-cv-03591

Hon. Sharon Johnson Coleman

Hon. Sidney I. Schenkier

### NOTICE OF JURISDICTION DEPOSITION OF OSAMA ABUIRSHAID

TO:    Chares D. Swift (cswift@clcma.org) and
       Christina A. Jump (cjump@clcma.org)
       Constitutional Law Center for Muslims in America
       833 E. Arapaho Rd, Suite 102
       Richardson, TX 75081

      PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30, Plaintiffs STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, by their attorneys, will take the following deposition, continuing from day to day until completed. The deposition will be held at the offices of Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois, 60606.

| Deponent | Date | Time |
|---|---|---|
| Osama Abuirshaid | June 18, 2018 | 9:00 a.m. |

This deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic means. The deposition will be limited to matters pertinent to jurisdiction discovery and will be taken without waiving plaintiffs' right to take any additional deposition(s) in accordance with the Federal Rules of Civil Procedure and any applicable Court order.

Dated: May 11, 2018                          Respectfully submitted,

Stephen J. Landes
W. Allen Woolley
Michael B. Kind
Joshua Fliegel
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 201-2772
*Attorneys for Stanley Boim, Individually and as the*
*Administrator of the Estate of David Boim,*
*Deceased, and Joyce Boim*
One of the Attorneys for Plaintiffs

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
Daniel I. Schlessinger
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the above and foregoing Notice of Jurisdiction Deposition of Osama Abuirshaid to be served upon the following by emailing and sending by U.S. Mail, postage pre-paid, the same on May 11, 2018:

Chares D. Swift
cswift@clcma.org
Christina A. Jump
cjump@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STANLEY BOIM, Individually and as
Administrator of the Estate of David Boim,
deceased; and JOYCE BOIM,

      Plaintiffs,

v.

AMERICAN MUSLIMS FOR PALESTINE;
AMERICANS FOR JUSTICE IN PALESTINE
EDUCATIONAL FOUNDATION; RAFEEQ
JABER; ABDELBASSET HAMAYEL; AND
OSAMA ABUIRSHAID,

      Defendants.

Civil No. 17-cv-03591

Hon. Sharon Johnson Coleman

Hon. Sidney I. Schenkier

## NOTICE OF JURISDICTION DEPOSITION OF ABDELBASSET HAMAYEL

TO:   Chares D. Swift (cswift@clcma.org) and
      Christina A. Jump (cjump@clcma.org)
      Constitutional Law Center for Muslims in America
      833 E. Arapaho Rd, Suite 102
      Richardson, TX 75081

     **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30, Plaintiffs STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, by their attorneys, will take the following deposition, continuing from day to day until completed. The deposition will be held at the offices of Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois, 60606.

| Deponent | Date | Time |
|---|---|---|
| Abdelbasset Hamayel | June 20, 2018 | 9:00 a.m. |

AM 68784285.2

This deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic means. The deposition will be limited to matters pertinent to jurisdiction discovery and will be taken without waiving plaintiffs' right to take any additional deposition(s) in accordance with the Federal Rules of Civil Procedure and any applicable Court order.

Dated: May 11, 2018                                     Respectfully submitted,

_W. Allen Woolley_

Stephen J. Landes
W. Allen Woolley
Michael B. Kind
Joshua Fliegel
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 201-2772
*Attorneys for Stanley Boim, Individually and as the*
*Administrator of the Estate of David Boim,*
*Deceased, and Joyce Boim*
One of the Attorneys for Plaintiffs

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
Daniel I. Schlessinger
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the above and foregoing Notice of Jurisdiction Deposition of Abdelbasset Hamayel to be served upon the following by emailing and sending by U.S. Mail, postage pre-paid, the same on May 11, 2018:

Chares D. Swift
cswift@clcma.org
Christina A. Jump
cjump@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

W. allan Wedley

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STANLEY BOIM, Individually and as
Administrator of the Estate of David Boim,
deceased; and JOYCE BOIM,

     Plaintiffs,

v.

AMERICAN MUSLIMS FOR PALESTINE;
AMERICANS FOR JUSTICE IN PALESTINE
EDUCATIONAL FOUNDATION; RAFEEQ
JABER; ABDELBASSET HAMAYEL; AND
OSAMA ABUIRSHAID,

     Defendants.

Civil No. 17-cv-03591

Hon. Sharon Johnson Coleman

Hon. Sidney I. Schenkier

## NOTICE OF JURISDICTION DEPOSITION OF RAFEEQ JABER

TO:    Chares D. Swift (cswift@clcma.org) and
       Christina A. Jump (cjump@clcma.org)
       Constitutional Law Center for Muslims in America
       833 E. Arapaho Rd, Suite 102
       Richardson, TX 75081

    **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30, Plaintiffs STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, by their attorneys, will take the following deposition, continuing from day to day until completed. The deposition will be held at the offices of Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois, 60606.

| Deponent | Date | Time |
|---|---|---|
| Rafeeq Jaber | June 22, 2018 | 9:00 a.m. |

This deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic means. The deposition will be limited to matters pertinent to jurisdiction discovery and will be taken without waiving plaintiffs' right to take any additional deposition(s) in accordance with the Federal Rules of Civil Procedure and any applicable Court order.

Dated: May 11, 2018                    Respectfully submitted,


Stephen J. Landes
W. Allen Woolley
Michael B. Kind
Joshua Fliegel
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 201-2772
*Attorneys for Stanley Boim, Individually and as the*
*Administrator of the Estate of David Boim,*
*Deceased, and Joyce Boim*
One of the Attorneys for Plaintiffs


Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
Daniel I. Schlessinger
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the above and foregoing Notice of Jurisdiction Deposition of Rafeeq Jaber to be served upon the following by emailing and sending by U.S. Mail, postage pre-paid, the same on May 11, 2018:

Chares D. Swift
cswift@clcma.org
Christina A. Jump
cjump@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

_W. Allen Woolley_

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABURISHAID, | Hon. Sidney I. Schenkier |
| Defendants. | |

### DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' JURISDICTION INTERROGATORIES TO DEEFNDANTS RAFEEQ JABER, ABDELBASSET HAMAYEL AND OSAMA ABUIRSHAID

Defendants Rafeeq Jaber ("Jaber"), Abdelbaset Hamayel ("Hamayel"), and Osama Abuirshaid ("Abuirshaid") ("Individual Defendants") file these Objections and Responses to Plaintiffs' Jurisdiction Interrogatories, as set forth below.

### GENERAL OBJECTIONS

Defendants assert the following General Objections and qualifications to Plaintiffs' Jurisdiction Interrogatories, each of which are hereby incorporated into the responses to each individual interrogatory below. A specific response may repeat a general objection for emphasis or some other reason, but the failure to include general objections in any specific response does not waive any general objections to that request.

1. Defendants object to the Interrogatories (including the "Instructions" and "Definitions") to the extent that they impose obligations on Defendants beyond those required by the Federal

Rules of Civil Procedure.

2.    Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," in that they purport to impose requirements or discovery obligations greater than or different from those under the applicable Rules and Orders of this Court, which only permitted discovery limited in scope to assess subject matter jurisdiction and subject matter jurisdiction alone.

3.    Defendants object to the Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," to the extent that, as written, Plaintiffs seek information that invades the privacy of individuals and/or entities who are not parties to this lawsuit or the original "*Boim* Action." Defendants further object to Plaintiffs' use of "Network Entity" and "Network Person" throughout these Interrogatories as implying relationships and/or organizational overlap which does not exist between the Defendants in this matter and any other entity listed in Plaintiffs' creation entitled "Network Entity" and "Network Person," and which do not pertain to the instant matter or any jurisdictional issue in this matter.  Furthermore, majority of the entities listed in Plaintiffs' definition of "Network Entity" (including "American Middle East League for Palestine; Anera; Baitulmaal, Inc.; Benevolence International Foundation; Global Relief Foundation; Helping Hands for Relief and Development; Hamas; ICNA Relief; IHH Humanitarian Relief Foundation; Islamic Relief Foundation; Interpal; KindHearts; Life for Relief and Development; Middle East Financial Services; The Mosque Foundation (or Bridgeview Mosque); Muslim American Society; the Muslim Brotherhood; Palestinian Children's Relief Fund; any branch of the Palestine Committee; Union of Good; United Muslim Relief; Unlimited Friends Association for Social Development; Viva Palestina; Zakat Foundation

of America" and "any charitable, humanitarian, political or educational organization in Gaza or the West Bank; and any branch of the acting governmental authorities in Gaza or the West Bank") are not defendants in this matter and were not judgment defendants in the original Boim action filed in 2000. The same is true of those identified in Plaintiffs' definition of "Network Person" (including "Khaled Abughazaleh; Omar Ahmad; Nihad Awad; Shukri Abu Baker; Muhammad Alkik; Hatem Bazian; Khalil Demir (also known Halil Demir); Sana'a Abed Daoud; Salah Daoud; Ghassan Elashi; George Galloway; Sheikh Mohammad Al Hanooti; Oussama Jamal; Sheikh Bassam Jarrar; Ayman Jarwan; Hussein al-Khatib; Khalil al-Khaya; Mousa Abu Marzook; Mohammad El-Mezain; Kifah Mustapha; Sufian Nabhan; AshrafNubani; Magdi Odeh; Yusuf Qaradawi; Mohamed Qatanani; Nabil Sadoun; Sheikh Jamal Said, Ra' ed Sal ah; Sabri Samirah; Salah Sarsour; Yousef Shahin; Khaled Smaili" and "any representative or affiliate of a Network Entity"). Therefore, Defendants object that Plaintiffs wrongfully attempt to "brand[] any organization and its members that support humanitarian interests for the people of Palestine as having an unlawful motive" and therefore as somehow being indebted to Plaintiffs and under the control of the Defendants in this matter. *See* Doc. 41, Memorandum Opinion and Order granting Motion to Dismiss, at 10.

4. Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to usages applicable to the terms "Respondent" or "affiliate," to the extent that that they are vague, ambiguous, and overly broad, as used throughout these Requests not intelligible in the context of the applicable Request.

5. Defendants object to the "Instructions" and "Definitions" to the extent that they purport to extend the meaning of terms beyond their intended meaning and scope, thus rendering the requests overbroad, unduly burdensome, or oppressive in light of the require proportionality analysis.

6.      Defendants object to these Interrogatories to the extent they seek documents or electronically stored information that are protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other applicable privilege. If any such disclosure occurs, it is inadvertent and shall not constitute a waiver of privileges.

7.      Defendants object to these Interrogatories to the extent that they seek to require Defendants to obtain information from third parties.

8.      It should not be inferred from the form or substance of any objection or response that documents or electronically stored information responsive to any particular Interrogatory exist.

9.      Defendants do not intend by these Objections and Responses to waive any claim of privilege or immunity. Defendants' Objections and Responses are conditioned specifically on the understanding that the provision of documents or electronically stored information for which any claim of privilege is applicable shall be deemed inadvertent. An inadvertent disclosure shall not constitute – and is in no way intended as – a waiver of any privilege or any other ground for objecting to such discovery with respect to such document, electronically stored information, the subject matter thereof, or the information contained therein. Any inadvertent disclosure by Defendants shall not constitute a waiver of the Defendants' right to object to the use of any such document, electronically stored information, the information contained therein, or any information derived therefrom, during any other proceeding.

### SPECIFIC RESPONSES AND OBJECTIONS

1.   Identify all persons who have knowledge of the issues and factual assertions raised in defendants' motion to dismiss for alleged lack of subject matter jurisdiction [Dkt 31] filed in this case.

   **Response**: See individuals identified in Defendants' previous court filings, as well as the declarations provided by Individual Defendants with the same, and documents produced

with these discovery Responses. See also this Court's Order finding no subject matter jurisdiction.

2. Identify all persons who may provide testimony or declarations in connection with any motion or hearing to determine or challenge the existence of the Court's subject matter jurisdiction in this case. For each, identify the person's anticipated testimony and all facts or information pertinent to the Court's subject matter jurisdiction upon which the person would be competent to testify.

**Response**: Objection. This Interrogatory is overly broad in that it seeks to require the Individual Defendants to provide an entire defense in response to one Interrogatory, and as such constitutes an improper fishing expedition. Furthermore, this Interrogatory seeks information which is covered by the attorney client and work product privileges to the extent it seeks designation of all persons "who may provide testimony or declarations" as stated above, and further exceeds the scope of this Court's order for this discovery.

Subject to these objections, Individual Defendants respond as follows:

As Plaintiffs know, Declarations by each Individual Defendant have been provided in this matter to the Court and to Plaintiffs with the previous filings. Individual Defendants do not foresee a need for further briefing or Declarations on the issue.

3. Identify all Assets that were at any time owned or possessed by any *Boim* Defendant and were later received (directly or indirectly) or came to be possessed or owned by Respondent.

**Response**: Objection. Individual Defendants object to this Request as vague as to "Respondent."  Subject to the foregoing objections, Individual Defendants respond as follows:

None. Regarding Defendant Jaber, please see transcripts of depositions of Rafeeq Jaber, already in Plaintiffs' possession.

4. Identify any website, blog, social media account, or internet domain name owned, controlled, created or maintained by or on behalf of Respondent at any time that has contained content relating to any *Boim* Defendant or any Entity Defendant. For each, identify any associated domain name, username, or URL.

**Response**: Objection.  Individual Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent" or "Entity Defendant", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery.  Individual Defendants further object to this Interrogatory to the extent it seeks any private social media accounts of the Individual Defendants as an invasion of their privacy rights, and which are further not reasonably calculated to lead to the discovery of admissible evidence regarding the limited jurisdictional scope of the discovery authorized by this Court.

5. To the extent not covered in your declaration supporting defendants' motion to dismiss, state the date and place of your birth, list all places (cities and countries) in which you have resided at any time, state when you first moved to the United States, and provide dates of all of your travel to the United States prior to December 31, 1996.

**Response**: Objection.  Individual Defendants object to this Interrogatory as overly broad, not reasonably limited in time and scope, an invasion of personal privacy as written, and not reasonably calculated to lead to the discovery of admissible evidence, and exceeding the scope of this Court's order for this limited discovery.  Subject to the foregoing objections, Individual Defendants respond as follows:

For responsive relevant information, see Declarations of Individual Defendants provided previously in this matter for relevant factual summaries, as well as transcripts of the depositions of Rafeeq Jaber, already in Plaintiffs' possession.

6.  To the extent not covered in your declaration supporting defendants' motion to dismiss, identify and describe any relationship, employment, volunteer role, officer or director position, affiliation, communication, speaking engagement, or other dealings you had with any Network Entity at any time. Include in your description the dates during which you held any position, your title, your responsibilities, the person(s) to whom you reported, any compensation you received and the person or entity who paid the compensation.

**Response**: Objection.  Individual Defendants object to this Interrogatory as to the characterization of "Network Entity" and "Network Person" in Plaintiffs' definitions, refer to Defendants' General Objections regarding the same, and will not accept or respond as to the term and definition given.  Further, Individual Defendants object to this Interrogatory as vague in that it is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and exceeding the scope of this Court's order for this discovery.  Subject to the foregoing objections, Individual Defendants respond as follows:

All relevant employment and volunteer history with AJP, AMP, and any 2000 *Boim* defendant is set forth in the Declarations of Individual Defendants previously provided in this matter. As to any responsive, non-objectionable supporting documentation within the custody and control of Individual Defendants, please see documents produced with these discovery Responses.

7. Identify all relationships, dealings and communications between Respondent and any Network Entity or Network Person.

   **Response**: Objection. Individual Defendants object to this Interrogatory as to the characterization of "Network Entity" and "Network Person" in Plaintiffs' definitions and will not accept or respond as to the term and definition given. Further, Individual Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and exceeds the scope of this Court's order for this discovery. As such, Individual Defendants are not able to provide a response to this Interrogatory.

8. For defendant Osama Abu Irshaid [sic] only, with respect to your attendance and participation at any Conference for Palestinians Abroad ("PalesAbroad"), including the PalesAbroad event in Istanbul in February 2017, and the PalesAbroad event in Amman, Jordan, identify: the person(s) or organization(s) who invited you to attend or participate; the person(s) or organization(s) who paid for the trip (or any portion thereof); and any speech or remarks you gave during the trip.

**Response**: <u>Objection</u>.  Individual Defendants object to this Interrogatory as overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and exceeding the scope of this Court's order for this discovery.

Dated this 5th day of March, 2018.

*/s/ Christina Jump*
Chares D. Swift
Texas Bar No. 24091964
Christina A. Jump
Texas Bar No. 00795828
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Pro Hac Attorney for Defendants*

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
<u>tdurkin@durkinroberts.com</u>
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

On March 5, 2018, I electronically provided a copy of these Objections and Responses to all attorneys of record via email.

*/s/ Christina Jump*
Christina A. Jump

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Osama Abuirshaid, that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

3/2/18
DATE

Osama Abuirshaid

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Abdelbaset Hamayel, that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

3.2.18
DATE

Abdelbaset Hamayel

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Rafeeq Jaber, that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

2-1-18
DATE

Rafeeq Jaber

**VERIFICATION**

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Osama Abuirshaid, that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

3/2/18
DATE

Osama Abuirshaid

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Abdelbaset Hamayel, that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

3.2.18
DATE

Abdelbaset Hamayel

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Rafeeq Jaber, that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

2-1-18
DATE

Rafeeq Jaber

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABURISHAID, | Hon. Sidney I. Schenkier |
| Defendants. | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' JURISDICTION INTERROGATORIES TO DEFENDANTS AMERICAN MUSLIMS FOR PALESTINE AND AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION**

Defendants American Muslims for Palestine ("AMP") and Americans for Justice in Palestine Educational Foundation ("AJP") file these Objections and Responses to Plaintiffs' Jurisdiction Interrogatories, as set forth below.

**GENERAL OBJECTIONS**

Defendants assert the following General Objections and qualifications to Plaintiffs' Jurisdiction Interrogatories, each of which are hereby incorporated into the responses to each individual interrogatory below. A specific response may repeat a general objection for emphasis or some other reason, but the failure to include general objections in any specific response does not waive any general objections to that request.

1. Defendants object to the Interrogatories (including the "Instructions" and "Definitions") to the extent that they impose obligations on Defendants beyond those required by the Federal Rules of Civil Procedure.

2. Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," in that they purport to impose requirements or discovery obligations greater than or different from those under the applicable Rules and Orders of this Court, which only permitted discovery limited in scope to assess subject matter jurisdiction and subject matter jurisdiction alone.

3. Defendants object to the Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," to the extent that, as written, Plaintiffs seek information that invades the privacy of individuals and/or entities who are not parties to this lawsuit or the original "*Boim* Action." Defendants further object to Plaintiffs' use of "Network Entity" and "Network Person" throughout these Interrogatories as implying relationships and/or organizational overlap which does not exist between the Defendants in this matter and any other entity listed in Plaintiffs' creation entitled "Network Entity" and "Network Person," and which do not pertain to the instant matter or any jurisdictional issue in this matter. Furthermore, majority of the entities listed in Plaintiffs' definition of "Network Entity" (including "American Middle East League for Palestine; Anera; Baitulmaal, Inc.; Benevolence International Foundation; Global Relief Foundation; Helping Hands for Relief and Development; Hamas; ICNA Relief; IHH Humanitarian Relief Foundation; Islamic Relief Foundation; Interpal; KindHearts; Life for Relief and Development; Middle East Financial Services; The Mosque Foundation (or Bridgeview Mosque); Muslim American Society; the Muslim Brotherhood;

Palestinian Children's Relief Fund; any branch of the Palestine Committee; Union of Good; United Muslim Relief; Unlimited Friends Association for Social Development; Viva Palestina; Zakat Foundation of America" and "any charitable, humanitarian, political or educational organization in Gaza or the West Bank; and any branch of the acting governmental authorities in Gaza or the West Bank") are not defendants in this matter and were not judgment defendants in the original Boim action filed in 2000. The same is true of those identified in Plaintiffs' definition of "Network Person" (including "Khaled Abughazaleh; Omar Ahmad; Nihad Awad; Shukri Abu Baker; Muhammad Alkik; Hatem Bazian; Khalil Demir (also known Halil Demir); Sana'a Abed Daoud; Salah Daoud; Ghassan Elashi; George Galloway; Sheikh Mohammad Al Hanooti; Oussama Jamal; Sheikh Bassam Jarrar; Ayman Jarwan; Hussein al-Khatib; Khalil al-Khaya; Mousa Abu Marzook; Mohammad El-Mezain; Kifah Mustapha; Sufian Nabhan; Ashraf Nubani; Magdi Odeh; Yusuf Qaradawi; Mohamed Qatanani; Nabil Sadoun; Sheikh Jamal Said, Ra' ed Sal ah; Sabri Samirah; Salah Sarsour; Yousef Shahin; Khaled Smaili" and "any representative or affiliate of a Network Entity"). Therefore, Defendants object that Plaintiffs wrongfully attempt to "brand[] any organization and its members that support humanitarian interests for the people of Palestine as having an unlawful motive" and therefore as somehow being indebted to Plaintiffs and under the control of the Defendants in this matter. *See* Doc. 41, Memorandum Opinion and Order granting Motion to Dismiss, at 10.

4. Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to usages applicable to the terms "Respondent" or "affiliate," to the extent that that they are vague, ambiguous, and overly broad, as used throughout these Requests not intelligible in the context of the applicable Request.

5. Defendants object to the "Instructions" and "Definitions" to the extent that they purport to extend the meaning of terms beyond their intended meaning and scope, thus rendering the requests overbroad, unduly burdensome, or oppressive in light of the require proportionality analysis.

6. Defendants object to these Interrogatories to the extent they seek documents or electronically stored information that are protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other applicable privilege. If any such disclosure occurs, it is inadvertent and shall not constitute a waiver of privileges.

7. Defendants object to these Interrogatories to the extent that they seek to require Defendants to obtain information from third parties.

8. It should not be inferred from the form or substance of any objection or response that documents or electronically stored information responsive to any particular Interrogatory exist.

9. Defendants do not intend by these Objections and Responses to waive any claim of privilege or immunity. Defendants' Objections and Responses are conditioned specifically on the understanding that the provision of documents or electronically stored information for which any claim of privilege is applicable shall be deemed inadvertent. An inadvertent disclosure shall not constitute – and is in no way intended as – a waiver of any privilege or any other ground for objecting to such discovery with respect to such document, electronically stored information, the subject matter thereof, or the information contained therein. Any inadvertent disclosure by Defendants shall not constitute a waiver of the Defendants' right to object to the use of any such document, electronically stored information, the information contained therein, or any information derived therefrom, during any other proceeding.

## SPECIFIC RESPONSES AND OBJECTIONS

1. Identify all persons who have knowledge of the issues and factual assertions raised in defendants' motion to dismiss for alleged lack of subject matter jurisdiction [Dkt 31] filed in this case.

   **Response**: See individuals identified in previous court filings, declarations provided with the same and documents produced with these discovery Responses. See also this Court's Order finding no subject matter jurisdiction.


2. Identify all persons who may provide testimony or declarations in connection with any motion or hearing to determine or challenge the existence of the Court's subject matter jurisdiction in this case. For each, identify the person's anticipated testimony and all facts or information pertinent to the Court's subject matter jurisdiction upon which the person would be competent to testify.

   **Response**: Objection. This Interrogatory is overly broad in that it seeks to require the Defendants to provide an entire defense in response to one Interrogatory, and as such constitutes an improper fishing expedition. Furthermore, this Interrogatory seeks information which is covered by the attorney client and work product privileges to the extent it seeks designation of all persons "who may provide testimony or declarations" as stated above, and further exceeds the scope of this Court's order for this discovery. Subject to these objections, Defendants respond as follows:

   See prior filings and attachments, as well as documents produced in response to Plaintiffs' jurisdictional discovery. The Individual Defendants, reachable through designated counsel, have already provided Declarations in this matter, and Defendants refer Plaintiffs to those Declarations

which have already been filed and produced in this matter. Defendants do not foresee a need for further briefing or Declarations on the issue.

3. For each year from Respondent's inception forward, identify: all members of Respondent's board of directors or other governing body; Respondent's officers and other employees; and all chapters, offices, locations, affiliates, regional operations and divisions of Respondent that exist or have existed at any time.

**Response**: Objection. Defendants object to this Request as vague as to "Respondent", overly broad, not reasonably limited in time and scope, and therefore not reasonably calculated to lead to the discovery of admissible evidence, as well as exceeding the scope of this Court's order for this discovery. Subject to the foregoing objections, Defendants respond as follows:

See documents produced with the responses to these Requests. Defendants will supplement if additional information or documents are discovered. The below are past and present employees of AJP:

- Awad Odeh
- Julia Salameh
- Amira Daoud
- Kristin Szremski
- Taher Herzallah (current employee)
- Arwa Abdallah
- Karima Al-Helow
- Mohammad Suleiman
- Izabela Banka
- Rami Blebel
- Kareem El-Hosseiny (current employee)
- Diana Galbraith
- Iyas Abuhasna
- Rima Najjar
- Alaa Abubaker
- Rammie Ashkar
- Leena Kaheil (current contractor)
- Mariam Aldisi (current employee)

4. Describe the structure and hierarchy of Respondent, including the leadership and reporting structure, and the responsibilities of each officer, manager and employee. If the structure or hierarchy has changed over time since Respondent's inception, describe and provide the dates and nature of the changes.

**Response**: Objection. Defendants object to this Request as vague as to "Respondent." Subject to this objection, Defendants respond as follows:

AMP and AJP are small non-profit entities, which do not have the detailed organizational structure as some larger entities might. To the extent documents have been retained in the normal course of business, please see documents produced in conjunction with these Responses, which set forth the answers to this Interrogatory.

5. Describe the creation and formation of Respondent. In your description, identify the date and place of Respondent's incorporation; any voluntary or unincorporated organizations that pre-existed the formation of Respondent; all persons involved in the incorporation or creation of Respondent and any precursor organization; and all documents related to the formation of Respondent and any precursor organization.

**Response**: Objection. Defendants object to this Request as vague as to "Respondent." Defendants further object to the term "precursor organization."  Subject to this objection, Defendants respond as follows:

AMP and AJP are small non-profit entities, which do not have the detailed organizational structure as some larger entities might. For responsive information and to the extent documents have been retained in the normal course of business, please see documents produced in conjunction with these Responses.  Furthermore, there are no "precursor entities" to AJP or AMP.

6. List all physical addresses (with office suite numbers) where Respondent has at any time

   maintained offices or conducted operations, including locations used by any chapter,

   regional office, division, affiliate organization or representative of Respondent.

   **Response**: Objection. Defendants object to this Request as vague as to "Respondent."

   Defendants further object to the terms "chapter, regional office, division, affiliate

   organization or representative of Respondent." Subject to these objections, Defendants

   respond as follows:

   > AJP c/o
   > Hatem Al-Bazian
   > 2801 Telegraph Ave
   > Berkeley, CA 94705
   >
   > AMP-Chicago
   > 6424 West Belmont Ave
   > Chicago, IL 60634
   >
   > AMP/AJP
   > 10101 S. Roberts Rd.
   > Palos Hills, IL 60465
   >
   > AMP/AJP
   > 10063 S. 76th Ave.
   > Bridgeview, IL 60455
   >
   > AMP-DC Office
   > 717 D. St NW
   > Washington, D.C. 200024
   > AJP/AMP
   > 6404 Seven Corners Place St. N
   > Falls Church, VA 22044
   >
   > AMP-NJ office
   > 9028 Palisade Plaza
   > North Bergen, NJ 07047

7. Identify all Assets that were at any time owned or possessed by any *Boim* Defendant and were later received (directly or indirectly) or came to be possessed or owned by Respondent.

   **Response**: Objection. Defendants object to this Request as vague as to "Respondent." Subject to the foregoing objections, Defendants respond as follows:

   None.

8. Identify all relationships, affiliations, sharing of leadership or personnel, contracts, dealings, communications, sponsorship, support, or transfers of funds (directly or through intermediate organizations) between Respondent and any Network Entity or Network Person.

   **Response**: Objection. Defendants object to the characterization of "Network Entity" and "Network Person" in Plaintiffs' definitions, as set forth in Defendants' General Objections and referenced herein, and will not accept or respond as to the term and definition given. Further, Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. As such, Defendants cannot provide a meaningful response to this Interrogatory, other than to refer back to Defendants' Response to Interrogatory No. 7, above, and state further that neither AMP nor AJP have at any time shared any contracts or received any transfer of funds from any judgment debtor from the original *Boim* action filed in 2000.

9. Identify all persons, entities or organizations to which Respondent has provided funding for or support for fundraising (including without limitation by direct funding, promotion at conferences and events, booths at conferences, advertisements, website links or solicitations).

**Response***: Objection. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. Furthermore, this Interrogatory seeks to invade the privacy rights of individuals not a party to this lawsuit, and seeks information which is confidential and proprietary as to the operating of AMP and AJP. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants provide an educational role and raise awareness about Palestine, as stated in AMP and AJP's respective mission statements and as reflected in the documents produced with Defendants' Objections and Responses to Requests for Production.

10. Identify all donors, sponsors or funders of Respondent (including any chapter, regional office or affiliate of Respondent). For each, indicate the amount and date(s) of the funding and whether, to Respondent's knowledge, the donor, sponsor or funder ever provided funds to any *Boim* Defendant.

**Response***: Objection. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. Furthermore, this Interrogatory invades the privacy rights of individuals who are not parties to this

litigation, and seeks information which is proprietary and confidential as to AJP and AMP. In addition, AJP and AMP do not have access to records of the original *Boim* judgment debtors.

11. Identify all speakers, presenters and moderators who have appeared at any conference, meeting or other event conducted or sponsored by Respondent.

**Response**: <u>Objection</u>. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery.

12. Identify any website, blog, social media account, or internet domain name owned, controlled, created or maintained by or on behalf of Respondent at any time. For each, identify all persons who administer, manage, edit, supervise, or provide content; identify any associated domain name, username, or URL; and identify all persons who have authority to post, delete, alert or supplement the content.

**Response**: <u>Objection</u>. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. Furthermore, Defendants object to the extent this Interrogatory seeks information which is confidential and proprietary in nature, and may invade the privacy rights of individuals not a party to this lawsuit. Subject to the foregoing objections, Defendants respond as follows:

The domains ampalestine.org, ampalestine.com and ampalestine.net have been registered to AMP.

Dated this 5th day of March, 2018.

*/s/ Christina Jump*
Chares D. Swift
Texas Bar No. 24091964
Christina A. Jump
Texas Bar No. 00795828
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454
*Pro Hac Attorney for Defendants*

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

On March 5, 2018, I served these Objections and Responses on all attorneys of record via email.

.

*/s/ Christina Jump*
Christina A. Jump

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am authorized to sign on behalf of the Defendant in this matter, American Muslims for Palestine, Inc., that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

03/02/18
DATE

Name: Munjed Ahmad
For American Muslims for Palestine, Inc.

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am authorized to sign on behalf of the Defendant in this matter, AJP Educational Foundation, Inc., that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

03/02/18
DATE

Name: Munjed Ahmad
For AJP Educational Foundation, Inc.

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am authorized to sign on behalf of the Defendant in this matter, American Muslims for Palestine, Inc., that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

03/02/18
DATE

Name: Munjed Ahmad
For American Muslims for Palestine, Inc.

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am authorized to sign on behalf of the Defendant in this matter, AJP Educational Foundation, Inc., that I have read the foregoing Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

03/02/18
DATE

Name: Munjed Ahmad
For AJP Educational Foundation, Inc.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABURISHAID, | Hon. Sidney I. Schenkier |
| Defendants. | |

**DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS'
JURISDICTION INTERROGATORIES TO DEEFNDANTS RAFEEO JABER,
ABDELBASET HAMAYEL AND OSAMA ABUIRSHAID**

Defendants Rafeeq Jaber ("Jaber"), Abdelbaset Hamayel ("Hamayel"), and Osama Abuirshaid ("Abuirshaid") ("Individual Defendants") file these Objections and Responses to Plaintiffs' Jurisdiction Interrogatories, as set forth below.

**GENERAL OBJECTIONS**

Defendants assert the following General Objections and qualifications to Plaintiffs' Jurisdiction Interrogatories, each of which are hereby incorporated into the responses to each individual interrogatory below. A specific response may repeat a general objection for emphasis or some other reason, but the failure to include general objections in any specific response does not waive any general objections to that request.

1. Defendants object to the Interrogatories (including the "Instructions" and "Definitions") to the extent that they impose obligations on Defendants beyond those required by the Federal

Rules of Civil Procedure.

2.      Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," in that they purport to impose requirements or discovery obligations greater than or different from those under the applicable Rules and Orders of this Court, which only permitted discovery limited in scope to assess subject matter jurisdiction and subject matter jurisdiction alone.

3.      Defendants object to the Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," to the extent that, as written, Plaintiffs seek information that invades the privacy of individuals and/or entities who are not parties to this lawsuit or the original "*Boim* Action." Defendants further object to Plaintiffs' use of "Network Entity" and "Network Person" throughout these Interrogatories as implying relationships and/or organizational overlap which does not exist between the Defendants in this matter and any other entity listed in Plaintiffs' creation entitled "Network Entity" and "Network Person," and which do not pertain to the instant matter or any jurisdictional issue in this matter. Furthermore, majority of the entities listed in Plaintiffs' definition of "Network Entity" (including "American Middle East League for Palestine; Anera; Baitulmaal, Inc.; Benevolence International Foundation; Global Relief Foundation; Helping Hands for Relief and Development; Hamas; ICNA Relief; IHH Humanitarian Relief Foundation; Islamic Relief Foundation; Interpal; KindHearts; Life for Relief and Development; Middle East Financial Services; The Mosque Foundation (or Bridgeview Mosque); Muslim American Society; the Muslim Brotherhood; Palestinian Children's Relief Fund; any branch of the Palestine Committee; Union of Good; United Muslim Relief; Unlimited Friends Association for Social Development; Viva Palestina; Zakat Foundation

of America" and "any charitable, humanitarian, political or educational organization in Gaza or the West Bank; and any branch of the acting governmental authorities in Gaza or the West Bank") are not defendants in this matter and were not judgment defendants in the original Boim action filed in 2000. The same is true of those identified in Plaintiffs' definition of "Network Person" (including "Khaled Abughazaleh; Omar Ahmad; Nihad Awad; Shukri Abu Baker; Muhammad Alkik; Hatem Bazian; Khalil Demir (also known Halil Demir); Sana'a Abed Daoud; Salah Daoud; Ghassan Elashi; George Galloway; Sheikh Mohammad Al Hanooti; Oussama Jamal; Sheikh Bassam Jarrar; Ayman Jarwan; Hussein al-Khatib; Khalil al-Khaya; Mousa Abu Marzook; Mohammad El-Mezain; Kifah Mustapha; Sufian Nabhan; AshrafNubani; Magdi Odeh; Yusuf Qaradawi; Mohamed Qatanani; Nabil Sadoun; Sheikh Jamal Said, Ra' ed Sal ah; Sabri Samirah; Salah Sarsour; Yousef Shahin; Khaled Smaili" and "any representative or affiliate of a Network Entity"). Therefore, Defendants object that Plaintiffs wrongfully attempt to "brand[] any organization and its members that support humanitarian interests for the people of Palestine as having an unlawful motive" and therefore as somehow being indebted to Plaintiffs and under the control of the Defendants in this matter. *See* Doc. 41, Memorandum Opinion and Order granting Motion to Dismiss, at 10.

4.      Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to usages applicable to the terms "Respondent" or "affiliate," to the extent that that they are vague, ambiguous, and overly broad, as used throughout these Requests not intelligible in the context of the applicable Request.

5.      Defendants object to the "Instructions" and "Definitions" to the extent that they purport to extend the meaning of terms beyond their intended meaning and scope, thus rendering the requests overbroad, unduly burdensome, or oppressive in light of the require proportionality analysis.

6.      Defendants object to these Interrogatories to the extent they seek documents or electronically stored information that are protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other applicable privilege. If any such disclosure occurs, it is inadvertent and shall not constitute a waiver of privileges.

7.      Defendants object to these Interrogatories to the extent that they seek to require Defendants to obtain information from third parties.

8.      It should not be inferred from the form or substance of any objection or response that documents or electronically stored information responsive to any particular Interrogatory exist.

9.      Defendants do not intend by these Objections and Responses to waive any claim of privilege or immunity. Defendants' Objections and Responses are conditioned specifically on the understanding that the provision of documents or electronically stored information for which any claim of privilege is applicable shall be deemed inadvertent. An inadvertent disclosure shall not constitute - and is in no way intended as - a waiver of any privilege or any other ground for objecting to such discovery with respect to such document, electronically stored information, the subject matter thereof, or the information contained therein. Any inadvertent disclosure by Defendants shall not constitute a waiver of the Defendants' right to object to the use of any such document, electronically stored information, the information contained therein, or any information derived therefrom, during any other proceeding.

## SPECIFIC RESPONSES AND OBJECTIONS

1. Identify all persons who have knowledge of the issues and factual assertions raised in defendants' motion to dismiss for alleged lack of subject matter jurisdiction [Dkt 31] filed in this case.

   **Response**: See individuals identified in Defendants' previous court filings, as well as the declarations provided by Individual Defendants with the same, and documents produced in response to Plaintiffs' requests for production labeled 0000006 – 0000030; 0000034; 0000051; 0000056; 002573 – 002579; 002581; and 004135 -- 004409. See also Declaration of Munjed Ahmad (previously produced) and documents referenced therein, as well as this Court's Order finding no subject matter jurisdiction.

2. Identify all persons who may provide testimony or declarations in connection with any motion or hearing to determine or challenge the existence of the Court's subject matter jurisdiction in this case. For each, identify the person's anticipated testimony and all facts or information pertinent to the Court's subject matter jurisdiction upon which the person would be competent to testify.

   **Response**: Objection. This Interrogatory is overly broad in that it seeks to require the Individual Defendants to provide an entire defense in response to one Interrogatory, and as such constitutes an improper fishing expedition. Furthermore, this Interrogatory seeks information which is covered by the attorney client and work product privileges to the extent it seeks designation of all persons "who may provide testimony or declarations" as stated above, and further exceeds the scope of this Court's order for this discovery. Subject to these objections, Individual Defendants respond as follows:

As Plaintiffs know, Declarations by each Individual Defendant have been provided in this matter to the Court and to Plaintiffs with the previous filings. Individual Defendants do not currently foresee a need for further briefing or Declarations on these issues, though reserve the right to supplement as may be needed for rebuttal purposes. Please also see Declaration of Munjed Ahmad, previously produced, and documents referenced therein, as well as documents produced in this matter and bates labeled 004135 -- 004409.

3. Identify all Assets that were at any time owned or possessed by any *Boim* Defendant and were later received (directly or indirectly) or came to be possessed or owned by Respondent

**Response**:

No assets owned or possessed by any *Boim* 2000 judgment defendant have ever been received, possessed or owned by the Individual Defendants in this matter, other than as payment for work performed for paid services during the existence of IAP and/or AMS (prior to 2004) as referenced in the Declarations of the Individual Defendants. Regarding Defendant Jaber, please also see transcripts of depositions of Rafeeq Jaber for detailed inquiry and answers already obtained by Plaintiffs regarding the distribution of the assets of IAP and AMS, if any, and the dissolution of IAP and AMS. Those deposition transcripts are already in Plaintiffs' possession.

4. Identify any website, blog, social media account, or internet domain name owned, controlled, created or maintained by or on behalf of Respondent at any time that has contained content relating to any *Boim* Defendant or any Entity

Defendant. For each, identify any associated domain name, username, or URL.

**Response**: Objection. Individual Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent" or "Entity Defendant", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeds the scope of this Court's order for this discovery. Individual Defendants further object to this Interrogatory to the extent it seeks any private social media accounts of the Individual Defendants, as an invasion of their privacy rights, and which are further not reasonably calculated to lead to the discovery of admissible evidence regarding the limited jurisdictional scope of the discovery authorized by this Court or any legitimate jurisdictional issue. Subject to the foregoing objections, please see documents 0000069 – 0000276 and documents 000457-002558 which have been produced in response to Plaintiffs' Requests for Production, and which contain the readily available social media documents related to AMP and/or AJP. The domains ampalestine.org, ampalestine.com and ampalestine.net have been registered to AMP. AMP has a Twitter page (https://twitter.com/ampalestine or @AMPalestine), a Facebook page (https://www.facebook.com/ampalestine), and a YouTube channel (located at https://www.youtube.com/channel/UCBnEIF7dfTEflZ7rmHWkfcA). Defendants note that the AMP website was hacked on at least one occasion in or around March 2014. Defendants lastly note that these website and social media accounts are publicly available and may be easily accessed by Plaintiffs. Nonetheless, please also note the full archives of the relevant Twitter and Facebook accounts, as well as relevant historic website pages produced in this matter in response to Plaintiffs' Requests for Production

of Documents in this matter and bates labeled 002661 – 004409 as well as separately

produced zip files (which have at no time been in the possession of the Individual

Defendants).

5.  To the extent not covered in your declaration supporting defendants' motion to

dismiss, state the date and place of your birth, list all places (cities and countries) in

which you have resided at any time, state when you first moved to the United

States, and provide dates of all of your travel to the United States prior to

December 31, 1996.

**Response**: Objection. Individual Defendants object to this Interrogatory as overly

broad, not reasonably limited in time and scope, an invasion of personal privacy as

written, and not reasonably calculated to lead to the discovery of admissible

evidence, and exceeding the scope of this Court's order for this limited discovery.

Subject to the foregoing objections, Individual Defendants respond as follows:

For responsive relevant information, see Declarations of Individual Defendants

provided previously in this matter and on file with the Court in this matter for relevant

factual summaries, as well as transcripts of the depositions of Rafeeq Jaber previously

taken by Plaintiffs, which are already in Plaintiffs' possession.  Please also see

Declaration of Munjed Ahmad, previously produced and to the extent relevant

regarding the lack of involvement of the Individual Defendants in the formation of

AMP and AJP.

6.  To the extent not covered in your declaration supporting defendants' motion to

dismiss, identify and describe any relationship, employment, volunteer role, officer

or director position, affiliation, communication, speaking engagement, or other

dealings you had with any Network Entity at any time. Include in your description the dates during which you held any position, your title, your responsibilities, the person(s) to whom you reported, any compensation you received and the person or entity who paid the compensation.

**Response**: Objection. Individual Defendants object to this Interrogatory as to the characterization of "Network Entity" and "Network Person" in Plaintiffs' definitions, refer to Defendants' General Objections regarding the same, and will not accept or respond as to the term and definition given. Further, Individual Defendants object to this Interrogatory as vague in that it is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and exceeding the scope of this Court's order for this discovery. Subject to the foregoing objections, Individual Defendants respond as follows:

All relevant employment and volunteer history with AJP, AMP, and any 2000 *Boim* defendant is set forth in the Declarations of Individual Defendants previously provided in this matter. As to any responsive, non-objectionable supporting documentation produced in this matter, please see documents 0000006 – 0000030; 0000034; 0000051; 0000056; 002573 – 002579; 002581 and 004135 -- 004409, which have already been produced in response to Plaintiffs' requests for production. Please also see Declaration of Munjed Ahmad, previously produced in this matter, and documents referenced therein, as well as the supplemental production in this matter of relevant Twitter and Facebook full archives, and relevant historic website data produced in this matter (which have at no time been in the custody and control of any Individual Defendant).

7. Identify all relationships, dealings and communications between Respondent and any Network Entity or Network Person.

   **Response**: Objection. Individual Defendants object to this Interrogatory as to the characterization of "Network Entity" and "Network Person" in Plaintiffs' definitions and will not accept or respond as to the term and definition given. Further, Individual Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and exceeds the scope of this Court's order for this discovery. As such, Individual Defendants are not able to provide a response to this Interrogatory. Nonetheless, as to any relevant positions the Individual Defendants have or had with AJP and AMP, as well as any 2000 *Boim* judgment defendants, please see previously provided Declarations of the Individual Defendants, as well as relevant incorporation documents as to AJP and AMP produced previously in this matter. Please also see Declaration of Munjed Ahmad and full historic archives of the relevant Twitter and Facebook pages, as well as relevant historic pages from the relevant website (which have at no time been in the custody and control of any Individual Defendant).

8. For defendant Osama Abu Irshaid [sic] only, with respect to your attendance and participation at any Conference for Palestinians Abroad ("PalesAbroad"), including the PalesAbroad event in Istanbul in February 2017, and the PalesAbroad event in Amman, Jordan, identify: the person(s) or organization(s) who invited you to attend or participate; the person(s) or organization(s) who paid for the trip (or any portion thereof); and any speech or remarks you gave during the trip.

**Response**: <u>Objection</u>. Individual Defendants object to this Interrogatory as overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and exceeding the scope of this Court's order for this discovery.

Dated this 10th day of April, 2018.

*/s/ Christina Jump*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

On April 10, 2018, I electronically provided a copy of these Amended Objections and Responses to all attorneys of record via email.

*/s/ Christina Jump*
Christina A. Jump

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Abdelbaset Hamayel, that I have read the foregoing Amended Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

4/6/18

DATE

Abdelbaset Hamayel

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Rafeeq Jaber, that I have read the foregoing Amended Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

4-5-18
DATE

Rafeeq Jaber

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Illinois that I am a Defendant in this matter, Osama Abuirshaid, that I have read the foregoing Amended Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

4/5/18
DATE

Osama Abuirshaid

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABURISHAID, | Hon. Sidney I. Schenkier |
| Defendants. | |

**DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' JURISDICTION INTERROGATORIES TO DEFENDANTS AMERICAN MUSLIMS FOR PALESTINE AND AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION**

Defendants American Muslims for Palestine ("AMP") and Americans for Justice in Palestine Educational Foundation ("AJP") file these Amended Objections and Responses to Plaintiffs' Jurisdiction Interrogatories, as set forth below.

## GENERAL OBJECTIONS

Defendants assert the following General Objections and qualifications to Plaintiffs' Jurisdiction Interrogatories, each of which are hereby incorporated into the responses to each individual interrogatory below. A specific response may repeat a general objection for emphasis or some other reason, but the failure to include general objections in any specific response does not waive any general objections to that request.

1. Defendants object to the Interrogatories (including the "Instructions" and "Definitions") to the extent that they impose obligations on Defendants beyond those required by the Federal Rules of Civil Procedure.

2. Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," in that they purport to impose requirements or discovery obligations greater than or different from those under the applicable Rules and Orders of this Court, which only permitted discovery limited in scope to assess subject matter jurisdiction and subject matter jurisdiction alone.

3. Defendants object to the Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to the definitions applicable to "Network Entity" and "Network Person," to the extent that, as written, Plaintiffs seek information that invades the privacy of individuals and/or entities who are not parties to this lawsuit or the original "*Boim* Action." Defendants further object to Plaintiffs' use of "Network Entity" and "Network Person" throughout these Interrogatories as implying relationships and/or organizational overlap which does not exist between the Defendants in this matter and any other entity listed in Plaintiffs' creation entitled "Network Entity" and "Network Person," and which do not pertain to the instant matter or any jurisdictional issue in this matter. Furthermore, majority of the entities listed in Plaintiffs' definition of "Network Entity" (including "American Middle East League for Palestine; Anera; Baitulmaal, Inc.; Benevolence International Foundation; Global Relief Foundation; Helping Hands for Relief and Development; Hamas; ICNA Relief; IHH Humanitarian Relief Foundation; Islamic Relief Foundation; Interpal; KindHearts; Life for Relief and Development; Middle East Financial Services; The Mosque Foundation (or Bridgeview Mosque); Muslim American Society; the Muslim Brotherhood;

Palestinian Children's Relief Fund; any branch of the Palestine Committee; Union of Good; United Muslim Relief; Unlimited Friends Association for Social Development; Viva Palestina; Zakat Foundation of America" and "any charitable, humanitarian, political or educational organization in Gaza or the West Bank; and any branch of the acting governmental authorities in Gaza or the West Bank") are not defendants in this matter and were not judgment defendants in the original Boim action filed in 2000. The same is true of those identified in Plaintiffs' definition of "Network Person" (including "Khaled Abughazaleh; Omar Ahmad; Nihad Awad; Shukri Abu Baker; Muhammad Alkik; Hatem Bazian; Khalil Demir (also known Halil Demir); Sana'a Abed Daoud; Salah Daoud; Ghassan Elashi; George Galloway; Sheikh Mohammad Al Hanooti; Oussama Jamal; Sheikh Bassam Jarrar; Ayman Jarwan; Hussein al-Khatib; Khalil al-Khaya; Mousa Abu Marzook; Mohammad El-Mezain; Kifah Mustapha; Sufian Nabhan; Ashraf Nubani; Magdi Odeh; Yusuf Qaradawi; Mohamed Qatanani; Nabil Sadoun; Sheikh Jamal Said, Ra' ed Sal ah; Sabri Samirah; Salah Sarsour; Yousef Shahin; Khaled Smaili" and "any representative or affiliate of a Network Entity"). Therefore, Defendants object that Plaintiffs wrongfully attempt to "brand[] any organization and its members that support humanitarian interests for the people of Palestine as having an unlawful motive" and therefore as somehow being indebted to Plaintiffs and under the control of the Defendants in this matter. *See* Doc. 41, Memorandum Opinion and Order granting Motion to Dismiss, at 10.

4. Defendants object to these Interrogatories, as well as the "Instructions" and "Definitions," including but not limited to usages applicable to the terms "Respondent" or "affiliate," to the extent that that they are vague, ambiguous, and overly broad, as used throughout these Requests not intelligible in the context of the applicable Request.

5. Defendants object to the "Instructions" and "Definitions" to the extent that they purport to extend the meaning of terms beyond their intended meaning and scope, thus rendering the requests overbroad, unduly burdensome, or oppressive in light of the require proportionality analysis.

6. Defendants object to these Interrogatories to the extent they seek documents or electronically stored information that are protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other applicable privilege. If any such disclosure occurs, it is inadvertent and shall not constitute a waiver of privileges.

7. Defendants object to these Interrogatories to the extent that they seek to require Defendants to obtain information from third parties.

8. It should not be inferred from the form or substance of any objection or response that documents or electronically stored information responsive to any particular Interrogatory exist.

9. Defendants do not intend by these Objections and Responses to waive any claim of privilege or immunity. Defendants' Objections and Responses are conditioned specifically on the understanding that the provision of documents or electronically stored information for which any claim of privilege is applicable shall be deemed inadvertent. An inadvertent disclosure shall not constitute – and is in no way intended as – a waiver of any privilege or any other ground for objecting to such discovery with respect to such document, electronically stored information, the subject matter thereof, or the information contained therein. Any inadvertent disclosure by Defendants shall not constitute a waiver of the Defendants' right to object to the use of any such document, electronically stored information, the information contained therein, or any information derived therefrom, during any other proceeding.

## SPECIFIC RESPONSES AND OBJECTIONS

1. Identify all persons who have knowledge of the issues and factual assertions raised in defendants' motion to dismiss for alleged lack of subject matter jurisdiction [Dkt 31] filed in this case.

   **Response**: See individuals identified in previous court filings, declarations provided with the same and documents produced in response to Plaintiffs' requests for production (documents 0000006 – 0000030; 0000034; 0000051; 0000056; 002573 – 002579; 002581; 004135 -- 004409). See also Declaration of Munjed Ahmad, previously produced, and documents referenced therein, as well as this Court's Order finding no subject matter jurisdiction.

2. Identify all persons who may provide testimony or declarations in connection with any motion or hearing to determine or challenge the existence of the Court's subject matter jurisdiction in this case. For each, identify the person's anticipated testimony and all facts or information pertinent to the Court's subject matter jurisdiction upon which the person would be competent to testify.

   **Response**: <u>Objection</u>. This Interrogatory is overly broad in that it seeks to require the Defendants to provide an entire defense in response to one Interrogatory, and as such constitutes an improper fishing expedition. Furthermore, this Interrogatory seeks information which is covered by the attorney client and work product privileges to the extent it seeks designation of all persons "who may provide testimony or declarations" as stated above, and further exceeds the scope of this Court's order for this discovery. Subject to these objections, Defendants respond as follows:

   See prior filings and attachments, as well as documents produced in response to

Plaintiffs' requests for production (documents 0000006 – 0000030; 0000034; 0000051; 0000056; 002573 – 002579; 002581; 004135 -- 004409). The Individual Defendants, reachable through designated counsel, have already provided Declarations in this matter, and Defendants refer Plaintiffs to those Declarations which have already been filed and produced in this matter. Please also see Declaration of Munjed Ahmad, previously produced in this matter, and documents referenced therein. Defendants do not foresee a need for further briefing or Declarations on the issue.

3. For each year from Respondent's inception forward, identify: all members of Respondent's board of directors or other governing body; Respondent's officers and other employees; and all chapters, offices, locations, affiliates, regional operations and divisions of Respondent that exist or have existed at any time.

**Response**_: Objection_. Defendants object to this Request as vague as to "Respondent", overly broad, not reasonably limited in time and scope, and therefore not reasonably calculated to lead to the discovery of admissible evidence, as well as exceeding the scope of this Court's order for this discovery. Subject to the foregoing objections, Defendants respond as follows:

See documents produced with the responses to Plaintiffs' requests for production (0000006 – 0000030; 0000034; 0000051; 0000056; 002573 – 002579; 002581; 004135 -- 004409) as well as full archives of relevant Twitter and Facebook accounts and relevant historic website pages, produced herein. Defendants will supplement if additional information or documents are discovered.

Per the produced by-laws and other referenced documents produced, the Officers and

Board members of AJP at inception were:

- Hatem Al-Bazien, President
- Munjed Ahmed, Treasurer and Vice President
- Sandy Stephan, Secretary
- Board members:
  - Hatem Al-Bazian
  - Munjed Ahmed
  - Hussein Khatib
  - Osama Abuirshaid
  - Salah Sarsour
  - Shakeel Syed

AMP has not had employees historically.  The below are past and present employees

of AJP:

- Awad Odeh
- Julia Salameh
- Amira Daoud
- Kristin Szremski
- Taher Herzallah (current employee)
- Arwa Abdallah
- Karima Al-Helow
- Mohammad Suleiman
- Izabela Banka
- Rami Blebel
- Kareem El-Hosseiny (current employee)
- Diana Galbraith
- Iyas Abuhasna
- Rima Najjar
- Alaa Abubaker
- Rammie Ashkar
- Leena Kaheil (current contractor)
- Mariam Aldisi (current employee)

In addition, AMP's 2009 filings with the Secretary of State list its officers as the following:

- Hatem  Al-Bazian
- Awad Hamdan
- Dean Salem

Furthermore, AMP's 2013 filings list the following positions at that time:

- Hatem Al-Bazian as CEO and Chief Financial Officer

- Munjed Ahmed as Secretary

In addition, as noted in the produced documents, AMP officially became a d/b/a of AJP in late 2016/early 2017, and had been functioning as such for several years prior.

Please also refer to the relevant historic website pages produced in this matter (004135 – 004409), reflecting the Board for each noted year written exactly as follows:

2009 National Board Members:

Dr. Hatem Bazyan - Chairman
Diaa Salem – Treasurer
Julia Salameh – Marketing/Outreach Chairwoman
Kristin Szremski – Media Chairwoman
Salah Sarsour – Chapter Coordinator
Sulyan Nabhan
Dr. Daad Katato
Mamon Hussein
Yousuf Shahin
Ebdelelah Nofal


2010 National Board Members:

Dr. Hatem Bazyan - Chairman
Diaa Salem – Treasurer
Salah Sarsour – Chapter Coordinator
Sulyan Nabhan
Dr. Daad Katato
Mamon Hussein
Yousuf Shahin
Ebdelelah Nofal


2011 National Board Members:

Dr. Hatem Bazyan – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sulyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib

Abdel-llah Nofal
Osama Abu Irshaid
Shakeel Sayed

2012 National Board Members:

Dr. Hatem Bazyan – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sulyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib
Abdel-llah Nofal
Osamah Abuirshaid
Shakeel Sayed

(not listed for 2013 but no changes documented)

2014 National Board Members:

Dr. Hatem Bazyan – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sulyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib
Abdel-llah Nofal
Osamah Abuirshaid
Shakeel Sayed

2015 National Board Members:

Dr. Hatem Bazyan – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sulyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib
Abdel-llah Nofal
Osamah Abuirshaid

Shakeel Sayed

2016 National Board Members:

Dr. Hatem Bazyan – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sulyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib
Abdel-llah Nofal
Osamah Abuirshaid
Shakeel Sayed

2017 National Board Members:

Dr. Hatem Bazian – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sufyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib
Abdel-llah Nofal
Dr. Osama Abuirshaid – National Policy Director
Shakeel Sayed

2018 National Board Members:

Dr. Hatem Bazian – Chairman
Munjed Ahmad – Vice Chairman
Salah Sarsour
Sufyan Nabhan
Mamon Hussein
Yousuf Shahin
Sana Daoud
Hussein Al-Khatib
Abdel-llah Nofal
Dr. Osama Abuirshaid – National Policy Director
Shakeel Sayed

4. Describe the structure and hierarchy of Respondent, including the leadership and reporting structure, and the responsibilities of each officer, manager and employee. If the structure or hierarchy has changed over time since Respondent's inception, describe and provide the dates and nature of the changes.

**Response**: Objection. Defendants object to this Request as vague as to "Respondent." Subject to this objection, Defendants respond as follows:

As noted in the document production, AJP was incorporated on November 16, 2009. AMP was incorporated on August 2, 2006 in California. AMP and AJP are small non-profit entities, which do not have the detailed organizational structure as some larger entities might. To the extent documents have been retained in the normal course of business, please see documents produced in response to Plaintiffs' requests for production (0000001 – 0000002; 0000005 – 0000068; 002573 – 002590; 004135 -- 004409), which set forth the answers to this Interrogatory and describe in detail the hierarchy and processes within AJP. AMP does not have direct employees, and currently operates and is registered as a d/b/a of AJP. Specific supporting documents regarding this are referenced in this answer, above. In addition, please see Declaration of Munjed Ahmad, previously provided, and documents referenced therein, as well as Response to Interrogatory No. 3, above.

5. Describe the creation and formation of Respondent. In your description, identify the date and place of Respondent's incorporation; any voluntary or unincorporated organizations that pre-existed the formation of Respondent; all persons involved in the incorporation or creation of Respondent and any precursor organization; and all documents related to the formation of Respondent and any precursor organization.

**Response**: <u>Objection</u>. Defendants object to this Request as vague as to "Respondent." Defendants further object to the term "precursor organization." Subject to this objection, Defendants respond as follows:

As noted in the document production, AJP was incorporated on November 16, 2009. AMP was incorporated on August 2, 2006 in California. AMP and AJP are small non-profit entities, which do not have the detailed organizational structure or records as some larger entities might. Information from formation, including emails, were not retained in the normal course of business prior to the start of this litigation. Since then, there have been no emails addressing the start of organizations other than privileged communications with counsel related to this litigation. For responsive information and to the extent documents have been retained in the normal course of business, please see documents produced in response to Plaintiffs' requests for production (0000001 – 0000002; 0000005 – 0000068; 002573 – 002590), which set forth the answers to this Interrogatory. Furthermore, there are no "precursor entities" to AJP or AMP.  In addition, please see Declaration of Munjed Ahmad, previously provided, and documents referenced therein, as well as Response to Interrogatory No. 3, above. Furthermore, there are additional documents, bates labeled 002594 – 002660 and 004410 – 004422, which will be produced upon execution of an agreed Confidentiality Order.

6. List all physical addresses (with office suite numbers) where Respondent has at any time maintained offices or conducted operations, including locations used by any chapter, regional office, division, affiliate organization or representative of Respondent.

**Response**: Objection. Defendants object to this Request as vague as to "Respondent."

Defendants further object to the terms "chapter, regional office, division, affiliate

organization or representative of Respondent" as overly broad and vague. Subject to

these objections, Defendants respond as follows:

> AJP c/o
> Hatem Al-Bazian
> 2801 Telegraph Ave
> Berkeley, CA 94705
>
> AMP-Chicago
> 6424 West Belmont Ave
> Chicago, IL 60634
>
> AMP/AJP
> 10101 S. Roberts Rd.
> Palos Hills, IL 60465
>
> AMP/AJP
> 10063 S. 76th Ave.
> Bridgeview, IL 60455
>
> AMP-DC Office 717 D. St NW
> Washington, D.C. 200024
>
> AJP/AMP
> 6404 Seven Corners Place St.
> N Falls Church, VA 22044
>
> AMP-NJ office
> 9028 Palisade Plaza
> North Bergen, NJ 07047
>
> Please also see the full archives of the relevant Twitter (002661 – 003934 and
> separately produced zip files) and Facebook accounts (003935 – 004134 and
> separately produced zip files), produced in this matter, as well as relevant
> historic website pages produced in this matter.

7. Identify all Assets that were at any time owned or possessed by any *Boim* Defendant

and were later received (directly or indirectly) or came to be possessed or owned by

Respondent.

**Response**:

None as to AMP and AJP.  As to any payments made to the Individual Defendants, see Objections and Responses to Interrogatories to Individual Defendants as well as their individual Declarations previously provided.  See also Declaration of Munjed Ahmad, previously provided, and documents referenced therein.

8. Identify all relationships, affiliations, sharing of leadership or personnel, contracts, dealings, communications, sponsorship, support, or transfers of funds (directly or through intermediate organizations) between Respondent and any Network Entity or Network Person.

**Response**: Objection. Defendants object to the characterization of "Network Entity" and "Network Person" in Plaintiffs' definitions, as set forth in Defendants' General Objections and referenced herein, and will not accept or respond as to the term and definition given. Further, Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. As such, Defendants cannot provide a meaningful response to this Interrogatory, other than to refer back to Defendants' Response to Interrogatory No. 7, above, and state further that neither AMP nor AJP have at any time shared or assumed any contracts with or received any transfer of funds from any judgment defendant from the original *Boim* action filed in 2000.

9. Identify all persons, entities or organizations to which Respondent has provided funding for or support for fundraising (including without limitation by direct funding,

promotion at conferences and events, booths at conferences, advertisements, website links or solicitations).

**Response**: <u>Objection</u>. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. Furthermore, this Interrogatory seeks to invade the privacy rights of individuals not a party to this lawsuit, and seeks information which is confidential and proprietary as to the operating of AMP and AJP. Subject to and without waiving the foregoing, Defendants respond as follows:

Defendants provide an educational role and raise awareness about Palestine, as stated in AMP and AJP's respective mission statements and as reflected in the documents produced in response to Plaintiffs' requests for production (documents 000008 – 000030; 000034; 000065; and 002573 – 002579), as well as in the Declaration of Munjed Ahmad, previously produced, and documents referenced therein, as well as the full archives of the relevant Twitter and Facebook accounts and relevant historic website pages produced in this matter.  Funds are raised and dispersed domestically, and cover expenses of AJP and AMP operations as well as the educational efforts of AJP and AMP.

10. Identify all donors, sponsors or funders of Respondent (including any chapter, regional office or affiliate of Respondent). For each, indicate the amount and date(s) of the funding and whether, to Respondent's knowledge, the donor, sponsor or funder ever provided funds to any *Boim* Defendant.

**Response***:* Objection. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. Furthermore, this Interrogatory invades the privacy rights of individuals who are not parties to this litigation, and seeks information which is proprietary and confidential as to AJP and AMP. In addition, AJP and AMP do not have access to records of the original *Boim* judgment debtors and do not know who those donors were. As indicated in previous responses, AJP and AMP did not assume, share or benefit from any contracts of any judgment defendants from the *Boim* action filed in 2000, and all donations made through AJP are done voluntarily by donors.

11. Identify all speakers, presenters and moderators who have appeared at any conference, meeting or other event conducted or sponsored by Respondent.

**Response***:* Objection. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeding the scope of this Court's order for this discovery. Subject to the foregoing objection, Defendants respond as follows:

Please see social media documents produced, which reference upcoming events. These social media documents, to the extent they have been retained in the normal course of business and since the inception of this lawsuit, have been previously produced and are largely publically available on the internet as well. Please note this

Response also incorporates the Declaration of Munjed Ahmad, previously produced, and documents referenced therein, as well as the full archives of the relevant Twitter and Facebook accounts and relevant historic website pages produced in this matter.

12. Identify any website, blog, social media account, or internet domain name owned, controlled, created or maintained by or on behalf of Respondent at any time. For each, identify all persons who administer, manage, edit, supervise, or provide content; identify any associated domain name, username, or URL; and identify all persons who have authority to post, delete, alert or supplement the content.

**Response**: Objection. Defendants object to this Interrogatory as vague in that it does not reasonably define "Respondent", is overly broad, not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence and exceeds the scope of this Court's order for this discovery. Furthermore, Defendants object to the extent this Interrogatory seeks information which is confidential and proprietary in nature, and may invade the privacy rights of individuals not a party to this lawsuit. Subject to the foregoing objections, Defendants respond as follows:

The domains ampalestine.org, ampalestine.com and ampalestine.net have been registered to AMP. AMP has a Twitter page (https://twitter.com/ampalestine or @AMPalestine), a Facebook page (https://www.facebook.com/ampalestine), and a YouTube channel (https://www.youtube.com/channel/UCBnEIF7dfTEflZ7 rmHWkfcA). Defendants note that the AMP website was hacked on at least one occasion, in or around March 2014. This has affected data retention for the website. Defendants have produced documents in response to Plaintiffs' requests for

production (documents 000069 – 000276 and 000457 – 002558), which set forth the

answers to this Interrogatory to the extent they have been retained in the normal

course of business and since the inception of this lawsuit. Defendants also note that

the website and social media accounts are publicly available and may be just as easily

accessed by Plaintiffs. Please note this Response also incorporates the Declaration of

Munjed Ahmad, previously produced, and documents referenced therein, as well as

the full archives of the relevant Twitter and Facebook accounts and relevant historic

website pages produced in this matter.

Dated this 10th day of April, 2018.

*/s/ Christina Jump*
Chares D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

On April 10, 2018, I served these Objections and Responses on all attorneys of record via email.


_/s/ Christina Jump_
Christina A. Jump

**VERIFICATION**

I declare under penalty of perjury under the laws of the State of Illinois that I am authorized to sign on behalf of the Defendant in this matter, AJP Educational Foundation, Inc., that I have read the foregoing Amended Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

04/05/2018
DATE

Name:    Munjed Ahmad
For AJP Educational Foundation, Inc.

**VERIFICATION**

I declare under penalty of perjury under the laws of the State of Illinois that I am authorized to sign on behalf of the Defendant in this matter, American Muslims for Palestine, Inc., that I have read the foregoing Amended Objections and Responses to Plaintiffs' Interrogatories, that I know the contents thereof, and that I believe them to be true and correct.

04/05/2018
_____
DATE

_____
Name:   Munjed Ahmad
For American Muslims for Palestine, Inc.

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABURISHAID, | Hon. Sidney I. Schenkier |
| Defendants. | |

## <u>DECLARATION OF MUNJED AHMAD</u>

1.     My name is Munjed Ahmad.  I am over the age of eighteen and of sound mind. I make this declaration based on my own personal knowledge.

2.     I am currently the Vice President and Treasurer for AJP Educational Foundation ("AJP"), which operates under the name American Muslims for Palestine ("AMP").

3.     I was involved in the creation of AMP in 2006, as well as the later creation of AJP in 2009.  AMP was envisioned and first discussed in the later part of 2005, beginning in approximately August 2005, and was officially created in August 2006.

4.     While I did not retain my emails on the subject from that time frame, as there was no reason to do so, I was able to locate my handwritten notes from the initial discussions about forming AMP, which are produced as bates labeled 002658 to 002660.  These notes are in my handwriting and were created by me at the time reflected therein.  As reflected in these notes, both the names "American Muslims for Palestine" and "Muslim Americans for

Palestine", or "MAP," were contemplated as names for the organization which had not yet been formed. The name AMP was the one selected, as reflected in my notes dated "4/14", which I believe to be April 14, 2006. No activities of or events by AMP took place prior to the official incorporation in August 2006.

5.   Rafeeq Jaber was not involved in the creation of AMP or AJP.

6.   Abdelbaset Hamayel was not involved in the creation of AMP or AJP.

7.   Osama Abuirshaid was not involved in the creation of AMP, and though he was involved with AMP by 2009, he was not involved in the creation of AJP.

8.   I was never involved with IAP, and did not even know of its existence in 2006.

9.   I was never involved with AMS, and did not even know of its existence in 2006.

10.  I was never involved with the Holy Land Foundation.

11.  I had no involvement in the original *Boim* lawsuit which was filed in 2000, in which I have since learned IAP, AMS and Holy Land Foundation were defendants. I was not even aware of the original *Boim* lawsuit until well after the formation of both AMP and AJP.

12.  AMP was created to educate our own youth and communities on issues and culture relating to Palestine. Eventually, this purpose grew to include educating others as well.

13.  AMP has not, at the time of its formation or any time afterwards, ever received any funds or assets which came from IAP, AMS, Holy Land Foundation or any other defendant in the original *Boim* lawsuit which was filed in 2000.

14.  AJP has not, at the time of its formation or any time afterwards, ever received any funds or assets which came from IAP, AMS, Holy Land Foundation or any other defendant in the original *Boim* lawsuit which was filed in 2000.

15.  For financial clarity and to avoid confusion, AMP ceased being its own separate entity

and became a "d/b/a" of AJP in or around late 2016/early 2017. Subsequently, appropriate documents were filed in all necessary states reflecting the change in status.

16. AMP and AJP are strictly American organizations, funded by voluntary donations made entirely within the United States. We keep the personal information of our donors confidential, and only provide it as required such as on our 990s.

17. AMP and AJP never assumed or in any way overtook any contracts or other arrangements made with IAP, AMS or Holy Land Foundation, or any other defendant in the original *Boim* lawsuit filed in 2000.

18. I hereby certify that the foregoing is true and correct to the best of my personal knowledge.

**Munjed Ahmad**

4/9/18

**Date Executed**

# EXHIBIT E



# Locke Lord LLP

**Attorneys & Counselors**

111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Allen Woolley
Partner
Direct Telephone: 312-201-2676
Direct Fax: 855-595-1188
allen.woolley@lockelord.com

April 3, 2018

<u>Via Email</u>
Christina A. Jump
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 East Arapaho Road, Suite 102
Richardson, Texas 75081
cjump@clcma.org

      Re:    *Boim, et al. v. American Muslims for Palestine, et al.*, No. 17-cv-03591
             Deficiencies in Defendants' Responses to Document Requests and Interrogatories

Dear Christina:

      We just received your flash drive containing defendants' full production up through 002593. We have not yet reviewed this material, but I understand from your March 27 e-mail that it is social media content that is already available to anyone with internet access.

      We have received and reviewed your March 27 e-mail and the productions through 000456. Based on this, it appears there still will be substantial deficiencies in defendants' responses to our written discovery, even with the additional social media material. Can you please let me know when you could be available this week by telephone for a Local Rule 37.2 conference to discuss these issues?

      The principal deficiencies we need to discuss are listed in my March 9 letter. I do not think I need to cover them again in writing ahead of the call, other than to note that the bulk of them do not yet appear to have been addressed. However, I do want to respond to your suggestion that the scope of the jurisdictional discovery authorized by the Court is limited to "the connection (if any) between AJP. AMP, Rafeeq Jaber, Abdelbaset Hamayel and/or Osama Abuirshaid, and fraudulently transferred assets (if any) of the Boim 2000 judgment defendants." This is not an accurate characterization of the Court's orders or our prior pleadings.

      We fully recognize that the Court permitted plaintiffs to conduct discovery at this juncture "on the existence of an alter ego relationship … solely to address jurisdiction." [Dkt 50] For that reason, we did not issue full-fledged written discovery, but targeted each of our written

April 3, 2018
Page 2

discovery requests at the alter ego issues discussed in plaintiffs' initial complaint and the Court's (now-vacated) August 18, 2017 Memorandum Opinion and Order. Nothing in our pleadings or the Court's opinion limited the alter ego issues to fraudulently transferred assets, as you suggest. To the contrary, and for example, the alter ego issues referenced in the Court's opinion include (among others):

- the establishment of AMP and persons involved;

- the location of AMP's offices;

- AMP's "mission";

- the establishment of AJP;

- the leadership (and overlap of leadership) of the Boim Defendants, AMP and AJP;

- the donors (and overlap of donors) between the Boim Defendants and AMP/AJP;

- Jaber's roles (including as tax preparer) with AMP/AJP, the Boim Defendants and the Bridgeview Mosque;

- Hamayel's role with AMP/AJP, IAP, KindHearts and the Mosque Foundation;

- Abuirshaid's role with AMP, IAP (and their newspapers);

- the timing and nature of the individual defendants' involvement with the Boim Defendants (including the chronology of their coming to the United States);

- overlapping employees, representatives, and speakers between the Boim Defendants and AMP/AJP;

- the IAP and AMP annual conferences;

- nefarious intent or unlawful motive;

- the structure and hierarchy of leadership of the Boim Defendants and AMP/AJP;

- transfer of assets between the Boim Defendants and AMP/AJP;

- the degree of dominance or control over the Boim Defendants; and

- whether AMP/AJP are a disguised continuance of the Boim Defendants.

April 3, 2018
Page 3

[See Dkt 41 at 2-3, 8-10]  Based on our pleadings and the Court's opinion, our requests are fully appropriate for jurisdiction discovery regarding the "existence of an alter ego relationship." [Dkt. 50]  Defendants' scope objection is not well-taken.

I look forward to discussing our particular discovery requests with you this week.

Very truly yours,

W. Allen Woolley

WAW/crv

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | Woolley, Allen |
| **Cc:** | Roe, Colleen; Charles Swift; Landes, Stephen; Alyza D. Lewin, Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) |
| **Subject:** | Please identify any remaining issues. |
| **Date:** | Wednesday, April 04, 2018 9:21:39 AM |

Counsel:

Please know that I am out of the office today. I do have some availability on Friday, if a call is feasible for you then.

**However, I will need to know prior to any call what has changed based on the supplemental production.** Please do not just resend me, or simply refer to, your March 9 letter. **Please itemize what you believe has not been provided since the most recent production of many hundreds of pages, including what is enumerated in my detailed March 27 email, with bullet points that identify much of what you claimed was missing.**

It is both fruitless and not in compliance with the Rules to try to have a call without addressing those developments first. We cannot have a meaningful Rule 37.2 conference without that. You state below that you "are prepared to move forward with the Rule 37.2 conference" now; without that updated communication from you, I am not. The lack of substantively addressing the supplemental email and materials does not show "good faith attempts to resolve differences" as required by the Local Rules. I remain fully willing to attempt to resolve any remaining issues, but in order to do that **I need to know what they are.**

This is not an unreasonable request.

If (and only if) I receive that information from you by close of business today, we can have a call Friday (presuming there is a mutually available time). If not, we can have a call next week, as long as I receive that information from you by close of business Friday.

Thank you. I look forward to receiving that necessary updated communication, now that you have had a chance to review all supplemental production.


Christina A. Jump

On Apr 3, 2018, at 3:03 PM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Christina,
>
> I have now gone through the additional material we received today and believe I have a fairly good understanding of what was included. Although I do have a few questions about the collection of the social media material, the bulk of the issues we need to discuss from my March 9 letter relate to other issues, and we are prepared to move forward with the Rule 37.2 conference. In the interest of completing the jurisdiction discovery phase

expeditiously, we would like to get this on the calendar for this week if possible.  If you could let us know when you are available, I would appreciate it.

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 03, 2018 1:26 PM
**To:** Woolley, Allen
**Cc:** Roe, Colleen; Charles Swift
**Subject:** RE: Correspondence is attached.

Thank you for your correspondence, and confirmation of your receipt of the flash drive containing, as previously indicated, primarily social media printouts.  I do not believe that a conversation is appropriate until after you have fully reviewed all supplemental materials, and can then itemize what deficiencies you believe still remain.  Your letter indicates that has not yet happened; as such, any conversation would be premature and not in compliance with the spirit of the referenced rules.

Please advise when that has occurred and we will be glad, after review of any remaining identified deficiencies communicated, to schedule a time to speak.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Roe, Colleen [mailto:CRoe-Valleau@lockelord.com]
**Sent:** Tuesday, April 03, 2018 12:39 PM
**To:** Christina Jump <cjump@clcma.org>

**Cc:** Woolley, Allen <Allen.Woolley@lockelord.com>
**Subject:** Correspondence is attached.

Ms. Jump,

The attached document is sent on behalf of W. Allen Woolley.

If you have any questions or comments, please direct them to Mr. Woolley. I've attached his v-Card for ready reference.

Thank you.

*Colleen Roe-Valleau*

<image001.jpg>

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# EXHIBIT F

| From: | Christina Jump |
|---|---|
| To: | Woolley, Allen; Landes, Stephen |
| Cc: | Charles Swift; Leila Mustafa |
| | |
| Subject: | RE: Discovery summary and excerpted pages re AMP conferences and chapters |
| Date: | Monday, May 07, 2018 10:51:00 AM |
| Attachments: | 2018.05.07 - Defendants" Privilege Log (updated).pdf |
| | Defendants" Production 004469-004530 (combined).pdf |

Counsel:

Please see the attached privilege log, as well as the now bates labeled (004469-004530) copies of the documents attached to my May 1, 2018 email.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX 75081

(972) 914-2507 (main)

(972) 914-2508 (direct)

_____

**From:** Christina Jump
**Sent:** Tuesday, May 01, 2018 4:53 PM
**To:** Woolley, Allen <Allen.Woolley@lockelord.com>; Landes, Stephen <Stephen.Landes@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** Discovery summary and excerpted pages re AMP conferences and chapters

Counsel:

Please see below the list of the ten (10) annual AMP conferences which have occurred to date, along with the dates and titles of each. For each, I also attach the best available documentation regarding the events and speakers for each year. We will produce these attached excerpted pages with bates labels shortly, but in the interim I wanted to make this

information readily available to you. Please note, this all comes from the website archives, previously produced with isolated pages attached here, and Facebook, Twitter and YouTube posts as well (also previously identified and produced with full archives as available), from which these pages have been excerpted and summarized below for convenience. Nonetheless, they are derived from the sources already produced.

1.   2006 (Nov. 23-25):   Palestine: A Just Cause (First National Convention)

2.   2007 (Nov. 22-25):   Second Annual National Convention (60th Anniversary of the Nakba)

(2008: none)

(2009: none)

3.   2010 (Nov. 26-28):   Palestine: The Gate to Global Peace (3rd Annual)

4.   2011 (Nov. 24-26):   A New Era of Activism (4th Annual)

5.   2012 (Nov. 22-25):   A Movement United (5th Annual)

6.   2013 (Nov. 28-30):   A Blessed Land A Noble Cause (6th Annual)

7.   2014 (Nov. 27-29):   Gaza Teaches Life! (7th Annual)

8.   2015 (Nov. 26-28):   Reclaiming Our Narrative (8th Annual)

9.   2016 (Nov. 24-26):   Paving the Way Toward Justice (9th Annual)

10.   2017 (Nov. 23-25):   100 Years Since Balfour: The Movement Continues (10th Annual Conference)

As to the chapters for AMP, please note, as indicated in the previously produced documents, the individual chapters do not have authority to make statements on behalf of AMP/AJP, and those representatives are not necessarily (though may by coincidence be) AMP board members (also referred to in our prior correspondence as "national board members"). In other words, as stated in the earlier produced documents, all key decisions and messaging happens at the national level.

There were some early "chapters" listed which are now defunct, so to speak (these are not separately incorporated, as I have previously informed you). Nonetheless, please see the below list, which is compiled from the data and documents already produced, listing the current and past "chapters" (which are really more appropriately and as a practical matter referenced as local means of contact).

Also, I have noted where, as also reflected on the previously produced documents and data, the local chapters have physical offices; please be advised this is only true for Chicago (headquarters), Washington D.C. (lobbying offices), and New Jersey locations.  All other "chapters" exist only in the virtual world, though they do assist with finding local venues at which to hold informational seminars and the like (as referenced in the Twitter, Facebook and website archives already produced).  Where appropriate, the "chapter" Facebook locations are also noted.

1.   California:

a.   AMP-Bay Area: started (at least via Facebook) February 14, 2011; bayarea@ampalestine.org; reachable through @ampalestinebayarea (facebook.com/ampalestinebayarea); no physical office

b.   AMP-SoCal: started February 14, 2011; socal@ampalestine.org; facebook.com/American-muslims-for-palestine-amp-southern-california-188927824470865/?ref=br_rs; also no physical office

2.   Illinois (Chicago): chicago@ampalestine.org; facebook.com/ampalestinechicago; no physical location other than headquarters (10063 S. 76th Ave., Bridgeview IL, 60455 (708) 598-4267)

3.   Michigan (Detroit): facebook.com/americanmuslimsforpalestinedetroit; detroit@ampalestine.org; no physical office

4.   Minnesota (Minneapolis): @ampminnesota; (facebook.com/ampminnesota); mn@ampalestine.org; no physical office

5.   Missouri: missouri@ampalestine.org; facebook.com/ampofmo; no physical office

6.   New Jersey: ampnj@ampalestine.org; @ampnjchapter (facebook.com/ampnjchapter); 9020-28 Palisade Plaza, North Bergen, New Jersey 07047

7.   New York: started October 1, 2010;  ny@ampalestine.org; @ampny; ny@ampalestine.org; no physical office

8.   Washington, D.C.: 6404 Seven Corners Pl., Falls Church, VA  220044; (703) 534-3032 (lobbying office, not just a chapter)

9.   Wisconsin (Milwaukee): milwaukee@ampalestine.org; no physical office

Also, the 2009 archived page of the AMP website lists these chapters and phone numbers, many if not all of which are no longer functioning numbers but are excerpted here for historic purposes (there were no addresses for any of the listings below):

**Berkeley, CA**

(510) 914.6722

**Champaign, IL**

(630) 217.2778

**Chicago, IL**

(773) 951.2020

**Dearborn, MI**

(313) 999.4420

**Kansas City, MO**

(816) 517.9349

**Milwaukee, WI**

(414) 559.7680

**Minneapolis, MN**

(612) 554.2460

**Pasaic County, NJ**

(973) 996.5341

**Sacramento Valley, CA**

**Syracuse, NY**

<< File: 2006 First Convention Title without speakers.pdf >> << File: 2007 Conference 2nd Annual.pdf >> << File: 2010 Conference 3rd Annual.pdf >> << File: 2011 Convention Program.pdf >> << File: 2011 Speakers.pdf >> << File: 2007 Conference speakers.pdf >> << File: 2012 Speakers Conference.pdf >> << File: 2012 Program with Speakers.pdf >> << File: 2013 Speaker list.pdf >> << File: 2014 Conference with speakers.pdf >> << File: 2015 Conference from website.pdf >> << File: 2015 Speakers list.pdf >> << File: 2016 Conference from website.pdf >> << File: 2016 Speakers Bios.pdf >> << File: program_2017.pdf >>

*Christina A. Jump*

Civil Litigation Department Head

Constitutional Law Center for Muslims in America

833 E. Arapaho Rd., Suite 102

Richardson, TX  75081

(972) 914-2507 (main)

(972) 914-2508 (direct)