IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABUIRSHAID, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> Hon. Sharon Johnson Coleman <br><br> **Hon. Sidney I. Schenkier** |

**PLAINTIFFS' SURREPLY IN SUPPORT OF THEIR MOTION TO COMPEL COMPLETE RESPONSES TO THEIR FIRST SETS OF JURISDICTION DOCUMENT REQUESTS AND INTERROGATORIES**

Defendants' Reply Brief (Dkt. 77) does not address the arguments we made in response to their motion to quash plaintiffs' deposition notices and to bar plaintiffs from seeking further discovery. Instead, defendants cut and pasted portions of their response (Dkt. 74) to our motion to compel complete responses to our *existing discovery requests* (Dkt. 54), and then added several *new* arguments in response to the same motion to compel, which they suggest were "inadvertently omitted" from their initial response. (*See* Dkt. 77 at 6-7 n.3.) We are filing this Surreply to address three new arguments that we had no opportunity to reply to previously.

**First**, defendants erroneously contend that the alter ego standards in the Court's (now-vacated) August 18, 2017 opinion do not cover the jurisdictional discovery in plaintiffs' existing discovery requests. (*See* Dkt. 77 at 2.) Our prior briefs demonstrate that defendants' overly-narrow interpretation of "jurisdictional discovery" conflicts with the Court's August 18 opinion, which discusses the full range of plaintiffs' *factual* alter ego allegations, as shown by the summary in

AM 69241304.7

footnote 3 of our initial brief (Dkt. 56 at 4 n.3). In addition, the *legal standards* cited in the Court's opinion fully encompass the topics in plaintiffs' discovery requests. For example, the Court's discussion (quoted in part on page 2 of defendants' Reply Brief) enumerates a broad variety of factors courts have considered in determining alter ego status. These include (i) respect given to the separate identity of a corporation; (ii) fraudulent or unlawful motive or intent; (iii) whether injustice would result from respecting the separate corporate entity; (iv) the existence of a "disguised continuance" of a former entity; (v) attempts to avoid obligations of an agreement, such as through a sham transfer; and (vi) control or dominance over the original entity. (Dkt. 41 at 6.)

Plaintiffs' discovery squarely addresses these factors. We expect full responses to our discovery requests to show (among other things) that: (a) AMP/AJP continues the activities, operations and mission of the former entities; (b) defendants concealed the continuation of IAP/AMS's and HLF's activities in part to avoid plaintiffs' judgment; (c) many of the same people who controlled the former entities control the new entities; (d) the new entities have inherited many of the old entities' intangible assets and good will (*see* Dkt. 76 at 14 n.4 (listing examples of intangible assets)); (e) the new entities occupy the same position in a network of donors, sponsors, partner organizations, and overseas entities; and (f) permitting AMP/AJP to continue the operations of IAP/AMS and HLF while shedding the burden of the *Boim* Judgment would unjustly thwart the purposes of the civil remedies provisions of the Anti-Terrorism Act ("ATA").

**Second**, contrary to the new arguments defendants now make in Section II.C.3. of their Reply Brief, the ways AMP/AJP "promoted and helped with fundraising" are highly relevant to the existence of an alter ego relationship. (Dkt. 77 at 10-12.) Our initial brief (Dkt. 56 at 8) demonstrated that Judge Keys determined that IAP/AMS violated the ATA largely on evidence that those organizations (among other things): (i) solicited donations to HLF, which had been shown to

2

channel funds to Hamas-affiliated organizations (including for humanitarian purposes[1]), (ii) allowed HLF to set up booths at conventions, and (iii) invited pro-Hamas speakers to conventions (and paid their travel expenses). *Boim v. Quranic Literacy Institute*, 340 F. Supp. 2d 885, 910-913 (N.D. Ill. 2004). AMP/AJP has continued to engage in these same types of activities.

Illustrative is one of the few internal documents that defendants have produced—



Along similar lines, we asked for documents relating to a 2015 event purportedly organized by AMP in Detroit, which according to press coverage raised approximately $200,000 for charitable purposes in Gaza. AMP/AJP now claim only to have played an "educational role" and that the money was raised for another organization. (Am. Resp. to DR25 (Dkt. 56-5, Ex. 16).) This is strikingly similar to what IAP/AMS claimed regarding their role in fund raising. Plaintiffs should have the opportunity to examine this event and AMP/AJP's claimed role in the event.

Defendants assert that discovery regarding fundraising for other organizations is improper because plaintiffs do not allege that AMP/AJP *independently* violated the ATA. Our discovery is not directed at proof of new ATA violations by AMP/AJP. Rather, our claim is that AMP/AJP are "disguised continuances" of the *Boim* judgment debtors because they continued the same operations and conduct as their predecessors—including the very type of conduct that led to IAP/AMS's

---

[1] Although these organizations purported to "direct their support exclusively to" Hamas's "health, educational, and other social welfare services," the Seventh Circuit held they were nonetheless liable for violating the ATA because money is fungible and the social welfare activities reinforce the terrorist activities. *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 698 (7th Cir. 2008).

3

liability in the original *Boim* case.

This is significant because the Court observed in the August 18, 2017 opinion that demonstrating continuity by pointing to "a shared stated mission—'to educate people about Palestine'" is insufficient, as this alone would not "suggest any nefarious intent or unlawful motive" and would create "a false inference that no legitimate humanitarian organization could ever be created with that mission." (Dkt. 41 at 8.) Defendants seek to prevent this discovery in order to avoid any challenge to their public position, as set forth in their interrogatory responses, that:

> Defendants provide an educational role and raise awareness about Palestine… Funds are raised and dispersed domestically, and cover expenses of AJP and AMP operations as well as the educational efforts of AJP and AMP.

(*See* Am. Resp. to EI No. 9 (Dkt. 56-5 Ex. 17).) We seek discovery to confirm that AMP/AJP not only share the same outward mission, but are as "nefarious" as IAP/AMS: they outwardly claim to be purely domestic, educational groups but at the same time have promoted and assisted with fundraising for organizations that provided support for Hamas and Hamas-affiliated groups.

**Third**, defendants admit possessing copies of *Al Meezan*. They cannot avoid producing these newspapers and any related documents on the bare assertion that defendant Abuirshaid published this newspaper "on his own." (Dkt. 77 at 14.) Abuirshaid holds AMP's top position, National Policy Director. He was also an IAP leader and published IAP's newspaper, *Al-Zaytounah*. He started the new paper, *Al Meezan*, just as IAP was shutting down. Defendants may argue that *Al Meezan* is independent from AMP/AJP, but plaintiffs are entitled to examine defendants' relationship to the paper, any funding or support AMP/AJP may have provided to the paper, and the paper's promotion or support for the activities and agenda of AMP/AJP and its predecessors.

| | |
|---|---|
| Dated: July 5, 2018 | Respectfully submitted, |

                                                                                                    /s/ W. Allen Woolley
                                                                     Stephen J. Landes
W. Allen Woolley
Michael B. Kind
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 201-2772
*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000

Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

5

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on July 5, 2018 he caused the foregoing PLAINTIFFS' SURREPLY IN SUPPORT OF MOTION TO COMPEL COMPLETE RESPONSES TO THEIR FIRST SETS OF JURISDICTION DOCUMENT REQUESTS AND INTERROGATORIES to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

*/s/ W. Allen Woolley*