# EXHIBIT A

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | "Woolley, Allen"; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua |
| **Cc:** | Charles Swift; Leila Mustafa |
| | |
| **Subject:** | Defendants" Amended Discovery Responses |
| **Date:** | Tuesday, April 10, 2018 6:43:00 PM |
| **Attachments:** | 2018.04.10 - Amended Objections and Responses to Requests for Documents.pdf |
| | 2018.04.10 - AMENDED O&R to Rogs to Individuals.pdf |
| | 2018.04.10 - AMENDED AJP AMP Objections and Responses to Rogs.pdf |
| | Jaber amended verification SIGNED.pdf |
| | Osama"s Verification 4-5-18.pdf |
| | VERIFICATION SIGNED AMP_amended.pdf |
| | VERIFICATION SIGNED AJP_amended.pdf |
| | Hamayel Amended Verification.pdf |

Counsel:

Please see attached both sets of Amended Objections and Responses to Interrogatories, on behalf of the Individual Defendants as well as AMP and AJP, and the Amended Objections and Responses to Plaintiffs' Jurisdiction Document Requests. Please also see the attached relevant verification pages.

As noted herein, documents bates labeled 002594 – 002660 and 004410 – 004422 will be produced upon agreement as to a Confidentiality Order, a proposed one of which was sent to you yesterday (as noted below).

Otherwise, a flash drive with the additional document production, including the unlabeled zip files of the archives for the relevant Facebook and Twitter accounts, is already on its way to you.

Thank you and I look forward to speaking with you later this week (should that remain necessary).

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 11:44 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement

That's fine.  We will call you at 2pm on Thursday.

W. Allen Woolley
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Tuesday, April 10, 2018 11:20 AM
**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Yes, that works.  Same time good?

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Tuesday, April 10, 2018 7:45 AM
**To:** Christina Jump <cjump@clcma.org>; Landes, Stephen <Stephen.Landes@lockelord.com>; Kind, Michael <Michael.Kind@lockelord.com>; Roe, Colleen <CRoe-Valleau@lockelord.com>; Fliegel, Joshua <joshua.fliegel@lockelord.com>
**Cc:** Charles Swift <cswift@clcma.org>; Leila Mustafa <lmustafa@clcma.org>
**Subject:** RE: Supplemental Declaration and Proposed Confidentiality Agreement [LL-America.FID3847873]

Christina:

Would Thursday afternoon work to complete the discovery conference?

-AW

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Monday, April 09, 2018 7:22 PM

**To:** Woolley, Allen; Landes, Stephen; Kind, Michael; Roe, Colleen; Fliegel, Joshua
**Cc:** Charles Swift; Leila Mustafa
**Subject:** Supplemental Declaration and Proposed Confidentiality Agreement

Counsel:

Please see the attached Declaration, of Munjed Ahmad.  In addition, we attach a proposed Confidentiality Order.  With an agreement on that, we  can produce the items discussed Friday, as well as a few additional documents we have located that would fit within the scope of the Confidentiality Order.  If we can agree on the language and retroactive nature of the Confidentiality Order, we can produce those remaining documents, and our Amended Discovery Responses which refer to them, tomorrow.  Please also note that we have had success with the social media archives and will have those in producible format tomorrow as well.

Thank you.  In light of this, I believe it makes sense to push our potential continuation of the call on outstanding issues by one more day, so that you may receive this information and thereby better assess what, if anything, remains in disagreement.  Please let me know if you agree.

Please let me know your position on the attached proposed Confidentiality Order (redlined per the Local Rules), and we look forward to hearing your response.  Thank you.


*Christina A. Jump*
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown |
New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

| | |
|---|---|
| **From:** | Christina Jump |
| **To:** | Woolley, Allen |
| **Cc:** | Charles Swift; Stephen.Landes@lockelord.com; alyza@lewinlewin.com |
| **Subject:** | Re: Confidentiality Designations |
| **Date:** | Sunday, June 17, 2018 4:57:15 PM |

Yes, that works on Tuesday.

I am amenable to moving the date; will confirm tomorrow as to availability for the alternatives you suggest. I have another hearing in Chicago on July 13, so believe the 12th works but will confirm tomorrow and let you know.

Thanks.


Christina A. Jump

On Jun 15, 2018, at 12:57 PM, Woolley, Allen <Allen.Woolley@lockelord.com> wrote:

> Christina:
>
> Would 9:30 a.m. CDT on Tuesday work for a short call on the confidentiality issue?
>
> Also, as you probably saw, Magistrate Judge Schenkier reset the hearing scheduled for next week to July 5. Unfortunately, both Steve and I will be out of town that day. We would like to ask the Judge to push back to July 11 or 12. Would one or both of those dates work for your side?
>
> Thanks,
>
> **W. Allen Woolley**
> Partner
> **Locke Lord LLP**
> 111 South Wacker Drive
> Chicago, Illinois 60606
> T: 312-201-2676
> C: 773-255-1542
> F: 312-416-4856
> allen.woolley@lockelord.com
> www.lockelord.com
>
> ---
>
> **From:** Christina Jump [mailto:cjump@clcma.org]
> **Sent:** Thursday, June 14, 2018 4:20 PM
> **To:** Woolley, Allen
> **Cc:** Landes, Stephen; Alyza D. Lewin , Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com); Charles Swift; 'Daniel Schlessinger'
> **Subject:** RE: Confidentiality Designations
>
> I expect we will be able to reach accord on at least some of the issues you address below, but as you point out in your email initiating this round of communications, we

have not addressed this issue since April, two months ago.  Therefore, I do need the time to devote to it prior to Tuesday.  And, as noted, our office is closed for the religious holiday of Eid tomorrow, so no one will be in our office to respond to emails or accept calls (myself included).

I remain available to discuss this substantively with you on Tuesday morning, and as stated am available any time between 9:00 am and 11:00 am central time that day.  I expect, as indicated both above and in my earlier email of today, that we should be able to reach an accord at that time on at least some of the issues you raise below.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Thursday, June 14, 2018 3:36 PM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Alyza D. Lewin , Esq. (alyza@lewinlewin.com) (alyza@lewinlewin.com) <alyza@lewinlewin.com>; Charles Swift <cswift@clcma.org>; 'Daniel Schlessinger' <dschlessinger@jaszczuk.com>
**Subject:** RE: Confidentiality Designations [LL-America.FID3847873]

Christina,

We have already discussed these issues and exchanged several e-mails, so I am not sure there is anything left to cover.  However, if there are any documents or categories of documents for which defendants will withdraw the confidentiality designation, please let me know.  I am available Tuesday if you would like to discuss any issues by phone.  However, the purpose of asking for your response by Friday (and of getting my e-mail to you last week) was to allow us to ask the Court to resolve this issue (if necessary) at the June 20 hearing.  To meet the notice requirement, we will need to file our motion by the end of the day tomorrow.

Best,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542

F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

---

**From:** Christina Jump [mailto:cjump@clcma.org]
**Sent:** Thursday, June 14, 2018 2:19 PM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Alyza D. Lewin , Esq. (alyza@lewinlewin.com)
(alyza@lewinlewin.com); Charles Swift
**Subject:** RE: Confidentiality Designations [LL-America.FID3847873]

Please be advised that I have been out of the office and unavailable due to other
matters this week, so am just now able to respond.  As our office is closed tomorrow
for the religious holiday of Eid, I will not be available to discuss then either.

I will be available to discuss on Tuesday, June 19 any time from 9:00 am – 11:00 am
central time, if that works for you.

Thank you.


*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Friday, June 08, 2018 10:06 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Alyza D. Lewin , Esq.
(alyza@lewinlewin.com) (alyza@lewinlewin.com) <alyza@lewinlewin.com>
**Subject:** Confidentiality Designations [LL-America.FID3847873]

Christina,

I am writing to follow up regarding defendants' designation of
confidential documents.  This is an issue you and I have
previously discussed—both during a telephone conference
and in several e-mails (on April 20).  As I indicated during our
previous communications, I do not believe the material
designated "confidential" falls within the 7 categories permitted

to be designated under paragraph 2 of the protective order, and much of it does not appear to be material maintained as confidential.  I have requested that this material be de-designated; you have declined to do so.

I have re-reviewed the designated documents and continue to believe this material should be de-designated.  As I indicated in April, we believe a not-for-profit, non-commercial entity (which must publicly disclose 990s) is likely to have little, if any, protectable commercial financial information, "trade secrets," or other properly confidential information.  Much of the material designated confidential here contains nothing within the 7 categories, and what might be considered "personal identity information" has generally been redacted.  In particular:

1.  The Munjed Ahmed e-mails (002594-2640) do not contain any tax returns, W-2s or 1099s, and do not appear to be covered by any of the other 7 categories.  The e-mail addresses have been redacted, so there does not appear to be anything that could be "personal identity information."

2.  The EC minutes (002641-2646; 004410-4422) appear to cover general business and operation issues, but do not appear to contain any protectable information, particularly the minutes that are several years old.

3.  The tax documents (2647-2651) are not returns, W-2s or 1099s, and the tax ID numbers have been redacted.

4.  The power point presentation (002652-2657) does not contain anything within the 7 categories and does not appear to be the type of document that would be maintained confidential.  On a related note—the copy we received is partially illegible; does this exist in electronic or a legible paper form?

5.  The Munjed Ahmed notes (002658-002660) are more than

12 years old and do not contain anything within the 7 categories.

6.  The 2009 Kristin Szremski document (004423) appears to be a press release and not a confidential document.  It contains nothing within the 7 categories.

7.  The 2016 Palestine Advocacy Day booklet, the AMP power point presentation, form of thank you letter, job description, and "About AMP" document (004424-4457) appear to be non-confidential disseminated materials and do not contain information within the 7 categories.

8.  The Szremski e-mails (004457-4456) deal with business issues and do not contain information within the 7 categories. E-mail addresses have been redacted.

9.  The AMP National Annual Plan 2009-2010 (004459-4468) deals with goals and business issues from more than 8 years ago.  It does not appear to be a confidential document and does not contain information within the 7 categories.

As stated in e-mail correspondence and during our April 20 telephone conference, plaintiffs are prepared to discuss the propriety of any of these particular designations if you believe there are documents that do in fact contain information within the 7 categories.  However, you have not at this point given any explanation of how any of the specific designated documents fall within the protected categories under the confidentiality order, and it appears to us that none of the documents (at least in their redacted form) contain protectable information.

Please let me know by Friday, June 15 if you are prepared to produce any of these documents without the confidential designation or believe some of these documents do fall within the 7 protectable categories.  If you think there would be any value to further discussion of the designations, I am happy to

set up a call next week.

Best regards,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois  60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com


<image001.jpg>

_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | New Orleans | New York | Princeton | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# EXHIBIT B

| | |
|---|---|
| **From:** | Layne Emery |
| **To:** | Woolley, Allen; Christina Jump |
| **Cc:** | Landes, Stephen; Waide, Vickie; Charles Swift; Kind, Michael |
| **Subject:** | RE: Confidentiality designations |
| **Date:** | Monday, July 02, 2018 4:39:08 PM |
| **Attachments:** | image005.png |
| | 2018.07.02 - Reproduced Defendants" Production.pdf |

Mr. Woolley:

I am in receipt of your email of 1:15 a.m. on Saturday, June 30, 2018. As you likely saw from Ms. Jump's out of office auto-reply, she is traveling and on vacation this week. I will leave her a message informing her of your email, though please note I am not sure of her service while she is on vacation. Mr. Swift is also out of the office and not available until after the upcoming holiday.

Ms. Jump did ask me to re-label the documents on which she previously agreed to remove the "Confidential" designation. Those are attached and re-produced here. As to your other questions, I am not in a position to answer those. Ms. Jump will likely answer them upon her return to the office next week.


Thank You,

Layne Emery
Litigation Paralegal


833 E. Arapaho Rd, Suite 102
972-914-2507 Ext 1129 | Richardson, TX, 75081
lemery@clcma.org
www.clcma.org

---

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Saturday, June 30, 2018 1:15 AM
**To:** Layne Emery <lemery@clcma.org>; Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Waide, Vickie <VWAIDE@lockelord.com>; Charles Swift <cswift@clcma.org>; Kind, Michael <Michael.Kind@lockelord.com>
**Subject:** RE: Confidentiality designations

Christina,

Responding to your June 20 e-mail (below), we have not heard back from you regarding the documents bates numbered 004423 and 004436-004447. Could you please let us know by the close of business Monday if you are prepared to withdraw the confidentiality designation from any of these documents?

Best regards,
AW

**From:** Layne Emery [mailto:lemery@clcma.org]
**Sent:** Wednesday, June 20, 2018 3:23 PM
**To:** Woolley, Allen
**Cc:** Landes, Stephen; Waide, Vickie; Christina Jump; Charles Swift
**Subject:** Confidentiality designations [LL-America.FID3847873]

ON BEHALF OF CHRISTINA JUMP:

As a follow-up to our conversation yesterday, please note that we agree to remove the Confidential designations as to the following documents:

- The tax-related filing documents located at 002647-002651
- The PowerPoint presentation located at 002652-002657
- The Palestine Advocacy Day documents located at 004424-004435
- The summary of AMP's work located at 004448-004449

I confirm that I am looking into, but not currently agreeing to remove the designation for, documents located at 004423 and 004436-004447.

As for the above-listed documents in the bullet points above where Defendants do agree to remove the designations, we will reproduce those shortly. I will be traveling for other cases the remainder of this week, but we will work to get those to you as soon as reasonably practical.

In addition, upon determination of the status of the documents located at 004423 and 004436-004447, we will send an email listing the reasons for those pages (if applicable) and other referenced documents as Confidential designations. As mentioned in our call yesterday, if there is a timely pressing or other relevant reason that there is any urgency as to receiving this articulation, please advise. Please also advise if there is any specific reason, as requested in our phone call, as to any urgency or other anticipated use for any documents you seek to see undesignated. Otherwise, as I mentioned yesterday, I remain a bit confused as to the pressing need, if any, for Plaintiffs to seek de-designation so strongly in this matter, particularly given the pre-discovery, pre-answer and current Motion to Dismiss stage of this proceeding. If you have relevant information to share in that regard, I remain willing to listen. Otherwise, I see no harm to Plaintiffs by these designations (though will, as noted above, explain them more fully after clarification of the listed documents) and am at a loss as to any time-sensitive need for this matter to be addressed "as soon as possible."

As indicated above, we will reproduce the documents for which we are removing the designations as soon as reasonably practical.

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**From:** Woolley, Allen [mailto:Allen.Woolley@lockelord.com]
**Sent:** Wednesday, June 20, 2018 9:35 AM
**To:** Christina Jump <cjump@clcma.org>
**Cc:** Landes, Stephen <Stephen.Landes@lockelord.com>; Waide, Vickie <VWaide-Ashmore@lockelord.com>
**Subject:** Confidentiality designations [LL-America.FID3847873]

Christina,

Following up on our call yesterday, you indicated that defendants are withdrawing the confidentiality designations for the following documents:

2647-2651
2652-2657
4424-4435

You also indicated you would get back to me with respect to:

4423
4436-4445

Please let me know as soon as possible what you decide with respect to these documents and if there are any other documents for which defendants will remove the designation.

In terms of mechanics, it is probably cleanest for you just to produce new versions without the designations, but let me know how you'd like to handle this. Also, I wasn't clear on whether you had a legible copy of the power point presentation (2652-2657). If so, we would like to get a legible version.

Thank you,

**W. Allen Woolley**
Partner
**Locke Lord LLP**
111 South Wacker Drive
Chicago, Illinois 60606
T: 312-201-2676
C: 773-255-1542
F: 312-416-4856
allen.woolley@lockelord.com
www.lockelord.com

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | New Orleans |
New York | Princeton | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:

This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# EXHIBIT C

# *Instant Tech., LLC v. Defazio*

United States District Court for the Northern District of Illinois, Eastern Division

November 8, 2013, Decided; November 8, 2013, Filed

Case No. 12 C 491

**Reporter**

2013 U.S. Dist. LEXIS 160251 *; 2013 WL 5966893

INSTANT TECHNOLOGY, LLC, an Illinois Limited Liability Company, Plaintiff, v. ELIZABETH DEFAZIO, et al., Defendants.

**Subsequent History:** Findings of fact/conclusions of law at, Judgment entered by *Instant Tech., LLC v. Defazio, 2014 U.S. Dist. LEXIS 61232 (N.D. Ill., May 2, 2014)*

**Prior History:** *Instant Tech., LLC v. DeFazio, 2013 U.S. Dist. LEXIS 125488 (N.D. Ill., Sept. 3, 2013)*

## Core Terms

documents, defendants', designation, confidentiality order, email, Confidential, memorandum, exhibits, protective order, public record, attorneys', parties, innocent, confidential documents, seal, confidential information, violations, sanctions

**Counsel:** **[*1]** For Instant Technology, LLC, an Illinois limited liability company, Plaintiff: David Brian Ritter, LEAD ATTORNEY, Alison C Conlon, Austin Jennings Burke, Kaitlyn N. Jakubowski, Barnes & Thornburg, LLP, Chicago, IL.

For Elizabeth Defazio, Laura Rehn, Megan Marker, Bethany Meek, Erin Bauer, Joel Katz, individuals, Connect Search LLC, A Delaware Limited Liability Company, Andrea Katz, individuals, Defendants: Hal J. Wood, LEAD ATTORNEY, Megan Mae Mathias, Richard Zachary Wolf, Horwood Marcus & Berk Chartered, Chicago, IL.

For Richard J Lee, Material Witness: Maurice Grant, LEAD ATTORNEY, Ryenne Chantelle Shaw, Grant Schumann, LLC, Chicago, IL.

For Elizabeth Defazio, Counter Claimant: Hal J. Wood, LEAD ATTORNEY, Megan Mae Mathias, Richard Zachary Wolf, Horwood Marcus & Berk Chartered, Chicago, IL.

For Instant Technology, LLC, an Illinois limited liability company, Counter Defendant: David Brian Ritter, LEAD ATTORNEY, Austin Jennings Burke, Barnes & Thornburg, LLP, Chicago, IL.

**Judges:** Geraldine Soat Brown, United States Magistrate Judge. Judge James F. Holderman.

**Opinion by:** Geraldine Soat Brown

## Opinion

### MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

For the following reasons, Defendants' **[*2]** Emergency Motion for Protective Order and Sanctions (Defs.' Mot.) [dkt 179] is granted as further set out herein.

### Background

A. The Confidentiality Order

Plaintiff Instant Technology, LLC ("Instant") is an information technology staffing firm. (Am. Compl. ¶ 2.) [Dkt 40.] Instant's complaint in this case alleges that in late 2011, Instant's former executive vice president Elizabeth DeFazio induced Instant employees Laura Rehn, Megan Marker, Bethany Meek, and Erin Bauer to leave Instant, steal Instant's confidential information, and start a new information technology staffing company called Connect Search, LLC, along with staffing industry veterans Joel and Andrea Katz. (*Id.* at 51-81.) Supervision of discovery was referred to this court. [Dkt 51.]

This has been a highly contentious litigation between competitors, as illustrated by the fact that Instant has

2013 U.S. Dist. LEXIS 160251, *2

filed four motions for a temporary restraining order or preliminary injunction, claiming, *inter alia*, that defendants are using Instant's confidential information to compete unfairly. [Dkt 4, 27, 83,173.] In the course of discovery, pursuant to *Fed. R. Civ. P. 26(c)*, an Agreed Confidentiality Order was entered permitting a party to designate **[*3]** certain classes of sensitive documents as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL-OUTSIDE COUNSEL ONLY." (Agreed Confidentiality Order ¶¶ 2-3.) [Dkt 102.] The latter designation is only for those documents that contain "highly sensitive information" that "would tend to cause substantial harm to the designating party's legitimate business, competitive position or privacy interests." (*Id.* ¶ 3.) Documents designated as "subject to protective order" may only be shared with certain persons such as the parties, the court, and experts, but — importantly for this motion — documents carrying the "Outside Counsel Only" designation may not be shared with the parties. (*Id.* ¶ 6.)

The Confidentiality Order provides a method for challenging a designation: counsel for the parties must meet and confer to discuss the challenged designation, and if no agreement can be reached, the designation is to be challenged by motion. (*Id.* ¶ 11.) Until the court rules on the propriety of the designation "all parties shall continue to treat the materials" as confidential. (*Id.*) The agreement further mandates that "[a]ny party wishing to file a document designated as Confidential Information in **[*4]** connection with a motion . . . must comply with *Local Rule 26.2*." (*Id.* ¶ 9.) That rule provides that a party must provisionally file the document under seal and "move the court for leave to file the document under seal." *L.R. 26.2(c)*.

B. Instant's Motion, Memorandum and Confidential Exhibits

On Thursday, May 23, 2013, the parties appeared before the District Judge on Instant's motion for leave to file a memorandum in excess of 15 pages in support of Instant's most recent motion for preliminary injunction. [Dkt 169.] Instant attached its proposed memorandum to that motion, but without exhibits. (*Id.*, Ex. A.) The District Judge granted Instant leave to file its motion and memorandum that day, and Instant filed the motion for preliminary injunction with the accompanying memorandum and exhibits. [Dkt 172, 173, 176.]

On Wednesday, May 29, at 3:47 P.M., defendants' counsel notified Instant's counsel via email that documents designated "Confidential — Outside Counsel Only" containing Connect Search's highly sensitive

financial information had been filed in the public record as exhibits to Instant's memorandum. (Defs.' Mot., Ex. A.) That email was sent to two attorneys with appearances on record **[*5]** for Instant: David Ritter and Austin Burke. (*Id.*) Defendants' counsel requested that Instant's counsel "[p]lease take whatever steps are necessary to remove these documents from the court's file." (*Id.*) A day later, May 30, at 1:37 P.M., Instant's counsel Burke responded with a one-sentence email stating, "Please let us know which financial information, specifically, you believe should be removed from the court's file so we might redact the documents in question appropriately." (*Id.*, Ex. B.) About two hours later, defendants' counsel responded with a list of documents that should be removed and added, "These documents need to be removed from the court record immediately." (*Id.*, Ex. C.) Instant's counsel Burke replied with another one-sentence email asking, "What information in these documents do you believe to be confidential?" (*Id.*, Ex. D.)

On Friday afternoon, May 31, at 3:51 P.M., defendants' counsel notified Instant's counsel Burke (with a copy to attorney Ritter) that, in defendants' view, Instant had violated the Confidentiality Order. (*Id.*, Ex. E.) Defendants' counsel once again asked that the documents be removed, and requested that other documents marked as "Confidential — **[*6]** Subject to the Protective Order" that had been filed as exhibits to Instant's motion also be removed. (*Id.*) He added, "If you do not address this immediately, we will raise the issue with the court." (*Id.*)

Instant's counsel Ritter has submitted a declaration stating that a paralegal in his office first attempted to contact the office of the Clerk of the Court on Monday, June 3, but it was not until Tuesday, June 4, that the paralegal spoke with the clerk's office. (Pl.'s Resp., Ex. 1, Decl. David Ritter ¶ 11.) [Dkt 186.] He does not explain why the paralegal was not able to reach the clerk's office on Monday. When Instant's paralegal explained the situation, "the clerk promptly corrected the docket and sealed all exhibits containing 'Confidential' designations." (*Id.* at ¶ 12.)

At about noon on June 4, Instant's counsel Burke informed defendants' counsel about the removal of the documents from the public docket. (Defs.' Mot., Ex. F.) Later that day, defendants' counsel emailed Instant's counsel Burke (with a copy to Instant's attorney Ritter) asking him to "confirm whether or not the attachments that were designated 'Confidential — Outside Counsel Only' by Defendants were provided to **[*7]** your client."

(*Id.*, Ex. G.) Receiving no response, on June 5, defendants filed the present emergency motion requesting that Instant's counsel be compelled to disclose whether anyone at Instant had been given the confidential documents and asking for an award of defendants' attorneys' fees incurred in bringing the motion. (Defs.' Mot. at 5.)

On June 6, Instant's counsel Ritter sent an email stating that he confirmed that the documents had not been sent to his client and that "the only people who have seen or have had access to them have been attorneys and staff in my office." (Pl.'s Resp., Ex. 2.) Attorney Ritter's declaration states that he was traveling on business on June 4 and did not have an opportunity to check his records and respond immediately to the June 4 message. (Ritter Decl. ¶ 13.) He also states that he did not receive a phone message from defendants' counsel prior to the filing of the motion.

Instant admits that the documents were filed in violation of the Confidentiality Order, but contends that "it accidentally filed" the confidential documents in "an innocent clerical error." (Ritter Decl. ¶ 2; Pl.'s Resp. at 1.) Instant argues that sanctions are not warranted for that **[*8]** "innocent oversight." (Pl.'s Resp. at 2-3.)

In their reply brief, defendants request affidavits from Instant and its counsel detailing the filing of the documents, Instant's counsel's response, and whether anyone at Instant has seen the documents. (Defs.' Reply at 6-7.) [Dkt 191.] Defendants also request attorneys' fees estimated at $5,487. (*Id.*)

**Legal Standard**

Defendants' motion does not identify the authority under which it seeks relief. In violating the Confidentiality Order, Instant's conduct could be framed as contempt of court, but defendants' motion is not denominated as such, so the motion will be treated as a request for relief under *Fed. R. Civ. P. 37(b)*, which provides remedies for failing to comply with "an order to provide or permit discovery." *Fed. R. Civ. P. 37(b)(2)(A)*.

It should be noted that there is some disagreement about whether language of *Rule 37(b)(2)* encompasses violations of a protective order governing the production of confidential documents. *Compare Lipscher v. LRP Publications, Inc., 266 F.3d 1305, 1322-23 (11th Cir. 2001)* (holding that *Rule 37(b)* does not encompass protective orders issued pursuant to *Rule 26(c))*, with

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 488-89 (5th Cir. 2012)* **[*9]** (finding that protective order governing production of confidential material fell under *Rule 37(b)(2)*'s definition of "order to provide or permit discovery" and upholding sanctions award); *Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 784 (9th Cir. 1983)* (upholding award of attorneys' fees for violation of a protective order under *Rule 37(b)*). The Seventh Circuit has not spoken to the issue, but courts in this district have disagreed with *Lipscher* and issued sanctions under *Rule 37(b)* for violations of a confidentiality order. *See, e.g., Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03 C 5684, 2004 WL 1459478 at *3 (N.D. Ill. June 29, 2004). The advisory committee notes to *Rule 37(b)* state that "*Rule 37(b)(2)* should provide comprehensively for enforcement" of orders issued under *Rule 26(c)*. *Fed. R. Civ. P. 37* advisory comm. nn. (1970). Thus, in agreement with the Fifth Circuit and other courts in the district, this court concludes that *Rule 37(b)* may be applied to violations of confidentiality orders.

*Rule 37(b)* permits the court to enter "further just orders" (*Fed. R. Civ. P. 37(b)(2)(A)*), and directs that "the court must order the disobedient party, the attorney advising **[*10]** that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust" (*Fed. R. Civ. P. 37(b)(2)(C)*).

**Discussion**

There is no doubt that Instant violated the Confidentiality Order; the only issue is whether sanctions and further relief are justified. Instant claims that the inclusion of the exhibits on the public record was "accidental" and "an innocent clerical error," but the response of Instant's counsel is not consistent with that claim. Upon being notified that Instant had put Connect Search's highly sensitive financial documents that had been marked "Confidential—Outside Counsel Only" on the public record, the response of Instant's counsel was not at all the response of someone who has been notified of a "clerical error." The response of someone who has made an innocent mistake — especially a mistake that violates a court order — is to apologize and take immediate action to correct the mistake. Notably, *not once* in any of the email preceding the filing of defendants' motion is there any apology on the part of Instant's counsel. The first apology **[*11]** from Instant's counsel is attorney Ritter's email the day *after*

2013 U.S. Dist. LEXIS 160251, *11

defendants filed their motion.

Instead, Instant's counsel's response was, in effect, to challenge the designation, demanding that defendants identify what was confidential about the documents before Instant would take any action to rectify its error. That is not the procedure required by the Confidentiality Order, which as described above, requires that the documents be maintained in their confidential status until disputes about designation are resolved. Attorney Ritter admits that instead of acting immediately to seal the documents, he and his co-counsel spent days *with the documents on the public record*, while, they claim, they were trying to negotiate redactions. He admits that it was only on Friday afternoon — after defendants threatened to bring the matter to the court — that he decided to take action to remove the documents from the public record. (Ritter Decl. ¶ 10.) It took another two days for Instant to get the documents sealed. By then Connect Search's confidential documents had been on the public record for almost two weeks, during which time any member of the public, including Instant's officers and employees, **[*12]** could have seen them.

This case is an exceedingly acrimonious lawsuit between two competing businesses. Instant has complained strenuously about defendants' alleged unfair competition. One can imagine that if the situation were reversed and defendants had put Instant's confidential information in the public record for nearly two weeks, Instant would not be satisfied to brush it off as an "innocent clerical mistake."

Defendants are understandably concerned that Instant's officers or employees have seen Connect Search's confidential information in violation of the "Outside Counsel Only" designation. Hence, defendants want the court to order Instant to provide further affidavits disclosing whether anyone at Instant has viewed or had access to any "Outside Counsel Only" documents. Instant's response does not directly answer that question. Instant's counsel Ritter's email of June 6, 2013 stated that "the documents that are the subject of [defendants'] motion have not been sent to [Instant]." (Pl.'s Resp., Ex. 2.) The Illinois Rules of Professional Conduct governing attorney-client relationships, however, require that an attorney "keep a client reasonably informed about the status of a matter." **[*13]** *Ill. R. Prof. Conduct 1.4(a)(3)*. It is hard to believe that Instant's counsel would not have sent to their client a copy of such an important filing as a motion for preliminary injunction and supporting memorandum, including the exhibits, especially given the time that

elapsed before Instant took any action to remove the documents. Even assuming, *arguendo*, that Instant's counsel did not send their client a copy of the memorandum and exhibits, that does not answer the question of whether Instant's employees or officers saw the documents during the almost two weeks they were open to the public.

Accordingly, defendants' requests for further proof on that question is granted. The court is quite certain that, were the situation reversed, Instant would demand no less. Instant is ordered to file a further declaration or affidavit (or more than one if necessary) setting out the facts regarding whether the "Outside Counsel Only" documents included as exhibits to the memorandum were provided to or seen by any officer or employee of Instant at any time, including the time when the documents were on the public record, and whether the contents of those documents were conveyed to anyone but the persons **[*14]** permitted pursuant to the Confidentiality Order.

As to the issue of attorneys' fees, although Instant caused the confidential documents to be sealed before the present motion was filed, the email from Instant's counsel Ritter stating that the documents were not sent to anyone at Instant only came after defendants filed their motion, and two days after defendants originally requested confirmation. Instant's counsel Ritter avers that this delay was due to his traveling, and puts the blame on defendants' counsel for not calling him rather than emailing him. (Ritter Decl. ¶¶ 13-15.) That is not responsive, however, because defendants' counsel's email was addressed to attorney Burke; attorney Ritter was only copied on it. There is no explanation why attorney Burke, the addressee, did not respond at all to defendants during those two days. Given the unnecessary delay in getting the documents removed from the docket caused by Instant's counsel in the first place, and the lack of response, defendants reacted reasonably in filing the day after receiving no response to their confirmation request.

Whether or not the original filing of protected confidential documents was, as Instant characterizes **[*15]** it, a "regrettable, but innocent oversight" (Pl.'s Resp. at 2), Instant's response when the filing was brought to its counsel's attention cannot be justified. Instant should have taken immediate action to correct the matter. That it did not do so takes its conduct out of the category of "innocent mistake" and transforms it into a conscious decision to act contrary to the Confidentiality Order.

2013 U.S. Dist. LEXIS 160251, *15

Accordingly, defendants should be awarded their expenses including attorneys' fees in bringing their motion. This court, however, cannot enter a final order on the award, but can only recommend a disposition to the district judge. *See Cleversafe, Inc. v. Amplidata, Inc., 287 F.R.D. 424, 430 (N.D. Ill. 2012)*. Before a report and recommendation is issued on this matter, the amount of fees should be determined. Defendants have estimated their expenses at $5,487, but further documentation will be needed to substantiate that amount. Prior to any further filing, however, the parties shall meet and confer to determine whether they can agree to an amount. If no agreement can be reached, defendants' submission in support of its request for fees is due by November 22, 2013. Instant may file a response contesting **[*16]** the amount requested by December 6, 2013. The court will then issue a report and recommendation to the district judge.

**Conclusion**

For the aforementioned reasons, Defendants' Emergency Motion for Protective Order and Sanctions [dkt 179] is granted. Plaintiff shall file the affidavit or declaration required by this order no later than November 22, 2013. The parties shall meet and confer to determine whether they can agree to an amount for defendants' fees. If no agreement can be reached, defendants' submission in support of its request for fees is due by November 22, 2013. Plaintiff may file a response contesting the amount requested by December 6, 2013.

/s/ Geraldine Soat Brown

**Geraldine Soat Brown**

**United States Magistrate Judge**

**DATE:** November 8, 2013

End of Document

## *Jacobs v. City of Chi.*

United States District Court for the Northern District of Illinois, Eastern Division

January 16, 2015, Decided; January 16, 2015, Filed

No. 14 CV 5335

**Reporter**

2015 U.S. Dist. LEXIS 5385 *; 2015 WL 231792

LINDSEY JACOBS, Plaintiff, v. CITY OF CHICAGO, et al., Defendants.

## Core Terms

Confidential, designated, parties, documents, files, disclosure, protective order, confidentiality order, marked, seal, alternate, discovery, subpoena, deposition testimony, proposed order, work product, exhibits, portions, redacted, terms, depositions, materials, disclose, Notice, days, requirements, Obligations, inadvertent, non-public, attorneys

**Counsel:  [*1]** For Lindsey Jacobs, Plaintiff: Amanda Sunshine Yarusso, LEAD ATTORNEY, Chicago, IL.

For Jeffrey Stanek, Carlos M. Santiago, City of Chicago, Allison Schloss, Defendants: Kristin Linn Acuff, LEAD ATTORNEY, Sheri L. Wong, City of Chicago Department of Law, Chicago, IL.

**Judges:** Young B. Kim, United States Magistrate Judge.

**Opinion by:** Young B. Kim

## Opinion

### MEMORANDUM OPINION and ORDER

Before the court is the motion of Defendants City of Chicago, Jeffrey P. Stanek, Carlos M. Santiago, and Allison Schloss (collectively, "Defendants"), for the entry of a confidentiality order limiting the dissemination of information contained in documents known as Complaint Registers ("CRs"). For the following reasons, Defendants' motion is granted in part and denied in part:

### Background

The current motion presents an oft-raised issue in *Section 1983* cases: the extent to which police officers' CR files are publicly available, thereby precluding parties from designating them as "confidential" or otherwise limiting their dissemination pursuant to a confidentiality order. (See R. 21, Defs.' Mot.) Here, Defendants' proposed confidentiality order only excludes the "final outcome of cases in which discipline is imposed" from its definition of "Confidential Information," **[*2]** (R. 21-2, Ex. B, Defs.' Proposed Order ¶ 2), while Plaintiff's proposed order excludes the entire CR file from its definition, not just the final outcomes, (R. 21-5, Ex. D, Pl.'s Proposed Order ¶ 2). The parties have also submitted an alternate third proposed order which provides that certain sensitive, non-public information will be considered confidential, and that access to CR files will be limited to the parties and their attorneys in this case unless Plaintiff gives Defendants 30 days written notice allowing Defendants to move for a protective order or review the files to ensure they are properly redacted before public release. (R. 21-7, Ex. F, Alternate Proposed Order ¶¶ 2, 18.)

### Analysis

Courts in this district have frequently grappled with whether confidentiality orders should define CR files as confidential with varying results. *See Calhoun v. City of Chi., 273 F.R.D. 421, 423 (N.D. Ill. 2011)* (collecting cases). But in March 2014, the Illinois Appellate Court held that CR files are not exempt from disclosure under the Illinois Freedom of Information Act ("IFOIA"), *5 ILCS 140/1 et seq. See Kalven v. City of Chi., 2014 IL App (1st) 121846 at ¶ 22 (2014)* (citing *5 ILCS 140/7(1)(n)*). Although *Kalven* definitively held that CR files are subject to public inspection, Defendants argue that the *Kalven* decision is not binding on this court **[*3]** and also does not preclude the application of other exemptions within IFOIA to CR files. (R. 21, Defs.' Mot. ¶ 3.) More specifically, Defendants contend that *IFOIA*

Section 140/7(1)(c) still protects private personal information in CR files from disclosure without written consent, and Section 140/7(1)(f) protects "[p]reliminary drafts, notes, recommendations, memoranda" and other portions of CR files unless they are "publicly cited and identified by the head of the public body." (R. 21, Defs.' Mot. ¶¶ 4-5.) Defendants further argue that IFOIA and *Kalven* aside, courts have generally limited public access to certain materials produced in discovery but not filed in court proceedings, an approach Defendants assert is especially appropriate for CR investigations in which no discipline was imposed. (Id. ¶¶ 6-9.)

In response, Plaintiff contends that *Kalven* eviscerates any support for Defendants' position because information available to the public cannot be deemed "confidential" under the terms of the proposed orders. (R. 31, Pl.'s Resp. ¶¶ 2, 6.) Plaintiff notes that courts in this district have recently relied on *Kalven* to find that defendants did not meet their burden of showing good cause to protect CR files because those files are now subject [*4] to public inspection. (Id. ¶ 5 (citing Anderson v. Ward, No. 13 CV 9056, Dkt. No. 47, 2014 U.S. Dist. LEXIS 180700 (July 10, 2014)); see also Kuri v. City of Chi., No. 13 CV 1653, Dkt. No. 77, 2014 U.S. Dist. LEXIS 180669 (June 11, 2014). Plaintiff further argues that to the extent Defendants have concerns regarding disclosure of private information or an investigator's determinative process, targeted redactions would adequately address those concerns. (Id. ¶ 4.)

In determining whether Defendants have shown good cause for the entry of their proposed protective order, this court must "balance the parties' interests, taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." Calhoun, 273 F.R.D. at 422 (citing Wiggins v. Burge, 173 F.R.D. 226, 229 (N.D. Ill. 1997)). While the *Kalven* decision does not bind this court, the holding in *Kalven* warrants deference because it is an Illinois state court's interpretation of Illinois law. See Bush v. Gore, 531 U.S. 98, 112, 121 S. Ct. 525, 148 L. Ed. 2d 388 (2000) (Rehnquist, C.J., concurring). Similarly, although IFOIA does not control this court's determination of whether Defendants have shown good cause, see Calhoun, 273 F.R.D. at 423, IFOIA is still helpful in making that determination, see Johnson v. Kemps, No. 09 CV 4857, 2011 U.S. Dist. LEXIS 65665, 2011 WL 2550507, at *2 (N.D. Ill. June 20, 2011).

Considering *Kalven*'s interpretation of IFOIA, this court agrees with Plaintiff that marking entire CR files confidential, only excepting "final outcomes" in cases where discipline was imposed, is unjustified. At the same time, this court also agrees with Defendants [*5] that the wholesale release of entire CR files to the public would constitute an unwarranted invasion of personal privacy and could cause unnecessary annoyance or embarrassment. See 5 ILCS 140/7(1)(c); Fed. R. Civ. P. 26(c). The public's interest in access to unfiled discovery materials is less substantial than its interest in court filings and evidence presented at trial. See Coffie v. City of Chi., No. 05 CV 6745, 2006 U.S. Dist. LEXIS 22661, 2006 WL 1069132, at *2-3 (N.D. Ill. Apr. 21, 2006) (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)); see also Bond v. Utreras, 585 F.3d 1061, 1074-75 (7th Cir. 2009) ("Pretrial discovery . . . is usually conducted in private."). The court is also cognizant of the fact that third-party witnesses whose statements are contained in CR files have legitimate privacy interests that warrant protection. See Paine v. City of Chi., No. 06 CV 3173, 2006 U.S. Dist. LEXIS 78182, 2006 WL 3065515, at *8 (N.D. Ill. Oct. 26, 2006).

Balancing the parties' interests, this court finds that a modified version of the parties' proposed alternate order is most appropriate in this case. The alternate order protects sensitive, private information in the CR files while also establishing parameters for the public release of redacted CR documents for purposes other than this litigation. (See R. 21-7, Ex. F, Alternate Proposed Order ¶¶ 2, 18.) This type of approach has been used in other recent orders in this district, including in *Castellanos v. Lawryn*, No. 14 CV 1841, Dkt. No. 50 (Jan. 13, 2015) and *Collier v. City of Chicago*, No. 14 CV 2157, Dkt. No. 30 (Oct. 17, 2014). However, in the interest of simplicity, [*6] the court modifies the proposed alternate order as follows:

• Subsection (h) of Paragraph 2, along with the subsequent paragraph beginning with "'Confidential Information,'" is replaced with "and (h) any other information of a personal, private, sensitive, or non-public nature."

• Paragraph 18 is revised to exclude language regarding the opportunity to move for a protective order, given that officers can always seek such an order without an explicit provision providing for that right.

• Subsections (a) and (b) of Paragraph 18 are removed. Instead, Paragraph 18 is revised to provide that prior to public release, CR files will be redacted to protect the following: (1) information prohibited from disclosure by statute; (2) information of a personal, private, sensitive, or non-

public nature; and (3) any other information agreed to by the parties.

The court believes that as modified above, the alternate order is a reasonable compromise between the parties' positions that serves the interests of both sides. *See Coffie, 2006 U.S. Dist. LEXIS 22061, 2006 WL 1069132, at *1* (noting that seeking to completely bar public dissemination of CR files and seeking an absolute right to use CR files in any way ones chooses are both "extreme positions" that do not **[*7]** "accurately capture the delicate balancing of private and public interests which must occur when both sides have legitimate concerns").

**Conclusion**

For the foregoing reasons, Defendants' motion for a protective order is granted in part and denied in part. The court enters the alternate confidentiality order as modified.

/s/ Young B. Kim

**Young B. Kim**

**United States Magistrate Judge**

**CONFIDENTIALITY ORDER**

Pursuant to *Federal Rule of Civil Procedure 26(c)* and *45 C.F.R. §§ 160* & *164*, and for the reasons set forth in the record, the Court hereby finds good cause to order the following:

**1. Scope**. All materials produced or adduced in the course of discovery, including, initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

**2. Confidential Information**. As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" by the producing party that falls **[*8]** within one or more of the following categories: (a) information prohibited from disclosure by statute, (b) information that reveals trade secrets; (c) research, technical,

commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; (g) personnel or employment records of a person who is not a party to this case; and (h) any other information of a personal, private, sensitive, or non-public nature. Information or documents that are available to the public may not be designated as Confidential Information.

**3. Designation**.

(a) A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL-SUBJECT TO PROTECTIVE **[*9]** ORDER" shall be applied prior to or at the time of the documents are produced or disclosed. Applying the marking "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b) The designation of a document as Confidential Information is a certification by an attorney or a party appearing pro se that the document contains Confidential Information as defined in this order.

**4. Depositions**.

Deposition testimony, including exhibits, is protected by this Order only if designated as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" on the record at the time the testimony is taken. Such designation shall be specific as to the portions that contain Confidential Information. Deposition testimony or exhibits **[*10]** so designated shall be treated as Confidential Information

protected by this Order. Within fourteen days after delivery of the transcript, a designating party may serve a Notice of Designation to all parties of record identifying additional specific portions of the transcript or exhibits that are designated Confidential Information, and thereafter those additional portions identified in the Notice of Designation shall be protected under the terms of this Order. The failure to serve a timely Notice of Designation waives any designation of additional deposition testimony or exhibits as Confidential Information, unless otherwise ordered by the Court.

**5. Protection of Confidential Material**.

(a) General Protections. Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof.

(b) Limited Third-Party Disclosures. The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity except as set-forth in subparagraphs (1)-(9). Subject to these **[*11]** requirements, the following categories of persons may be allowed to review Confidential Information:

(1) **Counsel**. Counsel for the parties and employees of counsel who have responsibility for the action;

(2) **Parties**. Individual parties and employees of a party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

(3) **The Court and its personnel**;

(4) **Court Reporters and Recorders**. Court reporters and recorders engaged for depositions;

(5) **Contractors**. Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(6) **Consultants and Experts**. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons

have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

(7) **Witnesses at depositions**. During their depositions, witnesses in this action to whom disclosure **[*12]** is reasonably necessary. Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(8) **Author or recipient**. The author or recipient of the document (not including the person who received the document in the course of the litigation); and

(9) **Others by Consent**. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

(c) Control of Documents. Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

**6. Inadvertent Failure to Designate [*13]** . An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony. If a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to so designate was

inadvertent and where the material is subsequently designated Confidential Information.

**7. Filing of Confidential Information**. This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must **[*14]** comply with *Local Rule 26.2*.

**8. No Greater Protection of Specific Documents**. Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

**9. Challenges by a Party to Designation as Confidential Information**. The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge:

(a) Meet and Confer. A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days.

(b) Judicial Intervention. A party **[*15]** that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

**10. Action by the Court**. Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

**11. Use of Confidential Documents or Information at Trial**. Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential **[*16]** Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

**12. Confidential Information Subpoenaed or Ordered Produced in Other Litigation**.

(a) If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b) The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c) The **[*17]** purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the other party to this case.

**13. Challenges by Members of the Public to Sealing**

2015 U.S. Dist. LEXIS 5385, *17

**Orders**. A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

**14. Obligations on Conclusion of Litigation**.

(a) Order Continues in Force. Unless otherwise agreed or ordered, this Order shall remain in force after dismissal **[*18]** or entry of final judgment not subject to further appeal.

(b) Obligations at Conclusion of Litigation. Within thirty days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" under this Order, including copies as defined in ¶3(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so. Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index which refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and one complete set of all documents filed with the Court including those filed under seal. Any retained Confidential **[*19]** Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation provided that its use does not disclose or use Confidential Information.

(c) Retention of Work Product and one set of Filed Documents. Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and (2) one complete set of all documents filed with the Court including those filed under seal. Any retained Confidential Information shall continue to be protected under this Order. An attorney may use his

or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information.

(d) Deletion of Documents Filed under Seal from Electronic Case Filing ("ECF") System. Filings under seal shall be deleted from the ECF system only upon order of the Court.

**15. Order Subject to Modification**. This Order shall be subject to modification by the Court on its own initiative or on motion of a party **[*20]** or any other person with standing concerning the subject matter.

**16. No Prior Judicial Determination**. This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under *Rule 26(c) of the Federal Rules of Civil Procedure* or otherwise until such time as the Court may rule on a specific document or issue.

**17. Persons Bound**. This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

**18. Public Release of Complaint Register Files**. Any disciplinary actions, files and attachments to such files generated by the investigation of deaths in custody, uses of deadly force, and complaints of misconduct by Chicago police officers (generally referred to as "Complaint Register" files or "CR Files") shall be provided preliminary protection pursuant to this Order, with their review and access limited only to the parties and their attorneys in this case subject to the protections of **[*21]** this Order and shall not be released to any persons not involved in this case, except upon written notice, thirty (30) days prior, to the parties and their attorneys, to permit such attorneys and parties to provide a redacted copy of the CR File, which will be produced without the designation "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER." The following may be redacted from this second copy: (1) information prohibited from disclosure by statute, including but not limited to the Illinois Freedom of Information Act, *5 ILCS 140/1, et seq.*, the Illinois Personnel Records Review Act, 820 ILCS 40/.01, *et seq*., and the Juvenile Court Act, *705 ILCS 405/1-1, et seq*.; (2) information of a personal, private, sensitive, or non-public nature; and (3) any other information agreed to by the parties.

Disclosure of CR Files and their attachments to any persons beyond the parties and their attorneys in this case, or third parties otherwise authorized pursuant to Section 5 of this Confidentiality Order, may be made only in the manner consistent with the redacted version of such CR Files produced by the responding party as set forth above.

If any disputes arise pursuant to the application of this provision, such document(s) cannot be publicly released pursuant **[*22]** to this Section without a final determination by this Court.

**ENTER**:

/s/ Young B. Kim

Young B. Kim

United States Magistrate Judge


**ATTACHMENT A**


**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Confidentiality Order dated January 16, 2015, in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her to use materials designated as Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

**Name**: __

**Job Title**: __

**Employer**: __

**Business Address**: __

**Date**: __

**Signature**: __

_____

End of Document

# *Cummins-Allison Corp. v. Glory Ltd.*

United States District Court for the Northern District of Illinois, Eastern Division

December 31, 2003, Decided ; January 2, 2004, Docketed

No. 02 C 7008

**Reporter**

2003 U.S. Dist. LEXIS 23653 *; 2003 WL 26620151

CUMMINS-ALLISON CORP., an Indiana Corporation, Plaintiff, vs. GLORY LTD., a Japanese Corporation; GLORY SHOJI CO., LTD., a Japanese Corporation; and GLORY (U.S.A.) INC., a California Corporation, Defendants.

**Subsequent History:** Partial summary judgment granted by, in part, Partial summary judgment denied by, in part *Cummins-Allison Corp. v. Glory, Ltd., 2005 U.S. Dist. LEXIS 6150 (N.D. Ill., Mar. 28, 2005)*

**Prior History:** *Cummins-Allison Corp. v. Glory Ltd., 2003 U.S. Dist. LEXIS 16454 (N.D. Ill., Sept. 17, 2003)*

**Disposition:** [*1] Glory's motion to amend protective order GRANTED.

## Core Terms

Patent, Confidential, protective order, patent application, prosecuting, confidential information, competitive, attorneys, modify, inadvertent, subject matter, disclosure, parties, argues, decisions, shaping, one year, designation, documents, pricing, courts, declarations, competitor, pendency, appeals, barring, lawsuit, revised, adopts, counsel of record

## Case Summary

### Procedural Posture

Defendant competitors filed a motion to modify a stipulated protective order, seeking to add a proposed new classification of confidential patent prosecution information, to bar plaintiff competitor's counsel from receiving the information. Defendants argued, in the alternative, that plaintiff's counsel be barred from participating in the prosecution of any patent applications relating to the subject matter of the patents-in-suit.

### Overview

The parties were competitors with respect to the sale of currency discriminators. Plaintiff alleged that defendants had infringed two of its patents. Plaintiff's counsel of record, who had been extensively involved in prosecuting plaintiff's patent applications in the Patent and Trademark Office, were strictly outside patent attorneys for plaintiff. The magistrate initially rejected plaintiff's argument that defendants waived their right to seek to modify the protective order. The magistrate emphasized that plaintiff had not attempted to argue that counsel had no role in shaping defendants' patent applications and how they were prosecuted. The magistrate concluded that counsel were involved in "competitive decisionmaking," which included advice by counsel in prosecuting patent applications. A categorical exclusion order was unwarranted, however, because it could limit counsel's ability to fully represent and advise plaintiff. Such a broad order would not be reasonably tailored (much less, absolutely necessary) to the risk of inadvertent disclosure that defendants sought to address. Instead, the magistrate limited the ability of counsel to prosecute certain patent applications.

### Outcome

The magistrate granted defendant's motion to amend the protective order by creating a category of documents entitled confidential patent prosecution information. The court denied defendant's request to bar the attorneys from receiving the information. However, the court modified the protective order to indicate that information could be shown only to persons qualified to receive it.

## LexisNexis® Headnotes

Civil Procedure > Discovery &
Disclosure > Discovery > Protective Orders

Evidence > Burdens of Proof > General Overview

HN1[⬇] Discovery, Protective Orders

The party seeking to modify a protective order has the burden of showing good cause for its requested modifications.

Civil Procedure > Discovery &
Disclosure > Discovery > Protective Orders

HN2[⬇] Discovery, Protective Orders

Courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties.

Evidence > Privileges > Trade Secrets > General Overview

Trade Secrets Law > Misappropriation Actions > Accidental & Mistaken Disclosures

HN3[⬇] Privileges, Trade Secrets

In deciding whether to bar or condition the access by counsel, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access. A denial of access cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order. Rather, the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party must govern any concern for inadvertent or accidental disclosure. The inquiry into those factual circumstances often centers on whether counsel is engaged in competitive decisionmaking.

Evidence > Privileges > Trade Secrets > General Overview

HN4[⬇] Privileges, Trade Secrets

The phrase "competitive decisionmaking" would appear

serviceable as a shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor. This listing of client decisions is not limited to pricing and product design. Those are only examples of the kinds of client decisions that may be made in light of similar or corresponding information about a competitor. A number of courts have held that advice by counsel in prosecuting patent applications falls within the scope of "competitive decisionmaking."

Civil Procedure > Attorneys > General Overview

HN5[⬇] Civil Procedure, Attorneys

Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary.

**Counsel:** For Cummins-Allison Corporation, PLAINTIFF: Bruce L Bower, Winston & Strawn LLP, Chicago, IL USA. Edward L Foote, Winston & Strawn LLP, Chicago, IL USA. John Edmund Mooney, Winston & Strawn LLP, Chicago, IL USA. Jeffrey G Knoll, Wood, Phillips, Vansanten, Hoffman & Ertel, Chicago, IL USA. Stephen Gary Rudisill, Jenkens & Gilchrist, Chicago, IL USA. Edward Francis McCormack, Jenkens & Gilchrist, Chicago, IL USA. Keith Carter Hannigan, Jenkens & Gilchrist, Chicago, IL USA. Paul Richard Kitch, Jenkens & Gilchrist, Chicago, IL USA. Jeffrey Leonard Hamera, Jenkins & Gilchrist, Chicago, IL USA.

For Glory Ltd., Glory Shoji Co., Ltd., DEFENDANTS: Joseph Kent Mathewson, Donohue, Brown, Mathewson & SMYTH, USA. Charles E Harper, Jr., Quarles & Brady LLP, Chicago, IL USA. Stuart Lubitz, Hogan & Hartson, LLP, Los Angeles, CA USA. David L Lubitz, Hogan & Hartson, LLP, Shinjuk-Ku Tokyo, Japan.

For Glory (USA) Inc., DEFENDANT: Steven P Hollman, Hogan & Hartson, Washington, DC USA. Joseph Kent Mathewson, Donohue, Brown, Mathewson & SMYTH, Chicago, IL USA. Charles E Harper, Jr., Quarles & Brady LLP, Chicago, IL USA. Stuart Lubitz, **[*2]** Hogan & Hartson, LLP, Los Angeles, CA USA. David L Lubitz, Hogan & Hartson, LLP, Shinjuk-Ku Tokyo, Japan.

**Judges:** District Judge Ronald A. Guzman. SIDNEY I. SCHENKIER, United States Magistrate Judge.

2003 U.S. Dist. LEXIS 23653, *2

Opinion by: SIDNEY I. SCHENKIER

# Opinion

**MEMORANDUM OPINION AND ORDER**

In this opinion, we address an issue that was raised early in the litigation but, until recently, has lain dormant: the right of the plaintiff, Cummins, to show certain documents produced in this litigation by the defendants (collectively referred to as "Glory"), to Stephen G. Rudisill and Paul R. Kitch, attorneys who are both counsel of record for Cummins in this lawsuit and counsel who prosecute patent applications for Cummins.

Glory has filed a motion to modify the stipulated protective order entered October 10, 2002 (doc. # 129). In its motion, Cummins seeks to do the following: (a) add a new provision (paragraph 3(c)) creating a class of documents entitled "Confidential -- Patent Prosecution Information," which would consist of information that is "Highly Confidential" as defined by the protective order, and that additionally relates to "non-public patent applications and related communications or design or to research [*3] and development activities concerning current or future products"; (b) add a new provision (paragraph 9(b)) prohibiting Messrs. Rudisill and Kitch from receiving Glory's "Confidential -- Patent Prosecution Information"; (c) in the alternative, provide in proposed paragraph 9(b) that if Messrs. Rudisill or Kitch receive such documents, they would be barred from participating in the prosecution of any patent applications "relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals"; and (d) make other, related changes to paragraphs 11, 12 and 25 of the protective order.

Cummins does not object to the proposed new classification of "Confidential -- Patent Prosecution Information," but objects to barring Messrs. Rudisill and Kitch from receiving them. Cummins further objects to any limitations on the ability of Messrs. Rudisill or Kitch to prosecute patent applications if they receive "Confidential -- Patent Prosecution Information"; in the alternative, Cummins argues that if limitations are imposed, they should differ from those suggested by Glory. Finally, Cummins disagrees [*4] with the changes to paragraphs 11, 12 and 25 of the protective order proposed by Glory.

For the reasons set forth below, the Court rules as follows:

A. The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential -- Patent Prosecution Information."

B. The Court DENIES Glory's request to bar Messrs. Rudisill and Kitch from receiving Confidential -- Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

C. The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

D. The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

E. The Court *sua sponte* modifies paragraph 16 of the protective to make clear that it applies to Confidential -- Patent Prosecution Information.

I.

We begin with a brief review of the background facts relevant to this motion. Cummins and Glory are competitors with respect to the [*5] sale of currency discriminators (which are machines that determine the authenticity and denomination of a stack of currency, and tabulate its value). Since early 1990, Cummins has prosecuted numerous patent applications relating to currency discriminators. [1]

---

[1] In an earlier opinion in this case recommending denial of Cummins's motion for preliminary injunction, the Court examined in detail the various applications: (a) Application No. 07/475,111, dated February 5, 1990; (b) Application No. 07/885,648, dated May 19, 1992, which was a continuation-in-part ("CIP") of Application No. '111, and which led to the issuance of the '196 patent on March 15, 1994; (c) Application No. 08/127,334, dated September 27, 1993, which was a CIP of Application No. '648, and which resulted in the issuance of Patent No. 5,467,405 on November 14, 1995; (d) Application No. 08/339,337, dated November 14, 1994, which was a CIP of Application No. '334, and which resulted in the issuance of Patent No. 5,692,067 on November 25, 1997; (e) Application No. 08/841,203, dated April 29, 1997, which was a CIP of Application No. '337, and which resulted in the issuance of Patent No. 6,028,951 on February 22, 2000; and (f) Application No. 09/453,200, which was a CIP of Application No. '203, and which resulted in the issuance of the '806 patent on October 1, 2002.

[*6] On October 1, 2002, Cummins brought this suit alleging that Glory had infringed United States Patent No. 6,459,806 ("the '806 patent"), issued to Cummins on October 1, 2002. Since that time, Cummins has amended the complaint to add claims of infringement of United States Patent No. 5,291,196 ("the '196 patent"). Messrs. Rudisill and Kitch -- along with several other attorneys of the law firm of Jenkins & Gilchrist -- have been litigation counsel of record for Cummins from the beginning of this lawsuit. On October 11, 2002, Jeffrey Knoll, of the law firm of Wood, Phillips, Van Santen, Hoffman & Ertel (now known as Wood, Phillips, Kutz, Clark & Mortimer), filed an appearance for Cummins (doc. # 11). In April 2003, three attorneys from the law firm of Winston & Strawn filed additional appearances as counsel of record for Cummins (doc. ## 98-99).

In addition to being counsel of record, Messrs. Rudisill and Kitch have been extensively involved in prosecuting Cummin's patent applications in the Patent and Trademark Office ("PTO"), including the applications which led to the '806 and '196 patents, which are directly at issue in this litigation (see Cummins Mem. at 3). Messrs. Rudisill [*7] and Kitch also have been involved in prosecuting eight other Cummins patent applications that are related to the '806 and '196, including one patent that was the subject of prior litigation in this district between the parties (the '067 patent) and three patents at issue in a lawsuit currently pending in the Eastern District of Texas (the '067 patent, United States Patent No. 5,815,592, and United States Patent No. 6,381,354 (Glory Mot. at 3 n.5 and Ex. 1).

Messrs. Rudisill and Kitch have submitted unrebutted declarations stating that they are strictly outside patent counsel for Cummins: neither of them is - or ever has been - a shareholder, officer or employee of Cummins (Cummins Mem., Ex. A, P3; Ex. B, P3). It also is undisputed that neither Mr. Rudisill or Mr. Kitch is involved in Cummin's product design, marketing, pricing, or in "planning decisions" (Id., Ex. A, P4; Ex. B, P4), and that neither has ever been cited for any ethical violation, or for violation of a protective order (Id., Ex. A, P5; Ex. B, P5). However, Messrs. Rudisill and Kitch are silent on their roles in advising Cummins on the strategy of what to claim in a patent application, or how to respond when [*8] the PTO (as was often the case with the patents in suit and the applications that led to them) raised questions or rejected claim. Cummins does not assert that Messrs. Rudisill and Kitch are merely conduits through which Cummins transmits applications that have been fully formed by Cummins, without their input.

Messrs. Rudisill and Kitch state that they have been principal patent counsel in this litigation, and in that capacity, have devoted substantial time to familiarizing themselves with the patents at issue (which should not have been a time consuming task, since Messrs. Rudisill and Kitch prosecuted the applications that led to those patents) and with Glory's equipment and related technology (Cummins Mem., Ex. A, P6; Ex. B, P6). They do not claim to be the only attorneys representing Cummins who have done so, or to be the only attorneys of record for Cummins who are experienced patent attorneys. [2] Cummins also states that it has not yet shared with "patent prosecutors. . .selected confidential documents" identified by Glory (Cummins Mem. at 2) - thereby indicating that neither Mr. Rudisill nor Mr. Kitch has yet invested time in reviewing and analyzing materials that Glory seeks [*9] to protect as "Confidential - Patent Prosecution Information." [3]

[*10] II.

HN1[⇗] As the party seeking to modify the protective order, Glory has the burden of showing good cause for its requested modifications. *SmithKline Beecham Corp. v. Synthon Pharmaceuticals Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002)*; *Jochims v. Isuzu Motors, Ltd., 145*

---

[2] According to its website, the Wood, Phillips firm specializes in intellectual property matters. However, the Wood, Phillips lawyer who appeared for Cummins, Mr. Knoll, no longer is with that firm and no longer appears to be practicing in Chicago; it is unclear whether Wood, Phillips has any continuing role on behalf of Cummins in this case. With respect to the three Winston & Strawn attorneys who are of record, Edward L. Foote is the only one who, judging from the Winston & Strawn website, has experience in litigating intellectual property matters. We do not know whether any other Winston & Strawn intellectual property lawyers are assisting Cummins without having formally appeared in the case.

[3] We note that while this representation is made in Cummins's memorandum, the declarations offered by Messrs. Rudisill and Kitch are silent on this point. Moreover, the representation in Cummins's memorandum differs from what Cummins stated during a December 11, 2003 hearing to set the briefing schedule on this motion. At that time, Cummins stated that it had not shown the materials to both Mr. Rudisill and Mr. Kitch, but that one of them had seen the materials. Given the Court's decision that Messrs. Rudisill and Kitch will be barred from prosecuting certain patent applications if they review Glory's Confidential - Patent Prosecution Information, the Court will require each of them to provide a declaration to Glory within 14 days of this order stating whether they have reviewed such information.

*F.R.D. 499, 501-502 (S.D. Iowa 1992)* (citing cases). As explained above, Cummins does not dispute the existence of good cause to modify the protective order to add paragraph 3(c), which creates a new class of Confidential - Patent Prosecution Information.

However, Cummins raises several challenges to Glory's request to bar Messrs. Rudisill and Kitch from viewing Confidential - Patent Prosecution Information. *First,* Cummins argues that the Court should not even address the merits of Glory's request because the request is untimely (Cummins Mem. at 2-3). *Second,* Cummins argues that Glory has failed to establish good cause to place any conditions, other than those already in the protective order governing Confidential and Highly Confidential Information, on the right of Messrs. Rudisill and Kitch to receive that information (*Id.* at 4-11). *Third,* Cummins argues that if any **[*11]** conditions are placed on the right of Messrs. Rudisill and Kitch to receive Confidential - Patent Prosecution Information, the conditions that Glory requests are too broad (*Id.* at 12-14). We address each of these arguments below.

**III.**

We begin the analysis with consideration of Cummins's argument that the Court need not address Glory's request to modify the protective order. Cummins argues that the protective order in this case was negotiated by the parties and entered by the Court (with modifications irrelevant to the pending motion) on October 11, 2002, without Glory seeking to include the provisions concerning Confidential - Patent Prosecution Information or access to it that Glory now requests. Cummins argues that at the time the protective order was entered more than one year ago, Glory knew that Messrs. Rudisill and Kitch were both counsel of record and patent prosecution counsel, and that it now is too late for Glory to complain (Cummins Mem. at 2-3). We disagree.

The protective order entered on October 11, 2002 was not written in stone. The stipulated protective order here specifically provides that either party "may apply to the Court for additional protection **[*12]** or disclosure beyond the terms of this Order . . ." (Cummins Mem., Ex. D: 10/11/02 Protective Order, P23). And even without such a provision, *HN2*[↑] "courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties." *SmithKline Beecham, 210 F.R.D. at 166.* Nor do we agree with Cummins that the issue now before

the Court "has been previously decided." The original protective order did not address the question of access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information, and the issue was not raised with the Court prior to the entry of the protective order. Therefore, that issue was not decided by the Court.

We also reject Cummins's related argument that having agreed to the original protective order, Glory has now waived its right to seek to modify the protective order to address the issue of access by Messrs. Rudisill and Kitch to Confidential -- Patent Prosecution Information (Cummins Mem. at 3). We might be more receptive to that argument if, as Cummins suggests, Glory had remained silent for one year after the entry of the protective order before alerting Cummins to Glory's **[*13]** request for this modification. However, Glory raised this issue within a few weeks after the protective order was entered. The Court invited briefing on the issue in an order dated October 31, 2002 (doc. # 18). The parties' attempts to resolve the issue took a backseat to the expedited discovery and briefing on Cummins's preliminary injunction motion (*see* Glory Motion, Ex. 5: 11/21/02 Tr. at 20-21). When the matter was not resolved by the time that the parties completed expedited discovery, the Court suggested that the parties defer the issue until after the preliminary injunction hearing, a suggestion that was acceptable to all parties (*Id.,* Ex. 6: 1211/02 Tr. at 16-17). When Cummins itself later moved to modify the protective order for other reasons, Glory made clear that Glory still sought a modification to the protective order to address the issue of access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information (*see* doc. # 106: 05/20/03 Glory Mem. at 4).

Thus, Cummins cannot seriously argue that Glory failed to raise this issue soon *after* the entry of the stipulated protective order. Cummins does raise the question of why Glory **[*14]** failed to do so *before* the entry of the protective order (Cummins Mem. at 3). Glory does not address this point either in its motion or reply. However, we note that the stipulated protective order was entered only ten days after Cummins filed suit. The parties did not then have the luxury of time to contemplate everything that should be covered by in the protective order. Cummins had sought expedited discovery and an early hearing on its motion for a preliminary injunction; and, at a status hearing on October 9, 2002, the Court indicated its intent to grant that request (if the parties could not agree to a standstill, or a settlement, or an accelerated trial on the merits). Given the hectic pace of

2003 U.S. Dist. LEXIS 23653, *14

the early stages of the case, the Court can understand if, through oversight, Glory failed to address this issue when the stipulated protective order was presented to the Court.

Moreover, Cummins failed to show that it has suffered any prejudice by the delay in this issue finally being presented to the Court for resolution. Cummins cannot claim that it showed the materials at issue to its patent prosecutors in reliance on the absence of any provision in the protective order prohibiting **[*15]** Cummins from doing so. To the contrary, Glory plainly raised this issue at the time of the initial document production, and Cummins says that pending the resolution of this issue, Cummins has honored Glory's request that Cummins not show Confidential -- Patent Prosecution Information to patent prosecutors (Cummins Mem. at 2). In these circumstances, while we do not condone Glory's failure to address the issue of access by Messrs. Rudisill and Kitch to Confidential -- Patent Prosecution Information at the time the stipulated protective order was first presented to the Court, we will not penalize Glory for that failure by refusing to address the issue now.

## IV.

HN3[↑] In deciding whether to bar or condition the access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information, we must "balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access." *Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437, No. 98 C 7408, 1999 WL 618969, at *2 (N.D. Ill. Aug. 9, 1999)*. A denial of access "cannot rest on a general assumption that one group of lawyers **[*16]** are more likely or less likely inadvertently to breach their duty under a protective order." *U.S. Steel v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)*. Rather, the "factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, . . ., must govern any concern for inadvertent or accidental disclosure." *Id.*

The inquiry into those "factual circumstances" often centers on whether counsel is engaged in "competitive decisionmaking." *See U.S. Steel, 730 F.2d at 1468* and n.3; *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *2*. In this case, the dispute between the parties centers on the threshold question of what is included within the phrase "competitive decisionmaking." Glory argues that Messrs. Rudisill and

Kitch long have been -- and currently are -- involved in shaping and prosecuting patent applications relating to the subject matter of this lawsuit (Glory Motion at 3), and that this conduct constitutes "competitive decisionmaking" (*Id.* at 6). By contrast, Cummins asserts that this competitive decisionmaking is limited to counsel's involvement in a client's "business decisionmaking, **[*17]** " and that Messrs. Rudisill and Kitch are not involved in Cummins's business decisions (Cummins Mem. at 9, 10-11).

For the reasons that follow, we believe that Glory has the better of this definitional argument. We first explain how we reach that conclusion, and then apply that conclusion to the dispute now before us.

## A.

We start with the definition of "competitive decisionmaking" provided in *U.S. Steel:*

> HN4[↑] The phrase would appear serviceable as a shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*730 F.2d at 1468 n.3.* Plainly, the *U.S. Steel* court's listing of client decisions was not limited to "pricing and product design." The court's use of "etc." reveals that those are only examples of the kinds of client decisions that may be made "in light of similar or corresponding information about a competitor." A number of courts have held that advice by counsel in prosecuting patent applications falls within **[*18]** the scope of "competitive decisionmaking."

In *Motorola, Inc. v. Interdigital Technology Corp., No. 03-488-LON, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994)*, the plaintiff moved to bar defendant's trial counsel -- who also prosecuted patent applications for the defendant -- from access to the plaintiff's confidential information. The court reasoned that prosecuting patent applications involves competitive decisionmaking activities: "the process of prosecuting patent applications . . . involves decisions of scope and emphasis, . . . [Patent counsel] can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die.'" *1994 U.S. Dist. LEXIS 20714, at *11*. The court

further found that the risk that the plaintiff's patent counsel would inadvertently use the defendant's confidential information was substantial:

> Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean [*19] task, for as soon as one idea would be stamped 'untainted,' another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [defendant's] attorneys may be.

*Id. at *14-15*. Based on this analysis, the court barred defense counsel who received the plaintiff's confidential information from prosecuting any of the defendant's patent applications "relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion of the present litigation, including appeals." *Id. at *20*. The court held that this limitation properly balanced the risk of inadvertent disclosure with the hardship to the defendant from that limitation. *Id. at *15-16*.

In *Mikohn Gaming Corp. v. Acres Gaming, Inc., 50 U.S.P.Q.2d 1783 (D. Nev. 1998)*, the court was presented with a situation in which the defendant's trial counsel also prosecuted patent applications for the defendant. As do Messrs. Rudisill and Kitch here, the patent counsel in *Mikohn* disavowed any relationship with the defendant as an officer, board member or employee, [*20] or any role in advising the defendant on business strategies regarding product design, development, pricing, or marketing. However, finding the reasoning in *Motorola* persuasive, the court held that counsel's admitted role in prosecuting patent applications, and providing legal advice and counseling in the field of intellectual property, constituted involvement in competitive decisionmaking:

> The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. . . . In light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive.

*50 U.S.P.Q.2d at 1785*. The court in *Mikohn* barred defendant's patent counsel from access to the plaintiff's confidential information, finding that the hardship to defendant was mitigated by the presence of other patent counsel in the case representing the defendant and, in

any event, was outweighed by the risk of unauthorized disclosure.

In *Interactive Coupon*, the court was presented with a request to bar certain plaintiff's attorneys, who were also prosecuting patent applications for the plaintiff, [*21] from reviewing the defendant's confidential documents. The court reviewed the analysis in *Motorola* and *Mikohn*, and posed the central question as whether the plaintiff's law firm's "prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process." *1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *3*. The court answered that question in the affirmative, explaining that competitive decisionmaking "is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted." *Id*. Although patent counsel stated that they did not participate in the plaintiff's competitive business decisions, product pricing or design, and general business planning or strategizing, the court found that these statements failed to address the role of counsel in prosecuting and shaping patent applications. *Id*. As a result, the court ordered that any patent counsel who "are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents [*22] in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals." *1999 U.S. Dist. LEXIS 12437, [WL] at *4*. [4]

The Court finds the discussion of "competitive decisionmaking" in these opinions persuasive, as it reflects the reality of the way in [*23] which patent applications are prosecuted. As this case vividly demonstrates, patent applications are not always fully formed and unchanging when they are filed. *See* note 1,

---

[4] In its reply, Glory cites two other decisions that also found patent prosecutions to be included with "competitive decisionmaking," and that barred counsel who received an adversary's confidential information from prosecuting related patent applications for a period of time. *See Chan v. Intuit, Inc., 218 F.R.D. 659 (N.D. Cal. 2003)*; *In re Pabst Licensing, GmbH, 2000 U.S. Dist. LEXIS 6374, No. MDL 1298, 2000 WL 554219, at *4 (E.D. La. May 4, 2000)* ("It is clear that the advice and participation of the Pabst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the non-Pabst parties confidential information").

*supra.* Patent applications may be revised in order to respond to a number of factors that may arise, such as concerns expressed by a PTO examiner -- or information about other products that have entered or are about to enter the market.

We would expect patent prosecution counsel to be intimately involved in deciding how to shape the original application, or how later to revise it. It is that intimate involvement in the shaping and revision of patent applications that provides for the risk that patent counsel inadvertently will use information obtained from a party in patent litigation in shaping the application. As the *Motorola* court quite properly observed, this is not a criticism of the ethics of any particular attorneys or of the bar in general. Rather, it is a recognition of the limits of human beings to completely compartmentalize the multiple sources from which they obtain information.

The Court has considered Cummins's criticisms of the competitive decisionmaking analysis in *Motorola, Mikohn,* **[*24]** and *Interactive Coupon,* but finds them unpersuasive. We do not agree that *Motorola* and *Mikohn* give "face time" but disregarded the *U.S. Steel* admonition by relying on a general assumption that disclosure of confidential information to patent prosecution counsel will run the risk of inadvertent disclosure (Cummins Mem. at 7). Rather, those decisions examined the role of patent attorneys in prosecuting patents, and concluded that their roles -- and not the mere label of "patent prosecutor" -- brought them within the scope of what *U.S. Steel* referred to as competitive decisionmaking. Nor, in the Court's view, did the *Mikohn* court "essentially ignore[]" affidavits stating that the patent prosecutors were not engaged in competitive decisionmaking (Cummins Mem. at 8). Rather, the *Mikohn* court found that with respect to what the attorneys did in prosecuting the patent applications, the issue the court considered central, the affidavits were "so general as to be virtually meaningless." 50 U.S.P.Q.2d at 1786.

Cummins also argues that the definition of competitive decisionmaking employed by these decisions is too broad, and urges **[*25]** that the Court instead follow the approach in *MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762 (D. Md. 2003).* In that case, the court -- calling the decision a "close call," *id. at 773* -- rejected the defendants' argument that the plaintiff's patent prosecution counsel was a competitive decisionmaker. Glory correctly distinguishes *MedImmune* on the ground that, unlike the case in *Mikohn* and here, there was no indication in *MedImmune* that the plaintiff's counsel "was currently prosecuting patents on the exact same subject matter of the litigation" (Glory Reply at 5, quoting *MedImmune, 271 F. Supp. 2d at 775 n.14*).

However, that distinction is not a complete answer to the *MedImmune* analysis, because the court there directly expressed its disagreement with the *Interactive Coupon* analysis, on the ground that it "amounts to a *per se* prohibition on patent counsel" acting as both trial counsel and patent prosecutor. *Id. at 774 n.13.* In our view, the *MedImmune* court fails to come to grips with the role of a patent prosecutor in shaping the way in which a patent application is written, or how **[*26]** role of the patent prosecutor, when combined with the knowledge of a competitor's confidential information gained through the litigation process, creates a risk of inadvertent use of that information to advance a client's patent prosecution. We are not persuaded by *MedImmune* that the courts in *Motorola, Mikohn,* and *Interactive Coupon* were incorrect in their analysis of the role performed by patent prosecutors, or in their conclusion that this role brings them within the scope of competitive decisionmaking that creates a risk of inadvertent disclosure of confidential information.

That said, we understand the concern expressed by the *MedImmune* court about creating a *per se* rule that patent prosecutors cannot act as litigation counsel. On that point, we have three observations. *First,* as we will explain below, we believe it would be rare that patent prosecution counsel would be absolutely barred from reviewing confidential information, as was the case in *Mikohn* (the opinion does not disclose whether some other alternative had been proposed). Rather, under the *Interactive Coupon* approach, the party could choose not to disclose confidential information to **[*27]** patent prosecution counsel, in which case that counsel could continue to prosecute patent applications; or, the party could choose to reveal confidential information to patent prosecution counsel, and accept limitations on that attorney's ability to prosecute certain patent applications for a period of time. *Second,* any limitation would apply as to the prosecution of patent applications relating to the subject matter of the patents in suit; it would not bar counsel from prosecuting unrelated patent applications in the PTO. *Third,* to the extent that the *Interactive Coupon* analysis would make it difficult for patent counsel to act unfettered both as litigation counsel and prosecution counsel, that difficulty is the proper consequence of the need to protect against inadvertent disclosure.

2003 U.S. Dist. LEXIS 23653, *27

**B.**

The application of this analysis to the present case is straightforward. Cummins does not dispute that Messrs. Rudisill and Kitch have been -- and currently are -- extensively involved in prosecuting patent applications related to the subject matter of this litigation. The declarations submitted by Messrs. Rudisill and Kitch state that they have no role in Cummins's product design, **[\*28]** marketing, pricing or planning decisions, and have no affiliation with Cummins other than as its counsel. But, these declarations suffer from the same shortcoming as the affidavits offered in *Mikohn* and *Interactive Coupon:* the Rudisill and Kitch declarations are silent about their respective roles in shaping the many patent applications, revisions, and responses to PTO examiner questions that they have handled for Cummins, and that are directly related to the subject matter of this litigation.

Cummins has not attempted to argue that Messrs. Rudisill and Kitch have no role in shaping Cummins' patent applications and how they are prosecuted; to the contrary, Cummins concedes that they have been "centrally involved" in those prosecutions (Cummins Mem. at 3). Rather, Cummins argues that competitive decisionmaking should be defined in a way that does not encompass that role. That argument has failed, and thus Cummins is left with no other argument to avoid the conclusion that Messrs. Rudisill and Kitch are involved in competitive decisionmaking as that term was defined in *Motorola,* *Mikohn* and *Interactive Coupon,* and as the Court has defined it here.

**V.**

In light **[\*29]** of the determination that Messrs. Rudisill and Kitch are involved in competitive decisionmaking, the Court considers what limitations should be placed on their access to Glory's Confidential -- Patent Prosecution Information. Glory seeks to bar those attorneys from having any access to that information; in the alternative, Glory asks that the Court order that Messrs. Rudisill and Kitch, or any other attorneys, who receive such information "shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals."

We reject Glory's request to bar Messrs. Rudisill and Kitch from having any access to the Confidential -- Patent Prosecution Information. In balancing the risk of inadvertent disclosure against the hardship to Cummins from such a categorical exclusion order, the Court is mindful that *HN5*[↑] "disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993)* (quoting *Schiessle v. Stephens, 717 F.2d 417, 419-20 (7th Cir. 1983)* **[\*30]** ). While an order barring Messrs. Rudisill and Kitch from access to Glory's Confidential -- Patent Prosecution Information would not formally bar them from continuing to participate in the litigation, such an order might limit their ability to fully represent and advise Cummins. Whether the hardship resulting from such an order would be of the nature and extent claimed by Cummins is uncertain. But, any hardship to Cummins created by an order barring access altogether would be unwarranted, because such a broad order would not be reasonably tailored (much less, absolutely necessary) to the risk of inadvertent disclosure that Glory seeks to address. The risk created by giving Messrs. Rudisill and Kitch access to that information is not that this will create unfairness to Glory in defending this lawsuit, but that Glory will be injured by the inadvertent use of that information by Messrs. Rudisill and Kitch when prosecuting Cummins's patent applications.

Glory argues that Cummins has other attorneys with patent experience who have appeared of record in the case (Glory Motion at 11), a factor that was of significance to the court in *Mikohn* in deciding to bar the defendant's patent prosecution **[\*31]** counsel from access to the plaintiff's confidential information. *Mikohn, 50 U.S.P.Q.2d at 1786*. However, it is unclear whether the Court in *Mikohn* was presented with an alternative proposal for addressing the risk of inadvertent disclosure. In any event, we do not believe that the presence of other counsel for Cummins warrants the entry of an overly-broad order that categorically bars Cummins's lead litigation patent counsel from any access to Glory's Confidential -- Patent Prosecution Information.

Rather, we adopt the alternative approach suggested by Glory, and utilized by the courts in *Motorola* and *Interactive Coupon:* allowing Messrs. Rudisill and Kitch (or other patent counsel) to receive Glory's Confidential -- Patent Prosecution Information, but limiting the ability of attorneys who receive that information to prosecute certain patent applications. Anticipating the possibility of this result, Cummins asks that Glory's proposed limitation be revised in two ways.

*First,* Cummins argues that the restriction should not apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit," but instead should be limited **[*32]** only to the prosecution of any patent application "that specifically disclose[s] or claims the contents or the substance of the information contained in a reviewed document marked 'Confidential -- Patent Prosecution Information'" (Cummins Mem. at 12 and Ex. H). We disagree. The language proposed by Cummins is too narrow: it would allow a Cummins attorney who receives Glory's Confidential -- Patent Prosecution Information to use that information to prosecute a Cummins patent application, so long as the application does not "specifically disclose or claim" Glory's confidential information -- even if the application was generally influenced or shaped by that information. That kind of limitation does not sufficiently address the risk of inadvertent disclosure. Moreover, although Cummins argues that is does not understand what Glory means by suggesting that the limitation apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit" (Cummins Mem. at 12), that is the language routinely employed by other courts when imposing such a restriction. *See Pabst, 2000 U.S. Dist. LEXIS 6374, 2000 WL 554219, at \*4* (barring prosecution of patent applications "pertaining to **[*33]** the subject matter of the patents in suit"); *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at \*4* (barring prosecution of patent applications "relating to the subject matter of the patent in suit"); *Motorola, 1994 U.S. Dist. LEXIS 20714, at \*19* (barring prosecution of patent applications "relating to the broad subject matter of the patents in suit"). That language is appropriate here as well; we therefore adopt Glory's proposal on this point.

*Second,* Cummins argues that the time period of the restriction should be either the pendency of the litigation and a period of one year after the conclusion of the litigation, including appeals (the period proposed by Glory), *or* "the time at which such information contained in the documents marked 'Confidential -- Patent Prosecution' legitimately becomes publicly known . . .," whichever is earlier (Cummins Mem. at 12-13 and Ex. H). We note, again, that the time limitation proposed by Glory is the same limitation adopted by the *Motorola* and *Mikohn* courts. *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at \*4*; *Motorola, 1994 U.S. Dist. LEXIS 20714, at \*19*. A significant problem **[*34]** with Cummins's proposal is that if Cummins's patent counsel receive Glory's Confidential -- Patent Prosecution Information and some but not all of it is determined to be publicly known, and thus not truly

confidential, we do not see how the Court could be confident that patent counsel was utilizing only the non-confidential information in prosecuting the patent, and was not (albeit inadvertently) having his or her approach to the patent prosecution influenced by the Confidential -- Patent Prosecution Information. The difficulty of separating out different sources of information, and ensuring that certain sources are not used, is what gives rise to the risk of inadvertent disclosure in the first place. *Motorola, 1994 U.S. Dist. LEXIS 20714, at \*14-15*. Cummins's proposal would lead the parties and the Court down the path that the order is designed to avoid, and we therefore reject it.

Accordingly, we will amend the stipulated protective order to include paragraph 9(b), which will read as follows:

> Confidential -- Patent Prosecution Information may be shown only to persons qualified to receive Highly Confidential Information. Any person who receives Confidential **[*35]** -- Patent Prosecution Information shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals.

**VI.**

The only remaining changes to the stipulated protective order that remain in dispute are with respect to paragraphs 11, 12(c) and 25. We address in turn the parties' respective proposals for those paragraphs.

**A.**

Paragraph 11 of the protective order states that "either party may disclose Confidential or Highly Confidential Information in a Court proceeding upon consent of the designating party or permission of the Court." Glory proposes to amend that paragraph solely to include a reference to the new category of Confidential -- Patent Prosecution Information. Cummins agrees with that amendment, which will be adopted.

However, Cummins also proposes another change to paragraph 11, which Glory opposes. Cummins seeks to add the proviso that "information disclosed at an open Court proceeding will become public knowledge and persons present at any Court proceeding where **[*36]**

Confidential -- Patent Prosecution Information is disclosed will not be subject to the patent prosecution restrictions of paragraph 9 due to their presence" (Cummins Mem., Ex. H). Once again, this Cummins proposal would create the difficult problem of determining whether Cummins patent counsel was prosecuting a patent application using Confidential -- Patent Prosecution Information that remained private or information that had become public. For the reasons discussed above with respect to Cummins's proposal in paragraph 9 concerning the time limitation of the restriction, the Court rejects Cummins's proposal for amending paragraph 11.

**B.**

The parties largely agree on an amendment to the protective order that would add a new paragraph 12(c); their only disagreement is with respect to the highlighted clause set forth below, which Glory seeks over Cummins's objection:

> The substance or content of any Confidential -- Patent Prosecution Information, as well as notes, abstracts, copies, summaries and memoranda relating thereto shall not be disclosed to **or be accessible to** anyone other than a person qualified to receive Confidential -- Patent Prosecution Information **[*37]** pursuant to this Protective Order, and any such notes, abstracts, copies summaries and memoranda shall be treated as Confidential -- Patent Prosecution Information in all respects.

This additional language proposed by Glory tracks the language in paragraphs 12(a) and 12(b) governing Confidential and Highly Confidential Information. Cummins has offered no reason why the same language should not apply to Confidential -- Patent Prosecution Information, which is a subset of Highly Confidential Information. Accordingly, we adopt the version of new paragraph 12(c) proposed by Glory.

**C.**

Paragraph 25 of the protective order provides that restrictions applicable to Confidential and Highly Confidential Information do not apply to information which already is public knowledge, which becomes public knowledge other than as a result of disclosure by the receiving party, or that the receiving party obtains by legitimate means independently of the producing party. Each side agrees that this provision should be revised

to include the new category of Confidential -- Patent Prosecution Information. Where they differ is on the following additional language that Glory proposes to add at **[*38]** the end of paragraph 25, over Cummins's objection:

> The party seeking to use information designated as Confidential, Highly Confidential, or Confidential -- Patent Prosecution Information, shall have the burden of providing that it is entitled to the use of such information.

The Court sees no need for this additional sentence proposed by Glory. In the event that information designated with one of the levels of confidentiality becomes public by one of the means specified in paragraph 25, then the receiving party would have the right to question the confidentiality designation. Paragraph 16 of the protective order already provides a mechanism for doing so: it states that if a party objects to the designation of information as Confidential or Highly Confidential, then the designating party bears the burden of showing the propriety of the confidentiality designation. That allocation of the burden of proof recognizes that a party asserting confidentiality is asking for the document to be treated in a way that is contrary to the ordinary course of public litigation, *see generally Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943 (7th Cir. 1999)*, and **[*39]** should be in the best position to show why the document is entitled to special treatment. Glory offers no explanation for its proposal to shift the burden of proof to the challenging party, and the Court declines to do so. [5]

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Glory's motion to amend the protective order as follows:

> A. The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential -- Patent Prosecution Information."

> B. The Court DENIES Glory's request to bar **[*40]**

---

[5] Paragraph 16 of the original protective order does not specifically call out Confidential -- Patent Prosecution Information, which is a subset of Highly Confidential Information. To avoid any future confusion about the scope of paragraph 16, the Court *sua sponte* will modify paragraph 16 of the protective order to include challenges to the designation of information as Confidential -- Patent Prosecution Information.

2003 U.S. Dist. LEXIS 23653, *40

Messrs. Rudisill and Kitch from receiving Confidential -- Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

C. The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

D. The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

E. The Court *sua sponte* modifies paragraph 16 to make clear that it applies to Confidential -- Patent Prosecution Information.

SIDNEY I. SCHENKIER

United States Magistrate Judge

DATED: December 31, 2003