IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM,<br><br>                Plaintiffs,<br><br>   v.<br><br>AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABUIRSHAID,<br><br>                Defendants. | Civil No. 17-cv-03591<br><br>Hon. Sharon Johnson Coleman<br><br>**Hon. Sidney I. Schenkier** |

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMOVE IMPROPER CONFIDENTIALITY DESIGNATIONS

Our Motion to Remove Improper Confidentiality Designations (Dkt. 84) is based on the premise that documents cannot properly be designated "Confidential Information" under the Agreed Confidentiality Order (Dkt. 71, the "Order") unless they fall within one or more of seven specific categories of documents enumerated in paragraph 2 of the Order. Designation of a document is supposed to be certification by the designating attorney that the document does in fact qualify as Confidential Information. (*Id.* ¶ 3.b.) But defendants nevertheless bulk-designated *every page* of the internal e-mails and documents they produced from their two custodians, even though many or all of these documents have nothing to do with any of the seven categories.

To maintain confidentiality protection, defendants have the burden of demonstrating with particular facts that (i) the documents contain trade secrets or confidential commercial information and (ii) there is "good cause" to protect them. But instead of making this showing, defendants' principal argument is that we failed to meet-and-confer adequately before filing our motion. That

AM 69485005.5

attack is baseless. Although the Order requires designating parties to respond to challenges within five days, we gave defendants two-and-a-half months. During that time, we conferred with defendants' counsel by telephone twice, exchanged numerous e-mails, spelled out the reasons why defendants' designations were improper, ascertained that defendants would not voluntarily remove the designations for at least the bulk of their documents, and waited as long as we reasonably could before filing our motion. This effort is well documented in the declaration accompanying our motion and more than satisfies the meet-and-confer requirements.

More importantly, regardless of defendants' (unfounded) procedural complaints, defendants cannot maintain confidentiality protection without showing that the documents are within the scope of the Order and "good cause" exists to protect them. Defendants baldly claim for the first time in their response that the documents are "trade secrets" or "financial" or "commercial" information. But they are not. These documents contain no secret research or technical information, no trade secrets, and no financial or commercial information that would cause a business injury if disclosed. Indeed, most of the documents are years old, with little or nothing to do with current operations. Some (but not all) of the documents may deal with internal issues that defendants would prefer not to disclose, but without particular facts demonstrating a specific *business injury*, defendants cannot protect these documents. Having failed to make the required showing to support protection, defendants' confidentiality designations must be removed.

### Argument

**A.  Defendants' Bulk-Designated Documents Are Not "Trade Secrets" or "Commercial Information" for Purposes of Federal Rule of Civil Procedure 26(c)(1) or Paragraph 2(c) of the Confidentiality Order.**

Defendants assert (without support) that their bulk-designated documents are eligible for confidential treatment because they fall within paragraph 2(c) of the Order, which permits designation of documents containing "research, technical, commercial or financial information that

2

the party has maintained as confidential." This provision (taken verbatim from the Court's Model Confidentiality Order, Form LR 26.2) is based on language in Rule 26 authorizing protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). A party seeking such protection bears the burden of establishing (1) that the information is in fact a trade secret or confidential commercial information and (2) that there is good cause to protect the information. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993); *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D. Ill. 1998); *Boyd Group (U.S.), Inc. v. D'Orazio*, No. 1:14-cv-7751, 2015 WL 5445751, at *1 (N.D. Ill. Sept. 15, 2015) (Exhibit A). Defendants have not established either element.

First, despite defendants' unsupported claims to the contrary, these documents *do not* contain financial, research or technical information, nor do they contain the type of information that would constitute a "trade secret" or confidential "commercial information." Defendants are not-for-profits, and these documents do not address commercial issues. They do not contain information that derives economic value from not being generally known, nor would disclosure of the documents give a competitor an economic advantage.[1] Defendants may prefer to conceal the documents because some of them might be embarrassing, incriminating or harmful to their reputations. But these concerns (as opposed to harm to *business*) are not a basis to bar public disclosure. *Culinary Foods*, 151 F.R.D. at 301; *see also Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir.2000) ("Many a litigant would prefer that the subject of the case … be kept from the

---

[1] *See Northeast Series of Lockton Cos., LLC v. Bachrach*, No. 12 CV 1695, 2013 WL 3989295, at *2-*3 (N.D. Ill. Aug. 2, 2013) (Exhibit B) (declining protection for operating agreement that did not disclose cost of products, profit margin, marketing plans, customers, employee pay or other commercial information from which competitor could gain advantage); *Patriot Exploration, LLC v. SandRidge Energy, Inc.*, No. 3:11cv01234, 2014 WL 12749768, at *2 (D. Conn. Nov. 25, 2014) (Exhibit C) (whether information warrants protection depends on confidentiality and value of information to business and competitors); *United States v. Int'l Bus. Mach. Corp.*, 67 F.R.D. 40, 46-47 (S.D.N.Y. 1975) (in evaluating protection for "commercial information" under Rule 26(c), court will be "guided by considerations commonly employed when determining if certain information rises to the level of a trade secret").

3

curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing").

Second, even if the designated documents contained actaul commercial information (which these do not), defendants have not shown "good cause" to protect them. To establish "good cause," the designating party must show that the "disclosure 'will work a clearly defined and very serious injury' to its business." *Culinary Foods*, 151 F.R.D. at 300 n.1 (quoting *Int'l Bus. Mach. Corp.*, 67 F.R.D. at 46). The showing must be based on "specific demonstrations of fact"; "broad allegations of potential harm" are insufficient. *Global Material*, 133 F. Supp. 3d at 1084. Once a protective order is entered, the party seeking to protect documents must continue to show good cause for confidentiality when challenged. *Id.*; *In re Bank One Sec. Litig. First Chicago Shareholder Claims*, 222 F.R.D. 582, 586 (N.D. Ill. 2004).

Defendants have not even tried to make such a showing. Nor have they attempted to "winnow out properly confidential information" (if there is any) from their bulk designation. *See In re Bank One*, 222 F.R.D. at 588; *Plair v. E.J. Brach & Sons, Inc.*, No. 94 C 244, 1996 WL 67975, at *5 (N.D. Ill. Feb. 15, 1996) (Exhibit D) (protective orders must be narrowly tailored, and defendant did not limit confidential material to what was necessary under the order). Nor have they explained how documents that are years old could possibly threaten any current business interest. *See Culinary Foods*, 151 F.R.D. at 303 ("staleness" of information "must be overcome by a specific showing of present harm"); *Global Material*, 133 F. Supp. 3d at 1085 (designating party failed to explain with particularity how disclosure of "years-old invoices and specifications" would give unfair competitive advantage in current market or unfair leverage over customers).

Having failed to meet their burden of demonstrating either that the documents at issue fall within the categories covered by the Order or the requisite "good cause" for protection, defendants cannot maintain their improper confidentiality designations. The Court should remove them.

### B. Plaintiffs Followed All of the Challenge Procedures in the Order and Provided Defendants Far More Time and Opportunity to Respond than Required.

Unable to show "good cause" for their designations, defendants attack our motion procedurally instead, arguing that we failed to meet and confer adequately before filing. Even if this was true, it could not justify maintaining improper confidentiality designations. But it is also not true. We followed both the challenge procedures in the Order and the discovery rules to the letter, and gave defendants far more time and opportunity to respond than required.

Under the Order, a party challenging confidentiality designations begins the process by conferring with counsel for the designating party. The challenging party must explain the basis for its belief that the designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change is offered, to explain the basis for the designation. The designating party must then respond to the challenge within 5 business days. After that, the challenging party may file a motion identifying the challenged material and setting forth in detail the basis for the challenge. (Dkt. 71 ¶ 9.)

We fully complied with that procedure. As shown in the Declaration of W. Allen Woolley accompanying our motion, we had two telephone conferences and a number of e-mail exchanges over a two-and-one-half-month period before filing this motion, during which we fully explained our position and gave defendants far more than five days to respond:

- We first challenged the designations on April 20, 2018, both by e-mail and by telephone, explaining that the "bulk (if not all) of the documents do not appear to fall within any of the categories in paragraph 2 of the proposed protective order." (Dkt. 84-10, Woolley Decl. ¶¶ 3-5.)

- Later on April 20, the parties conferred by telephone, and we sent a follow up e-mail confirming that "this appears to be a wholesale designation of every e-mail produced in the case (the bulk of which have nothing to do with the 7 categories listed in paragraph 2 of the order) as well as what appear to be public letters, power point presentations and materials

5

for distribution that are [*sic*] not only fall outside the 7 categories but do not appear to be confidential." (*Id.* at 2.) Defendants did not withdraw any designations or provide explanations of why they believed the designations to be proper.

- On June 8, 2018, we sent another e-mail challenging the designations. The June 8 e-mail provided *document-by-document* reasons why we did not believe the designations were proper and requested that counsel let us know by June 15 if they would remove any of the designations. (*Id.* ¶ 6, Ex. B.)

- On June 19, the parties conferred by telephone again. This time defendants' counsel said she would withdraw a few of the confidentiality designations. Counsel exchanged confirmatory e-mails on June 20 listing the documents for which the designations would be withdrawn. Defendants' counsel indicated she was looking into withdrawing designations for 2 additional documents. (*Id.* ¶¶ 7, 8, Ex. C.)

- We requested a response with respect to the 2 additional documents by July 2. Defendants' counsel's assistant indicated counsel was out of the office and not available. As of the filing of this motion on July 5, defendants had not responded regarding the 2 additional documents. (*Id.* ¶ 8.)

Defendants complaint that we filed the motion on a day when we said we would be out of town and during a week when defendants' counsel said they would be unavailable. (Dkt. 95 at 1.) But any suggestion that we violated rules or acted in bad faith by filing on July 5 is absurd. Both Mr. Landes and Mr. Woolley were in fact out of the country on July 5. However, we prepared this motion much earlier, when it became clear defendants would not be willing to withdraw more than a few designations. We delayed filing to give defendants more time to respond regarding the 2 documents they were still considering. We ultimately had the motion filed on July 5 so it could be considered at the previously scheduled July 12 hearing.

With respect to defendants' counsel's unavailability on July 5, all we did was file the motion that day; we noticed it for July 12, when the parties were already scheduled to appear. We had already met and conferred by July 5, and defendants' five-day window to respond had long-since

6

expired. Furthermore, if defendants had subsequently decided they were willing to withdraw additional designations, they could have, and we would have withdrawn the motion with respect to the de-designated documents. Nothing in the rules or the Order required us to wait any longer.

Defendants also claim we "refused" to identify the basis for our belief that the designations were improper. (Dkt. 95 at 3.) This is simply false. As shown above, we told defendants' counsel from the outset that the documents were not properly designated because they had been designated on a bulk basis and did not fall within any of the 7 categories eligible for protection under the Order. On June 8 – nearly a month before filing this motion – we followed up with another letter setting forth the reasons for the challenge on a document-by-document basis. (*Id.* ¶ 6, Ex. B.)

Finally, defendants suggest that even if we complied with the Order, we violated the meet and confer requirements of LR 37.2. It is not clear how the LR 37.2 requirements are separate from the meet-and-confer requirement incorporated into paragraph 9 of the Order (or if they apply to this motion at all). But either way, we met them. We conferred with defendants' counsel *twice* by telephone and sent a number of e-mails attempting to resolve these issues. All of this is documented in a declaration attached to the motion, exactly as LR 37.2 specifies.

    **C.**    **Nothing in the Court's July 12 Order Authorizes Defendants to Maintain Improper Confidentiality Designations on Post-2010 Documents.**

Defendants argue that our motion is moot for post-2010 documents, because the Court's July 12, 2018 ruling on our motion to compel adopted a 2010 time limit for most of the additional production the Court ordered. Defendants are reading too much into the Court's ruling. The ruling dealt only with *additional* document production in response to certain document requests. It did not address document requests not at issue in the motion to compel, nor did it address documents that had already been produced. In fact, the Court specifically noted that, where getting information from after 2010 imposes "no great difficulty," such as the lists of directors and officers *already provided*, this presents a different situation than producing *additional* documents, where going beyond

7

2010 would increase the burden. (7/12/18 Tr. Pr. at 9-10 (excerpt attached as Exhibit E).) There is no such burden here, because the documents at issue in this motion have already been produced. The only issue in this motion is whether these documents contain trade secrets or commercial information, and whether defendants have made a showing of "good cause" to protect them. Because defendants have not done so, the designation should be removed.

### D. Defendants' Improper Bulk Designations Would Create Burdens for Both Plaintiffs and the Public.

Defendants next urge the Court to allow them to keep their designations because "there is no harm at all to Plaintiffs in having the designated documents remain Confidential." (Dkt. 95 at 7.) However, as defendants concede (*id.*), the alleged lack of harm to plaintiffs does *not* justify improper confidentiality designations. Regardless of any burden on the parties, the *public* has an interest in access to discovery materials. *See, e.g., Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993) (citing *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)) ("pre-trial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings"). Thus, unless defendants demonstrate "good cause" – which they have not – the documents cannot remain confidential. *Global Material*, 133 F. Supp. 3d at 1083-84 ("presumption of public access to discovery materials" requires good cause determination before entering protective order shielding from public disclosure).

Furthermore, confidentiality designations *do* impose burdens on the parties, as we repeatedly stressed during the meet-and-confer process. For example, documents filed with the Court must be filed under seal (along with appropriate motions for leave); the parties must implement safeguards to assure non-disclosure and compliance with the Order; experts and consultants have to sign agreements to be bound; and confidential documents complicate deposition procedures. Indeed, on the very day we filed this motion, we also had filed our surreply in support of our motion to compel (Dkt. 83) provisionally under seal because one of the exhibits had been (improperly) designated.

8

### E. Defendants Should Not Be Permitted to Re-Designate AMP's 2005 Power Point Presentation (002652-2657).

One of the documents defendants initially designated confidential was a Power Point presentation from 2005,[2] which defendants now describe as an "aspirational draft" to show what AMP might look like and events it could hold. (Dkt. 95 at 5.) Defendants agreed to withdraw the confidentiality designation on this document and produced a copy without the "Confidential" stamp on July 2, 2018. They now wish to re-designate it.

Setting aside that defendants' deliberate de-designation and re-designation was not an "inadvertent failure to designate" as contemplated by paragraph 6 of the Order, defendants' assertion that the 2005 Power Point was a "draft" does not qualify the document for confidential treatment. The document is 13 years old and contains no financial information, trade secrets, research, technical information, or commercial information. Defendants have not even attempted to meet the "good cause" requirement by showing with particular facts that disclosure would harm some current business interest. The Court should therefore order that this document, like the others, is not entitled to confidential treatment.

### F. If Any Party Should Recover Fees, It Is Plaintiffs.

Incredibly, defendants request costs and fees for responding to this motion. On the record before the Court, plaintiffs, not defendants, should recover fees. First, defendants improperly bulk-designated *all* their internal e-mails and documents, even though few (if any) had anything to do with the seven categories covered – and even though designation is supposed to be certification that the documents properly fall within the scope of the Order. (Dkt. 71 ¶ 3.b.) When we challenged their designations, defendants did not respond in five days by withdrawing the designations or providing explanations as the Order requires. Defendants withdrew a few designations after two months, but

---

[2] Defendants filed a copy of the document separately under seal as Exhibit D to their response. (Dkt. 97.) Because defendants had de-designated this document as of the time of their initial motion, we did not include a copy among their exhibits or include specific arguments for removal of its designation in the motion.

9

ultimately forced us to file this motion and to submit another court filing under seal because it attached an improperly designated document. Then, in response to our motion, defendants asserted baseless and misleading procedural attacks (requiring us to respond), while failing even to try to make the "good cause" showing needed to maintain protection for their documents.

In short, defendants have caused us to incur significant additional legal fees due to improper designations, overly protracted negotiations, and court filings that should have been unnecessary. They, not we, should pay fees and costs.

### Conclusion

For the foregoing reasons and the reasons set forth in plaintiffs' Motion to Remove Improper Confidentiality Designations (Dkt. 84), plaintiffs request that the Court (i) grant this motion, (ii) declare that the materials designated as Confidential Information (and the document defendants seek to redesignate) should not be treated as Confidential Information under the Order, (iii) strike the confidentiality designations and order that defendants produce this material without the designations, and (iv) grant defendants' reasonable fees and costs for negotiating regarding confidentiality and preparing papers on this motion; and (v) grant such further relief as the Court deems just and proper.

Dated: August 27, 2018 

Respectfully submitted,

    */s/ W. Allen Woolley*
Stephen J. Landes
W. Allen Woolley
Michael B. Kind
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 201-2772
*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

<u>Of Counsel</u>
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000

Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
311 South Wacker Drive, Suite 1775
Chicago, Illinois 60606
(312) 442-0509

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on August 27, 2018 he caused the foregoing REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMOVE IMPROPER CONFIDENTIALITY DESIGNATIONS to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

                                                        /s/ W. Allen Woolley