**EXHIBIT C**

Patriot Exploration, LLC v. SandRidge Energy, Inc., Slip Copy (2014)

2014 WL 12749768
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

PATRIOT EXPLORATION, LLC; Jonathan
Feldman; Redwing Drilling Partners; Mapleleaf
Drilling Partners; Avalanche Drilling Partners;
Penguin Drilling Partners; and Gramax Insurance
Co. Ltd., Plaintiffs,
v.
SANDRIDGE ENERGY, INC.; SandRidge
Exploration and Production, LLC; Tom L. Ward;
Matthew K. Grubb; Rodney E. Johnson; Everett R.
Dobson; William A. Gilliland; Daniel W. Jordan;
Roy T. Oliver; and Jeffrey S. Serota, Defendants.

Civil No. 3:11cv01234(AWT)
|
Filed 11/25/2014

## Attorneys and Law Firms

Ananda N. Chaudhuri, June H. Park, Keith M.
Fleischman, Hung G. Ta, Fleischman Law Firm, New
York, NY, Brian K. Herrington, Bartlett Law Offices,
Matthew C. Brown, Wiggin & Dana, New Haven, CT,
David McMullan, Jr., John W. Barrett, Barrett Law
Group, P.A., Lexington, MS, Joseph W. Martini, Wiggin
& Dana LLP, Stamford, CT, for Plaintiffs.

Brian K. Herrington, Bartlett Law Offices, New Haven,
CT, C. William Phillips, Laura Flahive Wu, Mari K.
Bonthuis, Covington & Burling LLP, New York, NY,
David J. Elliott, Kaitlin A. Canty, Day Pitney LLP,
Hartford, CT, for Defendants.

## ORDER RE DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Alvin W. Thompson, United States District Judge

**\*1** For the reasons set forth below, Defendants' Motion
for Protective Order (Doc. No. 78) is hereby GRANTED
in part and DENIED in part.[1] The documents must be
produced, but on an "Attorneys' Eyes Only" basis.

The defendants have moved for a protective order with
respect to the production of the documents requested in
the plaintiffs' February 28, 2014 subpoena to Netherland
Sewell & Associates, Inc. ("Netherland Sewell"). The
subpoena requests that Netherland Sewell produce:

> 1. All reserve reports related to the Piñon Field and
> Warwick Thrust that were provided to or requested
> by SandRidge[;]

> 2. Documents entitled SandRidge Energy, Inc.
> Interest in Certain Properties located in the United
> States—SEC Price Case from December 31, 2006,
> December 31, 2007, and December 31, 2008[;]

> 3. All documents considered, reviewed, or relied
> upon in creating reserve reports provided to or
> requested by SandRidge relating to the Piñon Field
> and Warwick Thrust[; and]

> 4. All communications relating to the Piñon Field
> and Warwick Thrust, including any communications
> with SandRidge[.]

(Mem. of Law in Supp. of Defs.' Mot. for Protective
Order ("Defs.' Mem."), Doc. No. 79, at 6-7.)

## Legal Standard

"Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim
or defense.... Relevant information need not be admissible
at the trial if the discovery appears reasonably calculated
to lead to the discovery of admissible evidence." Fed. R.
Civ. P. 26(b)(1). "The party seeking discovery bears the
burden of initially showing relevance." Mandell v. The
Maxon Company, Inc., No. 06 Civ. 460(RWS), 2007 WL
3022552, at \*1 (S.D.N.Y. Oct. 16, 2007) (quoting
Zanowic v. Reno, No. 97Civ.5292(JGK)(HBP), 2000 WL
1376251, at \*6 (S.D.N.Y. Sept. 25, 2000)) (brackets
omitted). However, "even if a discovery request seeks
relevant information or material, a party served with that
request may object on such grounds as: '(i) the discovery
sought is unreasonably cumulative or duplicative, or can
be obtained from some other source that is more
convenient, less burdensome, or less expensive;' '(ii) the
party seeking discovery has had ample opportunity to
obtain the information by discovery in the action;' or '(iii)
the burden or expense of the proposed discovery

Patriot Exploration, LLC v. SandRidge Energy, Inc., Slip Copy (2014)

outweighs its likely benefit[....]' Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii)." Young v. McGill, No. 3:09-CV-1186 (CSH), 2013 WL 5962090, at *2 (D. Conn. Nov. 6, 2013). "To assert a proper objection on this basis, however, one must do more than 'simply intone [the] familiar litany that the [requests] are burdensome, oppressive or overly broad.' " Id. (quoting Sullivan v. StratMar Systems, Inc., 276 F.R.D. 17, 19 (D. Conn. 2011)). "Rather, 'the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.' " Id. (quoting Sullivan, 276 F.R.D. at 19). See also Shannon v. New York City Transit Auth., No. 00 CIV. 5079(RWS), 2001 WL 286727, at *1 (S.D.N.Y. Mar. 22, 2001) ("The burden is on the party resisting discovery to explain its objections and to provide support therefor[ ].").

*2 Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... requiring that a trade secret or other confidential research, development, or commercial information not be revealed or revealed only in a specified way...." Fed. R. Civ. P. 26(c)(1)(G). "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004). "Under Rule 26(c), the moving party is required to establish good cause by a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.' " Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 143 (S.D.N.Y. 1997) (quoting Havens v. Metro. Life Ins. Co., No. 94 Civ. 1402, 1995 WL 234710, at *10 (S.D.N.Y. Apr. 20, 1995)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Id. (quoting Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)). The movant must show that "disclosure of the confidential information will result in a 'clearly defined and very serious injury to its business.' " Bank of New York, 171 F.R.D. at 143 (quoting Gelb v. Am. Telephone and Telegraph Co., 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993)).

"[T]here is no absolute privilege [against disclosure] for trade secrets and similar confidential information." DDS, Inc. v. Lucas Aerospace Power Transmission Corp., 182 F.R.D. 1, 4 (N.D.N.Y. 1998) (quoting Fed. Open Mkt.

Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 362 (1979)) (brackets in original). Whether the information merits protection in any particular case depends upon:

> (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors.

Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc., No. 93 CIV. 6350 (PKL), 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994) (quoting **Reliance Ins. Co. v. Barron's, 428 F. Supp. 200, 203 (S.D.N.Y. 1977)**).

### Relevance and Scope

The defendants assert that the reserve reports requested by the subpoena are not relevant because they "do not report or otherwise indicate the amount of 'plant shrink' experienced in connection with processing raw gas." (Defs.' Mem., Doc. No. 79, at 10.) That is, the reserve reports "do not separately indicate how much of the total loss is attributable solely to 'plant shrink.' " (Defs.' Resp. to Pls.' Mot. to Compel, Doc. No. 99, at 5.) However, the court agrees with the plaintiffs' position that they "are entitled to reserve reports related to the Warwick Thrust that Defendants had in their possession ... when Defendants solicited Plaintiffs to invest in the Participation Wells in 2009. This information is relevant to whether Defendants possessed information that contradicted the reserve data that Defendants provided to Plaintiffs." (Pls.' Reply Mem. in Further Supp. of Mot. to Compel ("Pls.' Reply"), Doc. No. 100, at 2.)

The defendants also assert that documents "considered, reviewed, or relied upon in creating reserve reports" for the Piñon Field and Warwick Thrust are not relevant and the request for them is overbroad. However, such underlying documents are relevant to establishing whether the defendants concealed the "effects of plant shrink given Defendants' assertion that the reserve reports do not separately indicate how much of the total loss of methane gas is attributable solely to 'plant shrink'[,] ... and ... to test Defendants' contention that Plaintiffs suffered loss because wells proved to be drier than expected." (Pls.' Reply, Doc. No. 100, at 3) (internal quotation marks and brackets omitted). Thus, the request is not overbroad.

*3 The defendants contend that the post-2008 reserve reports are "not relevant since they were created after the

Participation Agreement and Plaintiffs' investment."
(Defs.' Mem., Doc. No. 79, at 11) (emphasis in original).
The defendants also contend that under the Connecticut,
Texas, and Oklahoma state securities laws, securities
fraud claims "must be based on what was knowable at the
time of the alleged misstatements." (Defs.' Reply to Pls.'
Response ("Defs.' Reply"), Doc. No. 90, at 8.) However,
the court agrees with the plaintiffs' position that
post-2008 reserve reports "are relevant to establish
whether reserves for the Warwick Thrust were
subsequently revised based on information that
Defendants knew or should have known at the time that
Plaintiffs invested. Therefore, such documents are directly
relevant to whether the reserve reports provided to
Plaintiffs were false when made." (Pls.' Reply, Doc. No.
100, at 3.)

The defendants assert that the plaintiffs' request for
reserve reports concerning the entire Piñon Field is
overbroad because the "participation wells were all
targeted for a much smaller section of the field—the
Warwick Thurst." (Defs.' Mem., Doc. No. 79, at 11.)
However, the court agrees with the plaintiffs' position
that reserve reports relating to the entire Piñon Field "will
show whether Defendants calculated reserves for
Warwick Thrust consistently with reserves for
SandRidge-operated wells outside the Warwick Thrust,
which were not marketed to Plaintiffs." (Pls.' Reply, Doc.
No. 100, at 2.)

Finally, the defendants assert that communications about
the Warwick Thrust and Piñon Field are not relevant.
However, the court agrees with the plaintiffs' position
that such communications are relevant to "whether
Defendants made such reserve reports in good faith, or
whether the reports were fraudulently manipulated." (Pls.'
Reply, Doc. No. 100, at 4.)

Thus, the court concludes that the reserve reports and
other documents and communications requested in the
subpoena are relevant.

**Status as Trade Secrets**
The court finds that the reserve reports are trade secrets.
First, the reserve reports are not known outside of the
business. "SandRidge does not disclose to anyone the
reserve reports for particular wells, or information that
discloses its reserve analysis on a well-by-well basis....
The only disclosure of SandRidge reserve information
(other than to Netherland Sewell, who helps develop it) is
limited to certain summary disclosures of information on

an aggregate basis required by the U.S. Securities and
Exchange Commission...." (Defs.' Mem., Doc. No. 79, at
8) (emphasis in original). In addition, "it is customary in
the oil and gas industry for companies to hire engineering
consultants like Netherland Sewell to assist with and
independently calculate projections for SandRidge's use."
(Defs.' Reply, Doc. No. 90, at 3.) See In re XTO Res. I,
LP, 248 S.W.3d 898, 903 (Tex. App. 2008) (concluding
that disclosing reserve estimates and projected revenues
to outside consultants involved in the forecasting process
did not weigh against finding information was a trade
secret).

Second, "[w]ithin the company, SandRidge's reserve
reports are limited to fifteen members of the reservoir
engineering department and eight others at the company,
out of approximately 1,800 employees at SandRidge."
(Defs.' Reply, Doc. No. 90, at 4.)

Third, "SandRidge takes careful measures to guard the
confidentiality of the information. Access to hard drives
that contain information about SandRidge's reserve
reports and software used to prepare the reports is
restricted so that only the SandRidge employees
mentioned above are able to access the information."
(Defs.' Mem., Doc. No. 79, at 8.) In addition, "SandRidge
has worked closely with Netherland Sewell to produce
reserve reports for the Piñon Field since 2007 under a
mutual expectation of confidentiality that is customary in
the oil and gas industry." (Defs.' Reply, Doc. No. 90, at
4.) The disclosure of trade secrets to "a limited number of
outsiders for a particular purpose [ ] d[oes] not forfeit
trade secret protection." Rockwell Graphic Sys., Inc. v.
DEV Indus., Inc., 925 F.2d 174, 177 (7th Cir. 1991)
(quoting A.H. Emery Co. v. Marcan Prod. Corp., 389
F.2d 11, 16 (2d Cir. 1968)).

**\*4** Finally, the reserve reports are valuable to Sandridge.
"The reports consist of price forecasts, estimated ultimate
recovery from SandRidge's wells, production decline
curves, and projected costs applied to a confidential
methodology that SandRidge creates with Netherland
Sewell to produce an economic evaluation of
SandRidge's interests exclusively for SandRidge.
SandRidge uses the reserve reports to aid exploration and
production and to perform economic modeling and
budgeting." (Defs.' Mem., Doc. No. 79, at 8-9) (internal
citations omitted). Other courts have found similar reserve
reports and information to be trade secrets. See Anadarko
Petroleum Corp. v. Davis, Civil Action No. H-06-2849,
2006 WL 3837518, at \*15 (S.D. Tex. Dec. 28, 2006)
(finding reserve reports that contain "reserve economic
projection model" to be confidential and proprietary
information); In re XTO Res. I LP, 248 S.W.3d at 904

Patriot Exploration, LLC v. SandRidge Energy, Inc., Slip Copy (2014)

(finding information that contains "the process of transforming the raw data into reserve estimates and the estimates themselves" to be a trade secret).

**Disclosure of Trade Secrets**

As discussed above, the movant must show that the disclosure of the confidential information will result in a clearly defined and very serious injury to its business. The plaintiffs contend that disclosing the reserve reports for the Piñon Field and the Warwick Trust will not harm the defendants because the defendants "(1) have allowed SandRidge's leases to expire in the Piñon Field; (2) have not drilled a single well in the Piñon Field since 2011; and (3) have shifted primarily from a company that produces natural gas to a company that produces oil." (Pls.' Reply, Doc. No. 100, at 6.) However, the reserve reports contain more than just reserve estimates pertaining to the Piñon Field and the Warwick Trust; the reports also contain "a confidential methodology that SandRidge creates with

Netherland Sewell to produce an economic evaluation of SandRidge's interests...." (Defs.' Reply, Doc. No. 79, at 8-9.) Harm to the defendants could come from disclosing its confidential methodology for transforming raw data into reserve estimates. This potential for harm exists whether or not SandRidge is still drilling in the Piñon Field and whether or not SandRidge has shifted to producing oil.

However, the defendants will not suffer such harm as a result of the disclosure of the reserve reports on an "Attorneys' Eyes Only" basis. Therefore, disclosure is being ordered on that basis.

It is so ordered.

**All Citations**

Slip Copy, 2014 WL 12749768

Footnotes

1    The parties have filed multiple motions relating to the production of reserve reports. In deciding the instant motion, the court has reviewed and considered all of the papers relating to this issue.

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.