# EXHIBIT A

1

1                    IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

```
 3   STANLEY BOIM, Individually and   )
     on behalf of the Estate of       )
 4   David Boim, et al.,              )
                                      )
 5                Plaintiffs,         )
                                      )
 6                   v.               )   No. 17 CV 03591
                                      )
 7   AMERICAN MUSLIMS FOR PALESTINE,  )
     et al.,                          )
 8                                    )   Chicago, Illinois
                                      )   July 12, 2018
 9                Defendants.         )   1:34 p.m.
```

10                   TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE SIDNEY I. SCHENKIER
11

```
     APPEARANCES:
12   For the Plaintiffs:         LOCKE LORD, LLP
                                 BY:  MR. W. ALLEN WOOLLEY
13                                    MR. STEPHEN J. LANDES
                                 111 South Wacker Drive, Suite 4400
14                               Chicago, Illinois 60606
                                 (312) 201-2676
15
                                 JASZCZUK, P.C.
16                               BY:  MR. DANIEL I. SCHLESSINGER
                                 311 South Wacker Drive, Suite 1775
17                               Chicago, Illinois 60606
                                 (312) 442-0366
18
     For the Defendants:         MS. CHRISTINA A. JUMP
19                               Constitutional Law Center for
                                 Muslims in America
20                               833 East Arapaho Road, Suite 102
                                 Richardson, Texas 75081
21                               (972) 914-2507

22   ALSO PRESENT:               MR. ARI HOFFMAN

23   Court Reporter:             Judith A. Walsh, CSR, RDR, CRR
                                 Official Court Reporter
24                               219 S. Dearborn Street, Room 1944
                                 Chicago, Illinois 60604
25                               (312) 702-8865
                                 judith_walsh@ilnd.uscourts.gov
```

1          And I understand there can be an overlap between

2   issues of successorship and alter ego, but certainly, I don't

3   believe that the order contemplated that there would be any

4   discovery permitted insofar as it would pertain solely to a

5   successor theory of liability.

6          Third, the plaintiffs attached as Exhibits 1 and 2 to

7   their memorandum in support of their motion Congressional

8   testimony by Jonathan Schanzer of the Foundation for Defense

9   of Democracies dated April 19th and then May 12th, both of

10  2016.  The testimony discusses various defendants in this case

11  and in the original suit.

12         Plaintiffs cite to this testimony, not merely as

13  evidence but really as establishing the fact that the entity

14  defendants are a continuance of the same organizations that

15  were sued in the original action.  And I cite Page 2 of the

16  memorandum where I think that categorical assertion is made.

17         Now, if the testimony really did all that work, you

18  wouldn't be here.  You wouldn't need discovery.  But I don't

19  find that that testimony establishes anything of the sort.

20  The testimony that you cite to provides no detail about

21  Mr. Schanzer or the organization that he represents.  It

22  provides no detail about how he developed the information.

23  May be completely correct, may be completely incorrect, but I

24  think somebody who gives written testimony to a Congressional

25  committee is providing to that committee information.  That

9

1   does not make it evidence in the way we look at evidence in a

2   legal proceeding, so I place no weight on that testimony.

3          For what it's worth, I do point out that in the May

4   2016 testimony, Exhibit 2 at Page 7, Mr. Schanzer does state

5   that his organization, I quote, "has not seen any evidence

6   that AMP is engaged in any illicit activity."

7          Fourth, I am concerned about the time scope for the

8   requests which all run from 2004 to the present.  Plaintiffs

9   in their memorandum stake out the position that the original

10  defendants "did not really shut down at all."  And I'm quoting

11  here.  "They regrouped as two new entities," AMP and AJP --

12  I'm quoting now -- "which started up just as the old entities

13  purported to close."  That's in the opening memorandum at 2.

14         While the parties debate whether the current entity

15  defendants were created in 2005 and 2008 or 2006 and 2009, in

16  either event, the discovery sought extends far beyond that

17  time period and all the way through 2017.  And I have serious

18  question about the relevance of much of the discovery the

19  farther away we get from the formative period, which I would

20  say is no later than through 2010.

21         But even assuming that there would be some relevance

22  to a period thereafter, I must consider the question of

23  proportionality.  And if getting information for the time

24  period after 2010, you know, imposes no great difficulty, like

25  lists of directors and officers, which has been provided,

1        MR. WOOLLEY:  In the leadership.

2        THE COURT:  Okay.

3        MR. WOOLLEY:  The same people came into the

4   leadership of the new organizations.  The same people had a

5   following or a good will that they had developed --

6        THE COURT:  But --

7        MR. WOOLLEY:  -- with a whole bunch of other people

8   in the --

9        THE COURT:  I understand that, but that's an earlier

10  request:  The creation of the infrastructure, the identity of

11  the officers and directors.  And so that would give you that

12  information to lay side by side with the information of the

13  original defendants, but we're talk -- we're talking now about

14  a different matter.  You're talking about donors and sponsors.

15  And so in order for you to make that "stepping into the shoes"

16  case, you'd have to be able to compare it to something.

17        MR. WOOLLEY:  And so what it --

18        THE COURT:  So here's what I'm not inclined to do.

19  I'm not inclined to give discovery into the organizations

20  that's not sufficiently tethered to the jurisdictional

21  question.  On donors and sponsors and fundraising, in order to

22  do that, you have to show me that you have information from

23  the original defendants that allows you, if you got this

24  information from these defendants to, say, hey, of the 50

25  donors for the originals -- I'm making up numbers -- 49 are

1          THE COURT:  Well, here's what I'll tell you.  If it

2   doesn't, I'll create an eighth category.

3          MR. WOOLLEY:  Okay.

4          THE COURT:  Because the point of this again is not to

5   simply get discovery for other purposes into the

6   organizations.  It is for this particular case.  And one thing

7   the order does provide is that anything that's subject to the

8   confidentiality order is for use only in this case.

9          MR. WOOLLEY:  Okay.

10          THE COURT:  All right.  So anything that is produced,

11   I will allow to be designated as confidential under that

12   protective order -- or confidentiality order, more accurately

13   stated.

14          With respect to the next category, which is

15   relationships, communications, supports, affiliations, shared

16   leadership, or personnel transfer with the network entities or

17   persons, I understand the plaintiffs' theory is that that

18   overlap between the new entities and the old would again

19   advance their claim for alter ego.

20          One objection of the defendant is that -- or

21   defendants is that they dispute the whole concept that there

22   are network persons or network entities.  And that can be a

23   problem in discovery requests when people define a term in a

24   way that the other side is worried that if they answer,

25   they're adopting that term, and so that term is going to be

1    then I spoke with two individuals whose names I'd have to

2    verify who do the publicity and publications and those sorts

3    of statements for the organizations.

4            THE COURT:  All right.  That's a somewhat more robust

5    scope of email search than plaintiffs may have understood,

6    certainly more than they said in the papers.  Mindful that I

7    talked about the lack of utility, in my view, of going later

8    than 2010 in terms of this kind of search, what is it -- what

9    more would you be asking for based on what you've heard

10   Ms. Jump represent concerning which custodians they asked to

11   search?

12           MR. WOOLLEY:  We don't -- I appreciate Ms. Jump

13   filling us in on who was searched.  We only got emails from

14   two, Ms. Sremski and Mr. Ahmad.  Neither of those two were

15   people who were around in the IAP days.  I believe Mr. Ahmad

16   was in law school, and Ms. Sremski never had come around.

17           We are most interested in the emails that the people

18   who were actually involved across the board might have.  That

19   would include Hatim Bhasian, who was the person whose name is

20   on the incorporation documents and who, as far as I can tell,

21   has been a, if not the, leader of this new organization

22   throughout the entire time period and still is.

23           There are also the individual defendants.  It's hard

24   for us to believe they don't have anything that's relevant in

25   their emails.  And they haven't provided anything.

1    as being people who were involved in the IAP days, looked like

2    they might have been involved in the transition and who are

3    still involved in -- under control today, and those would be

4    Salah Sarsour.

5              THE COURT:  I'm sorry.  Spell the name.

6              MR. WOOLLEY:  S-a-r-s-o-u-r.

7              Sufian Nabhan, which is N-a-b-h-a-n; and Hussein Al,

8    A-l, dash, K-h-a-t-i-b.

9              THE COURT:  Khatib?

10             MR. WOOLLEY:  Yes.

11             THE COURT:  Okay.

12             MS. JUMP:  You know, I will say that not -- I'd have

13   to double-check the list.  They're certainly not current

14   leaders of the organization and they are -- some of them, I

15   don't believe, are even current board members.  I mean, I can

16   contact them individually and see if they have anything, but I

17   certainly would say that I don't believe that they should be

18   subject to deposition in this matter --

19             THE COURT:  I'm not saying that anybody else gets

20   deposed.

21             MS. JUMP:  I'd be fine checking into them as well.

22   Just to be upfront, I hadn't thus far.

23             THE COURT:  No, I understand.

24             MS. JUMP:  They're not the ones who push -- you know,

25   who are in any control so --

1    It's a very skinny neck on a very large funnel.

2              And so here, I think that given the thoroughness of

3    the original request and the targeted depositions for these

4    particular individual defendants and Mr. Ahmad and given that

5    we are dealing with a very specific issue here, and that is

6    discovery concerning alter ego, I think that the discovery

7    that has been served that now I'm requiring to be supplemented

8    and the depositions that have been noticed are ample to allow

9    the parties to present to Judge Coleman their positions now on

10   the alter ego.

11             So I am going to say that no further discovery may be

12   served absent written agreement of the parties or court order.

13   And the reason that I allow that, I would say, very small

14   safety valve is because, you know, you never can predict what

15   may come up in a deposition.  And in fairness, if something

16   comes up and it seems reasonable that there be something

17   that's specific to the new item that came up, I would hope the

18   parties would be able to work that out; but on the other hand,

19   that's not a lever to come running into court saying, "I want

20   five more depositions" because that would be a very steep run

21   uphill.

22             So I grant that part of the motion.  And again, I

23   want to emphasize, it's not because I think that there's been

24   an abuse in any way, but it's really as part of my authority

25   to exercise control over the discovery process that I do this

49

1        MR. WOOLLEY:  Well --

2        THE COURT:  Whether they did something in 2013, I'm

3   not sure why that goes to it.

4        MR. WOOLLEY:  Well, there may be, for example,

5   evidence of a connection to -- and I'm making this up.  This

6   is not something I'm reciting something specific on, but for

7   example, if there was an effort to raise funds for an

8   organization that provided funding to Hamas and that happened

9   in 2011, that would seem to me to be a continuation of the old

10  entities' practice that got them in trouble that happened

11  after 2010 that still reflected the fact that the same people

12  were running the organization with the same issues, for the

13  same purpose later on.

14       THE COURT:  Well, I don't know.  I don't know

15  because -- you know, I had a case once where I represented a

16  fellow on appeal in a bank fraud case.  And at trial, the

17  government put into evidence to show federally insured status,

18  an element of bank fraud, a document showing that they were

19  federally insured in 1972.  I'm giving away my age.  Okay.

20  The problem was, the conduct at issue was in 1979.  You know,

21  you can't infer that there was necessarily the case that it

22  was insured in '79 because it was in '72.  Because somebody

23  decided to fundraise or provide funds in 2011 or '12 or '17

24  doesn't mean that they did so in 2005 or '6.  You're getting

25  discovery during that period.  And so I am inclined to limit