UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASET HAMAYEL; AND OSAMA ABURISHAID,<br><br>Defendants. | Civil No. 17-cv-03591<br><br>Hon. Sharon Johnson Coleman<br><br>Hon. Sidney I. Schenkier |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE TWO ADDITIONAL DEPOSITIONS, TO COMPEL ANSWERS TO DEPOSITION QUESTIONS, AND TO COMPEL FURTHER DOCUMENT PRODUCTION (WITH CORRECTED EXHIBIT REFERENCES)**

Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJP"), Rafeeq Jaber ("Jaber"), Abdelbaset Hamayel ("Hamayel"), and Osama Abuirshaid ("Abuirshaid") ("Defendants") hereby file their Response in Opposition to Plaintiffs' Motion for Leave to Take Two Additional Depositions to Compel Answers to Deposition Questions and to Compel Further Document Production. For the reasons set forth below, Defendants respectfully request that Plaintiffs' Motion be denied in full and that the limited jurisdictional discovery phase of this matter be declared closed.

### I. Introduction

This is an alter ego case. The limited discovery, which recently concluded, was authorized by Judge Sharon Johnson Coleman solely to allow Plaintiffs limited discovery into

the topics covered by Defendants' declarations, and is limited to jurisdiction in the context of the pending Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) as to Plaintiffs' alter ego claims only. Doc. 50 ("this Court placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship. Accordingly, this Court will vacate its previous order dismissing the case with prejudice and permit plaintiffs to conduct discovery solely to address jurisdiction"). Nonetheless, Plaintiffs, through their counsel, have repeatedly attempted to exceed the permissible scope of this limited jurisdictional discovery, currently by seeking to depose individuals whom they have known about since well before the filing of this litigation, and chose not to name as Defendants. The individuals at issue have already been questioned by the undersigned counsel in accordance with this Court's Orders as to whom Defendants' counsel needed to contact to complete discovery responses. *See* Doc. 89, Transcript of Hearing, at 34, 36 (excerpts attached as Exhibit A). As explained in further detail below, the reasons provided by Plaintiffs for seeking these depositions are not sufficient to warrant the additional depositions as these individuals are once again not parties to this action, and are not key to the alter ego theory asserted in Plaintiffs' Complaint (Doc. 1) in this matter. As far as the deposition responses of Defendants Abuirshaid, Hamayel, and Jaber, as well as AMP and AJP by way of representative Munjed Ahmad, these Defendants have answered to the best of their recollection and knowledge, and cannot fabricate answers just to please the Plaintiffs. Since the relevant time period as ordered by the Court is between eight and thirteen years ago, Plaintiffs cannot very well force memories to appear which the witnesses simply no longer have. Further, these Defendants need not provide answers to questions that are completely outside the scope of the approved limited jurisdictional discovery currently permitted in subject matter and time.

2

Similarly, Defendants cannot produce documents that do not exist, and Defendants have already produced everything responsive in their possession which was retained. For the additional reasons stated below, Plaintiffs' Motion should be denied.

**II. Plaintiffs Knew of Hatem Bazian and Salah Sarsour Prior to this Lawsuit and the Onset of This Limited Discovery, They Have Already Provided Input for Discovery Answers as Ordered by this Court, and Plaintiffs Fail to Demonstrate Good Cause for Additional Depositions**

A. <u>No New Information Arose as to the Involvement of Hatem Bazian or Salah Sarsour</u>

In their Motion, Plaintiffs imply that new information about Hatem Bazian and Salah Sarsour was uncovered during the depositions of the Defendants in this matter, justifying these late and additional requests. However, Plaintiffs have known about Bazian and Sarsour and their respective degrees of involvement with AMP since prior to the initiation of this litigation, and specifically requested (and this Court ordered) that they each be questioned by defense counsel to contribute to discovery responses in this matter (and they were). Ex. A at 34, 36. Furthermore, the "proof" which Plaintiffs cite as support for this supposedly newly discovered information mischaracterizes the testimony of both Defendant Abuirshaid and AMP/AJP representative Munjed Ahmad.[1]

Hatem Bazian was a founding member of AMP, which Plaintiffs have known since prior to initiating this lawsuit. Ex. A at 34 (Allen Woolley, counsel for Plaintiffs, referencing "Hatim Bhasian [sic], who was the person whose name is on the incorporation documents and who, as far as I can tell, has been a, if not the, leader of this new organization throughout the entire time period and still is."). Nothing new prompts the need for his deposition, as shown below.

---

[1] These deposition transcripts are still under review by these two witnesses, as their errata sheets with corrections, if any, are due December 21, 2018, and are therefore not officially yet in final form.

3

B. <u>Salah Sarsour Was Not a Founder of AMP</u>

In addition to information about Hatem Bazian being known by Plaintiffs before the initiation of jurisdictional depositions in this matter, Plaintiffs repeatedly mischaracterize deposition testimony in an attempt to create a need for additional depositions that simply doesn't exist. For instance, in their Motion, Plaintiffs represent that Osama Abuirshaid's testimony shows that Salah Sarsour was involved in the formation of AMP; in fact, Dr. Abuirshaid remembers meeting with Hatem Bazian and Salah Sarsour, likely in April 2006, and while "it wasn't like a formal discussion" and "I don't know what they decided," "I refused to be a part of it." *See* Doc. 106 at ¶ 17; *see also* Exhibit E, at 178-181.

Plaintiffs provide no proof that Salah Sarsour was involved in the founding of AMP despite the assertions and statements of their own counsel. In fact, Salah Sarsour is not listed as an IAP/AMS board member on documents provided by Plaintiffs in this lawsuit for any of the years from 1993 through 2002, and he did not become a member of AMP's board until he served as Chapter Coordinator in 2009 and 2010; he therefore was not part of the "early AMP/AJP" leadership. Ex. F, Deposition Ex. 7 to Hamayel Dep., AMS Board Member list produced by Plaintiffs in this matter. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ And, Munjed Ahmad testified that Salah Sarsour was not involved in forming AMP. Exhibit C, Ahmad Dep. at 200.

C.   <u>Munjed Ahmad Clearly *Was* a Founder of AMP</u>

Plaintiffs attempt to distort AMP/AJP corporate representative Munjed Ahmad's testimony, to show him as unimportant or involved to the formation of AMP/AJP and presumably

4

justify the late request to depose Dr. Hatem Bazian. For instance, Plaintiffs represent that "Ahmad had virtually no value as a witness on the creation and early days of AMP" and "Plaintiffs need to depose witnesses who were actually involved in the *real* formation of AMP, not a high school- and college-age group that was merely 'aspirational' and never went on to have any meaningful role in the actual organization." Doc. 106 at ¶ 18. However, Mr. Ahmad testified that only the *events* on the PowerPoint discussed in 2005 were aspirational, not the organization itself. Ex. C, Ahmad Dep., at 115 (confirming his previously provided Declaration). Defendants' responses have not misled anything as to the formation of AMP/AJP, and Munjed Ahmad has been integral from the founding of AMP/AJP through its current leadership (and certainly through the end of the 2005-2010 time period designated in this matter). For example, Mr. Ahmad testified that the name AMP was selected in the April 2006 meeting reflected in his notes (*id*. at 270-71); he wrote parts of AMP's initial mission statement and created the incorporation documents along with Dr. Bazian, though Dr. Bazian physically handled the actual filing of the documents since he was in California (*id*. at 103, 138-39, 177) ("I was involved in all of those"); Mr. Ahmad was present for and made statements at AMP's first convention in 2006, as well as served on its Steering Committee and recalls walking the convention space in advance to check it out (*id*. at 141, 145, 256-259); he was the chair of AMP's 2007 convention (*id*. at 174-193); and he has continuously been listed as either a Director or the Legal Officer of AMP since its formation. Contrary to the representations by Plaintiffs, the entity anticipated and pursued by Munjed Ahmad did result in AMP; there is no evidence that any entity discussed at informal meetings which Mr. Ahmad did not attend ever came to fruition.

### III. Successor Liability is Not a Live Claim in this Suit

In their Motion, Plaintiffs attempt to characterize AMP and AJP as already having been deemed liable for the previous judgment entered in the original *Boim* case filed in 2000 (*Stanley*

5

*Boim, et al. v. Quranic Literacy Institute, et al.*, No. 00-cv-2905), by definitively stating that "AMP/AJP are the successors and alter egos of the *Boim* Defendants." Doc. 106 at ¶ 4. This assertion is at odds with the facts, and the rulings by this Court. In fact, the relevant Order from this Court which granted Plaintiffs the opportunity to conduct *limited* jurisdictional discovery is solely as to jurisdiction related to alter ego liability; successor liability is not a live issue in this case. Doc. 50 (ordering that "[w]hile this Court disagrees that it misapplied the law, upon further reflection, this Court placed too much weight to defendants' declarations without providing plaintiffs the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship. Accordingly, this Court will vacate its previous order dismissing the case with prejudice and permit plaintiffs to conduct discovery solely to address jurisdiction."); *see also* Doc. 41 (dismissing Plaintiffs' successor liability theory due to insufficient facts in the Plaintiffs' Complaint (Doc. 1)); Ex. A at 8, Judge Sidney I. Schenkier presiding ("I don't believe that the order [Dkt. 50] contemplated that there would be any discovery permitted insofar as it would pertain solely to a successor theory of liability.")

  **IV.** **Plaintiffs' Attempts to Compel Further Testimony of the Deposed Witnesses are Outside the Scope Applicable to Determining Jurisdiction, and Not Justified Simply Because Plaintiffs Didn't Like the Answers the Witnesses Gave**

  In their Motion, Plaintiffs attempt to compel Defendants to answer questions about subjects completely inapplicable to determining alter ego liability. These fail for the reasons set forth below. As an initial matter, however, Plaintiffs' Motion states that if Defendants should have sought a protective order if their questioning was improper, a protective order wasn't necessary since there are relevant court orders speaking to what is permissible to answer. This Court stated that there is a "serious question about the relevance of much of the discovery the farther away we get from the formative period, which I [the Court] would say is no later than through 2010." Ex. A at 9.

6

  A. <u>ADL Articles from 2013 are Not Evidence</u>

This Court has previously ruled in this matter that statements of others are not "evidence." Ex. A at 9 (discussing Congressional testimony and stating "I place no weight on that testimony."). Plaintiffs now try to compel testimony regarding a similar document: a 2013 article published by the Anti-Defamation League. Plaintiffs' Motion at 11. This is inappropriate and not at all designed to lead to responsive information regarding jurisdiction; instead, Plaintiffs refer only to this document as inflammatory and attempt to assert the statements contained within it as true. The witness has testified that they are not; no further questioning is relevant.

  B. <u>Plaintiffs Already Had Documentation of 2007 Sponsors, Extensively Questioned Munjed Ahmad On It, and Don't Need to Question Witnesses about 2014 Sponsors</u>

During the deposition of Dr. Abuirshaid, Plaintiffs showed him an AMP conference program from 2014 and began questioning him about organizations in the program. When challenged as to how a program from outside the relevant timeframe would be applicable to assessing alter ego liability, Plaintiffs argued that they wanted to see if a continuous pattern was present since the formative years of AMP/AJP. However, this Court has already stated that "[b]ecause somebody decided to fundraise or provide funds in 2011 or '12 or '17 doesn't mean that they did so in 2005 or '6." Ex. A at 49; *see also id.* ("[w]hether they did something in 2013, I'm not sure why that goes to it."). Defendants' counsel properly objected as to any questioning outside of the scope of assessing jurisdiction authorized by this Court whenever it became apparent that the Plaintiffs were fishing for information that was not applicable to the instant matter. Ex. A at 24. ("…the point of this again is not to simply get discovery for other purposes into the organizations. It is for this particular case."); *id.* at 17 ("[s]o here's what I'm not inclined to do. I'm not inclined to give discovery into the organizations that's not sufficiently tethered to the jurisdictional question.").

7

Nonetheless, Plaintiffs claim in their Motion that forcing the witness to answer questions about a 2014 document is appropriate here because "AMP's relationship with the same charities went back at least to 2007." Plaintiff's Motion at 12. This claim is disingenuous: After Dr. Abuirshaid's deposition, Plaintiffs made it known that they were in possession of a convention program from 2007, but chose not to present it until the final deposition on November 8, 2018. Ex. C, Ahmad Dep. at 174-193. Plaintiffs then extensively questioned Mr. Ahmad as to the sponsors listed in that document. *Id*. After becoming aware of this document and reviewing it, Defendants amended related discovery responses based on the recollections it triggered in the witnesses. Ex. B, transmittal email. Its existence and possession by Plaintiffs renders Plaintiffs' purported need to question witnesses about 2014 sponsors even more inapplicable than it was at the time of Dr. Abuirshaid's deposition.

    C.    <u>Additional In-depth Questioning on Tax Returns Will Not Establish Jurisdiction</u>

Plaintiffs also complain that Defendants' counsel instructed Defendant Jaber not to answer additional questions as to a 2010 tax return. Plaintiffs' Motion at 11. Defendants' counsel asked how the questioning, about a tax document filed after the relevant time period, would be applicable to assessing jurisdiction. Plaintiffs' counsel simply said that "[w]ell, I think that how this organization conducted itself surely has an impact upon its jurisdiction and you'll read that in the First Amended Complaint." Ex. D, Jaber Dep. at 144-18 – 144-21. No First Amended Complaint is on file in this case, so one is therefore not in the parameters of the purpose of these depositions. Opposing counsel failed to provide a proper explanation as to how Defendant Jaber interpreted tax forms to be relevant to the issue of whether alter-ego liability exists.

Furthermore, defense counsel allowed 31 minutes of questioning on the 2010 tax return, spanning 32 pages, before instructing the witness not to answer further questions. Jaber Dep., Ex.

8

D, at 115-147. Plaintiffs misrepresent any "lack" of ability to question Mr. Jaber on this document; further in-depth questioning will not indicate one way or another whether jurisdiction exists in this case.

      D.      <u>Any Past Imprisonment of Individuals Not Parties to this Lawsuit Will Not Establish Jurisdiction</u>

Plaintiffs next seek to compel testimony regarding possible arrest histories of Jamil and/or Salah Sarsour from the 1990s. Jamil Sarsour is not even alleged as ever being a decision-maker for AMP, was not on the board of AMS/IAP and has no bearing on the analysis of alter ego in this case. Defendants' counsel therefore properly instructed the witness not to answer. *See Block v. Abbott Labs., Inc.*, 01C1312, 2001 WL 1539159, at *3 (N.D. Ill. Dec. 3, 2011) ("[t]he [Court will not permit [p]laintiffs to engage in a fishing expedition into an area that [p]laintiffs can not show is related to the present suit."); *see also Arnold v. Miller*, CIV.08-234-DRH, 2008 WL 3992684, at *1-2 (S.D. Ill. Aug. 22, 2008) ("[t]he […] defendants object that the corporate deposition […] has already been taken in connection with the pending jurisdictional question, and that permission has not been sought and granted to take a second deposition, and a second deposition would be duplicative.") Compelling further testimony from the witnesses on this topic when this topic has no bearing on the alter ego analysis for jurisdiction would be duplicative and unnecessary. *See Liebhard v. Square D Co.*, 91 C 1103, 1992 WL 193558, at *4 (N.D. Ill. Aug. 4, 1992) ("[f]urther probing, given the consistent contents of the deposition, would amount to a fishing expedition.").

Furthermore, Plaintiffs misrepresent statements made by defense counsel on this topic. Defense counsel did not state that "IAP is not relevant"; in fact, counsel specifically stated that "I have not said, just to be clear, that IAP is not relevant as to whether there's alter ego. What I'm saying is the jurisdiction – we don't represent IAP. IAP is not represented here at this deposition." Ex. E, Abuirshaid Dep. at 113. Instead, counsel reiterated that "the whole reason for this

9

deposition is to focus on the creation and establishment of AMP and AJP from 2005 to 2010." *Id*.

As to this topic, Defendants further object to Plaintiff's Exhibit L, identified as an FBI document regarding HLF. This case does not involve a retrospective look back at HLF, and examining any actions of HLF prior to the judgment in the 2000 Boim case is a matter that should have been addressed in that litigation.

    E.    <u>The Witness Cannot Testify to a Document He Cannot Read</u>

Dr. Abuirshaid testified repeatedly that the exhibit about which Plaintiffs seek to compel his further testimony was illegible. Ex. E, at 286-290. He explained that it was not readable, and he had never written an article for the publisher; therefore, there is nothing more to compel. As this is also a 2014 article, this is outside the timeframe and lacks foundation as well. *Id*.

    **V.**    **Plaintiffs Cannot Compel Production of Documents Which Do Not Exist**

Plaintiffs continue to seek documents which do not exist, simply because they wish they did. Plaintiffs go to great lengths to claim that email lists of information sent by AMP in 2005 through 2010 must exist and should be produced, but in doing so they avoid the actual testimony of the witnesses on point: Defendant Hamayel was clear that he did not have knowledge of email lists prior to the time that he joined AMP as its volunteer Executive Director in 2009, does not believe there were any sent out prior to that, and to the extent email lists currently exist they are constantly updated. Ex. F, Hamayel Dep., at 238-240. There is no list which Plaintiffs seek, and the relevant individuals identified as those with knowledge as to whether one does have already provided input as to discovery responses. *Id*.

Plaintiffs next claim that Defendants are attempting to satisfy production of any materials ever emailed out by simply referring to the publicly available website; that too is inaccurate. Defendants have produced, as has already been made known to this Court, the full archive of the website as obtained from the domain provider, not just what is currently viewable on the website.

Therefore, to the extent Defendants refer to the website archive as containing any documents which were emailed out, Plaintiffs already have all that is available in that respect.

## VI. Conclusion

This Court only authorized a "very small safety valve" in the event actually newly uncovered information, which was previously unknown, was discovered during the depositions since "you [a party] can never predict what may come up in a deposition." Ex. A at 45. In stating that, this Court still cautioned that "that's not a lever to come running into court saying, 'I want five more depositions' because that would be a very steep run uphill." *Id*. (emphasis added). Defendants oppose the Plaintiffs' motion in order to avoid that steep run uphill and a fishing expedition into matters inapplicable to assessing whether jurisdiction based on potential alter-ego liability exists. Based on the foregoing, Defendants respectfully request this Court deny the Plaintiffs' Motion, and Defendants further seek costs and fees related to defense of this Motion, as well as any other relief this Court deems just and proper.

Dated this 13th day of December, 2018.

*/s/ Christina Jump*
Chares D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614

11

Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of December 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Christina Jump*
Christina A. Jump
*Attorney for Defendants*