IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASSET HAMAYEL; AND OSAMA ABUIRSHAID,<br><br>Defendants. | Civil No. 17-cv-03591<br><br>**Hon. Sharon Johnson Coleman**<br><br>Hon. Sidney I. Schenkier |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a), plaintiffs Stanley Boim, Individually and as Administrator of the Estate of David Boim, Deceased, and Joyce Boim, hereby move for an order granting plaintiffs leave to file their first amended complaint in the form attached hereto as **Exhibit 1** (the "FAC"). In support of this motion, plaintiffs state as follows.

**Introduction**

1. The plaintiffs have a right to file the FAC and, in fact, this Court previously stated in its August 18, 2017 opinion that plaintiffs "may refile a complaint" if they develop further allegations. (Dkt. 41 at 11). The FAC primarily addresses the Court's concerns, raised in a prior order, that the plaintiffs sufficiently demonstrate an alter ego theory to support their claims. Aided by the jurisdictional discovery specifically permitted by the Court, the FAC adds extensive detail to the original complaint. The FAC easily satisfies Rule 15's permissive standards and complies with the Court's prior instructions to buttress the alter ego claims before filing an amended complaint.

71128119v.3

2. Nonetheless, at the last status hearing, the defendants requested the opportunity to respond to this motion and suggested that they would argue futility. Defendants should not be permitted to submit a premature motion to dismiss masquerading as an opposition. To the extent that the defendants' "response" addresses the merits of the plaintiffs' claims, the Court previously warned defendants this is not the appropriate time for a "full-on motion" or a "motion to dismiss the amended complaint." Such a motion would potentially give defendants three bites at the apple – the opposition, followed by a Rule 12(b)(1) motion attacking the merits of the plaintiffs' claims, and then a Rule 12(b)(6) motion. Defendants should make their arguments once, not in three successive motions. Plaintiffs should be permitted to file the FAC. There is no proper basis for the defendants to oppose this motion for leave.

## Background

3. In 2000, plaintiffs filed an action in this Court, *Stanley Boim, et al. v. Quranic Literacy Institute, et al.*, No. 00-cv-2905, seeking to recover damages for the terrorist murder of their son from American persons and organizations that provided material support to Hamas. This Court entered judgment in favor of Plaintiffs, holding several of those defendants (the "*Boim* Defendants") liable for $156 million. The judgement was upheld by the Seventh Circuit in a landmark ruling governing civil liability under the Anti-Terrorism Act ("ATA"). Plaintiffs have collected only a small percentage of their judgment and instituted this lawsuit in May 2017 seeking to recover the unpaid portion (and protect the viability of the ATA) because AMP/AJP are the successors and alter egos of the *Boim* Defendants.

4. On June 12, 2017, defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction. (Dkt 31.) The Court dismissed the complaint without prejudice on August 18, 2017 (Dkt 40, 41), concluding that this was a "close" case, but that "[o]n these facts…plaintiffs fail to demonstrate the requisite level of unity of

2

interest and control" to support alter ego claims. (Dkt. 41 at 8, 10.) The Court concluded that the plaintiffs "may refile a complaint in the event that they further develop the allegations establishing an alter ego theory of liability." (*Id.* at 11.)

5. Plaintiffs moved to reconsider, and the Court granted plaintiffs' motion on January 4, 2018, vacating its previous order. (Dkt 50.) The Court authorized plaintiffs to take limited jurisdictional discovery on the existence of an alter-ego relationship. (Id.) The Court held that it should have provided plaintiffs "the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship" and authorized plaintiffs to "conduct discovery solely to address jurisdiction." (*Id.*)

6. On January 18, 2018, plaintiffs served document requests and interrogatories. Following extensive efforts to resolve the deficiencies in defendants' initial responses, plaintiffs moved to compel further responses on May 14, 2018. (*See* Dkt. 54, 56.) Plaintiffs also noticed four depositions of the three individual defendants named in the original Complaint, along with Munjed Ahmad, an AMP/AJP director who submitted a declaration purporting to address, among other things, the formation and early operation of AMP in 2005 and 2006. Defendants moved to quash those depositions. (Dkt. 65, 67.)

7. Magistrate Judge Schenkier ruled on both motions on July 12, 2018. The Court granted in part and denied in part plaintiffs' motion to compel, ordering further responses to certain interrogatories and document requests. (Dkt. 90; Dkt. 94.) Among other things, the Court granted plaintiffs' motion to compel production of documents and information concerning: (i) the decision to form AMP and the identity of all persons involved in the formation (Dkt. 94 at 11-12) and (ii) newsletters or other publications distributed by the Entity Defendants through 2010 (*id.* at 14).

71128119v.3

8. Since July 2018, the plaintiffs have diligently pursued additional jurisdictional discovery permitted by this Court, both in the form of depositions and document requests, despite the defendants' repeated objections based on the scope of the permitted discovery and certain confidentiality issues (some of which remain unresolved) regarding requested documents and deposition testimony.

9. At a status hearing on February 21, 2019, the plaintiffs announced that they were prepared to file an amended complaint based on the jurisdictional discovery that had been conducted to date. *See* Tr. of 2/21/19 Hearing, at 4-5.[1] The Court granted plaintiffs until March 29, 2019 to file a motion for leave to file the FAC. *See Id.*, at 5.

10. At the defendants' request, the Court granted a briefing schedule, setting a date for the defendants to respond to the plaintiffs' impending motion for leave to file the FAC. *See Id.*, at 5-6. However, the Court cautioned the defendants against attacking the merits of the FAC and its claims, stating that any response was "not going to be the full-on motion to—it's not a motion to dismiss the amended complaint." *Id.*, 6-7.

### Legal Standard

11. Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires" before trial. Rule 15(a)(2) affords district courts "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008); *see also Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016). Rule 15(a)(2) applies if there is no deadline for the amendment of pleadings or if that deadline has not passed. *See U.S. v. Arnaout*, 2016 WL 6778886, at *2 (N.D. Ill. Nov. 16,

---

[1] A true and correct copy of the hearing transcript is attached hereto as **Exhibit 2**.

4

2016) ("The court set deadlines for exchanging initial disclosures and a discovery cut-off in this case, but it set no deadline for amending pleadings. Therefore, the court need not conduct a Rule 16(b)(4) analysis.").

### Relief Requested

12. In its *Memorandum Opinion and Order* (Dkt. 41) dismissing the original complaint pursuant to the Rule 12(b)(1), the Court invited the plaintiffs "to refile a complaint in the event that they further develop the allegations establishing an alter ego theory of liability." (*Id.* at 11.) The Court later vacated its *Memorandum Opinion and Order* to provide the plaintiffs with "the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship." (Dkt. 50.) In other words, the Court recognized the need to provide the plaintiffs with the tools to fulfill the Court's earlier invitation to buttress the original complaint. These invitations on their own justify permitting the plaintiffs to file the FAC without further delay or argument.

13. In any event, the FAC easily satisfies Rule 15(a)'s permissive requirements and addresses the concerns raised by the Court in its *Memorandum Opinion and Order*. In that opinion, the Court expressed concern that the plaintiffs had failed to allege sufficient facts to substantiate their alter ego allegations for purposes of subject matter jurisdiction. (*See* Dkt. 41 at 6 ("Thus, this Court must consider whether plaintiffs here have adequately alleged for jurisdictional purposes the present defendants are the alter-ego of AMS, IAP, and the Holy Land Foundation")); (*Id.* 8 ("Thus, the Court will consider whether the allegations support an alter-ego theory").)

14. Although the Court recognized that the complaint's allegations made this a "close" case, the Court found that "[o]n these facts...plaintiffs fail to demonstrate the requisite

level of unity of interest and control" to support their alter ego claims. (Dkt. 41 at 8, 10.) The FAC addresses the Court's concerns and provides certain information lacking in the original complaint. For example, the FAC alleges:

- The purpose of IAP/AMS (and now AMP) is more than the purportedly benign mission of providing education to the public about Palestine. The FAC demonstrates that a significant purpose of both organizations was to promote Hamas' ideology and political agenda and to "make Hamas (a designated terrorist organization) succeed." (See Ex. 1, ¶¶ 5, 20, 33, 94-107, 155-158)
- In addition, a critical function of IAP/AMS is to raise funds to support Hamas. That fundraising was the essential element in finding IAP/AMS liable in the original suit. As demonstrated in the FAC, AMP immediately went to work raising significant funds for Hamas. Most notably, in 2009 they sponsored and "endorsed" fundraising events for Viva Palestina an organization headed by George Galloway. It was a matter of public record that Galloway was handing funds directly to Hamas leaders who were themselves designated terrorists. In addition, AMP allowed Hamas-related charities to solicit and raise funds at AMP events and conventions. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (See Ex. 1, ¶¶ 97-107.)

- The Court highlighted the "disguised continuance of a former business entity" as a key factor in its inquiry. Dkt. 41 at 6. The FAC includes new allegations regarding defendants' efforts to conceal the continuation of IAP/AMS, including a Yahoo bulletin board exchange between the individuals who established AMP. First, they acknowledge that AMP was a "transition" during which they wanted to obscure any connection with IAP. They discuss two individuals were active in IAP – Salah Sarsour and Sufian Nabhan – and specifically identify Sufian Nabhan as a person to be avoided during the "transition." At the same time both Salah Sarsour and Sufian Nabhan were trying to start the new group and both became part of AMP leadership. (See Ex. 1 ¶¶ 64-76.)

- The Court also wanted to see allegations regarding the "purported alter-ego's control or dominance over the original entity." (Dkt 41 at 6, 10.) The FAC adds allegations that two of the essential managers and operators of IAP – Abuirshaid and Hamayel – were brought in to manage and operate AMP, and the board of directors and core leadership of IAP/AMS and AMP/AJP substantially overlap. (See Ex. 1 ¶¶ 75-83.)

- The Court wanted to see information regarding "how many people are involved in the leadership of AMP and AJP (and) how many were involved in the leadership of the previous judgment debtors." Dkt. 41 at 9. The FAC adds extensive allegations demonstrating that there were thirteen people in total on the IAP board in 2002-2004. Of the thirteen, four left the United States. Of the remaining nine, six (directly or indirectly through kinship relationships) became part of the AMP core which itself had no more than six or seven people in core roles. The three that did not become part of the AMP core did not have significant roles at IAP/AMS. In addition, one person who was active

in the IAP's affiliate, HLF, became a leader of AMP. (See Ex. 1 ¶¶ 64-83.)

- The Court's opinion also commented on transfer of assets. (Dkt. 41 at 10.). Although there were no significant financial assets to transfer, the FAC demonstrates that there were substantial intangible assets and good will transferred from AMS/IAP to AMP. All of the followers, know-how and content went to AMP. For example, AMP's inaugural convention, which was held within months of AMP's formation, was attended by approximately 700 attendees and was a financial success. (See Ex. 1 ¶¶ 84-93; 108-143.)

- The FAC further demonstrates that IAP/AMS and AMP/AJP paid little attention to corporate formalities. AMP had no members, board elections, resolutions or minute books. ████████████████████████████████████████ Nothing was done formally to close IAP/AMS. (See Ex. 1 ¶¶ 6, 115-118, 144-154, 162, 173.)

15. In addition to these buttressed allegations, the FAC streamlines and simplifies the allegations from the original complaint by limiting the personal (i.e. non-organization) defendants to one individual and removing the requests for injunctive relief.

16. The Court should thus freely grant the plaintiffs leave to amend and permit them to file the FAC. The Court has already invited the plaintiffs to file the FAC and its buttressed allegations address the Court's prior concerns regarding the sufficiency of the plaintiffs' alter ego claims, easily satisfying Rule 15's permissive standards.

17. NOW THEREFORE, for the foregoing reasons, plaintiffs request that the Court grant this motion and enter an order permitting them to file the First Amended Complaint.

Dated: March 29, 2019                               Respectfully submitted,

                                                    /s/ W. Allen Woolley
                                                    Stephen J. Landes
                                                    W. Allen Woolley
                                                    Michael B. Kind
                                                    LOCKE LORD LLP
                                                    111 South Wacker Drive
                                                    Chicago, IL 60606
                                                    (312) 201-2772
                                                    *Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000

Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
311 South Wacker Drive, Suite 3200
Chicago, Illinois 60606
(312) 442-0509

71128119v.3

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on March 29, 2019 he caused the foregoing PLAINTIFFS' MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

                                                                                      /s/ W. Allen Woolley