**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER; ABDELBASET HAMAYEL; AND OSAMA ABURISHAID, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> Hon. Sharon Johnson Coleman <br><br> Hon. Sidney I. Schenkier |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT**

Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJP"), Rafeeq Jaber ("Jaber"), Abdelbaset Hamayel ("Hamayel"), and Osama Abuirshaid ("Abuirshaid")[1] (collectively, "Defendants") hereby file their Response in Opposition to Plaintiffs' Motion for Leave to File Amended Complaint (Dckt. 149), and for the reasons set forth below respectfully request that Plaintiffs' Motion be denied and the prior dismissal ordered by this Court on August 18, 2017 (Dckt. 42) be reinstated, with Plaintiffs' claims in this matter dismissed in full, and with prejudice at this point.

---

[1] As set forth in more detail below, Plaintiffs' Proposed First Amended Complaint does not contemplate any claims against Abdelbaset Hamayel or Osama Abuirshaid. Therefore, for the reasons set forth in Defendants' prior Motion to Dismiss (Dckt. 31) and this Court's previous Memorandum Opinion and Order (Dckt. 41), and because even if Plaintiffs' pending Motion for Leave to Amend were not futile there exist no anticipated claims against Mr. Hamayel or Mr. Abuirshaid, Defendants respectfully request that a dismissal with prejudice be entered in this matter as to Mr. Hamayel and Mr. Abuirshaid.

I. **Procedural Background**

This remains an alter ego and successor liability case. In their Original Complaint, Plaintiffs alleged alter ego and successor liability as the purported bases for holding the current defendants liable for a previous judgment Plaintiffs obtained against other entities.[2]

This Court granted Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction in August 2017, finding that Plaintiffs' assertion that a shared mission "to educate people about Palestine" sufficed to establish alter ego "would create a false inference that no legitimate humanitarian organization could ever be created with that mission" and that ""[i]n their effort to find a collectible defendant and to prevent their previous victory from being a pyrrhic one, plaintiffs are painting with overly broad strokes here." (Dckt. 41 at 8, 10.) Upon Motion for Reconsideration by the Plaintiffs, this Court ruled that "[w]hile this Court disagrees that it misapplied the law, upon further reflection, this Court placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship. Accordingly, this Court will vacate its previous order dismissing the case with prejudice and permit plaintiffs to conduct discovery solely to address jurisdiction." Dckt. 50. The limited discovery which followed over the next year was authorized solely to allow Plaintiffs discovery related to subject matter jurisdiction, in the context of the previously granted Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(1).

Plaintiffs now ask this Court for leave to file their Proposed Amended Complaint (Dckt.

---

[2] Though judgment was originally entered against an individual defendant in the prior action, that judgment was reversed. Plaintiffs eventually left the previous civil action with a judgment of $156 million against Holy Land Foundation (HLF), the Islamic Association for Palestine "formed in California in 1986" ("IAP"), American Muslim Society ("AMS) "formed … in Illinois in 1993", American Middle East League for Palestine "formed in Texas in 1990 by Yasser K. Saleh Bushnaq ("AMELP")" and "IAP Texas formed by Basman Elashi in 1993." Plaintiffs' Original Complaint in this matter (Dckt. 1) at 6. However, in this matter Plaintiffs have focused on the judgments against HLF, IAP and AMS.

149, "PAC"). Although just shy of two years have passed since the filing of the Original Complaint which this Court dismissed, and though the Proposed Amended Complaint is a full forty (40) pages longer than Plaintiffs' Original Complaint, Plaintiffs still fail to establish subject matter jurisdiction as to the claims asserted. Allowing the proposed amendment would constitute an exercise in futility not warranting the waste of judicial resources it would require.

## II. Plaintiffs Propose No Claims Against Defendants Abuirshaid and Hamayel

As an initial matter, Plaintiffs assert no claims against individual defendants Abdelbaset Hamayel or Osama Abuirshaid. *See* Dckt. 148-1 (sealed) and 149-1 (redacted). Based on Plaintiffs' Original Complaint, this Court found that "plaintiffs fail to demonstrate … that the organizations and individual defendants can be held directly liable for the actions of the judgment debtors." Dckt. 41 at 10. Plaintiffs do not assert any new claims against these two previously named individuals. Defendants respectfully request this Court dismiss them from this action with prejudice, and that Plaintiffs take nothing against Abdelbaset Hamayel and Osama Abuirshaid.

## III. Plaintiffs Fail to Establish Subject Matter Jurisdiction

As to the claims which Plaintiffs do seek to assert with the proposed amendment, Plaintiffs fail to establish subject matter jurisdiction. While analysis of the propriety of granting leave to amend a complaint typically rests on a futility analysis applying the requirements of Fed. R. Civ. P. 12(b)(6), subject matter jurisdiction is a threshold question, "the first question in every case." *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). Without jurisdiction "the court cannot proceed at all." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Federal courts therefore have an obligation to examine jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). Granting leave to amend in order to enter a complaint which lacks the necessary and predicate requirement

3

of subject matter jurisdiction is not in the interests of judicial economy.[3]

### A. Proposed Claims Against Rafeeq Jaber

#### 1. "Veil Piercing" Involves Different Facts and New Theories of Liability.

Plaintiffs' proposed claims against Rafeeq Jaber fail for lack of subject matter jurisdiction even more clearly than did those in the Original Complaint. This continued jurisdictional defect renders the proposed amendment futile. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993) ("We, as did the district court, view the plaintiff's efforts to amend his complaint as futile because each of the claims for damages contained in the proposed amended complaint could not withstand a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted"); *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir.1991); *Williams v. USPS*, 873 F.2d 1069, 1072 (7th Cir. 1989) ("Failure to remedy the jurisdictional defects of a complaint is one example of where an amendment would prove futile.").

As this Court previously noted regarding Plaintiffs' Original Complaint, "[i]n this case plaintiffs are not asserting a 'veil-piercing' theory of vicarious liability in order to avoid the issue in *Peacock* that resulted in no jurisdiction." Dckt. 41 at 5, referencing *Peacock v. Thomas*, 516 U.S. 349, 354, 116 S. Ct. 862, 868, 133 L.Ed.2d 817 (1996). And yet, Plaintiffs' Proposed Amended Complaint does exactly that: Plaintiffs seek to bring the claim that "Defendant Rafeeq Jaber is also an alter ego of IAP/AMS and/or subject to liability under the doctrine of veil piercing." PAC at p. 58, ¶ 163; *see also id*. at p. 61, ¶ 172; p. 62, ¶¶ 173, 174, 175 and 175, part

---

[3] Should this Court choose to grant Plaintiffs' Motion for Leave to File Amended Complaint, Defendants reserve the right to fully reassert a Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) as to the amended pleading. In this Response, Defendants identify for the Court how the previous defect of subject matter jurisdiction has not been resolved, and in fact is more clearly deficient than with the Original Complaint. *Williams v. USPS*, 873 F.2d 1069, 1072 (7th Cir. 1989) ("Failure to remedy the jurisdictional defects of a complaint is one example of where an amendment would prove futile.").

B; and p. 63, ¶ 178 (all seeking to find Rafeeq Jaber liable "under the doctrine of veil piercing."). This is precisely what the United States Supreme Court prohibits, as recognized by this Court: "[t]he Supreme Court has 'never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.' Thus, the Supreme Court has 'cautioned against the exercise of jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or on a different principle than that of the prior decree.'" Dckt. 41 at 4-5, quoting *Peacock*, 516 U.S. at 357-58 (internal citations omitted). Furthermore, as veil piercing is not itself a free-standing claim, there is no independent jurisdiction for this cause of action. *Peacock*, 516 U.S. at 354 ("[p]iercing the corporate veil is not itself an independent … cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'") (internal citations omitted).

There is no dispute, nor can there be, that Rafeeq Jaber was not a named defendant in the prior case in which Plaintiffs obtained the judgment they seek to collect. There is also no dispute that the allegations against him of "veil piercing" which Plaintiffs ask permission to bring now "did not exist and could not have existed, at the time the court entered judgment in the" earlier action by Plaintiffs. Dckt. 41 at 5, quoting *Peacock*, 516 U.S. at 359.[4] In their exuberance to resurrect this suit, Plaintiffs now ask this Court for leave to assert the exact claim which they had specifically omitted on the first round, "in order to avoid the issue in *Peacock* that resulted in no jurisdiction." Dckt. 41 at 5. Permitting this is futile, and leave to do so should not be granted.

2.  "Fraudulent Concealment" Claims Also Fail for Lack of Jurisdiction.

In the Proposed Amended Complaint, Plaintiffs also seek to bring a claim of fraudulent concealment against Rafeeq Jaber. PAC at p. 64, ¶¶ 180-185. Plaintiffs allege as support for

---

[4] The prior claim which Plaintiffs brought against the previous defendants was under the Anti-Terrorism Act, a claim which is not asserted here against any current defendant, nor could it be, successfully. The claims Plaintiffs seek to assert in this lawsuit are limited to the business torts of alter ego, successor liability, veil piercing and fraudulent transfer.

5

this claim that Mr. Jaber "oversaw the windup of IAP/AMS's affairs and the application of IAP/AMS's assets to pay its creditors, including Plaintiffs. IAP/AMS's assets were insufficient to pay its debt to Plaintiffs who were its principal (if not only) creditor." *Id*. at p. 64, ¶ 180. By definition, paying Plaintiffs as creditors of IAP and/or AMS amounts to "alleged wrongdoing" which could not have "occurred [until] after judgment was entered in the original []case," thereby rendering the fraudulent concealment claim a "theor[y] of relief that did not exist and could not have existed at the time the court entered judgment in the" original case brought by Plaintiffs. Dckt. 41 at 5, quoting *Peacock*, 516 U.S. at 359. The same is true for the other acts attributed to Mr. Jaber which Plaintiffs allege support their new claim of fraudulent concealment: turning over assets to Plaintiffs (PAC at 64, ¶ 183); statements in his deposition in 2005 regarding IAP/AMS's inability to pay Plaintiffs' judgment (*id.*); and speaking at subsequent AMP events (*id.*). Under both the ruling of this Court and the clear holding of the United States Supreme Court, these subsequent acts and resulting new legal theories cannot give rise to jurisdiction. *See* Dckt. 41; *Peacock*, 516 U.S. at 357-359.

**B.   Proposed Claims Against AMP and AJP**

    1.   <u>Actions by AMP and AJP's Could Only Have Come After the Prior Judgment.</u>

Plaintiffs seek to bring claims that entity defendants AMP and AJP are alter egos and/or successor entities of IAP, AMS and/or HLF. However, Plaintiffs' own Proposed Amended Complaint shows that any actions by AMP or AJP could only have come after the date of the original judgment. These claims therefore fail for lack of subject matter jurisdiction, just as the "veil piercing" and fraudulent concealment claims as to Rafeeq Jaber fail.

There is no dispute that HLF had its assets frozen by the FBI and US Treasury in 2001. PAC at p. 21, ¶ 58. There is no dispute that IAP and AMS shut down in late 2004 or very early

6

2005. PAC at p. 22, ¶ 61 ("In 2005, shortly after IAP/AMS had shut down…"); *id*. at p. 24 ("IAP closes" marked at end of 2004/start of 2005); *id*. at p. 25, ¶ 66 ("In 2005, shortly after IAP/AMS stopped operations…"). And, while Defendants reserve the right to continue to challenge its applicability to this matter, if necessary at a later date, there is also no dispute that the entity KindHearts had its assets seized by the US Treasury on February 19, 2006. PAC at p. 22 ¶ 60. Further, no one disputes that Plaintiffs obtained the judgment at issue from their earlier action in December 2004 and early 2005. PAC at p. 20, ¶ 53.

There is also no dispute that AMP first became an entity with its incorporation in August 2006. PAC at p. 27, ¶ 72. There is no dispute that AJP was first incorporated in 2009. PAC at p. 22, ¶ 61 ("In 2009, AMP leaders incorporated AJP as a Section 501(c)(3) organization to provide fundraising capabilities."). These dates come well after Plaintiffs obtained the judgment at issue; any allegations of concealment, transfer or other illicit activity by these entities must therefore be subsequent to the judgment Plaintiffs had previously obtained, and therefore entail new facts and theories "that did not exist and could not have existed at the time the court entered judgment in the" original case brought by Plaintiffs. Dckt. 41 at 5, quoting *Peacock*, 516 U.S. at 359. Therefore, this Court lacks subject matter jurisdiction over claims against AMP and AJP.[5]

    2.    <u>Plaintiffs Still Fail to Establish Subject Matter Jurisdiction on Successor Claims.</u>

As was the case with Plaintiffs' Original Complaint, Plaintiffs' Proposed Amended Complaint fails to establish sufficient subject matter jurisdiction over Plaintiffs' asserted successor liability claims. Plaintiffs present no new bases for jurisdiction other than those already defeated in the first round of pleadings in this case. *Compare* PAC at p. 5-6, ¶ 11 *with* Dckt. 31

---

[5] Furthermore, entities cannot be held liable for pre-incorporation acts, even if by their directors or officers, absent a specific assumption of liabilities by the entity at formation. *US v. Petersen Sand and Gravel, Inc.*, 806 F. Supp. 1346, 1350 (N.D. Ill. 1992). No such agreements existed here, nor do Plaintiffs allege the existence of any.

at 8-9 *and* Dckt. 38 at 4-6. Plaintiffs cannot prevail on any theory of "direct" liability because, as set forth above, AMP and AJP did not exist at the time of the 1996 acts which gave rise to the underlying claims and could not have been the "true" actors (and, to the extent asserted against Rafeeq Jaber, Plaintiffs make no assertions as to any facts showing his involvement in the 1996 acts which formed liability in the underlying action). *Peacock*, 516 U.S. at 359.

Plaintiffs may show successor liability in one of four ways, in order to establish sufficient allegations for subject matter jurisdiction: "(1) [W]here there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a "mere continuation" of the seller; and (4) where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977).

Plaintiffs do not plead that any express or implied agreements to assume liabilities exist. Plaintiffs do not point to any transactions amounting to consolidations or mergers of any corporations. Plaintiffs identify no sale or transfer of assets. That leaves the last *Travis* factor: "where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." 565 F.2d at 446. Plaintiffs fail to identify any discrete acts of unbroken continuation of operations or fraudulent transfer of collectible assets, and in fact defeat their own claims of successor liability by alleging that "AMP resulted from an effort to ***re-create*** an organization that would continue to play IAP/AMS's role ***after IAP/AMS shut down***" (PAC at p. 23, ¶ 63) (emphasis added). Plaintiffs further recognize, as set forth above, that distinct breaks in time existed after the 2001 seizure of HLF's assets and the late 2004/early 2005 shutdown of IAP and AMS, and the August 2006 incorporation of AMP or the late 2009 incorporation of AJP. *See* Section III.B.1, *supra*. Plaintiffs also recognize that by the time AMP and AJP began,

(1) HLF had no financial assets; (2) IAP and AMS had ceased operating; and (3) AMP as an organization "emerged" well after a gap of any organization educating the public about Palestine in the United States had been created and recognized as a problem by those with that charitable interest. PAC at p. 22-23, ¶ ¶ 62-64 ("AMP board member and one of its purported founders, Munjed Ahmad, testified that AMP is focused on the 'Palestinian issue,' and that he was unaware of any other organization in the United States that had the same focus when AMP was organized in 2006, *after IAP/AMS and HLF were out of business*.") (emphasis added).[6] The statements contained in Plaintiffs' own proposed pleading demonstrate that no claim of successor liability could survive a jurisdictional challenge, rendering amendment futile.

       3.       <u>Plaintiffs Still Fail to Establish Subject Matter Jurisdiction on Alter Ego Claims.</u>

Plaintiffs fare no better at improving their alter ego claims to sufficiently establish subject matter jurisdiction in the Proposed Amended Complaint than they did with successor liability. The key elements required under Seventh Circuit authority in evaluating claims of alter ego are motive and intent to avoid liability. *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785 (7th Cir. 1993); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc*., 831 F.2d 1309, 1312 (7th Cir. 1987). For a finding of alter ego, plaintiffs must show "the stockholder and corporation were in effect a single entity," established through broad practice and not a single transaction that is alleged as unfair. *Esmark Inc. v. N.L.R.B.*, 887 F.2d 739, 788-89 (7th Cir. 1989). There must be evidence of

---

[6] As this Court previously noted, simply having a charitable purpose "to educate people about Palestine" "alone does not suggest any nefarious intent or unlawful motive." Dckt. 41 at 8. Nor does operating with a similar stated purpose: "[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation." *Christiansen v. Mech. Contractors Bid Dep*., 404 F.2d 324, 325 (10th Cir. 1968).

9

intent or motive to act in a fraudulent or abusive manner, and sufficient unity between the two corporations to justify setting aside the separateness of the entities. *Favia*, 995 F.2d at 788–89. Plaintiffs wholly miss this mark in their proposed amendment.

First, as set forth above, Plaintiffs do not assert any fraudulent or abusive transfer of assets prior to the time of the judgment at issue, nor can they. *Peacock*, 516 U.S. at 357-59 (holding that even specific allegations of fraudulent transfers do not convey jurisdiction, if the transfers complained of occurred after the time of the acts giving rise to the original judgment).

Second, Plaintiffs grossly misapply the factor concerning "the amount of respect given to the separate identity of the corporation of the shareholders." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc*., 85 F.3d 1282, 1287 (7th Cir. 1996). In an apparent attempt to show "disregard of corporate formalities" by AMP and AJP, Plaintiffs cite a litany of purported corporate errors, first by IAP and AMS, then separately by AMP and AJP: failure to maintain regular board minutes; meetings were held informally; and there is little documentation of corporate resolutions. PAC at p. 54-55, ¶ ¶ 152-154. However, being less than ideal record-keepers is not the standard as applicable for disregarding corporate formalities in an alter ego context: under Illinois law, a court may disregard the corporate form of entities operating as the alter egos of one another upon a showing that: (1) there is such a unity of interest and ownership *between the old and new corporations* that the separate personalities of the corporations and/or individuals no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity. *See U.S. v. All Meat and Poultry Products*, 470 F. Supp. 2d 823, 828 (N.D. Ill. 2007), citing *International Fin. Sens. Corp. v. Chromas Techs. Canada*, 356 F.3d 731, 736-37 (7th Cir. 2004). Plaintiffs do not meet this standard because they fail to plead facts showing the alleged "failures" of formalities by AMP and AJP in

10

any way connect them to IAP, AMS or HLF, opting instead to assert that "it is fair and legally appropriate to regard" AMP and AJP, along with IAP, AMS and HLF, all in one big bucket "as alter egos of each other" (PAC at p. 55, ¶ 155) without providing a factual rationale to do so. By Plaintiffs' own admission, AMP and AJP did not begin operating until after the old entities "were out of business", thereby precluding any continuity of operations. PAC at p. 23, ¶ 62. Plaintiffs' assertions do not suffice to establish jurisdiction, and the proposed amendment is therefore futile.

Third, Plaintiffs also misconstrue what "assets" may form the basis of a transfer under alter ego theory. Plaintiffs assert throughout the Proposed Amended Complaint that AMP and AJP use "the same critical assets" which HLF, IAP and AMS purportedly did, none of which are tangible. PAC at p. 31-33, ¶ 85-87. Plaintiffs assert that these "valuable intangible assets simply 'transitioned' to AMP and later AJP" – after the above-referenced gap of several years when "there was no other organization speaking for Palestine." PAC at p. 34, ¶ 89; *id.* at p. 23, ¶ 62. Even if such a time warp-necessitating transfer were possible, these are not the types of "intangible assets" seen in this Circuit as transfers of value which support successor liability or alter ego. *See, e.g.*, *Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770, 773 (7th Cir. 2018) (finding a valuable transfer of assets based on use of trademark and tradename, supplier lists, trade secrets, contracts, customer lists and data, telephone numbers, and internet domain names); *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*, No. 98 C 2453, 2000 U.S. Dist. LEXIS 6936, at *9-10 (N.D. Ill. May 17, 2000) (recognizing that continued use of a restaurant's name, which led to procuring a spot in Taste of Chicago and where there was testimony as to the significant value attached to the name, was a valuable transfer of an asset).[7] Plaintiffs' claim that the "good name" of the entities whose assets had been seized by the government and who were found liable under

---

[7] A courtesy copy of this opinion is attached hereto as Exhibit A, in accordance with the Rules of this Court.

11

the ATA had any "intangible assets" left to give as value belies belief; nonetheless, there is no assertion by Plaintiffs that AMP and/or AJP used the names of IAP, AMS or HLF at any time, or their internet domains, or phone numbers, or assumed any contracts previously held by IAP, AMS or HLF. Plaintiffs' Proposed Amended Complaint states that "specific care was taken to avoid any public connection with IAP/AMS" and "we really need to distance ourselves from any well known IAP figures". PAC at p. 26, ¶ 69. In the absence of a transfer of good will or assets, Plaintiffs now seek to rely on allegations that "the ideology and message of AMP/AJP is virtually identical to HLF, IAP and AMS" (PAC at p. 55), as sufficient for a showing of alter ego; this Court has already held that this is not the law. Dckt. 41 at 8. Plaintiffs therefore wholly fail to remedy the previous deficiencies of jurisdiction which dominated their Original Complaint. As these jurisdictional deficiencies remain, and are in fact amplified, granting leave to file Plaintiffs' Proposed Amended Complaint would be futile.

### IV. The Proposed Amendment Would Be Futile for Failure to State A Claim

In addition to the jurisdictional deficiencies set forth above, Plaintiffs' Proposed Amended Complaint is futile because of its failure to adequately state sufficient claims under Federal Rule of Civil Procedure 12(b)(6). Although leave to amend "shall be freely given when justice so requires," "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991); *see also GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so requires,' a district court may deny leave to amend for ... futility. The opportunity to amend a complaint is futile if the

complaint, as amended, would fail to state a claim upon which relief could be granted."); *Boogaard v. NHL*, 211 F. Supp. 3d 1107, 1110 (N.D. Ill. 2016).

For many of the same reasons set forth above which deprive this Court of subject matter jurisdiction, Plaintiffs' Proposed Amended Complaint fails to properly state claims which could withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the legal grounds asserted therein, of successor liability, alter ego, veil piercing and fraudulent concealment. Defendants hereby incorporate by reference the standards for each claim as set forth in the applicable sections above, and in the interests of both space and brevity will not repetitively list them here as well. As this Court previously noted, other cases in this Circuit have previously analyzed the claims asserted by Plaintiffs in this matter, and found much more is needed than Plaintiffs provide here to adequately state claims. *Sanchez v. Global Parking Management, Inc.*, No. 14 C 4611, 2015 WL 4429024 (N.D. Ill. Jul. 20, 2015) (Wood, J.) (analyzing claims of alter ego and successor liability where a new entity was formed prior to a judgment).[8] In *Sanchez*, the "new entity took over Global's business, including the same employees, same equipment, management and staff. Car Parking simply covered Global's signs with the name Car Parking." Dckt. 41 at 7. By contrast, one of AMP's founders, Munjed Ahmad, "had no prior role with IAP/AMS" and "was still in law school at the time IAP/AMS was active." PAC at p. 31, ¶ 84. Plaintiffs here, unlike in *Sanchez*, also do not point to "the same space, equipment, employees, and management." Dckt. 41 at 10. Nor is there evidence of fraudulent transfer of assets before the relevant judgment or overlapping control of assets, as existed in *Trustees of Sheet Metal Workers Local No. 1 Welfare Trust v. Pekin Climate Control, Ltd.*, 669 F. Supp. 2d 924 (C.D. Ill. 2009) (McDade, J.). "Instead, it appears that the individual defendants, who were involved with the judgment debtors to varying

---

[8] A courtesy copy of this opinion is attached hereto as Exhibit B, in accordance with the Rules of this Court.

13

degrees, are now involved with new organizations seeking to further the mission of educating people about Palestine." As they did in August of 2017, Plaintiffs again seek to have this Court equate "any organization and its members that support humanitarian interests for the people of Palestine as having an unlawful motive." This time around, Plaintiffs just take longer to say it.

### V. Plaintiffs' Inflammatory Rhetoric Does Not Support Any Proposed Legal Claims

Plaintiffs use extensive inflammatory and unsupported rhetoric in the voluminous Proposed Amended Complaint, though little of it has legal relevance to the claims Plaintiffs purport to bring. While a full recitation is in neither the interests of judicial efficiency nor the applicable page limits, below is a sampling of the conclusory rhetoric Plaintiffs seek leave to file:

- "AMP/AJP … continues to espouse Hamas' ideology and political positions; and it continues to facilitate fundraising for groups that funnel money to Hamas" (PAC at p. 3, ¶ 5)
- "The new AMP/AJP entities have continued to occupy the same role in Hamas's international fundraising and propaganda network as the IAP/AMS organizations. They continue to maintain the IAP/AMS organization's position as the most prominent Islamic organization in the United States acting on behalf of the 'Palestinian Cause' and Hamas." (PAC at p. 22, ¶ 62)
- "The timing of AMP and AJP's formation as the continuation of the Palestine Committee's core project to direct Hamas' activities in the United States was deliberate and consistent with the strategy adopted at the 1993 Philadelphia meeting." (PAC at p.27, ¶ 74)
- "The IAP/AMS organization's valuable intangible assets simply "transitioned" to AMP and later AJP, which have continued to use these assets to raise money, spread the organization's message, advance the organization's pro-Hamas/anti-Israel political objectives, provide a fundraising platform for pro-Hamas intermediary organizations, and (as discussed below) provide indirect support for Hamas itself." (PAC at p. 34, ¶ 89)
- "AMP is Still Promoting Hamas Ideology and Fundraising for Hamas." (PAC at p. 36, Sub-heading D)
- "AMP continues to materially support the same basic Hamas efforts and ideology, as did HLF and IAP/AMS." (PAC at p. 37, ¶ 97)

None of the statements above is supported by anything more than bald conclusory assertions, and none of the statements above relates in any meaningful way to the actual legal claims asserted: alter ego, successor liability, veil piercing and fraudulent concealment. These statements, and the

14

rest like them contained in the Proposed Amended Complaint, are instead gratuitous inflammatory conclusions against a legitimate non-profit organization, with no legal purpose to the rhetoric.[9] There has been no government or other action taken against AMP or AJP, no finding of liability under the ATA or any other related statute, and these entities (with AMP now as the d/b/a of AJP) continue to function in good standing.  Granting leave to amend ""is inappropriate where there is … bad faith [or] dilatory motive on the part of the movant" in addition to the lack of subject matter jurisdiction and failure to adequately state claims as set forth above.  *Villa*, 924 F.2d at 632.  Accordingly, Defendants respectfully request that this Court deny Plaintiffs' Motion for Leave, and instead enter judgment in favor of Defendants in this matter, and that Plaintiffs take nothing consistent with this Court's ruling in August of 2017 in this case.  Plaintiffs have had more than enough time and opportunity to do better from a legal standpoint; they have not done so.

## VI.    Conclusion

Based on the foregoing, Defendants respectfully request this Court deny the Plaintiffs' Motion, and dismiss Plaintiffs' claims in full in this action.  In the alternative, should this Court permit Plaintiffs' Proposed Amended Complaint, Defendants respectfully request that this Court enter final judgment dismissing Defendant Abuirshaid and Defendant Hamayel from this action with prejudice, as well as any other relief this Court deems just and proper.

---

[9] As they did in their Original Complaint, "Plaintiffs spend a great deal of time discussing organizations ... and ... individuals that are not named as defendants in this or the previous suit." Dckt. 41 at 9.   These entities and individuals have no bearing on the claims asserted against defendants, and the extensive portions of the Proposed Amended Complaint devoted to them add no legal value to this matter.

15

Dated this 24th day of April, 2019.

*/s/ Christina Jump*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Christina Jump*
Christina A. Jump
*Attorney for Defendants*
