# EXHIBIT C



Cited
As of: May 15, 2019 7:16 PM Z

# Fresh N' Pure Distribs. v. Foremost Farms USA

United States District Court for the Eastern District of Wisconsin

November 28, 2011, Decided; November 28, 2011, Filed

Case No. 11-C-470

**Reporter**
2011 U.S. Dist. LEXIS 136307 *; 2011 WL 5921450

FRESH N' PURE DISTRIBUTORS, INC., Plaintiff, v. FOREMOST FARMS USA, et al., Defendants.

## Core Terms

amended complaint, products, customers, distribution agreement, distributors, competitor, Antitrust, motion to dismiss, alleges, tortious interference, factual allegations, third party, selling, acquisition, contracts, parties, offers, milk, breach of contract claim, defendants', fails, contract claim, anticompetitive, plausibility, interfered, commodity, purchaser, quotation, commerce, contends

## Case Summary

### Overview

Plaintiff, a milk supplier, alleged breach of contract, violations of the Robinson-Patman Act of 1936, *15 U.S.C.S. § 13*, the Illinois Antitrust Act, *740 ILCS 10/1 et seq.*, and tortious interference with contract by defendant, a purchaser of milk and a competitor, based on the latter's offering rebates and intentionally underselling its products. The complaint failed to allege an essential element under Robinson-Patman and the Illinois Antitrust Act. It also failed to adequately unjustified interference with its contracts, but successfully alleged breach of a distribution agreement.

### Outcome

Purchaser's motion to dismiss was denied in part, as to the breach of contract claim, and otherwise granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

*HN1*[⬇] **Complaints, Requirements for Complaint**

A civil complaint need contain only a short and plain statement of the claim showing that the pleader is entitled to relief. *Fed. R. Civ. P. 8(a)(2)*. *Rule 8(a)(2)* reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court. All that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

**HN2**[ ] **Complaints, Requirements for Complaint**

To comply with *Fed. R. Civ. P. 8(a)(2)*, first, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

**HN3**[ ] **Complaints, Requirements for Complaint**

Although detailed factual allegations are not required, *Fed. R. Civ. P. 8* demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

**HN4**[ ] **Motions to Dismiss, Failure to State Claim**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

**HN5**[ ] **Motions to Dismiss, Failure to State Claim**

Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

**HN6**[ ] **Motions to Dismiss, Failure to State Claim**

The amount of facts that must be alleged in a complaint to present a plausible claim will vary based upon the nature of the claim. Certain claims may require a relatively minimal factual recitation to present a plausible claim, that is, a claim to recover on a contract for nonpayment, whereas others might require substantially more detailed factual allegations to demonstrate plausibility.

Antitrust & Trade Law > Robinson-Patman Act > Claims

**HN7**[ ] **Robinson-Patman Act, Claims**

The Robinson-Patman Act of 1936, also known as

the Anti-Price Discrimination Act, *15 U.S.C.S. § 13*, is part of the Clayton Antitrust Act. It prohibits anti-competitive price discrimination. To sustain a claim under the Robinson-Patman Act, a plaintiff must be able to show that (1) at least two contemporaneous sales were made in interstate commerce from the same seller; (2) the commodity in each sale was of like grade and quality; (3) the seller discriminated against the plaintiff with respect to price in favor of another purchaser; and (4) "the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser, that is, one who received the benefit of such discrimination."

Antitrust & Trade Law > Robinson-Patman Act > Defenses

*HN8*[⬇] **Robinson-Patman Act, Defenses**

A refusal to do business with a particular entity generally does not violate the Robinson-Patman Act, *15 U.S.C.S. § 13*, because one who unsuccessfully seeks to purchase a commodity cannot be a purchaser within the meaning of the Act.

Antitrust & Trade Law > Robinson-Patman Act > Defenses

*HN9*[⬇] **Robinson-Patman Act, Defenses**

There are innumerable reasons why a competitor might offer a lower price, even to the extent of offering promotions that result in its selling a product at a loss, in order to win over a customer.

Antitrust & Trade Law > Clayton Act > Scope

*HN10*[⬇] **Antitrust & Trade Law, Clayton Act**

The Illinois Antitrust Act, *740 ILCS 10/1 et seq.*, specifically its prohibitions against restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade, whether in manufacturing, distribution, financing, and service industries or in related for profit pursuits.

Antitrust & Trade Law > Clayton Act > Scope

*HN11*[⬇] **Antitrust & Trade Law, Clayton Act**

See *740 ILCS 10/3(3)*, *(4)*.

Antitrust & Trade Law > Clayton Act > Scope

*HN12*[⬇] **Antitrust & Trade Law, Clayton Act**

*740 ILCS 10/3(3)*, like the entire Illinois Antitrust Act, is modeled upon the Sherman Antitrust Act, and thus to the extent the statute is similar, it is construed in accordance with the construction given its Federal counterpart.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

*HN13*[⬇] **Pleadings, Amendment of Pleadings**

A party cannot amend its pleadings through its briefs.

Torts > ... > Contracts > Intentional Interference > Elements

*HN14*[⬇] **Intentional Interference, Elements**

To state a cause of action for tortious interference with a contract, the plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct

caused a subsequent breach of the contract by the third party; and (5) damages.

Torts > ... > Commercial Interference > Contracts > General Overview

*HN15*[ ] **Commercial Interference, Contracts**

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between the plaintiff and a third party, by preventing the plaintiff from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other the plaintiff for the pecuniary loss resulting to him or her.

Torts > ... > Commercial Interference > Contracts > General Overview

*HN16*[ ] **Commercial Interference, Contracts**

A claim for tortious interference with contract encompasses the situation in which the defendant prevents the plaintiff from performing the contract and, as a result, it is unable to require the third party to perform.

**Counsel:** [*1] For Fresh N' Pure Distributors Inc, an Illinois Corporation, Plaintiff: Keenan J Saulter, Saulter Tarver LLP, Chicago, IL; Mark J Carroll, Carroll Law Offices PC, Wheaton, IL.

For Foremost Farms USA, a Wisconsin Cooperative Association, Defendant: Donald K Schott, Joseph O Wilson, Quarles & Brady LLP, Milwaukee, WI.

For Dean Foods Company, Defendant: Connor A Sabatino, Roberta F Howell, Foley & Lardner LLP, Madison, WI.

For Dean Foods of Wisconsin LLC, doing business as Golden Guernsey Dairy, Dean Transportation Inc, Defendants: Roberta F Howell, Foley & Lardner LLP, Madison, WI.

**Judges:** AARON E. GOODSTEIN, U.S. Magistrate Judge.

**Opinion by:** AARON E. GOODSTEIN

**Opinion**

**DECISION AND ORDER ON THE DEFENDANTS' MOTIONS TO DISMISS**

**I. PROCEDURAL HISTORY**

On May 17, 2011, Fresh N' Pure Distributors, Inc. ("Fresh N' Pure") filed a complaint in this court against Dean Foods Company ("Dean") and Foremost Farms USA ("Foremost") alleging breach of contract (counts one and two), violations of the Clayton Act, *15 U.S.C. § 1, et seq.*, specifically the Robinson-Patman Act of 1936, *15 U.S.C. § 13*, (count three), and violations of Illinois Antitrust Act, *740 ILCS 10/1, et seq.* (count four). (Docket No. 1.) The matter was randomly assigned [*2] to this court and these parties subsequently consented to the full jurisdiction of a magistrate judge. (Docket Nos. 6, 7, 8.)

On July 15, 2011 and July 18, 2011, Foremost and Dean, respectively, moved to dismiss the complaint. (Docket Nos. 10, 13.) Also on July 18, 2011, Dean Foods of Wisconsin, LLC filed a related action against Fresh N' Pure in this district, which was docketed as case number 11-C-684, and assigned to this court pursuant to *Civil Local Rule 3(b)*.

Fresh N' Pure failed to timely respond to the defendants' motions and counsel for Foremost wrote to this court on August 17, 2011 asking that the motions be granted as unopposed. (Docket No. 19.) Later the same day, counsel for Fresh N' Pure filed a motion seeking more time to respond to the pending motions, (Docket No. 21), which the court granted, (Docket No. 23).

On August 29, 2011, Fresh N' Pure responded to

certain aspects of the defendants' motions but also filed a motion seeking leave to amend the complaint. (Docket Nos. 24, 25, 26.) In the proposed amended complaint, Fresh N' Pure named two additional defendants—Dean Foods of Wisconsin, LLC, and Dean Transportation, Inc. ("DTI")—and added a claim for tortious inference **[*3]** with contract (count five). (Docket No. 34.) Foremost and Dean subsequently replied to Fresh N' Pure's response, (Docket Nos. 27, 28), and a week later, both submitted briefs in opposition to Fresh N' Pure's motion to amend the complaint, (Docket Nos. 30, 31).

On September 20, 2011, the court held a scheduling conference with the parties during which the court discussed the parties' pending motions. The court granted the plaintiff's motion to file an amended complaint and denied the motions to dismiss the complaint without prejudice. (Docket No. 32, 33.) With respect to the defendants' responses in opposition to the plaintiff's motion to amend the complaint, the court converted these filings to motions to dismiss the amended complaint, (Docket Nos. 30, 31), and permitted the plaintiff to respond, (Docket No. 36, 37), and the defendants to reply, (Docket No. 38, 39).

As noted above, in its amended complaint, the plaintiff names two additional defendants: Dean Foods of Wisconsin, LLC and Dean Transportation, Inc. (Docket No. 34.) Following a request from the court for clarification as to the status of these newly-added parties, (Docket No. 40), counsel for Dean Foods Company responded **[*4]** and indicated she is appearing on behalf of Dean Foods Company, Dean Foods of Wisconsin, LLC, and Dean Transportation, Inc., (Docket No. 41). These parties also consented to the full jurisdiction of a magistrate judge. (Docket No. 41.) Therefore, the defendants' motions to dismiss the amended complaint are now ready for resolution.

## II. FACTS ALLEGED IN AMENDED COMPLAINT

Dean and Foremost were competitors in the sale of fluid milk in northeastern Illinois, Wisconsin, and the Upper Peninsula of Michigan, and Fresh N' Pure was the exclusive distributor for Foremost's products under the trade label Golden Guernsey. (Docket No. 34 at ¶¶9, 41-42.) According to Fresh N' Pure, Dean sought to restrict competition in the sale of dairy products by offering rebates and intentionally underselling its products. (Docket No. 34 at ¶38.)

Dean subsequently purchased Foremost and Fresh N' Pure understood that in light of its agreement with Foremost, Fresh N' Pure would be able to continue to sell Foremost products as well as Dean products. (Docket No. 34 at ¶¶20, 24-27.) In reliance upon Dean's representations, Fresh N' Pure negotiated the sale of Dean products to both current and potential customers. (Docket **[*5]** No. 34 at ¶29.) However, Dean subsequently refused to sell Dean products to Fresh N' Pure. (Docket No. 34 at ¶30.) Instead, Dean's other distributors, one of whom was Dean Transportation, Inc., sold Dean products to Fresh N' Pure's former customers. (Docket No. 34 at ¶¶31-36.) Fresh N' Pure attempted to fill its customers' orders for Dean products by purchasing Dean products from one of Dean's other distributors, a competitor of Fresh N' Pure, rather than from Dean directly, but Dean refused to permit this practice. (Docket No. 34 at ¶32.)

## III. MOTION TO DISMISS STANDARD

*HN1*[↑] A civil complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. "The Rule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009)* (quoting *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*); see also *Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th

Case: 1:17-cv-03591 Document #: 171-3 Filed: 05/17/19 Page 7 of 16 PageID #:3174

Page 6 of 15
2011 U.S. Dist. LEXIS 136307, *5

*Cir. Ill. 2010)* (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 at **[*6]** 165-173 (3d ed. 2004) ("[A]ll that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity.").

In recent years, the Supreme Court addressed the question of just how short and plain that statement may be. See *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*; *Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (per curiam); *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. The Seventh Circuit synthesized the recent holdings of the Court regarding the pleading standard set forth in *Rule 8(a)(2)* and stated:

> **HN2**[↑] First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks, 578 F.3d at 581*.

This trio of Supreme Court cases did not somehow reinstate the old fact-pleading requirements and it remains true that specific facts are not necessary. *Swanson, 614 F.3d at 404*. **HN3**[↑] Although **[*7]** detailed factual allegations are not required, *Rule 8* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal, 129 S. Ct. at 1949* (citing *Twombly, 550 U.S. at 555*).

> **HN4**[↑] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id. at 1949* (quoting *Twombly, 550 U.S. at 556, 557, 570)* (internal citations and quotation marks omitted).

> **HN5**[↑] Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts **[*8]** do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief.

*Id. at 1950* (internal citations, brackets, and quotation marks omitted). A complaint is not insufficient merely because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly, 550 U.S. at 556* (internal quotation marks omitted).

As this court has said before,

> **HN6**[↑] The amount of facts that must be alleged in a complaint to present a plausible claim will vary based upon the nature of the claim. Certain claims may require a relatively minimal factual recitation to present a plausible claim (e.g. a claim to recover on a contract for nonpayment) whereas others might require substantially more detailed factual allegations to demonstrate plausibility (e.g. an antitrust claim). In Twombly, the plaintiffs attempted to allege a violation of § 1 of the Sherman Act, *15*

*U.S.C. § 1*. In Iqbal, the plaintiff attempted to defeat a claim of qualified immunity and demonstrate that high-ranking government officials violated the *First* and *Fifth Amendments* by approving **[*9]** a policy that allegedly harmed the plaintiff. The natures of the claims in both these cases were such that they would necessarily require substantially more factually intensive pleadings than many more routine cases. Thus, courts must be cautious so as to not interpret Twombly and Iqbal as requiring detailed factual recitations for all complaints simply because more detailed factual allegations were required in those cases due to the nature of the claims alleged.

*EEOC v. Universal Brixius, 264 F.R.D. 514, 517 (E.D. Wis. 2009)*. "[I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden than it was before the Court's recent decisions." *Swanson, 614 F.3d at 404*.

## IV. ANALYSIS

### A. Robinson-Patman Act of 1936 Claim against Dean Foods Company

*HN7*[↑] The Robinson-Patman Act of 1936, also known as the Anti-Price Discrimination Act, codified at *15 U.S.C. § 13* as part of the Clayton Antitrust Act, prohibits anti-competitive price discrimination. See *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, 176, 126 S. Ct. 860, 163 L. Ed. 2d 663 (2006)*. In order to sustain a claim under the Robinson-Patman Act, the plaintiff must be able to show that (1) at least two contemporaneous **[*10]** sales were made in interstate commerce from the same seller; (2) the commodity in each sale was of like grade and quality; (3) the seller discriminated against the plaintiff with respect to price in favor of another purchaser; and (4) "the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser, i.e., one who received the benefit of such discrimination." *Id. at 176-77* (internal ellipses, quotation marks, and brackets omitted).

Dean contends that, for a number of reasons, Fresh N' Pure's amended complaint fails to state a claim for a violation of the Robinson-Patman Act. Most significantly, Dean alleges that Fresh N' Pure has failed to point to a single sale from Dean to a Fresh N' Pure competitor where the competitor was allegedly charged a significantly lower price than that paid by Fresh N' Pure. (Docket No. 30 at 5-9.)

Fresh N' Pure's amended complaint focuses upon allegations that Dean refused to sell to it. However, *HN8*[↑] a refusal to do business with a particular entity generally does not violate the Robinson-Patman Act because one who unsuccessfully seeks to purchase a commodity cannot be a "purchaser" within the meaning **[*11]** of the Act. See, e.g., *Republic Packaging Corp. v. Haveg Industries, Inc., 406 F. Supp. 379, 380 (N.D. Ill. 1976)*; *Loren Specialty Mfg. Co. v. Clark Mfg. Co., 241 F. Supp. 493, 498 (N.D. Ill. 1965)* (citing *Shaw's, Inc. v. Wilson-Jones Co., 105 F.2d 331 (3d Cir. 1939)*; *Chicago Seating Co. v. S. Karpen & Bros., 177 F.2d 863 (7th Cir. 1949))*. Rather, to state a claim, Fresh N' Pure must point to instances where Dean sold products to Fresh N' Pure's competitors at a price lower than that it offered to Fresh N' Pure.

Fresh N' Pure mentions six competitors in its amended complaint: Cloverleaf Farms Distributors, Inc. ("Cloverleaf"), Freshline Dairy Distributors, Inc. ("Freshline"), C&C Dairy, Inc. ("C&C"), Lockwood Dairy Company ("Lockwood"), J&R Dairy Services, Inc. ("J&R"), and DTI. However, the complaint offers very little detail with respect to these competitors. Cloverleaf is identified simply as the competitor from whom Fresh N' Pure bought Dean products in an effort to satisfy its customers' orders. (Docket No. 34 at ¶¶32, 36, 77, 81.) C&C and Freshline are two competitors to whom Foremost allegedly began selling its products in violation of the exclusive distribution agreement it **[*12]** had with Fresh N' Pure. (Docket No. 34 at

Case: 1:17-cv-03591 Document #: 171-3 Filed: 05/17/19 Page 9 of 16 PageID #:3176

Page 8 of 15
2011 U.S. Dist. LEXIS 136307, *12

¶¶18, 19, 59, 65.) Lockwood is identified simply as one of the competitors to whom Fresh N' Pure believes it lost profits but the complaint contains no further support for this allegation. (Docket No. 34 at ¶¶59, 65.) J&R is the competitor to whom Fresh N' Pure lost Michael's Fresh Market as a customer, but the complaint offers nothing more. (Docket No. 34 at ¶¶33, 78.)

The amended complaint offers the most information with respect to DTI, which is named as a defendant, but again, the details are sparse. DTI is identified as "one of the Buyers of Foremost's Assets under the Asset Purchase Agreement." (Docket No. 34, ¶ 34.) However, as set forth in the amended complaint, DTI is characterized as the competitor to whom Fresh N' Pure lost Tischler's Finer Foods, Inc. as a customer, (Docket No. 34, ¶¶34, 79), that offered coupons and discounts to Tischler's "for sale in Tischler's Grocery stores at a price less than Fresh N' Pure could purchase from Dean," and that assumed that distribution agreement between Foremost and Fresh N' Pure, (Docket No. 34, ¶¶35, 80).

At no point does Fresh N' Pure allege that Dean sold products to any of these six competitors [*13] for less than it charged to Fresh N' Pure. The closest Fresh N' Pure comes to this target is when it alleges "DTI specifically assumed the Distribution Agreement between Foremost and Fresh N' Pure, and then offered coupons and promotions to Tischler, Fresh N' Pure's customer, for sale in Tischler's Grocery stores at a price less than Fresh N' Pure could purchase from Dean." (Docket No. 34 at ¶35.) The court understands Fresh N' Pure to be alleging that as a result of promotions and coupons, the distributor DTI was able to sell milk to its retail customer for less than what Fresh N' Pure would have paid to its supplier, Dean.

Without more, this allegation does not support a conclusion that Dean offered DTI a lower price than it offered to Fresh N' Pure. It should go without saying that *HN9*[↑] there are innumerable reasons why a competitor might offer a lower price, even to the extent of offering promotions that result in its selling a product at a loss, in order to win over a customer. (Selling at a loss, of course, might present other issues but those are not raised in this action.) In addition, there is the fact that DTI was a subsidiary of Dean which raises the question of whether a subsidiary [*14] of a supplier may even count as a competitor for purposes of the Robinson-Patman Act. See, e.g., *Bell v. Fur Breeders Agric. Coop., 348 F.3d 1224, 1235-37 (10th Cir. 2003)*; *O'Byrne v. Cheker Oil Co., 727 F.2d 159, 164 (7th Cir. 1984)*; *Security Tire & Rubber Co. v. Gates Rubber Co., 598 F.2d 962 (5th Cir. 1979)*; *Brewer v. Uniroyal, Inc., 498 F.2d 973, 977 n.2 (6th Cir. 1974)*; *Accurate Control Sys. v. Neopost, Inc., 2002 U.S. Dist. LEXIS 11340, *5 (N.D. Ill. June 25, 2002)*. But this is a question the court need not resolve because the plaintiff has plainly failed to allege an essential element of a claim under the Robinson-Patman Act, i.e. that Dean sold a commodity of like grade and quality to a competitor for a lower price than it charged to Fresh N' Pure. Therefore, count three of the amended complaint shall be dismissed.

**B. Illinois Antitrust Act Claim against Dean Foods Company**

Dean also contends that Fresh N' Pure has failed to properly state a claim for any violation of the Illinois Antitrust Act and therefore moves to dismiss count four of the amended complaint. Fresh N' Pure's response to this aspect of Dean's motion could more accurately be characterized as a lack of response.

The [*15] portion of Fresh N' Pure's response addressing this aspect of Dean's motion spans about four pages. (Docket No. 37 at 9-13.) However, more than 85% of this portion of Fresh N' Pure's response, essentially three-and-a-half pages, consists entirely of a footnote wherein Fresh N' Pure quotes from the Illinois Antitrust Act. The only argument Fresh N' Pure can muster in support of this claim is a conclusory sentence, which again

is composed nearly entirely of a quotation of the Act, and a portion of the Act not even referenced in its complaint. Fresh N' Pure states:

> The anticompetitive conduct that Dean's engaged in throughout its "relationship" with FNP is also clearly violative of *HN10*[⬆] the Illinois Antitrust Act, specifically its prohibitions against "restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade, whether in manufacturing, distribution, financing, and service industries or in related for profit pursuits." *740 ILCS 10/2*.

(Docket No. 37 at 13.)

The absence of any legal argument to support the allegations made in the amended complaint is reason enough **[*16]** for the court to grant Dean's motion to dismiss this claim; it is not the court's role to create plausible legal arguments to support a party's claim. If a party fails to even put forth an argument in support of its position, the court presumes that the opponent's motion is unopposed. Therefore, it is on this basis that the court shall grant Dean's motion to dismiss count four.

Nonetheless, the court shall very briefly discuss why even if the court were overlook Fresh N' Pure's failure to present any opposition to this portion of Dean's motion, the court would conclude that Fresh N' Pure has failed to state a claim under the Illinois Antitrust Act.

Fresh N' Pure alleges that the following acts "constituted unlawful price discrimination which was violative of The Illinois Antitrust Act, *740 ILCS 10/1 et seq*:"

> 1) denying FRESH N' PURE THE [sic] ability to sell its products; 2) selling fluid milk to FRESH N' PURE's customers with knowledge that FRESH N' PURE had already negotiated a price for Dean's fluid milk products; 3) continuing to sell and distribute its products through its long term distributors to FRESH N' PURE's customers in an attempt to unlawfully stifle completion [sic] with **[*17]** FRESH N' PURE; 4) offering rebates and/or intentionally underselling Dean products including fluid milk to certain customers in an attempt to unlawfully stifle competition with FRESH N' PURE.

(Docket No. 34 at ¶74.)

According to the conclusions contained in paragraph 73 of its amended complaint, Fresh N' Pure is attempting to allege that Dean violated specifically *subsections (3)* and *(4) of 740 ILCS 10/3* which, in relevant part, make it illegal to:

> *HN11*[⬆] (3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce; or
>
> (4) [M]ake a sale or contract for sale of . . . commodities . . . **on the condition, agreement, or understanding that the** . . . **purchaser thereof shall not use or deal in the** . . . **commodity** . . . **of a competitor or competitors of the** . . . **seller**, where the effect of such . . . condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

The statutory languate quoted above is contained in paragraph 73, but the bolded portions **[*18]** represent essential language that the plaintiff omitted when quoting the statute.

Including the essential language that Fresh N' Pure omitted from its amended complaint makes clear how *subsection (4)* is inapplicable to the facts alleged in this case. This provision addresses a situation where a supplier seeks to decrease competition by refusing to sell to a customer unless that customer agrees to buy only from it. There is no allegation that would tend to suggest that such

exclusivity occurred in the present case. Therefore, the court shall not further consider this provision.

Subsection (3) is obviously broader and would encompass a wider variety of anticompetitive behavior. HN12[] This provision, like the entire Illinois Antitrust Act, is modeled upon the Sherman Antitrust Act, and thus to the extent the statute is similar, it is construed "in accordance with the construction given its Federal counterpart." Laughlin v. Evanston Hosp., 133 Ill. 2d 374, 384, 550 N.E.2d 986, 990, 140 Ill. Dec. 861 (1990); see also Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc., 162 Ill. 2d 99, 104, 642 N.E.2d 470, 472-73, 204 Ill. Dec. 769 (1994) (comparing section 3(3) of the Illinois Act and *section 2* of the Sherman Act). Nonetheless, little [*19] analysis is necessary to conclude that the plaintiff has failed to state a claim under the subsection (3).

Without substantially more, an allegation that a supplier refused to sell to a prospective distributor is insufficient to state a claim under the Illinois Antitrust Act. See, e.g., Gilbert's Ethan Allen Gallery, 162 Ill. 2d at 104-09, 642 N.E.2d at 473-74. As for that allegation that Dean sold milk to Fresh N' Pure's customers, the complaint fails to elaborate on exactly what occurred. Fresh N' Pure's competing distributors may have done so but there is no allegation that defendant Dean Foods Company, the only defendant named in count four, did so.

With respect to Fresh N' Pure's third allegation, it appears that the plaintiff believes that Dean should have refused to allow its other distributors to sell to Fresh N' Pure's former customers after Dean decided to no longer do business with Fresh N' Pure. The court is unaware of any basis in law for this argument (Fresh N' Pure certainly does not point the court to any such authority) but the court finds it safe to conclude Dean's failure prevent its distributors from selling to Fresh N' Pure's former customers did not violate the [*20] Illinois Antitrust Act.

Finally, in the absence of substantially more support, the allegations related to pricing contained in the fourth part of paragraph 74 of the amended complaint are insufficient to state a claim under the Illinois Antitrust Act. Such alleged price discrimination is not proscribed by the Illinois Antitrust Act. Laughlin, 133 Ill. 2d at 388, 550 N.E.2d at 992; see also Siegel v. Shell Oil Co., 480 F. Supp. 2d 1034, 1048 (N.D. Ill. 2007).

## C. Tortious Interference with Contract Claim against Dean Foods Company

Fresh N' Pure alleges in its amended complaint that when it lost customers as a result of Dean refusing to sell to it and precluding other Dean suppliers from selling Dean products to Fresh N' Pure, Dean tortiously interfered with the contracts that Fresh N' Pure entered into with its customers. (Docket No. 34 at ¶¶77-79.) Dean contends that this claim fails as a matter of law because Dean was not a stranger to the contracts with which it allegedly interfered and even if a stranger, its actions were privileged. (Docket No. 30 at 13-17.)

Although Dean initially relied upon Wisconsin law in its brief, its reply does not challenge Fresh N' Pure's assertion that Illinois [*21] law governs this claim. (Docket No. 38 at 12-14.) Thus, the court shall apply Illinois law. The court also notes that Fresh N' Pure refers to a claim for "interference with a business expectancy" in its brief. (Docket No. 36 at 9.) The amended complaint, however, refers to only the similar but not identical claim for "tortious interference with contract." (Docket No. 34, count five.) HN13[] A party cannot amend its pleadings through its briefs, and therefore the court shall consider only the tortious interference with contract claim alleged in the amended complaint.

> In order HN14[] to state a cause of action for tortious interference with a contract, the plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's

Case: 1:17-cv-03591 Document #: 171-3 Filed: 05/17/19 Page 12 of 16 PageID #:3179

Page 11 of 15
2011 U.S. Dist. LEXIS 136307, *21

intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages.

Purmal v. Robert N. Wadington & Assocs., 354 Ill. App. 3d 715, 727, 820 N.E.2d 86, 98, 289 Ill. Dec. 578 (App. Ct. 2004) (citing Kehoe v. Saltarelli, 337 Ill. App. 3d 669, 676-77, 786 N.E.2d 605, 612, 272 Ill. Dec. 66 (App. Ct. 2003)).

Fresh N' Pure's [*22] amended complaint obviously fails to plead each of these elements. With respect to any alleged tortious interference resulting from Dean preventing its other distributors from selling to Fresh N' Pure, the plaintiff does not allege that any contract existed between it and these other distributors, which the distributors subsequently breached. Thus, the court shall not further consider this aspect count five.

As for the potential claim that Dean tortiously interfered in Fresh N' Pure's contracts with its customers, the complaint does not allege that any third party, i.e. Fresh N' Pure's customers, breached a contract with Fresh N' Pure, but rather alleges that Dean's actions towards Fresh N' Pure resulted in Fresh N' Pure's breach of its contracts with its customers. Thus, Fresh N' Pure's claim is not the ordinary tortious interference with contract claim embodied in the Restatement (Second) of Torts § 766, but rather reflects the cause of action set forth in § 766A of the Restatement, which provides:

> HN15[⬆] One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another [the plaintiff] and a third person, by preventing the other [*23] [the plaintiff] from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other [the plaintiff] for the pecuniary loss resulting to him.

Scholwin v. Johnson, 147 Ill. App. 3d 598, 608, 498 N.E.2d 249, 255, 101 Ill. Dec. 67 (App. Ct. 1986) (quoting Restatement (2d) Torts § 766A).

In Scholwin, the appellate court reversed the trial court's dismissal of a complaint wherein the plaintiff alleged that the defendant tortiously interfered with a contract it had with a third party when the defendant refused to complete a real estate contract with the plaintiff, thus resulting in the plaintiff being unable to complete a dependent real estate deal with the third party. Therefore, under Scholwin, HN16[⬆] a claim for tortious interference with contract "encompasses the situation in which the defendant prevents the plaintiff from performing the contract and, as a result, he is unable to require the third party to perform." Id. Illinois, however, has not adopted the latter portion of § 766A whereby merely making performance more expensive or burdensome would constitute tortious interference; only if a defendant's actions makes the plaintiff's compliance with [*24] the third party contract impossible will there be a viable claim under Illinois law. Catapult Communs. Corp. v. Foster, 2010 U.S. Dist. LEXIS 94922, *9-10 (N.D. Ill. Sept. 13, 2010); Triple Canopy, Inc. v. Moore, 2005 U.S. Dist. LEXIS 14219, *21-23 (N.D. Ill. July 1, 2005) (citing Hidrovia v. Great Lakes Dredge & Dock Corp., 2002 U.S. Dist. LEXIS 21784, *10 (N.D. Ill. Nov. 5, 2002). The distinction is immaterial for present purposes because the amended complaint adequately alleges that Dean's complete refusal to sell to Fresh N' Pure made it impossible for Fresh N' Pure to comply with its contracts with its customers to supply Dean and/or Golden Guernsey brand milk.

However, Scholwin may be an anomaly because subsequent Illinois courts have held that a tortious interference claim requires that the defendant's actions be directed towards a third party other than the plaintiff, albeit without acknowledging Scholwin or discussing § 766A. See Dawson v. W. & H. Voortman, Ltd., 853 F. Supp. 1038, 1044 (N.D. Ill. 1994) (citing Mitchell v. Weiger, 87 Ill. App. 3d 302, 305, 409 N.E.2d 38, 41, 42 Ill. Dec. 543 (1980); IK Corp. v. One Financial Place

*Partnership, 200 Ill. App. 3d 802, 819, 558 N.E.2d 161, 172, 146 Ill. Dec. 198 (App. Ct. 1990))*; [*25] *Continental Mobile Tel. Co. v. Chicago S M S A Ltd. Partnership, 225 Ill. App. 3d 317, 325, 587 N.E.2d 1169, 1174-75, 167 Ill. Dec. 554 (App. Ct. 1992)*. One court mentioned Scholwin but did not discuss it because the court dismissed the complaint on a different basis. *Delcon Group, Inc. v. Northern Trust Corp., 187 Ill. App. 3d 635, 651, 543 N.E.2d 595, 604-05, 135 Ill. Dec. 212 (App. Ct. 1989)*.

At least one federal court has applied *Scholwin, Freight Handler Enters. v. Advantage Logistics Midwest, Inc., 2005 U.S. Dist. LEXIS 29831 (N.D. Ill. Nov. 23, 2005)*, and the Court of Appeals for the Seventh Circuit also referred to Scholwin and *§ 766A* as an alternative basis to affirm a jury's verdict, *Havoco of America, Ltd. v. Sumitomo Corp. of America, 971 F.2d 1332, 1344-45 (7th Cir. 1992)*.

The court need not attempt to resolve this apparent conflict in Illinois law because the court concludes that the plaintiff has failed to adequately allege that Dean's actions were unjustified, and therefore this claim must be dismissed. Fresh N' Pure alleges that "Dean's conduct constituted an intentional and unjustified inducement of Plaintiff's breach of its contracts with these third parties." (Docket No. 34 at ¶86.) However, the court [*26] is "not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal, 129 S. Ct. at 1950*, and the plaintiff fails to adequately support this legal conclusion. The plaintiff simply baldly asserts that Dean's actions were part of an effort to "stifle competition" and constituted "anticompetitive behavior." (Docket No. 34 at ¶¶81-83.)

Fresh N' Pure was not a competitor of Dean but rather was essentially a customer. Without substantially more factual detail in the amended complaint, it is not readily possible to infer how Dean's decision to no longer do business with one of its customers was "anticompetitive," would "stifle competition," or was otherwise unjustified. Thus, these bald assertions which, as discussed above, the plaintiff has failed to support, are insufficient to plausibly satisfy the elements of a tortious interference with contract claim. Therefore, Fresh N' Pure's claim for tortious interference with contract shall be dismissed.

### D. Breach of Contract Claims against Dean and Foremost

Fresh N' Pure contends that both Foremost and Dean breached the distribution agreement. As for Fresh N' Pure's breach of contract claim against Foremost, Foremost acknowledges [*27] that Fresh N' Pure has adequately alleged a claim, at least with respect to Foremost's alleged sale to competing distributors prior to its acquisition by Dean. (Docket No. 31 at 4-5.) However, Foremost does seek to dismiss the alternative theory of liability set forth in paragraph 60 of the amended complaint, which states:

> Upon information and belief, the written Distribution Agreement between Plaintiff and Foremost, was not assumed by Dean as part of its acquisition of Foremost's Assets, and accordingly, Foremost continues to be liable for the continued sale of Foremost products to competitors of Fresh N' Pure.

(Docket No. 34 at ¶60.)

Foremost contends that this alternative theory amounts to an effort to hold Foremost liable for Dean's breach of a contract Dean never assumed. The distribution agreement was between Fresh N' Pure and Foremost, and thus in Foremost's view, its obligation was limited to ensuring that the products it manufactured that were within the scope of the distribution agreement were distributed by Fresh N' Pure. When Foremost was acquired by Dean, Foremost ceased to manufacture any products, and thus it could not have sold its products to other distributors because [*28] there were no products to sell.

Resolving the question of whether after its acquisition by Dean, there were Foremost products within the scope of the distribution agreement that

were distributed by other distributors is not appropriate at this stage. The relevant question is whether Fresh N' Pure has adequately alleged that products that were within the scope of the distribution agreement were improperly distributed by other distributors.

If the distribution agreement was not assumed by Dean, then it is plausible that Foremost would remain responsible for the sale of Foremost products to other distributors even after the Foremost's acquisition by Dean. Therefore, the court shall deny Foremost's motion to dismiss this alternative aspect of Fresh N' Pure's complaint.

This question about whether Foremost might be liable for an alleged breach of the distribution agreement after its acquisition by Dean, however, is relevant only if Dean is found to not have assumed the distribution agreement. It is on this basis that Dean seeks to dismiss Fresh N' Pure's breach of contract claim against it.

On this claim against Dean, Fresh N' Pure comes dangerously close to pleading itself out of court. It [*29] alleges that Dean assumed the distribution agreement between Fresh N' Pure and Foremost when Dean purchased the assets of Foremost. (Docket No. 34 at ¶65.) Dean then allegedly breached this agreement by subsequently selling Foremost products to other distributors. (Docket No. 34 at ¶65.) Fresh N' Pure makes clear that the distribution agreement it had with Foremost was written, (Docket No. 34 at ¶¶ 9, 12, 24, 27, 28, 56, 60, 62), but yet the only agreement between Fresh N' Pure and Foremost that Fresh N' Pure explicitly alleges Dean assumed was an "Oral Contract with Fresh 'N [sic] Pure Distribution of Streamwood, Illinois," (Docket No. 34 at ¶22). The amended complaint does not allege that this reference to an oral contract was mistaken and it actually referred to the written distribution agreement, although Fresh N' Pure does make this argument in its present brief, (Docket No. 36 at 5).

Dean's liability for any breach of the distribution agreement is dependent upon a finding that Dean assumed this obligation of Foremost when it purchased the assets of Foremost, and thus whether Fresh N' Pure has adequately pled a breach of contract claim against Dean depends upon whether it has adequately [*30] pled that Dean assumed the distribution agreement. Fresh N' Pure does explicitly allege that Dean assumed the distribution agreement between Foremost and Fresh N' Pure, (Docket No. 34 at ¶65), but this is arguably simply a legal conclusion masquerading as a factual allegation. Based upon the factual allegations contained in the amended complaint, Fresh N' Pure has alleged that an oral contract between Fresh N' Pure and Foremost was explicitly assumed in the asset purchase agreement and the distribution agreement was undisputedly written. Consequently, Fresh N' Pure has not adequately pled a claim for breach of contract, unless the amended complaint contains additional allegations that would tend to support the conclusion that Dean assumed the distribution agreement between Fresh N' Pure and Foremost.

The court finds the requisite support for Fresh N' Pure's allegations in the portion of the amended complaint where it alleges that its agents met with representatives of Dean and Foremost following the acquisition and were assured that things would remain as they had been. (Docket No. 34 at ¶24.) Although not necessarily strong, this allegation read together with the remainder of the amended [*31] complaint, including the fact that Foremost never notified Fresh N' Pure that the written distribution agreement would be terminated upon its acquisition by Dean, is nonetheless sufficient to raise the reasonable inference that Dean assumed the distribution agreement. Therefore, Dean's motion to dismiss Fresh N' Pure's breach of contract claim shall be denied.

## V. DEAN FOODS OF WISCONSIN, LLC AND DEAN TRANSPORTATION, INC.

Fresh N' Pure added Dean Foods of Wisconsin, LLC and Dean Transportation, Inc. as named

defendants in the plaintiff's amended complaint. Other than being identified as a Dean subsidiary, (Docket No. 34 at ¶7), Dean Foods of Wisconsin, Inc. is not mentioned in the amended complaint. As for Dean Transportation, Inc., the court previously discussed the alleged activities of this Dean subsidiary in regard to plaintiff's anti-trust claim. Dean notes in a footnote that the amended complaint fails to address how these newly-named entities are part of this litigation, (Docket No. 30 at fn.2), but these parties have not formally moved to be dismissed.

Simply being mentioned in a complaint is insufficient to make an entity a defendant. Because the complaint is devoid of any basis [*32] for these entities to continue as defendants, especially in regard to the remaining claim, the court on its own motion shall dismiss these defendants.

## VI. CONCLUSION

Dean's alleged refusal to do business with Fresh N' Pure did not violate the Robinson-Patman Act, and Fresh N' Pure has failed to allege that Dean sold its products to a Fresh N' Pure competitor for less than what it charged Dean. Therefore, count three shall be dismissed.

Fresh N' Pure has failed to offer any support for its claim under the Illinois Antitrust Act, and therefore the court shall grant the motion to dismiss count four as unopposed. Even if the court were to overlook Fresh N' Pure's lack of any substantive response to this aspect of Dean's motion, the court would nonetheless grant Dean's motion to dismiss count four.

The court shall also dismiss Fresh N' Pure's tortious interference with contract claim against Dean. Fresh N' Pure has failed to allege that any contract existed between it and any distributor that Dean refused to permit to sell to Fresh N' Pure. As for the possibility that Dean tortiously interfered with contracts that existed between Fresh N' Pure and its customers, there is a question of whether [*33] such a claim, which would arise under *§ 766A of the Restatement (Second) of Torts*, is recognized under Illinois law in the circumstances presented in this case. If such a claim was viable, Fresh N' Pure has nonetheless failed to adequately plead the essential elements of this cause of action because Fresh N' Pure offers nothing but unsupported legal conclusions.

The court, however, will deny the defendants' motions to dismiss the breach of contract claims, which are counts one and two. Although lacking certain detail and clarity that the court would ordinarily expect, the court nonetheless concludes that the claims are sufficient to clear the relatively low threshold imposed at this stage of litigation.

Finally, because the amended complaint is devoid of any basis for Dean Foods of Wisconsin, LLC and Dean Transportation, Inc. to be defendants in this action, the court shall dismiss these entities from this action.

**IT IS THEREFORE ORDERED** that Dean Foods Company's motion to dismiss, (Docket No. 30), is **granted in part and denied in part.** The motion to dismiss is denied as to count two of the amended complaint and granted as to counts three, four, and five of the amended complaint.

**IT IS** [*34] **FURTHER ORDERED** that Foremost Farms USA's motion to dismiss count one, (Docket No. 31), is **denied.**

**IT IS FURTHER ORDERED** that Dean Foods of Wisconsin, LLC and Dean Transportation, Inc. are **dismissed** from this action.

The Scheduling Order, (Docket No. 33), entered on September 20, 2011 remains in effect.

Dated at Milwaukee, Wisconsin this 28th day of November, 2011.

/s/ Aaron E. Goodstein

AARON E. GOODSTEIN

U.S. Magistrate Judge

**End of Document**