# EXHIBIT F



⚠ Caution
As of: May 15, 2019 7:16 PM Z

# *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*

United States District Court for the Northern District of Illinois, Eastern Division

May 17, 2000, Decided ; May 18, 2000, Docketed

No. 98 C 2453

**Reporter**
2000 U.S. Dist. LEXIS 6936 *; 2000 WL 656683

LINCOLN NATIONAL LIFE INSURANCE COMPANY, Plaintiff, v. NICKLAU, INC., an Illinois Corporation, d/b/a/ "PASTEUR," DAN NYUGEN, and TUAN NYUGEN, Defendants.

**Disposition:** [*1] Judgment entered in favor of plaintiff Lincoln National Life Insurance Company and against Defendants Nicklau, Inc., d/b/a Pasteur, Dan Nguyen and Tuan Nguyen.

## Core Terms

restaurant, continuation, state court, successor, goodwill, transferred, fraudulent, customer, successor liability, sole shareholder, Landlord, attorney's fees, shareholder, purchaser, damages, parties, food, rent

## Case Summary

### Procedural Posture
Plaintiff brought an action against defendants to collect on an outstanding judgment, alleging fraudulent transfer, intentional and constructive fraud, and breach of fiduciary duty.

### Overview
Seeking to collect on an outstanding state court judgment, stemming from obligations under a lease, plaintiff brought an action against defendants, a restaurant business and its owners, alleging fraudulent transfer, intentional and constructive fraud, and breach of fiduciary duty. Following a bench trial, the court ruled that defendants, having profited from the transfer of the restaurant's name to a successor operation, were subject to successor liability. The relationship between the old restaurant and the new satisfied the test for the continuation exception to nonsuccessor liability, as all defendants were heavily involved in the operation and management of both the old and new operations. Further, under the Uniform Fraudulent Transfer Act, *740 Ill. Comp. Stat. 160/5(a)*, liability was imposed where the name and goodwill of the old restaurant was transferred to the new for no consideration, at a time when defendants were anticipating a significant judgment against them in state court.

### Outcome
The court found defendants were subject to successor liability. Defendants were heavily involved in the operation and management of both the old and new restaurant operations, and the name and goodwill of the old restaurant was transferred for no consideration, when defendants were anticipating a significant judgment against them.

## LexisNexis® Headnotes

Business & Corporate Law > ... > Directors & Officers > Management Duties & Liabilities > General Overview

Mergers & Acquisitions Law > Liabilities & Rights of Successors > Mere Continuation

Business & Corporate Law > ... > Shareholders > Shareholder Duties & Liabilities > General Overview

Mergers & Acquisitions Law > Liabilities & Rights of Successors > General Overview

Mergers & Acquisitions Law > Liabilities & Rights of Successors > Successor Liability Doctrine

*HN1*[ ] **Directors & Officers, Management Duties & Liabilities**

A corporation that purchases the assets of another corporation is generally not liable for the debts or liabilities of the transferor corporation. However, the following four exceptions to the general rule provide for successor liability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation.

Mergers & Acquisitions Law > General Business Considerations > General Overview

Torts > Vicarious Liability > Corporations > Predecessor & Successor Corporations

Business & Corporate Law > ... > Directors & Officers > Management Duties & Liabilities > General Overview

Business & Corporate Law > ... > Shareholders > Shareholder Duties & Liabilities > General Overview

Mergers & Acquisitions Law > Liabilities & Rights of Successors > Mere Continuation

*HN2*[ ] **Mergers & Acquisitions Law, General Business Considerations**

The "continuation exception," which is the third exception to successor nonliability, applies when the purchasing corporation is merely a continuation or reincarnation of the selling corporation. Where the purchasing corporation maintains the same or similar management and ownership, but merely "wears different clothes," liability will be imposed upon the successor corporation.

Business & Corporate Law > ... > Shareholders > Shareholder Duties & Liabilities > General Overview

Environmental Law > Hazardous Wastes & Toxic Substances > Toxic Torts

Business & Corporate Law > ... > Directors & Officers > Management Duties & Liabilities > General Overview

*HN3*[ ] **Shareholders, Shareholder Duties & Liabilities**

To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception to successor nonliability is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.

Business & Corporate Law > ... > Shareholders > Shareholder Duties & Liabilities > General Overview

Business & Corporate Law > ... > Directors &

Officers > Management Duties & Liabilities > General Overview

**HN4**[ ] **Shareholders, Shareholder Duties & Liabilities**

One corporation is deemed to be a continuation of another where there exists a common identity of officers, directors, and/or shareholders.

Business & Corporate Law > ... > Shareholders > Shareholder Duties & Liabilities > General Overview

Mergers & Acquisitions Law > General Business Considerations > General Overview

Business & Corporate Law > ... > Directors & Officers > Management Duties & Liabilities > General Overview

**HN5**[ ] **Shareholders, Shareholder Duties & Liabilities**

While the spousal relationship between the owners of the corporations does not in itself establish a continuity of shareholders, it is certainly a factor which can be considered.

Torts > Business Torts > Fraud & Misrepresentation > General Overview

**HN6**[ ] **Business Torts, Fraud & Misrepresentation**

See *740 Ill. Comp. Stat. 160/5(a)*.

Real Property Law > Purchase & Sale > Fraudulent Transfers

Torts > Business Torts > Fraud & Misrepresentation > General Overview

**HN7**[ ] **Purchase & Sale, Fraudulent Transfers**

Fraud in law presumes a fraudulent intent when a voluntary transfer, made for no or inadequate consideration, directly impairs the rights of creditors.

**Counsel:** For LINCOLN NATIONAL LIFE INSURANCE COMPANY, THE, plaintiff: Donald Alan Murday, Sean Patrick MacCarthy, Peterson & Ross, Chicago, IL.

For LINCOLN NATIONAL LIFE INSURANCE COMPANY, THE, plaintiff: R. Lindsay Wilson, II, Sullivan & Worcester, LLP, Boston, MA.

For NICKLAU INC, DAN NGUYEN, TUAN NGUYEN, defendants: Robert H Itzkow, Robert H. Itzkow and Associates, Chicago, IL.

For NICKLAU INC, DAN NGUYEN, TUAN NGUYEN, defendants: Paul A. Caghan, Paul Caghan, P.C., Chicago, IL.

**Judges:** David H. Coar, United States District Judge.

**Opinion by:** David H. Coar

## Opinion

### *MEMORANDUM OPINION AND ORDER*

Lincoln National Life Insurance Company ("Lincoln") filed this action against Nicklau, Inc., d/b/a/ "Pasteur," Dan Nguyen, and Tuan Nguyen, (collectively, "Defendants"). Seeking to collect on an outstanding state court judgment, Lincoln proceeded against Defendants on a theory of successor liability (Count I), fraudulent transfer, intentional and constructive fraud (Counts II and III, respectively), and breach of fiduciary duty **[*2]** against Dan and Tuan Nguyen (Counts IV and V, respectively). A bench trial was held on May 15, 2000. The following findings of fact and conclusion of law are entered pursuant to *Federal Rule of Civil Procedure 52(a)*.

## I. Factual Findings

Brothers Dan and Tuan Nguyen co-owned a Vietnamese restaurant named Pasteur, located at 4759 N. Sheridan Road in Chicago ("Pasteur-Sheridan"). The restaurant was incorporated in Illinois as Pasteur-Restaurant, Inc., in 1985. In June 1995, a fire destroyed Pasteur-Sheridan. The Illinois Secretary of State's office involuntarily dissolved Pasteur-Sheridan in May 1996. In July 1992, Dan and Tuan Nguyen opened a second Vietnamese restaurant, again named Pasteur, at 45 E. Chicago Avenue in Chicago ("Pasteur-Chicago"). That restaurant was incorporated in Illinois as Pasteur Cafe, Inc.

Kim Nguyen, Dan's wife, undertook a significant role at both restaurants. She worked at the Pasteur restaurants from their inception in 1985 until their demise in 1996. During that period, she did not hold any other employment. Kim Nguyen maintained the books, paid bills, waitressed, and cooked at Pasteur-Sheridan and Pasteur-Chicago (together, "old Pasteurs"). Kim [*3] signed a legal document renewing Pasteur-Sheridan's liquor and food license. To enable Pasteur-Sheridan to participate in the Taste of Chicago festival, Kim Nguyen, holding herself out as an officer, signed a document for the City of Chicago. When Dan and Tuan traveled, Kim was in charge of the two restaurants. At trial, Kim Nguyen indicated that the experience she brought to the old Pasteurs was "critical." Dan Nguyen agreed, stating that his wife was a "very important person in running" the old Pasteurs.

In February 1996, Lincoln, an Indiana corporation that owned the property on which Pasteur-Chicago was located, filed a Forcible Entry and Detainer action against Pasteur-Sheridan in state court. Lincoln sought to recover rent damages and to repossess the space occupied by Pasteur-Chicago. Subsequently, Pasteur-Chicago was also named a co-defendant in that suit. On January 31, 1997, the state court granted Lincoln's motion for summary judgment on the Forcible Entry and Detainer action. Pursuant to the state court judgment, Pasteur-Sheridan was ordered to pay Lincoln $ 89, 926.36 in rent damages and $ 20,000 in attorney's fees.

On May 12 or 13, 1997, during the pendency of the summary [*4] judgment motion before the state court, Kim Nguyen incorporated a restaurant in Illinois as Nicklau, Inc., d/b/a Pasteur. This Vietnamese restaurant is located at 5525 N. Broadway in Chicago ("Pasteur-Broadway"). Kim Nguyen is the sole director and shareholder of this restaurant. She also serves as the President and Secretary of Pasteur-Broadway. In Defendants' Answers to Interrogatories, signed by Dan and Tuan Nguyen, Kim, Dan, Tuan and Quynh Nguyen were listed as officers of Nicklau Inc. d/b/a/ Pasteur.[1] Dan Nguyen's relatives, including his parents, his sister, and two brothers loaned money to Kim and Dan to help finance the purchase of the property at 5525 N. Broadway. No money from the old Pasteurs was used toward the purchase or operation of Pasteur-Broadway.

Since the restaurant's opening in May 1997, Dan Nguyen has worked 50-60 hours a week at Pasteur-Broadway. Dan, [*5] who was responsible for maintaining the books at the old Pasteurs, continues to maintain the books for Pasteur-Broadway. He also cooks, pays the bills, and owns the building at 5525 N. Broadway with his wife. Dan Nguyen cams approximately $ 40,000 a year for his work at the restaurant.

Tuan Nguyen has worked an average of 50 hours per week at Pasteur-Broadway since 1997. He manages the cash register and oversees the cleaning crew. On many occasions, Tuan has issued personal checks, for which he is later reimbursed, to pay for Pasteur-Broadway's financial obligations. On one such occasion, Tuan Nguyen paid over $ 1,000 out of his personal account for Pasteur-Broadway's liquor license. In 1997, he signed a Taste of

---

[1] When asked about this particular answer at trial, Tuan Nguyen testified that he had not reviewed it before signing the interrogatory.

Chicago document stating that he was Secretary of Pasteur-Broadway. Tuan Nguyen, who earns $45,000 a year at Pasteur-Broadway, is the highest paid employee among Pasteur-Broadway's 26 employees, including Kim Nguyen. Kim Nguyen testified at trial that Tuan Nguyen, "to a certain extent," brings valuable restaurant experience to Pasteur-Broadway. Neither Dan nor Tuan have held any employment other than working at Pasteur-Broadway since its opening.

Hieu Tran, who cooked at [*6] Pasteur-Chicago, is one of the primary cooks at Pasteur-Broadway. Dan Nyugen's niece, Quynh Nguyen, bartends at Pasteur-Broadway. Some of the recipes used at the old Pasteurs are also used at Pasteur-Broadway. Customer from the old Pasteurs comprise about 10% of Pasteur-Broadway's customer base. Kim Nguyen stated that some customers frequent Pasteur-Broadway because of the goodwill associated with the old Pasteurs. In fact, customers at the new restaurant have commented that it's "good to be back."

Kim and Tuan Nguyen testified that the name Pasteur enjoyed a reputation for excellent Vietnamese food in Chicago. Kim also agreed that the name Pasteur was good for business. When Kim Nyugen spoke with Phil Vettel, a restaurant critic for the Chicago Tribune, she informed him that it was important to "keep the [Pasteur] name alive." At trial, she testified that the name was recognized in Chicago. For several years, the old Pasteurs were a participating vendor at the Taste of Chicago festival, and after 1997, Pasteur-Broadway sent employees, donned in shirts from the old Pasteurs, to operate at the festival.

Time and again, Pasteur-Broadway has been associated with the old Pasteurs. [*7] Customers have assumed that Tuan Nguyen, who owned the old Pasteurs, also owns Pasteur-Broadway. In addition, the media has assumed that Pasteur-Broadway is related to the old Pasteurs, and Kim Nguyen has not informed them otherwise. An article in Chicago Magazine noted that Pasteur-Broadway "rose from its ashes like a Phoenix." A Chicago Sun Times article also connects the old Pasteurs with the new, stating that Pasteur-Broadway has "finally found a permanent home."

There are differences between the old Pasteurs and Pasteur-Broadway. Pasteur-Broadway occupies a much larger space, and according to Kim Nguyen, it embraces a new "concept." Kim Nguyen has made the food lighter and has added a wider range of entrees than were served at the old Pasteurs. The average customer spent $10-15 at the old Pasteurs, while at Pasteur-Broadway, the average meal costs anywhere from $30-75. Although the old Pasteurs did not serve alcohol, Pasteur-Broadway has a full service bar. Pasteur-Broadway grossed a million dollars in 1998, and 2 million in 1999. Kim Nguyen testified that the ongoing value of the business today, apart from the real estate and the value of the property, was $300,000 to $400,000.

[*8] After the demise of the old Pasteurs, all of the remaining assets--namely, 15-20 old chairs and tables, a kitchen hood, a burner, and some utensils were transferred to Pasteur-Broadway. These assets, which are worth no more than $2,000, are now kept in a garage at 5525 N. Broadway.

Lincoln seeks relief under Illinois law. This Court retains jurisdiction over this matter pursuant to *28 U.S.C. § 1332(a)(1)*.

## II. Conclusions of Law

As a general rule, *HN1*[] a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation. *Vernon v. Schuster, 179 Ill. 2d 338, 344-45, 688 N.E.2d 1172, 1175, 228 Ill. Dec. 195, 198 (Ill. 1997)*. To "offset the potentially harsh impact of the rule, however, the law has also developed methods to protect the rights of corporate creditors after dissolution." *Id.* (quoting *Tucker v. Paxson Machine Co., 645 F.2d 620, 623 (8th Cir. 1981))*. The following four exceptions to the general rule provide for successor liability: (1)

where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation **[*9]** or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation. *Id.*

In the usual case, successor liability has been applied where there has been a sale of assets. Here, there did not exist a "sale" in the sense that money did not change hands in exchange for a good. Yet the fact that the old Pasteurs' name and goodwill were transferred to Pasteur-Broadway without any consideration does not preclude Pasteur-Broadway's liability. Kim, Dan and Tuan Nyugens' testimonies firmly established that the Pasteur name and goodwill were of significant value. Even if the name and goodwill were not sold in the conventional sense, these valuable intangibles were transferred to Pasteur-Broadway. *See, e.g., Frank Ix & Sons, Inc. v. Phillipp Indus., Inc., 1997 U.S. Dist. LEXIS 12889*, No. 95 C. 3195, *1997 WL 534509*, at *6 (N.D. Ill. Aug. 25, 1997) (finding a conveyance where property transferred for inadequate consideration).

Defendants point out that the name Pasteur was never copyrighted, and that another Vietnamese restaurant in Moline, Illinois, **[*10]** as well as a handful of others across the country, also use that name. The existence of other restaurants named Pasteur, none of which are located in the City of Chicago, does not undermine the value of the name and the goodwill built up by the old Pasteurs. Kim Nguyen insisted on keeping the name "alive" precisely because of the value of these assets. Clearly, Pasteur-Broadway benefitted from the goodwill associated with the name Pasteur, whether it be through the favorable restaurant reviews connecting the restaurants, or the customer assumption of identity between the old Pasteurs and Pasteur-Broadway. In fact, when the old Pasteurs were unable to participate in the Taste of Chicago festival, Pasteur-Broadway appropriated that same vending opportunity. Pasteur-Broadway, having profited from the transfer of the old Pasteurs' most precious asset, is subject to successor liability.

### A. Continuation Exception

*HN2*[↑] The "continuation exception," which is the third exception to successor nonliability outlined above, applies when the purchasing corporation is "merely a continuation or reincarnation of the selling corporation." *Vernon, 179 Ill. 2d at 346, 688 N.E.2d at 1176* **[*11]** (citing *Grand Lab., Inc. v. Midcon Labs of Iowa, Inc., 32 F.3d 1277, 1282 (8th Cir. 1994))*. Where the purchasing corporation "maintains the same or similar management and ownership, but merely 'wears different clothes,'" liability will be imposed upon the successor corporation. *Id.* (citing *Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1458 (11th Cir. 1985))*.

Once the state court suit was filed, Nicklau, Inc., d/b/a Pasteur, was incorporated, with Kim Nguyen as the sole officer and shareholder of Pasteur-Broadway. This ruse was a transparent attempt to escape the liabilities about to be incurred by the old Pasteurs. The continuation exception to successor nonliability, however, was designed to protect creditors in these situations. The Illinois Supreme Court observed:

> *HN3*[↑] To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.

*179 Ill. 2d at 346, 688 N.E.2d at 1176* (quoting *Baltimore Luggage Co. v. Holtzman, 80 Md. App. 282, 297, 562 A.2d 1286, 1293 (Md. 1989))*. **[*12]**

The relationship between the old Pasteurs and Pasteur-Broadway satisfies the test for the

continuation exception. *HN4*[↑] One corporation is deemed to be a continuation of another where there exists a common identity of officers, directors, and/or shareholders. *179 Ill. 2d at 347, 688 N.E.2d at 1176*. Dan and Tuan Nyugen served as the sole shareholders and officers of the old Pasteurs, while Kim Nguyen served as the sole shareholder, officer and director of Pasteur-Broadway. Although on its face, this fact alone would serve to defeat the imposition of successor liability, a closer look at the facts compels the opposition conclusion.

Regardless of whether they officially served as owners, directors, or officers, Dan, Tuan and Kim Nguyen were substantially interwined in the operation of all three Pasteur restaurants. Kim was heavily involved in the operation and management of the old Pasteurs. When Dan and Tuan traveled, Kim was left in charge of the two restaurants. She also held herself out as an officer, as evidenced by two documents that she signed as a "Secretary" of Pasteur-Sheridan. See *H & H Press, Inc. v. Drew Axelrod, 265 Ill. App. 3d 670, 679, 638 N.E.2d 333, 339, 202 Ill. Dec. 687 (Ill. App. Ct. 1994)* [*13] (defendant deemed de facto officer where he held himself out as one). At trial, Kim Nguyen conceded that she took on a "critical" role, and Dan Nguyen affirmed her, admitting that his wife was a "very important person in running" the old Pasteurs.

Similarly, Dan and Tuan Nguyen, although not official owners of Pasteur-Broadway, continued to be significantly involved. Dan's relatives loaned the money to Dan and Kim Nguyen to purchase the property at 5525 N. Broadway. Dan and Tuan devoted their days to working full time at Pasteur-Broadway. At $ 45,000 a year, Tuan Nyugen is the highest paid employee among Pasteur-Broadway's 26 employees. On many occasions, Tuan Nguyen issued personal checks, for which he was later reimbursed, to pay for Pasteur-Broadway's financial obligations. On one such occasion, Tuan Nguyen paid over $ 1,000 out of his personal account for Pasteur-Broadway's liquor license. In 1997, Tuan signed a Taste of Chicago document stating that he was Secretary of Pasteur-Broadway. In their answer to Plaintiff's interrogatories, Defendants identified Kim, Dan and Tuan Nguyen as officers of Pasteur-Broadway. Kim, Dan and Tuan's managerial involvement in the three Pasteur [*14] restaurants, not to mention their holding themselves out as officers, establishes a continuation in ownership.

*Park v. Townson & Alexander, Inc., 287 Ill. App. 3d 772, 774, 679 N.E.2d 107, 109, 223 Ill. Dec. 163 (Ill. App. Ct. 1997)* is illustrative of the way Illinois courts have analyzed similar facts. In *Park*, the state court determined that an identity of ownership existed where the husband and his business partner were sole shareholders of a predecessor corporation, while the wife was the sole shareholder of the successor corporation. *287 Ill. App. 3d at 775, 679 N.E.2d at 110*. Although the wife was designated as sole shareholder of successor company, the husband continued to make major decisions for the successor corporation. *Id*. In addition, tax documents, albeit claimed as erroneous by defendants, showed that the husband was president of successor corporation. *Id.* The court also noted that *HN5*[↑] "while the spousal relationship between the owners of the corporations does not in itself establish a continuity of shareholders, it is certainly a factor which can be considered." *Id.* See also *Steel Co. v. Morgan Marshall Indus., 278 Ill. App. 3d 241, 248-49, 662 N.E.2d 595, 600, 214 Ill. Dec. 1029 (Ill. App. Ct. 1996)* [*15] (continuity found where husband was sole shareholder of predecessor company and wife was 80% shareholder of successor company).

Not only was there an identity of ownership between the old Pasteurs and Pasteur-Broadway, but the business operation of the three restaurants evidenced a substantial continuity. Pasteur-Broadway is located only a couple of miles away from Pasteur-Sheridan. The old Pasteurs' name and goodwill were carried forward to Pasteur-Broadway. The restaurants continued to serve Vietnamese food. See *Kennedy v. Four Boys Labor Serv. Inc., 279 Ill. App. 3d 361, 368, 664 N.E.2d*

1088, 1092, 216 Ill. Dec. 160 (Ill. App. Ct. 1996) (continuity established where successor operated the same business, used the same name). Hieu Tran, the cook at the old Pasteurs, was transferred to the new restaurant. The same recipes were used. Some of the same customers who used to frequent the old Pasteurs now patronize Pasteur-Broadway. Kim Nguyen insists that the "concept" and "ambiance" of the old and new restaurants differ, and that she has added lighter fare to a more expansive menu, but those are distinctions without a meaningful difference. The point is that Pasteur-Broadway, **[*16]** even if it has evolved into a more sophisticated version, is a mere continuation of the old Pasteurs. As such, it is liable for the judgment entered against the old Pasteurs.

## B. Fraudulent Transfer

Not only does the continuation exception serve as a basis for imposing liability upon Pasteur-Broadway, but the Uniform Fraudulent Transfer Act ("Act") provides alternative grounds for successor liability. The Act states that:

> HN6[↑] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation as incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed he would incur, debts beyond his ability to pay as they **[*17]** became due.

740 ILCS 160/5(a).

Pursuant to this provision, Illinois courts have categorized fraudulent conveyance cases into the categories of "fraud in law" and "fraud in fact." HN7[↑] Fraud in law presumes a fraudulent intent when a voluntary transfer, made for no or inadequate consideration, directly impairs the rights of creditors. Frank Ix & Sons, Inc. v. Phillipp Indus., Inc., 1997 U.S. Dist. LEXIS 12889, No. 95 C 3195, 1997 WL 534509, at *6 (N.D. Ill. Aug. 25, 1997) (citing Casey Nat'l Bank v. Roan, 282 Ill. App. 3d 55, 668 N.E.2d 608, 611, 218 Ill. Dec. 124 (Ill. App. Ct. 1996)). In the instant case, the name and goodwill of the old Pasteurs were transferred to Pasteur-Broadway for no consideration at a time when Defendants were anticipating a significant judgment against them in state court. By 1997, the old Pasteurs were left with $ 0.24 in their bank account, and could not afford to pay off their debt.

Not only is this court satisfied that fraud-in-law applies to this case, but the numerous "badges of fraud" present in this case give rise to a presumption of fraud-in-fact, which Defendants have failed to rebut. Frank Ix, 1997 U.S. Dist. LEXIS 12889, 1997 WL 534509, at *8 (citing **[*18]** Kaibab Indus., Inc. v. Family Ready Homes, Inc., 80 Ill. App. 3d 782, 786, 14 Ill. Dec. 334, 372 N.E.2d 139 (Ill. App. Ct. 1978)). The Act sets forth eleven indicia of fraud, see 740 ILCS 160/5(b)(1)-(11), and this case qualifies for at least seven of those factors. First, the Pasteur name and goodwill were transferred to an insider; that is, the wife and sister-in-law of the owners of predecessor restaurants. Second, Dan and Tuan Nguyen, the debtors, retained possession and control of the transferred property by exercising significant managerial control at Pasteur-Broadway. Third, before the transfer was made, the Dan and Tuan Nguyen had been sued by Lincoln. Fourth, all of old Pasteur's remaining assets-- from the valuable name and goodwill to the useless old chairs, tables, and kitchenware-- were transferred to Pasteur-Broadway. Fifth, no consideration was received for these assets. Sixth, the old Pasteurs had been

insolvent. Finally, the transfer occurred shortly before a substantial debt was incurred. The overwhelming evidence demonstrates that a fraudulent transfer occurred, and Pasteur-Broadway will be held liable for the judgment debt of the old Pasteurs.

[*19] Lincoln also advances claims against Dan and Than Nguyen for breach of fiduciary duty, but those counts need not be addressed in light of this court's disposition of the successor liability claim.

*C. Amount of Liability*

As the successor of the old Pasteurs, Pasteur-Broadway is directed to pay for the state court judgment entered against Pasteur-Sheridan in the amount of $ 89,926.36 for rent damages and $ 20,000 for attorneys' fees incurred in the state court action. In addition, Pasteur-Broadway is ordered to pay for attorneys' fees and costs incurred in the instant action. The lease agreement between Pasteur-Sheridan and their original landlord, Centrum Properties, purports to bind the parties as well as their successors. P 27.9 In addition, the lease provides that:

The Tenant shall pay upon demand all Landlord's costs, charges and expenses including the fees and out-

> of-pocket expenses of counsel, agents, and others retained by landlord incurred in enforcing the Tenant's obligations hereunder or incurred by the Landlord in any litigation, negotiation, or transaction in which the Tenant causes the Landlord without Landlord's fault to become involved or concerned. [*20]

P 20.1(d). This federal suit was incurred in order to enforce Defendants' obligations under the lease, and fees and costs will be awarded to Lincoln pursuant to the lease agreement.

### III. Conclusion

Pursuant to the foregoing findings of fact and conclusions of law, the court enters judgment in favor of plaintiff, Lincoln National Life Insurance Company, and against Defendants Nicklau, Inc., d/b/a Pasteur, Dan Nguyen, and Tuan Nguyen. Nicklau, Inc., d/b/a/ Pasteur is liable for the state court judgment entered against Pasteur-Sheridan in the amount of $ 89,926.36 for rent damages and $ 20,000 for attorneys' fees incurred in the state court action. The parties are ordered to proceed with a motion for fees pertaining to the federal action against Defendants in accordance with *Federal Rule of Civil Procedure 54(d)* and Local Rule LR 54.3. *See* Local Rule LR 54.3(d)-(g) (requiring parties to make a good faith attempt to agree on the amount of fees due and outlining additional procedures).

**Enter:**

**David H. Coar**

**United States District Judge**

**Dated:** MAY 17 2000

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to trial or [*21] hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Lincoln National Life Insurance Company, and against Defendants Nicklau, Inc., d/b/a Pasteur, Dan Nguyen, and Tuan Nguyen. Nicklau, Inc., d./b/a/ Pasteur is liable for the state court judgment entered against Pasteur-Sheridan in the amount of $ 89,926.36 for rent damages and $ 20,000 for attorneys' fees incurred in the state court action. The parties are ordered to proceed with a motion for fees pertaining to the federal action against

Defendants in accordance with *Federal Rule of Civil Procedure 54(d)* and Local Rule LR 54.3. *See* Local Rule LR 54.3(d)-(g) (requiring parties to make a good faith attempt to agree on the amount of fees due and outlining additional procedures).

Date: 5/17/2000

**End of Document**