**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br>Plaintiffs, <br><br>v. <br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, <br><br>Defendants. | Civil No. 17-cv-03591 <br><br><br>Hon. Sharon Johnson Coleman <br><br><br>Hon. Sidney I. Schenkier |

**DEFENDANT AMP/AJP'S
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)**

Dated this 14th day of January, 2020.

/s/ *Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................... iii

**I.    INTRODUCTION** .............................................................................................................. 1

**II.   SUMMARY OF THE ARGUMENT** ............................................................................... 1

**III.  RELEVANT PROCEDURAL BACKGROUND** ............................................................ 1

**IV.   BACKGROUND AS TO CREATION OF AMP AND AJP** ........................................ 3

**V.    PLAINTIFFS' CLAIMS AGAINST DEFENDANT AMP/AJP FAIL FOR LACK OF SUBJECT MATTER JURISDICTION** ............................................................................ 5

    A.    Legal Standard ................................................................................................................ 5

    B.    Alter Ego and "Veil Piercing" Claims Against AMP/AJP Fail as a Matter of Law ........ 6

        1.    There is No Independent Jurisdiction for Claims to Pierce the Corporate Veil. .......... 7

        2.    Claims to Pierce the Corporate Veil Do Not Warrant Ancillary Jurisdiction. ............. 8

    C.    Plaintiffs' Successor Liability Claims Against AMP/AJP Fail as a Matter of Law ...... 13

**VI.   CONCLUSION** ................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**

*A.L. Dougherty Real Estate Management Co., LLC v. Su Chin Tsai*, 98 N.E. 3d 504 (Ill. App. Ct. 2017) ................................................................................................................................. 11

*Boim v. Holy Land Foundation, et al.*, 549 F.3d 685 (7th Cir. 2008) ............................................ 6

*Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188 (7th Cir. 1993) ...................................................... 6

*Carol Diane Gray & Strategic Research Consulting, Inc. v. United States*, 2012 U.S. Dist. LEXIS 125076 (N.D. Ill. Sept. 4, 2012) (Coleman, J.) .............................................................. 5

*Central States, et al. v. Art Pape Transfer, Inc.*, 79 F.3d 651 (7th Cir. 1996) .............................. 10

*Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 855 F.3d 1282 (7th Cir. 1996) ..................................................................................................... 9, 10

*Esmark Inc. v. N.L.R.B.*, 887 F.2d 739 (7th Cir. 1989) .................................................................. 7

*Gervasio v. United States*, 627 F. Supp. 428 (N.D. Ill. 1986) ....................................................... 5

*Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009) ....................................... 6

*Goulding v. Global Medical Products Holdings, Inc.*, 394 F.3d 466 (7th Cir. 2005) ................. 10

*H.C. Cook Co. v. Beecher*, 217 U.S. 497 (1910) ........................................................................... 8

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................................. 6

*In re Complaint of Great Lakes Dredge & Dock Co.*, 1993 U.S. Dist. LEXIS 16256 (N.D. Ill. Feb. 18, 1993) ............................................................................................................................ 5

*Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770 (7th Cir. 2018) ........... 12

*Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309 (7th Cir. 1987) .................................................................................................................. 7

*Lincoln Nat'l Life Ins. v. Nicklau, Inc.*, 2000 U.S. Dist. LEXIS 6936 (N.D. Ill. May 17, 2000) .. 12

*Peacock v. Thomas*, 516 U.S. 349 (1996) ............................................................... 7, 8, 9, 11, 13

*Sanchez v. Global Parking Management, Inc.*, 2015 U.S. Dist. LEXIS 93782 (N.D. Ill. Jul. 20, 2015) .................................................................................................................................. 11

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015) ............................................................................ 6

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ............................................................ 5

*Sweeney v. Madigan*, 359 F. Supp. 3d 585 (N.D. Ill. 2019) (Coleman, J.) ..................................... 6

*Thomas v. Peacock*, 39 F.3d 493 (4th Cir. 1994) ............................................................................ 7

*Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir. 1977) ................................................................... 14

*Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785 (7th Cir. 1993) ....................................................................................... 7

*United Phosphorus, Ltd.* v. *Angus Chem. Co*., 332 F.3d 942 (7th Cir. 2003) ................................ 5

*United States v. Petersen Sand and Gravel, Inc.*, 806 F. Supp. 1346 (N.D. Ill. 1992) ................. 11

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ 1, 2, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1, 7

## I. INTRODUCTION

Defendant American Muslims for Palestine ("AMP"), along with Defendant Americans for Justice in Palestine Educational Foundation ("AJP") (collectively "AMP/AJP" or "entity Defendant") files this Motion to Dismiss the claims brought in Plaintiffs' Amended Complaint (Doc. 179), and for the reasons set forth below respectfully requests that this Court dismiss the claims for lack of subject matter jurisdiction.[1]

## II. SUMMARY OF THE ARGUMENT

This Court lacks subject matter jurisdiction over the claims alleged against Defendant AMP/AJP.[2] Under both Supreme Court and Seventh Circuit authority, there is neither independent nor ancillary jurisdiction over the claims asserted. Plaintiffs claim that AMP/AJP is liable for a prior judgment to which neither entity was not a party; the facts on the claims alleged do not support jurisdiction and are not so closely related to the original claims from the separate action to warrant ancillary, or supplemental, jurisdiction. Therefore, this Court is without jurisdiction under Fed. R. Civ. P. 12(b)(1) and must dismiss the case in its entirety.

## III. RELEVANT PROCEDURAL BACKGROUND

This remains an alter ego and successor liability case. Those are the only claims brought against AMP/AJP in Plaintiffs' Amended Complaint. In their Original Complaint, Plaintiffs

---

[1] Defendant AMP/AJP simultaneously files its Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), and Defendant Rafeeq Jaber simultaneously files his Motion to Dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Though Defendants attempt to separate the issues and standards into these distinct motions for ease of consideration, to the extent necessary or beneficial for this Court, Defendants incorporate the additional motions herein by reference.

[2] As set forth in more detail below and as asserted in Plaintiffs' Amended Complaint, AMP and AJP were originally separate entities but now operate as one entity. Doc. 179 at 1. References to AMP/AJP in this Motion, therefore, are on behalf of both entities, which now operate as one.

alleged alter ego and successor liability as the purported bases for holding the current defendants liable for a previous judgment Plaintiffs obtained against other entities.[3]

This Court granted Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction in August 2017, finding that Plaintiffs' assertion that a shared mission "to educate people about Palestine" sufficed to establish alter ego "would create a false inference that no legitimate humanitarian organization could ever be created with that mission" and that "[i]n their effort to find a collectible defendant and to prevent their previous victory from being a pyrrhic one, plaintiffs are painting with overly broad strokes here." (Doc. 41 at 8, 10). Upon Motion for Reconsideration by the Plaintiffs, this Court ruled that "[w]hile this Court disagrees that it misapplied the law, upon further reflection, this Court placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship. Accordingly, this Court will vacate its previous order dismissing the case with prejudice and permit plaintiffs to conduct discovery solely to address jurisdiction." Doc. 50. The limited discovery which followed over the next year was authorized solely to allow Plaintiffs discovery related to subject matter jurisdiction, in the context of the previously granted Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(1).

In their Amended Complaint (Doc. 179), Plaintiffs seek to revive these previous claims against AMP/AJP and Rafeeq Jaber, as well as explicitly adding veil-piercing allegations and a

---

[3] Though judgment was originally entered against an individual defendant in the prior action, that judgment was reversed. Plaintiffs eventually left the previous civil action with a judgment of $156 million against Holy Land Foundation ("HLF"), the Islamic Association for Palestine "formed in California in 1986" ("IAP"), American Muslim Society ("AMS") "formed … in Illinois in 1993", American Middle East League for Palestine "formed in Texas in 1990 by Yasser K. Saleh Bushnaq ("AMELP")" and "IAP Texas formed by Basman Elashi in 1993." Plaintiffs' Original Complaint (Doc. 1) at ¶ 15; Plaintiffs' Amended Complaint (Doc. 179) at ¶ 2. However, in this matter Plaintiffs have focused on the judgments against HLF, IAP and AMS. Doc. 179 at ¶ 2.

2

fraudulent concealment claims against Defendant Jaber. These claims fail as a matter of law, for the reasons previously addressed by this Court in its earlier order (Doc. 41) as well as the reasons set forth below.

## IV. BACKGROUND AS TO CREATION OF AMP AND AJP

In the later part of 2005, a young attorney in Wisconsin named Munjed Ahmad discussed the idea of creating an education-based non-profit organization with the purpose of educating youth in America about Palestine and its history, as he was not aware of any organization in existence at the time which fulfilled this goal. Exhibit A, Ahmad Decl. dated November 27, 2018, at ¶ 6; *see also* Doc. 179, Plaintiffs' Amended Complaint, at ¶ 62. These discussions were originally with a colleague who did not end up becoming involved in the eventual organization. Ex. A, Ahmad Decl. at ¶ 6. Later, Mr. Ahmad had further discussions with Dr. Hatem Bazian, a professor at University of California, Berkeley. *Id*. at ¶ 6. Dr. Bazian had, separately, also been trying to develop a non-profit group to promote Palestinian awareness in America, as he had noticed a gap existed which no organization was currently filling. Exhibit B, Bazian Dep., at 22-24, 26, 28-29, 30; *see also* Doc. 179, Plaintiffs' Amended Complaint, at 62. The name for this new organization was selected as American Muslims for Palestine, or AMP, in April of 2006. Ex. A, Ahmad Decl. at ¶ 11. AMP was then officially incorporated in August 2006, through the actions of Munjed Ahmad and Dr. Hatem Bazian. *Id*. at ¶ 12; Doc. 179 at ¶ 74. No activities of or events by AMP occurred prior to its incorporation. Ex. A, Ahmad Decl. at ¶ 12.

AMP was created to educate youth and communities about issues and culture related to Palestine. *Id*. at ¶ 25. AMP is strictly an American organization, funded by voluntary donations made entirely within the United States. *Id*. at ¶ 15. From its inception in August 2006 through the end of 2007, AMP received total donations of approximately $40,000 - $50,000. *Id.* at internal Ex.

3

1. On its website at this time, AMP listed that "AMP is a not for profit membership based community association founded in North America working to provide non-partisan and non-sectarian educational, social and cultural programming to raise the American public's awareness of Palestine's rich heritage and diverse people." *Id*.

Munjed Ahmad was never involved with AMS. *Id*. at ¶ 21. Munjed Ahmad was never involved with IAP. *Id*. at ¶ 20. Munjed Ahmad was never involved with HLF. *Id*. at ¶ 22. Munjed Ahmad was not a part of, nor even aware of, the 2000 *Boim* litigation which involved IAP, AMS and HLF as defendants. *Id*. at ¶¶ 23-4.

Dr. Bazian was never a Board member or leader of AMS. Ex. B, Bazian Dep. at 12. Dr. Bazian was never a Board member or leader of IAP. *Id*. at 37-38, 40, 46-47. Dr. Bazian was never a Board member or leader of HLF. *Id*. at 40. Dr. Bazian had no involvement in the 2000 *Boim* litigation which involved IAP, AMS and HLF as defendants. *Id*. at 48-50.

These two individuals, who had no prior leadership roles in the entities which were 2000 *Boim* litigation defendants, began at first separately and then joined to create a domestic non-profit organization to educate others about Palestine. Ex. A, Ahmad Decl. at ¶ 6; Ex. B, Bazian Dep. at 28-29. Three years later, in November 2009, the same two individuals led the formation of the charitable organization Americans for Justice in Palestine Educational Foundation ("AJP"). Ex. A, Ahmad Decl. at ¶ 13; Ex. B, Bazian Dep. at 6; *see also* Doc. 179 at ¶ 152. AJP stated in its early filings that "Though AJP Educational Foundation primarily raises funds in California, the organization will welcome donations and contributions from all over the United States. The Foundation raises the required funds on its own and will not depend on other organizations for its fundraising activities. We will not engage in fundraising on behalf of other organizations." Ex. A, Ahmad Decl. at internal Ex. 1. In or around late 2016/early 2017, AMP and AJP became one

4

entity, with AMP as the d/b/a of AJP. *Id*. at ¶ 13.

Defendant Rafeeq Jaber had no involvement in the creation of AMP or AJP. Ex. A, Ahmad Decl. at ¶ 17. Previous defendant Abdelbaset Hamayel had no involvement in the creation of AMP or AJP. *Id*. at ¶ 18. Previous defendant Osama Abuirshaid had no involvement in the creation of AMP or AJP. *Id*. at ¶ 19; *see also* Ex. C, Jaber Decl.; Ex. D, Hamayel Decl.; Ex. E, Abuirshaid Decl.; *see also* Doc. 31-1 at 2-9. Neither AMP nor AJP received any assets formerly belonging to IAP, AMS or HLF. Ex. A, Ahmad Decl. at ¶¶ 30-32.

V.

**PLAINTIFFS' CLAIMS AGAINST DEFENDANT AMP/AJP FAIL FOR LACK OF SUBJECT MATTER JURISDICTION**

**A.      Legal Standard**

Rule 12(b)(1) of the Federal Rules of Civil Procedure "requires dismissal of claims over which the federal court lacks subject matter jurisdiction." *Carol Diane Gray & Strategic Research Consulting, Inc. v. United States*, No. 11-cv-3269, 2012 U.S. Dist. LEXIS 125076, *4 (N.D. Ill. Sept. 4, 2012) (Coleman, J.) (citing Fed. R. Civ. P. 12(b)(1)). Without jurisdiction, a "court cannot proceed at all." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In a 12(b)(1) challenge, the burden of proof "is on the party asserting jurisdiction." *United Phosphorus, Ltd.* v. *Angus Chem. Co*., 332 F.3d 942, 946 (7th Cir. 2003) (citations omitted). Where parties raise factual questions concerning the court's subject matter jurisdiction, "the district court is not bound to accept as true the allegations of the complaint as to jurisdiction." *In re Complaint of Great Lakes Dredge & Dock Co.*, No. 92-cv-6754, 1993 U.S. Dist. LEXIS 16256, *7 (N.D. Ill. Feb. 18, 1993) (citing *Gervasio v. United States*, 627 F. Supp. 428, 430 (N.D. Ill. 1986)). In order to assess whether jurisdiction actually exists, courts may look beyond the allegations in the complaint and "consider whether evidence has been submitted on the issue." *Sweeney v. Madigan*, 359 F. Supp.

5

3d 585, 589 (N.D. Ill. 2019) (Coleman, J.); *see also* Doc. 41 ("[i]n order to determine whether subject matter jurisdiction in fact exists, this Court may properly look beyond the allegations in the complaint and consider whatever evidence has been submitted on the issue"), citing *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

**B.     Alter Ego and "Veil Piercing" Claims Against AMP/AJP Fail as a Matter of Law.**

Plaintiffs' asserted claims against AMP/AJP fail for lack of subject matter jurisdiction even more clearly than did those in the Original Complaint. The intervening factual development of this case, as set forth above in part by the history of the formation of AMP and AJP, shows that Plaintiffs' allegations against AMP/AJP do not present even a close call under the law, and squarely fail for lack of subject matter jurisdiction.

Plaintiffs claim independent jurisdiction, or, in the alternative, ancillary jurisdiction, based on theories of successor liability and alter ego for damages obtained against the original judgment defendants, under the Anti-Terrorism Act ("ATA"). (Doc. 179 at ¶¶ 2-4). The ATA itself requires a showing of direct involvement for liability under it. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35-36 (2010); *Boim v. Holy Land Foundation, et al.*, 549 F.3d 685, 691 (7th Cir. 2008) (holding there must be a connection between the acts at the time of the injury and the defendant, in order for liability to exist; finding alter ego between IAP and AMS because they acted together at the time of the relevant acts in question). Therefore, if this Court has jurisdiction to enforce the debts from the 2000 action, this must come from the Court's general powers.

While claims of alter ego can be evaluated under many factors, the key element required under the Seventh Circuit is motive and intent to avoid liability. *Trustees of Pension, Welfare &*

6

*Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785 (7th Cir. 1993); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc*., 831 F.2d 1309, 1312 (7th Cir. 1987). For a finding of alter ego, plaintiffs must show "the stockholder and corporation were in effect a single entity," established through broad practice, not a single transaction that is alleged as unfair. *Esmark Inc. v. N.L.R.B*., 887 F.2d 739, 788-89 (7th Cir. 1989). There must be evidence of intent or motive to act in a fraudulent or abusive manner, and sufficient unity between the two corporations to justify setting aside the separateness of the entities. *Favia*, 995 F.2d at 788–89. Here, Plaintiffs make conclusory allegations without supporting facts,[4] and allege no facts giving rise to subject matter jurisdiction.

  1. <u>There is No Independent Jurisdiction for Claims to Pierce the Corporate Veil</u>.

The United States Supreme Court squarely addressed the question of whether third parties may be liable under theories of piercing the corporate veil and alter ego in *Peacock v. Thomas*, 516 U.S. 349, 354 (1996). In *Peacock*, plaintiff Jack Thomas sought to impose a judgment under ERISA, regarding administration of a pension plan, against Grant Peacock, an officer and shareholder of the corporation that was found liable who had not been named in the original suit. *Id*. The alter ego claims were raised in a subsequent, separate action from the original suit on the merits, much like Plaintiffs once again attempt here. *Thomas v. Peacock*, 39 F.3d 493, n. 1 (4th Cir. 1994). In *Peacock*, the plaintiff actually did make allegations of specific wrongdoing by the individual, of invalid transfers to avoid liability totaling $80,000. The Supreme Court noted that even if an independent basis for jurisdiction had also been present, any liability would have been limited to that amount and not the full judgment. 516 U.S. at n.3. No jurisdiction otherwise existed in the case before it even with these allegations, however, because the transfers complained of all

---

[4] Defendant refers to its simultaneously filed Motion to Dismiss Under 12(b)(6) as to Plaintiffs' failure to sufficiently state a claim upon which relief may be granted.

occurred after the original judgment and not at the time of the acts giving rise to the judgment. *Id.* at 516 U.S. at 359. The Supreme Court reversed lower court decisions, finding no independent subject matter jurisdiction over the plaintiff's new claims which arose <u>after</u> the plaintiff had been unable to collect his original judgment against the liable corporate defendant. The Court that "[p]iercing the corporate veil is not itself an independent … cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'" *Id.* at 516 U.S. at 354. As such, Plaintiffs' claims of independent jurisdiction necessarily fail under *Peacock*. Plaintiff are therefore left only with the option of showing ancillary jurisdiction.

      2. <u>Claims to Pierce the Corporate Veil Do Not Warrant Ancillary Jurisdiction</u>.

The Supreme Court in *Peacock* likewise rejected the plaintiff's claims of ancillary (or supplemental) jurisdiction over alter ego claims. In so doing, the *Peacock* court explained the proper limits of extending collection for prior judgments:

> Ancillary enforcement jurisdiction is, at its core, a creature of necessity. When a party has obtained a valid federal judgment, only extraordinary circumstances, if any, can justify ancillary jurisdiction over a subsequent suit like this. To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution. In the event a stay is entered pending appeal, the Rules require the district court to ensure that the judgment creditor's position is secured, ordinarily by a supersedeas bond. The Rules cannot guarantee payment of every federal judgment. But as long as they protect a judgment creditor's ability to execute on a judgment, the district court's authority is adequately preserved, and ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party.

*Peacock*, 516 U.S. at 359 (emphasis added). The Court viewed the assertion of ancillary jurisdiction as an improper attempt "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.*, citing *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 30 S. Ct. 601, 54 L. Ed. 855 (1910).

Under *Peacock*, this Court lacks subject matter jurisdiction over Plaintiffs' claims. The theories of liability alleged against AMP/AJP arise from defendants' alleged continuity and

8

purported (but unspecified) receipt of funds from donors and intangible assets of the judgment defendants. As in *Peacock*, any alleged transfer and role of the defendants occurred years prior to this present action, without objection at the time by Plaintiffs and without explanation by Plaintiffs as to why they were unable to prevent any such transfers previously, despite multiple citations to discover assets (Doc. 179 at ¶¶ 53-54) in order to timely attempt to secure payment under the Federal Rules of Civil Procedure. Instead, Plaintiffs assert that post-judgment actions must lead to imposing liability for a past judgment on AMP/AJP. These are the same type of facts which the Supreme Court found insufficient to establish jurisdiction: "[t]his is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [original] case." *Peacock*, 516 U.S. at 359. Plaintiffs here make the same improper attempt, without justification for ignoring Supreme Court precedent.

Plaintiffs next misrepresent the holdings of this Circuit: Plaintiffs' Amended Complaint asserts jurisdiction under *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 855 F.3d 1282, 1284 (7th Cir. 1996). Contrary to Plaintiffs' assertions that *Central States'* holding "recogniz[es] federal subject matter jurisdiction for enforcement action based on alter ego liability" (Doc. 179 at 5-6, ¶ 11), the Seventh Circuit held exactly the opposite. Recognizing *Peacock's* limitations, the Seventh Circuit found subject matter jurisdiction on the facts before it only because the plaintiff's claims were <u>not</u> claims of alter ego, and instead were claims that the new defendant was actually the "true employer" who committed the original violation giving rise to liability, with control of the relevant actions at the time the violation first occurred:

> Central States, however, has styled its theory of liability somewhat differently, alleging that Central Transport and Central Cartage so dominated and controlled the Rogers Group Companies that they were the "true employers" for purposes of ERISA liability. Under this theory, Central States is not pursuing the defendant corporations merely to enforce a

9

> judgment. Rather, Central States is claiming that Central Transport and Central Cartage played a part in the initial ERISA violation. This theory is different from Peacock's, where Thomas pursued Peacock solely in his capacity as an officer and shareholder of the liable corporation. Thomas' lawsuit attempted to "pierce the corporate veil." By contrast, Central States claims that the defendants exercised "common control."

*Central Transport*, 855 F.3d at 1284 (emphasis added). But AMP and AJP did not even exist at the time of the actions in 1996 which gave rise to the 2000 *Boim* judgment, and they therefore cannot be the "true" wrongdoers. Plaintiffs recognize this action is no more than an attempt to collect the prior judgment. Doc. 179 at ¶¶ 119, 166 ("AMP/AJP and Jaber are ... liable to Plaitniffs for the unpaid portion of the *Boim* Judgment"). This is exactly what the Supreme Court and Seventh Circuit prohibit. *See also Goulding v. Global Medical Products Holdings, Inc.*, 394 F.3d 466, 467-68 (7th Cir. 2005) (holding that "[d]isputes about settlement contracts must be resolved in state court, unless they independently satisfy the requirements of federal jurisdiction" and ancillary jurisdiction exists where a court has either entered as a judgment or reserved authority to enforce"); *Central States, et al. v. Art Pape Transfer, Inc.*, 79 F.3d 651, 653 (7th Cir. 1996) (observing that "[i]t hardly follows that 'alter ego' is a magical phrase that brings liability down on the head of a corporation; for that, one needs a concrete theory"; declining alter ego as a basis for jurisdiction, since "Illinois … keeps liability strictly within the corporate boundary unless a failure to respect corporate formalities has combined with a fraud or other wrongdoing to produce inequity").[5]

---

[5] Plaintiffs once again conflate the "failure to respect corporate formalities" language and presume that merely having less than perfect written records suffices to wholly disregard all corporate formalities and impose alter ego at will, regardless of a lack of connection to the judgment defendants. Doc. 179 at ¶¶152-154. This is not the law. While overlapping board members between AMP and AJP may make AMP and AJP the alter egos of each other, it does not make them alter egos of wholly separate organizations. Plaintiffs allege none of the actions which have actually been found to support alter ego and veil piercing in this Circuit, like transferring assets without consideration, taking direct personal distributions, and paying significant expenses from corporate funds. Doc. 179 at ¶¶ 173-174; cf. *A.L. Dougherty Real Estate Management Co., LLC v. Su Chin Tsai*, 98 N.E. 3d 504 (Ill. App. Ct. 2017), appeal denied, 95 N.E. 3d 497 (Ill. 2018); *see also Sanchez v. Global Parking Management, Inc.*, No. 14-cv-4611, 2015 U.S. Dist. LEXIS

There is no dispute that AMP first became an entity with its incorporation in August 2006. Doc. 179 at p. 27, ¶ 72. There is no dispute that AJP was first incorporated in 2009. *Id*. at p. 22, ¶ 61 ("In 2009, AMP leaders incorporated AJP as a Section 501(c)(3) organization to provide fundraising capabilities."). These dates come well after Plaintiffs obtained the judgment at issue; any allegations of concealment, transfer or other illicit activity by these entities must therefore be subsequent to the judgment Plaintiffs had previously obtained, and therefore entail new facts and theories "that did not exist and could not have existed at the time the court entered judgment in the" original case brought by Plaintiffs. Doc. 41 at 5, quoting *Peacock*, 516 U.S. at 359. Furthermore, entities cannot be held liable for pre-incorporation acts, even if by their directors or officers, absent a specific assumption of liabilities by the entity at formation. *United States v. Petersen Sand and Gravel, Inc.*, 806 F. Supp. 1346, 1350 (N.D. Ill. 1992). No such agreements existed here, nor do Plaintiffs allege the existence of any.

Plaintiffs assert that a partial overlap of directors and leaders of IAP/AMS to AMP/AJP exists. First, even taking the underlying factual statements in Plaintiffs' Amended Complaint as true, this is not the case. As stated above, the two founders of AMP/AJP were never in leadership or held Board positions with AMS, IAP or HLF. And, of the myriad of individuals identified in Plaintiffs' Amended Complaint, even Plaintiffs recognize that of the thirteen IAP/AMS Board members identified (Doc. 179 at p. 29), four left the United States and had nothing to do with AMP/AJP (*id*. at ¶ 82), another (Imad Sarsour) had no role with AMP/AJP (*id*. at ¶ 81), and three more "took no significant role at AMP" (*id*. at ¶ 83). Plaintiffs only directly connect three of these thirteen IAP/AMS Board members to AMP/AJP: Osama Abuirshaid, Abdelbaset Hamayel, and Sufian Nabhan. *Id*. at p. 29. As indicated above, both Osama Abuirshaid and Abdelbaset Hamayel

---

93782 (N.D. Ill. Jul. 20, 2015).

had no role in the formation of AMP or AJP. Ex. A, Ahmad Decl. at ¶¶ 17-19; *see also* Ex. C, Jaber Decl.; Ex. D, Hamayel Decl.; Ex. E, Abuirshaid Decl.; *see also* Doc. 31-1 at 2-9; Doc. 179 at ¶¶ 125 (Abuirshaid "declined at that time" to even consider becoming involved in the new entity which became AMP), 121 (Hamayel did not join the AMP Board until 2009, and then it was to "help the organization start functioning" at a higher level). Finally, even Plaintiffs' Amended Complaint acknowledges that AMP and AJP founders Munjed Ahmad and Dr. Hatem Bazian were "non-IAP" and merely a "frequent IAP speaker" respectively. Doc. 179 at p. 29.

Plaintiffs also misconstrue what "assets" may form the basis of a transfer under alter ego theory. Plaintiffs assert throughout the Amended Complaint that AMP and AJP use "the same critical assets" which HLF, IAP and AMS purportedly did, none of which are tangible. Doc. 179 at p. 31-33, ¶¶ 85-87. Plaintiffs assert that these "valuable intangible assets simply 'transitioned' to AMP and later AJP" – after the above-referenced gap of several years when "there was no other organization speaking for Palestine." *Id*. at p. 34, ¶ 89; *id*. at p. 23, ¶ 62. Even if such a time warp-necessitating transfer were possible, these are not the types of "intangible assets" seen in this Circuit as transfers of value which support successor liability or alter ego. *See, e.g.*, *Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770, 773 (7th Cir. 2018) (finding a valuable transfer of assets based on use of trademark and tradename, supplier lists, trade secrets, contracts, customer lists and data, telephone numbers, and internet domain names); *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*, No. 98 C 2453, 2000 U.S. Dist. LEXIS 6936, *9-10 (N.D. Ill. May 17, 2000) (recognizing that continued use of a restaurant's name, which led to procuring a spot in Taste of Chicago and where there was testimony as to the significant value attached to the name, was a valuable transfer of an asset). Plaintiffs' claim that the "good name" of the entities whose assets had been seized by the government and who were found liable under the ATA had any

"intangible assets" left to give as value belies belief; nonetheless, there is no assertion by Plaintiffs that AMP and/or AJP used the names of IAP, AMS or HLF at any time, or their internet domains, or phone numbers, or assumed any contracts previously held by IAP, AMS or HLF. Plaintiffs' Amended Complaint instead states quite the opposite: "specific care was taken to avoid any public connection with IAP/AMS" and "we really need to distance ourselves from any well known IAP figures." Doc. 179 at p. 26, ¶ 69. In the absence of a transfer of good will or assets, Plaintiffs now seek to rely on allegations that "the ideology and message of AMP/AJP is virtually identical to HLF, IAP and AMS" (Doc. 179 at p. 55), as sufficient for a showing of alter ego; this Court has already held that this is not the law. Doc. 41 at 8.

C.  **Plaintiffs' Successor Liability Claims Against AMP/AJP Fail as a Matter of Law.**

As was the case with Plaintiffs' Original Complaint, Plaintiffs' Amended Complaint fails to establish sufficient subject matter jurisdiction over Plaintiffs' asserted successor liability claims. Plaintiffs present no new bases for jurisdiction other than those already defeated in the first round of pleadings in this case. *Compare* Doc. 179 at p. 5-6, ¶ 11 *with* Doc. 31 at 8-9 *and* Doc. 38 at 4-6. Plaintiffs cannot prevail on any theory of "direct" liability because, as set forth above, AMP and AJP did not exist at the time of the 1996 acts which gave rise to the underlying claims and could not have been the "true" actors. *Peacock*, 516 U.S. at 359.

The four factors for successor liability from *Travis v. Harris Corp.* govern claims of successor liability: "(1) [W]here there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a 'mere continuation' of the seller; and (4) where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977). Plaintiffs make no allegation that AJP or AMP

13

expressly or impliedly agreed to assume liability of any judgment defendants. Plaintiffs do not point to any transactions amounting to consolidations or mergers of any corporations. Plaintiffs allege no facts showing that Defendants AMP and AJP are "mere continuations" of judgment defendants, other than conclusory statements that they must be, and Plaintiffs identify no sale or transfer of assets. That leaves the last *Travis* factor: "where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." 565 F.2d at 446. Plaintiffs fail to identify any discrete acts, asserting only that "IAP, AMS and HLF were abandoned and replaced by AMP and AJP in order to permit the same ongoing enterprise—formerly conducted through the *Boim* Defendants—to continue free and clear of the burden of paying the *Boim* judgment." Doc. 179 at ¶ 162. Plaintiffs also recognize that by the time AMP and AJP began, (1) HLF had no financial assets; (2) IAP and AMS had ceased operating; and (3) AMP as an organization "emerged" well after a gap of any organization educating the public about Palestine in the United States had been created and recognized as a problem by those with that charitable interest. Doc. 179 at p. 22-23, ¶ 62 ("AMP board member and one of its purported founders, Munjed Ahmad, testified that AMP is focused on the 'Palestinian issue,' and that he was unaware of any other organization in the United States that had the same focus when AMP was organized in 2006, *after IAP/AMS and HLF were out of business*.") (emphasis added).[6] The statements contained in Plaintiffs' own pleading demonstrate that no claim of successor liability survives a jurisdictional challenge, thereby warranting dismissal of these claims as a matter of law.

---

[6] As this Court previously noted, simply having a charitable purpose "to educate people about Palestine" "alone does not suggest any nefarious intent or unlawful motive." Doc. 41 at 8. Nor does operating with a similar stated purpose: "[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation." *Christiansen v. Mech. Contractors Bid Dep.*, 404 F.2d 324, 325 (10th Cir. 1968).

## VI. <u>CONCLUSION</u>

Based on the foregoing, AMP/AJP respectfully requests that this Court dismiss Plaintiffs' claims in their entirety, and for such other and further relief to which Defendant is justly entitled.

Dated this 14th day of January, 2020.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Christina Jump*
Christina A. Jump
*Attorney for Defendants*