**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER,<br><br>    Defendants. | Civil No. 17-cv-03591<br><br>Hon. Sharon Johnson Coleman<br><br>Hon. Sidney I. Schenkier<br><br>Noticed for Presentment on Tuesday, January 28, 2020 at 8:45 a.m. in Courtroom 1241 |

**DEFENDANT AMP/AJP'S
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Dated this 14th day of January, 2020.

> */s/ Christina Jump*
> Christina A. Jump
> Texas Bar No. 00795828
> *Attorney for Defendants*
> Charles D. Swift
> Texas Bar No. 24091964
> *Pro Hac Attorney for Defendants*
> Constitutional Law Center for Muslims in America
> 833 E. Arapaho Rd, Suite 102
> Richardson, TX 75081
> Phone: (972) 914-2507
> Fax: (972) 692-7454
>
> Thomas Anthony Durkin
> ID No. 0697966
> 2446 N. Clark Street
> Chicago, IL 60614
> Tel: 312-981-0123
> Fax: 312-913-9235
> tdurkin@durkinroberts.com
> *Local Counsel for Defendants*

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. iii

**I.   INTRODUCTION** .......................................................................................................... 1

**II.  SUMMARY OF THE ARGUMENT** ............................................................................. 1

**III. RELEVANT PROCEDURAL BACKGROUND** ............................................................ 1

**IV.  BACKGROUND AS TO CREATION OF AMP AND AJP** ........................................ 2

**V.   PLAINTIFFS' CLAIMS AGAINST DEFENDANT AMP/AJP FAIL TO PROPERLY PLEAD SUFFICIENT CLAIMS** ............................................................... 5

   A.  Legal Standard ........................................................................................................ 5

   B.  Alter Ego and "Veil Piercing" Claims Against AMP/AJP Fail as a Matter of Law. ........... 6

   C.  Plaintiffs' Successor Liability Claims Against AMP/AJP Fail as a Matter of Law. ......... 10

**VI.  CONCLUSION** ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*A.L. Dougherty Real Estate Management, LLC v. Su Chin Tsai*, 98 N.E. 3d 504 (Ill. App. Ct. 2017), 95 N.E. 3d 497 (Ill. 2018) .................................................................................................... 7

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) ...................................................... 6

*Addison Automatics v. RTC Group*, 2013 U.S. Dist. LEXIS 99448 (N.D. Ill. July 16, 2013) ....... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 5, 6

*Christiansen v. Mech. Contractors Bid Dep.*, 404 F.2d 324 (10th Cir. 1968) ............................. 12

*Esmark Inc. v. N.L.R.B.*, 887 F.2d 739 (7th Cir. 1989) ................................................................ 7

*Friedman v. Leading Edge Recovery Solutions, LLC*, 2014 U.S. Dist. LEXIS 58694 (N.D. Ill. April 28, 2014) (Coleman, J.) ................................................................................................ 5

*Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811 (7th Cir. 2009) ......... 5

*Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770 (7th Cir. 2018) ............. 9

*Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309 (7th Cir. 1987) ............................................................................................................. 7

*Kyle v. Morton High Sch.*, 144 F.3d 448 (7th Cir. 1998) ............................................................. 5

*Lincoln Nat'l Life Ins. v. Nicklau, Inc.*, 2000 U.S. Dist. LEXIS 6936 (N.D. Ill. May 17, 2000) .... 9

*MAC Funding Corp. v. MNdustries*, 2018 U.S. Dist. LEXIS 74149 (N.D. Ill. May 2, 2018) ....... 6

*McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873 (7th Cir. 2012) ...................................... 6

*Villa v. Pearson Educ., Inc.*, 2003 U.S. Dist. LEXIS 24686 (N.D. Ill. Dec. 8, 2003) .................... 5

*Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986) ....................................................... 6

*Puntillo v. Dave Knecht Homes*, 2019 U.S. Dist. LEXIS 87223 (N.D. Ill. Aug. 8, 2018) ............. 7

*Sanchez v. Global Parking Mgmnt*, 2015 U.S. Dist. LEXIS 93782 (N.D. Ill. Jul. 20, 2015) ......... 7

*Simpson v. Saggezza.*, 2018 U.S. Dist. LEXIS 133740 (N.D. Ill. Aug. 8, 2018) (Coleman, J.) ..... 5

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002) ........................................................................ 6, 9

*Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir. 1977) ..................................................................... 11

*Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785 (7th Cir. 1993) ..................................................................................... 7

*United States v. Petersen Sand and Gravel, Inc.*, 806 F. Supp. 1346 (N.D. Ill. 1992) ................... 8

*Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743 (7th Cir. 2012) ....................... 6

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 1, 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 3, 5, 6, 12

Fed. R. Civ. P. 12(d) ........................................................................................................................ 6

## I. INTRODUCTION

Defendant American Muslims for Palestine ("AMP"), along with Defendant Americans for Justice in Palestine Educational Foundation ("AJP") (collectively "AMP/AJP" or "entity Defendant") files this Motion to Dismiss the claims brought in Plaintiffs' Amended Complaint (Doc. 179), and for the reasons set forth below respectfully requests that this Court dismiss the claims for Plaintiffs' failure to sufficiently state a claim.[1]

## II. SUMMARY OF THE ARGUMENT

Plaintiffs' Amended Complaint fails to sufficiently state claims against AMP/AJP upon which relief can be granted. Plaintiffs fail to sufficiently plead sufficient factual allegations to state a claim for relief that is plausible on its face and raising the right to relief above speculation, as to both Plaintiffs' alter ego and successor liability claims against Defendant AMP/AJP.

## III. RELEVANT PROCEDURAL BACKGROUND

This remains an alter ego and successor liability case. Those are the only claims brought against AMP/AJP in Plaintiffs' Amended Complaint. In their Original Complaint, Plaintiffs alleged alter ego and successor liability as the purported bases for holding the current defendants liable for a previous judgment Plaintiffs obtained against other entities.[2]

---

[1] Defendant AMP/AJP simultaneously files its Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1), and Defendant Rafeeq Jaber simultaneously files his Motion to Dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Though Defendants attempt to separate the issues and standards into these distinct motions for ease of consideration, to the extent necessary or beneficial for this Court, Defendant AMP/AJP incorporates the additional motions herein by reference.

[2] Though judgment was originally entered against an individual defendant in the prior action, that judgment was reversed. Plaintiffs eventually left the previous civil action with a judgment of $156 million against Holy Land Foundation ("HLF"), the Islamic Association for Palestine "formed in California in 1986" ("IAP"), American Muslim Society ("AMS") "formed … in Illinois in 1993", American Middle East League for Palestine "formed in Texas in 1990 by Yasser K. Saleh Bushnaq ("AMELP")" and "IAP Texas formed by Basman Elashi in 1993." Plaintiffs' Original Complaint (Doc. 1) at ¶ 15; Plaintiffs' Amended Complaint (Doc. 179) at ¶ 2. However, in this matter Plaintiffs have focused on the judgments against HLF, IAP and AMS. Doc. 179 at ¶ 2.

This Court granted Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction in August 2017, finding that Plaintiffs' assertion that a shared mission "to educate people about Palestine" sufficed to establish alter ego "would create a false inference that no legitimate humanitarian organization could ever be created with that mission" and that "[i]n their effort to find a collectible defendant and to prevent their previous victory from being a pyrrhic one, plaintiffs are painting with overly broad strokes here." (Doc. 41 at 8, 10). Upon Motion for Reconsideration by the Plaintiffs, this Court ruled that "[w]hile this Court disagrees that it misapplied the law, upon further reflection, this Court placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship. Accordingly, this Court will vacate its previous order dismissing the case with prejudice and permit plaintiffs to conduct discovery solely to address jurisdiction." Doc. 50. The limited discovery which followed over the next year was authorized solely to allow Plaintiffs discovery related to subject matter jurisdiction, in the context of the previously granted Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(1).

In their Amended Complaint (Doc. 179), Plaintiffs seek to revive these previous claims against AMP/AJP and Rafeeq Jaber, as well as explicitly adding veil-piercing allegations and a fraudulent concealment claims against Defendant Jaber. These claims fail as a matter of law, for the reasons previously addressed by this Court in its earlier order (Doc. 41) as well as the reasons set forth below.

### IV. BACKGROUND AS TO CREATION OF AMP AND AJP

In the later part of 2005, a young attorney in Wisconsin named Munjed Ahmad discussed the idea of creating an education-based non-profit organization with the purpose of educating youth in America about Palestine and its history, as he was not aware of any organization in

existence at the time which fulfilled this goal. Exhibit A, Ahmad Decl. dated November 27, 2018, at ¶ 6;[3] *see also* Doc. 179, Plaintiffs' Amended Complaint, at ¶ 62. These discussions were originally with a colleague who did not end up becoming involved in the eventual organization. Ex. A, Ahmad Decl. at ¶ 6. Later, Mr. Ahmad had further discussions with Dr. Hatem Bazian, a professor at University of California, Berkeley. *Id*.; Doc. 179 at ¶ 62. Dr. Bazian had, separately, also been trying to develop a non-profit group to promote Palestinian awareness in America, as he had noticed a gap existed which no organization was currently filling. Ex. B, Bazian Dep., at 22-24, 26, 28-29, 30; *see also* Doc. 179 at ¶ 62. The name for this new organization was selected as American Muslims for Palestine, or AMP, in April of 2006. Ex. A, Ahmad Decl. at ¶ 11. AMP was then officially incorporated in August 2006, through the actions of Munjed Ahmad and Dr. Hatem Bazian. *Id*. at ¶ 12; Doc. 179 at ¶ 74. No activities of or events by AMP occurred prior to its incorporation. Ex. A, Ahmad Decl. at ¶ 12.

AMP was created to educate youth and communities about issues and culture related to Palestine. *Id*. at ¶ 25. AMP is strictly an American organization, funded by voluntary donations made entirely within the United States. *Id*. at ¶ 15. AMP first officed out of California. Ex. B, Bazian Dep. at 124.

Munjed Ahmad was never involved with AMS. Ex. A at ¶ 21. Munjed Ahmad was never involved with IAP. *Id*. at ¶ 20; Doc. 179 at p. 29. Munjed Ahmad was never involved with HLF. *Id*. at ¶ 22. Munjed Ahmad was not a part of, nor even aware of, the 2000 *Boim* litigation which involved IAP, AMS and HLF as defendants. *Id*. at ¶¶ 23-24.

---

[3] The additional record references here are undisputed, accepted in the course of this case as authentic, and relate to statements referenced in Plaintiffs' Amended Complaint. Therefore, they are appropriate to consider in conjunction with evaluating a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Dr. Bazian was never a Board member or leader of AMS. Ex. B, Bazian Dep. at 12. Dr. Bazian was never a Board member or leader of IAP. *Id*. at 37-38, 40, 46-47; Doc. 179 at p. 29. Dr. Bazian was never a Board member or leader of HLF. *Id*. at 40. Dr. Bazian had no involvement in the 2000 *Boim* litigation which involved IAP, AMS and HLF as defendants. *Id*. at 48-50.

These two individuals, who had no prior leadership roles in the entities which were 2000 *Boim* litigation defendants, began at first separately and then joined to create a domestic non-profit organization to educate others about Palestine. Ex. A, Ahmad Decl. at ¶ 6; Ex. B, Bazian Dep. at 28-29. Three years later, in November 2009, the same two individuals led the formation of the charitable organization Americans for Justice in Palestine Educational Foundation ("AJP"). Ex. A, Ahmad Decl. at ¶ 13; Ex. B, Bazian Dep. at 6; *see also* Doc. 179 at ¶ 152. In or around late 2016/early 2017, AMP and AJP became one entity, with AMP as the d/b/a of AJP. Ex. A, Ahmad Decl. at ¶ 13-14.

Defendant Rafeeq Jaber had no involvement in the creation of AMP or AJP. *Id.* at ¶ 17. Previous defendant Abdelbaset Hamayel had no involvement in the creation of AMP or AJP. *Id*. at ¶ 18. Previous defendant Osama Abuirshaid had no involvement in the creation of AMP or AJP. *Id*. at ¶ 19; *see also* Ex. C, Jaber Decl.; Ex. D, Hamayel Decl.; Ex. E, Abuirshaid Decl.; *see also* Doc. 31-1 at 2-9; Ex. B, Bazian Dep. at 120 ("Again, [Osama Abuirshaid's] involvement comes in as a necessity later on" due to his experience in fundraising, but he had no role initially with AMP or with its formation). Neither AMP nor AJP received any assets formerly belonging to IAP, AMS or HLF. Ex. A, Ahmad Decl. at ¶¶ 30-32.

4

## V.

## PLAINTIFFS' CLAIMS AGAINST DEFENDANT AMP/AJP FAIL TO PROPERLY PLEAD SUFFICIENT CLAIMS

**A.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of [a] complaint." *Friedman v. Leading Edge Recovery Solutions, LLC*, No. 13-cv-9034, 2014 U.S. Dist. LEXIS 58694, *4 (N.D. Ill. April 28, 2014) (Coleman, J.) (citing *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009)).  In order for a plaintiff "[t]o survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face and raising the right to relief above speculation." *Simpson v. Saggezza, Inc.*, No. 17-cv-04165, 2018 U.S. Dist. LEXIS 133740, *7 (N.D. Ill. Aug. 8, 2018) (Coleman, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, a complaint "must allege the 'operative facts' upon which each claim is based." *Villa v. Pearson Educ., Inc.*, No. 03-cv-3717, 2003 U.S. Dist. LEXIS 24686, *3-4 (N.D. Ill. Dec. 8, 2003) (quoting *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998)).  While factual allegations are accepted as true at the pleading stage, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). Therefore, a complaint shall "be dismissed for failure to state a claim" when it "is clear that no relief could be granted under any set of facts that could be proved to be consistent with plaintiffs' allegations." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986). In analyzing whether a complaint meets these standards, the "reviewing court [must] draw on its judicial experience and common sense." *Addison Automatics, Inc. v. RTC Group*, 2013 U.S. Dist. LEXIS 99448, *5 (N.D. Ill. July 16, 2013) (quoting *Iqbal*, 556

5

U.S. at 679). If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Seventh Circuit observes a "narrow" exception that permits courts to examine documents attached to a motion to dismiss if they are "referred to in the complaint," "central to the plaintiff's claim," and "concededly authentic." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

**B.      Alter Ego and "Veil Piercing" Claims Against AMP/AJP Fail as a Matter of Law.**

Plaintiffs' asserted claims against AMP/AJP fail as a matter of law for failure to sufficiently plead <u>plausible</u> facts in support. A party seeking recovery under an alter ego theory must show: (1) "such unity of interest and ownership that the separate personalities of the corporation" and the individual or entity behind it no longer exist; and (2) circumstances indicating that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Secs., LLC v. Banco Panamericano, Inc*., 674 F.3d 743, 751-52 (7th Cir. 2012); *MAC Funding Corp. v. MNdustries, Inc*., No. 17-cv-6470, 2018 U.S. Dist. LEXIS 74149, *6 (N.D. Ill. May 2, 2018).

While claims of alter ego can be evaluated under many factors, the key element required under the Seventh Circuit is motive and intent to avoid liability. *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785 (7th Cir. 1993); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc*., 831 F.2d 1309, 1312 (7th Cir. 1987). For a finding of alter ego, plaintiffs must show "the stockholder and corporation were in effect a single entity," established through broad practice, not a single transaction that is alleged as unfair. *Esmark Inc. v. N.L.R.B*., 887 F.2d 739, 788-89 (7th Cir. 1989). There must be evidence of intent or motive to act in a fraudulent or abusive manner, and sufficient

6

unity between the two corporations to justify setting aside the separateness of the entities. *Favia*, 995 F.2d at 788–89. Here, Plaintiffs make conclusory allegations without supporting facts, and allege insufficient facts to satisfy the requirements of Fed. R. Civ. P. 8.

Plaintiffs also once again conflate the "failure to respect corporate formalities" language and presume that merely having less than perfect written records suffices to wholly disregard all corporate formalities and impose alter ego at will, regardless of a lack of connection to the judgment defendants. Doc. 179 at ¶¶ 152-155. This is not the law. While overlapping board members between AMP and AJP may make AMP and AJP the alter egos of <u>each other</u>, it does not make them alter egos of wholly separate organizations. Plaintiffs allege none of the actions which have actually been found to support alter ego and veil piercing in this Circuit, like transferring assets without consideration, taking direct personal distributions, and paying significant expenses from corporate funds. *Id.* at ¶¶ 173-174; cf. *Puntillo v. Dave Knecht Homes*, 2019 U.S. Dist. LEXIS 87223, \*29 (N.D. Ill. May 24, 2019); *A.L. Dougherty Real Estate Management Co., LLC v. Su Chin Tsai*, 98 N.E. 3d 504 (Ill. App. Ct. 2017), appeal denied, 95 N.E. 3d 497 (Ill. 2018); *see also Sanchez v. Global Parking Management, Inc.*, No. 14-cv-4611, 2015 U.S. Dist. LEXIS 93782 (N.D. Ill. Jul. 20, 2015).

Furthermore, AMP/AJP cannot be directly liable for the underlying acts that led to liability under the ATA in the 2000 *Boim* litigation. There is no dispute that AMP first became an entity with its incorporation in August 2006. Doc. 179 at p. 27, ¶ 72. There is no dispute that AJP was first incorporated in 2009. *Id*. at p. 22, ¶ 61 ("In 2009, AMP leaders incorporated AJP as a Section 501(c)(3) organization to provide fundraising capabilities."). These dates come well after Plaintiffs obtained the judgment at issue; any allegations of concealment, transfer or other illicit activity by these entities must therefore be subsequent to the judgment Plaintiffs had previously obtained, and

therefore entail new facts and theories "that did not exist and could not have existed at the time the court entered judgment in the" original case brought by Plaintiffs. Doc. 41 at 5. Furthermore, entities cannot be held liable for pre-incorporation acts, even if by their directors or officers, absent a specific assumption of liabilities by the entity at formation. *United States v. Petersen Sand and Gravel, Inc.*, 806 F. Supp. 1346, 1350 (N.D. Ill. 1992). No such agreements existed here, nor do Plaintiffs allege the existence of any.

Plaintiffs assert that a partial overlap of directors and leaders of IAP/AMS to AMP/AJP exists. First, even taking the underlying factual statements in Plaintiffs' Amended Complaint as true, this is not the case. As stated above, the two founders of AMP/AJP were never in leadership or held Board positions with AMS, IAP or HLF. And, of the myriad of individuals identified in Plaintiffs' Amended Complaint, even Plaintiffs recognize that of the thirteen IAP/AMS Board members identified (Doc. 179 at p. 29), four left the United States and had nothing to do with AMP/AJP (*id*. at ¶ 82), another (Imad Sarsour) had no role with AMP/AJP (*id*. at ¶ 81), and three more "took no significant role at AMP" (*id*. at ¶ 83). Plaintiffs only directly connect three of these thirteen IAP/AMS Board members to AMP/AJP: Osama Abuirshaid, Abdelbaset Hamayel, and Sufian Nabhan. *Id*. at p. 29. As indicated above, both Osama Abuirshaid and Abdelbaset Hamayel had no role in the formation of AMP or AJP. Ex. A, Ahmad Decl. at ¶¶ 17-19; *see also* Ex. C, Jaber Decl.; Ex. D, Hamayel Decl.; Ex. E, Abuirshaid Decl.; *see also* Doc. 31-1 at 2-9; Doc. 179 at ¶¶ 125 (Abuirshaid "declined at that time" to even consider becoming involved in the new entity which became AMP), ¶ 121 (Hamayel did not join the AMP Board until 2009, and then it was to "help the organization start functioning" at a higher level). Finally, even Plaintiffs' Amended Complaint acknowledges that AMP and AJP founders Munjed Ahmad and Dr. Hatem Bazian were "non-IAP" and merely a "frequent IAP speaker" respectively. Doc. 179 at p. 29.

8

Plaintiffs also misconstrue what "assets" may form the basis of a transfer under alter ego theory. Plaintiffs assert throughout the Amended Complaint that AMP and AJP use "the same critical assets" which HLF, IAP and AMS purportedly did, none of which are tangible. Doc. 179 at p. 31-33, ¶ 85-87. Plaintiffs assert that these "valuable intangible assets simply 'transitioned' to AMP and later AJP" – after the above-referenced gap of several years when "there was no other organization speaking for Palestine."[4] *Id*. at p. 34, ¶ 89; *id*. at p. 23, ¶ 62. Even if such a time warp-necessitating transfer were possible, these are not the types of "intangible assets" seen in this Circuit as transfers of value which support successor liability or alter ego. *See, e.g.*, *Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770, 773 (7th Cir. 2018) (finding a valuable transfer of assets based on use of trademark and tradename, supplier lists, trade secrets, contracts, customer lists and data, telephone numbers, and internet domain names); *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*, No. 98-cv-2453, 2000 U.S. Dist. LEXIS 6936, *9-10 (N.D. Ill. May 17, 2000) (recognizing that continued use of a restaurant's name, which led to procuring a spot in Taste of Chicago and where there was testimony as to the significant value attached to the name, was a valuable transfer of an asset). Plaintiffs' claim that the "good name" of the entities whose assets had been seized by the government and who were found liable under the ATA had any "intangible assets" left to give as value belies belief; nonetheless, there is no assertion by Plaintiffs fthat AMP and/or AJP used the names of IAP, AMS or HLF at any time, or their internet domains,

---

[4] Again, as this quote from the Amended Complaint is directly from the deposition of Hatem Bazian, this Court may properly consider the context. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Dr. Bazian, when asked "At that point in time, 2005 time period, were there any other *educational organizations* out there who were focused on Palestine?", responded "Palestine, not as far as I know that work within the Muslim community." Ex. B, Bazian Dep. at 30 (emphasis added). In response to the follow-up question of "So that [educational organization focused on Palestine] was the hole that you were trying to fill with this new organization?", Dr. Bazian responded "Yeah." *Id*. When asked further if "During the time that IAP had existed, had IAP been that voice?", Dr. Bazian responded "I don't know. You need to ask them. I could only speak for what I wanted to do." *Id*. at 31.

or phone numbers, or assumed any contracts previously held by IAP, AMS or HLF. Plaintiffs' Amended Complaint instead states quite the opposite: "specific care was taken to avoid any public connection with IAP/AMS" and "we really need to distance ourselves from any well known IAP figures". Doc. 179 at p. 26, ¶ 69.[5] In the absence of a transfer of good will or assets, Plaintiffs now seek to rely on allegations that "the ideology and message of AMP/AJP is virtually identical to HLF, IAP and AMS" (Doc. 179 at ¶ 157), as sufficient for a showing of alter ego; this Court has already held that this is not the law. Doc. 41 at 8.[6]

**C.    Plaintiffs' Successor Liability Claims Against AMP/AJP Fail as a Matter of Law.**

Plaintiff next asserts successor liability against AMP/AJP. These claims also fail as a matter of law, for failure to sufficiently state a claim.

The four factors for successor liability from *Travis v. Harris Corp.* govern claims of successor liability: "(1) [W]here there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a "mere continuation" of the seller; and (4) where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977). Plaintiffs make no allegation that AJP or AMP expressly or impliedly agreed to assume liability of any judgment defendants. Plaintiffs do not point to any transactions amounting to consolidations or mergers of any corporations. Plaintiffs

---

[5] As Plaintiffs raise this in their Amended Complaint, Defendant directs this Court to the deposition testimony of AMP/AJP co-founder Dr. Hatem Bazian on this point. Dr. Bazian testified, when questioned by Plaintiffs' counsel on this exact quote, that "I would say personally I wanted to focus on the American Muslim community and not to focus on the Palestine or Palestine over there. So in this sense if members of IAP, their focus was over there, then that does not serve what type of work I wanted to put forth." Ex. B, Bazian Dep. at 92.

[6] Plaintiffs allege that ideology is relevant, because that is part of what led to the favorable ruling on their ATA claim against the prior defendants, against whom they obtained a judgment. But that claim is not part of this lawsuit. And ideology, whether asserted accurately or not, cannot create jurisdiction, nor can it create alter ego or successor liability where there is none.

allege no facts showing that Defendants AMP and AJP are "mere continuations" of judgment defendants, other than conclusory statements that they must be, and Plaintiffs identify no sale or transfer of assets. That leaves the last *Travis* factor: "where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." 565 F.2d at 446. Plaintiffs fail to identify any discrete acts, asserting only that "IAP, AMS and HLF were abandoned and replaced by AMP and AJP in order to permit the same ongoing enterprise—formerly conducted through the *Boim* Defendants—to continue free and clear of the burden of paying the *Boim* judgment." Doc. 179 at ¶ 162. Plaintiffs also recognize that by the time AMP and AJP began, (1) HLF had no financial assets; (2) IAP and AMS had ceased operating; and (3) AMP as an organization "emerged" well after a gap of any organization educating the public about Palestine in the United States had been created and recognized as a problem by those with that charitable interest. Doc. 179 at p. 22-23, ¶¶ 62-64 ("AMP board member and one of its purported founders, Munjed Ahmad, testified that AMP is focused on the 'Palestinian issue,' and that he was unaware of any other organization in the United States that had the same focus when AMP was organized in 2006, *after IAP/AMS and HLF were out of business*.") (emphasis added).[7] The statements contained in Plaintiffs' own pleading demonstrate that no claim of successor liability can survive, meriting dismissal under Fed. R. Civ. P. 12(b)(6).

---

[7] As this Court previously noted, simply having a charitable purpose "to educate people about Palestine" "alone does not suggest any nefarious intent or unlawful motive." Doc. 41 at 8. Nor does operating with a similar stated purpose: "[t]he court can find no equitable or moral reason … why the new corporation could not be organized to conduct a modified and extended business or even a business similar to that conducted by the old corporation so long as no property of the old corporation was diverted to the new corporation." *Christiansen v. Mech. Contractors Bid Dep.*, 404 F.2d 324, 325 (10th Cir. 1968).

11

## VI. CONCLUSION

Based on the foregoing, AMP/AJP respectfully requests that this Court dismiss Plaintiffs' claims in their entirety, and for such other and further relief to which Defendant is justly entitled.

Dated this 14th day of January, 2020.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of January 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Christina Jump*
Christina A. Jump
*Attorney for Defendants*
