IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | **<u>Hon. Sharon Johnson Coleman</u>** |
| v. | |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; AND RAFEEQ JABER, | |
| Defendants. | |

**DEFENDANT AMP/AJP'S REPLY IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1)</u>**

Dated this 30th day of April, 2020

*<u>/s/ Christina A. Jump</u>*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Charles D. Swift
Texas Bar. No. 24091964
*Pro Hac Vice Attorney for Defendants*
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
Tel: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

III. ARGUMENT ........................................................................................................... 5

   A.   Plaintiffs' Allegations Fail to Establish Subject Matter Jurisdiction Based on Their Alter Ego Claims ......................................................................................................... 5

     1.   Entity Defendant Does Not Have "Substantially Identical Management" as the *Boim I* Defendants ............................................................................................... 6

     2.   Plaintiffs' Transfer of Assets Allegation Fails As a Matter of Law ................................. 8

     3.   The Business Purpose Asserted by Plaintiffs Cannot Support An Alter Ego Claim, and Plaintiffs Ask This Court to Make Improper Findings ..................................... 9

     4.   AMP/AJP Does Not Operates in the Same Manner or Serve the Same "Customers" ...... 10

     5.   The FAC Fails to Allege Sufficient Facts that Entity Defendant was Formed with the Intent to Avoid Liability for the Original *Boim I* Judgment. ......................................... 11

     6.   Plaintiffs Misconstrue the Law Regarding Corporate Separateness and Formalities ........ 12

   B.   Supplemental Jurisdiction Does Not Exist Here .................................................... 13

   C.   Successor Liability Jurisdiction Does Not Exist Here ............................................ 14

IV.  CONCLUSION ..................................................................................................... 15

iii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685 (7th Cir. 2008) ...................................1

*Cent. States, Se. & Sw. Areas Pension Fund v. Sloan,* 902 F.2d 593 (7th Cir. 1990) .....................7

*Chi. Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.,* 1999 U.S. Dist. LEXIS 928 (N.D. Ill. Jan. 15, 1999)..........................................................................................................12

*Chi. Reg'l Council of Carpenters Pension Fund v. TMG Corp.,* 206 F. Supp. 3d 1351 (N.D. Ill. 2016)...................................................................................................................................................6

*Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27 (1987)............................................15

*Feld Entm't, Inc. v. ASPCA,* 873 F. Supp. 2d 288 (D.D.C. 2012) .................................................14

*Hales v. Timberline Knolls, LLC,* No. 15 C 2622, 2017 U.S. Dist. LEXIS 11 (N.D. Ill. Jan. 3, 2017)....................................................................................................................................................6

*Hankinson v. King,* 117 F. Supp. 3d 1068 (D. Minn. 2015)..........................................................15

*Hystro Prods., Inc., v. MNP Corp.,* 18 F.3d 1384 (7th Cir. 1994) ................................................12

*Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.,* 884 F.3d 770 (7th Cir. 2018).............8

*Int'l Union of Operating Eng'rs, Local 150 v. Rabine,* 161 F.3d 427 (7th Cir. 1998)...................7

*Laborers Pension Fund v. Bakke Constr. Co.,* 1987 U.S. Dist. LEXIS 10509 (N.D. Ill. Nov. 9, 1987)..................................................................................................................................................13

*Leibowitz v. Bowman Int'l, Inc.,* 2016 U.S. Dist. LEXIS 159071 (N.D. Ill. Nov. 17, 2016) ..........8

*Nicks v. Koch Meat Co.,* 260 F. Supp. 3d 942 (N.D. Ill. 2017) .....................................................11

*NLRB v. Dane Cty. Dairy,* 795 F.2d 1313 (7th Cir. 1986) ............................................................11

*Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.,* 995 F.2d 785 (7th Cir. 1993) .................................................................................................4

*United States ex rel. Tyson v. Amerigroup Ill., Inc.,* 2005 U.S. Dist. LEXIS 28482 (N.D. Ill. Nov. 8, 2005)...............................................................................................................................................11

**Statutes**

28 U.S.C. § 1367(a) ........................................................................................................................13

## I.     INTRODUCTION

Defendant American Muslims for Palestine ("AMP"), the d/b/a of Defendant Americans for Justice in Palestine Educational Foundation ("AJP", collectively "AMP/AJP" or "Entity Defendant") file this Reply in support of its motion seeking to dismiss the claims brought in Plaintiffs' First Amended Complaint[1] ("FAC") for lack of subject matter jurisdiction. For the below reasons, Defendant AMP/AJP respectfully requests that this Court dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

The legal principles governing alter ego and successor liability claims are specific, requiring Plaintiffs to prove certain factual circumstances that are simply not present here. Plaintiffs nonetheless claim that the present Defendants are the alter egos and successors of the defendants from the original *Boim* lawsuit (the "*Boim I* defendants"), initiated in 2000 following the death of Stanley and Joyce Boim's son David.[2] The death of David Boim was an awful tragedy, and Defendants deeply sympathize with the grief of his parents; the blame for that tragedy, however, does not rest in the hands of these Defendants. From its inception, the instant case has been one of business law principles only; no amount of rhetoric intended to inflame the emotions of the reader should excuse the dearth of material facts and corresponding law presented by Plaintiffs. Plaintiffs may not use the courts as a forum for political pontification, or to persecute these Defendants simply because Plaintiffs do not agree with Defendants' views.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The factual underpinnings of this lawsuit have been exhaustively described by all parties; accordingly, Entity Defendant will not put this Court through the paces of yet another detailed recitation of its factual and procedural background. Although Plaintiffs devote four sections and

---

[1] *See generally* Doc. 179.
[2] *See generally Boim v. Holy Land Found. For Relief & Dev.,* 549 F.3d 685, 701 (7th Cir. 2008).

two subsections of their Response to factual background, Entity Defendant instead uses this opportunity to directly address several examples of the misleading and legally irrelevant allegations relied upon by Plaintiffs, which have no bearing on this Court's jurisdiction.

Plaintiffs spend three pages of their Response describing the events that led to the outcome of the original 2000 Boim lawsuit (the "*Boim I* action").[3] Plaintiffs discuss how Hamas was designated as a terrorist organization by the United States, how the Holy Land Foundation ("HLF") was found to have directed financial support to Hamas and was also named a terrorist organization, and how, with respect to the judgment in the original *Boim I* action, "neither the District Court nor the Seventh Circuit…suggested that the question was even close."[4] Plaintiffs' discussion of these points successfully paints an unfavorable picture of the original *Boim I* defendants and Hamas, although arguably their designation as a terrorist organizations and the $156 million judgment against the original defendants did that all by itself. Plaintiffs' arguments, however, fail to show any legally meaningful support for how the already adjudicated guilt of the previous defendants renders the current Defendants their alter egos and successors.

In Plaintiffs' next section, entitled "IAP/AMS surrogates formed AMP immediately after IAP/AMS was shuttered due to the *Boim* judgment," Plaintiffs devote a paragraph to Dr. Hatem Bazian, a professor at the University of California Berkeley.[5] Plaintiffs assert, without citation to any factual foundation, that Dr. Bazian "fully subscribed to the Hamas line of total hostility to the mere existence of the State of Israel," and point to Dr. Bazian speaking at IAP events in the past and his connections to a "network of Islamic organizations in the United States," in an attempt to create the impression that Dr. Bazian's involvement with AMP connects his previous

---

[3] Doc. 206 at 3-5.
[4] *Id.* at 5.
[5] *Id.* at 9.

interactions with IAP and the Palestinian community generally. However, Dr. Bazian was never a part of the structure of IAP; the fact that he previously spoke at certain IAP events does not actually create any legal connection between the two organizations whatsoever. It does not show a transfer of assets, a similarity in leadership, a failure to separate corporate formalities, a motive or intent to avoid liability, or any other legally relevant factor pointing to alter ego and successor liability. Affiliation with, or activism on behalf of, Palestinian advocacy generally is neither illegal nor is it relevant to the causes of action alleged here. This pattern of relying on factors such as speaking at conferences, that appear on the surface to draw connections but fail to actually comport with any relevant legal requirements persists throughout Plaintiffs' FAC and Response. Despite the fact that other individuals have been named (and subsequently dropped, with the exception of one), Dr. Bazian has never been a defendant in this lawsuit, nor the *Boim I* action. Presumably, if Plaintiffs had a sufficient legal basis to name him, they would have.

Plaintiffs next describe the use of an informal Yahoo! bulletin board entitled "AMP_Transition" as some sort of "smoking gun" evidence of Defendants' intent to conceal a disguised continuation of IAP.[6] This reliance is misplaced, exaggerated, and at times, self-defeating. In this bulletin board, several individuals (none of whom were former IAP leadership) discuss the possibility of creating an organization with the purpose of educating the public about issues involving Palestine. Plaintiffs ask this Court to view the use of the word "transition" in the title of that bulletin board as lynchpin evidence in their favor; however, this once again does nothing to show any transfer of assets (intangible or otherwise), common ownership or leadership, or unity between the two entities. Nowhere in this message board did any of its participants discuss plans to revive IAP or utilize or conceal its (at that time already nonexistent)

---

[6] Doc. 206 at 6.

assets or other resources. In fact, as Plaintiffs themselves point out, to the contrary, the bulletin board mentions *excluding* certain individuals *underline specifically because* they had been involved in IAP. Although Plaintiffs, based on nothing except their own presumptions, characterize this as evidence supporting purposeful and deceitful concealment, what the facts actually show is Defendants actively attempting to create an entity wholly separate from IAP's leadership.

Plaintiffs' mischaracterization of evidence is perhaps most clear in their unqualified assertion that "[e]mploying defendants' own language, the 'motive and intent to avoid the [*Boim I*] liability' was the 'key element' in creation of the purportedly new organization. (Dkt. 189, p. 6)."[7] Document 189 is Defendant AMP/AJP's Motion to Dismiss; the above language, framed by Plaintiffs as an "admission" by Defendant that AMP/AJP was formed for the purpose of avoiding the *Boim I* judgment, is in reality is a reference to *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.,* 995 F.2d 785 (7th Cir. 1993). Citing to that case in its section describing the state of the law on alter ego in the Seventh Circuit, Defendant AMP/AJP states that "while claims of alter ego can be evaluated under many factors, the key element required under the Seventh Circuit is motive and intent to avoid liability." Neither Entity Defendant nor its counsel has ever asserted that it acted with this motive or intent. Plaintiffs' attempt to mislead the Court in this way arguably exceeds good faith legal gamesmanship, and verges on outright misrepresentation Defendant AMP/AJP respectfully requests that this Court consider Plaintiffs' FAC and Response solely for any legally relevant facts that may support jurisdiction over Plaintiffs' alter ego or successor liability claims.

## III. <u>ARGUMENT</u>

In 2017, this Court considered "whether plaintiffs here have adequately alleged for jurisdictional purposes the present defendants are the alter egos of AMS, IAP, and the Holy Land

---

[7] *Id.* at 12.

Foundation" when assessing Plaintiffs' Original Complaint.[8] This Court determined that Plaintiffs had not, and thus dismissed the Original Complaint for lack of subject matter jurisdiction, stating that "plaintiffs fail to demonstrate the requisite level of interest and control such that AMP and AJP...can be held directly liable for the actions of the judgment debtors."[9] Upon Plaintiffs' Motion for Reconsideration, the Court vacated its previous Order for the sole purpose of allowing limited jurisdictional discovery to take place in order to afford Plaintiffs the opportunity to uncover any facts and evidence justifying this Court's exercise of jurisdiction.[10] Plaintiffs then filed their FAC. However, despite a lengthy discovery period, Plaintiffs' FAC fails to remedy the deficiencies which this court identified in its Original Complaint, and thus fails for the same reasons previously cited by this Court.[11]

A. **Plaintiffs' Allegations Fail to Establish Subject Matter Jurisdiction Based on Their Alter Ego Claims.**

Plaintiffs asserts that jurisdiction attaches in this matter because "AMP/AJP is an alter ego...with no true separate existence from the defendants that were found liable," and thus Defendant is *directly*, not vicariously, liable for the *Boim I* judgment.[12] In making this argument, Plaintiffs ask this Court to ignore the operative legal consideration at play: in order for this Court to have jurisdiction based on Plaintiffs' alter ego claims, Defendants must actually *be* (or reasonably appear at this stage to likely to be) the alter egos of the previous judgment debtors. This Court ruled against Plaintiffs on this question based on their Original Complaint; the same finding is appropriate here. Plaintiffs' FAC totals 67 pages and contains largely unsubstantiated and conclusory allegations against a multitude of entities and individuals who are not named in

---

[8] Doc. 41 at 6.
[9] *Id.* at 10.
[10] *See* Doc. 50.
[11] *See* Doc. 206.
[12] *Id.* at 12.

this lawsuit. Plaintiffs' FAC could be better described as a 'throwing spaghetti at the wall' approach to legal pleading, than a precise tying of legal principles to their relevant operative facts. *See Hales v. Timberline Knolls, LLC,* No. 15-cv-2622, 2017 U.S. Dist. LEXIS 11, *29 (N.D. Ill. Jan. 3, 2017) (dismissing two entities from the case where the court found that it lacked jurisdiction over them because "[p]laintiff failed to come forward with additional evidence to support her alter-ego theory, and failed to make any concrete allegations of the [c]orporate [d]efendant's direct participation in the wrongful conduct alleged").

1. Entity Defendant Does Not Have "Substantially Identical Management" as the *Boim I* Defendants

In "attempting to discern whether a new company is another's alter ego, courts engage in a fact intensive analysis, examining factors like whether the two companies have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership;" however, the "most critical factor in the Seventh Circuit" is a finding of unlawful motive or intent. *Chi. Reg'l Council of Carpenters Pension Fund v. TMG Corp.,* 206 F. Supp. 3d 1351, 1361 (N.D. Ill. 2016). Plaintiffs fail to meet this legal standard.

Entity Defendant's Motion to Dismiss and Plaintiffs' FAC both make clear that the present Defendants and the original *Boim I* defendants do not share substantially identical management. Only one member of the *Boim I* defendants' board is present on Entity Defendant's board. Where they cannot show substantial continuity in leadership, Plaintiffs attempt to distract the Court with allegations of loose connections like "Salah Sarsour took the Sarsour family board spot" at AMP (no such "family board spot" exists nor do Plaintiffs allege any facts supporting such an assertion), and the fact "that some IAP leaders did not continue with AMP—primarily

because they left the United States…is beside the point."[13] That fact is actually directly on point. Plaintiffs' own allegations only directly connect three of the thirteen IAP board members to AMP/AJP: Osama Abuirshaid (who has been dropped from this lawsuit as an individual Defendant and who had no role with AMP/AJP prior to 2009); Abdelbasset Hamayel (who has been dropped from this lawsuit as an individual Defendant and who also had no role with AMP/AJP until late 2009) and Sufian Nabhan (who was never named in this lawsuit and has never had an active role in AMP/AJP). Neither Abuirshaid or Hamayel had any role whatsoever in the formation of AMP/AJP, and did not participate in the organization until years after its formation. As described in greater detail in Defendant AMP/AJP's Motion to Dismiss, the remainder of the individuals described by Plaintiffs comprise a group of loose connections, all of which fall far short of the kind of control required to warrant jurisdiction in an alter ego case. *See Int'l Union of Operating Eng'rs, Local 150 v. Rabine,* 161 F.3d 427, 433 (7th Cir. 1998) (holding that "at most, the management and ownership of the two companies had a good deal in common, but that alone is insufficient to establish alter ego status"); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Sloan,* 902 F.2d 593, 597 (7th Cir. 1990) (finding that alter ego had been established where, among other things, (a) trucks from the first entity were transferred to the second entity without consideration; (b) several unionized employees from the first entity began work for the second; (c) the second entity kept funds in the first entity's account and paid its employees' wages from this account; (d) bank loans for each entity were signed by the defendant and his wife, and secured with one of the transferred trucks; and (e) the offices of both companies were located on the same premises, owned by defendant and his wife).

---

[13] Doc. 179 at 30; Doc. 206 at 9.

2. Plaintiffs' Transfer of Assets Allegation Fails As a Matter of Law

Unable to point to a single transfer or sale of assets between the original *Boim* Defendants and the present ones, Plaintiffs rely on a litany of "intangible" assets purportedly transferred between the two. Plaintiffs are correct that intangible assets may support a theory of alter ego liability in certain circumstances; however, in making such determinations, the Seventh Circuit looks to factors such as use of the same trademark and tradename, goodwill, supplier and customer data, trade secrets, telephone numbers, and websites. *Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.,* 884 F.3d 770, 774 (7th Cir. 2018); *see also Leibowitz v. Bowman Int'l, Inc.,* No. 15-cv-3021, 2016 U.S. Dist. LEXIS 159071, *10-12 (N.D. Ill. Nov. 17, 2016). Plaintiffs have not (and cannot) allege that a *single one* of these factors exists here.

In their attempt to bend the actual facts of this case to fit their legal requirements, Plaintiffs rely on things like the discrete skillset of a particular individual (such as Hamayel's "know-how to arrange large conventions").[14] Not only do Plaintiffs fail to point to a single case in which anything similar gave rise to jurisdiction over alter ego claims, but accepting this reasoning here would dangerously expand the accepted reach of the legal doctrine. Throughout the course of a career, individuals frequently utilize the same skillset in different contexts; this cannot form the sole basis for finding a future employer to be the alter ego of a previous entity. This is especially true where not a single one of the individuals listed by Plaintiffs in their section on the transfer of assets actually served as a board member at both entities.[15] Further, with respect to the "strong reputation" and "good will" that Plaintiffs allege were transferred, it defies common sense that any entity (including the original *Boim I* defendants) branded as a terrorist organization and shut down by the government has any "strong reputation" or "good

---

[14] Doc. 206 at 25.
[15] Doc. 206 at 21.

will" left to pass on. In short, Plaintiffs do here what they have done throughout this lawsuit: ask this Court to rule based on the weight of their allegations by quantity and pound, rather than actual qualitative relationship to the governing principles of law.

3. The Business Purpose Asserted by Plaintiffs Cannot Support An Alter Ego Claim, and Plaintiffs Ask This Court to Make Improper Findings

Plaintiffs next argue that Entity Defendant serves the same purpose as the original *Boim I* defendants of "support for Hamas."[16] This is blatantly contrary to the stated purpose of Entity Defendant which was repeatedly revealed during discovery.[17] Nonetheless, Plaintiffs contend that their unsupported and inflammatory assertion is the case because Entity Defendant purportedly makes donations to a number of U.S. charities also involved in Palestinian advocacy, whom Plaintiffs unilaterally, and without any factual support, conclude themselves "distribute funds through Hamas operatives." None of these organizations has been found liable, or even accused of, support of terrorism (nor has Entity Defendant itself). Plaintiffs thus ask this Court, in this civil business law case, to accept their own conclusory allegations of these organizations purported sinister (and criminal) intentions, and then impart those intentions onto Entity Defendant in order to find it liable for a prior judgment. Put another way, Plaintiffs ask this Court to make a finding that Entity Defendant (and a number of other charities) are in the business of funding terrorism, and somehow therefore owe these Plaintiffs money.[18] This

---

[16] *Id.*

[17] *See* Exhibit A, Excerpts from Deposition Transcript of Munjed Ahmad, at. 85; *see also* Exhibit B, Excerpts from Deposition Transcript of Abdelbaset Hamayel, at 156 ("our mission is just to educate the American public about the history and culture of Palestine"); *see also* Exhibit C, Excerpts from Deposition Transcript of Salah Sarsour, at 104.

[18] Plaintiffs repeatedly utilized the opportunity for jurisdictional discovery in this Matter for irrelevant political commentary, such as asking non-defendant witness Salah Sarsour in his deposition if it "is AMP's intent to bring about an end to the State of Israel," an unfounded allegation with no bearing on the jurisdictional discovery for which that deposition was

argument exemplifies, and takes a step further, the exact line of reasoning that this Court previously cautioned against: "to demonstrate continuity between the entities, plaintiffs point to a shared stated mission—'to educate people about Palestine.' This alone does not suggest any nefarious intent….to find otherwise would create a false inference that no legitimate humanitarian organization could ever be created with that mission."[19]

#### 4. AMP/AJP Does Not Operates in the Same Manner or Serve the Same "Customers"

Entity Defendant is a non-profit organization; it does not possess "customers" in the same way that a for-profit commercial entity might. In recognition of this fact, Plaintiffs argue that even though "the organization had no 'customers'…[i]ts constituents were…the same," because "it generated support among, and funds from, the Palestinian community in the United States and others sympathetic to the cause."[20] Plaintiffs once again paint with an overly broad brush, failing to identify any discrete group of individuals, supporters or clients or nefarious gains. The entire Palestinian community in the United States is not in any sense analogous to kind of "customer" base typically present in alter ego cases. The implication that they are a legally relevant class of individuals for the purpose of this case creates the risk of producing deeply concerning legal precedent based solely on nation of origin. This argument fails on a logical level as well. There are many charitable entities in the United States whose base of support or interest overlaps with one another's, whether that be the Muslim community, the LGBT community, various Christian denominations, or any number of other groups who share similar identities with others.

The fact that Entity Defendant operates a "similar chapter system" as the original *Boim I* defendants did makes no legal difference here. Operating on a chapter system is not unique to

---

authorized. Ex. C at 104. Instead, as noted herein, AMP's purpose is to educate regarding the history and culture of Palestine. *Id.*

[19] Doc. 41 at 8.

[20] Doc. 206 at 28.

these entities. Further, the mere fact that they have chapters in some of the same major U.S. cities where Palestinian-American populations exist is insufficient to confer alter ego jurisdiction; Plaintiffs have not shown that the business operations of Entity Defendant are controlled by any *Boim I* defendant (this would in fact be impossible, as the original *Boim I* defendants ceased to exist years prior to Entity Defendant's inception). *See United States ex rel. Tyson v. Amerigroup Ill., Inc.,* No. 02-cv-6074, 2005 U.S. Dist. LEXIS 28482, *15 (N.D. Ill. Nov. 8, 2005) (finding alter ego where one entity "controlled virtually every aspect of [the subsidiary's] operations"); *see also Nicks v. Koch Meat Co.,* 260 F. Supp. 3d 942, 961 (N.D. Ill. 2017). Plaintiffs fail to show that Entity Defendant uses the same facilities or equipment, or operates on a day-to-day basis in an identical way as any of the *Boim I* defendants. *See NLRB v. Dane Cty. Dairy,* 795 F.2d 1313, 1322 (7th Cir. 1986) (evaluating the fact that two entities had "identical and unchanged business operations including purpose, facilities, equipment, customers and supervision"). Therefore, this assertion by Plaintiffs fails as well.

5.  <u>The FAC Fails to Allege Sufficient Facts that Entity Defendant was Formed with the Intent to Avoid Liability for the Original *Boim I* Judgment.</u>

Plaintiffs' argument that their FAC "includes compelling motive and intent allegations" is completely without merit. Plaintiffs attempt to mislead the court by stating that "IAP/AMS claimed to be 'defunct' in order to evade enforcement efforts and further liability."[21] IAP/AMS did not "claim to be defunct;" it closed down after it was found liable under the Anti-Terrorism Act, and Plaintiffs collected its remaining assets. And HLF was designated as a terrorist organization and had all of its assets seized by the U.S. government. These were not voluntary or orchestrated wind-ups. There were simply no assets left to "conceal" or "transfer," and the intangible assets that Plaintiffs ask this Court to recognize do not comport with existing law on

---

[21] *Id.* at 29.

the subject. Neither Plaintiffs' FAC nor their Response cites to a single fact authority demonstrating, or even suggesting, that the original *Boim I* defendants were somehow able to conceal assets that *were not* seized by the government or these Plaintiffs, and pass them on to Entity Defendant to "evade enforcement efforts" under the *Boim I* judgment.[22] Even following a year of discovery, Plaintiffs fail to identify any facts to the contrary, relying instead on legally irrelevant and factually exaggerated similarities between the two sets of defendants.

6. <u>Plaintiffs Misconstrue the Law Regarding Corporate Separateness and Formalities</u>

Plaintiffs' argument as to corporate separateness and formalities simply misrepresents the law. A failure to respect corporate formalities is an element supporting alter ego where two contemporaneous entities fail to adequately separate themselves from one another, such that it is reasonable for a court to find that they are practically functioning as one entity, and disregard the corporate form as between those two entities. This factor exists to deter individuals or entities from hiding behind a corporate veil to shield themselves from liability, when in practicality, they are operating and existing as a single unit.

Courts evaluating corporate formalities/separateness look to factors such as commingling of assets between the entities, undercapitalization of one entity (in reliance on the other's financial stability), and a general disregard for corporate separateness between one entity and the individual or other entity controlling it. *See Hystro Prods., Inc., v. MNP Corp.,* 18 F.3d 1384, 1389-90 (7th Cir. 1994) (finding alter ego where one corporation closely controlled the alter ego's finances, paid the salaries of the alter ego's officers, and where the two corporations informally transferred money to one another, and other corporate formalities were absent); *see also Chi. Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.*, No. 95-cv-4809,

---

[22] *Id.*

1999 U.S. Dist. LEXIS 928, *19-20 (N.D. Ill. Jan. 15, 1999) (finding alter ego where "the extensive evidence of interrelationship among the three Corporate Defendants suggests a lack of respect for their separate corporate entities" and pointing to evidence showing that the defendants each managed project bids under each other's names, handed paychecks to the each other's employees and had common management); *Laborers Pension Fund v. Bakke Constr. Co.,* No. 87-cv-963, 1987 U.S. Dist. LEXIS 10509, *3 (N.D. Ill. Nov. 9, 1987) (finding in favor of alter ego where the acts of the individuals and the acts of the corporation are the same and the "principal and/or director and shareholder of [defendant] has dominated the corporate structure and disregarded the corporate formalities between individuals and the corporation"). Accordingly, the fact that two *Boim I* defendants were found to be alter egos with other entities contemporaneously under the IAP National umbrella has no legal bearing on the fact that Entity Defendant here may have been imperfect in its adherence to corporate documentation and failings. Plaintiffs do not point to a single case where the courts applied the corporate formalities factor in the way that Plaintiffs urge here. The *Boim I* defendants and the Entity Defendant here have not failed to observe corporate separateness and formalities *between each other*. At best, Plaintiffs only demonstrate an argument that the Seventh Circuit already resolved: that the original *Boim I* defendants were alter egos of each other.

**B.     Supplemental Jurisdiction Does Not Exist Here**

Entity Defendant need not discuss supplemental jurisdiction in great detail here. A district court only has supplemental jurisdiction over a claim where it is so related to the action over which it has original jurisdiction, that they form the same case or controversy.  28 U.S.C. § 1367(a). Here, there is no independent basis for jurisdiction over Entity Defendant, as Plaintiffs have, once again, failed to demonstrate alter ego.

## C.     Successor Liability Jurisdiction Does Not Exist Here

Plaintiffs contend that Entity Defendant is the successor of the *Boim* defendants under the "mere continuation" or fraudulent assets transfer exceptions to the general rule for successor liability thereby warranting this Court's jurisdiction. Even applying the test cited by Plaintiffs, this proposition fails. Plaintiffs allege that, in evaluating successor liability, courts "consider factors such as (1) timing between the dissolution of the former entity and incorporation of the latter; (2) overlap of ownership interest; and (3) overlap of management," and argue that "courts have recognized" that the continuity of ownership factor is not applicable for nonprofit entities.[23] The theory of successor liability urged by Plaintiffs almost exclusively applies in circumstances involving one entity buying the assets of another, in order to fraudulently protect itself from liability. In this case, Plaintiffs have not pointed to a *single* tangible transferred between Entity Defendant and any *Boim I* defendant, and the intangible assets alleged do not fit the framework required by current law. There is no "common ownership" (and in fact, there cannot be, because the entities involved are all nonprofit organizations). Of the thirteen board members of the original *Boim I* defendants only one on Entity Defendant's board. The timing between the dissolution of the *Boim I* defendants and the creation of this Entity Defendant in 2006 is not sufficiently close; the *Boim I* judgment was handed down in 2004. AMP was not formed until late 2006, and AMS was not formed under late 2009.

The cases cited by Plaintiffs further define the wide gap between the circumstances under which courts find successor liability in a nonprofit context and the facts presented in this case. In *Feld Entm't. Inc. v. ASPCA,* successor liability was established where, under an asset purchase agreement, defendant "acquired the good will, trademarks, logos, donor lists, creative materials

---

[23] *Id.* at 34.

and name of FFA…assumed the trade payables in the ordinary course of business, as well as the liability and obligations under FFA's agreements, contracts, orders, leases and other commitments…" and "offered employment to all of FFA's employees." 873 F. Supp. 2d 288, 325 (D.D.C. 2012); *see also Hankinson v. King,* 117 F. Supp. 3d 1068 (D. Minn. 2015) (finding that successor liability was sufficiently alleged to justify proceeding past dismissal where there was evidence showing "continuity of management, personnel, physical location, assets, records and general business operations" between two churches). The case cited by Plaintiffs to support their proposition that the gap in time between dissolution of the *Boim I* defendants and the creation of Entity Defendant does not support a similar finding here. That case, *Fall River Dyeing & Finishing Corp.,* involved a hiatus of only 7 months (significantly less than the gap of multiple years here), and the court specifically noted that the "hiatus may have been much less than seven months" because "after the February layoff, Sterlingwale retained a skeleton crew of supervisors and employees that continued to ship goods to customers and maintain the plant," and was thus largely still functioning "from the employees perspective." *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 45-46 (1987). Accordingly, Plaintiffs' successor liability claims fail as a matter of law to confer jurisdiction on this Court for the claims presented.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss all claims against Defendant AMP/AJP, based on lack of subject matter jurisdiction, and grant such further relief as the Court deems just and appropriate.

Dated this 28th day of May, 2020.

*/s/ Christina A. Jump*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Charles D. Swift
Texas Bar No. 24091964
*Pro Hac Attorney for Defendants*
Constitutional law Center for
Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May, 2020, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

_/s/Christina A. Jump_
Christina A. Jump
_Attorney for Defendants_

17