UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY BOIM, individually and as administrator of the estate of DAVID BOIM, deceased, and JOYCE BOIM, | ) ) ) ) | |
| | ) | Case No. 17-cv-3591 |
| Plaintiffs, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) ) | |
| AMERICAN MUSLIMS FOR PALESTINE, AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION, and RAFEEQ JABER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed their first amended complaint in December 2019 for declaratory relief under the Anti-Terrorism Act, 18 U.S.C. § 2333(d)(2). Before the Court are defendants' motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the Court grants defendants' motions and declines to exercise supplemental jurisdiction over plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3).

**Background**

In 1996, two Hamas agents killed plaintiffs Stanley and Joyce Boim's teenage son, David Boim, at a bus stop near Jerusalem. Four years later, the Boims, who are United States nationals living in Israel, filed a lawsuit in the Northern District of Illinois against individuals and organizations that were financing the designated terrorist organization Hamas under the Anti-Terrorism Act. In 2004, a jury awarded the Boims $156 million in damages. Since the Seventh Circuit affirmed the judgment, *see Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685 (7th Cir. 2008) (en banc), the Boims have attempted to collect from the defendants to the original lawsuit,

which included the Holy Land Foundation for Relief and Development ("HLF"),[1] the American Muslim Society ("AMS"), and AMS's alter ego the Islamic Association for Palestine ("IAP"). These entities are now defunct.

In May 2017, the Boims filed the present action seeking to enforce the Boim judgment against the alleged alter egos of HLF, AMS, and IAP, including defendants American Muslims for Palestine ("AMP") and Americans for Justice in Palestine Educational Foundation ("AJP"), along with individual defendant Rafeeq Jaber, in order to collect the remainder of the 2004 judgment. On August 18, 2017, the Court granted defendants' Rule 12(b)(1) motion to dismiss without prejudice for lack of subject matter jurisdiction. The Court presumes familiarity with this ruling. On reconsideration, the Court vacated its August 2017 order allowing limited jurisdictional discovery, after which the Boims filed a motion for leave to file a first amended complaint that the Court granted on December 13, 2019. The Boims filed their first amended complaint on December 17, 2019, and defendants' Rule 12(b)(1) motions followed.

**Legal Standard**

A Rule 12(b)(1) motion challenges federal jurisdiction, and the party invoking jurisdiction bears the burden of establishing the elements necessary for subject matter jurisdiction. *Taylor v. McCament,* 875 F.3d 849, 853 (7th Cir. 2017). Under Rule 12(b)(1), the "complaint's jurisdictional allegations are taken as true, though, unless the defendant offers evidence calling jurisdiction into question." *Amling v. Harrow Indus. LLC,* 943 F.3d 373, 376 (7th Cir. 2019). When "external facts call the court's jurisdiction into question," the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor,* 875 F.3d at 853 (citation and quotation marks omitted).

---

[1] The Court takes judicial notice that the United States Department of Treasury seized HLF's assets in December 2001.

**Discussion**

Every federal lawsuit, despite its relationship to an earlier lawsuit, requires its own independent basis for subject matter jurisdiction. *Peacock v. Thomas*, 516 U.S. 349, 355-56, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996); *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Boims seek to establish subject matter jurisdiction stemming from the civil liability provision of the Anti-Terrorism Act via alter ego liability usually employed in the context of ERISA litigation. *See Board of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000). "[A]lter-ego liability incorporate[s] a *scienter* component coupled with an analysis of similarities between the old and new entities." *McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 903 (7th Cir. 2018) (emphasis in original). More specifically, to establish alter ego liability, the Boims must show not only an unlawful motive to avoid liability, but also that the original defendants and the alleged alter egos have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership" with an emphasis on "common control." *Id.* (citation omitted); *see also Central States, Se. & Sw. Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1286 (7th Cir. 1996).

Because the parties conducted jurisdictional discovery, which included six depositions and numerous discovery requests propounded by plaintiffs, the question of subject matter jurisdiction is factual, not facial. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173. The Court therefore looks beyond the Boims' allegations and considers the evidence presented by the parties, including defendants' unrebutted declarations and the deposition testimony presented. *Apex Digital,* 572 F.3d at 443.

According to the declaration of Munjed Ahmad, one of the founders of defendants AMP and AJP, AMP was officially incorporated in 2006 and, in turn, established AJP in 2009. At the time of its formation, AMP stated its purpose as follows: "AMP is a not for profit membership based community association founded in North America working to provide non-partisan and non-sectarian educational, social and cultural programing to raise the American public's awareness of Palestine's rich heritage and diverse people." In general terms, Ahmad avers that AMP was created to educate its youth and community about Palestinian issues and culture. Further, Ahmad states that prior to the formation of AMP, he had discussions with Dr. Hatem Bazian, a professor at the University of California, Berkeley, who was another founder of AMP. Both Ahmad and Dr. Bazian were members of AMP's board at its inception. Ahmad asserts in his declaration that AMP and AJP are funded by voluntary donations made entirely within the United States and that they never received funds or assets from the original Boim defendants. He also states he was never involved with the original Boim defendants.

In his declaration, Ahmad also avers that defendant Rafeeq Jaber, who was president of IAP/AMS, was not involved in the creation of AMP or AJP, although Jaber's deposition testimony indicates that he worked for AMP/AJP as an accountant starting at 2015 and gave a speech at the first AMP convention in 2006. Another individual involved with IAP/AMS, Abdelbaset Hamayel, avers that he was not a founder nor on the board of AMP/AJP. Former IAP member, Osama Abuirshaid, similarly avers that he was not a founder of AMP/AJP, but sat on AMP's board in 2010 and AJP's board in 2016. Despite the Boims' allegations to the contrary, Abuirshaid also averred that he started an independent newspaper called Al Meezan in 2005, which was separate from the newspaper Al Zaytouna published by IAP. Abuirshaid testified at his deposition that he did not get involved with AMP/AJP earlier because he was applying for his citizenship and did not want to be targeted as an activist.

According to Dr. Bazian's deposition testimony, before his discussions with Ahmad, he had also wanted to develop a non-profit organization in the United States to promote Palestinian awareness. In a Yahoo! public group discussion concerning AMP's founding and transition, Dr. Bazian stated: "AMP's mission is accomplished through publishing books, organizing conferences, providing educational programs and resources for all ages, incomes and backgrounds." Dr. Bazian testified at his deposition that AMP's goals included impacting public opinion as to Palestinian issues. Also, Dr. Bazian testified that he was not a board member of the original defendants, that he was not involved in the 2000 Boim litigation, and that he did not have contact with the Boim defendants during the 2000 litigation. (*Id.* at 12, 37-38, 46-50.)

In response, the Boims do not present evidence that AMP and AJP and the defunct Boim defendants had substantial continuity in operations, common ownership, leadership, the same business purpose, or that there was a transfer of assets – nor do they set forth evidence of unlawful motive.[2] Instead, they offer speculative allegations. For example, the Boims take issue with Dr. Bazian stating, without citation to evidence, that he "fully subscribed to the Hamas line of total hostility to the mere existence of the State of Israel." The Boims attempt to portray Dr. Bazian as culpable based on his role as a Palestinian-American activist with extensive influence. They try to link him to the Boim defendants because he was a frequent speaker at Palestinian-American events, including IAP events. The basic fact that Dr. Bazian is a Palestinian-American intellectual and academic, who speaks at Palestinian-American events, does not establish that he was involved with the Boim defendants in any significant or legally relevant way.

The Boims further argue that they have "smoking gun" evidence that Ahmad and Dr. Bazian intended to conceal that AMP/AJP were "disguised continuations" of IAP. In doing so, they point

---

[2] Plaintiffs' argument concerning the transfer of intangible assets, such as good will, is distinguishable under these circumstances, especially because they have not rebutted defendants' evidence that the Boim litigation defendants were not involved in AMP/AJR's founding or that there was substantial overlap in leadership.

5

to a Yahoo! public bulletin board discussion about AMP's transition in which another AMP founder, Magdi Odeh, stated: "we really need to distance ourselves from any well-known IAP figures." Dr. Bazian agreed stating "we stay away from the IAP and not get them involved in this effort." That AMP's founders wanted to distance themselves from IAP is hardly a smoking gun, but rather supports the position that AMP is not an alter ego of IAP. Moreover, that former IAP members were mentioned in this public bulletin board discussion does not support the Boims' theory that they were founders or leaders of AMP/AJP.

The Boims also take issue with the fact that AMP holds conventions similar to IAP's past conventions. This assertion adds nothing to the Court's calculus without evidence that there was substantial continuity in operations or leadership between the two organizations – which the Boims have failed to provide. Thus, plaintiffs' statement that AMP's first convention in August 2006 was the "public resurrection" of IAP is not based on evidence. Meanwhile, plaintiffs' speculation that it is "obvious" AMP's leadership was populated with IAP and HLF veterans because AMP was successful ignores evidence that Dr. Bazian and Ahmad were connected to many individuals in the Palestinian-American community and that Dr. Bazian is a well-known Palestinian-American social justice activist. The Court refuses to infer that because Dr. Bazian and Ahmad support Palestinian issues they are somehow connected to Hamas, as plaintiffs suggest.

Next, the Boims assert that AMP/AJP flouted corporate formalities just like the defunct Boim defendants did. Whether the Boim defendants and the present defendants failed to respect corporate formalities is not relevant to the Court's analysis. To clarify, plaintiffs' argument relies on the common law alter ego theory that asks whether an existing entity is a mere instrumentality of another existing entity or individual, usually in the context of parent corporations and their subsidiaries. *A.L. Dougherty Real Estate Mgmt Co., LLC v. Su Chin Tsai*, 98 N.E.3d 504, 515, 420 Ill. Dec. 887, 898 (1st Dist. 2017). In Illinois, as in most jurisdictions, this theory is intertwined with the

concept of "piercing the corporate veil," which allow courts to disregard a corporate entity and attach liability to the controlling individual or entity. *See id.*; *Gillespie Community Unit School Dist. v. Union Pacific R. Co.,* 43 N.E.3d 1155, 1180, 398 Ill.Dec. 245, 270 (4th Dist. 2015) ("The veil is the metaphorical equivalent of the corporate form, and in some circumstances, fairness might move a court to pierce the veil and to impose liability on the actor behind the veil."). Here, the situation is not analogous to a parent/subsidiary situation for the simple fact that the Boim defendants were defunct before the formation of AMP and AJP. In short, there is nothing to pierce.

In the end, plaintiffs have not fulfilled their burden of establishing subject matter jurisdiction. They have failed to rebut the declarations and deposition testimony provided by AMP/AJP showing there was no continuity between the defunct Boim defendants and the present defendants. For example, plaintiffs have not shown that there was a transfer of assets, substantially identical management, an overlap in leadership, or the same business purpose. At best, plaintiffs have assembled bits and pieces of evidence that defendant Jabar worked for AMP/AJP as an accountant starting in 2015, Jabar had an office in the same southwest Chicago suburban area called "Little Palestine" as AMS, and that former defendant Abuirshaid sat on AMP's board in 2010 and AJP's board in 2016. Without more, plaintiffs have not overcome defendants' factual challenge to subject matter jurisdiction.

Plaintiffs also bring state law claims against defendant Jaber claiming he is an alter ego to the Boim defendants and that Jaber fraudulently concealed IAP's assets when he supervised the windup of IAP's affairs. Further, plaintiffs allege a state law successor liability claim against AMP/AJP. Plaintiffs maintain that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because these state law claims are part of the same case or controversy as plaintiffs' claim under the Anti-Terrorism Act. Even if plaintiffs are correct on that point, the Court does not have subject matter jurisdiction over plaintiffs' Anti-Terrorism Act claim. Thus, the Court, in its discretion,

7

declines to exercise its supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(c)(3). *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) ("there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice."). The Court therefore dismisses plaintiffs' state law claims without prejudice.

**Conclusion**

Based on the foregoing, the Court grants defendants' motion to dismiss for lack of subject matter jurisdiction and declines to exercise jurisdiction over plaintiffs' state law claims. [189, 197].

**IT IS SO ORDERED.**

Date: 10/20/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge