In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-3233

STANLEY BOIM, individually and as Administrator of the
ESTATE OF DAVID BOIM, and JOYCE BOIM,

*Plaintiffs-Appellants*,

*v.*

AMERICAN MUSLIMS FOR PALESTINE, *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-03591 — **Sharon Johnson Coleman**, *Judge*.

———————————

ARGUED MAY 27, 2021 — DECIDED AUGUST 16, 2021

———————————

Before KANNE, SCUDDER, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In 1996 David Boim was shot and
killed by Hamas terrorists while studying abroad in Israel.
His parents later sued several American nonprofit organiza-
tions for their role in funding Hamas and secured a $156 mil-
lion judgment under the federal Anti-Terrorism Act. Those or-
ganizations then shuttered, leaving Stanley and Joyce Boim
mostly empty handed. So in 2017 they filed a new lawsuit

against two different American entities and three individuals, alleging that these new defendants are alter egos of the now-defunct nonprofit organizations and therefore liable for the remainder of the $156 million judgment.

In the new lawsuit, the district court allowed limited jurisdictional discovery, decided the new entities and individuals were not alter egos of the defunct nonprofits, and then dismissed the action for lack of subject matter jurisdiction. This should not have happened, for the district court's finding on the alter ego question constituted a merits determination that went beyond a proper jurisdictional inquiry. Because the Boims' new lawsuit arises under the Anti-Terrorism Act, the district court possessed federal jurisdiction and should have allowed the case to proceed on the merits, consistent with the ordinary course of civil litigation. We therefore reverse and remand for renewed proceedings.

## I

### A

The tragic end to David Boim's life marked the beginning of a decades-long effort by his parents to hold those responsible to account. David, a 17-year-old American citizen, was studying in Israel when two Hamas terrorists shot him in the head at a bus stop near Jerusalem in 1996. David's parents responded by suing several United States-based organizations and individuals under the civil liability provision of the Anti-Terrorism Act. See 18 U.S.C. § 2333(a) (1992). This statute creates a federal cause of action by providing any United States national (or his estate, survivors, or heirs) with a right to sue in federal court and to recover treble damages for injuries resulting from an act of international terrorism. See *id.*

No. 20-3233                                                                 3

The Boims alleged that the defendant organizations and individuals fundraised for and funneled money to Hamas operatives in the West Bank and Gaza, who in turn used those funds to carry out the attack on David. In that way, the Boims contended, these entities provided material support or resources to terrorism and to a foreign terrorist organization in violation of 18 U.S.C. §§ 2339A and 2339B, and therefore were civilly liable under § 2333(a) for David's killing.

Although the murder occurred overseas, the Boims filed their action in federal court in Chicago because several of the organizational defendants maintained offices in the Northern District of Illinois. The case proceeded to summary judgment, and the district court determined that the evidence compelled a finding that three defendants were liable under § 2333(a): the Islamic Association for Palestine (which also went by the name American Muslim Society); Holy Land Foundation for Relief and Development; and one individual named Mohammed Abdul Hamid Khalil Salah. A jury convened to assess damages and returned an award for the Boims, holding the defendants jointly and severally liable for $52 million, which the district court then tripled to $156 million under the treble-damages clause Congress included in § 2333(a). The district court entered this judgment in December 2004.

On appeal, we affirmed the judgment against the Islamic Association but reversed as to Holy Land Foundation and Salah. See *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 701 (7th Cir. 2008) (*Boim III*) (en banc). On remand, the district court again found Holy Land jointly and severally liable under § 2333(a). See *Boim v. Quranic Literacy Inst.*, No. 00 C 2905, 2012 WL 13171764, at *9 (N.D. Ill. Aug. 31, 2012).

The Boims then turned their focus to enforcing the judgment—an effort that has spawned new litigation and its own jurisdictional complexity.

## B

The Boims have had little success collecting their $156 million judgment. Shortly after the district court entered the judgment in 2004, the Islamic Association and Holy Land Foundation claimed they no longer had any assets and announced they were closing. Less than a year later, a new organization named American Muslims for Palestine emerged and then incorporated in 2006. Some of the Islamic Association's former leaders migrated to positions at the new American Muslims for Palestine organization, and the new organization held its first convention in November 2006 at the same location and during the same time of year as the Islamic Association had done in the past. A few years later, American Muslims for Palestine's leaders formed a separate organization called Americans for Justice in Palestine Educational Foundation—but the two legal entities now operate as one and we refer to them jointly as American Muslims for Palestine for the purpose of this opinion.

The Boims—observing these developments and believing American Muslims for Palestine was a mere continuation of the Islamic Association under a new name—reacted with a renewed attempt in 2017 to collect their judgment. Their enforcement efforts progressed along two tracks.

First, the Boims resumed their post-judgment efforts in case no. 00-cv-2905—the original proceeding in which they received the $156 million judgment in the first instance. On May 12, 2017, the Boims filed several motions, including one under

Federal Rule of Civil Procedure 25(c) to join the new organization, American Muslims for Palestine (and its affiliate Americans for Justice in Palestine Educational Foundation), and three individuals as judgment debtors responsible for satisfying the $156 million judgment.

Second, on that same day, the Boims filed a new lawsuit in the Northern District of Illinois against American Muslims for Palestine (and its affiliate) and the same three individuals. It is this action—case no. 17-cv-3591—that is the focus of this appeal. The Boims aimed to prove that American Muslims for Palestine is merely a new name for the same terrorism funding enterprise that previously operated under the guise of the Islamic Association, its alternative name American Muslim Society, and Holy Land Foundation. As a result, the Boims contended, the new entity—American Muslims for Palestine—was liable under the Anti-Terrorism Act for the full amount of the prior $156 million judgment. Likewise, the Boims' new complaint alleged that three individuals were alter egos of the original defendant organizations and these individuals, too, participated in the terrorism-funding conduct leading to David's death.

Two weeks after resuming the litigation in the original proceeding and filing the new lawsuit, the Boims moved to consolidate the two cases before the same district judge. Before any consolidation occurred, however, the district judge presiding over the new lawsuit granted the defendants' motion to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. But a few months later, the same district court reconsidered its decision, vacated the dismissal, and permitted the Boims to conduct limited jurisdictional

discovery on the existence of an alter ego relationship be-
tween the new entity and the defunct ones.

After a year of jurisdictional discovery, the Boims filed an
amended complaint, narrowing the defendants to two: Amer-
ican Muslims for Palestine (with its affiliate Americans for
Justice in Palestine Educational Foundation) and an individ-
ual named Rafeeq Jaber. This amended complaint alleged at
length how the Islamic Association's leaders, including Jaber,
closed the Islamic Association in name only to avoid paying
the $156 million owed, plotted a transition to a purportedly
new entity, continued the old Islamic Association's activities
under the new name American Muslims for Palestine, and at-
tempted to disguise any connection between the defunct and
new organizations.

In their amended complaint, the Boims asserted that the
new American Muslims for Palestine is one and the same or-
ganization as the purportedly defunct Islamic Association
and Holy Land Foundation, just with a different name—in
other words, it is an alter ego of the original defendant organ-
izations. For that reason, the Boims contended, American
Muslims for Palestine is inherently and necessarily linked to
the underlying wrongdoing connected to David's death, and
therefore is liable under the Anti-Terrorism Act, 18 U.S.C.
§ 2333(a), and responsible for the unpaid portion of the $156
million judgment. For their part, American Muslims for Pal-
estine and Rafeeq Jaber dispute these allegations and main-
tain they have no relationship with the Islamic Association or
Holy Land.

The Boims' amended complaint raised two counts against
American Muslims for Palestine—one seeking a declaration
establishing alter ego identity and liability under the Anti-

No. 20-3233                                                    7

Terrorism Act for the unpaid judgment, and the other request-
ing the entry of a money judgment for the remainder of the
$156 million left unsatisfied. The Boims also raised two claims
against Rafeeq Jaber, who was responsible for winding up the
Islamic Association's affairs: first, that he fraudulently con-
cealed material facts regarding the Islamic Association's as-
sets, and second, that he was jointly liable for the $156 million
judgment under the doctrine of veil piercing or as an alter ego
of the original defendants.

C

The defendants moved to dismiss the amended complaint
for lack of subject matter jurisdiction under Rule 12(b)(1), and
once more, the district court granted the motion. Over the
Boims' objection, the district court reasoned that because it
had allowed jurisdictional discovery, the defendants' motion
to dismiss effectively constituted a challenge to the *factual* ba-
sis for subject matter jurisdiction. Accordingly, the district
court looked beyond the pleadings to the evidence submitted
by both parties to decide whether it possessed jurisdiction.
See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–
44 (7th Cir. 2009) (explaining factual challenges to jurisdic-
tion).

Focused on the Boims' alter ego argument, the district
court applied an ERISA-based test for alter ego liability and
found that, on balance, the facts showed that American Mus-
lims for Palestine and the original defendants were separate
and distinct entities. The district court then determined that
because the facts did not bear out the Boims' allegations of
alter ego status, it lacked subject matter jurisdiction over the
Boims' new lawsuit. From there the court declined to exercise
supplemental jurisdiction over the Boims' state law successor

liability claim against American Muslims for Palestine and the state law claims against Rafeeq Jaber. In the end, then, the district court dismissed the amended complaint in its entirety for lack of subject matter jurisdiction.

The Boims now appeal.

## II

The district court's assessment of subject matter jurisdiction reflected legal error.

### A

Because federal courts possess limited jurisdiction, and "[j]urisdiction is power to declare the law," the first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in short, that it has jurisdiction over the subject matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). Limits on a federal court's authority flow from both the Constitution and Congress. See *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Article III of the Constitution restricts a federal court's jurisdiction to resolving "Cases" and "Controversies." See U.S. Const. art. III, § 2; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (explaining the standing aspect of Article III's Case or Controversy requirement); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) (reminding that mootness, ripeness, and the political question doctrine also flow from the Case or Controversy requirement). Further, district courts can only exercise power if authorized by Congress, so each case in federal court must rest upon an independent statutory basis for federal jurisdiction. See *Exxon Mobil*, 545 U.S. at 552; see also *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) ("Congress'

No. 20-3233                                                    9

greater power to create lower federal courts includes its lesser power to 'limit the jurisdiction of those Courts.'" (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812))).

The latter requirement—the statutory basis for federal jurisdiction—is the focus of this appeal. Two statutes authorize a majority of cases in federal court: 28 U.S.C. § 1331, which grants jurisdiction over cases arising under federal law (so-called federal question jurisdiction), and 28 U.S.C. § 1332, which authorizes jurisdiction over cases between diverse parties involving more than $75,000 in controversy (so-called diversity jurisdiction). See *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). A third source of jurisdiction—supplemental or ancillary jurisdiction—also plays a role. Once a federal court acquires an independent basis for subject matter jurisdiction over a case (often pursuant to § 1331 or § 1332), the court can entertain certain claims or incidental proceedings that would not, on their own, suffice for federal jurisdiction. See *Peacock v. Thomas*, 516 U.S. 349, 355 (1996) ("Ancillary jurisdiction may extend to claims having a factual and logical dependence on 'the primary lawsuit,' but that primary lawsuit must contain an independent basis for federal jurisdiction." (citation omitted)).

The Supreme Court has long recognized that a federal court may exercise ancillary jurisdiction for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (citations omitted); see also *Root v. Woolworth*, 150 U.S. 401,

413 (1893). Congress codified much of the first category in the supplemental jurisdiction statute, 28 U.S.C. § 1367, while the latter category—at times called "ancillary enforcement jurisdiction"—remains grounded in federal common law. See *Peacock*, 516 U.S. at 354 n.5, 356; see also *Butt v. United Brotherhood of Carpenters & Joiners of Am.*, 999 F.3d 882, 886–87, 886 n.3 (3d Cir. 2021) (reviewing the history of pendent, ancillary, and ancillary enforcement jurisdiction); Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3523, 3523.2 (3d ed. 2021) (explaining the development of supplemental jurisdiction and that ancillary enforcement jurisdiction is still governed by common law).

B

A federal court must assure itself of subject matter jurisdiction in every case, even those that function to enforce a preexisting judgment. See, *e.g.*, *Peacock*, 516 U.S. 349. The jurisdictional analysis, however, plays out differently depending on the posture of the enforcement proceeding, as the following examples illustrate.

The most straightforward path for enforcing a judgment is a continuation of legal proceedings in the same court (and often before the same judge) that entered the judgment. Federal Rule of Civil Procedure 69 provides a mechanism for a court to enforce its own judgments, drawing upon state law for the procedures to govern such proceedings. See Fed. R. Civ. P. 69(a). As the Supreme Court observed in *Peacock*, these supplementary enforcement proceedings generally fall within a federal court's ancillary jurisdiction as part of its "inherent power to enforce its judgments." 516 U.S. at 356. The Boims themselves followed this path in 2017 when they filed motions in the original underlying proceeding (case no. 00-cv-

2905) to revive the $156 million judgment and to add American Muslims for Palestine as a judgment debtor. But the district court deferred any action on these motions, and those proceedings have since stalled.

The jurisdictional analysis takes on added complexity when the enforcement effort seeks to proceed in a new lawsuit. In some situations, for example, a prevailing litigant attempts to recover a money judgment from a new defendant, different from the one named in the judgment, by filing a separate lawsuit and arguing the new defendant is vicariously responsible for the preexisting judgment.

The Supreme Court addressed this scenario in *Peacock* and, on the theory of vicarious liability pursued there, held that the action did not belong in federal court. See 516 U.S. at 351. The plaintiff, Jack Thomas, secured a money judgment under ERISA against his former employer and later filed a new lawsuit to hold a corporate officer, D. Grant Peacock, vicariously liable for that judgment through the doctrine of veil piercing. See *id.* at 351–52.

At the outset, the Supreme Court determined Thomas's new lawsuit to impose vicarious liability did not rest on any federal cause of action supplied by Congress in ERISA. See *id.* at 353–54. The Court observed that no part of ERISA recognizes an action to impose vicarious liability on a third party through veil piercing, and although ERISA does provide a cause of action in 28 U.S.C. § 1132(a)(3) for direct liability—to redress violations of ERISA—Thomas's complaint did not raise any allegation that Peacock *himself* violated ERISA. See *id.* "Because Thomas alleged no 'underlying' violation of any provision of ERISA" in his complaint, the Court explained, § 1331 could not support federal jurisdiction. *Id.* at 354.

As for ancillary jurisdiction, the Court recognized that it had "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.* at 356. But the Court clarified that ancillary enforcement jurisdiction did not extend over "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. The district court therefore lacked jurisdiction over Thomas's new suit against Peacock as a new defendant. See *id.* at 360; see also *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 960–63 (7th Cir. 2021) (applying *Peacock* and concluding a district court lacked jurisdiction over a new lawsuit to impose an existing ERISA judgment against a new company under a theory of successor liability—another form of vicarious liability).

Not all efforts to enforce a preexisting judgment fall within *Peacock*'s ambit, though. Consider a third scenario in which a prevailing litigant attempts to recover a money judgment by suing an entity purported to be *one and the same* as—the alter ego of—the original judgment debtor. See *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emps. & Bartenders Int'l Union*, 417 U.S. 249, 259 n.5 (1974) (explaining that alter ego allegations assert that one entity "is in reality the same employer and is subject to all the legal and contractual obligations of" the other entity).

If Company *A* and Company *B*, though nominally two enterprises, are effectively a singular organization operating under two names, then *A* is directly responsible for *B*'s

obligations and wrongdoings because they are one and the same organization. See *id.*; *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000). But the mere fact that two entities are alter egos does not give rise to liability on its own—the underlying liability must arise from some source of substantive law, state or federal. See, *e.g.*, *McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 901 (7th Cir. 2018) (seeking to hold one company responsible for collective bargaining obligations as an alter ego of a defunct company through an ERISA cause of action). Here, the Boims seek in their amended complaint to hold American Muslims for Palestine liable for the $156 million judgment received in the original private action brought against the Islamic Association and Holy Land Foundation pursuant to § 2333(a) of the Anti-Terrorism Act.

We encountered a similar situation in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, where a fund obtained an ERISA judgment and then brought a new lawsuit against two entities, Central Transport and Central Cartage, alleged to be alter egos of the original judgment debtors. See 85 F.3d 1282, 1284 (7th Cir. 1996). Because the complaint alleged that Central Transport and Central Cartage exercised common control with the original defendants—and thereby "played a part in the initial ERISA violation"—we determined that the funds' second lawsuit brought a "specific claim for relief under ERISA." *Id.* at 1286; see also *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1035 (10th Cir. 2004) (explaining that "the distinctive feature of direct liability underpinning *Central States*' holding [is] that it turns on the alter ego's direct participation in the underlying violation"). As a result, we concluded the funds' claim— rooted in an alter ego theory of liability—arose under federal

law, meaning the district court possessed subject matter jurisdiction pursuant to § 1331. See *Cent. States*, 85 F.3d at 1286–87.

We adhered to analogous reasoning in *Elite Erectors*, where we determined that a complaint—by alleging that two defendants were alter egos of a third ERISA-covered employer—asserted they were all "the same entity" and therefore sought to hold the defendants "directly liable under federal law" for an ERISA violation. See 212 F.3d at 1037–38. For that reason, we concluded the plaintiffs invoked a federal cause of action under ERISA against the alter egos, satisfying § 1331 jurisdiction. See *id.* at 1038.

The Boims' lawsuit, then, is not our first encounter with these questions of jurisdiction. The Supreme Court's teachings and our own case law supply and define the framework necessary to review the district court's conclusion that it lacked subject matter jurisdiction over the Boims' new lawsuit and amended complaint. We know from *Peacock* that a federal court, after issuing a judgment, possesses ancillary jurisdiction over subsequent proceedings to enforce its own decrees. *Peacock* also provides the important reminder that each standalone case must have an independent basis for subject matter jurisdiction, because ancillary jurisdiction does not extend over new lawsuits to enforce an existing judgment against a party not already bound to that judgment. Finally, *Central States* and *Elite Erectors* tell us that a new lawsuit against an alleged alter ego can satisfy § 1331 when the new action arises under federal law—when it proceeds pursuant to a federal cause of action to hold the alter ego *directly* liable.

## C

Guided by these precedents, the proper jurisdictional analysis of the Boims' amended complaint comes into clearer focus.

The Boims seek to recover their existing $156 million judgment from entities they contend are one and the same as the original defendants. The Boims' current action, filed under a new case number and assigned to a different district judge, alleges that American Muslims for Palestine is an alter ego of the original defendants, Islamic Association for Palestine and Holy Land Foundation. They invoke the civil liability provision of the Anti-Terrorism Act, § 2333(a), which authorizes a private action against entities that provided material support to terrorism knowing the resources would be used to further the killing or attempted killing of an American citizen abroad. See *Boim III*, 549 F.3d at 691 (describing the elements for holding a terrorism donor liable under § 2333(a)). The Boims maintain that because these nominally distinct entities are in reality the same terrorism-funding organization, American Muslims for Palestine is liable under § 2333(a) for the unpaid judgment that resulted from Hamas's murder of their son David in 1996.

The Boims have satisfied the prerequisites for federal jurisdiction under Article III—they have standing to sue, there is a live dispute about whether American Muslims for Palestine is liable as an alter ego of the former entities, the issue is ripe for resolution, and the action presents a case arising under the laws of the United States—in particular, the Anti-Terrorism Act. See U.S. Const. art. III, § 2; *Susan B. Anthony List*, 573 U.S. at 157–58; *Verlinden B.V. v. Cent. Bank of*

*Nigeria*, 461 U.S. 480, 492–95 (1983) (explaining the broad meaning of "arising under" federal law as used in Article III).

The inquiry into the statutory basis for subject matter jurisdiction is more complex. The Boims purport to invoke federal question jurisdiction under 28 U.S.C. § 1331, and our analysis begins—and ends—with that contention.

Section 1331 confers federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has long instructed that a case arises under federal law "when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016); *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). At this threshold stage of litigation, it matters not whether the Boims' amended complaint states a meritorious claim on a federal cause of action. See *Steel Co.*, 523 U.S. at 89 ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."). All that matters for § 1331 jurisdiction is that the amended complaint "pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006); see also *Bell v. Hood*, 327 U.S. 678, 681 (1946) (instructing that courts, in assessing jurisdiction, "must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States").

The Boims' amended pleading satisfies these requirements. The complaint alleges that "AMP/AJP *is* IAP/AMS and HLF, but just has a different name." Am. Compl. ¶ 162. Right

to it, the Boims claim that American Muslims for Palestine, whom the parties refer to as AMP/AJP, is the alter ego of the original judgment debtors—Islamic Association for Palestine and Holy Land Foundation. If that assertion proves true on the merits, the necessary consequence is that American Muslims for Palestine is the same organization that provided material support to Hamas in connection with David Boim's death—meaning it is *directly* liable under the Anti-Terrorism Act. See *Elite Erectors*, 212 F.3d at 1038; *Cent. States*, 85 F.3d at 1286. The Boims make this point explicit in their amended complaint by contending that, "[a]s alter egos and/or successors of *Boim* Defendants IAP/AMS and HLF, AMP/AJP and Jaber are effectively the same entity or person as these *Boim* Defendants and are liable to Plaintiffs under 18 U.S.C. § 2333(a) for the unpaid portion of the *Boim* judgment." Am. Compl. ¶ 166.

We read the pleading to mean what it says. The Boims' amended complaint claims a right to recover from American Muslims of Palestine under the Anti-Terrorism Act, § 2333(a). And by resting their claim on a federal statute that itself supplies a cause of action, the Boims have brought a case "arising under" federal law within the meaning of 28 U.S.C. § 1331. See *Merrill Lynch*, 136 S. Ct. at 1569.

Recognize how the Boims' action differs from the situation in *Peacock*, where the plaintiff sought to hold a corporate officer vicariously liable by piercing the corporate veil under a statute that did not contain a cause of action for such vicarious liability. See 516 U.S. at 353–54. The Anti-Terrorism Act likewise does not appear to provide a cause of action for imposing vicarious liability. See *Boim III*, 549 F.3d at 691 (explaining

that a donor to terrorism must have provided material support to be liable under § 2333(a)).

But the Boims do not contend that this new defendant is only derivatively or vicariously liable for a predecessor's past violations, as was the case in *Peacock*. See also *Prather Plumbing & Heating*, 3 F.4th at 962–63; *Ellis*, 389 F.3d at 1034–36. To the contrary, the Boims allege that American Muslims for Palestine is just a new name for the same preexisting organization that provided material support to Hamas in furtherance of David Boim's death. Indeed, the amended complaint is replete with factual allegations that show, in the Boims' view, that American Muslims for Palestine is a disguised continuance of the Islamic Association and Holy Land Foundation, and in that way, American Muslims for Palestine played a role in the original wrongdoing that led to their son's murder at the hands of Hamas. See *Cent. States*, 85 F.3d at 1286 (concluding a complaint raised a specific claim for relief under federal law where it contained alter ego allegations linking the defendant to the underlying ERISA violation). Put another way, the Boims allege that American Muslims for Palestine is directly liable for providing material support leading to David's death—and the statutory cause of action in the Anti-Terrorism Act, § 2333(a), permits a suit to redress that harm.

We acknowledge that two features of the Boims' amended complaint complicate our analysis. First, the specific numbered counts against American Muslims for Palestine seek a declaratory judgment (Count I) and entry of a monetary judgment (Count III) without expressly citing the cause of action in § 2333(a). Second, the Boims are explicit about their goals, asserting that "this declaratory judgment action seeks to

enforce the *Boim* Judgment against AMP and AJP as alter egos and successors of the *Boim* Defendants." Am. Compl. ¶ 7.

But the observation that the precise counts do not expressly invoke § 2333(a) does not establish the absence of a claim arising under federal law. For one, each count explicitly incorporates the detailed factual allegations that precede its place in the amended complaint, including those claiming that American Muslims for Palestine is liable under § 2333(a) because it is one and the same entity as the Islamic Association and Holy Land Foundation. For another, "the great weight of authority makes it clear that a failure to name the particular statute, treaty, or provision of the Constitution under which the action arises is not fatal if the remainder of the complaint shows that a federal question actually is involved or relied upon by the pleader." Wright & Miller, *Federal Practice and Procedure* § 1209; see, *e.g., Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (summarily reversing a decision that required a complaint to expressly invoke 42 U.S.C. § 1983 and explaining that federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *AmSouth Bank v. Dale*, 386 F.3d 763, 779 (6th Cir. 2004) (collecting cases from various circuits following the same approach).

What is more, a viable pleading need only include a "short and plain statement of the claim showing that the pleader is entitled to relief," and district courts are to construe pleadings in the plaintiff's favor, affording the complaint a fair and reasonable construction "so as to do justice." Fed. R. Civ. P. 8(a), (e); see also *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("One objective of Rule 8 is to decide cases fairly on their merits, not to debate finer points of pleading where

No. 20-3233

opponents have fair notice of the claim or defense."). Given the comprehensive nature of the Boims' amended complaint, it does not require a fine-toothed comb to see that, in substance, the complaint advances a claim to impose liability on American Muslims for Palestine under § 2333(a) through the mechanism of a declaratory judgment action.

The opening pages of their amended complaint make expressly clear that the Boims "seek to impose liability on AMP, AJP and Rafeeq Jaber arising from the civil liability provisions of the [Anti-Terrorism Act]" by bringing an action pursuant to § 2333(a). Am. Compl. ¶ 11. The subsequent pages allege in depth the facts and events which, the Boims maintain, entitle them to damages under § 2333(a) from the new organization and Jaber as alter egos of the Islamic Association. A fair reading of the amended complaint, then, reveals that the Boims aim to hold American Muslims for Palestine liable under § 2333(a) by connecting the organization, as an alter ego of the Islamic Association, to the wrongdoing that led to the $156 million judgment. The district court seemed to read the complaint this same way, describing the Boims' action as one seeking relief under the Anti-Terrorism Act.

Remember, too, that the plaintiffs are the master of their complaint. See *Bell*, 327 U.S. at 681 ("[T]he party who brings a suit is master to decide what law he will rely upon, and … does determine whether he will bring a 'suit arising under' the … (Constitution or laws) of the United States by his declaration or bill." (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913))). The Boims have elected to pursue a federal claim to hold the new organization, American Muslims for Palestine, liable under the Anti-Terrorism Act as an alter ego of the Islamic Association and Holy Land

Foundation and therefore responsible in connection with Da-
vid's death. Whether the Boims can ultimately prove that
claim is of no consequence at this stage. All that matters is a
recognition that here, unlike the claim for veil piercing in *Pea-
cock*, the Boims' claim rests on a federal cause of action in
§ 2333(a) and therefore arises under federal law within the
meaning of 28 U.S.C. § 1331. Cf. *Peacock*, 516 U.S. at 353–54.
That is enough to confer federal subject matter jurisdiction on
the district court.

## D

The district court reached a contrary conclusion by con-
flating a merits inquiry—whether American Muslims for Pal-
estine is, in fact, the same entity as the Islamic Association or
Holy Land Foundation—with the question of federal jurisdic-
tion.

The Supreme Court has cautioned against deciding merits
questions when evaluating challenges to jurisdiction. See, *e.g.*,
*Steel Co.*, 523 U.S. at 89; *Bell*, 327 U.S. at 681–82. Jurisdiction,
the Court has emphasized, "is not defeated … by the possibil-
ity that the averments might fail to state a cause of action on
which petitioners could actually recover." *Bell*, 327 U.S. at 682;
see also *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d
479, 481 (7th Cir. 2019). To the contrary, "[w]hether the com-
plaint states a cause of action on which relief could be granted
is a question of law and just as issues of fact it must be decided
*after* and not before the court has assumed jurisdiction over
the controversy." *Bell*, 327 U.S. at 682 (emphasis added); see
also *Steel Co.*, 523 U.S. at 89 (reinforcing this principle);
*Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015)
(applying the *Bell* rule). This principle explains why we in-
structed in *Malak v. Associated Physicians, Inc.* that "where a

challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action," the district court should handle the objection "as a direct attack on the merits of plaintiff's case," applying the protections inherent to merits challenges under Rule 12(b)(6) or Rule 56. 784 F.2d 277, 279–80 (7th Cir. 1986).

The defendants here moved to dismiss the Boims' amended complaint by arguing that the evidence assembled during jurisdictional discovery did not support a finding that American Muslims for Palestine is an alter ego of the original judgment debtors. But this contention is an attack on the *merits* of the Boims' claim, not a challenge to the factual basis for the district court's constitutional and statutory authority to adjudicate the dispute. That is because the district court's jurisdiction did not hinge on a finding that American Muslims for Palestine is, *in fact*, an alter ego of the original defendants.

The district court saw things differently, construing the defendants' motion as a factual attack on subject matter jurisdiction. This mistake was not a mere trivial error in labeling the type of challenge. It had significant and detrimental consequences for the viability of the Boims' suit.

To begin, the district court permitted only limited jurisdictional discovery on the existence of an alter ego relationship. We cannot say the factual record was fully developed on the question.

Even more, the Boims did not receive the protections afforded to nonmoving parties when courts assess merits challenges via Rule 12(b)(6) or Rule 56—protections that do not apply in factual challenges to jurisdiction under Rule 12(b)(1). See *Apex Digital*, 572 F.3d at 444. Under Rule 12(b)(6), courts

must assume the truth of the allegations in the complaint, see *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), and on a motion for summary judgment under Rule 56, a court similarly must view the evidence and draw all inferences "in the light most favorable to the opposing party," *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)). By contrast, when considering a factual challenge to jurisdiction under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations." *Apex Digital*, 572 F.3d at 444 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The district court, analyzing what it deemed a factual attack on jurisdiction, assessed the merits of the Boims' action but failed to presume the truth of the allegations or take the facts in the light most favorable to the Boims. And our review shows that the district court's error contributed to, if not accounted for, the unfavorable ruling against the Boims.

One example illustrates the point in stark terms. The Boims alleged and proffered evidence that, by late 2005, a group of individuals began using an online Yahoo! bulletin board titled "AMP_Transition" to discuss the formation of the new organization, making comments such as "we really need to distance ourselves from any well known IAP figures … [s]ince this is the transition period." Am. Compl. ¶¶ 67, 69. The Boims highlighted this particular post to show that the new organization's founders intentionally and deceptively concealed that American Muslims for Palestine, the new entity, was a continuation of the old Islamic Association. In the district court's view, however, this evidence showed that the new entity's founders made legitimate efforts to distinguish themselves from the Islamic Association, which the court

considered to be proof that American Muslims for Palestine is *not* an alter ego of the Islamic Association.

If the district court had applied the requisite presumptions under Rule 12(b)(6) or Rule 56, it would have been compelled to view the facts and make inferences from this evidence in the Boims' favor. Here, that would mean viewing the bulletin board posting as evidence showing fraudulent intent to avoid liability—one factor supporting alter ego liability, not negating it. See *Cent. States*, 85 F.3d at 1288 (explaining that, at least in the ERISA context, "[e]ssential to the application of the alter-ego doctrine is a finding of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as a sham transfer of assets"); see also *McCleskey*, 897 F.3d at 903 (same).

Dismissals on the pleadings "should be granted sparingly and with caution to make certain that the plaintiff is not improperly denied a right to have his claim adjudicated on the merits." Wright & Miller, *Federal Practice and Procedure* § 1349. The liberal pleading standard in Rule 8 and the presumptions accorded to nonmovants on dispositive motions should have played a role in the district court's consideration of the merits of the Boims' alter ego allegations. See *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Our point with all of this is to say that the district court committed legal error when terminating the Boims' new case on jurisdictional grounds.

No. 20-3233                                                   25

### III

### A

Because we conclude the district court possessed federal jurisdiction under § 1331 and erred in dismissing the Boims' amended complaint, we remand for further proceedings. The Boims are entitled to have their claim—that American Muslims for Palestine, as an alter ego of the Islamic Association and Holy Land Foundation, is liable under § 2333(a)—proceed to adjudication on the merits, and that warrants a few words on the legal standard.

In analyzing the Boims' alter ego allegations, the district court applied a test from the ERISA context for establishing alter ego liability. See *McCleskey*, 897 F.3d at 903. In so doing, the district court considered factors traditionally used to determine if an employer has flouted its obligations under collective bargaining agreements through a sham change in its corporate form—factors like whether the companies have overlapping management, ownership, assets, business purpose, equipment, and customers. See *id.*

But the alter ego doctrine is not rigid and must account for the context in which the doctrine is being applied—here, to terrorism financing organizations. Cf. *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 157 (D.C. Cir. 2004) (flexibly applying the alias concept in the terrorism context to an entity designated as the alias of a foreign terrorist organization). Not all of the alter ego factors relevant in the employee benefit plan context will be probative. It is difficult, for instance, to see how substantial similarity (or lack thereof) in customers, equipment, or ownership would have any meaningful bearing on the alter ego inquiry in the context of

terrorism financing nonprofit organizations, which do not
have customers, equipment, or owners in the traditional cor-
porate sense. Factors like overlap in leadership, same organi-
zational purpose, similarity of operations, and unlawful mo-
tive or intent to escape liability would seem to take on added
weight, as could other factors that have not expressly played
a role in assessing alter ego liability in the labor law context.
The district court, aided by the parties' briefing, is best
equipped to discern the apt analysis for alter ego status in this
context.

The Boims' amended complaint alleged in the alternative
that American Muslims for Palestine was liable under the
doctrine of successor liability and also included two claims
against Rafeeq Jaber—one asserting he is liable for the $156
million judgment either under the doctrine of veil piercing or
as an alter ego of the original defendants, and the other
presenting a state law claim of fraudulent concealment. The
district court declined to exercise supplemental jurisdiction
over these claims. Our conclusion—that the district court
indeed possessed an independent basis for subject matter
jurisdiction—necessitates a fresh look by the district court at
these additional claims as well.

B

The action we reinstate today is only one of two tracks the
Boims pursued to hold American Muslims for Palestine to ac-
count as an alter ego, the other being the resumption of efforts
in the original proceeding that resulted in the $156 million
judgment—case no. 00-cv-2905. As long as federal jurisdiction
lies in each proceeding, both may properly remain in federal
court.

No. 20-3233                                                          27

We have concluded the district court possesses jurisdiction pursuant to 28 U.S.C. § 1331 over the Boims' new lawsuit in case no. 17-cv-3591 because the amended complaint invokes a federal cause of action under the Anti-Terrorism Act and thus arises under federal law. Regarding the judgment enforcement proceedings in the original action, the Supreme Court in *Peacock* expressly instructed that it is a proper use of a court's "ancillary enforcement jurisdiction" to bring subsequent proceedings in the same case, even against third parties, "to assist in the protection and enforcement of federal judgments." 516 U.S. at 356.

On remand, the district court may use its discretion to permit the Boims to file an amended pleading to sharpen their allegations in light of our decision. The Boims are likewise free, if they choose, to resume proceedings before the original trial court and move to consolidate the two proceedings before the same district court judge.

For these reasons, we REVERSE and REMAND.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit