**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Sharon Johnson Coleman |
| AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, | **Telephone hearing set for December 6, 2021 at 9:15 a.m.** |
| Defendants. | |

**DEFENDANT AMP/AJP'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Dated this 27th day of October, 2021.

/s/ Christina Jump
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Alyssa F. Morrison
Texas Bar. No. 24110135
*Admitted Pro Hac Vice*
Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................... iii

**I. INTRODUCTION** .................... 1

**II. BACKGROUND** .................... 1

**A. Relevant Factual Background and Plaintiffs' Allegations** .................... 1

*1. The Original* Boim *Litigation* .................... 2

*2. AMP and AJP Begin in 2006 and 2009* .................... 2

**B. Procedural Background** .................... 4

**III. LEGAL STANDARD** .................... 4

**IV. ARGUMENT** .................... 5

**A. Plaintiffs' Alter Ego/Veil Piercing Claims Fail as a Matter of Law** .................... *5*

*1. No unity of interest exists between the two sets of entities* .................... 7

a. Lack of Overlap in Leadership .................... 7

b. No Corporate Formalities Overlap Between the Liable Entities and These Defendants .................... 8

c. No Relevant Overlap Exists in Business Operation, Purpose or Intangible Assets.... 9

d. No Intent Exists to Avoid Liability .................... 11

*2. The nonprofit cases identified by Plaintiffs do not support their claims* .................... 12

**B. Plaintiffs' Successor Liability Claims Fail as a Matter of Law** .................... 13

**V. CONCLUSION** .................... 15

**CERTIFICATE OF SERVICE** .................... 16

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 4

**Circuit Court Cases**

*Baxter by Baxter v. Vigo Cty. Sch. Corp.*
26 F.3d 728 (7th Cir. 1994) .......... 4

*Boim v. Am. Muslims for Palestine*
2021 U.S. App. LEXIS 24373 (7th Cir. Aug. 16, 2021) .......... 6

*Boim v. Holy Land Foundation for Relief & Development*
549 F.3d 685 (7th Cir. 2008) .......... 2

*Central States, Southwest & Southwest Areas Pension Fund v. Central Transp.*
85 F.3d 1282 (7th Cir. 1996) .......... 9

*Esmark Inc. v. N.L.R.B.*
887 F.2d 739 (7th Cir. 1989) .......... 6

*Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*
884 F.3d 770 (7th Cir. 2018) .......... 10, 13

*Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*
831 F.2d 1309 (7th Cir. 1987) .......... 6, 11, 13

*Morgan v. Bank of Waukegan*
804 F.2d 970 (7th Cir. 1986) .......... 5

*Tierney v. Vahle*
304 F.3d 734 (7th Cir. 2002) .......... 2, 5, 10

*Travis v. Harris Corp.*
565 F.2d 443 (7th Cir. 1977) .......... 14

*Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*
995 F.2d 785 (7th Cir. 1993) .......... 6

*Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*
920 F.2d 1323 (7th Cir. 1990) .......... 13

*Wachovia Secs., LLC v. Banco Panamericano, Inc.*
674 F.3d 743 (7th Cir. 2012) .......... 5

*Wellness Int'l Network, Ltd. v. Sharif*
727 F.3d 751 (7th Cir. 2013) .................................................. 5, 6

**District Court Cases**

*Addison Automatics, Inc. v. RTC Group*
2013 U.S. Dist. LEXIS 99448 (N.D. Ill. July 16, 2013) .................................................. 5

*Brown v. Skyline Mfg.*
2017 U.S. Dist. LEXIS 90008 (N.D. Ill. June 12, 2017) .................................................. 6

*Chi. Dist. Council of Carpenters Pension Fund v. Vacala Masonry, Inc.*
946 F. Supp. 612 (N.D. Ill. 1996) .................................................. 13

*Dimmitt & Owens Fin., Inc. v. Superior Sports Prods.*
196 F. Supp. 2d 731 (N.D. Ill. 2002) .................................................. 6

*Fieldturf Int'l, Inc. v. Triexe Mgmt. Grp. Inc.*
2004 U.S. Dist. LEXIS 6676 (N.D. Ill. Apr. 14, 2004) .................................................. 8

*Free Green Can, LLC v. Green Recycling Enters.,* LLC
2011 U.S. Dist. LEXIS 125399 (N.D. Ill. Oct. 27, 2011) .................................................. 5

*Friedman v. Leading Edge Recovery Solutions, LLC*
2014 U.S. Dist. LEXIS 58694 (N.D. Ill. April 28, 2014) .................................................. 4

*Hankinson v. King*
117 F. Supp. 3d 1068 (D. Minn. 2015) .................................................. 12

*Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Tr. Fund*
2019 U.S. Dist. LEXIS 17794 (N.D. Ill. Feb. 5, 2019) .................................................. 13

*Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*
2000 U.S. Dist. LEXIS 6936 (N.D. Ill. May 17, 2000) .................................................. 10

*Linde v. Arab Bank, PLC*
97 F. Supp. 3d 287 (E.D.N.Y. 2015) .................................................. 12, 13

*MAC Funding Corp. v. MNdustries, Inc.*
2018 U.S. Dist. LEXIS 74149 (N.D. Ill. May 2, 2018) .................................................. 5

*Simpson v. Saggezza, Inc.*
2018 U.S. Dist. LEXIS 133740 (N.D. Ill. Aug. 8, 2018) .................................................. 4

*Strauss v. Credit Lyonnais, S.A.*
925 F. Supp. 2d 414 (E.D.N.Y. 2013) .................................................. 12, 13

**State Court Cases**

*A.L. Dougherty Real Est. Mgmt. Co., LLC v. Su Chin Tsai*
2017 IL App (1st) 16149, 98 N.E.3d 504 (Ill. App. Ct. 2017) .................................................. 8

*Macaluso v. Jenkins*
95 Ill. App. 3d 46, 420 N.E.2d 251 (1981) .................................................................... 12

*Ring v. The Elizabeth Found. for the Arts*
2014 N.Y. Misc. LEXIS 5879 (N.Y. Sup. Nov. 12, 2014) ...................................................... 12

**Statutes**

18 U.S.C. § 2333(a) ..................................................................................... 1, 11, 12

**Rules**

FED. R. CIV. P. 12(b)(1) ..................................................................................... 4

FED. R. CIV. P. 12(b)(6)..................................................................................... 1, 2, 4, 5, 15

FED. R. CIV. P. 12(d) ..................................................................................... 5

FED. R. CIV. P. 56..................................................................................... 5

## I. INTRODUCTION

Defendants American Muslims for Palestine ("AMP") and Americans for Justice in Palestine Educational Foundation ("AJP") (together, "Entity Defendants") file this Motion to Dismiss the claims brought in Plaintiffs' First Amended Complaint (Dkt. 179, hereinafter Plaintiffs' "1AC"). Plaintiffs seek a declaration that AMP and AJP are the alter egos/successors of the Holy Land Foundation for Relief and Development ("HLF"), the American Muslim Society ("AMS"), and the Islamic Association for Palestine ("IAP") (together, the "original *Boim* defendants"), and that they are therefore liable to Plaintiffs for the unpaid original *Boim* judgment obtained pursuant to the civil liability provisions of the Anti-Terrorism Act ("ATA"). Dkt. 179 at ¶ 170. Even construing the allegations in the Complaint in the Plaintiffs' favor, Plaintiffs fail to allege sufficient facts to survive dismissal under any applicable test.[1]

## II. BACKGROUND

### A. Relevant Factual Background and Plaintiffs' Allegations

Plaintiffs initiated this action in 2017, seeking to hold Defendants liable for a 2004 judgment obtained against wholly separate, long-defunct entities under alter ego and/or successor liability theories. *See generally* Dkt. 179. In light of the extended procedural posture of this case, Defendants recognize this Court's familiarity with the underlying facts and proceed with only a brief summary of the background relevant to the claims presently before it. Although 67 pages in length, Plaintiffs' 1AC remains largely bereft of allegations sufficient to plead alter ego liability; in the interest of brevity and this Court's time, Defendants decline to respond to each extraneous, gratuitous, inflammatory or unsupported statement contained therein.[2]

---

[1] Defendant Rafeeq Jaber files his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) simultaneously with this Motion; all facts and analysis contained therein are incorporated by reference here, to the extent relevant.

[2] Plaintiffs' 1AC consists of a chaotic web of allegations about numerous oranizations and individuals not

*1. The Original* Boim *Litigation*

In 1996, Plaintiffs Stanley and Joyce Boim's son David was murdered in Jerusalem by agents of Hamas. Four years after their loss, the Boims filed suit seeking to impose ATA liability on certain U.S.-based individuals and organizations, which they alleged provided funding to Hamas. Dkt. 179 at ¶ 1-2. In 2004, a jury found in their favor, holding HLF, IAP and AMS civilly liable. *Id.* at ¶ 42. The Boims received a judgment of $156 million in damages.[3] In 2005, following entry of that judgment, Plaintiffs issued citations to discover assets of those original *Boim* defendants. *Id.* at ¶ 53. However, following the strain of litigation, those entities became defunct. The Boim family collected only a fraction of its judgment. *Id.* at ¶¶ 53-54, 57.

*2. AMP and AJP Begin in 2006 and 2009*

In 2005, five years after the original *Boim* lawsuit began and over a year after that verdict, a young Wisconsin attorney named Munjed Ahmad sought to create an education-based nonprofit organization with the purpose of educating youth in America about Palestine and its history. *Id.* at ¶ 62. He was not aware of any organization in existence at the time that filled this goal. *Id.*[4] Later, Mr. Ahmad met Dr. Hatem Bazian, a professor at the University of California, Berkeley and a prominent advocate for Palestinian rights. *Id*. Mr. Ahmad and Dr. Bazian together founded AMP, which incorporated in California in August 2006. *Id* at ¶¶ 61, 74.[5] Neither Mr. Ahmad nor Dr.

named in this lawsuit, and *many* unsubstantiated conclusory allegations. Defendants parse out the legally relevant allegations from the 1AC to address here. Defendants are mindful that addressing every statement contained in Plaintiffs' 1AC would require an inordinate amount of briefing, thereby burdening this Court with considerations which have no bearing on the relevant analyses. However, should this Court request further briefing on any points not addressed here, Defendants will gladly oblige.

[3] The Seventh Circuit primarily affirmed the judgment in *Boim v. Holy Land Foundation for Relief & Development,* 549 F.3d 685 (7th Cir. 2008) (*en banc*), vacating only the judgment against an individual defendant.

[4] The additional record references here are undisputed, accepted in the course of this case as authentic, and relate to testimony directly and repeatedly referenced in Plaintiffs' 1AC. Therefore, they are appropriate to consider in evaluating this Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

[5] Plaintiffs assert that in 2008 Defendants moved their national office "down the street from the former

Bazian had leadership roles with any original *Boim* defendants, nor were they involved in that litigation. *Id.* at 29. Plaintiffs do not allege that AMP conducted any activities prior to incorporating. Plaintiffs further do not dispute that they conducted discovery to locate assets of the original *Boim* defendants prior to AMP's incorporation. In 2009, these same two individuals led the formation of the charitable organization AJP. *Id.* at ¶ 152. AMP and AJP are now one entity. *Id.* at ¶ 73. AMP held its first official event, a convention, in November 2006. *Id.* at ¶ 91.

Missing from Plaintiffs' 1AC are any allegations that a single tangible asset, financial or otherwise, changed hands from the original *Boim* defendants to the Entity Defendants. That absence exists because Plaintiffs cannot demonstrate those facts. *Id.* at ¶ 53-54. Instead, Plaintiffs cobble together a patchwork of organizational "similarities" they purport represent the original *Boim* defendants' "critical assets." *Id.* at ¶ 74. Plaintiffs allege the Entity Defendants inherited "largely the same core leadership as IAP/AMS[,]" that they serve "the same function and purpose;" hold similar conventions with some of the same speakers; operate a "similar 'chapter' structure in similar geographic locations;" and continue to "espouse Hamas' ideology and political positions" facilitating fundraising for groups that "funnel money to Hamas." *Id.* at ¶ 5. When stripped of its speculation and conclusions, Plaintiffs' 1AC alleges only that Entity Defendants are also nonprofit organizations run by prominent Palestinians, who advocate for Palestinian issues and education, hold conventions and engage in fundraising from within the general American Palestinian community. Viewing all allegations favorably to Plaintiffs, they fail to allege the continuity, control, or sameness of identity needed for claims of alter ego/successor liability.

offices of AMS/IAP and former IAP president … Rafeeq Jaber." Dkt. 179 at ¶ 72. First, "down the street" is not the same as using the same space as a purported predecessor organization. Second, the area of Illinois identified is frequently referred to as "Little Palestine" because of its dense Palestinian community. Finally, Plaintiffs recognize that this move did not occur until two years after the incorporation of AMP, which began with its principle office in California for proximity to founder Dr. Hatem Bazian.

B. Procedural Background

Plaintiffs filed their Original Complaint on May 12, 2017. *See generally* Dkt. 1. This Court granted Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) in August 2017, finding that Plaintiffs' assertions "would create a false inference that no legitimate humanitarian organization could ever be created with that mission" and that "[i]n their effort to find a collectible defendant and to prevent their previous victory from being a pyrrhic one, plaintiffs are painting with overly broad strokes here." Dkt. 41 at 8, 10. This Court then granted Plaintiffs' Motion for Reconsideration, allowing limited jurisdictional discovery. Dkt. 50. Plaintiffs next filed their 1AC, reviving their alter ego/successor claims against AMP/AJP and Rafeeq Jaber while adding veil-piercing allegations and a fraudulent concealment claim against Defendant Jaber. This Court again dismissed the case on jurisdictional grounds. Dkts. 179, 215. Plaintiffs appealed to the Seventh Circuit, which remanded after finding federal jurisdiction existed. Defendants now file their Motion to Dismiss Plaintiffs' 1AC under Fed. R. Civ. P. 12(b)(6).

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of [a] complaint." *Friedman v. Leading Edge Recovery Solutions, LLC*, No. 13-cv-9034, 2014 U.S. Dist. LEXIS 58694, at *4 (N.D. Ill. April 28, 2014) (Coleman, J.). In order for a plaintiff "[t]o survive a motion to dismiss, … a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face and raising the right to relief above speculation." *Simpson v. Saggezza, Inc.*, No. 17-cv-04165, 2018 U.S. Dist. LEXIS 133740, at *7 (N.D. Ill. Aug. 8, 2018) (Coleman, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While accepting factual allegations as true, courts are "not compelled to accept … conclusory allegations concerning the legal effect of facts set out in the complaint." *Baxter by Baxter v. Vigo Cty. Sch. Corp.,* 26 F.3d 728, 730 (7th Cir.

1994). A complaint shall "be dismissed for failure to state a claim" when it "is clear that no relief could be granted under any set of facts that could be proved to be consistent with plaintiffs' allegations." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986). In analyzing complaints under these standards, the "reviewing court [must] draw on its judicial experience and common sense." *Addison Automatics, Inc. v. RTC Group*, 2013 U.S. Dist. LEXIS 99448, at *5 (N.D. Ill. July 16, 2013) (quoting *Iqbal*, 556 U.S. at 679).[6]

## IV. ARGUMENT

### A. Plaintiffs' Alter Ego/Veil Piercing Claims Fail as a Matter of Law

Plaintiffs' asserted claims against AMP/AJP fail as a matter of law. Alter ego and veil piercing are equitable doctrines, used sparingly in circumstances where there is such unity in identity between two entities that permitting an entity to hide behind its separate corporate form perpetuates injustice. *See Wellness Int'l Network, Ltd. v. Sharif,* 727 F.3d 751, 774 (7th Cir. 2013). As a general rule, "[c]ourts are reluctant to pierce the corporate veil and will only do so where: (1) there is such a unity of interest and ownership that separate personalities of the corporation and the individual no longer exist; and (2) where adherence to the fiction of separate corporate existence would promote injustice or inequity." *Free Green Can, LLC v. Green Recycling Enters.,* LLC, No. 10-cv-5764, 2011 U.S. Dist. LEXIS 125399, at *21-22 (N.D. Ill. Oct. 27, 2011) (Coleman, J.); *see also Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012); *MAC Funding Corp. v. MNdustries, Inc.*, No. 17-cv-6470, 2018 U.S. Dist. LEXIS 74149, at *6 (N.D. Ill. May 2, 2018) (Coleman, J.).

---

[6] Normally if, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Seventh Circuit observes an exception permitting courts to examine documents attached to a motion to dismiss if they are "referred to in the complaint," "central to the plaintiff's claim," and "concededly authentic." *Tierney,* 304 F.3d at 738.

Alter ego liability requires a highly fact-intensive inquiry that "depends on the circumstances in each case," with no single dispositive factor. *Wellness Int'l Network, Ltd.,* 727 F.3d at 774. Application of the doctrine allows a degree of flexibility; however, "[a]lter ego relationships generally exist where businesses share management, business purpose, operations, equipment, supervision and ownership." *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods.,* 196 F. Supp. 2d 731, 741 (N.D. Ill. 2002). In "assessing whether a unity of interest exists[,]" Illinois courts consider "inadequate capitalization, failure to issue stock, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, nonfunctioning of the other officers or directors, absence of corporate records, commingling of funds, diversion of assets, failure to maintain arm's length relationships among related entities and whether the corporation serves as a façade for the operation of the dominant stockholder." *Brown v. Skyline Mfg.,* No. 17-cv-1244, 2017 U.S. Dist. LEXIS 90008, at *6-8 (N.D. Ill. June 12, 2017); *see also Boim v. Am. Muslims for Palestine,* No. 20-3233, 2021 U.S. App. LEXIS 24373, at *33 (7th Cir. Aug. 16, 2021) (recognizing "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability" as relevant factors for alter ego analyses).

The crux of every alter ego analysis in this Circuit turns on intent or motive to act in a fraudulent or abusive manner, and sufficient unity between the two corporations to justify setting aside their formal separateness. *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 788-89 (7th Cir. 1993); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987). Plaintiffs must allege that the corporations "were in effect a single entity," established through broad practice, and not simply a single allegedly unfair transaction. *Esmark Inc. v.*

*N.L.R.B.*, 887 F.2d 739, 754 (7th Cir. 1989). The allegations by Plaintiffs do not satisfy this or any recognized alter ego standard.

*1. No unity of interest exists between the two sets of entities*

The original *Boim* judgment occurred in 2004. AMP incorporated in August 2006. Dkt. 179 at ¶ 72. AJP incorporated in 2009. *Id*. at ¶ 61. AMP and AJP's founding leadership held no leadership roles within the original *Boim* defendants. Not a single dollar, tangible asset, piece of business equipment or identified intangible asset passed from the original *Boim* defendants to Entity Defendants, nor do Plaintiffs assert facts that it did.

**a. Lack of Overlap in Leadership**

Plaintiffs' allegations undermine their own conclusions that the directors and leaders of IAP/AMS and AMP/AJP overlap. Plaintiffs' 1AC acknowledges that AMP's founders never held leadership roles with any original *Boim* defendant. Dkt. 179 at p. 29 (*see* chart). Of the thirteen IAP/AMS board members identified in the 1AC, Plaintiffs concede that eight had no involvement with AMP/AJP, and two others (Jaber and Mustapha) supported AMP but took no leadership roles. *Id.* at ¶¶ 81-83. Plaintiffs only directly connect three of these thirteen IAP/AMS Board members to AMP/AJP: Osama Abuirshaid, Abdelbaset Hamayel, and Sufian Nabhan. *Id*. at p. 29 (*see* chart). None of these individuals played any role in forming AMP or AJP.[7] While Plaintiffs name many other individuals in their 1AC, their allegations do not show continuity of leadership or control among the entities. Merely stating that members of the Palestinian community spoke at or engaged with both sets of entities' events does not show continuity of control.[8]

---

[7] *Id.* at ¶¶ 121, 125, 141 (explaining that Abuirshaid "declined at that time" to even consider becoming involved in the new entity which became AMP; that Hamayel did not join the AMP Board until 2009; and "Nabhan … joined the initial AMP board in 2009)."

[8] In an attempt to bolster their allegations, Plaintiffs draw factually unsupported conclusions. For example, IAP board member Imad Sarsour has no involvement with AMP/AJP, so Plaintiffs conclude instead that his brother, an eventual AMP board member, "took the Sarsour family board spot[.]" Dkt. 179 at ¶ 81. No

**b. No Corporate Formalities Overlap Between the Liable Entities and These Defendants**

Plaintiffs' argument that this Court should set aside corporate formalities because Entity Defendants failed to keep good records misunderstands the law. Dkt. 179 at ¶¶ 152-155. In the context of veil piercing, a failure to respect corporate formalities between two entities may demonstrate that they are alter egos of each other. *See A.L. Dougherty Real Est. Mgmt. Co., LLC v. Su Chin Tsai,* 2017 IL App (1st) 16149, 98 N.E.3d 504 (Ill. App. Ct. 2017). When one organization is under-insured or under-capitalized, bank accounts are commingled, and identical leadership and equipment exist, courts may find those factors indicate that one entity was never meant to function separately, but merely exists as a corporate shield for the true operator. *See Fieldturf Int'l, Inc. v. Triexe Mgmt. Grp. Inc.,* No. 03 C 3512, 2004 U.S. Dist. LEXIS 6676, at *15-16 (N.D. Ill. Apr. 14, 2004) (explaining that courts look at factors such as "inadequate capitalization...; failure to observe corporate formalities...; insolvency of the debtor corporation; nonfunctioning of other...directors; absence of corporate records; [and] commingling of funds"). While a failure of AMP and AJP to maintain corporate formalities between AMP and AJP may make them alter egos of <u>each other</u>, it does not make them alter egos of wholly separate organizations.[9] Plaintiffs do not allege that AMP/AJP ever commingled accounts with IAP/AMS, shared its contemporaneous leadership, or used its equipment. The fact that Entity Defendants may be poor bookkeepers does not render them sham corporations for the unrelated original *Boim*

such "family spot" exists outside of Plaintiffs' speculation. Plaintiffs similarly imply that any individuals' affiliation with the original *Boim* defendants, even outside of leadership, supports their alter ego claim. But this falls far short of what the law requires. The law does not prohibit involvement in multiple organizations that advocate on behalf of the same people. The law instead prohibits individuals in leadership positions from running a functionally unified entity while hiding behind a corporate shield. Plaintiffs do not allege that this happened here, nor can they. It simply did not.

[9] The same was true of IAP's affiliated organization AMS, which the Seventh Circuit found to be IAP's alter ego. Dkt. 179 at ¶¶ 32, 48.

defendants; it just means that these nonprofits, like many others, endured a learning curve on corporate record-keeping during their early years.

**c. No Relevant Overlap Exists in Business Operation, Purpose or Intangible Assets**

Plaintiffs' 1AC concludes that AMP "is in fact continuing the full program and mission of AMS/IAP and HLF: to act as the major supporter of Hamas and its ideology and political agenda" by running "conventions and conferences directed to the identical audiences of the events run by the IAP/AMS organization, with … largely the same organizers, speakers and agenda; publishing Hamas propaganda on social media; [and] organizing and promoting fund raising for political activists … that direct money to Hamas-supervised and controlled entities in Gaza." Dkt. 179 at ¶ 95. Plaintiffs' assertions constitute speculative conclusions, and ask this Court to find what the U.S. government never has: that Entity Defendants' business purpose is to act as financiers of terrorism. This request is wholly inappropriate and egregiously inaccurate. Without belaboring the point, Plaintiffs do not make any assertions that Entity Defendants distribute any funds overseas, let alone to terrorist organizations. Rather, Plaintiffs assert that "at its annual conventions, AMP sets aside space for … vendors and organizations that are also event sponsors" including "Baitulmaal, Zakat Foundation, Islamic Relief and United Muslim Relief," and that *these* organizations "raise funds at AMP conventions to send overseas." *Id.* at ¶ 100. As this Court knows, the question before it is not whether Entity Defendants finance terrorism (they do not), but whether they constitute the alter egos of the original *Boim* defendants. Plaintiffs attempt to bridge the gaps in their analyses with assertions that the original *Boim* defendants also had vendors and sponsors at their conventions, with similar audiences and content, and therefore Entity Defendants operate in "identical" ways as the original *Boim* defendants. *Id.* at 91, 99-100. These allegations show no requisite control or dominion. *See Central States, Southwest & Southwest Areas Pension*

*Fund v. Central Transp.,* 85 F.3d 1282, 1286 (7th Cir. 1996) (noting that "allegations suggesting the purported alter ego's 'common control' or domination of the original entity are also important in establishing direct liability") (internal citations omitted). These allegations do not show a common business operation with any required level of specificity, nor do they allege use of the same equipment or location. Without these allegations, Plaintiffs' generic claims about similar messaging and unspecified audiences constitute mere conclusions and insufficient pleading.

Plaintiffs assert throughout their 1AC that "valuable intangible assets simply 'transitioned'" to Entity Defendants.[10] *Id*. at ¶¶ 62, 89. However, the intangible assets listed throughout the 1AC, such as the "know-how" to throw conventions, are not the "intangible assets" this Circuit recognizes as transfers of value. *See Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770, 773 (7th Cir. 2018) (finding a valuable transfer of assets based on use of supplier lists, trade secrets, contracts, customer lists and data, telephone numbers, and internet domain names); *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*, No. 98-cv-2453, 2000 U.S. Dist. LEXIS 6936, at *9-10 (N.D. Ill. May 17, 2000) (recognizing that continued use of a restaurant's well-known name constituted valuable transfer of an asset). Plaintiffs' claims that the "good names" of the original *Boim* defendants had any "intangible assets" left to give as value, after they were found liable under the ATA for materially supporting terrorism, belies belief. Plaintiffs make no assertion that AMP and/or AJP used the names, internet domains, or phone numbers, or

[10] Again, as this quote from the 1AC comes directly from the deposition of Hatem Bazian, this Court may properly consider the full context. *Tierney*, 304 F.3d at 738. When asked "[a]t that point in time, 2005 time period, were there any other ***educational organizations*** out there who were focused on Palestine?" Dr. Bazian responded "Palestine, not as far as I know that work within the Muslim community." Ex. B, Bazian Dep. at 30 (emphasis added). In response to the follow-up question of "[s]o that [educational organization focused on Palestine] was the hole that you were trying to fill with this new organization?" Dr. Bazian responded "Yeah." *Id*. When asked further if "[d]uring the time that IAP had existed, had IAP been that voice?" Dr. Bazian responded "I don't know. You need to ask them. I could only speak for what I wanted to do." *Id*. at 31.

assumed any contracts or donor lists from the original *Boim* defendants. Plaintiffs do not allege that Entity Defendants held themselves out as being the original *Boim* defendants in order to utilize those entities' good will. Plaintiffs' 1AC instead recognizes quite the opposite: "specific care was taken to avoid any public connection with IAP/AMS" and "we really need to distance ourselves from any well-known IAP figure[.]" Doc. 179 at ¶ 69.[11] In the absence of a transfer of good will or assets, Plaintiffs are left to rely on assertions that "the ideology and message of AMP/AJP is virtually identical to HLF, IAP and AMS." Dkt. 179 at ¶ 157. This does not satisfy the law.

**d. No Intent Exists to Avoid Liability**

Plaintiffs allege that a public Yahoo bulletin board from 2005 entitled "AMP_Transition" demonstrates intent to avoid liability. However, the 1AC also recognizes that the individuals expressed an understandable intent to distance themselves from IAP and the individuals who ran it. Plaintiffs allege that Magdi Odeh specifically stated that Sufian Nabhan should be left out of AMP on the grounds that he is "well associated with IAP" and "[w]e really need to distance ourselves from any well-known IAP figures." *Id.* at ¶ 69. Far from showing intent to hide liability, this allegation shows AMP's intent to separate itself from the original *Boim* defendants. Perhaps allegations relying on this bulletin board would carry sufficient weight if accompanied by other substantive allegations of a hidden motive, concealed asset transfers, or a disguised sameness of identity. *See Int'l Union of Operating Eng'rs Local 150, AFL-CIO,* 831 F.2d at 1312 (explaining that unlawful motive or intent are critical to alter ego analyses). Absent these factual assertions, Plaintiffs' allegations demonstrate no more than a group of individuals taking steps to form an

[11] Dr. Bazian testified, when questioned by Plaintiffs' counsel on this exact quote, that "I would say personally I wanted to focus on the American Muslim community and not to focus on the Palestine or Palestine over there. So in this sense if members of IAP, their focus was over there, then that does not serve what type of work I wanted to put forth." Ex. B, Bazian Dep. at 92.

independent organization. Although Plaintiffs imbue the allegations regarding the bulletin board with their own opinions on motivation, the district court decides whether to give such speculation credence. *See Boim,* No. 20-3233, 2021 U.S. App. LEXIS 24373, at *33 (explaining that the "district court … is best equipped to discern the apt analysis for alter ego status").

2. *The nonprofit cases identified by Plaintiffs do not support their claims*

Plaintiffs assert that "[c]ourts considering alter ego and successor liability have repeatedly recognized that the traditional tests … in the for-profit corporate context do not apply to non-profits." Dkt. 1 at ¶ 86. Plaintiffs cite five cases for this proposition, four from different jurisdictions. Three of these establish the general point that being a nonprofit does not bar consideration of alter ego status.[12] The other two cases involve allegations of terrorism financing. *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 435 (E.D.N.Y. 2013); *see also Linde v. Arab Bank, PLC,* 97 F. Supp. 3d 287, 334 (E.D.N.Y. 2015). Neither case establishes an independent legal test applicable to nonprofits or alter ego claims brought pursuant to the ATA, as Plaintiffs imply. Rather, they reiterate the already well-established principle that the alter ego analyses should apply flexibly, with context in mind. The *Strauss* court noted "an organization could not escape FTO status merely by adopting an alias[,]" and that alias' status is established when one organization "so dominates and controls another" that the latter can no longer be considered meaningfully independent. *Strauss,* 925 F. Supp. 2d at 435. The *Strauss* court then explained that "[f]actors … include whether the organizations share leadership, whether they commingle finances, publications, offices, etc .... and whether one operates as a division of the other." *Id.* The court in *Linde* merely noted that it shared "the skepticism ... expressed by the court

[12] *See Macaluso v. Jenkins,* 95 Ill. App. 3d 461, 465, 420 N.E.2d 251, 255 (1981); *Hankinson v. King,* 117 F. Supp. 3d 1068, 1074 (D. Minn. 2015); *Ring v. The Elizabeth Found. for the Arts,* No. 113849/2011, 2014 WL 5908429, at *5 (N.Y. Sup. Nov. 12, 2014).

in *Strauss* as to whether 'legitimate corporations are sufficiently analogous to terrorist groups such that every corporate veil piercing factor applies.'" *Linde,* 97 F. Supp. 3d at 334 (quoting *Strauss,* 925 F. Supp. 2d at 435 n. 14). The *Linde* court recognized that "the traditional corporate veil-piercing factors do not include whether governments … have found an organization to be controlled by Hamas ... [t]herefore, although these factors can serve as a useful guide in determining whether an entity is dominated and controlled by a terrorist group, they are not a rigid checklist." *Id.* The factors identified in these cases effectively repeat already established principles, slightly tailored for the context in which the cases are brought; they add no new rules to the analysis.

B. Plaintiffs' Successor Liability Claims Fail as a Matter of Law

Plaintiffs do not separate their allegations which they purport support successor liability from their alter ego liability claims, referring instead generally to both alter ego and successors throughout. *See generally* Dkt. 179. Although the two doctrines assess similar factors, they are not identical. Defendants therefore briefly address successor liability on its own, and incorporate by reference the facts and analyses set forth *supra.* This District, in a traditional corporate successor liability circumstance, described the distinction between the two doctrines in the following way:

> Successor liability requires "substantial continuity of the business," which is determined by looking to the totality of circumstances, emphasizing six factors: (1) ownership, (2) physical assets, (3) intangible assets, (4) management and workforce, (5) business services, and (6) customers. *See Ind. Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 884 F.3d 770, 777-78 (7th Cir. 2018); *see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325-26 (7th Cir. 1990). The alter-ego analysis looks at similar factors, but also requires "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through the sham transfer of assets." *Chi. Dist. Council of Carpenters Pension Fund v. Vacala Masonry, Inc.*, 946 F. Supp. 612, 617 (N.D. Ill. 1996)

*Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Tr. Fund*, No. 17 C 6473, 2019 U.S. Dist. LEXIS 17794, at *5-6 (N.D. Ill. Feb. 5, 2019). The doctrine of

successor liability presents an exception to the general rule that an entity which purchases or obtains a predecessor entity does not assume its liabilities, with four commonly recognized scenarios where the exception applies: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a 'mere continuation' of the seller; and (4) where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977). Plaintiffs do not specify which theory they rely on. However, they make no allegations that AJP or AMP expressly or impliedly agreed to assume liability of any original *Boim* defendants, nor do they identify any transactions amounting to a consolidation or merger. Plaintiffs allege no facts to show that AMP and AJP constitute "mere continuations" of judgment defendants, beyond the conclusory statements discussed above. And Plaintiffs identify no sale or transfer of assets. That leaves the last *Travis* scenario: "where the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." 565 F.2d at 446. Plaintiffs fail to allege any relevant acts, asserting only that "IAP, AMS and HLF were abandoned and replaced by AMP and AJP in order to permit the same ongoing enterprise—formerly conducted through the *Boim* Defendants—to continue free and clear of the burden of paying the *Boim* judgment." Doc. 179 at ¶ 162.

As discussed in the preceding sections, Entity Defendants do not share the same "ownership" or "leadership" as any original *Boim* defendant. With the exception of minimal overlap in the boards, which did not occur until years after incorporation, they do not share management or any workforce. They do not share any physical assets. The "intangible assets" identified by Plaintiffs are not the kind that courts identify for alter ego/successor liability. The fact that the organizations have commonalities among the individuals invited to speak at certain

events or who volunteer does not constitute a "workforce," nor is it "management." The shared audience between the two sets of entities of the general American Palestinian community bears no legal relevance. Plaintiffs' own First Amended Complaint demonstrates that no claim of successor liability can survive, meriting dismissal under Fed. R. Civ. P. 12(b)(6).

## V. **CONCLUSION**

Defendants express the deepest sympathy for the Boim family's loss. Justice cannot be satisfied by compounding injustice, however, and no one becomes safer by inculpating the innocent. Defendants respectfully ask this Court to look past the noise in Plaintiffs' 1AC, and rule based on the facts asserted and applicable law. AMP/AJP respectfully request this Court dismiss Plaintiffs' claims in their entirety, and for such other and further relief to which Defendants are justly entitled.

Dated this 27th day of October, 2021.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
cjump@clcma.org
*Attorney for Defendants*
Alyssa F. Morrison
amorrison@clcma.org
Texas Bar. No. 24110135
*Admitted Pro Hac Vice*
Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Christina Jump*
Christina A. Jump
*Attorney for Defendants*