IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM,<br><br>   Plaintiffs,<br><br>  v.<br><br>AMERICAN MUSLIMS FOR PALESTINE, AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION AND RAFEEQ JABER,<br><br>   Defendants. | Civil No. 17-cv-03591<br><br>**Hon. Sharon Johnson Coleman** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS AMERICAN MUSLIMS FOR PALESTINE AND AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FUND'S MOTION TO DISMISS

Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
30 South Wacker Drive, Suite 2200
Chicago, IL 60606
(312) 442-0509
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000
nat@lewinlewin.com
alyza@lewinlewin.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.  THE COURT OF APPEALS HAS ALREADY FOUND THAT THE FIRST
    AMENDED COMPLAINT STATES A CLAIM AND THAT THE BOIMS
    ARE ENTITLED TO A HEARING ON THE MERITS. ................................................. 1

II. THE COURT MUST TAKE AS A TRUE ALL OF THE MULTITUDE OF
    FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT THAT STATE
    AN OVERWHELMING CASE FOR IMPOSING ALTER EGO LIABILITY. .................. 2

III. NOW IS NOT THE RIGHT TIME FOR THIS COURT TO RESOLVE
     FACTUAL ISSUES. ................................................................................................ 4

IV. AS THE COURT OF APPEALS OPINION EXPLICITLY STATED, ASSESSING
    ALTER EGO FACTORS IN THE CONTEXT OF NOT-FOR-PROFIT
    CORPORATIONS ENTAILS WEIGHING FACTORS DIFFERENTLY FROM
    HOW THEY APPLY TO BUSINESSES RUN FOR PROFIT. ......................................... 5

    A. Overlap in Leadership ............................................................................... 7

    B. Same Organizational Purpose ................................................................... 9

    C. Similarity of Operations ............................................................................ 9

    D. Intent to Escape Liability and Other Considerations ............................... 11

CONCLUSION ................................................................................................................. 11


## TABLE OF AUTHORITIES

### CASES

*A.F. Moore & Assoc.*, 974 F.3d 836 (7th Cir. 2020) ................................................................... 2

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) ........................................................................ 2

*Boim v. Am. Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021) .......................................... passim

*Boim v. Holy Land Found*, 549 F.3d 685, (7th Cir. 2008) ............................................................ 10

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ........................................................... 3

*Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010) .............................................................. 6

*Johnson v. City of Chicago*, No. 20 C 7222, 2021 U.S. Dist. LEXIS 185416 (N.D. Ill. Sept. 28, 2021) ............................................................................................................................... 2, 4

*Linde v. Arab Bank, PLC,* 97 F. Supp. 3d 287 (E.D.N.Y. 2015) ..................................................... 6

*Loeb v. Indus. v. Sumitomo Corp.* 306 F.3d 469 (7th Cir. 2002) ................................................ 2, 4

*Nat'l Council of Resistance of Iran ("NCRI") v. Dep't of State,* 373 F.3d 152 (D.C. Cir. 2004).. 6

*NCRI v. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2000) .................................................................. 6

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490 (7th Cir. 1982) ................................... 2

*Runze v. Marriott Int'l Inc.*, No. 1:19-CV-07151, 2020 U.S. Dist. LEXIS 222465 (N.D. Ill. Nov. 29, 2020) ................................................................................................................................ 3, 4

*Fieldturf Int'l, Inc. v. Triexe Mgmt. Grp. Inc.,* No. 03 C 3512, 2004 U.S. Dist. LEXIS 6676 (N.D. Ill. Apr. 14, 2004) ..................................................................................................................... 7

*Strauss v. Credit Lyonnais, S.A.,* 925 F.Supp. 2d 414 (E.D.N.Y. 2013) ........................................ 6

*Tierney v. Vahle,* 304 F.3d 734 (7th Cir. 2002) ............................................................................. 3

### STATUTES

18 USC, § 2333(a) .......................................................................................................................... 1

Defendants American Muslims for Palestine and Americans for Justice in Palestine Educational Fund d/b/a American Muslims for Palestine (hereinafter, referred to collectively as "AMP") filed a motion to dismiss that inexplicably ignores key elements of the Court of Appeals Opinion dated August 16, 2021 reinstating this case ("the Opinion"). AMP also disregards firmly established jurisprudence for evaluating whether a complaint states a claim within the meaning of FED R. CIV. P. 12(b)(6). The motion should be denied post haste and the Boims should be allowed to pursue their long-delayed efforts to secure justice for the murder of their son.[1]

I. **THE COURT OF APPEALS HAS ALREADY FOUND THAT THE FIRST AMENDED COMPLAINT STATES A CLAIM AND THAT THE BOIMS ARE ENTITLED TO A HEARING ON THE MERITS.**

In its recent Opinion definitively recognizing that this case belongs in this Court, the United States Court of Appeals for the Seventh Circuit expressly found that the Boims are entitled to have their claim proceed to adjudication on the merits. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 547-48 (7th Cir. 2021). As the Opinion noted, the Boims' First Amended Complaint ("FAC") more than sufficiently asserts that AMP, as an alter ego of the Islamic Association for Palestine and the American Muslim Society (hereinafter, referred to collectively as "IAP") and Holy Land Foundation, is liable under 18 USC, § 2333(a) for the judgment obtained in the original *Boim* suit. *Id.*, at 554-57. Although AMP characterizes the FAC as a "chaotic web of allegations" insufficient to satisfy basic pleading standards, the Court of Appeals described it as a "comprehensive" pleading that "explicitly incorporates . . . detailed factual allegations" that ". . . allege in depth the facts and events which, the Boims maintain, entitle them to damages under § 2333(a) from the new organization and Jaber as alter egos of the Islamic

---

[1] The Boims are simultaneously filing their Response in Opposition to Defendant Rafeeq Jaber's Rule 12(b)(6) Motion to Dismiss, which includes a more detailed review of the facts of this case. To avoid repetition, the Boims do not repeat, but incorporate by reference, relevant portions of that Response.

Association." *Id.*, at 556. The Opinion goes on to repeat that the Boims are entitled to have their claim proceed to adjudication on the merits. *Id.*, at 559.

AMP, however, would have this Court proceed as though the Court of Appeals said none of this, something the Court cannot do. *See In re A.F. Moore & Assoc.*, 974 F.3d 836, 839-840 (7th Cir. 2020); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 493 (7th Cir. 1982). Given the ruling and Opinion of the Court of Appeals, it is abundantly clear that the Boims must be allowed to proceed with their case.

**II.     THE COURT MUST TAKE AS TRUE ALL OF THE FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT THAT STATE AN OVERWHELMING CASE FOR IMPOSING ALTER EGO LIABILITY.**

Even if the Court of Appeals had not already resolved this issue, it is evident from the allegations of the FAC that AMP should be found liable as an alter ego of the original *Boim* defendants. (*See infra* at pp. 7-11) Again, ignoring basic jurisprudential standards, AMP urges this Court to consider its own factual allegations that are not part of the FAC, and to disregard or decide in AMP's favor the many contrary factual allegations of the FAC. In so doing, AMP looks to overturn well-established principles for deciding Rule 12(b)(6) motions.

It is elemental that all allegations of the FAC be taken as true for the purpose of this motion. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021); *Johnson v. City of Chicago*, No. 20 C 7222, 2021 U.S. Dist. LEXIS 185416, *4-5 (N.D. Ill. Sept. 28, 2021). In deciding the motion, every inference that can be drawn from the pleaded facts must be viewed in favor of the Boims. *See Bilek*, 8 F.4th at 586. The Court cannot consider additional facts raised that are outside the challenged pleading, whether found in affidavits, deposition transcripts, or any other source outside the FAC. *See Loeb v. Indus. v. Sumitomo Corp.* 306 F.3d 469, 479 (7th Cir. 2002); *Runze v. Marriott Int'l Inc.*, No. 1:19-CV-07151, 2020 U.S. Dist. LEXIS 222465, *14-15 (N.D. Ill. Nov. 29, 2020) (*citing Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012).

While the parties have engaged in limited jurisdictional discovery to date, the time has come for full discovery on the merits, and it would be error to decide these issues without the Boims having the benefit of that discovery. *Boim*, 9 F.4th at 556.

AMP cites the case of *Tierney v. Vahle,* 304 F.3d 734 (7th Cir. 2002) for the proposition that it is entitled, in the context of this motion, to contest the allegations of the FAC and have the Court make factual determinations. But that is not even close to the holding or reasoning of *Tierney*. That case stands for the proposition, recognized in many other cases as well, that the Court may consider facts included in certain categories of documents that are attached to the complaint as though they were explicitly pleaded in the complaint. In *Tierney,* the plaintiff sought to prosecute a tort case based on a defamatory letter, a copy of which was attached to the complaint. The defendant sought to rely on other parts of the letter to establish his defense, and the court ruled that he could do so because the letter was incorporated in the complaint and it was fair for the court to consider the entire document.

*Tierney* emphasized that the exception is very narrow and does not generally negate Rule 12(b)(6)'s restriction that prevents a court from considering matters outside the pleadings. The decision most assuredly does not stand for the proposition advanced by AMP here: that the Court may consider deposition testimony and affidavits from defense witnesses and weigh "facts" that are hotly contested by the Boims. To the contrary, as *Tierney* recognized and as this Court, the Seventh Circuit, and federal courts around the country have consistently affirmed, factual allegations outside the pleadings may not be considered in resolving a Rule 12(b)(6) motion and all factual issues and inferences must be decided in favor of the plaintiff. *See, e.g., Loeb*, 306 F.3d at 479-480; *Johnson*, 2021 U.S. Dist. LEXIS 185416, at *4-5; *Runze*, 2020 U.S. Dist. LEXIS 222465 at *14-15.

The Opinion presents a highly pertinent example of precisely this point. In its decision previously dismissing this action for lack of subject matter jurisdiction, this Court determined that a Yahoo chat cited by the Boims should be viewed as favoring the defense position that AMP was careful to separate themselves from the leadership of the original Boim defendant entities. The Seventh Circuit noted that in Rule 12 motion practice generally, and especially in dealing with a Rule 12(b)(6) motion, that specific piece of evidence needs to be viewed as favoring the Boims:

> If the district court had applied the requisite presumptions under Rule 12(b)(6) or Rule 56, it would have been compelled to view the facts and make inferences from this evidence in the Boims' favor. Here, that would mean viewing the bulletin board posting as evidence showing fraudulent intent to avoid liability—one factor supporting alter ego liability, not negating it.

*Boim*, 9 F.4th at 558.

In discussing this very piece of evidence in its motion, AMP doesn't merely ignore the Seventh Circuit's express finding, it actually renews its claim that the evidence should be weighed in its favor sufficiently to dismiss the FAC. This stubborn refusal to recognize the reality of its situation and accept the proper application of the federal rules at the very least necessitates denial of the motion; it may even serve as a basis for admonishing AMP given the Seventh Circuit's clear pronouncement on this very point.

**III.** <u>NOW IS NOT THE RIGHT TIME FOR THIS COURT TO RESOLVE FACTUAL ISSUES.</u>

AMP suggests by the second footnote that it is prepared to take on every factual allegation in the FAC and refute it (*See* Rule 12(b)(6) Motion to Dismiss of AMP, Dkt. 236-1 ("AMP Mot.") at pp. 6-7 n.2), which is something they certainly should be given the opportunity to do. However, that opportunity comes not at the pleading stage, but at trial when the factual disputes can be weighed appropriately, taking into account the credibility of the witnesses and the persuasiveness of each side's evidence. Those decisions are entirely inappropriate at the

4

pleading stage, when, as noted above, every factual question and every inference must be resolved in favor of the Boims.

The factual allegations of the FAC set forth an overwhelming case for finding that AMP is the alter ego of the original defendants regardless of the many inferences to be drawn in the Boims' favor. There is simply no basis to find that the FAC fails to state a legitimate claim for relief.

**IV.     AS THE COURT OF APPEALS OPINION EXPLICITLY STATED, ASSESSING ALTER EGO FACTORS IN THE CONTEXT OF NOT-FOR-PROFIT CORPORATIONS ENTAILS WEIGHING FACTORS DIFFERENTLY FROM HOW THEY APPLY TO BUSINESSES RUN FOR PROFIT.**

The Seventh Circuit went out of its way to provide guidance for evaluating the case going forward, giving guidelines that are directly contrary to the arguments advanced by AMP in its motion:

> Not all of the alter ego factors relevant in the employee benefit plan context will be probative. It is difficult, for instance, to see how substantial similarity (or lack thereof) in customers, equipment, or ownership would have any meaningful bearing on the alter ego inquiry in the context of *terrorism financing nonprofit organizations*, which do not have customers, equipment, or owners in the traditional corporate sense. Factors like overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability would seem to take on added weight, as could other factors that have not expressly played a role in assessing alter ego liability in the labor law context.

*Boim*, 9 F.4th at 559 (emphasis added).

The Court of Appeals was not going out on a limb or creating new law in recognizing that non-profit supporters of terrorism should be evaluated by different standards than commercial businesses to determine whether they are alter egos. To the contrary, the United States Supreme Court and federal courts across the country have noted that these organizations, like AMP here and its predecessors, commonly fail to respect corporate formalities or maintain structures that would subject them to traditional analyses. *See Holder v. Humanitarian Law Project,* 561 U.S. 1, 30-31 (2010) ("Terrorist organizations do not maintain *organizational*

5

'firewalls' that would prevent or deter . . . sharing and commingling of support and benefits."); *Linde v. Arab Bank, PLC,* 97 F. Supp. 3d 287, 334 (E.D.N.Y. 2015) ("I share the skepticism later expressed by the court in *Strauss* as to whether 'legitimate corporations are sufficiently analogous to terrorist groups such that every corporate veil piercing factor applies.'") (quoting *Strauss v. Credit Lyonnais, S.A.,* 925 F.Supp. 2d 414, 435 n.14 (E.D.N.Y. 2013)).

As Chief Justice Roberts wrote when he was sitting on the D.C. Circuit Court:

> Just as it is silly to suppose 'that Congress empowered the Secretary of State to designate a terrorist organization…only for such periods of time as it took such organization to give itself a new name, and then let it happily resume the same status it would have enjoyed had it never been so designated,' …so too it is implausible to think that Congress permitted the Secretary to designate an Foreign Terrorist Organization (FTO) to cut off its support in and from the United States, but did not authorize the Secretary to prevent the FTO from marshaling all the same support via juridically separate agents subject to its control.

*Nat'l Council of Resistance of Iran ("NCRI") v. Dep't of State,* 373 F.3d 152,156 (D.C. Cir. 2004) (quoting *NCRI v. Dep't of State*, 251 F.3d 192, 200 (D.C. Cir. 2000)).

There is nothing new about supporters of terror like AMP changing their names or otherwise flouting corporate requirements to try to avoid detection and enforcement proceedings. Courts must recognize these subterfuges for what they are and not apply protections created for legitimate corporations to allow these organizations to escape justice. As Magistrate Judge Keys similarly wrote in the original *Boim* litigation, AMP cannot be allowed to escape liability by "hid[ing] behind their ambiguous and amorphous corporate design." (FAC ¶¶ 47-48, 151)

AMP's motion ignores this compelling (and binding) guidance from our Court of Appeals and other courts. Furthermore, granting the motion would require this Court to find a host of facts unfavorably to the Boims, which is precisely what Rule 12(b)(6) does not permit. For example, in line with the factors articulated in the Seventh Circuit's Opinion, the Boims allege in the FAC:

A. **OVERLAP IN LEADERSHIP**

The Boims alleged in detail—and included a diagram illustrating—the substantial overlap between the leaders and surrogates that controlled IAP and now do the same for AMP. (FAC ¶ 78) AMP, unable to negate the effect of these allegations at the pleading stage, again side steps the Rule 12(b)(6) protections and argues the underlying facts, primarily, whether these leaders and surrogates had sufficiently significant roles with either organization. Alas, a Rule 12(b)(6) motion is not the time to argue these underlying facts.

But first something must be said about AMP's backward logic regarding the effect of its disregard for corporate formalities. AMP consistently misconstrues what the Boims have alleged about AMP's admitted failure to respect corporate formalities, ingenuously suggesting that being bad bookkeepers does not equate to alter ego liability. (AMP Mot., at p. 8) While there is ample authority that failure to abide by corporate requirements and procedures is, indeed, a factor to be considered in the alter ego analysis, *see Fieldturf Int'l, Inc. v. Triexe Mgmt. Grp. Inc.,* No. 03 C 3512, 2004 U.S. Dist. LEXIS 6676, at *15-16 (N.D. Ill. Apr. 14, 2004), the Boims raise this fact to make a different point. Because AMP failed to appoint or elect corporate officers, hold meetings, and keep minutes, it is especially difficult to determine who managed the corporations, made the decisions, and generally occupied the leadership roles. This puts the Boims to a more difficult challenge in proving the overlap in leadership between IAP and AMP. But it would be wholly inappropriate to allow AMP to benefit from its unlawful failure to comply with statutory requirements by concluding at the pleading stage that there is insufficient evidence of overlap in leadership. And the fact that the Boims need more discovery than they ordinarily would to identify AMP's actual leaders and prove their involvement cannot possibly be a suitable ground for granting a Rule 12(b)(6) motion.

7

In any event, even with AMP's preservation of secrecy through its failure to keep records or formally designate their officers and directors, the Boims have uncovered substantial overlap in leadership, and will doubtless find more once discovery proceeds. For example, as alleged in the FAC, one of the "founders" of AMP, Hatem Bazian, was highly involved with IAP, attending multiple conventions, and a frequent speaker and advisor. Rafeeq Jaber, an officer and member of the Board of IAP was the person with primary responsibility for winding up their affairs and who ignored his duty to assemble and preserve funds to pay the judgment owed to the Boims. He was also instrumental in the operations of AMP as its financial advisor and tax preparer and attended Board meetings.[2] Abdelbasset Hamayel, Osama Abuirshaid, and Sufian Nabhan were all members of the IAP Board and of the core leadership of AMP that apparently served as de facto officers and directors of either or both organizations. Salah Sarsour, Yousef Shahin, and Hussein al-Khatib were all active in the leadership of both IAP and AMP. While AMP denied in its motion that this was the case and can be expected to deny these allegations again in its reply brief, factual disputes like these cannot be resolved on the pleadings. And while AMP claims that the FAC alleges only conclusions and not facts, that is simply untrue.

As the Seventh Circuit noted, the FAC is replete with factual allegations that these men held Board positions, acted as spokesmen, raised funds, served as executive director, organized conventions, edited newspapers, connected email chains, maintained finances, and otherwise served in leadership roles. *See, e.g., Boim*, 9 F.4th at 549, 555, and 556. Discovery on the merits of these issues will only serve to further flesh out the overlap in leadership.

---

[2] As noted above, we cannot know without further discovery whether Jaber was a formal or informal Board member of either American Muslims for Palestine or Americans for Justice in Palestine Educational Fund or the pseudo entity created when the two informally combined because there is no available list of officers or Board members and no minutes. Discovery will have to determine the degree to which Jaber acted in any such capacity.

**B. SAME ORGANIZATIONAL PURPOSE**

As alleged in the FAC, when IAP purportedly disappeared after its affiliate Holy Land Foundation's assets were seized and its leaders indicted under the Anti-Terrorism Act, a vacuum was created in that there was no prominent Islamic organization in the United States willing to step forward while the heat was on to advocate on behalf of Hamas, the designated terrorist organization controlling Gaza. (*E.g.,* FAC ¶¶ 64-76) AMP naturally assumed this role, after a brief "quiet period" as would be expected of the alter ego of IAP. (*E.g.,* FAC ¶ 4, 77-84) Again, the FAC expressly alleges these facts, and AMP apparently does not dispute these allegations.

**C. SIMILARITY OF OPERATIONS**

The FAC details some of the more apparent ways in which AMP duplicated the operating methods of IAP. Although "founded" by organizers from California and Wisconsin, it opened its headquarters in suburban Chicago, in the same neighborhood, on the same street as IAP. The same people who put on the IAP conventions immediately organized a convention in the same location that IAP had selected. AMP presented the same speakers, with the same participants and topics, using the same address lists and, incredibly for a brand-new organization, drawing essentially the same attendance as the very same conventions that had been held in prior years by IAP. AMP promoted its activities, solicited funds, and generated publicity using an essentially identical website. One of the overlapping leaders edited a newspaper that, like the sponsoring organizations themselves, changed its name, but was in every other respect identical to the newspaper that the same leader had edited for IAP. The similarity of operations could not be more apparent.

We note that AMP's motion goes well beyond asking the Court to find disputed allegations in their favor—it even seeks to have the Court overturn established facts. In response

to the allegation that it continued to raise funds for Hamas as did their alter egos, AMP states that this claim "is wholly inappropriate and egregiously inaccurate. . . . [since] Plaintiffs do not make any assertions that Entity Defendants distribute any funds overseas, let alone to terrorist organizations." (AMP Mot., at p. 9) This is simply not true. As demonstrated in detail in the FAC, AMP actively raised funds destined for Hamas. (FAC ¶¶ 95-108) AMP held fundraisers for Viva Palestina where it was made clear to the audience that the funds were going to and, in fact, were directly handed to Hamas leaders. (*E.g.*, FAC ¶ 105) That the AMP leaders who spoke at the fundraisers – Osama Abuirshaid, Hatem Bazian, and Yousef Shahin – did not personally hand the money to Hamas leader Ismail Haniya is of no legal consequence. (*See, e.g.*, FAC ¶¶ 107, 142) The Court of Appeals ruled explicitly in *Boim III*, which came down a year before the fundraisers, that using intermediaries to funnel funds to terrorist groups is "money laundering" and a violation of the Anti-Terrorism Act. *Boim v. Holy Land Found.* (*Boim III*), 549 F.3d 685, 701-02 (7th Cir. 2008) (*en banc*).

That AMP would continue to raise funds for Hamas is not a surprise; it reflects the consistent efforts of individuals who began with IAP and continued at AMP to support terrorism. This included having the identical sponsors "Baitulmaal, Zakat Foundation, Islamic Relief and United Muslim Relief" at their conventions "send money overseas," which AMP does not even contest. AMP appears to suggest that the presence of these groups at IAP and AMP is a mere coincidence somehow irrelevant to the ultimate findings in this case. The evidence will support the allegations that having these "vendors" and "sponsors" at the conventions was purposeful. It reflected the *raison d'etre* of both organizations and their leaders; acting as the public face and primary fundraiser for Hamas in the United States.

### D. INTENT TO ESCAPE LIABILITY AND OTHER CONSIDERATIONS

Under the burden of a $156 million judgment, the leadership of IAP did essentially nothing to meet their obligation to satisfy their debt to the Boims. Rather than attempting to deal responsibly with the judgment obligation, the leaders instead changed the names of their operating corporations to mask their identity, but as we have seen, employed the same leadership to serve the same purpose using the same operating style. And as the Seventh Circuit has recognized, the Boims alleged that IAP leadership allegedly hid these factors during a period of "transition" from IAP to the differently named, but essentially identical AMP entities:

> This amended complaint alleged at length how the Islamic Association's leaders, including Jaber, closed the Islamic Association in name only to avoid paying the $156 million owed, plotted a transition to a purportedly new entity, continued the old Islamic Association's activities under the new name American Muslims for Palestine, and attempted to disguise any connection between the defunct and new organizations.

*Boim*, 9 F.4th at 549. These allegations are more than sufficient to set forth the requisite intent to avoid liability.

## CONCLUSION

The original *Boim* suit mattered. Although nothing can make up for the loss of their son, it provided some semblance of justice to the Boims and set the precedent that funders of terrorism can and will be held to account by victims. The Boims filed this action four years ago to ensure that the entities held liable for murdering their son and Rafeeq Jaber, the individual who controlled them, participated in their illicit activities, and facilitated their reemergence disguised as AMP, cannot side-step the *Boim* judgment and render the ATA a nullity. For the aforementioned reasons, the Court should deny AMP's motion and allow this case to proceed with discovery immediately.

November 17, 2021                                    Respectfully submitted,

                                                                           */s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
30 South Wacker Drive, Suite 2200
Chicago, IL 60606
(312) 442-0509
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000
nat@lewinlewin.com
alyza@lewinlewin.com

12

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 17th day of November 2021.

                                                  */s/ Seth H. Corthell*