## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER,<br><br>        Defendants. | Civil No. 17-cv-03591<br><br><br>Hon. Sharon Johnson Coleman<br><br><br>**Telephone hearing set for December 10, 2021 at 9:15 a.m.** |

## DEFENDANTS AMP/AJP'S REPLY IN
## SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS'
## FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

Dated this 29th of November, 2021.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Attorney for Defendants*
Alyssa F. Morrison
Texas Bar. No. 24110135
*Admitted Pro Hac Vice Attorney for Defendants*
Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX  75080
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    THE SEVENTH CIRCUIT MADE NO MERITS DETERMINATION ...................... 2

III.   PLAINTIFFS' FACTUAL ALLEGATIONS DO NOT SUFFICIENTLY PLEAD
ALTER EGO CLAIMS ................................................................................ 4

   A.   This Court Need Only Accept Well-Pled Facts and Reasonable Inferences .............. 4

   B.   Plaintiffs' Alter Ego Allegations Fail Under Any Applicable Test ............................. 8

     i.   Plaintiffs allege legally insufficient overlap in leadership ........................................ 9

     ii.   The "same organizational purpose" does not suffice for alter ego .......................... 11

     iii.   Plaintiffs fail to plead sufficient "similarity of operations" ....................................... 12

     iv.   Plaintiffs do not sufficiently plead any "intent to escape liability" ........................... 13

IV.   CONCLUSION ...................................................................................... 15

CERTIFICATE OF SERVICE ............................................................................. 17

## I.     INTRODUCTION

Defendants American Muslims for Palestine ("AMP") and Americans for Justice in Palestine Educational Fund ("AJP") (together, "Entity Defendants"), by and through the undersigned counsel, file this Reply in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 179, hereinafter Plaintiffs' "1AC") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 236-1.[1] On November 17, 2021, Plaintiffs filed their Response in Opposition. Dkt. 239 ("Plaintiffs' Response").

Throughout the duration of this litigation, Defendants and a host of other non-party individuals identified in Plaintiffs' 1AC have endured a campaign of accusations and imputations against their character, actions, and motives. Now, following four years of litigation before both this Court and the Court of Appeals, Plaintiffs' remaining factual allegations simply do not state sufficient alter ego claims under any applicable test, a truth which is bolstered by the scarcity of relevant precedent cited in Plaintiffs' Response. Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is therefore appropriate at this time. If Plaintiffs' allegations suffice to plead an alter ego claim, countless organizations and corporate entities throughout Illinois would then be in jeopardy of the same. Blessing the minimal to nonexistent threshold which Plaintiffs ask this Court to apply would also create a legal inference that any Muslim nonprofit entity that affiliates itself with the individuals referenced in the Complaint (many of whom are prominent activists), dares to

---

[1] Plaintiffs' 1AC alleges both alter ego and successor liability; it does not separate the counts into distinct causes of action or specify which facts purportedly support each claim. Entity Defendants briefed both doctrines in their Motion to Dismiss. *See* Dkt. 236-1 at 18-21. However, Plaintiffs' Response omits, and therefore waives, any analysis on successor liability. *See Creation Supply, Inc. v. Hahn,* No. 19 C 6063, 2020 U.S. Dist. LEXIS 150000, at *26 (N.D. Ill. Aug. 19, 2020) (citing *United Cent. Bank v. Davenport Estate LLC,* 815 F.3d 315, 318 (7th Cir. 2016) (explaining that where the plaintiff's complaint requested a particular kind of relief, but the plaintiff "has not briefed this theory, … undeveloped arguments are waived")).

fundraise (even domestically, as Entity Defendants do), holds conventions directed at the Palestinian-American community, or voices constitutionally protected opinions regarding Palestine puts itself in danger of facing liability down and years-long litigation down the road.[2] Acknowledging this Court's familiarity with the underlying facts of this case, Entity Defendants incorporate by reference the full background briefed in their Motion to Dismiss and proceed directly to addressing the Plaintiffs' Response.[3]

## II. THE SEVENTH CIRCUIT MADE NO MERITS DETERMINATION

Throughout their Response, Plaintiffs rely heavily on the Seventh Circuit's jurisdictional Opinion and remand. *See generally Boim v. Am. Muslims for Palestine,* 9 F.4th 545 (7th Cir. 2021). As this Court is well aware, this matter went before the Court of Appeals on the sole question of subject matter jurisdiction; the Seventh Circuit remanded on the same grounds. *Id.* The first heading in Plaintiffs' Response, however, attests without qualification that "the Court of Appeals has already found that the First Amended Complaint States a Claim[.]" Dkt. 239 at 4. This does not constitute a semantic manipulation of language to favor the Plaintiffs' position; this statement outright misrepresents the Seventh Circuit's holding, with the goal of representing to this Court that the Court of Appeals' jurisdictional finding served in actuality as a merits determination as well. Within "the adversary system, facts may be reasonably slanted within the limits of propriety[,]" but a line, even if sometimes a fine one, still remains "between zealous advocacy and misrepresentation, between slanting and distorting." *Tokio Marine & Fire Ins. v. Amato Motors,* 871 F. Supp. 1010, 1017 (N.D. Ill. 1994). This statement crosses that line.

---

[2] The sheer number of allegations contained in Plaintiffs' 1AC that bear no relationship to the legal claims asserted raises the question of whether Plaintiffs litigate here in good faith.

[3] Entity Defendants and Individual Defendant Rafeeq Jaber both filed Motions to Dismiss the Plaintiffs' 1AC. Dkts. 236-1, 237-1. Defendant Jaber's Reply is now filed simultaneously with Entity Defendants'. There is factual and legal overlap between the two Motions to Dismiss; accordingly, Defendants incorporate by reference the relevant background and analysis contained in each Motion and Reply into one another.

To be clear, the binding decision by the Court of Appeals holds only that this Court possesses federal subject matter jurisdiction to hear this case. *Boim,* 9 F.4th at 559 (explaining that "because we conclude the district court possessed federal jurisdiction under § 1331 … we remand for further proceedings"). The Seventh Circuit did opine on the factors to weigh when examining a non-traditional alter ego case involving nonprofits, explaining that "[f]actors like overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability would seem to take on added weight[.]" *Id.* However, the sentence immediately following makes plain that the Seventh Circuit recognizes that the "district court, aided by the parties' briefing, is best equipped to discern the apt analysis for alter ego status in this context." *Id.* Similarly, to the extent Plaintiffs rely on the Seventh Circuit's statement that they are "entitled to have their claim proceed to adjudication on the merits" for the proposition that the Seventh Circuit already found their Complaint to be beyond dismissal, Plaintiffs interpret this to mean far more than it does by its plain language. Consideration and "dismissal under Rule 12(b)(6) *is* an adjudication on the merits." *Taha v. Int'l Bhd. Of Teamsters, Local 781,* 947 F.3d 464, 472 (7th Cir. 2020) (emphasis added). Had the Seventh Circuit "Opinion noted," as Plaintiffs represent that it did, that "the Boims' [1AC] more than sufficiently asserts that AMP, as an alter ego … is liable under 18 U.S.C. § 2333(a)," the Seventh Circuit would have remanded with instructions to proceed through to discovery, and the parties would not be engaged in the present motion practice. Dkt. 239 at 4. The Seventh Circuit's commentary warrants recognition, but constitutes only non-binding judicial dicta, and even the Court of Appeals itself recognized that the merits analysis rests properly with this Court.[4] Regardless, although Entity Defendants

---

[4] *Judicial Dicta,* BLACK'S LAW DICTIONARY (11th. Ed. 2019) ("an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight"). Plaintiffs cite *In re A.F. Moore & Assoc.,* 974 F.3d 836, 839-840 (7th Cir. 2020) and *Ohio-Sealy Mattress Mfg. Co. v. Sealy,*

dispute Plaintiffs' misrepresentation of the Seventh Circuit's holding and its breadth, Defendants agree that evaluating the sufficiency of an alter ego claim requires a degree of context-minded flexibility. Entity Defendants address all of the factors identified by Plaintiffs and by the Court of Appeals, as discussed in greater detail below; Plaintiffs' claims still fail as a matter of law.

### III.    PLAINTIFFS' FACTUAL ALLEGATIONS DO NOT SUFFICIENTLY PLEAD ALTER EGO CLAIMS

#### A.  *This Court Need Only Accept Well-Pled Facts and Reasonable Inferences*

At the motion to dismiss stage, courts take all well-pled factual allegations as true and construe them in the plaintiffs' favor. This plaintiff-friendly standard does not constitute a blank check for a party to assert a legally insufficient claim and obligate the court to permit it to proceed through litigation. While "well-pled facts must be accepted," the court is not "compelled to accept … conclusory allegations concerning the legal effect of facts set out in the complaint." *Baxter by Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994); *see also Sutliff v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir. 1984) (explaining that a plaintiff cannot evade pleading requirements by attaching a legal conclusion to facts that do not support it; if the facts

---

*Inc.,* 669 F.2d 490, 493 (7th Cir. 1982) as support for their position. Neither case applies. *In re. A.F. Moore & Assoc.* dealt with a circumstance where the court of appeals found that the other party (the taxpayers) "lacked a plain, speedy, and efficient remedy in the state courts," and therefore remanded the case to the district court to resolve the merits of the taxpayers' claims. The defendants then filed two motions "seeking a stay of the case pending the resolution of a petition for a writ of certiorari[,]" one before the appellate court, and one before the district court. The appellate court "summarily denied their request" for a stay; however subsequent to that denial, the district court "chose to grant the relief that [the Seventh Circuit] had already denied." *Id.* In that case, there was a statute (28 U.S.C. § 2101(f)) that "expressly authorizes [the appellate court] or the Supreme Court to stay execution of a final judgment pending certiorari," and the taxpayers argued that this divested the district court of the authority to grant the stay. The court of appeals found that this is the common interpretation of courts considering the question. It also found separately that the district court's action staying the case was in error, because it directly contradicted the appellate court's contrary ruling. Here, no similar statute authorizes that kind of interim ruling. *Ohio-Sealy Mattress Mfg.* is similarly distinguishable. In that case, the court of appeals' mandate "specifically precluded reinstatement of the remitted portion of the judgment[,]" so the court rejected the party's contention that "the district court should have corrected its erroneous ruling by restoring the remitted portion of the judgment." 669 F.2d at 493.

narrated do not align with the claimed violation of law, then the plaintiff "will get nowhere merely by dressing them up in the language of [that law]"). Plaintiffs insist that "ignoring basic jurisprudential standards, AMP urges this Court to consider its own factual allegations that are not part of the FAC, and to disregard or decide in AMP's favor the many contrary factual allegations of the FAC." Dkt. 239 at 5. This argument is neither accurate nor persuasive.

Not for the first time in this litigation, Plaintiffs misunderstand the distinction between a disagreement on the facts and a disagreement on the correct legal standard. Naturally, the parties disagree on the outcome of this litigation, but a reading of Entity Defendants' Motion reveals that Defendants disagree with few, if any, of the facts actually pled in Plaintiffs' 1AC.[5] Defendants do not dispute, *inter alia,* the leadership and positions set forth in Plaintiffs' diagram (Dkt. 236-1 at 12); the identified founding members of AMP (*id.* at 7-8); the dates of AMP's incorporation and early events, like its first convention in 2006 (*id.* at 8); the eventual location of one of Entity Defendants' offices near a prior AMS/IAP office (*id*); the fact that Entity Defendants did fundraising (*id.* at 14); the speakers at AMP's conventions (*id.* at 12 (explaining that the fact that members of the Palestinian community spoke at events for both sets of entities does not show continuity of control sufficient to demonstrate alter ego)); or even the contents and existence of the Yahoo bulletin board Plaintiffs identify (*id.* at 16). The relevant dispute here is a legal one, not a factual one. Defendants do not ask this Court to resolve competing narratives; they ask this Court to determine whether the narrative Plaintiffs plead suffices to assert a cognizable alter ego claim.

Defendants do disagree with many of the conclusory statements made by Plaintiffs, and the unsupported implications imbued into their Complaint. As an example, although Plaintiffs

---

[5] To the extent that Defendants may disagree with any truly factual assertions made by Plaintiffs, Defendants do not raise them at this stage, and they do not affect the analysis of this Motion.

do not disagree that a period of time existed in between the wind-up of the original *Boim* defendants and the inception of the present Entity Defendants, Plaintiffs describe that period of time as a "brief 'quiet' period as would be expected of the alter ego of IAP" before AMP "naturally assumed [the] role" of a "prominent Islamic organization in the United States willing to step forward while the heat was on to advocate on behalf of Hamas[.]" Dkt. 239 at 12. Although this Court must view all *reasonable* inferences in Plaintiffs' favor, "[c]ourts are not required to draw every *conceivable* inference" in their favor; "[w]hether an inference is reasonable must be considered in light of the competing inferences to the contrary." *Stone v. Morton Cmty. Bank (In re Int'l Supply Co.),* 631 B.R. 331, 338 (Bankr. C.D. Ill. 2021) (emphasis added) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). This Court determines which inferences it accepts as a reasonable interpretation of the facts, and which to dispose of as improper legal conclusions disguised as factual allegations.

Plaintiffs complain in their Response that "AMP cites the case of *Tierney v. Vahle,* 304 F.3d 734 (7th Cir. 2002) for the proposition that it is entitled … to contest the allegations of the FAC and have the Court make factual determinations[;]" Plaintiffs misrepresent Entity Defendants' narrow use of the case. The *Tierney* court carved out an exception to the general rule that consideration of materials outside of the pleadings converts a motion to dismiss to a motion for summary judgment, to be used in circumstances where the materials "were all documents to which the Complaint had referred, that the documents were concededly authentic, and that they were central to the plaintiffs' claim." *Tierney,* 304 F.3d at 738. The Seventh Circuit "has been relatively liberal in its approach to the rule articulated in *Tierney.*" *Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009); *see also Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and

central to a question in the case); *Venture Associates v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir. 1992) (admitting letters to which the complaint referred, regarding the parties' contractual relationship). Entity Defendants do not quote *Tierney* for the idea that this Court has sweeping authority to consider any materials outside of the pleadings; to the contrary, Defendants only invoke the *Tierney* rule to include the full context of two pieces of deposition testimony which Plaintiffs quote or reference in the 1AC. Dkt. 236-1 at fn. 10, 11. These depositions, and the Yahoo bulletin board referenced therein, are undisputedly authentic, cited in the Complaint, and used by Plaintiffs to support their claim, placing them squarely under *Tierney.* Mindful of the general prohibition on bringing outside materials into the pleadings stage, Entity Defendants cabined any use of the depositions to those two examples cited by Plaintiffs, and included the excerpted portions as exhibits for this Court's convenience.[6] Plaintiffs make many more references to deposition testimony from this litigation and the original *Boim* litigation throughout their 1AC; Defendants do not address these as they do not bear on the 12(b)(6) analysis.[7]

---

[6] Plaintiffs' subsequent section entitled "Now is Not the Right Time For This Court to Resolve Factual Issues" takes issue with Entity Defendants' second footnote, which Plaintiffs characterize as meaning Defendants are "prepared to take on every factual allegation in the FAC and refute it." Dkt. 239 at 7 (citing Dkt. 236-1 at fn. 2). Plaintiffs contend this is inappropriate at the pleadings stage. *Id.* Once again, Plaintiffs misrepresent what Defendants argue in their Motion to Dismiss. The footnote in question simply acknowledges the length of Plaintiffs' Complaint and that, within the page limits set forth by this Court, it would be impossible to address each allegation, so Defendants address only those allegations that conceivably go to the claim of alter ego. Dkt. 236-1 at fn. 2. Defendants then note that "should this Court request further briefing on any points not addressed here, Defendants will gladly oblige." *Id,* At the pleadings stage is that both parties set forth the facts, whether by answer or by a motion to dismiss. And again, Entity Defendants respectfully remind this Court the standard does not require that "every factual question and every inference must be resolved in favor of the Boims." Dkt. 239 at 8. This Court need only accept well-pled allegations and inferences bearing an indicia of reasonableness.

[7] Should this Court believe the *Tierney* exception does not apply here, Defendants respectfully request this Court consider their Motion to Dismiss without the two referenced deposition excerpts, as Defendants believe their Motion suffices even without those citations.

### B. *Plaintiffs' Alter Ego Allegations Fail Under Any Applicable Test*

Plaintiffs argue that well-established law on alter ego does not apply to the present circumstance. Dkt. 239 at 8-10.[8] They rely on *Linde v. Arab Bank, PLC,* 97 F. Supp. 3d 287, 334 (E.D.N.Y. 2015), *Strauss v. Credit Lyonnais, S.A.,* 925 F. Supp. 2d 414, 435 n. 14 (E.D.N.Y. 2013), *Holder v. Humanitarian Law Project,* 561 U.S. 1, 30-31 (2010), and the Seventh Circuit's Opinion in this case. Confusingly, Plaintiffs assert that "AMP's motion ignores this compelling (and binding) guidance from our Court of Appeals and other courts."[9] A plain reading of Entity Defendants' Motion shows the opposite. *See* Dkt. 236-1 at 17-18 (discussing the *Linde* and *Strauss* holdings which recognize that there is "not a rigid checklist" and many factors may bear consideration). Entity Defendants acknowledge and address the Seventh Circuit's commentary. *Id.* at 11 (citing the Seventh Circuit's Opinion and noting that it recognizes "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability as relevant factors for alter ego analyses").[10] Entity Defendants do not "ignore" the existence of these cases, or the principle that alter ego should not be not rigidly applied. Defendants cite them directly and acknowledge that they "reiterate the well-established principle that the alter ego analyses should apply flexibly, with context in mind." Dkt. 236-1 at 17. Entity Defendants simply disagree with Plaintiffs' belief that these cases support a finding that Plaintiffs satisfy even this more flexible analysis.

---

[8] Plaintiffs concede by omission that they do not satisfy traditional alter ego factors, as their Response to Defendants' Motions to Dismiss largely does not address them, other than to argue that they do not apply.

[9] Additionally, three of these four cases are not "binding" analysis. Two are out of jurisdiction, and the Seventh Circuit's Opinion in this case constitutes binding authority on the question of subject matter jurisdiction only; the Seventh Circuit itself explicitly deferred to this Court to determine and apply the correct alter ego analysis. Had the Seventh Circuit issued a ruling on the sufficiency of Plaintiffs' claims, or any legal issue not before it, that hypothetical ruling would have no weight. Nonetheless, it did not do this.

[10] Plaintiffs' allegations appear particularly disingenuous since they know that Entity Defendants have briefed this same argument before this Court as well as the Seventh Circuit.

Plaintiffs again walk the line between advocacy and misrepresentation in their next argument. Plaintiffs state that "[t]here is nothing new about *supporters of terror like AMP* changing their names or otherwise flouting corporate requirements to try and avoid detection and enforcement proceedings." Dkt. 239 at 9 (emphasis added). This statement does not constitute a "reasonable inference" that need be construed in Plaintiffs' favor. Plaintiffs' unilateral "designation" of AMP as an organization supporting terrorism, something the U.S. government has not done, is not new; they have brazenly done so throughout this litigation. But their repetition of the argument does not make it any less inappropriate, irresponsible or inflammatory, and Entity Defendants respectfully urge this Court to view statements like this for what they are: mere unsupported conclusions.[11]

### i. Plaintiffs allege legally insufficient overlap in leadership

The factors that Plaintiffs allege support a claim of alter ego are unavailing and unsupported. Plaintiffs repeat their argument that sufficient overlap in leadership exists between the two sets of entities. They insist that "unable to negate the effect of these allegations at the pleading stage," Entity Defendants resort to arguing "the underlying facts" regarding the named individuals' roles. Dkt. 239 at 10. Again, Entity Defendants do not dispute the facts; Defendants dispute the conclusions Plaintiffs draw from them. Defendants address Plaintiffs' diagram as it is stated, without disputing the individuals, titles and roles included therein. Dkt 236-1 at 12. Defendants then observe that, taking all of Plaintiffs' allegations as true, only very minimal overlap exists between the two organizations. *Id.* (explaining that of the thirteen IAP/AMS board members identified, Plaintiffs concede that eight had no involvement with AMP, and two others supported

---

[11] *See Coker v. Barr,* No. 19-cv-02486-RBJ, 2020 U.S. Dist. LEXIS 255249, at *23 (D. Colo. Sep. 15, 2020) (explaining that "it is hard to imagine a greater stigma than being associated with terrorism in our post 9/11 world").

AMP but did not take leadership roles. Of the three that do overlap between IAP and AMP, Plaintiffs concede that none of these individuals played any role in forming AMP or AJP, and did not join AMP until years after its incorporation). Plaintiffs point to no cases supporting their argument that mere affiliation, through speaking at conventions or engaging in other supporting activities, suffices for alter ego allegations.[12] Pointing out the fact that the applicable law does not support Plaintiffs' characterization of purported "overlap in leadership" does not constitute an inappropriate request that this Court weigh evidence. Instead, Defendants simply take the facts as pled and show how the law applies to them.

Despite arguing previously that traditional alter ego factors like corporate formalities do not apply in the present context, Plaintiffs now assert that this factor weighs in their favor. Plaintiffs again misunderstand the relevance of a failure to respect corporate formalities. At no point have Defendants disagreed that "failure to abide by corporate requirements and procedures is indeed a factor to be considered in the alter ego analysis[.]" Dkt. 239 at 10 (citing *Fieldturf Int'l, Inc. v. Triexe Mgmt. Grp. Inc.,* No. 03 C 3512, 2004 U.S. Dist. LEXIS 6676, at *15-16 (N.D. Ill Apr. 14, 2004)). It is. Plaintiffs simply apply this factor incorrectly to the facts they assert. Plaintiffs do not plead that the two sets of entities failed to respect corporate formalities as between each other, where IAP or AMS served as a mere shell of AMP or AJP, or the reverse. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 379 (7th Cir. 2008) (evaluating the "failure to observe corporate formalities" in order to determine whether to "justify treating [the company] as a mere shell" of the other); *see also People v. V&M Indus.,* 298 Ill. App. 3d 733, 741, 700 N.E.2d 746, 751-52 (1998) (finding that a corporate entity was a mere façade for the operation

---

[12] Entity Defendants recognize that finding cases demonstrating that these roles are insufficient is akin to proving a negative, because this kind of argument falls so far outside the scope of the facts typically considered in analyzing alter ego claims.

of the dominant shareholder, where that person "exercised ownership, direction and control[,]" there was testimony that "[he] ran the show and that no minutes were ever recorded[,]" and "[w]hile officers were elected, they clearly had no authority[,]" the meetings were informal and unstructured, and although "articles of incorporation and annual reports were filed with the Secretary of State, the record confirms that corporate formalities were regularly overlooked"). Here, Plaintiffs do not allege that the two sets of entities failed to observe corporate formalities between one another; they instead argue that both sets of entities separately did poorly at keeping up their own corporate formalities. Entity Defendants are cognizant of the argument that Plaintiffs are attempting to make: these separate failures to adequately keep their books purportedly shows a scheme to make it more difficult to determine the true form of the organizations, so they could escape liability. However, Plaintiffs point to no case, and Defendants have certainly been unable to find one, where courts in this Circuit apply the failure to respect corporate formalities in this way.[13] This would render any company that does not perfectly maintain its own corporate records vulnerable to being the alter ego of another company with similar failures, even if the two never even co-existed or had overlap.[14]

## ii. The "same organizational purpose" does not suffice for alter ego

The entirety of Plaintiffs' "Same Organizational Purpose" section rests on their contention that AMP supports Hamas. It does not. The U.S. government does not think it does. Dkt. 239 at

---

[13] Accepting this inference would also require this Court to believe that the original *Boim* defendants had the prescient foresight to intentionally fail to keep up corporate formalities so that, years later, if they were ultimately found liable on terrorism-related charges, they could disband and reform to obfuscate the facts of that reformation. Not only does this not pass basic logical muster, but this seriously flawed plot fails because Plaintiffs identify the boards and operations of both sets of entities throughout their 1AC, demonstrating these facts were not hidden.

[14] Plaintiffs' assertion that they may need "more discovery than they ordinarily would to identify AMP's actual leaders" ignores the fact that this Court already permitted them over a year of one-sided discovery which included precisely those questions, after which they produced their First Amended Complaint.

11

12 (stating that AMP "naturally assumed [the] role" of "advocat[ing] on behalf of Hamas, after IAP was defunct). Inexplicably, Plaintiffs represent to this Court that "AMP apparently does not dispute these allegations." *Id.* In fact, Entity Defendants' Motion expressly disputes this precise conclusion, clarifying that "Plaintiffs' assertions constitute speculative conclusions, and ask this Court to find what the U.S. government never has: that Entity Defendants' business purpose is to act as financiers of terrorism. This request is wholly inappropriate and egregiously inaccurate. Without belaboring the point, Plaintiffs do not make any assertions that Entity Defendants distribute any funds overseas, let alone to terrorist organizations." Dkt. 236-1 at 14. Again, Plaintiffs fail to point to a single precedent blessing this conclusion as sufficient for an alter ego claim. At most, it might support a wholly new ATA claim against AMP/AJP, a claim that neither the U.S. government nor Plaintiffs have pursued. But this conclusion cannot demonstrate a sufficiently pled alter ego claim.

### iii.  *Plaintiffs fail to plead sufficient "similarity of operations"*

The glossed-over generalizations and blanket assertions regarding "similarity of operations" contained in Plaintiffs' Response consist of baseless accusations and irrelevant or distorted factual allegations. AMP was founded and incorporated by Munjed Ahmad of Wisconsin and Hatem Bazian of California, neither of whom held any leadership role with IAP. Dkt. 179 at 29, ¶ 62. This occurred in 2006, nearly two years after the original *Boim* judgment. *Id.* at ¶ 72. AMP was incorporated and had its original offices in California, near its founder Hatem Bazian. *Id.* at ¶ 61. In 2008, several years later, AMP established its nationwide headquarters in Illinois in a different building than where IAP had operated, with none of the same personnel or equipment, in a part of the country referred to as "little Palestine." *Id.* at ¶ 72. AMP held its first convention in November 2006; the fact that it drew a similar crowd of Palestinian Americans, in a heavily

Palestinian American part of the country, is not surprising. *Id.* at ¶ 91. Plaintiffs now allege that "AMP presented the same speakers, with the same participants and topics, using the same address lists." Dkt. 239 at 12. The existence of some overlap in speakers (Plaintiffs do not identify any identical roster of speakers) between two sets of Palestinian American entities also cannot suffice to plead an alter ego claim, nor does the fact that the speakers discussed topics relevant to this community. To the extent that Plaintiffs point to the newspaper edited by Osama Abuirshaid (whom Plaintiffs dropped as a defendant in this action), they add nothing to the alter ego calculus: Dr. Abuirshaid's magazine was never owned nor published by AMP or AJP. *Id.* at ¶ 93. With respect to Entity Defendants' website, Plaintiffs claim without additional support that AMP's website is "essentially identical" to IAP's, yet their 1AC points to no similarities except that "AMP claims on its website—just as IAP/AMS did—that it is 'all about educating people about Palestine' and nothing more." Dkt. 239 at 12.[15] None of these facts, stripped of the legal conclusions and speculation in which Plaintiffs cloak them, actually suffices to allege an alter ego claim. Plaintiffs' claims involving conventions, speakers and fundraising find no relevance in alter ego case law. Plaintiffs cite no supporting case law that saves their 1AC from this fatal flaw.

*iv. Plaintiffs do not sufficiently plead any "intent to escape liability"*

Plaintiffs argue that, faced with the *Boim* judgment, Defendants "changed the names of their operating corporations to mask their identity" and continued to operate rather than "attempting to deal responsibly with the judgment obligation." Dkt. 239 at 14. Like the arguments above, Plaintiffs' argument regarding "intent to escape liability" fails to cite a single case

---

[15] The presence of organizations as sponsors or vendors at their conventions does not weigh in favor of a claim of alter ego status, and Plaintiffs point to no analogous case finding that it does. Further, Plaintiffs' 1AC does not allege these sponsors also sponsored IAP; they allege that "[a]t its annual conventions, AMP sets aside space for a variety of vendors and organizations…just as IAP did at its annual conventions." Dkt. 179 at ¶ 100. These assertions fail to sufficiently plead an alter ego claim.

supporting their purported application of the facts, other than the Seventh Circuit's Opinion in this case. The excerpted portion of the Opinion merely recites what the Plaintiffs pled in their 1AC; this does not constitute a blessing of these allegations by the Seventh Circuit. *Boim,* 9 F.4th at 549. Plaintiffs' conclusion here is self-defeating as well: Plaintiffs repeatedly concede that the original *Boim* defendants became insolvent, and yet simultaneously fault the leadership of IAP for doing "essentially nothing to meet their obligation to satisfy their debt to the Boims." Dkt. 238 at 5, 9. 15, 17. IAP's failure to satisfy the *Boim* judgment, without more, does nothing to support a claim that AMP somehow became its alter ego. Fraudulent intent to escape liability in the context of alter ego is not just a generalized intent to evade the law, but a specific inquiry into whether the party used a corporate form to unjustly protect itself from liability.  This is why courts generally evaluate fraudulent intent using factors like domination and control or a transfer of assets. *See Brankin v. CSX Transp.,* No. 94 C 4926, 1996 U.S. Dist. LEXIS 16046, at *17-18 (N.D. Ill. Oct. 23, 1996) (explaining that "the mere existence of a sister corporation performing duties at a railroad's facility is not evidence of intent to avoid liability … where there is no evidence of domination or control[,]" because "such control is evidence of intent or purpose to exempt the parent from … liability"). Plaintiffs here do not allege that any material assets transferred from one organization to another, or that one of the Entity Defendants operated as a mere shell or corporate shield of an original *Boim* defendant. *See e.g. Johnke v. Espinal Quiroz,* No. 14-cv-6992, 2017 U.S. Dist. LEXIS 134769, at *29-30 (N.D. Ill. Aug. 23, 2017) (explaining that "permitting Defendants to manipulate the corporate form to escape liability … would promote injustice" where one entity was created to be and operated as a mere instrumentality of the other but used the corporate form to appear separate and protect itself from liability); *see also Sea-Land Servs., Inc. v. Pepper Source,* 941 F.2d 519, 524 (7th Cir. 1991) (noting that injustice would be promoted where the parties

14

intentionally manipulated the corporate form so that one assumed liabilities but held no assets, while the other corporation received the assets but no liability). And the fact that a new organization formed to focus on Palestinian American issues does not demonstrate intent to escape liability; it demonstrates a nonprofit void left by the death of the prior entities with that focus. Further, the original *Boim* defendants plainly did not escape liability. They were not hiding behind a corporate shell that needed to be pierced in order to access the actual bad actor. They were found liable, subsequently shut down, and rendered defunct and insolvent. AMP does not have the same leadership as the original *Boim* defendants, did not share or assume their space, and accepted no transfer of assets; Plaintiffs do not allege any facts that they did. AMP arose to fill a void; the admitted existence of that void negates Plaintiffs' conclusory statements to the contrary.

## IV.     CONCLUSION

Twenty-five years ago, Plaintiffs tragically lost their son.  For more than twenty years now, they have litigated responsibility for that loss. Plaintiffs brought their claims to court in 2000, and four years later they won. The entities held responsible by the courts did not prosper; they ceased to exist. Thirteen years after that judgment and now over four years back from today, Plaintiffs sought to continue blaming more entities. But the courts already held some of the defendants they originally sued responsible.  AMP and AJP did not exist until ten years after the death of Plaintiffs' son and two years after the judgment in Plaintiffs' favor in their original action. As understandable as Plaintiffs' need to find accountability is, these defendants do not bear that blame. Plaintiffs do not plead facts sufficiently claiming that they do. And no amount of time will change that.

For the reasons set forth herein, Defendants American Muslims for Palestine and Americans for Justice in Palestine Educational Foundation respectfully request that this Court grant their Motion to Dismiss Plaintiffs' First Amended Complaint, because Plaintiffs fail to sufficiently plead facts which could support their alter ego and successor liability claims.

Dated this 29th day of November, 2021.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
cjump@clcma.org
*Attorney for Defendants*
Alyssa F. Morrison
Texas Bar. No. 24110135
amorrison@clcma.org
*Admitted Pro Hac Vice Attorney for Defendants*
Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454


Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street
Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Christina Jump*
Christina A. Jump
*Attorney for Defendants*
