UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, individually and as administrator of the estate of DAVID BOIM, and JOYCE BOIM, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN MUSLIMS FOR PALESTINE, AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION, and RAFEEQ JABER, <br><br> Defendants. | 17 C 3591 <br><br> Judge Gary Feinerman |

### MEMORANDUM OPINION AND ORDER

The background of this case, brought by Stanley and Joyce Boim under the Anti-Terrorism Act, 18 U.S.C. § 2333(a), is set forth in *Boim v. American Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021), which held that this court has subject matter jurisdiction and remanded with instructions to "proceed to adjudication on the merits." *Id*. at 559. Familiarity with the Seventh Circuit's decision is assumed. Before the court are two Civil Rule 12(b)(6) motions, one by Defendants American Muslims for Palestine and Americans for Justice in Palestine Educational Foundation (together, "Entity Defendants"), and the other by Rafeeq Jaber. Docs. 236-237. The motions are denied.

When considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations as true and draw reasonable inferences therefrom in the plaintiffs' favor. 9 F.4th at 558-59. In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

I. **Entity Defendants**

In a prior lawsuit, *Boim v. Quranic Literacy Institute*, 00 C 2905 (N.D. Ill.) ("*Boim I*"), the Boims secured a $156 million judgment against several organizations—including American Muslim Society and its alter ego, Islamic Association for Palestine (together, "AMS/IAP"), and Holy Land Foundation for Relief and Development—for providing material support to Hamas, which murdered their son David in an act of terrorism. *See* 9 F.4th at 548. The *Boim I* defendants paid only a miniscule fraction of that judgment. Doc. 178 at ¶¶ 3, 53-54, 119. In the present suit, the Boims allege that Entity Defendants are alter egos of Holy Land and AMS/IAP, making them liable for the unpaid portion of the *Boim I* judgment. *Id*. at ¶ 6; *see* 9 F.4th at 547.

As the Seventh Circuit observed, the Boims' "complaint is replete with factual allegations … show[ing]" that Entity Defendants are "a disguised continuance of [AMS/IAP] and Holy Land." 9 F.4th at 555. Specifically, the Boims allege facts supporting each factor the Seventh Circuit identified as relevant to a determination of alter ego liability in the context of this case: "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability." *Id*. at 559. Although other facts could be relevant as well, *ibid*., the parties' briefs focus on those four factors, Doc. 236-1 at 10-18; Doc. 239 at 10-14; Doc. 241 at 10-17.

First, the complaint alleges substantial overlap in leadership between Entity Defendants and AMS/IAP. Doc. 178 at ¶¶ 77-84. Three AMS/IAP board members became Entity Defendants' board members. *Id*. at ¶ 80. Close relatives of two other AMS/IAP board members joined Entity Defendants' boards. *Id*. at ¶¶ 81-82. Three individuals who were "actively involved with IAP/AMS" joined Entity Defendants' boards, including two who held leadership positions in Holy Land and IAP affiliates. *Id*. at ¶ 84. IAP's executive director became Entity Defendants' executive director and/or director of operations. *Id*. at ¶¶ 120-121; *see also id*. at

2

¶ 75 (alleging that IAP's executive director "was brought into [American Muslims for Palestine] to 'help the organization start functioning,' exactly as he had done for IAP/AMS"). Jaber—a founder of AMS and president of IAP, *id*. at ¶ 18—is "a central participant in board-level business decisions" for Entity Defendants. *Id*. at ¶¶ 80, 117. Thus, although they do not completely overlap, the respective leaderships of AMS/IAP and Entity Defendants are substantially similar.

Second, the complaint alleges that Entity Defendants share the same organizational purpose—providing indirect support for Hamas—as Holy Land and AMS/IAP. *Id*. at ¶¶ 5, 99-108. In particular, the complaint alleges that Entity Defendants used Holy Land's and AMS/IAP's intangible assets "to raise money, spread the organization's message, advance the organization's pro-Hamas/anti-Israel political objectives, provide a fundraising platform for pro-Hamas intermediary organizations, and … provide indirect support for Hamas itself," just as Holy Land and AMS/IAP had. *Id*. at ¶ 89.

Third, the complaint alleges that Entity Defendants' operations are substantially similar to those of Holy Land and AMS/IAP. As the complaint recounts, "among the most significant activities of IAP and AMS was an annual conference." *Id*. at ¶ 90. After Holy Land and AMS/IAP purportedly closed, "the conferences continued under [American Muslims for Palestine's] auspices" months later, with the same "audience, content, format, management, speakers, and … message." *Id*. at ¶ 91. In addition, Entity Defendants allegedly aligned themselves with a newspaper that "replace[d]" IAP's newspaper, having an "essentially identical" format, content, target audience, website, and advertising base. *Id*. at ¶¶ 93, 124. And, as noted, Entity Defendants allegedly continued to provide the same indirect support for Hamas that Holy Land and AMS/IAP had. *Id*. at ¶¶ 5, 99-108.

3

Finally, the complaint alleges that Entity Defendants were formed with unlawful motive to escape liability for the *Boim I* judgment. *Id*. at ¶ 74 ("On information and belief, the leaders of the IAP/AMS organization claimed IAP and AMS had closed down and ceased operations for the purpose of deflecting Plaintiffs' enforcement efforts and evading further liability."); *id*. at ¶ 76 ("[T]he IAP/AMS organization's leaders deliberately and successfully evaded Plaintiffs' enforcement efforts by means of false claims that the IAP/AMS organization had been shut down and ceased to operate. They obscured the identity of the IAP/AMS organization as the predecessor of [Defendant American Muslims for Palestine] and the source of its critical assets, leadership and mission."). The complaint further alleges that the organizers of the Entity Defendants referred to their establishment as a "transition period" following the *Boim I* judgment and wind-up of Holy Land and AMS/IAP, which supports an inference that the organizations were created to avoid paying that judgment. *Id*. at ¶¶ 67, 69; *see* 9 F.4th at 558 (noting that the "transition" messages, taken in the light most favorable to the Boims, "show[] fraudulent intent to avoid liability—one factor supporting alter ego liability, not negating it").

In sum, the pertinent factors identified by the Seventh Circuit and discussed by the parties support the Boims' claim that Entity Defendants are liable for the *Boim I* judgment as alter egos of Holy Land and AMS/IAP. The claim accordingly survives dismissal.

**II.     Jaber**

The Boims seek to pierce the corporate veil between AMS/IAP and Jaber, rendering him liable for the *Boim I* judgment as those entities' alter ego. Doc. 178 at ¶¶ 171-175. The Boims also claim that Jaber fraudulently concealed material facts about AMS/IAP's assets as part of their "transition" to Entity Defendants. *Id*. at ¶¶ 179-185. Jaber moves to dismiss both claims.

4

A. Alter Ego/Veil Piercing Claim

Jaber's and the Boims' briefs do not distinguish between "alter ego" and "veil piercing," Doc. 237-1 at 12-14; Doc. 238 at 11-14, so for ease of exposition the court will focus on veil piercing. "Illinois law permits veil piercing when two separate prongs are met: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012) (internal quotation marks omitted). The complaint satisfies both prongs.

As to the first, the complaint alleges that "Jaber controlled [AMS/IAP] and used them as a front to advance his personal objectives." Doc. 178 at ¶ 163. The complaint further alleges that Jaber exercised personal control over those organizations, corporate formalities notwithstanding. *Id*. at ¶ 119 (alleging that Jaber "personally oversaw the windup of IAP/AMS" and failed to inform AMS/IAP board members of the *Boim I* judgment and resulting payment obligations); *id*. at ¶ 124 (alleging that "Jaber declined to allow IAP/AMS to sell" its affiliated newspaper, despite receiving an offer to purchase it, thereby allowing the newspaper's successor to support Entity Defendants); *id*. at ¶ 174 (alleging disregard for corporate formalities). Those allegations support an inference that Jaber was the "dominant personality" and that AMS/IAP was a "sham" acting at his "whim." *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610-11 (7th Cir. 2009); *see also Wachovia*, 674 F.3d at 754-55 (affirming veil piercing based on an individual defendant's "domination of [the entity's] decision-making," which effectively made other officers and employees "nonfunctioning").

The second prong of the veil piercing inquiry can be satisfied "*either* [by] the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice." *Sea-Land Servs., Inc. v.*

5

*Pepper Source*, 941 F.2d 519, 522 (7th Cir. 1991) (citation omitted). As shown below, the complaint adequately alleges fraudulent conduct. *See Wachovia*, 674 F.3d at 756 ("This prong requires something less than an affirmative showing of fraud, but something more than the mere prospect of an unsatisfied judgment.") (internal quotation marks omitted).

      B.      **Fraudulent Concealment Claim**

Rule 9(b) requires that fraudulent concealment claims be pleaded with particularity. *See Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) ("We have summarized the particularity requirement as calling for the first paragraph of any newspaper story: 'the who, what, when, where, and how.'"). As Jaber acknowledges, Doc. 242 at 9, the particularity requirement is flexible and context dependent. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("Yet, because courts and litigants often erroneously take an overly rigid view of the [who, what, when, where, and how] formulation, we have also observed that the requisite information … may vary on the facts of a given case."); 2 *Moore's Federal Practice* § 9.03[b] (3d ed. updated 2022) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, where the omitted facts should have been stated, and the way in which the omitted facts made the representations misleading.").

The complaint meets that standard by alleging that Jaber's March 2005 deposition testimony given as part of post-judgment enforcement proceedings in *Boim I*—as well as his subsequent conduct in turning over AMS/IAP assets and participating in Entity Defendants' events—misleadingly omitted material facts about AMS/IAP's disguised continuance and assets. Doc. 178 at ¶¶ 54, 183-184. The complaint also specifies the material facts allegedly omitted by Jaber, *id.* at ¶ 182 (alleging that he fraudulently concealed that "IAP/AMS was resuming

6

operations and fundraising" as Entity Defendants, that "IAP/AMS's intangible assets and goodwill were being utilized and exploited to permit [Entity Defendants] to stage successful and lucrative events and engage in fundraising," and that "IAP/AMS retained a valuable newspaper … which it had not monetized"), and the misleading nature of those omissions, *id*. at ¶¶ 57, 184-185 (alleging that the Boims were misled into discontinuing efforts to enforce the *Boim I* judgment). At this stage, nothing more is required.

Jaber argues that the Boims do not plead facts supporting a duty to disclose, a necessary element of a fraudulent concealment claim. Doc. 237-1 at 16-18; *see Wigod*, 673 F.3d at 571 (holding that a fraudulent concealment claim requires showing that the defendant "was under a duty to disclose to the plaintiff"). That argument fails. A duty to disclose can arise from a fiduciary relationship. *See Wigod*, 673 F.3d at 571 ("A duty to disclose would arise if plaintiff and defendant are in a fiduciary or confidential relationship … .") (internal quotation marks omitted). The complaint alleges that Jaber was the president and director of AMS/IAP until those insolvent organizations dissolved, Doc. 178 at ¶¶ 9, 180, making him by operation of law a fiduciary of AMS/IAP's creditors, including the Boims. *See Workforce Sols. v. Urb. Servs. of Am., Inc.*, 977 N.E.2d 267, 284 (Ill. App. 2012) ("[O]nce a corporation becomes insolvent, an officer's fiduciary duty extends to the creditors of the corporation because, from the moment insolvency arises, the corporation's assets are deemed to be held in trust for the benefit of its creditors."). It follows, at least on the pleadings, that Jaber owed the Boims a duty to disclose. And although Jaber suggests that any fraudulent concealment claim is implausible because Entity Defendants are not disguised continuances of AMS/IAP, Doc. 242 at 7-8, as shown above, the Boims plausibly allege that Entity Defendants are their alter egos.

7

Finally, Jaber asserts that the fraudulent concealment claim is untimely under Illinois's five-year statute of limitations. Doc. 237-1 at 18-19; *see* 735 ILCS 5/13-205. Under Civil Rule 8(a), a complaint "need not anticipate or overcome affirmative defenses such as those based on the statute of limitations," making dismissal on limitations grounds appropriate only "if a plaintiff alleges facts sufficient to establish a statute of limitations defense." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) ("When a defendant charges noncompliance with the statute of limitations, dismissal under Rule 12(b)(6) is irregular, for the statute of limitations is an affirmative defense.") (internal quotation marks and alterations omitted). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

The statute of limitations "begins to run when the claimant discovers or should have discovered that he has been injured by a wrongful act." *Siragusa v. Collazo (In re Collazo)*, 817 F.3d 1047, 1050 (7th Cir. 2016). The complaint's gravamen is that Jaber and others undertook extensive efforts to conceal Entity Defendants' relationship to Holy Land and AMS/IAP. Doc. 178 at ¶¶ 4-5, 63-64. Given those allegations, it is conceivable that the Boims did not discover and had no reason to discover the deception until 2012—five years before they filed this suit—at the earliest.

Because the Boims have not "affirmatively plead[ed] [themselves] out of court" by alleging facts that "plainly reveal that the action is untimely," *Chi. Bldg. Design*, 770 F.3d at 614

8

(internal quotation marks and alterations omitted), the fraudulent concealment claim cannot be dismissed on limitations grounds. Jaber may renew his statute of limitations argument on a more developed factual record on summary judgment or at trial.

## Conclusion

Defendants' motions to dismiss are denied. Defendants shall answer the operative complaint by June 7, 2022.

May 17, 2022

_____
United States District Judge