IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; and RAFEEQ JABER <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> **Hon. Gary Feinerman** |

**PLAINTIFFS' MOTION TO COMPEL
COMPLETE RESPONSES TO THEIR FIRST SETS OF DOCUMENT REQUESTS**

For the past several months, Plaintiffs Joyce and Stanley Boim (the "Boims") have attempted to resolve several discovery disputes with Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine ("AJP," referred to collectively as AMP/AJP) and Rafeeq Jaber ("Jaber," together with AMP and AJP the "Defendants"). Unfortunately, the parties are at an impasse stemming from a fundamental disagreement about the appropriate temporal scope of discovery as well as Defendants' duties to cooperate on discovery issues involving the collection of electronically stored information ("ESI").

Defendants object to producing any information outside of a relatively short time frame – the years 2005-2010. This blanket attempt to narrow discovery should be summarily overruled. The Boims have alleged that Defendants are the alter ego of two organizations (the Islamic Association for Palestine ("IAP") and the American Muslim Society ("AMS," hereinafter, referred to collectively as "IAP/AMS") found liable for the death of their son. Prior to this case

moving into discovery, the Seventh Circuit explained several factors that are relevant to the alter ego analysis in the context of "terrorism financing nonprofit organizations." Now that fact discovery has commenced, the Boims are entitled to discovery into information evidencing the existence or non-existence of those factors, regardless of whether the information falls within the narrow time frame proposed by Defendants.

In addition, the Boims' efforts to obtain discovery have been derailed by Defendants' refusal to cooperate or provide any transparency into their efforts to collect and search relevant information. This is especially troubling given that, to date, Defendants have produced only 31 pages of documents in response to the discovery requests the Boims served in the fall. The Boims have repeatedly attempted to confer with Defendants to determine what potentially discoverable information exists and what efforts were made to collect and search this information. But Defendants have rebuffed all the Boims' attempts to inject transparency into the discovery process. As a result, the Boims are left with only a handful of documents – all of which were publicly available – and numerous questions about what Defendants actually did to search for responsive information. This is no way to conduct discovery. If Defendants are not willing to cooperate reasonably on discovery, the Court should order them to.

## I. BACKGROUND OF DISCOVERY ISSUES.

The Boims served their first set of requests for production of documents ("Requests") on August 12, 2022; Defendants served their responses and objections to those Requests on September 12, 2022. (Ex. A) In early October, the Boims sent a letter to Defendants that outlined several deficiencies in their discovery responses. (Ex. B) Among the issues outlined in that letter were the following: (1) Defendants' objection to producing any information outside of the 2005-2010 timeframe; (2) identification of Defendants' potential sources of responsive information

and the methods used to search those sources; (3) Defendants' objection to producing documents reflecting transfers of funds between AMP and AJP; and (4) Defendants' objection to producing documents concerning a 2015 event involving AMP/AJP that raised funds to be sent to Gaza.

Subsequently, the parties had multiple telephone conversations and email exchanges in an effort to resolve their discovery issues. (*See* October 25, 2022 Email Chain (Ex. C); November 21, 2022 Email Chain (Ex. D)). During those calls, Defendants indicated that they mostly intended to rely on documents they had produced during limited jurisdictional discovery several years ago[1] to respond to the Requests the Boims served in August of 2022. When the Boims inquired about the Defendants efforts to search for responsive information, Defendants invited the Boims to send a list of proposed search terms but refused to disclose any specific information about their discovery efforts, such as the potential sources of responsive information or the search terms Defendants utilized. The Boims sent a list of proposed search terms on October 21, 2022. (Ex. C, at p. 7)

On November 1, 2022, Defendants produced 31 pages of publicly available articles in response to the Boims' August 12 Requests. Following the deposition of Joyce Boim in early November, the parties conferred again on November 17 to discuss the outstanding discovery issues. During that call, Defendants reiterated that they intended to stand on their objection to producing information outside of the 2005-2010 timeframe and that they would respond to the Defendants' proposed search terms by November 30. On December 1, 2022, Defendants served supplemental responses to the Boims' Requests that mostly referenced documents Defendants previously produced during limited jurisdictional discovery. (Ex. E). The same day, Defendants

---

[1] In early 2018, Judge Coleman ordered the parties to conduct "limited jurisdictional discovery." (Dkt. 50) Pursuant to that Order, Defendants produced approximately 5,000 pages of documents, most of which were Defendants' publicly available social media posts.

objected to the vast majority of the search terms the Boims proposed on October 21, 2022. (December 1, 2022 Email Chain (Ex. F)).

## II. ARGUMENT

Rule 37 permits a party seeking discovery to move to compel production of documents or disclosure required by Fed. R. Civ. P. 26(a) where the responding party has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3). The Boims have made good faith efforts to obtain responsive documents and the required disclosures, but Defendants' have failed to comply.

1. **Defendants' objection to producing documents outside the 2005-2010 time frame should be overruled.**

By way of general and specific objections, Defendants attempt to limit the scope of discovery to the 2005-2010 timeframe. *Id.* Defendants insistence on a five-year timeframe for discovery appears to stem from a limitation imposed by Magistrate Judge Schenkier during jurisdictional discovery pursuant to Judge Coleman's directive that such discovery should be "limited." (Dkt. 50) However, that limitation no longer applies because the parties have now progressed to general fact discovery. Moreover, for the following reasons, a five-year window for discovery is not a reasonable restriction on discovery.

The Boims allege that AMP/AJP are a disguised continuance of IAP/AMS and are therefore liable for the Boim Judgment as an alter ego. As the Seventh Circuit and this Court recognized, in the context of nonprofit organizations that finance terrorism, certain traditional factors—*i.e.*, similarity of customers, transfer of tangible assets, or ownership—have little relevance to the alter ego analysis. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021). Instead, factors like overlap in leadership, similarity of organizational purpose, similarity of operations, and unlawful motive or intent to escape liability are assigned greater weight. *Id.*

As such, to prove their claim the Boims intend to present evidence that, among other things, AMP/AJP serve the same purpose as IAP/AMS, operate in the same manner, and rely on the same network of leaders and surrogates as their predecessor IAP/AMS. The Boims issued their discovery requests with these factors in mind. They identified the relevant time period as 1996 to the present because, as alleged in the Amended Complaint, Defendant Jaber directed and controlled AMP/AJP's alleged predecessors IAP/AMS as early as 1996.

Defendants maintain that because AMP/AJP was founded in 2005, nothing prior to that date could be relevant to the Boims' claims. But the date AMP/AJP was founded is not determinative of the facts supporting the Boims' alter ego claim. If Defendants have documents that pre-date 2005 and show links between the "founders" or AMP/AJP and the leaders and prominent surrogates of IAP/AMS, those documents would be relevant and should be discoverable. And Defendants contention that information post-dating 2010 is not close enough in time to the date AMP/AJP was founded similarly falls flat. The Boims maintain that AMP/AJP to this day is the alter ego of IAP/AMS. If the connections and similarity between AMP/AJP and IAP/AMS endure to this day and Defendants have information evidencing those connections and similarities, that information is highly relevant and should be subject to discovery.

Accordingly, the Boims respectfully request that the Court overrule Defendants' blanket objection to producing information outside of the 2005-2010 timeframe.

2. **Defendants should be ordered to cooperate with the Boims on ESI discovery.**

The parties have also reached an impasse due to Defendants' lack of transparency into their efforts to find and produce discoverable information. The parties have been in fact discovery for several months, but the Boims are still unsure of what potentially discoverable

information exists and whether Defendants have adequately searched that information. The Boims attempted to avoid these issues early on and foster cooperation between the parties with respect to collection and production of responsive information. For example, the Boims' Requests included a rider proposing certain protocols for handling issues concerning ESI, such as identification of data sources, accessibility of relevant ESI, preservation of ESI, and search methodology. (Ex. G (Excerpt from the Boims' Discovery Requests)) However, to date, Defendants have almost entirely refused to engage with the Boims on reasonable questions concerning their efforts to identify and collect responsive information.

During a meet and confer, counsel for the Boims asked about the data sources from which Defendants collected and searched for responsive information. Defendants refused to disclose any information regarding its search methodology, citing concerns about encroachment into "work product and attorney client privileged areas." (Ex. C, at p. 1) Contrary to Defendants' assertion, disclosing sources that contain potentially responsive information does not waive or implicate either of the aforementioned privileges; it is a routine practice in complex litigation. *See, e.g., Cary v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 19 C 3014, 2021 U.S. Dist. LEXIS 31806, at *13 (N.D. Ill. Feb. 22, 2021) (Noting that the Defendants refusal to engage in a discussion about what data sources may exist "frustrated Plaintiff's ability to do her own due diligence . . ."). Accordingly, the Boims respectfully request an order requiring Defendants to disclose their potential sources of responsive information and whether or not Defendants actually searched those sources.

Similarly, Defendants will not disclose any custodians whose email accounts were searched or the search terms that Defendants utilized to locate responsive information. There are numerous current and former AMP/AJP employees and board members who were previously

involved with IAP/AMS, including Hatem Bazian, Salah Sarsour, Sufian Nabhan, and Osama Abuirshaid. To the extent emails (or other documents) from these custodians have not been searched and collected, they should be. *See Cary*, 2021 U.S. Dist. LEXIS, at *2 (ordering the parties to meet and confer "to identify the individual custodians whose ESI should be searched for relevant and responsive information.")

Moreover, Defendants have not disclosed what search terms—if any—were used to locate responsive information and have objected to the majority of the terms the Boims proposed. Given that Defendants have only produced 31 pages of documents in response to the Boims' recent discovery requests, it is certainly reasonable for the Boims to inquire about the efforts undertaken to identify responsive information. Accordingly, Defendants should be ordered to disclose the search terms they used to locate responsive information and to run the Boims' proposed search terms against any data source from which Defendants are collecting information.

3. **Documents concerning transfers of funds between AJP and AMP.**

Defendants object to producing any documents reflecting transfers of funds between AJP and AMP when the organizations were separate legal entities,[2] maintaining that the request is "overbroad and not limited in time and scope" and "is not reasonably calculated to lead to the discovery of admissible evidence . . ." (Ex. F, at p. 17)

Contrary to Defendants' objection, records reflecting transfers of funds between AMP and AJP are relevant because such transfers would show a similarity in operations to the predecessor entities IAP/AMS. Indeed, the District Court in the original action found that although IAP and AMS were formally separate entities, they "were so intertwined" that "any

---

[2] In 2015 AJP became AMP's operating entity and now does business as AMP.

formal distinction [was] meaningless." *Boim v. Quranic Literacy Institute ("QLI")*, 340 F. Supp. 2d 885, 908 (N.D. Ill. 2004). Here, the Boims intend to show that AMP and AJP and other entities within the larger network of pro-Hamas entities operate in a similar manner. And if records of funds being freely transferred between the AMP and AJP exist, the Boims should be able to use that information to substantiate this similarity. Accordingly, Defendants' objection to producing records of funds being transferred between AMP and AJP should be overruled.

4.  **Documents concerning a 2015 fundraising event in Detroit, Michigan.**

Defendants object to producing documents concerning a 2015 fundraising event in Detroit Michigan at which over $200,000 was raised and subsequently sent to Gaza, arguing that the request is not reasonably calculated to lead to the discovery of admissible evidence and is outside the reasonable scope of time.[3]

Records reflecting AMP/AJP's involvement in raising funds to be sent overseas are relevant to the Boims' alter ego claim. In addition to acting as the primary voice and propaganda arm for Hamas in the United States, IAP/AMS also funneled money to Hamas overseas through their financial conduit the Holy Land Foundation under the guise of charity. (*E.g.*, Dkt. 179, at ¶30) The Boim allege that AMP/AJP continue this practice, albeit using different conduits because HLF was convicted of violating anti-terrorism laws over a decade ago. (*E.g., id.*, at ¶105) Therefore, evidence concerning the 2015 fundraiser (*e.g.*, documents outlining AMP/AJP's involvement, or the ultimate destination of the funds raised) is relevant to showing that AMP/AJP is continuing the work of IAP/AMS to raise money for Hamas. Accordingly,

---

[3] Defendants later state that they have no responsive information in their possession, custody, or control, but that response is subject to the aforementioned objection. Combined with Defendants refusal to disclose their search methodology, it is unclear whether any responsive information exists.

Defendants objections should be overruled, and they should be ordered to produce any documents being withheld based on those objections.

### III.     CONCLUSION.

For the foregoing reasons, the Boims request that the Court grant this motion and issue an order awarding the relief requested therein.

### LR 37.2 CERTIFICATION

I, Seth Corthell, certify that I, along with my co-counsel Daniel I. Schlessinger, consulted with counsel for Defendants, Christina Jump and Alyssa Morrison, via telephone conference on October 14 at approximately 12:00pm CDT, October 18 at approximately 9:00am CDT, and November 17 at approximately 3:00pm CST. Although the parties engaged in good faith to resolve the discovery issues laid out in this motion, through no fault of myself or my co-counsel, the parties were not able to reach an accord.

Date: December 6, 2022            Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
30 South Wacker Dr., Suite 2200
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

<u>Of Counsel</u>
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 6th day of December 2022.

*/s/ Seth H. Corthell*