# -EXHIBIT G-

# DOCUMENT PRODUCTION PROTOCOL

The following document production protocol is proffered as a guide to simplify document production, particularly cases with a potentially significant volume of electronically stored information. Plaintiff requests that the parties confer in advance of any document production.

ESI Conference

Within 14 days of receipt of these document requests, the parties shall confer to discuss ESI issues, including but not limited to:
- Preservation of relevant electronically stored information ("ESI");
- The accessibility of relevant ESI;
- The identification of data sources that will be subject to production and discovery;
- The types of metadata to be preserved and produced in discovery; and
- The search technology and methodology to be employed in the collection of relevant ESI.

Load File:

1) **.DAT file:** Load file that contains information about each document. The .DAT file should include a header row for each field, including identifiers for the beginning and end of each document. If the production includes native files, the .DAT file should also include a field for the native file path within the folder structure.

2) .**OPT file:** If the production is imaged an image load file that enables eDiscovery software to display the document images should be included.

3) **TEXT folder:** This folder should contain the OCR and/or extracted text .txt files for each of the documents produced.

4) **NATIVES folder:** This folder should contain any native files included in the production.

5) **IMAGES folder:** This folder should contain the imaged production.

The production should be de-duplicated:
- ESI vendors utilize technology that de-duplicates electronic documents based on their MD5 hash values.
- Our preference is that the minimum number of duplicates be produced and that de-duplication be conducted globally, across custodians. De- duplication across custodian means that exact duplicates of documents held by a particular custodian, as identified by MD5 hash value, but residing with another custodian will not be produced. The parties are permitted to de-duplicate identical emails using MD5 hash technology, across custodians and to reduce/suppress e-mail thread duplicates as well. In order for an email to be suppressed as a "thread duplicate," it must be wholly contained in the later, surviving email and have all of the same recipients and attachments.

The production should be searchable:

- Text should be extracted from any electronic documents that contain active, searchable content including, but not limited to email, spreadsheets, databases, web pages, presentations, delimited text files or any other electronic document created by word-processing, presentation, text-editing, database applications.

- Each hard copy (i.e. paper) document should be scanned and OCRd.

- Electronic documents such as .tiff images or .pdf files that contain text that cannot be extracted should be OCRd.

The production should be Bates labeled:

- All imaged documents should be stamped with a Bates label with a minimum six-digit numbering protocol. The number of digits in the label should consider the expected size of the production throughout litigation. A six-digit numbering protocol provides enough room for most cases. If an extraordinary amount of documents are expected to be produced, then additional digits should be considered at the start of litigation. Use underscores and hyphens instead of spaces in the Bates label. *Bates label example: DEF_000001*

- Documents designated as confidential pursuant to a protective order or stipulation should be clearly labeled as such to avoid inadvertent disclosure of confidential information.

- If documents are not being imaged and will be produced in native format only, each native file name should include a Bates number identification in lieu of a Bates label. Original file names and document metadata should be preserved and produced in the production load file.

Databases and spreadsheets should be produced in native format:

- Parties should confer prior to producing databases to reduce the burden on all parties. Databases may contain much irrelevant data and methods exist to control the output from databases. Conferring prior to production can reduce the amount of time and money spent to produce such data.
- All spreadsheets or databases created and maintained in Microsoft Excel or Microsoft Access should be produced in their native file formats (ie - .xls, .xlsx, .mdb, .csv).
- Any spreadsheets or databases created and maintained in any other format should be exported or converted to a Microsoft Excel, Microsoft Access format or a universal format such as a tab-delimited text file. Most proprietary database applications include exporting functions that provide these options.
- Native files should be named by their Bates number identification. Original file names and document metadata should be preserved and produced in the production load file.
- It is not necessary to convert spreadsheet and database files to .tiffs if they are produced in native format.
- Extracted text must be included in the load file for any documents produced in native format.

- The load file must link to the native files.

<u>Webpages</u>

- Parties should confer before producing webpages and files. While in most cases it is acceptable to print the content of web pages and extract the text for searchability, sometimes the user interface and design elements are relevant and the production format needs to be discussed. There are many ways to produce webpages: print, screenshot, active URLs that are password protected, active URLs that are not password protected, and more.

<u>Audio, Video and Other File Formats</u>

- Parties should confer prior to producing any audio and video files or any other file formats not specifically addressed above.

Date: August 12, 2022

Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
30 South Wacker Dr., Suite 2200
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

<u>Of Counsel</u>
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000