**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 17-cv-03591 |
| v. | ) | |
| | ) | **Hon. Gary Feinerman** |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION, RAFEEQ JABER | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL COMPLETE RESPONSES TO
DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS**

In 2000, Plaintiffs Stanley and Joyce Boim filed a lawsuit under the Anti-Terrorism Act ("ATA")

against The Holy Land Foundation ("HLF"), Islamic Association of Palestine ("IAP") and the

American Muslim Society ("AMS", together with HLF and IAP, the "original *Boim* Defendants"),

seeking damages for the death of their son at the hands of Hamas. *See Boim v. Quranic Literacy Inst.,*

340 F. Supp. 2d 885 (N.D. Ill. 2004). The Court entered judgment in that matter in favor of Plaintiffs,

awarding them $156 million in damages (the "*Boim* Judgment"). The Boims engaged in significant

efforts to collect on that judgment, involving numerous citations to discover assets. However, the

original *Boim* Defendants were functionally nonexistent following years of litigation, forced closure,

and the seizure of their assets by the government. Little remained to collect. The Boims therefore only

collected a small portion of that judgment.

In 2017, Plaintiffs filed this lawsuit. This time, Plaintiffs filed suit against American Muslims for Palestine ("AMP") and Americans for Justice in Palestine Educational Foundation ("AJP"), two entirely domestic U.S. nonprofits. Plaintiffs also filed suit against several individual defendants; the only remaining individual defendant at this time is Rafeeq Jaber. Plaintiffs allege that AMP and AJP (together, referred to as "AMP" or "Entity Defendants"), as well as Mr. Jaber (together with Entity Defendants, "Defendants"), are liable as the alter egos and/or successors of the original *Boim* Defendants, and that Mr. Jaber is additionally liable for fraudulent concealment. The Honorable Judge Sharon Johnson Coleman previously dismissed those claims twice for lack of subject matter jurisdiction, finding Plaintiffs' allegations insufficient to support alter ego/successor liability in federal court. In between the first and second jurisdictional dismissal, Judge Coleman permitted Plaintiffs to conduct over a year of jurisdictional discovery on the question of alter ego/successor liability. They engaged in extensive efforts, with Defendants ultimately producing thousands of responsive documents and multiple witnesses for depositions. After jurisdictional discovery concluded, Judge Coleman again dismissed the action. Following this second dismissal, Plaintiffs appealed. The Seventh Circuit remanded back to this Court with a finding that subject matter jurisdiction exists and that Plaintiffs be permitted to proceed. The parties now engage in mutual discovery for the first time in this lawsuit.

To date, and as set forth in the Parties' Joint Status Report (Doc. 270), the following discovery occurred:

- Both parties submitted Initial Disclosures

- Plaintiffs served Requests for Production of Documents on Defendants; Defendants responded to those on September 12, 2022. Thereafter, Defendants again responded by submitting additional responsive documentation;

- Defendants served Requests for Production, Interrogatories and Requests for Admission on Plaintiffs; Plaintiffs initially responded on September 16, 2022;

- Plaintiffs served third party subpoenas and are in the process of resolving those requests, likely with this Court's intervention;

- Defendants began the deposition of Plaintiff Joyce Boim. As discussed in greater detail below, Plaintiffs initially objected to Defendants deposing either Plaintiff on the grounds that they have no relevant personal knowledge. During the deposition of Joyce Boim, Plaintiffs' counsel and Ms. Boim stipulated that neither Plaintiff has any personal knowledge of the facts underlying the alter ego, successor or fraudulent concealment allegations against these Defendants.

Although Plaintiffs already had the opportunity to elicit substantial discovery from Defendants during the period of jurisdictional discovery, this is the first time Defendants have the opportunity to seek discovery responses from Plaintiffs. Despite Plaintiffs' prior discovery, the five year life of this suit to date, and the voluminous allegations in Plaintiffs' Complaint, Plaintiffs have not produced a single responsive document. To the contrary, many of Plaintiffs' responses insist that such production is premature and that "investigation continues."

Following multiple conferral conversations via both phone and e-mail, Defendants now move to compel on the following issues: (1) proper sworn verifications from the Plaintiffs; (2) accurate admissions or denials of Defendants' Requests for Admissions Nos. 4-6, 9, 11-12; (3) disclosure of sources of third party litigation funding, particularly in light of the Plaintiffs' admitted lack of any substantive personal knowledge; and, (4) specific identification of the responsive documentation, or at a minimum production at Plaintiffs' cost consistent with the Federal Rules of Civil Procedure, of the 60 boxes of documents that Plaintiffs indicate they possess and which Plaintiffs identify as "most or

all . . . could be viewed as responsive." For the reasons set forth below, Defendants respectfully move for an order compelling Plaintiffs to amend or supplement their responses in accordance with all discovery obligations.

## I. ARGUMENT

Under Fed. R. Civ. P. 37, a party seeking discovery may request an order compelling the answering party to provide answers in compliance with their discovery obligations. Fed. R. Civ. P. 37(a)(3). Through conferral, Defendants have made a good faith effort to obtain complete and accurate responses from Plaintiffs; however, the Parties are at an impasse. For ease of reference, Defendants' attach the relevant requests and responses to this filing as Exhibit A. Defendants discuss each deficient response below.

### A. Proper Verifications to Defendants' Interrogatories

Plaintiffs initially did not provide any verifications alongside their interrogatory responses, rendering them effectively useless as evidence. *See Bardwell v. K&R Delivery, Inc.,* 1987 U.S. Dist LEXIS 11738 (N.D. Ill. Dec. 11, 1987) (explaining that unsigned and unverified responses do not qualify as proper answers). When Defendants' counsel requested verifications, Plaintiffs' counsel responded that he had been contemplating how to provide accurate verifications, because Plaintiffs do not have any personal knowledge of the facts underlying their Complaint. Ultimately, after several weeks of back and forth, Plaintiffs' counsel provided verifications from Plaintiff Joyce Boim (although the discovery was directed at Stanley Boim), stating that Ms. Boim "read the foregoing Answers . . . and declare[s] that the information set forth therein is true and correct to the best of my knowledge." Exhibit B. On November 21, 2022, after receiving the verifications, Defendants' counsel alerted Plaintiffs' counsel to 28 U.S.C. § 1746, which sets forth the specific language required for verifications sworn by an out-of-country party since the Boims reside in Israel. Defendants' counsel provided

Plaintiffs with a link to the statute. Thereafter, Plaintiffs' counsel assured Defendants' counsel that he would provide new verifications with the proper statutory language, if Defendants request that. Defendants confirmed that they do. As of the filing of this motion, weeks after that communication, Plaintiffs have still not provided adequate verifications. The only verifications Plaintiffs <u>have</u> provided are signed by the incorrect Plaintiff, and lack the necessary statutory language.

Defendants insist on proper verifications not for purposes of harassment or delay, but because unsworn answers do not constitute evidence which can support later motions. *See Villareal v. El Chile, Inc.* 226 F.R.D. 207 (N.D. Ill. 2010). Both parties' best interest support fully sworn interrogatory answers on which they can rely. Defendants compel to ensure they are able to hold Plaintiffs to the answers which the Federal Rules of Civil Procedure require be sworn. Accordingly, Defendants respectfully request an order from this Court compelling Plaintiffs to provide fully and properly sworn verifications to their interrogatory answers.

**B.      Plaintiffs' Responses to Defendants' Requests for Admission**

Plaintiffs provided deficient responses to Defendants' Requests for Admission Nos. 4-6, 9, and 11-12. These Responses fail to provide a full and contemporaneously accurate admission or denial. Instead, Plaintiffs object to the Requests and deny them as "premature as discovery is still ongoing." Plaintiffs' refusal to admit or deny Defendants' requests until (presumably) the last moment of discovery is inadequate, as Defendants should not be required to wait until that time to re-assert their Requests to obtain a substantive answer or have the first opportunity to question Plaintiffs on their responses to those Requests for Admissions. Defendants specifically tailored their Requests for Admissions to material facts likely to be relevant to potential motions for summary judgment; Defendants' requests on these points are both relevant and standard procedure.  Plaintiffs nonetheless maintain their position that the combined objection and denial are appropriate because they "should

not have to admit or deny" the existence of evidence on certain points "until [they have] had the opportunity to complete" discovery. Plaintiffs cite no authority supporting this assertion. Exhibit C, Emails from Plaintiffs' counsel. This argument lacks merit.

Defendants' Requests for Admission are in the present tense. For example, Request No. 4 asks Plaintiffs to "[a]dmit that you have no evidence that any tangible assets or funds passed from the Judgment Defendants to Entity Defendants." Exhibit A. This Request asks about presently existing evidence; it does not require Plaintiffs to predict what evidence they may or may not locate at a later date. To the extent not already clear, the parties' conferral discussions certainly clarified that position. Nothing precludes Plaintiffs from amending their responses if/when they do obtain any responsive evidence at a later date; in fact, standard discovery obligations require them to do exactly that. Providing accurate answers at this time creates no prejudice to Plaintiffs. Further, Plaintiffs' refusals to answer are inconsistent with several of their other discovery responses. For example, with respect to RFA No. 4, as excerpted above, Defendants served a correlating Request for Production seeking documents supporting Plaintiffs' allegations that "any tangible assets of the Judgment Defendants were passed on to the Entity Defendants." Exhibit A. Plaintiffs responded that "[t]he Boims are not currently in possession of responsive documents [;] [i]nvestigation continues." However, Plaintiffs then denied the RFA asking whether they have any evidence of the passing of tangible assets between the relevant entities. These responses contradict one another.

Defendants' purpose in requesting the relevant admissions is not to back Plaintiffs into an evidentiary corner or preclude any later amended by Plaintiffs—Plaintiffs are free to amend their discovery responses as appropriate at any time. But Plaintiffs allege an atypical alter ego/successor liability argument that eschews many of the usual factors. Defendants are therefore attempting to identify exactly what factors Plaintiffs rely upon and support with evidence. Parties may properly

6

utilize requests for admission to "narrow the issues for trial" to those that are genuinely contested. *Vergara v. City of Waukegan,* No. 04 C 6586, 2007 U.S. Dist. LEXIS 82562, at *3 (N.D. Ill. Nov. 6, 2007). Defendants seek only that.

Viewed in the context of this case, Plaintiffs' refusals to substantively respond bear even less credibility. Plaintiffs previously obtained over a year of jurisdictional discovery that functionally mirrored the currently pending discovery (many of Plaintiffs' requests to Defendants are identical to the previous jurisdictional discovery). Plaintiffs have zealously defended their right to make the allegations in their First Amended Complaint at every stage over the five-plus year life of this lawsuit. They now must prove those allegations. Defendants simply ask Plaintiffs to admit or deny whatever evidence they possess at this stage. In light of Plaintiffs' refusal, Defendants respectfully request an order from this Court compelling timely responses, prior to the close of discovery.

## C.      Disclosure of Third-Party Litigation Funding

Defendants next move to compel disclosure of third-party litigation funding that Defendants have received or are continuing to receive in this matter. Exhibit A.  Defendants recognize that sources of funding are not automatically discoverable.  Yet where that information relates to any claim or defense and proportional to the needs of the case, it is permissible. *See* Fed. R. Civ. P. 26(b)(1). Although this Court has had little opportunity to examine the discoverability of third party litigation funding, other courts' decisions provide guidance. The Arizona court in *Cont'l Circuits LLC v. Intel Corp.* faced a request to compel production of information regarding the plaintiffs' financial resources, including any outside funding. 435 F. Supp. 3d 1014, 1018-19 (D. Ariz. 2020). The court found that it had "little difficulty concluding that the requested documents and information are relevant" where they "concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial[,]" because "Defendants are entitled to conduct discovery that may refute potential trial themes.

*Id.* Here, Defendants make no secret of their theory that Plaintiffs brought this matter not because any evidence supports Defendants as alter egos/successors, but rather as an attempt to paint with an overly broad brush against any Palestinian advocacy groups. The identity of entities or individuals providing financial backing to this litigation directly relates to that theme.

Further, during the deposition of Joyce Boim, Plaintiffs' counsel and Ms. Boim stipulated on the record that neither Plaintiff has any factual knowledge of the alter ego/successor liability claims contained in Plaintiffs' Complaint. Exhibit D. In fact, Plaintiffs' counsel originally declined to make Plaintiffs available for depositions on exactly these same grounds. If Plaintiffs themselves have no knowledge of even the most basic facts underlying the allegation that Defendants are liable to them for the original *Boim* Judgment, then Defendants certainly have a legitimate and strategic interest in knowing who is driving the litigation. While Defendants do not expect Plaintiffs to possess a sophisticated understanding of the legal theories in their case, Defendants did presume that Plaintiffs themselves have some understanding of why they bring this case against these Defendants. The concession that Plaintiffs have no such knowledge bolsters Defendants' concern that this case represents an attempt not to legitimately collect a judgment from those who owe it, but to intimidate and/or penalize Palestinian advocacy groups simply for advocating for education and knowledge about Palestine. Although not automatically discoverable, third-party litigation funding meets the standard for relevance here.

**D.      Identification of Responsive Documents Contained in "60 Boxes" in Plaintiffs' Possession**

During counsels' October 18, 2022 conferral call, Defendants inquired about whether Plaintiffs have any responsive documentation whatsoever in their possession, as they produced none. Plaintiffs' counsel responded that they have "about 60 boxes of documents (much of which are archived from the first Boim case), most or all of which could be viewed as responsive to [Defendants'] requests." Exhibit

E, Email confirming the contents of the October 18, 2022 call. Counsel discussed the best method to exchange this documentation, and Plaintiffs' counsel maintained their position that they will only copy the documents at Defendants' expense and send them, or that Defendants' counsel could travel to Chicago and go through the files themselves, also at their own expense. Defense counsel declined both offers, as this is not a burden the Federal Rules of Civil Procedure require Defendants to bear. Plaintiffs provide no information regarding the categories of documents, outside of the general representation that they are files from the original *Boim* action. Plaintiffs do not identify to which requests, or even category of requests, these documents may be responsive. Plaintiffs' counsel declines to produce concededly responsive documentation within their possession, unless Defendants agree to pay for that production and/or determine for themselves which pages out of sixty boxes are in fact responsive. Plaintiffs' position contradicts traditional discovery burdens. Defendants' counsel is a nonprofit law center located in Texas. Travel to Chicago to sift through volumes of unidentified documents, which Plaintiffs' counsel has not indicated are organized or indexed, to self-determine relevance of any and all documents from a prior lawsuit, constitutes a time-intensive and costly burden which the Federal Rules of Civil Procedure impose on the responding party, not the requesting party.

Plaintiffs' offer to produce these documents at Defendants' cost runs afoul of established law, which honors the "general presumption in discovery . . . that the responding parties must bear the expense of complying with discovery requests" unless they can demonstrate some compelling reason to alter that presumption. *United States EEOC v. Dolgencorp, LLC,* NO. 13-cv-04307, 2014 U.S. Dist. LEXIS 102933, at *11-13 (N.D. Ill. July 29, 2014). Plaintiffs fail to articulate any reason to do so here. *See e.g., Mervyn v. Atlas Van Lines, Inc.,* No. 13 C 3587, 2015 U.S. Dist. LEXIS 144376, at *15-17 (N.D. Ill. Oct. 23, 2015) (explaining that a party "failed to show why production" or review of "several thousand documents" created an undue burden where they had not provided any "cost or time

9

estimates" or set forth any compelling justification for shifting the burden to the non-producing party).

Courts possess the discretion to determine who bears the cost of discovery, and look to a number of

factors in deciding whether to shift away from the traditional presumption. Courts consider factors

"including how narrowly tailored the request is, cost, availability of the information, importance of the

issues at stake, and the benefits to the parties." *Guy Chem Co. v. Romaco AG,* 243 F.R.D. 310, 312-13

(N.D. Ind. 2007). None of these factors weigh in Plaintiffs' favor here. Plaintiffs' burden in searching

their own files, contained in their own office, to produce responsive documentation is minimal.

Defendants, on the other hand, would need to travel to Chicago, incur significant time and financial

costs, and sort through 60 boxes of unfamiliar files (the contents of which are not specified) to

determine whether and to what extent any number of those files includes responsive information.

Further, Plaintiffs represent that these boxes contain documents relating to the original *Boim* Judgment;

this documentation is presumably extremely relevant to the present matter. Plaintiffs' causes of action

in this matter hinge on their allegations that the current Defendants are liable for that prior judgment;

Plaintiffs must demonstrate substantial continuity between the two sets of entities in order to prove

their claims. Sixty boxes of documents describing the prior entities may well be relevant. This

importance outweighs any potential burden imposed on Plaintiffs. *See Estate of Belbachir v. United*

*States,* No. 08 C 50193, 2010 U.S. Dist. LEXIS 82878, at *18 (N.D. Ill. Aug. 13, 2010) (explaining

that "the relative importance of any discovery . . . outweighs the burden" of having to "identify and

search" the relevant files). The fact that Plaintiffs fail to provide Defendants with a single responsive

document in this matter to date far heightens the importance that this Court order Plaintiffs to produce,

at their own cost, responsive documentation.

In addition to Plaintiffs' refusal to bear the cost of their own production, they also fail to

adequately identify the potentially responsive documentation contained in these 60 boxes. Plaintiffs do

not indicate that the boxes are indexed or labeled in any usable way, nor have they provided specifics on what information is contained therein. This Court previously found that archived documents produced "must be thoroughly indexed, the boxes accurately labeled and the depository kept in good order" and that boxes that "have no labels or labels that provide no indicia of the contents of those boxes" are not sufficient. *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.,* 240 F.R.D. 401, 411 (N.D. Ill. 2007). Even where a party purports to produce documents within the usual course of business, as Fed. R. Civ. P. 34 allows, this does not entirely relieve them of the duty to review or organize those documents. One "of the reasons for allowing documents to be produced as they are kept in the usual course of business is to preclude artificial shifting of documents." *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 351, 363 (N.D. Ill. 2005). However, as explained in *In re Sulfuric Acid,* while businesses "have an obvious incentive to keep needed documents in a way that maximizes their usefulness in the day-to-day operations of the business," that incentive "vanishes" once documents are no longer used with regularity and it is therefore "no longer essential that they be kept with any degree of organization." *Am. Int'l Specialty Lines Ins. Co.,* 240 F.R.D. at 410. In that case, this Court found that corporate documents in storage were "not kept in 'the usual course of business'" under Rule 34(b), and the proper course of action was for the producing party to organize the requested documents. *Id.* Here, Plaintiffs responded only that the files are from the original *Boim* Judgment; that Judgment is nearly twenty years old. Defendants presume that these files are no longer regularly utilized. Accordingly, even Rule 34's "usual course of business" prong requires far more from Plaintiffs here.

Finally, Plaintiffs fail to identify to which requests, or categories of requests, these documents are responsive. Defendants' discovery requests include requests for production, requests for admissions and interrogatories. Defendants request that Plaintiffs specify which requests or interrogatories these documents are purportedly responsive to, and what documents they possess which are responsive to

11

each. To the extent that the documents are responsive to any interrogatories, the "burden for identifying the parts of that production that contain responsive information falls on plaintiffs as the answering party—not on defendants." *ED&F Capital Mkts. Ltd. V. JVMC Holdings Corp.,* NO. 18 C 5704, 2020 U.S. Dist. LEXIS 112706, at \*17-19 (N.D. Ill. June 25, 2020). Plaintiffs "must do more than identify a list of documents that contain the information that defendants are seeking." *Id.* They must also "provide a narrative response to these interrogatories" that contains the information relied upon. *Id.* An "interrogatory answer should stand on its own, be complete" and not rely on "pleadings, depositions, other documents, or other interrogatories." *Ropak Corp. v. Plastican, Inc.,* No. 04 C 5422, 2006 U.S. Dist. LEXIS 19912, at \*12-13 (N.D. Ill. Apr. 17, 2006); *see also Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.,* 59 F. App'x 830, 838-39 (7th Cir. 2003) (explaining that interrogatory responses referring to documents must sufficiently identify the documents relied upon). Accordingly, Plaintiffs must identify the relevant interrogatory responses and specifically point to the correlating responsive documentation.

Defendants respectfully request an order from this Court compelling Plaintiffs to produce the relevant, responsive contents of the 60 boxes of documentation at their own cost, to organize those documents into a usable format if they are not already in that form, and to identify which documents are responsive to which requests.

## II.     CONCLUSION

For the reasons set forth herein, Defendants respectfully request this Court grant their Motion and issue an order awarding the relief requested and compelling discovery and production.

Dated: December 16, 2022

Respectfully submitted

_/s/ Christina A. Jump_____
Christina A. Jump
Alyssa F. Morrison
Constitutional Law Center for
Muslims in America
100 N. Central Expy. Ste 1010
Richardson, TX 75080
(972) 914-2507

Local Counsel
Thomas A. Durkin
Durkin & Roberts
2446 North Clark Street
Chicago, IL 60614
(312) 913-9300

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 16, 2022, she caused the foregoing

Motion to be served by electronically filing with the Clerk of the Court for the Northern District

of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel

for all parties of record.

/s/ Christina A. Jump

13