# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br><br> Hon. Gary Feinerman |

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT RAFEEQ JABER'S DISCOVERY REQUESTS

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff Stanley Boim, Individually and as Administrator of the Estate of David Boim, deceased (the "Boims"), by and through their attorneys, Jaszczuk P.C., hereby submits the following objections and answers to the First Set of Discovery Requests propounded by Defendant Rafeeq Jaber.

## PRELIMINARY STATEMENT

1.     The Boims' investigation and development of all facts and circumstances relating to this action is ongoing.  These objections and answers are provided without prejudice to, and are not a waiver of, the Boims' right to rely on other facts or documents at trial.

2.     The Boims' investigation into this matter is ongoing and they will supplement their answers, if necessary.

3.     By providing the accompanying answers and objections to Jaber's  Requests and Interrogatories, the Boims do not waive, and hereby expressly reserve, their right to assert any and

all objections as to the admissibility of such answers into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, the Boims provide their answers and objections herein without in any way implying that they consider the Interrogatories, and their answers thereto, to be relevant or material to the subject matter of this action.

4.      An answer to a Request or Interrogatory stating objections and/or indicating that information will be produced shall not be deemed or construed to mean that there is, in fact, responsive information, that the Boims performed any of the acts described in the Request or Interrogatory, definitions, and/or applicable instructions, or that the Boims acquiesce to the characterization of the conduct or activities contained in the Request or Interrogatory, or definitions and/or instructions applicable to the Request or Interrogatory.

5.      The Boims expressly reserve the right to supplement, clarify, revise, or correct any or all of the answers or objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental or amended answer(s).

## **GENERAL OBJECTIONS**

1.      The Boims object to each of Jaber's Requests and Interrogatories, and the accompanying definitions and instructions, to the extent any Request or Interrogatory purports to call for the disclosure of information constituting, reflecting, or revealing information protected by the attorney-client privilege, attorney work-product protection, or any other applicable privilege or immunity from discovery. In the event that any otherwise privileged information is disclosed by the Boims, such production is inadvertent and not a waiver of any applicable privilege.

2.      The Boims object to each of Jaber's Requests and Interrogatories to the extent that any Request or Interrogatory seeks information that is not in the Boims' possession, custody, or

control.

3.     The Boims object to each of Jaber's Requests and Interrogatories and the accompanying definitions and instructions to the extent any Request or Interrogatory purports to impose duties, obligations, or burdens on the Boims that exceed the requirements of Rules 33 or 34 of the Federal Rules of Civil Procedure.

4.     The Boims object to each of Jaber's Requests and Interrogatories to the extent that any Request or Interrogatory purports to require the disclosure of information that the Entity Defendants. their attorneys, or other agents already possess (including but not limited to all pleadings and filings in this action and matters of public record).

5.     The Boims objects to each of Jaber's Requests and Interrogatories to the extent that any Request or Interrogatory purports to call for the disclosure of information or the production of documents that are not available through a reasonable and diligent search of the Boims' records, or that otherwise impose an undue burden on the Boims.

6.     The Boims object to each of Jaber's Requests and Interrogatories to the extent that any Request or Interrogatory is vague, ambiguous, or otherwise utilizes undefined terms that are subject to multiple reasonable interpretations.  The Boims will attempt to respond to each Request or Interrogatory to the best of their ability based upon their understanding of any such Request or Interrogatory, if possible.

7.     The Boims' answers set forth below are made based on the information currently within their knowledge and information.  The Boims object to any Request or Interrogatory that purports to require the Boims to ascertain information not currently within their knowledge based on a reasonable investigation.

8.     Each and every answer below is made subject to the foregoing General Objections,

regardless of whether a general or specific objection is stated in the answer to a particular Request or Interrogatory, and the Boims do not waive any General Objections not referred to in a particular answer.

## **INTERROGATORIES**

**Interrogatory No. 1:** Please identify any and all individual(s) involved in responding to these Interrogatories as well as Defendant's Requests for Production and Admission, including for each identified individual a brief description of their involvement in responding.

RESPONSE: The Boims object to this Interrogatory to the extent it seeks production of information that is protected by the attorney-client privilege, attorney work-product protection, or any other applicable privilege or doctrine.

Subject to and without waiving their General or Specific Objections, the Boims state that counsel prepared these responses based on information discerned from the record in the lawsuit captioned *Boim v. Quranic Literacy et al.,* 1:00 cv 02905 in the U.S. District Court for the Northern District of Illinois, from publicly available documents, and from the jurisdictional discovery provided in this matter.

**Interrogatory No. 2:** Please identify any and all persons you believe have knowledge that supports the factual allegations raised in Plaintiffs' First Amended Complaint.

RESPONSE: Subject to and without waiving its general or specific objections, the Boims reference Section (i) of their Initial Disclosures, served on July 6, 2022. The Boims' investigation continues

**Interrogatory No. 3:** Please identify by name, title/role and contact information, any and all individuals on whom you intend to rely as a witness or from whom you intend to seek testimony,

evidence or other information from during the pendency of this proceeding, as it relates to your claims against Defendant Jaber.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims will identify their fact and expert witnesses in compliance with the Federal Rules of Civil Procedure, Local Rules of the Northern District of Illinois, and any orders of the Court.

**Interrogatory No. 4:** Please identify any and all documents, facts or information you believe support your allegations that Defendant Jaber is an alter ego/successor of any Judgment Defendant.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims further object to the extent it requires them to make a legal conclusion as to whether a document, fact, or certain information supports their allegations.

Subject to and without waiving their general or specific objections, the Boims state that several IAP/AMS leaders, including but not limited to, Rafeeq Jaber, Osama Abuirshaid, and Abdelbassett Hamayel brought the skills, networks, and name recognition they developed at IAP/AMS to AMP/AJP; AMP/AJP was created surreptitiously by a group of former IAP/AMS surrogates and supporters, who at first attempted—but ultimately failed—to distance themselves from IAP/AMS leaders; former IAP/AMS and current AMP/AJP leader Osama Abuirshaid publishes an Arabic language newspaper, Al Meezan, that is essentially identical to the newspaper, Al Zaytouna, he published at IAP/AMS; in 2006 former IAP/AMS and current AMP/AJP leader Osama Abuirshaid was invited to join the organization that became AMP/AJP by two former IAP/AMS surrogates, Hatem Bazian and Salah Sarsour.

In addition, the Boims state that the First Amended Complaint in this action recites many of the detailed facts that support the allegation that Defendant Jaber is an alter ego/successor of the Judgment Defendants. The Boims' investigation continues.

**Interrogatory No. 5:** Please identify any and all documents, facts or other information you believe support your allegations that Defendant Jaber failed to observe corporate separateness between himself and any Judgment Defendant.

RESPONSE: See the response to Interrogatory No. 4 and the documents referenced in response to the Entity Defendants Requests For Production. See also the allegations of the First Amended Complaint, and in particular, the allegations of paragraphs 47, 48, 62, 63, 64, 67, 73, 75, 76, 80, 83, 99, 119, 120, 121, 124, 125, 134, 141, 147, 148, 149, 150, 151, 152, 153, 154, 155. As alleged, neither Jaber, the Entity Defendants nor the Judgment Defendants respected corporate formalities such as filing annual reports, holding annual meetings, keeping minutes of meetings, and identifying corporate officers and directors. As a result, the duties typically or legally required to be assumed by elected or appointed officers and directors were assumed on an informal basis by individuals who occupied the same roles for the Entity Defendants as they did for the Judgment Defendants.

**Interrogatory No. 6**: Please identify with specificity any and all documents, facts or other information you believe support your allegation that Defendant Jaber concealed material facts relating to the Plaintiffs' ability to recover the Judgment, as alleged throughout your Complaint.

RESPONSE: The Boims state that Defendant Jaber made it appear that the Judgment Defendants had ceased to operate and no longer existed, when in fact they continued to operate in substantially the same manner, with the same goals, operating methods, leadership, donors, conferences, and supporters as the Judgment Defendants. See, also, the allegations of the First

Amended Complaint. Investigation continues.

**Interrogatory No. 7**: Please identify with specificity any and all material facts that you believe Defendant Jaber concealed from Plaintiffs and/or that Plaintiffs relied upon to their detriment.

RESPONSE: See response to Interrogatory No. 6.

**Interrogatory No. 8**: Please identify with specificity any and all affirmative representations or misleading actions you allege Defendant Jaber took to conceal material facts from Plaintiffs, including when, where and to whom you believe these statements or representations were made.

RESPONSE: See response to Interrogatory No. 8.

**Interrogatory No. 9**: Please identify with specificity any and all <u>tangible</u> assets you allege the Judgment Defendants, or any individual on behalf of them, retained following the Judgment, and any tangible assets you allege were transferred to AMP or AJP.

RESPONSE: The Boims object to this Interrogatory on the grounds that discovery has only recently been initiated and their investigation continues. Without waiving their objections, the Boims state that they are not currently aware of tangible assets transferred from the Judgment Defendants to AMP or AJP.

**Interrogatory No. 10**: Please identify with specificity any and all <u>intangible</u> assets you allege the Judgment Defendants, or any individual on behalf of them, retained following the Judgment, as well as any intangible assets you believe were transferred to AMP or AJP.

RESPONSE: The Boims object to this Interrogatory on the grounds that discovery has only recently been initiated and their investigation continues. Without waiving their objections, the Boims state that transferred intangible assets included all the knowledge involved in operating

their not-for-profit, including such things as donor lists, speaker lists, website construction and maintenance, convention operations, goodwill and the general operational skill required to operate as an alter ego. See, also, the response to Interrogatory No. 4.

**Interrogatory No. 11**: Please identify with specificity any and all documents, facts or information you believe support your allegations that Defendant Jaber continued to use IAP/AMS's "good will and intangible assets" for fundraising and continuing any Judgment Defendants' operations after the Judgment, including specifically what comprised the identified good will and intangible assets.

RESPONSE: See the responses to Interrogatories 4, 5, 6 and 10.

**Interrogatory No. 12**: Please identify with specificity any and all documents, facts or information you believe support your allegation that Defendant Jaber "continues to control … AMP and AJP."

RESPONSE: The Boims object to this Interrogatory on the grounds that discovery has only recently been initiated and their investigation continues. Without waiving their objections, the Boims state that Defendant Jaber controls or appears to control many of the leadership functions of AMP/AJP, including accounting, tax filings, and other corporate functions. See, also, the allegations of the First Amended Complaint regarding the role of Defendant Jaber.

**Interrogatory No. 13**: Please identify any and all documents, facts or information you believe demonstrate when Defendant Jaber became involved with AMP.

RESPONSE: The Boims object to this Interrogatory on the grounds that discovery has only recently been initiated and their investigation continues. Without waiving their objections, see the allegations of the First Amended Complaint regarding the dates of Defendant Jaber's involvement.

**Interrogatory No. 14**: Please identify any and all AMP or AJP events where you believe

Defendant Jaber spoke or participated, including your belief of his role at each event and the dates of each event.

RESPONSE: The Boims object to this Interrogatory on the grounds that discovery has only recently been initiated and their investigation continues. Without waiving their objections, see the allegations of the First Amended Complaint regarding the dates of Defendant Jaber's involvement.

**Interrogatory No. 15**: Please identify the specific actions that you believe Defendant Jaber took to "obscure[] the identity of the IAP/AMS organization as the predecessor of AMP and the source of its critical assets, leadership and mission[,]" identifying for each the action(s), the date(s) on which the action(s) occurred, and any witnesses or others involved in these action(s).

RESPONSE: The Boims state that Defendant Jaber made it appear that the Judgment Defendants had ceased to operate and no longer existed, when in fact they continued to operate in substantially the same manner, with the same goals, operating methods, leadership, donors, conferences, and supporters as the Judgment Defendants. See, also, the allegations of the First Amended Complaint. Investigation continues.

**Interrogatory No. 16**: Please identify with specificity the "critical assets" that you believe IAP/AMS passed to AMP or AJP; including what role or connection you believe Defendant Jaber or any other individuals had in purportedly transferring any of the "critical assets" you identify.

RESPONSE: See response to Interrogatories No. 4 and 10.

**Interrogatory No. 17**: Please identify all collection efforts made by Plaintiffs and their representatives in this matter against the Judgment Defendants, describing for each the identity and dates of any recovery, the outcomes of those efforts, as well as what role or involvement you believe Defendant Jaber had regarding these collection efforts.

RESPONSE: On February 28, 2005, the Boims filed and served Citations to Discover

Assets to the Judgment Defendants. The Boims also filed and served Citations to various financial institutions where the Judgment Defendants were known or suspected of maintaining assets. The Boims also obtained turnover orders against Judgment Defendants. Judgment Defendant HLF responded that its assets had been seized by the United States Treasury Department and the Boims were eventually able to receive $2,487,851.47 from those funds. The Boims were unable to locate any funds belonging to the other Judgment Defendants, but did obtain a used van, which they donated to charity. Defendant Jaber did not assist in any way in these collection efforts.

**Interrogatory No. 18**: Please identify any non-party individuals, entities, groups or special interest groups involved in funding or funding this litigation, including identifying the interest of each individual or entity in this litigation.

RESPONSE: In addition to the general objections, the Boims object to this request on the grounds that the information sought is irrelevant and not calculated to lead to the discovery of relevant information and is protected by attorney client privilege.

**Interrogatory No. 19**: With respect to your fraudulent concealment claim against Defendant Jaber, please identify with specificity when and how Plaintiffs became aware of the conduct you believe forms the basis of this claim.

RESPONSE: The Boims object to Interrogatory No. 19 on the additional grounds that the information sought is protected by the attorney work product and attorney client privileges.

**Interrogatory No. 20:** In Paragraph 87 of Plaintiffs' First Amended Complaint, you allege that Defendant Jaber was a "tax preparer who was also a well-known spokesman and a well-respected community leader with access to funds and the media[;]" please identify any and all documents, facts or information you believe support this assertion.

RESPONSE: The Boims object to this Interrogatory on the grounds that discovery has only

recently been initiated and their investigation continues. Without waiving their objections, see the allegations of the First Amended Complaint regarding the dates of Defendant Jaber's involvement.

**Interrogatory No. 21:** Other than Defendant Jaber's assistance in preparing some of AMP's tax returns, please identify what specific facts you rely on in support of your allegation that "Jaber has been a central participant in board-level business decisions for AMP."

RESPONSE: See the response to Interrogatory No.20.

**Interrogatory No. 22:** Please identify with specificity any subject matter upon which you anticipate seeking expert testimony to support your claims against Defendant Jaber, including identifying each potential expert by name, telephone number, address, email address, qualification and topics of anticipated testimony.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims will identify any expert witnesses and the topics for which any such expert may provide testimony in compliance with the Federal Rules of Civil Procedure, Local Rules of the Northern District of Illinois, and any orders of the Court.

## REQUESTS FOR PRODUCTION

1.    Please produce all documents that Plaintiffs may rely upon, present or seek to introduce as evidence supporting Plaintiffs' allegations that Defendant Jaber is liable as an alter ego/successor of the Judgment Defendants.

RESPONSE: The Boims continue to assemble documents supporting the allegations that the Defendant Jaber is an alter egos and/or successor of the Judgment Defendants. The Boims will produce at a mutually convenient time and place the non-privileged documents in their possession and control.

2.    Please produce all documents that Plaintiffs may rely upon, present or seek to

introduce as evidence supporting Plaintiffs' allegations that Defendant Jaber is liable for fraudulent concealment.

RESPONSE: The Boims continue to assemble documents supporting the allegations that the Defendant Jaber is liable for fraudulent concealment. The Boims will produce at a mutually convenient time and place the non-privileged documents in their possession and control.

3.     Please produce any and all documents demonstrating, identifying or discussing the existence or contents of any material facts allegedly concealed by Defendant Jaber.

RESPONSE: The Boims continue to assemble documents supporting the allegations that the Defendant Jaber is liable for fraudulent concealment. The Boims will produce at a mutually convenient time and place the non-privileged documents in their possession and control.

4.     Please produce any and all documents demonstrating, identifying or discussing the existence of any tangible assets of the Judgment Defendants which you believe were retained by Defendant Jaber after the Judgment.

RESPONSE: None currently. Investigation continues.

5.     Please produce any and all documents demonstrating, identifying or discussing the existence of any intangible assets of the Judgment Defendants which you believe were retained by Defendant Jaber after the Judgment.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

6.     Please produce any and all documents you believe support your allegation that Defendant Jaber failed to turn over all assets of Judgment Defendants to the Plaintiffs following the Judgment.

RESPONSE: The Boims are not currently in possession of responsive documents other

than publicly available materials. Investigation continues.

7.      Please produce any and all documents you believe support your allegation that Defendant Jaber failed to observe corporate separateness between himself and the Judgment Defendants.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

8.      Please produce any and all documents evidencing or showing any collection efforts made by Plaintiffs or their representatives to collect on the Judgment.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

9.      Please produce any and all documents you believe support your allegations that Defendant Jaber "has been a central participant in board-level business decisions for AMP."

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

10.      Please produce any and all documents you believe support your allegations that Defendant Jaber utilized any of the Judgment Defendants' assets, tangible or intangible, in support of AMP or AJP.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

11.      Please produce all documents you believe support your allegation in para. 173 that Defendant Jaber "continues to control…AMP and AJP."

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

12.     Please produce any and all documents you believe support your allegation in para. 80 that Defendant Jaber "has … played a major role in the AMP organization since its inception."

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

13.     Please produce any and all documents showing or evidencing any "critical assets" that you believe passed from the Judgment Defendants to AMP or AJP.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

14.     Please produce any and all documents showing or evidencing the "access to funds and the media" that you allege in para. 87 Defendant Jaber had regarding AMP/AJP.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

## REQUESTS FOR ADMISSION

1.     Admit that Defendant Jaber was not a named defendant in your lawsuit filed in 2000 against the Judgment Defendants.

RESPONSE: Admitted.

2.     Admit that, to date, no court has found Defendant Jaber personally liable for the debts of the Judgment Defendants.

RESPONSE:  The Boims object to this Request on the grounds that it is irrelevant to any fact at issue in this litigation.  Without waiving their objections, the Boims are without knowledge as to any personal liability courts may have imposed on Defendant Jaber and therefore deny this Request.

3.     Admit you have no evidence that any tangible assets passed from any Judgment

Defendant to Defendant Jaber.

  RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

  4.  Admit you have no evidence that Defendant Jaber had any involvement in the creation of AMP.

  RESPONSE: Denied.

  5.  Admit you have no evidence that Defendant Jaber had any involvement in the creation of AJP.

  RESPONSE: Denied.

  6.  Admit that Defendant Jaber is not a founding member of AMP.

  RESPONSE: Denied.

  7.  Admit that Defendant Jaber did not serve on the board of AMP in 2006-2010.

  RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

  8.  Admit that Defendant Jaber did not serve on the board of AJP in 2006-2010.

  RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

September 16, 2022

*/s/ Daniel I. Schlessinger*

Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
311 South Wacker Drive
Suite 2150
Chicago, IL 60606
(312) 442-0509

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel I. Schlessinger, an attorney, certify that I caused the foregoing document to be served upon the following via electronic mail on September 16, 2022:

Christina A. Jump
Alyssa Fini Morrison
Constitutional Law Center For
Muslims in America
cjump@clcma.org
amorrison@clcma.org

Thomas Anthony Durkin
Durkin & Roberts
tdurkin@durkinroberts.com

 */s/ Daniel I. Schlessinger*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, | Civil No. 17-cv-03591 |
| Plaintiffs, | |
| v. | Hon. Gary Feinerman |
| AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, | |
| Defendants. | |

## PLAINTIFFS' ANSWERS AND OJECTIONS
## TO THE ENTITY DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff Stanley Boim, Individually and as Administrator of the Estate of David Boim, deceased (the "Boims"), by and through their attorneys, Jaszczuk P.C., hereby submits the following objections and answers to the First Set of Discovery Requests propounded by Defendants American Muslims for Palestine/Americans for Justice in Palestine Educational Foundation (collectively or "AMP/AJP" or "the Entity Defendants").

## PRELIMINARY STATEMENT

1.      The Boims' investigation and development of all facts and circumstances relating to this action is ongoing.  These objections and answers are provided without prejudice to, and are not a waiver of, the Boims' right to rely on other facts or documents at trial.

2.      The Boims' investigation into this matter is ongoing and they are producing

documents on a rolling basis and will supplement its answers, if necessary.

3.      By providing the accompanying answers and objections to the Entity Defendants'
Requests for Production ("Requests") and Interrogatories, the Boims do not waive, and hereby
expressly reserve, their right to assert any and all objections as to the admissibility of such answers
into evidence in this action, or in any other proceedings, on any and all grounds including, but not
limited to, competency, relevancy, materiality, and privilege.  Further, the Boims provide their
answers and objections herein without in any way implying that they consider the Interrogatories,
and their answers thereto, to be relevant or material to the subject matter of this action.

4.      The Boims will produce responsive information only to the extent that such
information is in their possession, custody, or control.

5.      An answer to a Request or Interrogatory stating objections and/or indicating that
information will be produced shall not be deemed or construed to mean that there is, in fact,
responsive information, that the Boims performed any of the acts described in the Request or
Interrogatory, definitions, and/or applicable instructions, or that the Boims acquiesce to the
characterization of the conduct or activities contained in the Request or Interrogatory, or
definitions and/or instructions applicable to the Request or Interrogatory.

6.      The Boims expressly reserve the right to supplement, clarify, revise, or correct any
or all of the answers or objections herein, and to assert additional objections or privileges, in one
or more subsequent supplemental or amended answer(s).

## GENERAL OBJECTIONS

1.      The Boims object to each of the Entity Defendants' Requests and Interrogatories,
and the accompanying definitions and instructions, to the extent any Request or Interrogatory
purports to call for the disclosure of information constituting, reflecting, or revealing information

protected by the attorney-client privilege, attorney work-product protection, or any other applicable privilege or immunity from discovery. In the event that any otherwise privileged information is disclosed by the Boims, such production is inadvertent and not a waiver of any applicable privilege.

2. The Boims object to each of the Entity Defendants' Requests and Interrogatories to the extent that any Request or Interrogatory seeks information that is not in the Boims' possession, custody, or control.

3. The Boims object to each of the Entity Defendants' Requests and Interrogatories and the accompanying definitions and instructions to the extent any Request or Interrogatory purports to impose duties, obligations, or burdens on the Boims that exceed the requirements of Rules 33 or 34 of the Federal Rules of Civil Procedure.

4. The Boims object to each of the Entity Defendants' Requests and Interrogatories to the extent that any Request or Interrogatory purports to require the disclosure of information that the Entity Defendants. their attorneys, or other agents already possess (including but not limited to all pleadings and filings in this action and matters of public record).

5. The Boims objects to each of the Entity Defendants' Requests and Interrogatories to the extent that any Request or Interrogatory purports to call for the disclosure of information or the production of documents that are not available through a reasonable and diligent search of the Boims' records, or that otherwise impose an undue burden on the Boims.

6. The Boims object to each of the Entity Defendants' Requests and Interrogatories to the extent that any Request or Interrogatory is vague, ambiguous, or otherwise utilizes undefined terms that are subject to multiple reasonable interpretations. The Boims will attempt to respond to each Request or Interrogatory to the best of their ability based upon their understanding of any

such Request or Interrogatory, if possible.

7.      The Boims' answers set forth below are made based on the information currently within their knowledge and information.  The Boims object to any Request or Interrogatory that purports to require the Boims to ascertain information not currently within their knowledge based on a reasonable investigation.

8.      Each and every answer below is made subject to the foregoing General Objections, regardless of whether a general or specific objection is stated in the answer to a particular Request or Interrogatory, and the Boims do not waive any General Objections not referred to in a particular answer.

## **<u>INTERROGATORIES</u>**

**<u>Interrogatory No. 1:</u>** Please identify any and all individual(s) involved in responding to these Interrogatories as well as Defendants' Requests for Production and Admission, including for each identified individual a brief description of their involvement in responding.

RESPONSE:   The Boims object to this Interrogatory to the extent it seeks production of information that is protected by the attorney-client privilege, attorney work-product protection, or any other applicable privilege or doctrine.

Subject to and without waiving their General or Specific Objections, the Boims state that counsel prepared these responses based on information discerned from the record in the lawsuit captioned *Boim v. Quranic Literacy et al.,* 1:00 cv 02905 in the U.S. District Court for the Northern District of Illinois, from publicly available documents, and from the jurisdictional discovery provided in this matter.

**<u>Interrogatory No. 2:</u>** Please identify any and all persons you believe have relevant knowledge supporting the factual allegations raised in Plaintiffs' First Amended Complaint.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter.

Subject to and without waiving its general or specific objections, the Boims reference Section (i) of their Initial Disclosures, served on July 6, 2022. The Boims' investigation continues.

**Interrogatory No. 3:** Please identify by name, title/role and contact information, any and all individuals on whom you intend to rely as a witness or from whom you intend to seek testimony, evidence or other information during the pendency of this proceeding, as it relates to your claims against Entity Defendants.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims will identify their fact and expert witnesses in compliance with the Federal Rules of Civil Procedure, Local Rules of the Northern District of Illinois, and any orders of the Court.

**Interrogatory No. 4:** Please identify with specificity any and all subject matter upon which you anticipate seeking expert testimony to support your claims against Entity Defendants, identifying him/her by name, telephone number, address, email address, qualification, and topics of anticipated testimony.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims will identify any expert witnesses and the topics for which any such expert may provide testimony in compliance with the Federal Rules of Civil Procedure, Local Rules of the Northern District of Illinois, and any orders of the Court.

**Interrogatory No. 5:** Please identify with specificity any and all documents, facts or information you believe support your allegation that Entity Defendants are alter egos and/or successors of the Judgment Defendants.

RESPONSE: The Boims object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims further object to the extent it requires them to make a legal conclusion as to whether a document, fact, or certain information supports their allegations.

Subject to and without waiving its general or specific objections, the Boims state that several IAP/AMS leaders, including but not limited to, Rafeeq Jaber, Osama Abuirshaid, and Abdelbassett Hamayel brought the skills, networks, and name recognition they developed at IAP/AMS to AMP/AJP; AMP/AJP was created surreptitiously by a group of former IAP/AMS surrogates and supporters, who at first attempted—but ultimately failed—to distance themselves from IAP/AMS leaders; former IAP/AMS and current AMP/AJP leader Osama Abuirshaid publishes an Arabic language newspaper, Al Meezan, that is essentially identical to the newspaper, Al Zaytouna, he published at IAP/AMS; in 2006 former IAP/AMS and current AMP/AJP leader Osama Abuirshaid was invited to join the organization that became AMP/AJP by two former IAP/AMS surrogates, Hatem Bazian and Salah Sarsour.

In addition, the Boims state that the First Amended Complaint in this action recites many of the detailed facts that support the allegation that the Entity Defendants are alter egos/successors of the Judgment Defendants. The Boims' investigation continues.

**Interrogatory No. 6**: Please identify any and all documents, facts or other information you believe support your allegation that Entity Defendants failed to observe corporate separateness as between themselves and the Judgment Defendants.

RESPONSE:  See the response to Interrogatory No. 6 and the documents referenced in response to the Entity Defendants Requests For Production.  See also the allegations of the First Amended Complaint, and in particular, the allegations of paragraphs 47, 48, 62, 63, 64, 67, 73, 75,

76, 80, 83, 99, 119, 120, 121, 124, 125, 134, 141, 147, 148, 149, 150, 151, 152, 153, 154, 155. As alleged, neither the Entity Defendants nor the Judgment Defendants respected corporate formalities such as filing annual reports, holding annual meetings, keeping minutes of meetings, and identifying corporate officers and directors. As a result, the duties typically or legally required to be assumed by elected or appointed officers and directors were assumed on an informal basis by individuals who occupied the same roles for the Entity Defendants as they did for the Judgment Defendants.

**Interrogatory No. 7**: Please identify and describe with specificity the assets, tangible and intangible, that you allege the Judgment Defendants passed on to AMP/AJP, including what you refer to as "critical assets" in paras. 74 and 87 of Plaintiffs' First Amended Complaint, and identify for each, to the best of your ability, how and when you believe it passed to AMP/AJP.

RESPONSE: See response to Interrogatory No. 5. Investigation continues.

**Interrogatory No. 8**: Please identify and describe with specificity any and all affirmative representations or misleading actions you allege Entity Defendants made or took that you purport show intent to avoid the liability of the Judgment Defendants.

RESPONSE: The Boims state that the Entity Defendants made it appear that the Judgment Defendants had ceased to operate and no longer existed, when in fact they continued to operate in substantially the same manner, with the same goals, operating methods, leadership, donors, conferences, and supporters as the Judgment Defendants. See, also, the allegations of the First Amended Complaint. Investigation continues.

**Interrogatory No. 9**: Please identify and describe any overlap in operational leadership you allege exists or existed between the Judgment Defendants and AMP/AJP, and identify any relevant witnesses or supporting documents as to each purported overlap in operational leadership.

RESPONSE: See the response to Interrogatories No. 5 and 6. Investigation continues.

**Interrogatory No. 10**: Please describe with specificity the similarities you allege exist between the conventions thrown by the Judgment Defendants and those thrown by AMP/AJP, including any alleged overlap in months of occurrence and location, as well as the dates of any alleged overlap.

RESPONSE: The conventions took place in the same locations with many of the same speakers, attendees, formats, and subjects. Investigation continues.

**Interrogatory No. 11**: Please identify information or facts upon which you base your allegation in para. 91 that Entity Defendants' conventions have the "same audience" and "same format" as the Judgment Defendants' conventions, and identify all specific facts and documents, if any, supporting each allegation.

RESPONSE: Many of the attendees at the conventions were the same people and many of the speakers were also the same people. The structure of the conventions were essentially identical. The publicity and materials distributed were very similar. See, also, the allegations of the First Amended Complaint. Investigation continues.

**Interrogatory No. 12**: Please identify and describe any and all documents, facts or information you allege shows the Entity Defendants gave any money to Hamas, or any other terrorist organization, directly or indirectly, at any time, identifying for each allegation how you believe the alleged facts support your claims of alter ego/successor liability of Entity Defendants for the debts of the Judgment Defendants.

RESPONSE: The Boims do not allege that the Entity Defendants "gave" money directly to Hamas. The Boims do contend, based on admissions by the Entity Defendants and publicly available documents, that they raised funds for the Holy Land Foundation, a known contributor to

Hamas.  The Entity Defendants also raised funds for Viva Palestina and George Galloway, known and proud fundraisers for Hamas. See the allegations of paragraphs 105, 106, 107,108, 109, 110, 111, 112, 113, 114, 115 of the First Amended Complaint.  Investigation continues.

**Interrogatory No. 13**: Please identify any and all documents or information you believe demonstrates when planning began for the formation of AMP or AJP, including any related information or facts you allege support your allegations that Entity Defendants are the alter egos/successors of Judgment Defendants.

RESPONSE: See response to Interrogatory No. 5 and the allegations of the First Amended Complaint.  Investigation continues.

**Interrogatory No. 14**: Please identify in detail any and all collection efforts made by the Plaintiffs against the Judgment Defendants, including the identity and dates of any recovery and the outcomes of those efforts, and reasons for failure to collect.

RESPONSE: On February 28, 2005, the Boims filed and served Citations to Discover Assets to the Judgment Defendants. The Boims also filed and served Citations to various financial institutions where the Judgment Defendants were known or suspected of maintaining assets. The Boims also obtained turnover orders against Judgment Defendants.  Judgment Defendant HLF responded that its assets had been seized by the United States Treasury Department and the Boims were eventually able to receive $2,487,851.47 from those funds. The Boims were unable to locate any funds belonging to the other Judgment Defendants, but did obtain a used van, which they donated to charity.

**Interrogatory No. 15**: Please identify any and all documents or information upon which you base your allegations in paras. 66, 93 and 124 of your Complaint of a connection between Entity Defendants and Al-Meezan, including specific facts, if any, supporting these allegations.

RESPONSE: See the allegations of these paragraphs and the documents referenced in the responses to Entity Defendants Requests for Production. Investigation continues.

**Interrogatory No. 16**: Please identify any non-party individuals, entities, groups or special interest groups involved in funding the present litigation, identifying for each named individual or entity their interest in or connection to this litigation.

RESPONSE: In addition to the general objections, the Boims object to this request on the grounds that the information sought is irrelevant and not calculated to lead to the discovery of relevant information and is protected by attorney client privilege.

**Interrogatory No. 17:** Please identify and explain any and all facts or information you believe supports your allegations that the Judgment Defendants were not, in truth, defunct following the Judgment against them.

RESPONSE: "Defunct" is not a legally defined term. For a legally created corporation to be dissolved, there are procedures to be followed, including formal dissolution documents. On information and belief, the Judgment Defendants never followed these procedures. Furthermore, the Judgment Defendants continued to operate as before through their alter egos, the Entity Defendants.

**Interrogatory No. 18:** Please identify and describe any and all documents, facts or information supporting why Plaintiffs filed the present lawsuit in 2017 against AMP/AJP and the individually named Defendants, including any and all evidence Plaintiffs possessed at the time of that filing, and facts or information known to Plaintiffs at the time of filing.

RESPONSE: In addition to the general objections, the Boims object to Interrogatory No. 18 on the grounds that it seeks information protected by the attorney-client and work product doctrines. Without waiving these objections, the Boims respond that the facts supporting the

present lawsuit are set forth in the First Amended Complaint.

**Interrogatory No. 19:** Please identify and describe any information, facts or documents you believe support your allegation that the Yahoo Bulletin Board referenced in paras. 67 and 141 of your Complaint shows intent by Entity Defendants to avoid the liability of the Judgment Defendants.

RESPONSE: The Yahoo Bulletin Board reflects an awareness on the part of its participants that the Entity Defendants could be linked to the Judgment Defendants, and thereby become responsible for the debts of the Judgment Defendants, if there it were to become public that the same people who were leading the efforts of the Judgment Defendants were now in charge of or helping to lead the efforts of the Entity Defendants. The Bulletin Board reflects an intent to keep that information secret and thereby evade responsibility for the judgment against the Judgment Defendants.

**Interrogatory No. 20:** Please identify any documents, facts or information you allege support your claims in, *inter alia*, paras. 4, 161 and 164, that Entity Defendants have the "same mission" as the Judgment Defendants, including any facts you believe cause this alleged "same mission" to justify holding Entity Defendants liable for the debts of the Judgment Defendants.

RESPONSE: See the allegations of the First Amended Complaint and the documents referenced in response to the Entity Defendants' Requests For Production. As those documents make clear, the mission of both the Entity Defendants and the Judgment Defendants was substantially the same. Investigation continues.

**Interrogatory No. 21:** Please identify any documents, facts and information you allege support your claims that Entity Defendants operate AMP/AJP in the same way as the Judgment Defendants, and the basis for your contention that this justifies holding the Entity Defendants liable

for the debts of the Judgment Defendants.

RESPONSE: See the allegations of the First Amended Complaint.  Investigation continues.

**Interrogatory No. 22**: Please identify all documents and information upon which you base your allegations in your Complaint of any connection between Entity Defendants and Al-Zaytouna, including specific facts, if any, supporting these allegations.

RESPONSE: See the allegations of the First Amended Complaint and the documents referenced in the responses to the Entity Defendants' Requests For Production.  In addition, a comparison of Al-Zaytouna and Al-Meezan demonstrates obvious similarities between the two.

## REQUESTS FOR PRODUCTION

1.     Please produce any and all non-privileged documents and information upon which you relied as support for your allegations that Entity Defendants are alter egos and/or successors of the Judgment Defendants.

RESPONSE:  The Boims continue to assemble documents supporting the allegations that the Entity Defendants are alter egos and/or successors of the Judgment Defendants.  The Boims will produce at a mutually convenient time and place the non-privileged documents in their possession and control.

2.     Please produce any and all documents evidencing any collection efforts made by you or your representatives to collect on the judgment against the Judgment Defendants, including the methodology, relevant dates, and results of those efforts.

RESPONSE:  The Boims have no responsive, non-privileged documents aside from the publicly available documents filed in the original Boim action against the Judgment Defendants.

3.     Please produce any and all documents upon which you intend to rely, present or seek to introduce as evidence supporting your allegations of the existence of an alter ego/successor

relationship between the Entity Defendants and any Judgment Defendants.

RESPONSE: See response to Request No. 1.

4. Please produce any and all documents demonstrating or supporting your allegations that any tangible assets of the Judgment Defendants were passed on to the Entity Defendants after the Judgment.

RESPONSE: The Boims are not currently in possession of responsive documents. Investigation continues.

5. Please produce any and all documents you allege demonstrate or support your allegations that any intangible assets of the Judgment Defendants were passed on to the Entity Defendants after the Judgment.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

6. Please produce any and all documents you allege show that the Judgment Defendants were not, in truth, defunct following the Judgment, including specifically what assets you believe were hidden and/or concealed, as alleged in your Complaint, and your efforts to collect those.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

7. Please produce any and all documents and information you allege support your allegation that the Entity Defendants had and acted upon any intent to avoid the liability of the Judgment Defendants, including any documents or information that you allege demonstrate any collusion between IAP/AMS and AJP/AMP.

RESPONSE: The Boims are not currently in possession of responsive documents other

than publicly available materials.  Investigation continues.

8.    Please produce any and all documents and information that you allege show that corporate separateness was not observed as between the Judgment Defendants and Entity Defendants, which you believe would render AMP/AJP the alter egos of IAP/AMS, HLF or any other Judgment Defendant.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

9.    Please produce any and all documents that you allege support your allegations that Entity Defendants utilized any of the Judgment Defendants' assets, tangible or intangible, for the creation of AMP and/or AJP.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

10.    Please produce any and all documents that you believe support your allegation that Entity Defendants have the "same audience" as the Judgment Defendants, and what facts and/or evidence you believe justify holding Entity Defendants liable for the debts of the Judgment Defendants as a result of that purported "same audience."

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

11.    Please produce, or identify if not in your possession or access, any and all documents you allege support your allegation that the first AMP conference was "in every way a duplication of the earlier IAP/AMS gatherings[,]" including its "audience, content, format, management, speakers, and []message."

RESPONSE: The Boims are not currently in possession of responsive documents other

than publicly available materials. Investigation continues.

12.     Please produce any and all documents you believe support your allegation that Entity Defendants have the same "core leadership" as the Judgment Defendants, including what role you believe each identified member(s) of that "core leadership" held in the formation of AMP and/or AJP.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

13.     Please produce any and all documents and information supporting your allegation that AMP/AJP has an established "Sarsour family board spot."

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

14.     Please produce any and all documents and information you believe support your allegation that Hamayel, Abuirshaid and Nabhan joined AMP as a result of unlawful alter ego activity, as opposed to their status as prominent Palestinian activists.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

15.     Please produce any and all documents and information you believe supports your allegation that Entity Defendants support Hamas, or any terrorist organization, or that they have ever given money to any organization that any branch of the U.S. government has found to be a terrorist organization, and any and all documents or information showing or supporting why you believe that justifies holding Entity Defendants liable for the debts of the Judgment Defendants.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials. Investigation continues.

16.     Please produce any and all documents evidencing or supporting any "critical assets" you believe passed from the Judgment Defendants to the Entity Defendants.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

17.     Please produce any and all documents supporting your allegation that Entity Defendants operate AMP/AJP in the same way that the Judgment Defendants operated.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

18.     Please produce any and all documents supporting your allegations that Entity Defendants have the same mission and purpose as the Judgment Defendants.

RESPONSE: The Boims are not currently in possession of responsive documents other than publicly available materials.  Investigation continues.

19.     Please produce any and all documents relating to any third-party funding of this litigation, including contracts, fee agreements, contingency agreements, or other related documents.

RESPONSE: The Boims object to this Request on the grounds that it seeks material that is irrelevant to any fact at issue in this litigation and not reasonable calculated to lead to the discovery of admissible evidence.  In addition, the Boims object to the Request on the grounds of attorney-client privilege.

## **REQUESTS FOR ADMISSION**

1.     Admit that Entity Defendants were not named as defendants in the lawsuit you filed in 2000 against the Judgment Defendants.

RESPONSE: The Boims admit that the Entity Defendants were not named as defendants

under their current names in the lawsuit filed in 2000, but as the Boims have asserted in the current litigation, the Entity Defendants are the alter egos of defendants that were named in the 2000 lawsuit and on that basis, the Boims deny Request No. 1.

2.      Admit that you engaged in extensive efforts to discover and recover the assets of the Judgment Defendants.

RESPONSE: The Boims admit that they engaged in extensive efforts to discover and recover the assets of IAP and AMS, but their efforts were ultimately stymied by the lack of cooperation of former IAP/AMS President Rafeeq Jaber and others with responsibility custody of the assets and responsibility for paying the judgment.

3.      Admit that AMP/AJP were not incorporated at the time of your judgment against the Judgment Defendants.

RESPONSE: The Boims admit that AMP/AJP were not formally incorporated under those names at the time a judgment was entered against the Judgment Defendants.

4.      Admit that you have no evidence that any tangible assets or funds passed from the Judgment Defendants to Entity Defendants.

RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

5.      Admit that you have no evidence that Entity Defendants possess or utilize any equipment from the Judgment Defendants.

RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

6.      Admit that you have no evidence that Entity Defendants ever occupied the same premises as any Judgment Defendant.

RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

7.      Admit that your allegations in this matter identify only three board members common to the Boards of IAP/AMS or HLF, and AJP/AMP.

RESPONSE: Denied.

8.      Admit that you have no evidence that Abdelbasset Hamayel, Osama Abuirshaid and Sufian Nabhan were founding members of AMP or AJP.

RESPONSE: Denied.

9.      Admit that you have no evidence that Abdelbasset Hamayel, Osama Abuirshaid and Sufian Nabhan participated in the Yahoo bulletin board group you identify in your Complaint.

RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

10.     Admit that you voluntarily dropped your previous claims that Osama Abuirshaid and Abdelbasset Hamayel were or are alter egos/successors of the Judgment Defendants.

RESPONSE: The Boims object to this Request on the ground that it is irrelevant to any matter at issue in this litigation and therefore deny the Request.

11.     Admit that no agency or official with the U.S. government has ever charged AMP or AJP with funding terrorism.

RESPONSE: The Boims object to this Request as premature as discovery is still ongoing and therefore deny the Request.

12.     Admit that Entity Defendants' conventions are open to the Palestinian American population generally, as well as any other member of the public who registers to attend.

RESPONSE: The Boims object to this Request as premature as discovery is still ongoing.

and therefore deny the Request.


September 16, 2022

/s/ *Daniel I. Schlessinger*
Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
311 South Wacker Drive
Suite 2150
Chicago, IL 60606
(312) 442-0509


Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000

**<u>CERTIFICATE OF SERVICE</u>**

I, Daniel I. Schlessinger, an attorney, certify that I caused the foregoing document to be
served upon the following via electronic mail on September 16, 2022:

Christina A. Jump
Alyssa Fini Morrison
Constitutional Law Center For
Muslims in America
cjump@clcma.org
amorrison@clcma.org

Thomas Anthony Durkin
Durkin & Roberts
tdurkin@durkinroberts.com

*/s/ Daniel I. Schlessinger*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> Hon. Gary Feinerman |

**PLAINTIFFS' SUPPLEMENTAL ANSWERS**
**TO THE ENTITY DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS**

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff Stanley Boim, Individually and as Administrator of the Estate of David Boim, deceased (the "Boims"), by and through their attorneys, Jaszczuk P.C., hereby submits the following supplementary answers to the First Set of Discovery Requests propounded by Defendants American Muslims for Palestine/Americans for Justice in Palestine Educational Foundation (collectively or "AMP/AJP" or "the Entity Defendants").

**PRELIMINARY STATEMENT**

The Boims' investigation and development of all facts and circumstances relating to this action is ongoing. These supplemental answers to certain of the Entity Defendants' Interrogatories are provided pursuant to discussion with counsel for defendants and without prejudice to, and are not a waiver of, the Boims' right to rely on other facts or documents at trial. The Boims' investigation into this matter is ongoing and they are producing documents on a rolling basis and

1

will continue to supplement their answers, if necessary. The Boims do not waive any objections previously asserted in this matter.

## <u>SUPPLEMENTAL RESPONSES TO CERTAIN INTERROGATORIES</u>

**Interrogatory No. 5:** Please identify with specificity any and all documents, facts or information you believe support your allegation that Entity Defendants are alter egos and/or successors of the Judgment Defendants.

SUPPLEMENTAL RESPONSE: The Boims continue to object to this Interrogatory to the extent that it is premature as discovery has just commenced in this matter. The Boims further object to the extent it requires them to make a legal conclusion as to whether a document, fact, or certain information supports their allegations.

Subject to and without waiving its general or specific objections, the Boims state that AMP appears to have been founded shortly after the judgment was entered against the defendants in the original Boim lawsuit. The men taking a leading role at AMP and AJP have included Abdelbasset Hamayel, Osama Abuirshaid, Salah Sarsour, Hussein al-Khatib, Sufian Nabhan, Yousef Shahin, Magdi Ideh, and others who also had leading roles in IAP/AMS.

Hamayel worked for IAP as an assistant, an office administrator, and the Director and Secretary General. He was responsible for producing IAP's action letters, newsletters and bulletins setting forth some of the pro-Hamas positions that IAP advocated. After IAP ceased operating under that name, Hamayel went to work for AMP. He did various volunteer activities and eventually became its Executive Director, essentially its director of operations.

Abuirshaid was on the Board of IAP/AMS and was the editor and primary producer of IAP's newspaper, Al-Zaytounah. He was the salaried policy director of IAP/AMS. After IAP stopped operating under that name, Abuirshaid assumed many of the same functions with AMP. He

continued to edit and publish a newspaper very similar to Al-Zaytounah, now called Al-Meezan, which employed a very similar website, featured many of the same advertisers and advocated pro-Hamas positions just as Al-Zaytounah had. Abuirshaid assisted with the formation and early activities of AMP, at least by speaking at AMP events and helping raise funds, and eventually became a Board member and a paid consultant as the National Policy Director essential to the operations of AMP.

Sarsour, a convicted Hamas operative, was active in the leadership of IAP, helping to plan its conventions and to fund its operations. After IAP stopped operating under that name, Sarsour helped form AMP/AJP, consulting on the organization, recruiting supporters, and planning or participating in conventions similar to those of IAP. He has also served on the Board of AMP.

Al-Khatib was a Regional Director for HLF, an organization closely working with IAP and a co-defendant in the original Boim lawsuit. Al-Khatib was an advocate for Hamas and its terrorist positions, and became one of the original AMP Board members, helping to raise funds for organizations that have funneled money to Hamas.

Nabhan was an IAP director and chapter leader in the Detroit area. Although we was identified as an early supporter of forming AMP, other AMP leaders cautioned to leave his name out because he was readily identifiable as an IAP leader. He did, however, become a member of the AMP Board and a chapter leader in Detroit.

Yousef Shahin was a member of IAP in New Jersey, where he helped organize events. He was on the Board of IAP and later of AMP. He helped raise funds through AMP for supporters of Hamas.

Odeh was a leader of IAP became one of the early officers of AMP.

Rafeeq Jaber was primarily responsible for managing and advising as to the financial affairs and governmental filings for IAP/AJP, and when that entity stopped operating, took on the same responsibilities for AMP.

When IAP stopped operating, it created a gap, in that no other organization was fulfilling the purposes and mission of IAP. AMP was formed to fill that gap; in other words, to assume the same mission, purpose and operations as IAP. In real terms, AMP was the same entity as IAP but with a different name.

AMP's founders and other leaders were aware that IAP was facing a huge judgment and significant negative reputational harm from having had a judgment for $156 million entered against it in the original Boim case. Filling the gap that would arise from IAP ceasing to operate could only be done if the gap-filling entity were free from these burdens, so the founders and their colleagues created a new entity that was actually a disguised version of the same organization. They ensured that the intangible assets of IAP would be transitioned to AMP.

The convention materials used by AMP in its initial and subsequent conventions are substantially similar to those that had been used by IAP at its conventions, and were in the same location.

Both IAP and AMP have provided and facilitated fund-raising for organizations that support and provide funds to Hamas. Both entities have associated with Hamas leaders and supporters and have promoted the Hamas ideology that Israel must be destroyed. When confronted on these topics, both entities have tried to portray themselves as educational organizations with solely domestic agendas.

The same speakers have been regularly featured at events for both entities, including Abuirshaid, Bazian, Jamal Said and Mustapha.

The Boims' investigation continues.

4

**Interrogatory No. 6**: Please identify any and all documents, facts or other information you believe support your allegation that Entity Defendants failed to observe corporate separateness as between themselves and the Judgment Defendants.

SUPPLEMENTAL RESPONSE: The Boims' initial response to this Interrogatory contained a typographical error, referring to the response to Interrogatory No. 6—that reference should have been to Interrogatory No. 5. In addition to the initial responses, the Boims state that they have not alleged that the Entity Defendants failed to observe corporate separateness between themselves and the Judgment Defendants. The actual allegations are that the Entity Defendants are essentially the same organizations (the alter egos) of the Judgment Defendants.

The California Nonprofit Corporation Law requires that a corporation formed thereunder have elected directors, disclosed officers, regular meetings, minutes kept of those meetings, and reports filed with the Secretary of State. AMP and AJP appear to have operated with the same Board, and have no record of separate officers, Board meetings, minutes, resolutions or other formalities. AMP was suspended by the Secretary of State for failing to comply with the requirements of California law.

**Interrogatory No. 7**: Please identify and describe with specificity the assets, tangible and intangible, that you allege the Judgment Defendants passed on to AMP/AJP, including what you refer to as "critical assets" in paras. 74 and 87 of Plaintiffs' First Amended Complaint, and identify for each, to the best of your ability, how and when you believe it passed to AMP/AJP.

SUPPLEMENTAL RESPONSE: As best the Boims can tell without additional discovery, the intangible assets of the Judgment Defendants began passing to AMP/AJP in late 2005. The assets in question included the know-how of running an organization like IAP and AMP, the goodwill of IAP, the names of donors willing to support the activity of IAP to which AMP succeeded, the

names of sponsoring organizations and relationships with their leaders, the techniques used to raise funds, the names of speakers willing and able to speak on topics of interest to both IAP and AMP, the names of people willing to volunteer, and the newspaper Al-Zaytounah that was an organ for IAP that then became Al-Meezan, an organ for AMP.

**Interrogatory No. 8**: Please identify and describe with specificity any and all affirmative representations or misleading actions you allege Entity Defendants made or took that you purport show intent to avoid the liability of the Judgment Defendants.

Investigation continues.

SUPPLEMENTAL RESPONSE: The Entity Defendants stopped operating under the names IAP and AMS so that it would appear they no longer existed. They adopted the names AMP and AJP and reincorporated to make it appear that these were new organizations, when in fact they continued to operate in substantially the same manner, with the same goals, operating methods, leadership, donors, conferences, and supporters as IAP and AMS. Investigation continues.

**Interrogatory No. 9**: Please identify and describe any overlap in operational leadership you allege exists or existed between the Judgment Defendants and AMP/AJP, and identify any relevant witnesses or supporting documents as to each purported overlap in operational leadership.

SUPPLEMENTAL RESPONSE: The Mosque Foundation, through its leaders, provided guidance and support to the Judgment Defendants, and then to AMP, in addition to providing financial support to both. The Imam of the Mosque Foundation, Jamal Said, a member of the Palestine Committee that helped form the Judgment Defendants, and a Board member of organizations such as the Al-Aqsa Educational Fund that has funded Hamas, was a featured speaker at both IAP/AMS events and at AMP events.

Rafeeq Jaber was president and the principal spokesman for AMS and a leader of IAP as well as

HLF, a designated terror group and funder of Hamas. Jaber has been a speaker at AMP events, provides financial counseling and services to AMP and has served in a leadership role just as he did for IAP/AMS.

Abdelbasset Hamayel began working for IAP in 1997, assisting IAP leader Sabri Samirah. He became the AMS/IAP office administrator in 1997 and became the Director and Secretary General of IAP from 2002 until its purported closing.

Hamayel was responsible for producing IAP's/AMS's action letters, newsletters and bulletins. which were essential elements of its undeclared mission of promoting pro-Hamas propaganda.

Hamayel was hired in 2007 by Sheikh Jamal Said, to work at the Bridgeview Mosque Foundation, where he became head of the Mosque Foundation Community

Center. In that capacity, Hamayel did work for AMP and eventually was recognized as AMP's "voluntary" and "temporary" Executive Director, essentially its director of operations. Hamayel's role was to help the organization start functioning.

Osama Abuirshaid was on the Board of IAP/AMS, was its National Policy Director and the editor of its newspaper, Al-Zaytounah. When IAP/AMS stopped operating under those names, Abuirshaid assumed similar roles for AMP. He became the editor of the newspaper Al-Meezan, which served the same purpose for AMP that Al-Zaytounah had for IAP. He was a regular speaker at AMP events and helped with fundraising and policy positions. He was also a Board member and the National Policy Director as he had been for IAP/AMS.

Hatem Bazian was a regular participant in IAP/AMS events and a speaker at several. He was one of the founders and a Board member of AMP.

Salah Sarsour was a member of the IAP/AMS Board of Directors. He was the chair of the 2006 MAS convention where AMP was formed and the chair of the Milwaukee chapter of AMP, and also a member of the AMP Board.

Kifah Mustapha was the co-Imam of the Bridgeview Mosque and the associate director of the Mosque Foundation, as well as a member of the Palestine Committee. He was a speaker at IAP events and serves the same function at AMP events.

Sufian Nabhan was an IAP director and chapter leader in Detroit. He was surreptitiously involved with the formation of AMP and the transition of IAP/AMS assets and responsibilities to AMP, but was kept behind the scenes because he was viewed as too closely associated with IAP. He became the AMP representative in the Detroit area.

Yousef Shahin was a Board member of IAP active in New Jersey. He then became a Board member of AMP. He was involved in fundraising for both IAP and AMP.

Magdi Odeh was involved in organizing events for IAP and assisted Hatem Bazian with the transition from IAP to Amp, becoming an officer of AMP.

Investigation continues.

October 31, 2022

*/s/ Daniel I. Schlessinger*
Daniel I. Schlessinger
Seth H. Corthell
JASZCZUK P.C.
311 South Wacker Drive
Suite 2150
Chicago, IL 60606

(312) 442-0509

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel I. Schlessinger, an attorney, certify that I caused the foregoing document to be served upon the following via electronic mail on October 31, 2022:

Christina A. Jump
Alyssa Fini Morrison
Constitutional Law Center For
Muslims in America
cjump@clcma.org
amorrison@clcma.org

Thomas Anthony Durkin
Durkin & Roberts
tdurkin@durkinroberts.com

*/s/ Daniel I. Schlessinger*

# EXHIBIT B

**VERIFICATION**

I, Joyce Boim, declare as follows:

I have read the foregoing Answers to the Interrogatories in Plaintiffs' Objections and Answers to Defendant Jaber's First Set of Discovery Request and declare that the information set forth therein is true and correct to the best of my knowledge.

EXECUTED on this 18th day of October, 2022

By: _Joyce Boim_

## **VERIFICATION**

I, Joyce Boim, declare as follows:

I have read the foregoing Answers to the Interrogatories in Plaintiffs' Objections and Answers to Entity Defendants' First Set of Discovery Request and declare that the information set forth therein is true and correct to the best of my knowledge.

EXECUTED on this 18th day of October, 2022

By: *Joyce Baim*

# EXHIBIT C

| | |
|---|---|
| **From:** | Seth Corthell |
| **To:** | Alyssa Morrison; Christina Jump; Daniel Schlessinger |
| **Cc:** | April Tremble |
| **Subject:** | RE: time to confer re: remaining discovery questions |
| **Date:** | Friday, November 18, 2022 3:38:23 PM |
| **Attachments:** | image001.png |
| | 2022.11.18 – Revised Versions of Requests for Production 3 and 8.docx |

Christina and Alyssa,

Apologies in the delay in sending this out, I got caught up in something else last night. Attached is the revised, word version of Requests for Production 3 and 8 that I sent you via email on October 21, 2022.

In addition, here is a summary of our understanding of yesterday's meet and confer:

**Defendants' Discovery Issues**
- **Plaintiffs' RFA Objections:** Plaintiffs stand on their objections to certain RFAs on the grounds that the RFAs are premature.
- **Sufficiency of the Verifications:** Defendants will provide Plaintiffs with language they maintain is statutorily required for verifications executed outside of the United States by Monday November 21.
- **Disclosure of Third-Party Funding:** Plaintiffs will not withdraw their objection to producing information concerning third party funding because it is irrelevant to any of the claims or defenses at issue in this case, nor is Defendants request for such information reasonably calculated to lead to the discovery of admissible evidence.
- **Documents Made Available for Inspection:** Plaintiffs maintain their position on this issue: Hard copies of documents responsive to Defendants requests are available in the form they were and are stored at the offices of Jaszczuk P.C. Plaintiffs are invited to our offices to inspect the information, or we will copy it and send it to you at Defendants' cost.

**Plaintiffs' Discovery Issues:**
- **Objection to Production of Documents Outside the 2005-2010 Timeframe:** Defendants maintain that they are not specifically withholding any incriminating documents pursuant to this objection but concede that there is responsive information post-dating 2010 that it has not produced. Defendants maintain that the time limitation adopted by Magistrate Judge Schenkier during limited jurisdictional discovery should remain in place during merits discovery.
- **Search Terms and Sufficiency of the Defendants' Search:** Defendants maintain that they have objections to the search terms Plaintiffs sent to them on October 21, 2022 and will provide those objections on November 21, 2022. In addition, Defendants will provide details into the search conducted to locate responsive information in a way that does not intrude upon the attorney work-product privilege.
- **Revised RFPs 3 and 8:** A word-version of the revised request I sent you in an email on October 21 is attached hereto. Defendants aim to provide a response by no later than November 30, 2022.
- **Tax Records:** Defendants maintain that no tax records for AJP exist for the years 2005-2010. It has produced AJP tax records for subsequent years, which are bates labeled Defendants' Production 277-466. Defendants did not identify any tax records for AMP or confirm that such records even exist but will provide an update on those potential records by November 21.
- **RFPs 17 and 20:** Defendants stand on their objections to these requests.

If I missed anything, please do not hesitate to reach out. Have a great weekend and I look forward to hearing from you on Monday.

Best,

Seth

---

**From:** Alyssa Morrison <amorrison@clcma.org>
**Sent:** Thursday, November 17, 2022 3:02 PM
**To:** Seth Corthell <scorthell@jaszczuk.com>; Christina Jump <cjump@clcma org>; Daniel Schlessinger <dschlessinger@jaszczuk com>
**Cc:** April Tremble <atremble@clcma.org>
**Subject:** Re: time to confer re: remaining discovery questions

how about we just call you guys directly—what is the best number?

*Alyssa F. Morrison* (she/her/hers)
Staff Attorney, Civil Litigation
Constitutional Law Center for Muslims in America

100 N. Central Expressway, Suite 1010

Richardson, TX 75080

(972) 914-2507 (main)

IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** Alyssa Morrison <amorrison@clcma.org>

**Sent:** Thursday, November 17, 2022 2:49 PM
**To:** Seth Corthell <scorthell@jaszczuk.com>; Christina Jump <cjump@clcma.org>; Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Cc:** April Tremble <atremble@clcma.org>
**Subject:** Re: time to confer re: remaining discovery questions

Please use the below conference line:

      Phone Number: 605-313-5072

      Code Number: 192551#

Talk soon--

*Alyssa F. Morrison* (she/her/hers)
Staff Attorney, Civil Litigation
Constitutional Law Center for Muslims in America

100 N. Central Expressway, Suite 1010

Richardson, TX  75080

(972) 914-2507 (main)

IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** Seth Corthell <scorthell@jaszczuk.com>
**Sent:** Thursday, November 17, 2022 2:38 PM
**To:** Christina Jump <cjump@clcma.org>; Alyssa Morrison <amorrison@clcma.org>; Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Cc:** April Tremble <atremble@clcma.org>
**Subject:** RE: time to confer re: remaining discovery questions

Christina,

Thanks for the response. We can discuss these points during our call. Were you planning to send around a dial-in number? Alternatively, I can send a Teams invite.

Best,

Seth

**From:** Christina Jump <cjump@clcma.org>
**Sent:** Wednesday, November 16, 2022 2:27 PM
**To:** Seth Corthell <scorthell@jaszczuk.com>; Alyssa Morrison <amorrison@clcma.org>; Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Cc:** April Tremble <atremble@clcma.org>
**Subject:** RE: time to confer re: remaining discovery questions

Seth:

I disagree with a few of your characterizations below.

- We are willing to provide some additional information regarding recordkeeping and search avenues, but you were going to provide us with information and/or cases addressing the concern I voiced as to where and to what extent that encroaches on work product privileges.  If I overlooked anything from you addressing that, please direct me to it; I am not aware that you have provided anything in that regard.  Because of that, I find difficulty addressing the lack of it with any more specificity.
- And we already assured you, multiple times, that there are no specific otherwise responsive documents we are withholding based solely on the time frame we believe is appropriate. In fact, the tax documents produced alone go well beyond 2010.
- Correct, we will provide amended responses which address the new language you embedded in an email.  To best do that, please provide a separate Amended Request for Production document which incorporates those; I cannot as fully respond to a paragraph in an email with anything more than my own email, as we have done, as opposed to an Amended Request for Production.  On that note, I do not recall that we discussed a specific timeframe for our response to the reworded Requests, but if I receive an Amended Request document electronically prior to 5pm on November 18, we should be able to respond to that in far less time than the standard 30 days, and I expect by November 30.
- Please be more specific when you state "it appears we are at an impasse on RFPs 17 and 20" – identifying where if at all have you made clarifications, alterations, compromises etc., and what specifically you believe remains that you feel we should respond to but you think we have not, or have not responded to fully.  With a more substantive bullet point like that, I can be far better prepared for our discussion tomorrow.

Thanks much.

*Christina A. Jump*
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
100 N. Central Expressway, Suite 1010
Richardson, TX 75080
(972) 914-2507 (main)

*I work across multiple time zones and may send emails outside of standard business hours. Although I send emails at times that are convenient for me, I do not expect that you read, respond or follow up on my emails outside your hours of work.*

*Board Certified in Labor and Employment Law, Texas Board of Legal Specialization

   

**IMPORTANT:** Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** Seth Corthell <scorthell@jaszczuk.com>
**Sent:** Wednesday, November 16, 2022 1:41 PM
**To:** Alyssa Morrison <amorrison@clcma.org>; Christina Jump <cjump@clcma.org>; Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Cc:** April Tremble <atremble@clcma.org>
**Subject:** RE: time to confer re: remaining discovery questions

Alyssa,

Tomorrow at 3PM is fine. Here is a rundown of outstanding issues with Defendants' responses and production:

- Objection to producing documents outside of the 2005-2010 time period. As I understand it, Defendants are standing on this objection.
- Search terms. I sent a list of search terms on October 21. On October 25, Ms. Jump indicated that she would review my proposed search terms, discuss them with Defendants, and respond with any objections. We should discuss the search terms and any objections you may have. It also appears that you are not willing to provide any further information on the scope of your search for responsive information. If so, we might be at an impasse on this issue.
- I have not received a response to the revised versions of RFPs 3 and 8 that I sent on October 21.
- Please direct me, by bates number, to the AMP/AJP tax documents from the 2005-2010 timeframe.
- It appears we are at an impasse on RFPs 17 and 20

Best,

Seth

**From:** Alyssa Morrison <amorrison@clcma.org>
**Sent:** Tuesday, November 15, 2022 5:12 PM
**To:** Christina Jump <cjump@clcma.org>; Daniel Schlessinger <dschlessinger@jaszczuk.com>; Seth Corthell <scorthell@jaszczuk.com>
**Cc:** April Tremble <atremble@clcma.org>
**Subject:** time to confer re: remaining discovery questions

Good afternoon Dan--

I hope you're doing well! Christina and I were hoping to set up a call to speak with you and confer regarding some remaining discovery questions on our end. Do you have any availability this Thursday afternoon around 3:00 central time?

The issues that we're hoping to discuss fall into the following categories:
- plaintiffs' denials to several requests for admission on the grounds that they are 'premature as discovery is still ongoing' (for example, RFA nos. 4, 5, 6, 9, 11 and 12)
- the sufficiency of the verifications from Ms. Boim
- disclosure of third-party litigation funding
- You indicated the following in your previous communications, regarding potentially responsive but unproduced documents in your possession; we do not believe that this comports with the respective production burdens during discovery and would like to discuss a resolution with you:
  - "We told you that we have about 60 boxes of documents (much of which are archived from the first Boim case), most or all of which could be viewed as responsive to your requests. We offered to either copy them at your expense or have you come look at them. You said that you believe we are required to go through those boxes and separate which documents are responsive to each of your requests. We have disagreed about this and you indicated that you expect to bring the issue to Judge Feinerman."

Thank you, and please let us know if that time works for you—or if there is another time that is preferable.

Best--

*Alyssa F. Morrison* (she/her/hers)
Staff Attorney, Civil Litigation
Constitutional Law Center for Muslims in America

100 N. Central Expressway, Suite 1010

Richardson, TX  75080

(972) 914-2507 (main)

IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

# EXHIBIT D

```
 1                UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF
 2                   ILLINOIS EASTERN DIVISION

 3    STANLEY BOIM,              )
      INDIVIDUALLY AND AS        )
 4    ADMINISTRATOR OF THE       )
      ESTATE OF DAVID BOIM,      )
 5    DECEASED; AND JOYCE BOIM,  )  Civil No. 17-cv-03591
                                 )
 6         Plaintiff,            )
                                 )
 7    v.                         )  Hon. Gary Feinerman
                                 )
 8    AMERICAN MUSLIMS FOR       )
      PALESTINE/AMERICANS FOR    )
 9    JUSTICE IN PALESTINE       )
      EDUCATIONAL FOUNDATION;    )
10    RAFEEQ JABER,              )
                                 )
11         Defendants.           )

12              ORAL AND REMOTE DEPOSITION

13                     JOYCE BOIM

14                  NOVEMBER 7, 2022

15

16           ORAL AND REMOTE DEPOSITION OF JOYCE BOIM,

17    produced as a witness at the instance of the Defendants

18    and duly sworn, was taken in the above-styled and

19    numbered cause on the 7th day of November, 2022 from

20    6:03 a.m. to 8:21 a.m., before Patricia Lopez,

21    Registered Professional Reporter, Notary Public within

22    and for the County of Hidalgo, State of Texas.  Reported

23    by computer stenotype machine via zoom video conference

24    pursuant to the Federal Rules of Civil Procedure and the

25    provisions stated on the record or attached hereto.
```



1  Sarsour.  And the second sentence here states, after IAP

2  stopped operating under that name, Sarsour helped form

3  AMP/AJP, consulting on the organization, recruiting

4  supporters, and planning or participating in conventions

5  similar to those of IAP; do you see that?

6      A.  I do.

7      Q.  Do you have any personal knowledge of how Salah

8  Sarsour may have helped form AMP/AJP?

9      A.  I don't.  I trust my lawyers and this is eating

10  me up alive.

11      Q.  Do you have any person knowledge of what

12  Mr. Sarsour may have done regarding consulting on the

13  organization?  The organization meaning AMP/AJP.

14      A.  I don't, but I trust my lawyers.

15      Q.  Do you have any personal information or knowledge

16  of any facts personally that Salah Sarsour had in anyway

17  transferred any assets of IAP to AMP?

18      A.  I don't, and I trust my lawyers.

19          MR. SCHLESSINGER:  Christina, I'm just gonna

20  object to this continuing line of questioning.  I think

21  it's obvious that you are not getting any discoverable

22  information out of this and that it's harassment.  It's

23  really disturbing to Ms. Boim and I would ask that you

24  discontinue this line of questioning.  It's not useful

25  in this case at all and it is just for harassment.



 1          MS. JUMP:  It is not just for harassment.  I

 2  have no problem with us taking a break if you'd like to

 3  take a break if that would help her.  But seeing as how

 4  these are very fine responses, I do have a right, and

 5  quite frankly, an obligation to ask about her personal

 6  knowledge as to each of these questions.

 7          MR. SCHLESSINGER:  Well as I've told you

 8  before, we're certainly willing to stipulate that she

 9  has no personal knowledge of this and I don't see the

10  point of continuing to subject Ms. Boim to this.

11          MS. JUMP:  When you say that you'd stipulate

12  that she has no personal knowledge to this, what is that

13  referring to?

14          MR. SCHLESSINGER:  To the facts that are

15  recited in these responses.

16          MS. JUMP:  So you'd stipulate that she has

17  no personal knowledge relating to any of the facts

18  recited in the supplemental responses or the original

19  responses to defendants' discovery requests?

20          MR. SCHLESSINGER:  Yeah.

21      Q.  (BY MS. JUMP) Ms. Boim, just to be clear, do you

22  agree with that?

23      A.  Yes, I do.

24      Q.  Okay.  Why don't we take a break.

25      A.  Won't make a difference.



1    Q.  I'm sorry?

2    A.  I said it won't make a difference.

3    Q.  What won't a difference, ma'am?

4    A.  Taking a break.  Reading all these things.  It's

5    -- it breaks my heart.

6    Q.  And I just want to make sure that I understand

7    where you're coming from and what you're saying.  Is it

8    -- what about it are you saying breaks your heart to

9    read?

10    A.  Just looking at what these people are doing, are

11    trying to do, in continuing keeping Hamas alive.  I know

12    what comes from it.

13    Q.  Okay.

14    A.  And I trust my lawyers with all this information.

15    Q.  I do respect the trust that you have for your

16    lawyers and I most certainly recognize the pain from

17    losing a child.  I will just say on a personal note, I

18    Have two children and I'm not going to pretend that I

19    can imagine what that feels like and so I am

20    (Inaudible)to say that I don't know what that feels

21    like.

22    A.  You can't imagine.

23    Q.  So you most certainly have my sympathies on the

24    loss of your son and I'm not doubting the pain of that

25    loss or the fact or the existence of that loss at all.



 1        The questions that I'm asking are just as they

 2   relate specifically to my clients who were not involved

 3   in the first lawsuit and what information there may be

 4   or that you have personally to connect my clients to the

 5   first lawsuit.  So if I understand it correctly, you and

 6   your attorney are both saying that you don't personally

 7   know of any facts that connects AMP/AJP or Rafeeq Jaber

 8   to the first lawsuit; is that correct?

 9            MR. SCHLESSINGER:  That is correct.

10            MS. JUMP:  Okay.

11   Q.  (BY MS. JUMP)  I know that your husband is not

12   here right now, and I'm not going to ask that you swear

13   to anything, you know, under oath as him.  Are you -- do

14   you believe that your husband has any more personal

15   knowledge than you do?

16   A.  No.  Absolutely not.  And he also trusts the

17   information that the lawyers have and trusts the

18   lawyers.

19   Q.  Okay.  I do appreciated your candor on that.

20            MS. JUMP:  Let's go ahead and take a break

21   until the top of the hour.

22            MR. SCHLESSINGER:  Fine.

23            MS. JUMP:  Okay.

24            THE REPORTER:  The time is 7:37 a.m. central

25   time.  We are off the record.



 1                ( Off the record from 7:37 a.m. to 8:00 a.m.)

 2                THE REPORTER:  The time is approximately

 3     8:00 a.m. central time.  We are back on the record.

 4        Q.  (BY MS. JUMP) Okay.  Ms. Boim, I know that you

 5     and your counsel stipulated before our break and agreed

 6     that you do not have any personal knowledge as to the

 7     discovery responses that we were discussing earlier.

 8     Would the same be true to the first amended complaint

 9     that we discussed earlier?

10                MR. SCHLESSINGER:  It's not -- I don't have

11     the document in front of me at the moment but my

12     recollection is that that includes some paragraphs

13     regarding what happened to David Boim.

14                MS. JUMP:  Yes.

15                MR. SCHLESSINGER:  And we're not stipulating

16     that the Boims have no knowledge of that.  They clearly

17     do, but anything regarding the links between your

18     clients and this matter and the judgment defendants, I

19     think we're willing to stipulate that the Boims have no

20     personal knowledge of.

21        Q.  (BY MS. JUMP) Ms. Boim, does that sound right to

22     you?

23        A.  Yes, it does.

24        Q.  Okay.  And just so that we are clear, that is one

25     of the documents that we did e-mail which is designated



1  as Exhibit 2.

2              MR. SCHLESSINGER:  Is that something you

3  want us to pull up now?

4              MS. JUMP:  Yeah.  Just -- we're not going to

5  go through all paragraphs, but I just want to clarify

6  something here.

7              MR. SCHLESSINGER:  Okay.

8              MS. JUMP:  And just let me know when you

9  have that pulled up.

10             MR. SCHLESSINGER:  Okay, we've got it.

11             MS. JUMP:  Okay.

12     Q.  (BY MS. JUMP) So, Ms. Boim, we're talking about

13  what's been designated as Exhibit 2, which is the First

14  Amended Complaint For Declaratory And Monetary Judgment

15  which is against AMP, AJP, as well as Rafeeq Jaber; do

16  you see that document?

17     A.  Yes, I do.

18     Q.  Okay.  And the introduction paragraphs that are

19  on page 1 and 2 of this document which speak to the

20  death of your son and they speak to the first lawsuit

21  that you filed against other parties.  You have

22  knowledge as to those paragraphs; is that correct?

23     A.  Yes, I do.

24     Q.  Okay.  Would it be correct then that you do not

25  have knowledge personally as to any allegations that



```
 1   take place in time from that point forward.  From the

 2   end of the fist lawsuit going forward?

 3      A.  That's true and I trust my lawyers.

 4           MS. JUMP:  Okay.  And so, Counsel, would

 5   that be an accurate representation of the stipulation

 6   that from the time period, I guess, of the end of the

 7   first Boim action going forward Ms. Boim does not have

 8   any personal knowledge of the facts alleged that pertain

 9   to after that judgment?

10           MR. SCHLESSINGER:  I believe that is true.

11   Let me -- can I just --

12           MS. JUMP:  Yes.

13           MR. SCHLESSINGER:  -- look at these

14   allegations.

15           MS. JUMP:  Uh-huh.

16           MR. SCHLESSINGER:  Yes, we're willing to

17   stipulate to that.

18           MS. JUMP:  Okay.

19      Q.  (BY MS. JUMP)  And, Ms. Boim, does that make

20   sense to you as well?

21      A.  Yes, it does.

22      Q.  Okay.  And to the best of your knowledge, would

23   that also be true to your husband?

24      A.  Yes.

25           MS. JUMP:  And, Counsel, is it stipulation
```



```
 1   as well -- and if you need to confer with him separately
 2   and get back, that's fine --  but is it your
 3   understanding as well that Mr. Boim also does not have
 4   any personal knowledge as to anything contained in the
 5   complaint from the time period that the first judgment
 6   forward?
 7                MR. SCHLESSINGER:  Yes.
 8                MS. JUMP:  Okay.
 9     Q.  (BY MS. JUMP) Ms. Boim, other than that, and the
10   facts that are contained in the complaint we just
11   referenced, and your statement as well as your counsel's
12   statement, are there any reasons that you specifically
13   wanted to sue AMP/AJP?
14     A.  They are, AMP was responsible for my son's death,
15   and AJP is continuing their work.  And I trust my
16   lawyers.
17     Q.  And would the same be true of Rafeeq Jaber?  Is
18   there any particular reason that you want to sue Rafeeq
19   Jaber beyond what you justified earlier and that your
20   counsel just stipulated to?
21     A.  I don't know anything personally about him, but I
22   trust my lawyers with their information and with hat
23   they have discovered.
24     Q.  Ms. Boim, what efforts did you and your husband
25   take to collect the money from the defendants in the
```



1  first lawsuit?

2     A.  What efforts?  We were given it.  We won.

3     Q.  Right.  So --

4     A.  But we --

5     Q.  Sorry, I --

6     A.  Yeah.

7     Q.  I'll wait.  I'm not trying to talk over you.  I'm

8  sorry about that.  We have a slight delay back and forth

9  on the feed here.

10    A.  We weren't awarded the complete -- what we -- we

11 weren't awarded the complete sum.

12    Q.  Okay.  What did you and your husband do, if

13 anything, to try to recover that money?  To try to get

14 that money that you were award from the original

15 defendants?

16    A.  We had our lawyers --

17    Q.  Okay.

18    A.  -- deal with it.

19    Q.  So you relied on the lawyers for a how to go

20 about recovering the judgment?

21    A.  Yes.

22    Q.  Anything that you or your husband did to your

23 knowledge outside of what was done by the lawyers or

24 initiated by the lawyer to recover on that judgment?

25    A.  No.  There was nothing.  What we did -- we trust



1  our lawyers.

2      Q.  And what do you intend to accomplish with this

3  current lawsuit against AMP/AJP and Rafeeq Jaber?

4      A.  To stop them from supporting Hamas, collecting

5  monies from Hamas, and keeping them alive in what

6  they're doing.  To stop the support.

7      Q.  And when you say keeping them alive in what

8  you're doing, are you talking about keeping Hamas going

9  forward in what it's doing?

10     A.  Absolutely.  Supporting them, raising funds, and

11 keeping them going.  And causing the pain that we are

12 suffering to other people.

13     Q.  And just so I'm clear, ma'am, what other people

14 are you referring to?

15     A.  Any individual.  Any other individual.  Any other

16 family.  To cause the pain and suffering that we have

17 gone through and still are.  But we go on.  As I said,

18 they killed my son but they didn't destroy our family.

19 But the pain in our hearts, daily, is still there.  In

20 fact, yesterday I was at his grave.

21         A boy of 16, 17, who had his whole life ahead of

22 him.  A whole life ahead of him.  A smile as big as can

23 be.  Happy.  Friendly.  Every boy, everyone of his

24 friends -- David was my best friend.  David was my best

25 friend.  That's all we hear.  That's all we've heard.



1   And on the anniversary of his death 15, 20 boys come to

2   his grave.  And we still -- the love is still there as

3   if David was alive now.

4        But I don't want any other families to go through

5   this heart ache and suffering, because a lot of families

6   that I know have been destroyed because of Hamas's

7   bullets.  We are strong.  My husband and I are strong.

8   My children are strong.  We go on but the pain is still

9   there.  And a lot of families are completely, completely

10  destroyed.  They don't function.  I know many.  And that

11  pain never goes away.

12       As I said, what's inside, no one has to know.  I

13  try to have a smile and talk positively.  But the pain

14  is there.  And as I said, I don't want to allow or know

15  that I haven't done all that I can do to stop this and

16  keep this pain and suffering from other families.

17  Q.  Is there any thing else that you think we need to

18  know about your lawsuit against these defendants?

19  A.  They have to be stopped, and not encouraged, and

20  not financed, and not helped to go on.

21  Q.  When you say they need to be stopped, are you

22  referring the AMP/AJP and Rafeeq Jaber or are you

23  referring to Hamas?

24  A.  The whole package.  Cause it's all one package.

25  Q.  So you consider them one?



```
 1      A.  One, yes.

 2      Q.  Okay.

 3      A.  Just a life was wiped out.  He wanted to be a

 4   doctor.  He wanted to do so much good.  And now I have

 5   to go visit a grave.

 6      Q.  Ms. Boim, if you'd like, let me know if there is

 7   anything else that you would like to say about your son

 8   or regarding your son.

 9      A.  He was a wonderful boy.  A boy full of life, joy,

10   happiness.  He enjoyed food.  He had a big round face

11   and a big smile.  And everyone, anyone who met him,

12   loved him.

13        He would get up early when he had vacation to

14   volunteer on the ambulance to be able to help people.

15   He made sure to get up early, early as possible when he

16   had vacations to get to the -- where he volunteered on

17   the ambulance to make sure he was picked to go.  That

18   was his dreams.

19        He loved people.  Always happy.  Friends.  My

20   house was always full of boys.  They knew they came to

21   my house, there always candy and refreshments and they

22   loved -- they'd know our house was open at -- to this

23   day, they know.  It's always opened.

24        And he was a wonderful, wonderful boy.  In fact,

25   in one of the places he was connected, a dining room is
```



1  there in his name.  I mean, very apropos because he was

2  very chubby and very, very happy.  And so -- my

3  neighbors -- I remember him, you know, running up and

4  down the steps.  I can still hear his footsteps.

5         And everyone only had positive, positive remarks

6  about him.  In fact, two weeks ago, the principal's

7  daughter happened to be in my daughter's neighborhood

8  and she said to me, she says, you know, I still feel my

9  father has guilt that maybe they should have been more

10  careful.  But everybody loved him.  Everybody.  There

11  isn't anyone that you mention David Boim that a big

12  smile doesn't, doesn't cover a their face.  And it's

13  such a pity.  Such a pity.

14             MR. SCHLESSINGER:  Christina, can we take a,

15  like a 30 second break?  I don't want to break the top

16  of --

17             MS. JUMP:  Yes.  Yup.

18             MR. SCHLESSINGER:  Great.

19             THE REPORTER:  Okay.  The time is

20  approximately 8:15.  We are going off the record.

21             (Off the record from 8:15 a.m. to 8:16 a.m.)

22             THE REPORTER:  Okay.  The time is

23  approximately 8:16 a.m. central time.  We are back on

24  the record.

25             MS. MORRISON:  Christina, I think you are



```
 1   still muted.

 2              MS. JUMP:  Thank you.  Sorry, about that.

 3              All right, Counsel, at this point what I'd

 4   like to do is suspend the deposition for the moment

 5   until further notice.  So we would not plan on coming

 6   back the rest of the day today.  Not coming back

 7   tomorrow.  But I do reserve the right to resume the

 8   deposition if facts come out during discovery that would

 9   warrant that.

10              MR. SCHLESSINGER:  I'm not going to comment

11   on your reservation but I understand what you're saying.

12              MS. JUMP:  Uh-huh.

13              MR. SCHLESSINGER:  And we're fine with

14   ending now at least, you know, my hope and expectation

15   would be that we would end now and not have to come

16   back.  But if there's reasons that you can bring to our

17   attention, we certainly want to consider it in the

18   future.

19              MS. JUMP:  All right.

20     Q.  (BY MS. JUMP) Well then with that, Ms. Boim, I

21   appreciate your time.  I appreciate your patience with

22   the questions.  And I appreciate you speaking about your

23   son, which I can only guess would be probably very hard

24   as well as, I don't want to say enjoyable, but --

25     A.  No. Oh, yeah.
```



1      Q.  That you enjoy speaking about him?

2      A.  Right.  Right.  And another thing I wanted to

3   bring up -- all right.  Forget it.  Okay.

4      Q.  All right.  If you are being shushed, that's

5   fine.  We can stop.  If you have anything to add, Ms.

6   Boim, I am perfectly willing to listen to it.  If there

7   is anything else you would like to add to your

8   testimony.

9           MR. SCHLESSINGER:  I'm not going to -- I

10   would wait for a question.  I wouldn't just --

11           THE WITNESS:  No, it's--

12           MR. SCHLESSINGER:  -- volunteer information.

13           THE WITNESS:  You had mentioned about the

14   organization and all.  But about different -- about

15   monies and all but we haven't collected what was granted

16   us; $154,000,000.

17           MS. JUMP:  Uh-huh.

18           THE WITNESS:  That's another thing.

19           MS. JUMP:  Yeah.

20           THE WITNESS:  That the monies shouldn't go

21   towards terrorism, Hamas, but to us.  To our lawyers to

22   collect.

23           MS. JUMP:  Okay.  I think with that, we will

24   go ahead and end for today.

25           MR. SCHLESSINGER:  We'll go --



1          MS. JUMP:  Ms. Lopez, we were scheduled to
2    continued tomorrow, but we won't need to do that.  We'll
3    just suspend it and see if we need to take up at a later
4    date.
5          THE REPORTER:  Okay.
6          Does the witness want to read and sign the
7    deposition or do you waive --
8          MR. SCHLESSINGER:  Yes.
9          THE REPORTER:  Yes, you do --
10          MR. SCHLESSINGER:  No. We will reserve
11   signature and I don't know how we would go about getting
12   copy of the video and the transcript.
13          MS. JUMP:  I can send the video.  I'll get
14   the video through zoom.
15          THE REPORTER:  I can get you the transcript.
16   Did -- would you like that electronically e-mailed to
17   you?
18          MR. SCHLESSINGER:  Yeah.
19          THE REPORTER:  Okay.  Can I get your e-mail,
20   please?
21          MR. SCHLESSINGER:  My e-mail is dsclessinger
22   -- do you have my -- the spelling of my name?
23          THE REPORTER:  Yes, I do.
24          MR. SCHLESSINGER:  At Jaszczuk dot com.
25          THE REPORTER:  Okay.  I will -- once this is



```
 1   ready we'll go ahead and send it out.  The firm will

 2   send out notification and we'll get that to you.

 3             MR. SCHLESSINGER:  Wonderful.  Thank you.

 4             THE REPORTER:     Thank you.

 5             MS. JUMP:  And just right before we go off

 6   the record, I just want to reiterate that we do have a

 7   confidentiality or protective order in place here that

 8   is still in effect in the lawsuit.  So we will each want

 9   an opportunity -- which I don't think affects, Ms.

10   Lopez, how you handle your part -- but consistent with

11   our previous approach in this case on earlier

12   depositions, we'll each want the opportunity to

13   determine and designate what falls under the

14   confidentiality or protective order.  And our

15   presumption that we had previously was by default until

16   we each have the chance to do that, we will treat

17   everything as remaining confidential up --

18             MR. SCHLESSINGER:  Understood.

19             MS. JUMP:  Until that point.

20             MR. SCHLESSINGER:  Understood.

21             MS. JUMP:  Okay.  Thank you very much.  I do

22   appreciate you time, ma'am.  And we are done for the

23   day.

24             THE REPORTER:  Okay.

25             MR. SCHLESSINGER:  Thank you.
```



```
 1                THE REPORTER:  Let me just take us off the

 2    record.

 3                We are off the at 8:21 a.m. central time.

 4    Thank you.

 5                (Proceeding concluded.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1  truth, and the same were thereafter reduced to

2  typewriting by me or under my direction.

3          That the original deposition was delivered

4  to Ms. Christina Jump, Custodial Attorney.

5          That pursuant to information given to the

6  deposition officer at the time said testimony was taken,

7  the following includes all parties of record and the

8  amount of time used by each party at the time of the

9  deposition:

10

11     Mr. Dan Schlessinger (00 HR: 00m)
       Attorney for Plaintiff
12     Ms. Christina Jump   (01 HR: 29m)
       Attorney for Defendant

13

14          I further certify that I am neither counsel

15  for, related to, nor employed by any of the parties in

16  the action in which this proceeding was taken, and

17  further that I am not financially or otherwise

18  interested in the outcome of this action.

19          That this deposition transcript was sent to

20  the Witness on December 6, 2022 for review and signature

21  by January 6, 2023, and that pursuant to the Federal

22  Rules of Civil Procedure, review and signature of the

23  Witness must be completed within 30 days of he

24  Witnesses' receipt thereof;

25     Certified to by me on this 6th day of December, 2022.



_____.
      Patricia Lopez, RPR
      Notary Expires:  05/18/2026

BUSINESS ADDRESS:

ACE COURT REPORTING SERVICE
FIRM REGISTRATION NO. 476
220 E. University
Edinburg, TX 78539
Telephone:  956-380-1100
E-mail:  Info@acecourtreporting.com



# EXHIBIT E

| From: | Seth Corthell |
|---|---|
| To: | Alyssa Morrison; Christina Jump |
| Cc: | Daniel Schlessinger |
| Subject: | RE: Stanley Boim et al., v. American Muslims for Palestine, et al., 1:17-cv-03591 |
| Date: | Wednesday, October 19, 2022 10:46:10 AM |
| Attachments: | image001.png |

Christina and Alyssa—

This will set forth our understanding of what we agreed to during our meet and confers on October 14 and 18, 2022 regarding the issues each party raised with the discovery responses.

**October 14 Meet and Confer Regarding Defendants' Discovery Responses**

- • **Withholding of Documents Based on Objections:** Currently, Defendants maintain that they have collected and/or preserved all responsive documents, but Defendants are withholding documents based on their objection to producing post-2010 documents. That said, Defendants have not searched the post-2010 documents so they cannot specifically identify any documents that are being withheld. We do not agree to your proposed limitation of discovery to documents and information predating 2010. You have not articulated any burden to producing post-2010 documents and such documents are relevant to the claims at issue in this case. As the Seventh Circuit noted in its August 16, 2021 opinion, "in the context of terrorism financing non-profit organizations" factors like "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability" are more probative as to the issue of alter ego liability. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021). It is certainly reasonable to anticipate that information post-dating 2010 could shed light on these factors. Just as a quick example, if one or more of the leaders of IAP did not show up as a leader by 2010, but then did appear in subsequent years, we should be allowed to discover that information and seek additional discovery regarding whether and the degree to which those individuals were working behind the scenes in the 2005-2010 period.
- • Finally, at this time, Defendants are not aware of any documents being withheld on the basis of any other stated objections.
- • **Next Step:** We are at an impasse on Defendants' objection to producing post-2010 objections. Defendants will follow up by October 21 as to whether documents are being withheld on the basis of any other stated objections.

- • **Sufficiency of Search/Use of Search Terms:** We discussed Defendants efforts to search for responsive information. You invited us to send you a list of search terms to be applied to any ESI searches you have run for this case. In addition, I inquired about the various steps Defendants took to search for responsive information. You were reticent to discuss the search process based on privilege/work product concerns and asked for authority to support my position as to information about the ESI search that should be disclosed to Plaintiffs.
- • **Next Step:** Seth will send you a list of search terms and authority supporting his position as to ESI by October 21.

- • **Production of Documents:** You indicated that Defendants do plan to produce a small number of documents that were not produced during jurisdictional discovery. However, you are currently unaware of what was produced during jurisdictional discovery because you no longer have access to those documents due to a cyber security issue at your firm. You requested that we reproduce those documents to you. We are internally discussing options for reproducing those documents.
- • **Next Step:** We will follow up regarding the reproduction of jurisdictional discovery documents by October 21.

- • **Requests for Production 3 and 8:** We will revise these requests to narrow the scope of potentially responsive information.
- • **Next Step:** We will produce revised requests by October 21.

- • **Request for Production 4:** You are currently unaware of what tax documents were previously produced because you no longer have access to the records. Once you receive a record of what was produced, you can explain any gaps in the records if such gaps exist.
- • **Next Step:** We will follow up next week.

- • **Requests for Production 5 and 6:** You will revise your response to explain why Jaber no longer has the requested records.
- • **Next Step:** You will provide a revised response by October 31.

- • **Requests for Production 17 and 20**
- • You maintained your objections to producing records of transfers of funds from AMP to AJP and documents concerning the 2015 fundraiser in Detroit.
- • **Next Step:** Both parties will consider potential revisions to the request or the response and will follow up by October 21. That said, we will likely have to bring these issues to the Court.

**October 18 Meet and Confer Regarding Plaintiffs' Discovery Responses**

- • **Verification of Interrogatory Responses:** We have agreed to provide verifications from our clients of our interrogatory responses no later than October 31, 2022.

- • **Plaintiffs' Depositions:** We have agreed that you will take the depositions by video, with the Boims being located in Jerusalem (where I plan to be with them) and you being in the U.S. You are not able to agree to taking less than seven hours for each of them, but have agreed to try to limit the time to the extent you can. You have also agreed to go for no longer than four hours in a day and to take breaks as the Boims need them. We will start with Stanley Boim on November 7 at 6:00 a.m. Central time and go for up to four hours. To the extent you don't finish, you will complete the deposition beginning on November 8 at 6:00 a.m. Central time and going for as long as you need, with a maximum of seven hours of total deposition time. We will then go through something else with Joyce Boim, starting at 6 00 a.m. Central on November 9 and finishing, if necessary, on November 10. You told me today that you do not care where the Boims are located (as long as it is a suitably private and confidential space) and I agreed to find an acceptable location. You are still working on finding court reporter(s) and videographer(s) and will get back to me on that.

- • **Requests for Production:** We told you that we have about 60 boxes of documents (much of which are archived from the first Boim case), most or all of which could be viewed as responsive to your requests. We offered to either copy them at your expense or have you come look at them. You said that you believe we are required to go through these boxes and separate which documents are responsive to each of your requests. We have disagreed about this and you indicated that you expect to bring the issue to Judge Feinerman.

- • **Privileged Documents:** We discussed logging privileged documents and agreed that neither side needs to log communications that we have had with our clients. Both of us are checking whether we have other documents that could be regarded as privileged. Once we are further prepared on that topic, we will discuss further what, if anything, needs to be logged.

- ***Cross References to Requests for Production and Interrogatory Responses***: We agreed to supplement our responses to provide more substantive detail by October 31, 2022.
  -
- ***Interrogatory No. 8***: We will amend our response to correct the typographical error.
  -
- ***References to the First Amended Complaint as Providing Factual Basis***: We will supplement our answers by October 31, 2022.
  -
- ***Objections to the term "defunct"***: We will withdraw this objection and supplement our answers to your discovery using that term.
  -
- ***Objections to Irrelevant Information***: Where we have objected to discovery on the grounds of relevance, we will provide more specific reasoning for our response.  You have noted that an area of concern for you is as to third-party funding of fees or expenses.  You agreed to provide us with authority supporting your right to obtain that information.
  -
- ***Objections to discovery as "premature"***: We will review our responses, withdraw this objection where appropriate and supplement the responses.  We continue to believe that this objection is appropriate in regard to requests to admit that seek admissions about the lack of evidence on certain points.  We continue to contend that it is premature for us to admit to a lack of evidence on facts that are subject to discovery and that we should not have to admit or deny until we have had the opportunity to complete our discovery.  You indicated that you disagree with that and will likely be raising the issue with Judge Feinerman.

-
Please let us know if you disagree with any of the summary set forth above or if there are other matters that I omitted or that you still want to discuss.  Thank you for your time on the phone.
-
Best,

Seth

---

**From:** Alyssa Morrison <amorrison@clcma.org>
**Sent:** Monday, October 17, 2022 9:21 PM
**To:** Seth Corthell <scorthell@jaszczuk.com>; Christina Jump <cjump@clcma.org>
**Cc:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Subject:** Re: Stanley Boim et al., v. American Muslims for Palestine, et al., 1:17-cv-03591

Good evening gentlemen--

If you guys are still available for a call tomorrow at 9 am, we will be ready to jump back into discovery discussions. As with the prior call, please use the below conference line:

Phone Number: 605-313-5072
Code Number: 192551#

Thanks and talk soon--

*Alyssa F. Morrison* (she/her/hers)
Staff Attorney, Civil Litigation
Constitutional Law Center for Muslims in America

100 N  Central Expressway, Suite 1010

Richardson, TX  75080

(972) 914-2507 (main)

IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

---

**From:** Seth Corthell <scorthell@jaszczuk.com>
**Sent:** Friday, October 14, 2022 11:15 AM
**To:** Christina Jump <cjump@clcma.org>; Alyssa Morrison <amorrison@clcma.org>
**Cc:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Subject:** RE: Stanley Boim et al., v. American Muslims for Palestine, et al., 1:17-cv-03591

Christina,

Noon is fine with us.

Best,

Seth

**From:** Christina Jump <cjump@clcma.org>
**Sent:** Friday, October 14, 2022 11:14 AM
**To:** Alyssa Morrison <amorrison@clcma.org>
**Cc:** Seth Corthell <scorthell@jaszczuk.com>; Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Subject:** Re: Stanley Boim et al., v. American Muslims for Palestine, et al., 1:17-cv-03591

Gentlemen: I am delayed picking up a prescription for my daughter.
Is it possible to delay till either noon or 2 00pm today so that I can be back at my desk for our call and better able to respond?

On Oct 14, 2022, at 9:47 AM, Alyssa Morrison <amorrison@clcma.org> wrote:

Seth and Dan--

For today's call, can we please use the below conference line, as Christy and I are in different locations:

Phone Number: 605-313-5072
Code Number: 192551#

Looking forward to speaking with you at 11:30 today--

*Alyssa F. Morrison* (she/her/hers)
Staff Attorney, Civil Litigation
Constitutional Law Center for Muslims in America

100 N Central Expressway, Suite 1010

Richardson, TX 75080

(972) 914-2507 (main)

IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** Christina Jump <cjump@clcma.org>
**Sent:** Wednesday, October 12, 2022 12:50 PM
**To:** Seth Corthell <scorthell@jaszczuk.com>; Alyssa Morrison <amorrison@clcma.org>
**Cc:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Subject:** RE: Stanley Boim et al., v. American Muslims for Palestine, et al., 1:17-cv-03591

Thanks Seth.
We are good Friday at 11:30 am if that still works for you.

Also, prior to that (possibly late today but definitely before end of day tomorrow) we will send you a letter outlining the deficiencies we perceive in Plaintiffs' responses as well.

Thanks.

*Christina A. Jump*
Civil Litigation Department Head
Constitutional Law Center for Muslims in America
100 N. Central Expressway, Suite 1010
Richardson, TX 75080
(972) 914-2507 (main)

*I work across multiple time zones and may send emails outside of standard business hours. Although I send emails at times that are convenient for me, I do not expect that you read, respond or follow up on my emails outside your hours of work.*

*Board Certified in Labor and Employment Law, Texas Board of Legal Specialization

   

**IMPORTANT:** Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**From:** Seth Corthell <scorthell@jaszczuk.com>
**Sent:** Tuesday, October 11, 2022 1:45 PM
**To:** Christina Jump <cjump@clcma.org>; Alyssa Morrison <amorrison@clcma.org>
**Cc:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Subject:** Stanley Boim et al., v. American Muslims for Palestine, et al., 1:17-cv-03591

Counsel,

Attached is a letter outlining deficiencies from Defendants' responses to our first set of requests to produce. Please let me know your availability for a meet and confer regarding the same. I am currently available all day tomorrow. Thursday I am available from 2pm CT on and Friday I am available from 11am CT on.

Regards,

Seth Corthell

**Jaszczuk P.C.**
311 S. Wacker Drive, Suite 2150
Chicago, IL 60606
312-442-0401
scorthell@jaszczuk.com
www.jaszczuk.com