IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; and RAFEEQ JABER <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> **Hon. Gary Feinerman** |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL COMPLETE RESPONSES TO DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS**

Plaintiffs, Stanley and Joyce Boim, by their counsel, respond to the Defendants' Motion to Compel, which ignores the relevant precedent and the Seventh Circuit's prior rulings in this case and its predecessor. Defendants raise four areas in which they are dissatisfied with Plaintiffs' discovery responses, and we address here each in turn.

**Introductory Comments Regarding Contextual Background**

Plaintiffs Stanley and Joyce Boim are the now-elderly parents of David Boim, an innocent student mercilessly gunned down by Hamas terrorists 27 years ago at the age of seventeen. The Boims were able to obtain a small measure of justice through the *Boim I* Judgment, and thereby establish an important precedent under the Anti-Terrorism Act ("ATA"). *See Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 547-548 (7th Cir. 2021). In that lawsuit, the Boims did not testify, and indeed were not competent to testify, as to the defendants' actions—they had no personal knowledge of the activities of the defendants Islamic Association for Palestine or the American

1

Muslim Society. The abundant evidence of the ways in which those original defendants funded and abetted Hamas terrorism and thereby violated the ATA came from those defendants' own testimony, public statements and records, news accounts and expert testimony, and provided a sufficient basis to secure and sustain the judgment entered there, which was subsequently affirmed *en banc* by the Seventh Circuit Court of Appeals. *See Boim v. Holy Land Foundation,* 549 F.3d 685 (7th Cir. 2008) ("*Boim III*").

Similarly here, the Boims should not be expected or required to have personal knowledge of the operations or activities of Defendants AMP, AJP and Rafeeq Jaber. Once again, the facts alleged against these Defendants and to be proven at trial come from sources such as Defendants' and third-party testimony, public statements and records, news accounts and expert testimony. But to say that the Boims have no personal knowledge of these matters is not the same thing as claiming, as Defendants do, that the Boims have "no knowledge of even the most basic facts underlying the allegation that Defendants are liable to them for the original *Boim* judgment . . ." (Memorandum in Support of Defendants' Motion to Compel Complete Responses to Defendants' First Set of Discovery Requests, Dkt. 276-1 ("Def. Mem."), at p. 8.) As decades of jurisprudence have well established, there is a significant difference between, on the one hand, believing something to be true, even to the point of "knowing" it to be true, and on the other hand, having actual, personal knowledge so as to be competent to testify to a fact. So, as Joyce Boim testified at her deposition, she fully understands that the Defendants are responsible for her son's death (Transcript of Deposition of Joyce Boim, attached as Exhibit A, at 12:16-13:1; 57:9-23), but she has no personal knowledge of specific allegations, such as the particular information possessed by Abdelbasset Hamayel, Osama Abuirshaid, Imad Sarsour, Kifah Mustapha or other actors cited in the First Amended Complaint. (*See* Ex. A, at 37:1-41:17.)

2

The First Amended Complaint includes very detailed factual allegations, which, if proven, are sufficient to sustain the Boims' causes of action. "Indeed, the amended complaint is replete with factual allegations that show, in the Boims' view, that American Muslims for Palestine is a disguised continuance of the Islamic Association and Holy Land Foundation, and in that way, American Muslims for Palestine played a role in the original wrongdoing that led to their son's murder at the hands of Hamas." *Boim,* 9 F.4th at 555. The First Amended Complaint was not verified by the Boims, and no reasonable reader would mistake its allegations as deriving from the Boims' personal knowledge. But there has never been a judicial requirement that plaintiffs have personal knowledge of the facts relied on in their pleadings. If that were true, there would be no possibility of recovery in the many situations in which victims have not observed the tort that harmed them, such as the typical medical malpractice case or a blindside car crash.

Plaintiffs have complied with the applicable discovery rules in each of the four areas that Defendants' motion addresses, and the motion should be denied in its entirety.

A. **Verifications to Interrogatory Answers**

Plaintiffs have responded to the sets of 22 interrogatories served on them by the Defendants, most of which seek detailed facts regarding the allegations of the First Amended Complaint that the Defendants are alter egos of two of the original Defendants against whom Plaintiffs obtained a largely unsatisfied $156 million judgment. (*See* Def. Mem., Ex. A, at pp. 5-12, 22-30 of 83.) The fact that the Boims do not have personal knowledge of the acts asserted in the interrogatory answers served on their behalf raises a question as to what comprises an acceptable interrogatory verification. 28 U.S.C. § 1746 provides that a method that may be used for verifying unsworn court documents includes the statement that the matters set forth are "true and correct." 28 U.S.C. § 1746. The Boims are unable to state unequivocally that this is the case because, as explained above, they lack personal knowledge of these facts. Consequently, the

3

verifications Mrs. Boim provided employ the qualification that they are made to the best of her knowledge.

Contrary to Defendants' contention, the language of § 1746 is not an absolute requirement. The statute itself uses the term "may", not "must", and further qualifies its impact by stating that the verification should be "in substantially the following form . . . " 28 U.S.C. § 1746. Courts here and elsewhere have recognized that verifications can be tailored to particular circumstances as long as they substantially comply with the meaning suggested in the statute and make clear that they are offered under penalty of perjury. *See Trapaga v. Central States Jt. Bd. Local 10,* No. 05 C 5742, 2007 LEXIS 23438, at *11 (N.D. Ill Mar. 30, 2007) ("Section 1746 itself does not require strict compliance with the 'verification' statement provided as an example: the statute provides that an unsworn declaration 'in substantially the following form' will be sufficient . . ."). A qualification that a verification is true and correct to the best of the affiant's knowledge has been determined to be acceptable. *See In re Baroni*, No. 1:12-bk-10986-MB, 2022 Bankr. LEXIS 2214, at *2 (Bankr. C.D. Cal. Aug. 9, 2022); *Gibson v. Steelton Police Dep't.*, No. 1:CV-12-1328, 2013 U.S. Dist. LEXIS 133584, at *20 (M.D. Pa. Aug. 13, 2013).

Defendants have raised several concerns about the adequacy of Plaintiffs' verification of the interrogatory answers. The lack of a statement that they are under penalty of perjury was easily cured and a new verification to that effect has been provided. Defendants complain that *Mrs.* Boim verified discovery directed to *Mr.* Boim. Defendants purposefully ignore the explanation that Mr. Boim has been hospitalized for surgery and a subsequent infection and has been under painkillers. Under the circumstances, Mrs. Boim's verification should be sufficient, but if a verification from Mr. Boim is really required, Plaintiffs will provide that as soon as Mr. Boim is in condition to sign it. It is unclear whether Defendants also are complaining about the qualification that the answers

are qualified as being to the best of Mrs. Boim's knowledge, but as Plaintiffs' cited authority verifies, this language is adequate and appropriate.

**B. Request to Admit Responses**

Requests for Admission under Rule 36 are different from, for example, interrogatories under Rule 33. They are not intended to discover information unknown to the propounding party. They serve to narrow the scope of the litigation by essentially stipulating to facts not in dispute. This is made clear by the enforcement provision of the rule, found in Rule 36(b), which states that a matter admitted under the rule is conclusively established for purposes of the case, unless the court on motion grants relief from the admission. Fed. R. Civ. P. 36(b).

In *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346 (N.D. Ill. 2014), the court explained the scope of proper requests under Rule 36. There, the defendant issued 460 requests for admissions, along with related interrogatories, to 64 discovery opt-in plaintiffs. *Id.*, at 346-348. The requests sought information about job duties, responsibilities, and authority – issues at the core of whether the plaintiffs engaged in exempted work in a wage and hour case. *Id*. As a result, the plaintiffs moved for a protective order. *Id*.

The court granted the plaintiffs' motion and excused them from answering any of the defendant's requests. *Id.*, at 348. In support of its decision, the court noted that Rule 36 was not designed to elicit information, discover the existence of facts, or obtain production of documents and, therefore, should not be used as a discovery method for those purposes. *See id.*, at 347 (citations omitted). It found that the number of requests was burdensome and that the requests were designed to circumvent interrogatory limits. *See id.*, at 347-348. Many of the requests sought discovery related to the fundamental disagreement of the case, which the court found outside the

5

scope of Rule 36. *Id*., at 347-348. As a result, the court held that the plaintiffs were not obligated to respond to the requests. *Id*.

In *Pistolis v. Ameren*, No. 3:19 -CV-001185 -MAB, 2022 U.S. Dist. LEXIS 107106 (S.D. Ill. June 15, 2022), the plaintiff served a request that required the defendant to admit contested facts. *See id*., at *16-17. The court noted that Rule 36 generally allows requests about controversial or disputed issues, but a request to admit a disputed issue that is at the core of the case falls outside the purview of Rule 36. *Id*. Because the requests did not serve the purpose of Rule 36 and sought information about contested facts, the court found that the defendants were relieved of any obligation to respond to the requests. *Id*.

In *Stanek v. St. Charles Comm. Unit Sch. Dist*., No. 13 C 3106, 2020 U.S. Dist. LEXIS 253493 (N.D. Ill. Sep. 3, 2020), the court found that the plaintiff's 233 requests to admit to the defendants were not overly burdensome, but still granted the defendants' motion for protective order. *Id*., at *5-7, 16. The court found that the requests sought information related to fundamental disagreements at the heart of the lawsuit rather than to narrow issues for trial. *See id*., at *13-15. Similarly, the objectionable requests to admit served by Defendants in the current case do not seek to narrow the issues for trial and the Plaintiffs' objections should be sustained.

If what Defendants are seeking is to discover what Plaintiffs know about particular factual matters in dispute, there are other effective tools for that such as interrogatories, of which Defendants are well aware and have taken full advantage. But, to use Defendants' example, an issue that is at least potentially in dispute is whether the original defendants or their surrogates passed tangible assets to the current Defendants.[1] If Plaintiffs are not currently aware of whether

---

[1] It is important to note that in the appeal of this matter, the 7th Circuit was very clear that tangible assets would not "have any meaningful bearing on the alter ego inquiry in the context of terrorism financing nonprofit organizations. . . . Factors like overlap in leadership, same

6

that occurred and are pursuing discovery to determine whether it is the case, the discovery rules should not require them to admit the proposition and thereby render the issue conclusively established. Defendants' casual suggestion that Plaintiffs can amend their response at any time is directly contrary to what Rule 36 provides. At the end of discovery, the parties can be expected to stipulate to the facts that are not in dispute. (*See* L.R. 16.1.) This (among others) may well be one of those facts, but Plaintiffs need a fair opportunity to determine that before making any such binding admission.

C. **Litigation Funding**

The question to be decided in this case is whether Plaintiffs can prove the facts that establish that the Defendants are responsible for paying the judgment that Plaintiffs obtained against the original Defendants in *Boim I*. As the Seventh Circuit has ruled, if the allegations of the First Amended Complaint are true, that is sufficient to establish liability here. *Boim*, 9 F.4th at 555-556. It makes no difference what Plaintiffs' motivation is for bringing the suit. The underlying and current litigation fulfill Congress's intent when it passed the ATA: using civil litigation to cut off funding of international terrorism. *See Boim III*, 549 F.3d at 691 ("[S]uits against financiers of terrorism can cut the terrorists' lifeline.").

Of course, even if it did make a difference, we need not speculate about the Boims' personal motivation for pursuing collection of the judgment. Joyce Boim testified at her deposition why they have brought this claim. They want to collect the unpaid judgment in order to honor their son, and to help dissuade his killers from destroying other families through acts of terrorism. (Ex. A, at 57:9-61:2.) While that mindset is totally irrelevant to any issue in dispute here, it should

---

organizational purpose, similarity of operations, and unlawful motive to escape liability would seem to take on added weight, as could other factors. . . ." *Boim*, 9 F.4th at 559.

completely lay to rest any further inquiry about the motivation of non-parties who may or may not be supporting the Boims.

Defendants posit that they have a defense theory that Plaintiffs are intending to "paint with an overly broad brush against any Palestinian advocacy groups." (Def. Mem., at p.8.) But that contention is not only directly contrary to the facts and the law of this case, it is irrelevant to whether Plaintiffs can prove their case against *these* Defendants and would be inadmissible at trial. Plaintiffs did not sue some random cross-section of entities advocating for Palestinian rights. We have sued only two entity defendants (operating as one) and did so only based on the highly detailed, factually specific allegations that both the Seventh Circuit and this Court have found sufficient, if proven, to establish the liability of the actual Defendants here. *See Boim*, 9 F.4th at 555-556; *see also Boim v. Am. Muslims for Palestine*, No.17 C 3591, 2022 U.S. Dist. LEXIS 88508 (N.D. Ill. May 17, 2022) (Feinerman, J.). Furthermore, it has been established that this case is not about foreclosing anyone's First Amendment rights to advocate for whatever cause they choose. *Boim III*, 549 F.3d at 700 ("[A] person who gives a speech in praise of Hamas for firing rockets at Israel is exercising his freedom of speech, protected by the First Amendment . . . But as Hamas engages in violence as a declared goal of the organization, anyone who provides *material* support to it, knowing the organization's character, is punishable. . .") (citations omitted) (emphasis in original). This suit, a collection action, is solely and exclusively an effort to enforce the essential elements of the Anti-Terrorism Act.

Defendants' repeated suggestion that Plaintiffs may be motivated by Islamophobia was discussed by Judge Coleman in her decision to dismiss this case for lack of jurisdiction (*see Boim v. Am. Muslims for Palestine*, No. 17-cv-3591, 2020 U.S. Dist. LEXIS 194081, at *5-10 (N.D. Ill. Oct. 20, 2020)); but that decision and its reasoning were soundly rejected and reversed by the Court

of Appeals and cannot form the basis for framing the issues, which, in accordance with the Federal Rules, are determined by the allegations of the pleadings. *See Boim*, 9 F.4th at 557-559. There is no allegation in any pleading, and no element of any pleaded cause of action, that calls into question the motives of the Plaintiffs in bringing this suit.

Defendants cite a single Arizona District Court case for the proposition that discovery of litigation funding may be appropriate to fend off a claim of disparity in the resources of the parties to the litigation. (Def. Mem., at pp. 7-8.) But, aside from the fact that no such disparity is at issue in this case, that distinctly minority view is not the law that prevails here or in courts nationally. The argument that third-party funding information might reveal information involving the issues of the underlying case is insufficient to support this discovery request; a more particular connection is required. *See Art Akiane LLC v. Art & Soul Works LLC*, No. 19 C 2952, 2020 U.S. Dist. LEXIS 171682, at *13-15 (N.D. Ill. Sept. 18, 2020) (noting that seeking third-party funding information on the generalization that the information is relevant to exploring statements or representations about the facts of the case was conjectural and insufficient to support the document request).

Moreover, arguments that litigation funding is relevant to the plaintiff's bias or needed to address settlement prospects are generally rejected by courts. *See Fulton v. Foley*, 17-CV-8696, 2019 U.S. Dist. LEXIS 209585, at *5-8 (N.D. Ill. Dec. 5, 2019); *see also Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 U.S. Dist. LEXIS 64532, at *2-3 (E.D.N.Y March 14, 2019) (finding that litigation funding is irrelevant to bias and does not assist the fact finder in determining whether the plaintiff is telling the truth).

Claiming that litigation funding is needed to determine a plaintiff's motive for the suit will not suffice either. A defendant is not entitled to know the motive or strategy of the plaintiff, but more importantly, the plaintiff's motive for a suit is generally not needed to prosecute a case. *See*

9

*Benitez*, at *4-5 (*citing Mackenzie Architects, P.C. v. VLG Real Estates Developers*, *LLC*, No. 1:15-CV-1105, 2017 U.S. Dist. LEXIS 227410, at *6-7 (N.D.N.Y. Mar. 3, 2017)). Allegations that a litigation funder's participation in the lawsuit is champertous or that they are the real party in interest is similarly insufficient to support the discovery of litigation funding. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 724-730 (N.D. Ill. 2014).

Plaintiffs have not stated, one way or the other, whether there has been funding of this litigation by third parties, but that is not a fact at issue in the case, and Defendants' discovery directed to that question is irrelevant. Plaintiffs' objections are appropriate and should be sustained.

**D. Responding to Requests for Production**

Defendants' requests for production of documents are about as broad as they could be, seeking every document that Plaintiffs have relied on or might rely on at trial to support their claims. (*See* Def. Mem, Ex. A, at pp. 12-15, 30-34 of 83.) Plaintiffs have not yet determined which documents they will introduce as evidence at trial in this matter, but Plaintiffs' counsel will be selecting from tens of thousands of documents that they obtained from the original *Boim* litigation in deciding how best to prove the case. (*See* Def. Mem, Ex. E, Dkt. 276-2, at pp. 80-81 of 83.) These documents have been maintained in the same boxes and the same order since they first received, and Plaintiffs' counsel has offered to make them available for inspection and copying precisely as they have been kept.

This is exactly what Rule 34 requires: "to produce and permit the requesting party . . . to inspect . . ." the requested documents. Fed. R. Civ. P. 34(a)(1). Case law has routinely confirmed that where a party requests a voluminous set of potentially responsive documents, the producing party need not bear the burden of copying all of the material, but can simply make the documents

available for inspection and copying at the requesting party's expense. *See, e.g., Cardenas v. Dorel Juvenile Group, Inc*., 230 F.R.D 611, 619-620 (D. Kan. 2005); *Ropak Corp. v. Plastican, Inc*., No. 04 C 5422, 2006 U.S. Dist. LEXIS 63224, at *21 n.10 (N.D. Ill. Aug. 15, 2006).

This is precisely what Plaintiffs have offered to do. Plaintiffs have also offered to copy the entire set of potentially responsive materials (at Defendants' expense), but that offer has been declined. Defendants have offered no compromise, such as narrowing their request to some reasonable quantity of materials. Under these circumstances, it is Defendants who should bear the burden of vast amount of discovery they have initiated.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion should be denied in its entirety.

Date: December 28, 2022　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*s/ Daniel I. Schlessinger*
　　　　　　　　　　　　　　　　　　　　　　Daniel I. Schlessinger
　　　　　　　　　　　　　　　　　　　　　　Seth H. Corthell
　　　　　　　　　　　　　　　　　　　　　　Jaszczuk P.C.
　　　　　　　　　　　　　　　　　　　　　　311 South Wacker Dr., Suite 2150
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　　　(312) 442-0401
　　　　　　　　　　　　　　　　　　　　　　dschlessinger@jaszczuk.com
　　　　　　　　　　　　　　　　　　　　　　scorthell@jaszczuk.com

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 28th day of December 2022.

*/s/ Daniel I. Schlessinger*
