IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION, RAFEEQ JABER <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> **Hon. Gary Feinerman** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL RESPONSES TO DOCUMENT REQUESTS**

Due to the recent transfer of this matter, Defendants provide a brief history to assist the Court in its evaluation of the pending motions to compel filed by both sides.

I. **Introduction and Background**

A. **Factual Overview of Pled Claims**

This case is more than five years old. The sole pled purpose of this case is for Plaintiffs to attach the judgment from a case that is more than twenty years old now, which they brought against defendants who are long-since defunct (as Plaintiffs describe in their Complaint) and not parties to this case, to the Defendants in this case: two nonprofit entities related to each other but not to the prior liable defunct entities, neither of which existed until well after the judgment in that case, and one individual whom Plaintiffs repeatedly deposed about assets well before the filing of this lawsuit.

Plaintiffs' only causes of action pled in this case are alter ego and successor liability, and a fraudulent concealment claim against the individual whom Plaintiffs repeatedly deposed prior to filing this case.

**B.     Procedural History of this Matter**

Despite its age, this case has not progressed all that far procedurally. Judge Sharon Johnson Coleman granted Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) in August 2017, allowing Plaintiffs to file a new complaint "in the event that they further develop the allegations establishing an alter ego theory of liability." Doc. 40. She then granted Plaintiffs' Motion for Reconsideration in January 2018, ruling that "[w]hile this Court disagrees that it misapplied the law, upon further reflection this Court placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship." Doc. 50.

That "limited" jurisdictional discovery, where only Plaintiffs had the right to make any requests, continued for over a year and ended on February 6, 2019. Doc. 141. This discovery conducted by Plaintiffs was, in the words of Magistrate Judge Schenkier, "without question, thorough." Doc. 94, Transcript of Hearing, at 43. Plaintiffs themselves recognized the broad nature of their requests during that process and their right to do so, despite Defendants' objections: "Our prior briefs demonstrate that defendants' overly-narrow [sic] interpretation of 'jurisdictional discovery' conflicts with the Court's August 18 [2018] opinion, which discusses the full range of Plaintiffs' *factual* alter ego allegations, as shown by the summary in" the motions Plaintiffs filed. Doc. 83 at 3, referencing Doc. 56 at 4 n. 3 (emphasis by Plaintiffs in Doc. 83). This "thorough" and "factual" one-sided discovery year included "defendants provid[ing] some 4,500 pages of documents as well as flash drives containing an unspecified amount of social media and written interrogatory responses supplemented by additional information supplied in emails." Doc. 94 at 4-5 (Schenkier, J.). In addition, Defendants produced six

2

witnesses for depositions as well as made three years' worth of copies of the magazine *Al Meezan* available for Plaintiffs, at an agreed split fee for copying. *See* Doc. 94 at 56-58.

Plaintiffs then filed their First Amended Complaint, and Defendants filed a renewed motion to dismiss under Fed. R. Civ. P. 12(b)(1). *See* Doc. 195. Judge Sharon Johnson Coleman again granted that motion. Doc. 215 (observing that "[b]ecause the parties conducted jurisdictional discovery, which included six depositions and numerous discovery requests propounded by plaintiffs, the question of subject matter jurisdiction is factual, not facial"); Doc. 219. Plaintiffs appealed to the Seventh Circuit, which considered the only issue before it, the ruling on subject matter jurisdiction, and reversed and remanded on that basis. Doc. 229 (recognizing the limits of its opinion and acknowledging that "[t]he district court, aided by the parties' briefing, is best equipped to discern the apt analysis for alter ego status in this context"). Upon remand, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which Judge Feinerman denied. Doc. 250 (holding that, read in the light most favorable to Plaintiffs, the Amended Complaint alleged facts which if true sufficiently pled the claims asserted to satisfy Plaintiffs' burden as of the Rule 12 stage, which also noting Defendants "may renew" their arguments "on a more developed factual record on summary judgment or at trial").

C.   **Plaintiffs' Requests for Production, Circa 2018 and 2022**

Mutual discovery began for the first time in this matter, and Plaintiffs propounded only Requests for Production on Defendants. Doc. 272-1. These Requests bear far more than a passing resemblance to those already propounded by Plaintiffs in 2018, and extensively examined and ruled on by this Court over multiple hearings on motions to compel filed by Plaintiffs and requests for protection filed by Defendants. *See generally* Doc. 94. The Requests sent by Plaintiffs on August 12, 2022 (which Plaintiffs erroneously refer to as their "first set of requests for production of documents" at Doc. 272, at 2, despite sending and attempting to compel production in January 2018, *cf.* Doc. 56-5 at Ex. 16) track the previously sent and litigated requests for production verbatim in twenty-five of the first twenty-seven requests, and the

3

remaining requests merely rephrase the same substance. Doc. 272-1; Doc. 56-5 at Ex. 16. Plaintiffs omit both this duplication and any discussion of the related rulings from their pending motion, misleadingly claiming that "to date, Defendants have produced only 31 pages of documents" and "the Boims are left with only a handful of documents". Doc. 272 at 2. While Plaintiffs vaguely reference in a footnote that "limited jurisdictional discovery" previously occurred, their own prior characterization of that "broad" and "factual" opportunity to conduct one-sided discovery more accurately matches the descriptions by this Court. *See, e.g.,* Doc. 94 at 43 (describing Plaintiffs' discovery efforts to date as "without question, thorough").

In fact, Plaintiffs' previous requests correspond directly with all but a few of Plaintiffs' 2018 requests for production. Compare Doc. 272-1 ("2022 Requests") at 4, Request No. 1, with Doc. 56-5, Ex. 16 ("2018 Requests"), Request No. 3; 2022 Request No. 2 with 2018 Requests No. 4 and 5; 2022 Request No. 4 with 2018 Request No. 7; 2022 Request No. 5 with 2018 Request No. 9; 2022 Request No. 6 with 2018 Request No. 10; 2022 Request No. 7 with 2018 Request No. 11; 2022 Request No. 8 with 2018 Request No. 12; 2022 Request No. 9 with 2018 Request No. 13; 2022 Request No. 10 with 2018 Request No. 14; 2022 Request No. 11 with 2018 Request No. 15; 2022 Request No. 12 with 2018 Request No. 16; 2022 Request No. 13 with 2018 Request No. 17; 2022 Request No. 14 with 2018 Request No. 19; 2022 Request No. 15 with 2018 Request No. 20; 2022 Request No. 16 with 2018 Request No. 21; 2022 Request No. 17 with 2018 Request No. 22; 2022 Request No. 18 with 2018 Request No. 23; 2022 Request No. 19 with 2018 Request No. 24; 2022 Request No. 20 with 2018 Request No. 25; 2022 Request No. 21 with 2018 Request No. 26; 2022 Request No. 22 with 2018 Request No. 28; 2022 Request No. 23 with 2018 Request No. 30; 2022 Request No. 24 with 2018 Request No. 17; 2022 Request No. 26 with 2018 Request No. 31; 2022 Request No. 27 with 2018 Request No. 22; and repeated subject matters from 2022 Requests 28 – 43 with the corresponding subjects identified in 2018 Requests listed above.

That explains the lack of new documents to produce, in large part. Plaintiffs already have them or this Court already ruled Plaintiffs are not entitled to them. The hearing conducted on July 12, 2018 and transcribed at Doc. 94 walks through most if not all of the issues raised in Plaintiffs' present motion.

4

## II. Plaintiffs' Current Motion Raises No New Issues

As Magistrate Schenkier did in 2018, Defendants address the complaints set forth in Plaintiffs' current motion by categories. This Court has already ruled on these issues, and where this Court ordered production Plaintiffs already possess the responsive documents.

### A. Defendants Identify the Time Frame Consistent with Prior Rulings in This Case and the Relevant Claims Asserted in this Case

Plaintiffs try now just as they tried in 2018 to get information on all areas of their requests for an unlimited timeframe. Yet that is not consistent with the law of this Circuit, Illinois alter ego law, or this Court's earlier reasoning. Magistrate Schenkier did not identify the time period from 2005 through the end of 2010 out of thin air, nor did he do so solely based on limited scope or non-factual inquiries; he interpreted and applied the relevant law to determine that time period as most relevant and applicable to the claims raised, as well as "both relevant and proportional." Doc. 94 at 7. This Court rightly noted that "I have serious question[s] about the relevance of much of the discovery the farther away we get from the formative period[,]" identified as "no later than through 2010." *Id*. at 9. That time period is significant because if Plaintiffs "cannot develop evidence sufficient to state an alter ego claim from the discovery obtained for the period through the end of 2010, the likelihood to me is small that they will obtain information from a period more remote from the time that the original defendants ceased operations and the current entities were formed." *Id*. at 10.

And the Court already rejected Plaintiffs' argument that "we think the fact that [anything purportedly nefarious] was still going on could be argued as relevant" with the response that "I don't know [what] still going on [means]. That's the point." *Id* at 51. Instead, the Court questioned "why would you care" about things from a more remote timeframe, explaining that "whether they did something in 2013, I'm not sure that goes to it" and "[b]ecause somebody decided to fundraise or provide funds in 2011 or '12 or '17 doesn't mean they did so in 2005 or '06." *Id*. at 49. An expanded time frame was not relevant to

5

whether Defendants hid assets from the judgment debtors in 2005 or 2006, and the passage of four more years in this case does not make it any more relevant now.

### B. Defendants Have Already Delineated Their Search Methods and Available Systems

Plaintiffs claim that they have no clue who Defendants sought information from in discovery or their searches, and that they have no way they could know. Doc. 272 at 5-6. But that ignores the factual history of this case: in July 2018, defense counsel specifically delineated, with Plaintiffs' counsel Dan Schlessinger present in the courtroom, the custodians of records questioned and methods used. See Doc. 94 at 32 – 38. Counsel identified the three original individual defendants as well as others with AMP, including founders Munjed Ahmad and Dr. Hatem Bazian, and this Court ordered counsel to also speak to three individuals specifically requested by Plaintiffs because Plaintiffs believed those individuals to have responsive information (they did not). *Id.* And, Plaintiffs deposed six of those individuals, and questioned them extensively about what documents they had in their possession, the AMP/AJP systems, and what searches they had done to comply with the requests already served. Plaintiffs are not left in the dark here.

### C. This Court Already Ruled Metadata Not Applicable to this Matter

This Court also already walked through the original format of the documents produced, confirmed defense counsel did no conversion of data to new formats, and denied Plaintiffs' requests for metadata on individual emails, without more justification for potentially providing it. And, Defendants produce the full archives of all of AMP/AJP's social media pages in full. *Id.* at 41.

### D. This Court Already Ruled on The Requests as to Transfers Between AMP and AJP

More than one of the directly duplicated requests from 2018 relates to Plaintiffs' assertion that if AMP and AJP worked closely together, and if IAP and AMS worked closely together, then somehow the two sets of entities must become interchangeable. Doc. 272 at 7. Yet Plaintiffs have yet to justify this theory, other than that it is speculation on their part and they presume it to be accurate. Again, this Court addressed this argument four years ago based on verbatim requests for

production as Plaintiffs now attempt to compel; to the extent responsive documents exist, Defendants already produced them and Plaintiffs already have them. *Id*. at 11-14. Plaintiffs may not like the answers, but "it is what it is." *Id*.

**E. This Court Specifically Denied Plaintiffs' Request for Documents Regarding a Purported 2015 Michigan Event, and Explained Why in Detail – And Counsel Already Argued and Lost at a Hearing on this Exact Request**

Much like with the general objection to the limited time frame, Plaintiffs already asked in 2018 – and specifically argued to Magistrate Judge Schenkier – to get information regarding a 2015 event in Detroit which they deem important. They lost. They're asking again, yet giving no new reasons why something more than ten years removed from the judgment at issue would be either relevant or proportional. Id. at 7, 9, 49-51.

Accordingly, Defendants respectfully request an order from this Court denying Plaintiffs' Motion to Compel. For the reasons previously determined by this Court on these exact requests and the authority cited by Defendants on the same issue previously, Defendants ask this Court to deny the Motion.

**CONCLUSION**

For the reasons set forth herein, Defendants respectfully request this Court deny Plaintiffs' Motion and issue an order enforcing this Court's existing rulings.

Dated: December 28, 2022                                    Respectfully submitted

                                                                     /s/ *Christina A. Jump*
Christina A. Jump
Alyssa F. Morrison
Constitutional Law Center for Muslims in America
100 N. Central Expy. Ste 1010
Richardson, TX 75080
(972) 914-2507

Local Counsel
Thomas A. Durkin
Durkin & Roberts
2446 North Clark Street
Chicago, IL 60614
(312) 913-9300

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 28, 2022, she caused the foregoing Motion to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

                                                                                                                 /s/ *Christina A. Jump*

8