IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM,<br><br>  Plaintiffs,<br><br>  v.<br><br>AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; and RAFEEQ JABER<br><br>  Defendants. | Civil No. 17-cv-03591<br><br>**Hon. Andrea R. Wood**<br><br>**Hon. Heather K. McShain** |

## THE BOIMS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL

This much is clear from Defendants American Muslims for Palestine, Americans for Justice in Palestine, and Rafeeq Jaber's (the "Defendants") response to Plaintiffs Stanley and Joyce Boim's (the "Boims") motion: they do not want the Boims to obtain any merits discovery from them. To support this extreme position, Defendants selectively restate the case history in an effort to transform the "limited jurisdictional discovery" taken in 2018 into the only discovery to which the Boims are entitled.

But the Defendants' attempt to shut down merits discovery is unavailing. Pursuant to this Court's order, the "limited jurisdictional discovery" taken in 2018 was just that – "limited" and "conduct[ed] . . . solely to address jurisdiction." Therefore, any constraints on the scope of that limited jurisdictional discovery do not carry over into merits discovery. Now that the case is in merits discovery, the Boims are entitled to more extensive discovery relevant not just to their alter ego claim, but also their other claims for successor liability and fraudulent concealment. Finally, Defendants' argument for shutting down discovery ignores the impact of subsequent

opinions from the Seventh Circuit and this Court as well as significant factual developments that broaden the scope of discovery.

The Boims filed this case over five years ago and have yet to obtain merits discovery to support their claims. They should not have to wait any longer and respectfully request that the Court grant their motion, overrule Defendants' objections to producing information outside of the narrow timeframe of 2005 to 2010, order them to produce any information being withheld based on that objection, and order Defendants to cooperate fully in e-discovery.

## I. RELEVANT CASE HISTORY

The Boims filed this action against Defendants in May 2017, alleging that Defendants were alter egos and/or successors in interest to IAP[1] and, therefore, are liable for the $156,000,000 judgment (the "*Boim* Judgment") entered against IAP in the original *Boim* action. Defendants moved to dismiss the complaint for lack of subject matter jurisdiction the following month. To support that motion, Defendants attached several declarations from a few former IAP leaders named in the Boims' first Complaint disclaiming involvement in the establishment of AMP.[2] After initially granting the Defendants' motion, the Court granted the Boims' motion to reconsider its ruling, finding that it "placed too much weight to defendants' declarations without providing plaintiffs with the opportunity to conduct *limited discovery* on the existence of an alter ego relationship." (Dkt. 50) (emphasis added) The alter ego claim alone was relevant to the jurisdictional inquiry because it was the Boims' independent basis for subject matter jurisdiction. (*See, e.g.,* Dkt. 41, at p. 6) The Court then ordered the parties to conduct limited discovery "solely to address jurisdiction." (Dkt. 50)

---

[1] The Boims refer to the Islamic Association for Palestine and its alter ego the American Muslim Society as IAP.

[2] The Boims refer to American Muslims for Palestine and its operating entity Americans for Justice in Palestine as AMP.

2

Jurisdictional discovery was limited – both in scope and the time allotted to take it. The Boims served their first and only round of jurisdictional written discovery requests approximately two weeks after Judge Coleman's order. Almost immediately disputes arose about the scope of limited jurisdictional discovery, and after several months of fruitless negotiations, the Boims moved to compel Defendants to provide more complete responses. (Dkt. 54)

The case was then referred to Magistrate Judge Schenkier to supervise jurisdictional discovery. (Dkt. 61) During a hearing in July 2018 on one of these disputes, and while subject to Judge Coleman's directive that jurisdictional discovery should be "limited," Magistrate Judge Schenkier narrowed Defendants' obligation to produce certain categories of information the Boims sought to a 2005 to 2010 time period.[3] (*E.g.*, Dkt. 94, pp. 10:18-13:02) At that July 2018 hearing, Judge Schenkier also prohibited the Boims from serving additional discovery absent an agreement of the parties or leave of Court, finding that the discovery issued was sufficient to present their positions on alter ego for jurisdictional purposes. (Dkt. 94, at p. 46:02-12) When jurisdictional discovery concluded, the Boims filed their Amended Complaint and the referral to Magistrate Judge Schenkier was terminated. (Dkt. 195)

Following the close of limited jurisdictional discovery, Defendants moved once more to dismiss the Boims' action for want of subject matter jurisdiction. (Dkt. 189) Judge Coleman granted that motion and the Boims appealed. (Dkt. 217) The Seventh Circuit then reversed Judge Coleman's order, finding that this Court had subject matter jurisdiction over the case because the Boims sufficiently alleged an alter ego claim. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021). Notably, the appellate opinion found that the Court's opinion had effectively

---

[3] Notably, Magistrate Judge Schenkier's constraint was based in part on the burden to AMP of producing this information. To date, AMP has not substantiated any burden to searching for information outside of the 2005-2010 timeframe. (Dkt. 94, pp. 9:21-10:03)

treated Defendants' motion challenging jurisdiction as if it was a challenge to the merits of the Boims case. *Id.*, at 557-59. The Seventh Circuit found this inappropriate because the Court had only allowed "limited jurisdictional discovery of an alter ego relationship" and, therefore, "[could not] say the factual record was fully developed on the question." *Id.*, at 558. The opinion also noted that the Court had an overly narrow view of the relevant alter ego factors in the context of "terrorism financing organizations." *Id.*, at 559. Instead of focusing on traditional alter ego factors, the Seventh Circuit found that factors such as overlap in leadership, shared organizational purpose, similarity of operations, and unlawful motive were more significant to the inquiry. *Id.*

Following the Seventh Circuit's order reversing and remanding the case to this Court, Defendants again moved to dismiss the Boims' Amended Complaint – this time on based on Rule 12(b)(6). The Court denied that motion, noting that the Seventh Circuit had provided a list of relevant alter ego factors and finding that the Boims had sufficiently alleged their existence. (Dkt. 250)

## II. ARGUMENT

### A. "LIMITED JURISDICTIONAL DISCOVERY" WAS LIMITED; MERITS DISCOVERY IS NOT SUBJECT TO THAT DIRECTIVE.

Judge Coleman's order instructing the parties to conduct "limited jurisdictional discovery . . . solely to address jurisdiction" was straightforward. At the time, Defendants had presented declarations disclaiming involvement in AMP's founding and the Court had relied on those declarations in ruling that the Boims had not sufficiently alleged an alter ego claim for purposes of subject matter jurisdiction. Recognizing the inequity of assigning significant weight to untested declarations, the Court reconsidered its ruling and ordered limited jurisdictional discovery.

In using the term "limited" the Court cabined the scope of discovery requests to the alter ego issue, as opposed to the Boims other claims for successor liability and fraudulent concealment. (*See, e.g.*, Dkt. 94, at p. 8:1-5) But the Court also explicitly stated that discovery was meant "solely to address jurisdiction" – *i.e.*, not the merits of the Boims' alter ego claim. (Dkt. 50) And given that the Boims were only tasked with alleging alter ego for purposes of establishing jurisdiction (as opposed to proving alter ego) they were also limited as to the scope of discovery into the alter ego issue – a fact recognized by the Seventh Circuit. *Boim v. Am. Muslims for Palestine*, 9 F.4th, at 558 ("To begin, the district court permitted only limited jurisdictional discovery on the existence of an alter ego relationship. We cannot say the factual record was fully developed on the question.").

Now that it is settled that the Boims have sufficiently alleged an alter ego claim such that any jurisdictional concerns are satisfied, they are entitled to discovery into their successor liability and fraudulent concealment claims—to date, the Boims have not obtained any discovery regarding those claims—as well as additional merits discovery into their alter ego claim.

Moreover, the Court referred this matter to Magistrate Judge Schenkier in May 2018 for the discrete purpose of overseeing the limited jurisdictional discovery it had ordered. In resolving the discovery disputes that arose between the parties, Magistrate Judge Schenkier was bound by this Court's directive that jurisdictional discovery should be limited. The current dispute regarding the scope of merits discovery (including the relevant time period) therefore is not, nor should it be, settled by Magistrate Judge Schenkier's rulings on discrete discovery requests in the specific context of jurisdictional discovery.

B. **THE SEVENTH CIRCUIT OPINION BROADENED THE SCOPE OF DISCOVERY.**

Moreover, since the close of jurisdictional discovery, the Seventh Circuit and this Court have refined the appropriate alter ego test and thus changed the universe of relevant information, and as a result, the scope of discovery. Prior to the Boims' appeal, this Court applied an alter ego test tailored to the context of for-profit corporations attempting to dodge collective bargaining agreements. *Boim v. Am. Muslims for Palestine*, 9 F.4th, at 559. Not surprisingly, the relevant factors were ill-suited to "the context of terrorism financing nonprofit organizations." *Id.* The Seventh Circuit recognized this disconnect and provided a list of factors relevant to the Boims' case: "overlap in leadership, similar organizational purpose, similarity of operations, and unlawful motive or intent to escape liability." *Id.* In denying Defendants' Rule 12(b)(6) motion to dismiss, this Court recognized the importance of the factors (and the Boims' success in alleging their existence) identified by the Seventh Circuit moving forward. (Dkt. 250)

And now that the case has finally progressed to merits discovery, Defendants' obligation to respond to the Boims' requests aimed at these factors should not be limited to a narrow 2005 to 2010 timeframe. If AMP has information that evidences an overlap in leadership with IAP, a similar organizational purpose to IAP, similarity in operations of the two entities, or an intent to escape liability for the original *Boim* judgment—and the Boims believe they do—it should not be able to withhold that information solely because it came into existence outside of the 2005 to 2010 timeframe.

C. **SUBSEQUENT DEVELOPMENTS DURING DISCOVERY ALSO WARRANT EXPANDING THE RELEVANT TIME PERIOD.**

Even if one assumes the constraints applied during "limited jurisdictional discovery" have any impact on the scope of merits discovery, the relevant time period should still be extended beyond 2005 to 2010 because of subsequent developments in the factual record. During

6

jurisdictional discovery—pursuant to its own investigation—the Boims uncovered direct evidence of individuals with significant connections to IAP discussing "transition[ing]" to a new organization. (Dkt. 179, at ¶¶ 67-69) Indeed, AMP did not produce or otherwise disclose this information during jurisdictional discovery. Notably, during this exchange the "transition" organizers specifically highlighted that they needed "to distance [them]selves from any well known IAP figures . . . [s]ince this is the *transition period* . . ." (*Id.*) (emphasis added)

Beyond serving as direct evidence of the organizers' intent to escape liability, this exchange illustrates why limiting merits discovery to the narrow 2005 to 2010 time period will inappropriately hamstring the Boims. At this early stage of the "transition," AMP's organizers were acutely aware that publicly they needed to avoid any association with IAP. Therefore, information from the 2005 to 2010 timeframe may be of limited probative value to the extent it reflects that conscious effort to obscure the "transition" from IAP to AMP. On the other hand, information further out in time from IAP's transition to AMP, when the "new entity" let its guard down, will likely reflect the true leadership, organizational purpose, and operations of AMP. The factual record developed to date supports this theory as many former IAP leaders, including Abdelbasset Hamayel, Osama Abuirshaid,[4] Rafeeq Jaber, and Sufian Nabhan[5] drifted back into formal leadership roles after the initial "transition period."

Moreover, the Boims First Amended Complaint (filed after the close of jurisdictional discovery) is replete with references to facts outside of the narrow 2005 to 2010 timeframe that are relevant to the Boims' claims. For example, with respect to overlap in leadership, the Boims

---

[4] Osama Abuirshaid, testified that he had a personal interest in not becoming publicly identified with AMP because he had a pending application for naturalization and, assumedly, did not want to highlight his prior important role in a terror financing organization. Abuirshaid subsequently became AMP's National Policy Director and is the organization's public face. He plays a major in maintaining close ties with Hamas leadership. (Dkt. 179 ¶¶ 123-28)

[5] Sufian Nabhan was an individual specifically identified by the organizers as someone AMP should distance itself from during the "transition period." (Dkt. 179, at ¶ 69) Nevertheless, he eventually became an AMP board member.

allege that Jaber, the former president of IAP, designated himself as AMP's representative in 2015 and participated in AMP's board level decisions around that time.[6] (Dkt. 179, at ¶ 117) The Boims also alleged AMP operates in a manner similar to IAP in that it raises funds for ostensibly charitable organizations that support Hamas. (*Id.*, ¶¶ 98-103) Some of these events—*e.g.* the August 2015 event in Detroit—occurred after 2010. (*Id.*, at ¶ 103) And the Boims have also alleged that AMP serves the same organizational purpose as IAP – to promote and raise money for Hamas in the United States. (*E.g.*, *id.*, at ¶ 97) To support that allegation, the Boims reference public statements and positions of AMP leaders, many of which occurred after 2010. (*E.g.*, *id.*, at ¶¶ 98, 128)

### D. DEFENDANTS MISCONSTRUE THE BOIMS' MOTION WITH RESPECT TO COOPERATION DURING ESI DISCOVERY.

In furtherance of their strategy to shut down merits discovery, Defendants rely on their disclosures about the potential sources of information they searched during jurisdictional discovery. But jurisdictional discovery closed years ago. The parties are now in merits discovery and the Boims' questions about the potential sources of information were aimed at Defendants' efforts to search for information the Boims requested during merits discovery. Based on Defendants' response, it appears that they have not conducted any search and are simply relying on their efforts during limited jurisdictional discovery.

Moreover, while identifying a handful of custodians is a starting point, it is not the end of the process. For example, Defendants have not identified any specific systems or databases in which it has searched for responsive information. Simply asking an individual if he or she has

---

[6] Jaber's declaration in support of Defendants' initial motion to dismiss also states that he was invited to join AMP's board in 2013. (Dkt. 31-1)

responsive information is not enough. To the extent AMP has an email server or a document storage system, those databases should be actively searched using targeted search terms.

### III. CONCLUSION

For the foregoing reasons, the Boims respectfully request that the Court grant this motion and issue an order awarding the relief requested therein.

Date: January 5, 2023

Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 5th day of January 2023.

<em>/s/ Seth H. Corthell</em>