### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, | No. 17 CV 3591 |
| Plaintiffs, | District Judge Wood |
| v. | Magistrate Judge McShain |
| AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; AND RAFEEQ JABER | |
| Defendants. | |

### ORDER

Pending before the Court is plaintiffs Stanley and Joyce Boim's motion to compel [272].[1] The motion is fully briefed. [281], [285]. For the following reasons, plaintiffs' motion to compel [272] is granted in part and denied in part.

### Background

In a prior lawsuit, *Boim v. Quranic Literacy Institute*, 340 F.Supp.2d 885, 931 (N.D. Ill. 2004) ("*Boim I*"), plaintiffs secured a $156 million judgment against several organizations – including American Muslim Society and its alter ego, Islamic Association for Palestine ("AMS/IAP"), and Holy Land Foundation for Relief and Development – for providing material support to Hamas, which murdered their son David in an act of terrorism. The *Boim I* defendants paid only a fraction of that judgment. [179] 2, 20-21, 28. In the present suit, plaintiffs allege entity defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine Educational Foundation ("AJP"), and individual defendant Rafeeq Jaber, are alter egos of Holy Land and AMS/IAP, making them liable for the unpaid portion of the *Boim I* judgment. [*Id.*] 3-4.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction. [31]. In response, plaintiffs argued the district court has jurisdiction under the Anti-

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Terrorism Act, 18 U.S.C. 2333(a), based on the theory that the entity defendants are alter egos of the *Boim I* defendants. [37] 6. The district court granted defendants' motion and dismissed the case without prejudice, concluding that "plaintiffs failed to demonstrate the requisite level of unity of interest and control such that AMP and AJP are 'disguised continuances' of the judgment of the debtors and that the organizations and individual defendants can be held directly liable for the actions of the judgment debtors." [41] 10. Plaintiffs moved for reconsideration. [43]. The district court granted plaintiffs' motion, stating:

> While this Court disagrees that it misapplied the law, upon further reflection, this Court placed too much weight [on] defendants' declarations without providing plaintiffs with the opportunity to conduct limited jurisdictional discovery on the existence of an alter ego relationship. Accordingly, this Court will vacate its previous order dismissing the case with[out] prejudice and permit plaintiffs to conduct discovery solely to address jurisdiction.

[50], [51].

Parties completed jurisdictional discovery, under Magistrate Judge Schenkier's supervision,[2] at the end of January 2019. [61], [140]. Plaintiffs filed an amended complaint and defendants filed motions to dismiss for lack of jurisdiction. [179], [189], [197]. The district court granted defendants' motions and plaintiffs appealed. [215], [217]. The Seventh Circuit Court of Appeals reversed and remanded, stating in relevant part:

> In the new lawsuit, the district court allowed limited jurisdictional discovery, decided the new entities and individuals were not alter egos of the defunct nonprofits, and then dismissed the action for lack of subject matter jurisdiction. This should not have happened, for the district court's finding on the alter ego question constituted a merits determination that went beyond a proper jurisdictional inquiry. Because [plaintiffs'] new lawsuit arises under the Anti-Terrorism Act, the district court possessed federal jurisdiction and should have allowed the case to proceed on the merits . . . .

*Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 547-48 (7th Cir. 2021).

Defendants proceeded to file a third round of motions to dismiss that the district court denied. [236], [237], [249]. Merits discovery proceeded and the instant motion resulted. [272].

---

[2] Magistrate Judge Sidney Schenkier was the assigned Magistrate Judge before his retirement and the case's subsequent reassignment to the undersigned.

**Legal Standard**

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In determining the scope of discovery under Rule 26, relevance is construed broadly and is 'not limited to issues raised by the pleadings[.]'" *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340, 351 (1978)). At the same time, discovery must be proportional to the needs of the case, considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefit." Fed. R. Civ. P. 26(b)(1). Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The party requesting discovery bears the initial burden to establish its relevancy." *Mendez*, 2020 WL 4736399, at *3. Courts have broad discretion in resolving such disputes. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

**Discussion**

Plaintiffs' motion to compel is comprised of four requests: (1) discovery outside the 2005-2010 timeframe;[3] (2) discovery regarding defendants' discovery efforts; (3) documents reflecting transfers of funds between AJP and AMP when the organizations were separate legal entities; and (4) documents concerning a 2015 fundraising event in Detroit, Michigan. [272] 5-8. Plaintiffs argue the requested information helps to establish plaintiffs' claim that entity defendants are alter egos of Holy Land and AMS/IAP. [*Id.*]. Plaintiffs explain that in analyzing whether an entity is an alter ego, in the context of terrorism financing organizations, courts assign the following factors great weight: "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability . . . ." [*Id.*] 4 (quoting *Am. Muslims for Palestine*, 9 F.4th at 559). Plaintiffs contend the information requested seeks to establish the existence or non-existence of those factors. [*Id.*] 2. Defendants respond that plaintiffs' motion seeks to reraise requests Judge Schenkier already addressed and resolved during jurisdictional discovery. [281] 5-7 (citing [94] 7-14, 32-38, 41, 49-51). Plaintiffs reply Judge Schenkier's rulings were within the specific context of jurisdictional discovery and those rulings do not carry over into merits discovery. [285] 1, 5. Plaintiffs further argue that after surviving defendants' motions to dismiss, plaintiffs are entitled to more extensive

[3] During jurisdictional discovery, Judge Schenkier ruled the relevant period for discovery spans the "formative period" when the entity defendants were created, that being 2005 through 2010. [94] 9, 31.

3

discovery relevant to their alter ego claim and fraudulent concealment claim, the latter, plaintiffs contend, they have obtained no discovery. [*Id.*]. Finally, plaintiffs argue that since jurisdictional discovery closed, the Seventh Circuit redefined the alter ego test, and thus "changed the universe of relevant information," identifying a different set of factors than those Judge Schenkier used to evaluate plaintiffs' discovery requests.[4] [*Id.*] 6.

## I.    Plaintiffs Are Entitled to Merits Discovery After Adequately Pleading Claims Notwithstanding the District Court's Bifurcation of Discovery.

Plaintiffs must adequately plead a claim before getting merits discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("a district court must retain the power to insist upon some specificity in pleading" to avoid "sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.") (internal citations and quotations omitted). If a complaint contains adequately pleaded claims, it will survive a Rule 12(b)(6) motion to dismiss, and parties are then entitled to pursue discovery related to those claims. *See Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) ("surviving a motion to dismiss" requires that "[t]he complaint must contain allegations that collectively "state a claim to relief that is plausible on its face.'")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587, 589 (7th Cir. 2021) (concluding that once a complaint survives a motion to dismiss, parties may "of course . . . pursue discovery on . . . theories" related to parties' claims).

With these principles in mind, the Court concludes the parties are entitled to merits discovery, separate and apart from the limited jurisdictional discovery already conducted, to establish plaintiffs' alter ego and fraudulent concealment claims, and related defenses. In denying defendants' motions to dismiss, the district court found plaintiffs adequately pleaded in their amended complaint an alter ego claim against defendants and a fraudulent concealment claim against individual defendant Jaber. [250] 5-7. Once plaintiffs' amended complaint survived defendants' motions to dismiss, plaintiffs were entitled to discovery to establish those claims. *See Bilek*, 8 F.4th 581 at 589. Contrary to what defendants suggest, the district court's decision to bifurcate discovery does not impede plaintiffs' ability to gain access to merits discovery. *See Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 893, 933-34 (N.D. Ill. 2013); *see also ABN AMRO, Inc. v. Cap. Int'l Ltd.*, No. 04 C 3123, 2007 WL 845046, at *13, 16 (N.D. Ill. March 16, 2007) (finding plaintiff was permitted merits discovery following jurisdictional discovery and "seemingly would be entitled to such discovery under Fed. R. Civ. P. 56(f)" before considering dispositive motions). Furthermore,

---

[4] *See Am. Muslims for Palestine*, 9 F.4th at 559 (finding the traditional factors, that the district court considered, ill-equipped to determine an alter ego relationship in the context of terrorism financing organizations).

4

even if "merits and jurisdictional discovery are intertwined," or overlap, "a court may in its discretion, order full production." *Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, No. 19 C 7675, 2021 WL 2433653, at *5 (N.D. Ill. June 15, 2021) (citing *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1151 (N.D. Ill. 1979)). Having concluded plaintiffs are entitled to merits discovery on the claims in their amended complaint, the Court proceeds to evaluate the individual requests in plaintiffs' motion to compel [272].

## II.   Plaintiffs' Motion to Compel

### a.   Relevant Period for Merits Discovery is 1996 to 2018.

Plaintiffs argue the relevant period for discovery is 1996 to the present while defendants contend the period set by Judge Schenkier during jurisdictional discovery, that being 2005 to 2010, should continue to control. [272] 5; [281] 5 (citing [94] 7-9). Plaintiffs contend information predating 2005 is relevant because as early as 1996 individual defendant Jaber directed and controlled AMP/AJP's alleged predecessors IAP/AMS. [272] 5. Plaintiffs argue information post-dating 2010 is also relevant because if connections and similarities between AMP/AJP and IAP/AMS endure to this day, evidence of those connections and similarities demonstrate AMP/AJP serve the same purpose, operate in the same manner, and rely on the same network of leaders and surrogates as their predecessor IAP/AMS. [*Id.*]. In response, defendants point to Judge Schenkier's discussion of the relevant timeframe for jurisdictional discovery, where he notes,

> [I] have serious question[s] about the relevance of much of the discovery the farther away we get from the formative period, which I would say is no later than through 2010 . . . If [plaintiffs] cannot develop evidence sufficient to state an alter ego claim from the discovery obtained for the period through the end of 2010, the likelihood to me is small that they will obtain information from a period more remote from the time than the original defendants ceased . . . operations and the current entity defendants were formed.

[94] 9-10.

Relying on the above excerpt, defendants argue Judge Schenkier, after interpreting and applying the relevant law, determined the 2005 to 2010 timeframe as the "most relevant and applicable to the claims raised, as well as "both relevant and proportional.'" [281] 5 (quoting [94] 7).

The Court is unpersuaded that the timeframe for jurisdictional discovery should apply to merits discovery for several reasons. First, defendants overstate Judge Schenkier's rejection of plaintiffs' request for an expanded timeframe. While Judge Schenkier questioned the relevance of discovery outside of 2005 to 2010, he also stated he was "reluctant to enter a specific order saying there cannot be any question," during plaintiffs' taking of depositions, "that goes after December 31, 2010." [94] 52. Second, placing Judge Schenkier's discovery rulings in context reveals that Judge Schenkier did not consider plaintiffs' fraudulent concealment claim in determining the relevant timeframe. As Judge Schenkier repeatedly stated, his rulings on discovery requests were in the context of "solely . . . jurisdiction" with respect to "the existence of an alter ego relationship." [*Id.*] 4, 7. Further, while Judge Schenkier determined the relevant timeframe after interpreting and applying the relevant law *at the time,* since his ruling the Seventh Circuit has overhauled the alter ego analysis, shifting away from the traditional factors and adopting factors appropriate in the context of terrorism financing organizations. *See Am. Muslims for Palestine*, 9 F.4th at 559. As Judge Schenkier's rulings predate this overhaul and were made in the context of jurisdictional discovery, his determination of a relevant timeframe could not have contemplated the modernized factors at this state of the litigation.

The Court agrees with plaintiffs' requested timeframe in part and concludes the relevant period for discovery spans 1996 to 2018. The period for relevant information should begin no later than 1996, when individual defendant Jaber founded AMS and became president of IAP, the *Boim I* defendants. [179] 13. The district court in denying defendants' motions to dismiss, found plaintiffs' amended complaint alleges facts supporting each factor relevant to a determination of alter ego liability, those being: "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability." [250] 2 (citing *Am. Muslims for Palestine*, 9 F.4th at 559). Relevant here, the district court found the amended complaint alleges substantial overlap in leadership between entity defendants and AMS/IAP, pointing to plaintiffs' factual allegation that "Jaber – a founder of AMS and president of IAP – is a "central participant in board-level business decisions" for entity defendants." [*Id.*] 3 (citing [179] 7, 29-30, 43). Similarly, the district court found the amended complaint alleges facts to state a fraudulent concealment claim, focusing on plaintiffs' allegations that "Jaber controlled AMS/IAP" and that he "exercised personal control over those organizations." [*Id.*] 5 (citing [179] 43, 58). According to the amended complaint, individual defendant Jaber became president of AMS/IAP, the *Boim I* defendants, in 1996. [179] 13. Considering that the district court found individual defendant Jaber's leadership at AMS/IAP and his level of control over these organizations relevant to both plaintiffs' alter ego and fraudulent concealment claim, the Court concludes information starting from

individual defendant Jaber's tenure as president of AMS/IAP is relevant to plaintiffs' claims.

The relevant timeframe should continue to 2018, the most recent date described in plaintiffs' amended complaint that entity defendants allegedly provided indirect support for Hamas. [179] 39. Turning again to the district court's denial of defendants' motions to dismiss, the district court found the amended complaint alleges that entity defendants share the same organizational purpose, a factor relevant to the alter ego analysis, in providing indirect support for Hamas – as Holy Land and AMS/IAP. [250] 3 (citing [179] 3, 37-41). In the amended complaint, plaintiffs explain that entity defendants provide indirect support through "arranging to have payments sent to purported charitable organizations, which act as intermediaries" and "[a]t its annual conventions," setting "aside space for a variety of vendors and organizations that are also event sponsors – just as IAP did at its annual conventions." [179] 38. The amended complaint goes on to state that purported charitable organization and intermediary, Baitulmaal, is a consistent supporter of AMP, sponsoring numerous AMP events, including its conventions, until the most recent in November 2018. [*Id.*] 38-39. The complaint adds these fundraising activities also occurred in 2015 and 2016. [*Id.*] 39. In light of the district court's finding that entity defendants alleged indirect support for Hamas is relevant to whether entity defendants share the same organizational purpose as the *Boim I* defendants, and thus are the *Boim I* defendants' alter egos, the Court concludes information through 2018, the most recent documented AMP/AJP fundraising event, is relevant. Accordingly, the relevant timeframe for merits discovery is 1996 through 2018.

### b. Plaintiffs Fail to Provide a Sufficient Basis for the Court to Order Discovery on Discovery.

Plaintiffs seek information regarding defendants' efforts to identify and collect responsive information, explaining that defendants have refused to answer plaintiffs' inquiries for this information. [272] 5-6. Specifically, plaintiffs request defendants identify: (1) potential sources of responsive information and confirm whether defendants searched those sources; (2) custodians whose email accounts defendants searched and; (3) search terms defendants used to locate responsive information. [*Id.*]. Plaintiffs also request the Court order defendants run plaintiffs' proposed search terms against any data source from which defendants are collecting information. [*Id.*] 5-7. Defendants respond they already delineated their search methods and available systems, pointing out that during a motion hearing in July 2018 defense counsel listed the custodians of records questioned, described their search methods, and confirmed the documents produced were in their original format. [281] 6 (citing [94] 32-38). Defendants add they already produced the complete

7

archives of AMP/AJP's social media pages. [*Id.*] (citing [94] 41). Plaintiffs reply defendants' response indicates that defendants have not conducted any searches for responsive information during merits discovery and instead are relying on their efforts during jurisdictional discovery. [285] 8.

The Court concludes plaintiffs have not provided a factual basis for permitting discovery about discovery. Discovery about discovery is permitted only when "one party's discovery compliance has reasonably been drawn into question" and that suspicion is grounded in an "adequate factual basis." *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2, 4 (N.D. Ill. July 28, 2020). Plaintiffs claim that defendants have refused to answer questions about their efforts to identify and collect responsive information and produced only thirty-one pages of documents in response to plaintiffs' most recent discovery requests. [272] 6-7. However, plaintiffs' claim fails to demonstrate that defendants' discovery productions have been deficient or that defendants have additional responsive materials that exist and are withholding. *See Orillaneda v. French Culinary Inst.*, No. 07-3206, 2011 WL 4375365, at *5-9 (S.D.N.Y. Sept. 19, 2011) (denying discovery on discovery where counsel failed to identify specific deficiencies in the opposing party's production); *see also Gross v. Chapman*, 2020 WL 4336062, at *2-3 (denying discovery on discovery based on party's mere speculation that additional discovery exists). Judge Schenkier's insight during jurisdictional discovery holds true now, as well: "[t]he adequacy of defendants' discovery responses cannot merely be determined by the number of pages that they have already produced." [94] 7. Contrary to plaintiffs' argument, the adequacy of defendants' discovery responses is not determined by the number of pages that they produced. *See DR Distribs., LLC v. 21 Century Smoking Inc.*, 513 F.Supp.3d 839, 901 (N.D. Ill. 2021) ("Rule 26(g)'s reasonable inquiry requirement is not met by merely eyeballing the volume of documents produced."). Further, while plaintiffs state that defendants will not disclose any custodians whose email accounts were searched and list four former AMP/AJP employees and board members who plaintiffs believe have responsive information, defense counsel already disclosed this information. [272] 6-7; [94] 32-36. Defense counsel told Judge Schenkier during the July 2018 motion hearing, that the email accounts of three of the four individuals listed in plaintiffs' instant motion were searched or would be searched. [*Id.*]. That defendants' disclosure was during jurisdictional discovery does not create a reason for the Court to doubt defendants' veracity or suspect defendants' non-compliance with the discovery rules. Therefore, plaintiffs' request for discovery on discovery is denied.

### c. Defendants' Production of Documents Reflecting Fund Transfers Between AJP and AMP Must be Supplemented.

Plaintiffs request documents reflecting transfers of funds between AJP and AMP when the organizations were separate legal entities arguing if funds were freely transferred between AMP and AJP, these records would substantiate plaintiffs' claims that entity defendants operate similarly to predecessor entities IAP/AMS, and is proof AMP/AJP are the predecessor entities' alter egos. [272] 7-8. Defendants respond Judge Schenkier already addressed plaintiffs' request and to the extent responsive documents exist, defendants already produced them. [281] 6-7 (citing [94] 11-14). Defendants are correct. Judge Schenkier granted in part plaintiffs' request for "discovery regarding donors, sponsors, fundraising, and disposition of funds." [94] 15, 23. Judge Schenkier ordered defendants to search for and produce information about the disposition of funds for AMP from 2005 to 2007 and for AJP from 2008 to 2010. [*Id.*] 23. However, as jurisdictional discovery is distinct from merits discovery for the reasons discussed, the Court proceeds to evaluate plaintiffs' request.

The Court finds documents reflecting fund transfers between AJP and AMP when the organizations were separate legal entities are relevant to plaintiffs' alter ego claim. If AJP and AMP freely transferred funds to one another this information could prove entity defendants were significantly intertwined, just like predecessor defendants were, and in turn support plaintiffs' allegation that entity defendants' operations are substantially similar to those of AMS/IAP – a factor the Seventh Circuit identified as relevant to establish an alter ego relationship. *Am. Muslims for Palestine*, 9 F.4th at 559; *see also Boim*, 340 F.Supp.2d 885, 908 (finding IAP and AMS "were so intertwined . . . as to make any formal distinction meaningless."). The Court concludes the timeframe for defendants to search for information responsive to plaintiffs' request should begin no earlier than AMP's and AJP's formation dates, those being 2005 and 2009, respectively, and span through 2018, the end of the relevant period of merits discovery, as discussed above. [179] 22. Therefore, defendants are ordered to supplement their production to plaintiffs regarding fund transfers between AJP and AMP, to the extent that any responsive information exists, for the period 2008 to 2018 for AMP and 2011 to 2018 for AJP.

### d. Plaintiffs' Request for Documents Concerning an AMP Fundraising Event in 2015 is Relevant and Proportional.

Plaintiffs request information about a 2015 fundraising event AMP organized, in Detroit, Michigan, where plaintiffs allege $200,000 was raised and sent to Gaza – evidence of AMP providing indirect support to Hamas. [272] 8. Plaintiffs allege this information is relevant to their alter ego claim, specifically to demonstrate that

AMP/AJP share the same organizational purpose as IAP/AMS because IAP/AMS also functioned to provide indirect support for Hamas. [*Id.*]. Defendants respond Judge Schenkier specifically denied plaintiffs' request for these documents and explained why in detail. [281] 7 (citing [94] 7, 9, 49-51).

Defendants misstate Judge Schenkier's ruling on this point. While plaintiffs did bring the 2015 AMP fundraising event to Judge Schenkier's attention, it was done so during a discussion on the permissible scope of plaintiffs' depositions during jurisdictional discovery, not as an explicit request for documents related to the event. [94] 47-48. Plaintiffs explained the relevance of the information to Judge Schenkier stating:

> [I]f there was an effort to raise funds for an organization that provided funding to Hamas and that happened in 2011, that would seem to me to be a continuation of the old entities' practice . . . reflect[ing] the fact that the same people were running the organization . . . for the same purpose later on.

[94] 49.

Judge Schenkier disagreed, explaining, "[b]ecause somebody decided to fundraise or provide funds in 2011 or [2012] or [2017] doesn't mean that they did so in 2005 or [2006]. You're getting discovery during [the 2005-2010 period."[*Id.*] 49-50. The district court indicated its disagreement with Judge Schenkier on this point, in finding plaintiffs' amended complaint adequately alleged defendants share the same organizational purpose, a factor relevant to the alter ego analysis, in alleging AMP/AJP provides indirect support for Hamas – as Holy Land and AMS/IAP. [250] 3 (citing [179] 3, 37-41). As stated above, plaintiffs contend this indirect support manifests in the form of "arranging to have payments sent to purported charitable organizations, which act as intermediaries." [179] 38. The Court finds the 2015 AMP fundraising event that purportedly raised $200,000 for Gaza falls squarely within the kind of indirect support the district court found significant in determining plaintiffs adequately alleged their alter ego claim. Therefore, the Court finds plaintiffs' request for documents related to the 2015 AMP fundraising event relevant and proportional, and defendants are ordered to produce responsive documents, if any exist.

## Conclusion

For the foregoing reasons, plaintiffs' motion to compel [272] is granted in part and denied in part. Defendants are given two weeks from the date of this ruling to make a reasonable inquiry and if any responsive documents exist: (a) supplement their production of documents reflecting fund transfers between AJP and AMP for the period 2008 to 2018 for AMP and 2011 to 2018 for AJP and (b) produce documents related to the 2015 fundraising event AMP organized, in Detroit, Michigan.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 1, 2023**