```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   STANLEY BOIM, etc., et al.,      )
                                      )
 4                Plaintiffs,         )
                                      )
 5            v.                      )   No. 17 CV 03591
                                      )
 6   AMERICAN MUSLIMS FOR PALESTINE,  )   Chicago, Illinois
     et al.,                         )
 7                                    )   May 3, 2023
                  Defendants.         )   1:25 p.m.
 8
                     TRANSCRIPT OF TELEPHONIC PROCEEDINGS
 9
               BEFORE THE HONORABLE HEATHER K. McSHAIN
10
     APPEARANCES TELEPHONICALLY:
11
     For the Plaintiffs:          JASZCZUK P.C.
12                                BY:  MR. DANIEL I. SCHLESSINGER
                                       MR. SETH CORTHELL
13                                311 South Wacker Drive
                                  Suite 2150
14                                Chicago, Illinois 60606
                                  (312) 442-0366
15
     For the Defendants:          MS. CHRISTINA A. JUMP
16                                MS. SAMIRA S. ELHOSARY
                                  Constitutional Law Center for
17                                Muslims in America
                                  100 North Central Expressway
18                                Suite 1010
                                  Richardson, Texas 75080
19                                (972) 914-2507

20

21   Court Reporter:             Judith A. Walsh, CSR, RDR, F/CRR
                                  Official Court Reporter
22                                219 South Dearborn Street, Room 2342
                                  Chicago, Illinois 60604
23                                (312) 702-8865
                                  judith_walsh@ilnd.uscourts.gov
24

25
```

1         (Proceedings heard telephonically:)

2              THE CLERK:  The United States District Court for the

3    Northern District of Illinois is now in session, the Honorable

4    Heather K. McShain presiding.

5              Case No. 17 CV 3591, Boim, et al., v. American

6    Muslims for Palestine, et al., for motion hearing.

7              THE COURT:  Good afternoon, counsel.  Please state

8    your appearance for the record beginning with plaintiffs'

9    counsel.

10             MR. SCHLESSINGER:  Good afternoon, your Honor.  This

11   is Daniel Schlessinger, and with me is Seth Corthell for the

12   plaintiffs.

13             THE COURT:  Thank you.

14             For defendants, please.

15             MS. JUMP:  Good afternoon, your Honor.  This is

16   Christina Jump for defendants along with co-counsel Samira

17   Elhosary.

18             THE COURT:  Thank you for calling in as well.

19             So we're here for a motion hearing on defendants'

20   motion to compel at docket entry 276.  I read plaintiffs'

21   opposition response at docket entry 280 and also defendants'

22   reply at docket entry 286.  I have just two questions that I

23   want to raise on the record, and then I will open it up for

24   argument from both sides.

25             I want the attorneys to understand, though, I have

1    thoroughly read the briefing, so I'm not looking for a summary

2    of what's in your brief but happy to hear anything additional.

3    Also, acknowledging that the motion has been fully briefed for

4    a while, to the extent that anything has been mooted based on

5    additional conversations or, you know, additional progress in

6    discovery, if you could flag that for me as well, I'd

7    appreciate it.

8         My intention is to rule on the record today so that

9    you will have an answer from the Court on this pending motion.

10   And then please note, I do intend to address the discovery

11   schedule as well after I'm done ruling on the record regarding

12   the motion.

13        The two questions that I want to start regard the

14   request for plaintiffs' sworn verifications to defendants'

15   interrogatories.  And I specifically first want to ask, again,

16   acknowledging that the motion's been fully briefed for a while

17   now, one of the issues that was flagged was that Mr. Boim was

18   not in a -- was not in a condition to sign the responses back

19   at the time the motion was fully briefed.

20        Has there been progress on that piece?  Has --

21   Mr. Boim, is his health in a stage where he has been able to

22   sign, or is that still outstanding?  That's a question

23   addressed to plaintiffs' counsel.

24        MR. SCHLESSINGER:  Yes, your Honor.  This is Daniel

25   Schlessinger for the plaintiffs.

4

1        Mr. Boim's health has improved from where it was a

2    few months ago.  He's still not wholly well, but I think he's

3    well enough that he could sign a verification.

4        THE COURT:  Okay.  And then this is another question

5    addressed to plaintiffs' counsel.  I was unclear from the

6    plaintiffs' opposition brief, I realize that with respect to

7    Mrs. Boim's verification that you did add the words "under

8    penalty of perjury."

9        Are the plaintiffs also opposing adding the words

10    after that, "under the laws of the United States"?

11        MR. SCHLESSINGER:  Again, your Honor, it's Daniel

12    Schlessinger.  No, we're happy to add that language.  The only

13    reason we haven't done it yet is we wanted -- you know,

14    ideally, we wanted to get agreement with Ms. Jump about what

15    form would be acceptable to the defendants here, but the only

16    issue I think we had with the statutory language -- and I

17    don't mean to rehash this because it's in the briefs, but was

18    we wanted to add some language about "on information and

19    belief" because obviously, the plaintiffs don't know from

20    their own personal knowledge the truth of everything that

21    we've asserted in response to the interrogatories.

22        THE COURT:  Understood.  But, I mean, the way that

23    Ms. Boim's verification currently reads, it says, "under

24    penalty of perjury."  I understand your position.  You're not

25    objecting to then adding "under the laws of the United

1    States," so you've answered that question.

2         But the verification also reads "under penalty of

3    perjury that the information set forth herein is true and

4    correct to the best of my knowledge."  You just said, add

5    language "on information and belief."

6         I just want to be clear, in terms of, you want to add

7    that in addition to what she's already signed, or were you

8    making that, like, a summary of "to the best of my knowledge"?

9    I just --

10        MR. SCHLESSINGER:  It's the last --

11        THE COURT:  -- want to -- I'm sorry,

12   Mr. Schlessinger.  I just want to be precise.

13        MR. SCHLESSINGER:  Yeah, I'm sorry, your Honor.  I

14   didn't mean to speak over you.

15        Yes, it was the latter of -- it was intended as kind

16   of a summary.  We're happy to go with the language that we've

17   used or whatever other language the Court directs.

18        THE COURT:  Understood.  Okay.  I'm on the same page

19   then with respect to where the issue lies regarding the

20   verification.  So I appreciate the clarification that there's

21   not an objection from plaintiff with respect to adding the

22   words "under the laws of the United States," so that clears up

23   the questions that the Court had.

24        I'm now going to open it up to hear argument from

25   both sides.  Because this is the defendants' motion, I'll give

1  defense counsel the first opportunity.  I will then hear from

2  plaintiffs' counsel and then give defendant the last word to

3  reply.  Again, I'm not looking for a summary of what's in the

4  briefing but happy to hear anything that you want to

5  emphasize.

6            And then my second point, to the extent any issue has

7  been mooted based on how long these motions have been pending,

8  I'm happy to receive that information as well.

9            With that, I'm happy to hear from defense counsel.

10           MS. JUMP:  Thank you, your Honor.  And this is

11  Christina Jump speaking.

12           I would begin by saying that nothing, from our point

13  of view, has been mooted.  Really, the parties have mostly put

14  the issues on hold pending a ruling from the Court because we

15  were not close together on them and have not -- nothing's gone

16  away.  So we would still seek rulings on everything that is

17  contained within the motion.

18           Other than that, I could point to some additional

19  authorities.  I don't know -- it doesn't change anything, but

20  some additional authorities that we subsequently came across

21  within the Northern District of Illinois that relate to the

22  issue of the insufficiency of simply saying "investigation

23  continues," which has specifically been addressed within this

24  district.

25           If the Court wants those cites, there's two

1  additional cites I can provide.  If the Court's comfortable

2  with the briefing, then no need for that.

3          THE COURT:  I'm fine with the briefing.  You're

4  welcome to put them on the record, but I am comfortable with

5  the briefing.

6          MS. JUMP:  All right.  I would just reference then

7  generally *Zambrano v. Sparkplug Capital, LLC,* as well as, I

8  believe it's *Gevas*, G-e-v-a-s, *v. Wexford Health System"* --

9  *"Health Sources*," excuse me, which are both cases within the

10 Northern District of Illinois reiterating our point that

11 "investigation still continues" is not a sufficient response.

12         And with that, we'd be glad to answer any questions

13 the Court may have.

14         THE COURT:  Thank you.

15         Plaintiffs' counsel?

16         MR. SCHLESSINGER:  Nothing to add to the briefing.  I

17 obviously was not aware of those additional authorities, so I

18 can't say anything about them.  I'm not familiar with them.

19 But we have nothing to add to our briefs.

20         THE COURT:  Okay.  I -- given that, Ms. Jump, I'm not

21 sure you need the last word, but to the extent that anything

22 comes to mind, I am happy to hear the last word from defense

23 counsel.

24         MS. JUMP:  I have nothing substantive to add.  I will

25 say, those cases are not brand-new cases.  So they're 2021 and

1   2020 cases.  So they've been publicly available for a while.

2   I don't think they would change anything.  And with that, we

3   will rest on our briefs.

4          THE COURT:  Okay.  So I'm going to go ahead and put

5   my ruling on the record.  I -- as I've already identified,

6   before me I have the defendants' motion to compel at docket

7   276, plaintiffs' response at docket entry 280, and the

8   defendants' reply at docket entry 286.

9          Prior to today's ruling, the Court has reviewed and

10  its ruling today on the record assumes familiarity with the

11  amended complaint at docket entry 179 and the district judge's

12  order entered at docket entry 250 that denied defendants'

13  motion to dismiss plaintiffs' amended complaint as well as all

14  of the briefing associated with the motion.

15         The amended complaint alleges entity defendants

16  American Muslims for Palestine -- which I will refer to also

17  by the initials AMP in this ruling -- Americans for Justice in

18  Palestine Educational Foundation -- which I'll also refer to

19  by the initials AJP in this ruling -- and individual defendant

20  Rafeeq Jaber are alter egos of the American Muslim Society and

21  its alter ego, Islamic Association for Palestine, also

22  referred to as AMS/IAP, and Holy Land Foundation for Relief

23  and Development.

24         In prior lawsuits -- in a prior lawsuit, the

25  plaintiffs secured a $156 million judgment against AMS/IAP and

1   Holy Land Foundation for providing material support to Hamas
2   which murdered their son David in an act of terrorism.  And
3   I'm referring to the earlier case, *Boim v. Quranic Literacy*
4   *Institute*, 00 CV 2905.

5          The amended complaint alleges that only a fraction of
6   this judgment has been paid and that because defendants are
7   alter egos of IMS -- I'm sorry, AMS/IAP and Holy Land, under
8   the Anti-Terrorism Act, 18 United States Code Section 2333(a),
9   defendants are liable for the unpaid portion of the judgment.
10  The amended complaint also asserts that individual Jaber
11  fraudulently concealed material facts regarding the collection
12  of the judgment from the plaintiffs.

13         The standard that the Court applies in this ruling
14  today is the following.  And I'm not going to provide case law
15  because the standard is not preceded.  This court has
16  extremely broad discretion to control discovery, and in ruling
17  on a motion to compel, the discovery standard set forth in
18  Rule 26(b) applies.

19         Rule 26 governs the scope of civil discovery and
20  allows parties to obtain discovery regarding any matter that
21  is, one, non-privileged; two, relevant to any party's claim or
22  defense; and three, proportional to the needs of the case.

23         At the same time, discovery must be proportional to
24  the needs of the case considering the importance of the issues
25  at stake in the action, the amount in controversy, the

1   parties' relative access to relevant information, the parties'

2   resources, the importance of the discovery in resolving the

3   issues, and whether the burden or expense of the proposed

4   discovery outweighs its likely benefit.

5          The party requesting discovery bears the initial

6   burden to establish its relevancy; and if the discovery

7   appears relevant, the party objecting bears the burden of

8   showing why the request is improper.

9          The motion to comply -- the motion to compel

10  basically can be divided into four categories:  The first, the

11  request for plaintiffs' sworn verifications to defendants'

12  interrogatories; the second, to provide responsive answers to

13  defendants' requests for admissions, or RFAs, Nos. 4-6, 9, 11,

14  and 12; three, to disclose sources of third-party litigation

15  funding; and four, to produce at plaintiffs' expense the 60

16  boxes of documents that plaintiffs indicate contain

17  information responsive to defendants' requests after

18  plaintiffs organize the documents and identify which documents

19  are responsive.

20         I'm going to start first with the request for

21  plaintiffs' sworn verifications to defendants'

22  interrogatories.  And as stated on the record -- and I

23  appreciate the clarification from plaintiffs' counsel -- the

24  dispute really boils down to the addition of the words to

25  Ms. Boim's verification, "to the best of my knowledge."  And

1    from the defendants' standpoint, they contend that the

2    verification to defendants' interrogatories is deficient for

3    several reasons.

4            But again, the heart of this dispute really boils

5    down to the addition of that language given that Mr. Boim is

6    now in physical condition to sign a verification on his own

7    and also that the plaintiffs do not dispute adding the words

8    to the verification "under penalty of perjury under the laws

9    of the United States."

10           The ruling is as follows:  With respect to, again,

11   the narrow issue here, I, the Court, rejects the plaintiffs'

12   position and is granting the motion with respect to the relief

13   that the defendants seek here.  The verification must comply

14   with Section 1746, and as it currently in the form -- in the

15   current form as signed by Mrs. Boim, it doesn't certify -- it

16   doesn't comply with Section 1746 with respect to, by adding

17   these words "to the best of my knowledge."  It's making the

18   plaintiffs' responses essentially not of value.

19           It doesn't, you know, fit the bill with respect to

20   satisfying the requirements under Federal Rule of Civil

21   Procedure 56(c)(4) that the declaration states "on personal

22   knowledge."  And declaring that a person believes something or

23   knows something to the best of one's knowledge is not the

24   equivalent to saying that the person has personal knowledge.

25           And for that proposition, I'm relying on the *Dobosz*

1    *v. Quaker Chemical Corp.* case which is 2016 Westlaw 4376528 at

2    page star 3 which is a Northern District of Indiana, August

3    15th, 2016, case.

4        And while courts have nonetheless accepted wording

5    where personal knowledge can be inferred from the content of a

6    declaration or where the declarant's intent was not to avoid

7    making it sworn by taking out "personal knowledge" and adding

8    a qualifying statement, neither situation applies here to this

9    case.

10       And for this, I'm relying on *Harper* -- the Court is

11   relying on *Harper v. City of Murphysboro* which is Westlaw

12   331362 at star 1, that's a Northern District of Illinois case

13   from February 11, 2009; and also *Barfell v. Weisse*, 2015

14   Westlaw 1401865 at page star 5, Eastern District of Wisconsin,

15   March 26th, 2015.

16       Here, the plaintiffs are asserting that they do not

17   have personal knowledge of the acts asserted in the

18   interrogatory answers and state that the verifications

19   provided employ the qualification that they are made to the

20   best of her knowledge but again, this just doesn't comply with

21   the case law, and the situation and the case law relied upon

22   by the plaintiffs is distinguishable.  So for these reasons,

23   the Court is granting the motion.

24       Both Mr. and Mrs. Boim are directed to sign the

25   verification, to add the words "under the laws of the United

1   States" to the phrasing immediately following "under penalty

2   of perjury" and also to remove the phrasing "to the best of my

3   knowledge."

4           Moving on then to the request for plaintiffs'

5   responses to entity defendants' RFAs Nos. 4 to 6, 9, 11 to 12,

6   the entity defendants issued plaintiffs a total of 12 RFAs,

7   and half of these -- and to half of these, the plaintiffs'

8   have responded, "The Boims object to this request as premature

9   as discovery is still ongoing and, therefore, deny the

10  request."

11          The defendants are arguing in the motion that the

12  plaintiffs' responses to the RFAs or this response is

13  inadequate.  Defendants explain that the requests ask about

14  presently existing evidence and, thus, do not require

15  plaintiffs predict what evidence they may or may not have at a

16  later date.  Further, defendants contend that nothing

17  precludes plaintiffs from amending their responses if or when

18  they do obtain responsive evidence in the future as the

19  discovery rules require them to do so.

20          Defendants add that plaintiffs' responses are also

21  inconsistent with their responses to several other discovery

22  responses, and defendants point out that to defendants'

23  request for production for documents supporting plaintiffs'

24  allegations that any tangible assets of the judgment

25  defendants were passed on to the entity defendants, plaintiffs

1    responded that they "are currently not in possession of

2    responsive documents, investigation continues," yet plaintiffs

3    objected to and denied a correlating request for admission

4    asking plaintiffs whether they have any evidence of the

5    passing of tangible assets between the relevant entities.

6            The plaintiffs respond in their brief that if they

7    are currently unaware -- sorry, that if they are currently

8    unaware whether the activities discussed in defendants' RFAs

9    occurred and are pursuing discovery to make this

10   determination, the discovery rules should not require them to

11   admit the proposition and thereby render the issue

12   conclusively established.

13           Plaintiffs add that before responding to defendants'

14   RFAs, plaintiff need a fair opportunity to determine their

15   responses before making a binding admission.  Plaintiffs also

16   assert that under Federal Rule of Civil Procedure 36,

17   plaintiffs cannot amend their RFA responses at any time,

18   contrary to what defendants suggest, and that the rule is

19   meant to stipulate to facts not in dispute; specifically,

20   facts that are conclusively established.

21           In reply, the defendants say or assert that an

22   answering party may assert lack of information or knowledge as

23   a reason for failing to admit or deny only if the parties

24   state that it has made a reasonable inquiry and that the

25   information it knows or can readily obtain is insufficient to

1    enable the party to admit or deny.

2           And defendants also point to case law for the

3    proposition that plaintiffs' claim that factual support is

4    still being developed or that the requests are premature does

5    not absolve plaintiffs of their responsibility to answer the

6    RFAs promptly.

7           The Court finds that plaintiffs' response to

8    defendants' RFAs that their investigation is continuing is

9    inadequate under Federal Rule of Civil Procedure 36 and must

10   be amended, so that portion of defendants' motion here is

11   granted.

12          Under Rule 36, the party answering the request has

13   five options when responding:  Admit, deny, admit in part or

14   deny in part or, I'm sorry, No. 4, respond that they are

15   unable to admit, deny or, five, object.

16          The Court construes plaintiffs' responses to the RFAs

17   at issue as asserting a lack of knowledge or information as a

18   reason for denying defendants' RFAs considering the language

19   used in plaintiffs' responses, specifically "premature as

20   discovery is still ongoing," coupled with plaintiffs'

21   contentions in their opposition response that the information

22   requested is unknown to plaintiffs and that plaintiffs are not

23   currently aware of whether the activities described in the RFA

24   has occurred.

25          An answering party, however, may assert lack of

1   knowledge or information as a reason for failing to admit or

2   deny only if the party states that it has made a reasonable

3   inquiry and that the information it knows or can readily

4   obtain is insufficient to enable it to admit or deny.  That's

5   the language in the rule itself.  That's 36(a)(4).

6          Statements of inability to admit or deny are, of

7   course, permitted by Rule 36, but they must be supported by

8   specific reasons.  The reasonableness of an inquiry is

9   fact-specific.  A reasonable inquiry at least includes inquiry

10  of any of a responding party's personnel who conceivably, but

11  in realistic terms, may have information which may lead to or

12  furnish the necessary and appropriate responses.

13         Here, plaintiffs' responses for admission, to the

14  request for admission do not comply with the requirements of

15  Rule 36.  Plaintiffs' answers do not include any details about

16  the reasonable inquiry they undertook to answer defendants'

17  requests, and they do not specifically elaborate on their

18  inquiry efforts in their response to defendants' motion.

19         And the Court relies for this proposition on two

20  cases:  *Braun v. Village of Palatine*, 2020 Westlaw 1888914 at

21  page star 2, Northern District of Illinois, April 16th, 2020;

22  and *In Re. H & R Block Mortgage Corp.*, 2007 Westlaw 325351 at

23  pages star 4 to 5.

24         Further, contrary to plaintiffs' suggestion,

25  plaintiffs may not simply postpone any inquiry to the end of

1    the discovery period.  Finally -- and for that proposition,

2    the Court's relying on the case of -- and bear with me.  I

3    have the cite on a different page in my notes.  I apologize.

4    For that proposition, the Court is relying on *House v. Giant*

5    *of Md. LLC* which is 232 F.R.D. 257 at Page 259.  And that's an

6    Eastern District of VA case from 2005.

7            Finally, the Court does not find that the information

8    sought in the requests outside -- do not find that the

9    information that's sought in the requests is outside Rule 36

10    proper -- Rule 36's proper scope.  Under the rule, a party may

11    issue requests for admission to ask another party to admit the

12    truth of any matters within the scope of discovery under Rule

13    26(b)(1) relating to facts, the application of law to facts,

14    or opinions about either.

15            Here, the requests at issue do not solicit legal

16    conclusions or seek information about contested facts in

17    controversy -- in contravention of the rule.  So for all of

18    these reasons, this portion of the motion is granted.

19            Turning to the third request in the motion, this is a

20    request for plaintiffs' disclosure of third-party litigation

21    funding.  Let me start with defendants' argument.

22            Defendants request that the Court order plaintiffs to

23    disclose sources of third-party litigation funding in light of

24    plaintiffs' admitted lack of substantive personal knowledge.

25            While defendants acknowledge that sources of

1   litigation funding are not automatically discoverable,

2   defendants argue that these sources are discoverable where

3   they relate to any claim or defense and, in this case, are

4   proportional to the needs of the case including to refute any

5   David versus Goliath narrative at trial and to conduct

6   discovery that may refute potential trial themes.

7          Defendants explain it is their contention that

8   plaintiffs brought this matter as an attempt to paint with an

9   overly -- and this is a quote from the motion, to "paint with

10  an overly broad brush against any Palestinian advocacy

11  groups," end quote, and that the entities funding this

12  litigation directly relates to that theme.  Defendants add, if

13  plaintiffs have no knowledge of the facts underlying the

14  complaint, then defendants have a legitimate and strategic

15  interest in knowing who is driving the litigation.

16         The plaintiffs respond that their motivation for

17  bringing this suit is irrelevant.  Plaintiffs explain that

18  defendants' theory about attacking Palestinian advocacy groups

19  is irrelevant to whether plaintiffs can prove their case

20  against these defendants, specifically to enforce the

21  essential elements of the Anti-Terrorism Act, and would be

22  inadmissible at trial.

23         Plaintiffs continue on to state that defendants have

24  not established a sufficient need for this information, as a

25  plaintiff's motive for suit is generally not needed to

1   prosecute a case, and allegations that a litigation funder's

2   participation shows that they are the real party in interest

3   is not enough either.

4          Defendants reply that other courts have examined the

5   motive for bringing a lawsuit, and plaintiffs' response

6   identifies another reason to permit disclosure:  Specifically,

7   plaintiffs' potential violation of the Illinois Champerty

8   statute.  And defendants add that plaintiffs place their own

9   motivation at issue in the suit as Ms. Boim testified that

10  they sued to stop defendants from supporting Hamas, not

11  because they believe that defendants wrongfully possess any

12  funds owed to the Boims.

13         The Court rules as follows with respect to this

14  portion of the motion:  The Court finds that defendants'

15  request for plaintiffs to disclose third-party litigation

16  funders to be speculative and irrelevant and, thus, not

17  discoverable and denies the portion of defendants' motion for

18  the following reasons.

19         Litigation funding information is generally

20  irrelevant to proving the claims and defenses in a case.

21  Here, whether litigation funding exists in this case is

22  speculative on this record as plaintiffs have not stated one

23  way or the other whether there has been a finding of this --

24  whether there has been funding of this litigation by third

25  parties, and defendants offer no proof that third parties are

1    indeed funding the litigation.

2         Further, neither of defendants' proffered bases for

3    why litigation funding litigation is relevant is sufficient.

4    First, plaintiffs' motivation in bringing suit is irrelevant,

5    in the Court's estimation, of proving the claims and defenses

6    in this case.  And while defendants cite to a single case out

7    of the District of Arizona, *Continental Circuits LLC*, for the

8    proposition that information on litigation funding is relevant

9    to refute potential trial themes, this district, the Northern

10   District of Illinois, has rejected such a broad basis for

11   permitting discovery on the subject and explicitly redacted

12   *Continental Circuits'* discrete holding that this information

13   is relevant as it concerns plaintiffs' financial resources.

14        And for that, I'm relying on the *Fulton* case, 2019

15   Westlaw 6609298 at pages 2 to 3.  And that's quoting the

16   *Benitez* case, 2019 Westlaw 1578167 at page star 1.

17        Defendants' second basis for permitting discovery to

18   determine whether plaintiffs' conduct violates the Illinois

19   statute is also similarly irrelevant.  That a litigation

20   funding agreement may violate the Illinois statute prohibiting

21   champerty is not a sufficient basis to order disclosure of

22   litigation funding information because this claim may only be

23   invoked by the parties to the agreement, and the defense can

24   only be interposed in an action between the parties to the

25   contract and do not furnish any reason for refusing relief in

1    the proceeding to which the agreement relates.

2            And for that, the Court's relying on the *Miller* case

3    which is *Miller v. Caterpillar, Inc.*, 17 F. Supp.3d, Northern

4    District -- I'm sorry, 17 F. Supp.3d 711, 724 to 730.  And

5    that's a Northern District of Illinois case from 2014.

6            So for all of these reasons, I -- for all of these

7    reasons, this portion of the defendants' motion is denied.

8            And also just to be clear, I cited a moment ago the

9    *Fulton* and *Benitez* cases and did not give the cite.  The

10   *Fulton* case is a Northern District of Illinois case and -- my

11   computer just froze again -- and the *Benitez* case is an

12   Eastern District of New York case from 2019.  So that forms

13   the basis of the Court's ruling with respect to the third

14   request at issue in defendants' motion.

15           Turning now to the fourth request, this is a request

16   for plaintiffs to organize, identify, and produce 60 boxes of

17   documents that the plaintiffs claim contain responsive

18   information.  According to defendants, during a meet and

19   confer, defendants asked plaintiffs if they had any responsive

20   information, and plaintiffs replied that they had about 60

21   boxes of documents that had been archived from the first Boim

22   case which could be viewed as responsive.

23           Defendants state that plaintiffs' counsel said they

24   will only copy the documents at defendants' expense and send

25   them to the defense attorneys or defense counsel could travel

1   to Chicago, review the files, and copy them at the defendants'

2   own expense.  In their motion, the defendants request the

3   Court order plaintiffs to identify which documents of the 60

4   boxes of documents are responsive to which requests, organize

5   those documents into a usable format, and produce them at

6   their own cost.

7          In support, the defendants argue that the plaintiffs

8   have provided no information regarding the categories of

9   defendants' requested documents outside of the general

10  representation that the boxes contain files from the original

11  Boim action.  Defendants argue that plaintiffs' position

12  contradicts normal discovery burdens and imposes an

13  unnecessary burden on defendants to travel from Texas to

14  Chicago and undertake a review of documents that plaintiffs

15  give no indication are organized or indexed.

16         Defendants contend that it is the responding party

17  who bears the expense of complying with discovery requests

18  unless they demonstrate some compelling reason to alter that

19  presumption.  Defendants also argue that plaintiffs have not

20  met this burden as the burden of searching their own files in

21  their own office is minimal compared to defendants having to

22  travel to Chicago and sort through 60 boxes of unfamiliar

23  files.

24         Defendants add that the importance of this, the

25  discovery, outweighs any potential burden imposed on

1  plaintiffs if these boxes contain relevant information.

2  Defendants explain that plaintiffs' cause of action hinged --

3  that the causes of action hinge on their allegations that the

4  current defendants are liable for that prior judgment, and

5  plaintiffs must demonstrate the substantial continuity between

6  the two sets of entities to prove their claims.

7  The plaintiffs respond that while defendants seek

8  every document that plaintiffs have relied on or might rely on

9  at trial to support their claims, plaintiffs have not yet

10  determined which documents they will introduce as evidence at

11  trial.  Plaintiffs add that plaintiffs' counsel's offer to

12  make the documents available for inspection and copying is all

13  that is required under Rule 34.

14  Finally, plaintiffs contend that where a party

15  requests a voluminous set of potentially responsive documents,

16  the producing party need not bear the burden of copying all of

17  the material but can simply make the documents available for

18  inspection and copying at the party's expense.

19  The Court finds plaintiffs' offer to make the 60

20  boxes available for inspection at plaintiffs' counsel's office

21  does not alone fulfill plaintiffs' discovery obligation that

22  is required under Rule 34, and the Court is granting in part

23  and denying in part this portion of the defendants' motion as

24  follows:

25  Under Federal Rule of Civil Procedure 34, that rule

1    provides that a party may serve a request to produce any

2    designated evidence or ESI stored in any medium from which

3    information can be obtained either directly or, if necessary,

4    after translation by the responding party into a reasonably

5    usable form.  It is well settled that a Rule 34 motion for the

6    production of documents is entitled to broad and liberal

7    treatment.

8         There's no issue here or no dispute really as to the

9    relevance and discoverability of plaintiffs' documents.  The

10   issue then is whether plaintiffs will physically produce what

11   it argues are voluminous records contained in approximately 60

12   document boxes in plaintiffs' counsel's office in Chicago or

13   whether defendants' counsel will travel to Chicago to inspect

14   the documents.

15        Given the volume of records, rather than requiring

16   plaintiffs to copy every document at this time, plaintiffs are

17   to make the documents available for defendants and defendants'

18   counsel's inspection at plaintiffs' counsel's Chicago's

19   office.  However, plaintiffs' duties do not stop at merely

20   providing the opportunity for inspection.

21        This production is subject to Federal Rule

22   34(b)(2)(E) which provides, in part, that "a party must

23   produce documents as they are kept in the usual course of

24   business or must organize and label them to correspond to the

25   categories in the request."  It's unclear whether these

1  document boxes contain both responsive documents and documents

2  that are not relative -- relevant to this case given

3  plaintiffs' counsel's noncommittal response to the defendants

4  that the documents could be viewed as responsive.  Thus,

5  plaintiffs must identify which documents are indeed relevant

6  and responsive to defendants' requests.

7         For that, the Court relies on *Hoenig Devices, Inc.,*

8  *v. Dial Industries, Inc.*, 2015 Westlaw 13614125 at page star

9  1, Eastern District of Michigan, August 14th, 2015, ordering

10  the party -- and the parenthetical to that is, ordering the

11  producing party to "separate the wheat" responsive documents

12  "from the chaff," documents that are not relevant to this

13  case, pursuant to Rule 34's requirement that the producing

14  party organize the produced materials in a way that the

15  discovering party can understand them.  Defendants thus are

16  entitled to copies of any of the documents on request.

17         In addition, if the requested documents are stored

18  electronically in the usual course of business, plaintiffs

19  shall, in addition to permitting an inspection, produce these

20  documents to the defendants in electronic form.  Plaintiffs

21  shall bear the expense of production in complying with this

22  Court's order with respect to this portion of the motion.

23         Defendants are correct that the general presumption

24  in discovery is that responding parties must bear the expense

25  of complying with discovery requests.  Plaintiffs have failed

1  to overcome this presumption to shift the expense of

2  production to defendants as plaintiffs have not demonstrated

3  that the requested information is inaccessible or the

4  discovery sought is not proportional to the needs of the case.

5  Here, plaintiffs have not shown inaccessibility to

6  the information that's requested.  As the defendants point

7  out, plaintiffs' counsel has maintained the prior litigation

8  documents in the same boxes in which they were first received;

9  nor does the Court find that the information requested is not

10  proportional to the needs of the case given the hundreds of

11  millions in controversy and the importance of the information

12  requested, as defendants contend they have received no

13  documents from plaintiffs to date in response to their

14  discovery requests and also given plaintiffs' admission that

15  there are documents in these boxes that they very likely have

16  and will rely on and seek to introduce at trial.

17  So with that, plaintiffs will make the documents

18  available for defendants and defendants' counsel's inspection

19  at plaintiffs' counsel's facility in Chicago.  Plaintiffs must

20  identify which documents are indeed relevant and responsive to

21  defendants' requests, and defendants are entitled to copies of

22  any of the documents on request.

23  If the requested documents are stored electronically

24  in the usual course of business, plaintiffs shall, in addition

25  to permitting inspection, produce those documents to the

1   defendants in electronic form pursuant to Rule 34(b)(2)(E),

2   and plaintiffs bear their own costs of production in complying

3   with the Court's order.

4        So that portion of the motion is granted in part and

5   denied in part, and this concludes the Court's ruling.

6        I want to turn now to the discovery schedule.  And I

7   realize you're digesting the Court's ruling that I just put on

8   the record regarding defendants' motion to compel; and just

9   late last week, you got the Court's ruling on plaintiffs'

10  discovery motions.

11       I'll note that the plaintiffs filed an unopposed

12  motion to extend the deadlines to disclose experts and that in

13  that motion, I -- the plaintiffs also stated that they

14  intended to file a motion to extend the fact discovery

15  deadline but were waiting for a ruling on the pending motions.

16       All of this is completely understandable, that you

17  all are going to need more time.  And this is what I propose

18  unless you all off the cuff have an idea regarding how much

19  time you might need in terms of extending the fact discovery

20  deadline and then adjusting expert discovery deadlines.

21       What I propose is a joint status report in about ten

22  days, for you all to meet and confer on a revised discovery

23  schedule for both fact and expert discovery, giving you enough

24  time to process the Court's ruling on defendants' motions.

25  How does that sound with respect to adjusting discovery

1      deadlines?

2              Let me start with plaintiffs' counsel.

3              MR. SCHLESSINGER:  Your Honor, Daniel Schlessinger

4      again.  I think the Court's proposal is exactly right, and I

5      fully endorse it.

6              THE COURT:  Okay.  Ms. Jump from defendants'

7      perspective, are you on board with that proposal as well?

8              MS. JUMP:  Yes, your Honor, we're on board with that.

9              THE COURT:  Okay.  So how about a joint status report

10     by May 12th.  And in that report, I would like a proposed

11     schedule for fact discovery.  And I'm fine addressing expert

12     discovery as well.  I'm also fine if you want to defer setting

13     an expert discovery schedule.

14             I mean, depending on how much time you think you need

15     to wrap up fact discovery, I'm fine entering both or I'm also

16     fine on deferring expert discovery.  And we can address it,

17     you know, mid-fact discovery period that ends up remaining.

18     So I'll leave it to you all to meet and confer.  If you want

19     to propose the expert discovery schedule I'll -- I'm happy to

20     enter that as well or defer.

21             Anything else to take up at this time from

22     plaintiff -- plaintiffs?

23             MR. SCHLESSINGER:  Nothing further -- I'm sorry.

24     Nothing further from plaintiffs, your Honor.

25             THE COURT:  Thank you.

1        And how about from defendants?

2        MS. JUMP:  Your Honor, just a point of clarification.

3   I did note in the earlier order, there was a timeframe to

4   provide the supplemental information for defendants to comply

5   regarding this Court's ruling on plaintiffs' motion to compel.

6        Is there a timeframe regarding the ruling the Court

7   has given on the record today for plaintiffs to comply?

8        THE COURT:  No.  And if you need adjustment to what I

9   put in my order on May 1st, I'm happy to adjust that if you

10  think more time is necessary.  Just meet and confer on that as

11  well.

12       MS. JUMP:  Yes, your Honor.

13       THE COURT:  I want to -- I'm sorry for interrupting

14  you, Ms. Jump.

15       I'm not trying to encourage dragging this out, but I

16  also just want to be realistic.  There's a lot of moving parts

17  here, and you all have been waiting patiently for this Court

18  to rule on these discovery motions.  So I'm fully

19  acknowledging I'm part of the holdup here and that that has

20  contributed to delays.

21       And I leave it and defer to you all if you can meet

22  the suggested deadline that's in my May 1st order; or if you

23  need more time, just meet and confer and agree on that, and

24  you can throw that in the JSR as well.

25       MS. JUMP:  Yes, your Honor.

1      THE COURT:  Okay.  Great.

2      Thank you so much to all of you for your time today.

3  I'll look for that joint status report.  When it's filed, I'll

4  enter a minute order in response to that joint status report,

5  and we'll go from there.

6      Thanks, everyone.  Have a good rest of your day.

7      MR. SCHLESSINGER:  Thank you, your Honor.

8      MS. JUMP:  Thank you, your Honor.

9      (Proceedings adjourned at 2:06 p.m.)

10                * * * * * * *

11              C E R T I F I C A T E

12      I, Judith A. Walsh, do hereby certify that the

13  foregoing is a complete, true, and accurate transcript of the

14  proceedings had in the above-entitled case before the

15  Honorable HEATHER K. McSHAIN, one of the judges of said court,

16  at Chicago, Illinois, on May 3, 2023.

17

18  */s/ Judith A. Walsh, CSR, RDR, F/CRR_____*        June 30, 2023

19  Official Court Reporter

20  United States District Court

21  Northern District of Illinois

22  Eastern Division

23

24

25