**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; and RAFEEQ JABER <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil No. 17-cv-03591 <br> Hon. Andrea Wood <br> Hon. Heather K. McShain |

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs Stanley Boim ("Mr. Boim") and Joyce Boim ("Ms. Boim") (collectively, "Plaintiffs" or "the Boims"), by and through their attorneys, file this Motion for Protective Order (the "Motion") requesting the Court exercise its discretion under FED. R. CIV. P. 26(b)(2)(C) and FED. R. CIV. P. 26(c)(1) to issue, for good cause shown, a protective order enjoining Defendants from deposing the Boims, who are elderly, in poor health and possess little, if any, relevant information.

The lynchpin question in this motion is whether there is an absolute right to depose plaintiffs in a civil litigation, even when those plaintiffs are elderly and in poor health; have agreed to stipulate to their lack of personal knowledge regarding any disputed facts in the litigation; will not appear as witnesses at trial for those reasons; and have delegated the task of developing the factual record to their retained counsel. It is Plaintiffs' position that the right to collect *discovery* from plaintiffs is guaranteed, the right to collect discovery from plaintiffs via

*deposition* is not.[1] A deposition is but one of many tools of discovery and, given the facts and circumstances of this case, the burden upon the Boims of being deposed greatly outweighs any potential benefit that might be realized.

Less than a year ago, Ms. Boim made herself available to Defendants to be deposed and was rewarded for her good faith with over two hours of needless abuse that emotionally exhausted her—at one point visibly reducing her to tears—and, as the transcript shows, failed to produce information relevant to either Party's claims or defenses. Plaintiffs file this Motion now to spare Ms. Boim and Mr. Boim, who are elderly and in poor health, from abuse without purpose by Defendants.

This Motion is filed because the Parties have conferred in good faith efforts to resolve the dispute without court action but have failed in those efforts.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  THE PRESENT LITIGATION.

This is an action to enforce a $156 million judgment (the "*Boim* Judgment") the Boims obtained against the American Muslim Society, the Islamic Association of Palestine (together, referred to as "IAP"), and the Holy Land Foundation (collectively, with IAP the "original *Boim* Defendants"), which were found liable for the death of their son, David, at the hands of Hamas terrorists. *See Boim v. Quranic Literacy Inst.,* 340 F. Supp. 2d 885 (N.D. Ill. 2004) ("*Boim I*"). In 2017, Plaintiffs filed the above captioned lawsuit, alleging that American Muslims for Palestine and Americans for Justice in Palestine (together, referred to as "AMP" or "Entity Defendants"), as well as Rafeeq Jaber ("Mr. Jaber," collectively, with Entity Defendants, "Defendants"), are

---

[1] Defense Counsel appears to recognize this in her August 9, 2023 letter objecting to certain Rule 30(b)(6) topics, arguing that a party deposition on certain topics is not required when the same information could be more efficiently obtaining via interrogatory. (*See* August 9, 2023 Letter from Defense Counsel, attached hereto as Exhibit A).

liable under 18 U.S.C. § 2333(a) for the unpaid portion of the *Boim* Judgment as the alter egos and/or successors of the original *Boim* Defendants. The Boims additionally allege that Mr. Jaber is liable for fraudulent concealment of material facts about original *Boim* Defendants' assets as part of their "transition" to Entity Defendants.

As this Court has noted, the factors relevant to determining whether the Entity Defendants are liable as alter egos of the original *Boim* Defendants are "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability." (Dkt. 250, at 1) (quoting *Boim v. American Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021)).

As this Court has further noted, to find Jaber liable for the *Boim I* judgment as an alter ego of the original *Boim* Defendants, in turn, requires piercing the corporate veil between Jaber and IAP. To pierce that veil, Plaintiffs must show that (1) there was "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." (Dkt. 250, at 5) (quoting *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012)).

To find Jaber liable for fraudulent concealment, Plaintiffs must show that, despite having a duty to disclose information to the Boims, Jaber misleadingly omitted material facts about IAP's disguised continuance as AMP and the existence of IAP assets following the Boim Judgment.

## B. STANLEY AND JOYCE BOIM'S DIMINISHED HEALTH.

Mr. Boim is 83 years old and suffers from a variety of chronic illnesses. In the past year, he has endured repeated, extended hospitalizations stemming from falls that eventually

necessitated a total hip replacement earlier this year. Indeed, Mr. Boim was originally scheduled to be deposed on November 7, 2022, but became unavailable due to a bad fall in which he fractured his femur and suffered sufficiently severe head trauma to produce a subdural hematoma, requiring hospitalization and several months in a rehabilitation facility. (*See.* Dkt. 272-3, at 10) (October 19, 2022 email correspondence between opposing counsels).

Ms. Boim is also in her 80s and physically frail. Her last deposition left her physically, mentally, and emotionally exhausted from the stress of reliving her son's murder and the tension of being deposed.

## C. THE NOVEMBER 7, 2022 DEPOSITION OF JOYCE BOIM.

On November 7, 2022, Joyce Boim was remotely deposed, for more than two hours, by Defense counsel Christina Jump ("Defense Counsel"). *See* Transcript of Deposition of Joyce Boim ("Ms. Boim Dep. Tr.").[2] The focus of the questions was the pleadings and discovery responses prepared and filed by the Boims' attorneys and the facts, concepts, and legal theories underlying those pleadings and discovery responses. Ms. Boim's responses made clear that most such questions lay outside of her personal knowledge or expertise. *See, e.g., id.* at 39:14-18 ("Q: . . . [D]o you have any personal knowledge as to information that Oussama Jammal may have that is relevant to this lawsuit? A: No, I don't but I trust my lawyers."). Those questions she could answer related to *Boim I* and facts not in dispute in the present litigation. Her most consistent response was, accordingly, that she trusted her lawyers, who provided the information contained in the pleadings and disclosures. *See, e.g., id.* at 41:11-17 ("Q: Ms. Boim, the next portion of this document which begins with the two lower case I's in about the middle of page 3 ask for documents that Plaintiffs may use to support this case. Are you personally in possession

---

[2] A copy of Ms. Boim's deposition transcript is attached hereto as Ex. B.

of any documents that you believe are responsive to that question and relevant to this lawsuit? A.
I don't but I trust my lawyers."). In total, Mrs. Boim used the phrase "I trust my lawyers" 38
times in the course of the approximately two-hour deposition.

Ms. Boim was emotional throughout the deposition and was at one point reduced to tears
by the aggressive, unyielding, and repeated questioning regarding topics about which she lacked
personal knowledge. Eventually, Plaintiffs' Counsel was forced to object as follows:

> MR. SCHLESSINGER: Christina, I'm just gonna object to this continuing line of
> questioning. I think it's obvious that you are not getting any discoverable
> information out of this and that it's harassment. It's really disturbing to Ms. Boim
> and I would ask that you discontinue this line of questioning. It's not useful in this
> case at all and it is just for harassment. *Id.* at p. 50:19-25.

When Defense Counsel responded, asserting that her questions were "not just for harassment. .
.[and she had] a right, and quite frankly, an obligation to ask about [Mrs. Boim's] personal
knowledge as to each of [the interrogatory] questions," Plaintiffs' Counsel offered to "stipulate
that [Ms. Boim] ha[d] no personal knowledge" of the facts "recited in the[ discovery] responses."
*Id.* at p. 51:1-6, 8-15. Defense Counsel then confirmed that Plaintiffs' Counsel and Ms. Boim
were willing to stipulate that Ms. Boim "has no personal knowledge relating to any of the facts
recited in the supplemental responses or the original responses to defendants' discovery
requests," which they both did. *Id.* at 51:16-23.

Ultimately, Defense Counsel ended the deposition early after Ms. Boim agreed to the
following stipulation, as phrased by Defense Counsel: "from the time period. . . of the end of the
first Boim action going forward Ms. Boim does not have any personal knowledge of the facts
alleged that pertain to after that judgment." *Id.* at p. 56:3-21. She, and Plaintiffs' Counsel, agreed
to stipulate that it was their "understanding" that the same was true of Mr. Boim. *Id.* at pp. 56:22
- 57:7. When Defense Counsel ended the deposition, she "reserved the right to resume the
deposition if facts come out during discovery that would warrant that." *Id.* at p. 63:7-9. In

response, Plaintiffs' Counsel expressed his "hope and expectation" that they "not have to come back," but noted that they would consider a return if Defense Counsel presented a good reason. *Id.* at p. 63:14-18.

### D. DEFENDANTS' REVIVE THEIR EFFORTS TO DEPOSE THE BOIMS.

In a July 14, 2023, via email. Defense Counsel informed Plaintiffs' Counsel that Defendants intended to re-depose Ms. Boim and depose Mr. Boim.[3] On July 20, 2023, counsel for the parties conferred via phone regarding a number of discovery issues, including Defendants' request to depose the Boims. Plaintiffs' Counsel argued that Defendants had no need to depose the Boims for the reason previously discussed at Ms. Boim's deposition and asked if Defendants would consider a stipulation in lieu of deposing the Boims. Defense Counsel agreed to consider a stipulation.

On July 25, 2023, the Boims' counsel emailed Defense Counsel, offering to enter a stipulation along the following lines, in exchange for Defendants withdrawing their requests to continue deposing Ms. Boim and to depose Mr. Boim:

> . . . The content of the stipulation I have in mind would be to agree that the Boims have personal knowledge of the facts alleged in paragraphs 1, 2, 15, and 19 of the First Amended Complaint (none of which are in dispute), that they are aware from their review of the interrogatory answers that they were prepared by counsel, and that from their review, they believe the responses look reasonable and accurate but that they do not know the source of the information provided and do not know the details of any of the allegations beyond what is stated in the responses. . . . [4]

Defense Counsel responded on August 10, 2023, insisting the Defendants needed to depose the Boims.[5] First, Defense Counsel alleged that the proposed content of the stipulation and Ms. Boims prior statements at the deposition contradicted the Boims' signed verifications.[6]

---

[3] A copy of the July 14, 2023 correspondence is attached hereto as Exhibit C.
[4] A copy of the July 25, 2023 correspondence is attached hereto as Exhibit D.
[5] A copy of Defense Counsel's August 10, 2023 correspondence is attached hereto as Exhibit E.
[6] Notably, Defense Counsel did not herself quote the language of the verification in her August 10, 2023 email.

Second, she argued that it was necessary to depose the Boims because Defendants "need to be able to question someone who can speak to the factual bases for the allegations in the lawsuit and the responses to the Interrogatories to Plaintiffs. . . [and her] clients have a right to confront their accusers, even in civil litigation."

Defense Counsel also justified her request to depose the Boims on the grounds that she has "an obligation to. . . question any identified witnesses, under oath, about those allegations," though it is relevant to note that the Boims have no plans to testify at trial for the same reasons they resist being deposed – they are elderly, physically frail, live outside the U.S., and lack personal knowledge of the issues that are actually in contention in this litigation.

On August 18, 2023, Ms. Jump, Ms. Elhosary, and Messrs. Schlessinger and Corthell addressed the dispute regarding the Boims' deposition during a discovery conference call and agreed the parties were at an impasse.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)." A party's right to conduct depositions, however, like any discovery request, is not without limits. "It is axiomatic that a party cannot take a deposition for purposes unrelated to the lawsuit at hand." *Jennings v. Peters*, 162 F.R.D. 120, 122 (N.D. Ill. 1995).

While Rule 26(b)(1) generally allows discovery into nonprivileged matters related to a case, protective orders provide an important check upon runaway discovery, "ensur[ing] that the power of liberal discovery is not abused." *See Jennings*, 162 F.R.D. at 122. Per Rule 26(b)(2)(C) for instance, "a court *must* limit the frequency or extent of discovery. . . [when] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive; . . [or] the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C) (emphasis added). Under Rule 26(c)(1), in turn, a court *may*, upon motion and "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including. . . [by] forbidding the disclosure or discovery. . . [or] prescribing a discovery method other than the one selected by the party seeking discovery;" FED. R. CIV. P. 26(c)(1).

"The only requirement in deciding whether or not to issue a protective order is the statutory mandate of 'good cause.'" *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013). The moving party has the initial burden of "establish[ing] that good cause exists for the Court to exercise its discretion in entering a protective order." *Kleronomos v. Aim Transfer & Storage, Inc*., No. 19 CV 1844, 2020 U.S. Dist. LEXIS 265177, at *4 (N.D. Ill. Aug. 27, 2020) (internal citation omitted). "Whether good cause exists must be made on a case-by-case basis." *Id* While "good cause is difficult to define in absolute terms, 'it generally signifies a sound basis or legitimate need to take judicial action.'" *Nieves*, 948 F. Supp. 2d at 891-92 (quoting *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (additional citations omitted)).

### III. ARGUMENT

As this Court has previously noted, "[d]istrict courts have 'substantial latitude to fashion protective orders,'" *Kleronomos*, 2020 U.S. Dist. LEXIS 265177, at *3-4 (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.,* 881 F.3d 550, 565 (7th Cir. 2018)). Here, it would be appropriate for the Court to exercise that discretion by issuing a protective order enjoining Defendant from deposing the Boims under both FED. R. CIV. P. 26(c)(1) and FED. R. CIV. P. 26(b)(2)(C).

8

A. **Defendants' request to depose the Boims is outside the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).**

Defendants' request to depose the Boims fails at the outset because it does not meet the threshold relevancy and proportionality requirements of Rule 26(b)(1) that limit discovery to information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It should, accordingly, be enjoined under Rule 26(b)(2)(C)(iii), which requires a court to "limit the frequency or extent of discovery. . . outside the scope permitted by Rule 26(b)(1)."

Regarding the relevancy prong, for the purposes of Fed. R. Civ. P. 26(b)(1), relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (*citing Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). As the Boims have offered to stipulate, with the narrow exception of facts that are not at issue in this case, the Boims lack personal knowledge of any facts supporting the allegations contained in the Amended Complaints. While they have read, and understand in a general sense, the assertions and allegations contained in the pleadings and discovery responses, they have relied upon their attorneys to craft the legal arguments and conduct the factual investigations necessary to advance the litigation – as most plaintiffs do. They are thus unable to "speak to the factual bases for the allegations in the lawsuit and the responses to the Interrogatories to Plaintiffs" – the primary justification Defendants have provided for seeking to depose the Boims. (*See* Ex. E) Accordingly, deposing the Boims is unlikely to produce the relevant information Defendants claim to seek and, even if it *could* produce relevant information, it is unlikely that such information would be new or of more than minimally probative value regarding "any issue that is or may be in the case." *Id.*

9

The second prong, proportionality, is determined by "considering. . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). In this case, given the minimal, if any, relevance of any new information the Boims could provide if deposed—as explained in the previous paragraph—the expected benefit of allowing the Boims to be deposed is clearly small. The expected emotional and physical burden upon the Boims of preparing for and being deposed is, by contrast, high, given their advanced age, failing health, the inherent painfulness of discussing topics related to the murder of their son, and Defense Counsel's aggressive and unyielding deposition style, which Ms. Boim has already experienced first-hand. Defendants have furthermore proven unable to point to any significant issues deposing the Boims is necessary to resolve.

That the Boims lack knowledge in this area is not surprising in the least. The Anti-Terrorism Act afforded them an avenue for relief against entities legally determined to be complicit in the murder of their son. When the judgment they obtained went largely unsatisfied, their counsel eventually became aware that much of the leadership of the original defendants had reconstituted those organizations as alter egos. There is no reason to expect that the Boims, an elderly couple living in Israel for the past 30 years, would have the detailed knowledge of the leadership, purpose, operations and motives of the current defendant organizations, details that Plaintiffs have already provided extensively in their Amended Complaint and responses to written discovery.

The burden upon the Boims of allowing Defendants to depose them, accordingly, greatly outweighs any potential benefit that might be realized from such depositions. Defendants'

10

request to depose the Boim is thus "outside the scope permitted by Rule 26(b)(1)" and should be enjoined under FED. R. CIV. P. 26(b)(2)(C)(iii).

**B.  DEPOSING THE BOIMS WOULD BE DUPLICATIVE OF ALREADY PRODUCED DISCOVERY AND IMPOSE AN UNDUE BURDEN UPON THE BOIMS.**

Federal Rule of Civil Procedure 26(b)(2)(C) requires a Court to limit "otherwise allowed" discovery if it determines that the sought discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Such is the case here. Put simply, the Boims have already provided voluminous discovery to Defendants and because the Boims lack personal knowledge regarding issues unrelated to the merits of the original *Boim* case, and are willing to stipulate to that fact, there is no purpose to be served by subjecting them to the physical or emotional burden of being deposed or the time and stress of preparing for a deposition. Even if deposing the Boims *could* produce information relevant to this suit, that information would likely be duplicative of information Plaintiffs have already produced or as explained in the previous section, of such minimal probative value that the burden of the depositions would clearly outweigh the value. Should it prove necessary, it would be more efficient and effective to simply submit such outstanding questions as Defendants have regarding the pleadings or discovery responses in writing.

**C.  THE BOIMS SHOULD BE PROTECTED FROM FURTHER ANNOYANCE, EMBARRASSMENT, OPPRESSION, AND UNDUE BURDEN OF DEPOSITIONS WITHOUT PURPOSE.**

Federal Rule of Civil Procedure 26(c)(1) authorizes a court, upon a showing of good cause, to issue an "order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including. . . [by] forbidding the disclosure or discovery. . . [or] prescribing a discovery method other than the one selected by the party seeking discovery;" FED. R. CIV. P. 26(c)(1). There is good cause in this case to enjoin Defendants from deposing the Boims because the subjects about which the Boims have person knowledge—their

son's killing by a terrorist organization and their failure to collect in a meaningful way upon the *Boim I* judgment—are not at issue in this litigation and the Boims lack personal knowledge regarding other facts supporting the allegations contained in the Amended Complaint or discovery responses.

As the prior deposition of Ms. Boim showed, questioning her about those topics is emotionally painful to her and has failed to produce relevant information beyond confirming that the Boims lack information not contained in the pleadings and discovery responses. In light of the Boims willingness to stipulate to their lack of personal knowledge along those lines, there is no purpose to be served by asking them questions regarding the Amended Complaint or discovery responses except to inflict emotional pain upon them by forcing them to relive an incredibly traumatic period of their life, and embarrass or humiliate them by forcing them to repeatedly respond that they lack personal knowledge regarding the questions being asked—all of which would amount to harassment. To the extent that the Court believes Defendants may have further need of discovery from the Boims, it would be appropriate for the Court to exercise its discretion to prescribe a discovery method other than depositions.

**D.  THERE IS NO CONFLICT BETWEEN THE BOIMS' VERIFICATION AND THEIR OFFERS TO STIPULATE.**

Defendants claim that deposing the Boims is necessary to resolve a conflict between the language of the verifications the Boims signed and the Boims' offer to stipulate, yet no such conflict exists. Contrary to Defense Counsel's claims, the Boims have not "signed verifications swearing under oath that they do have factual knowledge of the responses to the Interrogatories to Plaintiffs."[7] (Ex. E) The verifications at issue state: "I have read the Answers to the

---

[7] Defense Counsel uses the term "factual knowledge," a phrase that lacks a standard legal definition and which the Boims have not used in their discovery responses or verifications. For the purpose of this section, Plaintiffs assume Defense Counsel intends the phrase to be synonymous with "personal knowledge."

Interrogatories in Plaintiffs' Objections and Answers to Entity Defendants' First Set of Discovery Request and I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." There is no reference to the Answers being based upon personal knowledge. There is also no implicit or explicit requirement in the Federal Rules or caselaw that discovery responses be based upon personal knowledge – unless the responses themselves claim such a basis.

It is natural that, the more complex the case, the more plaintiffs must rely upon the theories, judgments, and investigations of their counsels and experts. In this case, there is no question that the Boims, who—in addition to being elderly and in poor health—are not technologically savvy; are not knowledgeable of the nuances of corporate governance or organizational structures; and are entirely unaware of the strategies employed by those seeking to evade liability for judgments, would be able to progress this litigation based upon personal knowledge alone. To expect them to do so would be manifestly unreasonable. It is for that reason that they have retained counsel to formulate the appropriate legal theories of liability and develop the factual record.

Appropriately, in light of the case's complexity and their lack of personal knowledge, when verifying their written discovery responses, the Boims relied upon 1) the skill and diligence of their counsel and 2) their own subjective determinations that the responses appeared reasonable and accurate in light of what they knew from reading the Amended Complaint and discovery responses, as well as from their privileged conversations with counsel. Consistent with their lack of personal knowledge, the Boims did not identify themselves as individuals likely to have discoverable information in their initial disclosures. There is, accordingly, no conflict

between the Boims' discovery responses, the Boims' verifications of those responses, the Boims'

Offers to Stipulate, or any statements Ms. Boim made when deposed.

**E.  DEFENDANTS DO NOT HAVE A "RIGHT TO CONFRONT" THE BOIMS – THIS IS NOT A CRIMINAL CASE *AND* THE BOIMS ARE NOT WITNESSES IN THIS LITIGATION.**

Counsel's contention, in her August 10, 2023 email, that Defendants have a right to

depose the Boims because they "have a right to confront their accusers, even in civil litigation,"

betrays a fundamental misunderstanding of the law. (Ex. E) Even if this were a criminal

prosecution, in which case Defendants would enjoy the full protections of the Sixth

Amendment's confrontation clause, they would not be entitled to confront the Boims because

the Boims are not witnesses in this litigation and will not be testifying at trial. *See* U.S. Const.

amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted

with the *witnesses* against him.") (Emphasis added). *See also Johnson v. Pugh*, 11-cv-865-RTR,

[*7] ECF 17 at 11-12 (E.D. Wis. November 29, 2011) (determining that a court's failure to

allow a criminal defendant to "confront and cross examine" an individual who "provided

information that was used in the criminal complaint against" the defendant did not present a

cognizable ground for habeas relief because the individual did not testify at trial.) (quoted with

approval in *Johnson v. Hansher*, No. 14-CV-1049, 2014 U.S. Dist. LEXIS 198987, at *6 (E.D.

Wis. Nov. 24, 2014)).

## IV.    CONCLUSION

In sum, Defendants' insistence upon deposing the Boims is an example of precisely the

type of runaway discovery protective orders are intended to check. Defendants are aware of the

Boims' ill health, that the Boims lack personal knowledge of the facts at issue in this litigation,

and that any information the Boims could provide is obtainable through less burdensome and

more effective means. Moreover, based upon Defendants' prior deposition of Ms. Boim, they are

aware of the extreme emotional distress Ms. Boim is likely to experience if compelled to participate in further depositions. Nonetheless, Defendants persist in seeking to depose the Boims. Accordingly, the Court should find that Plaintiffs have met their burden of showing good cause and exercise its discretion to enter a protective order enjoining Defendants from deposing the Boims..

Therefore, Plaintiffs request that an order be entered, enjoining Defendants from deposing Mr. or Ms. Boim.

Dated: August 21, 2023

Respectfully submitted,

*s/ Seth H. Corthell*

Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim,
Individually and as the
Administrator of the Estate of David
Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
 (202) 828-1000

## <u>CERTIFICATION OF GOOD FAITH CONFERRAL</u>

I, Seth Corthell, certify that, in accordance with their obligations under FED. R. CIV. P. 26(C)(1) and LR 37.2, on July 7, July 20, and August 18, 2023 via phone calls between D. Schlessinger, S. Corthell, C. Jump, and S. Elhosary; on July 14, 25, August 1, 8, 9, and 10, 2023 via email correspondence between D. Schlessinger, S. Corthell, and C. Jump, the Parties conferred in good faith for the purposes of attempting to resolve this and other discovery disputes without court action. Despite the Plaintiffs' good faith efforts to resolve this dispute, the parties reached an impasse that requires Court intervention.

*s/ Seth H. Corthell*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 21st day of August, 2023.

.                                                                          *s/ Seth H. Corthell*