# -EXHIBIT B-

COPY

### In the Matter Of:

## BOIM vs AMERICAN MUSLIMS

17-cv-03591

---

### JOYCE BOIM

*November 07, 2022*

---



800.211.DEPO (3376)
EsquireSolutions.com



```
 1              UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF
 2                ILLINOIS EASTERN DIVISION

 3   STANLEY BOIM,                )
     INDIVIDUALLY AND AS          )
 4   ADMINISTRATOR OF THE         )
     ESTATE OF DAVID BOIM,        )
 5   DECEASED; AND JOYCE BOIM,    )   Civil No. 17-cv-03591
                                  )
 6        Plaintiff,              )
                                  )
 7   v.                           )   Hon. Gary Feinerman
                                  )
 8   AMERICAN MUSLIMS FOR         )
     PALESTINE/AMERICANS FOR      )
 9   JUSTICE IN PALESTINE         )
     EDUCATIONAL FOUNDATION;      )
10   RAFEEQ JABER,                )
                                  )
11        Defendants.             )

12              ORAL AND REMOTE DEPOSITION

13                    JOYCE BOIM

14                 NOVEMBER 7, 2022

15

16             ORAL AND REMOTE DEPOSITION OF JOYCE BOIM,

17   produced as a witness at the instance of the Defendants

18   and duly sworn, was taken in the above-styled and

19   numbered cause on the 7th day of November, 2022 from

20   6:03 a.m. to 8:21 a.m., before Patricia Lopez,

21   Registered Professional Reporter, Notary Public within

22   and for the County of Hidalgo, State of Texas.  Reported

23   by computer stenotype machine via zoom video conference

24   pursuant to the Federal Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.
```



JOYCE BOIM                                    November 07, 2022
BOIM vs AMERICAN MUSLIMS                                      2

```
 1                        APPEARANCES

 2    ATTORNEY FOR THE PLAINTIFF:

 3         Daniel I. Schlessinger
           JASZCZUK P.C.
 4         311 S. Wacker Drive, Suite 2150
           Chicago, Illinois 60606
 5         Telephone:  312-442-0509
           E-mail:  dschlessinger@jaszczuk.com
 6
     -and
 7
           Alyza D. Lewin LLP
 8         LEWIN & LEWIN LLP
           888 17th Street NW, 4th Floor
 9         Washington, D.C.  20006
           Telephone:  202-828-1000
10         E-mail:  alyza@lewinlewin.com

11
     ATTORNEY FOR THE DEFENDANTS:
12
           Christina A. Jump
13         CONSTITUTIONAL LAW CENTER FOR
           MUSLIMS IN AMERICA
14         100 North Central Expressway,
           Suite 1010
15         Richardson, TX 75080
           Telephone:  972-914-2507
16         E-mail:  cjump@clcma.org

17   -and

18         Alyssa F. Morrison
           CONSTITUTIONAL LAW CENTER FOR
19         MUSLIMS IN AMERICA
           100 North Central Expressway,
20         Suite 1010
           Richardson, TX 75080
21         Telephone:  972-914-2507
           E-mail:  amorrison@clcma.org

22

23

24

25
```



JOYCE BOIM                                              November 07, 2022
BOIM vs AMERICAN MUSLIMS                                                3

1                              INDEX

2    WITNESS:                                        PAGE
             JOYCE BOIM
     Examination by Ms. Jump                         5
     Witness Request for Signature                   68
     Court Reporters Certification                   70

6
7
                            EXHIBITS
8
     NO.    EXHIBITS                                 PAGE
9    1      Verifications of Plaintiffs'
            Interrogatory Responses****************   19
10
     2      Amended Complaint*********************   25
11
     3      Plaintiffs' Initial Disclosures********   29
12
     4      Plaintiffs' Response to Jaber's
13          Discovery Requests*******************    42
14   6      Plaintiffs' Supplemental Answers To The
            Entity Defendant's First Set Of
15          Discovery Requests*****************       46
16
17
18
19
20
21
22
23
24
25



```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2    Whereupon,
 3    6:03 a.m.
 4                    COURT REPORTER:  Good morning.  Today is
 5    Monday, November 7, 2022.  The time is 6:03 a.m. central
 6    time.
 7                    My name is Patricia Lopez, Registered
 8    Professional Reporter.  I will be administering the oath
 9    and reporting the deposition remotely by stenographic
10    means from McAllen, Hidalgo County, Texas.  The witness
11    is located in Israel.
12                    Counsel, will you please state your
13    appearances for the record, and who you represent.
14                    MR. SCHLESSINGER:  Yes, this is Daniel
15    Schlessinger, representing the Plaintiffs'.
16                    MS. LEWIN:  This is Alyza Lewin.  That's
17    A-L-Y-Z-A, Lewin L-E-W-I-N, and representing the
18    Plaintiff.
19                    MS. JUMP:  Christina Jump, representing the
20    Defendants'.
21                    MS. MORRISON:  Alyssa F. Morrison,
22    representing the Defendants'.
23                    THE REPORTER:  Thank you.
24                    May I have witness please raise your right
25    hand to be sworn in.
```



```
 1                    (Witness sworn.)

 2               THE REPORTER:     Thank you.

 3               Counsel, you may begin.

 4               MS. JUMP:  Thank you.  And my apologies.  I

 5    meant to state earlier that we do intend to have a video

 6    recording of this which is consistent with the notice.

 7    So I am going to start the recording via zoom.

 8                         JOYCE BOIM,

 9    after being first duly sworn, testified as follows:

10                         EXAMINATION

11    BY MS. JUMP:

12       Q.  Okay.  Good morning.  Or for us, early morning.

13    For you it's afternoon.  My name is Christina Jump.  I

14    am counsel for the defendants here.  I just wanted to

15    state on the record as we begin that the court reporter

16    did just swear in the witness right before we began

17    recording.  And Ms. Joyce Boim is present along with

18    counsel, Dan Schlessinger, as well Alyza or Alisa Lewin?

19               MS. LEWIN:  Alyza.

20               MS. JUMP:  Alyza.  Thank you.

21       Q.  (BY MS. JUMP) And then we also have my

22    co-counsel, Alyssa Morrison, who is present as well.

23          Good afternoon, Ms. Boim.  How are you today?

24       A.  Boim.  The name is Boim.

25       Q.  Boem?
```



1     A.  Boim.  B-O-I-M.  Boim.

2     Q.  Right.  And I see how to spell it.  I'm trying to

3   get the pronunciation the same way that you say it, so

4   phonetically --

5             MR. SCHLESSINGER:  It's like boy.  The word

6   boy with an M at the end.  Boim.

7             MS. JUMP:  Boim.  Okay, got it.  I can do

8   that.

9     Q.  (BY MS. JUMP)  All right.  Ms. Boim, would you

10  please state your full name for the record.

11    A.  My name is Joyce Laurence Boim.

12    Q.  Okay.  And if you would state for the record

13  where you are currently located?

14    A.  I am located in Jerusalem, Israel.

15    Q.  And are you in, as I understand it, an office

16  building?

17    A.  Yes.  Yes, I am.

18    Q.  And what office is that?

19    A.  Zell Lawyers.  The name of the firm is Zell,

20  Z-E-L-L.

21    Q.  What is the address for that location?

22    A.  34 Ben Yehuda Street, Jerusalem.

23    Q.  Thank you.  Ms. Boim, have you ever had your

24  deposition taken before?

25    A.  Yes.



JOYCE BOIM                                November 07, 2022
BOIM vs AMERICAN MUSLIMS                                  7

```
 1      Q.   Okay.   And when was that?
 2      A.   It was many years ago when we went through this
 3   all.
 4      Q.   In the original case that you brought?
 5      A.   Yes.   The original case which we brought which we
 6   won, and we haven't gotten any money for it.   We're
 7   still waiting.   We won the case.
 8      Q.   Right.   I understand that.   And so my question
 9   here is just when else have you given sworn testimony,
10   and you said --
11      A.   It was many years ago.   I can't recall the exact
12   date but it was maybe years ago.
13      Q.   Okay.   One moment, please.
14      A.   Maybe 15 to 20 years age.
15      Q.   Okay, thank you.
16      A.   Pain is still here.
17      Q.   Okay.   You said that was about 15 to 20 years
18   ago; is that correct?
19      A.   Yes.
20      Q.   Okay.   Have you given a deposition at any other
21   time in --
22      A.   No.
23      Q.   -- any other matter?
24      A.   No.
25      Q.   And just to be clear for the record, you
```



JOYCE BOIM                                          November 07, 2022
BOIM vs AMERICAN MUSLIMS                                            8

```
 1   understand that Ms. Morrison and I are here today
 2   because we represent Rafeeq Jaber; do you understand
 3   that?
 4       A.  Yes.  Yes, I do.
 5       Q.  Okay.  And that we also represent American
 6   Muslims for Palestine or AMP as well as AJP?
 7       A.  The same people that I spoke against before just
 8   different names.  But it's the same --
 9              MS. JUMP:  Okay.  I am going to object to
10   that as nonresponsive.
11       Q.  (BY MS. JUMP) You understand that we represent
12   those parties?
13       A.  Yeah.  Yeah, I do.
14       Q.  Thank you.  Okay, and do you understand that we
15   previously represented Osama Abuirshaid in this matter?
16       A.  Yes.
17       Q.  Okay.  And that we also previously represented
18   Abdel Hamayel in this matter?
19       A.  Yes.
20       Q.  Okay.
21       A.  (Inaudible).
22       Q.  I'm sorry, what was that?
23       A.  Nothing.
24       Q.  And you understand that this proceeding is
25   governed by the Federal Rules of Civil Procedure for the
```



```
 1    United States?
 2       A.  Yes.
 3       Q.  Okay.  Just a couple of housekeeping and
 4    procedural manners.  For the time that we are on the
 5    record and the time even if we continue this deposition
 6    to tomorrow, to the time in between, we just need to
 7    make sure that we follow a couple of basic rules which
 8    are probably very similar to what you covered the last
 9    time that you gave a deposition in the original matter.
10    We need to -- could you and I agree that we will make
11    sure that we speak one at a time so that we don't make
12    the court reporter's job any more difficult than it
13    already will be?
14       A.  Yes.
15       Q.  And if you do not understand any question that I
16    ask, please go ahead and tell me that.  Let me know if
17    you do not understand it.
18       A.  Yes, okay.
19       Q.  And, otherwise, I will presume that if you give
20    an answer that as raised and as asked; is that agreed?
21       A.  Yes.
22       Q.  Okay.  Ms. Boim, are you taking any medications
23    today that would impair your ability to give truthful
24    and honest testimony?
25       A.  No.
```



1    Q.  And would you, I believe that we covered earlier,

2  that the people in the room with you today are your

3  counsel, Mr. Schlessinger, as well as Ms. Lewin; is that

4  correct?

5    A.  That's correct.

6    Q.  Okay.  Is there anybody else present in the room

7  with you?

8    A.  No.  Can I say something?  I hope we can finish

9  today because my husband is in rehab and I feel I want

10 to spend some time with him tomorrow.  So I hope we can

11 finish today.  This is really taking a lot out of me and

12 I don't know if I can do it another day.

13   Q.  We'll see how far we can get today.  I do

14 appreciate that and, as you know, we have already agreed

15 to certainly reschedule your husband's deposition, which

16 was previously scheduled for this week as well.  And we

17 will see how far we can get today.

18       All right.  Ms. Boim, who had you discussed this

19 lawsuit with other than your attorneys?

20   A.  Nobody else.  I may have discussed it with my

21 husband.  That's it.

22   Q.  Have you had any discussions with

23 Mr. Steve Landis?

24   A.  Yes.  Not really, not now.  No.

25   Q.  I'm sorry?



JOYCE BOIM                                    November 07, 2022
BOIM vs AMERICAN MUSLIMS                                    11

1    A.   No.  No.

2    Q.   Well you said yes first?

3    A.   Oh, yes.  Yes, excuse me, yes.  We met, yes.

4    Q.   When is the last time that you spoke with him?

5    A.   It was two or three weeks ago.

6    Q.   What was the context of that?

7    A.   I saw him about -- I read the information.

8    Q.   What informations is that?

9    A.   The information about the case.  The

10   documentation.

11   Q.   When you refer to the information about the case,

12   are you talking about the current lawsuits against

13   Rafeeq Jaber and AMP?

14   A.   Yes.

15   Q.   Okay.  And what information did you see or read

16   with Mr. Landis in that regard?

17   A.   The documentation that was very repetitive of

18   what we've gone through before.  Same information with

19   just different names.

20   Q.   Can you describe for me what that documentation

21   is?

22   A.   Talking about the people who were involved, where

23   the money is coming from, what they are doing, and what

24   they are responsible for.

25   Q.   Okay.  Was anybody else present when you spoke



1    with Mr. Landis?

2        A.   No.

3        Q.   Just the two of you?

4        A.   Yes.   Yes, my husband was in the hospital at the

5    time.

6        Q.   Uh-huh.   And you say you spoke with him about

7    where the money is coming from?

8        A.   We discussed the people who are involved.   Same

9    info, same story, but just different names.

10       Q.   I'm not sure what you mean by that.   Can you

11   clarify that, please?

12       A.   Is that they are representing the same thing

13   under a different name but it's the same thing.   They

14   are dealing with Hamas, raising money for them, and

15   helping them.

16       Q.   And when you say they are dealing with Hamas, who

17   are you referring to?

18       A.   I'm referring to these different organizations,

19   now, with different names but under a different guys, or

20   a different name but it's the same thing that we dealt

21   with years ago.   And that are responsible for my son's

22   death.   One thing I can say --

23       Q.   Uh-huh.

24       A.   -- they can kill my son but they haven't

25   destroyed us and our family.   And that's why we keep



1    fighting and we keep doing.

2        Q.  And when you say they killed your son, who are

3    you referring to?

4        A.  The Hamas.  These individuals who support them,

5    and raise money for them, and inspire them to continue

6    doing what they're doing.

7        Q.  Which individuals are those in your opinion?

8        A.  The ones you are representing.

9        Q.  Meaning Rafeeq Jaber?

10       A.  Yes.

11       Q.  He's the only individual in this case right now.

12   Are there any other individuals that you believe are

13   responsible?

14       A.  I'm sure those who were working with him.  I

15   can't remember the names but there are plenty who were

16   supporting him, raising funds, and helping them do what

17   they're doing to destroy people's lives.  What they --

18   like they've done ours.

19          Talking about it brings up all the pain of

20   26 years ago.  Almost 27.  But like I said, we go on.

21   They try to but are not -- they haven't destroyed me or

22   my family.  And like a said, that's why we keep

23   following through and continue what we're trying to do.

24   Continuing with the case and trying to collect the money

25   that is rightfully ours.



JOYCE BOIM
BOIM vs AMERICAN MUSLIMS

November 07, 2022
14

1    Q.   Now I want to go back and finish the topic that

2    we had started a few minutes ago.  All right, how did

3    you come to speak to Mr. Landis about this case

4    approximately two weeks ago as you mentioned?

5    A.   How he came to discuss?  They're working on it

6    and he came to share with us what they're discussing and

7    they want to achieve.  And how to deal with what's going

8    on.

9    Q.   So he came to you in Jerusalem?

10   A.   Yes.

11   Q.   And is that when you provided a verification?

12   A.   Yes.

13   Q.   Where you signed a document?

14   A.   Yes.  We went over the information.  I read it

15   careful through and signed the documentation.

16   Q.   Okay.  And how many times did you speak to Mr.

17   Landis regarding that --

18   A.   Just once.

19   Q.   -- documentation?

20   A.   Just once.  He came to my home and we discussed

21   it.  I read it through and then I signed.

22   Q.   When was the most recent conversation that you

23   had with Mr. Landis prior to that one?

24   A.   Prior to that, I don't remember when it was.

25   Q.   What is your best recollection?



1    A.  I don't know.  It could have been a phone

2    conversation.  I don't remember.

3    Q.  Was it --

4    A.  I can't --

5    Q.  I'm sorry?

6    A.  I can't pinpoint the time.  I've gone through a

7    lot in the last couple of months.  It's hard for me but

8    I know it was a phone conversation and that was before I

9    met with him at my home.

10   Q.  Okay.  And would it be fair to say that that took

11   place within the last few of months?

12   A.  Yeah.

13   Q.  What did you discuss in that conversation?

14   A.  Nothing that -- what they were working on and

15   what they were planning to do.

16   Q.  And what is that?

17            MR. SCHLESSINGER:  I'm going to object on

18   the grounds that it's a privileged conversation and

19   instruct the witness not to answer.

20            MS. JUMP:  Mr. Landis is not counsel record

21   in this case.

22            MR. SCHLESSINGER:  Doesn't matter, he's

23   still counsel for the -- for Ms. Boim.

24            MS. JUMP:  Okay.  And we will need to bring

25   that up in front of the Judge, because if it's -- she



1   made clear that he had -- that the discussion and the

2   topic was regarding this case and regarding the

3   documents responsive in this case.

4          MR. SCHLESSINGER:  You can bring whatever

5   you want to the Judge.  I've objected on privileged

6   grounds and instructed the witness not to answer.

7          MS. JUMP:  Okay.  We will do so.

8     Q.  (BY MS. JUMP) Ms. Boim, your attorney has

9   instructed you not to answer that question.  Will you be

10   follow his instruction?

11     A.  Yes.

12     Q.  Who else have you had discussions with regarding

13   this case?

14     A.  No one else except my husband.  That's it.  It's

15   privileged information between my husband and I and our

16   lawyers.

17     Q.  What is privileged information?

18     A.  Whatever is being discussed with the case, with

19   the information that I was given to read.  This is all

20   -- just my husband and I and my lawyers who I trust

21   wholeheartedly.

22     Q.  Ms. Boim, you have -- are you aware that there

23   have been news articles regarding this lawsuit?  The

24   2017 lawsuit?

25          MR. SCHLESSINGER:  I'm sorry, which



1    articles?

2            MS. JUMP:   That there have been news

3    articles.

4            MR. SCHLESSINGER:   Oh.

5    Q.   (BY MS. JUMP)  Ms. Boim, are you aware that there

6    have news articles regarding the 2017 lawsuit?

7    A.   Articles at what time?  When?

8    Q.   Since the filing of the 2017 lawsuit?

9    A.   I'm not aware of it.

10   Q.   Are you aware that your attorneys have been

11   quoted in news articles regarding this lawsuit?

12   A.   Yes.

13   Q.   Okay.  Are you aware that there, I believe that

14   there have been quotes attributed to you and to your

15   husband in articles regarding this 2017 --

16   A.   Yes.

17   Q.   -- lawsuit?  Okay, so you are aware of articles

18   that discuss --

19   A.   Yes, I'm aware of these things.

20   Q.   Okay.  So did you speak directly with those

21   reporters?

22   A.   No.  I didn't speak directly but they've spoken

23   to my lawyers and I trust whatever they have to say.

24   Q.   Okay.  Have you spoken with Allen Woolley in the

25   past year.



1      A.   No.

2      Q.   And I apologize, I'm having just a minor

3   technical difficulty here on my end.

4           MS. JUMP:   I'm going to forward it to you,

5   then me just send it.   This is the --

6           MR. SCHLESSINGER:   I'm sorry, Alissa, is

7   there -- you asked if there are people in the room here.

8   Are there people with you?

9           MS. JUMP:   Yeah, I'm sorry.   My paralegal

10  just came.

11          MR. SCHLESSINGER:   Sure.

12          MS. JUMP:   To bring me a document.   She's

13  not in the room.   She just -- if you see someone handing

14  me something off to the side, that's our paralegal

15  coming in through the door.

16          MR. SCHLESSINGER:   Okay.

17          MS. JUMP:   But just within our firm.   No one

18  else.

19          All right.   I am going to do my best to drop

20  a document into the chat.   My apologies if I encounter

21  error here.   I am not super experienced at doing this

22  via zoom for depositions.   So I will, as I said, I will

23  do me best but my apologies if there are any technical

24  errors here.

25          All right, one moment while I try a



1   different way to do it.

2          Okay.  There should be in the chat now a

3   two-page document.  All right, if we can mark that as

4   Exhibit 1.

5          Dan, can you open that?

6          (Deposition Exhibit No. 1 marked for

7          identification.)

8          MR. SCHLESSINGER:  No, I don't think I can.

9   Maybe Alyza can.

10         MS. JUMP:  I could e-mail it to you if that

11  would be better.

12         Hello there, Alyza.

13         MS. LEWIN:  Hi.  Let me see if it is

14  possible for me to open this.

15         MS. JUMP:  It's in PDF form.  Dan, I can

16  tell you it's the verifications that you sent us.

17         MR. SCHLESSINGER:  Okay.

18         MS. JUMP:  But I'm glad to send that to all

19  present here via e-mail if that's easier.

20         MS. LEWIN:  Why don't you do that.  I'm

21  going to try to see if I can get this open, but if you

22  could e-mail it, that would be easier.

23         MS. JUMP:  Yeah.  Let me do that.

24         MS. LEWIN:  You have my e-mail also?

25  Alyza@lewinlewin.com.



JOYCE BOIM                                November 07, 2022
BOIM vs AMERICAN MUSLIMS                            20

1              MS. JUMP:  I'm sure that we have it.  You

2    know, I don't know that I've e-mailed you for quite some

3    time.

4              MR. SCHLESSINGER:  I think it's on all of

5    the ECF.

6              MS. JUMP:  Yeah.

7              MS. LEWIN:  It's A-L-Y-Z-A at Lewin Lewin

8    dot com.

9              MS. JUMP:  Okay.  So your full name and then

10   at Lewin dot com.

11             MS. LEWIN:  Lewin, Lewin,

12   L-E-W-I-N-L-E-W-I-N dot com.

13             MS. JUMP:  Got it.  No and or any version of

14   the ampersand in there?

15             MS. LEWIN:  Nope.  Nope.

16             MS. JUMP:  And I'm just copying the court

17   reporter's address as well so that I can get that.

18             MS. LEWIN:  Oh, that's good so then I will

19   have that as well.

20             MR. SCHLESSINGER:  It's not come through

21   yet.

22             THE REPORTER:  Excuse me.  Do we want to go

23   off the record for a few minutes while we get that sent

24   out?

25             MS. LEWIN:  Why don't we do that.



1             MS. JUMP:  Sure, we can do that.

2             THE REPORTER:  We are going off the record.

3   It is 6:34 a.m. central time.

4               (Off the record from 6:34 a.m. to 6:37 a.m.)

5             THE REPORTER:  The time is approximately

6   6:37 a.m. central time.  We are back on the record.

7     Q.  (BY MS. JUMP)  Ms. Boim, can you see what's been

8   marked as Exhibit 1 --

9     A.  Yes.

10     Q.  -- to your deposition which is a two-page

11   document --

12     A.  Yes.

13     Q.  -- bearing your signature.

14     A.  Yes, I see it right now.

15     Q.  And that is titled Verification at the top with

16   the date of October 18, 2022; is that correct?

17     A.  Right.

18     Q.  I'm sorry, could you speak up, please.

19     A.  Yes, I saw it and read it.

20     Q.  Okay.  And the signature on both pages of that

21   document, is that your signature?

22     A.  Yes, it is.

23     Q.  Okay.  Is this the document that you referenced

24   earlier when you said you met with Mr. Landis?

25     A.  Yes.



JOYCE BOIM                                              November 07, 2022
BOIM vs AMERICAN MUSLIMS                                              22

1     Q.  Okay.  Well now we know how to get exhibits

2    across.  Okay.  And Ms. Boim, just by way of background,

3    because I know it's been a significant amount of time

4    since you initiated your first lawsuit, I was not

5    involved in that lawsuit and did not become involved

6    until 2017, the filing of this current lawsuit.  So that

7    we -- just so that we understand each other, I'm fine

8    with any references that you may wish to make to the

9    previous lawsuit.  Just understand that I don't have

10   that background and that institutional knowledge of that

11   lawsuit.  So I won't be --I may ask you more details for

12   that if you reference that suit since I was not involved

13   in the litigation of that one.

14        Okay, so in Exhibit 1, in your verification here

15   you reference -- on page 1 of this it refers to the

16   Plaintiffs' Objections and Answers to Defendant Jaber's

17   First Set of Discovery Requests; you see that?

18              MR. SCHLESSINGER:  Right here.  I think it's

19   the first one.  The Defendant Jaber's First Set of

20   Discovery.

21              We didn't have the document up when you

22   asking the question, Christina, but we do now, and Ms.

23   Boim has now read it.

24   Q.  (BY MS. JUMP)  Okay.  So Ms. Boim, you see that

25   that first page of the document refers to Plaintiffs'



1  Objections and Answers to Defendant Jaber's First Set of

2  Discovery?

3     A.  Yes, I see it.

4     Q.  And page 2 refers to Plaintiffs' Objections and

5  Answers to Entity Defendants' First Set of Discovery

6  Requests?

7     A.  Yes, I see it.

8     Q.  Okay.  And in both of those you attested that the

9  information is true and correct to the best of your

10 knowledge; is that right?

11    A.  Correct.

12    Q.  Okay.

13          MS. JUMP:  Dan, do you have any documents

14 with you right now.

15          MR. SCHLESSINGER:  No.  I have a pad of

16 paper but that's all I have.

17          MS. JUMP:  Okay.  How about if to maybe

18 streamline this a bit more, we take a break and I will

19 e-mail and send a few more additional documents, as well

20 as drop them in the chat, that we can mark as exhibits.

21 I can tell you in advance what they are going to be.

22 They're not surprises.  It's the responses to the

23 discovery -- the initial responses to the discovery that

24 we've sent, and then your supplemental responses.

25          MR. SCHLESSINGER:  Okay.



1          MS. JUMP:  As well as the complaint.  I'll

2    mark that as well.  The current complaint.

3          MR. SCHLESSINGER:  Okay.

4          MS. JUMP:  So I'll e-mail those as well as

5    drop them in, but so we're not staying on the record

6    while I do that, less there be technical errors, let me

7    go ahead and -- we can go off the record and I'll send

8    those around.

9          MR. SCHLESSINGER:  Alyza is suggesting maybe

10   we take a little longer break and then she can download

11   these documents and get them open.  I don't know how

12   this works exactly, but get them ready for you to

13   question Ms. Boim.

14         MS. JUMP:  Whatever works.  So do you want

15   to take a break until the top of the hour?

16         MR. SCHLESSINGER:  Do you think that's

17   enough, Alyza?

18         MS. LEWIN:  Yeah, I mean if you can send me

19   those e-mails, documents now, then I can during the

20   15 minutes download each of them, open them up, you know

21   and --

22         MS. JUMP:  That makes sense.

23         MS. LEWIN:  Okay?

24         MS. JUMP:  Yup.  Okay, we'll do that.

25         THE REPORTER:  Okay.  We are going off the



```
 1    record.  It is approximately 6:43 a.m. central time.

 2              (Off the record from 6:43 a.m. to 7:03 a.m.)

 3              THE REPORTER:  The time is approximately

 4    7:03 a.m. central time.  We are back on the record.

 5              MS. JUMP:  Thank you.  And, Dan, those

 6    documents came through.

 7              MR. SCHLESSINGER:  Yes.

 8              MS. JUMP:  Okay, good.

 9              MR. SCHLESSINGER:  There not, I mean, we

10    have to open each, you know, go to view individually as

11    you're questioning about it, so --

12              MS. JUMP:  Right.

13              MR. SCHLESSINGER:  Let us know when you want

14    us to look at a document.

15              MS. JUMP:  Okay.  Let's go to the complaint

16    which we have listed as the amended complaint marked as

17    Exhibit 2?

18              MR. SCHLESSINGER:  Okay.

19              MS. JUMP:  Let me know when you have that

20    up.  Yeah, it's up.

21              MS. JUMP:  Okay.

22        Q.  (BY MS. JUMP) Ms. Boim, do you see the document

23    that's marked Exhibit 2 to your deposition here?

24          (Deposition Exhibit No. 2 marked for

25    identification.)
```



```
 1      A.   Yes.  Yes, I see it.
 2             MR. SCHLESSINGER:  I don't know that we have
 3      the exhibit marked.
 4             MS. JUMP:  Designated as Exhibit 2.
 5             MR. SCHLESSINGER:  Okay.
 6      Q.   (BY MS. JUMP) All right.  Do you see this
 7      document ma'am?
 8      A.   Yes.
 9      Q.   Okay.  Do you recognize this document?
10      A.   Yes.
11      Q.   And what is this?  What is this document?
12             MR. SCHLESSINGER:  If you don't know, you
13      can say you don't know.
14      A.   I don't know.
15      Q.   Okay.  Fair enough.  Do you know if you've seen
16      this document before?
17      A.   Yes, I have.
18      Q.   Okay.  You see where the title of the document is
19      First Amended Complaint for Declaratory and Monetary
20      Judgment?
21      A.   Yes.
22      Q.   Okay.  What is your understanding of the purpose
23      of this document?
24      A.   Explaining what we're going for.
25      Q.   I'm sorry?
```



1    A.  I said, explaining what we are going for.

2    Q.  And when you say what you're going for, what do

3    you mean by that?

4    A.  What we've been doing.  What we've being looking

5    at.  What we've been trying to achieve, which we have

6    achieved.

7    Q.  Okay.  When you say what you -- this is the

8    document that shows what you have achieved, what do you

9    mean by that?

10    A.  It's the same thing that was bought up and now

11    it's with a different name.  But it's the same thing.

12    Q.  And what thing is that; just so we're clear for

13    the record?

14    A.  Who was responsible for all the pain we are going

15    through.  Just a different name.

16    Q.  Okay.  So whose responsible for the death of your

17    son?

18    A.  Hamas.  Hamas and all these people who back them.

19    Q.  Okay.  Let me back up just to make sure we're

20    clear on the record.  As I understand your testimony --

21    what you just said -- is that you believe that this

22    document which is designated as Exhibit 2, which is the

23    First Amended Complaint in this matter, in the 2017

24    matter, as I understand your testimony you've said that

25    that this is the document that shows what you're going



```
 1   for, meaning who you believe is responsible for the
 2   death of you son; is that correct?
 3       A.  It's right, reasonable, and I trust what my
 4   lawyers have said.
 5       Q.  Okay.  And I don't want to get into any
 6   communications that you've had directly with your
 7   lawyers, but when you say, you trust what your lawyers
 8   have said, do you mean in the creation of the complaint?
 9           MR. SCHLESSINGER:  You have to answer.
10       A.  Yes.
11       Q.  Okay.  Just trying to clarify what you're
12   referencing?  All right.  This document is 67 pages
13   long.
14           MR. SCHLESSINGER:  We can't see all 67
15   pages, obviously, so I assume you're not asking Ms. Boim
16   that here?  Just asking --
17           MS. JUMP:  I'm saying, right, that it is 67
18   pages long.  I was actually just checking.
19       A.  And I've referred to all the pages before.
20       Q.  I'm sorry.  You've referred to them before or
21   you've read them or -- I'm not sure I heard you
22   correctly.
23       A.  Yes.
24       Q.  Yes, that what?
25       A.  I've gone through them.
```



```
1     Q.  Okay.  Okay, we'll go through this in more detail

2   later but we can put this aside for now.  And then if

3   you could pull up what's been designated by the e-mail

4   as Exhibit 3 which is Plaintiff's Initial Disclosures.

5             MR. SCHLESSINGER:  Okay.  We have that.

6             MS. JUMP:  Okay.  And so that is a 4-page

7   document.  Do you have that as a 4-page document?

8             MR. SCHLESSINGER:  Well again, we -- if you

9   want us to page through it we can, but can only bring up

10  even -- we can't even bring up a whole page at a time.

11  We can only bring up a few lines.  So I'm willing to

12  stipulate that it's a 4-page document if that will

13  satisfy you.

14            MS. JUMP:  Okay.  And I just want to

15  understand how you're looking at it.  Are you looking on

16  the phone?

17            MR. SCHLESSINGER:  We're looking at it on

18  the same screen that's got the zoom pictures on, so it's

19  a collapsed kind of window for looking at the documents,

20  so we can't see --

21            MS. JUMP:  Okay.

22            MR. SCHLESSINGER:  If it were bigger, we

23  couldn't see 4 pages at once but we can't see all of 1

24  page.

25            MS. JUMP:  So from a technical point of
```



1    view, if I did screen sharing would that make it better

2    or worse?

3              MR. SCHLESSINGER:  Your technical savvy is

4    at least as good as mine.

5              MS. JUMP:  I'm willing to do screen sharing

6    but if it's just going to create yet another window and

7    make things harder to see, then it's pointless.

8              MR. SCHLESSINGER:  I think this is fine,

9    it's just if you ask questions about the entire document

10   at once we can't, you know, we'll have to leaf through

11   it.  If you ask --

12             MS. JUMP:  We'll go through it bit by bit.

13   Okay, that's fine.  We can do that.  I just wanted to

14   make sure that I'm not making any presumptions that are

15   inaccurate.

16   Q.   (BY MS. JUMP) All right.  So, Ms. Boim, this

17   document which has been designated as Exhibit 3 is

18   titled Plaintiffs' Initial Disclosure.  Do you see that

19   on the first page?

20             (Deposition Exhibit No. 3 marked for

21             identification.)

22   A.   Yes, I do.

23   Q.   Okay.  And have you seen this document before?

24   A.   Yes.

25   Q.   Okay.  And what is this document to the best of



1  your knowledge?

2      A.   I find it very reasonable and I trust my lawyers.

3           MS. JUMP:   Okay.   I am going to object as

4  nonresponsive.

5      Q.   (BY MS. JUMP) What is the document?   What is

6  this?

7      A.   It's stating who the people are who were

8  responsible who you are in this organization, which is

9  the same as the one before.   And that's all.   With a

10  different name.

11      Q.   Okay.   If you will look with me on the first page

12  of this document where there is a little I; do you see

13  that?

14      A.   Yeah.

15      Q.   Lower case I?

16      A.   Yeah.

17      Q.   Okay.   And that sentence there, the heading I

18  guess, for lack of better word, refers to the

19  individuals, the Plaintiffs --

20      A.   Yeah.

21      Q.   -- are currently of who are likely to have

22  discoverable information are the following; do you see

23  that?

24      A.   Yes, I do.

25      Q.   Okay.   How did you compile the names for that?



1      MR. SCHLESSINGER:  Object to the form of the

2  question.  Assumes facts not in evidence.

3      MS. JUMP:  Okay.

4      MR. SCHLESSINGER:  You can go ahead and --

5  Q.  (BY MS. JUMP) You can answer?

6  A.  These are all the names of the people who are

7  responsible now in the organization.

8  Q.  All right.  Why do you believe that Hatem Bazian

9  has information relevant to this case?

10  A.  It's a different name but they're involved with

11  the same thing.  It's no different than before.

12      MS. JUMP:  Okay, I'm going to object as

13  nonresponsive.

14  Q.  (BY MS. JUMP)  What makes you think that

15  Dr. Bazian specifically -- who is listed under item A on

16  page 1 -- what makes you think that Dr. Bazian

17  specifically has knowledge that is relevant to this

18  case?

19  A.  As I said before, it is the same organization but

20  under a different name.  They are all out for the same

21  thing.

22      MS. JUMP:  Okay.  And I'm going to object as

23  nonresponsive.

24  Q.  (BY MS. JUMP) I do understand -- I think I

25  understand what you are saying -- I just don't think



1    that it's getting -- it's directly matching with the

2    question, so let me try to phrase it a different way.

3          This document which is filed on behalf of you and

4    your husband, lists Hatem Bazian as an individual that

5    Plaintiffs believe have knowledge of information

6    relevant to the lawsuit.  Why do you believe -- or what

7    information do you believe that doctor -- that Hatem

8    Bazian has that's relevant to the lawsuit?  So what

9    information do you believe he has?

10   A.   He has information to raise funds to support the

11   Hamas and to work along with them.

12   Q.   Okay.  And what do you base that on?

13   A.   What I believe is no different.  It's a different

14   name -- a different name of the organization but they're

15   out for the same.

16          MS. JUMP:  Okay.  As to -- I'm going to

17   object as nonresponsive to that part.

18   Q.   (BY MS. JUMP)  As to Dr. Bazian specifically --

19   A.   To me they all represent the same thing.

20   Q.   And --

21   A.   Collect money and going and supporting Hamas.

22   Q.   So you believe Dr. -- that Hatem Bazian supports

23   Hamas; is that what you're saying?

24   A.   Yes.

25   Q.   Okay.  Ms. Boim, is it your testimony or is it



1    your belief that anyone who supports Hamas would be

2    responsible for the judgment from your original lawsuit?

3    A.  Yes.

4    Q.  Okay.  The second name listed here is Rafeeq

5    Jaber.

6    A.  I'll repeat the same thing.

7         MR. SCHLESSINGER:  Let her ask the question.

8         THE WITNESS:  Oh, I'm sorry.

9    Q.  (BY MS. JUMP) And you may know where I'm going.

10   Some of my questions are not cleverly disguised at all

11   but it makes the court reporter's job far more difficult

12   if we're guessing what the other one is going to say.

13   So to have a clean record we just need to wait for the

14   question and then I wait until you're done with your

15   answer, at least try, before I ask a new question.

16   A.  All right.

17   Q.  All right.  As to Rafeeq Jaber, who is listed

18   second here on this document, what information do you

19   believe he has that is relevant to this 2017 lawsuit?

20   A.  Raising funds to -- and help Hamas.

21   Q.  You believe that Rafeeq Jaber has raised funds to

22   help Hamas?

23   A.  Yes.

24   Q.  And that's why you believe his testimony is

25   relevant or he is relevant to this lawsuit?



1    A.   Yes.

2    Q.   And the third name, Abdelbasset Hamayel, why do

3    you believe that Mr. Hamayel -- what information do you

4    believe that Mr. Hamayel has that is relevant to this

5    lawsuit?

6    A.   He is supportive and raising funds for Hamas.

7    Q.   Okay.  Any specific information that you have

8    that supports your believe that Mr. Hamayel is raising

9    fund and supportive of Hamas?

10   A.   Stripes don't change.

11   Q.   What do you mean by that?

12   A.   I mean that I feel he is supportive of Hamas,

13   helping them, and raising funds for them.

14        MS. JUMP:  And I'm going object as

15   nonresponsive.

16   Q.   (BY MS. JUMP)  I did here that answer.  I'm

17   trying to figure out what -- why you believe that?  What

18   facts might you have that support that belief?

19   A.   I've read the information.

20   Q.   What information is that?

21   A.   From the pages you're referring to.  And this is

22   my belief and this is what I feel.  That they are --

23   it's the same people we dealt with before who are

24   supportive and raise funds for Hamas.

25   Q.   Okay.  And when you say the information that I am



1  referring to, do you mean within this Plaintiffs'

2  Initial Disclosure?

3     A.  Yes.

4     Q.  Okay.  So I'm asking you what information you

5  have that caused these names to appear in this document.

6  So yes this document is created and yes, we are talking

7  about it.  I'm asking why the document has these names

8  in it?  What is it that you that you believe Mr. Hamayel

9  knows.  What facts support your belief that Mr. Hamayel

10 has information relevant to this lawsuit?

11    A.  I trust my lawyers who've come up with this

12 information.

13    Q.  Okay.  Do you have any independent knowledge of

14 why Mr. Hamayel or what information Mr. Hamayel has that

15 would be relevant to this lawsuit?

16    A.  I realize -- I feel it's reasonable and I trust

17 my lawyers.

18           MS. JUMP:  I'm going to object as

19 nonresponsive.

20    Q.  (BY MS. JUMP)  Let me ask you again.  Do you

21 personally have any specific factual knowledge, any

22 knowledge of any specific facts --

23    A.  I've read it here and I know what I read.

24    Q.  Okay.  And I need you to just let me finish

25 asking the question.



1          Do you personally have any specific factual

2     knowledge supporting your belief that Abdelbasset

3     Hamayel raises funds and supports Hamas?

4     A.   No.

5     Q.   Okay.  Do you specifically have any personal

6     knowledge of any facts supporting your belief that Hatem

7     Bazian raises funds for or supports Hamas?

8     A.   No, but I trust my lawyers.

9     Q.   Okay.  Do you have any personal knowledge of any

10    facts that support your belief that Rafeeq Jaber raises

11    funds for or supports Hamas?

12    A.   No, but I trust my lawyers.

13    Q.   As to Osama Abuirshaid who is listed in item D at

14    the bottom of the page 1 of this document, do you have

15    any specific personal knowledge of facts supporting your

16    belief as to what Osama Abuirshaid knows that would be

17    relevant to this lawsuit?

18    A.   No, but I trust my lawyers.

19    Q.   Okay.  And then as to on page 2 -- and I'll give

20    you a minute to get there.  The top name listed there is

21    Sufian Nabhan; do you see that?

22    A.   Yes, I do.

23    Q.   Do you have any personal factual -- any knowledge

24    personally of any facts supporting your belief that

25    Sufian Nabhan has information relevant to this lawsuit?



1      A.   No, I don't but I trust my lawyers.

2      Q.   The next name is Imad Sarsour.

3      A.   No, but I trust my lawyers.

4      Q.   I need you to wait for the question, ma'am.  Do

5  you have any knowledge personally of any facts

6  supporting your belief that Imad Sarsour has any

7  information relevant to this lawsuit?

8      A.   No, I don't but I trust my lawyers.

9      Q.   Okay.  The next name listed here on page 2 is

10  Kifah Mustapha.  Do --

11      A.   No --

12      Q.   -- do you personally --

13      A.   No --

14      Q.   I'm sorry.  Just wait for the questions, please.

15  Do you personally have any information or facts

16  supporting your belief that Kifah Mustapha has any

17  information relevant to this lawsuit?

18      A.   No, I don't but I trust my lawyers.

19      Q.   As to Sabri Samirah also listed on page 2 of this

20  document, do you, Ms. Boim, have any personal knowledge

21  of any facts supporting your belief that Sabri Samirah

22  has any knowledge relevant to this lawsuit?

23      A.   No, I don't but I trust my lawyers.

24      Q.   The next name listed here is Fawaz Mushtaha.

25           MS. JUMP:  And before we go forward I just



1  want to clarify with our court reporter.  All of these

2  names are included in the document.  Do you want me to

3  spell them as we go along.

4          THE REPORTER:  I have the document pulled up

5  here so I have the spellings.

6          MS. JUMP:  Okay.

7          THE REPORTER:  Thank you.

8  Q.  (BY MS. JUMP) All right.  So, Ms. Boim, back to

9  the document, the next name Fawaz Mashtaha.  Do you,

10 Ms. Boim, have any personal knowledge as to information

11 that Fawaz Mushtaha would have that is relevant to this

12 lawsuit?

13 A.  No, I don't but I trust my lawyers.

14 Q.  The next name is Oussama Jammal.  And, Ms. Boim,

15 do you have any personal knowledge as to information

16 that Oussama Jammal may have that is relevant to this

17 lawsuit?

18 A.  No, I don't but I trust my lawyers.

19 Q.  The next name listed is Magdi Odeh.  Ms. Boim, do

20 you have any information or know of any specific facts

21 supporting your belief that Mr. -- that Magdi Odeh has

22 any information relevant to this lawsuit?

23 A.  No, I don't but I trust my lawyers.

24 Q.  The next name is Kristin Szremski and, Ms. Boim,

25 do you have any personal knowledge of any facts or



```
1    information supporting your belief that Ms. Szremski has

2    information relevant to this lawsuit?

3        A.   No, I don't but I trust my lawyers.

4        Q.   The next name is Raeed Tayeh.  And, Ms. Boim, do

5    you have any personal knowledge of any facts or

6    information supporting your belief that Raeed Tayeh has

7    information relevant to this lawsuit?

8        A.   No, I don't but I trust my lawyers.

9        Q.   Ms. Boim, the next name and the last one on page

10   2 of this document is Hani Hasan.  Do you have any

11   personal knowledge as to facts or information supporting

12   your belief that Hani Hasan has any information relevant

13   to this lawsuit?

14       A.   No, I don't but I trust my lawyers.

15       Q.   Okay.  Page 3 of this document, the first name

16   listed there is Hasan Sabri.  And, Ms. Boim, do you have

17   any personal knowledge or information or facts

18   supporting your belief Hasan Sabri has any information

19   relevant to this lawsuit?

20       A.   No, I don't but I trust my lawyers.

21       Q.   Okay.  The next name is Salah Sarsour.  And, Ms.

22   Boim, do you have any personal knowledge of any facts or

23   information supporting your belief that Salah Sarsour

24   has information relevant to this lawsuit?

25       A.   No, I don't but I trust my lawyers.
```



1    Q.   The next name is Yousef Shahin.  Ms. Boim, do you

2  have any information or personal knowledge of any

3  information or facts supporting your belief that Yousef

4  Shahin has information relevant to this lawsuit?

5    A.   No, I don't but I trust my lawyers.

6    Q.   And the next name is Munjed Ahmed.  And,

7  Ms. Boim, do you have any personal knowledge of any

8  facts or information supporting you belief that Munjed

9  Ahmed has information relevant to this lawsuit?

10   A.   No, I don't but I trust my lawyers.

11   Q.   Ms. Boim, the next portion of this document which

12 begins with the two lower case I's in about the middle

13 of page 3 ask for documents that Plaintiffs may use to

14 support this case.  Are you personally in possession of

15 any documents that you believe are responsive to that

16 question and relevant to this lawsuit?

17   A.   I don't but I trust my lawyers.

18   Q.   Are you aware specifically of any documents, even

19 if not in your possession, that you believe are relevant

20 to this lawsuit or support your claims in this lawsuit?

21   A.   I don't have documents but I trust my lawyers

22 with their documentation.

23   Q.   Okay.

24            MS. JUMP:  And if we could go to what was

25 designated via the e-mail as Exhibit 4 in this



1  deposition, which is Plaintiffs' Response.  And just to

2  clarify for Counsel, that's the original response not

3  the supplemental one to Defendant Jaber's discovery

4  requests.

5            (Deposition Exhibit No. 4 marked for

6            identification.)

7            MR. SCHLESSINGER:  We have that up.

8       Q.   (BY MS. JUMP)  Okay.  Ms. Boim, do you see this

9  document that has the title Plaintiffs' Responses and

10  Objections to Defendant Rafeeq Jaber's Discovery

11  Requests?

12      A.   Yes, I do.  I see it.

13      Q.   And, Ms. Boim, have you seen this documents

14  before?

15      A.   I've seen these documents before.

16      Q.   And you see that on the first and second line of

17  this document it states that Plaintiff Stanley Boim

18  submits the following objections and answers; do you see

19  that?

20      A.   Yeah.

21      Q.   Okay.

22      A.   Yes, I see it.

23      Q.   All right.  And when we went over Exhibit 1 to

24  this deposition which was the verification pages that

25  contained your signatures, you verified these answers;



JOYCE BOIM                                        November 07, 2022
BOIM vs AMERICAN MUSLIMS                                        43

1   is that correct?

2       A.   Yes.

3       Q.   Okay.   Yet this are adjust to your husband,

4   correct?

5       A.   I didn't hear you.   Excuse me?

6       Q.   These are adjust to your husband, correct?

7       A.   Yes.

8       Q.   Okay.   Why did you verify these answers instead

9   of your husband?

10      A.   My husband fell and broke a hip.   He was in the

11  hospital.   He is in rehab and he's not available.   But I

12  discussed these things with him and he agrees with the

13  lawyers 100 percent.   And trusts the lawyers.

14      Q.   When did he fall, Ms. Boim?

15      A.   What?

16      Q.   When did your husband fall?

17      A.   It was September 10th.   So it will be almost nine

18  weeks ago and he's still in rehab.

19      Q.   And I am sorry to hear that.   As I mentioned, we

20  are amendable to and have agreed to reschedule his

21  deposition depending on his recovery.   So it sounds like

22  he is out of the hospital; is that correct?

23      A.   Yes.

24      Q.   Not -- still rehabilitating but out of the

25  hospital?



```
 1      A.  Yeah.  Yes.

 2              MR. SCHLESSINGER:  Just to clarify, he's in

 3      a rehabilitation center.

 4              MS. JUMP:  Thank you.

 5      Q.  (BY MS. JUMP) Okay.  So if you could turn with me

 6      to page 4 of this document.

 7              MR. SCHLESSINGER:  Okay, we're there.

 8      Q.  (BY MS. JUMP) Okay.  Ms. Boim, on page 4 there's

 9      the question marked Interrogatory No. 1.  Do you see

10      where that is?

11      A.  Yeah.  I see that any.

12      Q.  Okay.  And that question asks for any and all

13      individuals who were involved in responding to these

14      interrogatories and their request for production and

15      admission; do you see that question?

16      A.  Yes.

17      Q.  The responses here lists just your attorneys.

18      Ms. Boim, did you provide any independent information

19      that went into these responses?

20      A.  Yes.  This was previously -- these were

21      responses.

22      Q.  These are responses, correct.  And my question,

23      just to clarify is, whether you provided any information

24      personally that went into forming these responses?

25      A.  If it was from the previous, yes.
```



1    Q.   What does that -- I'm sorry -- what does that

2    mean?

3    A.   We gave information.  Whatever was submitted, I

4    trust my lawyers.

5    Q.   Okay.  Are you talking about information that

6    your gave in the original lawsuit, or did you

7    independently give information in this lawsuit for these

8    responses?

9    A.   No.  It was from the previous.

10    Q.   Okay.

11    A.   And with this -- these responses, I trust my

12    lawyers.

13    Q.   All right.  The second question there labeled

14    Interrogatory 2 which is still on the same page, on

15    page 4; do you see that?

16    A.   Yes.

17    Q.   Okay.  And then I ask for any people with

18    knowledge of facts supporting the allegations contained

19    in your complaint; do you see that?

20    A.   Yes.

21    Q.   Okay.  And are you aware of anyone we did not

22    already discuss when we went through the initial

23    disclosures who may have information relevant to support

24    --

25    A.   No.



1     Q.  -- please let me finish --  relevant to support

2   your allegations or information which is relevant to

3   this case?

4     A.  No, I don't.  I trust my lawyers have given

5   whatever information is necessary.

6     Q.  Okay.  Let's move if we can to what is designated

7   in the e-mail as supplemental responses, Exhibit 6.

8              (Deposition Exhibit No. 6 marked for

9              identification.)

10             MR. SCHLESSINGER:  Okay.  I think we have.

11  It's called Plaintiffs' Supplemental Answers To The

12  Entity Defendants' First Set Of Discovery Requests.

13             MS. JUMP:  Yeah, and I apologize, it looks

14  like that's just the Entity Defendants' one but we can

15  -- we'll go through this one now.  Yes, that's what it

16  is.

17    Q.  (BY MS. JUMP) Okay, Ms. Boim, do you see this

18  document that we just referenced?

19    A.  Yes.  Yes, I see it.

20    Q.  And I'll just represent that this is a ten page

21  document titled Plaintiffs' Supplemental Answers To The

22  Entity Defendants' First Set Of Discovery Requests; do

23  you see that?

24    A.  Yes.

25    Q.  And this supplemental response here to



 1   Interrogatory No. 5, which is on page 2; do you see

 2   that?

 3       A.   Yes, I see it.

 4       Q.   Okay.  So there's an objection here and I'm not

 5   going to ask you to speak to the objection.  But the

 6   answer then is, the Boims state that AMP appears to have

 7   been founded shortly after judgement was entered against

 8   the defendants --

 9              MR. SCHLESSINGER:  I'm sorry.  Christina,

10   we're not following where you're reading.  Can you --

11              MS. JUMP:  Yeah.  On page 2 under

12   Interrogatory No. 5.

13              MR. SCHLESSINGER:  Oh, it's a sentence --

14   you didn't start at the beginning of the sentence.

15   Okay, I got it.

16              MS. JUMP:  Right.  I -- yeah, I cut out the

17   subject to and without waiving by just referencing the

18   objection.

19              MR. SCHLESSINGER:  I wasn't objecting to

20   your accurately reading the question.  It just made it a

21   little more difficult to find where you were reading

22   from.

23              MS. JUMP:  Sure.

24       Q.   So, Ms. Boim, this document here under

25   interrogatory No. 5, states, the Boims state that AMP



JOYCE BOIM
BOIM vs AMERICAN MUSLIMS

November 07, 2022
48

1  appears to have been founded shortly after the judgment

2  was entered against the defendants in the original Boim

3  lawsuit.  Do you see where that statement is?

4      A.  Yes, I see it.

5      Q.  Okay.  Do you have any independent facts to

6  support the statement contained in this document?

7      A.  No, but I trust my lawyers.

8      Q.  Okay.  If you'll look with me on that same page,

9  page 2.  In the paragraph that begins Hamayel worked for

10  IAP; do you see that paragraph?

11      A.  Yeah.

12      Q.  Okay.  The third sentence in that paragraph --

13      A.  Yes.

14      Q.  After IAP ceased operating under that name,

15  Hamayel went to work for AMP; do you see that?

16      A.  Yes, I see it.

17      Q.  Do you know when Mr. Hamayel began working for

18  AMP?

19      A.  I don't have that information, but I trust my

20  lawyers.

21      Q.  Do you have any reason to believe that

22  Mr. Hamayel transferred any assets to AMP from IAP?

23      A.  I don't.  I trust my lawyers.

24      Q.  Okay.  The next paragraph refers to Osama

25  Abuirshaid, that's at the bottom of page 2 and the top



1   of page 3; do you see that paragraph?

2       A.   Yes.

3       Q.   And the third sentence of that paragraph states

4   after IAP stopped operating under that name, Abuirshaid

5   assumed many of the same functions with AMP; do you see

6   that?

7       A.   Yes.

8       Q.   And that's the very last two lines of page 2 just

9   for reference.  Do you have any personal knowledge of

10  when Dr. Abuirshaid began working for AMP?

11      A.   I don't, but I trust my lawyers.

12      Q.   On the top of page 3, the first paragraph there

13  and in the first full sentence on that page which is

14  three lines down on that page, it begins Abuirshaid

15  assisted with the formation and early activities of AMP;

16  do you see that?

17      A.   Yes.

18      Q.   Do you have any personal knowledge of how

19  Dr. Abuirshaid may have assisted with the formation and

20  early activities of AMP?

21      A.   I don't, but I trust my lawyers.

22      Q.   Okay.  And the next paragraph begins with the

23  word Sarsour; do you see that.

24      A.   Yes.

25      Q.   Okay.  And this is referring from above to Salah



JOYCE BOIM                                          November 07, 2022
BOIM vs AMERICAN MUSLIMS                                          50

 1   Sarsour.  And the second sentence here states, after IAP

 2   stopped operating under that name, Sarsour helped form

 3   AMP/AJP, consulting on the organization, recruiting

 4   supporters, and planning or participating in conventions

 5   similar to those of IAP; do you see that?

 6       A.  I do.

 7       Q.  Do you have any personal knowledge of how Salah

 8   Sarsour may have helped form AMP/AJP?

 9       A.  I don't.  I trust my lawyers and this is eating

10   me up alive.

11       Q.  Do you have any person knowledge of what

12   Mr. Sarsour may have done regarding consulting on the

13   organization?  The organization meaning AMP/AJP.

14       A.  I don't, but I trust my lawyers.

15       Q.  Do you have any personal information or knowledge

16   of any facts personally that Salah Sarsour had in anyway

17   transferred any assets of IAP to AMP?

18       A.  I don't, and I trust my lawyers.

19           MR. SCHLESSINGER:  Christina, I'm just gonna

20   object to this continuing line of questioning.  I think

21   it's obvious that you are not getting any discoverable

22   information out of this and that it's harassment.  It's

23   really disturbing to Ms. Boim and I would ask that you

24   discontinue this line of questioning.  It's not useful

25   in this case at all and it is just for harassment.



1      MS. JUMP:  It is not just for harassment.  I

2  have no problem with us taking a break if you'd like to

3  take a break if that would help her.  But seeing as how

4  these are very fine responses, I do have a right, and

5  quite frankly, an obligation to ask about her personal

6  knowledge as to each of these questions.

7      MR. SCHLESSINGER:  Well as I've told you

8  before, we're certainly willing to stipulate that she

9  has no personal knowledge of this and I don't see the

10 point of continuing to subject Ms. Boim to this.

11     MS. JUMP:  When you say that you'd stipulate

12 that she has no personal knowledge to this, what is that

13 referring to?

14     MR. SCHLESSINGER:  To the facts that are

15 recited in these responses.

16     MS. JUMP:  So you'd stipulate that she has

17 no personal knowledge relating to any of the facts

18 recited in the supplemental responses or the original

19 responses to defendants' discovery requests?

20     MR. SCHLESSINGER:  Yeah.

21  Q.  (BY MS. JUMP) Ms. Boim, just to be clear, do you

22 agree with that?

23  A.  Yes, I do.

24  Q.  Okay.  Why don't we take a break.

25  A.  Won't make a difference.



1    Q.  I'm sorry?

2    A.  I said it won't make a difference.

3    Q.  What won't a difference, ma'am?

4    A.  Taking a break.  Reading all these things.  It's

5  -- it breaks my heart.

6    Q.  And I just want to make sure that I understand

7  where you're coming from and what you're saying.  Is it

8  -- what about it are you saying breaks your heart to

9  read?

10   A.  Just looking at what these people are doing, are

11 trying to do, in continuing keeping Hamas alive.  I know

12 what comes from it.

13   Q.  Okay.

14   A.  And I trust my lawyers with all this information.

15   Q.  I do respect the trust that you have for your

16 lawyers and I most certainly recognize the pain from

17 losing a child.  I will just say on a personal note, I

18 Have two children and I'm not going to pretend that I

19 can imagine what that feels like and so I am

20 (Inaudible)to say that I don't know what that feels

21 like.

22   A.  You can't imagine.

23   Q.  So you most certainly have my sympathies on the

24 loss of your son and I'm not doubting the pain of that

25 loss or the fact or the existence of that loss at all.



1    The questions that I'm asking are just as they

2    relate specifically to my clients who were not involved

3    in the first lawsuit and what information there may be

4    or that you have personally to connect my clients to the

5    first lawsuit. So if I understand it correctly, you and

6    your attorney are both saying that you don't personally

7    know of any facts that connects AMP/AJP or Rafeeq Jaber

8    to the first lawsuit; is that correct?

9            MR. SCHLESSINGER: That is correct.

10           MS. JUMP: Okay.

11   Q.   (BY MS. JUMP) I know that your husband is not

12   here right now, and I'm not going to ask that you swear

13   to anything, you know, under oath as him. Are you -- do

14   you believe that your husband has any more personal

15   knowledge than you do?

16   A.   No. Absolutely not. And he also trusts the

17   information that the lawyers have and trusts the

18   lawyers.

19   Q.   Okay. I do appreciated your candor on that.

20           MS. JUMP: Let's go ahead and take a break

21   until the top of the hour.

22           MR. SCHLESSINGER: Fine.

23           MS. JUMP: Okay.

24           THE REPORTER: The time is 7:37 a.m. central

25   time. We are off the record.



JOYCE BOIM
BOIM vs AMERICAN MUSLIMS

November 07, 2022
54

```
 1            ( Off the record from 7:37 a.m. to 8:00 a.m.)
 2            THE REPORTER:  The time is approximately
 3   8:00 a.m. central time. We are back on the record.
 4      Q.  (BY MS. JUMP) Okay.  Ms. Boim, I know that you
 5   and your counsel stipulated before our break and agreed
 6   that you do not have any personal knowledge as to the
 7   discovery responses that we were discussing earlier.
 8   Would the same be true to the first amended complaint
 9   that we discussed earlier?
10            MR. SCHLESSINGER:  It's not -- I don't have
11   the document in front of me at the moment but my
12   recollection is that that includes some paragraphs
13   regarding what happened to David Boim.
14            MS. JUMP:  Yes.
15            MR. SCHLESSINGER:  And we're not stipulating
16   that the Boims have no knowledge of that.  They clearly
17   do, but anything regarding the links between your
18   clients and this matter and the judgment defendants, I
19   think we're willing to stipulate that the Boims have no
20   personal knowledge of.
21      Q.  (BY MS. JUMP) Ms. Boim, does that sound right to
22   you?
23      A.  Yes, it does.
24      Q.  Okay.  And just so that we are clear, that is one
25   of the documents that we did e-mail which is designated
```



1   as Exhibit 2.

2        MR. SCHLESSINGER:  Is that something you

3   want us to pull up now?

4        MS. JUMP:  Yeah.  Just -- we're not going to

5   go through all paragraphs, but I just want to clarify

6   something here.

7        MR. SCHLESSINGER:  Okay.

8        MS. JUMP:  And just let me know when you

9   have that pulled up.

10        MR. SCHLESSINGER:  Okay, we've got it.

11        MS. JUMP:  Okay.

12   Q.  (BY MS. JUMP) So, Ms. Boim, we're talking about

13   what's been designated as Exhibit 2, which is the First

14   Amended Complaint For Declaratory And Monetary Judgment

15   which is against AMP, AJP, as well as Rafeeq Jaber; do

16   you see that document?

17   A.  Yes, I do.

18   Q.  Okay.  And the introduction paragraphs that are

19   on page 1 and 2 of this document which speak to the

20   death of your son and they speak to the first lawsuit

21   that you filed against other parties.  You have

22   knowledge as to those paragraphs; is that correct?

23   A.  Yes, I do.

24   Q.  Okay.  Would it be correct then that you do not

25   have knowledge personally as to any allegations that



1  take place in time from that point forward.  From the

2  end of the fist lawsuit going forward?

3     A.  That's true and I trust my lawyers.

4           MS. JUMP:  Okay.  And so, Counsel, would

5  that be an accurate representation of the stipulation

6  that from the time period, I guess, of the end of the

7  first Boim action going forward Ms. Boim does not have

8  any personal knowledge of the facts alleged that pertain

9  to after that judgment?

10          MR. SCHLESSINGER:  I believe that is true.

11  Let me -- can I just --

12          MS. JUMP:  Yes.

13          MR. SCHLESSINGER:  -- look at these

14  allegations.

15          MS. JUMP:  Uh-huh.

16          MR. SCHLESSINGER:  Yes, we're willing to

17  stipulate to that.

18          MS. JUMP:  Okay.

19     Q.  (BY MS. JUMP)  And, Ms. Boim, does that make

20  sense to you as well?

21     A.  Yes, it does.

22     Q.  Okay.  And to the best of your knowledge, would

23  that also be true to your husband?

24     A.  Yes.

25          MS. JUMP:  And, Counsel, is it stipulation



1    as well -- and if you need to confer with him separately

2    and get back, that's fine --  but is it your

3    understanding as well that Mr. Boim also does not have

4    any personal knowledge as to anything contained in the

5    complaint from the time period that the first judgment

6    forward?

7                    MR. SCHLESSINGER:  Yes.

8                    MS. JUMP:  Okay.

9         Q.  (BY MS. JUMP) Ms. Boim, other than that, and the

10   facts that are contained in the complaint we just

11   referenced, and your statement as well as your counsel's

12   statement, are there any reasons that you specifically

13   wanted to sue AMP/AJP?

14        A.   They are, AMP was responsible for my son's death,

15   and AJP is continuing their work.  And I trust my

16   lawyers.

17        Q.   And would the same be true of Rafeeq Jaber?  Is

18   there any particular reason that you want to sue Rafeeq

19   Jaber beyond what you justified earlier and that your

20   counsel just stipulated to?

21        A.   I don't know anything personally about him, but I

22   trust my lawyers with their information and with hat

23   they have discovered.

24        Q.   Ms. Boim, what efforts did you and your husband

25   take to collect the money from the defendants in the



1    first lawsuit?

2    A.  What efforts?  We were given it.  We won.

3    Q.  Right.  So --

4    A.  But we --

5    Q.  Sorry, I --

6    A.  Yeah.

7    Q.  I'll wait.  I'm not trying to talk over you.  I'm

8    sorry about that.  We have a slight delay back and forth

9    on the feed here.

10   A.  We weren't awarded the complete -- what we -- we

11   weren't awarded the complete sum.

12   Q.  Okay.  What did you and your husband do, if

13   anything, to try to recover that money?  To try to get

14   that money that you were award from the original

15   defendants?

16   A.  We had our lawyers --

17   Q.  Okay.

18   A.  -- deal with it.

19   Q.  So you relied on the lawyers for a how to go

20   about recovering the judgment?

21   A.  Yes.

22   Q.  Anything that you or your husband did to your

23   knowledge outside of what was done by the lawyers or

24   initiated by the lawyer to recover on that judgment?

25   A.  No.  There was nothing.  What we did -- we trust



1     our lawyers.

2         Q.  And what do you intend to accomplish with this

3     current lawsuit against AMP/AJP and Rafeeq Jaber?

4         A.  To stop them from supporting Hamas, collecting

5     monies from Hamas, and keeping them alive in what

6     they're doing.  To stop the support.

7         Q.  And when you say keeping them alive in what

8     you're doing, are you talking about keeping Hamas going

9     forward in what it's doing?

10        A.  Absolutely.  Supporting them, raising funds, and

11    keeping them going.  And causing the pain that we are

12    suffering to other people.

13        Q.  And just so I'm clear, ma'am, what other people

14    are you referring to?

15        A.  Any individual.  Any other individual.  Any other

16    family.  To cause the pain and suffering that we have

17    gone through and still are.  But we go on.  As I said,

18    they killed my son but they didn't destroy our family.

19    But the pain in our hearts, daily, is still there.  In

20    fact, yesterday I was at his grave.

21             A boy of 16, 17, who had his whole life ahead of

22    him.  A whole life ahead of him.  A smile as big as can

23    be.  Happy.  Friendly.  Every boy, everyone of his

24    friends -- David was my best friend.  David was my best

25    friend.  That's all we hear.  That's all we've heard.



JOYCE BOIM                                    November 07, 2022
BOIM vs AMERICAN MUSLIMS                                    60

1    And on the anniversary of his death 15, 20 boys come to

2    his grave.  And we still -- the love is still there as

3    if David was alive now.

4          But I don't want any other families to go through

5    this heart ache and suffering, because a lot of families

6    that I know have been destroyed because of Hamas's

7    bullets.  We are strong.  My husband and I are strong.

8    My children are strong.  We go on but the pain is still

9    there.  And a lot of families are completely, completely

10   destroyed.  They don't function.  I know many.  And that

11   pain never goes away.

12         As I said, what's inside, no one has to know.  I

13   try to have a smile and talk positively.  But the pain

14   is there.  And as I said, I don't want to allow or know

15   that I haven't done all that I can do to stop this and

16   keep this pain and suffering from other families.

17   Q.  Is there any thing else that you think we need to

18   know about your lawsuit against these defendants?

19   A.  They have to be stopped, and not encouraged, and

20   not financed, and not helped to go on.

21   Q.  When you say they need to be stopped, are you

22   referring the AMP/AJP and Rafeeq Jaber or are you

23   referring to Hamas?

24   A.  The whole package.  Cause it's all one package.

25   Q.  So you consider them one?



JOYCE BOIM                                        November 07, 2022
BOIM vs AMERICAN MUSLIMS                                        61

1    A.   One, yes.

2    Q.   Okay.

3    A.   Just a life was wiped out.  He wanted to be a

4    doctor.  He wanted to do so much good.  And now I have

5    to go visit a grave.

6    Q.   Ms. Boim, if you'd like, let me know if there is

7    anything else that you would like to say about your son

8    or regarding your son.

9    A.   He was a wonderful boy.  A boy full of life, joy,

10   happiness.  He enjoyed food.  He had a big round face

11   and a big smile.  And everyone, anyone who met him,

12   loved him.

13       He would get up early when he had vacation to

14   volunteer on the ambulance to be able to help people.

15   He made sure to get up early, early as possible when he

16   had vacations to get to the -- where he volunteered on

17   the ambulance to make sure he was picked to go.  That

18   was his dreams.

19       He loved people.  Always happy.  Friends.  My

20   house was always full of boys.  They knew they came to

21   my house, there always candy and refreshments and they

22   loved -- they'd know our house was open at -- to this

23   day, they know.  It's always opened.

24       And he was a wonderful, wonderful boy.  In fact,

25   in one of the places he was connected, a dining room is



```
 1   there in his name.  I mean, very apropos because he was

 2   very chubby and very, very happy.  And so -- my

 3   neighbors -- I remember him, you know, running up and

 4   down the steps.  I can still hear his footsteps.

 5        And everyone only had positive, positive remarks

 6   about him.  In fact, two weeks ago, the principal's

 7   daughter happened to be in my daughter's neighborhood

 8   and she said to me, she says, you know, I still feel my

 9   father has guilt that maybe they should have been more

10   careful.  But everybody loved him.  Everybody.  There

11   isn't anyone that you mention David Boim that a big

12   smile doesn't, doesn't cover a their face.  And it's

13   such a pity.  Such a pity.

14             MR. SCHLESSINGER:  Christina, can we take a,

15   like a 30 second break?  I don't want to break the top

16   of --

17             MS. JUMP:  Yes.  Yup.

18             MR. SCHLESSINGER:  Great.

19             THE REPORTER:  Okay.  The time is

20   approximately 8:15.  We are going off the record.

21             (Off the record from 8:15 a.m. to 8:16 a.m.)

22             THE REPORTER:  Okay.  The time is

23   approximately 8:16 a.m. central time.  We are back on

24   the record.

25             MS. MORRISON:  Christina, I think you are
```



1   still muted.

2           MS. JUMP:  Thank you.  Sorry, about that.

3           All right, Counsel, at this point what I'd

4   like to do is suspend the deposition for the moment

5   until further notice.  So we would not plan on coming

6   back the rest of the day today.  Not coming back

7   tomorrow.  But I do reserve the right to resume the

8   deposition if facts come out during discovery that would

9   warrant that.

10          MR. SCHLESSINGER:  I'm not going to comment

11  on your reservation but I understand what you're saying.

12          MS. JUMP:  Uh-huh.

13          MR. SCHLESSINGER:  And we're fine with

14  ending now at least, you know, my hope and expectation

15  would be that we would end now and not have to come

16  back.  But if there's reasons that you can bring to our

17  attention, we certainly want to consider it in the

18  future.

19          MS. JUMP:  All right.

20     Q.  (BY MS. JUMP) Well then with that, Ms. Boim, I

21  appreciate your time.  I appreciate your patience with

22  the questions.  And I appreciate you speaking about your

23  son, which I can only guess would be probably very hard

24  as well as, I don't want to say enjoyable, but --

25     A.  No. Oh, yeah.



1    Q.  That you enjoy speaking about him?

2    A.  Right.  Right.  And another thing I wanted to

3  bring up -- all right.  Forget it.  Okay.

4    Q.  All right.  If you are being shushed, that's

5  fine.  We can stop.  If you have anything to add, Ms.

6  Boim, I am perfectly willing to listen to it.  If there

7  is anything else you would like to add to your

8  testimony.

9          MR. SCHLESSINGER:  I'm not going to -- I

10  would wait for a question.  I wouldn't just --

11          THE WITNESS:  No, it's--

12          MR. SCHLESSINGER:  -- volunteer information.

13          THE WITNESS:  You had mentioned about the

14  organization and all.  But about different -- about

15  monies and all but we haven't collected what was granted

16  us; $154,000,000.

17          MS. JUMP:  Uh-huh.

18          THE WITNESS:  That's another thing.

19          MS. JUMP:  Yeah.

20          THE WITNESS:  That the monies shouldn't go

21  towards terrorism, Hamas, but to us.  To our lawyers to

22  collect.

23          MS. JUMP:  Okay.  I think with that, we will

24  go ahead and end for today.

25          MR. SCHLESSINGER:  We'll go --

1            MS. JUMP:  Ms. Lopez, we were scheduled to

2 continued tomorrow, but we won't need to do that.  We'll

3 just suspend it and see if we need to take up at a later

4 date.

5            THE REPORTER:  Okay.

6            Does the witness want to read and sign the

7 deposition or do you waive --

8            MR. SCHLESSINGER:  Yes.

9            THE REPORTER:  Yes, you do --

10            MR. SCHLESSINGER:  No. We will reserve

11 signature and I don't know how we would go about getting

12 copy of the video and the transcript.

13            MS. JUMP:  I can send the video.  I'll get

14 the video through zoom.

15            THE REPORTER:  I can get you the transcript.

16 Did -- would you like that electronically e-mailed to

17 you?

18            MR. SCHLESSINGER:  Yeah.

19            THE REPORTER:  Okay.  Can I get your e-mail,

20 please?

21            MR. SCHLESSINGER:  My e-mail is dsclessinger

22 -- do you have my -- the spelling of my name?

23            THE REPORTER:  Yes, I do.

24            MR. SCHLESSINGER:  At Jaszczuk dot com.

25            THE REPORTER:  Okay.  I will -- once this is



1   ready we'll go ahead and send it out.  The firm will

2   send out notification and we'll get that to you.

3            MR. SCHLESSINGER:  Wonderful.  Thank you.

4            THE REPORTER:    Thank you.

5            MS. JUMP:  And just right before we go off

6   the record, I just want to reiterate that we do have a

7   confidentiality or protective order in place here that

8   is still in effect in the lawsuit.  So we will each want

9   an opportunity -- which I don't think affects, Ms.

10  Lopez, how you handle your part -- but consistent with

11  our previous approach in this case on earlier

12  depositions, we'll each want the opportunity to

13  determine and designate what falls under the

14  confidentiality or protective order.  And our

15  presumption that we had previously was by default until

16  we each have the chance to do that, we will treat

17  everything as remaining confidential up --

18           MR. SCHLESSINGER:  Understood.

19           MS. JUMP:  Until that point.

20           MR. SCHLESSINGER:  Understood.

21           MS. JUMP:  Okay.  Thank you very much.  I do

22  appreciate you time, ma'am.  And we are done for the

23  day.

24           THE REPORTER:  Okay.

25           MR. SCHLESSINGER:  Thank you.



1          THE REPORTER:  Let me just take us off the

2   record.

3          We are off the at 8:21 a.m. central time.

4   Thank you.

5          (Proceeding concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



JOYCE BOIM                                      November 07, 2022
BOIM vs AMERICAN MUSLIMS                                     68

1               CHANGES AND SIGNATURE

2    WITNESS: JOYCE BOIM      DEPO DATE: NOVEMBER 7, 2022

3    PAGE    LINE    CHANGE              REASON

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23

24       _____

25           JOYCE BOIM



JOYCE BOIM
BOIM vs AMERICAN MUSLIMS

November 07, 2022
69

```
1              S I G N A T U R E   O F   W I T N E S S

2              I, JOYCE BOIM, have read the foregoing

3    deposition and hereby affix my signature that same is

4    true and correct, except as noted above

5                         _____

6                              JOYCE BOIM

7

8

9    THE STATE OF _____)

10   COUNTY OF _____)

11              BEFORE me, _____, on

12   this day personally appeared JOYCE BOIM, known to me or

13   proved to me on the oath of _____ or

14   through _____ (description of

15   identity card or other document) to be the person whose

16   name is subscribed to the foregoing instrument and

17   acknowledged to me that he/she executed the same for the

18   purpose and consideration therein expressed.

19              Given under my hand and seal of office on this

20   _____ day of _____, _____.

21

22

23                    _____

24              NOTARY PUBLIC IN AND FOR
                THE STATE OF TEXAS
25              My commission Expires:  _____
```



```
 1              UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF
 2                ILLINOIS EASTERN DIVISION

 3   STANLEY BOIM,              )
     Individually and as        )
 4   Administrator of the       )
     Estate of David Boim,      )
 5   deceased; and Joyce Boim,  )  Civil No. 17-cv-03591
                                )
 6          Plaintiff,          )
                                )
 7   v.                         )  Hon. Gary Feinerman
                                )
 8   AMERICAN MUSLIMS FOR       )
     PALESTINE/AMERICANS FOR    )
 9   JUSTICE IN PALESTINE       )
     EDUCATIONAL FOUNDATION;    )
10   RAFEEQ JABER,              )
                                )
11          Defendants.         )
                COURT REPORTER'S CERTIFICATE
12
                ORAL AND REMOTE DEPOSITION
13
                       JOYCE BOIM
14
                    NOVEMBER 7, 2022
15

16

17

18          I, PATRIA LOPEZ, Registered Professional

19   Reporter, do hereby certify that the foregoing

20   deposition is a full, true and correct transcript;

21          That the foregoing deposition of JOYCE BOIM,

22   the Witness hereinbefore named, was at the time named,

23   taken by me in stenograph, on November 7, 2022, the said

24   Witness having been by me first duly cautioned and sworn

25   to tell the truth, the whole truth, and nothing but the
```



1    truth, and the same were thereafter reduced to

2    typewriting by me or under my direction.

3            That the original deposition was delivered

4    to Ms. Christina Jump, Custodial Attorney.

5            That pursuant to information given to the

6    deposition officer at the time said testimony was taken,

7    the following includes all parties of record and the

8    amount of time used by each party at the time of the

9    deposition:

10

11       Mr. Dan Schlessinger (00 HR: 00m)
         Attorney for Plaintiff
12       Ms. Christina Jump    (01 HR: 29m)
         Attorney for Defendant
13

14            I further certify that I am neither counsel

15   for, related to, nor employed by any of the parties in

16   the action in which this proceeding was taken, and

17   further that I am not financially or otherwise

18   interested in the outcome of this action.

19            That this deposition transcript was sent to

20   the Witness on December 6, 2022 for review and signature

21   by January 6, 2023, and that pursuant to the Federal

22   Rules of Civil Procedure, review and signature of the

23   Witness must be completed within 30 days of he

24   Witnesses' receipt thereof;

25       Certified to by me on this 6th day of December, 2022.



1

2                                    _____.
                                     Patricia Lopez, RPR
3                                    Notary Expires:  05/18/2026

4
     BUSINESS ADDRESS:
5
     ACE COURT REPORTING SERVICE
6    FIRM REGISTRATION NO. 476
     220 E. University
7    Edinburg, TX 78539
     Telephone:  956-380-1100
8    E-mail:  Info@acecourtreporting.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

