**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br><br> Hon. Andrea Wood <br><br> Hon. Heather McShain |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Christina A. Jump
Texas Bar No. 00795828
Samira Elhosary
Maryland Bar No. 2112140261
cjump@clcma.org
selhosary@clcma.org
*Attorneys for Defendants*

Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

September 5, 2023

## <u>TABLE OF CONTENTS</u>

**Introduction** ................................................................................................................. 1

**I.**      **Factual and Procedural Background** ................................................. 1

**II.**      **Legal Standard** ....................................................................................... 4

**III.**      **Argument** .................................................................................................. 5

     A. Defendants Will Benefit Greatly from Deposing Plaintiffs ................................. 5

         *1. Other Individuals Identified by Plaintiffs Cannot Provide a Sufficient Alternative* .... 7

         *2. Plaintiffs' Written Discovery Answers Provide No Substitute, Either* ......................... 8

         *3. Good Faith Requires a Factual Basis Before Bringing Allegations in a Complaint* .. 9

     B. Sitting for Their Depositions Will Not Overly Burden Plaintiffs .................................. 11

     C. Plaintiffs' Motion Misrepresents Defense Counsel's Behavior at Deposition ................ 12

         *1. Lack of Responsive Information Does Not Create Undue Burden* ........................... 13

         *2. Plaintiffs Identify No Legitimate Reasons to Justify the Unusual Step They Request* ................................................................................................... 14

**IV.**      **Conclusion** ............................................................................................... 15

**CERTIFICATE OF SERVICE** ....................................................................................... 16

ii

## Introduction

Defendants American Muslims for Palestine and Americans for Justice in Palestine Educational Foundation (together, "AMP" or "Entity Defendants") and Rafeeq Jaber (together with AMP, "Defendants") file this response in opposition to Plaintiffs' Motion for Protective Order (Doc. 313), asking this Court to deny Plaintiffs' motion in full, and to further award fees and costs to Defendants pursuant to Fed. R. Civ. P. 37(a)(5).

Plaintiffs have no legal basis for their request that this Court allow them to escape their depositions, made clear by the dearth of case law in the argument section of their motion. In the absence of relevant legal authority, Plaintiffs resort to mischaracterizations of defense counsel's behavior and statements as well as an inaccurate representation of the relevant legal standard. Defendants have the right to discover what facts Plaintiffs have to support the allegations in their Amended Complaint, and what prompted Plaintiffs' lawsuit against them; Plaintiffs chose to bring this action, and therefore chose to subject themselves to the legal process that goes with filing a lawsuit. *Stanek v. St. Charles Cmty. Unit School Dist.*, *#303*, No. 13 C 3106, 2020 U.S. Dist. LEXIS 47528, at *12-13 (N.D. Ill. Mar. 19, 2020). Plaintiffs cannot simply feign ignorance of the factual basis for their own claims to avoid the inconvenience of submitting to sworn testimony, particularly when they fail to identify any alternate witnesses who do have this missing relevant factual information.

## I. Factual and Procedural Background

This is an alter ego case. Plaintiffs claim that Defendants in this action should be held liable for the unpaid portion of a judgment Plaintiffs obtained in a prior action, against entities not party to this action ("Judgment Defendants"). Plaintiffs further accuse Defendant Jaber of fraudulent concealment of material facts relating back to his time as president of one of the Judgment Defendants when it dissolved.

1

Following two rounds of motions to dismiss, one-sided jurisdictional discovery permitted for Plaintiffs, and a trip to the Seventh Circuit, this case first reached fact discovery just under one year ago. In this last year, Defendants sought records or information that Plaintiffs believe support their allegations in their Amended Complaint. Yet Plaintiffs have provided little more than what appears to be the entirety of discovery exchanged in the original *Boim* action against the Judgment Defendants, as well as the identification of some publicly available internet archive printouts. Defendants twice now have noticed Plaintiffs' depositions, in order to determine the basis for their allegations in the Amended Complaint. Plaintiffs' counsel initially did not want Plaintiffs to testify at all but acquiesced on the first round after some discussion between counsel and after defense counsel's offer to accommodate Plaintiffs' age and location. *See* Exhibit A, Emails from Christina Jump to Plaintiffs' counsel dated Nov. 1, 2022, with accompanying Notice of Deposition of Joyce Boim, and August 16, 2022. After slightly over 90 minutes of on-the-record testimony interspersed with numerous breaks, Plaintiffs' counsel and Mrs. Boim agreed to stipulate that Plaintiffs have no personal knowledge of any facts supporting the allegations against Defendants in this case.[1] In light of that stipulation on the record, defense counsel agreed to suspend Joyce Boim's deposition temporarily. Doc. 313, at internal Ex. B at 63, 64 (defense counsel agreed to "suspend the deposition for the moment until further notice" while "reserv[ing]

---

[1] Plaintiffs claim confusion over defense counsel's use of the phrase "factual knowledge." Doc. 313, Plaintiffs' Motion for Protective Order, at 12 n.7 ("Plaintiffs' Motion"). Yet both the Seventh Circuit and courts in this District use the term without difficulty. *See, e.g.*, *United States v. Bowling*, 770 F.3d 1168, 1174 (7th Cir. 2014) (distinguishing "factual knowledge" from legal knowledge); *Leveski v. ITT Educ. Servs.*, 719 F.3d 818, 834 (7th Cir. 2013) (discussing a relator's lack of "factual knowledge" when questioned in her deposition about her claims in the lawsuit); *United States v. America's Disabled Homebound, Inc.*, No. 14 V 8525, 2018 U.S. Dist. LEXIS 47087, at *19 (N.D. Ill. Mar. 22, 2018) (discussing the Seventh Circuit's standard for analyzing "personal factual knowledge").

the right to resume the deposition if facts come out during discovery that would warrant that" and concluded with "we will go ahead and end for today").

The parties then continued written discovery and engaged in one round of motions to compel. As this Court well knows, Defendants sought an order compelling execution of proper verifications from Plaintiffs for their responses to interrogatories. Doc. 276-1, Memorandum in Support of Defendants' Motion to Compel. This Court ordered Plaintiffs to provide appropriate verifications, listing the statutorily required language. Doc. 304, Order of May 3, 2023 (ordering Plaintiffs to certify "under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct"). Without amending their Responses to disclaim knowledge, Plaintiffs thereafter provided verifications attesting to the accuracy of the full responses. Defendants then re-noticed Plaintiffs' depositions, with the goal of determining the factual basis of the Responses and, once again, the allegations in the Amended Complaint. Plaintiffs' counsel objected and offered to stipulate again, this time that Plaintiffs have no personal knowledge of the facts of the Amended Complaint relating to any events after the judgment from their original lawsuit against the Judgment Defendants. Doc. 313, Plaintiffs' Motion for Protective Order ("Plaintiffs' Motion") (providing the content of Plaintiffs' proposed stipulation). Defense counsel identified the inherent conflict resulting between the interrogatory verifications and the newly proposed stipulation, and reiterated that Defendants have the right to depose Plaintiffs and intend to exercise that right. Doc. 313 at internal Exhibit E, Email of August 10, 2023 ("[W]e cannot in good faith agree to accept that direct contradiction on its face, in lieu of questioning the individuals who have been suing our clients for the past six years."). Plaintiffs' instant motion followed.

## II.    Legal Standard

Federal Rule of Civil Procedure 30(a)(1) provides parties the right to depose any person, including another party.[2] Courts may grant motions for protective orders to "protect a person from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13 CV 6500, 2016 U.S. Dist. LEXIS 35864, at \*4, 2016 WL 11734769 (N.D. Ill. Mar. 21, 2016) (quoting Fed. R. Civ. P. 26(c)(1) and denying requested protective order). The burden to establish good cause lies with the party seeking the protection. *Kleronomos v. Aim Transfer & Storage, Inc.*, No. 19 CV 1844, 2020 U.S. Dist. LEXIS 265177, at \*4, 2020 WL 13512716 (N.D. Ill. Aug. 27, 2020). Judges possess broad discretion to shape or focus the discovery process in the most efficient way. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Courts may limit otherwise permissible discovery where "'the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Id.* at 598-99 (quoting Fed. R. Civ. P. 26(b)(2)). This "undue burden" standard presumes that "litigation, and discovery in particular, by its very nature impose significant burdens and expenses on the litigants." *Mintel Int'l Grp., Ltd. v. Neergheen*, No. 08 C 3939, 2008 U.S. Dist. LEXIS 122595, at \*9 (N.D. Ill. Aug. 28, 2008). In

---

[2] Plaintiffs misrepresent Defendants' counsel's objection to using depositions instead of interrogatories to obtain information. Doc. 313, Plaintiffs' Motion at 2 n.1. Defendants' counsel objected to Plaintiffs' attempt to use a Rule 30(b)(6) deposition of a corporate representative to obtain detailed data that Defendants could more easily provide through other avenues of discovery. Doc. 313, Plaintiffs' Motion, internal Exhibit A at 2; *see also CenturyLink Commc'ns LLC v. Peerless Network, Inc.*, No. 18 C 3114, 2020 U.S. Dist. LEXIS 260276, at \*7, 2020 WL 11647818, at \*7 (N.D. Ill. Jan. 28, 2020) (highlighting that many courts recognize contention interrogatories as a more efficient means of obtaining discovery than Rule 30(b)(6) depositions).

applying this standard, courts prioritize discovery that may illuminate issues that could lead to the lawsuit's conclusion. *Crawford-El*, 523 U.S. at 599.

When courts deny discovery motions, Federal Rule 37 authorizes courts to require a movant, the movant's attorney, or both to pay the non-moving party's expenses incurred in opposing the motion. Fed. R. Civ. P. 37(a)(5)(B). Courts must not order fees if they find the motion to be "substantially justified." *Id.* Motions do not qualify as substantially justified where no "genuine dispute" exists in the law on the relevant issue. *Pable v. Chi. Transit Auth.*, No. 19 CV 7868, 2023 U.S. Dist. LEXIS 34833, at *159, 2023 WL 233414 (N.D. Ill. Mar. 2, 2023). The burden falls on the losing party to demonstrate its motion was substantially justified under the law. *Id.*; *see also* this Court's Discovery Motion Requirements (citing Fed. R. Civ. P. 37(a)(5)).

### III.    Argument

A.    <u>Defendants Will Benefit Greatly from Deposing Plaintiffs</u>

Plaintiffs filed their Amended Complaint in this matter with four causes of action against Defendants. *See* Doc. 179, First Amended Complaint, at ¶¶ 167-185. Among those allegations and in subsequent filings, Plaintiffs accuse Defendants of funding terrorist organizations and serving as a conduit for criminal activity. *See, e.g.,* Doc. 179 at ¶ 5. Defendants and defense counsel do not take these allegations lightly, and justifiably seek discovery responses as to their origin. [3] Once the parties returned to this Court after remand from the Seventh Circuit, Defendants had their first opportunity to discover information from Plaintiffs. Plaintiffs now must prove what they allege. *Roger Whitmore's Auto. Servs. v. Lake Cnty.,* 424 F.3d 659, 669 (7th Cir. 2005) (holding that a party must "affirmatively demonstrate, by specific factual allegations" the basis

---

[3] "[I]t is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world." *Coker v. Barr*, No. 19-cv-02486-RBJ, 2020 U.S. Dist. LEXIS 255249, at *23, 2020 WL 9812034 (D. Colo. Sept. 15, 2020).

5

for their claims). Plaintiffs' deposition testimony is necessary and relevant for that purpose. Plaintiffs thus far identify no individuals who can testify to knowledge of facts supporting many of the allegations they bring in their Amended Complaint. Instead, Plaintiffs point to defense witnesses whom they hope will build their case for them post-filing, and repeat that they "trust [their] attorneys." Doc. 313, at internal Ex. B, at 48-49. Granting Plaintiffs' Motion to shield them from depositions, as well as apparently any intent to appear at trial down the road, deprives Defendants of an essential element of our legal system and the benefit of the adversarial process it ensures. Despite Plaintiffs' representations to the contrary, this Circuit does recognize the importance even in civil litigation of the "right of confrontation" of those making allegations: the Seventh Circuit explicitly recognizes that "live testimony and cross-examination might be so important as to be required by due process" in civil matters, where the right to cross-examine witnesses serves as "a constitutional imperative, the recognition of a right of confrontation." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1252 (7th Cir. 1997).; *cf.* Doc. 313 at 14 (devoting a separate section to claiming that no such standard exists outside of criminal cases). The Boims further assert that they "are not witnesses in this litigation and will not be testifying at trial." Doc. 313 at 14. The Boims overlook the unmistakable fact that Defendants <u>do</u> list the Boims as witnesses whom Defendants expect to call at trial—all Defendants did so months ago, in their Initial Disclosures. Exhibit B, Initial Disclosures of Defendants. Even if Plaintiffs' choice to bring this lawsuit and levy these allegations were not sufficient to merit their depositions and presence at trial – and Defendants believe that those are sufficient reasons – Defendants plainly identify both Plaintiffs as witnesses in this matter, and ones whom Defendants intend to call at trial. *Id*.

1.     *Other Individuals Identified by Plaintiffs Cannot Provide a Sufficient Alternative*

Plaintiffs claim they sufficiently identified individuals with responsive information in "their Amended Complaint and responses to written discovery" who render their own depositions unnecessary. Doc. 313 at 10. That statement both misrepresents Plaintiffs' filings to date and misses the point. Plaintiffs allege in their Amended Complaint that Entity Defendants were "created to fund and carry out the mission of the pro-Hamas founders and leaders who ran them." Doc. 179 at ¶ 88. They identify AMP founder Dr. Hatem Bazian as an individual with knowledge to support that allegation. *Id.* ¶ 129. Dr. Bazian, however, testified in his deposition in this matter that AMP's mission has always been to "provide educational material to Muslims first and foremost about Palestine, its history, culture, tradition, and its contemporary circumstances." Exhibit C, Deposition of Hatem Bazian, at 66, lines 19-22.[4] Plaintiffs identify no individuals on whom they relied for the allegations in their Amended Complaint. Therefore, Defendants need to depose Plaintiffs in hopes of getting straight answers to standard litigation questions.

2.     *Plaintiffs' Written Discovery Answers Provide No Substitute, Either*

Plaintiffs assert in their Motion that Defendants can simply get the same information another way, including by written questions. That hasn't worked out well so far. Defendants already filed to compel Plaintiffs, and this Court agreed, that Plaintiffs must respond more fully than "investigation continues" to identify what they believe supports the allegations in their Amended Complaint. Doc. 304. After this Court ordered Plaintiffs to produce responsive materials, Plaintiffs produced 57,971 uncategorized documents to date, most of which was discovery from

---

[4] That deposition testimony correlates with that of co-founder Munjed Ahmed, and with AMP's incorporation documents. *See* Exhibit D, Deposition of Munjed Ahmed, at 86 (agreeing that the original purpose of AMP is to educate people in America about Palestine and its history); *see also* "Statement of Principles," AM. MUSLIMS FOR PALESTINE, https://www.ampalestine.org/about-amp/statement-principles (last visited September 4, 2023).

the first *Boim* litigation. In response to more than half of Defendants' most recent requests for production, Plaintiffs merely point to an entire page range of more than 54,000 pages. Plaintiffs allege that the Judgment Defendants' assets "shift[ed]" to the Entity Defendants. Doc. 179 at ¶ 164. In response to Defendants' Interrogatory asking Plaintiffs to identify "what specific facts Plaintiffs believe show or indicate any connection" between AMP's founders and Judgment Defendants' assets, Plaintiffs respond only that AMP's founders and leaders are "connected to the goodwill and intangible assets of [the Judgment Defendants]." This bare recitation of the allegations without identifying any underlying facts does not comply with the purpose of federal court discovery.

Furthermore, written questions would not eliminate the "problems" Plaintiffs identify in their Motion with the concept of their depositions. Plaintiffs assert that simply being questioned on the nature of the lawsuit caused Joyce Boim "emotional pain … by forcing them to relive an incredibly traumatic period of their life" which forms the basis of their lawsuit, and that future questioning would "humiliate them by forcing them to repeatedly respond that they lack personal knowledge regarding the questions being asked" regarding their claims in this lawsuit. Doc. 313 at 12. But a deposition on written questions would require the same, as it is "not like a take-home exam" and instead still requires appearing before a stenographer, who reads the questions then records a real-time response. *Stanek v. St. Charles Cmty. Unit Sch. Dist.*, *#303,* No. 13-cv-3106, 2020 U.S. Dist. LEXIS 253463, at *4, 2020 WL 9348202 (N.D. Ill. May 26, 2020). Depositions on written questions therefore do not even solve Plaintiffs' identified problems in lieu of standard depositions.

Finally, Plaintiffs' claims that a deposition would be no more than repetitious and pointless carry no weight to meet the "heavy burden" needed to justify this "very unusual procedure."

*PeopleFlo Mfg. v. Sundyne, LLC.*, No. 20 CV 3642, 2022 U.S. Dist. LEXIS 186383, at *6, 2022 WL 7102662 (N.D. Ill. Oct. 12, 2022). "Parties to litigation do not have to accept their opponent's statements that all relevant evidence has been produced via a given discovery vehicle—they are entitled to test this assertion on questioning witnesses during depositions." *Williams v. Angie's List, Inc.*, No. 1:16-cv-00878, 2017 U.S. Dist. LEXIS 137686, at *4 (S.D. Ind. Aug. 28, 2017). Plaintiffs may protest all they wish, and assert that no good will come of it, but this is not their decision to make. And while the Court does possess discretion, which Plaintiffs ask this Court to exercise so that they may avoid their depositions, their conclusions against the necessity and protestations of the emotional impacts fail to meet their undeniably "heavy burden" of this request.

      3.    *Good Faith Requires a Factual Basis Before Bringing Allegations in a Complaint*

Defendants presume Plaintiffs and their counsel acted in good faith before ever bringing suit against these Defendants in federal court. Attorneys must bring claims in good faith and make a reasonable investigation to determine whether the claim "has a basis in law and fact for doing so that is not frivolous." *Outley v. City of Chicago*, No. 17 C 8633, 2022 U.S. Dist. LEXIS 23386, at *66-67, 2022 WL 18027557 (N.D. Ill. Dec. 30, 2022) (quoting ABA Model Rule 3.1); *see also* Ill. R. of Prof. Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so"). Presuming Plaintiffs and their counsel complied with these requirements, Defendants have a right to ask and Plaintiffs have an obligation to answer as to the bases for bringing this suit against these Defendants in the first place.

Furthermore, as outlined above, Plaintiffs signed verifications without qualification, which contradict both their proposed new stipulation in lieu of depositions and the assertions in their

Motion. Verifications allow the propounding party to confirm that the signing party attests to the truthfulness of the answers provided. *Investus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 496 (N.D. Ill. 2021). The requirement enables the parties to admit these answers at summary judgment or at trial. *Buchanan v. Chi. Transit Auth.*, No. 16-cv-4577, 2016 U.S. Dist. LEXIS 168983, at *7, 2016 WL 7116591 (N.D. Ill. Dec. 7, 2016). These signatures are not mere formalities, as they bear "evidentiary significance." *Id.* Attorneys may not sign for or attest to the truthfulness of interrogatory responses directed to any party. *Epps v. Dart*, No. 22 C 2393, 2022 U.S. Dist. LEXIS 21305, at *9, 2022 WL 17251279 (N.D. Ill. Nov. 28, 2022) (finding a verification attesting that responses were "true and correct based on my attorney's review of the documents" to be noncompliant with Rule 33). Yet Plaintiffs ask Defendants and this Court to accept that Plaintiffs' signatures on their verifications actually mean only that the answers are true and correct based on Plaintiffs' <u>attorneys'</u> understanding of the facts at issue. Doc. 313 at 13 (describing how Plaintiffs merely verified that they relied on "the skill and diligence of their counsel" and "privileged conversations with counsel").

This Court already reiterated the purpose of verifications in this matter, i.e., to create admissible evidence. This Court ordered Plaintiffs to take out their previous qualifying language "to the best of my knowledge" and instructed them that all verifications must meet federal statutory requirements. Doc. 304; Doc. 313 at 12-13. That qualifying language made "the plaintiffs' responses essentially not of value." *Id.* That Plaintiffs signed verifications without qualifying language yet have no relevant knowledge is not due to blind obedience to this Court nor lack of alternatives; Plaintiffs could have identified others with relevant knowledge on whom they relied in drafting the allegations contained in the Amended Complaint, then made those

individuals available for depositions. They have not done so. That failure is in bad faith, and they must either sit for their depositions, or identify those who will.

**B.**     Sitting for Their Depositions Will Not Overly Burden Plaintiffs

Plaintiffs will suffer little to no burden from being deposed in this case. First, Defendants already more than reasonably accommodated Plaintiff Joyce Boim's previously expressed concerns regarding her age, health, and location in conducting her November 2022 suspended deposition. Defendants' counsel offered to conduct the deposition remotely, to start at 6:00 a.m. CST so that it would be afternoon for Mrs. Boim in Israel, not to conduct a single day of questioning for more than four hours, and to take breaks up to hourly as needed. Ex. A, Emails regarding deposition of Joyce Boim pre-November 2022. In the deposition itself, defense counsel asked appropriate and respectful questions for the 91 minutes of on-the-record time that counsel questioned Mrs. Boim.[5] An undue burden to a party arises when the discovery places a disproportionately high burden on that party compared to the needs of the case. *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 U.S. Dist. LEXIS 186820, at *6, 2021 WL 4459527 (N.D. Ill. Sept. 29, 2021). Depositions most certainly can be frustrating and time-consuming for the testifying parties and their attorneys. But Plaintiffs who initiate lawsuits do so with the knowledge that they will need to answer for and explain their claims. "Defendants are entitled to question [Plaintiffs] regarding the allegations of [their] claims, and the damages [they] allege[] that Defendants have inflicted" on them. *Stanek*, 2020 U.S. Dist. LEXIS 47528, at *13.

---

[5] Counsel asked Mrs. Boim questions including "Do you have any independent facts to support the statement contained in this document" and "Do you have any personal knowledge of how Dr. Abuirshaid may have assisted with the formation and early activities of AMP [as alleged by Plaintiffs]" and "Do you have any reason to believe that Mr. Hamayel transferred any assets to AMP from IAP" as well as concluding with "Is there anything else you think we need to know about your lawsuit against these defendants?" Doc. 313 at internal Exhibit B, at 48, 49, 60.

11

"By bringing this lawsuit," the Boims have "exposed [themselves] to questioning by Defendant[s]. Defendant[s] [are] entitled to an opportunity to question" them about the claims they bring. *Id*. Otherwise, Defendants "would be unduly prejudiced if rendered unable to collect information from the very person[s] bringing the claim" against them. *Id*.

C.    <u>Plaintiff's Motion Misrepresents Defense Counsel's Behavior at Deposition</u>

Plaintiffs' Motion characterizes defense counsel's questioning of Mrs. Boim as "aggressive, unyielding, and repeated" to the point that Mrs. Boim was "reduced to tears." Doc. 313 at 5. Plaintiffs argue that, without a protective order, defense counsel would subject Mrs. Boim to the same emotionally difficult experience. The facts and the transcript do not support that allegation. In light of the provably wrong nature of the allegation, evidenced even further by the video of the deposition itself available to this Court should it wish to review for itself, Defendants move for sanctions against Plaintiffs' counsel. Plaintiffs' motion fully quotes Mr. Schlessinger's objection yet misleadingly paraphrases Ms. Jump's response; in doing so, Plaintiffs' motion unnecessarily omits significant context. In response to Plaintiffs' counsel's allegation that defense counsel asked Plaintiff questions "just for harassment," defense counsel responded in full as follows:

> It is <u>not</u> just for harassment. I am fine with us taking a break if you'd like to take a break if that would help her. But seeing as how these are very fine [sic] [form] responses, I do have a right, and frankly, an obligation to ask her about her personal knowledge as to each of these questions.

Doc. 313 at internal Exhibit B at 51 (emphasis added).

The questions counsel asked prior to this exchange included "Do you have personal knowledge of how Salah Sarsour may have helped AMP/AJP?" and "Do you have any personal knowledge of what Mr. Sarsour may have done regarding consulting on the organization?" as well "Do you have any personal information or knowledge of any facts personally that Salah Sarsour had in anyway transferred any assets of IAP to AMP?" *Id*. Though Mrs. Boim may have

12

found the line of questioning frustrating, defense counsel's questions were appropriate and respectful. *See Specht v. Google, Inc.*, 268 F.R.D. 596, 603 (N.D. Ill. 2010) (explaining that appropriate deposition questions seek to answer the question "What are you telling the Court?") (quoting *Wright v. Firestone Tire & Rubber Co.*, 93 F.R.D. 491, 493 (W.D. Ky. 1982)); *Russell v. Ill. Bell Tel. Co.*, No. 08 C 1871, 2009 U.S. Dist. LEXIS 37300, at *6, 2009 WL 1209025 (N.D. Ill. Apr. 30, 2009) (holding that appropriate questions are any that have "any conceivable relevance to [the issues] or to the litigation generally").

     1.    *Lack of Responsive Information Does Not Create Undue Burden*

Plaintiffs claim they have no further information to provide that is relevant to the case. This in itself does not create an undue burden on Plaintiffs. *PsyBio Therapeutics, Inc.*, 2021 U.S. Dist. LEXIS 186820, at *7. This reasoning, in fact, diminishes the burden on Plaintiffs, as there is less content for them to discuss. *Id.* (explaining that where the deponent claims to have no information and the opposing party believes that they do, a deposition would solve that disagreement). Defendants need not simply take Plaintiffs' (unsworn, undeposed) word for whether a deposition is worthwhile in Plaintiffs' view, particularly when all other discovery avenues result in so little probative information. Plaintiffs will have counsel present, who have every right to object should any question fall beyond that relevant to the claims in this lawsuit. *Id.* (highlighting that discovery is not an opportunity to explore any topic at all). But questions relevant to the claims brought in Plaintiffs' Amended Complaint are appropriate areas of investigation. *Jakes v. Boudreau*, No. 19-CV-02204, 2022 U.S. Dist. LEXIS 53169, at *17, 2022 WL 842733 (N.D. Ill. Jan. 5, 2022) (recognizing "the nature and extent of their involvement and investigation is an appropriate topic for discovery"); *Clauss Constr. v. UChicago Argonne LLC*, No. 13-cv-05479, 2015 U.S. Dist. LEXIS 4131, at *8, 2015 WL 191138 (N.D. Ill. Jan. 13, 2015) (describing an appropriate topic

for deposition as one that is related to the theory of the case or tied to the allegations in the complaint); *Deleon-Reyes v. Guevara*, No. 1:18-cv-02312, 2020 U.S. Dist. LEXIS 99772, at *12, 2020 WL 3050230 (N.D. Ill. June 8, 2020) ("Simply put, Rule 26(b)(1) limits discovery to matters that are relevant, proportional, and nonprivileged.").

      2.    *Plaintiffs Identify No Legitimate Reasons to Justify the Unusual Step They Request*

Plaintiffs put forth vague, unsubstantiated reasons they should be excused from their depositions.  Yet this District has rejected similar requests that provided at least a modicum of objective support; Plaintiffs here fail to do so.  In *Stanek*, the court rejected the plaintiff's attempt to obtain protection from his deposition, in spite of his letters from multiple healthcare providers supporting the conditions he claimed made sitting for his deposition impossible. *Stanek*, 2020 U.S. Dist. LEXIS 47528, at *8.  Parties relying on medical conditions to excuse them from depositions "must make a specific showing that the deposition would be dangerous to the deponent's health." *Id*.  "Conclusory or speculative statements about the harm that will be suffered—even if made by a treating physician—are insufficient to support entry of a protective order barring oral deposition." *Id*.  Plaintiffs fail to do even that, instead merely making general allusions to poor health, age, and the emotional impact expected as a result.  That is simply not enough.  Nor are the assertions that "aggressive" or "unyielding" questioning suffices to warrant protection from oral deposition.  Doc. 313 at 5.  Instead, even if those descriptions did apply to the situation at hand, feeling "intimidated" does not meet the required burden; a party seeking protection based on the purported actions of opposing counsel needs to provide "evidence of unprofessional behavior." *Stanek*, 2020 U.S. Dist. LEXIS 47528, at *13. Plaintiffs provide the opposite: "[t]he focus of the questions was the pleadings and discovery responses prepared and filed by the Boims' attorneys and the facts, concepts, and legal theories underlying those

14

pleadings and discovery responses." Doc. 313 at 4. That is <u>precisely</u> the purpose for which oral depositions exist. Not only did nothing unprofessional occur in the start of Plaintiff's deposition, but Plaintiffs set forth exactly why Defendants need answers to these questions, beyond 38 responses of "I trust my lawyers." *Id*. at 5.

### IV. Conclusion

Plaintiffs initiated this lawsuit against Defendants who were not parties to the prior litigation by the Boims. In doing so, the Boims lodged serious and offensive allegations at these Defendants. Yet the Boims balk at the idea of backing up those allegations with facts any time they are asked. Now, they seek protection from this Court from standard discovery depositions, on the claims they bring in this suit. They come nowhere near satisfying their obligation to meet the heavy burden required for excusing them from their depositions, and instead prove in their Motion exactly why they do not meet the required standard. Defendants therefore ask this Court to deny Plaintiffs' Motion for Protective Order in full. Defendants further ask that this Court award Defendants reasonable fees and costs incurred in defending against this meritless Motion. Dated this 5th day of September 2023.

/s/ *Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
Samira Elhosary
Maryland Bar No. 2112140261
cjump@clcma.org
selhosary@clcma.org
*Attorneys for Defendants*

Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

Thomas Anthony Durkin
ID No. 0697966
2446 N. Clark Street Chicago, IL 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
*Local Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on September 5, 2023, she caused the foregoing Motion to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

*/s/ Christina A. Jump*

16