IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER,<br><br>Defendants. | Civil No. 17-cv-03591<br><br>Hon. Andrea Wood<br><br>Hon. Heather McShain |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH**

Plaintiffs Stanley Boim ("Mr. Boim") and Joyce Boim ("Ms. Boim") (collectively, "Plaintiffs" or "the Boims"), by and through their attorneys, file this Response in Opposition to Defendants American Muslims for Palestine, Americans for Justice in Palestine, and Rafeeq Jaber's (collectively, "Defendants") Motion to Quash (Dkt. 318).

I. INTRODUCTION

On July 25, 2023, Defendants notified the Boims that a copy of the Boims' privileged and confidential engagement letter (the "Letter") that contained non-public information ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ was accessible via a Google search for Stanley Boim's name. Upon receiving this notice, the Boims immediately and successfully took action to remove the Letter from the website on which it was posted, the Google search result to which it was linked, and the Internet Archive.

Unsatisfied with this outcome, Defendants filed a Motion arguing that the Letter is not privileged and, even if it was, the Boims waived privilege. At the end of their Motion,

Defendants revealed their true intentions: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

However, Defendants' attempts to use discovery of the Letter as an end-around to the Court's previous ruling are unavailing. Any information in the Letter concerning ▮▮▮▮▮ ▮▮▮▮▮ is privileged, as such information was communicated between the Boims, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and the Boims' counsel in confidence. And the Boims took appropriate precautions to preserve the confidentiality of the Letter, not disclosing its contents to anyone and relying on their adult daughter to send the signed Letter from a secured network to the Boims' counsel. Furthermore, there is no dispute that the Boims took prompt action to rectify the disclosure after they received notice –"Defendants do not contest" that point. (Dkt. 318, at p. 6) As such, the Boims have met their burden and the Defendants' Motion should be denied.

Finally, the Court should deny Defendants' attempt to relitigate the relevance of ▮▮▮▮▮ ▮▮▮▮▮ The inadvertent disclosure of the Letter does not make that topic discoverable given this Court's prior ruling that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## II. RELEVANT FACTS

In May of 2017, the Boims were finalizing their engagement with their counsel, Lewin & Lewin, LLP ("Lewin & Lewin"). Pursuant to those efforts, they executed the Letter that included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 318-1) When it came time to transmit the Letter from the Boims in Israel to their attorneys in the United States, the Boims— an elderly couple without the means or knowledge necessary to scan and send the Letter electronically on their own—enlisted their daughter, Brachah to send it on their behalf.

(Declaration of Brachah Reich, at ¶¶ 3-4)[1] As any good daughter or son would, Brachah undertook this mundane task. (*Id.* at ¶ 5) At her parents' direction, Brachah scanned the Letter to her personal work email using her employer's, the Megalim Institute ("Megalim"), scanner, forwarded that email to her personal non-work email, and then sent the Letter to Lewin & Lewin. (*Id.*) In doing so, Brachah's only intent was to send the Letter to Lewin & Lewin. (*Id.*, at ¶ 6) Brachah was not involved in any consultations between the Boims and their attorneys, nor did she read the Letter. (*Id.*, at ¶ 7)

The network to which the Megalim scanner and Brachah's work computer were connected was a secure network, which required a password to access. (*Id.*, at ¶ 8) When Bracha scanned the Letter, she scanned the Letter as an image PDF, which means that it was not text searchable, and she took no subsequent steps to render the PDF of the Letter text searchable. (*Id.*, at ¶ 9)

Years later on July 25, 2023, Defendants notified the Boims that the Letter was accessible on the Megalim website via a link in the forty-seventh (47th) Google search result for Stanley Boim's name. (Dkt. 318-2) Specifically, the search result linked to the Letter, titled "2.pdf," which was hosted at a Megalim-affiliated web address. (*Id.*).

Later that day, the Boims notified Defendants that they were confirming the authenticity of the Letter and investigating how it came to be on the internet. (Dkt. 318-3) The Boims quickly determined that Brachah was the source of the inadvertent disclosure and reached out to her to investigate further. Brachah communicated that she had used Megalim's scanner and secured network to scan and transmit the document to Lewin & Lewin and that her only intent was to transmit the Letter to Lewin & Lewin. (Reich Decl. at ¶¶ 4-9)

---

[1] A copy of Ms. Reich's Declaration is attached hereto as Exhibit A.

On July 28, 2023, the Boims' counsel notified Defendants' counsel via email that they had arranged for Megalim to remove the Letter from its domain and take the necessary steps to have the Google search result removed as well. (Dkt. 318-5) The Boims' counsel also requested that Defendants and their counsel destroy all copies of the Letter and treat it as an inadvertently produced, privileged document. (*Id.*) Later that day, the Letter was removed from Megalim's domain and was no longer accessible via Google search. The Boims also took action to ensure the Letter was removed from the Internet Archive. On August 4, 2023, undersigned counsel sent a claw-back letter to Defendants' counsel. (Dkt. 318-5)

### III. LEGAL ARGUMENT

#### A. THE ENGAGEMENT LETTER CONTAINS PRIVILEGED INFORMATION.

To support their assertion that engagement letters "generally are not" considered privileged, Defendants rely on dicta from *Gill* – a case that did not address an assertion of privilege in the context of an attorney-client engagement letter. *United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2023 WL 2771166, 2023 U.S. Dist. LEXIS 58738, at *12 n. 3 (N.D. Ill. Ap. 4, 2023). But Defendants' attempt to paint with a broad brush ignores the more important consideration for purposes of determining privilege: the actual substance of the communication. *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 405 (7th Cir. 2018) (finding that attorney-client communications are privileged "if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.").

And here, the substance of the Letter at issue is different from the hypothetical, standard engagement letters contemplated in *Gill* in several significant ways. First, a significant purpose of this Letter was to set forth ████████████████████████████████████ ████████████████████████████████████████████████████████████████. Second, the Letter involves three parties and addresses confidential information; specifically, ████

4

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. Third, the Letter explains the ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.

None of this information, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ was publicly known prior to the inadvertent disclosure of the Letter. ■■■■■■■ the Boims disclosed this information to Lewin & Lewin in confidence and in reliance upon that confidence being protected by the attorney-client privilege. Those confidential disclosures, in turn, were an inextricable part of the Letter, which finalized the terms of the ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■, for the purposes of the above captioned litigation. *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (finding that the attorney client communication privilege applies where "the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure.")

Moreover, none of the cases in Defendants' string citation on page four of their Motion involve an attorney-client engagement letter.

In *Gill*, the document at issue was a "Due Diligence Supplement" produced by a consulting firm the defendant had retained. 2023 U.S. Dist. LEXIS 58738, at *12 n. 3. The Court only referenced the defendant's retention letter *with the consulting firm* to note that the Court had not reviewed the letter because defendant did not attach the letter to its motion. *Id.*

*United States v. Leonard-Allen* addressed a law firm's intake form, apparently devoid of confidential information, that was subpoenaed by the government in connection with the underlying criminal case. 739 F.3d 948, 951 (7th Cir. 2013). Notably, the Seventh Circuit recognized in *Leonard-Allen* that an intake form would be privileged if it ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *Id.*, at 954.

5

*Carmody v. Bd. Of Trs. Of the Univ. of Ill.* and *Judson Atkinson Candies v. Latini-Hohberger Dhimantec*, both concerned whether the privilege applied to inadvertently produced legal memoranda. 893 F.3d 397, 405 (7th Cir. 2018) and 529 F.3d 371 (7th Cir. 2008). And in both cases the Seventh Circuit affirmed the district courts' finding that the privilege was not waived. Finally, the court in *Schlicksup v. Caterpiller, Inc.*, did not address privilege in the context of an attorney client communication but rather an engagement letter between an accounting firm and its client. No. 09-CV-1208, 2011 U.S. Dist. LEXIS 92827 (C.D. Ill. Aug. 19, 2011).

Accordingly, Defendants' argument for a blanket or even general rule that attorney-client engagement letters are not privileged is unavailing. The Letter discloses confidential information provided to Lewin & Lewin by its clients concerning ▇▇▇▇▇▇ and strategy for the litigation. For that reason, the communication is privileged.

### B. THE DISCLOSURE WAS INADVERTENT AND THE BOIMS TOOK REASONABLE AND APPROPRIATE STEPS TO PREVENT DISCLOSURE.

Defendants' Motion posits that the Boims' disclosure of the Letter was not inadvertent and waived privilege for two reasons, both of which are ineffective. First, the Boims did not waive privilege when they asked their daughter to send the Letter to their attorneys – clients and attorneys alike are entitled to engage third parties to perform administrative tasks such as transmitting documents without fear of waiving the privilege. Second, disclosure of the Letter via the Megalim website was inadvertent because the Boims took reasonable precautions to prevent disclosure, the disclosure was clearly not intended, and the disclosure was not reasonably foreseeable or discoverable by the Boims.

6

1. **THE BOIMS DID NOT WAIVE THE PRIVILEGE WHEN THEY ASKED THEIR DAUGHTER TO TRANSMIT THE LETTER.**

At the time the Boims signed the Letter, they were elderly, living in Israel, and lacked the ability or means to transmit the executed Letter back to their attorneys in the United States. As such, they enlisted the help of their daughter, Brachah, to transmit the Letter on their behalf to their counsel. Plaintiffs appear to maintain that asking Brachah to send the Letter for them amounted to the Boims intentionally waiving the attorney-client communication privilege. But that result is both too harsh and not in line with relevant precedent.

While attorneys and their clients should take reasonable steps to maintain the attorney-client privilege by ensuring that the substance of their communications is not disclosed, there are logical and practical exceptions to that obligation. Relevant to this dispute, attorneys and clients alike can disclose information to third parties specifically tasked with performing administrative functions—such as transmitting documents—without waiving privilege. *Certain Underwriters at Lloyds v. Fidelity & Cas. Co.*, No. 89 C 0876 1997 U.S. Dist. LEXIS 19670, at *5-6 (N.D. Ill. Dec. 4, 1997) (finding that a client's disclosure of privileged information to a third-party agent that was facilitating communications does not amount to a waiver of the privilege) (citing *United States v. McPartlin*, 595 F.2d 1321, at 1335-37 (7th Cir. 1978)). *See also* Illinois Supreme Court Rule 201(b)(2) ("All matters that are privileged against disclosure . . . including privileged communications between a party *or his agent* and the attorney for the party, are privileged against disclosure through any discovery procedure.") (emphasis added).

Here, just as Lewin & Lewin would have been entitled to ask an administrative assistant to send the Letter to the Boims without fear of waiving the privilege, the Boims could ask their daughter to perform that function without fear of losing the privilege. A ruling to the contrary

would inappropriately hamstring the Boims' ability to communicate with their counsel in the United States.

Further, Defendants fail to cite any case law supporting their extreme interpretation of the privilege waiver standard. Whereas the Boims provided Brachah, a non-party, with the letter to perform a purely administrative task, the parties that waived privilege in *Profit Mgt. Dev. v. Jacobson, Brandvik & Anderson* and *Burden-Meeks v. Welch* both intentionally revealed the privileged information to parties in the litigation for substantive reasons. 721 N.E.2d 826, 835 (Ill. App. Ct. 2d 1999) (finding privilege was waived because a plaintiff provided deposition testimony about her communications with her attorney); 319 F.3d 897, 899 (7th Cir. 2003) (affirming that a non-party waived privilege protections for a legal memorandum it shared with a defendant in the underlying litigation).

As such, the Boims did not waive privilege when they enlisted their daughter to send the Letter to Lewin & Lewin.

2. **DISCLOSURE OF THE LETTER VIA MEGALIM'S WEBSITE WAS INADVERTENT.**

When Brachah scanned the Letter to her email account in 2017, her only intent in doing so was to transmit the Letter to Lewin & Lewin on behalf of her parents. (Reich Decl. at ¶ 6) Further, Brachah took reasonable precautions to protect the information at the time she scanned and transmitted it, namely, using a secure, password-protected network and uploading it as an imaged PDF as opposed to a text searchable document. (Reich Decl. at ¶¶ 8-9) Despite her intentions and the reasonable precautions Brachah took, the Letter ended up being accessible for an unknown amount of time[2] via a link from Google's forty-seventh (47th) search result for the

---

[2] Defendants' counsel speculates that the Letter was posted since 2018 based on the web address, but it is ultimately unclear how long the Letter was accessible via Google.

term "Stanley Boim." (Dkt. 318-2) Notably, the webpage did not appear to be accessible directly from the Megalim website – the Google link was the only route to accessing the Letter.

While Defendants' position as to why Brachah's actions were unreasonable and the disclosure cannot be characterized as inadvertent is difficult to parse, it appears their position is that because the Letter was accessible via the internet, it cannot be an inadvertent disclosure. But Defendants' Motion concedes that the Letter was not easily accessible, noting that they only uncovered the Letter due to "the diligence and perseverance of" counsel "clicking through at least 47" Google search results. (Dkt. 318, at p. 11, n. 20)

Moreover, Defendants have no evidence that any other individual accessed the document. Defendants appear to take the position that the Court should just assume that the Letter was accessed by others, but there is no logical reason to make that assumption. The internet is a vast digital universe, containing an unfathomable amount of data.[3] Defendants' contention that a discrete, obscure webpage reachable only via a link buried beneath dozens of Google search results for a singular private citizen is generally accessible to the public is akin to saying that a specific grain of sand in the Sahara Desert is similarly accessible. Indeed, if Defendants' speculation that the Letter was accessible since 2018 is true, then it took Defendants—the persons most invested in finding this information—years to locate it.

C. **THE BOIMS TOOK PROMPT REASONABLE STEPS TO REMEDY THE INADVERTENT DISCLOSURE.**

"Defendants do not contest that Plaintiffs and their counsel promptly took steps to remove the letter from the internet when notified last month." (Dkt. 318, at p. 6) Instead, Defendants maintain that the Boims' prompt action is ultimately irrelevant because "the court

---

[3] Eric Schmidt, CEO of Google, has estimated that the internet contains roughly 5 million terabytes of data. https://www.easytechjunkie.com/how-big-is-the-internet.htm.

cannot un-ring the bell of plaintiff's disclosure." (*Id.* (citing to *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 U.S. Dist. LEXIS 73397 (N.D. Ill. April 16, 2021)) But Defendants' argument misunderstands the court's holding in *Wier*.

Indeed, Defendants' reliance on *Wier* is confounding as the court there clearly held that "the time to rectify the error begins from the producing party's discovery of the inadvertent production – not production." 2021 U.S. Dist. LEXIS 73397, at *42 ("[C]ourts focus on the producing party's response after it realizes that it has disclosed privileged material.") (internal citation omitted). By that measure, even Defendants admit that the Boims have met their burden of showing they took prompt reasonable steps to rectify the error.

Moreover, to the extent *Wier* recognizes that in certain circumstances, a disclosure cannot be undone, the conditions necessary for that exception to the general rule are not present in the instant case. In recognizing that exception, *Wier* cited and quoted *Central Die Casting & Mfg Co. v. Tokheim Corp.*, No. 93-CV-7692, 1994 U.S. Dist. LEXIS 11411 (N.D. Ill. Aug. 15, 1994). The distinguishing factor in *Central Die* was that the inadvertently disclosed information was already incorporated in one of the parties' motion for summary judgment when the disclosing party attempted to claw the information back. Here, neither party has relied on the Letter in any substantive motion.

D.  TO THE CLAIMS AND DEFENSES AT ISSUE.

Although it is not a part of the claw-back analysis, Defendants use their Motion as a vessel to

10

██████████████████████████████████████████████████

██████████████████████████████████████ because Defendants' ████████████████

████████████████ is the Letter, which is privileged and was inadvertently produced. But setting that aside, ████████████████████████████████████████████████████████████

████████████████████████████████ And Defendants are ████████████████████████

████████████████████████████████████████████████████████ (Dkt. 318, at p. 11 (maintaining ████████████████████████████████████████████████████

████████████████))

The Court has already ruled that ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

And Defendants have failed to proffer a compelling reason for this Court to revisit and abrogate that decision. *Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, No. 15-cv-10734, 2021 U.S. Dist. LEXIS 213514, at *8-9 (N.D. Ill. Nov. 4, 2021) (J. Wood) (denying a party's attempt to relitigate a matter the court had already decided); *Rustom v. Naser Rustom & North Star Trust Co.*, No. 17 C 9061, No. 17 C 9061, 2019 U.S. Dist. LEXIS 144936, at *17-18 (N.D. Ill. Aug. 27, 2019) ("The law of the case doctrine is based on the policy that 'when an issue is once litigated and decided, that should be the end of the matter.'") (quoting *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972)). *See also Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009) ("The [law of the case] doctrine reflects the idea that a single court should not revisit its earlier rulings unless there is a compelling reason to do so.")

Accordingly, to the extent Defendants are attempting to get a ████████████████

████████████████████████████████████, the Court should reaffirm its prior ruling that Defendants' request for this information is speculative and irrelevant.

11

## IV. CONCLUSION

For the foregoing reasons, the Boims respectfully request that Defendants' Motion to Quash be denied.

Date: September 25, 2023

Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

<u>Of Counsel</u>
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 25th day of September 2023.

                                              */s/ Seth H. Corthell*