IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Boim, et al., | |
| Plaintiffs, | Case No. 1:17-cv-3591 |
| v. | District Judge Andrea R. Wood |
| American Muslims for Palestine, et al., | Magistrate Judge McShain |
| Defendants. | |

MAGDI ODEH'S MOTION FOR A PROTECTIVE ORDER

Magdi Odeh ("Mr. Odeh"), through counsel, and pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, moves for a protective order limiting the scope of Plaintiffs' deposition questions, and in support of such request states as follows:

**A.    Factual and Procedural Background**

In 2004, Plaintiffs obtained a judgment against the Holy Land Foundation for Relief and Development ("HLF"), the American Muslim Society ("AMS"), and the Islamic Association for Palestine ("IAP"). Mr. Odeh was not on the board or executive leadership of any of those organizations. In 2006, years after those organizations were defunct, Mr. Odeh corresponded participated in correspondence relating to the establishment of American Muslims for Palestine ("AMP"), an organization focused on education and advocacy about Israel/Palestine. Mr. Odeh has not held any position in the organization since 2009. Mr. Odeh has also volunteered for other organizations that seek to secure and protect human rights in Israel/Palestine.

Plaintiffs filed the instant action against Defendants in 2017. Recently, Plaintiffs issued Mr. Odeh, a nonparty, a document subpoena to which he has responded along with a subpoena setting his

deposition testimony for September 29, 2023. See Ex. A. The parties and Mr. Odeh have since agreed to change the deposition date to October 18, 2023.

On October 12, 2023, the parties and Mr. Odeh's attorney held a videoconference at which Mr. Odeh's attorney objected to the scope of the anticipated deposition testimony and explained his rationale for those objections. Counsel for Plaintiffs provided a substantive response that evening, to which Mr. Odeh's attorney responded the morning of October 13. The parties' substantive correspondence about the deposition testimony is attached hereto as Exhibit B. The parties have not since been able to come to agreement as to the issues included within this motion.

Through this motion, Mr. Odeh seeks to limit Plaintiffs' inquiry into his political associations and the identities of individuals who are active in political and charitable causes but who are not implicated in this case.

B. <u>Legal Standard</u>

Parties may obtain discovery about "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The relevance and proportionality limits in Rule 26 "apply with equal force to nonparty discovery under Rule 45." *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) (Harjani, J.). Courts have "consistently held that 'non -party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (Cole, J.) (internal citations omitted).

The Court may issue a protective order to limit discovery that would result in annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1)(A). Courts "must

limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Courts have "substantial latitude to fashion protective orders." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018).

To determine whether good cause for a protective order exists, the district court must balance "the harm to the party seeking the protective order and the importance of disclosure to the public." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (Castillo, J.). In determining whether good cause exists, courts may consider, among other factors, "privacy interests, whether the information is important to public health and safety and whether the party benefiting from the confidentiality of the protective order is a public official." *Id.* Good cause depends on those and other factors according to the facts and circumstances in each specific case. *Id.*

Individuals have a First Amendment privilege from disclosure in discovery to "protect against the disclosure of the identity of members and the content of internal communications between members, employees, and agents of political campaigns." *Dunnet Bay Const. Co. v. Hannig*, No. 10-CV-3051, 2011 WL 5417123, at *3–4 (C.D. Ill. Nov. 9, 2011) (internal citations omitted); *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) ("[T]he right of association is a 'basic constitutional freedom, . . . that is 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.'") (internal citations omitted).

Individuals who associate or exchange ideas as part of an organization also have First Amendment *interests* that may be inhibited should the organization disclose its membership files. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 726 F.2d 1150, 1159 (7th Cir. 1984), *judgment rev'd on other grounds*, 470 U.S. 373 (1985). If a party is seeking the membership information of such an organization to use the membership information as a source of names to depose, that interest is

implicated. *Id.* at 1160 ("It is hard to believe that after members of the Academy find themselves deposed for this purpose they will still be willing to offer candid evaluations of prospective members.").

C. <u>Because advocacy about Israel/Palestine is not the "organizational purpose" at issue, discovery about all "Palestinian-related" activism is broader than necessary to obtain relevant evidence</u>.

Mr. Odeh seeks to preclude deposition questions that seek information about any and all political associations and "Palestinian related" activism of Mr. Odeh. See Ex. A at ¶ 1. Evidence that an organization advocates for the rights of Palestinians is not evidence that the organization is an alter ego for the IAP. When confronted with the overbroad nature of this line of questioning, however, Plaintiffs stated that they are not inclined to "agree to any limitations on questions relating to Mr. Odeh's work with other entities" because it "may show Mr. Odeh's continuing involvement with the same network of individuals and entities that supported and/or contributed to IAP and AMP." Ex. B at p. 2. Such information is more appropriately discovered through other means.

If there are particular individuals who are implicated in what Plaintiffs believe to be the creation of an alter ego to avoid civil liability, they can simply ask Mr. Odeh about those individuals. Another means of arriving at the same information would be to ask Mr. Odeh whether he has observed the types of behavior that would constitute fraudulent concealment, and then ask about any such individuals' identities. Plaintiffs are aware of the individuals who were instrumental in the leadership of HLF and IAP. Mr. Odeh has not objected to answering questions about their involvement with AMP, if any. Mr. Odeh has also offered to identify organizations in which he has been involved in the relevant time period. Ex. B at p. 2-3. But those inquiries should be limited to discovering the connections, if any, between those organizations and the allegations in this case.

Plaintiffs insist that designation of Mr. Odeh's deposition testimony as confidential would address Mr. Odeh's concerns. Ex. B at pp. 2, 3. Mr. Odeh does not want to disclose to *the Boims* his

political views and associations that have nothing to do with this case. Nor does he agree to exposing other individuals and organizations to deposition by Plaintiffs if there is no indication anywhere in the record that those individuals or organizations helped HLF/AMS escape liability in some way.

Mr. Odeh's concerns are not speculative; counsel for the Boims has admitted, "If there is an individual identified that is relevant to this case, we may choose to seek discovery from that individual, but that is not harassment or intimidation." See Ex. B at p. 2. Since Plaintiffs apparently think that information about any individual who even volunteered for any "Palestinian related" organization is potentially relevant, Mr. Odeh's concerns about potential overreach by Plaintiffs is not speculative. Ex. A ¶ 1. As in *Marrese*, deposition by the Boims could certainly be a deterrent to speech and association.

   D.  Plaintiffs are not entitled to discover the identity of the potentially thousands of individuals who have volunteered for or donated to AMP and other advocacy organizations.

Mr. Odeh helped organize a "Jerusalem Festival for English Speakers" in 1999 hosted by the IAP and also participated in early conversations about the Defendant AMP in 2005-06. Dkt. 179, Am. Compl. ¶ 144. Mr. Odeh is prepared to answer questions about those events and other matters alleged in the complaint that are within the scope of his knowledge.

The remainder of Mr. Odeh's deposition testimony should be reserved for the potential discovery of facts relevant to the causes of action at issue. For example, inquiry about whether an organization "so dominates and controls another that they must be considered principal and agent" would be relevant to whether one organization that served as an alter ego of another. *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 157 (D.C. Cir. 2004). The Seventh Circuit has offered additional guidance about factors that may be relevant to alter ego liability, namely "overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to

escape liability." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021). "Organizational purpose" cannot be interpreted so broadly as to criminalize any assistance to an entire national group. Rather, this Court has indicated that evidence of a similar organizational purpose could consist of evidence that both organizations sent money to Hamas. Dkt. 301 at p. 10.

Plaintiffs, however, apparently seek to engage in a fishing expedition into all of AMP volunteers and donors, not merely the identity of the organizations' leaders. Those individuals have privacy and First Amendment interests, and a donation to an advocacy and educational organization is not evidence of a scheme to form an alter ego to avoid civil liability.

Moreover, to the extent that there is overlap between potentially relevant evidence and the information sought, it could be discovered by other means, such as inquiries about individuals who participated in a scheme to avoid civil liability. For the same reason, Plaintiffs are not entitled to know the identity of every individual who donated to AMP. Those individuals have privacy and First Amendment interests, and a donation to an advocacy and educational organization is not evidence of a scheme to form an alter ego to avoid civil liability.

E.  <u>The appropriate timeframe for Mr. Odeh's deposition is 1998-2009</u>.

Mr. Odeh also seeks to limit the timeframe of Plaintiffs' inquiry. Mr. Odeh is expected to testify that he was not involved in a leadership role in AMP after about 2009. The 1998-2018 timeframe within which the Court has designated as the appropriate for inquiry is therefore broader than necessary for the discovery of relevant evidence.

WHEREFORE, Magdi Odeh respectfully requests that the Court enter a protective order limiting Plaintiff's deposition questions as follows:

1) Plaintiffs are not entitled to discovery about all the volunteers and donors to AMP and other organizations to which Mr. Odeh has contributed, unless there is specific evidence that those individuals are implicated in the causes of action alleged.

2) "Organizational purpose" is not to be interpreted so broadly that it encompasses any advocacy about "Palestinian-related issues." Inquiries about Mr. Odeh's Palestine-related activism are therefore limited to matters relevant to this case, namely Plaintiffs' alter ego and fraudulent concealment allegations.

3) Plaintiffs may not inquire about Mr. Odeh's activism beyond the time period during which he was involved in leadership of the organizations identified in the complaint.

Dated: October 17, 2023

Respectfully submitted,
/s/ Rima Kapitan

Atty No. 6286541
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, Illinois 60646
Phone: (312)566-9590
Fax: (312) 566-9591
rima@kapitangomaa.com