UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE, ET AL., <br><br> Defendants | Case No. 17 CV 3591 <br><br> District Judge Wood <br><br> Magistrate Judge McShain |

## AMENDED ORDER

Pending before the Court is plaintiffs' motion for a protective order barring defendants from taking their depositions. [313].[1] In an order entered on October 5, 2023, the Court denied the motion after finding that plaintiffs had not carried their heavy burden to establish that their depositions should be prohibited. [330]. In a joint status report filed the next day [331], plaintiffs sought clarification whether the Court had considered the affidavit of their physician, Allan Niewodowski, which had been filed as a separate docket entry several weeks after plaintiffs' motion had been filed. [321]. The Court acknowledged that it had overlooked this affidavit when ruling on the motion, took the matter under advisement again, and granted defendants leave to file a response addressing Dr. Niewodowski's affidavit. [332]. Having considered plaintiffs' motion [313], defendants' response briefs [316, 335], and Dr. Niewodowski's affidavit [321], the Court vacates its prior order denying the motion and enters this amended order granting the motion in part and denying it in part.

## Legal Standard

"Federal Rule of Civil Procedure 26 governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021).

Rule 26 also provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

burden or expense." Fed. R. Civ. P. 26(c)(1). "The party seeking protection from discovery bears the burden of presenting a particular and specific demonstration of fact as to the need for that protection." *City of Rockford v. Mallinckrodt ARD, Inc.*, Case Nos. 17 CV 50107 & 20 CV 50056, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020) (internal quotation marks omitted). In deciding whether to issue a protective order, the court "must balance the parties' interests, taking into account the importance of the disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Calhoun v. City of Chicago*, 273 F.R.D. 421, 422 (N.D. Ill. 2011).

"A prohibition against taking an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order." *Stanek v. St. Charles Cmty. Unit Sch. Dist. 303*, No. 13 C 3106, 2020 WL 1304828, at *3 (N.D. Ill. Mar. 19, 2020). "A strong showing is required before a party will be denied entirely the right to take a deposition." *Washtenaw Cnty. Emps. Ret. Sys. v. Walgeen Co.*, No. 15 C 3187, 2020 WL 13613270, at *1 (N.D. Ill. Sept. 25, 2020). "While it is thus clear that any movant faces a difficult burden in seeking to prevent a deposition, that burden is even higher when, as in this case, a party to the lawsuit seeks to do so. The standard for prohibiting a witness's deposition is high, but to prohibit the deposition of a party, the showing must be even more extraordinary." *Harris v. Clay Cnty., Mississippi*, 514 F. Supp. 3d 880, 882 (N.D. Miss. 2021); *see also Newson v. Oakton Cmty. Coll.*, No. 19 CV 2462, 2021 WL 9793333, at *2 (N.D. Ill. Nov. 5, 2021) ("plaintiff's vague, unsubstantiated claims that it is not safe for him to be deposed, and that defense counsel broke the law, are insufficient to make the extraordinary showing that would be necessary to preclude defendant from taking plaintiff's deposition") (internal citation and quotation marks omitted).

## Discussion

Plaintiffs argue that the Court should grant a protective order barring their depositions because they (1) are elderly and in poor health, (2) have agreed to stipulate to their lack of personal knowledge regarding the disputed facts at issue in this case, and (3) would experience an undue burden in sitting for a deposition compared to the amount of relevant information (if any) they can be expected to testify to. *See* [313] 3-4, 9-10, 12-13. For the following reasons, the Court finds that plaintiffs have not carried their "heavy burden" of demonstrating that Mrs. Boim's deposition should be prohibited, but they have established that Mr. Boim's deposition should be prohibited. *Stanek*, 2020 WL 1304828, at *3.

First, plaintiffs do not acknowledge the rule in this District that a party seeking to prevent his own deposition "bears a heavy burden," *Stanek*, 2020 WL 1304828, at *3, and must make "[a] strong showing," *Washtenaw Cnty.*, 2020 WL 13613270, at *1, of good cause for such a protective order. Indeed, plaintiffs have not

cited any decision from the Northern District of Illinois–or elsewhere–where a court granted a protective order barring a named party's deposition. In the undersigned's view, this underscores the "very unusual," *Stanek*, 2020 WL 1304828, at *3, and "extraordinary," *Newson*, 2021 WL 9793333, at *2, nature of plaintiffs' request.

Second, plaintiffs' offer to stipulate to their lack of personal knowledge of the disputed facts in the case, and their insistence that they have little or no relevant information about the allegations in their complaint, are not sufficient, standing alone, to justify the protective order they seek.

"A party has a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary." *Reed v. Illinois*, 318 F.R.D. 77, 81 (N.D. Ill. 2016). "The test under Rule 26 is not whether a putative deponent had personal involvement in an event, or even whether she has 'direct' knowledge–which is merely another way of saying that she was a participant in the event–but whether the witness may have information from whatever source that is relevant to the claim or defense." *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007). In this case, plaintiffs allege that defendants American Muslims for Palestine and Americans for Justice in Palestine Education Fund are the alter egos of the entities that, in the underlying *Boim* litigation, were found liable to plaintiffs for the murder of their son and against whom plaintiffs obtained a $156 million judgment. *See Boim v. American Muslims for Palestine*, 17 C 3591, 2022 WL 1556085, at *1-3 (N.D. Ill. May 17, 2022). While plaintiffs disclaim any personal knowledge as to whether the defendants in this case are, in fact, the alter egos of the entities found liable in the underlying *Boim* litigation, the defendants are not bound to accept that representation or enter plaintiffs' proposed stipulation. "Parties to litigation do not have to accept their opponent's statement that all relevant evidence has been produced via a given discovery vehicle–they are entitled to test this assertion in questioning witnesses during depositions." *Milwaukee Elec. Tool Corp. v. Chevron N. Am., Inc.*, No. 14-CV-1289-JPS, 2015 WL 4393896, at *5 (E.D. Wis. Jul. 16, 2015); *see also Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005) ("By its very nature, the discovery process entails asking witnesses questions about matters that have been the subject of other discovery.").

In seeking plaintiffs' depositions, moreover, defendants emphasize that an "inherent conflict" exists between plaintiffs' verification of their answers to defendants' interrogatories and the proposed stipulation. [316] 5. Earlier in the litigation, defendants moved to compel plaintiffs to verify their answers to the interrogatories in accordance with 28 U.S.C. § 1746(1), which specifies a manner for verifying answers that are executed outside of the United States (the Boims reside in Israel). *See* [276]. Plaintiffs opposed the motion on the ground that they could not "state unequivocally" that their answers to the interrogatories were "true and correct" because both plaintiffs "lack personal knowledge of these facts." [280] 3. The Court overruled their objection and required plaintiffs to "amend the verification's

language, pursuant to 28 U.S.C. § 1746(1), to certify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct," and "to remove the qualifying language, to the best of my knowledge, from the verification." [304] 1 (internal quotation marks omitted). Thereafter, plaintiffs executed a new verification that states "I have read the Answers to the Interrogatories in Plaintiffs' Objections and Answers to Entity Defendants' First Set of Discovery Request and I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." [313] 12-13. Because the amended verification does not state that plaintiffs lack personal knowledge of the matters asserted in their answers, defendants maintain that they are entitled to depose plaintiffs to "determine[e] the factual basis of the Responses and . . . the allegations in the Amended Complaint." [316] 5. The Court accepts defendants' argument that plaintiffs' amended verification has raised a question about the factual basis of the interrogatory answers that defendants should be permitted to explore in a deposition. Plaintiffs previously represented that they could not execute a verification under § 1746(1) due to their lack of personal knowledge, *see* [280] 3, but plaintiffs have since executed such a verification. For that reason, the Court rejects plaintiffs' argument that it is unreasonable and harassing for defendants to depose plaintiffs.

That said, it is not as clear to the Court as it is to the defendants that any "inherent conflict" between the verification and plaintiffs' proposed stipulation exists. Defendants seem to contend that plaintiffs, by executing the amended verification, have acknowledged that "they do have factual knowledge of the responses to the Interrogatories[.]" [313-5] 2 (emphasis in original). But as plaintiffs accurately observe, *see* [313] 16, the Federal Rules of Civil Procedure do not require that answers to interrogatories be based on personal knowledge. Rather, the Rules require that interrogatories be answered "by the party to whom they are directed." Fed. R. Civ. P. 33(b)(1). A party must therefore answer interrogatories even when it claims to lack personal knowledge of the matters at issue. "Lack of personal knowledge does not exempt a party from answering to the extent possible, because the duty to fully answer implies a duty to make reasonable efforts to obtain information within the knowledge and possession of others." *Gevas v. Dunlap*, Case No. 18 C 6556, 2020 WL 814875, at *1 (N.D. Ill. Feb. 19, 2020) (internal quotation marks and citation omitted). Thus the answering party must "give the information available to him, if any, through his attorney, investigators employed by him or on his behalf, or other agents or representatives, whether personally known to the answering party or not." *Connelly v. Cook Cnty. Assessor's Office*, No. 19 CV 7894, 2022 WL 17718411, at *2 (N.D. Ill. Dec. 15, 2022). Accordingly, the fact that plaintiffs verified the answers in accordance with § 1746(1) does not preclude the possibility that they have no personal knowledge of the matters asserted in the answers, and it may very well be that their deposition testimony will mirror Mrs. Boim's testimony at her November 2022 deposition, when she testified repeatedly that she had no relevant information about the case and that she had relied on counsel to prepare plaintiffs' discovery responses. *See* [313-2] 54-

4

57. Therefore, while the Court believes that defendants have overstated the supposed conflict between plaintiffs' verification and their proposed stipulation, the Court does not believe that defendants should be prohibited from deposing both plaintiffs. *Cf. PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *3 (N.D. Ill. Sept. 29, 2021 ("Ms. Corbin's argument that a lack of knowledge should preclude her deposition is also misplaced. Ultimately, PsyBio believes that Ms. Corbin has discoverable information; Ms. Corbin responds that she does not. A limited deposition is the best vehicle to resolve that disagreement.").

Third, and relating specifically to Mr. Boim, however, plaintiffs have demonstrated that a protective order is warranted barring Mr. Boim's deposition. "Where, as here, a party seek[s] to bar an oral deposition based on health-related concerns, that party must mak[e] a *specific and documented factual showing* that the deposition would be dangerous to the deponent's health." *Stanek*, 2020 WL 1304828, at *3 (emphasis in original). Plaintiffs have offered the affidavit of the Boims' family physician, Dr. Niewodowski, who has treated them for 18 years. [321] 3, at ¶ 1. In the affidavit, which was executed on September 9, 2023, Niewodowski explains that Mr. Boim is an 83-year-old man "in very fragile condition" who suffers from congestive heart failure, mitrial insufficiency, and hypertension that "causes him to be easily agitated and unable to focus." [*Id.*], at ¶ 2. Mr. Boim also has "periventricular leukomalacia on [his] brain," which was diagnosed in December 2022, that causes "memory loss and difficulty focusing." [*Id.*], at ¶ 2. Moreover, in 2023, Mr. Boim had had "hip replacement surgery . . . with a subsequent infection which required a long term hospitalization and [an] inpatient rehabilitation stay, substantially weakening him." [*Id.*], at ¶ 3. Finally, Mr. Boim "has had several serious falls and a resulting subdural hemorrhage, which is a traumatic brain injury that occurred in February 2022 and has caused significant impairment to his cognitive ability." [*Id.*], at ¶ 4. Based on these conditions and his treatment relationship with Mr. Boim, Dr. Niewodowski has opined that "Mr. Boim's medical conditions render him unable to concentrate for more than a few minutes and impair his ability to focus. In my opinion, he could not competently respond to detailed questioning regarding factual matters." [*Id.*] 3.

In their supplemental response brief, defendants do not challenge the gravity of Mr. Boim's health concerns or Dr. Niewodowski's opinion that Mr. Boim cannot competently respond to detailed questioning regarding factual matters. [335] 2. Instead, defendants contend that Niewodowski's affidavit raises a separate question "whether Mr. Boim possess the ability *at all* to competently respond to detailed questioning[.]" [*Id.*] 4 (emphasis in original). Given Mr. Boim's December 2022 diagnosis of periventricular leukomalacia, defendants question how Mr. Boim could have been competent in May 2023, when he executed the verification to plaintiffs' responses to defendants' interrogatories, but not competent only a few months later, when Niewodowski executed the September 2023 affidavit. [*Id.*] 4-5. Defendants contend that the Court should deny the motion as to Mr. Boim because "he previously,

5

recently, and inconsistently represented himself able to swear to the accuracy of Plaintiffs' discovery responses by executing a Verification[.]" [*Id.*] 6. In the alternative, defendants ask that plaintiffs "designate who did provide information relevant to the facts in the Interrogatory responses, and thereby allow Defendants to depose whomever that may be." [*Id.*].

Having reconsidered the parties' arguments in light of the Niewodowski affidavit and defendants' supplemental response brief, the Court concludes that Mr. Boim's deposition should be prohibited based on his "very fragile condition" and his history of serious health conditions that impair his ability to focus and competently answer detailed questions. Dr. Niewodowski's affidavit establishes that Mr. Boim suffered from a traumatic brain injury that affects his ability to respond to the type of detailed questioning that defendants are likely to pose during a deposition. It also demonstrates that Mr. Boim's hypertension adversely affects his memory and his ability to remain calm and focused, which would further inhibit Mr. Boim's ability to testify. Furthermore, Mr. Boim's health overall is extremely poor: he suffers from heart failure; a fall, an infection, and a lengthy hospital stay have "substantially" weakened him; and his traumatic brain injury has caused "significant impairment to his cognitive ability." In so ruling, however, the Court notes that Dr. Niewodowski has not opined that sitting for a deposition is likely to be dangerous to Mr. Boim's health. Accordingly, the Court's ruling does not rest on that basis. Instead, the Court relies on its weighing of (1) Mr. Boim's serious health concerns, his impaired memory and ability to focus, and his inability to competently respond to detailed factual questioning; (2) the significant likelihood that Mr. Boim does not have any unique or relevant information about the claims in this case; and (3) defendants' ability to explore, during Mrs. Boim's deposition, how she and her husband were able to answer the interrogatories and what basis they had for executing the verification at issue.

However, the Court shares defendants' concerns about the apparent inconsistency between Mr. Boim's ability to execute the verification to plaintiffs' responses to defendants' interrogatories in May 2023 and his inability to give competent deposition testimony. As defendants accurately observe, Dr. Niewodowski's affidavit does not suggest that Mr. Boim's condition substantially deteriorated after May 2023 or address Mr. Boim's competency at the time the verification was executed. *See* [335] 4-5. It is therefore unclear how Mr. Boim could have been competent to execute the verification in May 2023 but not competent to testify at a deposition as of September 2023. Based on the limited information that is before the Court, the Court acknowledges that defendants may need and be entitled to further explore the issues surrounding Mr. Boim's competency. The Court is not ordering that any specific form of discovery occur, as this issue–which has arisen only in defendants' supplemental response brief–is not ripe for judicial resolution, and the parties must meet and confer in a good-faith effort to resolve defendants' bona fide concerns and completely exhaust their meet-and-confer obligations before presenting any discovery dispute on this issue to the Court.

The Court reaches a different conclusion regarding Mrs. Boim's deposition, however. According to Dr. Niewodowski, Mrs. Boim is a "frail woman of 77 years of age" who has been diagnosed with chronic hypertension, osteoporosis, "SVT with frequent & debilitating palpitations," and heart disease. [321] 3, at ¶ 6. Mrs. Boim has suffered several fractures of her hip and arm and has limited mobility. [*Id.*] 4, at ¶ 8. It is Dr. Niewodowski's opinion that "the stress of sitting for a deposition would risk serious threats to Mrs. Boim's health in view of her blood pressure issues and the depression she has suffered since the loss of her son[.]" [*Id.*], at ¶ 9. This evidence is insufficient to warrant a protective order barring Mrs. Boim's deposition. Although Dr. Niewodowski opines that a deposition would risk harming Mrs. Boim, the Court finds that this opinion is conclusory and not reasonably supported by the information in Niewodowski's affidavit. Indeed, Niewodowski's affidavit does not state with specificity how or why Mrs. Boim's health would be jeopardized by sitting for a deposition. *See Campos v. Webb Cnty., Texas*, 288 F.R.D. 2012 (S.D. Tex. 2012) (doctor's opinion that plaintiff's participation in deposition "will be medically detrimental" and would "very likely" cause plaintiff to lose "the very slow progress he has gained from treatment" was conclusory and "f[e]ll short" of "the high standard required for protective order[ ]" prohibiting plaintiff's deposition); *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (doctor's opinion that plaintiff's participation in deposition was "very likely" to cause plaintiff "great harm" did not warrant protective order prohibiting plaintiff's deposition because opinion was "conclusory" and "does not state with specificity how or why" deposition would harm plaintiff); *see also Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2020 WL 8102054, at *6 (C.D. Cal. Jul. 9, 2020) ("Stating [a witness] suffers from multiple severe medical conditions that could be potentially fatal is not '*a specific and documented factual showing*' that the proposed deposition would be dangerous to [the witness's health") (emphasis in original).

Accordingly, while the Court finds that Dr. Niewodowski's "concern" for Mrs. Boim's health "is apparent, and the Court cannot doubt the sincerity of his medical opinion," the Court finds that the Niewodowski affidavit does not meet the very high standard for prohibiting Mrs. Boim's deposition. *Campos*, 288 F.R.D. at 137. Furthermore, as defendants observe, none of Mrs. Boim's health concerns appeared to impede her participation in her original deposition in November 2022, and nothing in the Niewodowski affidavit suggests that Mrs. Boim's health has significantly declined since that first deposition. Finally, the fact that Mrs. Boim is likely to find the process of being deposed stressful and emotionally taxing does not amount to an undue burden, whether standing alone or in conjunction with her health concerns. *See Electrolux N. Am., Inc. v. Performance Metals, Inc.*, No. 1:21-mc-6-JMS-MJD, 2021 WL 601056, at *1 (S.D. Ind. Feb. 12, 2021) ("It is, of course, not unusual for a deposition to be stressful for the deponent. That, alone, would ordinarily not constitute the type of undue burden that would require the quashing of a subpoena" for a deposition.").

7

For these reasons, defendants' motion for a protective order prohibiting Mrs. Boim's deposition is denied. Defendants are entitled to depose Mrs. Boim, but they must subtract from the seven hours of deposition time allotted by Rule 30(d)(1) the time spent deposing Mrs. Boim during her first deposition. In addition, the Court observes that defendants have expressed their willingness to accommodate Mrs. Boim's health by taking ten-minute breaks during each hour of the deposition, beginning the deposition at a convenient time for Mrs. Boim, conducting the deposition over two days, and conducting the deposition remotely. *See* [335] 3.

Finally, defendants' request for an award of fees and costs is denied. If a discovery motion is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The Court adheres to its original determination that no fee award is warranted in this case because a bona fide dispute existed over whether both plaintiffs were entitled to a protective order barring their deposition.

## Conclusion

Plaintiffs' motion for a protective order [313] is granted in part and denied in part. Defendants may not depose Mr. Boim but are entitled to depose Mrs. Boim in accordance with the time limitation set forth above. The parties are directed to meet and confer about defendants' concerns surrounding Mr. Boim's competency. A joint status report is due on November 22, 2023 to update the Court on: (a) the progress of discovery; (b) the status of settlement discussions, if any; and (c) any other issues the parties wish to raise with the Court.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 19, 2023**