## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> Hon. Andrea Wood <br><br> Hon. Heather McShain |

### THE BOIMS' RESPONSE IN OPPOSITION TO
### MAGDI ODEH'S MOTION FOR PROTECTIVE ORDER

Plaintiffs Stanley and Joyce Boim (the "Boims"), by and through their attorneys, file this Response in Opposition to Magdi Odeh's ("Mr. Odeh") Motion for a Protective Order ("Motion").

### I.     INTRODUCTION

Prior to the Islamic Association for Palestine ("IAP") allegedly dissolving after being held liable for the death of David Boim and the resulting $156 million judgment (the "Boim Judgment"), Magdi Odeh organized events for the organization ███████████ ███████████ Following the Boim Judgment, Mr. Odeh was involved in the creation of IAP's alter ego, Defendant American Muslim's for Palestine ("AMP"), and served as one of its early leaders. Simply stated, Mr. Odeh is an important witness in this case and, as such, the Boims seek his testimony and issued a subpoena for his deposition.

While Mr. Odeh is willing to appear for a deposition, his Motion seeks to preemptively block the Boims from asking questions that could lead to the discovery of relevant information. Namely, questions concerning his affiliations with other Palestinian rights organizations and the identity of AMP volunteers. Mr. Odeh also seeks to impose a time period limitation that would limit the Boims to questions concerning the 1998-to-2009-time frame.

None of the limitations that Mr. Odeh seeks are appropriate or necessary. Given his association with IAP and AMP, Mr. Odeh will likely have relevant information that the Boims are entitled to obtain via a deposition; and they should not be preemptively limited in their lines of inquiry. Further, Mr. Odeh has not identified any burden to answering the questions he presumes he will be asked at his deposition. To the extent Mr. Odeh maintains the deposition could infringe on his, or others', First Amendment rights, those concerns are speculative. Moreover, any such concerns can be alleviated through the use of the Confidentiality Order currently in place, or entry of a new agreement between Mr. Odeh and the Boims.

Accordingly, Mr. Odeh's Motion for Protective Order should be denied.

## II.     FACTUAL BACKGROUND

In 2004, Magistrate Arlander Keys issued a summary judgment ruling finding that IAP provided both financial and moral support to Hamas and held IAP civilly liable for the death of David Boim at the hands of Hamas terrorists. *Boim v. Quranic Literacy Institute*, 340 F. Supp. 885, 910 (N.D. Ill. 2004). Prior to that ruling, Magdi Odeh was active in IAP, operating out of the Chicagoland area. (*E.g.*, FAC, at ¶ 144) In 1999, Mr. Odeh was an organizer of IAP's first annual Jerusalem Festival for English Speakers (*id.*), and ███████████████████████ ██████████████████████████████ (Ex. A, at Boim00028428).

Following the Boim Judgment, Mr. Odeh was involved in establishing IAP's alter ego AMP. Mr. Odeh participated in a Yahoo! group chat formed following the Boim Judgment but

2

prior to AMP's incorporation, titled "AMP_Transition." (*E.g.*, FAC, at ¶ 67) In that group chat, Mr. Odeh warned that the "new" organization should avoid involving individuals who were "well associated with IAP," such as Sufian Nabhan – a former leader of IAP's Detroit chapter who became a leader in AMP's Detroit chapter. (*E.g.*, FAC, at ¶ 69) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B, at p. 3) and was the point of contact for AMP's inaugural convention in 2006 – held in Rosemont, Illinois around the same time period when IAP would hold its annual convention. (FAC, at ¶¶ 72 and 99)

### III.     PROCEDURAL BACKGROUND

The Boims served Mr. Odeh with a subpoena for testimony and documents on September 12, 2023. Mr. Odeh produced documents responsive to the subpoena, and his counsel indicated that he was not withholding any documents pursuant to objections.

On October 10, 2023, counsel for Mr. Odeh sought a conference to discuss "a few issues that will likely come up" based on a review of the document subpoena. (Dkt. 334-2) Counsel for Mr. Odeh, the Boims, and Defendants convened for a video discussion two days later on October 12. At the conference, Mr. Odeh's counsel indicated that the Boims should be constrained in their ability to question Mr. Odeh about his involvement in Palestinian focused organizations. (*Id.*) Specifically, Mr. Odeh's counsel maintained that Mr. Odeh's involvement in other Palestinian rights organizations is not relevant, unless such organizations are a part of the Boims' case against AMP, and therefore, the Boims' questions about Mr. Odeh's involvement in such organizations should be extremely limited. (*Id.*) In addition, Mr. Odeh's counsel argued that Mr. Odeh should not be required to identify individuals who worked at AMP in non-leadership roles and that, because Mr. Odeh maintains he has not had a leadership role in AMP since 2009, the

Boims should be limited in their ability to seek testimony concerning his Palestinian advocacy activities since 2009. (Dkt. 334, at p. 6)

The Boims responded that it is not appropriate to preemptively limit their potential lines of questioning because they, at this point, are not aware of other organizations or individuals with which or whom Mr. Odeh has been involved. (Dkt. 334-2) Moreover, the identity of AMP volunteers is directly relevant to showing alter ego as it could show substantial similarity in the volunteer bases of IAP and AMP. (*Id.*) Finally, to the extent Mr. Odeh's deposition produces testimony that identifies individuals or organizations that have no connection to AMP, IAP, or the facts of this case, such information can be designated confidential to protect it from public disclosure. (*Id.*)

Because the parties were not able to come to an agreement on limitations to lines of questioning for Mr. Odeh's deposition, Mr. Odeh moved for a protective order on October 17, 2023.

## IV.    ARGUMENT

The relief Mr. Odeh seeks, a pre-emptive order limiting his deposition testimony, is unwarranted. The Boims noticed Mr. Odeh's deposition because he was heavily involved in both IAP and AMP and, therefore, may have information relevant to their alter ego claim. Whether and to what extent Mr. Odeh has relevant information will be determined at his deposition, and the Boims should not be preemptively limited in their ability to ascertain Mr. Odeh's knowledge of potentially relevant information. Further, Mr. Odeh's First Amendment concerns are speculative, and in any event, can be addressed by designating the identity of certain organizations and individuals as confidential to protect against public disclosure of such information.

Mr. Odeh seeks an order from this Court effectively limiting the scope of his deposition to his work at IAP and AMP between the years 1998 and 2009. (Dkt. 334, at p. 7) To support his position, Mr. Odeh cites to several cases from within the Seventh Circuit, but none of those cases support his request for a pre-emptive order limiting Mr. Odeh's deposition testimony.

First, Mr. Odeh cites to *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586 (N.D. Ill. 2020), arguing that his non-party status should be a significant consideration in determining whether the Boims' subpoena is overly burdensome. But the burden to Mr. Odeh should not be a consideration of the Court in ruling on his Motion, because Mr. Odeh has not articulated any specific burden in providing testimony at his deposition. That is likely because there is no burden to Mr. Odeh. Indeed, in most instances in which a non-party seeks a protective order based on undue burden when faced with a subpoena, the non-party is seeking such relief in the context of a subpoena that seeks production of documents. *See, e.g., Rossman*, 467 F. Supp. 3d at 588-89. (listing the document requests to which the non-party movant objected).

The main thrust of Mr. Odeh's argument is that requiring him to answer questions concerning his affiliation with other organizations, or the identity of other individuals with whom he has worked, would infringe on his, and perhaps others', First Amendment rights to freedom of association. (Dkt. 334, at p. 3-4) But the instant dispute is distinguishable from the cases upon which Mr. Odeh relies.

Specifically, Mr. Odeh cites to *Dunnet Bay Const. Co. v. Hannig*, for the proposition that he has a First Amendment privilege from identifying members of organizations in which he has been involved. No. 10-cv-30512011 WL 5417123 (C.D. Ill. Nov. 9, 2011) (Dkt. 334, at p. 3) But in *Dunnet Bay*, the membership organization itself argued for the application of the privilege from disclosure – not a member or former member of the organization. (*Id.*) And more

importantly, in *Dunnet Bay*, the movant organization did not seek to limit deposition testimony, rather, it sought to prevent production and disclosure of its internal communications. (*Id.*, at *7-8) *Marrese v. Am. Acad. Of Orthopaedic Surgeons* similarly addressed a motion for protective order in the context of a request for the physical membership records of an organization – not a request to limit the deposition testimony of a member. *Id.*, at 1161 ("We do not hold that all files of all voluntary associations are sacrosanct; we do not even hold that the membership files of an association of medical professionals are sacrosanct.")

Here, Mr. Odeh's stated objection is not related to any of the Boims' requests for documents. (Dkt. 334, at pp. 1-2 ("Plaintiffs issued Mr. Odeh, a non-party, a document subpoena to which he has responded . . .") Rather, it is a pre-emptive request to limit the Boims' ability to ask questions about Mr. Odeh's work for Palestinian advocacy groups, the individuals with whom he worked at AMP, and Mr. Odeh's involvement with Palestinian advocacy groups outside of the 1998-to-2009-time frame. This sweeping relief is unwarranted.

The Boims seek testimony from Mr. Odeh concerning his involvement in IAP and AMP, as well as any work he may have done within the broader network of organizations in which IAP and AMP operate. Such testimony is relevant as it may itself constitute evidence relevant to the Boims' alter ego claims, or it may lead to the discovery of evidence relevant to those claims. For example, if Mr. Odeh testifies that he left AMP and joined an organization, currently unknown to the Boims, that has a close working relationship with AMP or IAP, with many former AMP or IAP members on the staff, that testimony could be relevant evidence itself or it could lead to the discovery of relevant evidence. Mr. Odeh's testimony may also show that he has had no subsequent involvement with organizations connected to AMP or IAP. But the important point is that the Boims should not be pre-emptively forbidden from asking such questions.

And to the extent that Mr. Odeh is concerned about disclosing the identities of individuals or organizations who are not involved with IAP, AMP, or any of the facts relevant to this case, the proper protective measure is not to prevent the Boims from obtaining discovery. Instead, Mr. Odeh can utilize the Confidentiality Agreement that is already in place in this case, or the Boims are willing to negotiate a separate agreement that specifically applies to Mr. Odeh's testimony. This Court has already found that concerns about disclosure of information deterring individuals from associating with an entity are best addressed by designating identity information confidential. (*See Boim, et al., v. American Muslims for Palestine, et al.*, No. 22-cv-6085, Sept. 22, 2023 Hearing Tr., at pp. 10:01-04 ("Concerns about the subpoena production deterring community volunteers is speculative and also could be alleviated if the parties enter into a productive [*sic*] order governing the subpoena production.")) (attached as Ex. C)

## V.    CONCLUSION

Due to his positions at AMP and IAP, Mr. Odeh is an important witness and a potential source of relevant information in the Boims alter ego action against AMP: he was active in IAP and then became a part of the group that established IAP's alter ego, AMP. For that reason, the Boims seek his testimony at a deposition. Mr. Odeh's testimony may produce evidence supporting the Boims' theory of the case or it may produce evidence that casts doubt upon the Boims' claims – the parties will not know until after the deposition has taken place. But the Boims have a basis for taking his deposition and should not be prevented from asking questions that could lead to relevant evidence.

Accordingly, the Court should deny Mr. Odeh's Motion.

Date: October 31, 2023                          Respectfully submitted,


                                                *s/ Seth H. Corthell*
                                                Daniel I. Schlessinger
                                                Seth H. Corthell
                                                Jaszczuk P.C.
                                                30 South Wacker Dr., Suite 2200
                                                Chicago, IL 60606
                                                (312) 442-0401
                                                dschlessinger@jaszczuk.com
                                                scorthell@jaszczuk.com


                                                *Attorneys for Stanley Boim, Individually and*
                                                *as the Administrator of the Estate of David*
                                                *Boim, Deceased, and Joyce Boim*



Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed

electronically using the Court's CM/ECF system and has been served to all parties via email

through CM/ECF on this 31st day of October 2023.


*/s/ Seth H. Corthell*