# -EXHIBIT C-

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   STANLEY BOIM, et al.,           )
                                     )
 4              Plaintiffs,          )
                                     )   Case No. 22 CV 6085
 5   -vs-                            )
                                     )   Chicago, Illinois
 6   AMERICAN MUSLIMS FOR            )   September 22, 2023
     PALESTINE, et al.,              )   3:04 p.m.
 7                                   )
                Defendants.          )
 8
             TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion
 9            BEFORE THE HONORABLE HEATHER K. McSHAIN

10   APPEARANCES:

11   For the Plaintiffs:    JASZCZUK P.C.
                            BY:  MR. DANIEL I. SCHLESSINGER
12                               MR. SETH CORTHELL
                            311 South Wacker Drive
13                          Suite 2150
                            Chicago, IL  60606
14
     For the Defendants:    CONSTITUTIONAL LAW CENTER FOR MUSLIMS
15                          IN AMERICA
                            BY:  MS. CHRISTINA A. JUMP
16                          100 North Central Expressway
                            Suite 1010
17                          Richardson, TX  75080

18   For the Respondent:    ABDALLAH LAW
                            BY:  MR. ZAID ABDALLAH
19                          15127 South 73rd Avenue
                            Suite E
20                          Orland Park, IL  60467

21

22   Court Reporter:        AMY M. KLEYNHANS, CSR, RPR, CRR
                            Federal Official Court Reporter
23                          United States District Court
                            219 South Dearborn Street, Room 2318A
24                          Chicago, IL  60604
                            Telephone:  (312) 818-6531
25                          amyofficialtranscripts@gmail.com
```

1    (Proceedings heard via telephone:)
2        THE CLERK:  Case No. 22 CV 6085, Boim, *et al.*, versus
3    the American Muslims for Palestine, *et al.*, for motion
4    hearing.
5        THE COURT:  Good afternoon, counsel.
6        Please state your appearance for the record,
7    beginning with the plaintiff.
8        MR. CORTHELL:  Seth Corthell appearing on behalf of
9    Plaintiff Stanley and Joyce Boim.
10       MR. SCHLESSINGER:  And, Your Honor, Daniel
11   Schlessinger, also appearing on behalf of Mr. and Mrs. Boim.
12       THE COURT:  Thank you.
13       And for defendants, please.
14       MS. JUMP:  Your Honor, this is Christina Jump.  We
15   have not made an appearance in this particular matter, but we
16   represent AMP, AJP, and Rafeeq Jaber.
17       MR. ABDALLAH:  And, Your Honor, this is Zaid Abdallah
18   on behalf of the Mosque Foundation.
19       THE COURT:  Okay.  Thank you, everyone, for calling
20   in.
21       So as I indicated in a minute order setting today,
22   this is a motion hearing.  And I'm also prepared to rule on
23   the record today as well.
24       I want to give both sides an opportunity, though, if
25   there is anything additional you'd wish to place on the

1 record.

2 I'll start -- just -- because this is a -- the -- a
3 motion that's brought by the defendants, I'll start with the
4 defendants -- Mr. Abdallah, if there is anything further that
5 you want to put on the record -- and then I will give
6 plaintiffs a chance to respond. But please know I have read
7 everything that's been submitted, both in support and
8 opposition of the motion.

9 Mr. Abdallah, anything -- I'm sorry -- yeah,
10 Mr. Abdallah, anything further that you want to put on the
11 record in support of the motion?

12 MR. ABDALLAH: Your Honor, if I was going to say
13 anything, it would just be reiterating what Your Honor has
14 already indicated that she read, so there's nothing
15 additional.

16 THE COURT: Okay. Thank you so much.

17 From plaintiffs' perspective, Mr. Corthell and
18 Mr. Schlessinger, anything else that you'd like to put on the
19 record?

20 MR. CORTHELL: Nothing from us, Your Honor.

21 THE COURT: Okay. Thank you.

22 MR. CORTHELL: This is Seth Corthell.

23 THE COURT: Thank you, Mr. Corthell. I'm sorry. I
24 should have given you an opportunity to identify yourself. So
25 thank you.

1     So I'm going to go ahead and place my ruling on the
2  record.
3     So pending before the Court is a motion by the Mosque
4  Foundation, which is also known as the Bridgeview Mosque, to
5  quash a subpoena served by Plaintiffs Stanley Boim and Joyce
6  Boim.  The Foundation seeks an order quashing two requests in
7  plaintiffs' subpoena:  First, copies of all minute meetings
8  from 2000 to the present that identify the Foundation's
9  officers and directors and their duties and responsibilities;
10 and, two, to run a search on the Foundation's e-mail accounts
11 and donor records for a list of 48 search terms, which are
12 attached as an exhibit to the Foundation's reply -- to the
13 Foundation's reply brief.  That's Docket 20-3 at Page 6.
14    In resolving this motion, the Court observes that the
15 Foundation adopted a document retention policy in 2013.  See
16 Docket 26-1 at Pages 16 to 17.  And there is apparently no
17 dispute that documents predating 2013 are no longer available.
18    For the following reasons, the undersigned recommends
19 that the district judge deny the motion to quash as follows.
20    First, let me put the standard of review on the
21 record.
22    So "Federal Rule of Civil Procedure 45(d)(3) governs
23 motions to quash or modify a third-party subpoena.  Upon a
24 timely motion, Rule 45(d) mandates that the Court quash or
25 modify a subpoena if the subpoena subjects a person to undue

1  burden."  I'm relying on the case of *Roman v. City of Chicago*,
2  Case No. 20 CV 1717, 2023 WL 121765 at Page *1, Northern
3  District of Illinois, January 6th, 2023.
4      "It is up to the moving party to establish the
5  impropriety of the subpoena."  And I'm relying on *Roman* for
6  that proposition as well.
7      "When determining whether the recipient of a subpoena
8  is being subjected to an undue burden, courts consider a
9  number of factors, including the person's status as a
10 nonparty, the relevance of the discovery, the subpoenaing
11 party's need for the discovery, the breach -- or -- I'm
12 sorry -- the breadth of the request, and the burden imposed on
13 the subpoenaed party."  I'm relying on the case *Parker v. Four*
14 *Season Hotel, Ltd.*, 291 F.R.D. 181, Page 1881, Northern
15 District of Illinois 2013.
16     "In considering these issues, magistrate judges
17 'enjoy extremely broad discretion in controlling discovery.'"
18 For that, I'm relying again on the *Roman* case at Page *1.
19     Ordinarily, a motion to quash a subpoena is a routine
20 discovery motion that presents a nondispositive matter, which
21 a magistrate judge can determine *de novo*.  For that, see case
22 *Channelmark Corp. v. Destination Products International*
23 *Incorporated*, Case No. 99 C 214, 2000 WL 968818, at Page *1,
24 Northern District of Illinois, July 7th, 2000.
25     Even here, where the Foundation has opened a separate

1   case in which to challenge the subpoena, rather than filing it
2   in the underlying case of *Boim v. American Muslims for*
3   *Palestine, et al.*, Case No. 17 CV 3591, a ruling on the motion
4   to quash will not be determinative of plaintiffs' claims to
5   relief in that suit and, therefore, does not present a
6   dispositive matter.  However, given that the district judge
7   has referred the Foundation's motion to the undersigned for --
8   or to me for preparation of a report and recommendation at
9   Docket 18, the following oral ruling on the Foundation's
10  motion constitutes a report and recommendation under 28,
11  United States Code, Section 636(b)(1)(B) and Federal Rule of
12  Civil Procedure 72(b)(1).
13            Let me now turn to the discussion -- to my discussion
14  of the motion.  And I'm going to start first with the meeting
15  minutes.
16            The Foundation argues that plaintiffs' request for
17  meeting minutes dating back to 2013 would subject it to an
18  undue burden.  The Foundation adds that some of the minutes
19  are stored in hard copy while others are stored electronically
20  and that it does not have a dedicated record keeper.  That's
21  at Docket 26 at Page 2.
22            The Foundation observes that plaintiffs' request
23  would require it to redact ten years of meeting minutes
24  because plaintiffs seek only the identities of the officers
25  and directors.  That's Docket 26 at Page 3.

1    The Foundation contends that community members may be
2 unlikely to volunteer to work for it if they know that the
3 Foundation's meeting minutes may be produced during litigation
4 in response to a subpoena.
5    Finally, the Foundation notes that after being served
6 with plaintiffs' subpoena, it searched its employee-issued
7 e-mail accounts and donor records for 11 search terms that
8 were listed in the subpoena -- see Docket 20-3 at Page 2 --
9 and did produce responsive documents.
10    Plaintiffs contend that the identities of the
11 officers and directors is directly relevant to proving that
12 the defendants in the underlying lawsuit, including American
13 Muslims for Palestine, are the alter egos of the Islamic
14 Association for Palestine, or IAP, a defendant in the original
15 *Boim* litigation in which plaintiffs obtained a $156 million
16 judgment.
17    Plaintiffs contend that the Foundation functioned as
18 a "source of competent personnel committed to the mission as
19 well as ideological inspiration, direction, and consistency."
20 I'm quoting from Docket 20 at Page 6.
21    Regarding undue burden, plaintiffs contend that the
22 Foundation's objection fails to demonstrate the nature and
23 extent of the burden.
24    In the exercise of its extremely broad discretion to
25 control discovery, the Court finds that the Foundation has not

1  established that complying with plaintiffs' subpoena will
2  impose an undue burden on it.
3       Turning first to relevance.  First, there is no merit
4  that the Foundation's argument that the evidence sought by
5  plaintiffs is irrelevant and amounts only to a fishing
6  expedition intended to harass the Foundation.
7       To the contrary, the evidence is highly relevant to
8  plaintiffs' allegations that the AMP is an alter ego of IAP
9  and, thus, directly liable for the $156 million judgment in
10 the original *Boim* case.
11      In support of that relationship, plaintiffs have
12 alleged that, first, the Foundation funded the IAP and a
13 successor organization known as KindHearts, and that it now
14 funds the AMP.  That's Docket Entry 179 at Paragraphs 110 to
15 111.
16      The Foundation's sheikh Jamal Said was "the ultimate
17 religious authority for IAP/AMS" and "the religious leader of
18 the community."  That's Docket Entry 179 at Paragraph 112.
19 Said spoke regularly at IAP functions and does so for AMP
20 functions as well according to the filing.
21      Defendant -- second -- third, Defendant Rafeeq Jaber,
22 a former president of IAP, became involved in the IAP through
23 the Foundation.  He suggested that Zionist forces will work
24 against AMP as they did against IAP, which implies an
25 equivalence between the organizations.  That's Docket No. 179

1   at Paragraphs 114 and 116.
2          And also, Abdelbasset Hamayel is a Foundation
3   employee and has served as a temporary executive director of
4   AMP for several years.  His salary is paid by the Foundation.
5   That's Docket 179 at Paragraph 121.  He helped AMP start
6   fundraising.  That's Docket 179, again, at Paragraph 121.
7          Taken as true, these allegations and others in the
8   first amended complaint establish a close relationship between
9   the Foundation and both IAP and AMP.  It is, therefore,
10  reasonable for plaintiffs to request the meeting minutes,
11  which may establish that the Foundation works closely with
12  other persons who were involved with IAP and are now involved
13  with AMP.
14         Turning to the burden, the Foundation has not
15  demonstrated that complying with the subpoena would impose an
16  undue burden on it, even recognizing, as the Court does, that
17  it is a nonparty to this suit.
18         The declaration of Oussama Jammal, the ex-officio
19  member of the Foundation board of directors, in the Court's
20  estimation, is purely conclusory.  It doesn't specify, for
21  example, how often the board meets and, thus, the volume and
22  meeting minutes that are at issue.
23         The Foundation's concerns about needing to redact the
24  minutes can be averted by entering into a protective order
25  with plaintiff.

1    Concerns about the subpoena production deterring
2    community volunteers is speculative and also could be
3    alleviated if the parties enter into a productive order
4    governing the subpoena production.
5    Turning next to the need for the evidence. In
6    addition, the plaintiffs have argued that there is a
7    particular need to seek this information from the Foundation
8    because IAP and AMP operated without regard for corporate
9    formalities, and that AMP "operated as a loose, unstructured
10   enterprise driven by a core group of like-minded individuals"
11   that is "largely the same group that ran IAP." I'm quoting
12   from Docket 179 at Paragraphs 152 to 155. The Foundation has
13   not responded to this point.
14   Considering these factors, the Court finds that
15   complying with the subpoena and producing the meeting minutes
16   will not subject the Foundation to an undue burden. The
17   Court, therefore, recommends that the district judge deny the
18   motion to quash the subpoena as to plaintiffs' request -- as
19   to the plaintiffs' request for meeting minutes.
20   Turning to the second item at issue in the subpoena,
21   plaintiffs' search terms, the Foundation also argues that it
22   should not be required to search its e-mail accounts and donor
23   records for a list of 48 search terms proposed by plaintiffs.
24   Having conducted an initial search of its e-mail and
25   records for 11 of the search terms contained in plaintiffs'

1  subpoena, the Foundation contends that it should not have to
2  undertake a second search.  The Court recommends that the
3  district judge deny the motion to quash this part of the
4  subpoena as well.
5       First, although the Foundation has the burden to
6  demonstrate that plaintiffs' subpoena is improper, its
7  briefing makes no attempt to demonstrate how the plaintiffs'
8  request is unduly burdensome.  Indeed, the Foundation has
9  already searched its e-mails and donor records for some terms,
10 so it's not clear why a more expansive search rises to an
11 undue burden.
12      Second, the Foundation simply asserts that the search
13 terms at issue are irrelevant without attempting to
14 demonstrate that this is in fact the case.  In any event, the
15 search terms, many of which overlap with the entities at issue
16 in plaintiffs' first subpoena requests, are clearly relevant
17 to establishing whether AMP is an alter ego of IAP.
18      Third, the undersigned observes that the Foundation
19 has -- or the Court observes that the Foundation has not
20 indicated any willingness to further meet and confer on the
21 search terms, narrow -- try to narrow them, *et cetera*.  In
22 light of this, the undersigned has no reason -- or reasonable
23 basis to order plaintiffs to narrow their search terms before
24 ordering the Foundation to search the plaintiffs' terms.
25      For these reasons, the Court recommends that the

1  district judge deny the Foundation's motion to quash the
2  subpoena to the extent that it demands the Foundation to run
3  plaintiffs' proposed search terms.
4        In conclusion, in accordance with 28, United States
5  Code, Section 636 and Federal Rule of Civil Procedure
6  72(b)(1), the undersigned respectfully recommends that the
7  district judge deny the Foundation's motion to quash.  The
8  Foundation shall comply with this subpoena and make a
9  responsive production within 30 days after the time for filing
10 objections to this report and recommendation expires or within
11 30 days after the district judge resolves any objections to
12 the report and recommendation, whichever is sooner.
13       The parties are advised that any objection to this
14 report and recommendation must be filed in writing with the
15 Clerk of the Court within 14 days after service of a copy of
16 this report and recommendation.
17       And that's 28, United States Code, Section 636(b)(1)
18 and Federal Rule of Civil Procedure 72(b)(2).  Failure to file
19 a timely objection will constitute a waiver of objections on
20 appeal.  For that, the Court relies on -- see -- or relies on
21 *Video Views, Inc. v. Studio 21, Limited*, 797 F.2d 538 at
22 Page 539, Seventh Circuit, 1986.
23       With respect to what will follow, after this motion
24 hearing ends, I will enter a minute order merely stating that
25 the motion to quash is denied and restating the time period

1    for the production in line with the 14 days to file any
2    objection to the Court's ruling.
3              And if there are objections with respect to the
4    Court's ruling, you can order a copy of the transcript with
5    respect to the Court's findings.
6              Is there anything else to cover at this time from
7    plaintiffs' perspective?
8              MR. CORTHELL:  This is Seth Corthell, Your Honor.
9              I just wanted to clarify one part of your order.  You
10   had mentioned that any concerns about redaction can be
11   alleviated by entering a protective -- a confidentiality
12   order.  We already have one with the defendants who are
13   obviously not the Mosque Foundation, but I'm sure we could
14   come to an agreement along those terms.  I just wanted to be
15   -- make sure I understood.  Is the Court indicating that the
16   meeting minutes should not be redacted and that they should
17   just be subject to a protective order to protect -- to
18   alleviate any of the Mosque Foundation's concerns?
19             THE COURT:  My point was that if there are concerns
20   that the redaction or the act of -- or the time that it would
21   take to do redactions is too cumbersome, too burdensome, that
22   the protective order would alleviate that because they could
23   be produced without redactions subject to that order.
24             However, you know, to the extent that the Foundation
25   wants to redact, that's fine.  I was just trying to find

1 additional ways to alleviate burden.

2 MR. CORTHELL: Okay. I suppose -- Your Honor, this
3 is Seth again.

4 My concern is that we've asked for meeting minutes
5 that will identify directors and their job responsibilities.
6 And if there's redactions, I believe that's going to create
7 grounds for more dispute about what should have been redacted
8 and what should not.

9 So, therefore, I would take the position that the
10 appropriate measure here should just be some sort of an
11 agreement on confidentiality that both, you know, protects the
12 information and any concerns the Mosque Foundation will still
13 have but alleviate, you know, any future disputes about, you
14 know, what information should be redacted and not redacted.

15 MR. ABDALLAH: Your Honor, this is Zaid Abdallah on
16 behalf of the Mosque Foundation.

17 I think counsel is putting the cart before the horse,
18 Judge.

19 THE COURT: I'm sorry. Mr. Abdallah, I'm having --
20 you're -- could you slow down in your speech a little bit.
21 And there is a little bit of an echo as well. So I'm also
22 just having difficulty hearing you.

23 But could you just slow your speech down a little bit
24 so I can -- and, again, I don't know if you're on a
25 speakerphone, but maybe get closer to the speaker.

1        MR. ABDALLAH:  Again, I said I believe counsel is
2    just putting the cart before the horse at this point,
3    Your Honor.
4        When we go ahead and produce everything, if it
5    doesn't have the information that they wanted, I think at that
6    point they could go ahead and, you know, make whatever
7    objection they wanted to make.
8        I mean -- but at this point, Your Honor, if we're --
9    if we have to go ahead and produce the minutes, we will redact
10   the contents of our meetings, which was -- that's not what's
11   been requested.  The only documents that we have that would be
12   responsive to their request in terms of Mosque Foundation
13   board of directors and leadership is the minutes showing who
14   is present and the titles of who is present, Judge.
15       So I don't think it's appropriate for counsel to say,
16   well, you know, what if we don't get the information we want,
17   you know, we should enter into a protective order before then.
18   He doesn't know what he is going to get.
19       THE COURT:  Yeah, and to be frank, this was one of
20   the concerns that the Court had.  So when you look at the
21   request -- so copies of all meeting minutes that identify the
22   Foundation's officers and directors and their duties and
23   responsibilities, I can imagine that these meeting minutes
24   have a lot of additional content in them that are not
25   responsive to that limited request within the subpoena.  So

1  I'm not going to manage what the Foundation does with respect
2  to how they produce these documents.
3           Again, when I had -- when the Court had in its ruling
4  flagged the fact that a protective order would -- or could
5  allay some of the concerns regarding burden as far as the
6  scope of the redactions, that's one portion of what was
7  intended as far as what the protective order could accomplish.
8  But I'm not going to manage how the Foundation goes about
9  producing these records as long as they are producing the
10 information at issue in the subpoena; again, you know, the
11 portions of these minute meetings that identify the
12 Foundation's officers and directors and their duties and
13 responsibilities.  And to the extent that there's
14 nonresponsive information in these meeting minutes, the
15 Foundation is free to redact that information.
16          Is there anything further from the plaintiffs'
17 perspective?
18          MR. CORTHELL:  This is Seth Corthell, Your Honor.
19          Nothing further.  Totally understand your position.
20 Thank you.
21          THE COURT:  Thank you.
22          Mr. Abdallah, is there anything further from the
23 defendants at this time?
24          MR. ABDALLAH:  Your Honor, I just want to clarify
25 with the Court.

1      So is the Court recommending that the Mosque
2 Foundation search for terms like "terror," "suicide,"
3 "Zionist," the term "Mosque Foundation," which is in every
4 e-mail because it's -- they have it in their signature line,
5 and "Galloway" and "Sarsour"?
6      THE COURT:  So the time to have made these arguments,
7 Mr. Abdallah, was in the motion.  And, you know, my read of
8 this record is that, you know, after the Foundation did a
9 search of the 11 search terms and when plaintiffs came back
10 with the 48 search terms, the Foundation, you know, has not --
11 or did not indicate any willingness to further meet and confer
12 on the search terms to include -- to attempt to narrow them or
13 have further discussions.
14      And in addition, I -- as I already said in my ruling,
15 the Foundation has the burden to demonstrate that the subpoena
16 is improper.  And in the briefing with respect to the search
17 terms, there is no attempt to demonstrate how this request is
18 unduly burdensome.
19      And, again, the fact that the Foundation did search
20 for the 11 terms -- it's just not clear why a more expansive
21 search rose -- or would rise to an undue burden.  And, again,
22 there is nothing in this record to reflect that, you know,
23 there was a willingness or even an effort to meet and confer.
24 There was just a hard stop from the Foundation to not do an
25 additional search or to further engage on the search terms.

1        And -- so with the record before this Court -- and,
2   again, the briefing does not go into specifics as to some of
3   the search terms that you just called out, Mr. Abdallah.  So
4   based on the record before the Court, the Court's ordering the
5   Foundation to search for all 48 terms.
6        MR. ABDALLAH:  Okay.
7        THE COURT:  Anything further, Mr. Abdallah?
8        MR. ABDALLAH:  Nothing further, Your Honor.
9        THE COURT:  Thank you very much for everyone's time
10  on a Friday afternoon.  I very much appreciate it.  I hope you
11  all have a good weekend.
12       We'll go ahead and end the motion hearing.  Take
13  care.
14       MR. CORTHELL:  Thank you, Your Honor.
15       MS. JUMP:  Thank you, Your Honor.
16     (Which were all the proceedings heard.)
17              *  *  *  *  *  *
18            C E R T I F I C A T E
19    I certify that the foregoing is a correct transcript, to
20  the extent possible, of the record of proceedings in the
21  above-entitled matter, given the limitations of conducting
22  proceedings via telephone.
23
24  */s/ Amy M. Kleynhans*                    *9/27/2023*
    _____    _____
25  AMY M. Kleynhans, CSR, RPR, CRR       Date
    Official Court Reporter