IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER,<br><br>Defendants. | Civil No. 17-cv-03591<br><br>Hon. Andrea Wood<br><br>Hon. Heather McShain |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS WITHHELD FROM DISCOVERY BY DEFENDANTS**

Plaintiffs Joyce and Stanley Boim (the "Boims" or "Plaintiffs"), by and through their attorneys and pursuant to Federal Rule of Civil Procedure 37(a)(3)(A), LR 37.2, this Court's Standing Orders, and its September 6, 2023 Minute Entry (Dkt. 317), respectfully moves for an Order compelling Defendants American Muslims for Palestine ("AMP"), Americans for Justice in Palestine ("AJP," referred to collectively as "AMP") to produce records it is currently withholding from discovery.

## I. INTRODUCTION

For months, the Boims have attempted to resolve a discovery dispute with AMP concerning AMP's donation records. Unfortunately, the parties are at an impasse as AMP refuses to produce relevant records reflecting donations to the organization.

As alleged in the Boims' Amended Complaint, prior to being found civilly liable for the murder of David Boim at the hands of Hamas terrorists, the Islamic Association for Palestine and

the American Muslim Society (collectively referred to as "IAP") had built a network of financial donors, sponsors, and followers that it relied upon to spread its pro-Hamas message and raise money to be funneled to Hamas via its financial conduit, the Holy Land Foundation. (*E.g.*, FAC at ¶ 40) The Boims maintain that AMP is the alter ego of IAP, in part, because AMP uses substantially the same network of donors, sponsors, and followers to continue IAP's mission. (*E.g.*, FAC at ¶¶ 87-89) To that end, in discovery the Boims sought records of AMP's donors and sponsors, but AMP refuses to produce a substantial amount of those records.

Specifically, ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ But AMP objects to producing that information in discovery, maintaining that the donation information is not relevant and production of it would violate the privacy rights of donors. As noted above, the information is highly relevant to the Boims alter ego claims and, therefore, AMP's boilerplate relevance objection should be overruled. And as to AMP's privacy concerns, throughout this case, the parties have cooperated to protect sensitive information from public disclosure. Plaintiffs intend to treat the donation information AMP is withholding with the same sensitivity, which will address AMP's privacy concerns.

Accordingly, AMP should be compelled to produce the donation records ███ ███
█████████████.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Boims filed this case alleging that AMP is the alter ego of IAP, which was found civilly liable for the murder of the Boims' son David. Prior to the initial Boim Judgment and its subsequent, alleged dissolution, IAP billed itself as the largest grassroots organization dedicated

2

to the cause of Palestine. (FAC ¶ 40) And at that time, IAP had built a network of, among other things, financial donors that enabled it to spread Hamas propaganda and raise money for organizations, such as the Holy Land Foundation, that financially supported Hamas. (*Id.*)

The Boims allege that IAP's alter ego, AMP, retained that network of donors and sponsors. (*E.g., id.*, at ¶¶ 74-75) Therefore, when merits discovery opened and Plaintiffs served written discovery requests to AMP, they sought, among other things, records of donors and contributors to AMP. Previously in jurisdictional discovery, AMP had only produced donor and sponsor information for the 2005-2010 timeframe. ████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

In its September 12, 2022 response to the Boims' discovery requests, AMP objected to producing an updated donor list, indicating that records reflecting donors between 2018 and 2021 are not reasonably calculated to lead to the discovery of admissible evidence and that producing such information would expose the private information of non-parties. (Ex. A) AMP further stated that it would withhold production of an updated donor list unless ordered to produce one by the Court. (*Id.*) After multiple conference calls and email exchanges aimed at resolving the

---

[1] After Plaintiffs produced a copy of the Program from AMP's 2007 Annual Convention, Mr. Ahmad updated his declaration to identify the businesses that advertised in that Program.
[2] Imad was an IAP board member. (FAC ¶ 81)

3

various objections from AMP's September 12 responses, AMP served a revised response to the Boims' requests for donor information that substantially reiterated its initial objection that "subsequent donor information" is not relevant. (Ex. B)

On December 6, 2022, the Boims filed a motion to compel, arguing, among other things, that AMP's objection to producing records outside of the 2005-2010 timeframe should be overruled. (Dkt. 272, at p. 4) This Court subsequently granted the Boims' motion with respect to AMP's objection to producing records outside the 2005 to 2010 timeframe. (Dkt. 301, at pp. 5-7) Following this Court's order, AMP served supplemental responses, again objecting to producing additional donor records. (Ex. C) The supplemental responses referenced tax documents produced concurrently with AMP's responses, but the tax documents did not identify specific donors or sponsors. Eventually, several months later, AMP produced tax records for the years 2015-2017 that identified donations over $5,000 for each of those years.

But the tax documents from 2015-2017 are not the complete record of donation information that AMP maintains. ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████ (*E.g.*, Ex. D) The parties conferred via a video conference on October 11, 2023 to discuss production and withholding of donation records ███████████████

███████ (Ex. E) During that call, AMP maintained that it had produced sufficient donor information in the form of the non-public portions of AMP's 990s, showing donations greater than $5,000. (*Id.*) The only supplement AMP was willing to offer was information reflecting the donations from a limited number of individuals, entities, and events. (*Id.*) Plaintiffs maintained that they are entitled to all of the donation information ███████████████████████ (*Id.*)

4

On October 27, 2023, AMP sent an email ███████████████████████████ ███████████████████████████████████████████████████████ ████████. (Ex. F) The email did not contain any ████████████████████████. (*Id.*) In response to that email, the Boims reiterated (1) the relevance of all the donation information ████████████████████████; (2) that AMP has not articulated a burden to producing that information; and (3) that all of AMP's privacy concerns could be addressed by designating the information pursuant to the Confidentiality Agreement or any other operative orders in the case. (*Id.*)

### III. ARGUMENT

Rule 37 permits a party seeking discovery to move to compel production of documents or disclosure required by FED. R. CIV. P. 26(a) where the responding party has provided evasive or incomplete responses. FED. R. CIV. P. 37(a)(3). The Boims have made good faith efforts to obtain the requested donation information, but AMP has failed to comply.

AMP objects to producing its donation records ████████████████████████ on three bases, all of which are insufficient.

First, AMP maintains "subsequent [*i.e.*, post-2010] donor information is not reasonably calculated to lead to the discovery of admissible evidence on the question of whether AMP/AJP are the alter egos/successor organizations of [IAP]." This argument fails because the Boims have alleged that AMP relies on a substantially similar network of donors as IAP, and therefore, the Boims are entitled to information reflecting the donor base of AMP. Moreover, evidence of a shared donor base is relevant to showing a similarity of operations between IAP and AMP, a factor that the Seventh Circuit and this Court identified as potentially highly relevant to the alter

5

ego analysis. *See, e.g., Boim v. American Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021) (noting relevant alter ego factors, including similarity of operations).

Second, AMP has referenced the burden of producing [REDACTED] [REDACTED], but has failed to articulate any specific impediment to accessing or producing the information. *See Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 U.S. Dist. LEXIS 65847, at *10 (N.D. Ill. Apr. 17, 2019) (finding that a burden objection "must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome.") Given that the donation records [REDACTED] it does not appear that there is any burden to collecting and producing the records.

Finally, AMP maintains that production of the information will unnecessarily expose the private information of non-parties. This objection rings hollow because the parties have already taken measures to ensure the identities of non-parties are protected from disclosure. Indeed, to date, the parties have cooperated to keep the identity of AMP donors protected from public disclosure. And the Boims have no objection to AMP designating personally identifying information produced [REDACTED]. Therefore, in addition to being speculative, any concerns about the public disclosure of the identity of non-parties are best addressed by designating the donor information to protect it from public disclosure. *See Boim, et al., v. American Muslims for Palestine, et al.*, No. 22-cv-6085, Sept. 22, 2023 Hearing Tr., at pp. 10:01-04 ("Concerns about the subpoena production deterring community volunteers is speculative and also could be alleviated if the parties enter into a productive [sic] order governing the subpoena production.") (J. McShain).

## IV. CONCLUSION

For the aforementioned reasons, the Boims respectfully request an Order compelling AMP to produce its donation records █████████████████.

Date: November 17, 2023                    Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 17th day of November 2023.

*s/ Seth H. Corthell*
