UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, ET AL., | |
| Plaintiffs, | No. 17 CV 3591 |
| v. | District Judge Wood |
| AMERICAN MUSLIMS FOR PALESTINE, ET AL., | Magistrate Judge McShain |
| Defendants. | **UNDER SEAL** |

### ORDER

Pending before the Court is defendants American Muslims for Palestine, Americans for Justice in Palestine Educational Fund, and Rafeeq Jaber's motion to quash clawback. [318, 319].[1] Plaintiffs Stanley and Joyce Boim oppose the motion [328, 329]. At the Court's request, both parties filed supplemental briefs [359, 360, 366, 367] addressing certain issues identified in the Court's order of November 29, 2023. [351]. For the following reasons, defendants' motion is granted.

### Background

At issue in this discovery dispute is whether an engagement letter between the law firm Lewin & Lewin LLP, plaintiffs, and Scholars for Peace in the Middle East– a third party whose involvement in this litigation was previously unknown–is protected by the attorney-client privilege.

In May 2017, Lewin & Lewin provided plaintiffs with "a written retainer agreement concerning the financial terms" of the firm's representation of the Boims in this lawsuit. [318-1] 2-4. This engagement letter reflects that Lewin and Lewin had been retained to represent not only the Boims, but also "Scholars for Peace in the Middle East ('SPME') in the continuation of the lawsuit [the firm] filed on the Boims'

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The Court's resolution of the pending motion has required the Court to review and discuss multiple sealed filings, but the Court has attempted to avoid unnecessary discussion of material that the Court has found to be protected by the attorney-client privilege. To the extent the Court has discussed privileged attorney-client communications, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

behalf in federal court in Chicago in May of 2000." [*Id.*] 2. According to its website, SPME is a "nonpartisan" and "grass-roots community of scholars who have united to promote honest, fact-based, and civil discourse, especially in regard to Middle East issues" and who "believe that ethnic, national, and religious hatreds, including antisemitism and anti-Israelism, have no place in our institutions, disciplines, and communities." https://spme.org./about-us/ (last visited Jan. 29, 2024). The engagement letter identifies SPME's reasons for becoming involved in the Boims' lawsuit:

> Consistent with its mission, SPME has chosen to retain Lewin & Lewin, LLP and Locke Lord, LLP to continue the suit filed in federal court in Chicago in May of 2000 pursuant to the Anti-Terrorism Act on behalf of the Boims against certain groups and individuals that provided material support to the terrorist organization Hamas (the "*Boim Case*"). The *Boim Case* resulted in a judgment of $156 million, of which only a small portion has been paid. The purpose of the continued litigation is to enforce the judgment against groups and individuals who are believed to be successors or alter egos of the *Boim Case* judgment debtors. This litigation is consistent with the purposes of SPME and has important public policy implications, including maintaining the integrity of the Anti-Terrorism Act. SPME intends to raise funds to support this litigation for that public policy purpose. SPME will be responsible for paying or causing others to pay our legal fees and disbursements incurred in connection with our representation of the Boims * * * in accordance with this letter. * * *
>
> Our clients in this matter will be the Boims and SPME. SPME will be responsible for paying our legal fees and disbursements incurred in connection with our joint representation of our clients in accordance with this letter, but SPME understands and acknowledges that such payment does not mean that it has the right or the ability to influence the Firm's exercise of its professional judgment on behalf of the Boims.
>
> Our representation in the litigation does not encompass any other individual, or entity, or any affiliates, officers, directors, employees, shareholders, or other stakeholders of SPME. We will appear in this litigation solely on behalf of the Boims.

[318-1] 2-3.

The engagement letter, which is dated May 4, 2017, goes on to further define these parties' fee arrangement. [*Id.*] 3-4. It is signed by attorney Nathan Lewin and the Boims, but the signature line for the SPME's executive director is blank.

On July 17, 2023, one of defendants' attorneys discovered the engagement letter on the internet while conducting a Google search for the term "Stanley Boim." [318-3] 2-3, at ¶¶ 5-6. According to defense counsel, the forty-seventh search result that was returned during this Google search contained the words "lewin & lewin llp" in its title. [*Id.*] 3, at ¶ 7. When counsel clicked the link, which was not behind a paywall or password-protected, a copy of the engagement letter opened. [*Id.*], at ¶¶ 8-9. The letter was apparently in PDF format and was "hosted on a site called Megalim." [*Id.*], at ¶ 11.

On July 25, 2023, and in accordance with ABA Model Rule of Professional Conduct 4.4 and Illinois Rule of Professional Conduct 4.4,[2] notified plaintiffs' counsel of their discovery of the engagement letter. [318-2] 2. Later that same day, one of plaintiffs' attorneys responded that he was working to confirm the authenticity of the document and asked defense counsel to treat the letter as inadvertently produced privileged material and not make use of it pending further investigation. [318-4] 3. On August 4, 2023, plaintiffs' counsel served defense counsel with a formal clawback letter, asserting that the engagement letter was protected by the attorney-client privilege and had been inadvertently disclosed apparently because of actions taken by plaintiffs' daughter, Bracha Reich, in 2017. [318-5] 6. According to a declaration submitted by Reich, she was living in Israel in May 2017 and working at Megalim, a multidisciplinary learning and research center, when her parents asked her to "scan and send a letter to their attorneys at Lewin & Lewin." [326-1] 1, at ¶¶ 2-3. Reich explained that her elderly parents did not have a computer or scanner or "the technological fluency necessary to operate a computer or scanner." [*Id.*], at ¶ 4. To help her parents, Reich used "Megalim's scanner to scan and send the letter to [her] Megalim-issued email address. [She] then sent the letter to [her] personal email address and then forwarded it along to Lewin & Lewin." [*Id.*] 2, at ¶ 5. This process generated "an image PDF, meaning it was not text searchable," and Reich "did not take any subsequent steps to render the PDF text searchable." [*Id.*], at ¶ 9. Finally, Reich stated that "the network to which the Megalim scanner and [her] computer were connected was password protected." [*Id.*], at ¶ 8.

In further support of their clawback efforts, plaintiffs notified Megalim that the engagement letter was "inadvertently accessible via a Google link to its website and should be removed." [318-5] 7. Megalim complied with this request, and plaintiffs represented that the letter "is no longer posted to the web address" where defense counsel found the document and "does not appear to be accessible via a Google search." [*Id.*]. Plaintiffs also "undert[ook] to ensure that the Engagement Letter is no longer available via any web archives." [*Id.*]; *see also* [325] 1 (noting that plaintiffs "immediately and successfully took action to remove the Letter from . . . the Internet Archive").

---

[2] These rules generally require that an attorney who receives a document that was inadvertently produced by opposing parties or their lawyers promptly notify the producing party so that protective measures can be taken.

3

On September 11, 2023, defendants filed their motion to quash clawback. [318]. After reviewing the motion and plaintiffs' opposition brief, the Court ordered additional briefing to address (1) the extent to which, if at all, the engagement letter was privileged; (2) whether, assuming that the engagement letter was privileged in whole or in part, plaintiffs and Reich had taken reasonable steps to ensure that the letter would not be inadvertently disclosed; and (3) assuming that the letter remained privilege after it had been scanned at Megalim, whether the letter remained privileged despite its eventual upload to and accessibility on the internet. [351] 1-2.

## Discussion

### I. The Engagement Letter Is Privileged Only To The Extent It Discloses SPME's Motivations For Retaining Counsel.

#### A. Parties' Arguments

In moving to quash plaintiffs' attempt to clawback the engagement letter, defendants argued that engagement letters are generally not protected by the attorney-client privilege. [318] 6. They also contended that the letter was not privileged because it contains no legal opinions or legal advice from plaintiffs' attorneys. [*Id.*]. Plaintiffs responded that the engagement letter was privileged because "a significant purpose of this Letter was to set forth the financial arrangement whereby [SPME] agreed to pay the Boims' legal fees and costs." [325] 4. Plaintiffs also argued that the letter contained confidential information: "the Boims' ability to financially sustain the costs of pursuing this litigation," "the identity of a third party that would provide the necessary funding," and "the contours and limits of SPME's involvement in the litigation." [*Id.*] 5. Plaintiffs contended that, because they had disclosed "this information" to the Lewin firm in confidence, it was protected by the attorney-client privilege. [*Id.*].

After reviewing the briefing, the Court ordered the parties to file supplemental briefing addressing the limited exception recognized by the Seventh Circuit to the general rule that a client's identity is not protected by the attorney-client privilege. [351] 1. Plaintiffs argued that "client identity and fee information" is privileged "in instances where disclosing such information would effectively disclose [an] unknown client's motivations for seeking representation." [359] 3. Plaintiffs maintained that the engagement letter here should be privileged because it discloses both the existence of an attorney-client relationship (between SPME and the Lewin firm) and SPME's alleged motivation for seeking representation (maintaining the integrity of the Anti-Terrorism Act). [*Id.*] 4. Consistent with these arguments, plaintiffs have submitted a version of the engagement letter with proposed redactions that eliminate all references to (1) SPME's identity and its involvement in this case, (2) SPME's claimed motivations for retaining Lewin & Lewin to represent it in connection with this litigation, and (3) the fee structure between the Lewin firm and SPME. *See* [359-

4

1]. In their supplemental briefing, defendants argued that no part of the engagement letter was privileged. [366] 5-7. As for those parts of the letter that plaintiffs claimed represented SPME's motivations for retaining counsel, defendants maintained that these portions of the letter are more accurately characterized as SPME's motivations for participating in the litigation, not retaining counsel. [*Id.*] 6-7. Should the Court reject their argument that nothing in the letter is privileged, defendants have also submitted proposed redactions that eliminate all references to SPME but leave all other portions of the letter unredacted. *See* [366-1].

### B. Legal Standard

"The attorney-client privilege protects communications made in confidence by a client . . . to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The Seventh Circuit has "summarized the essential general principles governing the privilege" as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).[3]

"The attorney-client relationship itself does not create a cloak of protection draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990) (internal quotation marks omitted). Rather, "[t]he attorney-client privilege applies only if [the communications] constitute legal advice or tend directly or indirectly to reveal the substance of a client confidence." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020). Thus, "a proper invocation of the privilege is limited to that which is necessary to achieve its purpose, which is to protect confidential disclosures made within the context of an attorney-client relationship." *In re Subpoenaed Grand Jury Witness*, 171 F.3d 511, 512 (7th Cir. 1999).

Decisions from the Seventh Circuit and district courts within the Circuit have recognized two general rules that bear on defendants' motion to quash.

First, "[a]s a general principle, information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a

---

[3] Because this case arises under federal law, *see Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 554-57 (7th Cir. 2021), the Court applies federal privilege law. *See* Fed. R. Evid. 501.

confidential communication between the attorney and the client." *Grand Jury Witness*, 171 F.3d at 513; *see also Art Akiane LLC v. Art & Soulworks LLC*, No. 19 C 2952, 2022 WL 3357420, at *2 (N.D. Ill. Aug. 15, 2022) ("Whether Art Akiane is paying legal fees–'yes or no'–does not reveal anything remotely in the nature of a client confidence or legal advice."); *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, No. 16 C 4877, 2017 WL 440730, at *5 (N.D. Ill. Feb. 1, 2017) ("The fact that an attorney-client relationship is created and the general information incidental to the attorney-client relationship, such as the payment of fees, simply does not amount to legal advice protected by the attorney-client privilege.").

Second, "ordinarily the identity of a client does not come within the scope of the privilege." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *see also Am. Council of Blind of Metro. Chicago v. City of Chicago*, No. 19 C 6322, 2021 WL 5321054, at *1 (N.D. Ill. Nov. 16, 2021) ("Information such as the identity of the client . . . is not privileged."); *Gonzalez v. Scaletta*, Case No. 17-cv-7080, 2021 WL 4192065, at *36 (N.D. Ill. Sept. 15, 2021) ("Federal courts uniformly allow the identity of the client and matters regarding fee arrangements to be discovered[.]"). But the Seventh Circuit has recognized a limited exception to this rule: "the identity of a client may be privileged in the rare circumstance when so much of an actual confidential communication has been disclosed already that merely identifying the client will effectively disclose that communication." *BDO Seidman*, 337 F.3d at 811. For this exception to apply, a confidential communication must already have been disclosed. *See Tillotson v. Boughner*, 350 F.2d 663, 665 (7th Cir. 1965) ("there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source"); *see also BDO Seidman*, 337 F.3d at 811; *Grand Jury Witness*, 171 F.3d at 513-14; *Cherney*, 898 F.2d at 567-68.

### C. SPME's Motivations for Retaining Counsel to Represent It in Connection with the Litigation Are Privileged, But the Remainder of the Engagement Letter Is Not Privileged.

Having considered the parties' arguments and the substance of the engagement letter in light of the applicable law, the Court finds that most of the letter is not privileged but that small portions of the letter that describe SPME's motivations for retaining counsel are privileged.

#### 1. SPME's Identity Is Not Privileged.

To begin with, the fact that SPME is a client of Lewin & Lewin that is involved in this litigation is not privileged. As noted above, the general rule is that a client's identity and the fact that an attorney-client relationship has been formed are not privileged matters. *See BDO Seidman*, 337 F.3d at 811 *Am. Council of Blind*, 2021 WL 5321054, at *1; *Huntington*, 2017 WL 440730, at *5.

6

Moreover, this is not one of the rare cases when a client's identity must be considered privileged to avoid the disclosure of an "actual confidential communication." *BDO Seidman*, 337 F.3d at 811. In those cases where the Seventh Circuit held that the attorney-client privilege protected a client's identity, the substance of the client's confidential communication was already public knowledge. Thus, in *Cherney*, the prosecution knew that an undisclosed client had paid the legal fees of a criminal defendant involved in a drug conspiracy because the client was concerned about his own involvement in the same conspiracy. *See* 898 F.2d at 566-67. In upholding the lawyer's refusal to identify this client, the Seventh Circuit explained that the client's identity was privileged "because its disclosure would be tantamount to revealing the premise of a confidential communication: the very substantive reason that the client sought legal advice in the first place." *Id.* at 568. Likewise, in *Grand Jury Witness*, a lawyer refused to comply with a subpoena requiring him to identify who paid his legal fees in connection with the lawyer's representation of 21 defendants in a state-court gambling prosecution. 171 F.3d at 512-13. The Seventh Circuit held that the fee-payor's identity was privileged because "disclosure of this information would identify a client . . . who is potentially involved in targeted criminal activity which . . . would lead to revealing that client's motive to pay the legal bills for some of [the lawyer's] other clients. And motive, we think, is protected by the attorney-client privilege." *Id.* at 513. As these cases demonstrate, courts will find a client's identity to be privileged only when doing so is a necessary means to prevent disclosing the substance of a client's confidential communication.

Given the unique facts of this case, the Court concludes that the narrow exception recognized by the Seventh Circuit in *Cherney*, *BDO Seidman*, and other cases does not apply. Unlike those cases, this is not a case where a client's motivations for retaining counsel are publicly known. To the contrary, and as defendants themselves have accurately pointed out, SPME's reasons for retaining counsel–and even their very involvement in this litigation–were unknown until July 2023, when defense counsel stumbled across the engagement letter while searching Google. *See* [366] 13 ("Until discovering this letter, Defendants had no idea that SPME is actively participating in this litigation[.]"). And because plaintiffs have invoked the clawback mechanism in Civil Rule 26(b)(5)(B), defendants must (and, so far as the Court is aware, are honoring their obligation to) sequester the engagement letter and make no use of it pending the Court's resolution of the privilege claim. Accordingly, the Court is not presented with a situation where it must shield SPME's identity as a client to avoid the "effective[ ] disclos[ure]," *BDO Seidman*, 337 F.3d at 811, of otherwise confidential motivations that have already become public. Instead, and consistent with the core principle that the attorney-client privilege protects only "confidential disclosures made within the context of an attorney-client relationship," *Grand Jury Witness*, 171 F.3d at 512, the Court can protect those disclosures directly by reviewing the engagement letter and redacting the confidential disclosures themselves.

7

Because a client's identity and the fact that an attorney-client relationship exist are not privileged, and because the narrow exception to that rule recognized by the Seventh Circuit does not apply in this case, the Court holds that SPME's identity as a client of the Lewin firm is not privileged.

### 2. The Fee Arrangement Is Not Privileged.

The Court also rejects plaintiffs' argument that the engagement letter is privileged to the extent it discusses the fee arrangement between plaintiffs, SPME, and the Lewin firm. Again, the general rule is that "the payment of fees is not a confidential communication between the attorney and the client," *Grand Jury Witness*, 171 F.3d at 513, and plaintiffs have not substantiated their claim that the particulars of their fee agreement with SPME and Lewin & Lewin disclose any privileged communications. Plaintiffs maintain that they disclosed to Lewin & Lewin, in confidence, the fact that they could not afford the costs of this litigation. [318] 5. But even assuming that this were true, the engagement letter does not reveal or even allude to this fact at all; to the contrary, the letter makes no reference to plaintiffs' claimed inability to finance the litigation themselves. *See* [318-1] 2-4.

Plaintiffs' further argument that the fact that SPME is financing the litigation, and "the contours and limits of SPME's involvement in the litigation," are confidential because they were discussed with counsel is foreclosed by the general rule that fee matters are not privileged. *See Huntington*, 2017 WL 440730, at *5 ("the general information incidental to the attorney-client relationship, such as the payment of fees, simply does not amount to legal advice protected by the attorney-client privilege"); *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 572704, at *2 (E.D. Tenn. Feb. 24, 2022) ("In almost every situation where one person pays the legal fees of another, the fact of that arrangement is fair game for disclosure and no privilege to withhold that fact exists.").

### 3. SPME's Motivations for Retaining Counsel Are Privileged.

Finally, the Court agrees with plaintiffs that the engagement letter reflects SPME's motivations for retaining counsel for purposes of participating in this litigation, and "[a] client's motive for seeking legal advice is undeniably a confidential communication." *Cherney*, 898 F.2d at 568; *see also Grand Jury Witness*, 171 F.3d at 513. More specifically, the Court finds that only the italicized language in the following portions of the engagement letter reflects or embodies SPME's motivations for retaining counsel and are protected by the attorney-client privilege:

- Page 1, second full paragraph, first sentence: *Consistent with its mission*, SPME has chosen to retain counsel Lewin & Lewin, LLP and Locke Lord, L.L.P. *to continue the suit* filed in federal court in Chicago in May of 2000 pursuant to the Anti-Terrorism Act on behalf of the Boims against certain

8

groups and individuals that provided material support to the terrorist organization Hamas (the "Boim Case").

- Page 1, second full paragraph, fourth sentence: "*This litigation is consistent with the purposes of SPME and has important public policy implications, including maintaining the integrity of the Anti-Terrorism Act.*"

The Court finds that this italicized language is privileged because it constitutes an explanation of what motivated SPME to retain counsel–*i.e.*, because doing so was "[c]onsistent with its mission"–and the reason why SPME decided to retain counsel (*i.e.*, "to continue the suit" that the Boims had begun in 2000). Likewise, the italicized language in the fourth sentence of the first full paragraph on page 1 of the letter is privileged because it reflects and embodies SPME's reasons for retaining counsel to pursue the litigation: because doing so was "consistent with the purposes of SPME" and the litigation had "important public policy implications." In so holding, the Court rejects defendants' argument that SPME's motivations for retaining counsel and becoming involved in this litigation, which are based in SPME's purposes and public-policy goals, do not qualify as confidential communications because those purposes and goals are expressed publicly on SPME's website. [366] 6. This argument wrongly conflates SPME's publicly expressed goals and mission with its private communications to the Lewin & Lewin firm that it was motivated to retain counsel and become involved in the litigation *because of* those goals. Finally, the Court rejects defendants' argument that the letter reflects only the reasons why SPME sought to participate in the lawsuit, rather than its reasons for retaining counsel. The letter expressly discusses why "SPME has chosen to retain" the Lewin firm to represent it in connection with this litigation, and the italicized portions of the letter are privileged because they reflect or embody those motivations.

For these reasons, the Court finds that the engagement letter is privileged only in part and only as reflected in the italicized language above.

## II. Plaintiffs' Failure To Take Reasonable Steps To Prevent An Inadvertent Disclosure Waived The Privilege.

Having found that the engagement letter is privileged in part, the Court now turns to defendants' arguments that plaintiffs waived the privilege by (1) voluntarily disclosing the letter to their daughter, a third-party who does not have an attorney-client relationship with the Lewin firm; and (2) failing to take reasonable steps to ensure that the letter was not inadvertently disclosed when their daughter used a scanner at her place of employment to transmit a copy of the letter to her work-issued email address.

9

### A. Sharing the Letter with Plaintiffs' Daughter Did Not Waive the Privilege.

Defendants first argue that plaintiffs waived the attorney-client privilege over the letter when they "shared its contents with their adult daughter." [318] 8. This argument invokes the general rule that "a party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party[.]" *Anaya v. Birck*, No. 21-cv-2624, 2022 WL 1523640, at *3 (N.D. Ill. May 13, 2022). But an exception to this rule provides that a disclosure of confidential information "to a third party does not waive the privilege when the third party is the attorney's or client's agent." *Ormond v. Anthem, Inc.*, Nos. 1:05-cv-1908-TWP-TAB & 1:09-cv-798-TWP-TAB, 2011 WL 2020661, at *2 (S.D. Ind. May 24, 2011); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 517 (disclosure of confidential communication to third party "does not waive the privilege if . . . the third-party is included in or copied on email communications . . . to facilitate effective communication between lawyer or client"). The Court finds that this exception applies here because the Boims' daughter was acting as an agent for her parents for purposes of facilitating communications between them and the Lewin firm. Because plaintiffs did not own a computer or scanner, nor did they know how to operate a scanner, they asked Reich to scan the letter for them and send it to the Lewin firm. *See* [326-1] 1, at ¶ 4. With her "only intent" being to "transmit the letter to Lewin & Lewin on behalf of [her] parents," Reich agreed to do so, scanned the letter, and emailed the letter to the Lewin firm. [*Id.*] 2, at ¶ 6. In these circumstances, plaintiffs' disclosure of the letter to their daughter did not operate as a waiver.

### B. Plaintiffs Have Not Demonstrated That They Took Reasonable Steps to Prevent an Inadvertent Disclosure.

Next, plaintiffs argue that no waiver occurred when the engagement letter made its way onto the internet because any disclosure and subsequent placement of the letter was inadvertent, and that Reich took reasonable steps to prevent disclosure of the letter. [359] 5-6. Defendants dispute this point, arguing primarily that plaintiffs have not offered sufficient evidence about the workings of Megalim's scanner, its computer network, or its email system to establish whether it was reasonable for Reich to believe that using the Megalim scanner to scan the engagement letter would avoid an inadvertent disclosure. [366] 9-12.

Federal Rule of Evidence 502(b) provides that "disclosure of privileged information may not operate as a waiver where: '(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." *Club Gene & Georgetti, LP v. XL Ins. Am., Inc.*, No. 20 C 652, 2021 WL 1517929, at *2 (N.D. Ill. Apr. 16, 2021) (quoting Fed. R. Evid. 502(b)). The proponent of the privilege claim has

10

the burden to show that it complied with Rule 502. *See DiLeo v. Meijer Stores Ltd. P'ship*, Case No. 17-CV-3680, 2021 WL 1258779, at *2 (N.D. Ill. Apr. 5, 2021) ("As the proponent of the privilege, Defendant also must show that it took reasonable steps to prevent the disclosure and that it promptly took reasonable steps to rectify the error.").

### 1. The Disclosure Was Inadvertent.

First, the Court finds that the disclosure of the engagement letter was inadvertent. Rule 502(b) "poses a straightforward question of intent." *Hudgins v. Total Quality Logistics, LLC*, Case No. 16-cv-7331, 2022 WL 1262082, at *2 (N.D. Ill. Mar. 1, 2022). Thus, an "inadvertent" disclosure is one that is "unintentional." *DiLeo*, 2021 WL 1258779, at *2. It is obvious from Reich's declaration that she did not intend to make the engagement letter publicly available, and defendants do not dispute this point.

### 2. Plaintiffs Have Not Shown That Reich's Use of the Megalim Scanner Was a Reasonable Means of Avoiding an Inadvertent Disclosure.

Second, the Court finds that plaintiffs have not carried their burden to demonstrate that they took reasonable steps to prevent the disclosure. *See DiLeo*, 2021 WL 1258779, at *2.

"Determining whether a party took reasonable steps to prevent disclosure and to rectify any error requires consideration of a variety of factors including the procedures followed to avoid producing privileged material, the volume and timing of the production, and overriding issues of fairness." *Club Gene & Georgetti*, 2021 WL 1517929, at *1. "Prior to the passage of Rule 502(b), courts used a balancing approach that required consideration of several factors, including the scope of discovery, to assess whether privilege had been waived." *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *13 (N.D. Ill. Apr. 16, 2021) (internal quotation marks omitted); *see also Carmody v. Bd. of Trs.*, 893 F.3d 397, 406 n.2 (7th Cir. 2018) ("Before Rule 502 was adopted, [the Seventh Circuit] addressed waiver by inadvertent disclosure by considering (1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness.") (internal quotation marks omitted). "Courts continue to rely on those factors for guidance in determining whether a party has taken reasonable steps to avoid disclosure under Rule 502(b)(2)." *Wier*, 2021 WL 1517975, at *13.

In ordering supplemental briefing on this issue, the Court highlighted the possibility that it might need "more facts about the computer network at Megalim, the number of users who had a password and could access the network, and whether

11

documents scanned or uploaded to the network would be seen or accessed by anyone with a network password[,]" but the Court did not order that any particular evidence be submitted, leaving it to the parties to develop the record as they saw fit. [351] 2. Defendants have not offered any additional evidence, but plaintiffs have submitted a declaration from Amir Ofer, the System Administrator for the City of David in Jerusalem. [360-1]. Ofer explains that the Megalim Institute, where Reich worked when she scanned the engagement letter, "is housed in the City of David," and that, by virtue of his position as the City of David's System Administrator, Ofer has "become familiar with Megalim's computer network and system for converting hardcopy documents to a digital format using Megalim's scanner." [*Id.*] 1, at ¶ 2. Based on this experience, as well as his "communications with Bracha Reich," Offer states that he is "familiar with the method by which she scanned and transmitted her parent's engagement letter . . . using the Megalim scanner and her email." [*Id.*], at ¶ 3. Ofer then states that, "when Bracha scanned the [letter] using Megalim's scanner, it was sent directly from Megalim's scanner, which is connected to Megalim's password-protected network, to Bracha's password-protected email account via a program on the scanner that allows users to scan hard copy documents directly to a specified email account." [*Id.*] 2, at ¶ 6. According to Ofer, Reich's use of the scanner "did not make the document accessible via Megalim's website or its network." [*Id.*], at ¶ 8. Ofer further explains that he was not able to determine "who, if anyone, uploaded the [letter] such that it was accessible, when the [letter] was accessible, or if any other individuals accessed the [letter]." [*Id.*], at ¶ 10. Finally, Ofer opined that "it appears the [letter] was at some point accidentally uploaded to a part of Megalim's website where it was not visible to persons visiting the website but was accessible to Google's search engine crawlers." [*Id.*] 9.

Relying on Offer's and Reich's declarations, plaintiffs argue that Reich's use of the scanner satisfied Rule 502(b)(2) because "she used a function that should have made the Letter accessible to her alone." [359] 5. Plaintiffs contend that, "somewhere along the line and for reasons that remain unknown, the Letter was inadvertently posted on a part of Megalim's website that appears to have been accessible to Google's search engine crawlers." [*Id.*] 6. While this was "unfortunate," plaintiffs argue that the inadvertent disclosure was not "a function of her failure to take reasonable precautions[.]" [*Id.*]. Defendants respond that plaintiffs have not carried their burden to demonstrate that Reich's use of the scanner was reasonably likely to avoid an inadvertent disclosure of the engagement letter. [366] 9-11. Defendants first argue that the Court should strike the Ofer declaration, or give it minimal or no weight, because it is not based on Ofer's personal knowledge, but rather on Ofer's assumptions as to how the Megalim network functioned. [*Id.*] 9-10. Defendants next argue that Ofer's declaration fails to address whether Megalim had any relevant policies governing its employees use of their work-issued email address and/or office equipment to conduct personal business. [*Id.*] 11. As defendants observe, the existence of such policies can affect whether an employee who shares privileged

12

material over an employer's email system or computer network has waived or preserved the attorney-client privilege. [*Id.*].

Having considered the relevant evidence in the record, the Court is unable to conclude that Reich's use of the Megalim scanner to scan the engagement letter and transmit it to her work-issued email address amounted to reasonable steps to avoid an inadvertent disclosure. Based on Reich's declaration–the substance of which is not contradicted–the Court finds that Reich used the Megalim scanner to generate a non-text-searchable PDF version of the engagement letter that was transmitted to her Megalim-issued email address. [326-1] 2, at ¶ 5. But plaintiffs have offered no evidence addressing whether Megalim allowed its employees to conduct personal business on its computer equipment, whether it monitored its employees' use of email, or whether Megalim advised Reich of any such policies. As other decisions from this District have recognized, whether an employee's use of her work-issued email account to communicate with an attorney or share privileged material results in a waiver of the attorney-client privilege is "assessed by considering four factors: [1] whether the employer banned personal use of its computers or e-mail; [2] whether the employer monitored the use of its computers or e-mail; [3] whether the employer or others had access to the computer or e-mail; and [4] whether the employer notified the employee about these policies." *Cho v. DePaul Univ.*, Case No. 18 C 8012, 2020 WL 2526486, at *1-2 (N.D. Ill. May 17, 2020); *see also Goldstein v. Colborne Acquisition Grp.*, 873 F. Supp. 2d 932, 935 (N.D. Ill. 2012). Having failed to offer evidence on this important issue, plaintiffs cannot carry their burden to demonstrate that Reich could reasonably have expected that any privileged material she scanned and transmitted to her work-issued email account would have remained privileged, and thus that her use of the Megalim scanner and her work-issued email account were reasonable steps toward maintaining the privilege and avoiding an inadvertent disclosure.[4] *See DiLeo*, 2021 WL 1258779, at *2 (party invoking privilege has burden to "show that it took reasonable steps to prevent the disclosure"). Furthermore, the end result here–the undisputed placement of the letter on the internet and its public availability via a Google search–is inconsistent with plaintiffs' asserted, but unsubstantiated, claim that it was reasonable for Reich to believe that she had taken reasonable steps to preserve privilege over the letter. Finally, even if Ofer has sufficient personal knowledge to withstand defendants' request to strike, the declaration does not rule out the possibility that, once the letter was scanned, it was available to or accessible by others using Megalim's network. To the contrary, Ofer could only speculate that the upload was "accidental," which not only fails to shed light on how Megalim's scanner-to-email function actually worked, but also implies that the letter was available to others and beyond the parameters of the scan-to-email function such that it was possible for the letter to be uploaded to the internet.

---

[4] Given this holding, the Court need not resolve defendants' separate challenges to Ofer's declaration.

13

Accordingly, Reich's inadvertent disclosure of the engagement letter by using the Megalim scanner and her work-issued email account operated as a waiver of the attorney-client privilege over those portions of the letter that the Court determined to be confidential communications.[5]

In so holding, the Court recognizes that defendants' argument about the significance of Megalim's email and computer-use policies was raised only in their supplemental opposition brief, which was filed after plaintiffs filed their supplemental brief, and that the Court's briefing schedule did not call for plaintiffs to file a reply. *See* [351] 2; [352]. The Court has therefore considered whether it should afford plaintiffs an opportunity to file a reply addressing this issue. But in the exercise of the Court's "extremely broad discretion in controlling discovery," *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013), the Court declines to do so. First, because the parties' original briefs were "insufficient to resolve the issues raised by plaintiffs' attempt to clawback the engagement letter" [351] 1, the Court has already afforded the parties the opportunity to submit supplemental briefing. Second, in calling for those supplemental briefs, the Court flagged the possibility that additional evidence might be needed to resolve the Rule 502(b) issue and noted that plaintiffs had the burden to substantiate their privilege claim. [*Id.*] 2. Nevertheless, plaintiffs did not address the email issue despite obtaining a declaration from Ofer, who demonstrated familiarity with some aspects of Megalim's computer network and the capabilities of its email system but who was unable to say how the letter could have become public. As the party with the burden to establish compliance with Rule 502(b), plaintiffs also bear the risk of failing to make an adequate record to demonstrate such compliance. Third, the Court does not believe that the issue raised by defendants was so novel or surprising that fairness requires that plaintiffs be given another chance to address it. On the contrary, the parties' original briefs, Reich's declaration, and the Court's order all discussed the fact that Reich had used a work-issued scanner to scan, and a work-issued email account to transmit, material that was allegedly subject to the attorney-client privilege. The point raised by defendants' supplemental opposition brief was thus squarely within the scope of the issues as framed by the parties and the Court and could have been addressed by plaintiffs in their supplemental brief. Finally, plaintiffs did not request an opportunity to respond to defendants' supplemental opposition brief, which was filed over five weeks ago. [366, 367]. For these reasons, the Court declines to grant plaintiffs leave to file a reply brief (which could, in turn, prompt a request by defendants to file a sur-reply) and further prolong this discovery dispute.

---

[5] Because Reich was acting as plaintiffs' agent for purposes of transmitting the letter to the Lewin firm, her actions are attributed to plaintiffs themselves. *See Pride v. City of Aurora*, Case No. 23-cv-259, 2023 WL 3569130, at *30 (N.D. Ill. May 18, 2023) ("In general, an agent acting with actual or apparent authority binds his principal, and an agent's acts are lawfully imputed to his principal while the agent is acting within the scope of his authority."); *see also United States v. 7108 W. Grand Ave.*, 15 F.3d 632, 634 (7th Cir. 1994) ("the errors and misconduct of an agent redound to the detriment of the principal").

### 3. Plaintiffs Promptly Took Reasonable Steps to Rectify the Disclosure.

Finally, while a moot point in light of the Court's holding immediately above, for the sake of completeness the Court finds that plaintiffs acted reasonably and promptly to rectify the inadvertent disclosure of the engagement letter. When defense counsel notified plaintiffs' counsel on July 25, 2023 that the engagement letter was publicly available on the internet, plaintiffs' counsel notified the defense that same day that the engagement letter appeared to be a privileged document and asked that defense counsel sequester and not make use of the document. [318-4] 3. Plaintiffs' counsel immediately began an investigation and discovered the circumstances surrounding Reich's scanning of the letter at Megalim in 2017. [318-5] 2. Counsel then took steps to successfully remove the letter from Megalim's network, the Google search results where defense counsel found the letter, and the Internet Archive. *See* [325] 1, 4. Finally, on August 4, 2023–only a week after defense counsel alerted them about the engagement letter–plaintiffs' counsel served the defense with a formal clawback request under Rule 26(b)(5). [318-5]. 6-7

In these circumstances, that the engagement was publicly available on the internet for an unknown, but perhaps lengthy, period of time does not undermine the Court's conclusion. When deciding if a party took reasonable and prompt steps to rectify an inadvertent disclosure, "courts focus on the producing party's response after it realizes that it has disclosed privileged material." *Wier*, 2021 WL 1517975, at *15 (internal quotation marks omitted). Thus, "the time to rectify the error begins from the producing party's discovery of the inadvertent production." As just discussed, plaintiffs' counsel requested that the letter be treated as privileged on the same day that defense counsel advised of the disclosure, and counsel then began an investigation into how the letter had come to be publicly available on the internet and issued a clawback letter within the following week. Plaintiffs' counsel's response was both reasonable and prompt and complied with Rule 502(b)(3). Finally, there is no evidence in the record that, prior to defense counsel's communication on July 25, 2023, plaintiffs knew or should have known that the engagement letter was publicly available on the internet. Nor is there any evidence that anyone other than defense counsel accessed the letter. Accordingly, the Court does not give any significant weight to the fact that the engagement letter may have been publicly available on the internet for several years. *See* Fed. R. Evid. 502(b), Explanatory Note (2007) ("The rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.").

15

## Conclusion

For the reasons set forth above, defendants' motion to quash clawback [318, 319] is granted. The Clerk of Court is directed to file this Order under seal, and the Order shall remain sealed for 14 days from the date of this Order or until any appeal of this Order to the District Judge shall be resolved, whichever is later. In light of plaintiffs' position, *see* [359] 1 n.1, the Clerk of Court is also directed to unseal the Court's order of November 29, 2023 at Docket Entry 351.

*/s/ Heather K. McShain*

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 5, 2024**