IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, et al.<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>AMERICAN MUSLIMS FOR PALESTINE, et al.,<br><br>　　　　Defendants. | Civil No. 17-cv-03591<br><br>Hon. Andrea Wood<br><br>Hon. Heather McShain |

**DEFENDANTS' RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Factual and Procedural Background ........................................................................ 1

III. Relevant Legal Standard ............................................................................................ 3

IV. Argument ..................................................................................................................... 3

   A. Defendants Made Reasonable Arguments in Good Faith ........................................... 3

      1. Defendants Acted Under the Reasonable Assumption That This Court Previously Limited Discovery to 2018 ......................................................................................... 3

      2. Defendants Reasonably Argued That Discovery into SJP Does Not Relate to the Allegations Contained in the Operating Complaint ..................................................... 5

         a. Defendants Reasonably Sought a Limit to Information Within Their Control .......... 5

         b. Defendants Reasonably Challenged the Lack of Allegations Relating to SJP ........... 6

         c. Defendants Reasonably Relied on and Cited to Illinois State Law ............................ 8

      3. Defendants' Objections to this Court's Ruling on Privacy Concerns Remain a Live Issue, Still Awaiting a Final Ruling From Judge Wood ......................................... 10

   B. Relevant Circumstances Demonstrate Why Sanctions in This Matter Would Not Support Justice or Judicial Economy ....................................................................... 12

V. Conclusion ................................................................................................................. 14

CERTIFICATE OF SERVICE ................................................................................................ 15

I. **Introduction**

Defendants American Muslims for Palestine and Americans for Justice in Palestine Educational Foundation (together, "AMP" or "Defendants") respectfully respond to this Court's Order that Defendants show cause why they should not be ordered to pay costs and fees to Plaintiffs Stanley and Joyce Boim ("Plaintiffs") related to their Motion to Compel that was the subject of this Court's telephonic hearing on April 15, 2024 and related Order. *See* Doc. 401. Defendants present the reasons below showing they made their arguments opposing the Motion to Compel in good faith, and consistent with the context and status of ongoing discovery parameters in this case. Defendants further identify circumstances demonstrating that an award of fees in this matter would not further the interests of justice or judicial economy.

II. **Factual and Procedural Background**

Plaintiffs sought discovery from Defendants regarding Defendants' interactions, from founding to present date, with third-party student groups known as Students for Justice in Palestine ("SJP"). Doc. 388-5. Defendants objected to these requests based on their lack of correlation to the claims actually asserted in this case, citing this district's balancing test on proportionality of discovery requests. Doc. 399 at 4 (citing *Hoerchler v. Equifax Info. Servs., LLC*, 568 F. Supp. 3d 931, 935 (N.D. Ill. 2021)). Defendants further objected to any requests for information that post-date 2018, based on this Court's earlier Order setting the scope of relevance for fact discovery. *Id*. at 9; Doc. 301. After conferring with Plaintiffs on multiple dates, Defendants believed Plaintiffs still had not sufficiently demonstrated the appropriateness of discovery both related to SJP, and as to any time frames exceeding 2018. Doc. 388-6. During the process of conferring, Plaintiffs did not show further correlation of the discovery requests, some of which seek information regarding actions by an SJP location from October 2023, to the alter ego and successor liability claims

1

asserted in Plaintiffs' First Amended Complaint. Instead, Plaintiffs provided Defendants with documents from their original lawsuit showing, in brief and described here only generally, that the prior judgment defendant Islamic Association for Palestine ("IAP") from the Boims' 2000 lawsuit promoted activities by a local Chicago SJP chapter. Doc. 386-1. Plaintiffs then filed their Motion to Compel (Docs. 386, 388) and Defendants responded. Doc. 399.

Ruling on the record in a telephone hearing on April 15, 2024, this Court granted Plaintiffs' Motion in part. Doc. 402. This Court also entered a Minute Order that day, ordering Defendants to show cause why they should not be required to pay Plaintiffs' fees and costs associated with the Motion to Compel. Doc. 401. This Court also instructed the parties meet and confer on the issue of an award of fees and costs. *Id*. Counsel for both parties addressed the issue in person following the deposition testimony of Hatem Bazian one day after this Court's Order. Exhibit A, Declaration of Christina A. Jump. Defendants' lead counsel Christina A. Jump explained to Plaintiffs' counsel Daniel Schlessinger at that time that because Defendants are represented by a nonprofit law center, neither Ms. Jump nor anyone else within the Legal Division of her organization has authority to volunteer any amount of money to go toward an opposing party's fees. *Id*. No further discussions on the matter occurred, because even though both parties expressed willingness to confer, they saw no solution that would *not* violate the stated purpose for which defense counsel's nonprofit organization received the donations that comprise its operating budget: to fund the legal work necessary on cases approved by its governing Legal Committee. *Id*. As defense counsel is ethically prohibited from volunteering money received for that stated purpose to fund any other purpose, the parties could not reach a separate resolution of this matter.

2

### III.     Relevant Legal Standard

Fed. R. Civ. P. 37(a)(5)(A) sets forth the requirement that when a court grants a discovery motion after giving the party an opportunity to be heard, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Courts must <u>not</u> order this kind of payment where "(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Where a court grants a motion in part and denies it in part, the rules omit that mandatory language and instead give courts the option, but not the mandate, to "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). To determine whether the opposing party's nondisclosure was "substantially justified" under Rule 37, courts examine "whether there is a genuine dispute." Doc. 330, Order of this Court dated October 5, 2023, denying Plaintiffs' Motion for a Protective Order, at 5 (quoting *Forth v. Walgreen Co.*, No. 17-C-2246, 2019 WL 10255628, at *7 (N.D. Ill. July 10, 2019)). The Supreme Court instructs courts determining the propriety of Rule 37 sanctions that the party opposing discovery's argument need not be "justified to a high degree, but rather [show] that there is a genuine dispute or that reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

### IV.     Argument

**A.     Defendants Made Reasonable Arguments in Good Faith**

    1.     <u>Defendants Acted Under the Reasonable Assumption That This Court Previously Limited Discovery to 2018</u>

In this Court's May 1, 2023, Order on a prior motion to compel from Plaintiffs, this Court addressed Plaintiffs' request made at that time for discovery beyond the 2005-2010 timeframe

3

previously imposed by Magistrate Judge Schenkier for jurisdictional discovery, specifically requesting a discovery timeframe of 1996 to present. Doc. 272 at 5 (seeking discovery "to this day"); Doc. 301. This Court agreed with Plaintiffs *in part* at that time, "conclud[ing] that the relevant period for discovery spans 1996 to 2018." Doc. 301 at 6. This Court specifically recognized in its May 1, 2023 Order that "Plaintiffs argue the relevant period for discovery is 1996 to the present[,]" and ruled that "[t]he Court agrees with plaintiffs' requested timeframe in part[.]" *Id.* at 5, 6. This Court specifically articulated that "[t]he relevant timeframe should continue to 2018, the most recent date described in plaintiffs' amended complaint that entity defendants allegedly provided indirect support for Hamas." *Id.* at 7. Further explaining this reasoning, this Court "conclude[d] information through 2018, the most recent documented AMP/AJP fundraising event [referenced in the Amended Complaint], is relevant." *Id*. at 7, citing the Amended Complaint, Doc. 179, at 38-39.

Based on this Court's articulated conclusion that "the relevant timeframe for merits discovery is 1996 through 2018," the parties have operated since May 2023 by limiting discovery requests on both sides to that range. *Id*. This Court recognized in its April 15, 2024 ruling on the record that Defendants' "time frame objection for post-2018 is not patently unreasonable[.]" Defendants therefore should not be ordered to pay costs and fees to the extent that Plaintiffs argued to compel post-2018 information. Doc. 402, Transcript of Proceedings – Ruling (by Telephone) Before the Honorable Magistrate Heather K. McShain, at 24; *see also* Doc. 399 at 9-10 (pointing to this Court's Order limiting the time frame for merits discovery); Doc. 388 at 8 (arguing for a timeframe beyond the limitation set by this Court in 2023, of 1996-2018).

4

2. <u>Defendants Reasonably Argued That Discovery into SJP Does Not Relate to the Allegations Contained in the Operating Complaint</u>

Though the federal discovery rules allow a broad scope, this scope nonetheless still has its limits. *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) (determining the proposed discovery "is not relevant to the issue presented by the … complaint"). Courts must weigh the "totality of the circumstances" presented, and consider the "value of the material sought against the burden of providing it." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing generally to the Fed. R. Civ. P. 26 Committee Notes). This balance determination does not occur in a vacuum; instead, courts consider the needs of each particular case, and evaluate "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Eternity Mart, Inc. v. Nature's Sources, LLC*, Case No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *8 (N.D. Ill. Nov. 15, 2019) (denying a motion to compel information as unduly duplicative).

a. *Defendants Reasonably Sought a Limit to Information Within Their Control*

With this district's balancing test in mind, Defendants made a good faith reasonable argument that information related to SJP, and in particular SJP's actions in 2023, exceeds the proper scope of discovery in this matter. *See* Doc. 399 at 6; Doc. 402 at 8. Defendants reasonably argued that the remote potential of probative value of the requested information outweighs any benefit to Plaintiffs from this discovery. Defendants also reasonably understood Plaintiffs' requests as seeking information not only in Defendants' possession currently, but also in the possession of SJP chapters across the nation. *See, e.g.*, Exhibit F to Plaintiffs' Motion to Compel, Doc. 388-5, at 6-7 (Request for Production 13: "All Documents concerning or referencing SJP's 'National Day or Resistance' referenced in Exhibit A[,]" with no limitation to items already in

5

Defendants' custody or control). Plaintiffs' counsel confirmed on the record that Plaintiffs hoped to receive more than just documents already in the possession of Defendants when answering this Court's questions in the April 15 hearing, as to whether Plaintiffs' requests encompassed information not already in Defendants' control: "I believe the rule would require them to get any information that – if SJP, I suppose, is legally required to provide them with that information upon request, it might." Doc. 402 at 5. This Court then clarified that its Order only requires Defendants to produce responsive information within Defendants' "custody, control, or possession." *Id*. at 21.

        b.     *Defendants Reasonably Challenged the Lack of Allegations Relating to SJP*

Defendants argued in good faith that Plaintiffs did not demonstrate a need in this litigation for the requested information regarding SJP, given that the operative Complaint makes no mention of SJP within its 67 pages and 185 enumerated paragraphs, despite taking great pains to exhaustively list other purported "network" entities and individuals. *See generally* Doc. 179 at 37-51; Doc. 399 at 5; *compare Gevas v. Wexford Health Sources,* Case No. 20-C-50146, 2021 U.S. Dist. LEXIS 233691, at *23 (N.D. Ill. Dec. 7, 2021) (identifying the plaintiff's complete failure to even try to justify its withholdings, as a reason to grant an award of fees). Plaintiffs nonetheless now claim for the first time, seven years into this litigation, that any correlation between Defendants in this matter and any SJP chapter somehow bears directly on their allegations in the Complaint which never once mention SJP. Plaintiffs further assert that they already possess information purportedly showing links between one judgment defendant and SJP, and provided some documents from the prior litigation to defense counsel during the conferral process prior to their Motion in purported support of this position.[1] *See* Doc. 388-6; *contrast Am. Kitchen Delights,*

---

[1] While also not contained anywhere in the Amended Complaint governing this case, Plaintiffs alleged in their Motion to Compel that Dr. Hatem Bazian, one of the founders of AMP, also founded the first SJP chapter, and that's what makes this round of discovery relate to the claims in this case. Doc. 399 at 5; *cf*. Doc. 179, *generally*. This Court pointed to that assertion by Plaintiffs

6

*Inc. v. City of Harvey*, Case No. 22-CV-3549, 2023 U.S. Dist. LEXIS 148061, at *14-15 (N.D. Ill. Aug. 23, 2023) (awarding fees where the defendants refused to cooperate in the conferral process in any meaningful way). Plaintiffs by definition possessed those documents prior to filing their original complaint in this matter, let alone the operating Amended Complaint more than two years later. *See generally* Docs. 1, 179. Defendants also kept in mind this Court's prior Order relying on specific allegations in Plaintiffs' Amended Complaint that identify other third party entities by name, as purported intermediaries for Defendants to provide indirect support for Hamas.[2] *See, e.g.*, Doc. 301 at 7 (recognizing that Plaintiffs' First Amended Complaint specifically names "purported charitable organization and intermediary, Baitulmaal" as serving as "a consistent supporter of AMP, sponsoring numerous AMP events, including its conventions, until the most recent in November 2018"), citing Doc. 179 at 38-39. Defendants considered the applicable balancing factors in good faith, researched the case law and cited to relevant precedent, and therefore

---

in the April 15 hearing as well. Doc. 402 at 19. Setting aside for the moment the complete absence of any reference to that assertion in the Amended Complaint or during the intervening nearly five years of this litigation since the filing of that Complaint, and the fact that this case is now well beyond the Rule 12 stage where Plaintiffs receive all favorable inferences on any remote allegations no matter how tenuous, Dr. Bazian testified in his deposition as previously scheduled, the day after the April 15 hearing before this Court. To the extent this Court may find it useful to know, Dr. Bazian clarified under oath when asked that he is not a founder of SJP, and that in his words, "Canary Mission got that wrong." He also referenced an article he wrote in November of last year plainly stating he is not, in fact, SJP's founder, as well as an article from Jewish Forward magazine extensively quoting the actual founder of SJP, a man named Osama Qasem. Both of those articles became exhibits to Dr. Bazian's deposition and were the subject of questioning from counsel for both sides and are now attached here to Exhibit A, as is the embedded document provided by Mr. Qasem to Jewish Forward late last year, showing the original application for Students for Justice in Palestine to first become a student organization on the Berkeley campus, dated 1993—with Dr. Bazian's name nowhere to be found on that document. Mr. Qasem did sign it, and apparently kept that document for over thirty years, until a reporter asked him for it late last year. *See* Ex. A. at internal Exhibits 2, 3, and 4.

[2] As they have consistently done throughout the entirety of this litigation, Defendants continue to vehemently dispute any characterization that the work of AMP and/or AJP provides support in any way for Hamas, or any other form of terrorism.

7

continued to object to requests for information unrelated to the allegations set forth in Plaintiffs' governing Complaint. *See* Doc. 399 at 5 (citing *Treadwell v. Salgado*, No. 19-cv-3179, 2021 U.S. Dist. LEXIS 268533, at *10-11 (N.D. Ill. Dec. 14, 2021) ("the bulk of the parties' discovery effort should go to the allegations of the complaint")). Though Defendants' arguments on this point did not ultimately convince this Court on April 15, Defendants presented a legitimate dispute on the issue in good faith and with reliance on relevant precedent. *See* Doc. 399 at 5 (citing *Treadwell*, 2021 U.S. Dist. LEXIS 268533, at *10-11; *Eternity Mart, Inc.*, 2019 U.S. Dist. LEXIS 198880, at *4, *7; *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 U.S. Dist. LEXIS 47333, at *7 (N.D. Ill. Mar. 18, 2020)).

      *c.*    *Defendants Reasonably Relied on and Cited to Illinois State Law*

Defendants researched and cited Illinois state case law for the applicable standards to evaluate the state law claims of alter ego and successor liability that Plaintiffs bring against these Defendants in this case, as Seventh Circuit authority shows the choice of law issue open on the application of federal or state law to alter ego claims — even when courts find that jurisdiction "arises under" federal law. *See Boim v. Am. Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021), citing *McClesky v. CWG Plastering, LLC*, 897 F.3d 899, 901 (7th Cir. 2018). In *McClesky*, Judge Easterbrook noted that "[b]ecause the [Plaintiffs] seek to recover … directly under two federal statutes, the district court has subject matter jurisdiction. It does not follow that federal law applies to all of the [Plaintiff's] claims." *Id*. at 906 (Easterbrook, J., concurring). The plaintiff in *McClesky* brought claims of successor liability and alter ego liability against an entity (referenced here as "Company B" for simplicity) incorporated by the son of the owner of a company against whom the plaintiff obtained a judgment (referenced here as "Company A" for simplicity), that became defunct within weeks of the jury returning a verdict in favor of the plaintiff. *Id*. at 901. In that

8

case, Company B incorporated and immediately began operating on the same day the court entered judgement against Company A. *Id*. The Seventh Circuit recognized that both claims against Company B arose under federal law, just as the Seventh Circuit held in our instant case. *Id*. Yet in addressing an issue not reached by the Seventh Circuit in this case due to the scope of the appeal before it being limited to review of the Rule 12(b)(1) motion, the Seventh Circuit in *McCleskey* noted that while "everyone assumed in the district court that federal law governs both claims[,]" "the question remains whether we should, on our own initiative, reject the use of federal law in favor of one or more state laws." *Id*. at 901-902. The Seventh Circuit ultimately determined in *McCleskey* that the defendant waived the choice of law issue by not challenging the application of federal law at the district court level. *Id*. at 901. Beyond emphasizing the need for parties to preserve choice of law disputes by asserting and briefing them at the district court level, the Seventh Circuit did not ultimately rule on whether federal law or state law, or a combination of the two, should apply. *Id*. at 902-903. Instead, it "[r]ecogniz[ed] that this issue remains open[.]" *Id*. at 902. And, in his concurrence, Judge Easterbrook delved more deeply into the choice of law issue and concluded that while federal law applied to the successor liability claim, state law likely applied to the alter ego claim. *Id*. at 906-907.

Defendants recognize this Court holds a different opinion. *See* Doc. 402 at 19 (admonishing Defendants for citing Illinois precedent because "the main holding of the most recent Seventh Circuit appeal was that this case arises under federal law"). Defendants nonetheless reasonably believed at the time of their filing that both hornbook choice of law doctrines and applicable Seventh Circuit precedent require interpretation of state law claims in accordance with the relevant state's case law, even when a federal court exercises jurisdiction over a select number of state law claims. *See, e.g.*, 17A Moore's Federal Practice – Civil § 124.30 (2024) ("Choice of law issues for

supplemental state-law claims are also governed by the law of the forum state in which the federal court sits."). At the very least, the Seventh Circuit made clear in *McCleskey* that the choice of law issue remains an open one, and parties bear the burden of preserving the issue by raising it at all relevant steps in their briefing. *McClesky*, 897 F.3d at 901-903. While this Court subsequently expressed its disagreement with that interpretation, Defendants did cite to Illinois state law in good faith, and in accordance with their reasonable interpretation of applicable choice of law rules.

      3.      <u>Defendants' Objections to this Court's Ruling on Privacy Concerns Remain a Live Issue, Still Awaiting a Final Ruling From Judge Wood</u>

Defendants further argued their objections as to the bona fide, and still active, dispute they raised over the privacy interests of third parties, as implicated by production of the records sought by Plaintiffs. *See* Doc. 399 at 8. This argument remains one made in good faith, not precluded by any final ruling in this matter yet. In staying enforcement of the prior discovery Order on that topic, this Court correctly observed "a stay is necessary to preserve defendant's appellate rights under Rule 72(a)." Minute Order, Doc. 382 (citing *Alvarez v. Larose*, Case No. 3:20-cv-782-DMS-AHG, 2020 WL 5632659, at *2 (S.D. Cal. Sept. 21, 2020)). Defendants therefore reasonably continued to assert their ongoing objection to providing information that implicates the privacy rights of non-party individuals – here, framed in the new context as to student activists. Doc. 399 at 8 (citing *Ripberger v. Corizon, Inc.*, No. 1:11-cv-01394-TWP-MJD, 2012 U.S. Dist. LEXIS 134648, at *14-15 (S.D. Ind. Sept. 20, 2012); *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994); *Strode v. Venice*, No. 06-228-GPM, 2007 U.S. Dist. LEXIS 6578, at *14-15 (S.D. Ill. Jan. 30, 2007)); *see also Hirsch v. Will Cnty.*, No. 19-CV-7392, 2023 U.S. Dist. LEXIS 184872, at *12 (N.D. Ill. Oct. 15, 2023) (granting an award of fees and finding the defendant did not have reason to withhold the specific documents the court already reviewed in camera and decided were not confidential).

Defendants requested review by Judge Wood on this issue of constitutional importance, "to preserve critical rights from being lost irretrievably pending objections." *Dayco Products, Inc. v. Walker*, 142 F.R.D. 450, 454 (S.D. Ohio 1992); Doc. 377. Denying Defendants their ability to preserve their objections before receiving a final order from Judge Wood on the issue contravenes the purpose of staying the prior discovery Order in the first place. *See* Doc. 382. And, as to the discovery requests forming the substance of the Motion to Compel at issue, this issue presents in a new and previously untested context for evaluating privacy rights and information related to college students. Doc. 399 at 8; Doc. 388-5 at 7. Context matters when considering the propriety of discovery requests. Doc. 399 at 8 (citing *Gehring*, 43 F.3d at 342 (holding that personnel files are not discoverable because of the privacy interests when balanced with the absence of correlation to the claims asserted)); *In re United States*, 583 U.S. 1029, 1036 (2017) (Breyer, J., dissenting) (describing discovery disputes as requiring "a deep understanding of the overall factual context and procedural history of an individual case"). Defendants therefore made their arguments on this point in good faith in light of the ongoing dispute and its new context. Sanctions for the continued preservation of an objection for which Defendants still await a final ruling from Judge Wood, and where the issue presents in a new context, contradict the intent of the right to appeal the ruling. *Sims v. EGA Prods.*, 475 F.3d 865, 869 (7th Cir. 2007) (recognizing that where litigants did not consent to a final decision by a magistrate judge, the district judge remains the final arbiter).

While this Court identified Judge Wood's recent ruling on third party Mosque Foundation's Motion to Quash regarding a privacy objection in yet another unrelated context, Defendants make a distinctly different argument from that made by the Mosque Foundation and ruled on by Judge Wood. Doc. 402 at 22; Doc. 398 at 3. Judge Wood characterized the Mosque Foundation's concern, that producing board meeting minutes would dissuade community members

11

from joining the Foundation's board, as "speculative." Doc. 398 at 3. By contrast, Defendants provided links to publicly available news sources in their Response to demonstrate, to the best of their ability and via neutral sources of which the Court may take judicial notice, the widespread and growing attacks students face on campuses nationwide due to voicing their support for Palestine. Doc. 399 at 7 n.3, 9 n.4. The students subject to the identified attacks and scrutiny comprise the same students affected by the requested information, and Defendants asserted that connection in making their argument on this point. Doc. 399 at 9. In addition to relying on an issue yet to receive a final ruling from the district court, Defendants presented this argument based on a genuine dispute distinct from the one presented by third-party the Mosque Foundation, and in doing so provided good faith support and neutral sources that exceeded the "speculative" nature identified by Judge Wood as insufficient. *Compare* Doc. 399 at 9 *with* Doc. 398 at 3. Again, while this argument did not persuade this Court on April 15, defense counsel nonetheless did make the argument in good faith and in reliance on the cited authority as set forth above.

**B.     Relevant Circumstances Demonstrate Why Sanctions in This Matter Would Not Support Justice or Judicial Economy**

Defendants respectfully identify additional reasons for this Court's consideration that sanctions of an award of attorneys' fees on this motion would not advance the interests of justice. As previously noted, Defendants have representation in this matter by a 501(c)(3) nonprofit law center with limited resources, that operates wholly on donations allowing it to provide approved legal representation within its stated mission.[3] Ex. A, Declaration of Christina A. Jump, at ¶ 5 and internal Exhibit 1. Plaintiffs, in contrast, are represented by a private law firm with more resources,

---

[3] As noted in the attached Declaration of Christina A. Jump, the mission of defense counsel's nonprofit law center is "to advance equality and justice for American Muslim organizations and individuals by promoting legal compliance and protecting the rights of all Americans in matters concerning constitutional and national security laws." Exhibit A at ¶ 7.

12

and receive funding for this litigation as previously identified. *See* Doc. 351. This Court previously considered these factors in ordering that the parties split the cost of financially burdensome production requested by Plaintiffs. *See* Doc. 94 at 58. On a related fact, Defendants' counsel did not object to the contested discovery due to efforts to generate fees; defense counsel does not receive attorneys' fees. *Cf. Reid v. Wolf*, 644 B.R. 725, 759 (N.D. Ill. 2022) (chronicling the defendants' inappropriate behavior to include unjustifiably refusing to participate in discovery, violating court orders, and leading the plaintiff on a wild goose chase). As a nonprofit organization, Defendants' counsel operates on a fully pro bono basis and does not collect fees from its clients, including Defendants, unless specifically awarded by a court in a separate line item as fees. *See id.* Defense counsel instead served its objections and filed its Response in Opposition based on good faith beliefs in its arguments. In considering the balance of the parties' resources along with the good faith intent identified herein, the levy of an award of fees against Defendants or their counsel for advocacy in this matter does not further the interests of justice. *See, e.g., Black v. Friedrichsen,* Case No. 1:19-cv-00307-TLS-SLC, 2022 U.S. Dist. LEXIS 58161, at *16-17 (N.D. Ind. Mar. 29, 2022) (recognizing that "some courts have found that an award of fees may be unjust when the losing party establishes an inability to pay") (citing G*rady v. Affiliated Comput. Servs. ACS,* No. 1:13-CV-00342-TWP, 2014 U.S. Dist. LEXIS 160547, at *2 (S.D. Ind. Nov. 13, 2014)).

V. **Conclusion**

Defendants and defense counsel will respect and honor all final rulings of this Court, as they have consistently done throughout the seven-year history of this case. Here, defense counsel did no more than advocate in good faith for an ultimately unsuccessful view of the law, albeit one supported by at least some in-Circuit precedent. Advocacy in these circumstances does not equate to bad faith, and does not warrant punishment by way of an order to pay the opponent's fees. Defendants respectfully request this Court enter no orders for payment of attorneys' fees or costs related to the good faith legal debate over the issues presented here.

Respectfully submitted this 26th day of April, 2024.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Admitted to the General Bar*
*and Trial Bar of this District*
Samira Elhosary
*Admitted to the General Bar*
*of this District*
Maryland Bar No. 2112140261
cjump@clcma.org
selhosary@clcma.org
*Attorneys for Defendants*

Constitutional Law Center
for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454
*\*The Constitutional Law Center for Muslims in America*
*is the legal division of the Muslim Legal Fund of America*

Thomas Anthony Durkin<br>
ID No. 0697966<br>
2446 N. Clark Street Chicago, IL 60614<br>
Tel: 312-981-0123<br>
Fax: 312-913-9235<br>
tdurkin@durkinroberts.com<br>
*Local Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on April 26, 2024, she caused the foregoing to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois, using the CM/ECF system, and thereby serving by email notification upon counsel for all parties of record.

/s/ *Christina A. Jump*<br>
Christina Jump<br>
*Counsel for Defendants*