# -EXHIBIT D-

**Seth Corthell**

| | |
|---|---|
| **From:** | Daniel Schlessinger |
| **Sent:** | Friday, February 21, 2025 3:07 PM |
| **To:** | Samira Elhosary; Seth Corthell |
| **Cc:** | Christina Jump |
| **Subject:** | RE: Following up on Tuesday's conversation |

Counsel-

As to the attachments to the documents you produced (and any other responsive documents), you have had an obligation to produce responsive documents since the requests were served on you nearly a year ago. You have been ordered by the Court to produce documents responsive to RFP 11 multiple times and all of your objections have been overruled. You have the emails in their native form and can tell which ones have attachments-- we cannot. We gave you some samples of Bates numbers that appear to indicate that they have attachments, but as noted, we can't tell which do and which do not. We have no obligation to tell you where to find responsive documents; that is your obligation under the rules and the Court's orders. We understand your position to be that you refuse to do so, except that you will check out only those Bates numbers that we specifically identified, and therefore we will move to compel.

As to the names that you redacted from virtually every document you produced, we do not have the names of the students or others who are responsible for promoting Hamas. We require that you unredact the names, especially because the Confidentiality Order does not give you the right to make these redactions. You have refused, so again, we are moving to compel.

As to your designating all of the documents you produced as confidential, none of them appear to fit within the categories set forth in paragraph 2 of the Order. That alone is a sufficient reason for you to de-designate the documents. Beyond that, we continue to prepare our case and in that effort, we would like to discuss material in the documents with others knowledgeable about these matters who we do not employ. We believe we have made these points clear in our prior discussions and correspondence, but in consideration of your possible willingness to reconsider your position, we will not move for relief for five days.

Dan

_____

Daniel I. Schlessinger

**Jaszczuk P.C.**
311 S. Wacker Drive, Suite 2150
Chicago, IL 60606
312-442-0366 (office)
773-301-9729 (cell)
dschlessinger@jaszczuk.com
www.jaszczuk.com

NOTICE: This email is from the law firm of Jaszczuk P.C., may contain information that is privileged, confidential and/or protected from disclosure under applicable law, and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this email in error, please notify the sender immediately, destroy this email and all copies of it and do not copy or disclose it to anyone else.

**From:** Samira Elhosary <selhosary@clcma.org>
**Sent:** Thursday, February 20, 2025 11:43 AM
**To:** Daniel Schlessinger <dschlessinger@jaszczuk.com>; Seth Corthell <scorthell@jaszczuk.com>
**Cc:** Christina Jump <cjump@clcma.org>
**Subject:** Following up on Tuesday's conversation

Counsel,

As a follow-up to our conversation on Tuesday, please note the following:

- We will continue following up with our client regarding the bates label pages you identified with questions about potential attachments; we will let you know what we determine, likely middle of next week.

- In addition, we continue to request the following:

1. Please articulate **why** you believe the documents we produced and marked as confidential do not warrant that designation (other than the fact that you want them undesignated), and

2. Please articulate **why** you do not believe, if you do not believe, the provisions of Paragraph 2 of the Confidentiality Order which we identified as applicable to this production do not apply to these documents.

- And we continue to offer the following, in hopes of either resolving or potentially narrowing any remaining areas of dispute or questions:

1. If you identify additional bates label numbers regarding potential attachments about which you have questions, we are glad to follow up on those to confirm any potential reasonably available documents; and

2. As you mentioned in the conversation that you believe you need names of students from the recently produced emails responsive to this Court's last Order in order to compare them to any whom you believe have taken actions in support of Hamas, we offered to confirm whether any

2

names you provide are even at issue in the redactions we made to our production, so we may all determine whether the issue reasonably relates to your arguments (with the understanding that we do not agree with or adopt your arguments in this regard, or any determinations or perceptions you may make about any students' purported support of Hamas).


Thank you,
Samira



**Samira Elhosary** (she/her/hers)

Civil Litigation Staff Attorney

**Muslim Legal Fund of America (MLFA)**

The Constitutional Law Center for Muslims in America (CLCMA)

is the legal division of MLFA

100 N. Central Expy, Suite 1010, Richardson, TX 75080

Phone: (972) 914-2507 (main)

Email: samira.elhosary@mlfa.org | selhosary@clcma.org

Website: https://mlfa.org/

    

*IMPORTANT*: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

[CAUTION: This email was sent from outside of this organization]

## Seth Corthell

| | |
|---|---|
| **From:** | Daniel Schlessinger |
| **Sent:** | Monday, February 17, 2025 12:21 PM |
| **To:** | Christina Jump; Seth Corthell |
| **Cc:** | Samira Elhosary |
| **Subject:** | RE: Recent Document Production from AMP |

Christina-

We would like to take you up on your offer to have a call tomorrow at 5:00. We are not comfortable waiting until after your return to move this issue forward, and our schedule on February 27 and thereafter is as problematic as yours during the February 19-27 period.  We will circulate an invite as soon as we confirm court reporter availability.

Dan

**From:** Christina Jump <cjump@clcma.org>
**Sent:** Monday, February 17, 2025 11:34 AM
**To:** Daniel Schlessinger <dschlessinger@jaszczuk.com>; Seth Corthell <scorthell@jaszczuk.com>
**Cc:** Samira Elhosary <selhosary@clcma.org>
**Subject:** Re: Recent Document Production from AMP

I am about to begin a very heavily scheduled day and will not be available to go back-and-forth all day long.

Scope and language of relevant governing order:
Bottom line:
Magistrate Judge McShane ordered that we produce emails supporting what we "listed in the summary chart." We created the summary chart, which you have, and its supplement.
"Listed in the summary chart" does not have a broader scope than the items actually described (i.e., "listed") within the content of the summary chart itself that we created. Therefore, we take it to mean exactly what the plain language articulates: "listed in the summary chart" means actually listed  in the content of the summary chart itself. Any other tortured or circular interpretation ignores the words Judge McShain ordered, and we will not do that.

Again, nothing from Dr. Bazian's emails went in to the creation of the summary charts for the reasons set forth below and on which he already testified and you already questioned him in his deposition—he takes no role in the processing, intake or approval of the student organization grant process (which he referred to as the "mini grant" in his deposition testimony, cited below).  *See* Bazian Depo. at 80-81, set out in full below (and *see id*. at 28-30 and 36-38, for his clarification that he did not write or review or sign the exact wording contained in the unverified pleading you reference, but that his sworn declaration which he did sign and attest to in that same matter does not reference himself as the founder of SJP).
So nothing from his, or anyone else's emails other than what we have identified below, can reasonably be interpreted as serving as "source documents" (Seth's choice of words to the Court on Dec. 9 at 22 ("all source documents that were used to create the student grant charts that were produced") and 30 ("all the source information for the student grant charts that were provided" at lines 12-13 and "information from the source documents" at line 19), and in Doc. 501) for the events reflected in those charts or on which we relied in their creation.
With that read, and your failure to identify any specific perceived deficiencies of our response to RFP 11 until the Sept 17 recorded conversation and following JSR at Doc. 501 plus the transcript of Mr. Corthell's arguments in the

December 9 hearing as well as the articulated basis for this Court's ruling and scope that day (all already cited herein), <u>there are no additional responsive documents we are withholding</u>.


<u>Basis for Objections to Confidentiality Designations</u>:
Yes, it is crystal clear **that** you object to the confidentiality designations.
I am asking for **the basis** of the objection – not that if it were removed you would share the info, but **why** you think our identification of parts (b), (c), (e), (f) and (g) of Paragraph 2 of the Confidentiality Order should not apply. Please provide that, and we will be glad to respond substantively to any reasons you provide.

<u>Identifying attachments you now seek</u>:
Yes, if you think there are more examples of attachments that you hope to have, identify them please.
And we will then look to see if we have them or can access them, and if they are relevant/responsive.
I can't address whether we are going to produce something – or if it is even accessible – until you identify it. Identify those as soon as you possibly can, and we will do our best to work through them prior to me leaving the country on Wednesday morning.
Incidentally, we are still less than five days out – even calendar days, let alone the business days as contemplated and set forth within the body of the Confidentiality Order itself – from you first mentioning anything about believing any attachments exist or should have been produced.  Five business days to continue addressing this issue from your first speaking of it the afternoon of Thursday, February 13 gets us to the afternoon of this coming Wednesday, February 19, and the  seven (7) calendar days thereafter for a call under the process mandated by Judge McShain in Doc. 458 takes us to Wednesday, February 26.  In light of my long-scheduled travel (*see* my January 7, 2025 email to all counsel that "I will be unavailable February 20-27 for the previously arranged religious trip I mentioned on our call" of that same date; the departure date for this trip subsequently moved up to the morning of February 19), <mark>I can make time on Thursday, February 27 at 1pm or 4pm CST</mark>.


<u>Call to confer</u>:
I am available at <mark>5 PM tomorrow, Tuesday</mark>, to discuss if you like. As you have likely experienced yourself in the past prior to leaving town for a week, I have an extraordinarily booked schedule today and tomorrow. However, I can make time at that hour if that works for you.
As stated above, however, we believe that conferring via video on <mark>February 27, at either 1pm or 4pm,</mark> is more consistent with the orders of this Court, pending issues that may remain (or be resolved in the interim) by then, and the good faith duty of all for us to see what we truly can resolve.

<u>Duty to exhaust options to address issues without Court intervention</u>:
Please note that we will not automatically declare an impasse solely because a recorded conversation occurred. We still retain the ethical duty – and as explicitly outlined by Judge McShane in her orders – to actually try to resolve things. We expect to do no less than that.
And that duty pertains in particular to receiving specifically identified Bates label numbers from you of where you think attachments may or may not exist, with reasonable time for us to actually respond and investigate the availability and responsiveness of any potential documents . Telling us at 4 PM tomorrow that you have a long list and then speaking to us at 5 PM tomorrow would not count, hypothetically, to satisfy that burden.


Thanks and please do advise at your earliest convenience if February 27 at either 1pm or 4pm, or tomorrow at 5pm if needed (albeit premature as set forth above) work for you.



**Christina A. Jump**
Civil Litigation Department Head

**Muslim Legal Fund of America (MLFA)**
The Constitutional Law Center for Muslims in America (CLCMA)
is the legal division of MLFA

100 N. Central Expy, Suite 1010, Richardson, TX 75080

Phone: (972) 914-2507 (main)
Email: christina.jump@mlfa.org | cjump@clcma.org
Website: https://mlfa.org/

    

*I work across multiple time zones and may send emails outside of standard business hours. Although I send emails at tim*
*convenient for me, I do not expect that you read, respond or follow up on my emails outside your hours of work.*
*\*Board Certified in Labor and Employment Law, Texas Board of Legal Specialization*

   

*IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approv writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and d copies.*

**From:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Sent:** Friday, February 14, 2025 3:01:01 PM
**To:** Christina Jump <cjump@clcma.org>; Seth Corthell <scorthell@jaszczuk.com>
**Cc:** Samira Elhosary <selhosary@clcma.org>
**Subject:** RE: Recent Document Production from AMP

Christina-

I am sending you this response today despite your statement that you are not available, on the understanding that you will get to it as soon as you are able. We do not believe that our request for a video meet and confer session is premature, and in light of your travel plans, we again ask that you provide us with a time for that on Monday or Tuesday next week. We do not believe that this can wait until after your return on February 26.

I will not respond here to much of what is in your email from early this morning because I think we have already made our position as clear as I reasonably can on those points, and some of your arguments do not relate to the matters we have raised. As to the germane matters you have raised, our responses are as follows:

- You have an obligation to provide documents responsive to RFP 11, independent of any motion to compel. We first served that request on October 28, 2023. You responded on November 28, 2023, objecting on the grounds that the request was overbroad, not limited in time and scope to the time frame identified by the Court, unduly burdensome, not calculated to lead to the discovery of admissible evidence and vague. You did not produce any documents at that time responsive to the request. In response to our motion to compel, Judge McShain overruled all of these objections and Judge Wood subsequently overruled your objections to her order. On May 7, 2024, you then served your Limited Supplemental Responses and Objections. Your supplemental response to RFP 11 stated that subject to your original objections, you were referring us to your supplemental response to RFP 7, which did not request communications between AMP and SJP, but did seek documents sufficient to identify events, fundraisers, rallies, or lectures at which SJP had a presence. Your supplemental response to RFP 7 listed 37 documents by Bates number, none of which is a communication between AMP and SJP. You also referred us to social media posts you had previously produced, none of which was a communication between AMP and SJP. You also provided us with the chart that we have discussed extensively and which was the subject of our subsequent motion to compel. Finally, you noted that you anticipated producing some additional documents within a week "consistent with [your] pending objections to the Court's April 15 Order." You also stated, "No responsive documents exist regarding the event in Exhibit A, and Defendants withhold no documents responsive to this request due to any pending objections." On May 13, you provided us with 124 pages of documents, none of which were communications between AMP and SJP. We subsequently moved to compel you to produce actual native documents rather than merely the chart you produced. Judge McShain ruled that the chart was an adequate response to our RFP 9 because of the way that request was worded ("documents sufficient to identify"), but that you had to give us the actual native documents in response to RFP 11.

- Our understanding is that in response to RFP 11, you have produced only communications regarding student grants. That limited segment of what was requested in RFP 11 was the subject of much of our meet and confer discussions because it seemed clear that you had possession of documents that were used in preparing the chart, but we never indicated to you or the Court that we wanted anything less than what RFP 11 stated, which was all communications between AMP and SJP regarding fundraisers, events, rallies or lectures. We did not learn that you were producing only those documents that pertained to student grants until we read the declaration of Munjed Ahmad that you provided to us late on January 31. We do not know for sure that you are withholding other communications between AMP and SJP regarding the aforementioned "fundraisers, events, rallies or lectures," but it seems highly likely that is the case, and you have not denied that. To be clear, we raised the example of Dr. Bazian because we know that he has had significant involvement with SJP and we think it is likely that he had written communication with SJP representatives. By no means do we mean to limit our request to only Dr. Bazian's communications—our request is directed to AMP. As we noted in our prior email, one of several reasons for suspecting that Dr. Bazian had communications with SJP is his claim to have been an SJP co-founder. As you know, when Dr. Bazian and AMP sued Arizona State University in 2018, the complaint that he testified he reviewed for accuracy prior to its filing (marked as Exhibit 5 to the deposition) expressly said Dr. Bazian "is also a cofounder of Students for Justice in Palestine". The fact that he subsequently said something different does not erase his prior representation to a federal court.

- Aside from your independent obligation to produce all documents responsive to RFP 11 once your objections were overruled, Judge McShain's order of December 9 is not limited in the manner you suggest. You quote Judge McShain as saying, "the Court finds that emails, communications between SJP and AMP *about the events listed on the summary chart*, you know, are clearly responsive to RFP 11." We view her use of the word "events" as a shorthand for the "fundraisers, events, rallies or lectures" for which RFP 11 seeks documents, but even if your obligation under the order is limited to "events", we do not see how you can read that language as limiting your obligation to **grants**, which is what we understand you to have done.

- If we have misunderstood the situation and AMP, in fact, has no other documents responsive to RFP 11, you should tell us that, but that seems highly unlikely, given that you did not search Dr. Bazian's files, nor apparently those of anyone other than the three people identified in the Ahmad declaration.
- It should be very clear that we object to your confidentiality designations and redactions in the last set of documents that you produced to us on January 31. We have given you our reasons, and are willing to discuss the subject further with you in our video meet and confer, but we see no point in trying to rehash that in this email exchange.
- I am puzzled by your statement that our last email contained vitriol.  A standard dictionary definition of "vitriol" is "cruel and bitter criticism", and having re-read our email exchange on this, I see no hint of that.  In my over 45 year career as a litigator, I have tried always to comply with the obligation to be civil in dealing with opposing counsel and the Court, and I believe I have conducted myself in accordance with that standard in this case.  I pointed out to you that your statement in a prior email that you would seek sanctions for any violation of the Confidentiality Order was personally offensive to me, since to the best of my knowledge I have never violated a court order and have given you no reason to suspect that I would do so here.  If you care to point out to me what about my comments you find vitriolic, I will consider that and try to avoid any vitriol in the future.
- Our request that you provide attachments that are referenced in the documents you produced on January 31, should not be vague or difficult to understand, but examples of documents that reference attachments are Bates numbers 07223, 07225, 07237, 07241, 07242, 07251, 07253, 07262, 07267, 07272.  Given your statement that you do not believe any such documents exist, it is probably not a valuable use of either of our time to provide an exhaustive list, but if you do find that attachments exist (which would actually seem likely to me based on my experience with email preservation), and you require a complete list, please let me know and I will get that to you.


I hope you have had a productive day by the time you read this and ask that you get back to me as soon as you can regarding a time for a video conference.

Dan


**From:** Christina Jump <cjump@clcma.org>
**Sent:** Friday, February 14, 2025 3:20 AM
**To:** Daniel Schlessinger <dschlessinger@jaszczuk.com>; Seth Corthell <scorthell@jaszczuk.com>
**Cc:** Samira Elhosary <selhosary@clcma.org>
**Subject:** RE: Recent Document Production from AMP

Counsel:

Please note my responses below per identified category.

Call availability and ripeness:
I am not available for a call on February 14, as you requested with only a few business hours left the day before.
My schedule is completely committed already for the full day.
I also believe that a recorded video conference at this stage is premature given the points listed below, particularly as to your objections on the Confidential designations.
Please also note that I will be out of the country and unreachable from Wednesday, February 19 through Wednesday, February 26 for long-planned personal travel.
I have limited availability during Monday and Tuesday of next week, though again believe a video conference will be premature without further communication as indicated below.

Defendants made timely production:
You received the documents on the calendar day of our deadline to timely produce them.

We did that.

Nothing more need be discussed in that regard.

<u>Defendants completely adhered to this Court's December 9, 2024 order</u>:

I do not appreciate your misrepresentations and unjustified accusations, nor are they beneficial to this process.

As to our responsive relevant and applicable facts, please note the below:

A. **We located and produced responsive documents, consistent with our representations to the Court on December 9, 2024**

We never said we *already* had in our possession all emails or other documents relating to the communications at the time of the December 9, 2024 hearing at which Judge McShain issued the applicable order.  If I had those, I would not have needed to check with the client. I specifically stated on the record, accurately, that  "that is correct that we're not saying that there aren't any emails that exist, although there aren't – there is not like a big treasure trove. But we're not saying that there are none at all that would exist regarding the student grants that were awarded that we referenced or regarding events that have been identified in what was produced."  December 9, 2024 Tr. at 20. I also stated that "We do need to consult with the client to be sure. I have a guess, but I need to consult the client to be accurate. I'd hate to give an inaccurate statement here on the record." *Id*. at 37.

I never stated we had all emails at that time.  I never misrepresented anything to the Court, and to this date have not done so.

You are wrong to make that interpretation and misrepresentation here.

We <u>did</u> identify the individuals whose email accounts we searched after the Court's order  – as that *is* the scope of the order, and the extent to which you requested as identified in our call on September 17, your commentary in the Joint Status Report on the topic, and your representations to the Court in the December 9 hearing, which is why the Court articulated the scope of its ruling accordingly – in order to see if the accounts of the individuals with whom we consulted to create the charts we had already produced, and whom we already know to be involved in the student grant process, had any more documents responsive to the Court's order that relate to the items reflected in the produced charts.  That took time, and multiple searches, as articulated in Munjed Ahmad's Declaration.

Those individuals involved in the student grant process include the following:

- Dr. Osama Abuirshaid
- Abdelbaset Hamayel
- Taher Herzallah

So Defendants searched those accounts for *any* emails related to each item reflected on the student grant summary charts produced (SJP-related and beyond).

And that is what we produced to you, with appropriate redactions.

In fact, reading the emails produced in itself tells you the story

You are incorrect, and unfounded, in implying we had every email in advance of the Court's order.

We did not, nor did we need to.

And I need not and will not delineate for you exactly what we reviewed to create the charts which the Court has already ruled to be appropriately responsive to RFP 9.


B. **The Court already ruled our creation of the student grant summary charts sufficient to respond to RFP 9**

Judge McShain denied your motion to compel regarding RFP 9.  Our response to that request is no longer an issue, per this Court's ruling.

Magistrate Judge McShain specifically held that our creation of and production of the summary charts for RFP 9, in response to the orders by Judge Wood and herself, are sufficient, responsive and appropriate.  Dec. 9, 2024 Transcript at 32-33 (holding that Plaintiffs' "claimed entitlement to the underlying documents in this Court's estimation is weaker than in the *Scandaglia* case because plaintiffs' request was limited to 'documents sufficient to show' the transfer of funds.  So with the language that plaintiffs chose to use, they did risk the possibility that defendants would elect not to produce all documents showing the transfer and instead produced something more limited that was nevertheless sufficient to show what transfers of funds occurred.  And here the charts are relatively detailed and there has been no argument that the chart is inaccurate or incomplete  . . .  So with respect to this portion of the motion, the Court is denying the motion as to RFP number 9.").

C. **Defendants did identify additional responsive materials prior to the December 9, 2024 order**

These emails are <u>not</u> the only responsive documents identified to you regarding RFP 11, as you already know, and as we presented to the Court in the Joint Status Report, and as identified by both us and by the Court in the December 9 hearing.

Specifically, note that we provided the following prior to the December 9, 2024 ruling:

- Defendants refer Plaintiffs to the following previously produced responsive records: Defendants' Production 000084, 000116, 00117, 000178, 000188, 000251, 000252, 000263, 000276, 003946, 003950, 003951, 003963, 003975, 003979, 003980, 003981, 003984, 003985, 003986, 003987, 003988, 003989003993, 003994, 003995, 003998, 004020, 004021, 004025, 004035, 004049, 004063, 004071, 004081, 004083 004097. *See* Doc. 489-1 at 4-5.
- Defendants also refer Plaintiffs to the full previously produced complete archives for Twitter, Facebook, Instagram, and Defendant's website, which were not Bates labeled as Defendants produced them in electronic form. Finally, Defendants produce the following: Defendants' Production 006071-006082. Doc. 489-1 at 5.
- Defendant produces the following: Defendants' Production 007207-007210. Doc. 489-1 at 5, 6-7 (referencing the student grant summary charts produced).

Furthermore, Defendants provided Declarations and the parties agreed on September 17 that no responsive documents exist as to "the National Day of Resistance referenced in Exhibit A or the event in Connecticut referenced here: https://www.wfsb.com/2023/10/11/rally-palestine-held-hartford/."

- "You agreed that we have fully answered as to the SJP National Day of Resistance (no responsive documents exist within AMP's possession, custody or control). *See* Transcript of September 17, 2024 at 22 (Q: "We gave an unqualified response that AMP has nothing that's responsive to that [identified directly above as Exhibit A]. Are you taking any issue with that? Is that part of what you think needs to be enforced or compelled or whatever?" A: (relevant excerpt) "So, yeah, I'm not taking issue with your statement that there's nothing responsive related to the National Day of Resistance because, as far as I know, that is your position and that is the case"). Doc. 489-4 at 5.
- "We similarly identified with an unqualified answer that no responsive documents exist within AMP's possession, custody or control as to the Connecticut event you identify in the Request. See, e.g., Transcript at 8-9 ("We think that we've fully responded") and 6 (" … and we specifically stated that it has no records regarding the event in Connecticut referenced within the wording of request for production. We gave you a completely direct answer on that, that there isn't any"). Should you have any issue with that, please clarify and advise specifically what that issue is now. Otherwise, we presume you accept the Responses and verification provided on that point as well." Doc. 489-4 at 5.

Plaintiffs did not dispute these facts in their own statements in the Joint Status Report located at Doc. 501.

Nor did Plaintiffs dispute these facts on December 9, 2024.

There is nothing to produce or compel on those two issues because no responsive documents as to these two portions of RFP 11 exist. And no dispute remains.


We further produced properly sworn verifications attesting to the accuracy of the student grant charts, and the answers outlined above, and that AMP never received any funds from SJP. Doc. 489-4 at 4 ("To the extent not already clear, there are no funds "transferred between SJP and AMP/AJP" that went from any SJP location to AMP. *See* Transcript of September 17, 2024 at 6 ("We responded that there is not [sic] any funds that went from SJP to AMP or AJP")."); *see also* December 9, 2024 Transcript at 29 ("and we produced, you know, verifications to prove that up so that it wasn't just, you know, attorneys pontificating or an attorney summary. It was verified as accurate by the client.").

And, both in the hearing on December 9, 2024 and in our discovery responses (which we verified via Munjed Ahmad) we made clear that AMP does not do fundraising for anyone else—including no fundraising for SJP. Doc. 489-4 at 4 ("We already "responded that there's been no fundraising on behalf of anyone else" and specifically that "AMP doesn't do fundraisers for SJP".") (citing Sept. 17 Tr. at 14). That simply does not happen, so no responsive records can or do exist. *See also* December 9, 2024 Transcript at 29 ("again, we've stated repeatedly and referred to the deposition testimony of the witnesses that AMP does not do fundraising for others. So that just simply didn't happen.").

D. **The scope of the Court's Order on December 9, 2024 as to RFP 11 is both clear, and limited specifically to the only outstanding items Plaintiffs identified**

Again, while you may in hindsight wish for a broader order, the Court ordered exactly these words:

> "the Court finds that emails, communications between SJP and AMP ***about the events listed on the summary chart***, you know, are clearly responsive to RFP 11."

Dec. 9, 2024 Transcript at 37 (emphasis added).

Prior to articulating that limited scope, the Court repeatedly chastised Plaintiffs' counsel's outright failure prior to September 17 to articulate any perceived deficiency in the response by Defendants to RFP 11. *Id.* at 29-30 ("the point at which plaintiffs' counsel identified the specific deficiency as to RFP 11, and from the defense perspective and, to be frank, this is also my reading of the materials in front of me, that it was very belated as far as when plaintiffs' counsel articulated the specific deficiency"); *id.* at 35 ("it's not lost on the Court that plaintiffs didn't bring this up specifically regarding, you know, what is confirmed in the joint status report at docket 501, that defendants didn't produce any emails or communications between AMP and SJP regarding the specific events that AMP sponsored at various colleges, and that this really wasn't -- I shouldn't say "really" -- that this was not articulated specifically until the September 17th meet and confer."); *id.* at 36 ("their [plaintiffs'] initial 37.2 letter, you know, was deficient on this basis" and "I agree with the defense, that this is not the ideal meet and confer sequencing here.").

The Court only found sufficient what Plaintiffs' counsel did finally identify in the September 17 transcript, which Seth Corthell summarized to the Court on December 9 when specifically asked about perceived deficiencies as to RFP 11 as "all the source information for the student grant charts that were provided should have been produced because those are documents responsive to the request." *Id.* at 30. Counsel continued in that hearing to identify that "I don't think there is any disputes [sic] that we articulated that these are the documents we wanted on September 17th." *Id.* And, counsel further relied on that September 17 meet-and-confer conversation to state "we articulated it clearly on the record during the meet and confer." *Id.* at 31.

To the extent that both the Court and counsel referred to the Joint Status Report located at Doc. 501, we note that Plaintiffs there identified the following as to RFP 11, and again in full reliance for any specificity on the September 17 meet and confer transcript:

- "[O]ne thing that could certainly be – I could say is specifically missing is any documents that support these charts that you've produced[.]" Sept. 17 Tr. at 11.
- "Plaintiffs maintain that Defendants should produce underlying the underlying information that was used to produce these charts, which would be responsive to both 9 and 11 in many respects." *Id.; but see* December 9 Tr. at 32-33, denying Plaintiffs' motion as to RFP 9.
- "Presumably, at some point someone had to speak to someone to get these things set up. So I would say that there must be some responsive information in terms of communication that would show how these grants, how these speakers, how all this stuff was set up."

E. **No emails from Dr. Bazian exist that pertain to the student grant summary charts, because he has no involvement in the student grant process**

Dr. Hatem Bazian played no role in approving or issuing these student grants.

Therefore, his emails do not form the underlying data for the student charts.

Therefore, his emails are not responsive to this Court's ruling on December 9, 2024.

Nor are they responsive to the scope Plaintiffs themselves identified, repeatedly as set forth above, as the only specifically delineated purportedly responsive documents not produced.

No matter how much you may want the facts to be different, Dr. Bazian simply does not have involvement in the student grant process.

But you already knew that.

Because he already told you that himself:

> Q: Does AMP provide any funding to any SJP group?

A: We don't provide funding for groups. We do have a grant for student organizations for events. If they're –
they're, you know, sponsoring the event and they want to have a contribution for a speaker to cover costs, then
we will let them apply for a mini-grant.

Q: And who authorizes those grants on behalf of AMP?

A: It's Taher and the national stuff. So it's a national staff. They apply the pro – there's an application process,
and the use of literally 500 to $1,000 mini-grant.

Q: Are you involved in that process?

A: Nope.

Q: Have you been involved at some point in the –

A: No.

Q: -- past?

A: I – that's just too minutiae for me to go and review any of those.

April 16, 2024 Transcript of Hatem Bazian at 80-81.

(As to your inaccurate reference to Dr. Bazian as SJP's founder or that he declared himself to be so, I commend your
attention to his answers to you in his deposition, at Exhibit 17 and pages 28-30 and 36-28 of the April 17, 2024
transcript. That should refresh your recollection as to what he actually said when he identified Osama Qasem as the
founder of SJP, and confirmed the student organization application provided by and signed by Osama Qasem and as also
previously published in both Forward.com and Medium.com articles, and one of which you yourself attached as an
exhibit to this Court months before Dr. Bazian's deposition.)


Nowhere in the transcript of the September 17 meet-and-confer do Plaintiffs identify any belief that emails of Dr. Bazian
are responsive to RFP 11 or should have been provided in response.

Nowhere in Plaintiffs' portion of the Joint Status Report located at Doc. 501 do Plaintiffs identify any belief or make any
assertion that emails of Dr. Bazian are responsive to RFP 11 or should have been provided in response.

Nowhere in the hearing on December 9, 2024 did Plaintiffs' counsel identify to Magistrate Judge McShain that Plaintiffs
believed or had previously made any assertion that emails of Dr. Bazian are responsive to RFP 11 or should have been
provided in response.

And nowhere in the content of Magistrate Judge McShain's order read into the record on December 9, 2024 does she
make any mention as to emails of Dr. Bazian as responsive. In fact, she ordered that emails between SJP and AMP
"about the events listed on the summary chart" are responsive.

That's what we provided, and more.

That's what governs the instant production, and that is what we did.


We redacted names and contact information in accordance with existing procedure in this matter

We redacted, as we stated we would and as we identified to the Court that we would, individual names and contact
information of non-AMP employees.

There is no subterfuge here, as no category exists at the moment to label those as Attorneys' Eyes Only. Therefore, the
pages are Confidential for the reasons already identified below, and we redacted the names and contact information.
Again, these are nearly if not entirely the names of high school and college students, and cannot reasonably be the basis
on which you believe your alter ego argument rests. This is not the beginning of discovery in this case; this is the final
production in it after well over two years of fact discovery and many years of additional efforts and discovery before
that. We are not at starting points in discovery. The point of this production as represented to the Court was to identify
where AMP provided funds, to whom and why. You have the information as repeatedly stated throughout the produced
documents evincing the organizations—not individuals—to whom AMP issued grants, and the dates and amounts and
locations and purposes of the grants. AMP made clear before this production and the documents in this production also
make clear that AMP did not award grants to any individuals. It awarded them to organizations for specific expenses
related to specific identified events. *See also* Bazian April 16, 2024 Transcript at 80-84.

And, as you reference that we did not move for an order under Paragraph 8. You are correct. We did not, nor do we plan
to seek "greater protection" than provided— we redacted instead of presuming any Attorneys' Eyes Only designation.
We did that with the donor names and contact information when previously produced, until additional protections
under Paragraph 2 of this Agreement—which would have been premature initially if there was no objection on your part
to the redaction. Note also that as shown in the December 9, 2024 transcript, Judge McShain specifically spoke to this

exact situation, acknowledged that the issue had already been flagged and that future Court action may be needed, but also required that the parties confer and try to work it out with each other first before approaching the Court. December 9 Tr. at 38-39 ("I understand. And that was flagged. And I realized that there is a potential for that. I'd just ask that you exhaust efforts with both sides. To the extent that there is a dispute, I'm hoping that there won't be, but I understand there may be a next step involved as far as the confidentiality order."). So your off-base and frankly unprofessional, discourteous threat that you "will seek sanctions" in response to us following Magistrate Judge McShain's instructions on this point is both unfounded and in direct conflict with her orders on exactly this issue.

Your vitriol below leads me to now discern that you, perhaps, oppose the continued redaction of these names and contact information. Accurate read?

If so, please respond clearly as to your position on designating the names—but with continued redaction of the contact information, consistent with this Court's previous rulings on both this topic and as to donor information—under Attorneys' Eyes Only designation.

<u>We properly redacted less than a third of the page labeled Defendants' Production 007322</u>

You reference the "wholesale redaction" of a document; that did not occur as to any complete documents. That did not even occur as to the majority of any documents.

As to Defendants' Production 007322, which you reference as "DP 7322" though it is not marked that way, I see a portion in the top third of the page where the content of one email in the chain is redacted. As you can see in that email, the exchange where the content is redacted is between Osama Abuirshaid, Abdelbaset Hamayel and Taher Herzallah---as are the exchanges before and after that small portion. The redacted portion in the top third of the page is redacted because it pertains to business information proprietary to AMP as well as personal information related to an employee which does not relate to the award or nature of the grant being discussed in this sequence (regarding Emory University SJP, with a grant of $500 for speakers, as identified on the chart and the email string itself). This is the consistent with earlier redactions within the Minutes of AMP meetings produced, where similar subject matters occurred. Again, that one small portion does not pertain to the student grant award being discussed and therefore was redacted for the unrelated reasons identified. We stand by this redaction and will not be removing it. Its redaction does not impact the payee, date, organization, nature or amount of the grant issued, all of which are readable in this string.

<u>You have yet to identify the basis for your objection to designation of these documents as Confidential</u>

Paragraph 9 of the Confidentiality Agreement requires that you (1) confer in good faith, and (2) "must explain the basis for [your] belief that the confidentiality designation was not proper[.]" You have so far only communicated that you object to the designation. I get that part, but why? We identified multiple applicable categories warranting the designation of these documents as Confidential. To reiterate, and save you the scroll down, those are parts (b), (c), (e), (f) and (g) of Paragraph 2. On what basis do you dispute that? Please do not merely reiterate that you do dispute that; again, I get that part. Please explain **why** you do not believe these reasons for designation of the records as Confidential apply.

As to the remainder of your argument on this point, someone else's interest in AMP and its internal documents does not in itself justify production to others.

A court may determine the issue of public interest, if presented with it.

And government entities most certainly are capable of asking, and explaining their perceived need, themselves.

<u>You added a new yet vague ask</u>

In this round you added "one additional point" demanding that we "immediately" produce unspecified attachments to unspecified portions of the hundreds of pages of production. Please identify where you believe any attachments should exist, and we will confirm whether there in fact are any, and whether those are available. As you are likely aware, not all email chains that reference attachments yet include multiple layers of responses as are present throughout these responsive documents will in fact contain any or all referenced attachments.

Please identify where you believe that to be the case, by the provided and already labeled bates numbering, and we will look into it.

Without that, I can tell you that I do not believe that to be the case, but again am glad to look (given a reasonable amount of time to do so and in light of the above-referenced and stated scheduling) if you identify where you believe they exist.

I look forward to your response.  Again, as stated above, note that I will be in other meetings the full business day of February 14, 2025, and unable to immediately respond to anything further.  I will, however, check emails and respond as soon as I am able.



**Christina A. Jump**
Civil Litigation Department Head

**Muslim Legal Fund of America (MLFA)**
The Constitutional Law Center for Muslims in America (CLCMA)
is the legal division of MLFA

100 N. Central Expy, Suite 1010, Richardson, TX 75080

Phone: (972) 914-2507 (main)
Email: christina.jump@mlfa.org | cjump@clcma.org
Website: https://mlfa.org/




*I work across multiple time zones and may send emails outside of standard business hours.  Although I send emails at times that are convenient for me, I do not expect that you read, respond or follow up on my emails outside your hours of work.*
*\*Board Certified in Labor and Employment Law, Texas Board of Legal Specialization*



*IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

**From:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Sent:** Thursday, February 13, 2025 2:52 PM
**To:** Christina Jump <cjump@clcma.org>; Samira Elhosary <selhosary@clcma.org>
**Cc:** Seth Corthell <scorthell@jaszczuk.com>
**Subject:** RE: Recent Document Production from AMP

Christina and Samira-

In order to comply with the Court's protocol, we should have a recorded meet and confer video conference regarding these issues. Please let us know if you are available on Friday, and if so, what time would work. If not, what is your availability next week?

In preparation for that call, we have the following comments in response to yours.

1. Your selective citation of the record creates a highly misleading picture of what the Court ordered as to RFP 11. As we know from your argument and the Court's order on RFP 9, it is the wording of the request that governs what documents are responsive. RFP 11 seeks, ""All Communications between representatives of AMP and/or AJP and representatives of SJP concerning fundraisers, events, rallies, or lectures, including but not limited to the National Day of Resistance referenced in Exhibit A or the event in Connecticut referenced here: https://www.wfsb.com/2023/10/11/rally-palestine-held-hartford/." Our first motion to compel you to respond to this request [Doc 386, 388] did not restrict the request to only student grants—it sought all of the documents requested. That motion, as to all "responsive documents in (Defendants') possession, custody or control, was "granted in full" [Doc. 401] Rather than producing the documents, as requested by us and ordered by the Court (and as affirmed by Judge Wood), you produced a chart that purported to summarize the grants made to SJP from AMP. We did not know exactly what documents AMP had in its possession that it was withholding, but it was apparent that you had documents that were used to create the chart you produced and that you were refusing to produce those documents. Unsuccessful in our efforts to persuade you to comply with the Court's prior order, we moved to enforce the order. Our motion was directed to the entirety of the RFP 11, not limited in any way. While, as you point out, the discussion focused on the documents that you used to create your chart, that was because those were the only documents we knew of that you had failed to produce. You never told us that you were withholding, or had failed to search for, other documents that were responsive to the request for communications concerning fundraisers, events, rallies or lectures, as RFP 11 seeks. When you produced documents and the declaration of Munjed Ahmad on January 31, it became clear that you had reviewed email files from only three people at AMP. Notably, not included in that search and production were files of Hatem Bazian, the self-described "co-founder of Students for Justice in Palestine" and a speaker at multiple SJP rallies. It seems likely to us that Dr. Bazian would have communications with SJP regarding events. rallies or lectures, which is what caused us to ask about why his files were not searched. We take your response to be that you don't believe the multiple orders compelling you to respond to RFP 11 require production of any documents other than what was used to create your chart, and that therefore you refuse to search for or produce any documents communications with SJP in Dr. Bazian's files. Please correct us if we got that wrong.

We note that the Court's last order compelling production of documents responsive to RFP 11 was entered on December 9, and that you produced documents on January 31,a span of 53 days. If all you were producing was the documents that went into preparing the chart, then you clearly had those already assembled, so there would have been no reason to take that time to gather the documents for production. This casts additional doubt on your claim that you understood the January 9 order to compel only documents used in preparing the chart.

Our motion that Judge McShain granted on December 9 was to enforce the Court's prior rulings compelling production in response to RFP 11. It did not purport to restrict the scope of the request to less than what we had requested. While Judge McShain did say that the documents used to create the grant charts should be produced, she did not say that other responsive documents were not required to be produced. She did not specifically address that question because she, like we, were unaware that you had unilaterally decided not to search for those. As the judge has made clear, motions directed to whether a party has taken appropriate steps to comply with discovery ("discovery on discovery") are not favored because the Court assumes that counsel will act in accordance with the rules, so we assumed that AMP was producing all responsive documents as required. Only when we saw the Ahmad declaration on January 31 (actually, because you served that at 11:20 p.m. on the

31st, we did not see it until Saturday , February 1) did we realize that you were withholding responsive material. In any event, The December 9 order does not exclude from its scope the previously ordered production of all communications with SJP sought in RFP 11.

2.  Your response regarding the redaction of names does not address our concerns. You may not have redacted "all names", but it is pretty close.  These redactions hamper our ability to prove our case.  There are many activists, students and others, who were present at demonstrations, who were associated with SJP, and who expressed their support for Hamas. In order to know whether AMP was backing these efforts, we need to know who AMP gave money to.  The potential relevance of this evidence was discussed explicitly in the opinions of both Judge McShain and Judge Wood, and we are entitled to see the information in unredacted form. Furthermore, these redactions violate the express terms of the Modified Confidentiality Agreement entered in October 2024 at your insistence. Indeed, the Agreement states:

    > No Greater Protection of Specific Documents. Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

    Dkt. 474, at § 8. You are not withholding the names based on privilege and you did not move for an order seeking special protection for this information. As such, your actions violate the terms of the Agreement, and we will seek sanctions if you force us to move to have them removed.

3.  You have asked for extra time to respond to our raising the wholesale redaction of at least one other document, so we will wait for your response before further addressing that.

4.  One reason we had for citing governmental inquiries about the documents in question was to make it clear that it is not just my opinion that these material are in the public interest.  While the main reason for discovery is to develop a record for our case, the courts exist for other reasons, including informing the public about the law and expectations for behavior, as courts in this Circuit have made clear.  The Confidentiality Order itself implicitly recognizes this interest by providing that interested members of the public are entitled to challenge confidentiality designations. Your designation of essentially your entire production as confidential makes it more difficult for us to consult with others who might help us prove our case, and is contrary to a strong public interest as asserted by the president and a host of others charged with protecting national security.  These are appropriate factors to be weighed in considering confidentiality designations under a protective order. Your response misstates who has the burden under the Confidentiality Order. While we are initially required to explain to you the basis for us challenging a designation, we have done that, even if you are not convinced.  After you have the opportunity to review our challenge, we can then seek relief from the Court and the burden of persuasion is on you as the designating party. Your suggestion that we would violate the terms of the Order is without basis and offensive—we are following the protocol established under the Order precisely because we are bound by it and would not violate it.

5.  One additional point is that your production included documents that referred to attachments to the document.  We ask that you produce those attachments immediately.

As noted above, our next step should be a video conference, so please do tell us when you will be available for that.

Dan

**From:** Christina Jump <cjump@clcma.org>
**Sent:** Wednesday, February 12, 2025 6:50 PM
**To:** Daniel Schlessinger <dschlessinger@jaszczuk.com>; Samira Elhosary <selhosary@clcma.org>
**Cc:** Seth Corthell <scorthell@jaszczuk.com>
**Subject:** RE: Recent Document Production from AMP

Counsel:

Thank you for the communication. We are glad to discuss this further with you, both by additional correspondence and via video communication. As a starting response, please note the following:

1. The Court's order relating to the supplement for RFP 11 pertained to, as Plaintiffs' specifically framed their request on the record in the December 9, 2024 hearing on this issue, "all source documents that were used to create the student grant charts that were produced would be responsive to RFP 11 and should be produced." Tr. at 22. In the Joint Status Report, we identified that, as you also articulated, the first time Plaintiffs referenced any documents they believed should have been produced in response to RFP 11 occurred on September 17, when Plaintiffs identified "documents that support these charts that you've produced" as the documents sought. Doc. 501 at 7, citing Transcript of Meet-and-Confer at 13. And in that Joint Status Report to the Court, Plaintiffs identified the produced student grant charts and specifically identified the "source documents" for the events reflected in the charts produced, because "the student grant charts could not have been created without responsive records concerning the various purported grants." Doc. 501 at 7. Plaintiffs concluded their representation to the Court of what they wanted in response to RFP 11 by reiterating again in that document that they sought "documents and communications reflecting the contributions shown on the student grant charts." *Id*. That Joint Status Report also reflects Plaintiffs' counsel's statement that ""Plaintiffs maintain that Defendants should produce underlying the underlying information that was used to produce these charts, which would be responsive to both 9 and 11 in many respects." *Id*. at 8. The Court denied Plaintiffs' motion as to RFP 9, as you know. Based on Plaintiffs' statements and submissions listed above, this Court ordered "the Court finds that emails, communications between SJP and AMP about the events listed on the summary chart, you know, are clearly responsive to RFP 11." Dec. 9, 2024 Transcript at 37. We went beyond "between SJP and AMP" and produced all available email communications relating to the charts, even for non-SJP grants. Your reference in the email below that you expected emails from Dr. Bazian's account and ask the reason. The reason is simple: Dr. Bazian took no part in the approval, denial or issuance of the grants reflected in the charts produced. Therefore, no emails of his constitute "underlying information that was used to produce these charts" or are responsive communications "about the events listed on the summary chart" – the exact scope Plaintiffs requested and this Court ordered. Tr. at 37. As a bonus, I refer you to the earlier sworn testimony of both Dr. Bazian in his deposition and Abdelbaset Hamayel, as well as Dr. Abuirshaid in his deposition: not one identified Dr. Bazian as playing any role in the evaluation, approval or denial of the student grants reflected in the charts produced and for which available underlying email communications were ordered by this Court. That's why neither his emails nor those of any other individuals not involved in the student grant processes were produced.

2. First, not "all names" were redacted from the documents produced as you intimate in your second point. You assert that "[w]e need to see these names in order to determine the extent to which AMP has supported people who have taken up the cause of Hamas or other causes that were supported by the Islamic Association of Palestine." First, you know by definition the recipients of the grants to which this production pertains were student groups, comprised of student members (some in high school and many in college, as noted on the charts). And we specifically raised to the Court on December 9, on the record, that we would likely re-approach the Court if needed to create additional protections "for articulating an additional potential category of what would be considered attorneys'

eyes only as it may relate to students." *Id*. at 38. That's what we redacted. And, the Court acknowledged that previously raised issue, both on December 9 in the hearing and in the Court's previous order regarding the revised Confidentiality Order: "I understand. And that was flagged. And I realized that there is a potential for that. I'd just ask that you exhaust efforts with both sides. To the extent that there is a dispute, I'm hoping that there won't be, but I understand there may be a next step involved as far as the confidentiality order." *Id*. at 39; *see also* Doc. 477 at 17-19 (granting additional categories of Attorneys' Eyes Only protection as to donors, and also recognizing that ongoing reasons to shield information derive from "cyber bullying, identification of students who have offered pro-Palestinian positions on college campuses" among other reasons, and refusing to rule either way on the issue of protections for student identification due to the issue not yet being ripe before the Court at that time). This is not a surprise. Nor are these high school and college student members of the student groups to whom grants were issued (note the production repeatedly clarifies that "we don't give grants to individuals") former members or even supporters of IAP—they haven't been alive long enough to be. And if you believe the support was for Hamas, as you seem to allege without foundation, the nature of the assistance provided is evident in what we produced, as the entire body of the emails produced identify the organizations and reasons for the requests, which again have already been set forth in the student grant charts previously produced. *See, e.g.*, Dec. 9 Tr. at 32 (delineating that "defendants responded" with "a summary chart" providing information "for all transfers of funds from AMP" to student groups, including the date, organization receiving the funding, type of assistance provided, amount funded, and nature of the event for which assistance was provided, citing Doc. 490 at 8-27).

3. I apologize that I am away from my access to the documents at the moment, so will follow up in the morning regarding the one page you identify that you believe has "entire sections of text" redacted and will more fully respond then. I had anticipated having that access before now, but those best-laid plans diverted so in order to respond as fully as possible to you today, I will follow up on this point tomorrow.

4. The point of discovery in this matter is to aid in determining facts that may or may not support Plaintiffs' claims in this lawsuit. This Court has already made clear that discovery produced in this lawsuit is not intended for uses outside this lawsuit. As Judge Schenkier informed you six years ago, in response to a similarly articulated intent by Plaintiffs' counsel, "the point of this again is not to simply get discovery for other purposes into the organizations. It is for this particular case." Doc. 94 at 24. That holds true today. If "government entities" as you reference want AMP's documents for any reason, they no doubt have both reason and resources to make appropriate requests directly and through appropriate channels. You acknowledge that those unidentified vague requests do not fall within the exceptions contained in the Confidentiality Agreement. Your own personal opinion on whether the documents contain "material in the public interest" has no bearing; that is neither the reason the Court ordered this production, nor your determination to make. We absolutely do not agree to de-designate what we properly designated as Confidential in this production, and you identify "reasons" which only reinforce the need for these protections. This production remains confidential, even as redacted, under parts (b), (c), (e), (f) and (g) of paragraph 2 of the current Confidentiality Order. Doc. 474 at 1-2. We provide no consent under paragraph 5(b)(9). And you have not met your burden under paragraph 9 to explain why you believe this information is not confidential – merely stating "our view that these documents do not contain confidential information that should be considered confidential" does not suffice. Any violation of these designations and the Confidentiality Agreement will result in an immediate request for sanctions and all further appropriate action on our part.

I will follow up regarding part 3 and the specific document you identify once I am back in the office with that access tomorrow.
Thank you.



**Christina A. Jump**
Civil Litigation Department Head

**Muslim Legal Fund of America (MLFA)**
The Constitutional Law Center for Muslims in America (CLCMA)
is the legal division of MLFA

100 N. Central Expy, Suite 1010, Richardson, TX 75080

Phone: (972) 914-2507 (main)
Email: christina.jump@mlfa.org | cjump@clcma.org
Website: https://mlfa.org/

   

*I work across multiple time zones and may send emails outside of standard business hours. Although I send emails at times that are convenient for me, I do not expect that you read, respond or follow up on my emails outside your hours of work.*
*\*Board Certified in Labor and Employment Law, Texas Board of Legal Specialization*

   

*IMPORTANT: Emails to clients of this office presumptively and normally contain confidential and privileged material for the sole use of the intended recipient. Emails to non-clients are normally confidential and may be privileged. The use, distribution, transmittal or re-transmittal by an unintended recipient of any communication is prohibited without our express approval in writing or by email. Any use, distribution, transmittal or re-transmittal by persons who are not intended recipients of this email may be a violation of law and is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

**From:** Daniel Schlessinger <dschlessinger@jaszczuk.com>
**Sent:** Wednesday, February 5, 2025 2:31 PM
**To:** Christina Jump <cjump@clcma.org>; Samira Elhosary <selhosary@clcma.org>
**Cc:** Seth Corthell <scorthell@jaszczuk.com>
**Subject:** Recent Document Production from AMP

Christina and Samira-

We received your latest production of documents, along with the declaration of Munjed Ahmad, very late on Friday night. We have some issues with the production that we would like to discuss with you to see if we can resolve them between us.

1. As to the extent of the search that AMP performed, we accept that available, responsive documents were produced from the email accounts of Osama Abuirshaid, Abdelbasset Hamayel and Taher Herzallah. We wonder what consideration you gave to searching other email accounts. For example, we know that Hatem Bazian has been quite involved with the Students for Justice in Palestine and we would expect that responsive documents would be found in his email account. From the Ahmad declaration, it appears that this account was not searched. What is the reason for that?

2. Essentially all names of the correspondents on these documents have been redacted other than those of AMP personnel. We need to see these names in order to determine the extent to which AMP has supported people who have taken up the cause of Hamas or other causes that were supported by the Islamic Association for Palestine, which are key elements of our *alter ego* case. We are aware that you have taken the position in earlier productions that individual names should be redacted to protect the identity of individual donors, but the people whose names have been redacted do not appear to be donors. Rather, many of them seem to be recipients of funds from AMP and others involved in soliciting AMP support or assistance. We need to see these names to complete the development of our case.

3. In addition, there are documents from which entire sections of text have been redacted. *E.g.*, DP7322. We have no idea why that is, but unless the information is privileged, we believe we are entitled to see this text. *See* Dkt. 474, Paragraph 8.

4. The blanket designation of every document produced as confidential seems excessive. We have received requests from government entities to share with them documents that AMP has produced to us. While these requests do not rise to the level of subpoenas or court orders as reference in paragraph 12 of the Confidentiality Order, these requests strike us as seeking material in the public interest that we should share in response to these requests, particularly given our view that these documents do not contain information that should be considered confidential. We intend to seek court intervention if necessary to de-designate these documents in accordance with the Confidentiality Order, but the Order requires that we first raise the issue with you to see if we can reach agreement on this matter.

Given where we are in discovery and our need to view these documents without redaction to complete the preparation of our case, we ask that you respond to this email within one week, which is by February 12.

Dan

_____

Daniel I. Schlessinger

**Jaszczuk P.C.**
311 S. Wacker Drive, Suite 2150
Chicago, IL  60606
312-442-0366 (office)
773-301-9729 (cell)
dschlessinger@jaszczuk.com
www.jaszczuk.com

NOTICE:  This email is from the law firm of Jaszczuk P.C., may contain information that is privileged, confidential and/or protected from disclosure under applicable law, and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this email in error, please notify the sender immediately, destroy this email and all copies of it and do not copy or disclose it to anyone else.