# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER,<br><br>Defendants. | Civil No. 17-cv-03591<br><br><br>Hon. Andrea Wood |

## PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF PAUL CARROLL

Daniel I. Schlessinger
Stephen J. Landes
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
slandes@jaszczuk.com
scorthell@jaszczuk.com

Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

i

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. RELEVANT BACKGROUND ................................................................................................. 2

    A. THIS COURT SET FORTH THE RELEVANT ALTER EGO FACTORS IN MAY 2022. ........................ 2

    B. DEFENDANTS TWICE TRIED AND TWICE FAILED TO MAKE THIS CASE ABOUT THE BOIMS' MOTIVES INSTEAD OF ALTER EGO. ................................................................................... 3

III. STANDARD OF LAW ......................................................................................................... 4

IV. LEGAL ARGUMENT .......................................................................................................... 4

    A. MR. CARROLL IS NOT QUALIFIED TO TESTIFY AS AN EXPERT ON ANY OF THE TOPICS FOR WHICH HE WAS PROFFERED. ............................................................................................ 5

    B. MR. CARROLL'S OPINIONS ARE NOT RELIABLE. ................................................................ 7

        1. MR. CARROLL ADMITS HE DOES NOT RELY ON RIGOROUS METHODOLOGY. ...................... 8

        2. MR. CARROLL'S METHODS ARE NOT RELIABLE, NOR HAS HE REVIEWED SUFFICIENT FACTS OR DATA FOR HIS ALTER EGO OPINIONS. ........................................................... 9

        3. MR. CARROLL'S OPINIONS ON LAWFARE AND POST-9/11 NATIONAL SECURITY POLICY ARE ADVOCACY NOT EXPERTISE. ................................................................................... 10

    C. MR. CARROLL'S OPINIONS ARE NOT HELPFUL. ................................................................ 11

        1. MR. CARROLL'S OPINIONS ON LAWFARE AND "THE NATIONAL INTERNATIONAL SECURITY PARADIGM" ARE IRRELEVANT. ................................................................................ 11

        2. MR. CARROLL'S ALTER EGO OPINIONS ATTEMPT TO ADD EXPERT GLOSS TO DEFENSE COUNSEL'S ARGUMENTS AND DEFENSE WITNESS TESTIMONY. ....................................... 13

V. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887 (7th Cir. 2011) ...................................................... 8

*Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020 U.S. Dist. LEXIS 14812 (N.D. Ill. Jan. 24, 2020) ................................................................................................................................ 13, 14

*Boim v. American Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021) ................................. 1, 3, 15

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999) ...................................................................... 8

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901 (7th Cir. 2007)..................................................... 5

*GE v. Joiner*, 522 U.S. 136 (1997)................................................................................................... 8

*Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557 (7th Cir. 2003)................ 4

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017) .......................................... 4, 5

*Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084 (7th Cir. 1999)................................................... 4

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792 (N.D. Ill. Mar. 31, 2017)................................................................... 9

*In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570, 2025 U.S. Dist. LEXIS 159478 (S.D.N.Y. Aug. 18, 2025).......................................................................................................... 5

*Kessler v. Gross*, 2025 U.S. Dist. LEXIS 190218 (N.D. Ill. Sept. 26, 2025) ............................. 5, 9

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.* No. 11-cv-8808, 2023 U.S. Dist. LEXIS 170965 (N.D. Ill. Sept. 19, 2023) ..................................................................................... 11, 14

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)................................................................. 4, 7

*Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919 (7th Cir. 2000)..................................................... 10

*Lapsley v. Xtrek, Inc.*, 689 F.3d 802 (7th Cir. 2012) ....................................................................... 7

*Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698 (7th Cir. 2009) .................................................... 4

*Porter v. Whitehall Labs., Inc.*, 9 F.3d 607 (7th Cir. 1993)........................................................... 11

*Tao v. Simplex Invs., LLC*, No. 22-cv-1463, 2025 U.S. Dist. LEXIS 47914 (N.D. Ill. Mar. 17, 2025) ....................................................................................................................................... 11

*Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) ........................................................ 13

*United States v. Conn*, 297 F.3d 548 (7th Cir. 2002) ...................................................................... 4

*United States v. Phillips*, 2014 U.S. Dist. LEXIS 79917 (N.D. Ill. June 12, 2014)...................... 12

*Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790 (7th Cir. 2021)................................ 8

*Willis v. Sears Holdings Mgmt. Corp.*, 10 C 5926, 2012 U.S. Dist. LEXIS 128208 (N.D. Ill. Sept. 7, 2012) .................................................................................................................................... 13

**RULES**

FED. R. EVID. 401 ............................................................................................................................ 12
FED. R. EVID. 403 ............................................................................................................................ 12
FED. R. EVID. 702 ...................................................................................................................... passim

Plaintiffs Stanley and Joyce Boim (the "Boims"), pursuant to the Court's September 11, 2025 Minute Entry (Dkt. 585) and FED. R. Evid. 702, move to exclude Defendants' American Muslims for Palestine ("AMP") and Rafeeq Jaber's (together, "Defendants") proffered expert testimony from Paul Carroll.

## I. INTRODUCTION

Both the Seventh Circuit and this Court have identified four factors as relevant to determining alter ego liability in this matter: (1) overlap in leadership, (2) common organizational purpose, (3) similarity of operations, and (4) unlawful motive or intent to evade liability. (Dkt. 250, at p. 2, citing *Boim v. American Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021)). Accordingly, any expert witness must possess sufficient qualifications and expertise to offer opinions regarding the existence or nonexistence of these factors, and such testimony must assist the jury in determining whether Plaintiffs have met their burden of establishing any of them. Defendants' expert, Mr. Carroll, misses the mark on both requirements: he lacks relevant expertise to opine on whether AMP is an alter ego of the Islamic Association for Palestine ("IAP"), and his opinions would not aid the jury in understanding any complex issues beyond common knowledge.

First, Mr. Carroll seeks to offer opinion testimony that the Boims' lawsuit bears "some of the hallmarks of lawfare."[1] However, his attempt to impugn the Boims' motivations rests on subjective impressions rather than any legal expertise or training, and should therefore be

---

[1] Mr. Carroll's repeated tendentious claim that the efforts of people like the Boims' to recover damages under the Anti-Terrorism Act is some form of odious "lawfare" was specifically rejected in strong terms in the past term by the Supreme Court. "We will not belabor that the Federal Government has an exceedingly compelling interest, as part of its comprehensive efforts to deter international terrorism, in providing a forum for American victims to hold the perpetrators of such acts accountable. For similar reasons, American plaintiffs have a strong interest in seeking justice through an ATA damages action in U. S. courts." *Fuld v. Palestine Liberation Organization*, 606 U.S. 1, at *24 (2025).

1

excluded. Even setting aside his lack of relevant qualifications, Mr. Carroll's proposed testimony merely repackages—under the guise of expert analysis—an argument this Court has already rejected twice: that the Boims' motivations for bringing this lawsuit are relevant to their alter ego claims.

Mr. Carroll's second opinion—regarding the post-9/11 environment for certain humanitarian non-profits—essentially advances the same improper argument: that the Boims possess an ulterior and impermissible motive in bringing this lawsuit. Again, Mr. Carroll lacks qualifications to support this opinion. In any event, his opinion bears no relevance to the issues before the Court. Neither the Boims' motives nor the broader cultural climate are material to their alter ego claims. Mr. Carroll's intended testimony would only distract the jury with irrelevant information that has no bearing on whether AMP is the alter ego of IAP.

In his third opinion, Mr. Carroll effectively purports to serve as an expert on the doctrine of alter ego. Yet he concedes that he possesses only a "layperson['s]" understanding of the concept and, notably, has not even reviewed this Court's prior rulings addressing alter ego. His attempts to discredit the Boims' experts and bolster the testimony of Defendants' fact witnesses merely enlist him as a conduit for defense counsel's arguments. That is not a proper function of expert testimony.

## II. RELEVANT BACKGROUND

For brevity, Plaintiffs will not attempt to summarize the over eight year history of this case, but will instead review those aspects that pertain to the offered expert testimony.

### A. THIS COURT SET FORTH THE RELEVANT ALTER EGO FACTORS IN MAY 2022.

In May 2022, this Court denied Defendants' motion to dismiss, echoing the Seventh Circuit's guidance that Plaintiffs' First Amended Complaint was "'replete with factual allegations . . . show[ing]' that the Entity Defendants are 'a disguised continuance of [AMS/IAP].'" (Dkt.

2

250, at p. 2, quoting *Boim*, 9 F.4th at 555). According to this Court, those factual allegations "support[ed] each factor the Seventh Circuit identified as relevant to a determination of alter ego liability in the context of this case: 'overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability.'" (*Id.*, quoting *Boim*, 9 F.4th at 559)

    B. **DEFENDANTS TWICE TRIED AND TWICE FAILED TO MAKE THIS CASE ABOUT THE BOIMS' MOTIVES INSTEAD OF ALTER EGO.**

During ensuing fact discovery, various disputes arose, and Magistrate Judge McShain ("MJ McShain") repeatedly referenced the Seventh Circuit alter ego factors when determining the limits of relevance and discoverability. (*See, e.g.*, Dkt. 301 at p. 9, Dkt. 372, at p. 2, Dkt. 402, at p. 19) In particular, on two occasions Defendants moved to compel discovery into litigation funding and Plaintiffs' motivations for filing this lawsuit. (Dkt. 276, Dkt. 462) MJ McShain denied both motions, reasoning that neither litigation funding nor Plaintiffs' motivation had any relevance to proving or disproving alter ego. (Dkt. 307, pp. 17-21; Dkt. 472)

In denying Defendants' second motion to compel, MJ McShain found that the motion was not substantially justified in light of her prior ruling and awarded fees and costs to Plaintiffs. (Dkt. 485) This Court subsequently overruled Defendants' Rule 72(a) objection to that award. (Dkt. 567) Given that the bounds of discovery are broader than admissibility at trial, including not merely admissible evidence , but also material that is reasonably calculated to lead to admissible evidence, there can be no question that testimony regarding the Boims' motivations is inadmissible.

3

### III.  STANDARD OF LAW

To be admissible, an expert must be qualified by knowledge, skill, experience, training, or education, and their testimony must: (1) help the jury understand evidence or determine a fact in issue; (2) be based on sufficient facts or data; (3) result from reliable principles and methods; and (4) be reliably applied to the case facts. FED. R. EVID. 702. Courts act as gatekeepers to ensure expert testimony is both reliable and relevant, applying these standards to all types of expertise. *Daubert v. Merrell Dow*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999).

The proponent must prove admissibility by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) *citing* FED. R. EVID. 702 advisory committee's note (2000 Amends.). Courts consider both qualifications and methodology, (*see Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)), and must exclude opinions based on speculation or unsupported assumptions. *See Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1086-87 (7th Cir. 1999).

Experience alone is not enough; the expert must show how their experience supports their conclusions. *See United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002). Expert testimony that merely tells the jury what result to reach or repeats counsel's arguments is inadmissible. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

### IV.  LEGAL ARGUMENT

Under Rule 702, expert testimony can be admitted if it meets three conditions: (1) it is provided by a qualified witness; (2) it is based upon reliable data and methodology; and (3) his testimony will assist the jury. *Kessler v. Gross*, 2025 U.S. Dist. LEXIS 190218, at *12 (N.D. Ill.

4

Sept. 26, 2025). Here, Defendants' expert and his proffered testimony meet none of these requirements and should therefore be excluded.

### A. Mr. Carroll is not qualified to testify as an expert on any of the topics for which he was proffered.

As an initial matter, Mr. Carroll intends to provide testimony on the use of "lawfare" against AMP, U.S. national security policy in the wake of 9/11, and whether AMP "meets . . . the bar of alter ego." (*See generally* Carroll initial and supplemental expert report, attached as Exhibits A and B; Carroll Dep. Tr., attached as Exhibit C, at p. 9). But he has no legal training or expertise that would qualify him to testify on "lawfare" and no background in "national security," subjects that are in any event irrelevant to this lawsuit. As to the single issue in the case, "alter ego," his knowledge is limited to attending a few conferences and reading two alter ego cases he located through a "Google search." Accordingly, he is a lay person on these issues and his opinions should be excluded.

A witness offering opinion testimony "must be qualified 'as an expert by knowledge, skill, experience, training, or education . . .'" *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) *quoting* Fed. R. Evid. 702. The qualifications for a witness "typically show up on her resume." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570, 2025 U.S. Dist. LEXIS 159478, at *5 (S.D.N.Y. Aug. 18, 2025). "In terrorism litigation, experts generally boast acceptable academic or professional credentials." *Id.* (internal quotation marks omitted).

Here, Mr. Carroll's resume falls far short of the requisite qualification standard. He has few, if any, relevant published works and has never previously provided expert testimony on any topic. (*See* Ex. A at pp. 6-7; Ex. C, at p. 61) Mr. Carroll's educational background does not reflect any expertise in alter ego, lawfare, or national security. (Ex. A at pp. 1-2) He admits he has never studied corporate law or the alter ego doctrine. (Ex. C, at p. 45-47) After graduation,

5

Mr. Carroll worked in roles at the Department of Energy and the Environmental Protection Agency – positions with no apparent connection to lawfare, national security, or alter ego issues. (*See, e.g.,* Ex. C, at p. 50)

Mr. Carroll's later positions in the nonprofit sector, primarily as an advisor or consultant, likewise fail to demonstrate any specialized knowledge of alter ego, lawfare, or the national security environment. He admitted during his deposition that while working as an independent consultant in the late 1990s and at Ploughshares from 2000–2017, he had no professional experience relevant to alter ego issues. (Ex. C, at p. 53) Nothing in his description of those roles provides any basis for claiming expertise in lawfare or the post-9/11 national security context. (Ex. A, at p. 2)

At his deposition and in his reports, Mr. Carroll relies primarily on his work at the Charity & Security Network ("CSN") to claim relevant experience. (Ex. C, at p. 54) Yet he could not identify any specific experience obtained in that role that relates to the opinions he seeks to offer here. According to Mr. Carroll, CSN provides nonprofits with analyses of government legislation and executive orders, the purposes of which he openly rejects, and their impact on nonprofit operations. (*Id.* at p. 57) While that work might support expertise in a case concerning legislation or regulatory impacts on not-for-profits, this case involves the alter ego doctrine. But Mr. Carroll testified that he has no experience advising not-for-profits on alter ego issues and further admitted that he possesses only a "layperson['s]" understanding of the concept. (*Id.* at pp. 6–7, 19–20, 53-55)

To the extent Mr. Carroll has any familiarity with alter ego, it is limited to attending at least one conference where the topic was discussed and conducting admittedly "limited research" consisting of reviewing two cases he found via Google. (Ex. C, at pp. 7, 55) Despite this

6

complete lack of relevant knowledge, Defendants maintain that Mr. Carroll is qualified to opine on whether AMP meets the "bar" for alter ego. He is not.

Similarly, Mr. Carroll's resume and deposition testimony show no meaningful experience or expertise concerning the prevalence of "lawfare" or the post-9/11 "national and international security paradigm." At best, his resume indicates that he published one article praising the Biden administration's decision not to designate Ansar Allah (commonly known as the Houthis) as a terrorist organization, and contributed a chapter to a book concerning "transnational repression and Palestine-Israel." (Ex. A, at pp. 6-7) These publications have little, if any, relevance to his intended testimony and, in any event, are insufficient to establish expertise in lawfare or national security policy.

Accordingly, Defendants cannot meet their burden of showing that Mr. Carroll is qualified to testify as an expert on any of the topics outlined in his reports.

B. **MR. CARROLL'S OPINIONS ARE NOT RELIABLE.**

Setting aside Mr. Carroll's lack of qualifications, his opinions are not reliable because they are not based on any standards or methodologies. Rather, by Mr. Carroll's own admissions, they are pure speculation by a layperson.

To assess an expert's reliability, the Court must scrutinize the standards and methods behind the expert's opinions. *Lapsley v. Xtrek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury.") *quoting Kumho Tire Co.*, 526 U.S. at 152. In determining reliability, Courts often consider the factors set forth in *Daubert*:

> (1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or

7

potential rate of error; and (4) the theory's level of acceptance within the relevant community.

*Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011). These factors are "applicable in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinions on 'experience' and 'training.'" *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999). "'Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Id.*, quoting *GE v. Joiner*, 522 U.S. 136, 145 (1997). *See also Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2021) ("We have said over and over that an expert's *ipse dixit* is inadmissible.")

    **1. MR. CARROLL ADMITS HE DOES NOT RELY ON RIGOROUS METHODOLOGY.**

Mr. Carroll's initial submission states that he "bases his opinions and conclusions on proven methodologies" and that he is "prepared to describe in detail the methodology and social science paradigms he utilizes to come to his own opinions and conclusions." (Ex. C) The following exchange from his deposition clarifies what those "proven methodologies" actually are:

> Q: Yeah. Well, you said you reviewed literature in the course of your preparing for your testimony here. Is there something in the literature that demonstrates a proven methodology for evaluating the facts of this case?
>
> Ms. Jump: Objection; form.
>
> A: In terms of an evaluation process, no.
>
> Q: The last line of that paragraph that we were just looking at on page 2 [sic] of Exhibit 3 says you're "prepared to describe in detail the methodology and social science paradigms that you utilized to come to your opinions and conclusions." Can you give us any more detail on those methodologies and social science paradigms than what you've just testified to?
>
> Ms. Jump: Objection; form. Go ahead.

8

A: I couldn't say anything – I wouldn't elaborate more on my prior answer.

(Ex. C, at pp. 95-96) By Mr. Carroll's own admission, to the extent he reviewed any "literature in the field" (he never identified specific works), he did not supply a proven methodology he used to evaluate this case. Far from being based on recognized methods, his opinions amount to nothing more than a review of a few deposition transcripts and corporate formation documents provided by defense counsel. That is the very definition of an *ipse dixit* opinion, and his testimony should therefore be excluded. *Kessler*, 2025 U.S. Dist. LEXIS 190218, at *19 ("In an *ipse dixit* opinion, the expert asserts a 'bottom line' conclusion but lacks any articulable facts to substantiate that conclusion or fails to explain the reasoning or methods employed to reach it.") *quoting In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792 (N.D. Ill. Mar. 31, 2017).

### 2. MR. CARROLL'S METHODS ARE NOT RELIABLE, NOR HAS HE REVIEWED SUFFICIENT FACTS OR DATA FOR HIS ALTER EGO OPINIONS.

Mr. Carroll's report and testimony contain nothing more than his lay impressions of topics he admits knowing little about. For instance, Mr. Carroll contends he can opine on whether AMP has met "the bar of alter ego." (Ex. C, at p. 9) But his understanding of that "bar" is informed solely by reviewing two cases he found through a Google search. (*Id.* at p. 7) Despite being unaware of the controlling opinions in this very case, Mr. Carroll nonetheless asserts that he can evaluate whether AMP satisfies the "bar" for alter ego.

When asked about the relevant factors, Mr. Carroll emphasized the importance of an "almost concurrent" temporal connection between the predecessor organization and the alleged alter ego. (Ex. C, at p. 17) He claimed that any gap of over a year "would lead me to question the legitimacy of such a claim." (*Id*) When pressed for the source of this one-year cutoff, Mr. Carroll could not cite any methodology, literature, or empirical study—stating only that the opinion was

9

"based on my experience." (*Id.* at p. 18) When asked what experience he "had with an alter ego being formed within a calendar year of its predecessor company[]" that informed that view, he admitted he had "[n]o specific direct experience." (Ex. C, at p. 19) In short, Mr. Carroll is providing off-the-cuff, uninformed lay speculation.

Moreover, many of his opinions are not even informed by a review of relevant facts or data from this case. For example, Mr. Carroll indicated that he intended to offer an opinion on the overlap of IAP's and AMP's missions even though he had not actually compared the two organizations' written mission statements. (Ex. C, at pp. 28-29) Thus, Mr. Carroll's report and testimony repeatedly demonstrate that he is offering uninformed lay opinions—not reliable expert analysis based on proven methodology.

### 3. MR. CARROLL'S OPINIONS ON LAWFARE AND POST-9/11 NATIONAL SECURITY POLICY ARE ADVOCACY NOT EXPERTISE.

Finally, Mr. Carroll's proffered testimony concerning "lawfare," U.S. national security policy, and their impact on Muslim charitable organizations rests on no identifiable methodology capable of being tested, replicated, or peer reviewed.

Mr. Carroll applies no recognized discipline, empirical analysis, or specialized data to the facts of this case. Instead, he offers broad sociopolitical commentary on perceived patterns of government conduct. Such subjective observations do not constitute reliable expert methodology. *See Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) ("Many times we have emphasized that experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data.").

At bottom, Mr. Carroll's proposed testimony functions as advocacy directed against the underlying statutes cloaked in the language of expertise. Courts consistently reject attempts to use expert witnesses as vehicles for argumentative narrative or policy commentary. *See, e.g.,*

10

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.* No. 11-cv-8808, 2023 U.S. Dist. LEXIS 170965 at *6 (N.D. Ill. Sept. 19, 2023) ("An expert is not a narrator of the evidence, offering a running commentary on what the jury has already heard"). Because Mr. Carroll's opinions on lawfare and post-9/11 security policy are speculative, unsupported, and methodologically unsound, they cannot satisfy Rule 702's reliability requirement and must be excluded.

### C. MR. CARROLL'S OPINIONS ARE NOT HELPFUL.

Expert testimony can be admissible when it is relevant and it helps the jury make an informed decision on issues beyond the understanding of the average juror. *See Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 (7th Cir. 1993). Here, Mr. Carroll's opinions on lawfare and "[t]he national international security paradigm" have no bearing on whether AMP is the alter ego of IAP; therefore they are irrelevant and should be excluded. Mr. Carroll's opinions on whether AMP has met the "bar" for alter ego do not shed light on any issue beyond the understanding of the jury and, instead, merely recites Defendants' theory of the case.

#### 1. MR. CARROLL'S OPINIONS ON LAWFARE AND "THE NATIONAL INTERNATIONAL SECURITY PARADIGM" ARE IRRELEVANT.

Irrelevant evidence is not helpful. *Daubert* 509 U.S. at 591. For this reason, Courts exclude opinions that are not relevant to the claims at issue. *E.g.*, *Tao v. Simplex Invs., LLC*, No. 22-cv-1463, 2025 U.S. Dist. LEXIS 47914, at *10 (N.D. Ill. Mar. 17, 2025) ("Because Ziliak's opinion is offered solely to show that Simplex made a mistake when it found that Tao was at fault for the SAT coding error, his opinion is irrelevant to establishing pretext under Title VII and is thus excluded.") Here, the proposed testimony regarding "lawfare," post-9/11 national security policy, and the purported impact of such policies on Muslim not-for-profit organizations is wholly irrelevant to the issues before the Court in this alter ego action.

This Court has already ruled—twice—that Plaintiff's motivations for bringing suit are not relevant to any claim or defense. (Dkt. 307, pp. 17-21; Dkt. 472) Nevertheless, Defendant seeks to introduce the testimony of Mr. Carroll as a backdoor means of reintroducing the same issue the Court has already excluded. The proposed expert purports to offer broad sociopolitical commentary about "lawfare" and alleged systemic biases in U.S. counterterrorism policy. Such testimony does not address the elements of alter ego liability, the separateness of corporate entities, or any other material issue in this case. Instead, it is designed to suggest that Plaintiff's lawsuit is part of a larger political or ideological campaign—precisely the line of argument the Court has already foreclosed.

Because the testimony does not relate to any fact "of consequence in determining the action," it fails the threshold test for relevance under Rule 401. Allowing it would only confuse the issues and invite the jury to base its conclusions on speculation about Plaintiff's motives rather than on the evidence of corporate structure and control. *See United States v. Phillips*, 2014 U.S. Dist. LEXIS 79917 at *6-7 (N.D. Ill. June 12, 2014) (excluding expert testimony "that is irrelevant and would do little more than confuse the jury would invite jury nullification—an acquittal even if the government satisfied each element of the charged offense.") (internal quotation marks omitted). The Court's prior rulings make clear that Plaintiff's motivations are not such an issue.

Moreover, even if marginally relevant (it is not), the testimony should be excluded under Fed. R. Evid. 403 because any minimal probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. The proposed "lawfare" narrative invites the trier of fact to evaluate Plaintiff's conduct through the lens of political motivation and perceived religious or cultural bias rather than through the legal

12

framework governing alter ego liability. Courts routinely exclude such testimony when it risks turning a case into a referendum on unrelated political or social questions. *See, e.g., Willis v. Sears Holdings Mgmt. Corp.*, 10 C 5926, 2012 U.S. Dist. LEXIS 128208 at *19 (N.D. Ill. Sept. 7, 2012) ("A federal discrimination trial is not a college social science class where a professor may lecture at will about broad social issues."). Indeed, Mr. Carroll's own testimony appears to confirm that Defendants' intent in proffering this testimony was to shift the jury's focus away from the alter ego analysis. (*See, e.g.,* Ex. C, at pp. 78-79 (testifying that the effect of the judgment on AMP's ability to operate is a relevant consideration)).

As such, permitting Mr. Carroll to testify would undermine the Court's prior rulings, confuse the jury with irrelevant sociopolitical themes, and unfairly prejudice Plaintiffs by implying improper motive where none is at issue. The Court should therefore exclude the proposed expert testimony in its entirety.

### 2. MR. CARROLL'S ALTER EGO OPINIONS ATTEMPT TO ADD EXPERT GLOSS TO DEFENSE COUNSEL'S ARGUMENTS AND DEFENSE WITNESS TESTIMONY.

Finally, the "helpfulness" requirement also means that an expert may not simply summarize the evidence, restate a party's theory of the case, or offer opinions on issues the jury is fully capable of deciding on its own. *See Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) (excluding expert opinions where the jury was in as good a position as the experts to determine whether an individual acted reasonably); *Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020 U.S. Dist. LEXIS 14812 at *15 (N.D. Ill. Jan. 24, 2020) ("For the purposes of the instant motion, the relevant critical function of the jury is assessing witness credibility . . . and the Seventh Circuit has repeatedly affirmed exclusion of expert opinions that usurp that function of the jury.") (internal quotation marks omitted).

Here, Mr. Carroll's proposed opinions on alter ego do not apply any specialized expertise to assist the jury in understanding complex corporate structures or accounting principles. Instead, his "analysis" simply parrots Defendants' litigation theory—that the entities were distinct due to temporal gaps in their existence and purported differences in missions and operations. Such testimony is not "helpful" because it does not help the jury determine a complex issue. Instead, it merely tells the jury what conclusion to reach based on ordinary evidence it can evaluate itself. *See Kraft Foods Glob., Inc.*, 2023 U.S. Dist. LEXIS 170965 at *6 ("An expert is not a lawyer's sock puppet."). That is not the purpose of expert testimony.

In addition, Mr. Carroll's commentary on the credibility and veracity of Plaintiffs' experts is improper. Assessing credibility is the exclusive province of the jury, not an area for expert opinion. *See, e.g., Bogathy*, 2020 U.S. Dist. LEXIS 14812 at *15. But the majority of Mr. Carroll's opinion does just that, ranging into inappropriate and speculative assessments of credibility with little to basis for doing so.

For example, Mr. Carroll offers "expert" opinions that Dr. Vidino's "'methodology' relies heavily on presumptions, not identified facts," that Dr. Chorev's book on Palestine does not relate to present day conditions, or that "Mr. Spitzen did not know the facts surrounding AMP and its incorporation or operations in the United States." (Ex. B, at p. 4) These may well be arguments Defense counsel is entitled to make in a *Daubert* motion or at trial, but Mr. Carroll cannot be used to add an expert gloss to them.

Likewise, his "analysis" of Defendants' own fact witnesses merely adds a seeming veneer of "expert gloss" to testimony the jury can evaluate directly:

"Notes by Munjed Ahmad regarding the April 2006 pre-formation meeting show the concept and even the name of AMP, was still in formation and up for a vote at this point." (Ex.

14

B, at p. 5) This is not an opinion. It is an argument for how the jury should interpret and contextualize evidence.

"The testimony of witness Magdi Odeh who created the Yahoo bulletin board the plaintiffs reference, explains that AMP's early discussions revealed that 'they didn't want that old guard, they didn't want anyone from IAP.'" (Ex. B, at p. 5) Here, Mr. Carroll is telling the jury how it should interpret the mental state of the early AMP based on the statement of AMP's witnesses. That is not providing an opinion, it is advocating and arguing for Defendants. Notably, Judge Scudder specifically indicated in the Seventh Circuit opinion that this evidence could be interpreted as evidence of fraudulent intent. *Boim*, 9 F.4th at 558.

"The dates above do not align with any 'overlap' of IAP conventions, three out of five of which took place over Christmas weekend and the last of which was Christmas 2001." (Ex. B, at p. 5) Here, Mr. Carroll is just restating information the jury does not need an expert to interpret.

All of Mr. Carroll's "expert opinions" on the impact of AMP's testimony and documentary evidence follow this pattern.

Accordingly, because Mr. Carroll's alter ego opinions neither address issues requiring specialized knowledge nor rest on any discernible expertise beyond the jury's common understanding, they fail the Rule 702(a) helpfulness standard and should be excluded.

V. **CONCLUSION**

Expert testimony must be proffered by an expert, reliable, and helpful to the jury. Defendants cannot show Mr. Carroll meets any of these prerequisites to providing opinion testimony. He should, therefore, be disqualified as an expert witness and his opinions should be excluded.

Date: October 31, 2025

Respectfully submitted,

*/s/ Seth H. Corthell*
Daniel I. Schlessinger
Stephen J. Landes
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
slandes@jaszczuk.com
scorthell@jaszczuk.com

Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 31st day of October 2025.

*/s/ Seth H. Corthell*