IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE, *et al.*, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> Hon. Andrea Wood |

**DEFENDANT'S MOTION TO EXCLUDE**
**PLAINTIFF'S EXPERT, DR. LORENZO VIDINO**

Defendants AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") and Rafeeq Jaber ("Mr. Jaber") (together, "Defendants") respectfully move this Court to exclude the testimony of Plaintiffs' proffered expert, Dr. Lorenzo Vidino ("Dr. Vidino").

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I. INTRODUCTION ................................................................................................. 1

II. FACTS AND PROCEDURAL HISTORY .......................................................... 1

III. STANDARD OF REVIEW .................................................................................. 3

IV. ARGUMENT ........................................................................................................ 3

    A. Dr. Vidino Lacks the Qualifications to Opine on Topics Relevant to This Case ... 3

    B. Dr. Vidino's Report and Testimony Lack Reliable Methodology .......................... 5

    C. Neither Dr. Vidino's Report Nor His Testimony Will Help the Trier of Fact........ 7

    D. Dr. Vidinos's Report Lacks a Proper Signature, in Violation of the Federal Rules of Civil Procedure and this Court's Rules ............................................................... 8

V. CONCLUSION ..................................................................................................... 9

CERTIFICATE OF SERVICE ..................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579 (1993) ............................................................................................................... 3

*Gayton v. McCoy*
   593 F.3d 610 (7th Cir. 2010) ............................................................................................. 3, 4

*Gopalratnam v. Hewlett-Packard Co.*
   877 F.3d 771 (7th Cir. 2017) ......................................................................................... 3, 6, 7

*Lewis v. CITGO Petrol. Corp.*
   561 F.3d 698 (7th Cir. 2009) ................................................................................................. 3

*SFG, Inc. v. Musk*
   No. 19-cv-02198, 2019 U.S. Dist. LEXIS 229930 (N.D. Ill. July 31, 2019) ......................... 3

*Shebley v. United Cont'l Holdings, Inc.*
   No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647 (N.D. Ill. Apr. 20, 2021) ................ 3, 4, 5, 7

*Specialty Earth Scis., LLC v. Carus Corp.*
   No. 15-cv-06133, 2020 U.S. Dist. LEXIS 222464 (N.D. Ill. Nov. 30, 2020) ........................ 4

*Tao v. Simplex Invs., LLC*
   No. 22-cv-1463, 2025 U.S. Dist. LEXIS 47914 (N.D. Ill. Mar. 17, 2025) ............................ 7

*United States v. Curtin*
   No. 23-3368, 2025 U.S. App. LEXIS 16236 (7th Cir. July 1, 2025) ..................................... 7

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*
   395 F.3d 416 (7th Cir. 2005) .............................................................................................. 5, 6

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................................ 8

Fed. R. Evid. 702(a) .................................................................................................................. 3

I.   **INTRODUCTION**

Defendants move to exclude Dr. Vidino's testimony because he is not qualified to testify about the facts of this case, fails to present any reliable methodology for his conclusions, and presents no relevant testimony that would assist the trier of fact. Though Dr. Vidino is a well-educated individual who has testified as an expert previously in many criminal trials and one civil trial, his area of expertise does not extend to matters relevant to this case. Throughout his deposition testimony, Dr. Vidino's answers reveal that he cannot support many of the conclusions offered in his expert report. He presents no methodology used to come to the conclusions he presents in his report, despite previously presenting a well-defined methodology in his previous expert testimony in criminal cases. Defendants and this Court therefore cannot reasonably evaluate the reliability of Dr. Vidino's proposed testimony. As his testimony will not help this Court or the ultimate trier of fact to better understand the evidence, Defendants request this Court exclude Dr. Vidino's testimony in its entirety.

II.   **FACTS AND PROCEDURAL HISTORY**

This case arises out of acts that occurred in 1996, when Plaintiffs' son died after being shot in Jerusalem. Plaintiffs brought a lawsuit in 2000 under the Anti-Terrorism Act ("ATA") against the Holy Land Foundation ("HLF"), Islamic Association of Palestine ("IAP"), and the American Muslim Society ("AMS") (together the "Judgment Defendants"), among others. The court in that matter entered judgment for Plaintiffs of $156 million in damages (the "*Boim I* Judgment"). Despite Plaintiffs' repeated efforts to collect on that judgment, the Judgment Defendants became defunct as a result of years of litigation, forced closure, and, in the case of HLF, seizure of its assets by the government. Plaintiffs collected only a small portion of that judgment.

In 2017, Plaintiffs filed this lawsuit against AMP, an entirely domestic U.S. nonprofit organization, and Mr. Jaber individually. Plaintiffs claim Defendant AMP bears liability for the *Boim I* Judgment because they assert it qualifies as the alter ego and/or successor of IAP; Plaintiffs also allege Mr. Jaber, not a named party in the *Boim I* litigation, now bears personal liability for fraudulent concealment. The Honorable Judge Sharon Johnson Coleman previously dismissed Plaintiffs' claims twice for lack of subject matter jurisdiction, finding Plaintiffs' allegations insufficient to support alter ego or successor liability in federal court and refusing to exercise ancillary jurisdiction over state claims. In between the first and the second dismissal, Judge Coleman permitted Plaintiffs to conduct over a year of jurisdictional discovery. Plaintiffs engaged in extensive efforts, resulting in Defendants producing thousands of pages of responsive documents and multiple witnesses for depositions. After jurisdictional discovery concluded, Judge Coleman again dismissed the action. Following this second dismissal, Plaintiffs appealed. The Seventh Circuit remanded the case based on its finding that subject matter jurisdiction exists under a limited interpretation of Plaintiffs' claims, and allowed Plaintiffs to proceed.

The Parties then engaged in mutual fact discovery for the first time beginning in July 2022, which concluding more than two years later in January 2025. Defendants produced thousands of pages of additional documents and Plaintiffs deposed ten witnesses. Plaintiffs provided Defendants with Dr. Vidino's expert report on April 30, but represented they were "experiencing some technical difficulties accessing Mr. Vidino's CV." *See* Doc. 575.2 at 22. Plaintiffs produced Dr. Vidino's CV on May 7, 2025. Defendants deposed Dr. Vidino on May 21, 2025. At the beginning of that deposition, Plaintiffs' counsel informed Defendants' counsel of some "corrections" to Dr. Vidino's expert report. *See* Exhibit A, Transcript of the Deposition of Lorenzo G. Vidino, PhD at

2

5-7. After multiple follow-up requests, Plaintiffs provided a corrected version of Dr. Vidino's report on June 5, 2025.

### III. STANDARD OF REVIEW

The party proposing an expert bears the burden to show the admissibility of the expert's testimony under Federal Rule of Evidence 702. *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* interpreted Rule 702 to establish a three-prong analysis that a district court must undertake to determine the admissibility of evidence. 509 U.S. 579 (1993). Courts evaluate "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Shebley v. United Cont'l Holdings, Inc.*, No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647, at *3 (N.D. Ill. Apr. 20, 2021) (citing *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)). The essential question is whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).

### IV. ARGUMENT

**A.   Dr. Vidino Lacks the Qualifications to Opine on Topics Relevant to This Case**

Dr. Vidino's general expertise does not qualify him as an expert in the specific issues relevant to the claims asserted in this case. *See SFG, Inc. v. Musk*, No. 19-cv-02198, 2019 U.S. Dist. LEXIS 229930, at *3 (N.D. Ill. July 31, 2019) (finding an expert's testimony inadmissible because he did not claim specialized knowledge or expertise relevant to the case). An expert must apply their expertise to a specific, relevant question. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (explaining that an expert's qualifications must "provide a foundation for [him] to answer a specific question" relevant to the case at issue). Dr. Vidino's general expertise on issues

3

of international terrorism, and even his specific expertise on the Muslim Brotherhood in the west, primarily Europe, does not qualify him as an expert on the relevant alter ego analysis and related factual issues applicable in this case. *See, e.g.,* Exhibit A at 92-106 (establishing that Dr. Vidino's publications focus heavily on activities in Europe).

Witnesses must have the qualifications that allow them to opine on a specific question relevant to the claims asserted in the case at issue. *See Shebley*, 2021 U.S. Dist. LEXIS 269647, at *5 (citing *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). Someone with general expertise in one area is not necessarily "any more qualified than a layperson" to opine on a specific matter outside that person's areas of expertise. *Id.* Further, even if a witness has experience in one area, that same person may not have expertise in the application of those issues in a particular field. *See Specialty Earth Scis., LLC v. Carus Corp.*, No. 15-cv-06133, 2020 U.S. Dist. LEXIS 222464, at *11 (N.D. Ill. Nov. 30, 2020) (determining that an expert in a relevant technology does not necessarily have expertise in the marketing and sales of that technology). Courts must look at each conclusion an expert draws, and determine whether the expert has "the adequate education, skill, and training to reach them." *Gayton*, 593 F.3d at 617.

Dr. Vidino does not possess the specialized expertise and background to reach the conclusions he presents in his report. He concludes that "[a]n overwhelming amount of evidence indicates that the creation of AMP is, in substance, the third instance in which the US Hamas network re-worked its public-facing structure to avoid a crisis." Exhibit B, Corrected Expert Opinion of Lorenzo Vidino at 24. However, when asked about that conclusion in his deposition, Dr. Vidino could not identify that "overwhelming amount of evidence." Exhibit A at 191-97. In addition, nothing in Dr. Vidino's education or experience qualifies him to testify about the "US Hamas network" discussed in his report. Instead, Dr. Vidino's published books, Congressional

4

testimonies, and the vast majority of his other publications relate to the European context, his area of expertise. *See, e.g.,* Exhibit A at 28, 92-106, 144-45; Exhibit C, Lorenzo Vidino CV at 3-7. Though he testified in several criminal proceedings and one civil court proceeding previously, none of that testimony related to Hamas or the United States. *See* Exhibit A at 119-20. The facts at issue in this case pertain to events that occurred in the United States and by domestic entities. *See Shebley*, 2021 U.S. Dist. LEXIS 269647, at *5 (finding the expert had general expertise in her field, but not the "targeted expertise" relevant to the claims). Finally, Dr. Vidino cannot identify any expertise as to alter ego or successor organizations, the only claims brought against AMP in this case. *See* Exhibit A at 122-23. Therefore, Dr. Vidino lacks the requisite qualifications to reach the conclusions presented in his report and discussed in his deposition.

**B.****Dr. Vidino's Report and Testimony Lack Reliable Methodology**

Dr. Vidino does not identify any reliable methodology in his expert report, nor did he articulate one when questioned in his deposition. Experts cannot rely on their general "expertise" in lieu of specific, identified methodology used to reach a relevant conclusion in each case. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) (holding that a purported expert who cannot articulate a method likely cannot meet the reliable method requirement to testify).

Expert witnesses must be able to describe the method by which they reached their conclusions, sufficiently to satisfy the court that the expert's "approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone using the same data and methods must be able to replicate the result." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *6-7 (citing *Zenith Elecs. Corp.*, 395 F.3d at 419). Personal judgment does not qualify as a credible methodology. *See id.* at *6. Instead, courts evaluate "(1) whether the proffered theory can be and

5

has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Gopalratnam*, 877 F.3d at 779-80 (recognizing the advisory committee's notes to the 2000 Rule 702 amendments provide multiple other factors to assess reliability). Even in the social sciences, expert witnesses must provide sufficient detail to give the court "good reason to think that his approach produces an accurate estimate using professional methods." *Zenith Elecs. Corp.*, 395 F.3d at 419; *see also Gopalratnam*, 877 F.3d at 780 (highlighting the fact that even flexibility exercised by courts to determine reliability "is not without limit").

Dr. Vidino articulated no methodology used to reach his conclusions, and did not review key documents and transcripts before coming to those conclusions. His report instead describes the research methods he used to write two books on the Muslim Brotherhood in the west (exclusive of the United States, save minimal references). *See* Exhibit B at 1. He also does not specify the documents or data he reviewed that formed the basis for his report. *Id.* at 2. Though counsel for Plaintiffs clarified for Dr. Vidino on the record in Dr. Vidino's deposition that Dr. Vidino cites to all of the documents he relied on, Dr. Vidino himself acknowledged his report does not refer to several depositions he claimed in his deposition to have reviewed. *See* Exhibit A at 6, 63. Dr. Vidino's inability to correctly answer key questions about AMP and its founders further illuminates his unreliable methods. *Id.* at 124-25 (admitting he does not know who Munjed Ahmad—one of AMP's two co-founders—is and did not review Mr. Ahmad's deposition testimony, either as an individual or as AMP's corporate representative). Finally, Dr. Vidino shows no basis to believe his methods and conclusions are widely accepted by the relevant scientific or professional communities. While Dr. Vidino's books and many of his published works do undergo

6

peer-review, his few relatively recent publications on Hamas networks in America did not. Those publications consist solely of articles published by the research center he directs, and pieces he submitted as op-eds. *See* Exhibit C at 7, 12, 14 (listing no publications about Hamas that pre-date 2023). Dr. Vidino identifies no methodology at all, and what he does provide cannot be replicated. Dr. Vidino's report therefore is neither reliable nor admissible.

**C.     Neither Dr. Vidino's Report Nor His Testimony Will Help the Trier of Fact**

Finally, Dr. Vidino's testimony via both his report and his deposition lacks relevance, and therefore cannot assist this Court or the trier of fact in making any determinations relevant to the claims asserted in this case. *See Shebley*, 2021 U.S. Dist. LEXIS 269647, at *10-11. A court's gatekeeping role ensures that all testimony be relevant and useful to the determination of an issue. *Gopalratnam*, 877 F.3d at 779. Where an expert witness' testimony does not provide any practical context to help the jury, courts routinely exclude the testimony. *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *11. Dr. Vidino's testimony provides much information about tangential issues not relevant to the claims Plaintiffs assert in this lawsuit.

Expert testimony does not assist the finder of fact if logic or common sense without an expert will equally allow understanding the evidence and arguments. *United States v. Curtin*, No. 23-3368, 2025 U.S. App. LEXIS 16236, at *11 (7th Cir. July 1, 2025) (finding unnecessary the specialized testimony explaining information the average juror could already understand). Opinions also lack relevance where they do not establish or disprove any elements of the case. *Tao v. Simplex Invs., LLC*, No. 22-cv-1463, 2025 U.S. Dist. LEXIS 47914, at *10 (N.D. Ill. Mar. 17, 2025). Courts routinely utilize their discretion to "properly exclude such testimony." *Curtin*, 2025 U.S. App. LEXIS 16236, at *11 (internal quotation marks omitted).

Dr. Vidino's "expert" opinion merely concludes that a limited number of individuals associated with the Judgment Defendants later became associated with AMP. Exhibit B at 25. This "conclusion" does not exceed what this Court or a jury could otherwise understand directly. *Id.* at *11-12 (excluding a witness where the jury was just as capable of "comprehending the primary facts and of drawing correct conclusions"). The bulk of Dr. Vidino's Corrected Report does not relate at all to AMP, and not until page 24 of a 26-page report does Dr. Vidino even discuss AMP directly. *See* Exhibit B generally and at 24. His descriptions of the history of the Muslim Brotherhood in the west and of how Muslim Brotherhood organizations work bear no relevance to this case. *See generally id.*

As to the claims against Mr. Jaber, his name appeared nowhere in Dr. Vidino's first version of his report, and only later appeared after Plaintiffs' counsel's correction at Dr. Vidino's deposition. *See* Exhibit A at 5. Dr. Vidino proved unable to explain a significant error as to the only remaining individual defendant in this lawsuit. *See id.* at 201. He further could not recall with any specificity what role Mr. Jaber may have had with AMP, nor when that occurred. *See id.* at 194-96. Dr. Vidino's testimony contains no information relevant to Plaintiffs' claims against AMP or Mr. Jaber, and Defendants therefore ask this Court to exclude his report and testimony in full.

**D.      Dr. Vidinos's Report Lacks a Proper Signature,  in Violation of the Federal Rules of Civil Procedure and this Court's Rules**

In addition to the issues above, Dr. Video failed to sign either his original or Corrected Report, instead providing only an /s/ e-signature. *See* Exhibit B. This does not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B) (mandating that experts "sign" their reports), or this Court's General Order 16-0020, which clarifies only that the /s/ signature suffices for an attorney's signature for the purpose of e-filing. The lack of a verifiable signature on both of Dr. Vidino's reports raises further questions about their reliability.

8

## V.    CONCLUSION

Dr. Vidino's expert report, Corrected Report, and subsequent deposition testimony offer no more than a history of groups which are not parties to this litigation, followed by unsubstantiated conclusions that require no specialized knowledge. He does not identify any qualifications that support his authority to reach those conclusions, he identifies no methodology, and he admits he lacks knowledge on key issues and individuals in this case. Analysis of any one of the three prongs under Rule 702 supports excluding his testimony and reports; Dr. Vidino fails all three.

Dated this 31st day of October, 2025.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Admitted to the General Bar*
*and Trial Bar of this District*
Samira Elhosary
Maryland Bar No. 2112140261
*Admitted to the General Bar of this District*
cjump@clcma.org
selhosary@clcma.org
*Attorneys for Defendants*

Constitutional Law Center for Muslims in America*
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

*\*The Constitutional Law Center for Muslims in America*
*is the Legal Division of the Muslim Legal Fund of America.*

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on October 31, 2025, she caused the foregoing Motion to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

/s/ Christina A. Jump
Christina A. Jump
*Counsel for Defendants*
