UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE, *et al.*, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br> Hon. Andrea Wood |

**DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT HAREL CHOREV**

Defendants AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") and Rafeeq Jaber ("Mr. Jaber") (together, "Defendants") respectfully move this Court to exclude the testimony of Plaintiffs' proffered expert, Dr. Harel Chorev ("Dr. Chorev").

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I. INTRODUCTION ............................................................................................................. 1

II. FACTS AND PROCEDURAL HISTORY ....................................................................... 1

III. STANDARD OF REVIEW ............................................................................................... 2

IV. ARGUMENT ..................................................................................................................... 3

    A. Dr. Chorev Lacks the Qualifications to Opine About AMP .............................. 3

    B. Dr. Chorev's Lack of Methodology Renders His Testimony and Report Unreliable ............................................................................................................ 5

    C. Dr. Chorev's Testimony Will Not Help the Factfinder ..................................... 8

    D. Dr. Chorev's Report Lacks a Proper Signature, in Violation of the Federal Rules of Civil Procedure and this Court's Rules ............................................. 10

V. CONCLUSION ................................................................................................................ 10

CERTIFICATE OF SERVICE .................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Artis v. Santos*
  95 F.4th 518 (7th Cir. 2024) ............................................................................................... 8

*Berry v. City of Detroit*
  25 F.3d 1342 (6th Cir. 1994) ............................................................................................. 5

*Bogathy v. Union Pac. R.R.*
  No. 17-cv-4290, 2020, WL 419406 (N.D. Ill. Jan. 24, 2020) ........................................... 7

*Buscaglia v. United States*
  25 F.3d 530 (7th Cir. 1994) ............................................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc*
  509 U.S. 579 (1993) ...................................................................................................... 2, 8

*Gayton v. McCoy*
  593 F.3d 610 (7th Cir. 2010) ............................................................................................. 5

*Gopalratnam v. Hewlett-Packard Co.*
  877 F.3d 771 (7th Cir. 2017) ......................................................................................... 3, 5

*Haager v. Chi. Rail Link*, L.L.C.
  No. 04 C 6210, 2005 U.S. Dist. LEXIS 24149 (N.D. Ill. 2005) ....................................... 8

*Jenkins v. Barlett*
  487 F.3d 482 (7th Cir. 2007) ............................................................................................. 6

*Kirk v. Clark Equip. Co.*
  991 F.3d 865 (7th Cir. 2021) ............................................................................................. 5

*Kopplin v. Wisconsin Central Ltd.*
  914 F.3d 1099 (7th Cir. 2019) ........................................................................................... 6

*Lewis v. CITGO Petrol. Corp.*
  561 F.3d 698 (7th Cir. 2009) ............................................................................................. 2

*Obrycka v. City of Chi.*
  No. 07 C 2372, 2011 U.S. Dist. LEXIS 70018 (N.D. Ill. June 29, 2011) ..................... 5, 6

*Shebley v. United Cont'l Holdings, Inc.*
  No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647 (N.D. Ill. Apr. 20, 2021) ........... passim

*Smith v. Ford Motor Co.*
  215 F.3d 713 (7th Cir. 2000) ............................................................................................. 8

*West v. Home Depot U.S.A.*
  No. 21 CV 1145, 2024 U.S. Dist. LEXIS 76437 (N.D. Ill. Apr. 26, 2024) .................. 6, 8

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*
   395 F.3d 416 (7th Cir. 2005) ............................................................................................ 7

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) .......................................................................................................... 10

Fed. R. Evid. 702 ............................................................................................................... 2, 3, 11

## I.     INTRODUCTION

Plaintiffs' expert, Dr. Harel Chorev, opines on several topics in his report and related deposition testimony. Dr. Chorev's expertise relates to the Middle East, and he therefore does not possess the required knowledge, skill, experience, training or education to draw conclusions about AMP, a United States entity that conducts business purely domestically. Dr. Chorev's testimony also lacks reliability because it fails to identify a reliable methodology used to reach his conclusions; instead, he relies on inaccurate information that will not aid the factfinder on issues relevant to the claims Plaintiffs bring in this lawsuit. Defendants therefore respectfully request this Court exclude Dr. Chorev's testimony and report in their entirety.

## II.     FACTS AND PROCEDURAL HISTORY

This case arises out of acts that occurred in 1996, when Plaintiffs' son died after being shot in Jerusalem. Plaintiffs brought a lawsuit in 2000 under the Anti-Terrorism Act ("ATA") against the Holy Land Foundation ("HLF"), Islamic Association of Palestine ("IAP"), and the American Muslim Society ("AMS") (together the "Judgment Defendants"), among others. The court in that matter entered judgment for Plaintiffs of $156 million in damages (the "*Boim I* Judgment"). Despite Plaintiffs' repeated efforts to collect on that judgment, the Judgment Defendants became defunct as a result of years of litigation, forced closure, and, in the case of HLF, seizure of its assets by the government. Plaintiffs collected only a small portion of that judgment.

In 2017, Plaintiffs filed this lawsuit against AMP, an entirely domestic U.S. nonprofit organization, and Mr. Jaber individually. Plaintiffs claim Defendant AMP bears liability for the *Boim I* Judgment because they assert it qualifies as the alter ego and/or successor of IAP; Plaintiffs also allege Mr. Jaber, not a named party in the *Boim I* litigation, now bears personal liability for fraudulent concealment. The Honorable Judge Sharon Johnson Coleman previously dismissed

1

Plaintiffs' claims twice for lack of subject matter jurisdiction, finding Plaintiffs' allegations insufficient to support alter ego or successor liability in federal court and refusing to exercise ancillary jurisdiction over state claims. In between the first and the second dismissal, Judge Coleman permitted Plaintiffs to conduct over a year of jurisdictional discovery. Plaintiffs engaged in extensive efforts, resulting in Defendants producing thousands of pages of responsive documents and multiple witnesses for depositions. After jurisdictional discovery concluded, Judge Coleman again dismissed the action. Following this second dismissal, Plaintiffs appealed. The Seventh Circuit remanded the case based on its finding that subject matter jurisdiction exists under a limited interpretation of Plaintiffs' claims, and allowed Plaintiffs to proceed.

The Parties then engaged in mutual fact discovery for the first time beginning in July 2022, which concluding more than two years later in January 2025. Defendants produced thousands of pages of additional documents and Plaintiffs deposed ten witnesses.

Defendants received Dr. Chorev's report on April 30, 2025. *See* Report, attached as Exhibit A. Defendants deposed Dr. Chorev on May 28, 2025. *See* Deposition Transcript Excerpts of Harel Chorev, attached as Exhibit B.

### III.    STANDARD OF REVIEW

The party proposing an expert bears the burden to show the admissibility of the expert's testimony under Federal Rule of Evidence 702. *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* established a three-prong analysis district courts must undertake to determine the admissibility of expert testimony. 509 U.S. 579 (1993). Courts evaluate "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Shebley v. United Cont'l Holdings, Inc.*, No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647, at *3 (N.D. Ill.

Apr. 20, 2021) (Wood, J.) (citing *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)). The key question turns on whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). Here, Dr. Chorev's proposed testimony will accomplish none of these goals.

## IV. ARGUMENT

### A. Dr. Chorev Lacks the Qualifications to Opine About AMP

The basis of expert witness' testimony derives from their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Dr. Chorev's knowledge, skill, experience, training and education pertain to the Middle East. AMP is a domestic, nonprofit organization operating solely in the United States. AMP incorporated in the State of California, with its headquarters in Virginia. *See* Declaration Dr. Osama Abuirshaid, at ¶ 3, ECF No. 546.1. AMP conducts no business outside of the United States.

Given Dr. Chorev's dearth of knowledge of the American nonprofit context, he lacks qualifications to testify about AMP. Dr. Chorev explained that his educational background focused on the Middle East, not the United States: "my whole Ph.D dealt with network theory, implemented [in] the Middle Eastern Studies and Palestinian Society in particular." *See* Exhibit B at 18:24 – 19:1-2. As a professor, Dr. Chorev's course curricula center on network theory in the Middle East. For example, his initial courses after completing his PhD exclusively focused on the Middle East; he describes one of his classes as "the Middle East Workshop […] which dealt with diversified field and topics and of middle eastern [sic] issues." *Id*. at 18:15-17. He later taught at Tel Aviv University, including courses entitled "Middle Eastern Networks and the Palestinian Century. Also […] Introduction to Middle Eastern History." *Id*. at 22:16-17, 19. Dr. Chorev's teaching

3

experience focuses on classes on the Middle East, at a university in the Middle East. He specified his class curricula centered on Middle Eastern networks focused on "Isis [sic], Hamas and lone wolf terrorists." *Id*. at 24:6.

Dr. Chorev's lack of expertise in the U.S. nonprofit context also reveals itself in his list of speaking engagements and publications. Topics for his speaking engagements focus on the Middle East, with titles including "The Revolutionary Effect of Social Media in the Arab Spring," and "Palestinian Elite in Education." *Id*. at 55:8-9, 12. While portions of Dr. Chorev's publications contain passing references to the United States, they remain a small fraction of the overall content:

> Q. Let me try to rephrase this. In that article that was published in 2020 in the International Journal of Communication, does that article discuss any specific incidents that occurred within the United States?
>
> A. No.
>
> Q. Okay. And for the bottom entry on page 5, Palestinian Social Media and Lone Wolf Attacks, the publication date of 2019, same question, does that article focus on events that occurred in the United States or outside of the United States?
>
> A. It does refer to the global sphere, including the United States. But, it's not specific of the matter of Hamas addressing Gen Z, including in the United States and other places.
>
> Q. and I understand social media can be read anywhere. Is there anything specific to the United States that you discussed or analyzed in that article?
>
> A. In this article[?]
>
> Q. Yes[.]
>
> A. No.

*Id*. at 69:19-24, 70:1-16.

Dr. Chorev lacks qualifications to provide testimony as to AMP's operations in the United States. The relevant distinction lies not with general qualifications, but rather in evaluating whether the proposed expert's qualifications assist the trier of fact in answering specific questions relevant

4

to the claims asserted in each lawsuit. *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[T]he question we must ask is not whether an expert is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question.") (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). Much like the expert in *Shebley*, Dr. Chorev may possess general expertise about the Middle East but "not necessarily targeted expertise" about nonprofit organizations in the United States, or any other issue "relevant to the task at hand." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *2, *3 (excluding testimony of a proposed witness with "general expertise as a social psychologist but not necessarily targeted expertise regarding pretext or discrimination").

Dr. Chorev's knowledge of the Middle East does not extend to Palestinian advocacy organizations located and operating in the United States. Like the expert in *Obrycka*, Dr. Chorev's lack of knowledge to opine on nonprofit organizations in the United States proves fatal to his proposed testimony because his testimony "lacks foundation for his qualitative conclusions" on "subjects that lie at the heart of this case." *Obrycka v. City of Chi.*, No. 07 C 2372, 2011 U.S. Dist. LEXIS 70018, at *20 (N.D. Ill. June 29, 2011) (striking a proposed expert who, as a biostatistician and epidemiologist, lacked knowledge on policing nor police misconduct). While Dr. Chorev may well qualify as an expert in other matters where testimony on the Middle East bears direct relevance to the "task at hand," he lacks the knowledge needed to speak on the relevant issues presented in this case.

**B.     Dr. Chorev's Lack of Methodology Renders His Testimony and Report Unreliable**

The second prong of the district court's analysis turns on the reliability, and replicability, of the expert witness' methodology. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (citing *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)); *see also Shebley*,

5

2021 U.S. Dist LEXIS 269647, at *3. An expert witness' testimony proves only as reliable as the methodology the analysis utilizes. *West v. Home Depot U.S.A.*, No. 21 CV 1145, 2024 U.S. Dist. LEXIS 76437, at *2 (N.D. Ill. Apr. 26, 2024) ("to determine whether proposed expert testimony is reliable, the Court focuses 'on the expert's methodology, not his ultimate conclusions'") (citing *Kopplin v. Wisconsin Central Ltd.,* 914 F.3d 1099, 1104 (7th Cir. 2019)).

A sound methodology is the scaffolding that supports an expert's opinion. Without a discernable methodology, the conclusions cannot stand on their own. Absent an articulated professional methodology, an expert simply provides opinion on the topic. Dr. Chorev's proposed testimony teems with "speculation, unsupported assumptions [and] conclusory allegations." *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994). A lack of discernible methodology reflects a lack of intellectual rigor: "[t]he goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Obrycka v. City of Chi.*, No. 07 C 2372, 2011 U.S. Dist. LEXIS 70018, at *8 (N.D. Ill. June 29, 2011) (quoting *Jenkins v. Barlett*, 487 F.3d 482,489 (7th Cir. 2007)).

Dr. Chorev identifies general factors on which he relies to analyze a topic utilizing his network theory. When asked to describe the factors involved, however, he provided only confusing and vague responses:

> Q. Okay. Do you have a rule of thumb or a hard and fast rule or however you phrase it, of how many of those factors you need to find?
>
> A. Generally speaking a lot. Generally speaking a lot. Some evidence are stronger than the others. Some of the evidence are dualistic in their nature, allegedly contradictive as I explained before. Even a negative connection is sort of a connection, but it depends on the context. And[] of course, I can give you many examples. But, in order to indicate the network, you need to establish it. And, based on evidence, simple as that. And, what that evidence is may vary from situation to situation[.]

6

Exhibit B at 89: 8-20. When questioned about the accuracy of a source or statement, Dr. Chorev became dismissive and rendered accuracy "not that important." In the context of the Muslim Brotherhood, for example, Dr. Chorev makes the following justifications:

> Q. Okay. So, if you're relying on statements not made to you, but statements made previously that you're reading?
>
> A. Uh huh.
>
> Q. Then, you have to trust the source of that statement?
>
> A. I do.
>
> Q. How do you verify the source of that statement or the accuracy of the statement?
>
> A. Usually, in this case it was not that important because it's just for the sake of the example of how Muslim Brotherhoods act. … It's not that I cannot offer hundreds of other citations.

*Id*. at 91:16-24, 92:1-8.

Dr. Chorev further failed to identify any source for several underlying premises relevant to his proposed testimony on Gaza, answering only that he identified 1987 as the date he believes Hamas became a terrorist organization in Gaza based on "a common knowledge, common whisper." *Id*. at 92:16-22. Absent more concrete methodology and reliable, identified sources, Dr. Chorev "cannot rely on intuition or appeal generally to expertise, and such generalized appeals to authority suggest that an expert either had no method or could not describe one." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *3 (quoting *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005)). Furthermore, the "methodology" Dr. Chorev does describe fails because no one else could likely come along later, apply the same factors and "whispers," and replicate the result. *See Zenith*, 395 F.3d at 418-19. In short, "[a]pplying personal judgment is not a proper expert methodology." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *3 (citing *Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020, WL 419406, at *5 (N.D. Ill. Jan. 24, 2020)). Dr. Chorev's

7

proposed testimony and report fail to satisfy not one, but two prongs of the required analysis, as his testimony shows his proposed testimony to be neither qualified nor reliable. *See Haager v. Chi. Rail Link*, L.L.C., No. 04 C 6210, 2005 U.S. Dist. LEXIS 24149, at *6 (N.D. Ill. 2005)) ("An expert's reliability depends upon both the qualifications of the expert and the methodology used by that expert") (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

### C. Dr. Chorev's Testimony Will Not Help the Factfinder

Dr. Chorev's proposed testimony does not relate to the claims Plaintiffs assert in this lawsuit, and therefore will not meaningfully assist the trier of fact. *West*, 2024 U.S. Dist. LEXIS 76437, at *2 ("An expert's proposed testimony is relevant when it helps the factfinder understand the evidence or determine a fact in issue.") (quoting *Daubert*, 509 U.S. 579 at 591)).

The gatekeeping function of the courts precludes the presentation of inaccurate information. *Id.*, at *2 (emphasizing the importance of judges "to act as a gatekeeper to ensure proposed expert testimony is not only relevant, but reliable when testimony is challenged"), quoting *Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024). When questioned about his views expressed as to AMP, Dr. Chorev provided vague, confusing, and unclear responses about facts central to this case. For example, Dr. Chorev offered conclusions but failed to substantiate his remarks:

> Q: Are there any statements by AMP that you can point to specifically by date or where the statement occurred that you believe show that AMP, as an organization, did not support or does not support a two state solution?
>
> A: Not from the top of my head.

Exhibit B at 146:12-19. In addition to his inability to identify relevant statements purportedly attributed to representatives of the Defendants in this matter, Dr. Chorev further lacks basic familiarity with key witnesses and representatives of AMP. He could not identify one of AMP's

8

two co-founders by name, and asserted that he has not in fact reviewed Munjed Ahmad's deposition testimony—either when deposed as a fact witness, or when deposed as AMP's Rule 30(b)(6) corporate representative:

Q: Are you familiar with the name Munjid [sic] Ahmed [sic]?

[…]

A: I remember the first name, I'm not sure regarding the second one, might appeared in one of my reports. I can check on it.

Q: What report are you referencing?

A: My research, not report. I used the wrong word. My research.

Q: Do you know what role Munjid [sic] Ahmed [sic] has with AMP?

A: If I would remember the context that I saw it, I could tell that to you.

Q: Do you know if you reviewed a deposition where he was questioned?

A: I didn't get any deposition by Munjid [sic] Ahmed [sic].

Exhibit B at 125: 7-24; 126:1-2. Dr. Chorev's report and testimony further contain extraneous information even he acknowledges bear no relevance to this case.

> Q: What – let me ask my question first. I want to hear your answer before we do anything else. "Khalil al-Hayya, spokesman and now the active leader of the Gaza Strip of the now deceased Hamas leader Yahya Sinwar and himself today the primary Hamas spokesperson." First of all, did I read that accurately?
>
> A: You did.
>
> Q: Why is that in here? I want you to answer me.
>
> A: It's just, not typo, but a copy/paste that has nothing to do, you can see it's out of context. It's not connected to anything here, and we wanted to correct it, but we've noticed it lately. But, it has nothing to do with it, just a copy/paste, I guess, from something.

*Id*. at 127: 13-24, 128:1-3.

Dr. Chorev fails to identify the "we" referenced in wanting to correct his inaccuracies in his report; with or without corrections on that point, his proposed testimony will not assist the factfinder in understanding the evidence or determining facts at issue in this case. Instead, Dr. Chorev's testimony will far more likely confuse the factfinder and mislead with irrelevant representations. Dr. Chorev's admission that he included information with no bearing on this case does not negate that harm. His proposed testimony and report, therefore, fail to show the requisite relevance needed to satisfy the third prong of the *Daubert* admissibility analysis. *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *3.

**D.     Dr. Chorev's Report Lacks a Proper Signature, in Violation of the Federal Rules of Civil Procedure and this Court's Rules**

In addition to the issues presented above, Dr. Chorev failed to sign his report as required. Instead, he provided only a typed "/s/" e-signature. *See* Exhibit A. That fails to satisfy the requirements of Fed. R. Civ. P. 26(a)(2)(B), that expert witnesses "sign" their reports. His typed "/s/" e-signature further fails to comply with this Court's General Order 16-0020, only allowing an "/s/" e-signature for attorneys' signatures in e-filed documents. The lack of a verifiable signature on Dr. Chorev's report creates even further doubts about his report's reliability.

**V.     CONCLUSION**

Dr. Chorev's testimony and expert report fail all three prongs required under Rule 702: he lacks the necessary qualifications, failed to utilize a sound methodology others could replicate reliably, and presents opinions and conclusions that will not assist the trier of fact. He admittedly lacks knowledge about nonprofit organizations in the United States, like AMP. And Dr. Chorev fails to identify a professionally tested and replicable methodology, or a reliable foundation for his conclusions. Finally, his proposed testimony and report replete with errors will more likely confuse the jury than assist it on any relevant issues. Defendants therefore respectfully request that this

Court exclude the report and proposed testimony of Dr. Chorev in full, for failing to meet all three threshold requirements of Federal Rule of Evidence 702.

Dated this 31st day of October, 2025.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Admitted to the General Bar*
*and Trial Bar of this District*
Samira Elhosary
Maryland Bar No. 2112140261
*Admitted to the General Bar of this District*
cjump@clcma.org
selhosary@clcma.org
*Attorneys for Defendants*

Constitutional Law Center for Muslims in America*
100 North Central Expressway, Suite 1010
Richardson, TX  75080
Phone: (972) 914-2507
Fax: (972) 692-7454

*The Constitutional Law Center for Muslims in America
is the Legal Division of the Muslim Legal Fund of America.*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on October 31, 2025, she caused the foregoing Motion to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

/s/ Christina A. Jump
Christina A. Jump
*Counsel for Defendants*
