**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| STANLEY BOIM, *et al.*, | |
| Plaintiffs, | Civil No. 17-cv-03591 |
| v. | |
| AMERICAN MUSLIMS FOR PALESTINE, *et al.*, | Hon. Andrea Wood |
| Defendants. | |

## DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT ARIEH SPITZEN

Defendants AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") and Rafeeq Jaber ("Mr. Jaber") (together, "Defendants") respectfully move this Court to exclude the testimony of Plaintiffs' proffered expert, Arieh Spitzen ("Mr. Spitzen").

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.  INTRODUCTION ...................................................................................................... 1

II.  FACTS AND PROCEDURAL HISTORY ................................................................. 1

III.  STANDARD OF REVIEW ....................................................................................... 2

IV.  ARGUMENT ............................................................................................................. 3

    A.  Mr. Spitzen Lacks the Qualifications to Opine About AMP ................................ 3

    B.  Mr. Spitzen's Lack of Methodology Renders His Testimony and Report
        Unreliable ............................................................................................................ 4

    C.  Mr. Spitzen's Proposed Testimony Will Not Help the Factfinder ....................... 8

    D.  Mr. Spitzen's Report Lacks a Proper Signature, in Violation of the Federal Rules
        of Civil Procedure and this Court's Rules ........................................................... 9

V.  CONCLUSION .......................................................................................................... 9

CERTIFICATE OF SERVICE ........................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Artis v. Santos*
    95 F.4th 518 (7th Cir. 2024) ................................................................. 8

*Berry v. City of Detroit*
    25 F.3d 1342 (6th Cir. 1994) ................................................................ 4

*Black & Decker v. Bosch Tools*
    No. 04-C-7955, 2006 U.S. Dist. LEXIS 97173 (N.D. Ill. Sept. 8, 2006) .............................. 6, 7

*Bogathy v. Union Pac. R.R.*
    No. 17-cv-4290, 2020, WL 419406 (N.D. Ill. Jan. 24, 2020) .................................. 6

*Buscaglia v. United States*
    25 F.3d 530 (7th Cir. 1994). ................................................................ 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc*
    509 U.S. 579 (1993) ................................................................. 3, 9

*Gayton v. McCoy*
    593 F.3d 610 (7th Cir. 2010) ................................................................ 4

*Gopalratnam v. Hewlett-Packard Co.*
    877 F.3d 771 (7th Cir. 2017) ................................................................ 3, 5

*Haager v. Chi. Rail Link*, L.L.C.
    No. 04 C 6210, 2005 U.S. Dist. LEXIS 24149 (N.D. Ill. 2005) ................................ 8

*Jenkins v. Barlett*
    487 F.3d 482 (7th Cir. 2007) ................................................................ 5

*King-Indiana Forge, Inc. v. Millennium Forge.*
    No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131 (S.D. Ind. Sep. 29, 2009) .... 6, 7

*Kirk v. Clark Equip. Co.*
    991 F.3d 865 (7th Cir. 2021) ................................................................ 5

*Kopplin v. Wisconsin Central Ltd.*
    914 F.3d 1099 (7th Cir. 2019) ................................................................ 5

*Lewis v. CITGO Petrol. Corp.*
    561 F.3d 698 (7th Cir. 2009) ................................................................ 3

*Obrycka v. City of Chi.*
    No. 07 C 2372, 2011 U.S. Dist. LEXIS 70018 (N.D. Ill. June 29, 2011) .............................. 4, 5

*Shebley v. United Cont'l Holdings, Inc.*
    No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647 (N.D. Ill. Apr. 20, 2021) .................... 3, 4, 6

*Smith v. Ford Motor Co.*
    215 F.3d 713 (7th Cir. 2000) ................................................................ 8

*West v. Home Depot U.S.A.*
    No. 21 CV 1145, 2024 U.S. Dist. LEXIS 76437 (N.D. Ill.n Apr. 26, 2024) ..................... 5, 8, 9

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*
    395 F.3d 416 (7th Cir. 2005) ...................................................................................................... 6

## **Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................................ 9

Fed. R. Evid. 702. ........................................................................................................................... 3

## I.    <u>INTRODUCTION</u>

Plaintiffs proffer expert testimony from Arieh Spitzen, who opines on several topics in his report and related testimony. But Mr. Spitzen's expertise relates to the Israel-Palestine context; as he himself readily admits, he does not possess the required knowledge, skill, experience, training or education to draw conclusions about AMP, a domestic U.S. nonprofit entity that does no business in Palestine. Mr. Spitzen's proposed testimony also lacks reliability, because he fails to identify any methodology employed to reach his findings. Instead, Mr. Spitzen testified that he relied on both inaccurate information and unsubstantiated allegations provided by Plaintiffs' attorneys. His resulting conclusions do not provide the factfinder with relevant information or assist with any analysis related to the claims Plaintiffs make in this lawsuit. Defendants therefore request this Court exclude Mr. Spitzen's testimony and reports in their entirety.

## II.    <u>FACTS AND PROCEDURAL HISTORY</u>

This case arises out of acts that occurred in 1996, when Plaintiffs' son died after being shot in Jerusalem. Plaintiffs brought a lawsuit in 2000 under the Anti-Terrorism Act ("ATA") against the Holy Land Foundation ("HLF"), Islamic Association of Palestine ("IAP"), and the American Muslim Society ("AMS") (together the "Judgment Defendants"), among others. The court in that matter entered judgment for Plaintiffs of $156 million in damages (the "*Boim I* Judgment"). Despite Plaintiffs' repeated efforts to collect on that judgment, the Judgment Defendants became defunct as a result of years of litigation, forced closure, and, in the case of HLF, seizure of its assets by the government. Plaintiffs collected only a small portion of that judgment.

In 2017, Plaintiffs filed this lawsuit against AMP, an entirely domestic U.S. nonprofit organization, and Mr. Jaber individually. Plaintiffs claim Defendant AMP bears liability for the *Boim I* Judgment because they assert it qualifies as the alter ego and/or successor of IAP; Plaintiffs

1

also allege Mr. Jaber, not a named party in the *Boim I* litigation, now bears personal liability for fraudulent concealment. The Honorable Judge Sharon Johnson Coleman previously dismissed Plaintiffs' claims twice for lack of subject matter jurisdiction, finding Plaintiffs' allegations insufficient to support alter ego or successor liability in federal court and refusing to exercise ancillary jurisdiction over state claims. In between the first and the second dismissal, Judge Coleman permitted Plaintiffs to conduct over a year of jurisdictional discovery. Plaintiffs engaged in extensive efforts, resulting in Defendants producing thousands of pages of responsive documents and multiple witnesses for depositions. After jurisdictional discovery concluded, Judge Coleman again dismissed the action. Following this second dismissal, Plaintiffs appealed. The Seventh Circuit remanded the case based on its finding that subject matter jurisdiction exists under a limited interpretation of Plaintiffs' claims, and allowed Plaintiffs to proceed.

The Parties then engaged in mutual fact discovery for the first time beginning in July 2022, which concluding more than two years later in January 2025. Defendants produced thousands of pages of additional documents and Plaintiffs deposed ten witnesses.

Defendants received Mr. Spitzen's initial report on April 30, 2025, and a supplemental report on May 27, 2025. *See* Report attached as Exhibit A and Supplemental Report attached as Exhibit B. Defendants attempted to depose Mr. Spitzen on May 29, 2025; however, after significant interpreter errors, both parties agreed to reschedule. *See generally* Doc. 571. Defendants then deposed Mr. Spitzen on June 17, 2025. *See* Excerpts of the Transcript of the Deposition of Arieh Spitzen and Errata Sheet, attached as Exhibit C.

### III.  STANDARD OF REVIEW

The party proposing an expert bears the burden to show the admissibility of the expert's testimony under Federal Rule of Evidence 702. *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 705

(7th Cir. 2009). The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* established a three-prong analysis district courts must undertake to determine the admissibility of expert testimony. 509 U.S. 579 (1993). Courts evaluate "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Shebley v. United Cont'l Holdings, Inc.*, No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647, at *3 (N.D. Ill. Apr. 20, 2021) (citing *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)). The key question turns on whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).

## IV.   <u>ARGUMENT</u>

**A.   Mr. Spitzen Lacks the Qualifications to Opine About AMP**

The basis of expert witness' testimony derives from their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Mr. Spitzen's knowledge, skill, experience, training and education pertain only to the context of Israel-Palestine. AMP is a domestic, nonprofit organization operating solely in the United States. AMP incorporated in the State of California, with its headquarters in Virginia. *See* Declaration Dr. Osama Abuirshaid, at ¶ 3, ECF No. 546.1. AMP conducts no business outside of the United States.

Given Mr. Spitzen's dearth of knowledge of the American nonprofit context, he lacks qualifications to testify about AMP. Mr. Spitzen admitted repeatedly during his deposition that he lacks knowledge of United States nonprofit organizations generally: "I don't give evidence or about their actions of American organizations." Exhibit C at 42. He then reiterated that "[a]s I already said, this is not my professional field. Knowledge of everything that has to do with American organization -- organizations is not my expertise." *Id.* at 102. He clarified that "[m]y

3

field is the material support and who gets – and who is the end recipient of that material support. And I'm talking about the – the Palestinian arena." *Id.* at 43.

Mr. Spitzen further lacks the qualifications to testify about AMP's operations in the United States. The relevant distinction lies not with his general qualifications, but rather evaluating whether his qualifications will assist the jury in answering specific questions relevant to the claims Plaintiffs assert in this lawsuit. *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[T]he question we must ask is not whether an expert is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question.") (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). Mr. Spitzen may possess general expertise, but "not necessarily targeted expertise." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *2 (holding an expert had "general expertise as a social psychologist but not necessarily targeted expertise regarding pretext or discrimination"). By his own admission, Mr. Spitzen's knowledge of Israel-Palestine does not extend to Palestinian advocacy organizations within the United States. Additionally, Mr. Spitzen admits he does not possess the knowledge base needed to opine on American entities, and therefore "lacks foundation for his qualitative conclusions" on "subjects that lie at the heart of this case." *Obrycka v. City of Chi.*, No. 07 C 2372, 2011 U.S. Dist. LEXIS 70018, at *20 (N.D. Ill. June 29, 2011) (finding an expert with credentials as a biostatistician and epidemiologist knew nothing about policing nor police misconduct). While Mr. Spitzen may well possess extensive knowledge about Israel-Palestine, even he admits he lacks knowledge to speak specifically about AMP, or for that matter any U.S. domestic entity.

**B.** **Mr. Spitzen's Lack of Methodology Renders His Testimony and Report Unreliable**

The second prong of a district court's analysis turns on the reliability of the expert witness' methodology. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (citing *Gopalratnam v.*

*Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)). An expert witness' testimony only proves as reliable as the methodology the analysis utilizes. *West v. Home Depot U.S.A.*, No. 21 CV 1145, 2024 U.S. Dist. LEXIS 76437, at *2 (N.D. Ill.n Apr. 26, 2024) ("[T]o determine whether proposed expert testimony is reliable, the Court focuses 'on the expert's methodology, not his ultimate conclusions.") (citing *Kopplin v. Wisconsin Central Ltd.,* 914 F.3d 1099, 1104 (7th Cir. 2019)).

A sound methodology provides the scaffolding that supports an expert witness' opinion. Without a discernable methodology, the conclusions cannot stand on their own. Absent a methodology, an expert simply provides opinion on a topic. Mr. Spitzen's proposed testimony teems with "speculation, unsupported assumptions [and] conclusory allegations." *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994). A lack of discernible methodology reflects a lack of intellectual rigor: "[t]he goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Obrycka v. City of Chi.*, No. 07 C 2372, 2011 U.S. Dist. LEXIS 70018, at *8 (N.D. Ill. June 29, 2011) (quoting *Jenkins v. Barlett*, 487 F.3d 482,489 (7th Cir. 2007)).

Mr. Spitzen is not a novice witness. He has testified in previous court cases and as his curriculum vitae highlights, previously articulated a methodology utilizing eighteen factors in those cases. *See* Exhibit A. However, Mr. Spitzen articulates no methodology at all in his report for this case. *See* Exhibit A and B. Absent a discernible methodology, Mr. Spitzen "cannot rely on intuition or appeal generally to expertise, and such generalized appeals to authority suggest that an expert either had no method or could not describe one." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *3 (quoting *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005)) (internal quotation marks omitted). Mr. Spitzen's report fails the requirement that "someone else

5

using the same data and methods must be able to replicate the result." *Zenith Elecs. Corp.*, 395 F.3d at 419. In short, "[a]pplying personal judgment is not a proper expert methodology." *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *3 (citing *Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020, WL 419406, at *5 (N.D. Ill. Jan. 24, 2020)).

Furthermore, Mr. Spitzen's testimony reveals itself as unreliable because it "merely parrots information" by Plaintiffs' attorneys. *King-Indiana Forge, Inc. v. Millennium Forge.*, No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131, at *4 (S.D. Ind. Sep. 29, 2009) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded.") (citing *Black & Decker v. Bosch Tools*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 97173, at *1 (N.D. Ill. Sept. 8, 2006)). Mr. Spitzen fails to adequately conduct his own research, instead relying on unsubstantiated statements by Plaintiffs' counsel to draw his conclusions. He explains outright that he reached his conclusions "on the basis of what I've seen and on the basis of the information that was delivered to me by my attorneys." *See* Exhibit C at 42. He also admits "I was not required to check the connection between AMP and [other organizations]. I was giving [sic] the information that AMP was used – used as umbrella about – for [other organizations]." *See* Exhibit C at 55. *See* Exhibit C at 55; 114: 11-12 (corrected "umbrella" to "platform" in subsequent errata). When asked explicitly about the basis for his conclusions as to individual defendant Rafeeq Jaber, Mr. Spitzen once again admits he took information provided by Plaintiffs' counsel at face value:

> Q. That sentence states, "Rafeeq Jaber, who was a member of the IAP Board and is currently a member of the AMP Board." Do you see that?
> A. Yes
> Q. Okay. And there's not a citation there. Where – what is the basis of your statement that Rafeeq Jaber is currently a member of the AMP Board?
> A. Okay. Sentences like that, that I don't have footnotes to, these *are the facts or the information I got from the lawyers.*
> Q. Okay. Did you confirm it on your own?

A. *I wasn't asked to do that.*
Q. And you did not do that?
A. No.

Exhibit C at 89 (emphasis added). Mr. Spitzen's blind reliance on conclusory statements by

Plaintiffs' counsel renders any potential testimony from him defective, because "when an expert

relies upon information given to him by a party or counsel, he must independently verify that

information before utilizing it." *King-Indiana Forge, Inc,* 2009 U.S. Dist. LEXIS 96131, at *4

(citing *Black & Decker v. Bosch Tools*, 2006 U.S. Dist. LEXIS 97173, at *1).

Mr. Spitzen's testimony further proves unreliable because it contains objectively

inaccurate statements. Mr. Spitzen's report is replete with citations to Facebook pages. *See* Exhibit

A and B. However, Mr. Spitzen confuses the Facebook page of an organization, Justice for

Palestine, and erroneously attributes a post from this organization to Defendant AMP:

Q. And do you see where the name of the posting organization is listed as Justice
for Palestine.
A. Uh-huh
Q. Yes?
A. Yes. […]
Q. Are you aware that is not AJP's account?
A. That doesn't prove that this is not AJP's account.
Q. Do you believe this to be AJP's account.
A. I have to check that – - on that, but I'm pretty sure that it is.
Q. If you look at Exhibit 8, it was made in Gaza, Palestine. Do you see that.
A. Uh-huh.
Q. Do you see that on the Exhibit 8?
A. Yes. Yes.
Q. Are you aware that American Muslim – that AJP is a U.S. Organization?
…
Q. And again, that name does not match the name that is listed on Exhibit 7,
Page 1; is that correct?
A. That's right. The only thing I said that what's written here, it's not the name of
the organization I was talking about. But I didn't check that Facebook link yet.
I need to check it.

Exhibit C at 96-97, 99. Later in the deposition, Mr. Spitzen admits that he needs to double check

the Facebook page, acknowledging "I want to thank you for this question. And I really need to

double check this Facebook page." *See* Exhibit C at 101. Plaintiffs provided no corrections or subsequent adjustments, and doing so now—well after his deposition and the conclusion of expert discovery—would prejudice Defendants. The gatekeeping function of district court judges ensures preclusion of inaccurate information. *West*, 2024 U.S. Dist. LEXIS 76437, at *2 ("District court judges to act as a gatekeeper to ensure proposed expert testimony is not only relevant, but reliable when testimony is challenged.") (quoting *Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024)) (internal quotation marks omitted).

Mr. Spitzen's proposed testimony fails to suffice for not one, but two prongs of the required analysis, and therefore warrants exclusion as neither qualified nor reliable. *Haager v. Chi. Rail Link*, L.L.C., No. 04 C 6210, 2005 U.S. Dist. LEXIS 24149, at *6 (N.D. Ill. 2005) ("An expert's reliability depends upon both the qualifications of the expert and the methodology used by that expert") (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

## C. Mr. Spitzen's Proposed Testimony Will Not Help the Factfinder

Mr. Spitzen's proposed testimony does not relate to the claims Plaintiffs bring in this suit, and therefore will not assist the factfinder in this case. A large portion of Mr. Spitzen's expert report focuses on Baitulmaal, an organization not a party to this case or the *Boim I* litigation. Mr. Spitzen admits Baitulmaal is not a party to this case:

Q: Are you aware that Baitulmaal is not a party to this case?

A: I know that the case is not against Baitulmaal.

Exhibit C at 41.

Mr. Spitzen's proposed testimony, and his written reports, fail to satisfy a key function for the factfinder: his irrelevant testimony will not assist the factfinder in understanding the evidence or determining a fact in issue. *West*, 2024 U.S. Dist. LEXIS 76437, at *2. ("An expert's proposed

testimony is relevant when it helps the factfinder understand the evidence or determine a fact in issue.") (quoting *Daubert*, 509 U.S. 579 at 591)) (internal quotations omitted).

**D.  Mr. Spitzen's Report Lacks a Proper Signature, in Violation of the Federal Rules of Civil Procedure and this Court's Rules**

In addition to the issues above, Mr. Spitzen failed to sign either of his proffered reports, instead providing only an "/s/" e-signature. *See* Exhibits A, B. That fails to comply with Fed. R. Civ. P. 26(a)(2)(B), which requires experts to actually "sign" their reports, or this Court's General Order 16-0020, which clarifies only that the "/s/" signature suffices for an attorney's signature for the purpose of e-filing. The lack of verifiable signatures on Mr. Spitzen's reports casts additional doubts on their reliability.

## V.  <u>CONCLUSION</u>

Mr. Spitzen's proposed testimony and expert reports fail all three prongs of Rule 702: he lacks sufficiently specific qualifications, fails to utilize or identify a discernible methodology in his work, and will not assist the factfinder on information relevant to the claims Plaintiffs bring in this lawsuit. Despite admitting that he lacked knowledge about nonprofit organizations operating in the United States, Mr. Spitzen draws conclusions based solely on opinion and conjecture. Mr. Spitzen fails to validate his conclusions with any articulated methodology, parrots conclusory statements made by Plaintiffs' counsel, and relies on proven, objectively inaccurate information provided to him. Finally, Mr. Spitzen's proposed testimony would only confuse the factfinder with irrelevant information—not provide useful assistance. Defendants therefore respectfully request that this Court exclude Mr. Spitzen's testimony and reports in full, pursuant to Federal Rule of Evidence 702.

Dated this 31st day of October, 2025.

*/s/ Christina Jump*
Christina A. Jump
Texas Bar No. 00795828
*Admitted to the General Bar*
*and Trial Bar of this District*
Samira Elhosary
Maryland Bar No. 2112140261
*Admitted to the General Bar of this District*
cjump@clcma.org
selhosary@clcma.org

*Attorneys for Defendants*

Constitutional Law Center for Muslims in America*
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

*The Constitutional Law Center for Muslims in America*
*is the Legal Division of the Muslim Legal Fund of America.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on October 31, 2025, she caused the foregoing

Motion to be served by electronically filing with the Clerk of the Court for the Northern District

of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel

for all parties of record.

<u>/s/ Christina A. Jump</u>
Christina A. Jump
*Counsel for Defendants*
