IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER,<br><br>Defendants. | Civil No. 17-cv-03591<br><br>Hon. Andrea Wood |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE ARIEH SPITZEN AS AN EXPERT WITNESS**

**I.   INTRODUCTION[1]**

According to defendants' *Daubert* motion, American Muslims for Palestine is some anodyne "not-for-profit" organization operating "solely" in the United States with no foreign connections whatsoever. And, according to defendants "[t]his case arises out of acts that occurred in 1996, when Plaintiffs' son died after being shot in Jerusalem."(Defs.' Motion at p. 1) In fact, this case arises out of acts that occurred well before 1996 when AMP's predecessor, the Islamic Association for Palestine, was established in the United States by Hamas operatives sent from Gaza to organize financing and support for Hamas. Contrary to Defendants' vapid mischaracterization, "David was murdered in a terrorist attack [by Hamas], not in some random drive-by shooting." *Boim v. Quranic Literacy Institute*, 340 F. Supp. 2d 885, 899 (N.D. Ill. 2004).

---

[1] Although Plaintiffs proffer three experts with distinct opinions in three different areas, Defendants' motions to exclude each of these experts all follow the same structure and repeat some of the same arguments. Rather than repeat their response to these contentions three times, Plaintiffs are setting forth their positions only in this document, and request that the Introduction, case law and argument regarding the E-signature issue be considered as applying to all three responses.

1

This murder of a US teenager was financed by IAP. This suit seeks to collect the Boims' judgment from IAP's alter ego, AMP, whose initial activities as a "new" organization included raising substantial funds sent directly to Hamas leaders in Gaza. Not your plain vanilla American not-for-profit as Defendants want us to believe.

Defendants cannot sanitize the central issue in this case and wish away AMP's deep roots in the center of Palestinian terrorism. As the Seventh Circuit made clear, "the alter ego doctrine is not rigid and must account for the context in which the doctrine is being applied – here, to terrorism financing organizations." *Boim v. American Muslims for Palestine*, 9 F.4th 545, 559 (7th Circ. 2021). Each of plaintiffs' experts is a well-regarded authority on one or more aspects of terrorist organizations who can establish that context: Lorenzo Vidino on the history and current operations of the Muslim Brotherhood and Hamas; Harel Chorev on Palestinian terrorism networks; and, Arieh Spitzen on the specific terror-supporting actions of individuals and organizations who were the beneficiaries of AMP's activities and largess. In their reports and testimony, they explain AMP's role as the financing arm and propagandist of Hamas acting as the "disguised continuation" of IAP. Testimony by these experts is exactly what will assist the jury in understanding the context establishing that AMP is the alter ego of IAP.

## II. ARGUMENT

### A. ARIEH SPITZEN IS A RECOGNIZED EXPERT ON TERROR FINANCING

As is well-demonstrated in his Curriculum Vitae, attached as pages 32-35 of Defendants' Motion, Arieh Dan Spitzen is a leading expert on Islamic terrorism both in the Middle East and in the United States. He has specialized knowledge in written and spoken Arabic and in the field of Terrorism and Counter-Terrorism, Palestinian Islamic groups and Palestinian society and politics. In 1976 he graduated with honors from the Department of the History of Islamic

2

Countries and the Department of the History of the Jewish People, both within Jerusalem's Hebrew University. From that date forward, Mr. Spitzen held increasingly significant positions in the Civil Administration of the West Bank.

From 2001-2009 Mr. Spitzen served as Department Head for Palestinian Affairs in the Administered Territories, and as the Advisor to the Coordinator of Government Activities in the Territories. By virtue of these positions, he became a leading authority on the socio-economic civilian situation in the West Bank and Gaza responsible for writing hundreds of surveys and studies about civilian conditions, political and social trends, the economic atmosphere and its influence, and other diverse civilian issues connected to the civilian Palestinian realm. In that capacity, he provided detailed advice on the status and activities of terror organizations including Hamas, Islamic Jihad, the Democratic Front for the Liberation of Palestine, and Global Jihad. Mr. Spitzen was responsible for providing an annual comprehensive survey regarding the civilian infrastructure of the Hamas, known as the *Da'wa*.

He has testified at trial in four key terrorism cases in federal court, and has served as an expert consultant in several more cases that did not go to trial, routinely found qualified by some of our most distinguished federal judges (see, Spitzen CV at p. 3). He has also testified dozens of times in Israeli courts and for decades has served as an advisor to the Israeli government on terror financing in both civil and criminal matters. His testimony has involved the transfer of funds to civilian infrastructures and charitable organizations of Hamas on behalf of foundations outside of Israel, especially in the United States.

As his CV establishes, Mr. Spitzen's deep expertise on these issues derives from his decades of service as the Department Head of the Israel Defense Forces for Palestinian Affairs, where his job included keeping careful track of Hamas leadership and activity in Gaza and the

West Bank. It is difficult to imagine a person with more expertise than Mr. Spitzen on the financing of Hamas terror, which is a key element of this lawsuit.

### B. DEFENDANTS' MOTION IGNORES THE RELEVANT OPINIONS MR. SPITZEN PROFFERS

With no basis to challenge either the credentials or the opinions of Mr. Spitzen Defendants' Motion instead sets up a strawman, attacking opinions they attribute to him that he **has not given** and challenging his qualifications in areas where he **does not claim expertise**. Defendants' motion should be denied and the jury should be afforded the benefit of hearing Mr. Spitzen's very helpful analysis on the key points about which he actually does plan to testify.

As is clear from his report and his deposition testimony, Mr. Spitzen is not offered as an expert on every issue in this case. On the contrary, he will opine on three matters that are directly responsive to the alter-ego considerations outlined by Seventh Circuit. The first is the destination of the money that AMP helped raise on behalf of Viva Palestina—it was literally handed over to Hamas leadership in Gaza. As noted above, Mr. Spitzen has spent a career studying Hamas financing and activities and his opinion explains the connection between the funds that AMP helped Viva Palestina to raise and the delivery of that money to Hamas leadership.

Mr. Spitzen's second opinion is that one of the key leaders of AMP from its earliest days, and also of IAP, Abdelbasset Hamayel, was associated with and trained by the Muslim Brotherhood, the creator and alter ego of Hamas. Mr. Spitzen demonstrates that Mr. Hamayel has maintained contacts with individuals associated with Hamas at the highest level. Again, Mr. Spitzen has substantial knowledge of this important factor in Plaintiffs' case by reason of his extensive work studying the conduct and activities of individuals acting on behalf of Hamas and other terrorist groups. Mr. Spitzen's opinions focus on activity that took place in the Middle East, where he has always lived, worked, and spoken the languages. Although his testimony

4

connects strongly to the facts relevant to the alter ego issue that is the essence of this case, he does not claim any expertise on American alter ego **law** or the organizational aspects of American not-for-profits.

Mr. Spitzen's third opinion concerns Baitulmaal, another organization supported by AMP that has actively provided material support to Hamas. Once again, the testimony Mr. Spitzen will give focuses on this organization's activities in Gaza in direct support of Hamas. Other evidence will establish the connections between Baitulmaal and AMP. Mr. Spitzen's opinions concern how Baitulmaal connects to Hamas, not how AMP connects to Baitulmaal.

Defendants proffer the perplexing argument that because Baitulmaal is not a party to this case, an opinion as to its activities and connections is irrelevant. As is clear from Mr. Spitzen's opinion and testimony, the support provided for Hamas (also not a party) by Baitulmaal and by Viva Palestina (also not a party) goes to the heart of this case. Hamas is relevant because it is the terrorist organization that murdered Plaintiffs' son with financial support from IAP; Viva Palestina and Baitulmaal are relevant because they are or have been vehicles through which AMP similarly provided financial support to Hamas, which is a material factor in establishing that AMP is the alter ego of IAP.

C. MR. SPITZEN'S OPINIONS ARE HIGHLY RELEVANT

The Seventh Circuit opinion in this case[2] sets out several factors for this Court to consider in evaluating the key issue: whether American Muslims for Palestine is the alter ego of the terrorist supporting judgment debtor, Islamic Association for Palestine. *Boim v. American Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021) Those criteria include such things as

---

[2] Defendants briefs repeatedly emphasize that in a reversed decision from 2020, Judge Coleman dismissed this suit. Why this history is relevant to the pending Daubert motions is a mystery to Plaintiffs. What is actually relevant is the Seventh Circuit decision reversing the dismissal, in which the Court of Appeals gave useful guidance for evaluating the alter ego doctrine in the context of this case, involving not-for-profit corporations.

overlap in leadership, same organizational purpose, similarity of operations, and unlawful motive or intent to escape liability, as well as other factors to be determined by this Court. *Id.* Mr. Spitzen's testimony fits squarely into these criteria. The basis for the judgment against IAP was its material support for Hamas; obviously, if AMP's organizational purpose and activity includes supporting Hamas by sending and directing funds in the very same way as IAP, that is an important element of Plaintiffs' alter ego proof.

Contrary to Defendants' argument, Mr. Spitzen's testimony helping to establish how AMP has provided support for Hamas does not require Mr. Spitzen to have independent knowledge of AMP's activities in the U.S. The proof in this case will come from multiple sources. Mr. Spitzen is entitled to rely on the evidence elicited from fact witnesses and exhibits as forming part of the basis for his opinions, including the evidence that AMP featured Viva Palestina at several events where it raised funds that it later delivered to Hamas. ( "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed Rule of Evid 703)  This reliance does not constitute the mere parroting of information from Plaintiffs' counsel, as Defendants claim. (Def's Brief at p.6)

D.  OPINIONS MR. SPITZEN IS NOT PROFFERING

The opinions Defendants say Mr. Spitzen is not qualified to give are **not** his opinions. So, for example, Defendants argue that Mr. Spitzen admitted repeatedly during his deposition that he lacks knowledge of United States not-for-profit organizations generally, such that Mr. Spitzen further lacks the qualifications to testify about AMP's operations in the United States.  But, as noted above, Mr. Spitzen does not purport to be an expert on American not-for-profit corporations or how AMP operates in the United States.  He is an expert on how terrorist

organizations operate, specifically Hamas. Applied herein, his expertise explains the critical links between AMP in the United States and Hamas and its supporters.

### E. Mr. Spitzen's expertise on Hamas is unquestioned and will be helpful to the jury

As is clear from his Curriculum Vitae, Mr. Spitzen, who is completely fluent in spoken and written Arabic, has repeatedly been accepted as an expert on Hamas and its terrorist activities in federal district courts in cases like this one brought under the Anti-Terrorism Act by American victims of international terrorism. From 1976 until 2009, he served in various positions in the Israel Defense Forces, all of which involved Arab Affairs, including his service as Department Head for Palestinian Affairs in Gaza and the West Bank that required him to keep careful track of Palestinian issues, including terror activity and specifically Hamas.

Defendants point to a single alleged mistake in the 58 pages of detailed documentation provided by Mr. Spitzen in support of his opinions. (Defs.' Brief at p. 7) One inadvertent attribution of a Facebook page cannot invalidate the entire testimony of an expert relying on a vast body of research and evidence to support his conclusions. A minor error such as this does not justify excluding the expert. See, *Mantzuranis v. State Farm,* 2022 U.S. Dist. LEXIS 133112, (N.D. Texas May 23, 2022)

The jury cannot be expected to have any significant knowledge of Hamas, how it operates in Gaza and the West Bank, who Viva Palestina and Baitulmaal are, and how they have worked to support Hamas and thereby support terrorism. No juror is likely to know who Hassan Nasrallah, Ismail Haniyeh and George Galloway are or were or how they have perpetrated or supported terrorist acts. Nor will they know what it meant for Abdelbassett Hamayel to have been active in Al-Kutlah al-Islamiyah. Mr. Spitzen, with his fifty years of studying these topics

and extensive knowledge, has an unequaled ability to connect these dots for jurors who would otherwise be left without the necessary background.

F. **MR. SPITZEN'S METHODOLOGY IS CLEAR**

Defendants cite cases dealing with technical or scientific issues as support for their claim that Mr. Spitzen had no "methodology" for deriving his opinions. But this circumstance is very different from those involving scientific witnesses. Mr. Spitzen did not conduct experiments or perform regression analysis on data collections. This case did not call for that. Mr. Spitzen's approach to forming his opinions is well-described in the opinions themselves, as well as in his deposition testimony. The opinions reflect decades of experience in providing expertise and advice on these issues in matters of consequence involving Hamas and its supporters. The fact that these opinions appear simple and straightforward does not diminish their value or the effort and expertise required to reach these conclusions.

An expert is allowed to testify by meeting three requirements: 1) the expert is qualified in the subject matter; 2) the methodology is sufficiently reliable to comply with the Daubert standards; 3) the testimony assists the trier of fact through the application of scientific, technical or **specialized expertise** to understand the evidence. *Walters v. Emory Healthcare,* 2025 Ga. State LEXIS 3938 June 17, 2025, citing *City of Tuscaloosa v. Harcos Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998); *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004); *emphasis added)* "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink v. Cheminova,* 400 F.3d 1286, 1292 (11th Cir. 2005) "But the trial court's gatekeeping role in enforcing these rules 'is not intended to supplant the adversary system or the role of the jury.'" *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311 (11th Cir. 1999); see also *Butler v. Union Carbide Corp.,* 310 Ga. App. 21, 28-29

8

(2011). Instead, "the rejection of expert testimony [under *Daubert*] is the exception rather than the rule" *Fed. R. Evid. 702,* Advisory Committee Notes to 2000 Amendments.

In cataloguing some of the development of the *Daubert* admissibility standards, the Eighth Circuit Court of Appeals noted in *Johnson v. Meade Johnson &Co., LLC,* 754 F.3d 557, 562 (8th Cir. 2014) "While we adhere to this discretionary standard for review of the district court's Rule 702 gatekeeping decision, cases are legion that, correctly, under Daubert, call for the liberal admission of expert testimony. *See, e.g.,United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that we resolve doubts about the usefulness of expert testimony in favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree" (quotation omitted)); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "clearly is one of admissibility rather than exclusion" (internal quotation omitted)); *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (holding that exclusion of expert's opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury" (internal quotation omitted)). Further, district courts are admonished not to weigh or assess the correctness of competing expert opinions. *Wyeth*, 686 F.3d at 625. As long as the expert's scientific testimony rests upon "good grounds, based on what is known" it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset. *Daubert*, 509 U.S. at 590, 596.

Under any applicable standard, Mr. Spitzen's testimony should be admitted. He read and digested the evidence presented through deposition testimony and exhibits regarding the leadership of AMP and aspects of its operations, including providing platforms for Viva Palestina and Baitulmaal, as well as its reliance on Abdelbasset Hamayel as a key manager

helping to run its business. He then researched the organizations and individuals involved and applied his extensive knowledge of Hamas and its commitment to terrorist action to form his strong and unimpeachable opinions.

Mr. Spitzen's knowledge of the activities of AMP and the organizations it supported come from the factual record established in discovery in this case. His knowledge of the activities of Baitulmaal and Viva Palestina in Gaza and the West Bank, as well as Mr. Hamayel's associations, come from his well-documented career and studies, along with the research he describes in his report and testimony. The final element of his methodology, the application of the historical background to the facts of this case is likewise detailed effectively in his report.

## G. THE E-SIGNATURE MR. SPITZEN INCORPORATED IN HIS REPORT IS VALID

Defendants challenge Mr. Spitzen's report because he acknowledged it using an e-signature rather than a "wet" signature. Defendants cite F.R.C.P. 26(a)(2)(B) and this Court's General Order 16-0020 as authority for the proposition that an electronic signature is inadequate for purposes of validating an expert report. But, neither provision says that. Rule 26 requires only that the report be signed by the witness without specifying what form the signature should take, and the General Order deals with e-filing by counsel and does not say anything about electronic signatures in other contexts. Mr. Spitzen testified at his deposition about the documents he produced and clearly established that these are indeed his opinions, so there should be no doubt about their authenticity. If the Court requires an original signature, Plaintiffs ask that they be granted leave to provide that. (We note that the report of Defendants' expert, produced three weeks after the extended deadline for production was unsigned until defense counsel produced a signed version another two months later.)

### III. CONCLUSION

Mr. Spitzen is a well-established expert on terror activities in the Middle East with a noted expertise on Palestinian terror organizations. Relying on his background and the record established through discovery in this case, developed reliable opinions that will be helpful to the jury in deciding this case. Defendants' motion to exclude his testimony should be denied.

Date: December 1, 2025

Respectfully submitted,

*/s/ Daniel I. Schlessinger*

Daniel I. Schlessinger
Stephen J. Landes
Seth H. Corthell
Jaszczuk P.C.
311 South Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
slandes@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 1st day of December 2025.

                                                   */s/ Daniel I. Schlessinger*