**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, Individually and as Administrator of the Estate of David Boim, deceased; and JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE/ AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; RAFEEQ JABER, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br><br> Hon. Andrea Wood <br> Hon. Heather McShain |

**DEFENDANT AMP'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM IN SUPPORT OF ITS MOTION**

**<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................... 1

III.  LEGAL STANDARD .......................................................................... 3

IV.  ARGUMENT ...................................................................................... 6

      A.     No Genuine Dispute on Material Facts Exists That Support Plaintiffs'

            Successor Liability Allegations Against AMP ........................................... 6

      B.     No Genuine Issue of Material Fact Exists Supporting Plaintiffs' Alter Ego

            Allegations ................................................................................ 8

V.    CONCLUSION .................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................... 13

## **TABLE OF AUTHORITIES**

**Cases**

*Boim v. Am. Muslims for Palestine*
  9 F.4th 545 (7th Cir. 2021) .............................................................................. 4, 5, 8

*Borcky v. Maytag Corp.*
  248 F.3d 691 (7th Cir. 2001) .................................................................................. 9

*Castelino v. Rose-Hullman*
  999 F.3d 1031 (7th Cir. 2021) ............................................................................... 3

*Cent. States, Se. & Sw. Areas Pension Fund v. DT Leasing, LLC*
  No. 20 C 5878, 2025 U.S. Dist. LEXIS 171569 (N.D. Ill. Aug. 29, 2025) .......... 6, 8

*Chillmon v. Vill. of Evergreen Park Ill.*
  No. 20 CV 7379, 2023 U.S. Dist. LEXIS 163230 (N.D. Ill. Sept. 14, 2023) .......... 4

*Dyjak v. Harper*
  No. 22-1419, 2023 U.S. App. 24319 (7th Cir. Sept. 12, 2023) ............................... 4

*EEOC v. Northern Star Hospitality*
  777 F.3d 898 (7th Cir. 2015) .................................................................................. 6

*Ind. Elec. Worker's Pension Ben. Fund v. ManWeb*
  884 F.3d 770 (7th Cir. 2018) .................................................................................. 6

*Jarolin-Bogert v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*
  No. 21 CV 552, 2023 U.S. Dist LEXIS 162249 (N.D. Ill. Sept. 13, 2023) ............. 4

*Jibril v. Mayorkas*
  20 F.4th 804 (D.C. Cir. 2021) ................................................................................ 7

*Laborers' Pension Fund v. Property Recycling Servs. Corp.*
  No. 15-cv-09170, 2021 U.S. Dist. LEXIS 2000061 (N.D. Ill. Oct. 18, 2021) ......... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) ................................................................................................ 3

*McCleskey v. CWG Plastering, LLC*
  897 F.3d 899 (7th Cir. 2018) ........................................................................ 5, 6, 7, 8

*McIntosh v. Bowens*
  No. 21-2450, 2023 U.S. App. LEXIS 24366 (7th Cir. Sept. 14, 2023) ................... 4

*Medina v. Bd. of Educ. of Chi.*
  No. 19-cv-07916, 2023 U.S. Dist. LEXIS 56439 (N.D. Ill. Mar. 31, 2023)............. 4

*Nat'l Council of Resistance of Iran v. Dep't of State*
  373 F.3d 152 (D.C. Cir. 2004) ............................................................................... 8

*Oppenheimer v. Event Ticket Sales, LLC*
  No. 22-cv-02864, 2025 U.S. Dist. LEXIS 60505 (N.D. Ill. March 31, 2025)........... 3

*Outpatient Med. Ctr. Emp. Antitrust Lit.*
    630 F. Supp. 3d 968 (N.D. Ill. 2022) ................................................................. 8

*Peacock v. Thomas*
    516 U.S. 349 (1996) ........................................................................................... 5

*Riley v. City of Kokomo*
    909 F.3d 182 (7th Cir. 2018) ............................................................................. 4

*Singmuongthong v. Bowen*
    No. 21-3021, 2023 U.S. App. LEXIS 20540 (7th Cir. Aug. 8, 2023) ................ 4

*Zaya v. Sood*
    836 F.3d 800 (7th Cir. 2016) ............................................................................. 3

## Rules

Fed. R. Civ. P. 56(a) ................................................................................................ 3

## I.     INTRODUCTION

Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") is a nonprofit organization with the mission to educate Americans about Palestine and its rich history and culture. Since its creation, it has only accepted donations from within the United States, and it has only spent its money on programming within the United States. Over the years, AMP developed into one of the most successful nonprofits in the United States for the work that it does. AMP hosts one of the most well-attended educational conferences on Palestine in the U.S., with programs for all ages, a cultural bazaar, and entertainment. Plaintiffs claim that this success as an organization advocating for Palestine in the U.S. somehow makes AMP liable to them as the alter ego or successor of other entities against which they won a judgment in a prior litigation. However, no genuine dispute of material fact exists supporting those claims. Therefore, AMP files this Motion for Summary Judgment and asks this Court to enter judgment in full for it.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Boims' original lawsuit arises out of acts that occurred in 1996, when Plaintiffs' son died from a gunshot in Jerusalem. Amended Complaint, No. 179 ¶ 1 ("Complaint"). Plaintiffs brought a lawsuit in 2000 under the Anti-Terrorism Act ("ATA") against the Holy Land Foundation ("HLF"), Islamic Association of Palestine ("IAP"), and the American Muslim Society ("AMS") (together the "Judgment Defendants"), among others. *Id*. ¶ 2. The court in that matter entered judgment for Plaintiffs of $156 million in damages (the "*Boim* Judgment"). *Id*. ¶ 42. Despite Plaintiffs' repeated efforts to collect on that judgment, the Judgment Defendants became defunct as a result of years of litigation, forced closure, and, in the case of HLF, seizure of its assets by the government. *Id*. ¶ 53. Plaintiffs collected only a small portion of that judgment. *Id*.

1

In April 2006, newly licensed attorney Munjed Ahmad and U.C. Berkeley professor Dr. Hatem Bazian identified the need for an organization to educate Americans about Palestine, focusing on its history and culture. *See* Statement of Undisputed Material Facts ¶ 5. Their efforts, originally parallel, combined to result in the late 2006 creation of American Muslims for Palestine ("AMP"). *See* AMP's Statement of Undisputed Material Facts ¶ 5. Incorporated in California with Dr. Bazian's address listed, AMP began hosting events. *Id*. ¶ 4. From the beginning, AMP's stated goal has been to educate youth and their communities about Palestine, its culture, and history. *Id*. ¶ 11. And, from the beginning, AMP operates entirely on donations from exclusively domestic (United States) donors and exclusively domestic functions. *Id*. ¶¶ 17, 18. Neither of these founders previously served as board members or leaders of the Judgment Defendants, nor were they involved in the 2000 *Boim* litigation. *Id*. ¶¶ 6-9.

In 2009, Mr. Ahmad and Dr. Bazian next formed the charitable organization AJP Educational Foundation, Inc. ("AJP"). *Id*. ¶ 19. As with AMP, AJP conducted its activities solely within the United States and accepted donations from the United States. *Id*. ¶ 19-20. In late 2017, AMP and AJP merged into one entity, with AJP the surviving legal entity and AMP as its designated "doing business as" name. *Id*. ¶ 26. Individual Defendant Rafeeq Jaber had no involvement in the creation of either AMP or AJP. *See* Rafeeq Jaber's Statement of Material Undisputed Facts, filed simultaneously and incorporated by reference. Neither AMP nor AJP received any assets formerly belonging to any Judgment Defendant, nor have Plaintiffs identified any. *See* AMP's Statement of Material Undisputed Facts ¶ 3.

Plaintiffs filed this alter ego and successor liability case in May 2017, claiming AMP and individual defendants Rafeeq Jaber, Osama Abuirshaid, and Abdelbaset Hamayel bear liability for Plaintiffs' $156 million judgment case against other entities. This Court granted Defendants'

Motion to Dismiss based on lack of subject matter jurisdiction in August 2017. Doc. No. 41. After Plaintiffs filed a motion for reconsideration, this Court authorized limited jurisdictional discovery. That lasted just over a year, during which Plaintiffs deposed six witnesses for a total of eight depositions, sent thirty-five Requests for Production, and received thousands of pages of documents through production by Defendants. Plaintiffs filed their Amended Complaint against AMP/AJP and Rafeeq Jaber on December 17, 2019, dropping their claims against Mr. Abuirshaid and Mr. Hamayel. Doc. No. 179. The Court granted dismissal a second time, which Plaintiffs then appealed. Doc. Nos. 215, 217. The parties engaged in full factual discovery after remand by the Seventh Circuit on the issue of subject matter jurisdiction. Doc. No. 259. Defendant AMP now brings this Motion for Summary Judgment and ask this Court to enter judgment as a matter of law in full in its favor.

### III.        <u>LEGAL STANDARD</u>

A party seeking summary judgment must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Oppenheimer v. Event Ticket Sales, LLC*, No. 22-cv-02864, 2025 U.S. Dist. LEXIS 60505, at *5 (N.D. Ill. March 31, 2025) (quoting Fed. R. Civ. P. 56(a)). Disputes over material facts qualify as "genuine" only when a reasonable jury could find in favor of the non-moving party. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). While courts must draw inferences in favor of the non-moving party, that deference cannot extend to mere "speculation or conjecture." *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The party resisting summary judgment must identify concrete facts that support doubt on material issues. Though the opposing party may cite evidence in its briefs, it must also explain in some reasonable way how that evidence supports the denying summary judgment. *Castelino v. Rose-Hullman*, 999 F.3d 1031, 1036 (7th Cir. 2021)

(identifying how plaintiff's failure to coherently present his evidence hindered the Court's ability to analyze his claims). Courts need not—and should not—construct legal arguments to support the parties' arguments. *Id*. (quoting *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018); *McIntosh v. Bowens*, No. 21-2450, 2023 U.S. App. LEXIS 24366, at *5 (7th Cir. Sept. 14, 2023) (finding nothing in the record to support the plaintiff's claims); *Dyjak v. Harper*, No. 22-1419, 2023 U.S. App. 24319, at *1 (7th Cir. Sept. 12, 2023) (affirming the district court's finding that plaintiff produced insufficient evidence for a reasonable jury to find the defendant liable); *Singmuongthong v. Bowen*, No. 21-3021, 2023 U.S. App. LEXIS 20540, at *7-8 (7th Cir. Aug. 8, 2023) (holding the plaintiff did not offer evidence to rebut testimony that he received standard pay); *Chillmon v. Vill. of Evergreen Park Ill.*, No. 20 CV 7379, 2023 U.S. Dist. LEXIS 163230, at *11 (N.D. Ill. Sept. 14, 2023) (ruling the plaintiff did not produce sufficient evidence for a reasonable factfinder to find for her); *Jarolin-Bogert v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, No. 21 CV 552, 2023 U.S. Dist. LEXIS 162249, at *2 (N.D. Ill. Sept. 13, 2023) (entering judgment for defendants on all claims, because plaintiff did not have evidence of her claims); *Medina v. Bd. of Educ. of Chi.*, No. 19-cv-07916, 2023 U.S. Dist. LEXIS 56439, at *19 (N.D. Ill. Mar. 31, 2023) (granting judgment to the defendants because "there is no genuine dispute of fact as to" the essential elements of the claim).

In this matter specifically, the Seventh Circuit outlined the only way in which Plaintiffs' allegations could sufficiently establish subject matter jurisdiction. When this matter was before the Seventh Circuit, it set forth the narrow path to this Court's subject matter jurisdiction through ancillary enforcement jurisdiction, grounded in federal common law. *See Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 551 (7th Cir. 2021). Litigants may file a separate legal proceeding to enforce a judgment from a prior proceeding; those proceedings fall within the federal courts' "inherent

4

power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). Where litigants take this route, however, they must argue that "the new defendant is vicariously responsible for the preexisting judgment." *Boim*, 9 F.4th at 552. That vicarious liability must rest on an underlying federal cause of action – the new action must allege the new defendant is liable for violation of federal law. *See Peacock*, 516 U.S. at 354 (finding no federal jurisdiction existed where the plaintiff did not allege the defendant himself violated federal law). The Seventh Circuit was clear: a subsequent lawsuit cannot impose an obligation from a prior lawsuit on a new defendant, unless the new defendant is already directly liable for the judgment, due to its actions at the time of the original relevant facts. *Boim*, 9 F.4th at 552 (citing *Peacock*, 516 U.S. at 357).

This applies to alter ego cases where a litigant who prevailed in a prior action "attempts to recover a money judgment by suing an entity purported to be *one and the same* as—the alter ego of—the original judgment debtor." *Id.* at 553 (emphasis in original). For example, as the Seventh Circuit explained, if two companies operate simultaneously as a single organization using two names, they subject themselves to the same obligations. *Id.* However, the underlying liability must still arise from substantive federal law that supports federal jurisdiction. *See McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 901 (7th Cir. 2018) (attempting to hold a company liable for obligations of another company as that defunct company's alter ego). Plaintiffs must, at base, show that in this lawsuit, AMP and Rafeeq Jaber bear federal liability to them because of the actions that caused the original judgment, in order to be held liable on any alter ego theory.

## IV.     ARGUMENT

### A.     No Genuine Dispute on Material Facts Exists That Support Plaintiffs' Successor Liability Allegations Against AMP

No genuine dispute of any material fact exists that supports Plaintiffs' allegation against AMP of being a successor to the Judgment Defendants.[1] Plaintiffs point to no evidence of a "substantial continuity in the operation of the business" between the Judgment Defendants and AMP. *Cent. States, Se. & Sw. Areas Pension Fund v. DT Leasing, LLC*, No. 20 C 5878, 2025 U.S. Dist. LEXIS 171569, at *31 (N.D. Ill. Aug. 29, 2025).  AMP incorporated several years after the Judgment Defendants dissolved, with founders who were entirely unrelated to the Judgment Defendants. *See* AMP's Statement of Undisputed Material Facts ¶ 1, 4-11. Therefore, AMP respectfully requests this Court enter judgment for it on the claim of successor liability.

To determine whether an entity serves as a successor to a prior entity, courts ask whether there exists a "substantial continuity of the operation of the business before and after the sale." *McCleskey v. CWG Plastering LLC*, 897 F.3d 899, 903 (7th Cir. 2018). Liability depends on whether the successor entity had notice of the liability imposed on it. *Id.* An entity that "substantially assumes a predecessor's assets," while continuing the predecessor's operations without interruption or change, may constitute a successor of the prior entity. *Ind. Elec. Worker's Pension Ben. Fund v. ManWeb*, 884 F.3d 770, 776 (7th Cir. 2018). Courts may examine situations as appropriate while still adhering to the test's framework. *EEOC v. Northern Star Hospitality*, 777 F.3d 898, 902 (7th Cir. 2015).  Courts weigh policy concerns against the interests of parties to determine if successor liability exists. *Ind. Elec. Worker's Pension Ben. Fund*, 884 F.3d at 777.

---

[1] AMP notes that Plaintiffs only timely revived the judgment against IAP—with an order they wrote and submitted to Judge Feinerman for signature. Revived Judgement Order, *Boim, et al. v. Quranic Literacy Inst., et al.,* No. 1:00-cv-02905 (N.D. Ill. Oct. 13, 2022), ECF No. 958.

No genuine dispute of material fact exists that could show AMP substantially assumed assets from any Judgement Defendants. Plaintiffs have no evidence showing AMP received any monetary assets from the Judgment Defendants. *See* AMP's Statement of Undisputed Material Facts ¶ 2, 3. IAP became defunct in 2004, with no further assets after it tried to fulfill the Boim's judgment against it. *Id*. ¶ 1. The United States government seized the assets of Judgment Defendant HLF. *Id*. ¶ 2. Unable to avoid these facts, Plaintiffs argue that AMP benefits from the "goodwill and intangible assets" of the Judgment Defendants; Plaintiffs fail to plausibly explain how any "goodwill" remained for organizations found liable for supporting terrorist organizations. Plaintiffs identify nothing more than conjecture to show the public was interested in AMP's educational and cultural activities because it somehow set itself up as the successor of the Judgment Defendants and actually benefited from that negative association and notoriety. *See Jibril v. Mayorkas*, 20 F.4th 804, 812-13 (D.C. Cir. 2021) (recognizing the stigma of being associated with a terrorism designation without due process). The mere fact that AMP saw then met a need in its community for education on Palestine does not create any liability for it.

Nor does any evidence exist supporting Plaintiffs' contention that AMP substantially continued the work of IAP. As described above, the work of IAP significantly differs from the work done by AMP today. AMP does not send money abroad. *See* AMP's Statement of Undisputed Material Facts ¶ 18. AMP instead focuses solely on education and advocacy in the United States. It neither accepts nor sends funds overseas. *Id*. No evidence supports Plaintiffs' contention otherwise. Further, the length of time between when IAP closed its doors and AMP incorporated works against a showing of successor liability. *McClesky*, 897 F.3d at 903 (finding successor liability may exist where an entity opened mere days after the prior entity shuttered). No amount of speculation and charts with arrows support any "substantial" overlap, as required by law. After

eight years of litigation in this matter alone, more than a year of one-sided jurisdictional discovery and more than two years of fact discovery that followed, Plaintiffs still have no more than conclusory statements to support their alter ego allegation against Defendant AMP; those do not suffice.

**B.    No Genuine Issue of Material Fact Exists Supporting Plaintiffs' Alter Ego Allegations**

No genuine dispute on any material fact exists to support Plaintiffs' allegation of alter ego liability against AMP. The test for alter ego differs depending on the context, and the Seventh Circuit in this case articulated several factors but ultimately recognized "the district court, aided by the parties' briefing, is best equipped to discern the apt analysis for alter ego status in this context." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 559 (7th Cir. 2021). Now, careful review of these factors reveals no overlap existed; as described above, no evidence exists of substantially similar organizations either. And, Plaintiffs fail to show any facts to support that AMP's founders may have created the organization with a "fraudulent intent to avoid … obligations." *McClesky*, 897 F.3d at 903. AMP respectfully requests this Court enter judgment in its favor here as well.

Courts may find organizational alter ego based on factors that differ depending on the context. *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 157 (D.C. Cir. 2004). The Seventh Circuit, in its decision on subject matter jurisdiction in this case, articulated factors to consider for determining alter ego in the nonprofit context, including overlap in leadership, same organizational purpose, and similarity of operations. *Boim v. AMP*, 9 F.4th at 558. Additionally, it suggested that the most prominent factor may well turn on a finding of disguised continuance with a fraudulent intent to avoid liability. *Id.*; *see also In re Outpatient Med. Ctr. Emp. Antitrust Lit.*, 630 F. Supp. 3d 968, 992 (N.D. Ill. 2022) (interpreting Delaware law to hold that a plaintiff must show more than conclusory pleadings that one corporation is the alter ego of another to justify the Court disregard corporate separateness). This fact-intensive inquiry examines whether reasonable

jurors could disagree on whether the new entity serves solely to avoid obligations. *Cent. States, Se. & Sw. Areas Pension Fund*, 2025 U.S. Dist. LEXIS 171569, at *33.

No disagreement exists here. In addition to the differences in mission and lack of overlapping resources described above, Plaintiffs identified no evidence that founders Dr. Bazian and Mr. Ahmad created AMP with the intent to avoid the Judgment Defendants' obligations. The Seventh Circuit cited this factor as among the most important to analyze alter ego against non-profit organizations like AMP. Yet Mr. Ahmad and Dr. Bazian provided sworn testimony they founded the organization to fill a need they saw to educate Americans about Palestine. *See* AMP's Statement of Undisputed Material Facts ¶ 5, 11. Plaintiffs' counsel cannot refute this, and neither can Plaintiff Joyce Boim. *Id*. ¶ 28. Neither Mr. Ahmad nor Dr. Bazian held any leadership position with any Judgment Defendant. *Id*. ¶ 6-10. Neither Mr. Ahmad nor Dr. Bazian took any part in the original *Boim* action, nor did any court find them liable for any judgment to Plaintiffs. Mr. Ahmad was in law school at the time of the original *Boim* action and had no prior involvement with IAP or HLF. *Id*. Dr. Bazian, in his role as an academic, merely spoke at the Judgment Defendants' conferences and events. *Id*. Like Mr. Ahmad, Dr. Bazian never held a position with IAP or HLF. *Id*. And Dr. Bazian spoke about how he did not want AMP to fill the same purpose as IAP had. *Id*. ¶ 31. Neither had any motivation to seek to avoid the Judgment Defendants' legal obligations, as those obligations did not apply to them. Plaintiffs fail to show otherwise despite ample opportunity for discovery to find it. But they've now surpassed the "well-phrased allegation is good enough" Rule 12 stage; Plaintiffs' "speculative assertions" at this point "are not enough to create a material dispute of fact." *Laborers' Pension Fund v. Property Recycling Servs. Corp.*, No. 15-cv-09170, 2021 U.S. Dist. LEXIS 2000061, at *10 (N.D. Ill. Oct. 18. 2021) (Wood, J.) (citing *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001)).

No meaningful overlap exists in the leadership of IAP and AMP, in any iteration of the organization. As described above, AMP's founders, Mr. Ahmad and Dr. Bazian, never held leadership positions with the Judgment Defendants. *See* AMP's Statement of Undisputed Material Facts ¶ 6-10. IAP's leaders never held significant leadership roles with AMP. *See* Doc. 179 at 29, Chart in Amended Complaint. To the extent Plaintiffs put faith in their self-created organizational chart comparing AMP to IAP, they ignore their own dotted lines, "Left USA" category, admission that Individual Defendant Rafeeq Jaber qualifies only as an AMP "supporter," new category for AMP co-founder as outright "Non-IAP/In Law School," and their equating of relatives and business partners in a vain attempt to seemingly draw more misleading arrows. *Id.* Those categories do not comprise the "substantial" connections required under the law.

Plaintiffs equally fail with their created timeline. *Id.* at 24, Timeline in Amended Complaint. The following key admissions appear in this chart they created themselves: "IAP closes" no later than January 2005; more than a year passed before "AMP incorporated;" then, in mid-2008 by Plaintiffs' arrow, "AMP opens first national office down the street from IAP"—the same IAP that had already been closed for more than three years by that point, looking no further than their own chart. *Id.*

Plaintiffs fared no better after taking ten depositions during fact discovery: Sufian Nahban, whom they pegged as a straight line directly overlapping connector between AMP and IAP, testified his involvement lasted only a few limited years, he does not recall any actions he took during that time, and he left because of "so many" other things. *See* AMP's Statement of Undisputed Material Facts ¶ 29. Last, Plaintiffs attempt to establish overlap by identifying academics who focus on Palestine and the Middle East in general, who spoke at events for multiple Palestinian organizations. Yet that fails as well; Dr. Bazian, for example, recalls only a handful of

10

times, out of an average of 150 speeches per year, that he spoke at IAP events. *Id.* ¶ 30. Plaintiffs'
allegation here carries no more meaning than saying that the Federalist Society constitutes an alter
ego of the American Constitution Society if they both invite the same constitutional scholars and
legal pundits to speak at their events. No genuine dispute of material fact exists to support any
allegation that AMP is an alter ego of IAP or any Judgment Defendant – not even after more than
eight years of searching.

## V.    CONCLUSION

American Muslims for Palestine came into existence in 2006 because a lawyer and a
professor, in different parts of the country who had never met each other before, each saw a gap in
representation of Palestinian affinity groups even within the American Muslim community.
Through that shared desire to fill that gap, they eventually met, combined their efforts, and created
an organization to fill the need its founders identified. They had no treasure trove of funding; in
AMP's third and fourth years it did not hold its now-landmark annual conventions. As with many
new nonprofit organizations, AMP may have faltered. But it did not.

This is not the story Plaintiffs hoped the facts would support when they spun their tale of a
faux entity masquerading for the still secretly thriving IAP, purportedly gone underground. There
was no masquerade. IAP did not thrive. It did not operate secretly or behind closed doors. Plaintiffs
recognize now IAP closed its doors – well over a year before AMP began.

No overlap in leadership exists. AMP has never done the bidding of any other organization.
The entities do not have the same purpose.  Years of discovery and decades of Plaintiffs' allegations
widely repeated do not show the scenario they hoped would appear; to the contrary, the evidence
vindicates what AMP said all along: AMP is a domestic organization. It operates in the United
States. It raises funds in the United States. Plaintiffs cannot show otherwise.

Plaintiffs may not like the evidence, but they can refute it with nothing more than conclusory allegations, and their own speculation. And at this point, well past the grace of Rule 12, well past the close of discovery, and well past the time to start investigating, Plaintiffs must do more. Since they cannot, AMP respectfully requests this Court grant its motion for summary judgment, and dismiss all claims against it as a matter of law. AMP further requests this Court award it reasonable attorneys' fees for having to defend against what now show themselves to be baseless allegations lobbed at AMP for so many years.

Dated this 5th day of December 2025.

/s/ *Christina A. Jump*
Christina A. Jump
Texas Bar No. 00795828
*Admitted to the General Bar and Trial Bar of this District*
cjump@jump-start-legal.com
Jump Start Legal Justice Center PLLC
100 N. Central Expy., Suite 537
Richardson, TX 75080
Phone: 972-992-5060

Samira Elhosary
Maryland Bar No. 2112140261
Admitted to the General Bar of this District
selhosary@clcma.org
Constitutional Law Center for Muslims in America*
100 North Central Expressway, Suite 1010
Richardson, TX  75080
Phone: (972) 914-2507
Fax: (972) 692-7454

*Attorneys for Defendant*

*The Constitutional Law Center for Muslims in America is
the legal division of the Muslim Legal Fund of America*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 5, 2025, she caused the foregoing Motion to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

/s/ *Christina A. Jump*