**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STANLEY BOIM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE, *et al.*, <br><br> Defendants. | Civil No. 17-cv-03591 <br><br><br> Hon. Andrea Wood |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO EXCLUDE PLAINTIFFS' EXPERT ARIEH SPITZEN**

Defendants AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") and Rafeeq Jaber ("Mr. Jaber") (together, "Defendants") respectfully submit this Reply in Support of their Motion to Exclude Plaintiffs' proffered expert Arieh Spitzen ("Mr. Spitzen").

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

    I.    INTRODUCTION ................................................................................................ 1

    II.    ARGUMENT ........................................................................................................ 1

        A.    Plaintiffs Fail to Demonstrate the Relevance of Mr. Spitzen's Testimony ........... 1

        B.    Plaintiffs Fail to Prove Mr. Spitzen Employed a Reliable Methodology ............. 6

    III.    CONCLUSION .................................................................................................... 10

CERTIFICATE OF SERVICE ..................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*Artis v. Santos*
   95 F.4th 518 (7th Cir. 2024) .................................................................................................. 9

*Bogathy v. Union Pac. R.R.*
   No. 17-cv-4290, 2020 WL 419406 (N.D. Ill. Jan. 24, 2020) .................................................. 9

*Happel v. Walmart Stores, Inc.*
   602 F.3d 820 (7th Cir. 2010) .................................................................................................. 5

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*
   647 F. Supp. 2d 857 (N.D. Ohio 2009) ................................................................................... 5

*Kumho Tire Co. v. Carmichael*
   526 U.S. 137 (1999) ................................................................................................................ 5

*Mantzuranis v. State Farm*
   Civil Action No. 3:21-cv-01486-M, 2022 U.S. Dist. LEXIS 133112 (N.D. Tex. May 23, 2022)
   ................................................................................................................................................. 7

*Shebley v. United Cont'l Holdings, Inc.*
   No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647 (N.D. Ill. Apr. 20, 2021) ...................... 6, 9

*United States v. Mamah*
   332 F.3d 475 (7th Cir. 2003) .................................................................................................. 6

*West v. Home Depot U.S.A.*
   No. 21 CV 1145, 2024 U.S. Dist. LEXIS 76437 (N.D. Ill. Apr. 26, 2024) ......................... 5, 8

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*
   395 F.3d 416 (7th Cir. 2005) .................................................................................................. 9

**Rules**

Federal Rule of Evidence 702 ....................................................................................................... 1

**I.     INTRODUCTION**

Plaintiffs' Response to Defendants' Motion to Exclude Arieh Spitzen as an Expert Witness ("Plaintiffs' Response") fails to meet Plaintiffs' burden under Federal Rule of Evidence 702 to show the admissibility of Mr. Spitzen's testimony. Doc. 598. Plaintiffs fail to demonstrate how Mr. Spitzen's testimony pertains to an issue relevant to the legal claims alleged in this lawsuit and could therefore help the trier of fact. Instead of addressing issues central to this case, Mr. Spitzen's testimony references extraneous content that will only confuse and distract from consideration of the alter ego claims Plaintiffs allege in this case. Plaintiffs also fail to identify the methodology Mr. Spitzen employed in his analysis. For these reasons, Defendants respectfully request this Court exclude Mr. Spitzen's testimony in full.

**II.     ARGUMENT**

**A.     Plaintiffs Fail to Demonstrate the Relevance of Mr. Spitzen's Testimony**

Plaintiffs' Response dedicates a considerable amount of space to summarizing Mr. Spitzen's career. *See* Doc. 598 at 2-3. While Mr. Spitzen may well have enjoyed a long career, that career focused exclusively on Palestine and the Middle East. Plaintiffs fail to show how his professional background, focused on the socio-economic civilian situation in the West Bank and Gaza, applies to the alter ego claims they allege here against an American nonprofit organization that operates entirely within the United States. While Mr. Spitzen may well possess knowledge related to the "civilian Palestinian realm" in the Middle East, that knowledge does not equate to knowledge of AMP, as a domestic nonprofit, and its operations within the U.S. *See* Doc. 598 at 3.

Plaintiffs' Response also highlights Mr. Spitzen's knowledge of terror financing. *See id*. As evidenced when viewed in conjunction with Plaintiffs' Amended Complaint, Mr. Spitzen's knowledge of terror financing fails to relate to Plaintiffs' claims in this lawsuit. Doc. 179, Amended

1

Complaint ("Amended Complaint"), at pp. 60-65. Plaintiffs' Amended Complaint alleges only that AMP and Rafeeq Jaber serve as "alter egos and successors" to the previous Judgment Defendants. *Id.* at 55. Plaintiffs' Response emphasizes Mr. Spitzen's extensive knowledge about financing "in the West Bank and Gaza" and "in the Administered Territories" and his service in the Israel Defense Forces ("IDF") "where his job included keeping careful track of Hamas leadership and activity in Gaza and the West Bank." Plaintiff's Response at 3-4. And, Plaintiffs acknowledge that "Mr. Spitzen's opinions focus on activity that took place in the Middle East, where he has always lived, worked, and spoken the languages." *Id*. at 4. Yet AMP does not operate in the Middle East, and Plaintiffs do not allege that it does. Plaintiffs' allegations in this case pertain to whether AMP, and Rafeeq Jaber, took over any assets of Judgment Defendants IAP and AMS in the United States, after a U.S. court entered judgment in Plaintiffs' favor in Plaintiffs' prior lawsuit. Regardless of other courts that rendered Mr. Spitzen qualified on other issues or how much experience he may have in a region where AMP does not and never has operated, Plaintiffs must demonstrate Mr. Spitzen's qualifications for this case as to the claims Plaintiffs assert against these defendants. They fail. Even Mr. Spitzen agrees: "Knowledge of everything that has to do with American organization -- organizations is not my expertise. There are other experts that know much more about that." Doc. 595-3, Deposition Excerpts of Arieh Spitzen, at 12.

Plaintiffs attempt to reframe Mr. Spitzen's knowledge of Viva Palestina, Abdelbasset Hamayel, and Baitulmaal. *See* Doc. 598 at 4-5. Neither Mr. Hamayel, Viva Palestina nor Baitulmaal are parties in this case or were Judgment Defendants. In fact, while Plaintiffs named Mr. Hamayel in their Original Complaint, Plaintiffs chose to remove their allegations against him from the Amended Complaint. *Compare* Doc. 1, Doc. 179. Plaintiffs may argue that Mr. Hamayel's involvement in AMP beginning several years after its creation somehow helps their case, but Mr.

2

Spitzen's testimony fails to make that connection. In fact, he outright recognizes that "Abdelbaset Hamayel has fulfilled senior roles in AMP and AJP, which are the focus of this lawsuit, and they in fact are one and the same organization (as I have been informed by the attorneys for the plaintiffs)." Doc. 595-1 at 24. Plaintiffs' counsel cannot simply relay their own conclusions to an expert, then deem that purported expert's testimony an admissible rendition of their conclusions simply because the expert parrots them.

Mr. Spitzen further defers to the opinions of others in stating "[t]he Islamist-fundamentalist nature of AJP and AMP, and its support for Hamas and its ideologies (including supporting Hamas terrorism), is described in detail by an expert for the plaintiffs." *Id*. at 25. And as discussed further below, the section discussing Mr. Hamayel contains multiple citations to Facebook posts that Mr. Spitzen attributes to AMP but admitted in his deposition he did not verify, and which are actually from a completely different and unrelated organization. Doc. 595-1 at 25, n. 26 and n. 27; Doc. 595-3 at 8-11, 10 ("The only thing I said that what's written here, it's not the name of the organization I was talking about. But I didn't check that Facebook link yet. I need to check it.").

In much the same way, Mr. Spitzen has no knowledge as to what, if any, connection exists between Baitulmaal and AMP: "I just wanted to say that I was not ·required to check the connection between AMP and Baitulmaal. I was giving the information that AMP was used -- used as umbrella about -- for Baitulmaal. And I was supposed to -- so I was asked to write in that review or Report on Baitulmaal activities, but that ·connection was the duty, what somebody else was ·supposed to write about the connection between AMP and Baitulmaal." Doc. 595-3 at 6.

As to Viva Palestina, Mr. Spitzen cannot make that connection either: his initial report contains a section on Viva Palestina that opens with the conclusory sentences "the AMP organization, like other organizations and funds in the USA before it (HLF, AIP [sic], and

3

KindHearts), has raised money that reached the Hamas organization in Gaza. For such fundraising, one of the organization's methods involved British MK [sic] George Galloway and the Viva Palestina organization that he founded." Doc. 595-1 at 4. Yet neither of those two opening sentences about Viva Palestina contains a citation, reference or footnote. *Id*. And Mr. Spitzen testified clearly that if he did not provide a footnoted source, the information came from Plaintiffs' attorneys—which he then accepted at face value:

> A. Okay. Sentences like that, that I don't have footnotes to, these are the facts or the information I got from the lawyers.
>
> Q. Okay. Did you confirm it on your own?
>
> A. I wasn't asked to do that.
>
> Q. And you did not do that?
>
> A. No.

Doc. 595-3 at 7.

Mr. Spitzen also makes several references to KindHearts, also neither a defendant in this matter nor in Plaintiffs' earlier lawsuit. And though Plaintiffs well know that the government settled the lawsuit KindHearts brought against it, and the Department of the Treasury returned KindHearts' previously seized funds in full after being enjoined by a federal court from designating KindHearts as a Specially Designated Global Terrorist ("SDGT"), Plaintiffs attempt even in their Response to omit that key part of KindHearts' story and instead imply wrongdoing by KindHearts. Doc. 600 at 2-3 (referencing only the early actions that "the U.S. government became aware of Kindhearts' [sic] terror ties, seized its funds and forced it to disband"); *compare KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 870 n.6 (N.D. Ohio 2009)[1] (referencing

---

[1] Also located at https://assets.aclu.org/live/uploads/legal-documents/kindheartsvgeithner_order.pdf. This Court may properly take judicial notice of the

that court's October 9, 2008 Order enjoining OFAC from designating KindHearts as a SDGT); *id*. at 100 (holding OFAC violated the Fourth Amendment when it seized KindHearts' funds without probable cause, notice or a meaningful right to be heard, and wrongfully blocked KindHearts' access to its funds to pay its attorneys); *see also* Settlement Agreement dated November 28, 2011 between KindHearts and the U.S. Department of the Treasury, Office of Foreign Assets Control, and the Attorney General, at 1 (recognizing "KindHearts … has independently determined to close down" and agreeing that "[a]ll funds and assets owned by KindHearts" be returned to pay its debts "and as grants for charitable purposes" to other organizations identified and selected by KindHearts) and 2 (acknowledging that "[n]othing in this agreement prevents KindHearts' former board members, officers, and employees from engaging in any lawful activity, including forming a new organization to engage in charitable activity in the Middle East or elsewhere that conforms with all legal requirements").[2]

Instead of helping the trier of fact assess the relevant issues, Mr. Spitzen's extraneous discussions of external people and entities will only add confusion. "This does not an expert opinion make." *West v. Home Depot U.S.A.*, No. 21 CV 1145, 2024 U.S. Dist. LEXIS 76437, at *2 (N.D. Ill. Apr. 26, 2024) (quoting *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010)). Mr. Spitzen therefore lacks the expertise to provide informed opinions on the operations of AMP, a domestic nonprofit organization. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 154 (1999) reiterating the expert's experience must tie to some issue directly relevant to the case).

---

prior legal decisions and public documents referenced in this Reply, as their existence and content cannot reasonably cause dispute. Fed. R. Evid. 201.

[2] Located at https://assets.aclu.org/live/uploads/legal-documents/kindhearts_v__geithner_-_settlement.pdf and http://www.aclu.org/KindHeartsSettlement.

**B.     Plaintiffs Fail to Prove Mr. Spitzen Employed a Reliable Methodology**

Instead of utilizing their Response to clarify Mr. Spitzen's methodology, Plaintiffs note that Mr. Spitzen's conclusions are simple and straightforward: "[t]he fact that these opinions appear simple and straightforward does not diminish their value or the effort and expertise required to reach these conclusions." Doc. 598 at 8. Defendants agree that this case does not call for Mr. Spitzen to "conduct experiments or perform regression analysis on data collections." *Id.* However, Mr. Spitzen still mut employ a reliable methodology that leads to his conclusions. *Shebley v. United Cont'l Holdings, Inc.*, No. 17-cv-01906, 2021 U.S. Dist. LEXIS 269647, at *9-10 (N.D. Ill. Apr. 20, 2021) (Wood, J.) ("There must be a 'link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support.'") (quoting *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003)). Mr. Spitzen's conclusions wholly lack this element.

Mr. Spitzen's methodology, to the extent he even articulates one, largely relies on review of numerous Facebook profiles. *See* Doc. 595-1-2. This perfunctory review of open-source social media content does not constitute a sound methodology. Even if it could, Mr. Spitzen erroneously attributes multiple Facebook posts to an organization different than AMP, which he thought he was analyzing. Doc. 595-3 at 10. When questioned on these errors in his deposition, Mr. Spitzen acknowledged that at least two footnotes in his report refer to the Facebook page of an irrelevant organization, that he erroneously attributed in his report to AMP: "The only thing I said that what's written here, it's not the name of the organization I ·was talking about.· But I didn't check that Facebook link yet. I need to check it." *Id*. That represents far deeper problems than the "single alleged mistake" of "one inadvertent attribution of a Facebook page," as minimized by Plaintiffs. Doc. 598 at 7; *compare* Doc. 595-1 at 25, n. 26 and n. 27 (erroneously citing multiple Facebook

6

posts unrelated to AMP, and attributing them to AMP as evidence of purported support for terrorist activities).

Plaintiffs cite only to one out-of-Circuit unpublished opinion, without parenthetical, pincite or other explanation, to support their qualification of these substantive mistakes as "[a] minor error" that does not justify excluding Mr. Spitzen. Doc. 598 at 7, citing *Mantzuranis v. State Farm*, Civil Action No. 3:21-cv-01486-M, 2022 U.S. Dist. LEXIS 133112 (N.D. Tex. May 23, 2022). But the cited case fails to support Mr. Spitzen. In *Mantzuranis*, Chief Judge Lynn of the Northern District of Texas denied a motion to exclude an expert on the bases that (1) the expert omitted a survey on which he did not rely in his report, and (2) he failed to disclose his compensation at the same time as his report, but then later provided invoices. 2022 U.S. Dist. LEXIS 133112, at *9-10. Mr. Spitzen's errors and omissions differ significantly. First, Plaintiffs make clear even in their Response that they intend to utilize testimony from Mr. Spitzen to establish connections of alleged terrorist support; yet Mr. Spitzen's substantive reliance on what he identified as Facebook posts supporting Hamas, which Plaintiffs now seem to acknowledge as well did not come from AMP, places his expertise and evaluation on that subject in serious doubt. Furthermore, Mr. Spitzen failed to accurately name the two founders of AMP or its early leadership, despite Plaintiffs' articulated intent to have him testify about alleged association by "key leaders of AMP from its earliest days" with Hamas. Doc. 598 at 4; Doc. 595-3 at 12. These errors and omissions invalidate the substance of the report by Mr. Spitzen; the extraneous survey and invoices for testimony in *Mantzuranis* did not. Even if this opinion did support Plaintiffs' arguments against exclusion of Mr. Spitzen, this 2022 opinion predates the 2023 amendments to Federal Rule of Evidence 702. As discussed more fully *infra*, the 2023 Advisory Committee specifically made changes to reinforce the intended gatekeeping role of courts over expert testimony because it

7

identified too many opinions that utilized "an incorrect application of Rule 702" on the "critical questions" of methodology and sufficient bases for the conclusions reached. Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments.

These errors, coupled with repeated reliance by Mr. Spitzen on information provided to him solely by Plaintiffs' counsel, greatly weaken any reliability his conclusions may have otherwise had. *See, e.g.*, Doc. 595-3 at 6 (acknowledging his lack of knowledge of any connection between AMP and Baitulmaal); *id*. at 7 (admitting "these are the facts or the information I got from the lawyers"); Doc. 595-1 at 24 (making conclusions regarding the involvement of Abdelbaset Hamayel "as I have been informed by the attorneys for the plaintiffs").

Plaintiffs attempt to salvage the value of Mr. Spitzen's report with references to cases predating the 2023 amendments to Rule 702. Doc. 598 at 8-9. Plaintiffs even quote directly from notes to the predecessor version of Rule 702, asserting that "'the rejection of expert testimony [under *Daubert*] is the exception rather than the rule[.]' Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments." Doc. 598 at 9. But the 2023 Amendments to Rule 702 occurred to directly refute that approach: "Many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rule 702." Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments. This District approves and appropriately applies the improved 2023 standard. *See West*, 2024 U.S. Dist. LEXIS 76437, at *4: "The operative version of Rule 702 came into effect on December 1, 2023. The Advisory Committee explained the reason for the amendment to the longstanding rule was to 'clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.'

8

Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments." Plaintiffs here further reference three requirements of Rule 702; the Rule contains four. Doc. 598 at 8 (identifying that to testify, (1) the expert must be qualified in the subject matter; (2) the methodology must be sufficiently reliable to meet *Daubert* standards; and (3) the testimony must assist the trier of fact through the application of "scientific, technical or **specialized expertise** to understand the evidence") (emphasis in Doc. 598) (omitting the "and" between the requirements); *compare* Fed. R. Evid. 702 (allowing expert testimony "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or specialized knowledge will help the factfinder determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case"); *see also Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024) (identifying the same four factors). Plaintiffs' extensive reliance on Mr. Spitzen's general years of experience cannot meet this standard. *Shebley*, 2021 U.S. Dist. LEXIS 269647, at *6 ("Applying personal judgment is not a proper expert methodology.") (citing *Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020 WL 419406, at *5 (N.D. Ill. Jan. 24, 2020)); *id*. ("An expert cannot rely on intuition or appeal generally to 'expertise,' and such generalized appeals to authority suggest that an expert 'either had no method or could not describe one.'") (quoting *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005)). Mr. Spitzen's proposed testimony fails to meet numerous requirements of Rule 702, and Defendants therefore respectfully request this Court grant their motion to exclude his testimony in full.

### III. CONCLUSION

Plaintiffs' Response falls far short of establishing the four required elements of Rule 702 as to Mr. Spitzen's proposed testimony. Plaintiffs highlight subject matter and entities not relevant to the claims they raise in this case. Plaintiffs fail to clarify what methodology Mr. Spitzen employed, or show it to be both reliable and capable of replication by others. Plaintiffs instead rely on an outdated version of Rule 702, specifically overlooking the errors in previous decisions identified by the 2023 Advisory Committee in making the changes it did. And Plaintiffs attempt to pass off their own counsel's conclusory statements to Mr. Spitzen as his own, despite his repeated and plain acknowledgment to the contrary. Defendants therefore respectfully request this Court exclude Mr. Spitzen's testimony and reports in full, for the reasons cited above that demonstrate Plaintiffs' failure to meet their burdens under Federal Rule of Evidence 702.

Dated this 22nd day of December, 2025.

*/s/ Christina A. Jump*
Christina A. Jump
Texas Bar No. 00795828
*Admitted to the General and Trial Bars of this District*
Jump Start Legal Justice Center PLLC
100 N. Central Expressway, Suite 537
Richardson, Texas 75080
(972) 992-5060
cjump@jump-start-legal.com

Samira Elhosary
Maryland Bar No. 2112140261
*Admitted to the General Bar of this District*
selhosary@clcma.org
Constitutional Law Center for Muslims in America*
100 North Central Expressway, Suite 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

10

*Attorneys for Defendant*

*\*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 22, 2025, she caused the foregoing Motion to be served by electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record.

/s/ *Christina A. Jump*
Christina A. Jump
*Counsel for Defendants*
